**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

SONY MUSIC ENTERTAINMENT, *et al.*,

      Plaintiffs,

v.

COX COMMUNICATIONS, INC., *et al.*,

      Defendants.

Case No. 1:18-cv-00950-LO-JFA

**PLAINTIFFS' MEMORANDUM OF LAW IN**
**<u>OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE</u>**

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................. 1

BACKGROUND ................................................................................................................ 3

    I.   Virginia connections to this case. .......................................................................3

    II.  This Court presided over *BMG v. Cox* for nearly four years. ...........................4

    III. The material overlap between this case and *BMG v. Cox*.................................5

STANDARD OF LAW ....................................................................................................... 5

ARGUMENT ..................................................................................................................... 6

    I.   Plaintiffs' chosen forum is entitled to substantial deference. ...........................6

    II.  Cox fails to demonstrate that transfer would improve either convenience of the parties or witness access and convenience. .......................................................8

           a.   Party convenience does not favor transfer. ................................................. 8

           b.   Access and convenience of witnesses do not favor transfer. ...................... 9

    III. Interests of justice strongly favor litigating this case in Virginia....................11

           a.   Transfer would flout judicial economy...................................................... 11

           b.   Transfer would increase the risk of inconsistent adjudication. ................... 14

           c.   Transfer would reward Cox's attempt to avoid bad precedent through forum manipulation............................................................................................. 16

           d.   Transfer would ignore the two courts' relative docket conditions, prolong the litigation and increase costs to the parties and public.......................... 17

CONCLUSION................................................................................................................. 17

# **TABLE OF AUTHORITIES**

<u>Cases</u>

*In re: Apple Inc.*,
    743 F.3d 1377 (Fed. Cir. 2014) ...................................................................................10

*Ashmore v. Ne. Petroleum Div. of Cargill, Inc.*,
    925 F. Supp. 36 (D. Me. 1996) ......................................................................................9

*Beam Laser Sys., Inc. v. Cox Commc'ns., Inc.*,
    117 F. Supp. 2d 515 (E.D. Va. 2000) ........................................................................6, 7

*BMG Rights Mgmt. (US) LLC, et al., v. Cox Commc'ns, Inc., et al.*,
    Civ. No. 1:14-cv-01611-LO-JFA (E.D. Va. filed Nov. 26, 2014) ..........................1

*BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*,
    234 F. Supp. 3d 760 (E.D. Va. 2017) ................................................... 1, 4, 5, 10

*Cobalt Boats, LLC v. Sea Ray Boats, Inc.*,
    Civ. No. 2:15-cv-21, 2015 WL 1800274 (E.D. Va. 2015) ....................................11

*comScore, Inc. v. Integral Ad Sci., Inc.*,
    924 F. Supp. 2d 677 (E.D. Va. 2013) .........................................................................6

*DPR Construction, Inc. v. IKEA Property, Inc.*,
    Civ. No. 1:05-cv-259, 2005 WL 1667778 (E.D. Va. July 6, 2005) ......................14

*FMC Corp. v. AMVAC Chemical Corp.*,
    379 F. Supp. 2d 733 (E.D. Pa. 2005).........................................................................13

*Inline Connection Corp. v. Verizon Internet Servs., Inc.*,
    402 F. Supp. 2d 695 (E.D. Va. 2005).  ......................................................................17

*Innovative Commun. Techs., Inc. v. Vivox, Inc.*,
    Civ. No. 2:12-cv-7, 2012 WL 4738979 (E.D. Va. Oct. 3, 2012).........................13

*LG Electronics, Inc. v. Advance Creative Computer Corp.*,
    131 F. Supp. 2d 804 (E.D. Va. 2001)........................................................................11

*Limelight Networks, Inc. v. XO Commun., LLC*,
    Civ. No. 3:15-cv-720-JAG, 2016 WL 6871285 (E.D. Va. Aug. 3, 2016)...............7

*Mt. W. Mines, Inc. v. Cleveland-Cliffs Inc.*,
    2009 WL 10664229 (N.D. Ohio Feb. 13, 2009) .....................................................15

*Nationwide Mut. Ins. Co. v. The Overlook, LLC,*
  Civ. No. 4:10-cv-00069, 2010 WL 2520973 (E.D. Va. June 17, 2010)...................................6

*NanoEntek, Inc. v. Bio–Rad Laboratories, Inc.,*
  Civ. No. 2:11-cv-427, 2011 WL 6023189 (E.D. Va. Dec. 2, 2011) .....................................11

*Nolte v. BellSouth Telecomms., Inc.,*
  2007 WL 2253561 (N.D. Al. 2007) ...................................................................................15

*Nossen v. Hoy,*
  750 F. Supp. 740 (E.D. Va. 1990) .......................................................................................8

*Optical Recording Corp. v. Capitol–EMI Music, Inc.,*
  803 F. Supp. 971 (D. Del. 1992) .........................................................................................13

*Palaxar Group, LLC v. Williams,*
  Civ. No. 3:13-cv-641, 2014 WL 2002214 (E.D. Va. May 14, 2014)...................................14

*Precision Franchising, LLC v. Coombs,*
  2006 WL 3840334 (E.D. Va. 2006) ...................................................................................10

