**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| SONY MUSIC ENTERTAINMENT, *et al*., <br><br> *Plaintiffs*, <br><br> v. <br><br> COX COMMUNICATIONS, INC., *et al*., <br><br> *Defendants*. | Case No. 1:18-cv-00950-LO-JFA |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404**

## <u>TABLE OF CONTENTS</u>

**Page(s)**

I.    Introduction ................................................................................................................ 1

II.   Argument .................................................................................................................... 3

   A.   Plaintiffs' forum selection should be afforded no deference. .............................. 3

   B.   The convenience of the parties and witnesses heavily favor transfer. ............................... 7

       1.   The convenience of Cox and party witnesses favors transfer to the Northern District of Georgia. .................................................................................................. 8

       2.   The convenience of relevant third-party witnesses also weighs in favor of a transfer. ......................................................................................................... 9

   C.   Transferring this case to the Northern District of Georgia would serve the interest of justice. ............................................................................................... 10

III.  Conclusion ................................................................................................................ 14

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Advanced Mktg. Sys., LLC v. Delhaize Am., LLC,*
  2015 WL 12806533 (E.D. Va. Jul. 31, 2015)............................................................7

*Bluestone Innovations v. LG Elecs., Inc.,*
  940 F. Supp. 2d 310 (E.D. Va. 2013) .....................................................................9

*BMG Rights Mgmt. (US) LLC v. Cox Comm'ns, Inc.,*
  199 F. Supp. 3d 958 (E.D. Va. 2018) ............................................................. *passim*

*Clayton v. Warlick,*
  232 F.2d 699 (4th Cir. 1956) .................................................................................7

*FMC Corp. v. AMVAC Chem. Corp.,*
  379 F. Supp. 2d 733 (E.D. Pa. 2005) ...................................................................11

*GTE Wireless, Inc. v Qualcomm, Inc.,*
  71 F. Supp. 2d 517 (E.D. Va. 1999) ......................................................................3

*Gulf Oil Corp. v. Gilbert,*
  330 U.S. 501 (1947)..............................................................................................14

*Ion Beam Applications S.A. v. Titan Corp.,*
  156 F. Supp. 2d 552 (E.D. Va. 2000) ...................................................................3

*Limelight Network, Inc. v. Xo Comm'ns,*
  2016 WL 6871285 (E.D. Va. 2016).......................................................................6

*Lugus IP LLC v. Volvo Car Corp.,*
  2012 WL 1715983 (E.D. Va. May 15, 2012) .........................................................7

*Lycos, Inc. v. TiVo, Inc.,*
  499 F. Supp. 2d 685 (E.D. Va. 2007) ............................................................. *passim*

*Macronix Intern. Co. v. Spansion Inc.,*
  2014 WL 934521 (E.D. Va. Mar. 10, 2014)....................................................11, 14

*Optical Recording Corp. v. Capitol–EMI Music, Inc.,*
  803 F. Supp. 971 (D. Del. 1992)..........................................................................11

*Original Creatine Patent Co. v. Met-Rx USA, Inc.,*
  387 F. Supp. 2d 564 (E.D. Va. 2005) ...........................................................4, 9, 14

ii

*Samsung Elecs. Co. v. Rambus, Inc.*,
   386 F. Supp. 2d 708 (E.D. Va. 2005) ...................................................................10, 11, 12, 14

*Soutter v. Equifax Info. Services LLC*,
   299 F.R.D. 126 (E.D. Va. 2014) ....................................................................................................5

**Statutes**

28 U.S.C. § 1404(a) ......................................................................................................1, 12, 14

Digital Millennium Copyright Act............................................................................ *passim*

**Other Authorities**

Fed. R. Evid. 602 .............................................................................................................................5

Defendants ("Cox") hereby submit this reply memorandum of law in support of their motion to transfer venue pursuant to 28 U.S.C. § 1404(a).

