# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| SONY MUSIC ENTERTAINMENT, ARISTA MUSIC, ARISTA RECORDS, LLC, LAFACE RECORDS LLC, PROVIDENT LABEL GROUP, LLC, SONY MUSIC ENTERTAINMENT US LATIN, VOLCANO ENTERTAINMENT III, LLC, ZOMBA RECORDINGS LLC, SONY/ATV MUSIC PUBLISHING LLC, EMI AL GALLICO MUSIC CORP., EMI ALGEE MUSIC CORP., EMI APRIL MUSIC INC., EMI BLACKWOOD MUSIC INC., COLGEMS-EMI MUSIC INC., EMI CONSORTIUM MUSIC PUBLISHING INC. D/B/A EMI FULL KEEL MUSIC, EMI CONSORTIUM SONGS, INC., INDIVIDUALLY AND D/B/A EMI LONGITUDE MUSIC, EMI FEIST CATALOG INC., EMI MILLER CATALOG INC., EMI MILLS MUSIC, INC., EMI UNART CATALOG INC., EMI U CATALOG INC., JOBETE MUSIC CO. INC., STONE AGATE MUSIC, SCREEN GEMS-EMI MUSIC INC., STONE DIAMOND MUSIC CORP., ATLANTIC RECORDING CORPORATION, BAD BOY RECORDS LLC, ELEKTRA ENTERTAINMENT GROUP INC., FUELED BY RAMEN LLC, NONESUCH RECORDS INC., ROADRUNNER RECORDS, INC., WARNER BROS. RECORDS INC., WARNER/CHAPPELL MUSIC, INC., WARNER-TAMERLANE PUBLISHING CORP., WB MUSIC CORP., W.B.M. MUSIC CORP., UNICHAPPELL MUSIC INC., RIGHTSONG MUSIC INC., COTILLION MUSIC, INC., INTERSONG U.S.A., INC., UMG RECORDINGS, INC., CAPITOL RECORDS, LLC, UNIVERAL MUSIC CORP., UNIVERSAL MUSIC – MGB NA LLC, UNIVERSAL MUSIC PUBLISHING INC., UNIVERSAL MUSIC PUBLISHING AB, UNIVERSAL MUSIC PUBLISHING LIMITED, UNIVERSAL MUSIC PUBLISHING MGB LIMITED., UNIVERSAL MUSIC – Z TUNES LLC, UNIVERSAL/ISLAND MUSIC LIMITED, UNIVERSAL/MCA MUSIC PUBLISHING PTY. LIMITED, UNIVERSAL – POLYGRAM INTERNATIONAL TUNES, INC., UNIVERSAL – SONGS OF POLYGRAM INTERNATIONAL, | Case No. 1:18-cv-00950-LO-JFA<br><br>**COX'S OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS** |

INC., UNIVERSAL POLYGRAM
INTERNATIONAL PUBLISHING, INC., MUSIC
CORPORATION OF AMERICA, INC. D/B/A
UNIVERSAL MUSIC CORP., POLYGRAM
PUBLISHING, INC., RONDOR MUSIC
INTERNATIONAL, INC., AND SONGS OF
UNIVERSAL, INC.,

        Plaintiffs,

  v.

COX COMMUNICATIONS, INC. AND
COXCOM, LLC.

        Defendants.

I.      **INTRODUCTION**

In July 2018, Plaintiffs sued Cox, asserting claims of contributory copyright infringement and vicarious liability and seeking to hold Cox liable for alleged copyright infringement committed by Cox's subscribers. ECF 1 (Compl.).  Plaintiffs expressly sought relief only for "claims of infringement that accrued from February 2013 through November 2014."  Compl. ¶ 10.[1]  In September, Cox timely answered and filed declaratory relief Counterclaims.  And earlier this month, counsel met and conferred concerning Plaintiffs' planned motion to strike the Counterclaims as redundant. ECF 33 (Mot.) at 11.

During the meet-and-confer, Cox put Plaintiffs on notice that the Counterclaims were not "mirror images" of the affirmative claims, as the Counterclaims were not limited to the same 2013-2014 Period of Plaintiffs' claims.  *Id.*  Four days later, Plaintiffs filed the instant motion, asking the Court to either: (a) decline to exercise its discretionary jurisdiction over the Counterclaims under the Declaratory Judgment Act; (b) dismiss the Counterclaims under Rule 12(b)(6) for failure to state a claim; or (c) strike the Counterclaims.

Plaintiffs seek dismissal on three principal grounds, none of which withstands scrutiny.

