UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

SONY MUSIC ENTERTAINMENT, *et al.*,

    Plaintiffs,

v.

COX COMMUNICATIONS, INC., *et al.*,

    Defendants.

Case No. 1:18-cv-00950-LO-JFA

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL**

    Plaintiffs submit this memorandum of law in support of their motion to compel discovery from Defendants Cox Communications, Inc. and CoxCom, LLC (collectively "Cox"). As explained below, Plaintiffs request an order compelling Cox to produce key discovery and trial documents from a related case and copyright infringement notices for a four-year period.

**INTRODUCTION**

    This action is brought by major record companies and music publishers against one of the nation's largest internet service providers. Plaintiffs allege that Cox is contributorily and vicariously liable for infringement of their copyrighted sound recordings and musical compositions. For years, copyright owners sent Cox hundreds of thousands, if not millions, of notices that certain customers were using Cox's service to infringe. But Cox deliberately turned a blind eye to its subscribers' infringement and refused to take reasonable measures to curb its customers from infringing—even after it became aware of *particular customers* engaging in *specific, repeated acts* of infringement.

    This case is related to a recent case in this Court, *BMG Rights Management v. Cox Communications, Inc. et al.*, 1:14-cv-1611 (the "BMG Litigation"), which involved the same

claims and same defendants. Both cases involve Cox's failure to terminate or otherwise take meaningful action against the accounts of repeat infringers whose identities were known.

Plaintiffs seek to compel the production of two sets of documents. *First*, Plaintiffs seek documents from the BMG Litigation—public trial exhibits, deposition transcripts of Cox's fact witnesses and specific experts, and Cox's sworn interrogatory answers. Given the overlapping factual and legal issues between the cases, such discovery is relevant and Cox can easily produce it. *Second*, Plaintiffs seek copyright infringement notices received by Cox for the period 2010 to 2014. A variety of copyright owners or their agents sent infringement notices to Cox. All such notices are relevant.

## **BACKGROUND**

The parties served initial discovery requests on November 19, 2018. Plaintiffs served a total of 66 requests for production, tailored to a targeted set of documents. (Ex. A.) In contrast, Cox served *175* requests for production. In addition to sheer volume, 130 of the requests seek "all documents"—often concerning broad subject matter far afield of any issue related to the case. The parties are in the midst of active meet and confers concerning their respective discovery requests. In the meantime, the issues set forth below are ripe for consideration by the Court.

Plaintiffs requested: (1) documents from the BMG Litigation, including prior discovery responses, trial exhibits, and deposition transcripts (*Id.*, RFPs 1-5); and (2) all copyright infringement notices Cox received and documents concerning the same (*Id.*, RFPs 11, 18-19, 22). Cox objected to all of the requests. (Ex. B.) For the BMG Litigation documents, Cox objected to producing anything beyond deposition transcripts for witnesses identified in its 26(a)(1) disclosures (witnesses Cox deems favorable). (*Id.*, Objections to RFPs 1-5.) For copyright infringement notices, Cox objected to producing anything beyond notices sent on behalf of the Plaintiffs from February 2013 through November 2014 (the time period in which Plaintiffs' claims

of infringement accrued). (*Id.*, Objections to RFPs 11, 18-19, 22.) Cox refuses to produce notices from others, even if they involve the same subscribers identified in Plaintiffs' notices, and also objects to producing notices that Cox received just prior to the time frame when Plaintiffs' claims accrued.

On December 10, 2018, Plaintiffs sent Cox a letter identifying problems with its objections. (Ex. C.) The parties have since conferred for several hours on December 12 and December 14, with multiple counsel for both sides present.

## ARGUMENT

### I. Related Case Materials

In order to streamline discovery, Plaintiffs seek key documents from the BMG Litigation. That case shares many of the same legal and factual issues as this one—Plaintiffs assert the same claims, for the same time period, based on Cox's policies and practices regarding repeat infringers. Cox has complete access to discovery and case materials from the BMG Litigation discovery and has not hesitated to make offensive use of the very same materials it refuses to produce. For example, Cox attached an excerpt of the deposition of Roger Vredenburg, a former Cox employee, in its reply in support of its motion to transfer venue. Dkt. 34 at 5, attached hereto as Ex. D. Plaintiffs had no access to that transcript, and Cox still refuses to produce it. Cox could easily and quickly provide Plaintiffs with documents at issue at little to no cost, yet it refuses to produce them. Cox should be ordered to produce the following BMG Litigation materials: (1) all trial exhibits and demonstratives; (2) deposition transcripts and accompanying exhibits for all of Cox's fact witnesses (including former employees) and four experts (Barbara Frederiksen-Cross, William Lehr, Terrence McGarty, Richard Sullivan); and (3) Cox's interrogatory responses.

