# Exhibit C



Jeffrey M. Gould
5225 Wisconsin Avenue NW, Suite 503
Washington, DC 20015
202.851.4526
jeff@oandzlaw.com

December 10, 2018

<u>*Via Email*</u>
Thomas Patrick Lane
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166
Tel: (212) 294-6700
tlane@winston.com

  Re: *Sony Music Entm't, et al., v. Cox Commc'ns, Inc., et al.,* 1:18-cv-00650-LO-JFA

Dear Mr. Lane:

  We write in response to Cox's Objections to Plaintiffs' First Set of Requests for Production and Cox's Objections to Plaintiffs' First Set of Interrogatories (collectively, "Cox's Objections"), served on December 4, 2018. The overwhelming majority of Cox's objections are inappropriate. Unlike Cox, Plaintiffs tailored their discovery to a targeted set of documents and disclosures. Notwithstanding, Cox generically rejected Plaintiffs' requests—even as to trial exhibits from a related case. We list below issues concerning Cox's Objections that require discussion, and we look forward to your response and a meet-and-confer. We also provide an initial response to your letter dated December 7, 2018 concerning Plaintiffs' objections to Cox's written discovery. We are available to meet and confer on both fronts Wednesday, December 12 at 11 a.m. ET.

## COX'S OBJECTIONS

  a. <u>Discovery and public trial exhibits from the BMG case</u>

  Cox's objections to producing public trial exhibits, depositions transcripts of its witnesses, sworn interrogatory responses and documents it previously produced in the BMG case are inappropriate. *See* Objections to RFPs 1-5. Both this case and the BMG case concern Cox's continued provision of service to known infringers of copyrighted music. Accordingly, the discovery and public trial exhibits from the BMG case are overwhelmingly and unquestionably relevant here. (RFPs 1-3.) And Cox cannot complain of undue burden since it already produced this discovery.

  Although Cox also objects to producing trial exhibits that are confidential, Cox did not move to seal the exhibits during trial. (RFPs 2-3.) Regardless, a protective order will be entered

shortly and will moot this objection. We also note that your reference to a December 4, 2015 Court order at BMG ECF No. 689 in your objection to Request No. 3 appears to be an error and we do not understand what order you are referring to.

Cox concedes the relevance and discoverability of deposition transcripts for witnesses identified in Cox's initial disclosures but refuses to produce any other transcripts. (RFP 4.) Rule 26(a)(1) limits disclosures to individuals likely to have discoverable information a party may use to support its claims or defenses. It does not permit obstructing discovery from individuals with discoverable information simply because Cox may not like what they said. At a minimum, Cox must produce all deposition transcripts of Cox witnesses, including experts. Prior sworn statements on relevant issues in a related case are a proper subject of discovery. The same is true for Cox's interrogatory responses from the BMG case. (RFP 5.)

      b.  <u>Objections to providing discovery beyond Plaintiffs, Plaintiffs' works in suit, Plaintiffs' notices and/or the limited time period of Plaintiffs' claims</u>

Cox asserts generic relevance and breadth objections as a basis for limiting discovery to documents concerning Plaintiffs, Plaintiffs' works in suit, Plaintiffs' notices and the limited time period of Plaintiffs' claims. *See, e.g.*, Objections to Request Nos. 6, 10, 11, 18, 19, 21, 22, 23, 24, 26, 27, 30, 34, 35 38, 39, 43, 48, 52 (infringement and notices); 16, 17, 40, 41, 44, 45 (policies and procedures); 42, 49-62 (financial benefit/damages); Objections to Interrogatory Nos. 2, 3, 4 (infringement notices); 5, 6, 11 (suspensions/terminations). The Court rejected the same objections in the BMG case and they fare no better here. *See* BMG ECF 1018. "Cox's policies and procedures related to infringement were of course established prior to [Plaintiffs' infringement notices], and it is those policies and procedures that Cox applied when it received notices of infringement for [Plaintiffs'] works at issue." BMG ECF 1018 at 2-3. Cox's knowledge and intent regarding the continued provision of service to infringers may have begun well before the claims in suit, but that does not make its knowledge any less relevant, as the Court has twice concluded. *See id*; BMG ECF 977 at 10. Since this case likewise concerns Cox's continued provision of service to known infringers, all infringement notices from any copyright owner or agent and Cox's response are relevant.

