**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

|  |  |
|---|---|
| SONY MUSIC ENTERTAINMENT, *et al.*, <br><br>     Plaintiffs, <br><br> v. <br><br> COX COMMUNICATIONS, INC., *et al.*, <br><br>     Defendants. | Case No. 1:18-cv-00950-LO-JFA <br><br> COX'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL (ECF NO. 54) |

## COX'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

### I.    INTRODUCTION

In this case, 58 music industry Plaintiffs seek to hold Cox secondarily liable for alleged infringements of 10,729 musical works by certain Cox Internet subscribers, between February, 2013 and November, 2014 ("Plaintiffs' Claim Period"). During Plaintiffs' Claim Period, Plaintiffs allege that they or their agents sent Cox certain notices that purported to identify particular acts of infringement by particular subscribers. Unlike in the *BMG* Litigation,[1] Plaintiffs do not claim that Cox blocked those notices.

Despite the fact that this case involves an entirely different set of plaintiffs, different agents who identified the alleged infringements for Plaintiffs (who unlike Rightscorp did not include settlement demands in their notices, and so were not blocked by Cox), and different copyrighted works, Plaintiffs repeatedly claim that it is just like the *BMG* case. In line with this theory, Plaintiffs' discovery served to date seeks in effect the entire discovery and trial record

---

[1] *BMG Rights Mgt. (US) LLC v. Cox Comms., Inc.*, Case No. 14-cv-01611-LO-JFA (E.D. Va.), filed Nov. 26, 2014.

from the *BMG* case without any particular explanation of relevance to this case. This motion is directed at Plaintiffs' effort to obtain two overbroad categories of discovery.

First, Plaintiffs seek certain broad categories of documents from the *BMG* trial, including all trial exhibits and demonstratives from the *BMG* trial, deposition transcripts for Cox fact witnesses, and deposition exhibits for three of BMG's experts and one of Cox's experts.  What Plaintiffs fail to mention is that, over two separate multi-hour meet and confer sessions, Cox already agreed to produce deposition transcripts from the *BMG* Litigation for all of Cox's former or current employees identified in Cox's Rule 26(a) disclosures, and specifically told Plaintiffs' counsel that if Plaintiffs thought any other witnesses were relevant, Cox would consider producing them. Declaration of Jennifer A. Golinveaux (Golinveaux Decl.) ¶¶ 2-3. But Plaintiffs never responded, instead choosing to rush to court without first engaging in a meaningful meet and confer process. Regarding the deposition transcripts for BMG's experts, Plaintiffs never once raised this issue with Cox prior to filing this motion, and they fail to now articulate why these experts (several of whom focused on Rightscorp's system or the *BMG* plaintiffs' damages, neither of which are at issue in this case), are relevant to this case, other than that Plaintiffs may want to engage BMG's experts themselves.

Second, Plaintiffs seek to compel *all* copyright notices sent to Cox from *any* complainant alleging infringement of *any* work for a five-year period from 2010 through 2014. But Cox already agreed to produce all copyright notices sent on behalf of *Plaintiffs*. Plaintiffs fail to articulate any plausible theory of relevance for seeking all third party notices, which would only serve to further complicate an already complex copyright case for the court and the jury, by vastly expanding the scope of depositions and potential witnesses and requiring mini-trials within the trial regarding the third party notices.

To the extent that Plaintiffs' motion is not premature, it seeks vastly overbroad swaths of documents of marginal if any relevance that would serve only to vastly expand a case that already involves more than 10,000 claims of infringement and 58 plaintiffs. It should be denied.

## II.    PROCEDURAL BACKGROUND AND MEET AND CONFER EFFORTS

Plaintiffs served their first set of requests for production of documents ("RFPs") on November 19, 2018. ECF 55-1. Cox timely served its objections on December 4. ECF 55-2. Unlike Plaintiffs, where Cox objected to part of a request, it specified what documents, if any, Cox would agree to produce notwithstanding its objections. *Id.*

Plaintiffs RFPs were vastly overbroad, seeking, as just a few examples, "All documents produced by [Cox] in the BMG Litigation . . ." (RFP 1); "All exhibits used, referenced or introduced during the 2015 trial in the BMG Litigation . . . regardless of whether such exhibits were admitted into evidence" (RFP 2); and "Transcripts of all depositions taken in the BMG Litigation . . ." (RFP 4). ECF 55-1.

