## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

SONY MUSIC ENTERTAINMENT, *et al.*,

     Plaintiffs,

v.

COX COMMUNICATIONS, INC., *et al.*,

     Defendants.

Case No. 1:18-cv-00950-LO-JFA

## REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL

     Hoping to distract from its own stonewalling, Cox accuses Plaintiffs of rushing to Court prematurely with its motion to compel.  That is simply not true.  Plaintiffs have conferred over their request for BMG trial exhibits and other materials for months to no avail and the issues are ripe for judicial review.  Regarding the BMG case materials, Judge O'Grady already acknowledged that cases are related.  The requested trial exhibits, deposition transcripts and interrogatory responses from the BMG case are relevant, push-button ready and Cox claims no burden in producing them.  Regarding infringement notices from other copyright owners, Cox misstates Plaintiffs' position, confuses or ignores the law, and overstates the burden of complying with the request.  The notices are relevant to, among other things, prove Cox's continued provision of service to specific known infringers and its willfulness in doing so.  It does not matter whether Cox obtained notice from Plaintiffs or somebody else; it is still notice.  The discovery is important, not disproportionate, and Plaintiffs' motion should be granted.

## BACKGROUND

     The overlap between this case and the BMG case is overwhelming.  The BMG case is not, as Cox claims, relevant because of "the mere fact that both cases involve the same general *theory*

of liability." Opp. at 5 (Cox's emphasis).  The Defendants and conduct are also the same, *i.e.*, Cox deliberately turned a blind eye to, and failed to take reasonable measures to prevent, repeat copyright infringement by its subscribers.  Even the time periods overlap.  There are differences, but the similarities are material and, accordingly, Judge O'Grady accepted the case as a related matter.  In denying Plaintiffs' Motion to Transfer, he noted that "it involves the same Defendants and similar claims," and that similar discovery issues "were likely to come up."  Dkt. 51-6.

Cox already collected and produced many relevant documents I, the BMG case, which should be produced.  Despite being well-positioned to make a substantial document production on day one, Cox has produced just seven deposition transcripts and associated deposition exhibits to date.  The transcripts are limited to witnesses Cox identified in its Rule 26(a)(1) disclosures, upon whom Cox intends to rely.  Cox did not even produce the transcripts for all of the witnesses it identified as relevant in its failed motion to transfer.  Declaration of Jeffrey M. Gould ("Gould Decl."), ¶ 3.  Plaintiffs, by contrast, have produced to Cox a total of 286,394 documents and 301,369 pages, with more to come on a rolling basis.  *Id.*, ¶ 4.

The parties have been engaged in meet and confer discussions on a number of issues and Plaintiffs hope that intensive motion practice can be avoided.  Cox's contention that Plaintiffs failed to engage in a meaningful meet and confer lacks any basis.  The two disputes before the Court are ripe and raise important threshold issues that require immediate resolution.  It is only now that these issues are before the Court that Cox back-pedals.  Before Plaintiffs filed their motion, Cox made its positions clear and absolute, in some cases for months.  Cox has already litigated many of the same facts and issues in the BMG case.  Plaintiffs are playing catch-up.  With limited time for discovery, Plaintiffs cannot sit and wait.

## ARGUMENT

I.   **BMG Trial Exhibits, Deposition Transcripts and Interrogatories Are Overwhelmingly Relevant and Should Be Produced**

### A.  BMG Trial Exhibits And Demonstratives

Cox initially refused to produce any documents in response to Plaintiffs' request for trial exhibits and demonstratives from the BMG case.  It took the indefensible position that because some items of little or no relevance are comingled with many relevant documents, it would produce nothing.  Cox later indicated a willingness to engage in a discussion of relevance and consider production on a trial exhibit-by-trial exhibit basis.  But that is merely a delay tactic and an improper attempt to shift Cox's burden to defend its objections.  Plaintiffs are hamstrung to argue exhibit-by-exhibit why each document is relevant since Plaintiffs do not have the exhibits.

