1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division


```
-------------------------------:
                               :
SONY MUSIC ENTERTAINMENT, et al.,:
            Plaintiffs,        :
                               :
    -vs-                       :    Case No. 1:18-cv-950
                               :
                               :
COX COMMUNICATIONS, INC., et al.,:
            Defendants.        :
                               :
-------------------------------:
```


HEARING ON MOTIONS


December 21, 2018


Before:  John F. Anderson, U.S. Mag. Judge


APPEARANCES:

Matthew J. Oppenheim, Scott A. Zebrak, and Jeffrey M. Gould,
Counsel for the Plaintiffs

Thomas M. Buchanan and Jennifer A. Golinveaux,
Counsel for the Defendants

1          NOTE:  The case is called to be heard at 10:47 a.m.

2    as follows:

3          THE CLERK:  Sony Music Entertainment, et al. versus

4    Cox Communications, Inc., et al., civil action number

5    18-cv-950.

6          THE COURT:  You need to introduce yourselves for the

7    record.

8          MR. ZEBRAK:  Good morning, Your Honor.  Scott Zebrak

9    of Oppenheim + Zebrak, counsel for the plaintiffs.  And with me

10   today are my colleagues Matthew Oppenheim and Jeffrey --

11         MR. OPPENHEIM:  Good morning, Your Honor.

12         MR. ZEBRAK:  And Jeffrey Gould.  And Matthew

13   Oppenheim will be arguing on behalf of plaintiffs today.

14         THE COURT:  Okay, thank you.

15         MR. BUCHANAN:  Good morning, Your Honor.  Thomas

16   Buchanan on behalf of the defendant Cox.  With me today is my

17   partner, Jennifer Golinveaux, from our San Francisco office.

18         THE COURT:  And who is going to argue for Cox.

19         MR. BUCHANAN:  I will be arguing, Your Honor.

20         THE COURT:  Thank you, Mr. Buchanan.

21         Okay.  Well, just one thing.  If the parties

22   throughout -- you can go ahead and have a seat.  If the parties

23   intend to take advantage of the expedited briefing schedule on

24   any motions in this case, the party filing the motion who makes

25   the decision to do that has to be prepared to file a reply

1    before the close of business the day before the motion gets

2    filed.

3             You know, the idea of filing a reply at 6 o'clock on

4    Thursday when the motion is being heard at 10 o'clock on Friday

5    morning, isn't very practical.  And it was, you know, the

6    moving party's decision to do the expedited briefing schedule.

7    And so, if you decide to do that, you need to be prepared to

8    file a reply in a time period in which the Court has time to

9    consider it before the argument.

10            I don't need to hear any response.  This goes for

11   both sides.  So I suspect this isn't the motion -- only motion

12   I'm going to be hearing in this case, and I want to try and set

13   the ground rules now so that we don't run into this going

14   forward.

15            You know, I have had an opportunity to review all the

16   pleadings, and I understand they're -- while it gets raised as

17   two issues, it really is four issues that are in front of the

18   Court:  The trial exhibits, the public trial exhibits; the fact

19   witnesses; the expert witness depositions; the answers to

20   interrogatories; and then the copyright notice issue.

21            I'm going to do it a little bit piecemeal.  I am

22   going to hear argument from the plaintiff first on the trial

23   exhibits, hear any response from the defendants that I think is

24   necessary, and then I will take up the other issues separately

25   or together.  We will see how that works out.  Okay?

4

1          So let's hear about the trial exhibits first.

2          MR. OPPENHEIM:  Very well.  And thank you, Your

3    Honor.

4          As Your Honor no doubt understands from having

5    reviewed the filings, this case is closely related to the BMG

6    versus Cox case that was previously before this Court.

7          The plaintiffs in this case are a number of record

8    companies and music publishers, they have brought secondary

9    infringement claims against Cox.  Both cases involved both

10   contributory and vicarious liability claims.  And the theories

11   of the cases were largely the same, which were that Cox's --

12         THE COURT:  This case is different.  I mean, this is

13   not a case in which you had the settlement demands that were

14   put in the notice and Cox cut them off.  I mean, so the facts

15   and circumstances are not the same.  You're right, the legal

16   theory is the same, the defendant is the same.  The plaintiffs

17   are different and the copyrighted works are different.

