# Exhibit 5



North America   Europe   Asia

200 Park Avenue
New York, NY 10166
T +1 212 294 6700
F +1 212 294 4700

**THOMAS PATRICK LANE**
(212) 294-6700
tlane@winston.com

December 7, 2018

Jeffrey M. Gould
Oppenheim & Zebrak LLP
5225 Wisconsin Ave. NW, Ste. 503
Washington, DC 20015
Tel.: (202) 851-4526
Email: jeff@oandzlaw.com

 **Re:** *Sony Music Entm't, et al., v. Cox Commc'ns, Inc., et al.*, 1:18-cv-00650-LO-JFA

Dear Jeff:

 We write in response to Plaintiffs' Objections to Defendant Cox Communications, Inc.'s First Set of Interrogatories and Plaintiffs' Objections to Defendants Cox Communications, Inc.'s and CoxCom, LLC's First Set of Requests for Production (collectively, "Plaintiffs' Objections"), served on December 4, 2018.

 As detailed below, we believe that Plaintiffs' Objections are procedurally deficient and contravene the Local Rules of the Eastern District of Virginia (the "Local Rules") because they do not state whether any responsive materials are being withheld on the basis of the objections. We ask that Plaintiffs immediately supplement their objections to conform with the Federal Rules of Civil Procedure and the Local Rules. We also request a meet and confer with you to discuss the other issues raised below regarding the substance of Plaintiffs' Objections in an effort to resolve any disputes regarding Plaintiffs' Objections without the need for court intervention.

## I. <u>PLAINTIFFS' OBJECTIONS ARE DEFICIENT</u>

 As an initial matter, Plaintiff's Objections are wholly deficient because they do not "state whether any responsive materials are being withheld on the basis of that objection" or specify the part of the request being objected to in conformance with the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 34(b)(2)(C); *see also Cappetta v. GC Servs. Ltd. P'ship*, No. CIV. A. 3:08CV288, 2008 WL 5377934, at *3 (E.D. Va. Dec. 24, 2008). Cox thus requests that Plaintiffs immediately serve supplemental objections that comply with these requirements. Of course, the service of supplemental objections will not impact the date that Plaintiffs' substantive responses are due.

 In addition, Plaintiffs, in their collective responses, have failed to articulate why any specific request is either unduly burdensome or disproportionate to the needs of this case as it pertains to the *individual* Plaintiff that is to answer the request. Indeed, Plaintiffs have asserted blanket objections to specific requests on behalf of 57 differently sized individual Plaintiffs each



with differently sized claims.  Cox thus demands that the supplemental objections identify the Plaintiff(s) on whose behalf each objection is asserted, and particularly where the objection concerns either burden, proportionality, or cost.  *See, e.g.*, *Stoney Glen, LLC v. S. Bank & Tr. Co.*, No. 2:13CV8-HCM-LRL, 2013 WL 5514293, at *3 (E.D. Va. Oct. 2, 2013).

## II.      ISSUES WITH PLAINTIFFS' GENERAL AND/OR RECURRING OBJECTIONS

### a.      Electronically stored information, search terms, and custodians

Plaintiffs state in their general objections to both Cox's Requests for Production and Interrogatories that they are willing to "meet and confer with Cox regarding the appropriate form of production of electronically stored information, including identifying appropriate custodians, search terms, and/or sources of date for which to search for documents and things responsive to the requests for production…"

It is our understanding that the parties have reached an agreement as to the "appropriate form of production of electronically stored information," which is outlined on pages 2-4 of the current draft of the parties' Proposed Joint Discovery Plan Pursuant to Rule 26(f), which is to be filed with the Court by December 12, 2018.  Please let us know if there remains anything regarding this issue about which Plaintiffs still need to meet and confer.

With respect to Plaintiffs' representation that they are willing to meet and confer with Cox regarding the "appropriate custodians, search terms, and/or sources of data for which to search for documents and things responsive to the requests for production," Plaintiffs should initially propose custodians, search terms, and sources of data, as Plaintiffs are in the best position to do so.  Once we have an understanding of what Plaintiffs intend to produce in response to Cox's requests, we can have a more meaningful meet and confer.

