# Exhibit 7



North America   Europe   Asia

200 Park Avenue
New York, NY 10166
T +1 212 294 6700
F +1 212 294 4700

**THOMAS PATRICK LANE**
(212) 294-6700
tlane@winston.com

December 26, 2018

Jeffrey M. Gould
Oppenheim & Zebrak LLP
5225 Wisconsin Ave. NW, Ste. 503
Washington, DC 20015
Tel.: (202) 851-4526
Email: jeff@oandzlaw.com

**Re:**   *Sony Music Entm't, et al., v. Cox Commc'ns, Inc., et al.*, 1:18-cv-00650-LO-JFA

Dear Jeff:

We write to follow up on our December 12 and 14 calls and Plaintiffs' Objections and Responses to Cox's Requests for Production and Interrogatories, served on December 19.

In an effort to facilitate discovery in this matter, and to avoid the need for intervention from the Court, we have outlined the parties' positions with respect to certain of Cox's outstanding requests, about which the parties are continuing to meet and confer. With respect to a number of the requests, which I list below, Plaintiffs have represented that they will come forward with proposals for appropriate narrowing/searches. We will plan to discuss those, as well as Cox's positions regarding Plaintiffs' requests, during our next call.

Please let us know if you are available for a call to discuss these issues, and any you may have, on January 2 from 3-4 or 4-5 pm EST.

## I.   **GENERAL ISSUES**

a.   <u>Privilege Log</u>

Plaintiffs have represented that they intend to log all responsive documents that are being withheld based upon privilege or work product that were created before Plaintiffs served their January 29, 2016 demand letter but have proposed that privileged documents after that date need not be logged. Cox will agree that all responsive but privileged communications strictly between the parties and their outside litigation counsel of record in this litigation created after Plaintiffs' January 29, 2016 demand letter need not be logged. Any responsive communication that includes any third party, however, should be logged. If Plaintiffs believe that there are specific third parties that should be exempted from this requirement we can discuss during our call.

We should also discuss an appropriate form of privilege log and the timing on their production.



b.      Protective Order

We presume the inclusion of objections with respect to the need for a protective order were in error, as the parties' protective order has already been entered by Judge Anderson. Please confirm that Plaintiffs do not intend to withhold any documents based upon this objection.

c.      Search Terms and Custodians

You state in response to a number of requests, including RFP Nos. 24, 50-55, 64-65, 79-81, 118-120, 122, 125, 128-129, 134-136, 139, 153-156, 159-163, that you are "willing to meet and confer in good faith with Cox to determine a reasonable scope for this request tailored to seek information relevant to resolving the issues in the case" or "to narrow [the] request to a reasonable scope and to identify parameters, including appropriate custodians and search terms, pursuant to which Plaintiffs can conduct a reasonable search for relevant, non-privileged documents that is proportional to the needs of an the issues in the case."  Please be prepared to discuss Plaintiffs' position with respect to these requests during our next call.  Cox will be prepared to do the same regarding Plaintiffs' requests that were discussed during our calls.

Moreover, if you require additional clarification with respect to any particular request, please let us know in advance of our next call.

## II.      PLAINTIFFS' OBJECTIONS AND RESPONSES TO COX'S REQUESTS

a.      Financial Data

You have represented that you will produce "Plaintiffs' total annualized U.S. revenues, expenses, and profits for the years 2010 through 2014."  Cox has requested information concerning each Plaintiff's revenue, expenses, and profits from 2008 to present (the last 10 years), though we later agreed to initially limit this request from 2010 through 2015.  We therefore request that Plaintiffs produce information for 2015, as this extra year is necessary to provide a more accurate picture of Plaintiffs' alleged losses and the impact of the alleged infringement on each Plaintiff.  There can be no added burden in producing this information.

More specifically, with respect to Plaintiffs' offer to produce "profits," we request that each Plaintiff produce a detailed profit and loss statement, which should itemize revenues and expenses.  We have no doubt that such a statement currently exists or can be easily generated. This information is also necessary in order for Cox to calculate each Plaintiff's alleged losses and there can be no burden in providing it.

