# Exhibit 8



Jeffrey M. Gould
4530 Wisconsin Avenue NW, 5th Floor
Washington, DC 20015
202.851.4526
jeff@oandzlaw.com

December 28, 2018

<u>*Via Email*</u>
Jennifer Golinveaux
Winston & Strawn LLP
101 California Street, 35th Floor
San Francisco, CA 94111
JGolinveaux@winston.com

      Re:    *Sony Music Entm't, et al., v. Cox Commc'ns, Inc., et al., 1:18-cv-00650-LO-JFA*

Dear Ms. Golinveaux:

    We write to follow-up on a number of discovery issues, including the Court's order and guidance on Plaintiffs' motion to compel, our December 12 and 14 meet-and-confers regarding Cox's objections and responses to Plaintiffs' discovery, and Thomas Lane's letter of December 26, 2018.

    As an initial matter, we are surprised by how few documents Cox has produced to date. Despite the overlap with and Cox's material document productions in the BMG case, and the length of time that has passed since Plaintiffs served discovery requests on November 19, Cox has produced a mere 10 deposition transcripts with exhibits. By contrast, Plaintiffs have produced more than 286,000 documents and more than 300,000 pages. Although our discovery discussions are ongoing, Cox should be producing documents it has agreed to produce and/or not objected to producing. When will Cox make a material production?

    We are not available to meet-and-confer at the time you proposed but are available to discuss the issues raised in Mr. Lane's letter and this letter on Monday, January 7 between 1 and 5 pm ET. Please let us know what time in that period works for you. As you're aware, many of the issues raised in the first and second sections of this letter have been outstanding for several weeks. We need a prompt written response on those issues to make this process productive. If we have not received a written response by Friday, January 4, we will assume the parties have reached an impasse and we will proceed accordingly.

### **FOLLOW-UP TO PLAINTIFFS' MOTION TO COMPEL**

    First, we would like to coordinate our prompt receipt of the BMG trial exhibits, which Magistrate Judge Anderson ordered be made available for our inspection. Given his instruction

Jennifer Golinveaux<br>
December 28, 2018<br>
Page 2 of 7

that the parties work together to facilitate and not obstruct that, we propose that Cox produce the full set of exhibits to Plaintiffs through FTP or similar site, as you did with the BMG deposition transcripts. Please produce the exhibits by January 2.

Second, consistent with Magistrate Judge Anderson's guidance at the December 21 hearing, Plaintiffs request that Cox immediately produce third-party infringement notices (or data) involving the Cox subscribers identified in Plaintiffs' notices. While Plaintiffs served a request on December 21 precisely tailored to this, it is a subset of and called for by our prior request for all notices, and the Court indicated it is a proper request. To the extent Cox intends to raise issues with the new request, we should address those promptly.

## COX'S OBJECTIONS

    a. <u>Residential ISP service</u>

Cox objects to producing documents in many instances beyond those relating to "Cox's residential ISP service," but does not identify any defensible basis for this limitation. (RFPs 17-copyright policies, 36-marketing, 44/45-terms of service, 52-bundling, 61-churn rate, 62-service pricing.) Plaintiffs' Complaint is not limited to Cox's residential ISP service. Cox's knowledge of, contribution to, and financial benefit from infringement by all of its customers are relevant. However, to the extent that Cox would like to produce documents in a manner that differentiates those that are related to Cox's residential ISP service and those that are not, Plaintiffs agree that could be useful.

    b. <u>Objections to providing discovery beyond Plaintiffs, Plaintiffs' works in suit, Plaintiffs' notices and/or the limited time period of Plaintiffs' claims</u>

During our conferences on December 12 and 14, we discussed Cox's objection to producing documents beyond Plaintiffs, Plaintiffs' works in suit, Plaintiffs' notices and the limited time period of Plaintiffs' claims. These issues are unresolved.

**Documents concerning notices**: Magistrate Judge Anderson indicated infringement notices from any copyright holder from 2010 through 2014 that involve a subscriber identified in a notice from Plaintiffs are relevant. Communications or other documents concerning those notices or subscribers are likewise relevant. And Judge O'Grady, in the BMG case, has ruled that Cox's emails, knowledge, policies and procedures pre-dating the alleged claim period are relevant too.

Given the Court's guidance on notices from other copyright holders, Cox should supplement its responses to Interrogatory Nos. 2-4, which Cox limited to notices received from Plaintiffs during Plaintiffs' claim period. Please confirm that Cox will also provide the requested information for notices from other copyright holders that relate to an IP address or subscriber identified in a notice from Plaintiffs.

Beyond notices themselves, relevant documents should be identified through appropriate searches of custodial or other files from 2010 through 2014. In this vein, please be prepared on

our upcoming call to propose and discuss appropriate parameters—e.g., relevant custodians, terms, and dates—to search for documents responsive to RFPs 6, 10, 18, 19, 21, 22, 23, 26, 27, 30, 31, 38, 39, 43, 47, 48. In the event we can reach agreement on search parameters, we may be able to resolve our disputes on these requests.

