# Exhibit 15

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

SONY MUSIC ENTERTAINMENT, *et al.*,

    Plaintiffs,

v.

COX COMMUNICATIONS, INC., *et al.*,

    Defendants.

Case No. 1:18-cv-00950-LO-JFA

**PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION
OF DOCUMENTS AND THINGS TO DEFENDANTS COX COMMUNICATIONS, INC.
AND COXCOM, LLC.**

Pursuant to Federal Rules of Civil Procedure 26 and 34, Plaintiffs serve their First Set of Requests for Production of Documents and Things to Defendants Cox Communications, Inc. and CoxCom, LLC.  Plaintiffs request that Defendants respond in accordance with the Federal Rules of Civil Procedure and Local Rules of this Court, and produce the documents hereinafter described at the offices of Oppenheim + Zebrak, LLP, 5225 Wisconsin Ave., Ste. 503, Washington, DC 20015, or at such other time and place as the parties may agree upon.

**DEFINITIONS**

Unless otherwise indicated, the following definitions apply to these requests:

1.    The term "Plaintiffs" refers collectively to Plaintiffs Sony Music Entertainment, Arista Music, Arista Records LLC, LaFace Records LLC, Provident Label Group, LLC, Sony Music Entertainment US Latin, Volcano Entertainment III, LLC, Zomba Recordings LLC, Sony/ATV Music Publishing LLC, EMI Al Gallico Music Corp., EMI Algee Music Corp., EMI

April Music Inc., EMI Blackwood Music Inc., Colgems-EMI Music Inc., EMI Consortium Music Publishing Inc. d/b/a EMI Full Keel Music, EMI Consortium Songs, Inc., individually and d/b/a EMI Longitude Music, EMI Feist Catalog Inc., EMI Miller Catalog Inc., EMI Mills Music, Inc., EMI Unart Catalog Inc., EMI U Catalog Inc., Jobete Music Co. Inc., Stone Agate Music, Screen Gems-EMI Music Inc., Stone Diamond Music Corp., Atlantic Recording Corporation, Bad Boy Records LLC, Elektra Entertainment Group Inc., Fueled By Ramen LLC, Nonesuch Records Inc., Roadrunner Records, Inc., Warner Bros. Records Inc., Warner/Chappell Music, Inc., Warner-Tamerlane Publishing Corp., WB Music Corp., W.B.M. Music Corp., Unichappell Music Inc., Rightsong Music Inc., Cotillion Music, Inc., Intersong U.S.A., Inc., UMG Recordings, Inc., Capitol Records, LLC, Universal Music Corp., Universal Music – MGB NA LLC, Universal Music Publishing Inc., Universal Music Publishing AB, Universal Music Publishing Limited, Universal Music Publishing MGB Limited, Universal Music – Z Tunes LLC, Universal/Island Music Limited, Universal/MCA Music Publishing Pty. Limited, Universal – Polygram International Tunes, Inc., Universal – Songs of Polygram International, Inc., Universal Polygram International Publishing, Inc., Music Corporation of America, Inc. d/b/a Universal Music Corp., Polygram Publishing, Inc., Rondor Music International, Inc., and Songs of Universal, Inc. "Plaintiff" means any one or more of the Plaintiffs, as defined herein.

2. The terms "you," "your," "Cox," "Defendant," or "Defendants" refer to Cox Communications, Inc. and CoxCom, LLC, their parents, subsidiaries, affiliates, officers, directors, agents, employees, and/or any other person or entity currently or previously acting or purporting to act on behalf of either defendant.

3. The term "MarkMonitor" refers to MarkMonitor Inc., its parents, subsidiaries, affiliates, officers, directors, agents, consultants, employees, attorneys and accountants, and/or any

other person or entity currently or previously acting or purporting to act on its behalf. The term MarkMonitor also specifically includes DtecNet Inc. and Clarivate Analytics.

