# Exhibit 16

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

| |
|---|
| SONY MUSIC ENTERTAINMENT, *et al.*,<br><br>     Plaintiffs,<br><br>v.<br><br>COX COMMUNICATIONS, INC., *et al.*,<br><br>     Defendants. |

Case No. 1:18-cv-00950-LO-JFA

<u>**PLAINTIFFS' FIRST SET OF INTERROGATORIES TO DEFENDANTS COX
COMMUNICATIONS, INC. AND COXCOM, LLC.**</u>

Pursuant to Federal Rules of Civil Procedure 26 and 33, Plaintiffs serve their First Set of
Interrogatories upon Defendants Cox Communications, Inc. and CoxCom, LLC.   Plaintiffs
request that Defendants answer the following interrogatories in writing and under oath in
accordance with the Local Rules of this Court.

<u>**DEFINITIONS**</u>

Unless otherwise indicated, the following definitions apply to these requests:

1.      The term "Plaintiffs" refers collectively to Plaintiffs Sony Music Entertainment,
Arista Music, Arista Records LLC, LaFace Records LLC, Provident Label Group, LLC, Sony
Music Entertainment US Latin, Volcano Entertainment III, LLC, Zomba Recordings LLC,
Sony/ATV Music Publishing LLC, EMI Al Gallico Music Corp., EMI Algee Music Corp., EMI
April Music Inc., EMI Blackwood Music Inc., Colgems-EMI Music Inc., EMI Consortium Music
Publishing Inc. d/b/a EMI Full Keel Music, EMI Consortium Songs, Inc., individually and d/b/a
EMI Longitude Music, EMI Feist Catalog Inc., EMI Miller Catalog Inc., EMI Mills Music, Inc.,

EMI Unart Catalog Inc., EMI U Catalog Inc., Jobete Music Co. Inc., Stone Agate Music, Screen Gems-EMI Music Inc., Stone Diamond Music Corp., Atlantic Recording Corporation, Bad Boy Records LLC, Elektra Entertainment Group Inc., Fueled By Ramen LLC, Nonesuch Records Inc., Roadrunner Records, Inc., Warner Bros. Records Inc., Warner/Chappell Music, Inc., Warner-Tamerlane Publishing Corp., WB Music Corp., W.B.M. Music Corp., Unichappell Music Inc., Rightsong Music Inc., Cotillion Music, Inc., Intersong U.S.A., Inc., UMG Recordings, Inc., Capitol Records, LLC, Universal Music Corp., Universal Music – MGB NA LLC, Universal Music Publishing Inc., Universal Music Publishing AB, Universal Music Publishing Limited, Universal Music Publishing MGB Limited, Universal Music – Z Tunes LLC, Universal/Island Music Limited, Universal/MCA Music Publishing Pty. Limited, Universal – Polygram International Tunes, Inc., Universal – Songs of Polygram International, Inc., Universal Polygram International Publishing, Inc., Music Corporation of America, Inc. d/b/a Universal Music Corp., Polygram Publishing, Inc., Rondor Music International, Inc., and Songs of Universal, Inc. "Plaintiff" means any one or more of the Plaintiffs, as defined herein.

2.     The terms "you," "your," "Cox," "Defendant," or "Defendants" refer to Cox Communications, Inc. and CoxCom, LLC, their parents, subsidiaries, affiliates, officers, directors, agents, employees, and/or any other person or entity currently or previously acting or purporting to act on its behalf.

3.     The term "MarkMonitor" refers to MarkMonitor Inc., its parents, subsidiaries, affiliates, officers, directors, agents, employees, and/or any other person or entity currently or previously acting or purporting to act on its behalf.  The term MarkMonitor also specifically includes DtecNet Inc. and Clarivate Analytics.

4.     The term "Complaint" refers to the Complaint filed by Plaintiffs on July 31, 2018,

in this lawsuit.

5.      The term "ISP" means any business or organization that is an internet service provider.

6.      The term "Subscriber" refers to any account holder or subscriber of your internet services.

7.      The term "User" refers to any person that uses your internet services.

8.      The term "DMCA" refers to the Digital Millennium Copyright Act.

9.      The term "Infringement Notice" refers to a notice that one or more Subscriber or User allegedly infringed a copyright.  This includes notices sent on behalf of any copyright owner, regardless of whether or not Cox processed or retained the notice.  This term includes but is not limited to a notification of claimed copyright infringement pursuant to the DMCA, 17 U.S.C. § 512.

10.      The term "CATS" refers to the Cox Abuse Tracking System.

11.      The term "Cox Graduated Response" refers to Your system for responding to notices of copyright infringement.

12.      The term "DMCA Policy" refers to any policy concerning your obligations under, compliance with, business practices and communications with Subscribers or Users relating to, the DMCA.

