# Exhibit 17



**WINSTON & STRAWN LLP**
North America  Europe  Asia

101 California Street
San Francisco, CA 94111
T +1 415 591 1000
F +1 415 591 1400

**JENNIFER A. GOLINVEAUX**
Partner
(415) 591-1506
jgolinveaux@winston.com

January 4, 2019

Jeffrey M. Gould
Oppenheim & Zebrak LLP
5225 Wisconsin Ave. NW, Ste. 503
Washington, DC 20015
Tel.: (202) 851-4526
Email: jeff@oandzlaw.com

    Re:    *Sony Music Entm't, et al., v. Cox Commc'ns, Inc., et al.*, 1:18-cv-00650-LO-JFA

Dear Jeff:

We write in response to Plaintiffs' December 28, 2018 discovery letter. We are available to meet and confer on Monday, January 7, from 4 to 5 p.m.

## Privilege Log

In response to Plaintiffs' request, Cox has proposed that Plaintiffs need not log responsive, privileged documents between the parties in this litigation and their outside litigation counsel of record in this litigation created after Plaintiffs' January 29, 2016 demand letter. The parties must log any responsive documents that are being withheld on the basis of privilege that includes a third-party unless, as Cox has proposed, ***in advance of producing a privilege log***, the parties reach agreement on why correspondence with a specific third-party should not be logged. Please confirm we are in agreement.

## Plaintiffs' Discovery Requests

Preliminarily, we would note that your complaint that Cox has produced "few" documents is misplaced, since Cox has already produced thousands of pages of documents, including testimony from Cox personnel, and numerous exhibits concerning many of the issues in this case. By contrast, the vast bulk of Plaintiffs' production consists of documents in just *two* basic categories, namely documents related to copyright registrations, and notices of claimed infringement that were submitted to Cox. Moreover, as discussed below, Plaintiffs' production of even their own basic copyright ownership documents—without which Plaintiffs' *prima facie* case of copyright infringement fails for lack of evidence—remains incomplete. As indicated in its discovery responses, Cox will continue to produce documents responsive to Plaintiffs' extensive requests that it has agreed to produce on a rolling basis. It anticipates largely completing that production over the next several weeks. Plaintiffs have not even begun to produce documents outside of the

<div style="text-align: right">
Jeffrey Gould<br>
Oppenheim & Zebrak LLP<br>
January 4, 2019
</div>

two basic categories mentioned above. Please confirm when Plaintiffs expect to complete their production.

Regarding trial exhibits from the *BMG* litigation, we disagree with certain of your mischaracterizations of the Court's holding at the December 21, 2018 hearing. Notwithstanding, as I confirmed in earlier email correspondence on this topic, Cox is electronically making available trial exhibits from the *BMG* Litigation today, except to the extent the documents were designated as confidential by BMG, Rightscorp, or a third party pursuant to the Stipulated Protective Order that the Court entered in that case. *See* BMG ECF No. 46 ("*BMG* Protective Order"). As I mentioned earlier, during the course of identifying the *BMG* trial exhibits to produce to Plaintiffs, it became evident that certain of them are designated as confidential pursuant to the *BMG* Protective Order, which expressly states that introduction at trial does not waive such protection. As for such exhibits, Cox is complying with the *BMG* Protective Order and has provided the third parties notice and ten business days to object to such production prior to making them available to you.

Regarding Plaintiffs' requests for personally identifiable information ("PII") of Cox subscribers, as I explained during an earlier call, we propose that the parties follow a procedure like the one the Court endorsed in the *BMG* Litigation. In that case, Plaintiffs identified a representative set of 250 IP addresses for which their agent had purportedly sent notices of claimed infringement to Cox. To the extent that Cox was able to identify particular subscribers based on the information Plaintiffs provided, Cox notified the subscribers that their information was being sought in connection with the litigation, and informed them that they had 21 days within which to object or seek a protective order. If the subscribers failed to do so within that time, Cox would provide certain subscriber information to the plaintiffs. If this approach is acceptable, please send me a proposed stipulation for review.

