# Exhibit 18



101 California Street
San Francisco, CA 94111
T +1 415 591 1000
F +1 415 591 1400

**JENNIFER A. GOLINVEAUX**
Partner
(415) 591-1506
jgolinveaux@winston.com

January 11, 2019

Jeffrey M. Gould
Oppenheim & Zebrak LLP
5225 Wisconsin Ave. NW, Ste. 503
Washington, DC 20015
Tel.: (202) 851-4526
Email: jeff@oandzlaw.com

    Re: *Sony Music Entm't v. Cox Commc'ns, Inc.*, 1:18-cv-00650-LO-JFA

Dear Jeff:

  I write to follow up on our January 7, 2019 meet-and-confer telephone call, and to respond to additional issues you raised in your January 9, 2019 Letter.

**I. Privilege Log**

  To be clear, Cox is only agreeing that Plaintiffs do not need to log responsive privileged documents strictly between the parties-in-suit and their outside litigation counsel of record in this case, for documents created after January 29, 2016.

**II. Outstanding Issues Regarding Cox's Discovery Requests**

  We summarize here our understanding of a number of outstanding issues related to Plaintiffs' position with respect to Cox's requests. Please let me know right away if we have misunderstood Plaintiffs' position on any of these issues.

  **A. Plaintiffs' Financial Data**

  Plaintiffs intend to provide a "proffer" related to a "range" of each Plaintiff's digital download revenue. Plaintiffs refuse to produce in connection with this "proffer" any information related to Plaintiffs' revenue from physical media, streaming, or licensing royalties. It is also not clear whether this revenue is specific to the works at issue. Plaintiffs will not produce any of the data relied-upon in generating the above-referenced "proffer." Your team initially indicated that we would be receiving this proffer nearly a month ago with Plaintiffs' substantive discovery responses. Earlier this week you said you were trying to get it to us this week.

  Each Plaintiff group will produce its annual profits, expenses, and revenues that it maintains in the normal course of business. You could not provide us any specifics with respect to the level of detail in these reports, so we reserve our right to challenge the sufficiency of Plaintiffs' responses once these reports have been produced.

Jeffrey Gould<br>
Oppenheim & Zebrak LLP<br>
January 11, 2019

Plaintiffs have represented that they do not maintain profit and loss statements per work. But Plaintiffs have refused to produce any information in their possession relating to the profits earned by any work, artist (whose work is at issue), or other metric (such as label, division, etc.) on the basis of relevance.

Plaintiffs refuse to produce per-work, per-channel revenue data on the basis of relevance.

### B. Plaintiffs' Chain-of-Title Documents and Work-for-Hire Agreements (RFP Nos. 13-15, 21-22)

As you know, Cox has requested Plaintiffs' chain of title documents and including specifically work-for-hire agreements. Plaintiffs objected to the work-for-hire requests specifically on the grounds that these requests are "irrelevant in that [they seek] information as to all copyrighted works in suit, rather than only those copyrighted works, if any, for which such information is necessary or relevant to the issues in the case." Plaintiffs also objected to these requests as "unreasonably cumulative or duplicative" of Cox's Request No. 6. But Cox's Request No. 6 seeks only copies of the copyright registration certificates for the works-in-suit.

Subject to these objections, Plaintiffs agreed to produce "either a certificate of copyright registration or, if a certificate is not readily accessible, a look-up page evidencing registration printed from the U.S. Copyright Office's website. Alternatively, for some older copyrighted works, Plaintiffs will produce a copy of the Copyright Office's card-catalogue entry evidencing registration. And in response to Cox's requests for documents evidencing Plaintiffs' ownership of the works (RFP No. 15) and all forms of licenses and assignments (RFP Nos. 21-22), Plaintiffs agreed to produce "responsive, non-privileged documents … *sufficient to* demonstrate that Plaintiffs are the legal and/or beneficial owners of an exclusive right under copyright to their respective copyrighted works in suit …." (emphasis added).

