## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| SONY MUSIC ENTERTAINMENT, *et al.*, | |
| Plaintiffs, | Case No. 1:18-cv-00950-LO-JFA |
| v. | COX'S OPPOSITION TO PLAINTIFFS' JANUARY 18, 2019 MOTION TO COMPEL (ECF NO. 70) |
| COX COMMUNICATIONS, INC., *et al.*, | |
| Defendants. | |

## COX'S OPPOSITION TO PLAINTIFFS'
## JANUARY 18, 2019 MOTION TO COMPEL

### I.     INTRODUCTION

This is a copyright infringement action in which 58 music industry Plaintiffs have sued Cox, a provider of Internet access, seeking to hold Cox liable for its customers' alleged infringements using Cox's Internet service. With the instant motion, Plaintiffs seek information that is irrelevant to any claims or defenses in this case. Specifically, Plaintiffs seek the number of subscribers Cox terminated, *for reasons unrelated to copyright infringement*, going back to 2010, more than three years before the 22-month claim period at issue in this case. Contrary to Plaintiffs' assertions, the information they seek is irrelevant both to the right-and-ability-to-supervise prong of vicarious liability, and to any theory of willful infringement.

***First***, the number of terminations for reasons unrelated to copyright infringement is irrelevant to whether Cox should be held vicariously liable for the alleged infringements of its subscribers. Vicarious liability requires Plaintiffs to establish, among other things, that Cox had the right and the ability to supervise the alleged infringements of Plaintiffs' works. The power to

terminate service, without more, does not give a service either the right or the ability to *supervise* alleged infringement. Even if the power to terminate subscribers for non-copyright reasons were relevant—which is it not—there is simply no dispute, and Plaintiffs concede, that Cox could and did actually terminate subscribers. The two out-of-circuit cases Plaintiffs cite are readily distinguishable, including because they rely on a legal standard (a right and ability to "control") that does not apply in this Circuit. ***Second***, the number of terminations for reasons unrelated to copyright infringement has no relevance to willfulness, which turns on *knowledge* of *copyright infringement*, not the power to terminate subscribers for unrelated reasons. Unsurprisingly, Plaintiffs cite no authority whatever to support their conclusory argument that the information they seek is relevant to willfulness. ***Third,*** even if the number of terminations unrelated to copyright infringement were relevant to either vicarious liability or willfulness—and it is not relevant to either one—Plaintiffs cite no authority, and make no argument, for the relevance of information going back more than three years before Plaintiffs' Feb. 2013 - Nov. 2014 claim period. The requested information is irrelevant and Plaintiffs' motion should be denied.

## II.     BACKGROUND

Plaintiffs seek to hold Cox secondarily liable for acts of certain of its subscribers in allegedly infringing certain musical works and sound recordings during the 22-month period from February, 2013 through November, 2014. As relevant here, Plaintiffs' theory of vicarious liability requires them to show (among other things) that Cox "possessed the right and ability to supervise the [alleged] infringing activity." *Nelson–Salabes, Inc. v. Morningside Dev., LLC*, 284 F.3d 505, 513 (4th Cir. 2002); *see* ECF 79 (Memorandum in Support of Motion to Compel) ("Mem.") at 4. Plaintiffs also claim that Cox's alleged infringement was willful, which requires Plaintiffs to show that Cox either knew of specific acts of infringement of Plaintiffs' works by its customers, was

willfully blind to such acts, or acted in reckless disregard for the infringement of Plaintiffs' works. *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 881 F.3d 293, 312–13 (4th Cir. 2018).

On November 19, 2018, Plaintiffs propounded interrogatories seeking (a) the number of Cox Internet subscribers terminated for both copyright-related and non-copyright violations of Cox's Acceptable Use Policy ("AUP"), during the five-year period from 2010 through 2014; and (b) the number of Cox Internet subscribers terminated for failure to pay for service, during the seven-year period from 2008 through 2014. Mem. 3, ECF 79-2 (Ex. B). There is no question— and Plaintiffs acknowledge—that Cox terminated a number of Internet subscribers that it determined to be repeat copyright infringers, and that Cox has agreed to provide the number of subscribers it terminated for copyright infringement-related reasons during 2010-2014. Mem. 6 (conceding that Cox terminated at least "a few … subscribers"); *id.* at 3 (conceding that Cox "agreed to provide the requested information … for copyright infringement.").

Plaintiffs now seek to compel Cox to provide the number of subscribers whose Internet service Cox terminated for reasons unrelated to copyright infringement, over the five-year period from 2010-2014, which includes three years before Plaintiffs' Claim Period.[1] This information, Plaintiffs argue, is "highly probative" of both vicarious liability, and willfulness. As discussed below, Plaintiffs are incorrect: the additional information they seek has no bearing on copyright infringement; is irrelevant to Cox's right or ability to supervise the alleged infringements at issue in this case; is duplicative and redundant even to the separate issue (which lacks relevance to vicarious liability under Fourth Circuit law) of whether Cox had the *power* to terminate

---

[1] Plaintiffs' Interrogatory No. 11 requested the number of non-payment terminations over a seven-year period (2008-2014); Plaintiffs' Motion requests this information for a five-year period (2010-2014) going back more than three years before Plaintiffs' Claim Period. ECF 79-2, 70.

subscribers; and is irrelevant to willfulness, which concerns a defendant's knowledge of infringement, not its ability to terminate customers for unrelated reasons.[2]

### A.    The information Plaintiffs seek is irrelevant to the right-and-ability-to-supervise prong of vicarious liability.

