UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

SONY MUSIC ENTERTAINMENT, *et al.*,

    Plaintiffs,

v.

COX COMMUNICATIONS, INC., *et al.*,

    Defendants.

Case No. 1:18-cv-00950-LO-JFA

## DECLARATION OF PAUL KAHN ON BEHALF OF THE WARNER/CHAPPELL PLAINTIFFS IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL

I, Paul Kahn, hereby declare, pursuant to 28 U.S.C. § 1746, as follows:

1. I am currently employed as Executive Vice President, Chief Financial Officer at Warner/Chappell Music, Inc. I have held that position since December 2015. I have personal knowledge of the facts set forth below and/or have learned of these facts as a result of my position and responsibilities at Warner/Chappell Music and could and would testify competently thereto if called as a witness.

2. Plaintiffs Warner/Chappell Music, Inc. and its affiliates Warner-Tamerlane Publishing Corp., WB Music Corp., W.B.M. Music Corp., Unichappell Music Inc., Rightsong Music Inc., Cotillion Music, Inc., and Intersong U.S.A., Inc., (collectively, "Warner/Chappell") are full-service music publishing companies that collectively exploit a diverse catalog of copyright interests in and to over one million musical compositions, including numerous pop hits, American standards, folk songs and motion picture and theatrical compositions.

3. I am generally familiar with Warner/Chappell's practices and procedures for acquiring, administering, publishing, licensing, and otherwise exploiting its catalogue of

copyrighted compositions and the costs and revenues associated therewith. I am also generally familiar with the process by which Warner/Chappell accounts for income and costs associated with its catalog of music compositions and the manner in which Warner/Chappell keeps, maintains, and accounts for its records with respect to such income and expenses.

4. I understand that this declaration is to be submitted to the Court in connection with requests for discovery and a motion to compel filed by Defendants Cox Communications, Inc. and CoxCom, LLC (collectively, "Defendants" or "Cox").

5. As explained below, production of the categories of documents Cox seeks would be a massive undertaking—literally requiring thousands of hours of time from Warner/Chappell employees to locate, identify, and review such documents. Such an effort would likely impose expenses on Warner/Chappell in the hundreds of thousands or millions of dollars. The burden and expense is further compounded by the fact that much of Warner/Chappell's business is conducted by email. Consequently, the task of locating responsive documents (particularly electronic communications) is magnified dramatically as a result of the fact that the electronic files of hundreds of Warner/Chappell employees could conceivably have documents falling within the broad categories of documents requested by Defendants.

6. Warner/Chappell does not maintain summary financial documents reflecting the financial information Cox seeks on a composition-by-composition or even album-by-album basis. Specifically, Warner/Chappell does not have profit or loss statements at the level of individual songs. Nor does it maintain this for albums.

7. Any effort to identify and unearth every document or piece of financial data that would be needed to calculate profit or loss figures per song would be a nearly impossible undertaking. Given that more than one thousand musical compositions are at issue in this

lawsuit, locating, collecting, and reviewing all the financial documentation Cox requests would be unending. Cox apparently seeks full documentation about the costs and revenues involved in acquiring, administering, publishing, licensing, and otherwise exploiting songs—the whole of Warner/Chappell's business. Warner/Chappell generates, receives, and/or maintains numerous different types of financial documents relating to each composition in its catalogue. No single database or department maintains all of the individual financial records comprising the revenue, cost, and profit that Cox requests. It would require a full-time staff working many months, with thousands of hours of employee time, and additional time from in-house and outside attorneys and vendors to oversee such a process. This would be hugely disruptive to Warner/Chappell's business operations. I believe the costs of such a review and production would be astronomical.

8. Creating, publishing, and/or administering a composition is a lengthy and complicated process that involves many categories of both income and expenses. At each stage, each source of income and cost is documented in myriad ways, including through email communications, documents and/or different databases or systems, by innumerable employees in offices located across the country.

9. Identifying and processing revenue and cost data with respect to a given composition would be extremely complicated. Some of the types of revenue and costs include those related to: acquiring compositions or catalogs of compositions; administering mechanical, synchronization, performance, and print licenses and the royalties, fees and other monies generated therefrom; and maintenance and payment of royalties to songwriters, co-publishers, and other holders of copyright interests in connection with income generated from the exploitation of their copyrighted works. The royalty statements Warner/Chappell generates and

distributes can be complex and contain massive amounts of data (sometimes including hundreds of thousands of lines items).

10. Given the practical impossibility of collecting the detailed financial information Cox seeks, Warner/Chappell has provided its parent company's annual 10-K reports for the years 2010 through 2014. These reports include Warner Music Group's annual revenues from recorded music (broken down by physical sales, digital sales, licensing, and other) and music publishing (broken down by performance, mechanical, digital, sync, and other), cost of revenues (such as A&R costs); selling, general and administrative expense (for both recorded music and music publishing); interest and tax expense; and net profit/loss, among other financial information. As explained above, it would be extremely difficult and burdensome to provide the additional detailed financial information Cox seeks which are summarized by these public filings.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

_____
Paul Kahn

Executed this 23rd day of January, 2019.

4