UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

SONY MUSIC ENTERTAINMENT, *et al.*,

　　Plaintiffs,

v.

COX COMMUNICATIONS, INC., *et al.*,

Defendants.

Case No. 1:18-cv-00950-LO-JFA

## DECLARATION OF MATTHEW FLOTT ON BEHALF OF THE WARNER MUSIC PLAINTIFFS IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL

I, Matthew Flott, hereby declare, pursuant to 28 U.S.C. § 1746, as follows:

1. I am currently employed as Chief Financial Officer, Recorded Music for Warner Music Inc. ("WMI"). I have held that position since October 1, 2017. I have personal knowledge of the facts set forth below and/or have learned of these facts as a result of my position and responsibilities at WMG. If called upon and sworn as a witness, I could and would testify competently as to the matters set forth herein.

2. Plaintiffs Atlantic Recording Corporation, Bad Boy Records LLC, Elektra Entertainment Group Inc., Fueled By Ramen LLC, Nonesuch Records Inc., Roadrunner Records, Inc., and Warner Bros. Records Inc. (collectively, "Warner Music") are individual companies under the Warner Music Group umbrella.

3. I am generally familiar with Warner Music's practices and procedures for developing, exploiting, and distributing sound recordings and the costs and revenues associated

1

therewith. I am also generally familiar with the process by which Warner Music accounts for income and costs in connection with the sound recordings it produces, distributes, and offers for sale to the public, and the manner in which Warner Music and its affiliates keep, maintain, and account for their records with respect to such income and expenses.

4. I understand this declaration is to be submitted to the Court in opposition to a motion to compel discovery from Warner Music Group's record company plaintiffs and music publishing plaintiffs by Defendants Cox Communications, Inc. and CoxCom, LLC (collectively, "Cox" or "Defendants").

5. As explained below, production of the categories of documents Cox seeks would be a massive undertaking—literally requiring thousands of hours of time from Warner Music employees to locate, identify, review, and compile such documents. Such an effort would likely impose expenses on Warner Music in the hundreds of thousands or millions of dollars. The burden and expense are further compounded by the fact that much of Warner Music's business is conducted by email. Consequently, as explained below, the task of locating responsive documents (particularly electronic communications) is magnified dramatically as a result of the fact that the electronic files of hundreds of Warner Music employees could conceivably have documents falling within the broad categories of documents requested by Defendants.

6. Warner Music does not maintain summary financial documents reflecting the financial information Cox seeks on a track-by-track or even album-by-album basis. Specifically, Warner Music does not have profit or loss statements (or data) at the level of individual sound recordings or albums.

7. Any effort to identify and unearth every document or piece of financial data that would be needed to calculate profit or loss figures per sound recording would be a nearly

impossible undertaking. Given the thousands of works at issue in this lawsuit, locating, collecting, and reviewing all the financial documentation Cox requests would be unending. Cox apparently seeks full documentation about the costs and revenues involved in the creation, marketing, and exploitation of recorded music—the whole of Warner Music's business. No single database or department maintains all of the individual financial records comprising the revenue, cost, and profit information that Cox requests. The material is dispersed across many different labels, departments, and offices. It would require a full-time staff working many months, with thousands of hours of employee time, and additional time from in-house and outside attorneys and vendors to oversee such a process. This would be hugely disruptive to Warner Music's business operations.

8. Creating, marketing, distributing, and/or administering a sound recording is an extremely lengthy process that involves many categories of both income and expenses. At each stage, each source of income and cost is documented in myriad ways, including through email communications, documents and/or different databases or systems, by innumerable employees in offices located across the country.

9. Identifying and processing cost data with respect to a given sound recording (or the album on which it appears) would be extremely complicated. Some of the types of costs include: recording costs, such as payments or advances to artists, payments for studio time, producers, engineers, mixers, and other contributors, and costs associated with the negotiation, drafting, and ultimate execution of the recording agreement; costs of goods sold, such as manufacturing costs, distribution costs, and royalty payments to artists, producers, publishers, and unions; marketing costs, such as video production costs, independent promotion costs, costs related to publicity tours and appearances, tour support, digital marketing, and physical advertising; and overhead costs. Many costs are not allocated on a track-by-track or even album-by-album basis. Revenue data

likely would be similarly voluminous and include documents or information relating to the millions of track and album sales made each year, as well as licensing deals with television and movie studios, retailers, streaming services, satellite and cable services, and more.

10. Given the practical impossibility of collecting the detailed financial information Cox seeks, Warner Music has provided its parent company's annual 10-K reports for the years 2010 through 2014. These reports include WMG's annual revenues from recorded music (broken down by physical sales, digital sales, licensing, and other) and music publishing (broken down by performance, mechanical, digital, sync, and other); cost of revenues (such as A&R costs); selling, general, and administrative expense (for both recorded music and music publishing); interest and tax expense; and net profit/loss, among other financial information. As explained above, it would be extremely difficult and burdensome to provide the additional detailed financial information Cox seeks.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

_____
Matthew Flott

Executed this 23rd day of January 2019, in New York.