# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

SONY MUSIC ENTERTAINMENT, *et al.*,

    Plaintiffs,

v.

COX COMMUNICATIONS, INC., *et al.*,

    Defendants.

Case No. 1:18-cv-00950-LO-JFA

## DECLARATION OF MICHAEL ABITBOL ON BEHALF OF THE SATV/EMI PLAINTIFFS IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL

I, Michael Abitbol, hereby declare, pursuant to 28 U.S.C. § 1746, as follows:

1. I am currently employed as Senior Vice President, Business and Legal Affairs, Digital for Sony/ATV Music Publishing LLC ("SATV"). I have held that position or a similar position at all times relevant to this declaration. I have personal knowledge of the facts set forth below and/or have learned of these facts as a result of my position and responsibilities at SATV, and could and would testify competently thereto if called as a witness.

2. Plaintiffs SATV and its affiliates EMI Al Gallico Music Corp., EMI Algee Music Corp., EMI April Music Inc., EMI Blackwood Music Inc., Colgems-EMI Music Inc., EMI Consortium Music Publishing Inc. d/b/a EMI Full Keel Music, EMI Consortium Songs, Inc., individually and d/b/a EMI Longitude Music, EMI Feist Catalog Inc., EMI Miller Catalog Inc., EMI Mills Music, Inc., EMI Unart Catalog Inc., EMI U Catalog Inc., Jobete Music Co. Inc., Stone Agate Music, Screen Gems-EMI Music Inc., Stone Diamond Music Corp. (collectively, "SATV/EMI") are full-service music publishing companies that collectively exploit with their

fellow music publishing affiliates a diverse catalog of over three million songs, including some of the most iconic musical compositions of all time.

3. I am generally familiar with SATV/EMI's practices and procedures for acquiring, administering, publishing, licensing, and otherwise exploiting its catalogue of songs and the costs and revenues associated therewith. I am also generally familiar with the process by which SATV/EMI accounts for income and costs in connection with its catalog of musical compositions and the manner in which SATV/EMI and its music publishing affiliates keep, maintain, and account for their records with respect to such income and expenses. In addition, I am generally familiar with the books and records of SATV/EMI, including documents such as copyright certificates and agreements pursuant to which SATV/EMI possesses rights in the musical compositions at issue in this litigation.

4. I understand that this declaration is to be submitted to the Court in connection with requests for discovery and a motion to compel filed by Defendants Cox Communications, Inc. and CoxCom, LLC (collectively, "Defendants" or "Cox").

5. As explained below, production of each of these categories would be a massive undertaking—literally requiring thousands of hours of time from SATV/EMI employees to locate, identify, and review such documents. Such an effort would likely impose expenses on SATV/EMI in the hundreds of thousands or millions of dollars. The burden and expense is further compounded by the fact that much of SATV/EMI's business is conducted by email. Consequently, as explained below, the task of locating responsive documents (particularly electronic communications) is magnified dramatically as a result of the fact that the electronic files of dozens of SATV/EMI employees could conceivably have documents falling within the broad categories of documents requested by Defendants.

### Discovery Concerning the SATV/EMI Plaintiffs' Financial Information

6. SATV/EMI does not maintain summary financial documents reflecting the financial information Cox seeks on a track-by-track or even album-by-album basis. Specifically, SATV/EMI does not have profit and loss statements at the level of individual songs. Nor does it maintain them for albums.

7. Any effort to identify and unearth every document or piece of financial data that would be needed to calculate profit and loss figures per song would be a herculean undertaking. Given the thousands of works at issue in this lawsuit, locating, collecting, and reviewing all the financial documentation Cox requests would be unending. Cox apparently seeks full documentation about the costs and revenues involved in acquiring, administering, publishing, licensing, and otherwise exploiting songs—the whole of SATV/EMI's business. It would require a full-time staff working many months, with thousands of hours of employee time, and additional time from in-house and outside attorneys and vendors to oversee such a process. This would be hugely disruptive to SATV/EMI's business operations. I believe the costs of such a review and production would be astronomical.

