UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

SONY MUSIC ENTERTAINMENT, *et al.*,

    Plaintiffs,

v.

COX COMMUNICATIONS, INC., *et al.*,

    Defendants.

Case No. 1:18-cv-00950-LO-JFA

## DECLARATION OF TRACIE PARRY ON BEHALF OF THE WARNER MUSIC PLAINTIFFS IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL

I, Tracie Parry, hereby declare, pursuant to 28 U.S.C. § 1746, as follows:

1. I am currently employed as Vice President, U.S. Shared Services, Legal, for Warner Music Inc. ("WMI"). I have held that position or a similar position since 2008. I have personal knowledge of the facts set forth below and/or have learned of these facts as a result of my position and responsibilities at WMI. If called upon and sworn as a witness, I could and would testify competently as to the matters set forth herein.

2. Plaintiffs Atlantic Recording Corporation, Bad Boy Records LLC, Elektra Entertainment Group Inc., Fueled By Ramen LLC, Nonesuch Records Inc., Roadrunner Records, Inc., and Warner Bros. Records Inc. are individual companies under the Warner Music Group umbrella (collectively, "Warner Music").

3. I am familiar with the books and records of Warner Music and its record label affiliates, including documents such as copyright certificates and agreements pursuant to which

1

Warner Music's record companies possess rights in the sound recordings at issue in this litigation.

4. I understand that this declaration is to be submitted to the Court in connection with requests for discovery and a motion to compel filed by Defendants Cox Communications, Inc. and CoxCom, LLC (collectively, "Defendants" or "Cox").

### Discovery Concerning Ownership of Warner Music's Sound Recordings

5. Sound recordings are the foundation of Warner Music's business. In the course of regular operations, Warner Music's routine practice is to obtain copyright ownership of its works through agreements with artists or other entities, and then to obtain federal protection of those works through registrations with the U.S. Copyright Office.

6. Warner Music has registered copyrights in tens of thousands of sound recordings (both albums and singles). When an album is registered in its entirety, the registration covers all of the songs on that album that have not been previously released, and which are themselves eligible for copyright protection, which generally is between 10 and 15 songs. Warner Music has obtained these copyrights directly by entering into recording agreements with artists, or companies with whom the artist has an agreement, or indirectly by acquiring catalogs of sound recordings from other companies, or by acquiring other companies (which themselves have entered into recording agreements).

7. When Warner Music enters into a recording agreement with an artist to create sound recordings (often referred to as "master recordings"), the agreement will generally provide that the master recording will be created as a "work made for hire" for Warner, such that Warner is considered the "author." However, the recording agreement will also include an assignment provision, to the extent the masters are determined not to be a work made for hire. This "belt

and suspenders" approach is used to ensure that Warner Music owns the recordings, the creation of which it is financing.

8. Of course, for any specific sound recording, the so-called "chain of title" of any single sound recording may be complicated. There may be agreements with companies which in turn have direct agreements with the artist. There may be multiple amendments that relate to a specific artist. There may be assignments between companies. Locating, reviewing, and producing all such documents would be a major undertaking.

9. Documents concerning questions, challenges, uncertainties or disputes regarding the validity or ownership of Warner Music's copyrights in sound recordings are also not kept in a central location. Warner Music does not maintain a single file or even have a consistent filing system for challenges to ownership for their sound recordings. Searching for documents regarding any challenges or disputes regarding the validity or ownership of Warner Music's copyrights would involve numerous employees, including attorneys at each of the record labels which are part of Warner Music, and Warner Music's copyright department, as such files are not centrally maintained or even tracked. Further, if a challenge to its ownership or the validity of any copyrights had been successful, Warner Music would not include such works in its repertoire and, likewise, would not have included such works in this lawsuit.

10. When Warner Music has acquired companies or catalogs, the documentation relating to such acquisitions can itself be quite voluminous, particularly if the acquisition was of an entire company. I understand we have produced or are in the process of producing chain of title documents for instances when the copyright certificate lists a name other than a Warner Music entity that is a plaintiff in this action. These documents connect Warner Music to the name listed on the copyright certificate.

11. An effort to locate, collect, and review all of the documentation associated with Warner Music's ownership of all of its copyrights in sound recordings—including the validity, ownership, chain of title, artist agreements, challenges or disputes, and all forms of assignments and licenses over the course of a ten-year period—would be an enormous undertaking. Because these materials are not maintained in a centralized manner or in a centralized location, it is difficult to determine even the precise amount of material involved. I estimate that hundreds of thousands of documents would need to be located, collected, and reviewed in such an effort. This process could require thousands of hours of employee time in addition to the substantial time and expense required by in-house and outside attorneys to manage this process. I would estimate that the expense of such an undertaking could easily cost in the hundreds of thousands or even millions of dollars.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

_____
Tracie D. Parry

Executed his 23rd day of January 2019.