**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| SONY MUSIC ENTERTAINMENT, *et al.*, | |
| *Plaintiffs*, | |
| v. | Case No. 1:18-cv-00950-LO-JFA |
| COX COMMUNICATIONS, INC., *et al.*, | |
| *Defendants*. | |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT**
**<u>OF THEIR MOTION TO COMPEL</u>**

## <u>TABLE OF CONTENTS</u>

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     PLAINTIFFS' FINANCIAL DATA ..................................................................... 2

      A.      Plaintiffs' Per-Work, Per-Channel Revenue .......................................... 2

           1.      This information is relevant to statutory damages. ..................... 3

           2.      This information can clearly be used to calculate estimated lost
               revenue, which is, again, relevant to statutory damages. .......... 5

           3.      Plaintiffs' fail to articulate a specific burden. .......................... 7

      B.      Cox is no longer seeking Plaintiffs' per-work profit and loss statements, as
          Plaintiffs have unequivocally represented that they do not exist. ........... 8

      C.      Plaintiffs' financial "proffer" is non-responsive and requires the
          production of the information Cox seeks with this Motion. ................... 9

III.    DOCUMENTS CONCERNING THE VALIDITY OF THE COPYRIGHTS AND
      PLAINTIFFS' OWNERSHIP OF THEM ........................................................ 10

IV.     DOCUMENTS CONCERNING "COX" ........................................................... 12

V.      DOCUMENTS CONCERNING THE COPYRIGHT ALERT SYSTEM ("CAS")
      AND THE ACTIONS OF OTHER ISPS ......................................................... 15

VI.     DOCUMENTS CONCERNING AND COMMUNICATIONS WITH
      MARKMONITOR ............................................................................................ 17

VII.    COMMUNICATIONS WITH AND DOCUMENTS CONCERNING THE RIAA ........ 18

VIII.   DOCUMENTS CONCENRING THE EFFECT OF COPYRIGHT
      INFRINGEMENT ON PEER-TO-PEER FILE SHARING SITE ................... 20

IX.     CONCLUSION ................................................................................................ 20

## I.    INTRODUCTION

Although replete with hyperbole and vitriol, Plaintiffs' Opposition fundamentally fails to address the relevance of the categories of documents Cox has actually moved on, or any specific burden with producing those documents.  The parties have been meeting and conferring over the requests at issue for nearly seven weeks now.  In light of the information exchanged during those meet and confers, Cox's Motion was directed at tailored categories of documents that are both highly relevant to Cox's defense, and entirely proportional to the needs of this case. Rather than respond to the tailored categories on which Cox moved, Plaintiffs attempt to create a straw man by disregarding all of the clarification and narrowing that Cox has provided, which is explicitly outlined both in the parties' meet and confer letters attached to Cox's Motion and in its Memorandum, and instead argue only that Cox's original requests are overbroad and impractical. This tactic is intended only to confuse issues and deprives the Court of the results of the parties' extensive meet and confer efforts.  Plaintiffs fail to meaningfully respond to the narrowed requests on which Cox actually moved.

In addition, while Plaintiffs assert that they have produced nearly 300,000 documents in this case, almost 280,000 of these documents are copyright infringement notices—machine-generated .txt files exported from MarkMonitor's system.  The balance is a scattershot of cherry picked documents relating to copyright ownership and validity.  Where 58 Plaintiffs assert secondary copyright infringement of nearly 11,000 works with a claim in excess of $1.6 billion, they must produce basic chain of title and validity documents, not merely those that they unilaterally deem "sufficient."  While Plaintiffs misleadingly claim that they "made no such specific monetary demand in their Complaint," Opp'n at 10, it is of course basic math: Plaintiffs seek statutory damages of up to $150,000 per work for 10,729 allegedly infringed works.

Plaintiffs also resist producing basic financial information about the works in suit. Shortly before filing their opposition, Plaintiffs produced their so-called "proffer" of financial data—in sum and substances, it consists of a few sentences describing how each Plaintiff group calculates its revenue from digital downloads but provides no actual revenue data. This is clearly not an acceptable substitute for actual revenue data.

The categories of documents and information that Cox seeks are tailored based upon the parties' extensive meet and confer discussions, highly relevant, and proportional to the needs of this case.

## II.     PLAINTIFFS' FINANCIAL DATA

Plaintiffs focus their opposition to Cox's requests for basic financial data arguing straw man issues that have been rendered moot by the parties' meet and confer discussions. But Plaintiffs know exactly what Cox is seeking as Cox has confirmed it in multiple letters and its Motion: Cox seeks each plaintiff's per-work, per-channel revenue for the years 2010-2014 and any *existing* analyses bearing on the profits Plaintiffs make per work. Mot. at 3-5. Plaintiffs barely mention these specific requests and when they do, fail to demonstrate why such information is not relevant or proportionate to the needs of this case. Plaintiffs should be compelled to produce this information or, at the very least, represent the type(s) of per-work revenue information that each plaintiff maintains.

