# Exhibit 22

Case 1:18-cv-00950-PTG-JFA Document 36-2 Filed 01/24/19 Page 2 of 9 PageID# 2022
Case 1:14-cv-01611-LO-JFA Document 732 Filed 12/14/15 Page 1 of 63 PageID# 20064

1636

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

```
---------------------------------:
                                 :
                                 :
BMG RIGHTS MANAGEMENT (US) LLC,  :
et al.,                          :
             Plaintiffs,         :
                                 : Case No. 1:14-cv-1611
      vs.                        :
                                 :
                                 :
COX ENTERPRISES, INC., et al.,   :
             Defendants.         :
---------------------------------:
```

VOLUME  8   (A.M. portion)

TRIAL TRANSCRIPT

December 11, 2015

Before:  Liam O'Grady, USDC Judge

And a Jury

Norman B. Linnell  OCR-USDC/EDVA  (703)549-4626

Case 1:18-cv-00950-PTG-JFA Document 86-2 Filed 01/24/19 Page 3 of 9 PageID# 2030
Case 1:14-cv-01611-LO-JFA Document 732 Filed 12/14/15 Page 96 of 63 PageID# 20719
R. Sullivan - Direct

1691

1  a premium paid service as well.
2            And streaming in particular has really increased
3  supply of music in the marketplace and fundamentally changed
4  the supply and demand equation for the music industry.
5  Q.   And how did you determine how many people might purchase a
6  digital download as opposed to streaming?
7  A.   I utilized data from BMG.  So this is a table that
8  provides an example of some of those data.  So I just have four
9  musical works here as examples.  You can see that the data were
10 provided on an annual basis.
11           So for Aretha Franklin, for example, I have data in
12 2013 as well as data in 2014.  You can see from BMG that the
13 revenue, that 97.8 percent of revenue in 2013 for that song
14 came from digital downloads.  And 2.2 percent came from
15 streaming.
16           In the next year, the percentages changed and there
17 was less to digital downloads, only 70.2 percent, whereas the
18 streaming increased to 29.8 percent.
19           So I looked at each and every individual work in each
20 year to figure out what that allocation is for each of those
21 works, and I used those individual allocations, just like you
22 see here on this table, just except for all of the works.
23           If you were to then look at the overall attribution
24 or division of revenue between downloads and streaming, you
25 would see that 76.3 percent goes to downloads, 23.7 percent

Case 1:18-cv-00950-PTG-JFA Document 86-2 Filed 01/24/19 Page 4 of 9 PageID# 2031
Case 1:14-cv-01611-LO-JFA Document 732 Filed 12/14/15 Page 57 of 63 PageID# 20720
R. Sullivan - Direct

1692

1  goes to streaming.
2  Q.  Okay.  And we are going to see how that relates to your
3  lost profits calculations.
4       And what does this slide represent?
5  A.  So this is helping to demonstrate the different ways in
6  which music is distributed.  So the first row is for
7  BitTorrent.  And as we have learned, that does not require any
8  additional payments, that you attain the music when accessed
9  via Internet.  And you can attain albums or individual songs as
10 the case may be.
11      Most similar to that is streaming and downloads.  So
12 streaming has all of those very same characteristics.
13 Downloads, however, do require an additional payment.  So if
14 you were to acquire a song from iTunes, for example, typically
15 it runs $0.99 or $1.29, something like that.
16      Physical media, of course, is just very different.
17 It typically comes in a CD, that's a full album, and it isn't
18 being delivered straight to a digital or an electronic device.
19 So quite a bit different.
20 Q.  Okay.  So now let's talk about your analysis of lost
21 units.  You said you did not include uploads in lost units,
22 correct?
23 A.  I did not.
24 Q.  Can you say briefly again why that is?
25 A.  There is virtually zero effect that users on the Cox

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

---------------------------------:
                                 :
BMG RIGHTS MANAGEMENT (US) LLC,  :
et al.,                          :
            Plaintiffs,          :
                                 : Case No. 1:14-cv-1611
    vs.                          :
                                 :
                                 :
COX ENTERPRISES, INC., et al.,   :
            Defendants.          :
---------------------------------:

VOLUME  8   (P.M. portion)

TRIAL TRANSCRIPT

December 11, 2015

Before:  Liam O'Grady, USDC Judge

And a Jury

Norman B. Linnell/Anneliese J. Thomson  OCR-USDC/EDVA  (703)549-4626

Case 1:18-cv-00950-PTG-JFA Document 86-2 Filed 01/24/19 Page 6 of 9 PageID# 2033
Case 1:14-cv-01611-LO-JFA Document 733 Filed 12/14/15 Page 68 of 135 PageID# 20789

