# Exhibit 23

Case 1:18-cv-00950-PTG-JFA Document 86-2 Filed 01/24/19 Page 2 of 4 PageID# 2088
Case 1:14-cv-01611-LO-JFA Document 676 Filed 11/23/15 Page 1 of 113 PageID# 17859

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

```
---------------------------------:
                                 :
BMG RIGHTS MANAGEMENT (US) LLC,  :
et al.,                          :
             Plaintiffs,         :
                                 : Case No. 1:14-cv-1611
     vs.                         :
                                 :
                                 :
COX ENTERPRISES, INC., et al.,   :
             Defendants.         :
---------------------------------:
```

HEARING ON MOTIONS

November 20, 2015

Before: Liam O'Grady, USDC Judge

APPEARANCES:

Walter D. Kelley, Jr., John M. Caracappa, Jeremy D. Engle, Jeffrey M. Theodore, William G. Pecau, and Michael J. Allan, Counsel for the Plaintiffs

Andrew P. Bridges, Brian D. Buckley, Jed Wakefield, and Craig C. Reilly, Counsel for the Defendants

16

1    Now, they have two experts.  Their first expert is
2    Dr. Sullivan, who in all -- they talk a lot about Dr. Lehr's
3    qualifications, but, I mean, in all fairness, Dr. Sullivan is
4    essentially a general purpose professional damages expert
5    witness.  His knowledge -- so if we're going to talk about
6    knowledge of the issues here, industry expertise, Dr. Lehr
7    outshines Dr. Sullivan unquestionably.
8    Now, that said, we don't have -- we have
9    disagreements with Dr. Sullivan on a lot of issues, but we
10   don't have any problem with Dr. Sullivan responding to Dr.
11   Lehr's analysis of the expert literature.  We don't have any
12   problem with Dr. Sullivan critiquing Dr. Lehr's profits
13   calculation.
14   What we do have -- we do have a problem with is Dr.
15   Sullivan's purported effort to come up with a precise or a
16   purported precise quantification of damages to BMG and Round
17   Hill.
18   So we talked about the studies that Dr. Lehr
19   discussed.  They involve data collection, sampling.  You know,
20   they look for inputs based on consumer behavior.  They take
21   inputs based on the number of infringements and actual evidence
22   of consumer behavior, and they try to relate those two.  They
23   use regression techniques to try and relate actual data
24   regarding consumer behavior and infringement and figure out
25   what the connection is.

Case 1:18-cv-00950-PTG-JFA Document 86-3 Filed 01/24/19 Page 4 of 4 PageID# 2940
Case 1:14-cv-01611-LO-JFA Document 676 Filed 11/23/15 Page 22 of 113 PageID# 17880

22

1 that profit is good.

2 So we're going to spend all of this time with experts
3 going back and forth, and ultimately all the jury is going to
4 take away from that is absolutely Cox wants to hold onto its
5 subscribers for lots of reasons, and profit is one of them.

6 So the only economic analysis in his report gets the
7 jury nowhere, but it's going to be a long trip to get there.

8 THE COURT: Well, doesn't the jury have to decide
9 what profits Cox has made in order -- one, it's relevant to
10 vicarious liability. But two, it's also facts that I then use
11 to look at statutory damages, right, if infringement is found?

12 MR. BUCKLEY: Your Honor, yes, if they had undertaken
13 that analysis, but they didn't. They did not retain Dr. Lehr
14 as a damages expert. That is not what he is doing. He didn't
15 take his profitability figure and multiple it by some other
16 number and say, well, there is Cox's profit.

17 In fact, he very expressly didn't do that. Every
18 time he was asked about, well, so how does this match Cox, how
19 does that relate to Cox subscribers, how many people should
20 they have terminated, he said, I have no idea. He ran
21 screaming from anything that had to do with the facts of this
22 case.

23 Had they brought him in as a damages expert to say,
24 here's the calculation that gets you to Cox's profits, we
25 wouldn't be arguing, we would just put up Dr. Sullivan to rebut