# Exhibit R



North America   Europe   Asia

101 California Street
San Francisco, CA 94111
T +1 415 591 1000
F +1 415 591 1400

**JENNIFER A. GOLINVEAUX**
Partner
(415) 591-1506
jgolinveaux@winston.com

January 31, 2019

Jeffrey M. Gould
Oppenheim & Zebrak LLP
5225 Wisconsin Ave. NW, Ste. 503
Washington, DC 20015
Tel.: (202) 851-4526
Email: jeff@oandzlaw.com

Re: *Sony Music Entm't, et al., v. Cox Commc'ns, Inc., et al.*, 1:18-cv-00650-LO-JFA

Dear Jeff:

This letter responds to your January 28 and 29, 2019 series of emails.

**1. Search Terms.** As we have repeatedly explained, the parties never agreed to broad exchanges of search terms, and we disagree that exchanging search terms is either required, or appropriate, in this case. Rather, Plaintiffs specifically offered to identify search terms and custodians as a way to address disputes regarding certain of Cox's document requests to which Plaintiffs initially objected. To date, however, Plaintiffs have failed to provide any more details about their proposal, and have not provided the proposed search terms. Because Cox has already largely completed its ESI searching, the approach you suggest is impractical.

**2. Plaintiffs' PII proposal and Identification of Subscribers.**

Regarding your proposal for handling PII, Cox will agree to provide a unique identifier for each subscriber for whom Cox received an infringement notice from Plaintiffs during the relevant time period, along with associated information in the notice or notices, including the date and IP address. Cox does not keep records in the regular course of business that associate infringement notices with the subscriber's city and state, nor is it clear what relevance that information has to the issues in this case. If necessary, we can meet and confer on this issue.

With respect to Second RFPs No. 1[67],[1] as you know, an IP address is not a "subscriber," so your email does not "clarify" but substantively changes the request. Even so, Cox's other objections—which your letter does not address—would still apply in full to the changed request, which is unduly burdensome, seeks information that is irrelevant including because it is far outside the relevant time period, and is not proportional to the needs of this case. Plaintiffs' Interrogatory No. 3 is over-broad, unduly burdensome, and not proportional for the same reasons that the Court gave when it rejected Plaintiffs' motion to compel production of all

---

[1] Your email mis-numbers Plaintiffs Second RFP No. 1, which is Plaintiffs' 67th document request, as RFP 1[76].

Jeffrey Gould
Oppenheim & Zebrak LLP
January 31, 2019

copyright infringement notices from 2010 through 2014. This request seeks essentially the same information, also "for a five-year period from anybody about any subscriber," and "asks for way too much information for an extended period of time." Hearing Tr. (Motion to Compel) at 24. In addition, as we have explained, Cox has no way of knowing whether copyrights are "owned or controlled by a record company or music publisher." Cox was and remains willing to meet and confer and will consider a good faith proposal by Plaintiffs to reasonably narrow this request to seek information that is "directly relevant to the claims in this case," Hearing Tr. at 25.

With respect to RFP 57 and Interrogatory No. 10, we have discussed these requests in detail with our client and confirm that Cox does not maintain data in this manner, does not track revenues and profits on a per-subscriber basis, and does not maintain the information Plaintiffs seek in the ordinary course of its business. For at least these reasons, and as stated in Cox's objections, Interrogatory No. 10 seeks information and purports to require Cox to perform complex financial calculations that are properly the subject of expert testimony. As discussed below in regard to Plaintiffs' RFPs 54 and 55, Cox has agreed to confer with Plaintiffs regarding information that is sufficient to permit Plaintiffs' experts to perform these calculations.

With respect to RFPs Nos. 33, 34, and 35, since you do not identify any specific issues with these requests, we presume that these are also addressed by your PII proposal, discussed above. If any issues remain with respect to these requests, please identify them.

**3. Scope of Cox's Responses.**

With respect to RFP 10, 23, and 38, Cox has agreed to produce documents concerning alleged infringement of Plaintiffs' works in suit during the relevant time period (RFP 10); documents comprising Cox's communications with its customers regarding Plaintiffs' copyright infringement notices at issue, together with Cox's policies for forwarding notices during the period 2010-2014 (RFP 23); and documents concerning its investigations into Plaintiffs' infringement allegations during Plaintiffs' Claim Period. We also refer you to our January 11, 2019 letter explaining our objections and describing what Cox has agreed to produce. With respect to RFP 39, in addition to documents showing the number of subscribers Cox terminated in response to Plaintiffs' notices at issue, Cox will supplement its response in light of the Court's January 25, 2019 ruling, and will produce information regarding terminations in accordance with the Court's order. We note that, contrary to your email below, the parties have never "discussed" these requests. Rather, you listed them, by number, in a string listing dozens of other request numbers, and simply demanded that Cox withdraw its objections to all of the listed requests. Indeed, although we have repeatedly offered to discuss the particular requests you listed, you have declined to do so. As we explained previously, as with Plaintiffs' request for all copyright infringement notices from 2010 through 2014—which the Court held was overbroad, unduly burdensome and not proportional to the needs of the case—these requests seek essentially the same information, also "for a five-year period from anybody about any subscriber", and "ask[] for way too much information for an extended period of time." Hearing Tr. (Motion to Compel) at 24. Cox was and remains willing to meet and confer and will consider a good faith proposal by Plaintiffs to reasonably narrow these requests to seek information that is "directly relevant to the claims in this case," Hearing Tr. at 25.

