UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| SONY MUSIC ENTERTAINMENT, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> COX COMMUNICATIONS, INC., *et al.*, <br><br> Defendants. | Case No. 1:18-cv-00950-LO-JFA |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL**

## TABLE OF CONTENTS

| | | | Page |
|---|---|---|---|
| I. | Revenue Information for Infringing Subscribers............................................. | | 1 |
| | a. | Plaintiffs' Requests and Cox's Response................................. | 2 |
| | b. | Revenue From Infringing Subscribers Is Highly Relevant............................ | 3 |
| | c. | Cox Should Not Be Allowed to Back Pedal on Its Response........................ | 3 |
| II. | Emails and Communications Concerning Cox's Responses To and Attitude Towards Infringement Notices.................................................................... | | 4 |
| | a. | Plaintiffs' Requests and Cox's Response................................. | 4 |
| | b. | The Court Overruled the Same Relevance Objections in the BMG Case........... | 5 |
| | c. | Cox Is Withholding Highly Relevant Documents..................................... | 6 |
| III. | Copyright Infringement Notices Involving the Same Cox Subscribers in Plaintiffs' Notices........................................................................................ | | 8 |

Plaintiffs submit this memorandum of law in support of their motion to compel discovery from Defendants Cox Communications, Inc. and CoxCom, LLC (collectively "Cox"). Plaintiffs request an order compelling Cox to produce: (1) for 2011 to the present, documents sufficient to identify, on a subscriber-by-subscriber basis, by quarter and year, revenue attributable to the specific Cox subscribers who were the subject of Plaintiffs' copyright infringement notices; (2) for 2010 through 2014, emails and communications concerning Cox's responses to, handling of, and attitude towards infringement notices; and (3) for 2011 through 2014, records regarding third-party copyright infringement notices involving the same Cox subscribers who were the subject of Plaintiffs' copyright infringement notices.

## ARGUMENT

The Court's intervention is needed to prevent Cox from distorting the merits of the case by withholding relevant discovery. Plaintiffs have patiently and persistently tried to obtain this discovery. The parties have discussed many of these issues dating back to Cox's objections to Plaintiffs' first discovery requests served in November 2018. Cox has either flatly refused or failed to respond with a clear and definitive statement of what it is willing to provide. Plaintiffs cannot let these issues remain unresolved, or the clock will run out on discovery and Plaintiffs' ability to prepare their case.

### I. Revenue Information for Infringing Subscribers

Cox should be ordered to produce financial information detailing the revenue it received, from 2011 to present, by quarter and year, from each subscriber who was the subject of an infringement notice from Plaintiffs. Cox's evolving objections are an insufficient basis for it to withhold the requested revenue information.

### a. Plaintiffs' Requests and Cox's Response

On November 19, 2018, Plaintiffs served the following discovery requests:

Request No. 57: Documents sufficient to show your total and average revenue and profit attributable to Subscribers about whom you received an Infringement Notice, including the per Subscriber revenue and profit by quarter and year, from January 1, 2010 to present.

Interrogatory No. 10: Identify the revenues and profits attributable to Subscribers about whom you received Infringement Notices, including the overall revenue and profit, and the per Subscriber revenue and profit by quarter and year.[1]

Cox responded to RFP 57 on December 4, 2018, agreeing to produce "Documents sufficient to show the total and average revenue and profit during Plaintiffs' Claim Period that was attributable to subscribers who were the subject of a notice of claimed infringement submitted on Plaintiffs' behalf for Plaintiffs' works in suit during Plaintiffs' Claim Period, to the extent Cox finds such documents within its possession, custody, or control after undertaking a reasonable and diligent search." (Ex. A.)[2] In response to Interrogatory No. 10, Cox referred to RFP 57, objected "to the extent" the interrogatory sought expert discovery prematurely or beyond the rules, and reserved the right to produce documents. (Ex. B.)

