UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

SONY MUSIC ENTERTAINMENT, *et al.*,

    Plaintiffs,

v.

COX COMMUNICATIONS, INC., *et al.*,

    Defendants.

Case No. 1:18-cv-00950-LO-JFA

COX'S OPPOSITION TO PLAINTIFFS' FEBRUARY 1, 2019 MOTION TO COMPEL (ECF NO. 94)

**COX'S OPPOSITION TO PLAINTIFFS'**
**FEBRUARY 1, 2019 MOTION TO COMPEL**

## I. INTRODUCTION

At issue in this case are 3,526 musical compositions and 7,203 sound recordings, which the 58 Plaintiffs claim were infringed by certain Cox Internet subscribers during the 22 months between February, 2013 and November, 2014. Cox's records show that it received approximately 164,000 notices from Plaintiffs' agent during that time, and that the notices referenced 57,679 separate Cox accounts (the "Accused Subscribers"). Declaration of Brent Beck (Beck Decl.) ¶ 3. Notwithstanding the already broad scope of this case, and unheeding of this Court's denial of Plaintiffs' previous motion to compel similarly broad production of unrelated third-party notices and information outside Plaintiffs' Claim Period, Plaintiffs continue to seek overbroad and extremely burdensome discovery, including *eight years* worth of detailed financial information about each and every Accused Subscriber; five years worth of broad categories of documents concerning parties and works unrelated to this case; and four years worth of copyright infringement notices sent by third parties for unrelated works.

First, Plaintiffs' demand for detailed, per-subscriber, per-quarter revenue data from each of the 57,679 Accused Subscribers, from 2011 to the present day, is massively over-broad, and seeks information that Cox does not track or maintain on a per-subscriber basis. As discussed below, while Cox maintains a database that maintains historical *billing* information, that information is not readily searchable, and would be extremely burdensome to extract and produce. Moreover, the information Plaintiffs seek is of marginal relevance at best.

Second, Plaintiffs also seek to compel Cox to produce "all" documents relating to Cox's handling of third-party infringement complaints over a period of five years, including more than three years before Plaintiffs' Claim Period. The Court has already rejected Plaintiffs' demand for "all" infringement notices from the same period, and Plaintiffs' attempt to collect essentially the same information, albeit through a series of separate requests, should be rejected for the same reasons. To the limited extent such documents may be relevant here, they are also the subject of one or more different discovery requests, for which Cox has already agreed to provide information and produce documents, as detailed below.

Third, and finally, Plaintiffs' demand for all third-party copyright infringement complaints that Cox received, from 2011 through 2014, concerning any of the 57,679 accounts related to Plaintiffs' Notices, seeks documents that are unrelated to Plaintiffs or their works at issue, lie far outside Plaintiffs' Claim Period, and would be extremely burdensome to produce.

For the reasons set forth below, the Court should deny Plaintiffs' motion in its entirety.

## II.     LEGAL STANDARD

Information that a party seeks in discovery must be both relevant and "proportional to the needs of the case, considering the importance of the issues at stake … the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery

outweighs its likely benefit." FRCP 26(b). A party's objection on the grounds of undue burden must be supported by a factual basis. *High Point SARL v. Sprint Nextel Corp.*, 2011 WL 4036424, at *15 (D. Kan. 2011).

### III. ARGUMENT

    **A. Plaintiffs' request for detailed, per-subscriber revenue information seeks irrelevant information not in Cox's possession, custody, or control, and producing similar information would be extremely burdensome.**

