UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

SONY MUSIC ENTERTAINMENT, *et al.*,

    Plaintiffs,

v.

COX COMMUNICATIONS, INC., *et al.*,

    Defendants.

Case No. 1:18-cv-00950-LO-JFA

**DECLARATION OF PAUL JARCHOW IN SUPPORT OF COX'S
OPPOSITION TO PLAINTIFFS' FEBRUARY 1, 2019 MOTION TO COMPEL**

I, PAUL JARCHOW, declare as follows:

1. I am a Director of Technology for Business Systems working at Cox Communications. I have worked for Cox since March of 1996. I submit this declaration in support of Cox's opposition to Plaintiffs' February 1, 2019 motion to compel production of documents. I have personal knowledge of the facts stated in this Declaration, and if called as a witness, could testify competently to the matters contained herein.

2. My current job duties focus on technical support of the business systems that Cox Communications uses to provide its services. The primary system I am responsible for is ICOMS, the "Integrated Customer Operations Management System" customer subscriber management system. My understanding is that Plaintiffs in this case are seeking individual revenue numbers for roughly 58,000 specific customers who received DMCA notices between 2011 and present. We could try to determine individual billings through the ICOMS system manually or in an automated way. Either way is very burdensome.

3. First, Cox would not have images of paper bills for these customers for the time period of the request, 2011 through present. Cox should have the actual billing information for the majority, if not all, of these customers for this time period in the Ledger section of the ICOMs customer database. The Ledger section of ICOMs represents accounts receivable data. It is used to track account aging, accounts receivable, and debits and credits. However, that information is not stored in a way to easily print reports, so we would have to build a report. A Cox representative would have to go into the Ledger and manually build a report per subscriber, per month. Each month would take about 30-45 minutes to build and print once it had an account number. (In order to get an account number, we would need to associate an allegedly infringing IP address with an ICOMS account number from our CATS system. Cox uses dynamic IP addresses, which means that a given customer's IP address periodically changes after several months, so we must pair the IP address at a specific time with an account number. Then move to the ICOMs Ledger to determine the billing). Since Cox bills on a monthly basis, it would not be any more efficient or faster to build and print these reports on a quarterly or yearly basis.

4. In order to ascertain total billing on an account, Cox would need to take into account discounts. During a large portion of the time period at issue, from 2011 to say 2016, and possibly until present, the vast majority of customer were 2 and 3 product bundle customers, meaning they purchased other services in addition to data/internet services (cable, internet/Data, telephony and eventually home security). Bundled packages of products were offered with substantial discounts. Those discounts were applied to data services, as cable and telephony had regulatory constraints, among other reasons. I am describing this because in the reporting from

the Ledger process, the discount would appear along with the pricing and would actually reduce the amount billed to data resulting in a net billed to customer number.

5.      Assuming the conversion of the IP address to an account number, then manually looking up and printing revenue for approximately 58,000 accounts, for a 96-month (8 year) time period at 30 minutes per month would take 48 hours per customer, or 2.8 million hours of work to do manually.

6.      Another possible way to obtain the information would be to create an automated process or report. We would hire our ICOMS vendor to write a script in ICOMS that would gather the appropriate information from the ledgers. Again, this assumes that CATS has converted IP address information into account information and provide the list of the specific 58,000 customers to the vendor. For approximately $15,000 they would write a script, run the program and quality control the outcomes. The end result would be a billed-dollars report similar to a spreadsheet. I estimate that it could take 3-4 weeks to complete based on my experience with other types of programming and reporting work that the vendor has performed for me.

7.      I have also been asked if Cox could identify subscribers to certain tiers of internet service and associated billings. Again, because of the way we sell our products, both individually and as a part of a bundle subject to various types of discount, a report like this would not be an accurate reflection of the billing without taking all of these factors (number of products, bundles, discounts, packages) in the making of the report, but it is possible. However, over this time period, it isn't as easy as saying there are 3 or 4 tiers of internet service. We would need to look at individual packages ("starter 5; starter 10; Essential 30; Connect-to-Compete") as there is different pricing associated with each package within a tier, and different

discounting. In order for the reporting to be accurate it would take a similar amount of time and effort as discussed above ($15,000 and 3-4 weeks to complete).

   8.  Another possibility would be to provide exemplar information on billings for a smaller group of customers, say 5 per tier of service, for plaintiffs to get a sense of the billing at a product tier level manually.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed at San Diego, California.

Date: February 6, 2019

Paul Jarchow