# EXHIBIT A

1  say it's reached so many suspensions before, leaving for
2  investigation for termination or review for termination.
3  Q.   All right.  So until you look at it, the customer's access
4  to the Internet is not suspended; is that correct?
5  A.   That's correct, not suspended.
6  Q.   All right.  Well, let me show you what's been marked as
7  PX 1456.
8         Now, I think you saw this ticket in your deposition;
9  is that correct?
10 A.   I don't recall if it was this ticket.  I saw one similar.
11 Q.   All right.
12         THE COURT:  I need you to come -- you moved away from
13 the mic, so if you'd come closer again, please?
14         THE WITNESS:  I don't know if this is the same
15 ticket.  I believe there was one similar.
16 BY MR. PECAU:
17 Q.   But this is a copy of a CATS ticket; isn't that correct?
18 A.   Yes, it appears to be.
19         MR. PECAU:  Okay.  Your Honor, I'd like to introduce
20 PX 1456.
21         THE COURT:  Any objection?
22         MR. BUCKLEY:  No objection, Your Honor.
23         THE COURT:  All right.  It's received.
24 BY MR. PECAU:
25 Q.   All right.  Now, so this ticket is showing at the top the

1  latest complaint; isn't that correct?
2  A. Yes, latest.
3  Q. And that's a February 23, 2015, complaint, is that right,
4  copyright infringement complaint?
5  A. That was the abuse date.
6  Q. Okay. So the abuse date is February 23, 2015; is that
7  right?
8  A. Yes.
9  Q. And the abuse date, that reflects what date? That's the
10 date --
11 A. That's the date the infringement actually occurred on.
12 Q. Okay. All right. Now, this particular ticket, it looks
13 like that this subscriber beginning on -- can we move down a
14 little bit? -- July 31, 2012, and it goes through January 15 --
15 it goes through January 2015, and you have to look at the next
16 page to see that, see the entire history.
17      Okay. So let's just stay on the screen right now.
18 The "copy other" on the right-hand column, that indicates
19 copyright infringement complaints; is that correct?
20 A. Yes.
21 Q. All right. Now, on the top one, it says -- on the top one
22 there, it says, "Sent warning DMCA." What does that mean?
23 A. That means the system sent a warning, one of the warning
24 letters.
25 Q. Okay. That's the e-mail that we've been talking about; is

R. Vredenburg - Direct

857

1 that correct?
2 A. Right.
3 Q. All right. And the next one says, "Sent reply hard limit
4 for complainants."
5 What does that mean?
6 A. That's one of the hard limits that we -- they made a
7 complaint, but they were over their limit, so it's a hard
8 limit. We didn't accept it.
9 Q. So you didn't accept it, and this isn't counted as a
10 copyright infringement offense; is that correct?
11 A. Exactly. It's not supposed to be counted, I believe.
12 Q. All right. And that's true for the one on August 29, it's
13 true on the one in September, and the one following in
14 December; is that correct? None of those were counted by
15 the CATS?
16 A. You're talking about the hard limits?
17 Q. Yes.
18 A. No, they're not counted. They shouldn't be.
19 Q. Well, looking at the first two pages of this PX 1456, I
20 counted up 28 copyright other complaints in this two-and-a-half
21 years. Does that look right to you?
22 A. Sir, without sitting down going through this, I really
23 can't tell, because this is done by a computer, and sometimes
24 it takes me 15-20 minutes to go through one of these --
25 Q. All right.

1  A.   -- trying to get through it.
2       But it -- just looking at it, it has had a lot of
3  complaints, yes.
4  Q.   All right.  And of those 28 complaints, 13 say, "Sent
5  reply hard limit for complainants," which nothing was done;
6  isn't that correct?
7  A.   I didn't count them all, but there are several, yes.
8  Q.   Okay.  Now, with all these complaints, did the customer
9  ever get anything more than an e-mail warning in its entire
10 two-and-a-half-year history of all these copyright infringement
11 complaints?
12 A.   From what I see, that's all he ever got was warnings.
13 Q.   All right.  And could you tell me what level of the, the
14 subscriber is at the very end?
15      Let's go down to -- can you tell what level that is
16 he's at now with these 28 past complaints?
17 A.   You mean what level he's at?
18 Q.   Yeah.
19 A.   He's in the warning level.
20 Q.   You have a complaint now at the top, right?
21      That's the, the February 23, 2015, complaint.  What
22 level would he be at now?
23 A.   I'm not sure what level.  I mean, you asked me is he going
24 to get suspended or is he going to get another warning?
25 Because like I said, I --

