1

```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF VIRGINIA
                         Alexandria Division




---------------------------------:
                                 :
SONY MUSIC ENTERTAINMENT, et al.,:
            Plaintiffs,          :
                                 :
     -vs-                        :    Case No. 1:18-cv-950
                                 :
                                 :
COX COMMUNICATIONS, INC., et al.,:
            Defendants.          :
                                 :
---------------------------------:




                         HEARING ON MOTIONS

                         October 26, 2018

                  Before:  Liam O'Grady, USDC Judge
```

APPEARANCES:

Matthew J. Oppenheim, Scott A. Zebrak, and Jeffrey M. Gould, Counsel for the Plaintiffs

Thomas M. Buchanan, Michael S. Elkin, Jennifer A. Golinveaux, and Thomas P. Lane, Counsel for the Defendants

1      THE CLERK:  The Court calls case 1:18-cv-950, Sony
2 Music Entertainment, et al. versus Cox Communications, Inc. for
3 a motions hearing.
4      May I have the appearances, please, first for the
5 plaintiffs.
6      MR. ZEBRAK:  Good morning, Your Honor.  Scott Zebrak
7 counsel for the plaintiffs.  And with me today is Matthew
8 Oppenheim and Jeffrey Gould.
9      THE COURT:  All right, good morning to each of you.
10     MR. OPPENHEIM:  Good morning, Your Honor.
11     MR. BUCHANAN:  Good morning, Your Honor.  Thomas
12 Buchanan on behalf of the defendant Cox.  With me is Michael
13 Elkin, Jennifer Golinveaux, and Thomas Patrick Lane.
14     MR. ELKIN:  Good morning, Your Honor.
15     MR. BUCHANAN:  Mr. Elkin will be arguing the motion
16 this morning, Your Honor.
17     THE COURT:  Thank you.  Good morning to each of you.
18     All right.  I appreciate your coming in.  It's an
19 issue that's addressed often by the courts around, and you all
20 cited lots of the cases in your briefing.  It's a fairly close
21 issue, and I wanted to hear whatever additional comments you
22 had after the briefing was done and you had a chance to look at
23 it before argument here today.
24     Also, I think that some of the -- a couple of the
25 central issues are, how do I weigh the fact that there was no

1   motion to transfer the first case, and many of the witnesses
2   were party witnesses, as they are today, and it looks like
3   going forward, and I recognize many of the names.
4              And also, in looking at the interests of justice
5   prong, avoiding the inconsistent judgments, and the judicial
6   economy arguments, I looked back at the other case and looked
7   at the number of hearings that were held and the discovery
8   disputes that were part of that case.
9              So anyway, I will hear anything you would like to
10  say, but I'm interested in your thoughts on those two subjects
11  as well.
12             Mr. Elkin, it's your motion, sir, please.
13             MR. ELKIN:  Thank you, Your Honor.  Good morning.
14             It may seem odd in the circumstances given the nature
15  of the motion, but it's a pleasure to be back in your
16  courtroom.  I was hoping it would be the last time on this
17  particular case, but nonetheless good to see you.
18             Your Honor, obviously, you have gone through the
19  briefs and you're familiar with the law.  I'll just jump right
20  into the questions that you posed, if I may.
21             As you know, we were not counsel at the BMG case, at
22  least at the beginning.  And I have to bear and accept all
23  responsibility for the decisions that were made, but I will say
24  that with regard to the not having made the decision in the BMG
25  case to make the motion to transfer, as the Court knows, there

1  is no timetable to be able to make that particular decision.
2  Frankly, it was the experience that we had as retrial counsel
3  that sort of led to the concerns related to convenience.
4         As Your Honor knows from reading the papers and
5  leaving and breathing the case at least with respect to BMG,
6  all of the witnesses for Cox, or practically all of the
7  witnesses, party and non-party, are in Atlanta.
8         We had to work with them to gear up to appear, have
9  their testimony come before this Court.  Frankly, it was a lot
10 of that experience that helped drive the decision to make the
11 motion here.
12        When we look at this particular case, we have 57
13 plaintiffs, none of whom were in the district.  They are either
14 in Los Angeles or New York.  We have three of the original
15 witnesses, as Your Honor will remember, Randy Cadenhead, Jason
16 Zabek, and Joseph Sikes are now former employees.  Cadenhead
17 was an former employee at the time of the first trial.
18        But given the fact that what's going to be at issue
19 in the case, among other things, are the systems and the
20 policies and the procedures of how the safety and abuse team at
21 Cox handled these notices, the crux of the testimony is
22 important.
23        And so, you have got sort to lined up on the Cox side
24 all of the party and non-party witnesses in Atlanta.  None of
25 the other witnesses, at least on the plaintiffs' side, is in

5

1 the district.

