**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| SONY MUSIC ENTERTAINMENT, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> COX COMMUNICATIONS, INC., *et al.*, <br><br> *Defendants.* | Case No. 1:18-cv-00950-LO-JFA |

**COX'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS
OBJECTIONS TO MAGISTRATE JUDGE'S NON-DISPOSITIVE RULING**

Defendants Cox Communications, Inc. and CoxCom, LLC (collectively, "Cox") submit this memorandum of law in further support of their Objections to Magistrate Judge John F. Anderson's February 27, 2019 Order (ECF No. 113) to the extent it denied Cox's attempts to seal certain exhibits to Plaintiffs' discovery motions that constituted Cox's highly confidential and commercially sensitive information.

## I. INTRODUCTION

The three exhibits[1] that Cox seeks to file under seal, two internal Cox procedures documents and a portion of one internal Cox email, contain confidential and commercially sensitive information that could assist Internet users in circumventing Cox's procedures in responding to notices of copyright infringement and Internet security threats. *See* Objs. at 4. Because Cox's countervailing interests in protecting the information within the exhibits outweigh the public's right of access to the information filed in conjunction with a non-dispositive discovery motion, the exhibits should remain under seal. *Hopeman Bros., Inc. v. Cont'l Cas. Co.*, No. 416CV00187MSDLRL, 2018 WL 2426272, at *1 (E.D. Va. Feb. 7, 2018) (sealing exhibits because they were subject to "confidentiality obligation[s] under the Protective Order" and contained information not generally available to the public). Plaintiffs' argument to the contrary—that the documents can *never* be sealed because they were shown at a public trial—is factually inaccurate and was not the basis for the Magistrate's decision against sealing the exhibits. For the reasons set forth herein and in Cox's Objections, Cox respectfully objects to portions of the Magistrate's Order and requests that the Court seal certain of the documents at issue in the manner outlined in its Objections.

---

[1] Cox is seeking to seal PX 1330 in its entirety, PX 1456 in its entirety, and portions of PX 1340. Even though Plaintiffs submitted 13 pages of Exhibit PX 1330 (*see* ECF No. 105-3), it still contains information that is irrelevant to their claims and discloses sensitive portions of Cox's business practices that is undisclosed to its subscribers and the public.

## II. JUDGE ANDERSON MISAPPLIED THE STANDARD FOR THE PUBLIC'S RIGHT OF ACCESS

### A. Prior Public Disclosure of these Three Exhibits Cannot Serve as the Basis to Deny Cox's Request to Seal Here

Judge Anderson's decision not to seal the three exhibits was based on the notion that "significant portions" of all of the exhibits were quoted or discussed by the Court in its public opinions in *BMG Rights Management v. Cox Communications, Inc.*, Case No. 1:14cv1611 ("the *BMG* litigation"). *See* ECF No. 113 ("Order"). However, these three particular exhibits were not quoted in any of the public *BMG* orders[2] – a point which Plaintiffs concede. Instead Plaintiffs argue that the exhibits permanently lose their confidential protection because they were shown at the *BMG* trial despite there being no evidence that anyone other than the judge, jury, witnesses, and counsel saw these exhibits. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597–98 (1978) (the public's right to access the judicial record is "not absolute"). Therefore, Cox respectfully submits that Judge Anderson erred in denying Cox's requests to seal all of the documents at issue with a blanket ruling that all of the documents were revealed in public opinions in the *BMG* litigation, when that was not the case for the three exhibits that are the subject of Cox's Objections.

### B. Because the Exhibits Were Filed in Connection with a Non-Dispositive Motion, Cox Did Not Have the Burden to Demonstrate a "Compelling Governmental Interest" in Sealing

The district court can modify a magistrate's order if it is contrary to law because of a misapplication of the "relevant statutes, case law, or rules of procedure." *Attard Indus., Inc. v. U.S. Fire Ins. Co.*, No. 1:10CV121 AJT/TRJ, 2010 WL 3069799, at *1 (E.D. Va. Aug. 5, 2010). Here, Judge Anderson erred in applying the more stringent First Amendment standard instead of that under the common law. *See* ECF 91. The First Amendment standard requires a "compelling

---

[2] Cox is not seeking to seal the portion of PX 1340 that was quoted by the *BMG* court in its order. *See BMG Rights Mgmt.*, 199 F. Supp. 3d at 967.

governmental interest" to restrict the public's right of access whereas the common law standard requires a showing of "countervailing interests [which] heavily outweigh the public interests in access." *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 575 (4th Cir. 2004). The First Amendment standard applies to those documents "filed in support of *dispositive* motions in civil cases" and should not apply here, where Plaintiffs submitted the exhibits in connection with a non-dispositive discovery motion. *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988) (extending the First Amendment standard to "documents filed in connection with a summary judgment motion in a civil case") (emphasis added); *In re Policy Mgmt. Sys. Corp.*, 67 F.3d 296 (4th Cir. 1995) (holding that "the mere filing of a document with a court does not render the document judicial"); *Wash. Post*, 386 F.3d at 580 ("we have never held that the public has a First Amendment right of access to a pretrial hearing on a non-dispositive civil motion or to the transcript of such a hearing").

