UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| SONY MUSIC ENTERTAINMENT, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>COX COMMUNICATIONS, INC., *et al.*,<br><br>    Defendants. | Case No. 1:18-cv-00950-LO-JFA |

### REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SANCTIONS

Cox has been stonewalling Plaintiffs for four months on producing financial data concerning the revenues that Cox received from infringing subscribers. Cox now asks this Court to ignore that history entirely because it produced millions of billing records that are critical to Plaintiffs' expert analysis, less than two days before a Rule 30(b)(6) deposition on financial topics—including those records—and a mere week before Plaintiffs' expert report deadline. However, the issues are not resolved. The relief sought in Plaintiffs' motion is narrowly tailored to cure the prejudice and should be granted.

By not making its court-ordered production until yesterday evening, Cox has prevented Plaintiffs from taking a complete Rule 30(b)(6) deposition on Cox's finances and revenues scheduled to take place tomorrow. Cox has also prevented Plaintiffs' financial expert from being able to conduct the analysis necessary for his expert report. Yet Cox remains steadfast in its refusal for any accommodation or scheduling adjustment. Accordingly, absent immediate relief on the April 10 expert report deadline, and the associated relief requested in Plaintiff's motion, including production of adequate financial data as ordered by the Court, Plaintiffs will be unduly prejudiced in their ability to incorporate critical information and analysis into their financial expert report. To

the extent the Court grants relief that leaves Cox with less time for its financial expert to prepare a rebuttal report, and requires it to make a corporate designee available for further testimony, those are problems entirely of Cox's own making.

On February 15, 2019, the Court ordered Cox to produce, in relevant part: (1) data from Cox's CATS database as to third-party infringement notices, for the years 2012 to 2014, concerning the subscribers identified in Plaintiffs' notices; and (2) data from Cox's ICOMS database concerning its monthly billings, for the years 2012 to 2016, to the subscribers identified in Plaintiffs' infringement notices.  (Ex. A.)[1]  In their motion to compel and at the hearing before the Court, Plaintiffs explained why evidence of Cox's revenues from infringing subscribers is important, including where Cox chose to continue pocketing revenues from particular subscribers that Cox knew were repeatedly using its service to infringe.  ECF No. 96 at 1–3.  Plaintiffs further made clear that each subscriber's ICOMS ID in the notice data and financial data enables Plaintiffs to correlate infringement notices involving the subscriber with the revenue information that Cox has for payments from the subscriber.  ECF No. 105 at 14.

The hearing began with a focus on the notice data, during which time the Court rejected Cox's contention that the ICOMS ID was too sensitive to produce and should be replaced with a randomly generated figure.  (Ex. A at 9.)  In addition to requiring Cox to produce the notice data and subscriber billing data, the Court ordered Cox "to investigate and find out whether there is available information concerning the realization rates on billing information for that time period from 2012 through 2016."  (*Id*. at 26–27.)  The Court understood that Plaintiffs' financial expert would be working with the data that it ordered Cox to produce.  (*Id*. at 26.)

In its Opposition, Cox tries to justify how it has proceeded by arguing that the Court's Order did not require it to produce the financial data by a date certain.  (Opp. at 2.)  Cox asserts

---

[1] Exhibits cited herein refer to Exhibits to the Ryu Declaration, filed in support of this motion.

that unexpected delays set its production back further than its estimate of 3–4 weeks and that what it provided at 4:16 pm yesterday moots Plaintiffs' motion. (*Id*. at 1-2.) Cox's assertions are unavailing. Plaintiffs do not "complain disingenuously." The relief requested by Plaintiffs is necessary.

Cox's argument that Plaintiffs "have suffered no prejudice" is simply absurd. Plaintiffs have been pressing Cox since November 2018 for revenue information associated with the Cox subscribers identified in Plaintiffs' infringement notices. In December 2018, Cox agreed to produce it, then months later claimed the information did not exist, forcing Plaintiffs to seek relief from the Court on February 1, 2019. ECF No. 94. Only by dint of Plaintiffs' motion to compel did it come to light that, contrary to Cox's waffling, it does indeed possess the financial data and could pull it from its ICOMS database at a reasonable cost. (ECF No. 103-2 at ¶¶ 3–6.).

