# Exhibit A

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division


-------------------------------:
                               :
SONY MUSIC ENTERTAINMENT, et al.,:
             Plaintiffs,       :
                               :
    -vs-                       :   Case No. 1:18-cv-950
                               :
                               :
COX COMMUNICATIONS, INC., et al.,:
             Defendants.       :
                               :
-------------------------------:




HEARING ON MOTIONS


February 15, 2019


Before:  John F. Anderson, U.S. Mag. Judge




APPEARANCES:

Matthew J. Oppenheim, Scott A. Zebrak, and Jeffrey M. Gould,
Counsel for the Plaintiffs

Thomas M. Buchanan and Jennifer A. Golinveaux,
Counsel for the Defendants

1    there is a lot of work involved.  And we don't think it's

2    relevant.  And so, we think that's a fair compromise.

3           In terms of the unique number, the ICOMS number, they

4    suggest now, even though we've had discussions before about

5    using a separate number to protect the identity of the

6    customers --

7           THE COURT:  Well, what -- giving them the ICOMS

8    number doesn't give anybody the identity of anybody.  I mean,

9    that is a number that if I looked at, I would have no idea who

10   that relates to, right?

11          MR. BUCHANAN:  Correct, on its face.  But our client

12   tells us that that number can be utilized to track the identity

13   of the customer, and that's what --

14          THE COURT:  Well, an IP address can be used to do

15   that too, right?

16          MR. BUCHANAN:  Not as easily according to our client.

17   But that's what they've advised us, Your Honor.  That's the

18   only reason.

19          It's not to frustrate the effort of the plaintiffs.

20   It's just something we believe is necessary to protect our

21   customers' identity or to make it as safe as possible.

22          And we don't think it's really relevant because we

23   don't think these ICOMS numbers are floating around in a lot of

24   e-mails by which they have got to connect the e-mails to this.

25          I mean, the whole issue here is really they wanted

1    numbers.  They want to show that they had 58,000 subscribers to

2    whom they sent notices about and 168,000 notices.  Now they

3    want more notices to try to show they all equate with

4    infringement, and they put us on notice, to enhance their

5    damages.

6         So this number is not really relevant.  It's just

7    that they want to create a chart with all these numbers.

8         THE COURT:  Well, it's more work for you to have to

9    do something to replace that number; is that right?

10        MR. BUCHANAN:  I don't think it is because we're

11   going to create a different type of formatted screen shot.  And

12   so, it would just leave that off.

13        Again, we would have no problem with giving it if we

14   didn't think it was an issue and if we thought it was really

15   relevant.  I don't see this notion that this number is going to

16   connect them to all these e-mails and they will be able to

17   depose people about Joe Jones who infringed in 2013 and 2014

18   and '12 on their copyrights and then on some other copyrights.

19   I just don't think there is e-mails out that there that are

20   like that.  So --

21        THE COURT:  All right.  Let me -- what is the purpose

22   of you needing to have the ICOMS number as opposed to just some

23   unique identifier that you know that, you know, that relates to

24   this issue with this IP address, or whatever?

25        MR. ZEBRAK:  Yes, Your Honor.  I would like to answer

1    that, and also respond to a couple of other things very

2    briefly.

3           So I think the starting point should be on Cox to

4    justify why it needs to change the number.  From our

5    perspective, the reason we want the number is that's how it's

6    records exist in the normal course.  E-mail May cite to it.

7           And more importantly, when we work with witnesses in

8    depositions, they're not going to understand some unique number

9    that Winston & Strawn assigns to this.  They will understand --

10   they will understand an ICOMS field.

11          And when we put a witness on the stand at trial,

12   we're going to walk through the interrelatedness of the revenue

13   information from its financial database with the notice data

14   from its CATS database.

15          And the idea that somehow this could be used to

16   identify a subscriber is really just preposterous.  It's an

17   internal database ID number within Cox.  It's not the

18   customer's account number on their billing statement.  This is

19   just an internal unique serial number they have ascribed to a

20   subscriber for purposes of cross-referencing things internally.

