# Exhibit 1

shaped the musical landscape as we know it, both in the United States and around the world.

2. Cox is one of the largest Internet service providers ("ISPs") in the country. It markets and sells high-speed Internet services to consumers nationwide. Through the provision of those services, however, Cox also has knowingly contributed to, and reaped substantial profits from, massive copyright infringement committed by thousands of its subscribers, causing great harm to Plaintiffs, their recording artists and songwriters, and others whose livelihoods depend upon the lawful acquisition of music. Cox's contribution to its subscribers' infringement is both willful and extensive, and renders Cox equally liable. Indeed, for years, Cox deliberately refused to take reasonable measures to curb its customers from using its Internet services to infringe on others' copyrights—even once Cox became aware of *particular customers* engaging in *specific, repeated acts* of infringement. Plaintiffs' representatives (as well as others) sent hundreds of thousands of statutory infringement notices to Cox, under penalty of perjury, advising Cox of its subscribers' blatant and systematic use of Cox's Internet service to illegally download, copy, and distribute Plaintiffs' copyrighted music through BitTorrent and other online file-sharing services. Rather than working with Plaintiffs to curb this massive infringement, Cox unilaterally imposed an arbitrary cap on the number of infringement notices it would accept from copyright holders, thereby willfully blinding itself to any of its subscribers' infringements that exceeded its "cap."

3. Cox also claimed to have implemented a "thirteen-strike policy" before terminating service of repeat infringers but, in actuality, Cox never permanently terminated any subscribers. Instead, it lobbed "soft terminations" with virtually automatic reinstatement, or it simply did nothing at all. The reason for this is simple: rather than stop its subscribers' unlawful activity, Cox prioritized its own profits over its legal obligations. Cox's profits

4

105. Cox and its subscribers do not have any authorization, permission, license, or consent to exploit the copyrighted recordings or musical compositions at issue.

106. Cox's subscribers, using Internet access and services provided by Cox, have unlawfully reproduced and distributed via BitTorrent or other P2P networks thousands of sound recordings and musical compositions for which Plaintiffs are the legal or beneficial copyright owners or exclusive licensees. The copyrighted works infringed by Cox's subscribers, which have been registered with the U.S. Copyright Office, include those listed on Exhibits A and B, and many others. The foregoing activity constitutes direct infringement in violation of 17 U.S.C. §§ 106 and 501 *et seq.*

107. Cox is liable as a contributory copyright infringer for the direct infringements described above. Through Plaintiffs' infringement notices and other means, Cox had knowledge that its network was being used for copyright infringement on a massive scale, and also knew of specific subscribers engaged in such repeated and flagrant infringement. Nevertheless, Cox facilitated, encouraged and materially contributed to such infringement by continuing to provide its network and the facilities necessary for its subscribers to commit repeated infringements. At the same time, Cox had the means to withhold that assistance upon learning of specific infringing activity by specific users but failed to do so.

108. By purposefully ignoring and turning a blind eye to the flagrant and repeated infringement by its subscribers, Cox knowingly caused and materially contributed to the unlawful reproduction and distribution of Plaintiffs' copyrighted works, including but not limited to those listed on Exhibits A and B hereto, in violation of Plaintiffs' exclusive rights under the copyright laws of the United States.

109. Each infringement of Plaintiffs' copyrighted sound recordings and musical

26