# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

SONY MUSIC ENTERTAINMENT, *et al.*,

    Plaintiffs,

v.

COX COMMUNICATIONS, INC., *et al.*,

    Defendants.

Case No. 1:18-cv-00950-LO-JFA

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS'
MOTION FOR LEAVE TO TAKE ADDITIONAL THIRD-PARTY DEPOSITIONS**

I.     **INTRODUCTION**

Cox has already taken four third-party depositions. Cox seeks to take another four. As such, Cox seeks relief from the Court's order limiting third-party depositions to five. Plaintiffs have no objection to Cox taking additional third-party depositions of the RIAA and MarkMonitor. This would put Cox one deposition over the Court's limit of five. The other two depositions that Cox seeks to take, however, are unnecessary. The only reason that Cox needs the relief it now seeks is because Cox has already taken several third-party depositions that were unnecessary. Having squandered three of its five permitted third-party depositions, Cox now comes to the Court seeking relief from a problem of its own making.

This is a large case that began with a longer period for discovery than generally permitted. The Court recently modified the pretrial order to allow the parties even more time for fact and expert discovery, without any change to the date of the pretrial conference. The limited time that remains is already loaded with expert reports, fact and expert depositions, preparation for the pretrial conference, and myriad other tasks and issues. Plaintiffs explained to Cox that, subject to the Court's approval, they would stipulate to each side being able to take an additional non-party, non-expert deposition beyond the limit. However, the further discovery that Cox seeks is cumulative, highly attenuated, and would prejudice Plaintiffs through additional costs and distractions. Time is precious at this late stage of the case. As described below, Cox created its predicament by pursuing unnecessary third-party discovery and should only be granted leave to take one additional non-party, non-expert deposition.

## II. BACKGROUND

Absent objection from Plaintiffs, Cox was on track to disregard the pretrial order's limit on the number of third-party depositions. Cox has already taken four non-party, non-expert depositions.

To date, Cox has already deposed:

- *Audible Magic Corporation*
    - A company that provides content identification software used by MarkMonitor.

- *Dr. Christopher Monson*
    - Formerly of Harbor Labs, a consulting company that performed an analysis of the MarkMonitor system used in the Copyright Alert System.
    - This deposition was unnecessary because Cox had the complete Harbor Labs report and Cox has been able to conduct its own complete inspection of the Mark Monitor system.

- *Dr. Seth Neilson*
    - Formerly of Harbor Labs, a consulting company that performed an analysis of the MarkMonitor system used in the Copyright Alert System.
    - This deposition was unnecessary for the same reasons as set forth above concerning Dr. Monson. It was also duplicative.

- *Stroz Friedberg LLC*
    - A consulting company that performed that performed an analysis of the MarkMonitor system used in the Copyright Alert System.
    - This deposition was also unnecessary for the same reasons as the Harbor Labs depositions.

At the same time, Cox noticed and was proceeding with another four non-party, non-expert deposition subpoenas:

- *Jill Lesser*
    - Formerly of the Center for Copyright Information, or "CCI".
    - This deposition is unnecessary. CCI has no involvement or relevance to the case at bar.

- *MarkMonitor, Inc.*
    - Anti-piracy vendor who detected infringements and reported them to Cox.

- *The Recording Industry Association of America ("RIAA")*

  - o   Trade group for recording industry.

- *Victoria Sheckler (of the RIAA)*
  - o   Employee of RIAA who communicated with Cox regarding copyright infringement issues.
  - o   This deposition is unnecessary because Cox has already noticed a Rule 30(b)(6) deposition of the RIAA and has copies of Ms. Sheckler's relevant emails.

Cox filed the instant motion only because Plaintiffs asked Cox to litigate within the rules set forth by the Court.

### III. ARGUMENT

Cox's arguments for three additional depositions are conclusory, misleading and unavailing. Cox summarily asserts "[t]he MarkMonitor system was used to identify every alleged infringement claimed to have occurred on Cox's network. Thus, all of the third-party depositions seek highly relevant information." (Mtn., at 2). Similarly, Cox asserts that the third-party depositions are "critical to Cox's defenses" and "shall produce useful and relevant information regarding critical issues in Plaintiffs' claims." (Mtn. at 7).

