UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

SONY MUSIC ENTERTAINMENT, *et al.*,

    Plaintiffs,

v.

COX COMMUNICATIONS, INC., *et al.*,

    Defendants.

Case No. 1:18-cv-00950-LO-JFA

**REDACTED PUBLICLY FILED VERSION**

**REPLY BRIEF IN SUPPORT OF COX'S MOTION FOR LEAVE TO TAKE ADDITIONAL THIRD-PARTY DEPOSITIONS**

Defendants Cox Communications, Inc., and CoxCom LLC. (collectively, "Cox") submit this memorandum of law in further support of Cox's Motion for Leave to Take Additional Third-Party Depositions ("Motion for Leave").

**I.      INTRODUCTION**

Defendants are justified in seeking three additional depositions beyond the current limit in order to depose MarkMonitor, Jill Lesser, the former head of the Center for Copyright Information ("CCI"), the organization that ran the Copyright Alert System, and Victoria Sheckler, the RIAA representative who corresponded with Cox to negotiate the number of copyright notices that the RIAA sent to Cox on a daily basis on behalf of Plaintiffs.

Plaintiffs agree to Cox taking one additional deposition to depose MarkMonitor, but oppose Cox deposing the other two on the basis that they are "unnecessary," "cumulative," and "would prejudice Plaintiffs through additional costs and distractions." Plaintiffs' Opposition ("Opp.") at 1. This case involves fifty-three plaintiffs collectively seeking more than a billion dollars in

1

statutory damages from Cox. It is a large and complex case and the two additional third-party depositions opposed by Plaintiffs are aimed at critical issues. The benefit of the information that will be gathered during these depositions far outweighs any purported burden on Plaintiffs of taking them, especially considering the stakes in this case. The two additional deponents are each located in Washington D.C., like Plaintiffs' counsel, are both represented by Plaintiffs' counsel, and Plaintiffs, some of the largest entertainment companies in the world, are not lacking in resources to attend them. There is ample time to take these two additional depositions in the more than six weeks remaining for discovery. Cox respectfully requests that the Court grant its Motion for Leave.

## II.    ARGUMENT

Plaintiffs acknowledge that MarkMonitor is a relevant third-party witness in this case—as they must, given that they identified it as such in their initial disclosures. *See* Opp. at 7.[1] Indeed, MarkMonitor was responsible for identifying every alleged infringement at issue in this case and sending every infringement notice to Cox.[2] However, Plaintiffs argue that (1) the depositions of Jill Lesser and Victoria Sheckler are unnecessary, and (2) that Cox's third-party depositions to date have been unnecessary and/or cumulative. Plaintiffs' arguments lack merit.

### A.    Jill Lesser Is a Relevant Witness Regarding the Copyright Alert System

Plaintiffs wrongly claim that the deposition of Jill Lesser is unnecessary and that CAS is irrelevant. As detailed in Defendants' Motion for Leave, the deposition of Ms. Lesser is directed

---

[1] *See* ECF No. 142-3, Plaintiffs' Initial Disclosures, Exhibit 2 to the Declaration of Golinveaux in Support of Cox's Motion for Leave (hereinafter, "Golinveaux Decl.").
[2] *Id*.   Despite acknowledging the relevance of MarkMonitor, Plaintiffs oddly note that "MarkMonitor was not alone in identifying infringement occurring on Cox [sic] network and reporting it to Cox." Opp. at 3. This is a *non sequitur* given that MarkMonitor—not "[o]ther … anti-piracy vendors" identified all of the alleged infringements in this case.

at important information regarding the CAS's graduated response system and the efficacy of the MarkMonitor system. Mot. at 4. Ms. Lesser was the executive director of CCI, which administered CAS, and is the only relevant witness for CCI, which is now defunct. For the reasons detailed in Section C below, contrary to Plaintiffs' argument, CAS-related discovery is highly relevant to a number of key issues in this case. Cox's deposition of Ms. Lesser will also not cause Plaintiffs undue burden or cost given that she is represented by Plaintiffs' counsel, located in Washington, D.C., and that her deposition will not last a full day.[3] Accordingly, Defendants should be permitted to take her deposition.

### B. Victoria Sheckler is a Critical Witness and Will Provide Valuable, First-Hand Testimony

Plaintiffs acknowledge that the RIAA is a relevant witness, Opp. at 6, yet still seek to block Defendants from deposing Ms. Sheckler, despite the fact that she personally had the relevant correspondence with Cox relating to the RIAA's notices at issue. *See* Mot. at 4-5. If RIAA designates only Steve Marks and not Ms. Sheckler as its 30(b)(6) witness, Cox should be permitted to depose Ms. Sheckler personally. Defendants recognize that the RIAA has the right to designate a 30(b)(6) witness of their choosing; however, that does not make Mr. Marks an adequate substitute for Ms. Sheckler, specifically in regards to correspondence between her and Cox. Plaintiffs have made Cox's daily limits on copyright notice processing a cornerstone of their case.[4] Ms. Sheckler specifically negotiated those limits with Cox. She also was the individual at the RIAA who appears to have managed RIAA's agreements with MarkMonitor concerning the sending of copyright notices to Cox and others on behalf of Plaintiffs.[5] Ms. Sheckler's deposition will provide highly relevant, first-hand, testimony regarding her negotiations with Cox, and the RIAA's relevant

