

Jeffrey M. Gould
4530 Wisconsin Avenue NW, 5th Floor
Washington, DC 20015
202.851.4526
jeff@oandzlaw.com

January 9, 2019

*Via Email*
Jennifer Golinveaux
Winston & Strawn LLP
101 California Street, 35th Floor
San Francisco, CA 94111
JGolinveaux@winston.com

    Re:    *Sony Music Entm't, et al., v. Cox Commc'ns, Inc., et al.*, 1:18-cv-00650-LO-JFA

Dear Ms. Golinveaux:

    We are troubled by Cox's January 7, 2019 objections to Plaintiffs' Second Set of Requests for Documents and Second Set of Interrogatories, which appear designed to obscure rather than clarify and which contravene Magistrate Judge Anderson's clear direction to the parties. We request a teleconference tomorrow, January 10, 2019, at 3 p.m. ET to discuss these new discovery responses. We also write to follow-up on a number of ongoing discovery issues discussed during our January 7 call.

## Second Set of RFPs and Interrogatories

### I.    Document Requests

    Request No. 1 [67] calls for information concerning infringement notices that involve the same subscribers cited in Plaintiffs' infringement notices. This clearly relevant information was encompassed by Plaintiffs' initial document requests, though withheld by Cox. At the December 21, 2018 hearing, Magistrate Judge Anderson signaled that this information is relevant. The Court distinguished infringement notices from other copyright holders that concern IP addresses or subscribers listed in Plaintiffs' notices, from such notices involving different subscribers. Dec. 21, 2018 Hr'g Tr. at 24 ("[I]f this was a motion relating to those subscribers that you have identified as to any other notices received from others, that's a different story" and "I would consider requiring them to possibly produce notices of infringement from other parties that are directly related to the claims in this case.")

    Though Plaintiffs' initial requests already sought this narrower information, Plaintiffs nevertheless served a follow-up request tailored to address the distinction the Court identified. When we asked you by phone on January 7 whether Cox would produce the information sought by Request No. 1 [67], you told us to wait to review Cox's written objections. We have done so. Cox's written objections give no indication whether Cox will produce the requested

information. We now need a clear and unambiguous answer as to whether Cox will produce it. To the extent Cox maintains that it has already produced the information in response to some other request, it should identify the particular bates numbers.

Request No. 2 [68] call for copies of Cox's sworn written statements relating to its policies or practices concerning copyright infringement on its network by its subscribers. Request Nos. 3 [69] through 9 [75] seek copies of Cox's sworn written responses to specific Interrogatories in the BMG action. As above, Magistrate Judge Anderson signaled these are proper requests. He stated that rather than requesting production of Cox's entire set of Interrogatory responses in the BMG action, Plaintiffs should make particularized requests. *Id.* at 15-16. He directed Plaintiffs if they "look at the record in the BMG case, [they] would probably find that the interrogatories were part of motions to compel that were filed in that case and would be available for you to look at and make particularized requests." *Id.* at 16.

Plaintiffs have done just that, making particularized requests for Cox's sworn statements concerning: Cox's handling of infringement notices (RFP 3 [69] discussing BMG Interrogatory No. 3); Cox's notice to customers of claims in infringement notices (RFPs 4 [70] and 5 [71] discussing BMG Interrogatory Nos. 4 and 6); Cox's application of penalties to subscribers who have been the subject of infringement notices (RFP 6 [72] and 7 [73] discussing BMG Interrogatory Nos. 7 and 8); Cox's efforts regarding barriers, means, or mechanisms for limiting copyright infringement (RFP 8 [74] discussing BMG Interrogatory No. 10); and a list of entities that have submitted copyright notices compatible with Cox's automated systems (RFP 10 [76] discussing BMG Interrogatory No. 16). Request No. 9 [75] is even more particularized. It calls for three specific documents regarding CATS, two of which are identified by bates number. Cox cannot seriously contend that CATS and documents related to its implementation are irrelevant. Yet Cox objects on relevance, burden, and breadth. These objections make no sense.