*Reiffin v. Microsoft Corp.,*
  104 F. Supp. 2d 48 (D.D.C. 2000) ................................................................................ 14, 15

*Samsung Elecs. Co., LTD. v. Rambus, Inc.,*
  386 F. Supp. 2d 708 (E.D. Va. 2005)..................................... 1, 2, 6, 9, 10, 11, 12, 14, 15, 16

*S.E.C. v. Roberts,*
  2007 WL 2007504 (D.D.C. 2007)......................................................................................15

*Topiwala v. Wessell,*
  2012 WL 122411 (D. Md. Jan. 12, 2012)............................................................................8

*U.S. Ship Mgt., Inc. v. Maersk Line, Ltd.,*
  357 F. Supp. 2d 924 (E.D. Va. 2005)..................................................................................12

*Wireless Consumers Alliance, Inc. v. T-Mobile USA, Inc.,*
  2003 WL 22387598 (N.D. Cal. 2003).................................................................................16

Statutes

28 U.S.C. § 1404...................................................................................................... 5, 6, 8, 17

Plaintiffs submit this memorandum of law in opposition to the motion to transfer venue to the Northern District of Georgia, filed by Defendants Cox Communications, Inc. and CoxCom, LLC (collectively, "Cox" or "Defendants").

## PRELIMINARY STATEMENT

Cox's motion must be seen for what it is:  a ploy to avoid the efficiencies and substance of this Court's prior rulings in a virtually identical case.  Cox ignores the overwhelming overlap between this case and *BMG Rights Mgmt. (US) LLC, et al., v. Cox Commc'ns, Inc., et al.*, Civ. No. 1:14-cv-01611-LO-JFA (E.D. Va. filed Nov. 26, 2014) ("*BMG v. Cox*").  The defendants in both cases are the same and the claims, issues and time period at issue are virtually identical.  During *four years* of litigation in *BMG v. Cox*, Cox never challenged the propriety or convenience of this venue.  And it has not remotely satisfied its burden to show the balance of factors *strongly* favors transfer here.  Cox claims convenience warrants transfer, but it never argues this forum is inconvenient.  The real reason Cox seeks transfer is to avoid the Court that held its failed DMCA safe harbor defense "lacked a basis in fact and was therefore objectively unreasonable," *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 234 F. Supp. 3d 760, 767 (E.D. Va. 2017), *aff'd in relevant part, rev'd in part*, 881 F.3d 293 (4th Cir. 2018), and a jury pool that awarded large damages against it.

Courts weighing transfer motions balance the deference given to plaintiffs' choice of forum with convenience to parties and witnesses, and interests of justice.  Cox distorts fundamental principles and material facts in each of these categories.  In doing so, it presents a deeply flawed analysis that mistakes Virginia's strong connection to this case and ignores the overwhelming risk of waste, duplication and inconsistent adjudication if the case is transferred.  In *Samsung Elecs. Co., LTD. v. Rambus, Inc.*, Judge Payne addressed this precise situation and denied transfer where

a defendant sought to avoid the court that handled the predecessor case.  386 F. Supp. 2d 708, 715 (E.D. Va. 2005).  Here, as in *Samsung*, litigating both cases "in the same tribunal facilitates efficient, economical and expeditious pre-trial proceedings and discovery," and prevents "duplicative litigation and inconsistent results."  *Id.* at 721.  Cox never addresses *Samsung*, though it is directly on point.  This Court should follow *Samsung* and deny transfer because all factors weigh against it.

*First*, Plaintiffs' choice of forum is entitled to substantial deference given the case's meaningful connection to Virginia.  Cox's copyright abuse team received, reviewed and acted upon copyright infringement notices in Virginia.  Key Cox witnesses worked in and reside in Virginia, rampant infringement on Cox's network occurred in Virginia, and a trial on the merits of the conduct at issue here recently occurred in Virginia before the same judge assigned to this case. Critically, during the 2013-2014 period at issue, a key employee deciding whether to terminate repeat-infringing subscribers did so from Cox's Hampton Roads, Virginia office.  That office handled copyright abuse violations by the worst of Cox's repeat infringers.  Cox's decision whether to terminate those subscribers is at the very core of this case and that happened (or rather, did not happen) right here in the Commonwealth.  Beyond this, Plaintiffs have identified *thousands* of repeat infringers based in Virginia—approximately *10 times* the number of repeat infringers in Georgia—who used Cox's service to infringe Plaintiffs' rights.

*Second*, Cox has not argued that litigating in this forum will be inconvenient or create a hardship, just that doing so in Georgia will "increase" its convenience.  This fails to satisfy the required showing of hardship.  Cox likewise offers no evidence that any witness would be unable or unwilling to testify in Virginia or inconvenienced if asked to do so.  That evidence could have been provided since most of the identified witnesses are Cox employees.  Nor has Cox

demonstrated that the Atlanta-based witnesses's testimony would be material or non-cumulative in any event.

*Third*, interests of justice leave no doubt this case should remain here. Cox ignores the monumental advantages of litigating before the same judge who presided over *BMG v. Cox*. Granting Cox's motion would fly in the face of judicial economy and create a high risk of inconsistent adjudication. It would prevent this Court from ruling on the preclusive effect of its own rulings and ignore the substantial infringing activity that occurred here. And it would reward Cox's blatant attempt at forum manipulation to avoid the force and effect of this Court's rulings in *BMG v. Cox*, as well as those of the Fourth Circuit. As in *Samsung*, transfer should be denied.