## I.     Introduction

Plaintiffs' justifications for filing this case in a forum that lacks any unique or meaningful ties to any of the parties or claims serve only to magnify the forum-shopping that led them to the Eastern District of Virginia.  Indeed, Plaintiffs concede that they chose this forum specifically to take advantage of this Court's ruling, in *BMG v. Cox*, that Cox is ineligible for safe harbor under the Digital Millennium Copyright Act ("DMCA") for a certain time period.  Plaintiffs suggest that Cox's motion is a "ploy" to skirt "the efficiencies and substance of [those] rulings" (Opp. at 1) by moving to transfer the case to the Northern District of Georgia, where Cox is headquartered.  But since Cox has not asserted DMCA safe harbor as an affirmative defense, Plaintiffs' hand-wringing over potential inconsistent rulings has no basis in reality.  And once that becomes clear, nothing remains of their attempts to reframe their (admitted) forum-shopping as a concern for consistency and judicial efficiency.  Cox's motion should thus be granted.

In opposing transfer, Plaintiffs—a group of 57 record companies and music publishers located primarily in California and New York—do not argue that they have any connection to this forum, and they concede that this case could have been brought in the Northern District of Georgia, where Cox is headquartered and maintains its primary operations.  Instead, they say their claims are connected to Virginia because some Cox subscribers there are alleged to be repeat infringers. But Plaintiffs fail to introduce any competent evidence that any alleged "egregious infringers" are located in Virginia, cannot rebut Cox's showing that those identified in the Complaint are located elsewhere, and do not argue that the Cox subscribers purportedly located in Virginia represent a disproportionate number of the alleged direct infringers in this case, or even that discovery will involve those alleged direct infringers.  As Plaintiffs' own Opposition makes clear, they filed in

1

this District only because the Court previously presided over *BMG v. Cox*—not because the parties or claims have a special connection to the forum.

Cox logically seeks to transfer this action to the Northern District of Georgia.  That is where nearly all of the Cox witnesses who were deposed in *BMG* on the issue of Cox's relevant systems, policies, and procedures currently work (or worked) and reside.  Plaintiffs fail to rebut Cox's showing that the relevant witnesses and evidence, and all but one of the relevant non-party witnesses, are located in that District.  Instead, they resort to misrepresenting Cox's presence in Virginia by conflating the two Cox entities, selectively quoting Cox's declaration relating to its limited operations there, and questioning whether the witnesses deposed in *BMG* are truly "material" here—despite repeatedly insisting that the issues in both cases are "virtually identical."

Plaintiffs also overstate the similarities between the two cases in terms of judicial economy. *BMG* was brought by BMG Rights Management (US), LLC and Round Hill Music and involved about 1,400 musical composition copyrights and infringement notices sent by Rightscorp.  By contrast, Plaintiffs' action involves 57 record companies and music publishers, over 10,000 alleged copyrights in various sound recordings and musical compositions, and over 200,000 alleged copyright infringement notices sent by a company called MarkMonitor.  This case will likely involve extensive chain of title and ownership issues not present in *BMG*, in addition to distinct discovery issues relating to the infringement notices and the entities who sent them.  The fact that this Court presided over *BMG* is barely relevant to Cox's motion to transfer, let alone enough to override the convenience of the parties and material witnesses located outside of this District.

In sum, this case could have been brought in the Northern District of Georgia, where Cox is headquartered and where the majority of the relevant witnesses and evidence are located.  The out-of-state Plaintiffs, who have no unique connection to this District, have not (and cannot) show

2

that they would be inconvenienced by litigating the case in Georgia rather than Virginia. Accordingly, their strategic decision to sue here is entitled to no deference. And Plaintiffs' stated concern about the potential for inconsistent rulings is predicated entirely on the false premise that Cox is asserting a DMCA safe harbor defense here—which it is not. Because the relevant factors weigh heavily in favor of a transfer, Cox respectfully requests the Court grant its Motion.

## II. Argument

### A. Plaintiffs' forum selection should be afforded no deference.

Because neither Plaintiffs nor their claims have any unique or meaningful connection to the Eastern District of Virginia, their forum selection deserves no deference. Plaintiffs do not dispute that *none* of the parties is headquartered or has its principal place of business in Virginia, and they do not assert any other connection to this District. "[W]here the plaintiff's choice of forum is a place where neither the plaintiff nor the defendant resides and where few or none of the events giving rise to the cause of action accrued, that plaintiff's choice loses its place status in the court's consideration." *Ion Beam Applications S.A. v. Titan Corp.*, 156 F. Supp. 2d 552, 563 (E.D. Va. 2000); *accord GTE Wireless, Inc. v Qualcomm, Inc.*, 71 F. Supp. 2d 517, 519 (E.D. Va. 1999).