*First*, Plaintiffs argue that Cox's Counterclaims are redundant, because they are "mirror images" of Plaintiffs' affirmative claims.  As discussed below, Plaintiffs' are wrong: Plaintiffs' affirmative claims are expressly limited to the February 2013-November 2014 Period, but Cox seeks a declaratory judgment of no liability from February 2013 through August 2018, the date when Plaintiffs filed their Complaint (the "2014-2018 Period").  Applying misguided statutory interpretation principles to Cox's pleading (Mot. 11), Plaintiffs insist that Cox's Counterclaims "really" cover only the 2013-2014 Period.  But this argument requires Plaintiffs to ignore both the plain language of the Counterclaims, and the undisputed fact that Plaintiffs are on notice of the Counterclaims' asserted scope.

---

[1] The period from February 2013 through November 2014 for which Plaintiffs seek relief is referred to herein as the "2013-2014 Period."

*Second*, Plaintiffs argue that Cox's Counterclaims are "redundant to its defenses."  This argument fails for the same reason as the first: Cox's affirmative *defenses* are addressed to Plaintiffs' affirmative *claims*, and thus necessarily subject to the same time limitation.  Cox's Counterclaims, by contrast, are not subject to the same time limitation, are thus are plainly not "redundant."

*Third*, Plaintiffs argue that Cox's Counterclaims are not based on a "case or controversy," since Plaintiffs "have never threatened or filed any claims beyond" the 2013-2014 Period.  Further, Plaintiffs "represent" in their motion papers that they will not pursue copyright infringement claims against Cox, for infringements of Plaintiffs' works, "arising from activities that took place through Cox's network between November 27, 2014 and the filing of the Complaint."  Mot. 12.  But under the Supreme Court's *Medimmune* standard, which supplanted the older "reasonable apprehension of suit" test, a counterclaimant need only show that, under "all the circumstances" of the case, "the facts alleged … show that there is a substantial controversy" that is definite, and permits an immediate and definitive determination of the parties' legal rights in an adversarial proceeding.  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 771 (2007); *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 241 (1937).  A consideration of "all the circumstances" here supports the Court's exercise of jurisdiction over Cox's Counterclaims.

It is plain on the face of Cox's Counterclaims that they go beyond Plaintiffs' claims and Cox's defenses: Plaintiffs' arguments to the contrary are unpersuasive.  If there were any lingering doubt that Cox's Counterclaims cover the entirety of both the 2013-2014 Period *and* the 2014-2018 Period, it would be dispelled by Plaintiffs' attempt to disclaim any present intent to pursue copyright claims against Cox for the years between 2014 and 2018—which would not be necessary if Plaintiffs' interpretation of the Counterclaims were correct.

Plaintiffs' statement to that effect, however, is a "bare promise," unsupported by any consideration; it cannot strip the Court of subject matter jurisdiction to hear Cox's Counterclaims, and is insufficient to moot the relief that Cox seeks.  Given the scope of

Plaintiffs' claims against Cox (for which Plaintiffs seek well over 1.6 *billion* dollars[2]), Cox is fully entitled to seek resolution of the potential claims against it for the *entire* relevant time, not the slice of it that Plaintiffs have opportunistically chosen. Moreover, as many courts have recognized, it is often difficult to determine conclusively whether a declaratory judgment counterclaim really is redundant, particularly early on in litigation. When in doubt, therefore, the safer course for the court to follow is to deny a request to dismiss a counterclaim for declaratory relief. Particularly at this early stage of the case, the Court should decline to dismiss Cox's Counterclaims.

## II.     LEGAL STANDARD

A court may exercise jurisdiction over a declaratory judgment action if it concerns a dispute that is "definite and concrete, touching the legal relations of parties having adverse legal interests." *MedImmune*, 549 U.S. at 127 (citation omitted). The dispute must "be real and substantial and admit of specific relief through a decree of a conclusive character." *Id.* "Where there is such a concrete case admitting of an immediate and definitive determination of the legal rights of the parties in an adversary proceeding upon the facts alleged, the judicial function may be appropriately exercised." *Aetna Life Ins*, 300 U.S. at 241. A counterclaimant need only show that "under all the circumstances" of the case, "the facts alleged … show that there is [such a] a substantial controversy." *MedImmune*, 549 U.S. at 771.

"[A] district court should normally entertain a declaratory judgment action when it finds that the declaratory relief sought: (1) will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 422 (4th Cir. 1998) (citations and quotation marks omitted).

---

[2] Plaintiffs seek the maximum statutory damages of $150,000 per work infringed, and allege at least 10,729 works, for a maximum potential damages award of $1,609,350,000.