### A. Trial Exhibits and Demonstratives

Plaintiffs seek all trial exhibits "used, referenced or introduced during the 2015 trial in the BMG Litigation . . . includ[ing] demonstrative exhibits presented at the trial by any party." (Ex. A, RFP 2.) Not only are these exhibits discoverable, they are subject to public access under the common law and the First Amendment. Documents that are offered into evidence for the jury's consideration at trial become "simply by virtue of that event, subject to the public right of access guaranteed by the First Amendment." *Level 3 Commc'ns, LLC v. Limelight Networks, Inc.*, 611 F. Supp. 2d 572, 589 (E.D. Va. 2009). That right even applies to demonstrative exhibits not admitted into evidence if they are "displayed in open court." *Rambus, Inc. v. Infineon Techs. AG*, No. CIV.A. 3:00CV524, 2005 WL 1081337, at *3 (E.D. Va. May 6, 2005) (granting motion to access demonstrative exhibits under First Amendment right of public access or, alternatively, common law presumption of openness).

Although Plaintiffs purchased copies of the BMG litigation trial transcripts, they did not include the trial exhibits or demonstratives. Plaintiffs' understanding is that the Court does not possess the documents, prompting several informal requests to Cox followed by RFP 2. Cox primarily objects to this discovery as seeking irrelevant information, "including but not limited to the DMCA; affirmative defenses not at issue here; works not at issue here; entities that are not parties to this litigation; and documents concerning information outside Plaintiffs' Claim Period." (Ex. B, RFP 2.)

Cox's relevance objection regarding "information outside Plaintiffs' Claim Period," is an apparent attempt to relitigate Judge O'Grady's decision that documents and information preceding the claims period are probative of Cox's liability and willful blindness. In the BMG Litigation, the Court previously concluded that "Cox's policies and procedures related to infringement were of course established prior to [Plaintiffs' infringement notices], and it is those policies and

4

procedures that Cox applied when it received notices of infringement for [Plaintiffs'] works at issue." BMG Dkt. 1018 at 2, attached hereto as Ex. E. Discovery objections are not the proper vehicle to challenge that ruling, and, in any event, admissibility is a "much more stringent standard than discoverability." *Hart v. Lousiana-Pac. Corp.*, No. 2:08-CV-47-BO, 2013 WL 12284613, at *3 (E.D.N.C. Jan. 4, 2013). If documents pre- or post-dating the claim period were sufficiently relevant to be admitted at the BMG trial, they are certainly discoverable in this case. And, if the documents were moved into admission and not admitted, they are similarly instructive for purposes of Plaintiffs' understanding what exhibits were excluded and why. The production of these documents supports basic notions of fairness and will level the playing field by providing access to many of the most relevant documents at the outset of discovery.

Cox's other relevance objections are equally overstated. This Court and the Fourth Circuit both held that Cox forfeited the DMCA safe harbor for failing to implement a reasonable safe harbor policy. BMG Litigation, Dkt. 703 at 42; *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 881 F.3d 293, 305 (4th Cir. 2018). Cox now claims that the DMCA is irrelevant because they are not asserting it as an affirmative defense. But the repeat infringer policy that Cox implemented (or failed to implement) and its attitude towards the same are relevant to the underlying issues on liability and damages. For example, that a Cox's employee charged with responding to infringement allegations exclaimed "F the dmca!!!" in an internal email to others charged with handling copyright infringement notices is highly probative of Cox's disregard for copyright. Notably, in advance of the scheduled retrial in the BMG Litigation, the Court denied Cox's motion to exclude that very email even though the DMCA was not a defense there either. (Ex. E.)

The Court also recognized the importance of evidence beyond the specific plaintiff when it rejected the same arguments for exclusion prior to the 2015 trial. As the Court explained, "I'm going to allow BMG to put on its theory of the case. . . . I think that for purposes of contributory

infringement, actual knowledge is BMG's burden. All of the e-mails, *even though they are not of BMG clients*, go to the actual knowledge of the program and the fact that Cox was not going to follow it. And they weren't going to follow it because they didn't want to lose customers." BMG Dec. 1, 2015 Hearing Tr. at 30:5-13, attached hereto as Ex. F (emphasis added). In other words, documents regarding "works not at issue" or "entities that are not parties to this litigation" still demonstrate Cox's knowledge of specific repeat infringers and infringement occurring on its network generally (and could involve some of the same infringers identified in Plaintiffs' notices).