Cox concedes that 2010 through 2014 is an appropriate time period for some requests (*e.g.*, RFPs 25, 28, 29), yet nonetheless objects regarding that time frame in dozens of other requests. Cox also does not articulate why any specific request would be burdensome and provides no support for its burden objections. And Cox apparently refuses to identify individuals involved in designing and implementing policies and protocol for addressing copyright violations prior to 2010. (Interrogatory 1.) This information is highly relevant as Cox capped the number of notices it would receive starting in 2008 and maintained that policy and practice throughout the claim period. Please confirm whether Cox will withdraw these improper objections so we can avoid wasteful motion practice.

      c.  <u>Violations of Cox's Acceptable Use Policy</u>

Cox objects on relevance grounds to producing documents regarding (1) monitoring, review or inspection of its ISP system for violations of its AUP, and (2) mechanisms considered

or implemented to limit use of Cox's ISP system for AUP violations. (RFPs 40-41; Interrogatory No. 9.) In both requests, Cox attempts to limit its production to AUP violations related only to copyright infringement. It also refuses to produce documents concerning mechanisms it *considered* to prevent or limit AUP violations. But all monitoring and all mechanisms considered (including those that were never implemented) are relevant and important, not just those concerning copyright infringement or only those measures actually implemented. As you know, Cox's right and ability to control its service are central issues.

      d.   Documents concerning MarkMonitor

Although Cox demands "[a]ll documents concerning and communications with MarkMonitor" (Cox RFP 141), it categorically refuses to produce *any* documents concerning MarkMonitor. (RFP 6.) MarkMonitor sent infringement notices to Cox, including on behalf of Plaintiffs as well as other rights owners. Cox's communications with and about MarkMonitor, how it handled those notices and its analysis or assessments of MarkMonitor are relevant and must be produced.

      e.   Documents concerning RIAA

Cox objects to producing documents from 2008 and 2009 concerning communications with RIAA. (RFP 25.) Cox was willfully blind to infringement by imposing arbitrary caps on the number of infringement notices it would receive from the RIAA in 2008. Documents bearing on that decision are highly relevant and Cox must produce them.

      f.   Financial information

First, Cox's overall revenue and profit information from 2010 to present are highly relevant to financial benefits, damages, punishment and deterrence. (RFPs 49-50) We believe these requests are clear and unobjectionable but agree to confer in hopes of resolving this, as well as your other objections to providing financial discovery.

Second, Cox concedes relevance and discoverability of certain financial information, including revenue and profits attributable to subscribers who were the subject of infringement notices from Plaintiffs. (RFP 57; Interrogatory No. 10.) But Cox improperly limits the time and scope of this discovery. To the extent Cox continued to receive revenue from known infringing subscribers after November 2014, those financial benefits are relevant and must be produced regardless of when the underlying infringement occurred.

Cox objects on relevance grounds to producing financial information regarding television and telephone services. (RFP 51.) However, Cox's bundling of services is a draw for subscribers. Cox's revenues and profits associated with those services demonstrate the financial benefits Cox derived from infringement. Moreover, since the services are bundled, Plaintiffs need to see the entire bundle in order to analyze Cox's revenues and profits from its provision of internet service to known infringers.

Cox objects to producing information on the number of subscribers and its penetration rates, including blanket objections that this information is available to Plaintiffs. (RFP 58-60.) That is incorrect. Plaintiffs do not have information as to how many subscribers Cox has or its penetration rates. This information is relevant to Plaintiffs' overall financial picture, incentive for tolerating infringement, and need for deterrence.