The parties met and conferred on both sides' objections for just over an hour on December 12, and for more than two hours on December 14. Golinveaux Decl. ¶ 2. The discussion was productive, with both sides agreeing to continue the meet and confer efforts, including by meeting again to discuss appropriate key words and custodians for identifying relevant documents. *Id.* Although Cox specifically agreed to consider producing deposition transcripts or trial exhibits from the *BMG* Litigation that Plaintiffs identified as relevant to their claims, Plaintiffs never got back to Cox's counsel in response to this offer. *Id.* ¶ 3. Instead, Plaintiffs filed this motion on December 14, less than two hours after the parties ended their second meet and confer session.

III.    **ARGUMENT**

Under the Federal Rules, parties are entitled to seek discovery of "relevant" documents, which they must "describe with reasonable particularity." FRCP 26(b)(1), 34(b)(1)(A). Discovery requests must be "proportional to the needs of the case, considering," among other things, "the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* 26(b)(1). As explained below, the requests that Plaintiffs move on seek patently irrelevant documents; even if a subset of such documents could be relevant (which Cox does not concede), Plaintiffs have failed to describe any such potentially relevant documents with reasonable particularity. Plaintiffs' request for *all* copyright notices Cox received from *any* source over a 5-year period suffers from the same infirmities, and is both vastly over-broad and extremely burdensome.

**A.      Plaintiffs' overbroad demands for documents related to the *BMG* Litigation should be rejected beyond what Cox has already offered to produce.**

In the absence of a basis for the relevance of particular documents—which Plaintiffs have failed or refused to provide—the mere fact that BMG and Plaintiffs both brought the same *type* of case against Cox cannot justify Plaintiffs' attempt to obtain broad discovery from that earlier case. Plaintiffs' attempt to characterize this case as "related" to the *BMG* Litigation vastly overstates the similarities: while both cases involve claims for copyright infringement, the *BMG* Litigation involved different claims; by different plaintiffs; concerning different copyrighted works; where a different agent (Rightscorp) sent an entirely different set of notices, which had specific features not present in this case, and which were blocked by Cox on grounds not applicable here; and Cox pursued different defenses having different factual bases. Courts routinely reject "piggyback" or "cloned" discovery of the type Plaintiffs seek here, and this Court should do the same beyond what Cox has already offered to produce.

4

    1.  **Plaintiffs' demand for all BMG trial exhibits is over-broad and seeks irrelevant documents.**

  Plaintiffs seek to compel Cox to produce documents in response to their RFP No. 2, which demands: "All exhibits used, referenced or introduced during the 2015 trial in the BMG Litigation… regardless of whether such exhibits were admitted into evidence," including "demonstrative exhibits presented at the trial by any party." In their motion, Plaintiffs narrow this overbroad request to seek "Public trial exhibits." ECF 54 (Motion), 54-2 (Proposed Order).

  But in Cox's written objections and during the meet and confer process, Cox explained that Plaintiffs' demand for production of all of the BMG trial exhibits is vastly overbroad and seeks documents not remotely relevant to this case, including documents related to BMG and its alleged copyrights, and many exhibits related to BMG's agent Rightscorp, which Plaintiffs do not claim is at issue in this case.  Golinveaux Decl. ¶ 4-5. Plaintiffs' counsel acknowledged that it has the entire trial transcript from the *BMG* Litigation, and Cox explained that if Plaintiffs simply specified what BMG trial exhibits it considered to be relevant, Cox would consider producing them. *Id.* ¶ 6-7. Plaintiffs' counsel never responded, and instead rushed to court on this motion to compel. *Id.* ¶ 7.