Cox does not dispute the relevance of many or most of the exhibits.  Nor could it.  This case, like BMG, involves Cox's continued provision of service to specific known infringers based on infringement notices.  Exhibits concerning Cox, its policies, conduct and communications concerning copyright and infringement notices, the notices sent to it, and its finances are relevant and must be produced.  It is no doubt more efficient and simpler for Cox to produce the entire set of exhibits, which are already public documents (though inaccessible).  The Court should compel the entire set given their relevance, for efficiency, and in the interest of public access to public court materials.

### B.  The Requested Deposition Transcripts From the BMG Case Are Relevant and Should Be Produced

#### i.  Cox's fact witnesses

Pressed before the Court, Cox changes course and attempts to portray itself as reasonable in agreeing to produce deposition transcripts for three Cox fact witnesses it previously refused to even identify.  Cox's contention that Plaintiffs' motion is premature is revisionist history and

misses the point.  Plaintiffs asked Cox to identify the witnesses deposed in BMG whose deposition transcripts it was withholding.  Cox flatly refused to provide that information, instead making cryptic references to Rule 26(a)(1) disclosures it had not yet served.  Gould Dec., ¶ 6.

Plaintiffs do not know all the witnesses deposed in the BMG case.  While Cox has reversed course, now agreeing to produce deposition transcripts for the three fact witnesses Plaintiffs identified in their motion, they still have not told Plaintiffs (or the Court) if any other Cox witnesses were deposed in BMG.  Plaintiffs did not move to compel transcripts for just three fact witnesses.  Plaintiffs listed them as representative examples of fact witnesses not listed in Cox's Rule 26(a)(1) disclosures but who nonetheless provided relevant testimony.  Mot. at 6 ("Plaintiffs are aware of *at least* three fact depositions Cox is improperly withholding") (emphasis added).

Plaintiffs seek those deposition transcripts that bear upon facts and issues applicable in this case.  It is no leap to say that testimony and exhibits are relevant where Cox's fact witnesses (and certain experts) discuss Cox's policies, Cox's conduct and communications concerning copyright and infringement notices, the notices sent to Cox, and Cox's finances, among other potential topics.  If Cox is withholding other Cox fact witness depositions from the BMG case, it should produce them.

## ii.  Four experts from the BMG case

Cox's relevance and confidentiality objections to producing the four expert deposition transcripts requested miss the mark.  Plaintiffs narrowly tailored their motion, identifying only those four experts who offered opinions and reports related to Cox's misconduct.  While Cox focuses on other aspects of their work involving BMG or Rightscorp, it does not dispute that:

- Barbara Frederiksen-Cross testified about the technical aspects of the Bit Torrent protocol and the worthlessness of Cox's Copyright Abuse Tracking System (CATS).

- William Lehr testified about the nature of harm caused to copyright holders by infringement and the difficulty of quantifying that harm. He also presented a model for analyzing Cox's financial benefits from and incentive to tolerate infringement.

- Terrence McGarty testified about what a responsible ISP could do to limit or prevent infringement it knows is occurring on its network, as well as the operational and logistical limitations of Cox's CATS and Cox's right and ability to control infringement occurring through its network.

- Richard Sullivan analyzed the effects of infringement on Cox and offered a damages model assessing lost revenue to the copyright holder and financial benefit to Cox.

All of these issues are present here. Cox ignores the reasons why these experts' deposition transcripts are relevant, only arguing that other portions may not be. But Cox should not be permitted to withhold whole transcripts because some parts may discuss other topics. That is not how discovery works. Parties routinely produce documents in discovery that contain both relevant and non-relevant information. This is no different. To the extent some portion of the testimony within a deposition transcript is irrelevant, that is not a basis for withholding its production when it also contains relevant testimony and may provide useful context. *See e.g.*, *Bartholomew v. Avalon Capital Grp., Inc.*, 278 F.R.D. 441, 451 (D. Minn. 2011) (requiring production of irrelevant information because "irrelevant information within a document that contains relevant information may be highly useful to providing context for the relevant information.") Plaintiffs are entitled to testimony that may refute Cox's positions or otherwise assist Plaintiffs' case.