18         MR. OPPENHEIM:  No doubt that is true, Your Honor.

19   The claim, the underlying theory in the Rightscorp --

20         THE COURT:  The point I need to have you address is,

21   why do you need the public trial exhibits from the BMG case?

22   And what efforts did you get to get them either from the

23   Clerk's Office here or the Fourth Circuit?  I mean, I assume

24   that all the trial exhibits were part of the record on appeal

25   to the Fourth Circuit.

1          MR. OPPENHEIM:  Your Honor, I actually attended and

2   observed, as did my colleague, good portions of the trial when

3   it occurred.  And immediately after the -- or I shouldn't say

4   immediately.  Within weeks of the verdict being rendered, we

5   reached out to the court reporter to get not only the full

6   transcript of the case, of the trial, but all of the exhibits.

7   Obviously the court reporter didn't have the exhibits.

8          We reached out to the court clerk.  The court clerk

9   didn't have the exhibits.

10          We reached out to Judge O'Grady's clerk to see if we

11   could get a copy.  Everybody said to us we needed to reach out

12   to the parties, nobody had it.

13          We have been asking Cox for the exhibits from before

14   this case was even filed, and they have refused to give it to

15   us.

16          Frankly, Your Honor, this shouldn't be a discovery

17   request.  This was a public trial with a public record.  Those

18   exhibits are part of the public record.  And I actually think

19   that the Rambus decision that we cited in our motion is

20   directly on point.  Actually, that case goes even further than

21   we need it to go.  That was a case that involved

22   demonstratives, I believe, on an argument, not on a trial.

23          Here, this was a public trial on a case that whether

24   it had slightly different notices or not, with the same

25   defendant on the same theory of continued provision of service

1   to known infringers.  And all we want to do is get the

2   exhibits.

3            Judge O'Grady in deciding the transfer motion that

4   Cox brought, and in rejecting it, recognized that there would

5   be great efficiencies in having this case before this Court.

6            THE COURT:  You're going to have to plow your own

7   road in this case.

8            MR. OPPENHEIM:  No doubt.

9            THE COURT:  And, you know, the idea that, you know --

10  well, you're going to have to plow your own road in this case.

11  But the issue with the trial exhibits I think is different than

12  other discovery matters, and that's why I want to take this one

13  up separately because I think there are other considerations

14  there.

15           MR. OPPENHEIM:  I do agree, it is different.  I

16  believe the other -- there are other arguments on the other

17  issues.  But on this, this was a public trial, these are

18  supposed to be part of a public record.  What part of stare

19  decisis in our judicial system is public if the exhibits aren't

20  available?

21           And this is not some instance where we're seeking

22  them for some improper purpose.  We're seeking them because

23  they are directly related to what we want to put forward before

24  this Court.

25           The defendants are acutely aware of them.  They have

7

1    all of these exhibits.  They are going to rely on these

2    exhibits.  They are going to rely on that transcript.  We

3    should have the same level playing field here, Your Honor.

4            THE COURT:  Okay.  Mr. Buchanan, let me hear from you

5    on the public trial exhibits.  And one of the things that --

6    and I went back to look at the record in the first trial -- and

7    I know you weren't involved in the first trial.  But as you

8    know, it's not uncommon for cases, once they are completed, for

9    the Court to release the exhibits to the parties with the

10   understanding that the parties would be retaining those

11   exhibits for any purposes.

12           The docket sheet doesn't reflect that was actually

13   done in the first trial, but I suspect if the Clerk's Office

14   says, we don't have the exhibits, then the exhibits were

15   probably released to the lawyers.

16           Do you know whether that is in fact the case or not?

17           MR. BUCHANAN:  I think that's true.  I believe -- I

18   believe it was true.  And I think it went to the other lawyers

19   that represented them in the first trial.

20           But if I could maybe address that.  The plaintiffs

21   seem to suggest that all they have to do is ask for something,

22   say it's available, and they get it.  But there is a standard

23   to establish if it's reasonably particularly relevant to the

24   case.  They've never, you know, pointed that out.

25           And I would say, they had all the pleadings in that

1  case since 2005.  They attended the trial.  They have had all

2  the trial testimony.  They have had the post-trial cites.  So

3  what is it they want?