### b.      Privilege log

Plaintiffs also state in their general objections to both Cox's Requests for Production and Interrogatories that they are willing to "meet and confer with Cox regarding the appropriate parameters for a log of responsive documents being withheld on the basis of privilege or immunity, subject to Plaintiffs' asserted objections below and the condition that work product and attorney-client privilege documents generated after Plaintiffs' January 29, 2016 demand letters need not be identified."

As outlined below, we disagree with Plaintiffs' position that they are not required to log responsive, privileged documents.  Contrary to Plaintiffs' assertions, Cox's requests are intended to obtain documents and information relevant to its defense, not to "harass."

Notwithstanding the above, we agree that it makes sense to discuss the appropriate parameters of a log of privileged documents and will meet and confer with you to discuss.



Jeffrey M. Gould<br>December 7, 2018<br>Page 3

      c.      <u>Sources for documents</u>

Plaintiffs also object to several specific requests that "[c]ommunications, or other documents, about communications go far beyond the scope of information relevant to resolving the issues in the action and therefore present an undue burden." *See* Plaintiffs' Objections to Requests for Production ("RFP") Nos. 8, 11, 64-65, 89, 125-126, 130-131, 134-135, 146.

We do not understand this objection. Is it Plaintiffs' position that for these specific requests, "communications" and "documents about communications" are not discoverable on the basis of both relevance and burden? If so, we request that Plaintiffs explain how specifically "communications" and "documents about communications" could not contain relevant information. In addition, we again request that each Plaintiff articulate the burden posed specifically to it by these requests.

      d.      <u>Cox's references to "subscribers," "account holders," and "customers"</u>

Plaintiffs object to Cox's references to their "subscribers, account holders, and customers," claiming that these terms are "vague and ambiguous" and that "Cox's use of three terms implies distinct definitions for each—definitions which Cox has not provided." *See* Objections to RFP Nos. 1-2. We will clarify: "subscribers, account holders, and customers" are terms that simply refer to the Cox's "customers," "subscribers," and holders of "accounts" as those terms are repeatedly and interchangeably used in Plaintiffs' own Complaint. *See, e.g.*, Compl. ¶¶ 2, 3, 6, 8-10, 15, 17, 83-86, 88, 90, 92-93, 96, 101-102, 116. There should be no ambiguity but let us know if you remain confused with respect to our use of these terms.

## III.    <u>ISSUES WITH PLAINTIFFS' OBJECTIONS TO INDIVIDUAL REQUESTS</u>

      a.      <u>The identity of the Copyright Works</u>

Plaintiffs claim that requests to identify the Copyright Works are "premature" and "not known at this time [because] [a] more complete picture of the infringement will be determined during discovery and Plaintiffs reserve the rights to rely upon or assert claims regarding Cox's infringement of any of their copyright works." *See, e.g.*, Objections to RFP Nos. 1-2, 68-71, 78-81, 85-86, 90-117; *see also* Objections to Interrogatories Nos. 1-3.[1]

Plaintiffs have already identified nearly 11,000 works in Exhibits A and B to their Complaint they claim have been infringed by Cox's subscribers and for which they seek relief in this litigation. Compl., Exs. A & B; *see also* Dkt. 50 at 2. These are "Copyright Works," as that term is defined in the requests.[2] Accordingly, to the extent any of Cox's requests seek documents or information concerning the Copyright Works, Plaintiffs must produce documents and information concerning those works as they have already been identified. Of course, if

---

[1] Many of the issues outlined above are applicable to Plaintiffs' Objections to Cox's Interrogatories.

[2] "Copyright Works" is defined in the requests to refer to the works each Plaintiff claims were infringed and for which each Plaintiff seeks relief in this litigation.



during discovery Plaintiffs identify additional works they claim have been infringed and for which they will seek relief in this litigation (which thus become works-in-suit or "Copyright Works"), Plaintiffs must supplement their relevant disclosures.  That such a discovery may transpire in the future is no basis to withhold the production of documents by December 19, 2018 related to works that have already been identified.