Plaintiffs have represented that they do not have profit and loss statements per work.  If that is the case, Cox nonetheless requires information relating to the profits earned on each work-in-suit, which is directly relevant to a determination of damages in this case.  Accordingly, where Plaintiffs maintain information relating to profits by work, it must be produced. Where they do not, Plaintiffs should produce information relating to the profits earned by each artist for the



works-in-suit, each label (to the extent that an individual Plaintiff has more than one label and works-in-suit are under those separate labels), each channel or medium, and any other profit analyses that may be available. Please identify what information is available and what Plaintiffs are willing to produce.

Plaintiffs have refused, however, to produce their revenues per work, despite the fact that it is our understanding that Plaintiffs maintain such information. As discussed already at length, this information is directly relevant to this case. As a preliminary matter, Judge Anderson ordered BMG and Round Hill to produce this information in the *BMG* Litigation because it was essential to Cox's expert's estimation of those rights holders' actual damages. *See* Ex. A, attached. The same is true here. And many of the same arguments your team articulated to us during our calls about the usefulness of this information were articulated to Judge Anderson— and rejected. *See id.* Accordingly, in order to avoid a needless discovery dispute, we request that each Plaintiff produce its per-work revenue data, per channel (*i.e.*, physical sales, digital downloads, streaming, and license royalties), and for each year from 2010 through 2015. As stated on our calls, we are available to meet and confer with Plaintiffs in order to determine the most practicable way of producing this information.

While you have refused to produce Plaintiffs' per work revenue, you have represented that you "will continue to meet and confer with Cox regarding a potential proffer of financial information related" to the relevant requests, which you said you anticipated providing by December 19. To date, we have received no such proffer. Please inform us when you intend to provide this. And to be clear, we do not accept this proffer as a substitution of Plaintiffs' production of per work, per channel revenue, as outlined above. In connection with any proffer, we further request that you provide an explanation of the data upon which it is based, including what of that data you are producing and, if you are withholding any, an explanation of what is being withheld and each Plaintiff's reason for doing so.

b.      Ownership of Copyright Works

Plaintiffs have agreed to identify each work asserted in this litigation, including each work's registration date and the existence of any exclusive licensees thereto. Plaintiffs have also agreed to produce documents they claim demonstrate each Plaintiff's ownership of the asserted work-in-suit and the validity of the copyright. Plaintiffs specifically agreed to produce copyright registration certificates for each work-in-suit, and where Plaintiffs do not have a registration certificate, to produce documentation sufficient to establish chain of title. Upon our preliminary review of the documents Plaintiffs produced bearing the Bates prefix "Plaintiffs_," it appears that for approximately 4,000 of the works-in-suit that Plaintiffs have only produced the so-called "look up" pages from the Copyright Office's website. But "[a] screen shot of the Copyright Office's database of registered copyrights, which is all the plaintiff has provided in this case, does not constitute a certificate of copyright registration, with the attendant benefits regarding *prima facie* evidence of the validity and ownership of the copyright." *See Malibu Media, LLC v. Parsons*, No. CV 12-1331 (BAH), 2013 WL 12324463, at *4 (D.D.C. May 31,



2013).  Please provide evidence of Plaintiffs' ownership of the copyrights for which all Plaintiffs have produced thus far are these look up pages

Plaintiffs have refused, however, to produce any documents concerning challenges to either the validity of each copyright or Plaintiff's ownership thereof unless Cox first comes forward with some independent evidence demonstrating that either validity or ownership is in doubt.  That is neither the law, nor how discovery works.  As such, we request that Plaintiffs reconsider this position.  To date Plaintiffs have failed to articulate why such documents are stored in such a manner that responding to these requests would be unduly burdensome.  Cox also reserves the right to seek additional documents, including correspondence, should it deem such additional documents relevant to Plaintiffs' ownership or the validity of any of the asserted copyrights.

    c.    <u>Purported Evidence of Direct Infringement</u>

Plaintiffs state that they are willing to produce "1) notices of infringement in their possession, custody, or control that are related to the copyrighted works in suit and were sent to Cox by or on behalf of Plaintiffs, 2) exemplars of the unauthorized, infringing copies of the copyrighted works, and 3) responsive, non-privileged documents sufficient to show information concerning infringement of the copyrighted works in suit by Cox's subscribers or customers to the extent located following a reasonable search."