**Policies and procedures**: Cox has identified no basis to limit policy and procedure documents to just the infringement period alleged. The Court ruled in the BMG case that Cox's policies and practices pre-dating the claim period are highly probative of what it knew and when and how it handled infringement notices during the claim period. If Cox will agree to produce documents in response to RFPs 16, 40, 41, 44, and 45 for 2010 through 2014 (rather than just "Plaintiffs' Claim Period"), it would resolve most of our disputes on these requests.

    c.  <u>Deficient interrogatory responses</u>

In a number of its December 19 interrogatory responses, Cox objects on multiple grounds, provides no response, does not refer to or produce documents in lieu of a response, and yet "reserves the right to respond pursuant to Fed. R. Civ. P. 33(d)." (*E.g.*, Interrogatory Nos. 5, 6, 11.) These responses are deficient and must be supplemented as it is unclear whether Cox intends to produce documents identifying the number of subscribers (and/or the subscribers) it terminated, suspended or limited in response to infringement notices, violations of Cox's AUP, or for failing to pay for service. To the extent Cox intends to respond pursuant to Rule 33(d), it must specify the responsive records in "sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could."

    d.  <u>Cox's Acceptable Use Policy and policies considered</u>

Cox agreed to produce documents regarding (1) monitoring for AUP violations related to copyright infringement but no other AUP violations; (2) mechanisms it implemented to limit AUP violations, but not mechanisms it considered and did not implement, and (3) policies it adopted for taking adverse actions against subscribers for alleged copyright infringement, but not policies it considered and did not adopt. (RFPs 29, 40-41.) During our call on December 14, you indicated Cox would reconsider these limitations given the relevance of Cox's right and ability to control subscribers' misconduct and its knowledge of the same. Please confirm whether Cox will supplement its responses and/or produce the requested information.

At the same time, Cox objected to describing technological barriers or mechanisms it implemented to limit use of its internet services in violation of its AUP, while reserving the right to produce documents on this topic. (Interrogatory No. 9.) As with other interrogatories, we do not understand your reservation. Cox must state whether or not it is producing documents on this topic and reasonably identify them. A refusal to do so is inconsistent with your agreement to produce documents in response to RFP 41.

    e.  <u>Documents concerning MarkMonitor</u>

You stated in our December 14 call that Cox was not refusing to produce documents regarding MarkMonitor; and that your offer of production in response to RFP 6 would include

notices MarkMonitor sent on behalf of Plaintiffs. You also agreed to consider producing documents regarding any studies, assessments or analyses concerning MarkMonitor. Such production should not be limited to formal studies or reports. It should include communications with and about MarkMonitor, including how Cox handled notices received from MarkMonitor and any informal analysis of MarkMonitor. Please confirm you agree.

    f.   <u>Documents from 2008-2009 concerning RIAA and public statements regarding policies for responding to infringement notices</u>

You stated in our calls that Cox would reconsider its objection to producing documents from 2008 and 2009 concerning (1) communications with RIAA (RFP 25), and (2) public statements—including testimony, interviews, and presentations—regarding Cox's policies for responding to infringement notices (RFP 28). Your objection to RFP 24 is even broader and improperly limits a response to just 2013-2014, though documents concerning Cox's cap on infringement notices go back at least as far as 2008. Please confirm you will withdraw your date objection given Cox's imposition of notice caps in 2008 and that Cox will produce public statements beyond press releases.

    g.   <u>Financial information</u>

First, we discussed Cox's production of overall revenue and profit information from 2010 to present by year and quarter and by type of service. (RFPs 49-52.) You stated no valid basis for limiting this information to only 2013-14 or solely residential internet service, and have not yet stated what financial information Cox will produce.

Second, Cox improperly limited its agreement to produce documents showing revenue/profits attributable to subscribers who were the subject of infringement notices, to notices received only from Plaintiffs during the alleged claim period. (RFP 57.) We explained that revenue received from known infringing subscribers after November 2014 is relevant to Cox's financial benefits from infringement, regardless of when the underlying infringement occurred. Similarly, if Cox knew specific subscribers were infringing in 2010-2012 (before it received notices from Plaintiffs about those same subscribers in 2013-2014), all revenue generated from those subscribers after the initial notice is relevant.

Third, Cox agreed to produce documents regarding the average length of time it retains subscribers, revenue/profit for the life of the account, and subscriber churn rate, but only "during Plaintiffs' Claim Period." (RFPs 55-56, 61.) That limitation is improperly narrow. Plaintiffs need to know the average length of time Cox retains subscribers overall and associated revenue/profits and churn rates, not just within a two-year period.

Fourth, Cox still objects to producing information on the number of subscribers and its penetration rates, including the confusing objection that this information is available to Plaintiffs. (RFP 58-60.) We explained we have no access to this information and that it is relevant to Plaintiffs' overall financial picture, incentive for tolerating infringement, and the need for deterrence.