4. The term "Complaint" refers to the Complaint filed by Plaintiffs on July 31, 2018, in this lawsuit.

5. The term "ISP" means any business or organization that is an internet service provider.

6. The term "Subscriber" refers to any account holder or subscriber of your internet services.

7. The term "User" refers to any person that uses your internet services.

8. The term "DMCA" refers to the Digital Millennium Copyright Act.

9. The term "Infringement Notice" refers to a notice that one or more Subscriber or User allegedly infringed a copyright. This includes notices sent on behalf of any copyright owner, regardless of whether or not Cox processed or retained the notice. This term includes but is not limited to a notification of claimed copyright infringement pursuant to the DMCA, 17 U.S.C. § 512.

10. The term "CATS" refers to the Cox Abuse Tracking System.

11. The term "Cox Graduated Response" refers to your system for responding to notices of copyright infringement.

12. The term "DMCA Policy" refers to any policy concerning your obligations under, compliance with, business practices and communications with Subscribers or Users relating to, the DMCA.

13. The term "Plaintiffs' Copyrighted Work" means any one or more of the works listed

3

in Exhibit A and/or Exhibit B to the Complaint, including any future additions or revisions to Exhibit A and/or Exhibit B in subsequent pleadings or discovery responses.

14. The term "Repeat Infringer Policy" refers to any policy that seeks to address copyright infringement or alleged copyright infringement by a Subscriber or User, whether or not contemplated by and/or set forth in 17 U.S.C. § 512(i).

15. The term "DMCA Agent" refers to any person or entity Cox has designated to receive notifications of alleged copyright infringement pursuant to the DMCA.

16. The term "Acceptable Use Policy" refers to any policy concerning obligations, rules, or limitations of Subscribers' or Users' use of internet services offered by Cox.

17. The term "BMG Litigation" refers to the litigation captioned as *BMG Rights Management (US) LLC, et al. v. Cox Enterprises, Inc., et al.* in the United States District Court for the Eastern District of Virginia (Case 1:14-cv-01611-LO-JFA).

18. The term "BitTorrent" refers to the BitTorrent protocol for Peer-to-Peer file sharing used to distribute data and electronic files over the internet.

19. The term "Peer-to-Peer" refers to computer networks in which each computer can act as a server for the others, allowing shared access to files and peripherals without the need for a central server.

20. The term "DHCP" refers to Dynamic Host Configuration Protocol.

21. The terms "person" or "persons" is defined as any natural person or business, legal or governmental entity or association. Unless otherwise stated, "person" or "persons" shall also include any individuals and entities which are separately defined in these Definitions. Any reference to a person shall also include that person's successors, assigns, personal representatives, and heirs, by operation of law or otherwise.

22. The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a). A draft of a nonidentical copy is a separate document within the meaning of this term. "Document" specifically includes electronically stored information as defined in Rule 34(a).

23. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise) by any means, written, oral, or otherwise, at any time or place under any circumstances. The definition is not limited to transfers between persons, but also includes other transfers, such as records and memoranda to file; any written letter, memorandum, or other document that was sent by one or more individuals to another or others; any telephone call between one or more individuals and another or others, whether such call was by chance or prearranged or not, formal or informal; and any conversation or meeting between one or more individuals and another, whether such contact was by chance or prearranged or not, formal or informal.

24. The term "concerning" means relating to, referring to, describing, evidencing or constituting.

25. "Any" should be understood to include and encompass "all," "all" should be understood to include and encompass "any," "or" should be understood to include and encompass "and," and "and" shall be understood to include and encompass "or."

26. The use of a verb in any tense shall be construed as the use of the verb in all other tenses.

27. The use of the singular form of any word shall include the plural and vice versa.

## INSTRUCTIONS

1. These requests shall be deemed to be continuing to the extent permitted by Rule

26(e) of the Federal Rules of Civil Procedure.