13.      The term "Plaintiffs' Copyrighted Work" means any one or more of the works listed in Exhibit A and/or Exhibit B to the Complaint, including any future addition or revisions to Exhibit A and/or Exhibit B in subsequent pleadings or discovery responses.

14.      The term "Repeat Infringer Policy" refers to any policy that seeks to address

copyright infringement or alleged copyright infringement by a Subscriber or User, whether or not contemplated by and/or set forth in 17 U.S.C. § 512(i).

15.    The term "DMCA Agent" refers to any person or entity Cox has designated to receive notifications of alleged copyright infringement pursuant to the DMCA.

16.    The term "Acceptable Use Policy" refers to any policy concerning the obligations, rules, and limitations of Subscribers' or Users' use of internet services offered by Cox.

17.    The term "BMG Litigation" refers to the litigation captioned as *BMG Rights Management (US) LLC, et al. v. Cox Enterprises, Inc., et al.* in the United States District Court for the Eastern District of Virginia (Case 1:14-cv-01611-LO-JFA).

18.    The term "BitTorrent" refers to the BitTorrent communications protocol for Peer-to-Peer file sharing used to distribute data and electronic files over the internet.

19.    The term "Peer-to-Peer" refers to computer networks in which each computer can act as a server for the others, allowing shared access to files and peripherals without the need for a central server.

20.    The term "DHCP" refers to Dynamic Host Configuration Protocol.

21.    The terms "Person" or "persons" is defined as any natural person or business, legal or governmental entity or association. Unless otherwise stated, "person" or "persons" shall also include any individuals and entities which are separately defined in these Definitions. Any reference to a person shall also include that person's successors, assigns, personal representatives, and heirs, by operation of law or otherwise.

22.    The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a). A draft of a nonidentical copy is a separate document within the meaning of this term. "Document" specifically includes

electronically stored information as defined in Rule 34(a).

23.    The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise) by any means, written, oral, or otherwise, at any time or place under any circumstances. The definition is not limited to transfers between persons, but also includes other transfers, such as records and memoranda to file; any written letter, memorandum, or other document that was sent by one or more individuals to another or others; any telephone call between one or more individuals and another or others, whether such call was by chance or prearranged or not, formal or informal; and any conversation or meeting between one or more individuals and another, whether such contact was by chance or prearranged or not, formal or informal.

24.    The term "concerning" means relating to, referring to, describing, evidencing or constituting.

25.    The term "describe" means to provide a complete description and explanation of the requested subject matter, including to identify all persons, communications, or documents that are referenced in or that evidence your answer.

26.    "Any" should be understood to include and encompass "all," "all" should be understood to include and encompass "any," "or" should be understood to include and encompass "and," and "and" shall be understood to include and encompass "or."

27.    The use of a verb in any tense shall be construed as the use of the verb in all other tenses.  The use of the singular form of any word shall include the plural and vice versa.

28.    When referring to a person, to "identify" means to give, to the extent known, the person's full name, present or last known address, e-mail address, and telephone number, and when referring to a natural person, additionally, the present or last known place of employment.  Once a

person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

29.     When referring to documents, to "identify" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; (iv) author(s), addressee(s), and recipient(s); and (v) if produced in discovery in this lawsuit, the Bates number.

## INSTRUCTIONS

1.     The interrogatories below must be answered in accordance with Federal Rules of Civil Procedure 26 and 33.   You must serve upon Plaintiffs a written answer and/or objection addressed to each interrogatory, and such answer or objection must be signed by the serving party. The responses to the interrogatories shall include any information that is within your possession, custody or control, that is within the possession, custody or control of your attorneys, consultants, experts, agents, investigators, accountants, or any persons acting on your behalf, or that is otherwise available to you as provided under applicable law.

2.     These interrogatories shall be deemed to be continuing to the extent permitted by Rule 26(e) of the Federal Rules of Civil Procedure.

3.     If you cannot answer any interrogatory in full after exercising due diligence to secure the information, so state in the answer to the extent possible, specifying your inability to answer the remainder, and state whatever information or knowledge you have concerning the unanswered portions and the efforts you have undertaken to secure the information sought.

4.     If you deem any information, document, or communication requested by any of the following interrogatories to be protected from disclosure by the attorney-client privilege, work-product doctrine, or any other privilege, doctrine, or immunity, please identify or describe (a) the information, document, or communication alleged to be so protected by author, subject matter,

date, number of pages, attachments, and appendices; (b) the names and job titles of all recipients of the information, document, or communication, including blind copy recipients and any individual to whom the information, document, or communication was distributed, shown, or explained; and (c) all bases, factual and legal, upon which such protection rests.  If you contend that only a portion of the information sought by an interrogatory is privileged, please provide the information that you do not contend is privileged.