The other specific issues you raised in your letter are discussed below *seriatim*. If you believe any issues remain unaddressed, please let us know.

- Plaintiffs' request for documents beyond those relating to Cox's residential ISP service [Plaintiffs' Dec. 28 Letter, § a]

I confirm that Cox will not limit responsive categories of documents that it has agreed to produce to those relating to its residential ISP service.

- Limitations to Plaintiffs, Plaintiffs' works in suit, and Plaintiffs' Claim Period [Plaintiffs' Dec. 28 Letter, § b]

First, your letter fundamentally misrepresents the Court's orders in the *BMG* Litigation, as well as misconstruing what Cox has already agreed to produce in *this* case. The *BMG* Court did not categorically rule in the *BMG* case that *all* of Cox's "emails, knowledge, policies and procedures pre-dating the alleged claim period" were relevant in the *BMG* Litigation—and certainly has never held that they are relevant to this case. Rather, in the *BMG* Litigation, the Court simply recognized that certain documents from *before* the *BMG* plaintiffs' claim period could be relevant to Cox's policies *during* their claim period, such as emails concerning how Cox's policies were being implemented. In any event—and contrary to your persistent

<div style="text-align: center">2</div>

<div style="text-align: right">
Jeffrey Gould<br>
Oppenheim & Zebrak LLP<br>
January 4, 2019
</div>

misrepresentations—Cox has *already agreed* to produce such relevant documents in response to Plaintiffs' document requests. For example—as we have repeatedly explained—it is simply incorrect to claim that Cox intends to "limit policy and procedure documents to just the infringement period alleged." *See* Dec. 28 Letter at 3. Rather, Cox has agreed to produce responsive, non-privileged documents concerning Cox's copyright infringement policies, terms of use, and terms of service that were *in effect* during Plaintiffs' Claim Period, and documents sufficient to identify technological barriers that were *implemented during* Plaintiffs' Claim Period. Those responses do not limit such documents to just those *from* the claim period. In any event, Plaintiffs will have all versions of Cox's policies and procedures that were introduced at trial in the *BMG* Litigation, as well as those that were used in the depositions that we have already produced. It is unclear what additional documents Plaintiffs seek.

With respect to Plaintiffs' requests for third-party infringement notices, as you know, Magistrate Judge Anderson held that Plaintiffs' demand for *all* infringement notices, without regard to source, was patently over-broad. Cox will respond in due course, pursuant to the Federal and Local Rules, to Plaintiffs' December 21, 2018 requests for production of documents, to which you allude in your December 28 Letter. Plaintiffs' interrogatory no. 2 remains deficient for the reasons Cox has already given, including that Cox lacks knowledge and cannot reasonably obtain knowledge concerning whether copyrights are "owned or controlled" by particular entities, or whether a particular entity is a record company or music publisher. Plaintiffs' interrogatory no. 4 simply requested the same information as Plaintiffs' RFP no. 11, which, again, the Court has already ruled is impermissibly over-broad.

- Cox's responses to interrogatories nos. 5, 6, and 11 [Plaintiffs' Dec. 28 Letter, § c]

As to Plaintiffs' interrogatories nos. 5 and 6, your Letter provides no theory of relevance for the requested information. Notwithstanding, in response to interrogatory no. 5, the *BMG* trial exhibits referenced above include the number of subscribers Cox suspended or terminated, by month, during Plaintiffs' Claim Period. In response to interrogatory no. 6, we disagree that terminations for violation of non-copyright provisions of Cox's AUP are relevant to this case. Notwithstanding, Cox will provide the requested information with respect to copyright terminations, during Plaintiffs' Claim Period.

With respect to Plaintiffs' interrogatory no. 11, your Letter fails to explain the relevance of instances where a subscriber's account was terminated for failure to pay for service.