Please clarify Plaintiffs' position. We have specifically requested Plaintiffs' work-for-hire agreements and all chain of title documents, including any licenses and assignments, for the works-in-suit. Based on your responses, it appears as though you are refusing to produce work-for-hire agreements or all documents concerning chain of title. Please confirm during our next call whether Plaintiffs have produced, or will be producing, Plaintiffs' work-for-hire agreements and all requested chain-of-title documents for the works-in-suit.

### C. Documents Concerning the Effect from BitTorrent on Plaintiffs (RFP Nos. 50-55)

Despite their initial objections, Plaintiffs will produce any non-privileged documents responsive to these requests. You said that Plaintiffs are still in the process of identifying relevant custodians and search terms to identify responsive documents.

### D. Documents Concerning Cox (RFP Nos. 64-65, 79-81, 125, 128-129)

In response to Plaintiffs' Objections, we explained on our December 14 call that we were not seeking monthly invoices for Cox services. With that clarification, we understand that

Jeffrey Gould<br>
Oppenheim & Zebrak LLP<br>
January 11, 2019

Plaintiffs will produce any non-privileged documents responsive to these requests. You said that Plaintiffs are still in the process of identifying relevant custodians and search terms to identify responsive documents.

### E. Communications with Cox's Subscribers and Documents Concerning Those Communications (RFP Nos. 134 and 135)

Plaintiffs have agreed to produce any documents responsive to these requests. You said that Plaintiffs are still in the process of identifying relevant custodians and search terms to identify responsive documents.

### F. Documents Concerning MarkMonitor (RFP Nos. 136, 139, 141, 156, 162-163)

Plaintiffs initially agreed only to produce their agreements with MarkMonitor concerning the copyright infringement notices at issue in this case. On our January 7 call, you proposed only producing documents that you unilaterally deem "relevant." This is unacceptable.

While we explained that we are amenable to carving out irrelevant categories of documents, for example if Plaintiffs used MarkMonitor for trademark watching services, you have refused to identify any such categories of documents. Any correspondence with or documents concerning MarkMonitor relating in any manner to copyright policing or monitoring services, Cox, or this litigation must be produced. Please confirm during our next call whether Plaintiffs will produce these documents.

### G. Documents Concerning Plaintiffs' Efforts to Monitor for Alleged Infringement (RFP Nos. 147-148, 136, 159)

You initially refused to produce documents in response to RFP Nos. 147 and 148, which seek documents concerning any system utilized to monitor for the alleged infringement at issue in this case and to generate and send notices related to the same. You separately agreed to meet and confer to reasonably tailor Cox's request for any analysis of such a system, including the analyses of MarkMonitor performed by Stroz Friedberg and Harbor Labs, respectively. *See* RFP No. 159. As explained on our January 7 call, we are requesting all Plaintiffs' documents concerning systems for detecting infringement and generating the notices that are at issue in this case. We understand that Plaintiffs have now agreed to produce documents responsive to these requests.

### H. Documents Concerning Plaintiffs' Efforts to Detect Infringement on Peer-to-Peer Networks (RFP Nos. 160-161

Plaintiffs have also agreed to produce documents responsive to these requests. You said that Plaintiffs are still in the process of identifying relevant custodians and search terms to identify responsive documents.

### I. Documents Concerning the RIAA (RFP Nos. 153-155)

Cox requested documents concerning and communications with the RIAA and either this lawsuit, Cox, the Copyright Works, or MarkMonitor. Plaintiffs have agreed to produce responsive,

3

Jeffrey Gould<br>
Oppenheim & Zebrak LLP<br>
January 11, 2019

non-privileged documents regarding this lawsuit, Cox, and MarkMonitor. On our January 7 call, you represented that Cox's requests seeking documents concerning and communications with the RIAA about the Copyright Works are too broad and would be too impractical to search. We disagree. A search can be easily crafted to target the works-in-suit. And to the extent that any responsive documents concern the ownership or policing of the works-in-suit, they are directly relevant and should be produced. We understand that Plaintiffs' are standing on their objection in refusing to produce documents relating to the works-in-suit.