In the Fourth Circuit, vicarious liability for a third party's copyright infringement requires proof that, among other things, a defendant "possessed the right and ability to **supervise** the infringing activity." *Nelson–Salabes, Inc. v. Morningside Dev., LLC*, 284 F.3d 505, 513 (4th Cir. 2002) (emphasis added); *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 US 913, 930 n.9 (noting that "a vicarious liability theory… [requires] a right and ability to supervise the direct infringer"). Plaintiffs argue that there is "a direct correlation" between information about terminations unrelated to copyright infringement, and the right-and-ability-to-supervise prong of Plaintiffs' vicarious liability claim. Mem. 5. They are wrong.

Plaintiffs cite two out-of-circuit cases for the proposition that the mere power to terminate subscribers at all, including for violations of terms or policies unrelated to copyright infringement, is evidence of a right and ability to "control" subscribers. Plaintiffs then mischaracterize their cited cases to argue that this so-called "control" is identical to a right and ability to supervise infringement. As their own authorities make clear, Plaintiffs are wrong: more is required. For example, in *Usenet.com*, the defendants' right to "terminate, suspend, or restrict users' subscriptions" was merely one aspect of their "'total dominion' over the content of [Usenet]

---

[2] Tellingly, the plaintiffs in *BMG Rights Mgt. (US) LLC v. v. Cox Comms., Inc.*, Case No. 1:14-cv-1611 (E.D. Va. 2014)—who also attempted to hold Cox vicariously liable for alleged infringement by its subscribers—did not seek this information: instead, the BMG plaintiffs propounded an interrogatory seeking "the number of … Users whose Internet service [Cox] terminated… in response to a DMCA [infringement] Notice[]."ECF 71-3 (Cox's First Supplemental Responses to the BMG Plaintiffs' First Set of Interrogatories) at 23-24 (BMG Interrogatory No. 8).

servers." *Arista Records LLC v. Usenet.com, Inc.*, 633 F.Supp.2d 124, 157 (S.D.N.Y. 2009). In that case, the allegedly infringing content was "stored on [the defendants'] own servers," with the alleged direct infringers "uploading or downloading content to or from Defendants' servers." *Id.* Defendants had "the ability to filter or block groups or articles, and [to] define feeds that specify which articles and newsgroups are copied to [the defendants'] … servers," as well as "the ability to create designated servers for certain kinds of newsgroups." *Id.* at 131. Defendants had created special servers for music files in order to increase the retention time of the files stored on those servers. *Id.* The *Usenet.com* court found that those defendants had "the "unfettered ability to control access" to Usenet, including "the right and ability to control which [Usenet] newsgroups to accept and maintain on their servers and which to reject," and had previously disabled access to large swaths of content. *Id.* Similarly, the New York court in *MP3Board* found that the defendant website operator had the ability to "police those who posted links to [its] site, as well as the ability to delete the links themselves from being displayed to users," and "could delete links from its database and thus prevent them from being displayed in response to user queries." *Arista Records, Inc. v. Mp3Board, Inc.*, 2002 WL 1997918 (S.D.N.Y. 2002). In both of these cases, as in others where the power to terminate has been found to be competent evidence of vicarious liability, the power to terminate was combined with the practical ability to *locate* and *access* allegedly infringing content that was stored on the defendants' servers. Plaintiffs' own cases thus illustrate that the "right and ability to *supervise*" alleged copyright infringement requires far more than the mere power to indiscriminately terminate *all* access to *any* services, for reasons unrelated to copyright infringement. Other courts are in agreement. *See, e.g.*, *Adobe Sys. Inc. v. Canus Prods., Inc.*, 173 F. Supp. 2d 1044, 1053, 1055 (C.D. Cal. 2001) (vicarious liability standard requires "a master-servant relationship or … 'pervasive participation' in the business of the infringing

party."); *Sony Corp. of America v. Universal City Studios, Inc.*, 464 US 417, 437 n.18 (1984) (noting that in "so-called landlord-tenant cases, … landlords who … did not participate directly in any infringing activity" would not be held liable for their tenants' infringement); *Deutsch v. Arnold*, 98 F. 2d 686, 688 (2d Cir 1938) ("[s]omething more than the mere relation of landlord and tenant must exist to give rise to a cause of action by plaintiffs against these defendants for infringement of their copyright….").[3]

None of these factors nor any similar factors going to a right and ability to *supervise infringement* are present here, where Cox merely provides Internet access to subscribers for a fixed monthly fee, and lacks the ability to control or access allegedly infringing content. As this Court earlier found in the *BMG v. Cox* litigation:

> Cox does not create or distribute peer-to-peer software. It does not host any of the websites that index .torrent files. It does not store infringing content on servers, nor can it control what customers store on their computers. As a result, it has no ability to remove or take down infringing content. … Cox does not know the particulars of the data being shared [via BitTorrent]. It is Cox users, not Cox, who initiate transfers of copyrighted works over Cox's network.

*BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 199 F. Supp. 3d 958, 965 (E.D. Va. 2016), *aff'd in part, rev'd in part*, 881 F.3d 293 (4th Cir. 2018).

But even accepting *arguendo* that the mere power to terminate subscribers is relevant to vicarious liability, there is simply no dispute that Cox has such power, and indeed Plaintiffs acknowledge that Cox has actually terminated subscribers. Mem. 6; *and see BMG v. Cox*, 149 F. Supp. 3d 634, 659 (finding that during 2013 and 2014, "when Cox terminated a customer, it meant

---

[3] In similar vicarious infringement cases not involving online infringement, courts have held defendants liable in certain cases where infringement occurred on the defendant's "premises" *and* the defendant retained immediate control and could police the physical premises—but not where infringement occurred on physical premises leased to a tenant, even though the landlord might have the legal right to terminate the lease.

complete termination of access for six months.").[4] At a minimum, then, the additional information Plaintiffs seek is unreasonably cumulative and duplicative of discovery that they have already obtained.

Finally, Plaintiffs provide no authority to support their conclusory statements about the relevance of the number of terminations for non-payment, which does not involve online conduct at all. Nor do Plaintiffs explain why information from more than three years before Plaintiffs' Claim Period could possibly have any relevance to the issues in this case.

Information about terminations unrelated to copyright infringement is irrelevant to whether Cox had the right and ability to *supervise* allegedly infringing conduct during Plaintiffs' Claim Period. At a minimum, because there is no dispute that Cox actually terminated subscribers, the additional information Plaintiffs seek would be redundant, duplicative, and unreasonably cumulative. Plaintiffs' motion should be denied for all these reasons.

### B.     The information Plaintiffs seek is irrelevant to willfulness.

Plaintiffs also fail to show that information concerning the number of terminations unrelated to copyright infringement has any relevance to willfulness. Plaintiffs concede that under Fourth Circuit law, willfulness requires proof that a defendant either had knowledge that its subscribers' actions constituted infringement of Plaintiffs' copyrights; acted with reckless disregard for the infringement of Plaintiffs' copyrights; or was willfully blind to the infringement of Plaintiffs' copyrights. 881 F.3d at 312–13; *see* Mem. 4. Plaintiffs fail to explain or even address how the number of subscribers Cox terminated, for reasons unrelated to copyright infringement, is relevant to this knowledge standard. Nor do Plaintiffs explain how the ratio of copyright

---

[4] Plaintiffs' unsupported, conclusory statement that Cox "issued fake terminations," Mem. 6-7, is puzzling in light of the Court's determination.

terminations to non-copyright terminations can possibly demonstrate "the extent to which Cox turned a blind eye to infringement." Plaintiffs' conclusory statement that "a jury should be able to compare" these numbers fails to establish relevance to willfulness.

## III.    CONCLUSION

The number of terminations for reasons unrelated to copyright infringement is irrelevant to whether Cox had the right or the ability to supervise the alleged infringements of Plaintiffs' alleged works during Plaintiffs' Claim Period. It also lacks relevance to the willfulness inquiry, which turns on a defendant's knowledge of third-party infringements, not its ability to terminate subscribers for unrelated reasons. Moreover, such information from outside Plaintiffs' Claim Period is doubly irrelevant, since it has no possible connection to the alleged infringements at issue in this case. For all of the above reasons, the Court should deny Plaintiffs' motion.

Dated: January 23, 2019

/s/ / Thomas M. Buchanan /
Thomas M. Buchanan (VSB No. 21530)
WINSTON & STRAWN LLP
1700 K Street, NW
Washington, DC 20006-3817
Tel: (202) 282-5787
Fax: (202) 282-5100
Email: tbuchana@winston.com

*Attorneys for Defendants Cox Communications, Inc. and CoxCom, LLC*

*Of Counsel for Defendants*

Michael S. Elkin (*pro hac vice*)
Thomas Patrick Lane (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Tel: (212) 294-6700
Fax: (212) 294-4700
Email: melkin@winston.com

Email: tlane@winston.com

Jennifer A. Golinveaux (*pro hac vice*)
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111-5840
Tel: (415) 591-1000
Fax: (415) 591-1400
Email: jgolinveaux@winston.com

Diana Hughes Leiden (*pro hac vice*)
WINSTON & STRAWN LLP
333 S. Grand Avenue, Suite 3800
Los Angeles, CA 90071
Tel: (213) 615-1700
Fax: (213) 615-1750
Email: dhleiden@winston.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 23, 2019, the foregoing was filed and served electronically by the

Court's CM/ECF system upon all registered users.

<u>/s/ /Thomas M. Buchanan/</u>
Thomas M. Buchanan (VSB No. 21530)
1700 K Street, NW
Washington, DC 20006-3817
Tel: (202) 282-5787
Fax: (202) 282-5100
Email: tbuchana@winston.com

*Attorney for Cox Communications, Inc.*
*and CoxCom, LLC*