8. Creating, publishing, and/or administering a song is a lengthy and complicated process that involves many categories of both income and expenses. At each stage, each source of income and cost is documented in myriad ways, including through email communications, documents and/or different databases or systems, by innumerable employees in offices located across the world.

9. Identifying and processing revenue and cost data with respect to a given song would be extremely burdensome and complicated. Some of the types of revenues and costs include those related to: acquiring songs via agreements with songwriters or other music publishers;

administering mechanical, synchronization, performance, and print licenses pursuant to which SATV/EMI's copyrighted works are exploited; and maintenance and payment of royalties to songwriters, co-publishers, and other royalty participants in connection with income generated from the exploitation of SATV/EMI's works. I would estimate that SATV/EMI maintains millions of pages of documents relating to these revenues and costs. As one example, the royalty statements that SATV/EMI receives from the licensees of its works can be complex and contain massive amounts of data (sometimes totaling millions of lines). These statements often are not limited to royalties for any one particular composition, and instead often cover hundreds of thousands of uses for thousands of other compositions that are administered by SATV/EMI.

10. Given the impracticality of collecting the detailed financial information Cox seeks, SATV/EMI has provided summary a profit or loss statement for the years 2010 through 2014. Such statement includes the following annual U.S.-based financial detail for SATV/EMI: total revenues; total royalty expenses; talent expenses; amortization expense; overhead and other costs; operating income; and net income. As explained above, it would be extremely difficult and burdensome to provide the additional detailed financial information Cox seeks.

### Discovery Concerning Ownership of SATV/EMI's Musical Compositions

11. Musical compositions are the foundation of SATV/EMI's business. In the course of regular operations, SATV/EMI's routine practice is to obtain copyright ownership of its songs through agreements with songwriters and obtain copyright protection through registrations with the U.S. Copyright Office

12. There are 17 SATV/EMI music publishing companies included as Plaintiffs in this case. SATV/EMI currently has U.S. offices in New York, Los Angeles, Nashville, and Miami, and is the world's leading music publisher. SATV/EMI and its publishing affiliates own or control

more than three million compositions, many of which have been registered for copyright protection in the U.S.

13. The process for obtaining the rights to a composition is extensive. A music publishing company typically obtains rights to a composition either by directly entering into an agreement with a songwriter or indirectly by acquiring catalogs from other companies, or by acquiring other companies (who themselves have entered into the direct agreements with songwriters). The acquisition of any single composition may involve agreements and communications between many people, correspondence with copyright owners and their representatives, drafts and negotiations of agreements and licenses, input from lawyers, and the like. SATV/EMI's daily business activities also include working with licenses. SATV/EMI, and/or its authorized agents, can issue dozens, hundreds, or even thousands of performance, mechanical, synchronization, or other licenses for any individual composition. The files containing these various materials, including the agreements and the licenses themselves, are not kept in a central location. Rather, they are located in the files of the various publisher entities and others who may be involved in any individual licensing situation.

14. The same is true for documents concerning any questions, challenges, uncertainties or disputes regarding the validity or ownership of SATV/EMI's copyrights in musical compositions. Searching for documents regarding any challenges or disputes regarding the validity or ownership of SATV/EMI's copyrights would involve many employees, including attorneys. SATV/EMI would not include works in its repertoire if a challenge to its ownership or validity of its copyrights was successful and, likewise, would not knowingly have included any such works in this lawsuit.

15. An effort to locate, collect and review all of the documentation associated with SATV/EMI's ownership of copyrights in musical compositions—including the validity, ownership, chain of title, songwriter agreements, challenges or disputes, and all forms of assignments and licenses for a decade—would be an enormous undertaking. I estimate that additional tens of thousands of documents, if not more, would need to be located, collected and reviewed in such an effort. This process would require thousands of hours of employee time in addition to the substantial time and expense required by in-house and outside attorneys to manage this process. I would estimate that the expense of such an undertaking could easily cost hundreds of thousands of dollars or more.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

_____
Michael Abitbol

Executed this 23rd day of January, 2019.