### A.     Plaintiffs' Per-Work, Per-Channel Revenue

Plaintiffs try to focus on Cox's original requests, served nearly two months ago, and ignore what the parties have been discussing since then—Plaintiffs' per-work, per-channel revenue. Opp'n at 3. Plaintiffs argue that Cox's request for "basic financial data" is divorced from reality. *Id*. But it is Plaintiffs' opposition that is divorced from Cox's Motion. Plaintiffs focus their opposition on this issue by claiming that they do not maintain per-work profit and loss statements.

But, as Plaintiffs know, in light of Plaintiffs' representations during meet and confers that they do not have this information, **Cox instead seeks Plaintiffs' per-work, per-channel revenue from the works-in-suit and information or analyses in Plaintiffs' possession regarding the profits earned from any of the works at issue, any artist whose work is at issue or, if a Plaintiff's works are divided into different labels or divisions, information relating to the profits earned by those labels or divisions**. Mot. at 5; *see also* Declaration of Jennifer A. Golinveaux in Support of Cox's Motion to Compel ("Golinveaux Decl."),[1] Ex. 7 at 2-3. Where Plaintiffs do address this entirely reasonable request, they fail to articulate why this is not relevant or why it would be unduly burdensome to produce this information, *let alone the burden to each producing plaintiff.*

### 1.      This information is relevant to statutory damages.

Plaintiffs misleadingly argue that a rights holder is not required to prove its actual damages in order to obtain statutory damages. But Cox has not argued that. Instead, Cox has cited cases that establish that a rights holder's actual damages *is relevant* to a jury's determination of statutory damages. See Mot. at 5 (citing *Seoul Broad. Sys. Int'l, Inc. v. Young Min Ro*, No. 1:09CV433 LMB/IDD, 2011 WL 3207024, at *8 (E.D. Va. July 27, 2011); *EMI April Music, Inc. v. White*, 618 F. Supp. 2d. 497, 508-09 (E.D. Va. 2009); Nimmer on Copyright § 14.04[B] at 14-41; *Dae Han Video Prod., Inc. v. Chun*, No. CIV. A. 89-1470-A, 1990 WL 265976, at *7 (E.D. Va. June 18, 1990).

Moreover, none of the cases that Plaintiffs cite contradict this point. *See F. W. Woolworth Co. v. Contemporary Arts*, 344 U.S. 228, 232-33 (1952) (recognizing that even if the court estimates statutory damages instead of actual damages, the determination should be made "by

---

[1] ECF No. 75-1.

taking into account both components and the difficulties in the way of proof of either");[2] *Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co.*, 74 F.3d 488, 496 (4th Cir. 1996) (finding that the jury was properly instructed to focus on actual damages suffered by the plaintiffs in making their statutory damages determination).[3]

In addition, as asserted in Cox's Motion, this Court ordered BMG and Round Hill to produce this same information because it is relevant to statutory damages. Mot. at 8; Golinveaux Decl., Ex. 9 (Hr'g Tr. at 32:11-33:7). And Judge O'Grady did the same, when he denied BMG's motion to exclude Dr. Ryan Sullivan from opining on this very issue to the jury (using BMG's per-work, per-channel revenue data) and when he instructed the jury on damages. Declaration of Jennifer A. Golinveaux in Support of Cox's Reply Memorandum of Law ("Golinveaux Reply Decl."), Ex. 23 (Nov. 23, 2015 Hr'g Tr. at 16:14-17, 22:8-11) (allowing Dr. Sullivan's testimony concerning actual damages calculations over BMG's objections that he should not be allowed to conduct a "precise quantification of damages"); Ex. 22 (*BMG*, Trial Tr. at 2149:23-2150:14) (jury instruction considering BMG's lost revenues, amongst other factors, for calculating a damages award). Plaintiffs do not even attempt to argue why the relevance considerations are different here than they were in *BMG*.

---

[2] In *F. W. Woolworth*, the Supreme Court chastised the lower court for excluding testimony and proof of actual damages stating that "[i]t might have been better practice to have received the evidence, even if it fell short of establishing the measure of liability; for when recovery may be awarded without any proof of injury, it cannot hurt and may aid the exercise of discretion to hear any evidence on the subject that has probative value." *Id.* at 230-31.

[3] *See also Tattoo Art Inc. v. TAT Int'l LLC,* 498 F. App'x 341, 348 (4th Cir. 2012) (challenging the total amount of the statutory damages award but not how the district court arrived at the amount); *Superior Form Builders*, 74 F.3d at 496 (4th Cir. 1996) (arguing that "statutory damages must bear some reasonable relationship to the amount of actual damages"); *Bryant v. Media Right Prods., Inc*., 603 F.3d 135, 144 (2d Cir. 2010) (recognizing the copyright holder's revenue in a non-exhaustive list of factors courts consider when determining the "appropriate level of statutory damages").