R. Sullivan - Cross

1761

1  THE COURT: Yeah, that's way outside.
2  MR. WARIN: All right.
3  THE COURT: Let's confine ourselves to the
4  relevance --
5  BY MR. WARIN:
6  Q. Bruno Mars, on page 16, you list certain calculations of
7  how much of that particular song, "The Lazy Song," were derived
8  from streaming as opposed to downloads?
9  A. That's right.
10 Q. All right. And these are years 2013 and 2014, correct?
11 A. That's right.
12 Q. All right. Do you know how much the overall revenues that
13 Bruno Mars received for that song?
14 A. No, not offhand. I would have that in my report at
15 attachment C1.
16 Q. That's correct, you do, but you just don't remember it as
17 you sit here?
18 A. No, I can't say that I committed to memory 1,400-some-odd
19 songs and their associated revenue.
20 Q. Well, my point is a simple one. During 2013 to 2014, that
21 was a time when whether it's downloads and streaming -- and I
22 presume what you're measuring here is revenue-producing
23 downloads or streaming, correct?
24 A. Revenues to BMG.
25 Q. Right. And at that time, whether it's downloads or

2117

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

```
---------------------------------:
                                 :
BMG RIGHTS MANAGEMENT (US) LLC,  :
et al.,                          :
            Plaintiffs,          :
                                 : Case No. 1:14-cv-1611
     vs.                         :
                                 :
                                 :
COX ENTERPRISES, INC., et al.,   :
            Defendants.          :
---------------------------------:
```

VOLUME 10

TRIAL TRANSCRIPT

December 16, 2015

Before: Liam O'Grady, USDC Judge

And a Jury

Norman B. Linnell/Anneliese J. Thomson  OCR-USDC/EDVA  (703)549-4626

Case 1:18-cv-00950-PTG-JFA Document 86-2 Filed 01/24/19 Page 8 of 9 PageID# 2035
Case 1:14-cv-01611-LO-JFA Document 751 Filed 12/16/15 Page 38 of 169 PageID# 21382

2149

1   favor of the plaintiff from a preponderance of the evidence in
2   the case in accordance with the other instructions.
3           If you find that Cox is liable for contributory
4   infringement, or if you find Cox is liable for vicarious
5   infringement, then you should consider the amount of money to
6   award BMG.
7           If you find that Cox is neither liable for
8   contributory or vicarious infringement, you should not consider
9   this issue.
10          BMG seeks an award of statutory damages under the
11  Copyright Act.  Statutory damages are damages that are
12  established by Congress in the Copyright Act because actual
13  damages in copyright cases are often difficult to establish
14  with precision.  The purposes are to compensate the copyright
15  owner, penalize the infringer, and deter future copyright law
16  violations.
17          The amount awarded must be between 750 and $30,000
18  for each copyrighted work that you found to be infringed.  If
19  BMG proves that Cox acted willfully in contributorily or
20  vicariously infringing BMG's copyrights, you may, but are not
21  required to, increase the statutory damage award to a sum as
22  high as $150,000 per copyrighted work.
23          You should award as statutory damages an amount that
24  you find to be fair under the circumstances.  In determining
25  the appropriate amount to award, you may consider the following

2150

1 factors: The profits that Cox earned because of the
2 infringement; the expenses Cox saved because of the
3 infringement; the revenues that BMG lost because of the
4 infringement; the difficulty of proving BMG's damages; the
5 circumstances of the infringement; whether Cox acted willfully
6 or intentionally in contributorily or vicariously infringing
7 BMG's copyrights; deterrence of future infringement; and the
8 amount of harm, in the form of monetary loss, that BMG could
9 reasonably have avoided but for the failure to mitigate
10 damages, if you find that BMG did fail to mitigate.
11     You should award statutory damages whether or not
12 there is evidence of the actual damage suffered by BMG, and
13 your statutory damage award need not be based on the actual
14 damages suffered by BMG.
15     Cox's contributory or vicarious infringement is
16 considered willful if BMG proves by a preponderance of the
17 evidence that Cox had knowledge that its subscribers' actions
18 constituted infringement of BMG's copyrights, acted with
19 reckless disregard for the infringement of BMG's copyrights, or
20 was willfully blind to the infringement of BMG's copyrights.
21     In this case, Cox asserts the affirmative defense of
22 failure to mitigate damages. Cox must prove each element of
23 this defense by a preponderance of the evidence.
24     Plaintiff has a duty to use reasonable efforts to
25 mitigate damages. To "mitigate" means to avoid or reduce