Jeffrey Gould
Oppenheim & Zebrak LLP
January 31, 2019

With respect to RFP 47, you mischaracterize Cox's position: as we stated in our January 11 letter, Cox agreed that if Plaintiffs proposed a reasonable narrowing of this over-broad request for "all documents concerning the DMCA," Cox would work with Plaintiffs to arrive at a reasonable scope. Plaintiffs have never proposed any narrowing. Notwithstanding, in addition to producing copies of Cox's written DMCA policies from 2010-2014, Cox has agreed to produce documents sufficient to show all of Cox's policies (including DMCA policies) concerning copyright infringement that were in effect during Plaintiffs' Claim Period; as we have repeatedly made clear, Cox will search for and review documents from 2010 through 2014 to locate such documents. Cox also agreed to produce documents sufficient to show how Cox communicated its policies (including DMCA policies) concerning copyright infringement to subscribers during 2010-2014. Please clarify what else Plaintiffs are looking for.

Concerning RFP 48, Cox will produce responsive non-privileged documents, exclusive of copyright infringement notices from outside Plaintiffs' Claim Period, concerning Plaintiffs and copyright infringement.

With respect to RFP 54 and 55, we have discussed these requests in detail with our client, and Cox confirms that it does not maintain documents responsive to these requests in the ordinary course of business. Furthermore, Cox has already agreed to provide information about the pricing of each of the different levels of internet services it offered during the relevant time, as well as the number of Cox Internet subscribers, and the average length of time Cox retained subscribers. Cox has also produced documents reflecting Cox's calculations of revenues and costs for its Internet division during 2011-2014. This information is more than sufficient to show that Cox offered different levels of Internet service for different fees, which is the only theory of relevance your email articulates for any of these overbroad, unduly burdensome, and disproportionate requests. If you seek additional information, please clarify what it is you are seeking.

**4. Plaintiffs' Second Sets of Discovery Requests**

Plaintiffs' Second RFPs Nos. 3[69], 4[70], and 6[72] improperly seek, as documents, interrogatory responses from a different litigation, concerning different Plaintiffs, different works, and a different relevant time period. Plaintiffs refusal to simply propound interrogatories of their own (as well as their own document requests) is particularly puzzling in light of the Court's admonition that Plaintiffs must "plow [their] own road in this case." Notwithstanding, and without waiving its objections, Cox will agree to supplement its responses and will produce copies of Cox's responses to BMG Interrogatories Nos. 3, 4, and 7 in the *BMG* litigation. Cox will also produce copies of the documents referenced in those responses.

Cox stands on its objections to Plaintiffs' Second Interrogatories Nos. 1[13] and 4[16], since those requests are overbroad, unduly burdensome and not proportional to the needs of the case in seeking information "for a five-year period from anybody about any subscriber", and "ask[] for way too much information for an extended period of time." Hearing Tr. (Motion to Compel) at 24. Cox was and remains willing to meet and confer and will consider a good faith proposal by Plaintiffs to reasonably narrow these requests to seek information that is "directly relevant to the claims in this case," Hearing Tr. at 25. We also note that, far from addressing

3

Jeffrey Gould
Oppenheim & Zebrak LLP
January 31, 2019

Cox's vagueness objection to Second Rog No. 1[13], your January 9 letter simply attempted to redefine the term "copyright holder" to include *any* third party notice sender. That letter's conclusory statement that the information is relevant to "considerations for a jury while awarding damages" also fails to explain *how* the information is relevant—either with as it concerns actual copyright holders, or third-party notice senders.

Cox will agree to supplement its response to Plaintiffs' Second Interrogatory No. 3[15].

**5. Plaintiffs' Requests for Clarification**

As stated in Cox's objections and response to Plaintiffs' lengthy, vague and ambiguous, compound, and confusing RFP 16, Cox will produce documents sufficient to show or identify Cox's copyright infringement related policies in effect during Plaintiffs' Claim Period, and has identified current or former employees with responsibility for designing, developing, or implementing Cox's policies and protocols for addressing allegations of copyright infringement through Cox's network. To the extent particular documents in the categories you enumerate in your email are responsive, they will be produced as stated in Cox's response.

With respect to RFP 24, in addition to agreeing to produce responsive, non-privileged documents concerning Cox's policies that were in effect during Plaintiffs' Claim Period—for which Cox will search and review documents going back to 2008—Cox will search for and produce responsive, non-privileged documents concerning caps placed on the number of notices submitted by Plaintiffs, going back to 2008.

With respect to RFP 28, Cox's supplemental response seems clear, but we confirm that Cox agrees to search for and produce responsive, non-privileged documents, including but not limited to the categories you enumerate in your email.

With respect to RFP 46, Cox is not withholding otherwise responsive documents on bases other than privilege or work product.

Sincerely,

Jennifer Golinveaux
Winston & Strawn LL

4