In the weeks that followed, Plaintiffs pressed Cox to explain what it would produce and when. On January 11, 2019, Plaintiffs inquired as follows:

> Are you searching for documents that already exist with the requested information compiled in the manner requested? Or are you trying to determine whether the financial information sought exists in Cox's financial records? We have no doubt the latter exists, and it must be produced. Given that the information is called for in both document requests and interrogatories, Cox may not withhold the information based on the contention that a ready-made document with the requested information does not presently exist. As Cox knows the subscribers who are the subject of Plaintiffs' notices, it can run a report to produce the associated financial information for their accounts.

---

[1] Though Plaintiffs' initial requests sought both revenue and profit, this motion seeks only revenue information.
[2] Exhibits cited herein refer to Exhibits to the Gould Declaration, filed in support of this motion.

2

(Ex. P.) More than three weeks later on January 31, 2019, Cox finally responded, claiming for the first time that it does not maintain or track revenue on a per-subscriber basis. (Ex. R.)

In a subsequent meet and confer on February 1, 2019, Plaintiffs made clear that if Cox does not track profits by subscriber, Plaintiffs agree to narrow the request to revenue information only. Gould Decl., ¶ 5. During that meet and confer, Cox appeared not to object on the basis of relevance any longer and articulated no meaningful burden. *Id.* Now, Cox's position appears to be that it does not maintain and cannot track revenue per subscriber. *Id.*

### b. Revenue From Infringing Subscribers Is Highly Relevant

Plaintiffs seek per-subscriber revenue information because it is relevant to a number of issues including, but not limited to, the financial benefits that Cox received from Cox subscribers identified in Plaintiffs' infringement notices. In addition to being relevant to the financial-benefit element of vicarious infringement, the information is relevant to a jury's assessment of statutory damages and willfulness. With this information, Plaintiffs can correlate Cox's knowledge of a subscriber's infringing activities with payments received by Cox from that subscriber. For example, if Plaintiffs sent Cox multiple infringement notices regarding a certain subscriber from January to June 2014, and the subscriber continued to pay for Cox's services through 2017, a jury should consider that information in assessing statutory damages. To the extent Cox back pedals and objects on relevance grounds, such objection should be overruled.

### c. Cox Should Not Be Allowed to Back Pedal on Its Response

Other than boilerplate objections, Cox's written objections do not articulate any burden in producing it. In its written discovery responses on December 4, 2018, Cox even agreed to produce the revenue information (as well as profit information), limited to Plaintiffs' claim period, "to the extent Cox finds such documents within its possession, custody, or control after undertaking a

reasonable and diligent search." (Ex. A.) Plaintiffs bring this motion because more than eight weeks after Cox expressly indicated its agreement to produce the records, and after many letters and attempted calls to discuss it, Cox now claims it does not maintain the information and cannot produce it. Plaintiffs find this simply implausible. A company of Cox's size, sophistication, and profits has records of what services it provided to subscribers and what it billed those subscribers. Indeed, Cox's counsel confirmed this. Gould Decl., ¶ 5. It must likewise have records reflecting payments received from subscribers. To minimize any potential burden, Plaintiffs are flexible as to the particular documents that Cox produces, as long as they contain the requested revenue information.

## II. Emails and Communications Concerning Cox's Responses To and Attitude Towards Infringement Notices

Cox should be ordered to produce emails and communications concerning its responses to, handling of, and attitude towards infringement notices from 2010 through 2014.

A number of specific discovery requests that target this information are outlined below. Cox has limited its response to only documents directly relating to Plaintiffs' infringement notices, Plaintiffs' works in suit, and Plaintiffs' claim period. Beyond boilerplate recitations, Cox does not object on the basis of burden. Rather, it simply attempt to limit its production to exclude key responsive documents.

### a. Plaintiffs' Requests and Cox's Responses

On November 19, 2018, Plaintiffs requested the following categories of documents concerning Cox's handling of and attitude towards handling infringement notices from 2010 through 2014:

> Request No. 10: All documents concerning alleged copyright infringement by your Subscribers or Users or through your internet service.