Plaintiffs' massively overbroad RFP No. 57, and companion Interrogatory No. 10, seek subscriber-by-subscriber revenue data for each of the 57,679 individual accounts for which Plaintiffs sent notices of claimed infringement during the 22-month claim period. Plaintiffs seek this information for 2011 through the present a period of more than *eight years*: more than two years before Plaintiffs' Claim Period, and more than four years afterwards. Not only is this information of marginal (if any) relevance, but as Plaintiffs are aware, Cox does not track or maintain, and cannot produce, the revenue information Plaintiffs seek. ECF 95-18 (Plaintiffs' Ex. R, January 31, 2019 letter from Cox's counsel to Plaintiffs' counsel) (confirming that "Cox does not maintain data in this manner, does not track revenues and profits on a per-subscriber basis, and does not maintain the information Plaintiffs seek in the ordinary course of its business," and offering to confer with Plaintiffs regarding information that is sufficient to permit Plaintiffs' experts to perform revenue and profit calculations.). While Cox maintains certain historical billing information for its subscribers, it is not maintained in the form Plaintiffs seek, and would be extremely burdensome to produce. This information also lacks relevance, particularly in light of Plaintiffs' election of statutory damages.

### 1. Cox does not track per-subscriber revenue, and it would be extremely burdensome for Cox to produce existing subscriber billing information

Cox does not track revenue by subscriber, and does not keep records that would permit it to retrieve or produce revenue information on a per-subscriber basis. Declaration of Sanford Mencher (Mencher Decl.) ¶¶ 3-5. While Cox does store and maintain certain historical billing records in its ICOMS billing system, because of the way ICOMS stores and retrieves data, it would be extremely burdensome to locate, extract, and produce per-subscriber billing information for each of the approximately 58,000 Accused Subscribers during Plaintiffs' Claim Period. *Id.* ¶ 6; Declaration of Paul Jarchow (Jarchow Decl.) ¶ 2.

While subscriber billing information can be retrieved from ICOMS on a case-by-case basis, locating and retrieving this information is largely a manual process. *Id.* ¶ 3. To build a report, a Cox representative would have to go into the Ledger and manually build a report per subscriber, per month; each such report would take an estimated 30-45 minutes to build and print. *Id.* To manually generate 96 monthly reports per subscriber, for each of the roughly 58,000 Accused Subscribers, would thus take an estimated 2.78 million minutes. *Id.* ¶ 5. Cox could hire a vendor to develop a script that would gather the appropriate information from the ICOMS system for the Accused Subscribers; however, Cox estimates that doing so would cost an estimated $15,000 and take approximately 3 to 4 weeks to complete. *Id.* ¶ 6. In light of the marginal relevance of the requested information, the Court should deny Plaintiffs motion.[1] At a minimum, the Court should order cost-shifting if it orders production of this data, or a substantial part of it. Fed. R. Civ. P. 26(c)(1)(B) ("The court may, for good cause, issue an order to protect a party or person from …

---

[1] As noted in the accompanying Jarchow Declaration, another possibility would be to provide exemplar information on billings for a smaller group of customers, say five per tier of service, for Plaintiffs to get a sense of the billing at a product tier level manually. Jarchow Decl. ¶ 8.

undue burden or expense, including … specifying … the allocation of expenses[.]"); *see, e.g., Rowe Entm't, Inc. v. William Morris Agency, Inc.*, 205 F.R.D. 421, 429, 431 (S.D.N.Y. 2002) (holding that "a party that happens to retain vestigial data for no current business purposes … should not be put to the expense of producing it," and discussing factors in ordering cost-shifting).

### 2. Contrary to Plaintiffs' representations, Cox did not previously agree to produce the information Plaintiffs now demand

Contrary to what Plaintiffs now represent, Cox did not previously agree to produce detailed, per-subscriber financial information, over a period of eight years, for each of the Accused Subscribers. Rather, Cox agreed to produce documents—and only if it determined that such documents existed in Cox's possession, custody, or control—sufficient to show Cox's total and average revenues "attributable to subscribers who were the subject of a notice of claimed infringement submitted on Plaintiffs' behalf for Plaintiffs' works in suit during Plaintiffs' Claim Period." ECF 95-3 (Cox's First Supplemental Responses to Plaintiffs' First Set of RFPs) at 61. In other words, Cox agreed to produce available documents, if any, sufficient to show the aggregate revenue from all accused subscribers during Plaintiffs' 22-month claim period. Although Cox has determined that it has no documents in its possession, custody, or control that show this information, Cox has agreed to produce, or has already produced, a substantial amount of related financial information including a spreadsheet reflecting Cox's calculations of revenues and costs for its residential telephony, television, and internet divisions for 2011-2014; the number of Accused Subscribers; the average tenure of a Cox Internet subscriber during the relevant time; Cox's churn rate for its data service; and information concerning the fees Cox charged for particular service tiers.