1  Q.   Is he going to get another warning?
2  A.   I can't -- I'd have to sit there and go through step by
3  step to figure out what's going on. It rolls on a six-month
4  rolling.
5  Q.   Okay. Tell me about the six-month rolling. What does
6  that mean?
7  A.   It means that if the customer gets through six months,
8  nothing happens in six months, it's good. You keep rolling
9  down, though. If he gets another complaint and then another
10 complaint and then he goes for a while, that six months will go
11 down, and then you start from that point and go back up.
12 Q.   Okay. So, for example, with respect to the -- what was
13 going on in this one, we have a February 23, 2015, complaint,
14 and if we go to the last page -- can we go to the last page
15 here at the top with the complaints up there? Thank you, Karl.
16      So right before the 23rd one, we have a sent warning
17 DMCA. Well, that counts, right? And then you have the sent
18 reply hard limit, sent reply hard limit, sent reply hard limit,
19 and sent warning, and that sent warning is in July 10 of 2014.
20      So based on this, on your rolling six-month system,
21 that this, this subscriber has had 28 copyright infringements
22 over the last two-and-a-half years would really be at a level
23 3, still just getting e-mail warnings; is that correct?
24 A.   Right. Exactly, because he's out of that six-month window
25 on the last one. The one he's on now, you look back, you see

R. Vredenburg - Direct

860

1 17th of 2015, so he had one there. Then the one that would
2 count was up further, at 7/10/14. So that wouldn't -- would
3 count, also. He effectively would have two warnings.
4 Q. Okay. Now, the folks that you get are actually folks that
5 have gotten 12 copyright infringement offenses in a six-month
6 period that, that don't include any of these sent reply hard
7 limit for complaints; is that correct?
8 A. Yes.
9 Q. All right. And when you get it, you said you review the
10 history?
11 A. Yes, we review the complaint and the history.
12 Q. And then you make a determination whether or not you'll
13 suspend or not?
14 A. Correct.
15 Q. Okay. And how do you suspend them?
16 A. Push the button.
17 Q. Push a button. Okay.
18     And what, what happens to the subscriber?
19 A. What happens then is when we suspend to that level, we put
20 a different note in the ticket. It says, "Final suspension."
21 Call whatever, whatever number our number is, and that way the
22 customer, when it pops up, he'll call the corporate number, not
23 the Tier 2 number.
24 Q. And are you the person they'd be calling at the corporate
25 number?

1  A.   Yes, sir.

2  Q.   Okay.  And that final notice goes the twelfth time, right?

3  A.   There's the twelfth -- I guess it was the twelfth time.

4  Q.   Yep.

5  A.   We do two final.

6  Q.   Yeah.  So you send two final notices?

7  A.   Yes, sir.

8  Q.   Okay.  And then after that, for continued offenses, the

9  account will be reviewed and considered for termination.

10 That's what it says on the bottom on page 11; is that correct?

11 A.   Correct.  After two offenses, though, it's normally

12 terminated.

13 Q.   All right.  Okay.  So let's see how the termination review

14 process has worked at Cox.  Let me show you, let's see, where

15 are we?

16          Okay.  Mr. Vredenburg, this is a string of e-mails;

17 isn't that correct?

18 A.   Yes, sir, it appears to be.

19 Q.   And these are a string of e-mails that -- if you look at

20 the second page of 449, these -- you instituted these e-mails,

21 is that right?  You began them, the string?

22 A.   Yes, it would appear that way.

23          MR. PECAU:  All right.  Your Honor, I'd like to offer

24 into evidence PX 1449.

25          MR. BUCKLEY:  No objection, Your Honor.