2 You do have a different technology company here.
3 Your Honor will recall, there was a lot of testimony from
4 Rightscorp in the first case. Here there is another company by
5 the name of MarkMonitor, I believe they are in San Francisco.
6 So from their point of view, I don't think that there are any
7 other issues concerning witness convenience.

8 On the interests of justice point that Your Honor
9 touched upon, look, there is no question, we would readily
10 concede the fact that Your Honor has familiarity with a lot of
11 the issues in terms of what -- you know, some of the underlying
12 facts within the period of time.

13 But nonetheless, there are a number of
14 differentiating factors in this case that I would just want to
15 call to Your Honor's attention, if I may. One of them is the
16 fact that in the earlier case you had two plaintiffs. Here you
17 have 57. They have some 10,000 or so copyrighted works that
18 are at issue compared to the little less than 1,400 that were
19 before Your Honor in BMG.

20 The nature of the technology and the issues
21 concerning Rightscorp are not present before the Court. Your
22 Honor would be dealing with a completely different set of
23 issues which go beyond the scope of what we are here to argue
24 about.

25 And in terms of the inconsistent judgments, as Your

1   Honor knows, the dispositive ruling in the case that has
2   applicability is Your Honor's summary judgment decision on safe
3   harbor.  And that was upheld, as Your Honor knows, by the
4   Fourth Circuit.
5          We have -- when we answered the complaint here, we
6   specifically circumvented that issue here.  We waived it.  We
7   are not proceeding on the safe harbor.  And any of the other
8   motions that Your Honor would have dealt with, other than that
9   dispositive ruling, were based on the record that was developed
10  in that particular case, whether it was because of some
11  30(b)(6) witness wasn't prepared, or some other tacks that were
12  taken in that case that contributed to the record.
13         So I think when you take a look at that particular
14  issue and you compare it to something like the Samsung case
15  which the other side has singled out as being dispositive, it's
16  a far cry from that.  That case, you had a situation where
17  Rambus had sued Infineon in the District.  They proceeded to
18  trial and lost on various patents.  And they availed themselves
19  of the jurisdiction, they had a strategy in advance before they
20  filed it.  And then when Samsung decided to file a DJ action in
21  the District Court, it was a different situation.  They wanted
22  to avoid it and litigate in the Northern District of
23  California.
24         THE COURT:  You know, that hurt Judge Payne's
25  feelings.

1           MR. ELKIN:  Yes, I can imagine.  But, you know, there
2   is a situation where clearly the Court had spent all of that
3   time studying the patents and there was a dispositive ruling.
4           We really don't have that in this case.  I think
5   there is something --
6           THE COURT:  How about the other affirmative defenses,
7   we had a lot of pretrial work, if I recall, on contributory
8   infringement and vicarious liability issues that go beyond the
9   safe harbor decision, what about those?
10          MR. ELKIN:  Well, I think the issue with regard to
11  the contributory liability in terms of the standard, it was an
12  issue with regard to jury instructions on that particular
13  issue.  I don't know that that is going to be an issue that is
14  relevant for the facts in this case.
15          I think it was a standard that the Fourth Circuit
16  promulgated relative to the specific legal reasoning as opposed
17  to how they could have applied to these particular facts.  And
18  I don't think Your Honor had a chance to adjudicate indicate
19  any Rule 50 motion related to those standards because we didn't
20  get that far.
21          And with regard to the vicarious judgment, it is true
22  that Your Honor did adjudicate some Rule 50 motion, a JMOL
23  motion after the trial.  But again, the facts and aspects of
24  that particular case we believe is not applicable here based on
25  the different record.

8

1        The last point I would make, and I know Your Honor
2   knows this point, but I feel compelled to make it anyway --
3        THE COURT:  You are here, I am happy to hear from
4   you.
5        MR. ELKIN:  There is, in the interests of justice,
6   there is this notion that local controversies should be
7   adjudicated at home.
8        The crux of the testimony that relates to Cox has to
9   do with the witnesses and the safety and abuse team and in and
10  around the privacy area, all of the witnesses are in Atlanta.
11  There is no basis to suggest that somehow the Eastern District
12  of Virginia has a vested interest in this particular case aside
13  from Your Honor's familiarity with the issues in the BMG case.
14  And we would hope that Your Honor would take that into account.
15       THE COURT:  All right.  Thank you, Mr. Elkin.
16       MR. ELKIN:  Thank you.
17       THE COURT:  Yes, sir.
18       MR. ZEBRAK:  Matthew Oppenheim will argue for us.
19       MR. OPPENHEIM:  Good morning, Your Honor.
20       THE COURT:  Good morning.
21       MR. OPPENHEIM:  Thank you for hearing from us.
22       Your Honor, in bringing their motion, Cox bears the
23  burden here of demonstrating not just that the convenience
24  weighs in their benefit, but rather that circumstances strongly
25  favor a transfer here.