Plaintiffs argue that the First Amendment test automatically applies to the exhibits in question because they were shown at trial. However, this was not the basis for Judge Anderson's decision. Judge Anderson applied the First Amendment standard based upon the erroneous conclusion that the exhibits were previously used to support dispositive motions in the *BMG* litigation. As Cox detailed in its Objections (ECF No. 117), this is not factually accurate. Plaintiffs sought to file the three exhibits in connection with discovery motions, which are non-dispositive, and thus the common law standard should apply. *See* ECF No. 91 at 1; *Wash. Post*, 386 F.3d at 580 ("we have never held that the public has a First Amendment right of access to a pretrial hearing on a non-dispositive civil motion or to the transcript of such a hearing"). Thus, the common law standard should apply and Cox does not have to demonstrate a compelling governmental interest to seal the exhibits.

3

### C. Cox's Interest in Protecting Its Proprietary Information Outweighs Any Public Interest in Access to the Exhibits

As the Supreme Court has found, although the public has a right to access judicial records, the right "is not absolute." *Nixon*, 435 U.S. at 597–98. The district court has the discretion to consider the surrounding facts and limit the public's access to the documents. *Id*. In fact, courts have denied the common law right to inspection where documents serve "as sources of business information that might harm a litigant's competitive standing" as they would here. *Id.* at 598. Plaintiffs erroneously limit the factors a court can consider when conducting a balancing test to three factors; however, as noted by the Supreme Court, the factors are not so restrictive. *Id.* at 598–99 ("It is difficult to distill from the relatively few judicial decisions . . . all the factors to be weighed in determining whether access is appropriate"); *Benedict v. Hankook Tire Co. Ltd.*, 323 F. Supp. 3d 747, 760–61 (E.D. Va. 2018) (listing three factors the court "may consider" when conducting a common law balancing test).

Even assuming the three factors Plaintiffs listed are the only factors a court can consider, they still favor sealing the exhibits.[3] Specifically, the first factor favors Cox because it is probable that the records would be sought by the public for an improper purpose – i.e., circumventing Cox's procedures for responding to notices of copyright infringement and other threats to Cox's system. The second factor is irrelevant because there is no evidence that the public is seeking access to Cox's documentation in order to understand history. Furthermore, it is unreasonable for Plaintiffs to suggest that the *BMG* trial is an "important historical event" akin to an event like the Watergate investigation. *See Nixon*, 435 U.S. at 606 (noting that even though the Watergate investigation

---

[3] The three factors Plaintiffs included in their Opposition are: "[1] whether the records are sought for improper purposes, such as promoting public scandals or unfairly gaining a business advantage; [2] whether release would enhance the public's understanding of an important historical event; and [3] whether the public has already had access to the information contained in the records." *Benedict*, 323 F. Supp. 3d at 754.

4

was an important historical occurrence, the common law right of access to judicial records did not apply to the recordings used in the investigation). Lastly, the third factor is inapplicable given that Plaintiffs have not shown that the public "already had access" to these exhibits, especially when considering that the exhibits were not quoted in any of the public *BMG* orders. *Benedict*, 323 F. Supp. 3d at 754.

When the Court conducts its balancing test here, it should consider that the information sought is highly confidential and commercially sensitive. *See, e.g.*, *United States v. Nixon*, 418 U.S. 683, 714-16 (1974) (recognizing confidential nature of Presidential communication); *In re Iowa Freedom of Info. Council*, 724 F.2d 658, 661 (8th Cir. 1983) (substantial damage to property rights in trade secrets justified closure under the First Amendment standard); *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 529 F. Supp. 866, 907 (E.D. Pa. 1981) (sensitive commercial information was sufficient for sealing of documents).

Specifically, PX 1330 contains proprietary business information undisclosed to Cox's subscribers and the public. It also details how Cox responds to alleged copyright infringement and other complaints and would provide customers with information about how to circumvent Cox's abuse procedures, thereby making it susceptible to security threats. Additionally, PX 1340 contains screenshots and excerpts of information from Cox's proprietary CATS system. Likewise, PX 1456 discloses proprietary CATS information. It is a Cox abuse ticket, which shows a detailed history of Cox's responses to a particular IP address, including its individualized responses to notifications of alleged copyright infringement.