It took the instant motion for sanctions to force Cox to produce financial data concerning the subscribers cited in Plaintiffs' infringement notices. *See Swimways Corp. v. Aqua-Leisure Indus., Inc.,* No. 2:16-CV-260, 2017 WL 3262135, at *3 (E.D. Va. July 31, 2017) (defendant did not sufficiently comply with discovery order by producing documents *after* plaintiff filed motion for sanctions, many on the evening before a custodian's deposition). Cox finally produced that financial data yesterday afternoon --- a full *47 days* after this Court's discovery order and more than *4 months* after Cox agreed to produce the data before later disavowing that it exists. (Ex. B.) The production consists of eight voluminous spreadsheets with more than 4 million data observations and at least three dozen variables (i.e., data fields). Ryu Decl., ¶ 4. None of the variables are defined in the documents produced. *Id.* Even though the data is from Cox's ICOMS database, there is not an ICOMS data field. *Id.*, ¶ 5. Nor has Cox yet relayed to Plaintiffs Cox's realization rates on billings for that time period from 2012 through 2016.

4

Cox asserts that it encountered unexpected delays in pulling the financial data from its ICOMS database. But that is not a panacea. Cox's declaration is conclusory. With respect to the period following this Court's Order, Cox fails to explain the nature or extent of the data that was supposedly missing from the report that required it to go to backup dates. Cox does not explain why it could not have at least made a partial production to Plaintiffs sooner. And Cox fails to explain why its first testing of the script and data pull on a limited set of ICOMS data did not reveal that certain historical data was missing. But even more importantly, those questions and answers speak only to the *47 days* following this Court's order. The need for the requested relief stems from how Cox has proceeded dating back to December 2018.

Plaintiffs are now scheduled to depose Cox's Rule 30(b)(6) witness on revenue and financial information *tomorrow*, April 5, 2019. The billing information is a critical component of that deposition as it goes to the heart of Cox's ill-gotten gains. Plaintiffs' financial expert needs both the documents and deposition information for his analysis and report.

Even if Cox had finally provided a sufficient dataset yesterday afternoon, the late timing does not allow Plaintiffs' enough time to prepare for the deposition and expert report. It takes time to analyze over 4 million data points. And the analysis here is not just on the new spreadsheets in a vacuum. It requires correlation to infringement data reflected in other data sets involving roughly 58,000 subscribers and hundreds of thousands of copyright infringement notices spanning years. Cox has further complicated the problem by informing Plaintiffs that Cox's designee on financial topics, Sanford Mencher, is unable to answer questions concerning the financial data that Cox produced yesterday. Instead, Cox indicated last night, after filing its opposition, that it would make another designee, Paul Jarchow, available via remote video conference to answer questions concerning this new financial data. (Ex. C.) Cox unilaterally demanded that Plaintiffs agree to that course and arrange for such video accommodation on less than two days' notice. That is not

5

how the rules work. Plaintiffs have not stipulated to deposing Mr. Jarchow via remote means. See Fed. R. Civ. P. 30(b)(4) (requiring stipulation). The data is complex and voluminous and video would only exacerbate the challenges of a meaningful deposition.

Dated April 4, 2019

Respectfully Submitted,

/s/ Scott A. Zebrak
Scott A. Zebrak (38729)
Matthew J. Oppenheim (*pro hac vice*)
Jeffrey M. Gould (*pro hac vice*)
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Avenue, NW, 5th Floor
Washington, DC 20015
Tel: 202-480-2999
scott@oandzlaw.com
matt@oandzlaw.com
jeff@oandzlaw.com

*Attorneys for Plaintiffs*