21          So -- and there is no declaration in the Court about

22   risks of disclosure of someone's personal identity from this.

23          THE COURT:  Well, no, there is some information about

24   their being concerned about the personal identifying

25   information being included.  But I understand your argument.

12

1         MR. ZEBRAK:  Yes, Your Honor.  And that, of course,

2   that information though is about what could be subsumed within

3   the tickets.  It has nothing to do with the personal nature of

4   an ICOMS ID.

5         And Cox's counsel just mentioned that there is some

6   burden involved here.  There is no articulated burden in

7   producing a summary level information, nor any burden involved

8   in going back to 2011 versus '12.

9         And as Your Honor seized on already, their changing

10  normal course by assigning a proxy number to it that, you

11  know -- that only creates more work.  So ...

12        THE COURT:  All right.  Okay.  For item number 3, I

13  am going to go ahead --

14        MR. ZEBRAK:  Oh.  And, Your Honor, the only other

15  thing I would like to say on this, if we could, is at the last

16  hearing plaintiffs were required by Court order to produce

17  historical revenue data on its tracks at issue in the case

18  going back to 2011.

19        So there seems to be sort of a parallel that we would

20  like to keep consistent.

21        THE COURT:  Well, revenue data and complaints are

22  apples and oranges.

23        MR. ZEBRAK:  Yes, Your Honor.

24        THE COURT:  Okay.  Anything else?

25        MR. ZEBRAK:  No, Your Honor.

1          THE COURT:  All right.  On item number 3, I'm going

2    to require that they produce the information with the ICOMS ID.

3    And that the time period will be 2012 through 2014.

4          Okay.  So that takes care of item number 3.

5          Do you want to go 1 or 2 next?  Which --

6          MR. ZEBRAK:  Yes, Your Honor.

7          THE COURT:  Let's do the revenue one.

8          MR. ZEBRAK:  Yes, Your Honor.  So as I mentioned a

9    little while ago, the case, of course, is about Cox's continued

10   provision of service to subscribers it knew were engaged in

11   infringement.  And what we want to be able to do is to

12   correlate what Cox knew about those subscribers' infringement

13   along with Cox's receipt of revenues from those infringers.

14         And here Cox has -- you know, it's unclear, quite

15   frankly, put in declarations that we think -- you know, the

16   purpose of a declaration is, of course, to clarify and put the

17   parties and the Court in a position to resolve the dispute.  We

18   think that these declarations were more designed to just oppose

19   the discovery rather than clarify what they have and how they

20   have it.

21         But whether they call it revenue information or

22   billing information, you know, Cox knows what its subscribers

23   paid to it over time.

24         THE COURT:  Well, it knows what it billed, and at

25   least it is indicating that it can track or it is contained in

1  the ICOMS system what was billed.  And whether they don't

2  collect on their bills or not, I don't know.  But, you know,

3  apparently they are trying to mistake a distinction as to what

4  was billed and what are revenues.

5          MR. ZEBRAK:  Yes, Your Honor.  But if I could expound

6  on that slightly because I think it's a little more refined

7  than that based on how they briefed it.

8          So on the one hand they say, we don't track or

9  maintain revenue information in this ICOMS database.  At the

10  same time they say, I don't have the exact words in front of

11  me, but what we have here, we don't maintain complete revenue

12  information.  And that database lacks info next for accurately

13  calculating revenue.

14          THE COURT:  Does it make any real difference to you

15  whether it's billing information or revenue information?  We're

16  not getting down to, you know, nickels and dimes here.

17          MR. ZEBRAK:  Of course, Your Honor.  Of course, Your

18  Honor.

19          THE COURT:  And if somebody didn't pay their bill one

20  month and they paid it the next month, and they maybe had to

21  have an interest charge or something --

22          MR. ZEBRAK:  Yes, Your Honor, right.

23          THE COURT:  This is not going to get into the

24  granular nature of those kinds of things.