Cox's positions are not supported by the facts. By way of basic background, MarkMonitor was not alone in identifying infringement occurring on Cox network and reporting it to Cox. Other copyright owners or their anti-piracy vendors identified infringing activity, including by some of the same specific Cox subscribers referenced in Plaintiffs' notices from MarkMonitor, and reported those infringers and infringements to Cox. More relevant to the instant motion, Cox cannot show that the additional depositions that Cox proposes each seek highly relevant, non-duplicative information and will not burden Plaintiffs.

**Audible Magic**. Cox's argument regarding Audible Magic provides no basis for allowing the additional depositions that Cox seeks. Cox argues that it only recently learned of information that would have led it to ask for the original pretrial order to allow for more than five

non-party, non-expert depositions. (Mtn. at 3, 9.). In contending it learned of Audible Magic's involvement only as a result of reviewing third-party document productions, Cox ignores that Plaintiffs produced documents on February 22, 2019—three months ago—demonstrating that Audible Magic's fingerprinting technology was used. Ryu Decl. ¶ 3. Cox waited until April 16 to subpoena Audible Magic for deposition and has since deposed Audible Magic. Ryu Decl. Ex. A. Nor does Cox explain why Audible Magic supposedly should have been listed in Plaintiffs' initial disclosures or interrogatory answers. In any event, the timing of Audible Magic's disclosure has no bearing on Cox's professed needs for the other seven depositions, and Cox has not argued otherwise.

**Copyright Alert System**. Cox has unnecessarily used its third-party depositions to pursue issues relating to the Copyright Alert System ("CAS"). As the Court may recall, the CAS was a private agreement between a number of copyright owners in the record industry and movie industry, as well as their respective trade associations, on the one hand, and a number of different ISPs, on the other hand. (ECF No. 82-1, ¶ 12; ECF No. 82-2, ¶ 30; ECF No. 82-8, ¶ 26.) Cox was not a participate in CAS. Nor were any of the music publisher plaintiffs.

Cox erroneously describes CAS as "an inter-industry agreement concerning standards for addressing online infringement through Internet Service Providers." (Mtn. at 4). It was nothing of the sort. CAS was not an industry standard. In fact, as the MOU sets forth, it was an educational program that did not replace any legal obligations under the Copyright laws. The very documents creating CAS specifically state that it did not address whether an ISP was meeting its legal obligations. (ECF No. 82.) Defendants previously sought broad discovery into CAS which the Court denied, requiring Plaintiffs to produce only its underlying Memorandum of Understanding and Implementation Agreement. Ryu Decl. Ex. B.

When the CAS was put into place, CCI was created as the corporate entity to operate the program. At CCI's request, Stroz Friedberg and Harbor Labs examined the MarkMonitor system used to identify infringements and send educational notices under CAS and prepared written reports on their review. Cox has already deposed Dr. Monson and Dr. Nielson, both of whom formerly worked for Harbor Labs, a consulting company that drafted a report on MarkMonitor's involvement in the CAS. Cox has also deposed a separate consulting firm, Stroz Friedberg, that prepared a different report on MarkMonitor's involvement in the CAS. Cox still seeks to depose another non-party, Jill Lesser, the former executive director of the Center for Copyright Information, the now-dissolved entity that managed the CAS.

Cox misleadingly refers to the Stroz Friedberg and Harbor Labs reports as concerning "the MarkMonitor system utilized to identify the alleged infringements in this case" or "the MarkMonitor system utilized in this case." (Mtn. at 3). The written reports prepared by Stroz Friedberg and Harbor Labs address the MarkMonitor system used to detect infringements and generate notices pursuant to the *CAS*, not the RIAA notice program that is involved in this case. In discovery, Cox received copies of those CAS reports. Ryu Decl. ¶¶ 4, 5. But Cox did not participate in the CAS. The infringement notices to Cox were not pursuant to CAS. Cox's insistence on conflating the educational notices in CAS and the infringement notices sent to Cox is misleading.

As to infringement notices sent to Cox, it has already obtained document discovery from MarkMonitor and has served MarkMonitor with a deposition subpoena. Ryu Decl. Ex. C. Besides documents, Cox and its expert have reviewed MarkMonitor's source code for its system used to identify infringements on the Cox network and report them to Cox. Ryu Decl. ¶ 6. It is thus puzzling that Cox chose to utilize three of its five non-party, non-expert depositions on Dr.