---

[3] Supplemental Declaration of Diana Hughes Leiden ("Supp. Leiden Decl.") at ¶ 10.
[4] *See, e.g.*, Am. Compl. ¶ 87.
[5] Supp. Leiden Decl. ¶ 9.

agreements with MarkMonitor. Mr. Marks is not an adequate substitute for this highly relevant fact witness. Like Ms. Lesser, Ms. Sheckler is located in Washington, D.C., represented by Plaintiffs' counsel, and Cox does not anticipate needing a full day with her.[6] Affording Cox the opportunity to depose Ms. Sheckler will not cause Plaintiffs undue burden or cost.

      **C.    Cox's Other Third-Party Depositions Were Neither Unnecessary or Cumulative**

Plaintiffs claim that Cox's third party depositions have been "cumulative" and "unnecessary." Opp. at 2-3. That is far from the case.

        **1.    Depositions of The Witnesses Who Prepared the Harbor Labs and Stroz Friedberg Reports Were Highly Relevant and Not Cumulative**

Plaintiffs' claim that it was "unnecessary" to depose Dr. Monson, Dr. Nielson, the two former employees of Harbor Labs who drafted a report critiquing the MarkMonitor copyright policing system, and Stroz Friedberg, Opp. at 2, is belied by the fact that Cox's rebuttal experts specifically rely on the Stroz Friedberg and Harbor Labs reports, as well as deposition testimony that provided critical insight into the consultants' evaluation of MarkMonitor.[7] Cox's access to the final Harbor Labs and Stroz Friedberg reports is no substitute for the insight gained from the testimony of those that created the reports, the basis for their conclusions, and their answers to questions the reports raised.

Plaintiffs' argument that the depositions of Dr. Nielson and Dr. Monson were "duplicative" also lacks merit. Plaintiffs ignore the fact that they had different expertise and roles in drafting the report.[8] Cox also had to depose them personally because they were no longer with Harbor Labs, Harbor Labs disclaimed any knowledge whatsoever of the report, and there was no indication prior

---

[6] Supp. Leiden Decl. at ¶ 10.
[7] Supp. Leiden Decl. at ¶ 3.
[8] ECF No. 142-11 & 142-12, Declaration of Diana Hughes Leiden in Support of Defendant's Motion ("Leiden Decl.") at ¶¶ 10 & 11, Exhibits 3 and 4.

to the depositions that one of the two deponents was more appropriate or an adequate substitute for the other.[9] Plaintiffs' assertion that Harbor Labs "coordinat[ed]" with Cox on these depositions, Opp. at 6, is also belied by the record, which demonstrates that Harbor Labs refused to provide Cox with relevant information and actively tried to block Cox from deposing the drafters of the report.[10] Finally, Cox conducted half-day depositions of these two individuals on the same day, taking up no more time on the case schedule that a single deposition.[11]

### 2. CAS-Related Discovery is Highly Relevant

Plaintiffs also argue that "Cox has unnecessarily used its third-party depositions to pursue issues relating to the Copyright Alert System," which they continue to claim is irrelevant to this case. Opp. at 4-6. But issues relating to CAS are highly relevant for a number of reasons.

*First*, RIAA and certain of the Plaintiffs were parties to CAS, as were five large ISPs (Comcast, AT&T, Verizon, Cablevision, and Time Warner Cable).[12] The fact that some of the biggest players in the industry on both sides—including some of the Plaintiffs in this case and the entity that acted as the record label Plaintiffs' agent here—agreed that ISPs would employ a certain graduated response process to copyright infringement notices, and the nature of that process, is directly relevant to the reasonableness of Cox's graduated response process.

*Second*, a key difference between Cox's graduated response and CAS's procedure for responding to infringement notices was that CAS did not require ISPs to terminate subscribers as part of this process.[13] The facts obtained through discovery indicate that Cox's graduated response

---

[9] Leiden Decl. at ¶ 4, Exhibit 2.
[10] *Id.*
[11] ECF No. 142-11 & 142-12, Leiden Decl. at ¶ 9.
[12] Supp. Leiden Decl. at ¶ 3, Exhibit 1 at 24-25. Plaintiffs misleadingly note that none of the "music publisher plaintiffs" participated in CAS. Opp. at 4. While this is true, Plaintiffs Sony Music Entertainment and UMG Recordings, Inc. *did* participate—as did the RIAA, which served as *all* of the Plaintiffs' agent in sending infringement notices to Cox.
[13] Supp. Leiden Decl. at ¶¶ 5, Exhibit 1 at 8-13 and at ¶ 6, Exhibit 2.

program was tougher than the CAS system in important respects and also demonstrates the reasonableness of Cox's system of responding to infringement notices. Considering there is no clearly established legal standard for many of the issues in this case regarding the processing of copyright notices, a key inter-industry group's acceptance and implementation of a process that was in important respects more lenient than the one Cox utilized is relevant to the reasonableness of Cox's system.[14]

*Third*, the fact that CAS may have used a different *configuration* of the MarkMonitor system than the RIAA used to send notices to Cox, *see* Opp. at 5, makes the discovery sought by Cox *more* relevant, not less. REDACTED

Thus, Cox's depositions of third parties relating to CAS sought, and will seek, highly relevant information. Finally, the parties are still in the discovery phase of the litigation and the trial judge will determine whether evidence regarding CAS is admissible.