Cox's written objections to all of the above requests appear directly at odds with the Court's direction and give no indication whether Cox will produce the requested documents. We need a clear and unambiguous answer as to whether Cox will produce the requested information. To the extent Cox maintains that it has already produced the information, it should identify the particular bates numbers.

**II.    Interrogatories**

Interrogatory No. 1 [13] calls for a list of copyright holders from whom Cox received infringement notices during the period 2010 to 2014. Interrogatory No. 2 [14] calls for the raw number of notices per copyright holder from 2010 to 2014. This information is relevant, at a minimum, to considerations for a jury while awarding damages. Cox's written objections give no indication whether Cox will produce what is requested and your objections are overstated. You claim Cox cannot determine whether an entity is a copyright holder, regardless of whether infringement notices identify that information and we have no doubt it is tracked in Cox's CATS database. Nonetheless, to moot your vagueness objection, I can clarify that the term "copyright holder" in Interrogatory Nos. 1 [13] and 2 [14] means a person or entity identified as a copyright holder in an infringement notice, or the notice-sending agent or entity on whose behalf an infringement notice was sent. As above, Magistrate Judge Anderson signaled that summary-level information is appropriate for production as opposed to the actual notices themselves. *Id.* at 24

("If it was a motion dealing with the number in a generic sense of copyright notices or infringement notices, you know, that they received over a period, that's a different story.")

Interrogatory No. 3 [15] calls for a list of copyright holders upon whom Cox imposed a limit or cap on the number of infringement notices Cox would receive from them. Interrogatory No. 4 [16] calls for an identification of individuals or entities from whom Cox refused to accept infringement notices. Your vagueness objection is no better here, and the clarification above regarding entities on whose behalf an infringement notice was sent likewise applies. The requested information is clearly relevant and something a jury can consider while awarding damages. Cox's objection to burden is unfounded. Was Cox's infringing conduct so pervasive that it imposed infringement notice caps on many thousands of rights holders or notice-sending agents? The interrogatory calls for relevant information that Cox has readily available, in whole or in part, and Cox should provide it immediately.

## First Set of RFPs and Interrogatories

We also write to follow-up on and confirm a number of issues from our ongoing discussions.

Privilege Logs: Cox agreed Plaintiffs need not log documents between the parties in suit and their outside litigation counsel, or documents internal to Plaintiffs, created after January 29, 2016.

BMG trial exhibits: The Court ordered Cox to provide all trial exhibits without regard to confidentiality issues. Cox has nevertheless withheld the 31 documents referenced in Thomas Kearney's January 8, 2019 email. You stated that you provided notice to the parties whose allegedly confidential information is implicated by the withheld documents and that the 10-day period for such parties to object expires Friday, January 18. This means that Cox did not provide such notice until January 8, more than two and a half weeks after the hearing and seven weeks after Plaintiffs served their requests for the exhibits. There is no justification for this delay. These documents should be produced as soon as possible. In any event, please notify us immediately of any objection you receive from a relevant party. Plaintiffs reserve their rights regarding Cox's improper withholding of these documents.

Subscriber identification: We proposed a manner of addressing your concern about providing personally identifiable information about Cox subscribers. You were going to get back with us to confirm your agreement. The idea is that, for each subscriber identified or referenced in an infringement notice from Plaintiffs (or from a third-party infringement notice involving a subscriber identified or referenced in one of Plaintiffs' notices), Cox will provide an account number, city, and state associated with such subscriber, along with the associated notice information (date, IP address, etc.). To make this work, we would need confirmation that any subscriber that Cox terminated and then reactivated was assigned the same account numbers upon reactivation. If that is not the case, we will need to discuss how to address subscribers who could have been associated with different account numbers.

Limitations to Plaintiffs, Plaintiffs' works in suit, and Plaintiffs' Claim Period: You still have not clarified whether you agree to conduct ESI searches for 2010-2014 for RFPs 6, 10, 18,

19, 21, 22, 23, 26, 27, 30, 31, 38, 39, 43, 47, 48.  We can discuss this in the context of search terms, which we proposed the parties exchange this Friday.