## BACKGROUND

### I.      Virginia connections to this case.

Cox employs approximately 2,400 employees across Virginia, where it conducts substantial business, provides internet and other service, and maintains network management operations. Defs.' Answer ¶¶ 13, 15, ECF No. 21.[1] In 2013-2014, Cox's copyright abuse department maintained material operations in Hampton Roads, Virginia. *E.g.*, Declaration of Linda J. Trickey  ("Trickey Decl.") ¶ 9, ECF No. 23-1; *BMG* Trial Tr. 828-29, 832-33, 836, 854, 865.[2] Roger Vredenburg, a key abuse employee responsible for deciding whether to terminate repeat-infringing subscribers, worked from Cox's Virginia office. *Id.*; Trickey Decl. ¶¶ 6-7, 9. This Court twice denied Cox's motion to quash trial subpoenas to Vredenburg given BMG's

---

[1] The "senior vice president and region manager of Cox's Virginia operations . . . is responble for leading more than 2,400 employees and day-to-day operations across Virginia, including Hampton Roads, Roanoke, Fairfax County and Fredericksburg." *See Cox Communications – Leadership Team*, Cox News Center, http://newsroom.cox.com/leadership-team?item=29958 (last visited Oct. 8, 2018).

[2] Copies of all excerpts from the *BMG v. Cox* trial transcript cited herein are attached as Ex. A to the Declaration of Dan Seymour ("Seymour Decl.") and cited herein as "*BMG* Trial Tr."

arguments about the materiality and non-cumulative nature of his testimony. *BMG* ECF Nos.[3] 711, 1001; *BMG* Trial Tr. 619.  He still lives in Virginia.  Trickey Decl. ¶ 6.  Another Cox network security employee, Andrea Dameri, worked in Virginia during the relevant period and is knowledgeable about how Cox declined to terminate repeat infringers.  *Id.*; *BMG* Trial Tr. 1437:18-20.  She still lives in Virginia.  Trickey Decl. ¶ 6.  Thousands of Cox's repeat infringing subscribers during the relevant period have been geolocated to Virginia-based IP addresses. Seymour Decl. ¶ 5.

## II.     This Court presided over *BMG v. Cox* for nearly four years.

In November 2014, BMG sued Cox in this Court for contributory and vicarious copyright infringement for massive infringements of BMG's copyrighted musical compositions.  *BMG* ECF No. 1.  Cox never challenged venue and never suggested EDVA was inconvenient.  The *BMG* case "raised difficult issues of first impression."  *Cox Commc'ns, Inc.*, 234 F. Supp. 3d at 772.

The parties took extensive discovery and filed dozens of motions.  In December 2015, this Court issued a 70-page summary judgment opinion finding Cox ineligible for the Digital Millennium Copyright Act's (DMCA) safe harbor from February 2012 through November 2014. *BMG* ECF No. 703.  In doing so, the Court reviewed extensive briefing and evidence detailing Cox's system for handling copyright abuse allegations, infringement notices, policies and protocols, and Cox's defenses.  *Id.* at 26-42.

The case then proceeded to trial.  The Court resolved dozens of pre-trial motions.  *See, e.g., BMG* ECF Nos. 460, 463, 470, 477, 534, 543, 556, 568, 571, 691.  The December 2015 trial lasted more than two weeks.  Approximately 20 witnesses testified.  The jury found against Cox for willful contributory infringement and awarded BMG $25 million.  *BMG* ECF No. 754.  Extensive

---

[3] "*BMG* ECF No." refers to docket entries in *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc., et al.,* Civ. No. 1:14-cv-1611-LO-JFA (E.D. Va. filed Nov. 26, 2014).

post-trial motions followed. *BMG* ECF Nos. 761, 763, 766, 773, 774, 775, 778, 780, 781. The Court heard argument on the motions, reviewed the evidence, and denied all motions in a 63-page written opinion. *BMG* ECF No. 794. In resolving the parties' post-trial fee petitions, the Court considered "hundreds of pages of filings," reviewed much of the underlying case record, addressed "an array of legal questions," and awarded BMG more than $8 million in fees and costs. *Cox Commc'ns*, 234 F. Supp. 3d at 765.

On remand from appeal, the parties sought additional discovery and Cox asked to add a new expert witness for retrial. *BMG* ECF Nos. 913, 921. The Court resolved those motions and roughly a dozen other new or renewed pre-trial motions. *E.g.*, *BMG* ECF Nos. 997, 998, 1001, 1002. On the eve of retrial, the parties settled and dismissed all claims by stipulation on August 24, 2018. *BMG* ECF No. 1021.

### III.     The material overlap between this case and *BMG v. Cox.*

The overlap between *BMG v. Cox* and this case is substantial. The defendants are the same, the misconduct is the same, the time period is the same, and the theories of liability are the same. Plaintiffs in both cases hold copyrights in popular music, which they allege Cox repeatedly infringed secondarily. Plaintiffs in both cases allege primary infringements by Cox subscribers using the BitTorrent protocol between February 2013 and November 2014, and that Cox turned a blind eye to specific infringers on its network. *Compare BMG* ECF No. 16 (Pls.' First Am. Compl.) *with* ECF No. 1 (Pls.' Compl.). In the *BMG* case, this Court and the Fourth Circuit invested substantial time and judicial resources into the analyses of facts, law and issues presented by this case.