Plaintiffs claim that "[t]his case is about Cox's decision to not terminate subscribers despite having knowledge of their repeat infringements." Opp. at 6. As Cox established in its opening brief, however, during the timeframe relevant to Plaintiffs' claims, Cox's processing of copyright notices was handled by Cox employees in Atlanta. *See* Mot. at 8-9; Declaration of Linda J. Trickey in Support of Cox's Motion ("Trickey Decl."), ¶ 8; *see also* concurrently-filed Declaration of Jennifer A. Golinveaux ("Golinveaux Decl."), Ex. A (Trial Tr. at 1805 (this Court noting that *BMG* was primarily about "what people in Atlanta were doing with the BitTorrent infringements.")). While certain steps of Cox's procedures, including customer contact relating to account termination, were handled in different places across the country (including in Hampton Roads,

3

Virginia), those teams were managed by Cox employees in Atlanta. Trickey Decl., ¶¶ 9-10. Plaintiffs fail to rebut these facts, but nevertheless claim that "[f]actually, Virginia is all over this case." Opp. at 6. Viewed in light of the evidence submitted in connection with this Motion—and even the light of Plaintiffs' own allegations—this assertion rings hollow.

First, Plaintiffs assert that Cox has significant ties to Virginia because "Cox employs approximately 2,400 employees across Virginia, where it conducts substantial business, provides internet and other services, and maintains network management operations." Opp. at 3 (citing Cox's Answer ¶¶ 13, 15). In making this generalized statement about "Cox's" operations in Virginia, however, Plaintiffs improperly conflate the two Cox defendants.[1] In any event, the question is whether CoxCom, LLC's provision of internet services to subscribers in Virginia has any unique relevance to Plaintiffs' claims in the Complaint, which alleges infringement by Cox subscribers located all over the country, and therefore does not come close to being dispositive of the issues here. *See Original Creatine Patent Co. v. Met-Rx USA, Inc.*, 387 F. Supp. 2d 564, 569 (E.D. Va. 2005) (explaining that the defendant's participation and sponsorship in local strongman competitions and its sponsorship of Virginia athletic teams were "irrelevant" to the choice of forum inquiry because they lacked any connection to the plaintiff's infringement claims). It doesn't.

Second, Plaintiffs' claim that Cox's "decision to not terminate subscribers … were made here in the Commonwealth" because "key abuse employees" reside in Virginia grossly mischaracterizes the record. Opp. at 6-7. The sole "key abuse employee" identified by Plaintiffs, Roger Vredenburg, has been retired from Cox for over two years, is the only witness from Virginia who testified at trial in *BMG*, and resides roughly 200 miles from this Court. Trickey Decl., ¶ 6.

---

[1] Furthermore, the website on which Plaintiffs rely refers only to "Cox" employees in Virginia and does not refer to specific Cox entity or entities. *See* Opp. at 3 n.1 (citing http://newsroom.cox.com/leadership-team?item=29958).

4

Indeed, in light of this inconvenience, the Court in *BMG* inquired why Vredenburg's testimony was even necessary, and whether it could be covered by senior abuse employees, such as Joseph Sikes. *See* Golinveaux Decl., Ex A (Trial Tr. at 619-20 ("[T]ell me why Vredenburg isn't repetitive and unnecessary and counter-balances the inconvenience")). Indeed, Mr. Vredenburg testified that he reported to Mr. Sikes and Mr. Zabek, who were both located at Cox's headquarters in Atlanta, regarding issues relating to copyright infringement notices, including for instruction on decisions relating to terminations. *Id*., Ex. B (Vredenburg Dep. at 42-43, 217).