All of the *MedImmune* requirements and *Ind-Com* factors favor preserving Cox's counterclaims here. Cox's dispute with Plaintiffs is clearly defined and concrete; Plaintiffs' legal interests are plainly adverse to Cox's; and the dispute can be resolved through a "decree of a conclusive character," namely a finding that Cox is not liable for infringement of Plaintiffs' works during the period from February 2013 through August 2018.[3] Further, a ruling on Cox's Counterclaims will serve the useful purpose and afford the relief contemplated by the Fourth Circuit's rule in *Ind-Com*.

## III. ARGUMENT

### A. Plaintiffs' bare promise not to sue does not divest the Court of subject matter jurisdiction over Cox's Counterclaims [4]

Hoping to circumvent Cox's Counterclaims, Plaintiffs state that they "are … not trying to leave open the possibility of a second lawsuit for a later period," and "represent that, in this litigation or otherwise, they will not pursue claims against Cox for copyright infringement of Plaintiffs' works, arising from activities that took place through Cox's network between November 27, 2014 and the filing of the Complaint." Mot. 12. But Plaintiffs' bare promise not to sue is unsupported by consideration, and is therefore neither a valid covenant not to sue nor a valid release of claims, since both types of agreement must satisfy the contract law. *Burroughs v. Scottmadden, Inc.*, 2009 U.S. Dist. LEXIS 132550, at *14-15 (E.D.N.C. Apr. 9, 2009) ("A

---

[3] Plaintiffs' argument that a declaratory judgment action is unavailable here because "the questionable conduct has already occurred" (Mot. 9) misconstrues the Declaratory Judgment Act and misstates the law. Plaintiffs' reliance on *Tapia v. U.S. Bank, N.A.* is misplaced: that case involved an attempt to use a declaratory judgment action to void a property foreclosure that had already occurred—which was a situation that a declaratory judgment could not redress. 718 F. Supp. 2d 689, 695-96 (E.D. Va. 2010) ("a declaratory action cannot be used to *redress* alleged past wrongs") (emphasis added). That is not the case here, where the subject matter of Cox's declaratory judgment action has not yet been resolved, and Cox seeks not "redress" for past wrongs, but a declaration that there *have been no* "past wrongs." *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 n.7 (2007) (noting that it is simply incorrect to believe that "the declaratory judgment procedure cannot be used to obtain advanced rulings on matters that would be addressed in a future case of actual controversy.").

[4] There is no dispute that the Court has subject matter over Cox's Counterclaims at least to the extent they cover the 2013-2014 Period. *See* Mot. 12.

release of liability, of course, must be accompanied by some sort of valuable consideration in order to be enforceable."); *Wiggins v. Hitchens*, 853 F. Supp. 505, 514 (D. D.C. 1994) (noting that a covenant not to sue is a contract under which one party promises never to sue another party or third person to enforce a claim; like any other contract it must be supported by consideration).

That is particularly true in Virginia, where state statutory law requires a writing for a release or covenant not to sue, so as to "ensure[] that the parties thereto understand who is being released *in return for what consideration*." Va. Code Ann. § 8.01-35.1 (emphasis added). Plaintiffs' assurance is not supported by consideration. Nor does Plaintiffs' unilateral statement meet the other requirements of a valid and binding contract, such as offer, acceptance, mutual assent, and intent to be bound.[5] Moreover, even if *this* Court would hold Plaintiffs to their promise—and it should—there is no guarantee that other courts would do so. *See New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) ("judicial estoppel is an equitable doctrine invoked by a court at its discretion") (internal quotation marks and citation omitted); *Nat'l Union Fire Ins. Co. of Pittsburgh v. Manufacturers & Traders Tr. Co.*, 137 F. App'x 529, 530 (4th Cir. 2005) ("judicial estoppel … falls within the district court's discretion").

Moreover, it is simply not true that a promise such as Plaintiffs' is *per se* sufficient to "moot" any claim or controversy between the parties. Rather, "[w]hether a covenant not to sue will divest the trial court of jurisdiction depends on what is covered by the covenant." *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 556 F.3d 1294, 1297 (Fed. Cir. 2009). Courts frequently decline to credit bare promises not to sue. *See, e.g., SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1382–83 (Fed. Cir. 2007) (vacating dismissal of a declaratory judgment action, "declin[ing] to hold that [company's President]'s statement that ST

---

[5] In an effort to resolve this motion, Cox proposed that Plaintiffs formalize their agreement not to sue on any claims for the 2014-2018 Period in a stipulation to be filed with the Court. The parties are still discussing the terms of such a stipulation, but to date have been unable to reach agreement. If the parties reach an agreement on a stipulation that moots Plaintiffs' motion, they will promptly advise the Court.

5

would not sue SanDisk eliminates the justiciable controversy created by ST's actions."). So too here, the Court should decline to dismiss Cox's Counterclaims.