Finally, Cox's burden and confidentiality objections are entirely generic and unexplained. Cox did not move to seal the exhibits used publicly during trial, a protective order will be entered shortly, and there is no plausible burden to producing trial exhibits in Cox's possession.

### B. Deposition Transcripts for Cox's Fact Witnesses and Four Experts

Plaintiffs requested "[t]ranscripts of all depositions taken in the BMG Litigation, including any exhibits used during those depositions." (Ex. A, RFP 4.) During the conferral process, Plaintiffs offered to narrow the request at this time to transcripts and exhibits for all of Cox's fact witnesses and experts. However, Cox still refuses to produce depositions for witnesses other than those identified in its Rule 26(a)(1) disclosures. Cox is apparently only willing to share the testimony that it seeks to rely upon, as opposed to testimony that undermines its positions. Cox has refused to even identify the individuals deposed in the BMG Litigation that do not appear on Cox's Rule 26(a)(1) disclosures and whose transcripts it is withholding. It has also not identified any specific fact witnesses for which it believes deposition transcripts are irrelevant.

Plaintiffs are aware of at least three fact depositions Cox is improperly withholding. Each witness was deposed in the BMG case. Two testified at trial.

- Randall Cadenhead, former Privacy Counsel and Cox's 30(b)(6) designee on a number of topics, including Cox's repeat infringer policy and employee training on infringement notices. Dkt. 23-1, attached hereto as Ex. G, at 2. Mr. Cadenhead testified in the 2015 BMG trial about these and related topics. In Cox's motion to

6

- transfer venue to Georgia, Cox identified Mr. Cadenhead as one of the Atlanta-based witnesses whose convenience warranted transfer. Dkt. 23 at 9, attached hereto as Ex. H.

- Roger Vredenburg, former copyright abuse employee responsible for deciding whether to terminate repeat-infringing subscribers. This Court twice denied Cox's motion to quash trial subpoenas to Mr. Vredenburg given the materiality and non-cumulative nature of his testimony. BMG Dkt. 711, 1001; BMG Trial Tr. 619-20, attached hereto as Ex. I. Mr. Vredenburg's work for Cox from Virginia on core issues in the case was amongst the Court's considerations in denying Cox's motion to transfer to Georgia. Dkt. 51 at 4.

- Andrea Dameri, a Cox network security employee. Ms. Dameri is knowledgeable about how Cox declined to terminate repeat infringers. (Ex. G ¶ 6; Ex. I at 1437.)

There can be no dispute that those individuals possess discoverable information. And Plaintiffs have no doubt that Cox will use those and other transcripts to prepare for depositions in this case or other purposes. Cox has already shown its willingness to use the Vredenburg transcript during motion practice without providing Plaintiffs a copy. In conferring over Cox's objection and limited offer of production, Plaintiffs asked Cox whether any additional Cox witnesses were deposed in the BMG case, but they refused to answer. Gould Decl. ¶ 4, Dkt. 54-1. Cox has not even attempted to articulate a basis for withholding these deposition transcripts (or any others for Cox fact witnesses).

The Court should also compel the deposition transcripts of certain experts from the BMG Litigation. Plaintiffs are striving for efficiency—not blindly requesting all expert depositions. At this time, they request only the following expert deposition transcripts, all of which are directly applicable here:

- Barbara Frederiksen-Cross, a computer forensic expert, who testified for BMG about the technical aspects of the Bit Torrent protocol and her opinion that Cox's Copyright Abuse Tracking System (CATS) essentially did nothing. (Ex. I. at 223-25.)

- William Lehr, an economics, Internet telecommunications and media industry expert, who testified for BMG about the nature of harm caused to copyright holders by infringement, the difficulty of quantifying such harm, Cox's financial benefits from and incentive to tolerate infringement. (*Id.* at 1055-58.)

- Terrence McGarty, an expert in the design and implementation of Internet telecommunications, who testified for BMG about the operational and logistical limitations of Cox's CATS and Cox's right and ability to control infringement occurring through its network. (*Id.* at 2000-05.)

- Richard Sullivan, an economics expert, who testified for Cox in critique of Dr. Lehr's analysis of the effects of infringement on Cox, and also provided a purported damages model assuming liability to opine on lost revenue to the copyright holder and financial benefit to Cox. (*Id.* at 1654-55.)