Cox's blanket objection to Interrogatory No. 8 is also improper. Cox concedes the relevance of any effects that terminating accounts of infringing subscribers has on its financial or other interests but appears to refuse to answer. To the extent you claim the interrogatory is vague, at a minimum, it requests information concerning the financial benefit Cox derived from infringement.

    g.  Affirmative defenses

Cox objects to producing documents refuting or concerning its affirmative defenses as not relevant and agrees only to produce documents on which it intends to rely. (RFP 46.) By definition, documents refuting affirmative defenses are relevant to such affirmative defenses. Cox may not selectively produce favorable documents while withholding those that do not support its positions.

Cox additionally objects to Interrogatory No. 12 seeking the factual bases for its affirmative defenses of copyright misuse. The Interrogatory does not seek legal conclusions or expert discovery. Cox must have had a good faith basis to plead this defense and must provide discovery into the factual bases for it.

    h.  Public statements include more than just press releases

Cox objects to producing public statements about policies for responding to infringement notices and limits its response to just press releases. (RFP 28) In limiting its response to RFP 28 to press releases, is Cox withholding documents on the basis of its objections? Documents in this category include, at least, testimony (depositions, trials, administrative and regulatory proceedings), interviews, and presentations at industry events.

    i.  Considered policies and practices for taking against infringing subscribers

Cox objects to producing documents concerning policies, practices and capabilities that Cox *considered* taking against subscribers accused of infringement and agrees to produce only documents regarding *adopted* policies. (RFP 29) Policies and practices that Cox considered but failed to adopt are relevant to both liability and willfulness. Cox may not selectively produce favorable documents while withholding those that do not support its positions.

    j.  Studies concerning Internet Usage

Cox lodges several boilerplate objections and requests a conferral regarding a request for reports, plans, studies and research regarding its customers use the Internet, benefits and attributes Cox's customers wish to receive from the Internet, and the types of customers that use the Internet.

(RFP 37)  But Request 37 is identical to what Cox agreed to produce in the BMG case.  *See* BMG ECF No. 66.  There is no basis to object here and Cox should produce the same documents on this topic that it produced in the BMG case.

      k.   <u>Cox's meet-and-confer offers</u>

Plaintiffs agree to meet-and-confer over the scope of the requests which Cox objected to and requested a meet-and-confer, subject to the points raised above.  (RFPs 2-3, 9, 31, 35, 37, 47, 49, 50, 53, 54)

## **COX'S DISCOVERY REQUESTS**

We respond below to the issues raised in your December 7, 2018 letter.

I.   <u>PLAINTIFFS' OBJECTIONS ARE NOT DEFICIENT</u>

Plaintiffs' objections conform with the Local Rules of the Eastern District of Virginia and the Federal Rules of Civil Procedure and your contention to the contrary is simply wrong.  Plaintiffs served timely objections and will respond to the discovery requests by December 19, 2018 consistent with the rules.  Your citation to *Stoney Glen, LLC v. S. Bank & Tr. Co.*, No. 2:13CV8-HCM-LRL, 2013 WL 5514293 (E.D. Va. Oct. 2, 2013) has no relevance to the posture of this case.  *Stoney Glen* predates the 2015 amendments to the federal discovery rules and merely identified in generic terms a party's burden for defeating a motion to compel.  It did not discuss the requirements for written objections to requests for production in the first instance.  Moreover, the Advisory Committee Notes to the 2015 amendments make clear that in lieu of providing a detailed description of all documents withheld, the responding party may identify the documents that will be produced and/or describe the search for responsive documents.  Plaintiffs' objections comply with the rules and their forthcoming responses will too.

Your letter also ignores the nature and breadth of Cox's discovery requests. Cox served 175 separate document requests, clearly an excessive amount. In addition to the sheer number of requests, many are patently overbroad and of little or no relevance. Indeed, 130 requests seek "all documents" concerning broad subject matter. Many seek production of countless documents with no connection to the claims and defenses in this case. For example, RFP 120 seeks "all documents concerning" Plaintiffs' efforts to enforce their copyrights; RFP 121 seeks "all documents concerning" any subpoena Plaintiffs have ever issued in connection with their copyright enforcement efforts; and RFP 119 seeks "all documents concerning" the Record Company Plaintiffs' multi-year litigation effort to enforce their copyrights against individuals using P2P systems directly to infringe.