  Plaintiffs' request for all BMG trial exhibits is patently over-broad and seeks irrelevant documents concerning a host of issues that have no bearing on this case. The mere fact that both cases involve the same general *theory* of liability does not make all exhibits from the *BMG* trial relevant here. Among the many issues from the *BMG* trial that lack any plausible relevance to this case are the business and conduct of both BMG and Rightscorp, and the history and nature of their business relationship;[2] the reliability (*vel non*) of Rightscorp's notices; Rightscorp's

---

[2] Plaintiffs have represented to Cox that all of the copyright infringement notices for the works at issue in this case were submitted by the RIAA on Plaintiffs' behalf. Golinveaux Decl. ¶ 5. Accordingly, *none* of the million-plus Rightscorp notices that were a key issue in the *BMG*

business model; technical details about Rightscorp's proprietary software (which is not at issue here); Rightscorp's communications and relationships with other ISPs; settlement demands contained in Rightscorp's notices; BMG's alleged copyrights and damages; and Cox's policies for handling notices containing settlement demands.

Plaintiffs primarily seek to justify their overbroad request by arguing that they have a First Amendment right to trial exhibits. Mot. at 4. Plaintiffs' argument is entirely misplaced: there is no First Amendment right to force a litigation opponent to produce irrelevant documents. Rather, "[t]he purpose of discovery is to provide a mechanism for making **relevant** information available to the litigants." FRCP 26, Notes of Advisory Committee, 1983 (emphasis added). Plaintiffs' cited cases offer no support for their argument, but simply stand for the unremarkable proposition that documents, even those previously treated as confidential subject to a protective order, lose that protection once they have been publicly displayed to a jury in open court. *Level 3 Commc'ns, LLC v. Limelight Networks, Inc.*, 611 F. Supp. 2d 572, 589 (E.D. Va. 2009) (use at open trial meant documents were no longer subject to protective order); *Rambus, Inc. v. Infineon Techs. AG*, 2005 WL 1081337, at *1 (E.D. Va. May 6, 2005) ("previous public use [of demonstrative exhibits] effectively stripped the documents of any protection under the protective order."). That is not the situation here. In light of Cox's offer to consider production of any BMG trial exhibits that Plaintiffs identified as relevant, the Court should deny Plaintiffs' motion with respect to trial exhibits from the *BMG* Litigation as premature.

---

Litigation has any relevance here, just as none of Plaintiffs' notices had any relevance to the *BMG* Litigation.

**2.     Plaintiffs' demand for deposition transcripts from the *BMG* Litigation is both premature and moot.**

Similarly, Plaintiffs ignored Cox's offer of compromise with respect to deposition transcripts from the *BMG* Litigation, choosing instead to rush to court. Golinveaux Decl. ¶ 3. Plaintiffs' RFP No. 4 demanded: "Transcripts of all depositions taken in the BMG Litigation, including any exhibits used during those depositions." ECF 55-1. Although Plaintiffs refused to narrow their request during the meet and confer process by identifying any particular transcripts that Cox wasn't already agreeing to produce, they now ask the Court to compel Cox to produce depositions and exhibits for three current and former Cox employees. Golinveaux Decl. ¶ 3. If Plaintiffs had simply identified these employees as part of the meet-and-confer, Cox would have considered Plaintiffs request, and it is willing to produce those deposition transcripts.

Plaintiffs also seek depositions transcripts of three experts who testified for BMG (not Cox), and one expert who testified for Cox in the *BMG* Litigation. But BMG *never once* raised this issue in the parties' meet and confer correspondence or sessions. *Id.* If it had, Cox would have explained that beyond being irrelevant to this case, the protective order entered in the *BMG* Litigation precludes Cox from producing many of the transcripts and exhibits for BMG's experts.

**a.     Plaintiffs' motion with respect to transcripts of Cox employees is premature.**

In response to Plaintiffs' RFP No. 4, Cox agreed to produce deposition transcripts and exhibits for all Cox employees or former employees that it identified in its Rule 26(a) initial disclosures. Golinveaux Decl. ¶ 3. During the parties' first meet-and-confer discussion on December 12, Cox said it would consider producing additional transcripts from the BMG Litigation, if Plaintiffs would identify the witnesses it sought and explain why they were relevant to this case. *Id.* Later that same day, Cox timely served its initial disclosures, identifying seven

current and former Cox employees whose BMG deposition transcripts Cox had agreed to produce. *Id.* After receiving Cox's initial disclosures, Plaintiffs never identified any additional witnesses, despite the fact that the parties were back on the phone for several hours on December 14. *Id.* ¶¶ 2-3. In this Motion, for the first time, Plaintiffs now identify three additional Cox fact witnesses from the *BMG* Litigation, and explain why they believe their depositions are relevant to this case. Accordingly, Cox will agree—as it would have, without the time and expense of motion practice, if Plaintiffs had simply engaged in a proper meet and confer—to provide deposition transcripts and exhibits for the additional fact witnesses that Plaintiffs have now identified. This portion of Plaintiffs' motion was entirely premature and is now moot.