Cox's confidentiality objection is also overstated. Cox can, of course, produce its own confidential information, and Plaintiffs are not seeking BMG's or Rightscorp's confidential information. Regardless, and as Cox concedes, the Protective Order in the BMG case authorizes a party to produce information protected thereunder by "subpoena or order" with an opportunity for the owner to object. Opp. at 9. This Court can so order its production. As for subpoenas, discovery should ordinarily be sought from the parties before dragging third parties into legal

5

proceedings. And had Plaintiffs gone first to BMG, they would be in the reverse position—BMG could agree to give its confidential information but not Cox's, which is what Plaintiffs seek.

To the extent third-party confidentiality concerns must be protected, the transcripts can be produced without the third-party exhibits referenced in Cox's brief and with redactions of testimony regarding those documents. Cox wants to use a cannon to kill a fly, but pencil-thin redactions would address its concerns. Given the size and scope of this case, simple redactions do not present any undue burden.

### C.  Interrogatory Responses

Cox's tactic on its interrogatory answers is the same as with the trial exhibits and deposition transcripts. Now that it is before the Court, Cox portrays itself as reasonable and willing to engage in an interrogatory-by-interrogatory discussion of what it might be willing to produce. Beforehand, Cox steadfastly refused. Without submitting its interrogatory responses for *in camera* review, Cox self-servingly informs the Court of aspects therein it believes are not relevant. As above, however, it does not dispute they include relevant matter. It is no stretch to believe that interrogatory responses from a materially similar case are relevant and should be produced. Plaintiffs do not possess the interrogatories and thus cannot point to which specific interrogatories must be produced. Without the interrogatories, Cox's demand that Plaintiffs engage in such exercise is a fool's errand.

### II.    Copyright Infringement Notices

Cox makes three arguments against producing third-party copyright infringement notices: relevance, burden, and trial management. None are persuasive. The discovery is important, proportional to the needs of the case, and does not present an undue burden.

## A.  Copyright Infringement Notices From Others Are Relevant

In arguing that third-party copyright infringement notices are irrelevant, Cox distorts Plaintiffs' position and ignores the law.  First, Cox incorrectly claims that Plaintiffs rely solely on notices sent to Cox by the Recording Industry Association of America ("RIAA"), supported by a company called MarkMonitor.  Second, Cox seems to assert that infringement notices provide notice only of works infringed, not the individuals engaged in infringement.  Opp. at 5-6 n.2 and 11-13.  Both arguments fail.

In Plaintiffs' discovery objections, Plaintiffs repeatedly stated that they "reserve the right to rely on any copyright infringement notices Cox received."  During the parties' meet and confers on December 12 and 14, and in Plaintiffs' written responses served on December 19, Plaintiffs repeated the same.  They specifically informed Cox that, at a minimum, Plaintiffs are relying upon RIAA/MarkMonitor notices.  In each instance, Plaintiffs expressly told Cox that they reserve the right to rely on any copyright infringement notices it received.  Gould Decl., ¶ 7.

Plaintiffs seek discovery of other copyright infringement notices because they are relevant, among other things, to specific knowledge of specific repeat infringers.  Plaintiffs explained in their motion:  "if a subscriber that repeatedly infringed Plaintiffs' copyrights also engaged in rampant movie piracy, Cox's failure to terminate that subscriber's account is even more reprehensible and something a jury can assess when determining both liability and damages."  Mot. at 9.  But Cox ignores that example and the argument that discovery other copyright infringement notices is relevant to specific knowledge of specific repeat infringers, a theory of liability that the Fourth Circuit expressly endorsed.  As the Fourth Circuit indicated, Cox is liable for contributory infringement if it "knew of specific instances of infringement or was willfully blind to such instances."  *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 881 F.3d 293, 312 (4th Cir.

2018).   In this case, Plaintiffs advance that very theory of infringement.  Plaintiffs seek the third-party notices as supporting evidence.