4           So in that case you have copyrights and proof of

5  copyright ownership that have no relevance to this case.  You

6  have proof of infringement by Rightscorp, has no relevance to

7  this case.  Notices from Rightscorp.  Contracts between

8  Rightscorp and BMG.  BMG contracts.  Rightscorp's discussions

9  with us.  It is not in any way relevant.

10           What we have said is, you have the transcript, you

11  now have seven of the ten fact witnesses' deposition

12  transcripts and exhibits.  We're giving the other three today.

13  Between all of those exhibits and all that testimony and the

14  trial testimony, you can identify within the trial transcript a

15  particular exhibit that you believe you want and we will

16  address that and probably produce it.

17           But the notion that we're going to produce 20 boxes

18  of copyrights and proof of copyrights, all these dealings with

19  Rightscorp, and their code and methodology, I mean, that is

20  just not relevant.  We don't want to go down that road because

21  it creates mischief.  Because then we lead to discovery and

22  they have got all this stuff and they're asking every witness

23  about all these things, and we are going to relitigate that

24  case.  And that's what we want to avoid.

25           So that's what we proposed as a solution.  You can go

1    through the transcript, find an exhibit, it is described.  If

2    you want that and we haven't given it to you -- they're

3    probably going to get it all.

4            In fact, in their response -- their reply brief they

5    emphasize they want the methodology we used and the practice

6    and procedures and those witnesses.  That's all contained in

7    either the trial transcript or the depositions and exhibits we

8    gave them.  It's all in there, all the factual information that

9    is relevant to Cox and how they dealt with notices.

10           THE COURT:  Okay.  All right.  Well, I think I

11   understand this issue.  It was fairly fully briefed.

12           And again, I want to make sure the parties

13   understand, I'm considering this one as a different issue

14   necessarily than discovery-related materials in the first --

15   the BMG trial.  I mean, I think -- my ruling is going to be

16   that the public trial exhibits and the demonstratives should be

17   made available for their inspection and copying.  So if you're

18   concerned about, you know, the amount of copying that needs to

19   be done, then you can make arrangements for them to come in and

20   decide whether they want the, you know, copyright registrations

21   that were produced by BMG produced in this case.

22           I mean, obviously, that doesn't seem to be anything.

23   But the one thing I don't want us to have to be doing is coming

24   in here every week and arguing whether this trial exhibit was

25   relevant or not relevant and having a mini-trial as to what is

1    relevant and what isn't.

2           Given the public nature of the trial, given that

3    typically in this court the lawyers retain the exhibits with

4    the understanding that if there is a need for them to be

5    produced, either in the Fourth Circuit or somewhere else, they

6    will make them available, I am going to require that the public

7    trial exhibits and the demonstratives be produced.

8           All right.  You're producing the three fact

9    witnesses' depositions --

10          MR. BUCHANAN:  Just to -- Judge, if I may, you said

11   to produce.  Does that mean that we make it available for them

12   to inspect and copy?

13          THE COURT:  If that's the process that you want to

14   do, then -- you know, obviously, they can follow the same

15   course and any document requests that you have, they can then

16   say, you can come to our offices and look at them and decide

17   what you want copied or not.  I mean, that's what the rules

18   indicate --

19          MR. BUCHANAN:  Right.

20          THE COURT:  -- you know, the parties can do.  The

21   question is what's the practical approach to that.  And you all

22   should start trying to work together a little bit on this and

23   not just put up roadblocks for certain things.

24          I mean, obviously -- I mean, from my review of what

25   was produced, there are probably nine boxes of exhibits, if I

1   read the -- what was delivered to the Clerk's Office prior to

2   the first trial, something in that range, if you look at the

3   docket sheets.  So that isn't an enormous amount of paper to be

4   produced to one side or the other.  But you all -- you all can

5   work on the details of that.  But ...

6           So on that issue, I am going to at least grant in

7   part that part of the motion.

8           The fact witnesses, you've produced or will be

9   producing the Cadenhead, Vredenburg, and Dameri transcripts of

10  those three fact witnesses; is that correct?

11          MR. BUCHANAN:  Yes.

12          THE COURT:  Okay, all right.  All right.  Well, I

13  will hear the argument on the fact witnesses, expert witnesses,

14  and interrogatory responses now from the plaintiff.

15          MR. OPPENHEIM:  Yes, Your Honor.  I don't want to

16  direct a question to opposing counsel, but maybe this, on the

17  fact witnesses, it would short circuit it.