Moreover, while Exhibits A and B to Plaintiffs' Complaint identify the "Artist," "Track," "Plaintiff," and "Reg. No.," for each allegedly infringed work, Cox's Interrogatory No. 1 requests that Plaintiffs identify "the current owner, any current exclusive licensee, … and the date of registration."  Plaintiffs admit that it is "relevant [] whether the named Plaintiff for a particular work is an owner or licensee of an exclusive right for that work."  *See* Objections to Interrogatories at 7.  Accordingly, Cox requests that Plaintiffs respond to RFP Nos. 1 and 2 and Interrogatory No. 1 by providing the requested information with respect to the works it claims have been infringed and for which it seeks relief in this litigation with a continuing obligation to supplement as needed.

> b.  Ownership of the Copyright Works

Plaintiffs object to Cox's requests for information concerning Plaintiffs' ownership of the copyrights asserted in this litigation.  *See, e.g.*, Objections to RFP Nos. 6, 8-10, 12-16.  There is no basis for Plaintiffs' blanket objection.  As noted above, Plaintiffs readily admit that it is "relevant [] whether the named Plaintiff for a particular work is an owner or licensee of an exclusive right for that work."  Objections to Interrogatories at 7.

As set forth in the cited requests, Cox requests that Plaintiffs produce documents sufficient to establish the chain of title of each Copyright Work to the specific Plaintiff that is asserting the infringement of the work in this litigation.  In addition, Cox demands documents relevant to each Plaintiff's claim of ownership, including documents and communications concerning copyright validity and claims of ownership, whether from the Copyright Office or a third party.

> c.  Digital copies of the Copyright Works

Plaintiffs object that Cox's request for "full digital copies" of the Copyright Works is "vague and ambiguous" because "it is unclear whether Cox is requesting that Plaintiffs produce authorized, non-infringing copies of the relevant copyrighted works or the unauthorized, infringing copies."  Objections to RFP Nos. 3-5.  Cox seeks both.  But with these specific requests, Cox seeks the "authorized, non-infringing copies." With their requests for documents sufficient to demonstrate direct infringement, Cox seeks the "unauthorized, infringing copies."  *See, e.g.*, RFP Nos. 67-68.

In response to these requests, Plaintiffs also object that they "are aware of no legitimate need Cox could have for" these copies, including copies of the deposit copies submitted to the Copyright Office.  *See* Objections to RFP Nos. 3-5, 7.  It is not disputed that Plaintiffs will be



required to prove that the Copyright Works have been directly infringed by Cox's subscribers. Plaintiffs must therefore present evidence that a Cox subscriber impermissibly downloaded an actual copy of the copyrighted work while connected to the Internet through Cox's network. Cox is therefore entitled to assess this evidence, namely whether the proffered downloaded file contains a copyrighted work that is asserted in this litigation.

Plaintiffs also comment that "the copyrighted works in suit are commercially available to the public." Are Plaintiffs suggesting that Cox should purchase the nearly 11,000 works asserted in this litigation? If so, how do Plaintiffs suggest this should be done with respect to musical compositions? Even if Cox were obligated to do so, which it is not, only Plaintiffs can provide copies of the specific works they assert in this case. It is not up to Cox to guess and try to obtain them based solely upon the track titles provided as part of Plaintiffs' Complaint. The burden unquestionably falls on Plaintiffs to establish each element of their claims. And in a case where Plaintiffs are seeking statutory damages in excess of $1.6 billion, there is no basis to assert that "forc[ing] Plaintiffs to bear the expense" of producing copies of their own asserted Copyright Works "would impose an undue burden."

     d.      Organizational charts

Consistent with their other improper objections, Plaintiffs object *collectively* to Cox's requests for organizational charts on the basis that "Plaintiffs are large, international companies with thousands of employees…" *See* Objections to RFP Nos. 19-20. We presume these objections refer to some (but not all) of the Plaintiffs. Again, we request that in a supplement to their objections, Plaintiffs identify as to which Plaintiff each of the asserted objections apply, and particularly where such objections concern burden and proportionality. Notwithstanding Plaintiffs' improper (and inaccurate) objections, Cox is entitled to reasonable discovery concerning the organization and staffing of Plaintiffs as it relates to the issues in this case, including Plaintiffs' theory of liability and claim to damages and Cox's defenses thereto.