During our next call, please clarify what Plaintiffs mean by "exemplars of the unauthorized, infringing copies of the copyrighted works."  Is this a copy of a file that was downloaded from a suspected Cox subscriber?  Or is this a copy of a file that was downloaded via BitTorrent and verified by MarkMonitor as one of the Plaintiffs' works?  If the former, what documentation do Plaintiffs intend to produce to substantiate such a claim?

Please also let us know if Plaintiffs' production of the "notices of infringement in their possession, custody, or control that are related to the copyrighted works in suit and were sent to Cox by or on behalf of Plaintiffs" is completed or if Plaintiffs anticipate producing additional notices.

Please confirm whether you are available to meet and confer on the remaining issues set forth in this letter on January 2, or provide alternative dates and times.

Sincerely,

*s/ Thomas Patrick Lane*
Thomas Patrick Lane
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
Tel: (212) 294-6700



Jeffrey M. Gould
December 26, 2018
Page 5

Fax: (212) 294-4700
Email: tlane@winston.com

*Attorney for Defendants Cox Communications, Inc.
and CoxCom, LLC*

# Exhibit A

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

```
-------------------------------:
                               :
BMG RIGHTS MANAGEMENT (US) LLC, :
et al.,                        :
            Plaintiffs,        :
                               : Case No. 1:14-cv-1611
     vs.                       :
                               :
                               :
COX ENTERPRISES, INC., et al., :
            Defendants.        :
-------------------------------:
```

HEARING ON MOTIONS

June 26, 2015

Before:  John F. Anderson, Mag. Judge

<u>APPEARANCES</u>:

John M. Caracappa, Paul Gennari, and Walter D. Kelley, Jr.,
Counsel for the Plaintiffs

Brian D. Buckley and Craig C. Reilly,
Counsel for the Defendants

Case 1:12-cv-00950-PTG-JFA Document 75-8 Filed 02/13/19 Page 9 of 34 PageID# 1064
Case 1:14-cv-01611-LO-JFA Document 113-8 Filed 06/29/15 Page 21 of 53 PageID# 2059

21

1    documents.

2           THE COURT:  Well, you know, I'm persuaded now I think

3    by the defendants' argument that they do have -- certainly not

4    the notice letters, and I don't think you want to produce them

5    or they want to get them.  But I do think, given the nature of

6    the case at this stage in the discovery, I can't say that it

7    wouldn't be discoverable information.

8           So I am going to require you provide the other

9    documents relating to the relationship between Rightscorp and

10   the plaintiffs that are not solely related to Cox to be

11   produced.

12          The other -- I guess so now let's get to the other

13   one that I thought was going to be the more difficult one.  I

14   thought that one was going to be fairly easy.

15          But this one, the financial information, I take it

16   that the defendants' argument there is that actual damages are

17   a factor that come into play in making a determination as to

18   where in the range of statutory damages the amount should be

19   set, is that basically it?

20          MR. BUCKLEY:  Yeah, that's exactly right, Your Honor.

21   That's exact right.

22          THE COURT:  And what is it that you have now and what

23   is it that you think that you would need in order to get --

24   and, you know, we're not talking about down to the last penny

25   kind of thing.

22

1          MR. BUCKLEY:  Right.

2          THE COURT:  We have to talk about the practical

3    aspects of, you know, what really -- what would your expert

4    need in order to come up with some information as opposed to

5    each and every invoice as to profit, loss, overheard, those

6    kinds of things.

7          MR. BUCKLEY:  No, we don't.  You're right, Your

8    Honor, we don't want or need that sort -- that granular level

9    of detail.

10         What we've been provided so far, however, is for BMG

11   top level revenue associated with particular copyrighted works

12   and not even the entire universe of works that are being

13   asserted in the case.

14         And for Round Hill, similarly a top line revenue

15   number for each work, not all the works, and for Round Hill not

16   even broken down by year.  So just work and dollar amount.

17         It was -- they are not business records.  They were

18   prepared for the purposes of this litigation.  It's not

19   information that is kept in the ordinary course.  So we

20   actually have no, no business record financial information at

21   all.