Fifth, in response to Interrogatory No. 8, Cox states it "will specify business records, if any, that will enable Plaintiffs to determine" "the effect that terminating accounts of Subscribers accused of copyright infringement has, or you believe could have, on your financial interests or the attractiveness of your internet service." Please promptly identify such business records. If Cox contends none exist, it should state that.

    h.  <u>Studies concerning Internet Usage</u>

We discussed your objections to RFP 37 regarding reports, plans, studies, and research on Cox's customers' use and benefits of the Internet, in light of Cox's agreement to produce the same documents in BMG. *See* BMG ECF No. 66. You stated Cox is willing to produce something on this topic and would get back to us. Please confirm Cox will produce at least the documents it produced on this topic in the BMG case.

    i.  <u>"Walled garden"</u> – We briefly discussed your objection to producing documents on this topic. As a starting point, we propose that "walled garden" should be included among Cox's search terms.

    j.  <u>Personally Identifiable Information (PII) / DHCP logs</u> – You briefly described how production of PII was handled in the BMG case. Please provide that information in writing so we can discuss it with our clients and consider whether a similar approach will suffice here.

## COX'S DISCOVERY REQUESTS

We respond below to the issues raised in your December 26, 2018 letter.

I.  <u>GENERAL ISSUES</u>

    a.  <u>Privilege log</u>

We have reviewed your letter and write to confirm Cox's agreement that Plaintiffs need not log responsive documents withheld on privilege or work product grounds created after Plaintiffs' January 29, 2016 demand letter, unless (i) such documents include parties other than plaintiffs and/or their outside counsel in this litigation, or (ii) Plaintiffs identify specific third parties and explain why they should be exempted. Plaintiffs reserve the right to identify third parties exempted pursuant to (ii) as discovery proceeds. Regarding the form and timing for logs, we are open to a discussion on this.

    b.  <u>Protective Order</u>. Plaintiffs have and will continue to produce documents pursuant to the Stipulated Protective Order entered in this case (as indicated in their Responses to Cox's Requests for Production).

    c.  <u>Search terms and custodians</u>. We look forward to a mutual discussion of search parameters, where applicable.

II.  <u>SPECIFIC ISSUES</u>

 a. <u>Financial Data</u>

  Plaintiffs have agreed to produce financial records for 2010-2014, and you have identified no basis for needing that information for 2015 other than generically to "provide a more accurate picture of Plaintiffs' alleged losses and the impact of the alleged infringement on each Plaintiff." The infringement claims at issue end in November 2014 and we do not understand how Plaintiffs' financials for 2015 are relevant, necessary or appropriate. Regarding your request for a "detailed profit and loss statement," we note that the Court in the BMG case ordered only "overall company profit/loss information [and] operating expenses." (6/29/15 hearing at 32, attached as Ex A to Cox's 12/26/19 letter.). Apart from the fact that the Court has already ruled on this, we do not understand why the detailed information would be relevant.

  Regarding track-level revenue by channel, you ignore a fundamental distinction between the BMG case and this one. Unlike Plaintiffs here, BMG did not object to producing track-level revenue information. Though we have asked many times, you have yet to articulate any theory of relevance over Plaintiffs' track-level revenues beyond speculative "benchmarking," though we remain open to listening. The only question the Court considered in BMG was whether, having provided that information, BMG should break it down further by channel. Nevertheless, we are hopeful that a proffer will resolve this issue. We are still working on it and hope to be in a position to provide it soon after the holidays.

 b. <u>Ownership of copyright works</u>

  You mischaracterize Plaintiffs' production regarding registration information and the import of that production. For the vast majority of works, Plaintiffs produced copyright registration certificates with bates prefixes corresponding to the respective Plaintiff group. As a backstop, and in effort to ensure a complete production of registration information for every work in suit, Plaintiffs also produced printouts from the Copyright Office's website for most works. In granting BMG summary judgment on ownership in the *BMG v. Cox* case, Judge O'Grady endorsed this practice and took judicial notice of such public catalog entries.

  Regarding validity and ownership challenges, it appears that your interest is in conducting a fishing expedition and sending Plaintiffs on an untethered search based on nothing more than hope and conjecture. To date, Cox has identified no basis to question either validity or ownership of any copyright, though we remain open to producing additional information if you identify something more concrete than speculation. As for burden, none of the Plaintiffs maintain central files regarding challenges to validity or ownership and so identification of such documents would necessarily involve searching the files of potentially dozens of attorneys whose responsibilities may have changed throughout the unlimited time frame of Cox's requests, for more than 10,000 works. As we have repeatedly offered, if Cox identifies specific works for which it has a good faith basis to question validity or ownership, Plaintiffs will be happy to discuss producing documents relating to that specific work. In the absence of such good faith basis, however, we stand on our objections.

 c. <u>Evidence of direct infringement</u>

You asked what Plaintiffs mean by their agreement to produce "exemplars of the unauthorized, infringing copies of the copyrighted works." Plaintiffs are producing copies of the infringing files that were shared by Cox's subscribers.

You also asked if Plaintiffs have completed production of infringement notices. Plaintiffs have produced all infringement notices sent by RIAA/MarkMonitor to Cox on behalf of Plaintiffs that have been located. If additional notices are located, we will produce them.

*   *   *

We look forward to your written response by Friday, January 4 on the issues raised in the first two sections of this letter, and conferring with you soon.

Sincerely,

*/s/ Jeffrey M. Gould*