2. Defendant is to produce documents comprising electronically stored information pursuant to the an agreed-upon protocol governing the production of electronically stored information and paper documents.

3. Defendant is to produce entire documents, including attachments, enclosures, cover letters, memoranda, and appendices as they are kept in the usual course of business or, alternatively, organized and labeled to correspond to the category of documents requested.

4. In response to each request, Defendant shall affirm whether responsive documents exist and have been, or shall be, produced.

5. If Defendant deems any information, document, or communication requested by any of the following requests to be protected from disclosure by the attorney-client privilege, work-product doctrine, or any other privilege, doctrine, or immunity, please identify or describe: (a) the information, document, or communication you claim to be so protected by author, subject matter, date, number of pages, attachments, and appendices; (b) the names and job titles of all recipients of the information, document, or communication, including blind copy recipients and any individual to whom the information, document, or communication was distributed, shown, or explained; (c) the information, document, or communication's current custodian; and (d) all bases, factual and legal, upon which such protection allegedly rests. If you contend that only a portion of the information contained in a document is privileged, provide the portion that you do not contend is privileged.

6. In the event that more than one copy of a document exists, Defendants shall produce the original and each non-identical copy of each document or other tangible thing requested herein, which is in Defendants' possession, custody, or control, or that of persons or entities under the

control of Defendants.

7.  Each discovery request shall be fully responded to unless it is in good faith objected to.  An objection must state with specificity the grounds for the objection and whether any responsive materials are being withheld on the basis of that objection.  An objection to part of a request (or a word, phrase, or clause contained in the request) must specify the part objected to and Defendants shall produce or permit inspection of the rest.

8.  Unless otherwise specified, the relevant time frame for these Requests is January 1, 2010 through December 31, 2014.

## REQUESTS FOR PRODUCTION

**REQUEST NO. 1**   All documents produced by Defendants in the *BMG Litigation*, bearing the bates numbers and/or exhibit numbers used in the *BMG Litigation*.

**REQUEST NO. 2**   All exhibits used, referenced or introduced during the 2015 trial in the *BMG Litigation*, bearing the bates numbers and/or exhibit numbers used in the *BMG Litigation*, regardless of whether such exhibits were admitted into evidence.  This request specifically includes demonstrative exhibits presented at the trial by any party.

**REQUEST NO. 3**   All documents with the Bates prefix "COX_BMG" (or otherwise originating from Defendants' files) identified on any parties' exhibit list in the *BMG Litigation*, including but not limited to documents identified on the exhibit lists filed at docket entry numbers 283, 284, 285, 303, and 689.  The documents should be produced with the bates numbers and/or exhibit numbers used in the *BMG Litigation*.

**REQUEST NO. 4**   Transcripts of all depositions taken in the *BMG Litigation*, including any exhibits used during those depositions.

**REQUEST NO. 5**   All of Defendants' responses and objections to interrogatories,

7

document requests, requests for admission, and deposition notices and topics in the *BMG Litigation*.

**REQUEST NO. 6**   All documents involving, mentioning or related to MarkMonitor or DtecNet Inc., including but not limited to communications with or concerning MarkMonitor or DtecNet Inc. and assessments or analyses of MarkMonitor or DtecNet Inc.

**REQUEST NO. 7**   All documents concerning CATS, including but not limited to technical documents describing CATS, diagrams of CATS, the internal "wiki" that describes CATS and its technical implementation, and all versions of the CATS Abuse Automation System Implementation Plan.

**REQUEST NO. 8**   All computer source code implementing CATS.

**REQUEST NO. 9**   All documents concerning Defendants' "walled garden."

**REQUEST NO. 10**   All documents concerning alleged copyright infringement by your Subscribers or Users or through your internet service.

**REQUEST NO. 11**   All Infringement Notices received by Defendants from any rights holder.

**REQUEST NO. 12**   Reports, studies, memoranda and/or analyses pertaining to Internet usage on Cox's network by its subscribers, including the volume of BitTorrent and/or Peer-to-Peer Internet traffic on Cox's network and how it compares to other usage categories.