5.     If you object to any portion of an interrogatory, please provide all information requested by any portion of the interrogatory to which you do not object.

6.     Whenever an interrogatory seeks the identification of documents, things, or other information that are not within Defendants' actual or constructive possession, custody, control or knowledge, Defendants shall so state and shall answer the interrogatory to the extent of its knowledge or belief based upon the best information presently available.  If Defendants have knowledge or a belief as to other persons having such actual or constructive possession, custody, control, or knowledge, Defendants shall identify, to the extent known and based on the best information presently available, all such persons, together with a summary of the nature of the documents, things, or other information believed to be possessed by or known to each such person.

7.     If Defendants elect to specify and produce business records in answer to any interrogatory, the specification shall be in sufficient detail to permit Plaintiffs to locate and identify, as readily as Defendants can, the document(s) from which the answer may be ascertained.

8.     Unless otherwise specified, the relevant time frame for these Requests is January 1, 2010 through December 31, 2014.

## INTERROGATORIES

**INTERROGATORY NO. 1**      Identify all Persons, including current and former employees, with responsibility for designing, developing, or implementing your policies and protocols for addressing alleged copyright violations through Cox's network at any time during the period of January 1, 2008 through December 31, 2014, including by identifying the roles and dates such Persons had such responsibility.

**INTERROGATORY NO. 2**      Identify each Infringement Notice You received alleging infringement of one or more copyrights owned or controlled by a record company or music publisher.  Your response should include the date of the Infringement Notice, the content allegedly infringed, the IP address of the Subscriber identified in the notice, and the rights holder on whose behalf the notice was sent.

**INTERROGATORY NO. 3**      Identify each Subscriber about whom You received an Infringement Notice alleging infringement of one or more copyrights owned or controlled by a record company or music publisher.  Your response should include the Subscriber's name, address, account number, bandwidth speed associated with each account, associated IP address(es), and the number of Infringement Notices you received about the Subscriber.

**INTERROGATORY NO. 4**      Identify each infringement notice or communication You sent to a Subscriber notifying them of an allegation contained in an Infringement Notice.

**INTERROGATORY NO. 5**      Identify each Subscriber whose Internet service You terminated, suspended, or otherwise limited in response to an Infringement Notice, including by identifying the action taken by You on the Subscriber's Internet service.

**INTERROGATORY NO. 6**      Identify the number of Subscribers You terminated for violation of your Acceptable Use Policy, broken out by the provision of the Acceptable Use Policy violated.  For Subscribers terminated for violating more than one provision of the Acceptable Use

8

Policy, organize Your response by grouping the provisions violated (*i.e.*, X number of Subscribers terminated violating provisions A and B; Y number of Subscribers terminated violating provisions C and D).

**INTERROGATORY NO. 7**     Describe your IP address assignment protocol, including but not limited to the manner in which You assign IP addresses to Subscribers and the circumstances under and frequency with which a Subscriber's IP address is changed.

**INTERROGATORY NO. 8**     Describe in detail the effect that terminating accounts of Subscribers accused of copyright infringement has, or you believe could have, on your financial interests or the attractiveness of your internet service.

**INTERROGATORY NO. 9**     Describe in detail all technological barriers or other means or mechanisms you implemented to deter or remedy use of your internet services in violation of your Acceptable Use Policy on grounds other than copyright infringement.

**INTERROGATORY NO. 10**     Identify the revenues and profits attributable to Subscribers about whom you received Infringement Notices, including the overall revenue and profit, and the per Subscriber revenue and profit by quarter and year.

**INTERROGATORY NO. 11**     State the number of Subscribers, per quarter and year from January 1, 2008 through December 31, 2014, whose internet service you terminated for failing to pay amounts owing on the Subscriber's account.

**INTERROGATORY NO. 12**     Describe with particularity the factual bases for Your affirmative defense that Plaintiffs' claims are barred by the doctrine of copyright misuse.

Dated:  November 19, 2018                    Respectfully submitted,

                                             */s/ Jeffrey M. Gould*
                                             Scott A. Zebrak (38729)
                                             Matthew J. Oppenheim (*pro hac vice*)
                                             Jeffrey M. Gould (*pro hac vice*)
                                             OPPENHEIM + ZEBRAK, LLP
                                             5225 Wisconsin Avenue, NW, Suite 503
                                             Washington, DC 20015
                                             Tel:  202-480-2999
                                             scott@oandzlaw.com
                                             matt@oandzlaw.com
                                             jeff@oandzlaw.com

                                             *Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

It is hereby certify that a true and correct copy of the foregoing was served via

Electronic Mail on the 19th day of November, 2018, upon counsel of record.

Dated: November 19, 2018

*/s/ Jeffrey M. Gould*