- Cox's Acceptable Use Policy, and policies that Cox considered [Plaintiffs' Dec. 28 Letter, § d]

In further response to RFPs nos. 29 and 41, Cox will agree to produce responsive documents concerning policies Cox considered, but did not adopt, to prevent copyright infringement. We disagree that policies concerning non-copyright violations of Cox's AUP are relevant to this case. As you know, vicarious infringement turns in part on whether Cox had the legal right and practical ability to supervise or control copyright infringement—not, as your Letter erroneously states, the right to control generalized "misconduct."

<div style="text-align: center">3</div>

Jeffrey Gould
Oppenheim & Zebrak LLP
January 4, 2019

Contrary to your Letter, Plaintiffs' interrogatory no. 9 is expressly limited to information about violations of Cox's Acceptable Use Policy "**other than** copyright infringement." Plaintiffs' Interrogatory No. 9 (emphasis added). We further note that Cox's position is consistent with its response to RFP 41, which by its terms expressly "**include[s]** … preventing copyright infringement…" Plaintiffs' RFP No. 41 (emphasis added).

- Documents concerning MarkMonitor [Plaintiffs' Dec. 28 Letter, § e]

As we indicated during our December 14 call, subject to Cox's general and specific objections, Cox will agree to produce responsive, non-privileged communications with or concerning MarkMonitor or DtecNet Inc., and assessments or analyses of MarkMonitor or DtecNet Inc., not limited to formal studies or reports.

- Documents from 2008-2009 concerning RIAA; public statements regarding policies for responding to infringement notices [Plaintiffs' Dec. 28 Letter, § f]

As we indicated during our December 14 call, subject to Cox's general and specific objections, Cox will agree to produce responsive, non-privileged documents concerning communications with the RIAA or NMPA about notice caps, going back to January 1, 2008, to the extent such documents are found in Cox's possession, custody, or control after a reasonably diligent search.

Once again, we note that your claim that Cox's objection "limits a response to just 2013-2014" is simply incorrect, and misreads the plain language of Cox's response. Cox has already agreed to produce documents that show Cox's policy that was *in effect during* the relevant period. Where appropriate, this could include documents dating as early as January 1, 2008, pursuant to Plaintiffs' RFP 24. In addition, because Cox has agreed to produce documents sufficient to show the operation of the versions of CATS that were in effect during Plaintiffs' Claim Period, it is unclear what additional documents Plaintiffs seek.

- Financial Information [Plaintiffs' Dec. 28 Letter, § g]

Your Letter ignores that Cox has already produced most or all of the financial information Plaintiffs have requested. Please advise what additional information Plaintiffs believe they need once you have reviewed this information. With respect to Cox's response to Plaintiffs' interrogatory no. 8, Cox will supplement its response.

- Studies concerning Internet usage [Plaintiffs' Dec. 28 Letter, § h]

As we discussed, Cox agrees to produce responsive documents that were produced in the *BMG* Litigation.

- "Walled Garden" [Plaintiffs' Dec. 28 Letter, § i]

When we discussed this in December, you agreed to provide additional guidance about what Plaintiffs were seeking, after you had a chance to examine the documents Cox produced. Simply asking for a search on the keywords "walled garden" does not clarify what Plaintiffs are actually seeking. Please be prepared to discuss this further when we talk on Monday.

4

<div align="right">
Jeffrey Gould<br>
Oppenheim & Zebrak LLP<br>
January 4, 2019
</div>

**Cox's Discovery Requests**

<u>Purported Evidence of Direct Infringement</u>

We do not understand your response. We requested to know whether Plaintiffs intend to produce copies of files that were allegedly downloaded from Cox subscribers. It appears that Plaintiffs are intending to produce copies of the works that were allegedly shared by Cox's subscribers, which is different. We can discuss this in more detail on our call.

<u>Ownership of Copyright Works</u>

Contrary to your assertion, we have not mischaracterized Plaintiffs' production. As a preliminary matter, it is unclear what you mean by a "backstop" or "for most works" when you reference the over 4,000 screen shots from the Copyright Office's website that Plaintiffs have produced. Moreover, Judge O'Grady took judicial notice of "the unofficial copyright registration available on the public catalogue" for a handful of BMG's works—not thousands. *See* 149 F. Supp. 3d 634, 646-47 (E.D. Va. 2015). Nevertheless, we are still reviewing Plaintiffs' documents and reserve all rights to challenge the adequacy of Plaintiffs' production, including whether it has established a *prima facie* case of copyright infringement.