**J.     Documents Concerning the Value of Plaintiffs' Copyrights (RFP Nos. 32-33)**

We are requesting documents that concern the value of Plaintiffs' copyrights, whether in an appraisal or some other form of analysis. We understand Plaintiffs have agreed to produce documents responsive to these requests. You said that Plaintiffs are still in the process of identifying relevant custodians and search terms to identify responsive documents.

**K.     Documents Concerning Plaintiffs' Enforcement Efforts (RFP Nos. 119-120, 122)**

During our December 14 call, we explained that we are looking for memoranda or analyses concerning the efficacy of Plaintiffs' enforcement efforts related to infringement on peer-to-peer sharing sites, whether these efforts have been successful, their impact on any Plaintiff's business, the industry as a whole, the perceived levels of infringement, changes to the levels of infringement, the consumption of music by the public, and other consequences of Plaintiffs' enforcement efforts.

We understand Plaintiffs have agreed to produce documents responsive to these requests. You confirmed that Plaintiffs are still in the process of identifying relevant custodians and search terms to identify responsive documents.

**III.    Plaintiffs' Second Sets of Document Requests and Interrogatories**

Your demand for immediate substantive responses to Plaintiffs' December 21, 2018 discovery requests is both premature, and improper. Local Rule 26(C) requires parties to file objections to interrogatories or requests within fifteen days of their service, and Cox has done so. The Local Rule leaves undisturbed the schedule dictated by Federal Rules 33(b)(2), (3) and 34(b)(2)(A), which gives a party 30 days after service to respond in writing to Plaintiffs' requests. Cox will respond substantively, in writing, pursuant to the Federal Rules. Cox's objections, including its relevance objections, are both proper and well founded. As the Court emphasized in largely denying Plaintiffs' motion to compel, "[t]his case is different … the facts and circumstances are not the same… The plaintiffs are different and the copyrighted works are different." ECF 68 at 4.

As to your extended argument, and characterizations (and mischaracterizations) of the Court's ruling that denied relevant portions of Plaintiffs' motion to compel, Plaintiffs' second sets of discovery requests speak for themselves, as does the Court's order and the hearing transcript in which Magistrate Judge Anderson repeatedly admonished Plaintiffs' counsel to "plow your own road in this case." ECF 68 at 6, 15. You also repeatedly mischaracterize the nature of your requests and interrogatories. For example, you claim that Request No. 67 "calls for information concerning

4

Jeffrey Gould<br>
Oppenheim & Zebrak LLP<br>
January 11, 2019

infringement notices that involve the same subscribers cited in Plaintiffs' infringement notices." January 9, 2019 Letter. But that is not what Request No. 67 demands. Instead it seeks "Documents sufficient to show all Infringement Notices (from any rights holder) that identify or reference an *IP address* listed in any Infringement Notice from or on behalf of Plaintiffs" (emphasis added) for a five-year period dating back to January 1, 2010. Not only would such documents be enormously burdensome to locate, the request is not directed at subscribers, but rather IP addresses. As another example, you argue misleadingly that Request No. 75 "calls for three specific documents regarding CATS," but ignore that the request is far broader than you describe: notably, the BMG interrogatory that is the subject of this request also incorporates a *separate* BMG interrogatory that sought information going back to 2005—a date not only far beyond what is relevant here, but far beyond what Plaintiffs themselves have requested in this case. Cox's objections are well founded. We are available to meet and confer with you about these requests and Cox's other objections to Plaintiffs' second set of discovery as well as the issues addressed in Section II above, today at 1:30 Pacific, or Monday at 11 or 12 Pacific. If these times do not work, please suggest alternative times.