Moreover, Plaintiffs misrepresent the analysis performed by Cox's expert in *BMG*, Dr. Sullivan. While Dr. Sullivan testified to the average revenue across all BMG's works (76.3% digital downloads and 23.7% streaming), his damages calculation took into account the exact ratio for each work in suit. *See, e.g.*, Golinveaux Reply Decl., Ex. 22 (*BMG* Trial Tr. at 1691:11-1692:1) ("So I looked at each and every individual work in each year to figure out what that allocation is for each of those works, and I used those individual allocations, just like you see here on this table, just except for all of the works."); *see also id.* at 1761:6-19. In any event, Plaintiffs' comparison to how Dr. Sullivan utilized this data in *BMG* has no bearing on whether it should be produced in this case. The fact that it was produced, utilized, and put before the jury, which awarded BMG a fraction of the statutory damages it sought, clearly demonstrates its relevance.

### 2.    This information can clearly be used to calculate estimated lost revenue, which is, again, relevant to statutory damages.

Plaintiffs separately argue that Cox's "requests for financial information are flawed because they concern only one variable in a two-variable equation—where the second variable is unknown (namely, the overall scope of infringing activity that took place on Cox's network)." Opp'n at 7. Again, Plaintiffs ignore not only the parties' meet and confer efforts, where this very issue was discussed at length (*see* Golinveaux Decl., Ex. 7 at 2-3.), but Cox's Motion, in which it explained how this information might be used. Mot. at 6-7. More fundamentally, it is *Plaintiffs' burden* to establish the underlying direct infringements for which they seek to hold Cox liable. *See Keeler Brass Co. v. Cont'l Brass Co.*, 862 F.2d 1063, 1065 (4th Cir. 1988).

For example, Plaintiffs simply ignore that the parties have exchanged all of the copyright infringement notices that were sent to Cox on Plaintiffs' behalf. They also ignore that Cox has requested from non-party MarkMonitor, Inc., data relating to all observations of alleged infringement by Cox subscribers. Putting aside whether this information is sufficient as a matter

of law to establish direct infringement, Cox's expert can utilize this information to provide an estimate of Plaintiffs' actual damages—assuming this were the extent of the alleged infringement for which Cox is secondarily liable.

Plaintiffs additionally assert—without support—that there may have been "millions or billions of infringements" of Plaintiffs' work.  However, Plaintiffs are only entitled to statutory damages for direct infringements that they can prove.  The fact that subscribers of other ISPs may have also infringed Plaintiffs' works has no bearing on the damages to which Plaintiffs are entitled should they establish liability.  But to the extent Plaintiffs attempt to argue to the jury that the scope of infringement across the Internet is relevant (indeed, "massive," as they assert in their opposition), then Cox is entitled to provide an estimate of Plaintiffs' actual lost revenue, as both restitution and reparation of injury are relevant to a jury's determination of statutory damages.  *See* Golinveaux Reply Decl., Ex. 22 (*BMG* Trial Tr. at 2149:23-2150:14) (instructing that the jury can consider "the revenues that BMG lost because of infringement" in determining the appropriate statutory damages award").

At the end of their opposition concerning this issue, Plaintiffs finally acknowledge, by citing a Second Circuit case, that the "revenue lost by the copyright holder" is relevant to statutory damages.  Opp'n at 7-8 (citing *Bryant v. Media Right Prods., Inc*. 603 F.3d 135, 144 (2d Cir. 2010).  Plaintiffs then give an example of how this works and, in doing so, admit that "the relevant figure is the amount of revenue that Apple would have paid to Plaintiffs for the lost download." *Id.* at 8.  Again, Cox has requested per-work, per-channel revenue.  This includes each plaintiff's revenue from physical sales, digital downloads, streaming royalties, and licensing royalties.  *See* Mot. at 5.  It is unclear from Plaintiffs' opposition how this information would not be captured by Cox's request.  And, as Plaintiffs now concede, it is directly relevant.

### 3.   Plaintiffs' fail to articulate a specific burden.

Despite filing a number of declarations, Plaintiffs fail to meaningfully articulate any burden in producing the requested information. Indeed, each plaintiff must *individually* articulate the burden posed to it in responding to Cox's discovery requests. *See Cappetta v. GC Servs. Ltd. P'ship*, No. CIV. A. 3:08CV288, 2008 WL 5377934, at *3 (E.D. Va. Dec. 24, 2008) ("[A] party objecting on the grounds that a request is overly burdensome must submit affidavits or other evidence indicating with specificity the nature and extent of the burden"); *see also Stoney Glen, LLC v. S. Bank & Tr. Co.*, No. 2:13CV8-HCM-LRL, 2013 WL 5514293, at *3 (E.D. Va. Oct. 2, 2013) ("[T]he party opposing discovery on the ground of burdensomeness must submit detailed facts regarding the anticipated time and expense involved in responding to the discovery which justifies the objection").