Request No. 23: All communications with your Subscribers or Users concerning copyright or alleged infringement, including but not limited to communications concerning Infringement Notices and documents sufficient to show the number, nature, date and content of such communications.

Request No. 26: All documents concerning analyzing, assessing, investigating or responding to an Infringement Notice, including but not limited to actions considered or taken in response to any Infringement Notice. To the extent such actions have changed over time, this Request calls for documents sufficient to show any such change and the time such change occurred.

Request No. 38: All documents concerning any investigation by Defendants into any allegation of copyright infringement by Subscribers or Users, including but not limited to documents concerning Defendants' identification of Subscribers or Users alleged to have infringed one or more copyrights, and efforts to determine if any Subscribers or Users infringed copyrights using Defendants' internet service.

Request No. 39: All documents concerning the suspension or termination of internet service to any Subscriber or User relating to copyright infringement or violation of any provision of any DMCA Policy, Acceptable Use Policy, Repeat Infringer Policy, or any other policy related to copyright infringement.

Cox objected to each of these requests and agreed to produce only documents relating to Plaintiffs' notices and works, during Plaintiffs' claim period. (Ex. C.) Plaintiffs have asked Cox in numerous letters and calls to articulate a basis for its overly-restricted response. Gould Decl., ¶ 6. Without explanation, Cox merely restated its view that documents outside of Plaintiffs' claim period or notices are not relevant, and cites the Court's denial of Plaintiffs' request for all infringement notices Cox received from any party. (Ex. R.) Plaintiffs also asked Cox to discuss reasonable search terms it would use to identify relevant documents, but Cox has refused to provide them. Gould Decl., ¶ 6.

### b. The Court Overruled the Same Relevance Objections in the *BMG* Case

In the *BMG* case, this Court rejected the precise limitations Cox has imposed here. *BMG v. Cox*, Case No. 1:14-cv-1611, ECF No. 1018 at 2 (attached hereto as Ex. F). There, the Court denied Cox's motion to exclude as irrelevant Cox's emails from prior to the claim period, concerning works not in suit, regarding notices from other copyright holders. Critically, the Court

held that emails evidencing "Cox's overall system for addressing infringement (including evidence showing that Cox knew of a high probability that users identified in infringement notices were in fact infringers and evidence showing that Cox did not want to see infringement notices because it did not want to take action against subscribers is relevant to whether Cox consciously avoided learning about specific instances of infringement." *Id.* The Court found such emails to be "highly probative on the issue of willfulness and willful blindness," even though they pre-date the claim period and do not involve the plaintiffs' notices or works. *Id.* at 1.

The Court explained that "Cox should not be able to characterize its response to infringement notices as made in good faith while preventing the jury from seeing evidence to the contrary." *Id.* It further explained that "Cox's internal policies and procedures related to infringement were of course established prior to [the claim period], and it is those policies and procedures that Cox applied when it received notices of infringement for BMG's work at issue. The emails are therefore relevant to the question of whether Cox blinded itself to infringement of specific BMG works." *Id.* at 2-3. In this case as well, Cox should not be able to hold back relevant evidence that may show extensive evidence of its practice of ignoring infringement.

### c. Cox Is Withholding Highly Relevant Documents

The limitations Cox has imposed here would omit from production critical documents that Plaintiffs are aware of only from the BMG case. While Plaintiffs now have access to the BMG trial exhibits, they have no idea what else Cox is hiding about its handling of and attitude towards infringement notices. A few powerful examples of the types of responsive documents that Cox seeks to improperly exclude from its production are described below.[3]

---

[3] Once again, Plaintiffs dispute the confidentiality designations of the exhibits cited herein, which were used publicly in the BMG trial and admitted into evidence in that public proceeding. As Plaintiffs are required to do, however, they move to file them under seal because Cox continues to assert confidentiality over them. Each of these exhibits was

First, there are emails from Cox's employees, Jason Zabek and Joseph Sikes, explaining Cox's decision to limit copyright holders to 200 notices per day and blacklist others. Messrs. Zabek and Sikes explain their attitude as ███████████████ (Ex. G.) These emails do not specifically mention Plaintiffs' works or notices and thus would not be produced by Cox under its restrictive approach. But such documents are highly relevant, direct evidence of Cox's intent, willful blindness to its subscribers' infringement, and disregard for copyright.