### 3. The information Plaintiffs seek is of marginal relevance at best

While Plaintiffs claim that eight years worth of detailed financial information is relevant to "a number of issues" that turn on "the financial benefit Cox received from Cox subscribers identified in Plaintiffs' infringement notices," Mot. 3, they identify only three: the financial-benefit prong of vicarious liability; the calculation of statutory damages; and willfulness. As discussed below, none of these theories withstands scrutiny. In light of the extreme burden of producing information about Cox's billing to its customers, and because the relevance of such information is marginal at best, the Court should deny Plaintiffs' motion.

First, Plaintiffs cite no authority—and Cox is unaware of any—for the proposition that the *amount* of a defendant's revenues (or its billings) has any relevance to the direct financial benefit prong of vicarious liability. Indeed, this Court has held the opposite: that vicarious liability *does not* depend on "how substantial the benefit is in proportion to a defendant's overall profits." *BMG Rights Mgmt. (US) LLC v. Cox Comm's, Inc.*, 149 F. Supp. 3d 634, 675-76 (E.D. Va. Dec. 1, 2015) (quoting *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004)); *id.* at 676 ("Cox's receipt of monthly fees is only evidence of direct financial benefit if some portion of those fees is generated from subscribers that are drawn to Cox's service at least in part because of the infringing activity alleged in this case."). Whether the availability of infringing copies of Plaintiffs' works acts as a "draw" to Cox's subscribers has no relevance to Cox's revenues from alleged infringers. Nor is detailed information about a defendant's revenues or billings from particular subscribers relevant to willfulness, since willfulness depends on a defendant's *knowledge* that its conduct constitutes copyright infringement, not on its revenues or billings. *Lyons P'ship v. Morris Costumes, Inc.*, 243 F.3d 789, 799 (4th Cir. 2001) ("infringement is willful if the defendant has knowledge, either actual or constructive, that its actions constitute an infringement, or recklessly disregards a copyright holder's rights") (citations and internal quotation marks omitted); *BMG Rights Mgmt.*

*(US) LLC v. Cox Comm's, Inc.*, 881 F. 3d 293, 312-13 (4th Cir. 2018) (same, citing *Lyons P'ship*). Finally, Plaintiffs' theory that this information is relevant to the jury's assessment of damages is at best attenuated, given the Plaintiffs have elected statutory damages, not actual damages or Cox's profits. *See*, e.g., 17 U.S.C § 504 (b), (c) (defendant's gross revenues relevant when seeking "actual damages and profits"). And to the extent financial information is relevant at all, Plaintiffs fail to explain why they require the sort of extensive, detailed information they demand here, and fail to explain the relevance of this information from the eight-year period they have selected.

The detailed, subscriber-by-subscriber information Plaintiffs seek is overbroad, and would be extremely burdensome to produce. Plaintiffs fail to explain its relevance, and fail to explain why it is necessary, in light of the higher-level financial information that Cox has already produced or agreed to produce. Because of the extreme burden, and in light of the marginal or non-existent relevance, the Court should deny Plaintiffs' motion to compel.

### B. Documents concerning Cox's handling of third-party infringement complaints

Plaintiffs' demands for "all" documents, concerning various aspects of unrelated and irrelevant third-party infringement allegations for the entire five-year period 2010-2014, are overbroad and seek irrelevant information. The documents Plaintiffs seek in the five requests at issue here concern parties, notices, and works that are not in this case. To the limited extent such documents may be relevant here, they are also the subject of one or more different discovery requests, for which Cox has already agreed to provide information and produce documents. This includes documents concerning Cox's policies related to copyright infringement that were in effect during Plaintiffs' Claim Period; documents concerning Plaintiffs and copyright infringement going back to 2010; information concerning limitations Cox imposed on the number of notices it would

accept from particular senders; and documents concerning limitations Cox imposed on the number of notices submitted by Plaintiffs' agent going back to 2008.