9

1    It's not enough for Cox to simply say that transfer
2 would be less burdensome for them.  That is, that it would be
3 easier for them to litigate the case in Georgia.  That's not
4 enough under the standard here.
5    And Cox hasn't met its burden.  There are three
6 factors, the Court is well aware.  All three of those factors
7 favor the plaintiffs' choice of litigating this case in
8 Virginia.  The first and third factor, that is the plaintiffs'
9 choice of forum and the interests of justice, clearly favor the
10 plaintiffs.  And there really can very little dispute about
11 that.  And I will address that in a moment.
12    The second factor, the convenience factor, that
13 favors the plaintiffs too, but albeit it is a closer call.
14    The only thing Cox has put forward in their papers is
15 the argument of it would be much more convenient for them to
16 litigate it in Georgia.
17    What they notably didn't put in their papers is that
18 it would be inconvenient for them to litigate the case here in
19 Virginia.  And that's a notable absence in their papers.  They
20 have to -- in order to demonstrate that this case should not go
21 forward here, and in order to win on that convenience factor,
22 they really have to put forward, and haven't put forward, the
23 argument that it would be inconvenient for them to be here in
24 Virginia.
25    With respect to the first factor of the plaintiffs'

10

1  choice of forum, which was the last point Mr. Elkin made, he
2  said that Courts favor litigating cases in the home territory
3  of the parties.
4         THE COURT: Well, certainly in intellectual property
5  cases that's been made pretty clear, right? That doesn't
6  change.
7         MR. OPPENHEIM: There is a huge difference between a
8  lot of the patent cases that have been brought in this court
9  because of the Rocket Docket and the case we have at bar.
10        THE COURT: I'm talking about the venue statute
11 change, which you may or may not do IP work, they have changed
12 the world there and made either the home of the defendant or
13 the corporation location to be the venue there.
14        And I think that's what Mr. Elkin was alluding to,
15 that in some circumstances they certainly believe that the home
16 of the defendant is where cases should be brought.
17        MR. OPPENHEIM: And in the patent context, Your
18 Honor, I think that's right. In the copyright context, I don't
19 believe that that argument holds any water.
20        And actually, if you look at the 1404 case law on the
21 issue of plaintiffs' choice of forum, it's not -- the issue
22 isn't whether the plaintiffs chose to litigate it in their home
23 forum. The question is whether there is a nucleus of operative
24 facts in the forum at which the plaintiffs brought the case.
25 And that's clearly the situation here.

1    THE COURT: But it's not your home. It's still a
2 consideration, it's just doesn't have as significant an import
3 in the test, right?
4    MR. OPPENHEIM: Absolutely, Your Honor. The factor
5 still weighs in the plaintiffs' benefit, the question is just
6 how much.
7    And here, because the nucleus of operative facts,
8 that is Cox's operation center in Virginia which made the
9 decisions to terminate or to not terminate its subscribers who
10 were engaged in the infringement, all happened in this
11 district.
12    And that's something that Cox ignores, largely, in
13 their papers. I mean, they acknowledge it at the end of a
14 sentence, but it is a key fact, and this is a fact that the
15 Courts accept in considering that first factor about the
16 plaintiffs' choice of forum.
17    We did not bring this case here, Your Honor, on a
18 willy-nilly basis because we wanted to be in the Rocket Docket.
19 There is a core reason, and that is the defendants' operation
20 were here, the relevant operations were here.
21    With respect to the convenience factor. The issue,
22 as this Court is well aware, is not about party witnesses. The
23 issue has to do with non-party witnesses.
24    And in that respect, Mr. Elkin described three
25 witnesses for the defendants, Mr. Cadenhead, Mr. Zabek, and Mr.