Plaintiffs' argument against sealing is predicated entirely on the exhibits' purported disclosure to the public during the *BMG* trial. Even if an exhibit was shown at trial, the common law right of access to trial exhibits is conditional. *See, e.g.*, *Nixon*, 435 U.S. at 598 ("right to

5

inspect and copy judicial records is not absolute"); *In re Reporters Comm. for Freedom of the Press*, 773 F.2d 1325, 1333 (D.C. Cir. 1985) ("there is a tradition of public access to court records, and that right is not absolute"). Indeed, the presumption of openness is mitigated by the court's discretion and specific facts of the case. *United States v. Mitchell*, 551 F.2d 1252, 1260 (D.C. Cir. 1976), *rev'd on other grounds sub nom.* ("[b]ecause no clear rules can be articulated as to when judicial records should be closed to the public, the decision to do so necessarily rests within the sound discretion of the courts, subject to appellate review for abuse"); *In re Reporters*, 773 F.2d at 1333 ("every court has supervisory power over its own records and files"). Notably, a court may deny the public right of access where court files contain "sources of business information that might harm a litigant's competitive standing," as it would here. *Id.* (citing *Schmedding v. May*, 85 Mich. 1, 5–6, 48 N.W. 201, 202 (1891), and *Flexmir, Inc. v. Herman*, 40 A.2d 799, 800 (N.J. Ch. 1945)).

Even if the higher First Amendment standard applied, Cox's interests in protecting its sensitive and confidential information still outweigh the public right of access. Notably, courts have commonly held that a compelling *private* interest, and not just a compelling *government* interest, can outweigh a public right of access. *Iowa Freedom of Info. Council*, 724 F.2d at 664 ("[w]here only private commercial interests or damage are involved, we think the law justifies [sealing portions of a contempt hearing transcript discussing trade secrets] to avoid the destruction of these property rights"); *Level 3 Commc'ns, LLC v. Limelight Networks, Inc.*, 611 F. Supp. 2d 572, 580 (E.D. Va. 2009) ("certain such private interests might also implicate higher values sufficient to override (or, in an alternative mode of analysis, to except the proceeding or materials at issue from) the First Amendment presumption of public access."). In this scenario, an overriding interest can include "the content of the information at issue," like protecting a trade secret. *See*

*Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1073 (3d Cir. 1984); *Zenith Radio Corp.*, 529 F. Supp. at 890 ("an interest in safeguarding a trade secret may overcome a presumption of openness" even when otherwise guaranteed by the First Amendment right of access).

Here, as set forth above, Cox's interest in protecting the three exhibits overrides any public presumption of access because these exhibits contain Cox's highly confidential and commercially sensitive information. Such information, if disclosed, would harm Cox's competitive standing, expose proprietary CATS information, and threaten Cox's network security.

### III. CONCLUSION

For all of the reasons set forth herein, Cox respectfully objects to Judge Anderson's Order and requests that the Court seal exhibits and portions of exhibits as set forth in Cox's Objections and previously filed Proposed Order.

Dated: April 2, 2019

Respectfully submitted,

/s/ *Thomas M. Buchanan* /
Thomas M. Buchanan (VSB No. 21530)
WINSTON & STRAWN LLP
1700 K Street, NW
Washington, DC 20006-3817
Tel: (202) 282-5787
Fax: (202) 282-5100
Email: tbuchana@winston.com

*Attorney for Defendants Cox Communications, Inc. and CoxCom, LLC*

7

*Of Counsel for Defendants*

Michael S. Elkin (*pro hac vice*)
Thomas Patrick Lane (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Tel: (212) 294-6700
Fax: (212) 294-4700
Email: melkin@winston.com
Email: tlane@winston.com

Jennifer A. Golinveaux (*pro hac vice*)
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111-5840
Tel: (415) 591-1000
Fax: (415) 591-1400
Email: jgolinveaux@winston.com

Diana Hughes Leiden (*pro hac vice*)
WINSTON & STRAWN LLP
333 S. Grand Avenue, Suite 3800
Los Angeles, CA 90071
Tel: (213) 615-1700
Fax: (213) 615-1750
Email: dhleiden@winston.com

## CERTIFICATE OF SERVICE

I certify that on April 2, 2019, a copy of the foregoing COX'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS OBJECTIONS TO MAGISTRATE JUDGE'S NON-DISPOSITIVE RULING was filed electronically with the Clerk of Court using the ECF system, which will send notifications to ECF participants.

/s/ Thomas M. Buchanan
Thomas M. Buchanan (VSB No. 21530)
1700 K Street, NW
Washington, DC 20006-3817
Tel: (202) 282-5787
Fax: (202) 282-5100
Email: tbuchana@winston.com

*Attorney for Cox Communications, Inc. and CoxCom, LLC*