25          MR. ZEBRAK:  Right.  Right.  Well, come at trial they

1    no doubt will attack us for our experts and our use with their

2    witnesses.  And when we try and calculate the sum total of what

3    Cox received from these subscribers that it knew were engaged

4    in infringement, it no doubt is going to try to beat us up

5    saying it doesn't accurately reflect what it received.

6            But on the billing information, it does say that the

7    ledger side of that system includes not just what it billed,

8    but also information about accounts receivable and credits.

9            So it's unclear to us the nomenclature they're using

10   about -- about revenue versus billing.  And if they want to

11   produce billing information instead of revenue information, if

12   they'll -- if they'll stipulate right now that they won't at a

13   trial say that what they actually received is less than what

14   the system reflects on billing, that's fine with us.

15           You know, but the bottom line is, it knows who these

16   subscribers are.  It has information on how it benefitted from

17   these subscribers financially.

18           And, you know, the information, Cox says it's only of

19   marginal relevance.  Nothing could be further from the truth

20   than that.  I mean, this goes squarely at a number of core

21   issues in the case.

22           You know, there is a difference between us and Cox's

23   counsel in our views of how to prove the financial interest

24   prong of vicarious infringement.  We think when it decides to

25   keep a subscriber rather than terminating it, obviously all

1    that ill-gotten revenue after that is a direct financial

2    benefit.

3              But without even delving into that issue, which is a

4    little more legally dense, Cox has no argument against why the

5    information we seek isn't super-strongly relevant to the

6    statutory damages issues of Cox's profits as well as Cox's --

7    you know, the need to deter Cox.

8              And we need to see not just the aggregate Cox got

9    from these subscribers it knew was infringement, but then

10   correlate it against its decisions not to terminate them.

11   That's incredibly powerful evidence, and it's why Cox really

12   doesn't -- doesn't want to produce that.

13             And quite frankly, it cites -- you know, it goes on

14   in its declarations about the costs of doing it manually.  But

15   we're not interested in them doing this manually.  Just as

16   plaintiffs are required to do in response to a number of

17   discovery requests, we're running reports to figure out how to

18   pull information out.  And in the context of this case and

19   these issues, $15,000 is something that the parties are

20   routinely absorbing.

21             So, you know, again, we just think it's very

22   relevant.  It's all in one database, and we would like it

23   produced.  And we would like them, if they are not going to

24   produce revenue information, which we don't think they have

25   articulated that they lack, we would like them to produce at

1    least this billing information and be held to --  be held to

2    the proposition of that's what it received in revenue.

3              THE COURT:  Okay.

4              MR. ZEBRAK:  Thank you, Your Honor.

5              THE COURT:  Thank you.

6              First help me understand the difference between the

7    billing and the revenue argument.

8              MS. GOLINVEAUX:  Yes, Your Honor.  So ICOMS is Cox's

9    subscriber management system.  The records that the plaintiffs

10   are seeking, this is not the kind of report that Cox could run.

11   It doesn't track revenue on a per subscriber basis.  So it

12   doesn't have a business need to run that type of report in the

13   ordinary course.

14             So as is described in the Jarchow declaration, this

15   would require, to do this in an automated way -- automated way,

16   hiring an outside engineer to come in and write code to create

17   this special report they are seeking --

18             THE COURT:  I mean, you have got the information,

19   it's just how are you going to access it.  Okay.

20             So what I'm trying to find out is, you know, what's

21   the word game between billing and revenue?  I mean, if I called

22   Cox up right now and if I had a Cox account and I gave them my

23   account number, they could pull up something that had, I

24   assume, my billing information that would include what was I

25   billed and whether those bills were paid, right?

1          MS. GOLINVEAUX:  Your Honor, there is, as described

2     in the declaration, there is the ledger section of ICOMS.

3          THE COURT:  Right.

4          MS. GOLINVEAUX:  And it does contain, in addition to

5     the amount billed, certain account receivable information, like

6     debits and credits.

7          And my understanding is that to create the report

8     that processed all that in a meaningful way to show what was

9     actually paid versus what was billed, is a more complicated

10    process and more involved process.