Monson, Dr. Nielsen, and Stroz Friedberg, in order to pursue irrelevant, CAS-related discovery, and similarly still intends to devote another to Jill Lesser. Moreover, as irrelevant as such depositions may be, there was also nothing "unforeseen" to Cox about them. Cox's September 24, 2018 Answer and Counterclaim discusses CCI, Stroz Friedberg and Harbor Labs at length, (ECF No. 21.) Discovery began months later.

Cox's explanation for why it took two depositions of Dr. Monson and Dr. Nielson is equally unavailing. While Cox faults Harbor Labs for not being "even moderately cooperative" (Mtn. at 10), the correspondence produced by Cox with its motion indicates that there was significant coordination between Cox and this non-party, both by phone and email. (ECF No. 142-10). Given Cox's approach to third-party discovery, there is no doubt that Cox would have gone forward with depositions of both authors of the report (i.e., Dr. Monson and Dr. Nielson), not just one of them.

**RIAA and Ms. Sheckler**. Cox's approach concerning RIAA and Victoria Sheckler overreaches. In its motion, Cox indicates it seeks to depose RIAA "to receive highly relevant information regarding the notices sent to Defendants of alleged infringement on Cox's network and regarding the RIAA's relationship with MarkMonitor and Audible Magic." (Mtn at 4-5.) Cox next indicates that it seeks to depose Victoria Sheckler because of her involvement in correspondence between Cox and RIAA and contends that it has "been needlessly forced to notice Ms. Sheckler for deposition in her individual capacity in addition to the RIAA." (Mtn at 5.) Cox's briefing is revisionist history. Cox was not "forced to notice Ms. Scheckler" at all, and certainly not because of anything RIAA has done. Cox simultaneously served a Rule 30(b)(6) deposition subpoena on RIAA and an individual deposition subpoena on Ms. Scheckler at the very same time. Ryu Decl. Exs. D, E. Cox wants to depose Ms. Sheckler in her individual

6

capacity to explore her communications with Cox. Cox has made this much clear in the meet-and-confer correspondence attached to its motion and in the motion itself. At the same time, Cox included that very topic in its Rule 30(b)(6) notice to RIAA. The RIAA has agreed to make a witness available to testify, including on the issue of Ms. Sheckler's communications with Cox.

RIAA, of course, has the right to select its own designee to appear at a 30(b)(6) deposition and Cox cannot mandate that the RIAA designate Victoria Sheckler for some or all topics. To the extent Cox chooses RIAA for a permitted non-party, non-expert deposition, RIAA's designee will be prepared to testify to relevant communications between the RIAA and Cox.

**MarkMonitor.** Cox contends a MarkMonitor deposition is critical. Assuming that is true, Cox can use one of its permitted non-party, non-expert depositions on MarkMonitor.

IV. **CONCLUSION**

Cox blames Plaintiffs. Cox blames Harbor Labs. Cox blames the RIAA. But Cox fails to recognize that parties must make choices about which third-parties they wish to pursue in discovery. Plaintiffs have made those hard choices and acted within the limits of the pretrial order. Cox chose a different path. It pursued a scorched-earth approach and has already devoted three depositions to irrelevant CAS-related discovery, disregarding this Court's guidance when it largely denied Cox's prior motion to compel discovery on the CAS. Additionally, rather than reviewing the downloads of the infringing files, Cox chose to depose Audible Magic, the supplier of the content identification technology utilized by MarkMonitor. Cox's hyperbole and attorney argument are not grounds for its requested increase on the limit on non-party, non-expert depositions, let alone at this very late and busy stage of the case.

|  |  |
|---|---|
| Dated May 15, 2019 | Respectfully Submitted,<br><br>/s/ *Scott A. Zebrak*<br>Scott A. Zebrak (38729)<br>Matthew J. Oppenheim (*pro hac vice*)<br>Jeffrey M. Gould (*pro hac vice*)<br>OPPENHEIM + ZEBRAK, LLP<br>4530 Wisconsin Avenue, NW, 5th Floor<br>Washington, DC 20015<br>Tel:  202-480-2999<br>scott@oandzlaw.com<br>matt@oandzlaw.com<br>jeff@oandzlaw.com<br><br>*Attorneys for Plaintiffs* |