### D.  Plaintiffs' Belated "Disclosure" of Audible Magic Prejudiced Cox

Plaintiffs' argument that Cox should have been aware of Audible Magic Corporation's ("Audible Magic") involvement through a "disclosure" on February 22, 2019 is remarkable.

---

[14] Plaintiffs claim that "CAS was not an industry standard" but simply "an educational program that did not replace any legal obligations under the Copyright laws." Opp. at 4. While it is true that the CAS "did not address whether an ISP was meeting its legal obligations," *id*., that does not change the fact that major content owners and ISPs agreed to CAS and carried out the graduated response process for years—including during the very timeframe at issue in this case.

Plaintiffs state that the disclosure came in the form of an Excel file produced in February (Plaintiffs_00286281), which merely included a column titled "Audible_magic_info_id." Declaration of Jai Ryu at ¶ 3 (hereinafter Ryu Decl.). This is not a disclosure, but an obscure reference that fails to identify a highly relevant third-party.[15] The Excel file is four spreadsheets that include several columns of data categories and includes tens of thousands of rows of data related to allegedly shared files on Cox's network. "Audible_magic_info_id" is in some cases the eleventh data column in the spreadsheet and at best the eighth, and is given no context.[16]

Furthermore, Plaintiffs avoid answering why Audible Magic, whose audio fingerprinting technology was utilized by MarkMonitor to identify all of the alleged infringements in this case (and to whom Plaintiffs own technical expert was provided access), was not included in their initial disclosures or written discovery responses. Opp. at 4. Rule 26 of the Federal Rules of Civil Procedure requires parties to disclose "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. Rules. Civ. Pro. 26(a)(1)(A)(i). Audible Magic should have been disclosed because MarkMonitor's infringement notice system, which identified and sent notices of alleged infringement to Cox, relied on Audible Magic's audio fingerprinting technology to function. Mot. at 3. If Audible Magic had been disclosed before the Scheduling Order was negotiated, it would have allowed Defendants the ability to include a deposition of Audible Magic in their calculation of the number of third-party depositions they would need.[17]

---

[15] Leiden Supp. Decl. at ¶ 8.
[16] *Id*.
[17] Plaintiffs' contention that Cox could have just "review[ed] the downloads of the infringing files" instead of deposing Audible Magic" is flatly wrong. Opp. at 7. Defendants have reviewed all of the relevant documents from MarkMonitor, which in no way make Audible Magic an irrelevant

### III.   CONCLUSION

Plaintiffs have agreed to Cox's request to take one additional third-party deposition, and Cox has demonstrated ample reason to permit it to take an additional two depositions, (which likely can take place in a single day, in Washington, D.C. where Plaintiffs' counsel is located). Cox respectfully requests that the Court grant its Motion for Leave.

| | |
|---|---|
| Dated: May 16, 2019 | /s/ */ Thomas M. Buchanan /* <br> Thomas M. Buchanan (VSB No. 21530) <br> WINSTON & STRAWN LLP <br> 1700 K Street, NW <br> Washington, DC 20006-3817 <br> Tel: (202) 282-5787 <br> Fax: (202) 282-5100 <br> Email: tbuchana@winston.com <br><br> *Attorneys for Defendants Cox Communications, Inc. and CoxCom, LLC* |

*Of Counsel for Defendants*

Michael S. Elkin (*pro hac vice*)
Thomas Patrick Lane (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Tel: (212) 294-6700
Fax: (212) 294-4700
Email: melkin@winston.com
Email: tlane@winston.com

Jennifer A. Golinveaux (*pro hac vice*)
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111-5840
Tel: (415) 591-1000
Fax: (415) 591-1400
Email: jgolinveaux@winston.com

---

party. Audio Magic's audio fingerprinting technology is a key part of Cox's Expert Rebuttal Reports and Cox's defenses, and deserved to be explored through deposition. Supp. Leiden Decl. at ¶ 6.

Diana Hughes Leiden (*pro hac vice*)
WINSTON & STRAWN LLP
333 S. Grand Avenue, Suite 3800
Los Angeles, CA 90071
Tel: (213) 615-1700
Fax: (213) 615-1750
Email: dhleiden@winston.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 16, 2019, the foregoing was filed and served electronically by the Court's CM/ECF system upon all registered users.

/s/ /*Thomas M. Buchanan*/
Thomas M. Buchanan (VSB No. 21530)
1700 K Street, NW
Washington, DC 20006-3817
Tel: (202) 282-5787
Fax: (202) 282-5100
Email: tbuchana@winston.com

*Attorney for Cox Communications, Inc. and CoxCom, LLC*