Interrogatories 6, 9, 11 (and related RFPs):  The parties have reached an impasse on whether Cox will produce documents and information pertaining to subscriber violations of Cox's AUP other than copyright infringement and terminations for failure to pay for service.

Public statements other than press releases:  You agreed to ask your client about public statements other than press releases it has made regarding policies and procedures for responding to infringement notices.  We identified the following illustrative and non-exhaustive examples of the types of things that might be included: testimony, statements or presentations to legislators, aides, or on the Hill generally, and statements or presentations at industry events, etc.  An additional category would be message board or blog posts.  Please let us know whether such documents exist and whether you will produce them.

Financials:

1.The parties have reached an impasse on whether Cox will produce revenue and profit information for 2015 to present.

2.We need immediate clarification on your response and intended approach to RFP 57 and Interrogatory No. 10, which seek revenue and profit information associated with subscribers about whom Cox received infringement notices.  Your responses are unclear and your statements during our January 7, 2019 teleconference further confused the matter.  In response to RFP 57, Cox agreed to produce "documents sufficient to show the total and average revenue and profit during Plaintiffs' Claim Period that was attributable to subscribers who were the subject of a notice of claimed infringement submitted on Plaintiffs' behalf for Plaintiffs' works in suit during Plaintiffs' Claim Period, *to the extent Cox finds such documents* within its possession, custody, or control after undertaking a reasonable and diligent search."  You said in our January 7 call that Cox was still determining whether that information exists.  Cox also objected to Interrogatory No. 10 by referring to RFP 57 and reserving the right to produce documents.  Cox did not state whether it will actually produce any such documents, which, as we've discussed, renders the interrogatory response deficient.  Please clarify Cox's approach here.  Are you searching for documents that already exist with the requested information compiled in the manner requested?  Or are you trying to determine whether the financial information sought exists in Cox's financial records?  We have no doubt the latter exists, and it must be produced.  Given that the information is called for in both document requests and interrogatories, Cox may not withhold the information based on the contention that a ready-made document with the requested information does not presently exist.  As Cox knows the subscribers who are the subject of Plaintiffs' notices, it can run a report to produce the associated financial information for their accounts.

3.You agreed to reconsider the limitation provided in response to RFP 55 and provide the total and average revenue and profit per subscriber for the life of the account, from January 1, 2010 to present.

4.The parties have reached an impasse on RFPs 56 and 61 requesting documents demonstrating the average life of a subscriber account and churn rate.  Cox refuses to provide that information beyond "Plaintiffs' claim period."

     5.     The parties have reached an impasse on RFPs 58-60 regarding the number of Cox subscribers and penetration rates.

     6.     We look forward to your supplement to Interrogatory No. 8 regarding the effects that terminating subscribers has or could have on your financial interests or the attractiveness of your service.

     <u>Walled garden</u>:  You agreed to produce written policies concerning Cox's walled garden, as well as screen shots sufficient to show what the walled garden looks like.  Such screenshots should include but not be limited to the view shown to a subscriber who is placed in the walled garden.  Walled garden should also be a search term and we can discuss that further as we exchange terms.

     <u>BMG trial testimony of Joseph Sikes and Jason Zabek</u>:  Portions of the videotaped depositions of Joseph Sikes and Jason Zabek were played during the BMG trial, however, there is no transcript of this trial testimony.  Please identify the portions of the relevant deposition transcripts or provide the edited deposition video played at trial.

*     *     *

     Please confirm your availability for a teleconference on January 10, 2019 at 3 pm ET to discuss Cox's objections to Plaintiffs' Second Set of RFPs and Interrogatories.  We are happy to discuss the other issues raised above but cannot delay an immediate meet-and-confer on Cox's objections to Plaintiffs' Second Set of RFPs and Interrogatories.

Sincerely,

*/s/ Jeffrey M. Gould*