### STANDARD OF LAW

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . ." 28

U.S.C. § 1404(a).  Assuming the case could have been brought in the transferee forum, courts assessing transfer motions under § 1404(a) balance (1) the plaintiff's choice of forum, (2) the convenience of the parties and witnesses, and (3) interests of justice.  *Samsung*, 386 F. Supp. 2d at 715.  The "party seeking such discretionary transfer bears the burden of demonstrating that the balance of convenience among the parties and witnesses is *strongly* in favor of the forum to which transfer is sought."  *Nationwide Mut. Ins. Co. v. The Overlook, LLC*, Civ. No. 4:10-cv-00069, 2010 WL 2520973, at *3 (E.D. Va. June 17, 2010) (emphasis in original) (internal quotations omitted).

## ARGUMENT

Deference to Plaintiffs' choice of forum, convenience to parties and witnesses, and interests of justice all weigh heavily in favor of hearing this case in Virginia.  Cox has not and cannot satisfy its heavy burden to prove otherwise.

### I.   Plaintiffs' chosen forum is entitled to substantial deference.

Cox contends Plaintiffs' chosen forum is entitled to "no deference" because neither the parties nor claims have meaningful connection to Virginia.  Defs.' Br. 2-6, ECF No. 23.  This is wrong on both fact and law.  Factually, Virginia is all over this case.  Therefore, as a matter of law, Plaintiffs' choice of venue is entitled to substantial deference.

When weighing the transfer factors, "plaintiff's choice of forum is typically entitled to substantial weight, especially where the chosen forum . . . bears a substantial relation to the cause of action."  *comScore, Inc. v. Integral Ad Sci., Inc.*, 924 F. Supp. 2d 677, 682 (E.D. Va. 2013) (internal quotation omitted); *see also Beam Laser Sys., Inc. v. Cox Commc'ns., Inc.,* 117 F. Supp. 2d 515, 518 (E.D. Va. 2000) (denying transfer because the "nationwide character of the [Cox Companies'] alleged infringement does not diminish Beam's choice of Virginia as its forum.").

This case is about Cox's decision to not terminate subscribers despite having knowledge of their repeated infringements.  Those decisions were made here in the Commonwealth.  Key

6

abuse employees, including Roger Vredenburg, worked in and made those decisions from Cox's Hampton Roads, Virginia office.  Vredenburg still resides in Virginia.  In addition, primary and repeated infringement by Cox's Virginia-based subscribers was rampant during the February 2013 through November 2014 period at issue.  Plaintiffs have geolocated *2,010 repeat infringers* during that period with Virginia-based Cox IP addresses.  Seymour Decl. ¶ 5.  During that same period, Plaintiffs identified no more than *194 repeat infringers* with Cox IP addresses in Georgia.  *Id.*; *see also Limelight Networks, Inc. v. XO Commun., LLC,* Civ. No. 3:15-cv-720-JAG, 2016 WL 6871285, at *2 (E.D. Va. Aug. 3, 2016) (finding a substantial relationship between E.D. Va. and out-of-state plaintiff's infringement action, where infringement occurred over networks in Virginia).

Cox claims that Plaintiffs' choice of forum is entitled to "no" weight because "the connection between the alleged infringement and the Eastern District of Virginia … would be shared with many other districts given the broad scope of Plaintiffs' infringement allegations." Defs. Br. 4.  That is simply wrong.  In *Limelight*, for example, an Arizona- and California-based plaintiff sued a telecommunications company in the Eastern District of Virginia on the basis that infringements occurred in the district.  2016 WL 6871285, at *1.  The defendant moved to transfer, making the same argument Cox does here.  It argued Limelight's choice of forum deserved no deference because it was not Limelight's home forum and Limelight could have made the same claim in many districts across the country.  *Id.* at *2.  Rejecting this argument, the Court explained that "the nationwide character of the infringement does not undermine infringement in a particular forum" and held that "since the infringement occurred in the EDVA, the EDVA has ties to the infringement at the heart of this action."  *Id.*; *see also Cox Commc'ns,* 117 F. Supp. 2d at 519 (denying Cox's motion to transfer out of Virginia, explaining that "[i]f there is no center of

infringement activity in a particular case, then, as long as the plaintiff brings its action in a forum where the alleged infringement is occurring, that choice should not be undermined by allegations that infringing activities occur throughout the country.").[4]   Given the strong connections to Virginia, Plaintiffs' choice of forum is entitled to substantial deference.

## II.     Cox fails to demonstrate that transfer would improve either convenience of the parties or witness access and convenience.