Third, Plaintiffs announce that they have "geolocated 2,010 repeat infringers" during the relevant time period "with Virginia-based Cox IP addresses." Opp. at 7. The sole support for this allegation, however, is the declaration of Dan Seymour—an investigator employed by Plaintiffs' law firm. But he claims only that *Plaintiffs themselves* collected IP addresses associated with Cox subscribers, that "[a]n IP address database contemporaneous to the period of infringement was used to look up the geographic location of Cox IP addresses associated with multiple infringements of Plaintiffs' works in 2013 and 2014," and that "[o]f those, 2,010 Cox IP addresses associated with multiple infringements of Plaintiffs' works appeared to be located in Virginia." Seymour Decl. ¶ 5. Because Mr. Seymour apparently was not involved in collecting or "geolocating" these IP addresses himself, this declaration lacks any foundation or personal knowledge and should not be accorded any weight. Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."); *Soutter v. Equifax Info. Services LLC*, 299 F.R.D. 126 (E.D. Va. 2014) (FRE 602 applies to all testimony used in federal court, including those submitted by affidavit or declaration).

Even if Plaintiffs had submitted competent evidence that 2,010 alleged repeat infringers "appear to be located in Virginia"—for example, a declaration by an individual who investigated

the location of Cox subscribers or records from the database used to locate them—Plaintiffs fail to show how the location of these alleged *direct* infringers ties their claims to this forum, when they have asserted only *secondary* infringement against Cox.  As a Court in this District held in granting a motion to transfer, "the fact that Virginia's residents use the purportedly infringing products, methods, and systems avails [the plaintiff] nothing, as [it] is not suing those residents in this action.  The acts relevant to this lawsuit, even with respect to [the plaintiff's] allegations that the defendants committed acts of contributory infringement . . . are those of the defendant, not their customers and subscribers."  *Lycos, Inc. v. TiVo, Inc.*, 499 F. Supp. 2d 685, 693 (E.D. Va. 2007).  Notably, in *BMG*, no discovery was taken with respect to the direct infringers.  The case was instead focused on Cox's systems in Atlanta, as will likely be true here.  Finally, Plaintiffs do not even attempt to rebut the fact that none of the purportedly "egregious" repeat infringers alleged in the Complaint were located in Virginia.  Compl. ¶ 95; Mot. at 4; Trickey Decl. ¶ 11.

At bottom, Plaintiffs are left with a bare allegation that *three* Cox subscribers allegedly identified in multiple infringement notices to Cox were located in the Eastern District of Virginia.  *See* Compl. ¶ 17.  But in light of Plaintiffs' allegation of over 20,000 alleged infringers identified in "hundreds of thousands of notices" (*id*. ¶¶ 88, 91-92, 95), this allegation is plainly insufficient to meaningfully connect the claims to this forum.

These facts distinguish this case from *Limelight Network, Inc. v. Xo Comm'ns*, 2016 WL 6871285 (E.D. Va. 2016), where the court denied transfer because the infringements occurred in the plaintiff's chosen forum.  *See* Opp. at 7-8.  There, it was *defendants*' nationwide alleged *direct infringement*, including in this District, that tied the case to the forum.  *Limelight Network, Inc.*, 2016 WL 6871285 at *2.  Here, by contrast, while Plaintiffs allege that the direct infringement

occurred nationwide, their secondary infringement claims challenge Cox's processing of copyright notices—which occurred primarily in Atlanta.  Mot. at 8-9; Trickey Decl. ¶¶ 8-10.

In any event, it is settled that the mere existence of alleged infringers in a particular district does not require courts to defer to out-of-state Plaintiffs' chosen forum.  *See, e.g.*, *Advanced Mktg. Sys., LLC v. Delhaize Am.*, *LLC*, 2015 WL 12806533, at *3 (E.D. Va. Jul. 31, 2015) (finding that an infringement action did not bear a substantial relation to the District where Virginia residents' use of the allegedly infringing systems did not appear to be any different from the use by residents of fifteen other states).  The same is true where, as here, the facts suggest little more than forum-shopping by Plaintiffs.  *See Clayton v. Warlick*, 232 F.2d 699, 700-01 (4th Cir. 1956) (affirming transfer under § 1404(a) where the plaintiff admitted suing in the Western District of North Carolina solely to take advantage of favorable Fourth Circuit precedent); *see also Lugus IP LLC v. Volvo Car Corp.*, 2012 WL 1715983, at *5 (E.D. Va. May 15, 2012) (ordering transfer of a suit that could have been filed in any state because "the facts suggest little other than forum shopping").