Plaintiffs' "bare promise" is insufficient for the additional reason that it does not purport to bind co-owners of Plaintiffs' alleged works who might also bring copyright infringement claims against Cox based on Plaintiffs' works. Notably, while the Complaint alleges that Plaintiffs "own or control" *some* "exclusive rights to … copyrights," Compl. ¶ 1, it does not foreclose the possibility that such rights may also be co-owned by third parties. *See Davis v. Blige*, 505 F. 3d 90, 99 (2d Cir. 2007) ("The right to prosecute an accrued cause of action for infringement is … an incident of copyright ownership… that may be exercised independently of co-owners"). Absent a judgment on the merits, any owner or co-owner of such rights could bring suit on the same works, in this or some other forum, notwithstanding Plaintiffs' promise not to sue. But a decision on the merits that Cox does not infringe the works alleged would likely preclude third party co-owners from bringing the same claims, under the doctrines of collateral estoppel or *res judicata*.

> **B. Cox's Counterclaims are not "redundant" "mirror images" of Plaintiffs' claims or Cox's defenses**
>
> **1. Plaintiffs' argument that the defined term "Relevant Time Period" limits Cox's Counterclaims is misleading and lacks merit**

Plaintiffs' argument that Cox's Counterclaims are "redundant, mirror images of Plaintiffs' affirmative claims" does not withstand even cursory scrutiny, since there is nothing in Cox's Counterclaims that limits them to the 2013-2014 Period of Plaintiffs' claims. Plaintiffs' argument that the Counterclaims are "based on the same conduct" and "present the same legal questions" as Plaintiffs' claims, or that the claims and Counterclaims use similar language, ignores the fundamental fact that Plaintiffs' claims are *expressly* time-limited, and Cox's Counterclaims are *not*.

Desperate to evade the plain meaning of the Counterclaims, Plaintiffs attempt to construct an argument that because Cox used a single defined term (the "Relevant Time Period")

in a handful of specific factual allegations, that necessarily limits *all* of Cox's allegations, *and* its claims for relief, to *only* that time period. But this is a frivolous argument. The defined term appears in just a handful of the 112 paragraphs[6] in Cox's Counterclaims, and in each instance it plainly refers to the time period relevant to *Plaintiffs'* claims. Cox uses the term to allege facts relevant to Plaintiffs' knowledge and conduct *during that period*. *See* ECF 21, Counterclaims at ¶ 27 (defining the term as the period for which "Plaintiffs seek relief" "[i]n this case"). Cox used this defined term nowhere outside of those nine paragraphs—not in any of its other factual allegations, and not in its pleas for relief. Plaintiffs' argument that "sophisticated litigators" would have "identif[ied] a broader time period … [if] they wanted to" is absurd, and backwards. Cox identified a *narrower* time when it wanted to—and did *not* identify a narrower time when it didn't.[7] Accordingly, nothing about the defined term, or the way Cox has used it, in any way limits Cox's other allegations that do *not* include that defined term.

Plaintiffs' argument that Cox's Counterclaims are solely "based on Cox's receipt and handling of copyright infringement notices received from Plaintiffs from February 2013 through November 2014," Mot. 3, is simply incorrect. Because Cox's Counterclaims lack the express time limitation that governs Plaintiffs' claims, there is no basis to read a similar limitation into the Counterclaims. Plaintiffs' argument that the claims and Counterclaims "overlap" to some extent is irrelevant to this issue, since the time period covered by Cox's Counterclaim allegations is different—and indeed covers nearly four more years. And a plain-English reading compels the conclusion that the Counterclaims are *not* so limited. *See, e.g.,* ECF 21 at 57-59 (Counterclaims) at ¶ 97-102 ("Cox **has not** materially contributed…"); ¶ 108 ("Cox did not, **and does not**, have a direct financial interest in infringement…"); ¶ 109 ("Cox did not, **and does not**, receive a direct financial benefit…). (emphases added).

---

[6] The term "Relevant Time Period" is defined in Counterclaims ¶ 27, and used in ¶¶ 29, 39, 40, 52, 55, 56, 58, and 59. ECF 21.

[7] *See City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 653 F. Supp. 2d 669, 672 (N.D. Tex. 2009), *aff'd*, 632 F.3d 148 (5th Cir. 2010) (noting that "when a term is not defined, it is given its ordinary meaning," and citing cases).