Plaintiffs may want to use certain of the above experts as testifying witnesses in this case and are entitled to know the positions that Cox's own experts took in defending materially similar claims. Both for fairness and to streamline this case, Plaintiffs should get to see what positions those experts took, and which positions Cox challenged or did not. Knowing their opinions, the documents they deemed relevant, and what they said about Cox's misconduct, ill-gotten gains and theory of a copyright plaintiff's lost revenue will ensure more efficient litigation for all parties and the Court.

### C. Cox's Interrogatory Responses

Plaintiffs requested Cox's "responses and objections to interrogatories, document requests, requests for admission, and deposition notices and topics in the BMG Litigation." (Ex. A, RFP 5.) During the conferral process, Plaintiffs offered to limit the request at this time to Cox's responses to interrogatories. However, Cox refuses to produce these sworn statements.

As with the trial exhibits and deposition transcripts, Cox cannot object with only generic references to the DMCA, "works not at issue" and "entities that are not parties to this litigation." Cox has not identified any specific interrogatory responses that it believes are irrelevant. And again, Cox has no support for its burden and confidentiality objections since a protective order is imminent and there is no burden. Finally, Cox's contention that Plaintiffs' request seeks to contravene limits on the number of interrogatories misses the point—Plaintiffs are entitled to discover Cox's prior sworn statements on relevant issues.

8

## II. Copyright Infringement Notices

Plaintiffs requested, for a period from 2010 to 2014, "[a]ll Infringement Notices received by Defendants from any rights holder." (Ex. A, RFP 11.) However, Cox refuses to produce discovery concerning any notices other than those "of claimed infringement of Plaintiffs' works that were sent on Plaintiffs' behalf during Plaintiffs' Claim Period." (Ex. C at 11, 22.)

Plaintiffs seek *all* copyright infringement notices from 2010 to 2014 for multiple reasons. *First*, Cox can acquire knowledge not only from Plaintiffs, but from others. The notices illustrate the large-scale copyright infringement occurring on Cox's network, and the fact that Cox had actual knowledge of that infringement. That is important context for the jury and speaks directly to Cox's knowledge of the infringing activity. When juxtaposed with Cox's failure to implement reasonable policies and procedures to terminate the accounts of repeat infringers, those notices are also relevant to showing Cox's willfulness. *Second*, the notices demonstrate Cox's specific knowledge of individual repeat infringers. For example, if a subscriber that repeatedly infringed Plaintiffs' copyrights also engaged in rampant movie piracy, Cox's failure to terminate that subscriber's account is even more reprehensible and something a jury can assess when determining both liability and damages

In the BMG Litigation, Cox raised similar objections to the admission of documents regarding other copyrighted works and those sent outside the two-year claim period. Ex. E at 1-2. Cox argued that emails regarding other copyrighted works were not "relevant to actual knowledge." *Id.* at 1. But Judge O'Grady disagreed, finding the document admissible and "highly probative on the issue of willfulness and willful blindness." He explained that:

> Evidence of Cox's overall system for addressing infringement (including evidence showing that Cox knew of a high probability that users identified in infringement notices were in fact infringers and evidence showing that Cox did not want to see infringement notices because it did not want to take action against subscribers) is relevant to whether Cox consciously avoided learning about specific instances of infringement.

9

*Id.* at 2.

Cox also argued that documents sent outside the claim period were irrelevant because all the alleged infringements occurred during the claim period, and therefore it was the only period "during which Cox could, even in theory, have willfully blinded itself to relevant specific instances of relevant [sic] infringement." *Id.* Again, Judge O'Grady disagreed:

> Cox's internal policies and procedures related to infringement were of course established prior to February 5, 2012, and it is those policies and procedures that Cox applied when it received notices of infringement for BMG's work at issue. The emails are therefore relevant to the question of whether Cox blinded itself to infringement of specific BMG works.

*Id.* at 2. The Court's prior decisions on these precise issues apply aptly to this case.

Respectfully Submitted,

Dated December 14, 2018

/s/ Scott A. Zebrak
Scott A. Zebrak (38729)
Matthew J. Oppenheim (*pro hac vice*)
Jeffrey M. Gould (*pro hac vice*)
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Avenue, NW, 5th Floor
Washington, DC 20015
Tel: 202-480-2999
scott@oandzlaw.com
matt@oandzlaw.com
jeff@oandzlaw.com

*Attorneys for Plaintiffs*