Given the staggering number of requests, their extraordinary breadth, and the limited time for objections, the meet and confer process is critical. Cox must explain what it is actually seeking and why. Once Plaintiffs have a basic understanding of what Cox seeks, within the bounds of the amended discovery rules, we can respond accordingly.

II.   GENERAL ISSUES

   a.   ESI and search terms

Plaintiffs will propose custodians, search terms, and sources of data for purposes of searching their ESI in responsive to Cox's RFPs and expect Cox to do the same in response to Plaintiffs' document request. The form of producing ESI appears to be agreed to at this point.

   b.   Privilege log

Your letter mischaracterizes Plaintiffs' position. Comprehensive logs of all responsive, privileged documents are not required when the request is aimed at indisputably privileged documents. As you know, Cox issued numerous requests clearly targeting privileged issues (*e.g.*, Plaintiffs' decision to seek statutory versus actual damages), among other grossly overbroad topics. Cox cannot unilaterally force Plaintiffs to log all of their internal litigation-related and privileged communications by issuing improper requests. In any event, we are glad you agree to discuss the appropriate parameters of a log of privileged documents and we will do so.

   c.   Sources for documents

Again, your letter mischaracterizes Plaintiffs' objections. Plaintiffs do not categorically object to producing certain documents *about* communications. Nonetheless, Cox's requests for documents *about* communications are in many case irrelevant, unduly burdensome and not proportional to the needs of the case. As with the vast majority of Cox's requests, once Cox explains what it is actually seeking, Plaintiffs can provide more tailored responses. As you know, discovery must be targeted at "nonprivileged matter that is relevant . . . and proportional to the needs of the case" considering such factors as the importance of the issues at stake in the action and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). Cox's discovery requests flout this standard.

    d.  Cox's references to "subscribers," account holders," and "customers"

Your letter makes a circular argument regarding Cox's use of the above terms in its RFPs and Interrogatories—asserting in response to Plaintiffs' objection essentially that Cox means what Plaintiffs mean. Cox propounded the discovery requests; it must describe what it seeks and the meaning of the terms it uses. Moreover, subscribers, account holders, and customers refer to Cox's own business. In objecting, Plaintiffs want to know whether, in the context of Cox's business, the terms "subscribers," "account holders," and "customers" are interchangeable. For example, are there customers who are not "subscribers" or "account holders"? The purpose of objecting to ambiguous discovery requests and the meet-and-confer process is to eliminate confusion and identify legitimate issues that cannot be resolved among the parties. That is exactly what Plaintiffs seek to do.

### III.   INDIVIDUAL REQUESTS

    a-b.  Identity and ownership of the Copyrighted Works

Contrary to the characterization in your letter, Plaintiffs have never said they will withhold disclosures relating to the works currently in suit. Plaintiffs agree that their responses at this time will include the specific works listed in Exhibits A and B of the Complaint, without waiving any of their rights. However, requests for documents and communications "concerning copyright validity and claims of ownership," as described in your letter, are unduly burdensome to the extent that Cox has not asserted a legitimate challenge to the validity or ownership of any copyrighted work in suit. With respect to these and related requests, we look forward to Cox's elucidation during the meet and confer process regarding what it actually seeks and why it is relevant.

    c.  Digital copies of the works

Plaintiffs do not understand why Cox would need Plaintiffs to provide non-infringing copies of the works in suit. The infringing files will be produced; they identify the work, as do the exhibits to the Complaint. Cox is, of course, free to legally purchase or listen to any of the music at issue, including on its Music Choice channel/service. We will speak with you about this during our meet and confer.

    d.  Organizational charts

Cox needs to provide more detail regarding the organizational charts and other such documents it seeks and why they are relevant. Your letter states that Cox seeks organizational charts from 2010 to the present concerning "registration and ownership of the Copyright Works," and Plaintiffs' enforcement and monetization of their copyrights. The request remains vague and extremely broad. Once Plaintiffs better understand the request and Cox's basis for it, they can assess what relevant organizational charts exist.

    e.  Plaintiffs' damages

While the Complaint indicates that Plaintiffs are entitled to actual or statutory damages, Plaintiffs seek statutory damages. Thus, the rationale you cited as the basis for the requests relating to Plaintiffs' damages is misplaced. We will meet and confer with you on these topics.