> **b.    Plaintiffs' demand for confidential expert witness transcripts and exhibits from the BMG Litigation is improper, and such transcripts are irrelevant in any event.**

Plaintiffs also ask the Court to compel Cox to produce deposition transcripts and exhibits for four expert witnesses from the *BMG* Litigation, three of whom (Barbara Frederiksen-Cross, William Lehr, and Terrence McGarty) were *BMG's* experts, not Cox's. In addition to never once raising this issue during meet and confer, Plaintiffs fail to articulate how the depositions of those experts, based on different facts from a different case, are relevant here. Golinveaux Decl. ¶ 3. Rather, they claim that they want the reports and exhibits because they "may want to use … [the] experts as testifying witnesses in this case," and want to "know the positions that Cox's own experts took…" Mot. 8. While the information Plaintiffs seek might increase the "efficiency" of their hiring decisions, that does not make these documents relevant to the case. The Federal Rules preclude use of expert opinion unless it is "base[d] on facts or data **in the case** that the expert has been made aware of or personally observed." Fed. R. Evid. 703 (emphasis added). Expert opinions that are based on facts and data from outside the case are neither admissible nor relevant. Plaintiffs are free to hire experts of their choice, but they should not be permitted to use

8

the discovery process to vet their experts. Even if that were a proper goal of discovery (which it is not), Plaintiffs have the entire trial transcript from the *BMG* Litigation at which these experts testified, including their testimony regarding qualifications, undercutting the need for additional, redundant testimony.

In addition, to the extent the transcripts or exhibits were designated as confidential by BMG, Rightscorp, or a third party in the *BMG* Litigation, they are subject to the protective order in that case, and Cox is forbidden from producing them. *See* BMG ECF No. 46, § 6.7 (E.D. Va. Case No. 14-cv-1611) (a party may produce protected information for discovery purposes only in response to a "subpoena or order," and only after giving the owner of the information an opportunity to object and intervene). Of course, Plaintiffs could seek to obtain protected information from the party that owns the information, by serving a subpoena on the party— which they should have done in the first place, knowing that Messrs. Frederiksen-Cross, Lehr, and McGarty were BMG's expert witnesses. Mot. 7-8. Because much of the information Plaintiffs seek was designated confidential by BMG or Rightscorp, Cox could not produce it even it were relevant (which it is not). For example:

- Twelve of the 16 exhibits to Ms. Frederiksen-Cross's deposition were designated HIGHLY CONFIDENTIAL or HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY SOURCE CODE by BMG or Rightscorp pursuant to the protective order; nine of those exhibits contain portions of Rightscorp's confidential source code;

- Mr. Lehr's entire deposition transcript and two of his six exhibits were designated as HIGHLY CONFIDENTIAL and HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY by BMG;

- Four of the exhibits used at Mr. McGarty's deposition were designated HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY by BMG or a third party;

- Two of the key exhibits used at Mr. Sullivan's deposition were marked HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY because they included confidential financial information belonging to BMG

Moreover, the testimony of these experts lacks relevance to this case. Ms. Frederiksen-Cross's testimony was largely devoted to the reliability of Rightscorp's system and data, neither of which are at issue here. Mr. Lehr testified about damages suffered by BMG (and Round Hill, BMG's co-plaintiff, which was subsequently dismissed from the case), but the Court ultimately limited Mr. Lehr's trial testimony, (which Plaintiffs already have) to his calculations of the profit to Cox from infringement of BMG's works at issue. Mr. McGarty, a technology executive and investor, testified primarily about his opinion of how Cox could have handled Rightscorp's notices, while conceding that he had not inspected Cox's technology for handling infringement notices, and had never designed or implemented such a system himself. And Mr. Sullivan's analysis and testimony was largely concerned with his calculations of the actual harm suffered by BMG and Round Hill, which is completely irrelevant here.