Third-party notices do not only show generalized knowledge that infringement was occurring somewhere on its network, as Cox contends.  Rather, they also show specific instances of copyright owners informing Cox, under penalty of perjury, of particular infringing subscribers. Those notices enable the "defendant [Cox] to have specific enough knowledge of infringement that the defendant [Cox] could *do* something about it."  *Id.*  Thus, they are relevant both to liability (*i.e.*, knowledge of particular subscribers engaging in infringement, including potentially some also identified in the RIAA/MarkMonitor notices) and willfulness (*i.e.*, knowledge and acceptance of many different particular subscribers engaging in rampant and repeated infringement).  Cox seeks to add into the Fourth Circuit's standard a requirement that knowledge come exclusively from the *plaintiff* copyright owner in suit.  But nothing in the Court's opinion suggests anything of that nature.

Cox also overreaches attempting to distinguish the Court's prior ruling on the relevance and admissibility of documents pre-dating the alleged claim period in BMG.  Opp. at 12.  While that motion involved Cox's bad emails pre-dating the claim period, the Court could not have been clearer that documents bearing on Cox's knowledge and conduct in handling copyright abuse preceding the claim period were relevant.  The same is true of Cox's receipt and handling of hundreds of thousands (or more) infringement notices here, whether before or during Plaintiffs' claim period.

### B.  Cox's burden objection is unpersuasive

Cox's burden arguments are overblown.  As an initial matter, it is unclear from Cox's brief whether it objects on burden to collecting and producing the notices themselves, or just data from a database that records pertinent information from the notices.  Cox's counsel indicated in the

parties' meet-and-confer that Cox has a database with information about notices, though was unaware of the details.  Gould Decl., ¶ 8.  If Cox can produce the requested notice data from a database rather than collecting and producing the notices themselves, its burden objection fades away.  The parties did not reach that issue in detail, however, because Cox stood categorically on its relevance objection.

In either case, the affidavit of Brent K. Beck that Cox submits in support of its opposition is unpersuasive.  The engineering time supposedly required to accomplish the production is not unreasonable given the magnitude of this case and the centrality of the notice data.  Cox likely spent more on attorney and engineer time preparing the affidavit and accompanying motion to seal.  Likewise, the length of the supposed computer processing time bears no weight here.  Cox omits any mention of what resources would be devoted to that processing and whether additional computing resources could speed it up.  Moreover, even if a computer ran continuously for several weeks, why is that a disproportionate burden?  Cox does not claim it would be disruptive or that the computer resources are unavailable.  In the end, if Cox needs several weeks before it can produce the data, so be it.  In terms of the volume of data that Cox cites, that is not an issue; indeed, ten times the volume can easily be stored on a $50 external hard drive.[1]  And while Cox makes arguments about the volume of pages, that is only because of the widespread infringement by its subscribers, which it embraced and profited from for years.

### C.  The Court is capable of overseeing an organized and efficient trial

In a last-ditch effort to stave off producing third-party infringement notices, Cox argues that doing to "would also necessarily lead to a series of trials-within-a-trial."  Opp. at 13.  This puts the cart before the horse.  The standard for discovery is relevance, not hypothetical concerns about the downstream impact such discovery might have at trial.  Cox's concern, if real, can be

---

[1] https://www.bestbuy.com/site/wd-easystore-1tb-external-usb-3-0-portable-hard-drive-black/5792404.p?skuId=5792404

addressed in a motion *in limine*.  In any event, the Court is well-capable of overseeing a trial. Expert witnesses will do the primary review and analysis of these notices, assisting the jury in understanding Cox's misconduct.  Cox's receipt of notices sent under penalty of perjury, presumably with very few (if any) counternotices, bears directly on liability and damages.  For the sake of corporate profit, Cox disregarded the notices and continued to provide service to known infringing subscribers.  After the fact, Cox may wish to put the technology behind the notices and senders on trial.  But that is side-show and not a reason to avoid providing clearly relevant discovery on the existence and contents of infringement notices Cox received and disregarded.

Respectfully Submitted,

Dated December 20, 2018

/s/ *Scott A. Zebrak*
Scott A. Zebrak (38729)
Matthew J. Oppenheim (*pro hac vice*)
Jeffrey M. Gould (*pro hac vice*)
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Avenue, NW, 5th Floor
Washington, DC 20015
Tel:  202-480-2999
scott@oandzlaw.com
matt@oandzlaw.com
jeff@oandzlaw.com

*Attorneys for Plaintiffs*