18          I am not sure, but I may have heard opposing counsel

19  to say that they have produced seven out of the ten fact

20  witnesses and they plan on producing the other three today?  If

21  that's what he said, then the fact witnesses issue is resolved.

22  Maybe I misheard him.

23          MR. BUCHANAN:  Correct.

24          MR. OPPENHEIM:  So they're -- so it sounds like, Your

25  Honor --

1           THE COURT:  Okay, all right.

2           MR. OPPENHEIM:  -- they are agreeing to produce the

3    fact witnesses.

4           THE COURT:  Okay.

5           MR. OPPENHEIM:  So with Your Honor's permission, I

6    will move on to the experts.

7           THE COURT:  You have got the expert testimony --

8           MR. OPPENHEIM:  Yes.

9           THE COURT:  -- that was presented in the trial.  You

10   will have all the exhibits that were introduced into trial

11   relating to the expert witnesses.

12          Help me understand why you think you're entitled to

13   get the deposition transcripts of these expert witnesses.

14          MR. OPPENHEIM:  So, Your Honor, unlike the fact

15   witnesses where we identified three specific witnesses just as

16   representative, here we actually identified four expert

17   witnesses.  And that's the -- that's the deposition testimony

18   we want.  We're not looking to go beyond those four.

19          And the reason we identified those four, which

20   include Ms. -- or I should say probably Dr.

21   Frederiksen-Cross -- I must admit, I can't remember whether

22   misters or doctors, but Lehr, McGarty, and Sullivan.  So those

23   are the four witnesses.  All four of those witnesses, Your

24   Honor, provided testimony that was -- is related to the facts

25   that are going to be at issue in this case.

1          So, for instance, Frederiksen-Cross provided

2     testimony directly on how -- how they analyzed the Cox

3     Copyright Alert System, how it worked.  And so, the deposition

4     testimony will speak to the analysis of how that system worked

5     and what issues were raised by that.

6          Similarly, Lehr provided testimony with respect to

7     Cox's financial benefit from infringement.  Again, an issue in

8     our case.

9          McGarty provided testimony on the limitations of the

10    Copyright Alert System that Cox had developed and what a

11    responsible ISP could do.  Again, an issue in our case.

12         And Sullivan provided testimony on the effects of the

13    infringement on Cox, and on the issue of damages as it was

14    associated from copyright in that case.  Again, an issue in our

15    case.

16         So these four witnesses, their testimony on those

17    issues having reviewed the Cox factual evidence on these

18    issues, provided testimony on them in deposition.  They were

19    cross-examined.

20         We may well use some of the -- or all of these

21    witnesses, Your Honor.  And we would want to now how they had

22    testified previously.  Those witnesses can't necessarily turn

23    those depositions over to us.  I don't know that they even have

24    them, to be honest.  But we want to be on a level playing field

25    where we can see what those witnesses said --

1        THE COURT:  Wouldn't any expert have to keep their

2  deposition testimony?  They at least have to identify that in

3  any 26(a)(3) disclosure, right?

4        MR. OPPENHEIM:  Certainly they would have to identify

5  it, I agree with that, Your Honor.  I don't know whether they

6  have it.

7        We need to get past the threshold of the relevance to

8  deal with -- there is a protective order issue.  I acknowledge

9  there is a protective order issue.  We can get to that issue,

10  but only after Cox puts aside its objection on the basis of

11  relevance.

12        THE COURT:  Okay.  All right.

13        MR. OPPENHEIM:  So -- and we believe the protective

14  order issue can be resolved through normal processes.  This

15  Court has the ability under the protective order to order its

16  production.  We can give notice and get consent, or simply be

17  -- allow BMG to be heard, Your Honor.

18        THE COURT:  Okay.

19        MR. OPPENHEIM:  So I believe that issue is resolved.

20        THE COURT:  What about the answers to the

21  interrogatories, why do you think you're entitled to those?

22  All the interrogatory entrances, just one request, give me

23  every answer to every interrogatory.

24        MR. OPPENHEIM:  The problem is, Your Honor, we don't

25  have the list of the interrogatories that were issued such that

1    we could say, we want interrogatories 1, 8, 9, 12, and 13.

2          All we know is that there were interrogatories issued

3    in that case to Cox on issues that are no doubt directly

4    related to the issues in our case.  They are prior sworn

5    statements on those issues.