Cox requests that Plaintiffs produce any existing organizational charts responsive to RFP Nos. 19-20 for the years 2010 to the present that capture the divisions and roles related to (i) Plaintiffs' registration and ownership of the Copyright Works, (ii) Plaintiffs' enforcement of copyright rights, and (iii) the monetization of the copyright rights.

     e.      Plaintiffs' alleged damages

Plaintiffs object to Cox's requests for revenue, profit, and expense information, both generally and as it relates to the Copyright Works, on the basis that Cox's requests "are not relevant to liability or damages." *See* Objections to RFP Nos. 40-44. Plaintiffs seek both actual and statutory damages in this litigation, *see* Compl. ¶¶ 111, 120, so of course Plaintiffs' revenue, profit, and expenses are relevant. In an effort to facilitate the discovery process, Cox is willing to initially limit their request to the five years from 2010 through 2015, reserving rights that years after 2015 are relevant and discoverable.



Plaintiffs further object to these requests because they "impose duties or obligations beyond or inconsistent with those of the Federal Rules of Civil Procedure or the Local Rules of the Eastern District of Virginia" and contain a "directive for information" in a specific format. *See* Objections to RFP Nos. 40-44.  The requested information is indisputably relevant and will be produced in this litigation.  Cox's "directive" is thus only intended to aid the parties and avoid a needless discovery dispute.  We request that Plaintiffs identify how they propose to produce this information so that we may engage in a meaningful meet and confer in an effort to avoid burdening the Court with this issue.

Further on this specific issue, Plaintiffs also object to Cox's use of the term "medium" because it "could encompass a wide range of physical products such as vinyl records, cassette tapes, CDs, super audio CDs, DVD audio discs, and Blu-ray audio discs, as well as digital products, including downloads, live streams, and on-demand streams."  *See* Objections to RFP Nos. 41, 43-44; Objection to Interrogatory Nos. 2-3.  Precisely.  If it is the fact that a Plaintiff does not track revenue, profit, and expenses by medium, then we request such a representation and an explanation of how each Plaintiff tracks such information during each of the last ten years.

Plaintiffs additionally object to Cox's requests seeking information related to the various effects on each Plaintiff's business from infringement through peer-to-peer file sharing sites because, *inter alia*, there is no time frame to the request.  *See* Objections to RFP Nos. 51-52, 54-58, 88. Unless otherwise specified, these requests seek responsive documents in light of the subject matter of the requests. For example, RFP No. 51 seeks documents that are directly relevant irrespective of when they were created.  We are of course willing to discuss with you a reasonable narrowing if it turns out that search terms reveal a quantity of documents that is impractical to review.

Plaintiffs further object to Cox's requests pertaining to the amount of money and time that each Plaintiff has expended in connection with the artists who created the Copyright Works because responding to the requests would be burdensome, the information sought is not proportional, the information could be obtained through other means of discovery, and is premature.  *See* Objections to RFP Nos. 59-63.  This information should be at least partially captured through Plaintiffs' production of revenue, profit, and expense information and should pose very little burden to Plaintiffs.  We are willing to work with Plaintiffs in order to determine appropriate parameters.

Plaintiffs also broadly object to each of Cox's requests that seeks a quantification of the value of any of the Copyright Works or that relate to Plaintiffs' alleged damages.  *See, e.g.*, Objections to RFP Nos. 21-24 (licenses, assignments, master agreements, and royalty agreements with other ISPs); RFP Nos. 25-26 (revenue from assignments and licenses for each of the last 10 years); RFP No. 27 (profit and loss statements for the Copyright Works); RFP Nos. 28-29 (lost sales); RFP No. 30 (alleged harm/damages); RFP No. 31 (mitigation of damages); RFP Nos. 32-33, 35 (valuation and attempted sales of Copyright Works); RFP Nos. 34, 36-39 (trends in sales through streaming, downloading, physical media, and other); RFP Nos. 40-44



(revenue and profit), RFP Nos. 51-52 (effect from infringement on peer-to-peer networks); RFP Nos. 54-58 (other impacts from peer-to-peer networks); *see also, e.g.*, Objections to Interrogatory Nos. 2-3, 10-11. The requested documents and information are directly relevant to ownership and damages and must be produced.