22         And I think it's probably obvious that a top line

23   revenue number tells you nothing about profit.  It doesn't --

24   and you can't break it down.  There are different ways they

25   earn income from each of these works.

23

1          So we've actually said specifically, and we've told

2     them in correspondence, and it's also in our motion, what our

3     experts need.  And it's at page 4 of our motion, Your Honor.

4     But we need information by distribution channel.

5          So income derived from, for example, income derived

6     from physical album sales, digital downloads, streaming

7     royalties, licensing royalties.  So we can break out how the

8     revenue for each work.  You know, what comprises revenue for

9     each work.  Revenues per channel --

10         THE COURT:  Why is that necessarily needed?  I mean,

11    I take it because you're going to try and focus on the

12    downloading revenue and see how that was impacted, or what?

13         MR. BUCKLEY:  Right.  And I am certainly not a

14    financial expert, Your Honor, and some of this is, obviously,

15    information that I'm passing on that our expert is saying he

16    needs to do an actual damages analysis.  So I want to make

17    clear that on some of these I'm not the person to answer the

18    specifics.

19         But in general our -- we should be able to do our own

20    analysis of had plaintiffs chosen to pursue an actual damages

21    theory, what would it have shown.  Because the actual damages

22    inform the statutory damages issue.  It's not the only issue

23    and it doesn't have to be a one-to-one ratio, but it's one of

24    the elements.

25         So to get to actual damages, you're talking about

24

1    lost profits potentially.  So what is the profit that is lost

2    for a copyrighted work when a subscriber out in the universe

3    downloads it as opposed to buying it in the store.  And this is

4    just one example.

5         But to get to that, you've got to understand how is

6    the revenue that is associated with that work, how does it

7    break down?  If part of it is physical album sales, that might

8    be relevant.  But if part of it is -- and part of it is

9    streaming, that might be relevant.

10         But if part of it is licensing royalties, for

11    example, that might be totally irrelevant to determining

12    whether there was profit lost.

13         Until you have that breakdown, there is no way to

14    tell.  All we've got right now is a dollar figure per work.

15         THE COURT:  But if you get that information --

16         MR. BUCKLEY:  Yes.

17         THE COURT:  How do you -- how does that translate

18    to -- somebody downloaded some material inappropriately.  How

19    is anybody then going to know whether if that hadn't been done,

20    would that person have downloaded it?  Would they have gone to

21    the record store and bought a CD?  Would they have not done

22    anything?

23         I mean, that's the part I don't understand how

24    breaking all this channel information necessarily translates

25    into something that you necessarily need in order to figure out

Case 1:14-cv-00651-TSE-JFA   Document 75   Filed 01/28/19   Page 13 of 24 PageID# 1268
Case 1:14-cv-00651-TSE-JFA   Document 113   Filed 08/29/19   Page 25 of 58 PageID# 2069

25

1    your lost profit analysis.

2            MR. BUCKLEY:  So two responses to that, Your Honor.

3    One is, I think the first point you made is more of a causation

4    issue.  Even if you could figure out what component of a

5    particular work, what value of that is related to downloads,

6    how do you then connect the dots and say because Brian Buckley

7    illegally downloaded this, I lost this dollar amount.  That's a

8    causation issue.

9            In terms of specifically how do each of these things

10   relate to a calculation of actual damages, honestly, my expert

11   is going to tell me that.  I can't do it.  But our expert is

12   saying, I can't get to an actual damages number, whether it

13   ends up being relevant or not, unless I have more information.

14           THE COURT:  Okay.

15           MR. BUCKLEY:  And, Your Honor, I don't think the case

16   law is --

17           THE COURT:  What's the time period that you're

18   looking for for that information?

19           MR. BUCKLEY:  Three years prior to the lawsuit being

20   filed.  So it was November of 2014.  So we would go back three

21   years from that date.

22           THE COURT:  All right.  Let me hear from the

23   plaintiffs.

24           I know that's why you chose statutory damages,

25   because you didn't want to have to go through and do all the

26

1    stuff trying to calculate actual damages, but --

2          MR. CARACAPPA:  And because, as Your Honor noted,

3    based on the financials alone, no one is sure how they are

4    going to do it.  Because once you illegally download or upload

5    or make available for download or upload a piece of music, it

6    affects every area of distribution.  Because you don't just

7    have the people that are uploading and downloading it, but it

8    expands, and they make it available.  And you could lose not

9    only Internet sales, but you could lose streaming and record

10   sales.