**REQUEST NO. 13**   All documents concerning BitTorrent or other Peer-to-Peer file sharing, including but not limited to documents concerning the use of BitTorrent or other Peer-to-Peer file sharing by your Subscribers or Users; the prevalence of copyright infringement occurring through BitTorrent or other Peer-to-Peer file sharing systems; communications, memos, and studies discussing BitTorrent or Peer-to-Peer Internet traffic whether or not on the Cox network.

**REQUEST NO. 14**   Documents sufficient to show your corporate structure for the business of providing internet services, including the relationship between any parent corporations, subsidiaries, or any affiliates engaged in your business of providing internet services.

**REQUEST NO. 15**   Documents sufficient to show your organizational charts and structure, and executive titles and job occupants, for addressing copyright complaints, user terms of service, acceptable use policies, privacy policies, and finances, from January 1, 2008 through December 31, 2014.

**REQUEST NO. 16**   All documents concerning any copyright or infringement policy, including but not limited to any draft or final versions of such policies; the effects of such policies; documents sufficient to identify the employees or agents with responsibility for developing, conceiving, drafting and/or implementing such policies; documents sufficient to show when you first adopted such policies and the date of any changes to such policies; and documents sufficient to show how and when such policies were communicated to third parties including but not limited to Subscribers or Users.  This request includes but is not limited to any DMCA Policy, Repeat Infringer Policy, and/or Acceptable Use Policy.

**REQUEST NO. 17**   All documents concerning your communications to Subscribers or Users of any DMCA Policy (or other policy concerning copyright or infringement).  This request includes but is not limited to documents sufficient to show when, how and what you communicated to Subscribers or Users concerning such policies.

**REQUEST NO. 18**   All documents concerning any Infringement Notice, including but not limited to any notices of alleged copyright infringement received by Defendant, whether sent on behalf of Plaintiffs or any other rights holders and regardless of whether or not Defendants processed or retained or acted on such notices.

**REQUEST NO. 19**   All documents that describe and/or identify Infringement Notices that Cox received but rejected (and/or did not process or retain), including but not limited to Infringement Notices from Rightscorp.

**REQUEST NO. 20**   Documents sufficient to identify Defendants' employees or agents involved any manner in receiving, assessing, addressing, and/or implementing any Infringement Notice, including documents sufficient to identify each person's role.

**REQUEST NO. 21**   Documents sufficient to show how and when Defendants communicated any Infringement Notice to third parties, including but not limited to Subscribers or Users.  This request includes Defendants' policies for forwarding to or otherwise informing Subscribers or User of copyright infringement allegations and any notices or communications to Subscribers or Users.

**REQUEST NO. 22**   Documents sufficient to show the following information concerning Infringement Notices received by Defendant:  the number and dates of Infringement Notices, the allegedly infringed content, the IP addresses and subscribers associated with Infringement Notices, and the rights holder on whose behalf the Infringement Notices were sent.

**REQUEST NO. 23**   All communications with your Subscribers or Users concerning copyright or alleged infringement, including but not limited to communications concerning Infringement Notices and documents sufficient to show the number, nature, date and content of such communications.

**REQUEST NO. 24**   All documents concerning any limits, restrictions, caps or quotas Defendant placed on the number of Infringement Notices it would receive, process, forward to Subscribers or otherwise act upon for the period of January 1, 2008 through December 31, 2014, irrespective of whether they concern Plaintiffs or other rights holders.  This request includes

10

Defendants' internal and external communications about any such limits, restrictions, caps or quotes.

**REQUEST NO. 25**   All documents concerning communications with the Recording Industry Association of America, the National Music Publishers' Association, and/or the Motion Picture Association of American concerning copyright infringement from January 1, 2008 through December 31, 2014.