Furthermore, your insistence on referring to the burden in producing documents concerning challenges to copyright validity and ownership for over 10,000 works rings hollow when the works at issue belong to 57 legally distinct companies that are each individually named parties in this litigation. The fact that these companies are all represented by the same firm is irrelevant to the burden analysis. We understand that Plaintiffs are standing on their objections to producing these highly relevant documents.

<u>Financial Data</u>

At this stage, we are willing to initially limit our request for financial data to the years 2010 through 2014. While we disagree that 2015 data is irrelevant, and we reserve our rights to request it in the future, we make this proposal in hopes of resolving at least one dispute on this topic without Court intervention.

That said, Plaintiffs' blanket refusal to produce per-work, per-channel revenue is unfounded. You ignore the many reasons we have articulated why this data is relevant and discoverable, and you side-step Judge Anderson's prior rulings in the related *BMG* Litigation. As in that litigation, the fact that you might disagree as to the probity of any analysis that can be performed with this data has no bearing on whether it is currently discoverable. Indeed, you are free to make those arguments at numerous stages throughout this litigation.

Moreover, you have not articulated any burden on Plaintiffs in producing this information, which we presume each Plaintiff readily maintains. Indeed, it is hard to fathom how there would be any burden, let alone a disproportionate burden, when such an analysis is to be performed on a ***per-***

<div align="center">5</div>

Case 1:18-cv-00950-PTG-JFA   Document 75-18   Filed 01/18/19   Page 7 of 7 PageID# 1467

<div align="right">
Jeffrey Gould<br>
Oppenheim & Zebrak LLP<br>
January 4, 2019
</div>

*plaintiff* basis and you have represented that each plaintiff is seeking ***maximum statutory damages*** for each work-in-suit.

As Plaintiffs have represented that they "remain open to listening," we will be prepared to discuss this issue further on our next call.

We also do not understand your response to our request for a detailed profit and loss statement. You have only stated that you are producing each Plaintiff's "profits," without explaining what that will entail. We have requested a detailed profit and loss statement, which itemizes revenue and expenses. We can discuss on our call what Plaintiffs intend to produce regarding their "profits" and whether it satisfies our request.

<u>Outstanding Issues</u>

So that we may have a meaningful discussion, in advance of our next call please clarify Plaintiffs' proposal/position regarding the remaining issues identified in our December 26, 2018 letter. Please also provide the "proffer" of financial data, including, as previously requested, a description of the data upon which the proffer is based and what data it is producing and a description of any data that is withheld along with the basis for such.

Sincerely,

*[signature]*

Jennifer Golinveaux
Winston & Strawn LLP

6

Jeffrey Gould
Oppenheim & Zebrak LLP
January 4, 2019

*plaintiff* basis and you have represented that each plaintiff is seeking ***maximum statutory damages*** for each work-in-suit.

As Plaintiffs have represented that they "remain open to listening," we will be prepared to discuss this issue further on our next call.

We also do not understand your response to our request for a detailed profit and loss statement. You have only stated that you are producing each Plaintiff's "profits," without explaining what that will entail. We have requested a detailed profit and loss statement, which itemizes revenue and expenses. We can discuss on our call what Plaintiffs intend to produce regarding their "profits" and whether it satisfies our request.

Outstanding Issues

So that we may have a meaningful discussion, in advance of our next call please clarify Plaintiffs' proposal/position regarding the remaining issues identified in our December 26, 2018 letter. Please also provide the "proffer" of financial data, including, as previously requested, a description of the data upon which the proffer is based and what data it is producing and a description of any data that is withheld along with the basis for such.

Sincerely,

Jennifer Golinveaux
Winston & Strawn LLP