**IV. Plaintiffs' Clarification of Certain Issues Regarding Responses to Plaintiffs' Requests**

    **A. Plaintiffs' PII Proposal**

Thank you for the additional clarification concerning Plaintiffs' proposal that Cox might provide Plaintiffs a unique identifier in lieu of personally identifiable information, for Cox subscribers who were the subject of Plaintiffs' notices. We are discussing this proposal with our client, and anticipate that we will get back to you on this by next week.

    **B. Plaintiffs' Pending Clarification Concerning RIAA Notices**

When we spoke this past Monday, you said that you would confirm your belief that *all* the notices sent by the RIAA during Plaintiffs' Claim Period were sent on behalf of Plaintiffs, concerning works at issue in this case. Please let us know as soon as you have a definitive answer.

    **C. BMG Trial Exhibits; Trial Testimony of Sikes and Zabek**

With respect to Cox's provision of BMG trial exhibits, Plaintiffs' feigned outrage is disingenuous, to say the least, particularly in light of the fact that Plaintiffs previously disavowed that they were seeking confidential third party information at all, and affirmatively argued to the Court that Cox should be required to follow precisely the procedure that Plaintiffs now complain about. *See* ECF 65 (Plaintiffs' Reply in Support of Their Motion to Compel) at 5 ("Plaintiffs **are not seeking** BMG's or Rightscorp's confidential information. … [and] the Protective Order in the BMG case authorizes a party to produce information protected thereunder by 'subpoena or order' **with an opportunity for the owner to object**. This Court can **so order** its production.") (citation omitted, emphases added). Moreover, as you are well aware, the BMG Protective Order expressly states that designated material does not lose its status as protected when it is introduced at trial, *and* contains an express provision that covers precisely the situation here:

5

Jeffrey Gould
Oppenheim & Zebrak LLP
January 11, 2019

> If any entity subpoenas or seeks production of Protected Information from a Receiving Party … such Receiving Party shall promptly notify the Producing Party of the subpoena or order in writing and shall not produce the information until the Producing Party has had reasonable notice (which shall be not less than ten (10) business days) to object or take other appropriate steps to protect the information.

BMG ECF 46, at § 6.6. In any event, as you concede, pursuant to your request we have provided you a list of the BMG trial exhibits that were withheld pursuant to the BMG Protective Order, giving the third parties an opportunity to object to the production of protected documents and information. The third parties have until Friday, January 18 to object, and if they fail to do so, Cox will provide those documents to Plaintiffs.

With respect to your question about the testimony of Messrs. Sikes and Zabek during the BMG Litigation, the BMG trial exhibits that Cox provided to you last week include the deposition testimony of Messrs. Sikes and Zabek that was designated to be played at trial.

### D. Limitations to Plaintiffs and Plaintiffs' Works During Plaintiffs' Claim Period

Your January 9 Letter provides a lengthy list of document requests (RFPs Nos. 6, 9, 10, 18, 19, 21, 22, 23, 26, 27, 28, 30, 31, 38, 39, 43, 47, and 48) for which you claim that Cox's responses are improperly limited to Plaintiffs, Plaintiffs' works at issue, or Plaintiffs' Claim Period. Your letter simply lists the requests by number, without any attempt to discuss them in detail. We do not believe this constitutes the sort of "good-faith effort to narrow the area of disagreement" that the Local Rules require. Nonetheless, we address those requests below.[1]

#### 1. Limitation with Respect to RFPs 10, 18, 19, 22, 23, 26, 27, 30, 38, and 39

With respect to RFPs nos. 10, 18, 19, 22, 23, 26, 27, 30, 38, and 39, the Court's order held that Plaintiffs' demands for "all" notices from 2010-2014, without limitation as to party or work, was "overbroad … unduly burdensome… [and] not proportional to the needs of the case as written." ECF 68 at 24. Each of these requests suffers from the same infirmity, and Plaintiffs have failed to engage in a good faith effort to either explain how they can be either proper or proportional in light of the Court's order, or to propose a reasonable narrowing of the requests. Accordingly, Cox stands on its limitations to these requests, and will produce documents in accordance to its