To the extent that a plaintiff does not maintain per-work, per-channel revenue, that plaintiff must state so. To the extent that a plaintiff maintains this information but, given the intricacies of that plaintiff's record-keeping system, it would be unduly burdensome to produce, that plaintiff must state so. Only two affirmations attached to Plaintiffs' opposition appear to directly address any burden in producing this specific information. *See* ECF Nos. 82-8 & 82-4. Wade Leak, Senior Vice President and Deputy General Counsel of Sony Music Entertainment attests that "[d]etermining all the revenue generated on a track by track basis … is extremely time consuming …." ECF No. 82-8, ¶ 9. Matthew Flot, the Chief Financial Officer of Warner Music, Inc., similarly attests that "[r]evenue data likely would be similarly voluminous …." ECF No. 82-4, ¶ 9. The rest of the declarations, like Plaintiffs' Opposition, erroneously conflate Cox's prior request for per-work profit and loss statements with its pending, narrowed request for Plaintiffs' per-work, per-channel revenue. Thus, it is impossible to determine whether the burden is specific to Cox's request.

**B.**   **Cox is no longer seeking Plaintiffs' per-work profit and loss statements, as Plaintiffs have unequivocally represented that they do not exist.**

Early on in the parties' meet and confer calls, Plaintiffs represented that they do not maintain profit and loss statements on a per work basis.  Accordingly, as the parties discussed, Plaintiffs did not maintain expense information on a per-work basis either.  Cox therefore moved on and requested any information or analyses that Plaintiffs *do maintain* that relates to their profits per work.  This could include, as Cox explained numerous times in letters to Plaintiffs, on calls, and in its Motion, profit analyses per artist, per album, per division, per label, etc.  During the parties' meet and confer calls on this very issues, Plaintiffs asserted that such information would not be relevant.  But they did not say it did not exist.

In its Motion, Cox explained why this information is relevant.  *See* Mot. at 6-7 (actual damages are relevant to a precise determination of statutory damages per work).  In its Opposition, instead of articulating why this information is not relevant, Plaintiffs merely inform the Court what its counsel told Cox months ago—Plaintiffs do not maintain this information.  And that is precisely why Cox did not seek it in its Motion.

Tellingly, what Plaintiffs do disclose, is that they have generated these analyses in the past and thus they exist.  ECF No. 82-2 (McMullen Decl., ¶9).  Accordingly, Cox seeks, as it did in its Motion, any of Plaintiffs' analyses concerning their profits from any of the works-in-suit, any of the albums/compilations at issue, or the artists whose works are at issue.  To the extent these analyses exist, they should be produced, as they are directly relevant to Plaintiffs' damages and they have asserted no burden in produced these already-generated documents.

C.    **Plaintiffs' financial "proffer" is non-responsive and requires the production of the information Cox seeks with this Motion.**

Shortly before filing Plaintiffs' opposition to this Motion, counsel for Plaintiffs finally provided their so-called "proffer" of financial data, which they first identified during the parties' mid-December meet and confer calls.  As outlined below, this "proffer" is entirely inadequate.

In mid-December, Plaintiffs represented that they would provide a "range" of each plaintiff's revenue from digital downloads for 2010-2014.  After much prodding from Cox, Plaintiffs' counsel finally explained that the "proffer" would not be specific to the works-in-suit and that they would not provide any back-up data.  Cox noted at the time that, based on Plaintiffs' own description, it would not satisfy Cox's requests for per-work, per-channel revenue data.

The proffer consists of four documents, each with a single paragraph that described how that plaintiff group calculated its revenue during the period 2013-2014.  This does not inform Cox how much revenue each plaintiff generated for each work-in-suit, as requested.  It thus provides no basis for Cox to argue to the jury that each work-in-suit is not entitled to the same amount of statutory damages, should Plaintiffs establish liability.[4]

---

[4] The financial data Plaintiffs have produced thus far is minimal.  Certain of the plaintiff groups represent that "given the practical impossibility of collecting detailed financial documentation … Sony Music has provided a summary profit and loss statement for the years 2010-2014."  ECF No. 82-8, ¶ 11; *see also* ECF No. 82-2, ¶ 13 ("UMG has provided its parent company's annual financial reports for the years 2010 to 2014."); ECF No. 82-4, ¶ 10 ("Warner Music has provided its parent company's annual 10-K reports for the years 2010-2014."); ECF No. 82-6, ¶ 10 ("SATV/EMI has provided summary a [sic] profit and loss statement for the years 2010 through 2014."); ECF No. 82-3, ¶ 10 ("Warner/Chappell has provided its parent company's annual 10-K reports for the years 2010 through 2014.").  These reports, however, are basic top level profit and loss statements and provide no indication as to the amount of revenue earned *from the works-in-suit*, which, as certain Plaintiffs admit, constitutes a small fraction of the works they own.

III.    **DOCUMENTS CONCERNING THE VALIDITY OF THE COPYRIGHTS AND PLAINTIFFS' OWNERSHIP OF THEM**

As outlined in Cox's Motion, the categories of ownership and validity documents Cox is seeking are clear.  Specifically, Cox seeks:

- **Plaintiffs' work-for-hire agreements relating to the works-in-suit.**

- **Plaintiffs' assignment and licenses for the works-in-suit for the last ten years.**

- **Documents concerning *challenges* to the validity of Plaintiffs' copyrights or their ownership.**

Instead of agreeing to produce these specific categories of documents, Plaintiffs will only agree to produce documents they unilaterally deem "*sufficient* to demonstrate that Plaintiffs are the legal and/or beneficial owners of an exclusive right under copyright to their respective copyrighted works in suit … ."[5]