Second, the BMG trial exhibits also include emails that show Cox not terminating repeat infringers in order to preserve the revenue associated with their accounts. In August 2010, Mr. Zabek told the abuse team that repeat infringers would receive a ███████████████ ███████████████ ███████████████ (Ex. O.) He further instructed his team in April 2010 ███████████████ (Ex. J), in January 2010 to ███████████████ ███████████████ (Ex. K), and in March 2011 ███████████████ (Ex. N.) Each of these critical emails was outside BMG's claim period and none concerned BMG's notices or works, yet the Court admitted them over Cox's relevance objections. Each would be withheld from production in this case under Cox's narrow responses (but for the Court's order to produce the BMG trial exhibits).

---

offered into evidence for the jury's consideration and became "simply by virtue of that event, subject to the public right of access guaranteed by the First Amendment." *Level 3 Commc'ns, LLC v. Limelight Networks, Inc.*, 611 F. Supp. 2d 572, 589 (E.D. Va. 2009). Moreover, Cox waived objections to the right of public access when it allowed the exhibits to be admitted without attempting to limit their disclosure. *See Limelight Networks*, 611 F. Supp. 2d at 583 (An entity seeking to seal a "document *after* its use or admission can be held to have waived its right to assert a continuing interest in the document in opposition to the presumptive right of access.") (emphasis original). Moreover, much of the material redacted from this memorandum was also included in a publicly-filed brief in the BMG case. *See BMG* ECF No. 974.

Third, Joseph Sikes, a former security administrator, likewise explained that ▮



(Exs. H, L) ▮

see also PX-1453 ▮ (Ex. M). In PX-1358, Mr. Sikes explained that abuse decisions are made based on ▮ (Ex. I.) Although these emails are dated 2014 and thus within Plaintiffs' claim period, none of them mention Plaintiffs' works or Plaintiffs' notices and so would have been withheld by Cox. Plaintiffs have them only because of the Court's order to produce the BMG trial exhibits.

This Court admitted all of these emails over Cox's objection, though none concerned BMG's notices or works and many predated the claim period. The same rationale applies here and supports the discovery. Cox should be ordered to produce emails and communications concerning its response to, handling of, and attitude towards infringement notices, for the period 2010 through 2014. As it does so, Cox should also be transparent with Plaintiffs about the custodians and search terms it uses and any subsequent decisions it makes as to responsiveness.

### III. Copyright Infringement Notices Involving the Same Cox Subscribers in Plaintiffs' Notices

Cox should be ordered to produce documents sufficient to show all infringement notices (from any rights holder) that identify or reference a Cox subscriber listed in infringement notices

from Plaintiffs, for the years 2011 through 2014. If Cox was on notice through other sources that the very same subscribers were pirating copyrighted works, Cox had full knowledge that subscribers' infringing activities. A jury should know if Cox knew that specific subscribers were infringing before Plaintiffs' claim period (or apart from Plaintiffs' notices), but continued to provide the service used to infringe Plaintiffs' rights. A jury is entitled to consider this information in connection with assessing liability, awarding statutory damages, and deciding whether Cox infringed willfully.

The Court previously determined that a request to compel Cox to produce *all* infringement notices was too broad. (Ex. E at 23:21–24:5.) In that motion hearing, however, the Court also indicated that it might nonetheless require Cox to produce third-party notices involving the same subscribers identified in Plaintiffs' notices. (*Id.* at 24:6–25:1.) Specifically, the Court indicated it might reach a different result if ruling on "a motion relating to those subscribers that [Plaintiffs] have identified as to any other notices received from others[.]" As the Court explained:

> Obviously, this is something that I've, you know, indicated that I would consider requiring them to possibly produce notices of infringement from other parties that are directly related to the claims in this case, but not every notice of infringement for a five-year period of time.