### 1. Plaintiffs requests are overbroad, and seek irrelevant information concerning third parties and works not at issue

The Court has already held that Plaintiffs' discovery demand for all copyright infringement notices that Cox received for the five-year period from 2010-2014 was "overbroad … unduly burdensome… [and] not proportional to the needs of the case as written." ECF 68 at 24. Plaintiffs' requests at issue here cover the *same* five-year period, and similarly seek "all" documents concerning *all* copyright infringement allegations from *any* source, concerning *any* work. Both individually and in the aggregate, Plaintiffs' document requests nos. 10, 23, 26, 38, and 39 are similarly overbroad and not proportional, and the Court should reject them for the same reasons. *Id.* (holding that Plaintiffs' discovery demand for "every notice of infringement for a five-year period from anybody about any subscriber… ask[ed] for way too much information for an extended period of time.")

### 2. Cox has already agreed to produce documents concerning its policies, including informal policies, relating to copyright infringement

Strikingly, although Plaintiffs attempt to frame these requests as seeking documents relating to Cox's policies and practices, Plaintiffs ignore that Cox has *agreed* to produce documents showing Cox's policies relating to copyright infringement that were in effect during Plaintiffs' Claim Period. Plaintiffs' RFP No. 16 seeks:

> All documents concerning any copyright or infringement policy, including but not limited to any draft or final versions of such policies; the effects of such policies; documents sufficient to identify the employees or agents with responsibility for developing, conceiving, drafting and/or implementing such policies; documents sufficient to show when you first adopted such policies and the date of any changes to such policies; and documents sufficient to show how and when such policies were communicated to third parties including but not limited to

> Subscribers or Users. This request includes but is not limited to any DMCA Policy, Repeat Infringer Policy, and/or Acceptable Use Policy.

ECF No. 95-3 at 17-18. In response to this request, Cox has agreed to produce document sufficient to show its policies that were in effect during Plaintiffs' Claim Period, *including* Cox's informal policies. *Id.* at 18. And, as Cox has repeatedly explained to Plaintiffs, Cox's search for, and review and production of, potentially responsive documents, is not limited to documents only from Plaintiffs' Claim Period, but will include the 2010-2014 period covered by Plaintiffs' request. ECF No. 95-18 at 4 ("as we have repeatedly made clear, Cox will search for and review documents from 2010 through 2014 to locate such documents."). Moreover, Cox has also agreed to produce:

- written policies, going back to 2010, concerning Cox's "walled garden" (ECF No. 95-3 at 12) and DMCA policies (*id.* at 52);

- documents concerning Plaintiffs and copyright infringement, going back to 2010 (ECF 95-18 at 4);

- documents sufficient to show Cox's policies that were in effect during Plaintiffs' Claim Period regarding the number of notices it would accept from particular senders (ECF 95-3 at 26-27, ECF 95-18 at 5); and

- documents concerning such numerical limits on the RIAA, Plaintiffs' agents, back to 2008 (*id.*).

As indicated in Cox's written responses, its review and production of documents concerning its policies will include not just its written policies, but documents sufficient to show how its policies were actually implemented. ECF No. 95-3 at 18.