12

1 Sikes. Mr. Cadenhead traveled here and appeared here in the
2 last trial and was able to do that.
3 Who Mr. Elkin did not describe is Mr. Vredenburg.
4 Now, Mr. Vredenburg is in this district. Mr. Vredenburg is a
5 key witness. And what was very useful about part of the
6 transcript that the defendants provided to the Court in
7 briefing this motion was the part that said Mr. Vredenburg
8 won't fly.
9 So if this case gets transferred, they are removing
10 from the plaintiffs the ability to have Mr. Vredenburg testify
11 easily. And we would somehow have to find a way to move him
12 from Virginia to Georgia without putting him on a plane.
13 So the convenience scale clearly favors, from our
14 perspective, the plaintiffs. And it's not enough for them to
15 say it's more convenient for them. They have to show it's
16 inconvenient for them.
17 And the interests of justice factor, Your Honor, and
18 I think you've keyed in on this on your questions, clearly
19 favors the plaintiffs. And it's not just the Samsung versus
20 Rambus case with Judge Payne. In fact, several of the cases
21 that the defendants cite really actually -- they cite to their
22 benefit, but really actually if you look at them on the
23 interests of justice factor, they favor the plaintiffs.
24 If you look at the CIVIX versus Loopnet case or the
25 Global Touch versus Toshiba case, one of the compelling issues

13

1    that the Court was looking at was consistency in rulings.
2                In the Toshiba case, there were five patent cases,
3    and they were separate cases.  And the Court was trying to
4    decide here or California.  And the one thing that the Court
5    was absolutely certain about is all the cases should be handled
6    by the same judge for consistency purposes.
7                Your Honor, this case is not just about the safe
8    harbor ruling and that all the other facts are different.  It's
9    not.  As Mr. Elkin described, it's about Cox's conduct.  And a
10   lot of that conduct was subject to this Court's consideration
11   on evidentiary issues, on discovery issues, on pretrial issues,
12   on jury charge issues, on post-trial issues.
13               The Fourth Circuit has weighed on the issues in this
14   case.  If this case is sent down to Georgia in the 11th
15   Circuit, we will be relitigating every one of those issues
16   again without the benefit of what this Court has already taught
17   itself or learned.  And we will have exactly what the interests
18   of justice prong seeks to avoid, which is the great possibility
19   of inconsistent rulings on essentially the same facts.
20               So, Your Honor, the interests of justice factor
21   clearly benefits the plaintiffs.
22               THE COURT:  All right.  Thank you, sir.
23               MR. OPPENHEIM:  Thank you, Your Honor.
24               THE COURT:  Mr. Elkin, anything you would to say in
25   reply?

14

1          MR. ELKIN:  60 seconds, Your Honor, that's it.

2          THE COURT:  All right.

3          MR. ELKIN:  We know why the plaintiffs brought the

4 action in this court, they say it over and over again in their

5 complaint, and it was to take advantage of Your Honor's ruling

6 which was upheld by the Fourth Circuit on safe harbor.  That is

7 not in the case.

8          There is an operations center, as Your Honor

9 remembers from BMG.  All of Vredenburg's actions were

10 supervised, managed, and the decisions were made by Mr. Sikes

11 and Mr. Zabek.

12          I think that the Courts look to, and I would call the

13 Court's attention to the <u>Lycos</u> case, look to the crux of the

14 testimony, what the principal facts are, not things that are

15 necessarily sort of ancillary.

16          Thank you very much.

17          THE COURT:  All right, thank you.

18          All right.  Well, we will continue to look at it a

19 little bit.  We will try to get you something out next week.

20 We are in the middle of long trial for us here, and we are in

21 trial next week, but I'll try to get you something out within

22 the next week.  All right?

23          I appreciate very much your coming in and giving me

24 the benefit of your further thoughts.

25          Anything else is today?  Yes, sir.

1                MR. OPPENHEIM:  Just a housekeeping matter, Your
2    Honor.
3                THE COURT:  Yes.
4                MR. OPPENHEIM:  I believe that there is briefing on
5    the motion to dismiss the defendants' counterclaims.  It was
6    originally scheduled for the 9th.  I believe that the parties
7    submitted to have it rescheduled for the 16th.
8                I don't know that that has actually happened yet,
9    Your Honor.  So that's out there though.  We are working to try
10   to resolve it and take it off calendar.  But I think that the
11   question of whether it gets moved from the 9th to the 16th is
12   still outstanding.
13               THE COURT:  Okay, I am happy to move it to the 16th.
14   And if -- I may have signed that last night as 5:30 and I don't
15   remember it.  But we will look for it and I am happy to provide
16   that extra cushion.
17               All right.  Thank you, you all.  Have a good weekend.
18               MR. OPPENHEIM:  Thank you as well, Your Honor.
19               MR. ELKIN:  Thank you, Your Honor.
20               THE COURT:  All right, we're in recess.
21       ---------------------------------------------------
                              HEARING CONCLUDED
22

23              I certify that the foregoing is a true and
         accurate transcription of my stenographic notes.
24

25                       /s/   Norman B. Linnell
                     _____
                     Norman B. Linnell, RPR, CM, VCE, FCRR