11         THE COURT:  Is there any generic information as to

12    Cox receives 98 percent of its billings?  I mean, if this is a

13    situation where you're going to try and make some, you know,

14    cute argument that they were only billed and that doesn't

15    indicate what we actually got as revenues, I want them to have

16    some generic information they can use to say, okay, they only

17    gave us the billing information, but historically Cox, you

18    know, gets money in the door for 98 percent of its billings, or

19    90 percent of its billings, or whatever it actually -- the

20    realization rate for its billings for subscribers.

21         Is there that kind of information available?

22         MS. GOLINVEAUX:  For the time period at issue, Your

23    Honor, I am just not sure if they have that, that information

24    about percentages of dollars they collect off of the billing

25    information.  Off the bills, the amounts billed.

19

1          THE COURT:  Well, that's the kind of information that

2     you would think would routinely be looked at and analyzed by

3     the business people within the organization, wouldn't it?

4          MS. GOLINVEAUX:  It certainly may, Your Honor.

5          THE COURT:  Okay.  All right.  So the billing

6     information, help me understand what the situation is with

7     that.  You have to pay somebody $15,000 to prepare some type of

8     script or program or program to run to get this information

9     from the database that you have maintained.  Okay?

10          MS. GOLINVEAUX:  That's correct, Your Honor.  And we

11     think that -- counsel talked about the relevance of this

12     information.  We think that they are just wrong about the

13     vicarious liability issue.  Vicarious liability requires right,

14     ability to control, and a direct financial benefit.

15          There is no dispute that Cox bills for its services,

16     its Internet service.  The amount it billed to each of these

17     58,000 subscribers is not relevant to the direct financial

18     benefit prong of vicarious.

19          And in light of the marginal relevance and the fact

20     that Cox cannot create these reports in the ordinary course and

21     is going to have to hire an engineer to go in and write a

22     script to extract it, we think it's not appropriate.

23          THE COURT:  Okay.  What about the time period, your

24     argument on that.

25          MS. GOLINVEAUX:  Your Honor, they're asking for the

1    information for more than eight years, from 2011 to the

2    present.  If Your Honor is inclined to order it, we think that

3    the claims period is the relevant time period.  They're saying

4    it's relevant to damages.  What Cox billed these subscribers

5    before or after their claims period can't possibly be relevant

6    to statutory damages or actual damages.

7            THE COURT:  Well, why wouldn't -- if in fact you

8    should have terminated a customer in let's say January of 2014

9    based on, you know, 13 or 14 or 15 different complaints.  And,

10   you know, you decided that, you know, we need to keep every

11   customer.  And, you know, that customer is continuing to pay

12   Cox money now, why wouldn't that, to some extent, come into

13   play as to, you know, it was important for you not to terminate

14   this customer because you wanted that revenue stream going in

15   the future?

16           MS. GOLINVEAUX:  Well, Your Honor, that can't

17   possibly be relevant to damages.  They can't seek -- they can't

18   show --

19           THE COURT:  Why wouldn't it go to willfulness?  My

20   willful act so that I could get this revenue stream for four or

21   five more years, or whatever the standard industry rate is

22   that, you know, somebody doesn't change their Internet service

23   or these kinds of providers, why doesn't that come into play as

24   to willfulness?

25           MS. GOLINVEAUX:  Because, Your Honor the standard for

1   willfulness is whether Cox was aware that its actions with

2   respect to the plaintiffs' works constituted infringement.  And

3   whether it was receiving revenue from these subscribers at

4   issue years before or years after the claims period is not

5   relevant to that inquiry.

6          THE COURT:  Okay.  The script that would be written

7   to do this, would it produce -- I mean, you made some comment

8   about you only have this monthly.  Would this be monthly

9   information, or quarterly information, or what's the process

10  that you would anticipate that information being generated?

11         MS. GOLINVEAUX:  If the -- if we're writing a script,

12  I think it could be either monthly or annually because the

13  script could roll it up by year.