### a.   Party convenience does not favor transfer.

Cox has neither argued nor presented facts demonstrating party inconvenience or hardship. Nor could it credibly do so given its substantial Virginia operations (including copyright abuse handling) and four years of litigation in *BMG v. Cox* with no claim of inconvenience.  *See Topiwala v. Wessell*, 2012 WL 122411, at *8 (D. Md. Jan. 12, 2012) ("The defendants have not asserted that litigating in Maryland will create a hardship. *See* ECF No. 17 Attach. 1. Accordingly, this factor favors hearing the action in Maryland.").  Instead, Cox merely contends that its convenience would be "increased" by moving this case to Georgia.  Defs.' Br. 8.  But even if Cox had credibly asserted some inconvenience with a Virginia forum (and it has not), "[i]nconvenience to the movant alone will not demonstrate sufficient reason for a 1404(a) transfer and the plaintiff's choice of forum should rarely be disturbed unless the balance of hardships clearly favors transfer."  *Nossen v. Hoy*, 750 F. Supp. 740, 742 (E.D. Va. 1990) (denying transfer).

Here, Cox simply repeats its arguments that this case is more tied to Georgia than Virginia, focusing primarily on Cox's Atlanta headquarters.  Defs.' Br. 8-9.  In the same breath, Cox concedes that "copyright infringemement notices, including account terminations, were handled . . . [in] *Hampton Roads, Virginia*," and a slew of other network, internet, collections, and service

---

[4]   Plaintiffs' choice to file suit in this forum is also entitled to deference because it accounts for the Court's unique perspective and ability to reach a speedy, fair, and cost-effective resolution to this dispute.  *See infra*, Section III.

operations took place here too.  Defs.' Br 7, 9 (emphasis added); Trickey Decl. ¶¶ 6-7, 9.  Cox also ignores that lead counsel for both parties are based in Washington, D.C. and are members of the E.D. Virginia bar.  By contrast, neither party's counsel has offices in Georgia.

**b.  Access and convenience of witnesses do not favor transfer.**

Cox ignores the distinction between party and non-party witnesses and seeks transfer, not to accommodate any hardship or inconvenience, but because litigating in Atlanta would be "more convenient" for party witnesses.  This misses the mark.  Convenience of *non-party witnesses* drives the analysis of this factor.

Cox has submitted a single affidavit from an in-house attorney listing eight prospective witnesses in the Atlanta area with personal or corporate knowledge of issues in the case.  Trickey Decl. ¶¶ 4-5.  Five of the eight listed witnesses are current Cox employees and a "defendant's motion to transfer under section 1404(a) may be denied when the witnesses are employees of the defendant and their presence can be obtained by the party."  *Ashmore v. Ne. Petroleum Div. of Cargill, Inc.*, 925 F. Supp. 36, 38 (D. Me. 1996).

Furthermore, a "party asserting witness inconvenience must proffer sufficient details regarding the witness and his or her testimony to allow the court to assess [1] the materiality of [the] evidence [that the witness will offer] and [2] the degree of inconvenience [that will result from declining to transfer the action]." *Samsung*, 386 F. Supp. 2d at 718.  Cox provides neither.  It offers no facts demonstrating the four witnesses who testified in the BMG case were inconvenienced, nor any evidence they would be inconvenienced, unwilling or unable if asked to do so again.

As for expected testimony, Cox merely identifies the witnesses' current or former titles and the Rule 30(b)(6) topics on which some served as corporate designees at a deposition in the *BMG* case.  But that is not sufficient for the Court to determine whether those witnesses are "central

to a claim" or "merely cumulative." *See Samsung*, 386 F. Supp. 2d at 718; *see also Precision Franchising, LLC v. Coombs*, 2006 WL 3840334, at *5 (E.D. Va. 2006) ("[T]he influence of this factor may not be assessed without reliable information identifying the witnesses involved and specifically describing their testimony."); *In re Apple Inc.*, 743 F.3d 1377, 1378-79 (Fed. Cir. 2014) (court stymied in analysis where transfer motion supported with only vague assertions).

Nor can the Court rely on the listed 30(b)(6) topics as a proxy for expected testimony given that "Cox provided an unqualified 30(b)(6) witness who did not have knowledge of the company's abuse practices" in the prior case. *Cox Commc'ns*, 234 F. Supp. 3d at 767. To the extent the Court can assess anything at all about witness materiality or inconvenience, it is solely based on the Court's handling of the *BMG* case for four years—which further dictates that this case remain in this Court for efficiency, economy and consistency. *See infra*, Section III.a.

The real litmus test for witness convenience is that of third parties. Cox barely addresses this point even though "[t]he convenience of non-party witnesses should be afforded greater weight in deciding a motion to transfer venue." *Samsung*, 386 F. Supp. 2d at 718 (internal citation omitted). Cox identifies three non-party witnesses in Atlanta (Randy Cadenhead, Joseph Sikes and Jason Zabek) and one former employee in Virginia (Roger Vredenberg). Again it offers no evidence of materiality or inconvenience for any of them. Trickey Decl. ¶¶ 4, 6. Nor has Cox offered evidence that securing the Atlanta witnesses' appearance at trial will be an issue absent compulsory process, nor anything suggesting Cadenhead, Sikes or Zabek would be unwilling to come to trial if their expenses were paid. *See Samsung,* 386 F. Supp. 2d at 718 ("[T]he moving party must demonstrate 'whether that witness is willing to travel to a foreign jurisdiction."). Furthermore, Sikes and Zabek were employed by Cox during the *BMG* trial and appeared by video deposition, not live. They could do so again here, if appropriate, with no inconvenience to them.