In sum, Plaintiffs assert no connection whatsoever to this District, and their argument that the infringement claims against Cox are tied to Virginia both lacks any factual or legal support and is belied by Plaintiffs' own admission that they filed in this District because the Court presided over *BMG v. Cox*.  Plaintiffs' choice of forum is thus entitled no weight in assessing Cox's Motion.

**B.     The convenience of the parties and witnesses heavily favor transfer.**

Because none of the parties has a unique connection to Virginia and nearly all of the key witnesses are located in Atlanta, this factor weighs heavily in favor of transfer.  Plaintiffs contend that the convenience of the parties and witnesses does not favor transfer because Cox has not proven that the parties and witnesses would suffer "hardship" by having to travel here.  Opp. at 8. But this is both factually incorrect and misstates what the case law requires.  In the Eastern District of Virginia, a party asserting witness inconvenience need only proffer "sufficient details regarding

7

the witness and his or her testimony in order to allow the court to assess both the materiality of the evidence that the witness will offer and the inconvenience that will result from declining to transfer the action." *Lycos, Inc.*, 499 F. Supp. 2d at 693 (citing *Samsung Elecs. Co. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 718 (E.D. Va. 2005)).  By identifying ten relevant witnesses, the basis of their testimony, and their current locations, Cox has met its burden.

### 1.     The convenience of Cox and party witnesses favors transfer to the Northern District of Georgia.

Plaintiffs do not meaningfully dispute that nearly all of the Cox witnesses who are likely to be relevant in this litigation are located in Atlanta, and, at all relevant times, managed others scattered across the country—including in Omaha, Nebraska and Las Vegas, Nevada.  Mot. at 8-9.  Indeed, aware that those details belie their narrative that "[f]actually, Virginia is all over this case" (Opp. at 6), Plaintiffs simply omit all U.S. locations other than Hampton Roads in describing Cox's operations.  *See* Opp. at 8-9.  Further, they claim that the Court cannot determine whether the Cox witnesses who testified in *BMG* are central to their claims, while simultaneously arguing that the claims, issues, and time period at issue are "virtually identical" to those in *BMG*.  *See id*. at 1, 9.  Plaintiffs' inconsistencies further demonstrate that their only goal is to keep this case before the Court.

Cox is headquartered in Atlanta, where substantially all of the material witnesses work and reside.  Mot. at 7.  Copyright notices were handled by a team of Cox employees in Atlanta, Georgia using a system that was designed, located, and maintained in Atlanta.  *Id*. at 8; Trickey Decl., ¶ 8. Cox's larger Customer Safety Team, responsible for all customer safety-related issues, has been located at Cox's headquarters in Atlanta since at least February 2013.  *Id*.  Cox's customer care employees and contractors that responded to calls from residential subscribers regarding DMCA complaints were located around the country but managed by Cox employees in Atlanta.  *Id*., ¶ 9.

8

It would be far more convenient—and much less costly—for both Cox and its party witnesses to litigate in Atlanta rather than here.  And contrary to Plaintiffs' assertions, "[m]aking attendance more convenient or affordable for a willing witness" weighs in favor of transfer.  *Bluestone Innovations v. LG Elecs., Inc.*, 940 F. Supp. 2d 310, 317 (E.D. Va. 2013) (citing *Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 635-36 (E.D. Va. 2003); *see also Lycos, Inc.*, 499 F. Supp. 2d at 694 (finding convenience of transferor forum for party witnesses weighs in favor of transfer).

For their part, Plaintiffs do not claim that they would be inconvenienced by a transfer to Georgia.  Not a single one of the 57 Plaintiffs is located in Virginia, and none of these out-of-state plaintiffs has argued that it would otherwise be more convenient for it to litigate here as opposed to the Northern District of Georgia.  Apparently looking for any excuse to remain before this Court, Plaintiffs note that "lead counsel for both parties are based in Washington, D.C. and are members of the E.D. Virginia bar."  Opp. at 9.  But it is well settled that "no consideration is given to the convenience of counsel."  *Original Creatine Patent Co.*, 387 F. Supp. 2d at 569.