Plaintiffs' application of irrelevant canons of statutory construction to Cox's pleading ignores the very purpose of pleading under the Federal Rules. It is hornbook law, and "the case law makes very clear, [that] the district court is obligated to make a determined effort to understand what the pleader is attempting to set forth and to construe the pleading in his or her favor, whenever the interest of justice so requires." 5 Wright & Miller, Fed. Prac. & Proc. Civ. § 1286 (3d ed.) (Construction of pleadings) (collecting cases). "Pleadings must be construed so as to do justice," Fed. R. Civ. P. 8(e), and accordingly "it has long been established that language in pleading must be given its reasonable and ordinary meaning and import." *In re Cole*, 144 B.R. 752, 754 (Bankr. N.D. Ohio 1992).[8]

Finally, even if Plaintiffs' hyper-technical argument had any merit as a matter of textual interpretation—and it does not—there can be no dispute *now* that Plaintiffs are on notice of the factual basis, nature, and temporal scope of Cox's Counterclaims. Indeed, Plaintiffs were well aware of the scope of Cox's Counterclaims at least four days before they filed the instant motion. ECF 33 at 11 ("Cox's counsel stated in a meet-and-confer on October 11 that the counterclaims … seek broader declarations that Cox did not infringe Plaintiffs' works-in-suit at any time.").

Even if the Court were to decide that Plaintiffs' bare promise not to sue strips the Court of subject-matter jurisdiction over the Counterclaims for the 2014-2018 Period—although, as discussed above, it does not—that would not affect the Counterclaims' continued viability for the 2013-2014 Period. At a minimum, therefore, the Court should not dismiss the Counterclaims as to that time period. And in light of the extraordinary high stakes of this litigation, in which Plaintiffs seek more than $1.6 *billion* in statutory damages, the appropriate response if the Court finds otherwise would be to allow Cox leave to amend, not to dismiss with prejudice.

---

[8] S*ee also, e.g., Olson v. Miller*, 263 F.2d 738, 740 (D.C. Cir. 1959) ("We must remember these are pleadings, not evidence, and by the usual rules of construing pleadings we feel constrained to hold this is sufficient to put the question in issue, even if not artful in a technical sense."); *Lucid v. E.I. Du Pont De Nemours Powder Co.*, 199 F. 377, 381 (9th Cir. 1912) (court "should make every reasonable intendment, and read and apply the terms in their natural and usual sense, and sustain the pleading, if possible."); *Howell v. Moore*, 2017 WL 9478511, at *8 (E.D. Va. Aug. 24, 2017), *report and recommendation adopted*, 2017 WL 4337102 (E.D. Va. Sept. 30, 2017) (denying motion to dismiss complaint, noting the "present notice purposes" of pleading and holding that allegations "satisfie[d] the 'liberal' pleading requirements of Rule 8 at this stage in the litigation").

### 2. Cox's Counterclaims seek different relief that does not mirror the relief Plaintiffs seek

Courts have declined to dismiss counterclaims where, as here, there is "a disparity of remedies" between claims and counterclaims. For example, in *The Biltmore Co. v. Nu U, Inc.*, the court found the Defendant's declaratory judgment counterclaim "[was] not entirely duplicative or redundant of the Plaintiff's infringement claim." 2016 WL 7494474 (W.D.N.C. Dec. 30, 2016). "If the Defendant prevail[ed] on [Plaintiffs'] claims, the Court would enter a judgment of dismissal of the Plaintiff's action for infringement." *Id.* In contrast, the defendant, by its counterclaim, sought "specific relief in the form of a declaration of this Court that it has not infringed on the Plaintiff's trademark." *Id.* In light of this "disparity of remedies, the Defendant's counterclaim [was] not the 'mirror image' of the Plaintiff's claim." *Id.* Similarly here, "[Cox's] declaratory judgment counterclaim is not entirely duplicative or redundant of the Plaintiff's infringement claim" and the "disparity" means that the Counterclaim "[is] not the 'mirror image' of [Plaintiffs'] claim." *Id*. The declaratory relief Cox seeks is broader in time than the relief Cox seeks from Plaintiffs' time-limited claims. Instead of seeking declaratory relief limited to the 2013-2014 Period, Cox seeks:

- A declaratory judgment, holding that Defendants ***are not liable for contributory infringement*** of Plaintiffs' works at issue;
- A declaratory judgment, holding that Defendants ***are not vicariously liable for their subscribers' alleged infringements*** of Plaintiffs' works at issue;

*Id.* at 59 (Counterclaims, Prayer for Relief) (emphases added). There is no basis, on the plain meaning of this language, to impose the arbitrary time limitation that Plaintiffs urge.

In contrast, the separate relief that Cox seeks with respect to Plaintiffs' claims is necessarily limited to the same 2013-2014 Period that circumscribes Plaintiffs' claims—and that limitation is reflected in the language used. As to those claims, Cox seeks a "[j]udgment against Plaintiffs and in favor of Defendants on Plaintiffs' ***claims set forth in the Complaint***." *Id.* (emphasis added).