In several places on page 6 of your letter, you purport to rewrite Cox's discovery requests in an effort to salvage objectionable requests. That is improper. For example, you now want Plaintiffs' to treat document requests for financial information by medium as a request for admission regarding Plaintiffs' record keeping practices. In other instances, your purported explanations add further confusion and ambiguity to an already objectionable requests (i.e. the appropriate time frame for document requests regarding the effects of infringement).

f. Plaintiffs' decisions to pursue actual versus statutory damages

This is not a proper document request. For this reason, Plaintiffs did not serve document requests asking for communications between Cox and its outside counsel concerning how to defend the action or documents analyzing the same. Cox's request, and its demand for Plaintiffs to log irrelevant and clearly privileged documents, appears designed to harass and discourage Plaintiffs from moving forward in the action. Plaintiffs also note that Cox did not specify that it was seeking "non-privileged documents" as it did in Requests 72-73.

g. Communications concerning Cox

Plaintiffs are willing to make an appropriate production on this category. During the meet and confer process, we will speak with you about what you actually seek, why, and the appropriate parameters for a reasonable search and production in response.

h. Evidence of infringement

Again, you mischaracterize Plaintiffs' objections. Plaintiffs have never said they will withhold evidence of infringement relating to the works currently in suit. Plaintiffs agree that their responses at this time will include evidence of infringement as to the specific works listed in Exhibits A and B of the Complaint, without waiving any of their rights. More broadly, with respect to these and related requests, Plaintiffs look forward to Cox's clarifying what it actually seeks and the relevance of such information.

i. Plaintiffs' enforcement efforts

This requests identified in this section of your letter, i.e., Requests 119-124 and 132-136, are clearly improper and appear to have no basis other than to burden Plaintiffs. Defendants are free to use PACER to identify Plaintiffs' other litigations. Cox should explain with particularity what documents it seeks, why they are appropriately sought in discovery, why Cox cannot obtain them elsewhere, and how requesting them is not burdensome.

j. Cox's financial benefit and ability to prevent infringement

This category of documents involves documents in Cox's possession, not Plaintiffs'. To the extent that Cox is seeking to circumvent the rules regarding expert witnesses, we object. We will speak with you about this during our meet and confer.

k. <u>Communications with and regarding Plaintiffs' representatives, including MarkMonitor and RightsCorp.</u>

The clarification and narrowing you provided in your letter are helpful. We will speak with you about this in our meet and confer, including when discussing custodians and search terms.

l. <u>Documents concerning the *BMG* and *Grande* case</u>

These requests are overbroad and intentionally seek privileged documents. There is no tailoring of any kind and a request for "all documents" concerning two large litigations (one with plaintiffs from this case and one in which plaintiffs were not parties) makes no sense, especially without a carve-out for obviously privilege document. To the extent any non-privilege, relevant documents exist they would be captured by Cox's 173 other requests.

m. <u>Document concerning the RIAA and the CAS</u>

Cox seeks "all documents" on a myriad of topics related to the RIAA and the CAS. The RIAA is the trade associations for the Record Company Plaintiffs and, in some instances, acts as counsel for those Plaintiffs on issues, including many having nothing to do with this case. Cox must tailor its request rather than demanding all documents. Cox should articulate specifically what documents it is seeking and why.

As to CAS, the only possible relevance, if any, is that Cox refused to participate in the private agreement. Moreover, Cox mischaracterizes it as an "industry standard," and cannot use it as an excuse for its own infringement.

\*   \*   \*

We look forward to your prompt response to the issues raised in the first part of this letter and conferring with you this week. We are available Wednesday morning at 11 a.m. ET for conferral.

Sincerely,

*/s/ Jeffrey M. Gould*