The testimony of these experts is not relevant to this case, Cox is precluded from producing the designated material pursuant to the BMG protective order, and Plaintiffs never sought to meet and confer on production of BMG expert depositions prior to filing this motion. Plaintiffs' motion to compel production of the transcripts of these experts should be denied.

**3.      Interrogatory responses from the *BMG* Litigation lack relevance to this case and constitute improper "cloned" discovery.**

Plaintiffs also demand responses to interrogatories from the *BMG* Litigation that sought information about parties, facts, and issues from the BMG case. During the parties' meet-and-confer, Plaintiffs failed to explain why Cox's interrogatory responses were categorically relevant here, and failed to specify what specific information Plaintiffs sought. Golinveaux Decl. ¶ 8. Instead, Plaintiffs simply claimed that they were entitled to any and all of Cox's "prior sworn statements." *Id.* Plaintiffs' demand is a transparent attempt to evade the Federal Rules' limits on interrogatories, by seeking broad discovery while dodging the requirement to specify what

relevant information they seek. Courts have routinely rejected similar attempts to "clone" discovery from other cases. Instead, a party seeking discovery "must make proper requests describing the information in which they are interested." *Midwest Gas Servs., Inc. v. Indiana Gas Co.*, No. IP 99-690-C-D/F, 2000 WL 760700, at *1 (S.D. Ind. Mar. 7, 2000) ("the plaintiffs are interested in the content of documents and for that they must make proper requests describing the information in which they are interested. The plaintiffs' counsel must do their own work and request the information they seek directly."); *and see, e.g.*, *Wollam v. Wright Med. Grp., Inc.*, 2011 WL 1899774, at *1 (D. Colo. May 18, 2011) ("agree[ing] with the many courts that have considered the question and have held that cloned discovery is not necessarily relevant and discoverable," and collecting cases.). As these courts recognize, a party seeking cloned discovery abrogates its duty under the Federal Rules to "describe with reasonable particularity" the *relevant* documents it seeks. Fed. R. Civ. P. 26(b)(1), 34(b)(1)(A). So too here, where Plaintiffs' demand for all interrogatory responses encompasses BMG's requests for information about irrelevant subjects including multiple requests for detailed information about works owned by BMG and its co-plaintiff Round Hill Music; multiple requests for information relating to Rightscorp's notices, as well as Cox's attempts to access information from Rightscorp. Golinveaux Decl. ¶ 9.

For these reasons, the Court should reject Plaintiffs' demand for discovery "cloned" from the *BMG* Litigation.

### B.    Plaintiffs' demand for *all* infringement notices Cox received over a 5-year period is massively over-broad, extremely burdensome, and seeks irrelevant documents.

Plaintiffs' RFP No. 11 seeks: "All Infringement Notices received by Defendants from any rights holder," for the 5-year period from January 1, 2010 through December 31, 2014. ECF 55-1. This demand for *all* infringement notices from a five-year period seeks patently irrelevant

documents, is massively overbroad and extremely burdensome, and would create a series of mini-trials that will waste the Court's and the jury's time and money.

Plaintiffs argue, incorrectly, that "all notices" are relevant because they "illustrate the large-scale copyright infringement [of third-party works] occurring on Cox's network, and the fact that Cox had actual knowledge of that infringement." Mot. 9. But the Fourth Circuit expressly rejected precisely this theory less than a year ago, in the *BMG* Litigation. There, the Fourth Circuit held that "contributory infringement … require[s] that Cox knew of *specific* instances of infringement or was willfully blind to *such instances*." *BMG*, 881 F.3d 293, 312 (emphases added); *see id.* at 311 ("Cox maintains that such 'generalized knowledge—that infringement was occurring somewhere on its network—is exactly what falls short under *Sony*.' We must agree."). Even if the mere receipt of copyright infringement allegations could suffice to give Cox actual knowledge of *any* infringements, under the governing legal standard, Cox's awareness of alleged infringements of third party works is irrelevant to whether Cox had actual knowledge of specific infringements of *Plaintiffs'* works.