6          To the extent that some of those interrogatories may

7    have gone to the issue of, for instance, BMG's copyrights, we

8    obviously don't have an interest in that limited subset, but we

9    are not in a position, because we haven't been given what the

10   interrogatories are, to be able to pick and choose.

11         So this is not burdensome on their part.  And we're

12   happy to weed through whatever is not relevant because we

13   suspect that it is very little, Your Honor.

14         THE COURT:  All right.  Well, on that issue, I am

15   going to deny the motion to compel both the fact -- well, the

16   fact witnesses I hope have been resolved, so that one is moot.

17         I think going beyond what the trial testimony was on

18   the expert witnesses, you now have whatever exhibits were used

19   with the expert testimony, going back and going into the core

20   discovery that was done in the earlier case really is not

21   appropriate under the circumstances of this case.

22         Your going to, as I said earlier, have to plow your

23   own road.  If you want to decide to use an expert witness, you

24   need to contact that expert witness.  You don't get to do a dry

25   run in seeing what they did in a deposition before you do that.

1        So I'm going to deny the motion as to the expert

2   witnesses.

3        I'm also going to deny the motion as to the answers

4   to interrogatories.  That really isn't a particularized

5   document request.  I mean, you're asking for them to produce

6   information that is -- you don't really know what it is.

7        And so, you know the idea that I want to get all of

8   their answers to interrogatories in another case that -- and,

9   you know, I think if you look at the record in the BMG case,

10  you would probably find that the interrogatories were part of

11  motions to compel that were filed in that case and would be

12  available for you to look at and make particularized requests.

13        So I'm denying the motion as to the deposition

14  testimony other than what Mr. Buchanan has indicated he will be

15  providing to you today in the answers to the interrogatories.

16        MR. OPPENHEIM:  May I ask two questions, Your Honor?

17        With respect to the expert deposition testimony,

18  should we choose to retain any of these experts, will the

19  defendants be allowed to use those transcripts to impeach the

20  witnesses?

21        And at that point in time, if we retain them, will we

22  be -- have the right to revisit this issue with the Court?

23        THE COURT:  Well, if you retain an expert witness, I

24  suspect you will have that expert witness' deposition

25  transcript.  If that's an issue that you are unable to get that

1  expert witness' deposition transcript, come back to me and I'll

2  see that you're able to get that.

3          So if you hire Dr. Sullivan to come in and testify in

4  your case, and he can't provide you with a transcript of his

5  deposition that he had to look at and sign before it was, you

6  know, submitted to the parties, then come back and I will talk,

7  we will figure out why you didn't get a copy of that or

8  whatever releases need to be signed in order for you to do

9  that.

10          MR. OPPENHEIM:  Your Honor, we've already spoken to

11  several of these experts.  And they have indicated that because

12  of the protective order, that they were uncomfortable giving us

13  copies of the transcript.  That's why we're here today.

14          So without prejudice, we can revisit this issue if it

15  arises, Your Honor?

16          THE COURT:  Okay, without prejudice, yes, sir.

17          MR. OPPENHEIM:  With respect -- sorry.  With respect

18  to the interrogatories.  I just want to make sure I understand.

19          To the extent that we, for instance, issued a

20  document request asking for prior sworn statements regarding

21  Cox's CATS system, their Copyright Alert System, or prior sworn

22  statements regarding top, certain topics, Your Honor is not

23  ruling on that at this point?

24          THE COURT:  No.  I'm ruling on the motion to compel.

25  The motion to compel was relating to their answers to

1  interrogatories.  So I am denying the motion to compel on that

2  issue.

3          MR. OPPENHEIM:  Very well, Your Honor.

4          THE COURT:  Okay.  Let me hear your argument on the

5  all copyright notices from January 2010 to December 31, 2014.

6          MR. OPPENHEIM:  So, Your Honor, our legal theory in

7  this case is that Cox knowingly provided Internet service to

8  subscribers for whom Cox knew that the subscribers were engaged

9  in infringement.

10          The Fourth Circuit's opinion in the BMG case said

11  that the question in these types of cases is:  Did Cox know

12  it's subscribers were infringing and could it do something

13  about it?

14          The question of whether or not those notices came

15  from the plaintiffs is irrelevant.  The question is whether or

16  not Cox had knowledge.