> f.        Decision to pursue statutory and/or actual damages

Plaintiffs claim that all documents potentially responsive to RFP Nos. 45 and 46 are protected by a privilege. *See* Objections to RFP Nos. 45-46. Plaintiffs additionally assert that these topics are not relevant. *Id.* Each Plaintiff's ability (perceived or actual) to determine its actual damages is highly relevant. To the extent that Plaintiffs possess responsive, non-privileged documents, they must be produced.

Notwithstanding the above, there is no basis for Plaintiffs' assertion that they will not log privileged, responsive documents because Plaintiffs *feel* the request is intended to harass. Plaintiffs must log these documents pursuant to the parties' agreement and produce the requested joint litigation or common interest agreements that support any claim of privilege. *See* RFP No. 145.

> g.        Communications concerning Cox

Plaintiffs have objected to producing communications concerning Cox. *See* Objections to RFP Nos. 64-66. As stated above, Plaintiffs' Objections are procedurally defective in that each Plaintiff has failed to articulate what documents it will and will not produce on the basis of the asserted objections. Moreover, each Plaintiff has failed to articulate the particular burden posed by any given request to it specifically. The requested documents are directly relevant, are appropriately limited by time and scope, and must be produced.

> h.        Evidence of infringement

As with other requests, Plaintiffs have objected to Cox's requests for evidence of direct infringement on the basis that the requests are "premature" and "not known at this time [because] [a] more complete picture of the infringement will be determined during discovery and Plaintiffs reserve the rights to rely upon or assert claims regarding Cox's infringement of any of their copyright works." *See* Objections to RFP Nos. 67-71, 74-75, 76-78, 82-85, 90-95; *see also* Objections to Interrogatory Nos. 4-7.

As with the other requests, these objections are unfounded. Plaintiffs have already identified nearly 11,000 works in Exhibits A and B to their Complaint they claim have been infringed by Cox's subscribers and for which they seek relief in this litigation. Plaintiffs may supplement this list throughout discovery. Thus, there is no basis to withhold the production of documents responsive to these requests because they are "premature" or that discovery is not yet completed.



Plaintiffs must produce all of the copyright infringement notices upon which they are relying to establish any element of either of their two claims. *See* RFP Nos. 79-81. If these notices are limited to those "received" by Cox, as Plaintiffs represent, then the burden squarely falls on Plaintiffs to produce these documents, particularly in light of the fact that certain (if not most) of the notices do not identify the alleged Plaintiff owner of the copyright. Of course, Plaintiffs are under a duty to preserve relevant documents, including the copyright infringement notices in their possession and there is no reason it would be unduly burdensome to produce them. To the extent that any additional works are asserted, Plaintiffs must supplement their production.

Relatedly, any documents in Plaintiffs' possession concerning efforts to identify the Cox customer implicated in any of the copyright infringement notices that will be relied upon in this litigation is squarely relevant to the accuracy of the notices. Plaintiffs' decision to pursue this litigation, including their decision to pursue statutory or actual damages, and the impact of alleged infringement through peer-to-peer networks on Plaintiffs' businesses are also directly relevant. *See* RFP Nos. 86-87, 89, 160-161. These documents must be produced.

Additionally, Plaintiffs object in response to Cox's interrogatories that "it is not clear what the term 'rely' means since Plaintiffs may make use of infringement notices in a variety of ways." *See, e.g.*, Objections to Interrogatory Nos. 4-5. Plaintiffs did not object to the same use of the term "rely" in Cox's Request for Production. That notwithstanding, we are requesting the identification of notices that you will assert, at any stage, in support of any claim or defense in this litigation. The term "rely" should have the same meaning as "use," which clearly Plaintiffs understood by stating as much in their objections. *See id.*

i.    Plaintiffs' enforcement efforts

Plaintiffs object to Cox's requests seeking information related to Plaintiffs' enforcement efforts on the basis that the information sought is not relevant and that responding would be burdensome. *See* Objections to RFP Nos. 119-124, 132-136. These documents are relevant and must be produced. That said, Cox is willing to initially limit its requests to enforcement efforts by Plaintiffs during the years 2010 to the present, reserving its rights that enforcement efforts outside of this period are also relevant and discoverable. Moreover, there is no basis for Plaintiffs' assertion that they will not log any responsive, privileged documents on the basis of their feeling that the requests are intended to harass.