11         So there isn't any way for anybody to take these

12   financials and come up with an actual damages number.

13         I do have, to the extent the Court is interested,

14   what we have produced to Cox.  Does the Court want to take a

15   look at those?

16         THE COURT:  Well, just explain it to me so that I

17   know what it is.

18         MR. CARACAPPA:  Okay.  So what did is we have the

19   song, we have the year, and we have the income generated from

20   that song.  It's my understanding it's for every copyrighted

21   issue.  If it's not, then we can go back and provide that

22   information for every copyright at issue.

23         THE COURT:  For both BMG and Round Hill?  I mean,

24   he's indicated that for Round Hill it's not broken down by

25   year.

27

```
1              MR. CARACAPPA:  That's correct, for Round Hill it is
2      not broke down by year, and we can go back and do that.
3              THE COURT:  But it's only revenue, not -- it only
4      shows the revenue per work?
5              MR. CARACAPPA:  That's correct.  It's not broken down
6      by channel, for example.
7              THE COURT:  Well, why is revenue -- I mean, obviously
8      profit is going to be less than revenue.
9              MR. CARACAPPA:  Yes.
10             THE COURT:  Why aren't they entitled to get some
11     sense as to what has been the profit for each copyrighted work
12     as opposed to merely just the revenue?
13             MR. CARACAPPA:  It's my understanding that the client
14     doesn't do that by song.  The client doesn't -- the client is a
15     business, it has profits and it has losses.  The revenue
16     generated by the songs go to its bottom line.  But by song, it
17     doesn't know how much profit or loss it has.  Obviously, the
18     songs that generate more income are more profitable for them.
19             And our issue was that the way the request is drafted
20     and what they're asking for in the motion is far broader than
21     anything that they're going to need to actually prepare an
22     actual damages analysis.
23             The revenue per channel, the units underlying the
24     revenue per channel, the metrics used, again all of that
25     information we don't think they need to perform an actual
```

28

1   damages analysis.  We think that what we provided is more than

2   enough.  And they haven't been able to explain how this

3   additional information, that level of granularity, is going to

4   inform their expert or a jury.

5        With respect to the information they ask for on

6   page 4, it's the financial data related to the overall

7   business, annual revenues, costs, expenses, incremental

8   profits, that's not even asked for in any of their document

9   requests or interrogatories.

10       THE COURT:  Let me -- 106, 107, and 108, are they in

11  the second --

12       MR. CARACAPPA:  They are Exhibit A to Cox's --

13       THE COURT:  All right, I've got it.

14       MR. CARACAPPA:  I'm sorry, they are Exhibit A to our

15  opposition.

16       THE COURT:  Well, 106, all documents evidencing your

17  loss of revenues and profits as a result of the infringements.

18       That would indicate one would have to produce

19  documents relating to revenue and profits, right?

20       MR. CARACAPPA:  The problem is:  As the result of the

21  infringements.  And that's the issue that we have with the

22  request and that's the issue that we've been talking about.

23  Which is, you can't prove a but for, but for this one download

24  we would have lost income related to the album sales, or

25  digital downloads, or streaming, or licensing.

29

                    MR. BUCKLEY:  Your Honor, can I make one point?

                    THE COURT:  Okay.  Thank you.

                    MR. BUCKLEY:  That may all be true, and that's our
problem and our expert's problem.  Plaintiffs don't have to
calculate any of this.  When our expert does his analysis, if
plaintiffs think there are issues with it, or that it's flawed,
or that if it's not relevant, they are obviously free to argue
that.

                    And it is not their burden to prove actual damages.
They are proceeding on a statutory damages theory and are
entitled to do that.

                    We, however -- and I really don't think the law is
ambiguous on this.  There are two Eastern District cases right
on point.  We have a right to prove actual damages and to
introduce that as part of the statutory damages analysis.
There is zero question that we can't do it with what we've been
provided.  I mean, Mr. Caracappa doesn't even dispute that.  We
can't do it with revenue figures.