**REQUEST NO. 26**   All documents concerning analyzing, assessing, investigating or responding to an Infringement Notice, including but not limited to actions considered or taken in response to any Infringement Notice.  To the extent such actions have changed over time, this Request calls for documents sufficient to show any such change and the time such change occurred.

**REQUEST NO. 27**   All documents concerning communications to or from Subscribers or Users regarding Infringement Notices (or any other notices of copyright infringement claims).

**REQUEST NO. 28**   All documents reflecting or comprising press releases or other public statements you made concerning your policies for responding to Infringement Notices from January 1, 2008 through December 31, 2014.

**REQUEST NO. 29**   All documents concerning any policy, practice or capability that Defendant considered, formulated, or adopted for taking adverse action (including without limitation, suspending or terminating internet service) against Subscribers or Users for alleged copyright infringement.

**REQUEST NO. 30**   All documents concerning communications with any third party that sent you a notice of alleged copyright infringement, including all documents comprising such notices and internal and external communications about such notices.

**REQUEST NO. 31**   All documents concerning Subscribers' or Users' awareness of any

11

Defendant DMCA Policy or other copyright or infringement policies.

**REQUEST NO. 32**   All documents concerning Defendants' policies or approach to assigning or reassigning IP addresses to Subscribers, the length of time of such assignments, and the geographic scope of specific IP addresses.

**REQUEST NO. 33**   All documents concerning tracking or determining the identity of Subscribers or Users associated with an IP address identified in an Infringement Notice.

**REQUEST NO. 34**   Documents sufficient to identify the Subscribers associated with the IP addresses identified in any Infringement Notice Defendant received from January 1, 2013 through December 31, 2014.

**REQUEST NO. 35**   All DHCP logs linking Subscribers to the IP addresses identified in any Infringement Notice Defendant received from January 1, 2013 through December 31, 2014.

**REQUEST NO. 36**   All advertising or marketing concerning use of your internet service to download or obtain music.

**REQUEST NO. 37**   Marketing reports, plans, studies and consumer research related to how Cox's customers use the internet, what benefits and attributes Cox's customers wish to receive from the Internet, and the types of customers that use the Internet.  This request specifically includes but is not limited to reports, analysis or surveys concerning use of your internet service to download or obtain music.

**REQUEST NO. 38**   All documents concerning any investigation by Defendants into any allegation of copyright infringement by Subscribers or Users, including but not limited to documents concerning Defendants' identification of Subscribers or Users alleged to have infringed one or more copyrights, and efforts to determine if any Subscribers or Users infringed copyrights using Defendants' internet service.

**REQUEST NO. 39**   All documents concerning the suspension or termination of internet service to any Subscriber or User relating to copyright infringement or violation of any provision of any DMCA Policy, Acceptable Use Policy, Repeat Infringer Policy, or any other policy related to copyright infringement.

**REQUEST NO. 40**   All documents concerning monitoring, review or inspection of your internet services for uses that violate your Acceptable Use Policy.

**REQUEST NO. 41**   All documents concerning any technological barriers or other means or mechanisms you considered or implemented to address, limit or prevent use of your internet services in violation of your Acceptable Use Policy, including but not limited to preventing copyright infringement by Subscribers or Users through the use of BitTorrent or Peer-to-Peer file sharing systems.

**REQUEST NO. 42**   All documents concerning the potential impact on your financial interests, including but not limited to lost fees or revenues, in the event you terminated internet service to Subscribers or Users accused of copyright infringement.

**REQUEST NO. 43**   Documents sufficient to show the number of Subscribers per month against whom you have taken any action or implemented any measures in response to an Infringement Notice, including but not limited to suspension or termination.

**REQUEST NO. 44**   Documents sufficient to show all terms of use and terms of service provided to Subscribers.

**REQUEST NO. 45**   All documents concerning any changes to Defendants' terms of use or terms of service relating to copyright infringement or allegations of copyright infringement.