---

[1] Your December 10 Letter similarly provided a bare list of request numbers, with a vague, general claim that a 2010-2014 period was "appropriate" for all of them. However, the December 10 Letter identified a number of requests that the January 9 Letter omits, namely RFPs nos. 11, 16, 17, 24, 34, 35, 40, 41, 42, 44, and 45. We will consider this issue resolved with respect to these omitted requests. Your January 9 Letter also adds references to RFP 31 ("All documents concerning Subscribers' or Users' awareness of any Defendant DMCA Policy or other copyright or infringement policies") and 47 ("All communications concerning the DMCA"), for which you did not previously raise this issue. We address these requests below as well.

Jeffrey Gould<br>
Oppenheim & Zebrak LLP<br>
January 11, 2019

responses—in which, to be clear, Cox has *agreed* to produce responsive documents subject to the stated limitations.

### 2.     Limitation with Respect to RFPs 6, 9, 21, 28, 31, 43, 47, and 48

With respect to RFPs 6, 9, 21, 28, 31, 43, 47, and 48, Plaintiffs have failed to address the party, work, and time limitations with any specificity. Because these requests cover a number of distinct issues, and because the parties have already reached an agreement as to several of them, we address these individually.

- RFP 6: In addition to providing documents concerning Plaintiffs' notices during Plaintiffs' Claim Period, which Cox has already agreed to do, Cox has also agreed to produce other types of responsive, non-privileged documents, if any and exclusive of third-party notices of claimed infringement, concerning communications with MarkMonitor or DtecNet Inc., going back to 2010; Cox will also produce responsive, non-privileged assessments or analyses of MarkMonitor or DtecNet Inc., if any, for the period 2010-2014.

- RFP 9: Cox will go back to 2010 to search for and produce documents, if any, as agreed during the parties' meet and confer discussions.

- RFP 21: Cox will go back to 2010 to search for and produce documents, if any, as agreed during the parties' meet and confer discussions.

- RFP 28: Cox will go back to 2008 to search for and produce responsive non-privileged documents, if any as agreed during the parties' meet and confer discussions.

- RFP 31: Cox will agree to produce responsive non-privileged documents sufficient to show its subscribers' awareness of Cox's DMCA and copyright infringement policies during 2010-2014.

- RFP 43: Cox has already provided responsive documents for the period 2010-2014.

- RFP 47: Cox has not limited its response as Plaintiffs suggest: rather, Cox agreed that if Plaintiffs proposed search terms to narrow this over-broad request, Cox would work with Plaintiffs. Plaintiffs have neither provided such search terms, nor otherwise addressed this request.

- RFP 48: In addition to providing documents concerning Plaintiffs' notices during Plaintiffs' Claim Period, which Cox has already agreed to do, Cox will go back to 2010 to produce other types of responsive, non-privileged documents, if any, concerning Plaintiffs.

## V.     Additional RFPS and Interrogatories Addressed in Your January 9, 2019 Letter

### A.     RFPs 55 and 57; Interrogatory No. 10

We are discussing these requests with our client, and will get back to you next week.

7

Jeffrey Gould<br>
Oppenheim & Zebrak LLP<br>
January 11, 2019

**B.      RFPs 56 and 61**

Cox has provided a chart responsive to RFP 56 (average length of time Cox retains subscribers). Cox has also agreed to provide information responsive to RFP 61 (subscriber churn rate), for 2013 and 2014.

**C.      RFPs 58, 59, and 60**

Cox has provided a chart showing Cox's total number of subscribers to its Internet service for 2010-2014. Cox stands on its objections to providing such information for Cox's television and phone services, and stands on its objections to RFPs 59 and 60.

Sincerely,

Jennifer Golinveaux
Winston & Strawn LLP