Regarding Plaintiffs' work-for-hire agreements, employees representing certain of the plaintiff groups have submitted affidavits that state that certain of their recording agreements "provide that the master will be created as a 'work for hire' … However, the recording agreement will also include an assignment provision, to the extent the masters are deemed not to be a work made for hire."  ECF No. 82-8, ¶ 14; ECF No. 84.1, ¶ 7 (same).  Cox has requested copies of Plaintiffs' work-for-hire agreements and they have only agreed to produce documents "sufficient" to demonstrate ownership.  If a work-for-hire agreement exists separate and apart from Plaintiffs' "recording agreement," it should be produced.  *See* Mot. at 11-12.  Plaintiffs have articulated no specific burden regarding producing these agreements, particularly in light of the fact that they are already searching for and producing other chain of title related documents.

---

[5] Golinveaux Decl., Ex. 3 (Resp. RFP Nos. 15, 21-22) (emphasis added).

With respect to documents concerning *challenges* to the validity of Plaintiffs' copyrights or their ownership in them, Plaintiffs also do not meaningfully address the burden of producing these documents.  For example, the plaintiff groups variably attest that "[s]earching for documents regarding any challenges or disputes regarding the validity or ownership of SATV/EMI's copyright would involve many employees, including attorneys."   ECF No. 82-6, ¶ 14; *see also* ECF No. 82-5, ¶ 8 (same for Warner/Chappell); ECF No. 84-1, ¶ 9 (same for Warner Music); ECF No. 82-2, ¶ 17 (noting that "disputes over and challenges to the UMG Record Companies' …ownership … are quite rare [and] not maintained in a centralized location or fashion."); ECF No. 82-8, ¶ 16 (same for Sony Music).

But Plaintiffs have not articulated why searching the documents of "employees, including attorneys" or otherwise searching for documents that are stored outside of a "centralized location or fashion" is unduly burdensome.  Instead, Plaintiffs' opposition, and these affidavits, appear to purposefully conflate Cox's requests (many of which are not the subject of Cox's motion).   In general, the thousands of hours and millions of dollars averred to relate to hypothetical responses to Cox's original requests, before the parties engaged in extensive meet and confer efforts.  Plaintiffs' articulation of the time and expense involved in respond to Cox's requests is thus meaningless.

Moreover, hidden in a footnote, Plaintiffs make the entirely unsupportable argument that Cox is somehow precluded from challenging their ownership of the works in suit.  *See* Opp'n, n.24.  But it is black-letter law that an accused infringer has standing to challenge the plaintiff's ownership in a case such as this, and Plaintiffs' cases, which concern Section 204(a)'s writing requirement, do not hold otherwise.  *See Lyrick Studios, Inc. v. Big Idea Prods*., Inc., 420 F.3d 388, 392 (5th Cir. 2005) (clarifying that *Eden Toys* supports the premise that "[a]n after-the-fact

writing can validate an agreement from the date of its inception, at least against challenges to the agreement by third parties" not that an alleged infringer cannot challenge a written agreement already in effect); *see also Tempest Publ'g v. Hacienda Records & Recording Studio, Inc.*, No. H–12–736, 2013 WL 5964516, at *13 (S.D. Tex. Nov. 7, 2013) (allowing alleged infringer to challenge copyright ownership).

Cox is not interested in sending Plaintiffs on a fishing expedition, and it is certainly not interested in reviewing reams of irrelevant documents related to prior transactions in which the works-in-suit changed hands.   Instead, Cox seeks assurance that it is receiving meaningful responses to its requests.   Cox's concerns regarding its requests are only heightened by the tenor of Plaintiffs' Opposition, and the affidavits of their employees, who appear to double-down of this "trust me" approach to discovery.   *See* Opp'n at 14; *see also* ECF No. 82-6 (Abitbol Decl., ¶¶ 12–15); ECF No.82-5 (Blietz Decl., ¶ ¶6–9); ECF No. 82-8 (Leak Decl., ¶¶ 16–18); ECF 82-2 (McMullen Decl., ¶¶15–16, 18); ECF No. 84-1 (Parry Decl., ¶¶9–11).   Cox thus requests an order compelling Plaintiffs to produce the following:

- **Plaintiffs' work-for-hire agreements relating to the works-in-suit.**

- **Plaintiffs' assignment and licenses for the works-in-suit for the last ten years.**

- **Documents concerning *challenges* to the validity of Plaintiffs' copyrights or their ownership.**

## IV.   DOCUMENTS CONCERNING "COX"

Cox's requests seek the following (Mot. at 13):

- **All documents that mention, refer to, or relate to Cox that were created, received, or sent from 2013 to present.**

- **All documents concerning communications with Cox regarding copyright infringement.**

Plaintiffs entirely fail to address why documents in their possession regarding Cox are not relevant to this action.  They also fail to address any burden in producing these documents.  Cox agreed to eliminate categories of documents, which the parties can agree are irrelevant (such as Plaintiffs' monthly invoices from Cox).  But Plaintiffs do not explain how, if at all, other documents that discuss Cox would not be relevant.