(*Id.* at 24:6–25:1.)

Plaintiffs' original document requests, served on November 19, 2018 sought "All Infringement Notices received by Defendants from any rights holder." (Ex. A, RFP 11.) The information sought in the instant motion is a subset of that broader request. Nonetheless, out of an abundance of caution, Plaintiffs immediately served Cox with a narrower request to comport with the Court's guidance concerning third-party notices. In recognition of Defendants' earlier objection that the initial request did not describe the specific categories of information sought,

9

Plaintiffs provided a detailed list of requested data. Specifically, Plaintiffs' Second Set of Requests for Production sought the following information for the period 2010 to 2014:

> Documents sufficient to show all Infringement Notices (from any rights holder) that identify or reference an IP address listed in any Infringement Notice from or on behalf of Plaintiffs. Such documents should include at least the following infringement details:
>
> - Date infringement detected;
> - Date notice sent;
> - Details of infringing work (i.e. title, artist, author, etc);
> - Filename of infringing work;
> - Filesize of infringing work;
> - Hash value of infringing work;
> - IP address;
> - IP port;
> - Network used; and
> - Protocol used.

(Ex. D, RFP No. 1.) Cox does not dispute that it has this data.

In its written responses, Cox objected on relevance grounds because the request seeks information about works and parties not in the case and outside the claim period. (Ex. D.) In addition to meeting and conferring on this issue in response to Plaintiffs' written discovery from November, the parties exchanged letters on this request on January 9, 11, 28, and 31, and discussed it further by telephone on February 1, 2019, to no avail. (Gould Decl., ¶ 7.)

Cox does not seriously dispute the relevance of the information sought, nor could it given its clear relevance to both liability and damages. Where a Cox subscriber that infringed Plaintiffs' copyrights also infringed a third party's copyrights, the third-party's infringement notice speaks to Cox's knowledge of that subscriber's infringement. Cox's decision to continue providing service to that subscriber, rather than terminating his or her account, is something the jury should also consider when deciding damages and willfulness. Cox completely ignored the Court's guidance and continued to stonewall on an issue that the parties have been discussing since November.

Following yet even more meet and confers, however, Cox appears not to stand on its relevance objection any longer. Gould Decl., ¶ 7.

Cox's current position is that the request poses too significant of a burden. However, mindful of Cox's prior concern that pulling actual notices would be unduly burdensome, Plaintiffs already tailored the request further by seeking merely "documents sufficient to show" the above information. Plaintiffs took that approach so that Cox could respond by producing a spreadsheet with data from its Copyright Abuse Tracking System instead of collecting, reviewing and producing thousands (or more) infringement notices. Cox must be able to lookup a subscriber in its Copyright Abuse Tracking System and pull records identifying the number of infringement notices it received concerning that subscriber and the dates. Again, Plaintiffs are flexible as to the particular documents that Cox produces, along with the format, as long as they contain the requested information. Though Cox recently proposed the notion of providing a sample of the requested information, it could not articulate what such sample would look like, when it could provide an example, or for how many subscribers it would provide the information. Gould Decl., ¶ 7. Plaintiffs cannot let these issues remain unresolved, otherwise the clock will run out on discovery and Plaintiffs' ability to prepare their case.

below

| | |
|---|---|
| Dated February 1, 2019 | Respectfully Submitted, |
| | /s/ Scott A. Zebrak |
| | Scott A. Zebrak (38729) |
| | Matthew J. Oppenheim (*pro hac vice*) |
| | Jeffrey M. Gould (*pro hac vice*) |
| | OPPENHEIM + ZEBRAK, LLP |
| | 4530 Wisconsin Avenue, NW, 5th Floor |
| | Washington, DC 20015 |
| | Tel: 202-480-2999 |
| | scott@oandzlaw.com |
| | matt@oandzlaw.com |
| | jeff@oandzlaw.com |
| | |
| | *Attorneys for Plaintiffs* |