### 3. Plaintiffs' reliance on a pre-trial ruling from the BMG litigation is misplaced

Plaintiffs argue that a ruling on a pre-trial motion *in limine* in the *BMG* litigation is controlling here. Mot. 5 (citing BMG ECF No.1018). It is not. Plaintiffs are simply incorrect that the *BMG* motion *in limine* involved "the precise limitations Cox has imposed here." As this Court recently emphasized, "This case is different … this is not a case in which you had the settlement demands that were put in the [Rightscorp] notice[s]," nor is this a case where Cox blocked notices at issue; "[t]he plaintiffs are different and the copyrighted works are different." Dec. 21, 2018 Hearing Tr. at 4. The BMG case involved conduct that occurred years before the time period at issue in this case. *See BMG* ECF No. 16 (First Amd. Compl.) at ¶ 23 (discussing April, 2011 telephone meeting between Rightscorp and Cox), ¶ 21 (alleging that Rightscorp had sent copyright infringement complaints to Cox "since at least 2012"). Moreover, as the Court has recognized, Cox's practices for handling copyright infringement complaints were substantially different after the fall of 2012. *See, e.g.*, BMG ECF No. 703 at *31 ("the Court divides Cox's practices into two time periods: before the fall of 2012 and after."). And the *BMG* motion *in limine* was decided in a detailed factual context that included, among other things, Cox's decision in early 2011 to blacklist or block improper notices it received from third-party Rightscorp. BMG ECF Nos. 703, 1018. The factual background here is very different, where none of those issues are present. Plaintiffs' argument that all of the documents it seeks here are *per se* relevant is thus unsupported by the facts here, or this Court's previous ruling on very different facts in the *BMG* case.

### C. Plaintiffs' demand for third-party infringement complaints seeks irrelevant information, and is over-broad and unduly burdensome

Plaintiffs also demand copies of all copyright infringement complaints, from 2011-2014, that were directed toward any Accused Subscriber, regardless of the notice sender, copyright

owner, or work alleged. Plaintiffs claim that this information is relevant to Cox's knowledge of infringement, and state, without further argument, that a jury is "entitled" to consider these documents "in connection with assessing liability, awarding statutory damages, and deciding whether Cox infringed willfully." Mot. 9. But none of these theories of relevance withstands scrutiny: information about third-party notices from long before Plaintiffs' Claim Period lacks relevance to any issues in *this* case, and have no bearing on whether Cox knew of infringement of Plaintiffs' works, as required to show willfulness. And it is manifestly improper to attempt to hold Cox liable for purported harm to third parties, as Plaintiffs apparently intend. Moreover, it would be extremely burdensome to produce all of these complaints for the approximately 58,000 Accused Subscribers who were the subject of Plaintiffs' approximately 164,000 notices between February, 2013 and November, 2014. The Court should deny Plaintiffs' motion.

### 1.   Third party notices, concerning works not at issue here, lack relevance to Cox's liability for infringement of Plaintiffs' works

Plaintiffs argue that copies of third-party notices directed to the Accused Subscribers are relevant to Cox's liability for infringement, because such notices placed Cox "on notice" of other alleged infringements and show that "Cox had full knowledge that [sic] subscribers' infringing activities." Mot. 9. But the legal standard for contributory infringement requires evidence that Cox had actual knowledge of *specific* infringements *of Plaintiffs' works* at issue—not merely knowledge of general "infringing activities."[2] 881 F.3d at 310. Plaintiffs do not argue—nor could they—that third party notices could have put Cox on notice of infringements of Plaintiffs' works.

---

[2] Plaintiffs do not argue that hypothetical third party notices would provide evidence of the "material contribution" prong of contributory infringement. *See* Mot. Nor could they plausibly do so, since a service provider's receipt and processing of copyright infringement complaints does not constitute a material contribution to infringement.

And to the extent Plaintiffs may argue that third party notices are relevant to liability because they gave Cox constructive knowledge of infringement occurring, the Fourth Circuit has specifically rejected this theory that of liability. *Id.* at 311 ("such generalized knowledge—that infringement was occurring somewhere on [Cox's] network—is exactly what falls short under *Sony*," internal quotation marks and citation omitted). Instead, the standard for contributory infringement requires a showing that the defendant "knew of specific instances of infringement" of Plaintiffs' copyrights, or was willfully blind "to such instances." *Id.* Because Plaintiffs do not (and could not) argue that third-party complaints gave Cox the required actual knowledge of infringement of Plaintiffs' works, the third-party notices Plaintiffs seek—sent on behalf of third parties, for works not at issue in this case, many of them outside Plaintiffs' claim period—are irrelevant to Cox's liability.