14         THE COURT:  Okay.  All right.  Let me hear from the

15  plaintiff about the time period information and whether yearly

16  or -- I assume you would want it -- you want it quarterly and

17  yearly.  I don't -- I am not sure why if you got it quarterly,

18  why you would need it to be quarterly and yearly.

19         But I assume you would want it on a monthly basis as

20  opposed to a yearly basis; is that right?

21         MR. ZEBRAK:  Yes, Your Honor.  Given that it's just

22  pulling it out of a database, it's -- it will be more useful at

23  a trial for us to be able to slice and dice the data different

24  ways.  And if it just wants to give us a report giving --

25  giving the data monthly, that's absolutely fine with us.

1          Your Honor, there are several statements I would like

2    to respond to, but if Your Honor is already inclined to find

3    that the information is relevant, I won't need to speak to

4    that.

5          THE COURT:  Well, the time period I do need to hear

6    you.

7          MR. ZEBRAK:  Yes, Your Honor.

8          THE COURT:  And I can understand why a brief,

9    historical time period might be appropriate, just to know if,

10   you know, whether this was a new big customer or a long-term

11   big customer, whatever.

12         MR. ZEBRAK:  Yes, Your Honor.

13         THE COURT:  But I'm still a little unsure as to how

14   significant the amount is to the present as opposed to whether

15   that customer continued for a year, or two years, or something

16   like that.

17         MR. ZEBRAK:  Yes.

18         THE COURT:  So why is the information going to, you

19   know, the present time significant?

20         MR. ZEBRAK:  Yes, Your Honor.  So to be clear, there

21   are two issues on the time period.  There is the claims period,

22   and then there is the before and the after.

23         THE COURT:  Right, right.

24         MR. ZEBRAK:  But I will begin with the after, as Your

25   Honor asked.

23

1           THE COURT:  Okay.

2           MR. ZEBRAK:  So in terms of Cox's profits, and sort

3  of ill-gotten gains from continuing to provide service to these

4  subscribers it knew was engaging in infringement, obviously

5  however much money it kept receiving, you know, those

6  ill-gotten gains didn't stop at the end of our claims period.

7           You know, had it terminated that subscriber -- I

8  mean, Cox is free to make whatever arguments it wants to make

9  at a trial about our use of the revenue information being too

10 expansive or not.  That really is a question for trial.

11          But if, you know, if Cox didn't terminate a customer,

12 and then that customer continued for another two years, or

13 continued to the present day, that's all ill-gotten revenue

14 that Cox shouldn't have received, and speaks to its profits, as

15 well as the need to deter Cox --

16          THE COURT:  Well, revenue and profits are two

17 different things.

18          MR. ZEBRAK:  Yes, Your Honor.

19          THE COURT:  And, you know -- and I'm -- well, keep

20 going.

21          MR. ZEBRAK:  Well -- no, sure.  And it's certainly

22 entitled to come in and try and say, here is what we actually

23 made on these subscribers, not the gross receipts.

24          But even putting aside whether -- how you prove

25 profits and the interaction between offsetting revenue with

24

1   costs, just the need to deter Cox, it's incredibly powerful

2   if -- you know, it shows -- you know, what Cox wants to do is

3   just produce the raw aggregate amount of money it made from

4   certain division of its business.  And then come at trial it's

5   going to say, that's overbroad because it includes lots of

6   subscribers who never infringed.

7          And what we want to do is just have the information

8   showing how Cox received moneys from these subscribers it knew

9   was engaging in infringement but chose to keep them.

10          And so, you know, we just think -- you know, going

11   back earlier than the claims period, given Your Honor's ruling

12   on the notice data being just 2012 rather than 2011, having it

13   coterminous with that, you know, makes sense in terms of 2012

14   rather than going back to '11 because we can then see, okay,

15   here is a subscriber, John Smith, here is what Cox was getting.

16   It knew he was engaged in infringement, but yet Cox kept

17   providing service.  And look at how the revenues kept growing,

18   maybe through to today.