That leaves one Atlanta-based and one Virginia-based non-party witness—hardly the stuff that tips the scales and certainly not enough to carry Cox's burden.[5]

### III.     Interests of justice strongly favor litigating this case in Virginia.

Cox ignores the most critical factors bearing on the interest of justice analysis—judicial economy and the avoidance of inconsistent rulings, both of which strongly favor litigation in this forum given the Court's familiarity with and prior rulings in the *BMG* case.  By contrast, granting transfer would reward Cox's attempt at forum manipulation to avoid the judge who understands this complex dispute and has already ruled on critical issues—including discovery disputes, Cox's ineligibility for the DMCA safe harbor, and countless pre- and post-trial motions.  "The interest of justice may be decisive in ruling on a transfer motion even though the convenience of the parties and witnesses point in a different direction."  *Samsung*, 386 F. Supp. 2d at 715 (citing 15 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Jurisdiction § 3854 (2d ed.)).

### a.   Transfer would flout judicial economy.

Judicial economy strongly favors hearing this case in this forum because it is materially similar to *BMG v. Cox* and this Court can most efficiently and economically handle it.  "[W]here a party has previously litigated a case involving similar issues and facts[,] 'a court in that district will likely be familiar with the facts of the case.  As a matter of judicial economy, such familiarity is highly desirable'" and "weigh[s] heavily" in the transfer analysis.  *Id*. at 721-22 (quoting *LG Electronics, Inc. v. Advance Creative Computer Corp*., 131 F. Supp. 2d 804, 815 (E.D. Va. 2001);

---

[5] Cox half-heartedly contends the location of documents in Atlanta favors transfer.  Defs.' Br. 10.  The argument carries no weight.  The documents in this case are all electronic and, in all likelihood, Cox's attorneys have them push-button ready for production given the *BMG* case covered the exact same time period, issues, facts, and claims. *See Cobalt Boats, LLC v. Sea Ray Boats, Inc.,* Civ. No. 2:15-cv-21, 2015 WL 1800274, at *4 (E.D. Va. 2015) ("When the substantial majority of evidence is documentary and/or electronically stored, this factor is *de minimis* and not entitled to substantial weight in the overall balance."); *NanoEntek, Inc. v. Bio–Rad Laboratories, Inc.*, Civ. No. 2:11-cv-427, 2011 WL 6023189, at *4 (E.D. Va. Dec. 2, 2011) (agreeing that "changes in technology have lessened the importance of the court's proximity to physical documentation.").

*see also U.S. Ship Mgt., Inc. v. Maersk Line, Ltd.*, 357 F. Supp. 2d 924, 937 (E.D. Va. 2005) (granting transfer to court overseeing related case in interest of judicial economy).  Even where a materially similar case occurs *after* the conclusion of its predecessor case, "the impact on judicial economy is the same" because "the interest of justice favor[s] a venue which has already committed judicial resources to the contested issues and is familiar with the facts of the case." *Samsung*, 386 F. Supp. 2d at 722.  This makes sense because "litigation of related claims in the same tribunal facilitates efficient, economical and expeditious pre-trial proceedings and discovery," and prevents "duplicative litigation and inconsistent results." *Id*. at 721.

  *Samsung Elecs. Co. v. Rambus, Inc.* is particularly instructive.  *Id.* at 721–22.  Cox never addresses *Samsung*'s similarity to this case and ignores that it conclusively determines the outcome here.  After Judge Payne ruled against Rambus in a separate infringement action involving the same patents and defenses, Rambus sought transfer of a second case to California, where a related suit was pending.  *Id.* at 715.  The court detailed the four-year history of the predecessor suit in EDVA and the "significant judicial resources . . . devoted to that trial and the run-up to it," all of which parallels this Court's efforts in *BMG v. Cox*.  *See id.* at 722.

> Extensive discovery was taken, a claim construction opinion was issued, summary judgment decisions were made, and a multi-day final pretrial conference was held to deal with the admissibility of exhibits and deposition testimony. The first trial lasted approximately two weeks. Thereafter, extensive post-trial briefing was conducted and post-trial decisions were made. The judgment was appealed to the United States Court of Appeals for the Federal Circuit which affirmed in part, reversed in part, and remanded for further proceedings.

*Id.* at 714.  Against that backdrop, Judge Payne denied Rambus' motion to transfer because judicial economy demanded it:

> On the unique record in this case, judicial economy weighs in favor of the venue which already has committed its time and energy to so many of the issues. It would be quite convenient for this Court to ignore all that has occurred in *Rambus v.*

> *Infineon* and then to transfer this case to the Northern District of California. But, to do so, would be to ignore the interest of justice.
> . . .
> Indeed, to transfer this case would foist onto another court a responsibility that, on this record and under the unique circumstances presented by this case, regrettably rests here. The result of transfer would be to frustrate, rather than further, the interests of justice by requiring another court to do what already has been done here.

*Id.* at 722-23.   Unlike the instant case, other compelling reasons favored transfer in *Samsung*, including a then-pending related suit and the purported inconvenience of witnesses.   Judicial economy and interests of justice heavily trumped.