### 2.    The convenience of relevant third-party witnesses also weighs in favor of a transfer.

The fact that all but one of the likely third-party witnesses are located in Georgia further supports transferring this case to the Northern District of Georgia.  Former Cox employees Randy Cadenhead (former Privacy Counsel and Cox's designee on topics including Cox's repeat infringer policy and employee training on infringement notices), Joe Sikes (former Cox Senior Lead Abuse Engineer), and Jason Zabek (former Cox Manager of Customer Abuse Operations), all testified in *BMG* and reside there.  Trickey Decl. ¶ 4.  By contrast, as discussed above, the only third-party witness from Virginia to testify in *BMG* was Roger Vredenburg—and this Court questioned the necessity of his testimony.  *See Bluestone Innovations*, 940 F. Supp. 2d at 317 (noting that greater weight should be accorded to the inconvenience of witnesses whose testimony is central to the

claim).  While it is too early in this litigation to determine whether the Atlanta-based third-party witnesses would be able and willing to testify in Virginia, courts have given consideration to transferring a case where non-parties are located in, or are closer to, the transferor forum even in the absence of this evidence.  *See*, *e.g*, *Lycos, Inc.*, 499 F. Supp. 2d at 694 (attributing weight in favor of transfer where forum would be more convenient for non-party witness, and the parties' access to him, even where he agreed to testify in Virginia).

      **C.**    **Transferring this case to the Northern District of Georgia would serve the interest of justice.**

      Citing *Samsung Elecs. Co. v. Rambus, Inc.*, Plaintiffs claim that "[t]he interest of justice may be decisive even though the convenience of the parties and witnesses point in a different direction."  Opp. at 11 (quoting 386 F. Supp. 2d at 715).  But by its own description, *Samsung* is a "rare case[]," *id.* at 723, and it is plainly inapposite here.

      In denying Rambus' motion to transfer venue, the court in *Samsung* relied on the fact that Rambus had affirmatively availed itself of the Eastern District of Virginia as a litigation venue on related issues on multiple occasions.  *Id*. at 711.  For example, Rambus created a patent licensing and litigation strategy, identifying this District as one of three preferable venues to conduct litigation against DRAM manufacturers.  *Id*.  Rambus then repeatedly initiated patent infringement actions against various targets in those forums, including in this District.  *See id*.  In one of Rambus' patent infringement cases in this District, the court found Rambus' patents unenforceable and dismissed the action on unclean hands and spoliation grounds.  *Id*. at 714-15.  Rambus later sought to renegotiate a licensing agreement with Samsung over the same patents to avoid another lawsuit in this District and to assure that Rambus controlled "the venue in litigating this matter."  *Id*. at 713.  When those negotiations failed, Rambus and Samsung filed competing patent

infringement lawsuits—Rambus' in the Northern District of California and Samsung's in the Eastern District of Virginia. *Id*.

In assessing Rambus' motion to transfer the case to California, the court noted that it was already familiar with the particular patents at issue and the underlying technology, in addition to Rambus' litigation and licensing strategy. *Id*. at 722-23. The court was also familiar with the serious unclean hands and spoliation issues that had led to the prior judgment against Rambus, as well as an order piercing the attorney-client privilege and attorney work product doctrine, which would undoubtedly be at issue in Rambus' litigation with Samsung. *Id*. The court found that, on those particular facts, the interest of justice weighed against transfer. *Id*. at 714, 723. The court also noted that the interests of justice would not be served by allowing Rambus to forum shop, particularly after it had affirmatively identified this District as one of its "preferred venues" to litigate its patents and had in fact filed several infringement lawsuits there. *Id*.