### 3.     Cox's Counterclaims do not mirror Cox's affirmative defenses

Because Cox's affirmative defenses are responsive to Plaintiffs' affirmative claims, they perforce cover the same time period as those claims. For the same reasons discussed above, just as the Counterclaims do not mirror Plaintiffs' claims, so too they do not (and cannot) mirror Cox's affirmative defenses.

### 4.     Plaintiffs' statement disavowing their copyright claims for the 2014-2018 Period belies their argument that the Counterclaims "mirror" Plaintiffs' claims

Plaintiffs' bare promise not to bring copyright claims for the 2014-2018 Period does not render the Counterclaims redundant. Indeed, the attempt to affirmatively disavow any copyright claims between November 2014 and the date of the Complaint merely underscores that Cox's Counterclaims are *not* the "mirror image" of Plaintiffs' claims, since if they were redundant, there would be no reason for Plaintiffs' statement. As discussed in detail above, however, Plaintiffs' mere statement, unsupported by consideration and made unilaterally, does not strip the Court of jurisdiction over Cox's Counterclaims.

## C.     Plaintiffs fail to show that they would be prejudiced by keeping the Counterclaims

Even if it were possible that Cox's Counterclaims might ultimately prove redundant—though, as discussed above, it is not—courts routinely refuse to dismiss or strike counterclaims at the pleadings stage when the counterclaim-defendant fails to show any prejudice from keeping the counterclaim in the case. Indeed, at least one court has recognized that "[n]o possible harm can result from the delay" in deciding whether to dismiss "an asserted counterclaim which [allegedly] presents no new issues." *Jungersen v. Miller*, 125 F. Supp. 846, 847 (D.C. Ohio 1954) ("In the judgment of this Court, the best and most sensible time to determine the question is at the time of trial.").[9]  Similarly, some courts will not strike declaratory judgment

---

[9] *See also, e.g., Dominion Elec. Mfg. Co. v. Edwin L. Wiegand Co.*, 126 F.2d 172, 174 (6th Cir. 1942) ("While it may turn out at trial that a decision on the merits of the plaintiff's bill will dispose of the controversy between the parties completely and render declaratory judgment unnecessary, in which case the counterclaim may be dismissed,

counterclaims if they pose no more than "a theoretical problem" and "there is some chance that disposing of it at [an] early stage may eventually prove premature." *AGCS Marine Ins. Co. v. Tutor Perini Corp.*, 2017 WL 2720187, at *4 (N.D. Cal. June 22, 2017); *United Tactical Sys., LLC v. Real Action Paintball, Inc.*, 143 F. Supp. 3d 982, 1023 (N.D. Cal. 2015) ("While it is possible Real Action's Declaratory Judgment counterclaims could be adequately adjudicated through its affirmative defenses … the Court cannot say Real Action's counterclaims will necessarily be resolved by the adjudication of the main action.")

Here, Plaintiffs fail to show that they would be prejudiced by leaving the Counterclaims in the case. Plaintiffs' argument that the case would increase in complexity if Cox is permitted to attempt to fully vindicate its legal rights is purely speculative, and also lacks merit in light of the extraordinarily high stakes in this case, in which Plaintiffs seek more than $1.6 *billion* in damages. The other examples of potential prejudice that Plaintiffs point to are illusory.

***First***, Plaintiffs argue that leaving the Counterclaims would be inefficient, "forcing" the parties and the Court "to handle the same issues twice." Mot. 9 (citation and quotation marks omitted). This makes no sense, and furthermore contradicts Plaintiffs' argument that the Counterclaims are redundant: if the claims and Counterclaims are redundant, as Plaintiffs claim, they can easily be "handled" at the same time; if instead they must be handled separately, it can only mean that they are *not* redundant and duplicative. *See Jungersen*, 125 F. Supp. at 847 (noting that "[n]o possible harm can result from the delay" in deciding whether to dismiss "an asserted counterclaim which [allegedly] presents no new issues.").

***Second***, Plaintiffs' speculation that the Counterclaims may "confuse rather than clarify the issues in suit" (Mot. 9) is also a non-factor, as Plaintiffs' two examples of supposed

---

we are of opinion that it was error to strike out the counterclaim at so early a stage") (quoting *Leach v. Ross Heater & Mfg. Co.*, 104 F.2d 88, 91 (2d Cir. 1939)); *Openwave Messaging, Inc. v. Open-Xchange, Inc.*, 2016 WL 6393503, at *10–11 (N.D. Cal. Oct. 28, 2016) ("Although it is unclear to me whether Co[u]nterclaim 1 serves any useful purpose, Openwave has not identified any prejudice that it would suffer if this counterclaim is not struck"); *Fitbit, Inc. v. Laguna 2, LLC*, 2018 WL 306724, at *10 (N.D. Cal. Jan. 5, 2018), *reconsideration denied*, 2018 WL 620121 (N.D. Cal. Jan. 30, 2018) ("there is no apparent prejudice to Fitbit if the Court were to keep the claims in the case. Indeed, there may well be a reason to keep the claims in the case—*e.g.*, a declaration of no misconduct might help protect the defendants' reputations and/or goodwill.").