Plaintiffs also fundamentally mischaracterize a decision from the *BMG* Litigation to argue (incorrectly) that because the Court previously held that certain Cox *emails* from before 2013 were relevant to show "Cox's overall system for addressing infringement," that ruling applies equally to *any* document from outside Plaintiffs' Claim Period. In particular, Plaintiffs appear to argue that the BMG court's ruling implies that any and all copyright infringement notices from before February, 2013 are *per se* relevant to Plaintiffs' claims here. Mot. 9-10. But of course, the court held no such thing in the *BMG* Litigation. The decision Plaintiffs cite concerned a handful of internal Cox emails, discussing Cox's policies and practices for enforcement of its infringement policies and procedures. The BMG court found those particular

emails at issue were relevant to Cox's copyright policies and to Cox's decision to block

Rightscorp's notices. Just because a handful of specific emails from before 2013 may be relevant

to a specific issue in another case, does not mean that *all* copyright infringement notices received

by Cox going back to 2010, regardless of their sources, are therefore relevant in *this* case. In

particular, the BMG court's ruling did not address the relevance of third-party infringement

notices: indeed, BMG, presumably recognizing their irrelevance, never sought such notices.

Even if all notices from a five-year period were somehow marginally relevant, which

they are not, they would be extremely burdensome to produce: Cox estimates that even

attempting to locate and extract all copyright infringement notices would take approximately two

to four days of engineer time, and two to four weeks of around-the-clock computer processing

time. Declaration of Brent K. Beck ¶¶ 2-7. The resulting data would be massive, occupying

roughly 78 gigabytes of storage space, which if printed would be well in excess of ten million

pages. *Id.* ¶ 8.

Third party copyright notices would also necessarily lead to a series of trials-within-a-

trial:  assessing the relevance of third party notices and the appropriateness of Cox's response

thereto would require evidence concerning the reliability of the various technologies behind all

of the various notices and senders, as well as potentially seeking discovery from the third party

notice senders, copyright owners, and Internet users who were the subject of notices. This

irrelevant side show would be a massive waste of the Court's and the jury's time.[3]

---

[3] In addition, to date Plaintiffs have propounded approximately a dozen other document requests that seek additional documents based on Plaintiffs' demand for "all notices," indicating that Plaintiffs intend to build on this already burdensome request to impose still greater burdens on Cox. To take just a few examples, RFP 18 seeks "All documents concerning any Infringement Notice…", and RFP 22 demands information about "[the] subscribers associated with [all] Infringement Notices." ECF 55-1.

For all of the above reasons, the Court should deny Plaintiffs' motion.


Dated: December 19, 2018

/s/ / Thomas M. Buchanan /
Thomas M. Buchanan (VSB No. 21530)
WINSTON & STRAWN LLP
1700 K Street, NW
Washington, DC 20006-3817
Tel: (202) 282-5787
Fax: (202) 282-5100
Email: tbuchana@winston.com

*Attorneys for Defendants Cox Communications, Inc.
and CoxCom, LLC*

*Of Counsel for Defendants*

Michael S. Elkin (*pro hac vice*)
Thomas Patrick Lane (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Tel: (212) 294-6700
Fax: (212) 294-4700
Email: melkin@winston.com
Email: tlane@winston.com

Jennifer A. Golinveaux (*pro hac vice*)
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111-5840
Tel: (415) 591-1000
Fax: (415) 591-1400
Email: jgolinveaux@winston.com

Diana Hughes Leiden (*pro hac vice*)
WINSTON & STRAWN LLP
333 S. Grand Avenue, Suite 3800
Los Angeles, CA 90071
Tel: (213) 615-1700
Fax: (213) 615-1750
Email: dhleiden@winston.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 19, 2018, the foregoing was filed and served electronically by

the Court's CM/ECF system upon all registered users.


<u>/s/ /*Thomas M. Buchanan*/</u>
Thomas M. Buchanan (VSB No. 21530)
1700 K Street, NW
Washington, DC 20006-3817
Tel: (202) 282-5787
Fax: (202) 282-5100
Email: tbuchana@winston.com

*Attorney for Cox Communications, Inc.*
*and CoxCom, LLC*