17          THE COURT:  Well, that has to be knowledge of someone

18  who infringed your client's copyrights, right?

19          MR. OPPENHEIM:  So that --

20          THE COURT:  I mean, you only have standing to sue for

21  someone who infringed your clients' copyrights?

22          MR. OPPENHEIM:  Of course, Your Honor.  There are

23  three elements in a contributory claim, Your Honor:  The

24  underlying direct infringement.  That underlying direct

25  infringement, there has to be evidence of it.  The evidence in

1    this case will come from the notices that our clients sent.

2            But the issue of knowledge as to whether or not a

3    particular subscriber -- that Cox knew that a particular

4    subscriber was infringing, could have come from anybody.

5            Let me give you an example, Your Honor --

6            THE COURT:  But that's not what you're asking for,

7    and that's not what you're asking me to order Cox to produce.

8            MR. OPPENHEIM:  No, respectfully, Your Honor, I think

9    that is precisely --

10           THE COURT:  Well, that's a part of it, but not all of

11   it.  You're asking this Court to order Cox to produce every

12   copyright or every notice of infringement that it got for a

13   five-year period no matter who sent it or who the subscriber

14   was, or whether that subscriber had any relationship with your

15   clients.

16           MR. OPPENHEIM:  Absolutely, Your Honor.  It goes to

17   two elements.  First, the notices, whether they came from the

18   motion picture studios, whether they came from software

19   companies, photo companies, you name it, go to Cox's knowledge

20   that particular subscribers were infringing.

21           But it also goes to willfulness, Your Honor.  If Cox

22   received 10 million notices and was doing virtually nothing on

23   it, on the issue of willfulness, a jury should get to hear

24   that.

25           THE COURT:  Okay.  Well, help me understand how it's

1    proportional for them to produce 10 million notices as opposed

2    to you finding out a number of infringing notices as opposed to

3    the actual notices themselves?

4           MR. OPPENHEIM:  Your Honor, I believe that the issue

5    of whether or not they produced the actual notice versus a

6    database of the notices they received is an issue we never got

7    to because the defendants just hard-lined:  It's irrelevant,

8    we're not going to have a discussion about it.

9           The defendants have acknowledged to us they have a

10   database of what those notices are.  We don't need the actual

11   notices.  The database that shows those notices is likely to be

12   sufficient and not burdensome.

13          But I will say that the affidavit that was put

14   forward as to the burden in the context of this case, where it

15   is virtually the entire music industry on a critical issue of

16   infringement involving almost 11,000 copyrights, the fact that

17   it takes several days of engineering time and then computing

18   power, is not burdensome and certainly is proportional.

19          Computing time, by the way, is just a function of

20   how --

21          THE COURT:  It's only proportional if it -- how it

22   relates to an issue that is in this lawsuit.  And if the issue

23   in this lawsuit relates to they had tens of thousands or

24   millions of copyright infringement notices sent to them, you

25   know, that's one thing.

1     But having them produce the actual notices, which is

2  what you've asked for in document request number 11, is a

3  different set of circumstances.  So it has to be -- you weigh

4  the burden as to what is the information that is needed in

5  order to prepare a claim or a defense and weigh that.

6     And the idea of, you know, providing 10 million or

7  however million notices, just because you want to sit there and

8  count them up and say they got 10 million notices in the past,

9  makes your request not proportional.

10     MR. OPPENHEIM:  Your Honor, we've produced well over

11  200,000 --

12     THE COURT:  Well, I --

13     MR. OPPENHEIM:  If I may, Your Honor, 200,000

14  notices.  If a particular subscriber -- if we sent a notice on

15  a particular subscriber with a particular IP address right

16  here, but we only sent one notice on that subscriber, and

17  that's all we have to rely on, Cox will say, well, we only

18  received one notice as to this subscriber.

19     If they receive 1,000 notices on that subscriber from

20  other copyright owners, suddenly the -- before ours, suddenly

21  that one is critical.  And it shows that they knowingly

22  provided service to a known infringer on a specific

23  infringement.

24     So, Your Honor, what we want to do is be able to do

25  that analysis.  They have a database, they track this.  They

1  have testified in the BMG trial that they have this Copyright

2  Alert System that tracks notices.  We're happy to get the data

3  set without getting the actual underlying notices to the extent

4  that it has the relevant information.  But we can't have that

5  discussion when they claim that it's absolutely not relevant.