j.    Cox's alleged financial benefit and ability to prevent infringement

Plaintiffs' objections to Cox's requests seeking any documents in any Plaintiff's possession regarding the alleged financial benefit to Cox from copyright infringement on its system and its ability to prevent the infringement alleged in this action are unfounded. *See* Objections to RFP Nos. 110-118, 125, 128-131. If Plaintiffs have potentially responsive documents, these requests pose no undue burden and the topics are directly relevant to Plaintiffs' own allegations.



Jeffrey M. Gould<br>
December 7, 2018<br>
Page 9

    k.        <u>Communications with and documents concerning Plaintiffs' "representatives," including Rightscorp and MarkMonitor</u>

It cannot reasonably be disputed that communications between Plaintiffs and their "representatives" (*i.e.*, the entities Plaintiffs represent either monitored for infringement of Plaintiffs' alleged copyrights or prepared and sent infringement notices) are directly relevant to this action.  At the very least, these documents are relevant to assess the directions provided to these representatives, the accuracy of their notices, and the functionality of the systems used. Plaintiffs have articulated no credible objection to these requests.  *See* Objections to RFP Nos. 139-144, 147-148, 156-157, 159, 162-163; *see also* Objections to Interrogatory Nos. 4-7.

With respect to Cox's requests concerning the systems used to monitor for alleged copyright infringement and to prepare and send notices, we are requesting documents that concern the functionality of these systems.

    l.        <u>Documents concerning the *BMG* and *Grande* litigations</u>

Plaintiffs object to these requests on the basis that all potentially responsive documents are privileged.  *See* Objections to RFP Nos. 151-152.  That seems highly unlikely, but if it is true, then any documents outside of agreed parameters for a privilege log must be logged.  These documents are plainly relevant and there is no undue burden in producing them.

    m.       <u>Documents concerning the RIAA and the CAS</u>

Plaintiffs' objections to requests for documents concerning the RIAA and the CAS are unfounded.  *See* Objections to RFP Nos. 126-127, 153-155, 164-174; *see also* Objection to Interrogatory Nos. 8.

We understand that the RIAA was responsible for the copyright infringement notices upon which Plaintiffs will rely in this litigation.  Accordingly, non-privileged documents responsive to Cox's requests are plainly relevant to Plaintiffs' claims, namely their proof of direct infringement, damages, Cox's actions, and the impact of peer-to-peer copyright infringement on Plaintiffs and the industry as a whole.  Plaintiffs' Complaint is replete with allegations concerning these topics.

The same is true with respect to the CAS.  Moreover, the fact that Cox was not a signatory to the CAS does not render the topic irrelevant.  In fact, it makes any responsive documents all the more discoverable, as Cox is not in possession of the information.  The CAS represented an important industry standard during the time Plaintiffs allege their copyrights were infringed on Cox's network.  Plaintiffs allege that Cox's actions with respect to its receipt of copyright infringement notices was somehow unreasonable.  Documents relating to the CAS are directly relevant to these issues.

*      *      *



Jeffrey M. Gould<br>December 7, 2018<br>Page 10

We look forward to promptly receiving a supplemented set of objections that comply with the Federal Rules of Civil Procedure and the Local Rules of this Court.  Please also confirm whether you are available to meet and confer on the remaining issues set forth in this letter on Tuesday, December 11 at 2:30 pm Eastern, or provide alternative dates and times over the next week.

Sincerely,

*s/ Thomas Patrick Lane*
Thomas Patrick Lane
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
Tel: (212) 294-6700
Fax: (212) 294-4700
Email: tlane@winston.com

*Attorney for Defendants Cox Communications, Inc. and CoxCom, LLC*