                    So we have to have some additional detail.  And the
question is just what additional detail.  And we've identified
pretty specifically what our expert needs.  It should not be --
and again, I don't want to, I don't want to be glib about the
burden here, but this is a very significant case with
significant damages involved, going and collecting this
information and providing it in the scope of all of the

30

1  discovery that's occurred in this case should not be relatively

2  that burdensome.

3         THE COURT:  I mean, I read in -- I can't remember

4  which one of the two cases that I read that you've cited, I

5  think it was the Dae Han Video Production one that I pulled up

6  and read, the older one, it talks -- and my recollection of

7  that case, and it was yesterday evening, was not that you prove

8  what actual damages are, but it has to be some overall general

9  relationship or some ballpark figure dealing with actual

10 damages.  Not that you are going to be coming in and proving

11 what actual damages are, or that you're entitled to do that, or

12 that that's necessary.

13        Am I -- did I --

14        MR. BUCKLEY:  Well, what the cases say, Your Honor,

15 is that when you're considering statutory damages, you

16 actually -- one of the two Eastern District cases actually says

17 you start with actual damages.

18        So I don't think there is any dispute about that.  So

19 then the question is just, how do you calculate actual damages?

20 And again, that's not plaintiffs' problem or Your Honor's

21 problem, we have to figure that out.  Cox has to figure it out.

22 And we have hired an expert to do that.

23        But in order to compare actual damages to statutory

24 damages, somebody has to calculate actual damages, and we're

25 going to take on the burden of doing that, but we need the data

31

1    to do it.

2           THE COURT:  By copyright you plan to do that?

3           MR. BUCKLEY:  We will try.  And they have a financial

4    expert who will look at what our expert does and I'm sure try

5    to poke holes in it.  And they will claim that his methodology

6    is flawed, and we will have an argument about that, but we're

7    entitled under the law to give it a try.  And the case law says

8    that when it comes time to actually consider damages, the Court

9    needs to take actual damages into account.  So somebody has to

10   try.

11          THE COURT:  What information does the plaintiff

12   actually have that relates to the damages calculation?  On a

13   per channel basis and then about -- you know, I assume you

14   don't keep documents as to each revenue minus operating income

15   and things like that for each copyrighted work?

16          MR. CARACAPPA:  That's right, we don't.

17          THE COURT:  How is it that the records are kept or

18   the books kept for each of the two plaintiffs here?

19          MR. CARACAPPA:  Let me rephrase the question

20   slightly.

21          THE COURT:  Okay.

22          MR. CARACAPPA:  I'm not exactly sure how the records

23   --

24          THE COURT:  It was probably poorly phrased, and I

25   understand.  No, I --

Case 1:14-cv-09601-PTG-JFA Document 75-8 Filed 01/29/19 Page 20 of 24 PageID# 1275
Case 1:14-cv-09601-PTG-JFA Document 113 Filed 06/29/15 Page 32 of 58 PageID# 2070

32

1          MR. CARACAPPA:  I'm not exactly sure how the records

2     are kept, but what they can do is they can break the copyrights

3     down by channel.  So they can do physical album sales, digital

4     downloads, streaming royalties, and licensing royalties.  And

5     they can do that, it's my understanding, per copyright by year

6     for both BMG and Round Hill.

7          THE COURT:  Okay.  So that's revenue?

8          MR. CARACAPPA:  That is revenue --

9          THE COURT:  Revenue for each copyright?

10          MR. CARACAPPA:  Yes.

11          THE COURT:  Okay.  Are there -- and I take it the

12     portfolio for the overall revenue for each of these entities

13     comes from many more copyrights than just those that are

14     involved in this lawsuit?

15          MR. CARACAPPA:  Yes, Your Honor.

16          THE COURT:  But if you knew the percentage of what

17     this revenue is and the overall revenue, and you wanted to

18     ballpark something, you could just assign -- if it's 20 percent

19     here, 20 percent of the operating expenses, to come up with

20     what ballpark would be, the actual profits per -- all right.

21          Do they keep -- I take it they would have to keep

22     operating -- do an overall business level sheet of revenues,

23     operating expenses, and profit, is that right?