**REQUEST NO. 46**   All documents supporting, refuting, or otherwise concerning your affirmative defenses or other defenses in this case.

**REQUEST NO. 47**   All communications concerning the DMCA.

**REQUEST NO. 48**   All documents concerning Plaintiffs.

**REQUEST NO. 49**   Documents sufficient to show your total and average revenues and profits, by year and quarter, from January 1, 2010 to present.

**REQUEST NO. 50**   Documents sufficient to show your total and average revenue and profits generated through provision of internet service, by year and quarter from January 1, 2010 to present, including a breakdown based on the different types of internet service provided.

**REQUEST NO. 51**   Documents sufficient to show your total and average revenue and profits generated through provision of television and telephone service, by year and quarter from January 1, 2010 to present, broken down by type of service provided.

**REQUEST NO. 52**   Documents sufficient to show the number of Subscribers who also subscribe to your television and/or telephone service.

**REQUEST NO. 53**   Documents sufficient to show the average cost to you of obtaining a Subscriber and the costs associated with terminating a Subscriber's internet service.

**REQUEST NO. 54**   Documents sufficient to show your total and average revenue and profit from Subscribers for each level of internet service that you offer, by year and quarter from January 1, 2010 to present.

**REQUEST NO. 55**   Documents sufficient to show your total and average revenue and profit per Subscriber for the life of the account, from January 1, 2010 to present.

**REQUEST NO. 56**   Documents sufficient to show the average length of time you retain Subscribers.

**REQUEST NO. 57**   Documents sufficient to show your total and average revenue and profit attributable to Subscribers about whom you received an Infringement Notice, including the

14

per Subscriber revenue and profit by quarter and year, from January 1, 2010 to present.

**REQUEST NO. 58**   Documents sufficient to show your total number of Subscribers in the United States by type of service (i.e., internet, television, telephone).

**REQUEST NO. 59**   Documents sufficient to show the number of homes passed by your network (i.e., the number of households with potential to receive your services, including internet services).

**REQUEST NO. 60**   Documents sufficient to show your penetration rates (i.e., the number of Subscribers divided by the numbers of households with the potential to receive your services) by type of service (i.e., internet, television, telephone).

**REQUEST NO. 61**   Documents sufficient to show on a quarterly and annual basis your Subscriber churn rate (i.e., the number of Subscribers whose service is discontinued for any reason, including cancellation of termination).

**REQUEST NO. 62**   Documents sufficient to show your pricing for each of the different levels of internet services you offer Subscribers.

**REQUEST NO. 63**   Documents sufficient to identify any expert witnesses you may call as a witness at any trial or hearing in this lawsuit or that may submit an expert report in this case, including the expert witnesses' curriculum vitae, contact information, employment history, testifying experience, publications, and the topics on which that the witnesses will testify or opine.

**REQUEST NO. 64**   All documents that you may use as exhibits in the trial or any hearing in this lawsuit.

**REQUEST NO. 65**   All documents concerning any subpoena you issue in this lawsuit, including all communications with the third-party concerning the subpoena and all documents you

15

receive in response to a subpoena.

**REQUEST NO. 66**   All documents you identify or rely on in responding to Plaintiffs' Interrogatories.

Dated: November 19, 2018      Respectfully submitted,

/s/ *Jeffrey M. Gould*
Scott A. Zebrak (38729)
Matthew J. Oppenheim (*pro hac vice*)
Jeffrey M. Gould (*pro hac vice*)
OPPENHEIM + ZEBRAK, LLP
5225 Wisconsin Avenue, NW, Suite 503
Washington, DC 20015
Tel:  202-480-2999
scott@oandzlaw.com
matt@oandzlaw.com
jeff@oandzlaw.com

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

It is hereby certified that a true and correct copy of the foregoing was served via Electronic Mail on the 19th day of November, 2018, upon counsel of record.

Dated: November 19, 2018

                                                                    */s/ Jeffrey M. Gould*