The narrow categories Plaintiffs have agreed to produce in response to these requests, including notices sent to Cox and downloads of the alleged infringements are insufficient.

Cox is also entitled to documents and communications in Plaintiffs' possession that mention or relate to Cox.  **These could be documents concerning alleged copyright infringement using Cox's internet service; Cox's copyright policies; Cox's promotion of its Internet services, including its advertisements regarding "throttling," as alleged in Plaintiffs' Complaint (Compl., ¶ 86); Cox's treatment of copyright infringement notices or attitude towards infringement on its network; documents concerning the effect of infringement by Cox's subscribers on Plaintiffs; or potential actions against Cox subscribers**.  None of these categories of documents, which are all highly relevant, would be captured by Plaintiffs' limited proposal.  It is also unclear why record companies and music publishers would have a disproportionate number of documents concerning Cox, particularly on the topics identified above.  Plaintiffs have certainly not explained why responding to these requests would be unduly burdensome.

The limited categories of documents that Plaintiffs now agree to produce also require clarification.  First, Plaintiffs represent, for the first time in their Opposition, that they will search

for and produce documents concerning Cox and copyright infringement.  Opp'n at 16.  But as

Plaintiffs' Supplemental Responses demonstrate, (Golinveaux Decl., Ex. 19 (Supp. Resp. to RFP

Nos. 153-155, 162)), they only formally agreed to produce documents that also fall within one of

the three limitations below:

- For the period 2012-2014, documents concerning analysis of the reliability of the MarkMonitor system used to produce the copyright infringement notices sent to Cox upon which Plaintiffs will rely in this litigation;

- For the period 2012-2014, documents relating to Cox's response to receiving an infringement notice sent by or on behalf of Plaintiffs; and

- Documents concerning the number of infringement notices Cox would accept from Plaintiffs on or on behalf of Plaintiffs.

If Plaintiffs are now willing, in response to Cox's motion to compel, to expand these categories to

also search for and produce documents that concern "Cox and copyright infringement" that should

be made clear on the record.

Plaintiffs also argue that "documents after 2014 is unreasonably broad and burdensome."

Opp'n at 16-17.  But they provide no support for their burden assertion.  Instead, they make the

misleading argument that "[t]he relevant time period at issue in this case is cabined."  *Id.* at 17.

But that is not true.  Plaintiffs' have limited their claim period to 2013-2014.  Yet it cannot be

disputed that documents in Plaintiffs' possession that concern Cox that were created after that time

period, particularly if the documents relate to the events that transpired during that time period,

are relevant.  If Plaintiffs are already running search terms and custodians for these documents, as

they represent, there is no burden in expanding the search to the present day.

## V.   DOCUMENTS CONCERNING THE COPYRIGHT ALERT SYSTEM ("CAS") AND THE ACTIONS OF OTHER ISPS

Plaintiffs fundamentally misconstrue the relevance of the documents Cox seeks with these requests.  *First*, Plaintiffs assert that their Complaint somehow does not make the argument that Cox stood apart from other ISPs in the industry.  Plaintiffs go so far as to claim that Cox fails to point out any instances where Plaintiffs do so.  *See* Opp'n 19 (citing Mot. at 14).  Yet on page 17 of Cox's Motion, Cox cites no fewer than 16 separate paragraphs of Plaintiffs' Complaint where they do just that.  For example:

- Plaintiffs allege that Cox's actions with respect to suspected copyright infringers was "arbitrary."  *See* Compl., ¶¶ 2, 8, 92, 99.[6]

- Plaintiffs allege that "Cox condoned the illegal activity *because* it was popular with subscribers and acted as a draw in attracting and retaining subscribers."  *Id.*, ¶ 88.

- Plaintiffs allege that Cox's network "is a primary motivation for subscribing on Cox's network."  *Id.*, ¶ 85.

- Plaintiffs allege that Cox's practice of not engaging in "bandwidth throttling" attracted would-be infringers.  *See id.*, ¶ 86.

Each of these allegations and others[7] relate, either explicitly or implicitly, to how Cox compares to other ISPs, how its services attract customers as compared to those of other ISPs, and most critically, whether its actions were "arbitrary," which necessarily requires looking at the actions of other ISPs.  Accordingly, Cox seeks, at a minimum, the following:

- **CAS Memorandum of Understanding;**

---

[6] The definition of "arbitrary" is "existing or coming about seemingly at random or by chance or as a capricious and unreasonable act of will."  Merriam-Webster Dictionary.
[7] *See also, e.g.*, Compl., ¶¶ 92, 100-102, 107.