### 2. The third party notices are improper as damages evidence, since Plaintiffs may not attempt to hold Cox liable for harm to others

Plaintiffs also argue that the jury is "entitled" to consider evidence of third-party notices "in connection with … awarding statutory damages…." Mot. 11. But even if these notices were proof of actual infringement of the third-party works—which they are not—they would entirely lack relevance to *Plaintiffs'* damages. Plaintiffs are not, of course, entitled to compensation for any infringement of third-party works, and the Supreme Court has flatly held that the Constitution forbids the "use [of] a punitive damages award to punish a defendant for injury that it inflicts upon nonparties or … strangers to the litigation." *Philip Morris USA v. Williams*, 549 U.S. 346, 353–55 (2007) ("we can find no authority supporting the use of punitive damages awards for the purpose of punishing a defendant for harming others."). The Supreme Court's discussion of the risks, if such evidence were to be permitted, is instructive here:

> [T]o permit punishment for injuring a nonparty victim would add a near standardless dimension to the punitive damages equation. How many such victims are there? How seriously were they injured?

12

> Under what circumstances did injury occur? The trial will not likely answer such questions as to nonparty victims. The jury will be left to speculate. And the fundamental due process concerns to which our punitive damages cases refer—risks of arbitrariness, uncertainty, and lack of notice—will be magnified.

*Id.* Further, in light of the risk that a jury might improperly "use a punitive damages verdict to punish a defendant directly on account of harms it is alleged to have visited on nonparties," the Court held it "particularly important … [to] avoid procedure that unnecessarily deprives juries of proper legal guidance… [and] provide assurance that juries are not asking the wrong question, *i.e.*, seeking, not simply to determine reprehensibility, but also to punish for harm caused strangers." *Id.* Thus, not only are third-party notices flatly improper as damages evidence, but the Court's guidance militates against their use for other purposes as well, particularly in light of their marginal relevance.

### 3. The third party notices lack relevance to willfulness

Nor are the third-party notices relevant to show willfulness, as Plaintiffs mistakenly urge. Mot. 11. Under governing Fourth Circuit law, willful infringement requires a showing that Cox had knowledge that its actions infringed Plaintiffs' works, or was willfully blind to such knowledge; or, alternatively, that Cox acted with reckless disregard for Plaintiffs' copyrights. 881 F.3d at 312 n.7, 312-13; *Lyons P'ship*, 243 F.3d at 799. The third-party notices Plaintiffs seek do not concern Plaintiffs' works, and cannot show any relevant knowledge that Plaintiffs works were being infringed.

### 4. Producing all third-party copyright infringement notices directed to the 58,000 Accused Subscribers will be extremely burdensome

Producing all third-party copyright infringement notices that were directed to any of the 58,000 Accused Subscribers would be extremely burdensome. As the accompanying declaration

of Cox engineer Brent Beck explains in detail, Cox receives numerous different types of complaints concerning a wide variety of issues, from spam, to security issues, to criminal activity, to copyright infringement. Beck Decl. ¶ 4. Cox's CATS system processes incoming complaints by associating them with "tickets." *Id.* ¶¶ 6-7. Depending on the circumstances, CATS will either create a new ticket for a complaint, or it may associate a new complaint with an already-existing ticket. *Id.* ¶¶ 7-8. Tickets may thus contain several different types of complaints. *Id.* ¶¶ 8-9.

Each ticket is assigned an "abuse type," which is determined based on the complaint that originated the ticket. Associating later complaints to the ticket does not change the ticket's abuse type classification. *Id.* Thus, a ticket with a copyright-related abuse type may also include some number of other complaints that are unrelated to copyright. For the same reasons, tickets with non-copyright-related abuse types may contain one or more copyright complaints. *Id.* ¶ 9.