19          And so, our experts, you know, might produce a report

20   that calculates that.

21          I mean, the reason why they're fighting this so hard

22   is because it's incredibly probative.  And there is no

23   additional burden -- you know, they're running a report to pull

24   data from a database, and once they're doing that, I mean, I

25   think the relevance is clear.

1          THE COURT:  Well, a monthly report for 58,000

2   customers for additional years, you know, takes computer time

3   to do that.  I am not sure how much computer time.

4          MR. ZEBRAK:  Yeah.

5          THE COURT:  But, I mean, it generates a lot of

6   information that then -- does that really bear any significant

7   benefit to the parties in having what was -- you know, what

8   this customer was billed in 2017 when you're talking about an

9   infringement period that ended in 2014.

10          MR. ZEBRAK:  Yeah.  I mean, I just think, you know,

11   when a -- look, if a company terminates my account with them, I

12   am less likely to probably sign up with them again.

13          And the bottom line is, this is all revenue Cox

14   wouldn't receive.  It can make its arguments at trial, it can

15   have its experts make its argument, but all this revenue -- I

16   mean, what Cox wants to do is to say, look, this was a limited

17   period of bad behavior at our company.  And it wants to try and

18   cabin everything into just this claim period.

19          And it wants to, you know, just produce its -- again,

20   its overall data and not allow us to focus on the moneys it

21   received from these bad subscribers.  And in the context of

22   this case, running a report on just -- you know, revenues from

23   these subscribers, really just isn't -- isn't that demanding.

24          THE COURT:  Okay.  All right.  Well, I think I

25   understand what the issues are there.

26

1          I do think -- you know, I can appreciate the

2    defendants' argument that they don't agree this information is

3    relevant.  And whether it makes its way into the trial of this

4    case will be something for Judge O'Grady to decide.  But I do

5    think at this point in time it is discoverable information.

6          And it is discoverable information that is available

7    to Cox.  The method that they maintain it, if it makes it

8    difficult for them to gather that information, that still

9    doesn't make it not relevant information.

10          And the idea that it's going to cost $15,000 doesn't

11    overwhelm me, to be honest with you.  Given the nature of this

12    case and the amount that is being spent to litigate this case,

13    that doesn't really impact me on the proportionality argument.

14    That, you know, that kind of investment to get relevant

15    information to produce in this case doesn't tip the scales.

16          So I am going to require that revenue information

17    attributable -- well, that billing information, yes,

18    attributable to each subscriber for the time period from 2012

19    through 2016.  That gives you one year early during the period,

20    a five-year period.  I think that gives you at least a point

21    for your experts to look at to see, to generate, you know -- I

22    assume your experts are going to also then, you know, not only

23    try to do what they have gotten to date, but what will be going

24    in the future.  And this is -- that's enough information for

25    them to deal with.

1          It needs to be done on a monthly basis.  So that

2    needs to be generated on a monthly basis.  So it will be from

3    -- a monthly basis from 2012 to 2016.

4          I also want you to investigate and find out whether

5    there is available information concerning the realization rates

6    on billing information for that time period from 2012 through

7    2016.

8          So that, you know, we don't get into this, you know,

9    that was only what was billed, it wasn't really what was

10   received.  That there can be some general correlation as to

11   billing and actual receipts from the company since you've

12   indicated or represented to the Court that the revenue

13   information is much more difficult to obtain.  Okay.

14         All right, issue 2.  You need to help me understand

15   what it is really is you're asking for on this.  Because, you

16   know, if we're talking about every communication dealing with

17   every infringement, that's not going to win any argument.

18         MR. ZEBRAK:  Yes, sir.

19         THE COURT:  And so, I mean, it's a little unclear to

20   me -- and, you know, it's difficult to order something that's

21   unclear because I don't want to put the other side in a

22   position of coming back and not knowing what it is I'm

23   requiring them to do.  So that you come back and say, they

24   didn't do what you told them to do, and we have to come back in

25   and say, I interpreted it as this, I interpreted it as that.