Judge Payne is not alone.   Courts routinely deny transfer motions like Cox's in the interest of judicial economy.   *See Innovative Commun. Techs., Inc. v. Vivox, Inc.*, Civ. No. 2:12-cv-7, 2012 WL 4738979, at *8 (E.D. Va. Oct. 3, 2012) (denying transfer to keep cases with substantially similar patent specifications before the same court because the "the efficiency of the judicial process," "economy of judicial resources," and "the risk of inconsistent judgments all demonstrate that the interests of justice weigh heavily against transfer"); *FMC Corp. v. AMVAC Chemical Corp.*, 379 F. Supp. 2d 733, 745-46 (E.D. Pa. 2005) (denying transfer because retaining jurisdiction would serve judicial economy in light of court's recent experience with similar fact-intensive litigation); *Optical Recording Corp. v. Capitol–EMI Music, Inc.*, 803 F. Supp. 971, 974 (D. Del. 1992) (denying transfer where "[t]he Court's familiarity with the subject matter of the litigation [would] reduce the expenditure of judicial resources in the handling of this matter.").

*Samsung* is directly on point and this Court should rule likewise.   As in *Samsung*, this Court presided over the *BMG v. Cox* case for nearly four years.   It resolved countless discovery disputes. *See, e.g., BMG* ECF Nos. 50, 68, 91, 135, 138.   It issued a 70-page summary judgment opinion on nuanced issues relating to Cox's copyright abuse handling, including its ineligibility for the DMCA safe harbor defense.   Given Cox's denial of Plaintiffs' allegation that Cox is ineligible for

the DMCA safe harbor defense here, *see* Defs.' Answer ¶ 97, the presiding Court will apparently have to resolve that issue again.  This Court also resolved countless pre-trial motions and presided over a lengthy jury trial on the precise claims and factual predicates at issue here. The BMG case then continued with post-trial motions, appeal, remand and additional discovery and pre-trial proceedings.  The docket in the *BMG* case spans 1,022 separate entries—vast by any measure in civil litigation today.

Like *Samsung*, "[t]his Court already has conducted a trial on the merits," and "expended enormous judicial resources and has become quite familiar with the issues presented."  386 F. Supp. 2d at 722.  No Court is as well positioned to handle this action efficiently, economically and consistently.  The "result of transfer would be to frustrate, rather than further, the interests of justice by requiring another court to do what already has been done here."  *Id.* at 723.

### b.  Transfer would increase the risk of inconsistent adjudication.

Interests of justice favor resolving transfer motions to prevent "the possibility of inconsistent adjudications in separate courts."  *DPR Construction, Inc. v. IKEA Property, Inc.*, Civ. No. 1:05-cv-259, 2005 WL 1667778, at *5 (E.D. Va. July 6, 2005).  Transfer in this case would do precisely the opposite.  "[W]here a prior, related case may have preclusive effect on a current dispute," the prior-ruling court "is plainly in a better position to know the proper meaning and effect of its prior rulings" and "has a strong interest in ensuring that its rulings are properly interpreted."  *Palaxar Group, LLC v. Williams*, Civ. No. 3:13-cv-641, 2014 WL 2002214, at *8 (E.D. Va. May 14, 2014) (transferring in interest of justice so that transferee court could decide preclusive effect its prior rulings).

This Court's history of detailed written opinions in *BMG v. Cox* uniquely positions it to ensure the same rulings apply to the same facts to minimize inconsistency.  *See, e.g.*, *Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48, 57 (D.D.C. 2000) (granting transfer to court that handled

14

earlier, similar case because it was "better suited to determining . . . which issues and claims in the instant complaint are precluded by its decision in [the] closely-related first action against [the defendant]"); *Mt. W. Mines, Inc. v. Cleveland-Cliffs Inc.*, 2009 WL 10664229, at *3 (N.D. Ohio Feb. 13, 2009) ("[T]he District of Wyoming is in the best position to determine which claims or issues in the instant complaint are precluded by its own decision.") (internal quotations omitted); *S.E.C. v. Roberts*, 2007 WL 2007504, at *5 (D.D.C. 2007) ("If a case will involve the preclusive effect of a prior case, the interests of justice strongly support a transfer to the court that handled the prior case."); *Nolte v. BellSouth Telecomms., Inc.*, 2007 WL 2253561, at *3 (N.D. Al. 2007) ("The court finds that, because prior similar litigation has occurred and the present action turns on the preclusive effect of Judge Duffey's Order in *Nolte I,* the interests of justice would be served by transferring this case to the court that reviewed and decided *Nolte I*.").

Here, too, *Samsung v. Rambus* offers guidance and should be followed.  In *Samsung*, discussed above, Judge Payne denied transfer, in part, because the defendant was clearly trying to avoid an adverse ruling against it from an earlier, similar case in this district.  386 F. Supp. 2d at 723-25.  In denying transfer, Judge Payne explained that it was "clear that Rambus hopes to produce a result inconsistent with that rendered by this Court in the [prior] litigation by seeking to enforce in the Northern District of California patents which this Court has held are not enforceable." *Id.* at 723.