The facts here simply do not resemble the facts in *Samsung*. Unlike Rambus, Cox never undertook a coordinated strategy to bring serial copyright litigations in the Eastern District of Virginia. Indeed, it is the *defendant* both here and in *BMG*. This action is further distinguishable from *Samsung* (and Plaintiffs' other out-of-circuit cases) that involve the "first-to-file" rule in patent litigation, as the issue here is not whether a declaratory judgment plaintiff's first-filed action was anticipatory or the product of forum-shopping. *See Samsung*, 386 F. Supp. 2d at 724; *Optical Recording Corp. v. Capitol–EMI Music, Inc.*, 803 F. Supp. 971, 974 (D. Del. 1992); *FMC Corp. v. AMVAC Chem. Corp.*, 379 F. Supp. 2d 733, 737-78 (E.D. Pa. 2005). Given the clear differences in this action from *Samsung*, the mere fact that Cox previously defended the *BMG* case before this Court is not dispositive of the "interest of justice" factor—let alone enough to outweigh the other factors, which favor transfer. *See, e.g.*, *Macronix Intern. Co. v. Spansion Inc.*, 2014 WL 934521

at *8 (E.D. Va. Mar. 10, 2014) (transferring litigation to the Northern District of California despite previously handling similar suit where the case had only a tenuous connection to the Eastern District of Virginia and the jury would be able to hear in-person testimony from important witnesses in the transferee forum).

For the same reasons, Plaintiffs' contention that this Court's handling of the *BMG* litigation will necessarily result in judicial efficiencies is overstated. Typically, the "interest of justice" factor tips toward transfer when "two cases involving precisely the same issues are simultaneously pending in different District Courts." *See Samsung*, 386 F. Supp. 2d at 721 (quoting *Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960)); *id.* ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent."). That is not remotely the situation here.

This case will require the Court to determine significant new issues not present in *BMG*. This case involves 57 new plaintiffs asserting infringement of over 10,000 works that were not at issue in *BMG*, stemming from over 200,000 infringement notices that have not been reviewed by this Court. Further, the copyright notices at issue in *BMG* were sent by Rightscorp, whereas it is Cox's understanding that notices here were sent by a company called MarkMonitor. *See* Cox's Counterclaims, ¶ 64 ("[t]he Record Company Plaintiffs, through their agent the RIAA, engaged the services of rights enforcement organization MarkMonitor to monitor and detect infringing activity and send notices alleging copyright infringement to Cox"); *cf. BMG Rights Mgmt. (US) LLC v. Cox Comm'ns, Inc*., 199 F. Supp. 3d 958, 968 (E.D. Va. 2018) (explaining that Rightscorp sent 1.8 million notices to Cox on behalf of BMG). And Plaintiffs' claim that this Court's resolution of "countless discovery disputes" in *BMG* will create efficiencies here, Opp. at 13,

12

ignores the fact that these discovery rulings will have no relevance to the significant chain of title and ownership issues that will likely arise with the 10,000 new works put at issue by Plaintiffs. Finally, Plaintiffs' similar claim that the Court handled "countless pre-trial motions" in *BMG* likewise discounts the effect that 10,000 new works, 200,000 new infringement notices, and new third-party discovery will have on the Court's prior evidentiary rulings.

Plaintiffs' judicial efficiency argument rests on the false premise that transferring this action to the Northern District of Georgia amplifies a risk of conflicting or inconsistent rulings. *See* Opp. at 14-16. Specifically, Plaintiffs assume, contrary to Cox's representations in its Answer, that Cox will attempt to relitigate its entitlement to DMCA safe harbor for the time period at issue in the Complaint. *Id*. at 15 ("Plaintiffs intentionally pled their claims within [the period of time that the Court found that Cox was not entitled to safe harbor] and alleged its preclusive effect in their Complaint"). But Cox did not assert DMCA safe harbor as an affirmative defense, *see* ECF No. 21, nor does it seek to relitigate the safe harbor issue for the time period identified in the Court's summary judgment ruling in *BMG*. Accordingly, there is no risk of inconsistent rulings on Plaintiffs' claims, and Plaintiffs' contentions to the contrary are nothing but straw man arguments intended to distract from the fact that this case is far more connected to the Northern District of Georgia than this District.[2]