"confusion" show: it is well-settled who bears the burdens of proof on copyright claims, and "who presents their case first at trial" is an issue that the Court can decide if and when it arises. Unsurprisingly, Plaintiffs fail to demonstrate that any court has ever been confused by these supposed "issues."

### D. Plaintiffs misrepresent the *BMG* Court's rulings concerning the Copyright Alert System (CAS), but in any event those rulings are irrelevant here

Plaintiffs argue—irrelevantly and inaccurately—that Cox's Counterclaims somehow constitute an attempt to "skirt" rulings that were made by the Court more than three years ago in a different case, *BMG Rights Management (U.S.) LLC v. Cox Comms., Inc.*, Case No. 14-01611 (E.D. Va. Nov. 26, 2014) ("*BMG/Cox*"). *See* Mot. 1, 2, 9. Plaintiffs' premature attack on evidence that does not yet exist, in a case where fact discovery has not even commenced, based on mischaracterizations of years-old, highly context-dependent evidentiary rulings from an entirely different case, is curious. But regardless, Plaintiffs' contention is incorrect, as Plaintiffs badly mischaracterize the Court's rulings in the *BMG/Cox* case. It also lacks relevance to the instant motion—or, if anything, cuts in favor of maintaining Cox's Counterclaims.

In *BMG/Cox*, the plaintiff moved *in limine* to preclude Cox from making reference at trial to the Copyright Alert System, which was a voluntary agreement between a significant number of large copyright owners from the movie and music industries—as well as the Recording Industry Association of America (RIAA)—and some of the largest internet service providers in the world. Cox understands and believes that at least some—perhaps most—of Plaintiffs in this litigation were either CAS signatories, or were owned, controlled, or affiliated with, CAS signatories. The RIAA was a key player in CAS, and Cox understands and believes that most (and perhaps all) of Plaintiffs were members of the RIAA at the time. Moreover, although Cox was not a signatory to the CAS, it had been heavily involved in negotiations leading up to the agreement, and had detailed knowledge of the CAS agreement.

Due to Cox's position and its numerous, wide-ranging connections in the industry, Cox was also well aware of the policies that signatory ISPs implemented in order to comply with CAS, and the manner in which those policies were actually implemented.  BMG sought to preclude Cox from presenting evidence about CAS and the policies of other ISPs on the basis that such evidence was irrelevant to Cox's DMCA safe harbor defense.  *BMG/Cox*, ECF 551, at 3.  BMG also argued that Cox lacked first-hand, non-hearsay knowledge of how other ISPs actually implemented CAS in *practice*, as opposed to their stated policies.  But even BMG conceded that "If Cox wanted to introduce the policies of third party ISPs Cox should have taken discovery from these ISPs to learn … about the policies." ECF 640 at 4; ECF 676 at 68-69 (hearing transcript) ("… there is no evidence about how other ISPs actually handle infringement notices…. [Cox] could have taken third party discovery. They didn't do that.")  The court granted BMG's motion *in limine* without comment, ECF 691, and on Cox's motion for reconsideration, the court reiterated its "concern[] about the credibility of Cox's proposed evidence, as Cox's witnesses would not have independent knowledge of the policies of other ISPs." ECF 998.

Evidence concerning CAS is far more likely to be relevant (and ultimately admissible) in this case, where it appears that Plaintiffs were themselves CAS signatories and can provide first-hand testimony and evidence concerning CAS.  In addition, to the extent Cox obtains relevant discovery from other CAS signatories, third party ISPs, or other knowledgeable sources, such evidence must be assessed at the appropriate time on its own merits, in context, and based on a full record.  It is nearly inconceivable that any Plaintiff's *own agreement to be bound* by an industry-wide agreement concerning *the handling of copyright infringement notices*, which was in place *during the precise time when Plaintiffs' claims supposedly accrued,* would not be relevant to this case, at least for purposes of discovery.  See Fed. R. Civ. P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable.").  Given that Plaintiffs are currently alleging infringement of 10,729 works and seeking statutory damages of $150,000 for each work—exposing Cox to a maximum potential

13

liability of well over a *billion and a half* dollars—such discovery is also clearly "proportional to the needs of the case" under Rule 26(b)(1). *See* Compl. ¶¶ 81, 111, 120.