6         So, Your Honor, it goes not only to our liability

7  claim, but it also goes to the statutory damages issues, Your

8  Honor, and findings of willfullness.

9         THE COURT:  Okay.  Well, on this issue, I also think

10  -- I mean, I have to deal with the motion that has been

11  presented --

12         MR. OPPENHEIM:  Can I add one point I left out?

13         THE COURT:  Yeah.

14         MR. OPPENHEIM:  Judge O'Grady actually spoke to this

15  in some measure in the BMG case.  In the BMG case there were

16  exhibits of correspondence internally at Cox regarding notices

17  that came from vendors other than Rightscorp, and Cox argued

18  those aren't relevant.  All that is relevant is that which

19  arose from the Rightscorp notices.  And Judge O'Grady said, no,

20  that's not the case.

21         And I think that ruling is directly applicable to

22  what we're looking for here.  On the issue --

23         THE COURT:  Well, what you're looking for here is

24  every individual notice, not e-mails relating to the number of

25  notices.

1          MR. OPPENHEIM:  He wasn't -- the e-mails at issue

2   were e-mails about specific notices from other vendors.

3          THE COURT:  I, you know, was involved in the first

4   case.

5          MR. OPPENHEIM:  Absolutely, Your Honor.

6          THE COURT:  I don't recall ordering that every

7   copyright and notice that was ever sent to Cox be produced, and

8   that that was an issue that Judge O'Grady would have been

9   referring to when he made a comment about e-mails.

10          MR. OPPENHEIM:  I'm not suggesting that that was the

11   issue as it was joined.  But the issue that came up were

12   specific documents about notices that came from other vendors.

13          And the Court not only -- it wasn't a discovery -- it

14   was an admissibility issue.  The Court said, absolutely it's

15   relevant.  You go beyond just what Rightscorp said.

16          And that ruling applies here.  It's not just the

17   notices that are -- that Markmonitor, which is the vendor in

18   this case, sent.  It's all of the notices so we can do the

19   analysis, so the jury can have the full picture of Cox's

20   conduct with respect to notices.

21          THE COURT:  All right.  Well, on this issue, I think

22   I also understand what the issue is.  And I, again, have to

23   deal with what the motion to compel is and what the discovery

24   request is.  And this is not a request to -- that is specific

25   to those customers or subscribers who you sent notices to to

1    find out whether they had additional notices or other claims

2    that they were infringing.  This is every notice of

3    infringement for a five-year period from anybody about any

4    subscriber.  And I think, you know, that asks for way too much

5    information for an extended period of time.

6           And I know your claim period is February of 2013 to

7    2014.  And, you know, if this was a motion relating to those

8    subscribers that you have identified as to any other notices

9    received from others, that's a different story.

10          If it was a motion dealing with the number in a

11   generic sense of copyright notices or infringement notices, you

12   know, that they received over a period, that's a different

13   story.

14          But the motion to compel here is all notices relating

15   to, you know, this issue for a five-year period of time.  And

16   I'm denying the motion to compel.  I think it's overbroad.  I

17   think it is unduly burdensome.  I think it is not proportional

18   to the needs of the case as written.

19          Obviously, this is something that I've, you know,

20   indicated that I would consider requiring them to possibly

21   produce notices of infringement from other parties that are

22   directly related to the claims in this case, but not every

23   notice of infringement for a five-year period of time.

24          So, in essence, I'm granting the motion in part,

25   denying the motion in part for the reasons I've stated from the

1    bench.

2            Okay?  Thank you, counsel.

3            Court will be adjourned.

4            NOTE:  The hearing concluded at 11:20 a.m.

5       -------------------------------------------------

6

7

8

9       C E R T I F I C A T E   of   T R A N S C R I P T I O N

10

11           I hereby certify that the foregoing is a true and

12   accurate transcript that was typed by me from the recording

13   provided by the court.  Any errors or omissions are due to the

14   inability of the undersigned to hear or understand said

15   recording.

16

17           Further, that I am neither counsel for, related to,

18   nor employed by any of the parties to the above-styled action,

19   and that I am not financially or otherwise interested in the

20   outcome of the above-styled action.

21

22

23                      ___/s/ Norman B. Linnell___
                        Norman B. Linnell
24                      Court Reporter - USDC/EDVA

25