24          MR. CARACAPPA:  Yes, Your Honor, they do have that

25     information generally with respect to the company --

33

```
 1              THE COURT:  Company, all right.

 2              MR. CARACAPPA:  -- not with respect to individual

 3   copyrights.

 4              THE COURT:  All right.  What I'm going to do -- you

 5   know, I tell you, if I have them produce all this information

 6   and you decide I'm going to just ignore it, I'm going to award

 7   costs for them to do this.

 8              I mean, you're asking for it.  I'm not going to have

 9   them go off and do this fishing expedition to get you a bunch

10   of information and then you just sit back and laugh about it.

11              I mean, you've represented to the Court that you've

12   got an expert and that your expert is going to put in the time

13   and effort and money to coming up with an actual damages

14   calculation.  And I'm not going to have them go off and do this

15   just because you think it might be relevant, and then you get

16   it and you decide, I don't want to use it.  Okay.  If you do

17   that, you're going to pay for it.

18              MR. BUCKLEY:  I understand, Your Honor.  And I commit

19   to you that that is absolutely not what this is about.  We are

20   going to use the information.  This is not a fishing

21   expedition.  And we are certainly not going to just sit back

22   and laugh that we imposed a burden on the plaintiffs.  That's

23   not what this is about.

24              THE COURT:  All right.  Well, I'm going to have them

25   produce the information on a per channel basis and overall
```

Case 1:18-cv-00950-PTG-JFA   Document 758   Filed 01/30/19   Page 22 of 24 PageID# 20737
Case 1:14-cv-09691-PTG-JFA   Document 138   Filed 06/29/15   Page 34 of 58 PageID# 2072

34

 1   company profit/loss information, operating expenses.

 2         So that hopefully once you get your portion of the

 3   revenue from these copyrighted works during the time period,

 4   you can look at the portion of the revenue from the entire

 5   company and, you know, do -- your expert can come up with some

 6   type of analysis as to, you know, what share of the operating

 7   expenses and things and hopefully come up with some sort of a

 8   ballpark as to what the profit would have been for that based

 9   on the revenues per channel and overall revenue and profit from

10   the company.

11         All right.  So that will take care of that motion to

12   compel.

13         The motion to seal, let's deal with that one next.  I

14   don't really understand why any of the information that you're

15   asking to be filed under seal should be under seal.

16         You know, I went back and just -- if this case ends

17   up having a lot of material that you are going to try and file

18   under seal other than identifying information of subscribers,

19   at some point we're going to have to deal with that issue, but

20   the idea that ISP numbers are changed and information kept for

21   a certain period of time, what is commercially sensitive,

22   confidential, or whatever about that information that it

23   shouldn't be in the public record?  Or that, you know, certain

24   records aren't kept after a certain period of time?

25         I went through -- and let me just -- I am going back

58

C E R T I F I C A T E  of  T R A N S C R I P T I O N

     I hereby certify that the foregoing is a true and accurate transcript that was typed by me from the recording provided by the court.  Any errors or omissions are due to the inability of the undersigned to hear or understand said recording.

     Further, that I am neither counsel for, related to, nor employed by any of the parties to the above-styled action, and that I am not financially or otherwise interested in the outcome of the above-styled action.

          /s/ Norman B. Linnell

          Norman B. Linnell

          Court Reporter - USDC/EDVA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

JUN 2 6 2015

CLERK, U.S...

BMG RIGHTS MANAGEMENT              )
(US) LLC, *et al.*,                )
                                   )
            Plaintiffs,            )
                                   )   Civil Action No. 1:14cv1611 (LO/JFA)
    v.                             )
                                   )
COX ENTERPRISES, INC., *et al.*,   )
                                   )
            Defendants.            )
_____)

## ORDER

This matter is before the court on defendants' motion to compel against the plaintiffs

(Docket no. 91) and defendants' motion to compel against Rightscorp, Inc. (Docket no. 94).

Based on the representations of counsel and for the reasons stated from the bench, it is hereby

ORDERED that defendants' motion to compel against the plaintiffs and defendants'

motion to compel against Rightscorp, Inc. are granted in part and denied in part.

Entered this 26th day of June, 2015.

/s/
John F. Anderson
United States Magistrate Judge
John F. Anderson
United States Magistrate Judge

Alexandria, Virginia