- **The implementation, or side agreements, entered into between Plaintiffs and other ISPs;**

- **The form of copyright infringement notice utilized by those parties;**

- **Plaintiffs' communications with other ISPs regarding the terms of the implementation, or side agreements, including the number of notices the ISP would accept and policies regarding termination and other mitigating actions;**

- **Plaintiffs' communications with other ISPs, outside of the context of the CAS, regarding the number of notices the ISP would accept and policies regarding termination.**

Plaintiffs attempt to side-step Cox's requests by making the straw man argument that "CAS is not an industry standard" and that it does not replace an ISP's obligation under the DMCA. *See* Opp'n at 19-20. They miss the point. Cox seeks these documents because they are directly relevant to core issues, namely how other ISPs treated copyright notices, the number they would accept, the tenor of the negotiations surrounding these issues, and statements made either by Plaintiffs (or their agent, the RIAA) regarding these issues. How others in the industry were treating copyright notices, and how copyright owners, including many of the plaintiffs in this case agreed they should be treated, is of course relevant to whether Cox's treatment of notices was appropriate.

Plaintiffs' burden arguments are also misplaced, and conclusory. There are 58 separate plaintiffs in this action, regardless of how Plaintiffs elect to group themselves. The fact that "[n]egotiations leading up to the formation of CAS spanned years," a new organization called the Center for Copyright Information was created, or that "dozens of individuals at dozens of companies from multiple industries engaged in a dialogue over the course of years," *see* Opp'n at 21, has no bearing on an individual plaintiff's response to this request. Plaintiffs have articulated no burden in going to the relevant personnel or repository for plaintiff and collecting documents

(including communications) concerning the CAS.  The fact that all 58 Plaintiffs are represented by the same law firm (which also represents the RIAA) is not relevant to the burden analysis.

## VI.     DOCUMENTS CONCERNING AND COMMUNICATIONS WITH MARKMONITOR

To be clear, and contrary to Plaintiffs' characterization of Cox's requests, **Cox is seeking, at a minimum, any correspondence or documents concerning MarkMonitor relating in any manner to copyright policing or monitoring services, Cox, this litigation, or Plaintiffs' relationship with MarkMonitor**.  Mot. at 19.  Cox also explained that it is not seeking Plaintiffs' documents concerning MarkMonitor's trademark watching services or other irrelevant documents. Thus, this is not a broad request and Plaintiffs do not explain why there is any burden in producing responsive documents.

While Plaintiffs have agreed to produce certain highly limited categories of documents responsive to these requests, their proposed limitations are deficient.  Plaintiffs, in their Supplemental Responses, agreed to produce "for the period 2012-2014, documents concerning analysis of the reliability of the MarkMonitor system used to produce the copyright infringement notices sent to Cox upon which Plaintiffs will rely in this litigation."  *See* Golinveaux Decl., Ex. 19 (Supp. Resp., RFP Nos. 153-155, 162).  They now agree to expand the date range beyond 2012 to 2014 but otherwise limit their response to documents "regarding the reliability of the MarkMonitor system used to produce the copyright infringement notices sent to Cox … ."  Opp'n at 24.  This is still unacceptable for the reasons outlined in Cox's Motion, which Plaintiffs do not address.  *See* Mot. at 23.

Plaintiffs also represent for the first time in their Opposition that they are "conducting reasonable searches to target non-privileged documents concerning MarkMonitor and a broad array of topics and keywords, including BitTorrent, P2P, copyright, Cox, piracy, infringement,

17

illegal, and unlawful." Opp'n at 24. But when Cox sought to confirm with Plaintiffs whether they were producing documents responsive to its MarkMonitor-related requests, *see* Golinveaux Decl., Ex. 18, Plaintiffs responded that Cox had misrepresented their position and they would be serving Supplemental Responses to clarify. Golinveaux Decl., Ex. 21. There is no mention of these search terms in Plaintiffs' Supplemental Responses but instead a set of limitations that inappropriately curtails their proposed response.

Moreover, Plaintiffs' claims regarding the parties' negotiations over search terms are also very misleading. The parties never agreed to broadly exchange custodians or search terms. Rather, Plaintiffs proposed that, as a way to narrow certain of Cox's requests that they considered overbroad, they would propose custodians and search terms, which they have never done. Only after Cox's review of its own ESI was well underway did Plaintiffs insist that both parties should exchange custodians and search terms for discussion.

Finally, the cases Plaintiffs cite in which courts have limited the production of information related to "[p]laintiffs' strategies and techniques for approaching anti-piracy" are inapposite. Opp'n at 25.[8] And Plaintiffs do not explain how their agreement to produce a subset of the requested documents renders their refusal to produce the balance of the same type of documents reasonable. At the very least, Plaintiffs have conceded relevance and a lack of burden.

## VII.   COMMUNICATIONS WITH AND DOCUMENTS CONCERNING THE RIAA

As with most of Plaintiffs' Opposition, they have again ignored the specific, narrowed requests on which Cox moved resulting from numerous meet and confer calls and letters, and

---

[8] *DIRECTV, Inc. v. Trone*, 209 F.R.D. 455, 460 (C.D. Cal. 2002) (involving a single individual who was accused of unlawful interception and theft of signals from a television provider); *see also UMG Recordings, Inc. v. Lindor*, No. 05-cv-1095-DGT-RML, ECF No. 240 (E.D.N.Y. May 16, 2008) (similarly involving a single individual accused of downloading infringed content onto her computer).

instead seize on Cox's original requests to make hypothetical arguments concerning relevance and burden.  In addition, and as with Cox's other requests, Plaintiffs represent for the first time in their Opposition that they are conducting searches "to target non-privileged documents concerning the RIAA and Cox during the 2012 to 2014 time period."  Opp'n at 27.  Yet, as with the other sets of requests, Cox sought to confirm its understanding that Plaintiffs were searching for documents specifically in response to this request.  Plaintiff responded that Cox's characterization was inaccurate and that it would be serving Supplemental Responses.  Plaintiffs' Supplemental Responses to these RIAA-related requests did not directly address the RIAA, let alone the search terms Plaintiffs are apparently utilizing.