CATS can retrieve the set of all tickets that relate to a given subscriber, over a given time period. *Id.* ¶ 10. However, there is no practical way to use CATS to retrieve all, and only, the set of *copyright infringement complaints* absent extremely burdensome manual review. *Id.* ¶¶ 11-14. One the one hand, retrieving only tickets whose abuse type relates to copyright infringement will also retrieve all of the complaints associated with the ticket, including non-copyright complaints. On the other hand, by not retrieving tickets with other abuse types, any copyright infringement complaints associated with *those* tickets will be missed. *Id.* ¶ 11. In other words, to be certain of retrieving all copyright infringement complaints for a given subscriber, CATS must retrieve all of the tickets associated with the subscriber, which will retrieve all complaints associated with those tickets. *Id.* To retrieve only the copyright infringement complaints, it would be necessary to extract the complaints from the tickets, and review the complaints. *Id.* ¶ 12. While many of the copyright infringement complaints would likely be in a standard format and could be located using keyword

14

searches or similar techniques, this method might miss an indeterminate number of copyright infringement complaints that are not in a standardized format. *Id.* And because complaints are stored in the original encoding in which they were received—which may not be human-readable, and may not be keyword-searchable—searching and reviewing would require first "decoding" such emails. *Id.* If Cox were to simply produce all the complaints for a given subscriber, it would risk potentially producing sensitive or personally identifiable information about Cox subscribers. *Id.* ¶¶ 13-14. Because Cox receives complaints for a wide variety of issues, it is possible that a complaint could include, for example, a subscriber's name, email address, or even password. *Id.* ¶ 13. In order to safeguard its subscribers' personally identifiable and private information, Cox would have to review these documents, and remove or redact the private information they contain, before producing it. *Id.* ¶ 14.

### 5. The third party notices will create a time-wasting series of mini-trials concerning their relevance and accuracy

Moreover, just as with Plaintiffs' previous demand for "all notices" Cox received from 2010-2014—which the Court found was overbroad and not proportional—so too here, introducing irrelevant third-party notices into the case would be highly likely to create a series of mini-trials that will waste the Court's and the jury's time and money, since assessing the relevance and accuracy of third party notices and the appropriateness of Cox's responses thereto would require evidence concerning the reliability of the various technologies behind all of the various notices and senders, as well as potentially seeking discovery from third party notice senders, copyright owners, and the Internet users who were the subject of notices.

## IV. CONCLUSION

Plaintiffs' discovery requests seek overbroad discovery, concerning topics that are of marginal relevance (at best) to the issues in this case, and extending far outside any relevant time

period. Particularly in light of the extreme burden of providing these documents, and their limited relevance, the Court should deny Plaintiffs' motion.

Dated: February 6, 2019 /s/ */ Thomas M. Buchanan /*
Thomas M. Buchanan (VSB No. 21530)
WINSTON & STRAWN LLP
1700 K Street, NW
Washington, DC 20006-3817
Tel: (202) 282-5787
Fax: (202) 282-5100
Email: tbuchana@winston.com

*Attorneys for Defendants Cox Communications, Inc. and CoxCom, LLC*

*Of Counsel for Defendants*

Michael S. Elkin (*pro hac vice*)
Thomas Patrick Lane (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Tel: (212) 294-6700
Fax: (212) 294-4700
Email: melkin@winston.com
Email: tlane@winston.com

Jennifer A. Golinveaux (*pro hac vice*)
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111-5840
Tel: (415) 591-1000
Fax: (415) 591-1400
Email: jgolinveaux@winston.com

Diana Hughes Leiden (*pro hac vice*)
WINSTON & STRAWN LLP
333 S. Grand Avenue, Suite 3800
Los Angeles, CA 90071
Tel: (213) 615-1700
Fax: (213) 615-1750
Email: dhleiden@winston.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 6, 2019, the foregoing was filed and served electronically by the Court's CM/ECF system upon all registered users.

/s/ /*Thomas M. Buchanan/*
Thomas M. Buchanan (VSB No. 21530)
1700 K Street, NW
Washington, DC 20006-3817
Tel: (202) 282-5787
Fax: (202) 282-5100
Email: tbuchana@winston.com

*Attorney for Cox Communications, Inc. and CoxCom, LLC*