Plaintiffs will rely on the Court's summary judgment ruling that Cox is not entitled to the DMCA safe harbor from February 2012 through November 2014.  Plaintiffs intentionally pled their claims within that period and alleged its preclusive effect in their Complaint. *See* Pls.' Complaint ¶¶ 5, 7, 19.  Not only is this Court best positioned to decide its preclusive effect, but doing so will streamline this litigation to avoid wasteful re-litigation of issues already decided.

15

This further serves the interest of justice through judicial economy. Beyond formal issue preclusion, having previously ruled on countless pre-trial discovery and evidentiary issues, this Court is best equipped to assess the import of prior rulings as issues arise again here. Cox has already made clear in refusing to provide a copy of its document production from the *BMG* case that it intends to challenge discovery rulings from that case.[6] In the *BMG* case, Cox unsuccessfully sought to exclude highly probative emails showing its view on and handling of infringement notices, such as Jason Zabek's "F the DMCA!!!" email. This Court, not another, can most ably address Cox's arguments on such issues here to ensure consistency.

### c. Transfer would reward Cox's attempt to avoid bad precedent through forum manipulation.

Cox's attempt to avoid prior adverse rulings through transfer weighs against it. "The interest of justice is not served by permitting a party to circumvent the force and effect of adverse rulings in prior litigation by seeking a transfer of venue." *Samsung,* 386 F. Supp. 2d at 723-25 (denying transfer, in part, because it would "permit Rambus to succeed in a most blatant display of forum manipulation" to avoid prior adverse ruling); *see also Wireless Consumers Alliance, Inc. v. T-Mobile USA, Inc.*, 2003 WL 22387598, at *5 (N.D. Cal. 2003) ("[E]vidence of plaintiff's attempt to avoid a particular precedent from a particular judge weighs heavily" in considering a motion to transfer venue.).

Cox's silence regarding this Court's critical summary judgment ruling on its DMCA safe harbor defense is deafening. But apparently it intends to litigate that issue anew. In its Answer, Cox specifically denied Plaintiffs' allegation that Cox is ineligible for DMCA safe harbor

---

[6] *See* E-mail Exhibits to Cox's Mot. for an Extension of Time to Answer or Otherwise Respond to Pls.' Complaint, ECF No. 9-2 ("We aren't prepared to turn over our (collective) document production in the BMG case . . . . Too many issues (including relevance) that we would need to take up," sent from Cox's Counsel, Michael Elkin, to Pls.' Counsel, Matt Oppenheim, on August 10, 2018).

protection for the exact period that ruling applied in the *BMG* case.  Defs.' Answer ¶ 97.  Granting

transfer would permit Cox "to succeed in a most blatant display of forum manipulation" aimed at

avoiding a prior adverse ruling.  *See Samsung*, 386 F. Supp. 2d at 723.

> **d.   Transfer would ignore the two courts' relative docket conditions, prolong the litigation and increase costs to the parties and public.**

Though a court's docket conditions are not a dispositive factor in deciding motions to

transfer in most cases, they are a factor to be considered.  *Inline Connection Corp. v. Verizon*

*Internet Servs., Inc.*, 402 F. Supp. 2d 695, 702 (E.D. Va. 2005).  Cox's own motion shows that the

median time from filing to trial in civil cases in EDVA is 12.8 months, ***nearly half*** the median

time experienced in the Northern District of Georgia, which is 24.8 months.  Defs.' Br. 12; *see*

*also* ECF No. 24-2 (Judicial Caseload Profile).  It also shows that the district court judges in

Georgia maintain roughly twice the caseload of judges here.  *See id.*

Furthermore, since this case concerns misconduct already five-years old, unnecessary

delay in these proceedings risks loss of evidence and witnesses.  Memories fade and, as Cox notes

in its motion, several relevant witnesses from the period at issue are no longer employed by Cox.

While the parties agreed mutually through tolling agreements to delay adjudication of these claims

for a time, that time has passed and the time for efficient resolution is now.  Efficient resolution

can best occur in this Court given both the docket conditions here, the Court's reputation for

expediency, and its history in the *BMG* case.

## CONCLUSION

The object and purpose of § 1404 is to streamline litigation and reduce costs to parties and

the public.  These goals can only be served by denying Cox's motion.  The Virginia-based

misconduct at issue and interests of justice overwhelmingly call for this case to be heard in the

same court and before the same judge as the *BMG v. Cox* case, and Cox has not satisfied its burden of demonstrating the balance of factors *strongly* warrant transfer.

Dated:  October 9, 2018

Respectfully submitted,

/s/ Scott A. Zebrak
Matthew J. Oppenheim (*pro hac vice*)
Scott A. Zebrak (38729)
Jeffrey M. Gould (*pro hac vice*)
OPPENHEIM + ZEBRAK, LLP
5225 Wisconsin Avenue, NW, Suite 503
Washington, DC 20015
Tel:  202-480-2999
matt@oandzlaw.com
scott@oandzlaw.com
jeff@oandzlaw.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that on October 9, 2018, a copy of the foregoing was filed electronically with the

Clerk of Court using the ECF system, which will send notifications to ECF participants.

/s/ Scott A. Zebrak
Scott A. Zebrak (38729)
OPPENHEIM + ZEBRAK, LLP
5225 Wisconsin Avenue, NW, Suite 503
Washington, DC 20015
Tel:  202-480-2999
scott@oandzlaw.com