---

[2] Plaintiffs point to Cox's denial of a complex, multi-fact allegation as evidence that Cox intends to relitigate the safe harbor issue. *See* Opp. at 16-17 (citing Answer ¶ 97, in which Cox denies that "[a]lthough Cox purported to create a repeat infringer policy, as this Court already found, it never implemented it, and thus it is ineligible for the DMCA's safe harbor. Cox's Copyright Policy provides that upon receipt of copyright infringement complaints regarding subscribers, 'Cox uses a graduated approach of increasing severity to notify subscribers, from in-browser and email notifications, to the suspension of Internet service for repeat or severe cases.'"). Cox's denial of this allegation—which includes Plaintiffs' self-serving characterization of the Court's summary judgment opinion and a quote that does not appear to be included in Cox's Copyright Policy—is not evidence that it intends to relitigate this Court's safe harbor ruling. Cox has not denied that

Plaintiffs' focus on "judicial efficiency" also ignores the other factors this Court should consider in evaluating the "interests of justice," including the burden imposed on the forum's citizens from jury duty in a case that bears no relation to the forum.  *See Lycos, Inc.*, 499 F. Supp. 2d at 695.  Indeed, the Supreme Court has determined that "[j]ury duty is a burden that ought not be imposed upon the people of a community which has no relation to the litigation." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947); *see also Original Creatine Patent Co.*, 387 F. Supp. at 572 ("In a case brought by a foreign plaintiff against an out-of-state defendant, there is little local interest in having the matter decided in Virginia.").  Plaintiffs have made clear that their primary interest in litigating in this forum is to take advantage of favorable precedent.  Opp. at 15.  The "interests of justice" are not served by allowing 57 plaintiffs with no connection to this District "to succeed in a most blatant display of forum manipulation," as it only encourages others to do the same.  *See Samsung*, 386 F. Supp. 2d at 723; *Macronix*, 2014 WL 934521, at *7 ("systematic integrity" in the context of § 1404(a) "accounts for a party's 'attempt to game the federal courts through forum manipulation.'").

## III.   Conclusion

Plaintiffs have made no showing that their selection of the Eastern District of Virginia is anything more than forum-shopping that disserves the interests of justice, and their stated concerns about potential inconsistent rulings resulting from a transfer are not based on any facts in the record.  Because the balance of the relevant factors weighs heavily in favor of granting Cox's Motion, Cox respectfully request that the Court transfer this action to the Northern District of Georgia pursuant to 28 U.S.C. § 1404.

---

this Court found it ineligible for safe harbor for a particular time period, and did not assert DMCA safe harbor as an affirmative defense.

14

Dated: October 15, 2018

Respectfully submitted,

/s/ Thomas M. Buchanan
Thomas M. Buchanan (VSB No. 21530)
Winston & Strawn LLP
1700 K Street, NW
Washington, DC 20006-3817
Tel: (202) 282-5787
Fax: (202) 282-5100
Email: tbuchana@winston.com

*Attorney for Cox Communications, Inc.
and CoxCom, LLC*

*Of Counsel for Defendants*

Michael S. Elkin (*pro hac vice*)
Thomas Patrick Lane (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Telephone:  (212) 294-6700
Facsimile:   (212) 294-4700
Email:  melkin@winston.com
Email:  tlane@winston.com

Jennifer A. Golinveaux (*pro hac vice*)
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA  94111-5840
Telephone:  (415) 591-1000
Facsimile:   (415) 591-1400
Email:  jgolinveaux@winston.com

Diana Hughes Leiden (*pro hac vice*)
WINSTON & STRAWN LLP
333 S. Grand Avenue, Suite 3800
Los Angeles, CA 90071
Telephone:  (213) 615-1700
Facsimile:   (213) 615-1750
Email:  dhleiden@winston.com

**CERTIFICATE OF SERVICE**

I certify that on October 15, 2018, a copy of the foregoing DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404 was filed electronically with the Clerk of Court using the ECF system which will send notifications to ECF participants.

/s/ Thomas M. Buchanan
Thomas M. Buchanan (VSB No. 21530)
1700 K Street, NW
Washington, DC 20006-3817
Tel: (202) 282-5787
Fax: (202) 282-5100
Email: tbuchana@winston.com

*Attorney for Cox Communications, Inc.*
*and CoxCom, LLC*