Accordingly, because keeping the Counterclaims, and requiring Plaintiffs to admit or deny Cox's supporting factual allegations, will likely streamline discovery and contribute to the efficient administration of this litigation, if anything these allegations favor *keeping* the Counterclaims.

### E. The Court should exercise caution and not dismiss the Counterclaims at this early stage of the litigation

As many courts have recognized, it is often difficult to determine conclusively whether a declaratory judgment counterclaim really is redundant, prior to trial. When in doubt, therefore, "the safer course for the court to follow is to deny a request to dismiss a counterclaim for declaratory relief unless there is no doubt that it will be rendered moot by the adjudication of the main action." 6 Wright & Miller, Fed. Prac. & Proc. Civ. § 1406 (3d ed.) (Counterclaims and Crossclaims for Declaratory Judgment).[10]

As noted, Plaintiffs include a "non-exhaustive" list of 10,729 works with their Complaint, and seek the maximum available statutory damage of $150,000 for each work, meaning Cox's total possible exposure is well over 1.5 *billion* dollars. Compl. ¶¶ 81, 111, 120. Given the scope of Plaintiffs' claims, and Cox's potential exposure, Cox should—at a minimum—be entitled to the benefit of the doubt.

---

[10] *See also Leach v. Ross Heater & Mfg. Co.*, 104 F.2d 88, 92 (2d Cir. 1939) ("it would seem often, if not usually, desirable to defer a ruling [on whether to strike a counterclaim] until the trial … when it can be more clearly seen whether affirmative relief is needed by a defendant."); *Principal Life Ins. Co. v. Weiss*, 2009 WL 10687701, at *2 (E.D. Pa. July 30, 2009) ("If the rationale behind striking a completely identical declaratory judgment counterclaim is one of superfluousness, but the rationale behind allowing a counterclaim to remain is one of relief to which Defendant may be entitled, we would rather err on the side of caution at this early stage in the litigation process"); *Jungersen*, 125 F. Supp. at 847 ("In the judgment of this Court, the best and most sensible time to determine the question is at the time of trial. No possible harm can result from the delay.").

14

## IV. CONCLUSION

Cox's Counterclaims are not mirror images of either Plaintiffs' affirmative claims or Cox's own defenses, and Plaintiffs acknowledge that they are on notice that Cox intends the Counterclaims to apply to activity after the 2013-2014 Period that limits Plaintiffs' affirmative claims. A consideration of "all the circumstances of the case" supports the Court's exercise of jurisdiction over Cox's Counterclaims, since the facts alleged demonstrate that there is a substantial controversy that is definite, concrete, and permits an immediate and definitive determination of the parties legal rights in an adversarial proceeding. Nor does Plaintiffs' bare promise not to sue—an unsubstantiated statement relayed by Plaintiffs' counsel and unsupported by any consideration—divest the Court of subject matter jurisdiction as to the 2014-2018 Period. For the reasons set forth above, the Court should decline to dismiss Cox's Counterclaims at this stage of the litigation.

Dated: October 29, 2018

Respectfully submitted,

/s/ Thomas M. Buchanan
Thomas M. Buchanan (VSB No. 21530)
WINSTON & STRAWN LLP
1700 K Street, NW
Washington, DC 20006-3817
Tel: (202) 282-5787
Fax: (202) 282-5100
Email: tbuchana@winston.com

*Attorney for Cox Communications, Inc. and CoxCom, LLC*

*Of Counsel for Defendants*

Michael S. Elkin (*pro hac vice*)
Thomas Patrick Lane (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Telephone:  (212) 294-6700
Facsimile:  (212) 294-4700
Email:  melkin@winston.com
Email:  tlane@winston.com

Jennifer A. Golinveaux (*pro hac vice*)
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA  94111-5840
Telephone:  (415) 591-1000
Facsimile:  (415) 591-1400
Email:  jgolinveaux@winston.com

Diana Hughes Leiden (*pro hac vice*)
WINSTON & STRAWN LLP
333 S. Grand Avenue, Suite 3800
Los Angeles, CA 90071
Telephone:  (213) 615-1700
Facsimile:  (213) 615-1750
Email:  dhleiden@winston.com

**CERTIFICATE OF SERVICE**

I certify that on October 29, 2018, a copy of the foregoing COX'S OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS was filed electronically with the Clerk of Court using the ECF system, which will send notifications to ECF participants.

/s/ Thomas M. Buchanan
Thomas M. Buchanan (VSB No. 21530)
1700 K Street, NW
Washington, DC 20006-3817
Tel: (202) 282-5787
Fax: (202) 282-5100
Email: tbuchana@winston.com

*Attorney for Cox Communications, Inc. and CoxCom, LLC*