In any event, Plaintiffs Opposition ignores the narrowed scope of documents Cox is seeking and thus its relevance and burden arguments ring hollow.  For example, Plaintiffs claim that with RFP No. 155, Cox "literally seeks all communications that Plaintiffs have had with the RIAA."  Opp'n at 26.  Yet, Cox states in its Motion that with respect to this request, it only seeks "documents and communications with the RIAA concerning 'relationships, agreements, and communications that pertain to this lawsuit, the works-in-suit, Cox, or MarkMontitor and/or any other system used to monitor and or police copyrights."  Mot. at 22.  Indeed, this is the very same narrowing that Cox provided Plaintiffs on January 15, 2018, days in advance of filing the Motion.

To be clear, with this Motion, Cox seeks the following:

- **All non-privileged documents and communications concerning relationships, agreements, and communications with the RIAA that pertain to this lawsuit, Cox, or MarkMonitor and/or any other system used to monitor or police copyrights.**

Plaintiffs should be compelled to produce the identified categories of documents concerning the RIAA.

## VIII.   DOCUMENTS CONCENRING THE EFFECT OF COPYRIGHT INFRINGEMENT ON PEER-TO-PEER FILE SHARING SITE

As outlined in its Motion, Cox propounded a series of request seeking documents concerning the effect from copyright infringement on peer-to-peer file sharing sites and documents concerning Plaintiffs' own use of peer-to-peer file sharing sites.   In their Opposition Plaintiffs again change their responses to Cox's requests from their Supplemental Responses.

It no longer appears as though there is any issue with respect to Cox's RFP Nos. 50-51.

Plaintiffs fail to respond to Cox's argument why documents responsive to RFP Nos. 52-53, 54-55 outside of the limited categories of documents or date range they offer is insufficient. On their face, the proposed categories are non-responsive to the requests.   Cox has explained why these documents are relevant in its Motion, *see* Mot. at 26-27, and Plaintiffs do not address these arguments other than by feigning confusion.   *See* Opp'n at 29.   For the reasons set forth in Cox's Motion, which remain unrebutted, these documents are relevant and Plaintiffs should be ordered to produce them.   *See* Mot. at 25-27.

Lastly, with respect to RFP Nos. 58 and 59, Plaintiffs' Supplemental Responses plainly state that Plaintiffs "will not produce documents responsive only to this request."   Golinveaux Decl., Ex. 19.   Thus Cox has moved to compel a response from Plaintiffs.   If Plaintiffs now represent that they are producing documents to these requests, then that removes another issue from dispute.

## IX.   CONCLUSION

With this motion Cox is seeking appropriately tailored categories of documents and information that are directly relevant to Plaintiffs' claims and Cox's defenses in this action. Plaintiffs should be compelled to produce these documents and information.

Dated: January 24, 2019

Respectfully submitted,

*/s/ Thomas M. Buchanan /*
Thomas M. Buchanan (VSB No. 21530)
WINSTON & STRAWN LLP
1700 K Street, NW
Washington, DC 20006-3817
Tel: (202) 282-5787
Fax: (202) 282-5100
Email: tbuchana@winston.com

*Attorney for Defendants Cox
Communications, Inc. and CoxCom, LLC*

*Of Counsel for Defendants*

Michael S. Elkin (*pro hac vice*)
Thomas Patrick Lane (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Tel: (212) 294-6700
Fax: (212) 294-4700
Email: melkin@winston.com
Email: tlane@winston.com

Jennifer A. Golinveaux (*pro hac vice*)
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA  94111-5840
Tel: (415) 591-1000
Fax: (415) 591-1400
Email: jgolinveaux@winston.com

Diana Hughes Leiden (*pro hac vice*)
WINSTON & STRAWN LLP
333 S. Grand Avenue, Suite 3800
Los Angeles, CA 90071
Tel: (213) 615-1700
Fax: (213) 615-1750
Email: dhleiden@winston.com

**CERTIFICATE OF SERVICE**

I certify that on January 18, 2019, a copy of the foregoing DEFENDANTS' REPLY

MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO COMPEL was filed

electronically with the Clerk of Court using the ECF system, which will send notifications to

ECF participants.


/s/ Thomas M. Buchanan
Thomas M. Buchanan (VSB No. 21530)
1700 K Street, NW
Washington, DC 20006-3817
Tel: (202) 282-5787
Fax: (202) 282-5100
Email: tbuchana@winston.com

*Attorney for Cox Communications, Inc.*
*and CoxCom, LLC*