UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| SONY MUSIC ENTERTAINMENT, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> COX COMMUNICATIONS, INC., *et al.*, <br><br> Defendants. | Case No. 1:18-cv-00950-LO-JFA <br><br> COX'S MOTION FOR LEAVE TO TAKE ADDITIONAL THIRD-PARTY DEPOSITIONS |

**COX'S MOTION FOR LEAVE TO TAKE ADDITIONAL THIRD-PARTY DEPOSITIONS**

**I.    INTRODUCTION**

Pursuant to the Court's March 12, 2018 Scheduling Order (ECF 52), Defendants Cox Communications, Inc. and CoxCom, LLC ("Cox") seek leave of the Court to take three additional non-party, non-expert witness depositions. *See* Declaration of Jennifer Golinveaux ("Golinveaux Decl.") at ¶ 5, Exhibit 4. To date, Defendants have noticed and conducted depositions of four non-party, non-expert witnesses: half-day depositions of Dr. Christopher Monson and Dr. Seth Nielson, both formerly of Harbor Labs LLC ("Harbor Labs"), Audible Magic Corporation ("Audible Magic"), and Stroz Friedberg LLC ("Stroz Friedberg"). Golinveaux Decl. at ¶¶ 9, 11, & 13. Additionally, Defendants have or plan to serve deposition subpoenas on Jill Lesser (formerly Executive Director of the Center for Copyright Information ("CCI"), the entity which administered the Copyright Alert System ("CAS")), the Recording Industry Association of America ("RIAA"), Victoria Sheckler (of the RIAA), and MarkMonitor, Inc. ("MarkMonitor"). Golinveaux Decl. at ¶¶ 7, 8, & 17.

1

The MarkMonitor system was used to identify every alleged infringement claimed to have occurred on Cox's network.  Thus, all of the third-party depositions seek highly relevant information.  Depositions of the RIAA and Ms. Sheckler are essential to discovering important information regarding the notices sent to Cox from MarkMonitor regarding alleged infringement on its network, as well as correspondence between the RIAA and Cox regarding those notices, and specifically negotiating the terms of Cox receiving those notices.  There are several strong reasons for the Court to provide leave to the Defendants to depose three third-parties in excess of the five permitted in the Scheduling Order: (i) the facts indicate that each third-parties has highly relevant information to the Plaintiffs' claims; (ii) the information is not duplicative and cannot be obtained by other means other than deposition, and; (iii) the depositions will not burden Plaintiffs.

## II.   FACTS

Early in the case, in 2018, the parties negotiated the Scheduling Order. Golinveaux Decl. at ¶ 5, Exhibit 4.  At that time Defendants had no reason to expect that more than five non-party, non-expert witness depositions were needed.  However, due to events unforeseen at the time of the Scheduling Order, the need for additional third-party depositions has arisen.

Defendants seek to depose MarkMonitor in order to discover critical information regarding MarkMonitor's methodology for identifying the alleged direct infringements that Plaintiffs must prove to establish their claims of secondary infringement against Cox, the notices it sent Cox concerning alleged infringement on its network, and its relationship with the RIAA and Plaintiffs. Golinveaux Decl. at ¶ 15.[1]

---

[1] On May 9, 2019, the Northern District of California granted MarkMonitor's motion to quash Cox's deposition subpoena.  See *Cox Communications, Inc. et al. v. MarkMonitor, Inc.*, Case No. CV 19 80 050MISC-SK, ECF No. 31.  Cox will serve a new deposition subpoena on MarkMonitor in compliance with the court's rulings.

Audible Magic is a technology company that MarkMonitor solely relied upon to match all of the underlying direct infringements as copies of Plaintiffs' alleged works in this case. Unlike in the *BMG* case, in which Plaintiff's agent Rightscorp claimed to have downloaded evidence of direct infringements, it appears that Plaintiffs' agent in this case, MarkMonitor did not do such downloading, and instead relied upon Audible Magic's fingerprinting technology to match alleged infringing files, without ever capturing copies of such files from individual Cox subscriber computers. Audible Magic was <u>never</u> disclosed as a relevant witness by Plaintiffs, and Defendants only found out about their critical role in identifying the alleged direct infringements when reviewing documents productions from third-parties. Golinveaux Decl. at ¶ 4. Defendants deposed Audible Magic in order to discover highly relevant information regarding its audio fingerprinting technology that was used in conjunction with the MarkMonitor system to identify the alleged direct infringement, and its relationship with MarkMonitor and the Plaintiffs. Golinveaux Decl. at ¶ 11.

Defendants deposed Stroz Friedberg, a technology consulting company engaged by the CCI to analyze the MarkMonitor system utilized to identify the alleged infringements in this case, and received highly relevant information regarding its 2013 study, prepared for the CCI, regarding its assessment of the MarkMonitor system, including deficiencies with that system. Golinveaux Decl. at ¶ 12-13

Defendants deposed Dr. Monson and Dr. Nielsen, formerly of Harbor Labs, another consulting company engaged by CCI to take over Stroz Friedberg's analysis of the MarkMonitor system utilized in this case, once it was revealed that Stroz Friedberg had an undisclosed conflict concerning prior work for the RIAA. These two individuals were the former Harbor Labs employees who were solely responsible for conducting the analysis, and defendants received

highly relevant information regarding their 2014 analysis, prepared for the CCI, of the MarkMonitor system. Golinveaux Decl. at ¶ 9.

### Jill Lesser

Defendants seek to depose Jill Lesser, the former Executive Director for the CCI, in order to discover highly relevant information regarding the CCI's now terminated Copyright Alert System ("CAS") program that used the MarkMonitor system to detect infringement on networks like Defendants'. Golinveaux Decl at ¶ 6. The CAS was an inter-industry agreement concerning standards for addressing online copyright infringement through Internet Service Providers ("ISPs"), to which many of the Plaintiffs were signatories. Golinveaux Decl. at ¶ 6. The CAS established a system by which copyright owners would send notices to participating ISPs and established, among other things, limits to the number of notices an ISP was required to process as well as "education" and "mitigation" efforts ISPs would take with respect to subscribers who were the subject of infringement notices. Like the RIAA, the CCI used MarkMonitor to detect instances of alleged infringement and send copyright infringement notices in connection with the CAS. Golinveaux Decl. at ¶ 6. The features, efficacy, and reliability of the MarkMonitor system used in connection with the CAS—whether the same or any different from that used by Plaintiffs here—is highly relevant, as are the practices of the other CAS-participating ISPs in the same timeframe as Plaintiffs' claim period. Because the CCI is no longer an operating entity, Ms. Lesser is the individual most knowledgeable about the CCI's operations and the CAS.

### The RIAA and Victoria Sheckler

Defendants seek to depose the RIAA and Ms. Sheckler, Senior Vice-President and Deputy General Counsel of the RIAA, in order to receive highly relevant information regarding the notices sent to Defendants of alleged infringement on Cox's network and regarding the RIAA's

relationship with MarkMonitor and Audible Magic. Golinveaux Decl. at ¶ 17. Defendants specifically seek to depose Ms. Sheckler due to her intimate knowledge of the correspondence between the RIAA and Cox, as she was the employee of the RIAA who had all of the relevant correspondence with Cox concerning the RIAA notices that form the basis for Plaintiffs' claims in this case. Golinveaux Decl. at ¶ 18, Exhibit 5.  For example, Ms. Sheckler sent emails to Cox requesting that it increase the number of notices it would accept from the RIAA, and when she was informed that Cox was prepared to increase the number, she replied "Thanks."  *See* Golinveaux Decl. at ¶ 18, Exhibit 5.

Defendants have been needlessly forced to notice Ms. Sheckler for deposition in her individual capacity in addition to the RIAA.  The RIAA have designated Steve Marks, Chief, Digital Business & General Counsel, on all the topics noticed in response to Defendants' Rule 30(b)(6) subpoena of the RIAA.  *See* Golinveaux Decl. at ¶ 19, Exhibit 6.  This despite the fact that Ms. Sheckler, had *all* of the correspondence between the RIAA and Defendants regarding the RIAA's notices at issue.

### Harbor Labs

Defendants have encountered numerous obstacles in taking these necessary depositions. First, Defendants initially sought to depose Harbor Labs regarding a report it conducted on behalf of CCI in 2014 that analyzed the MarkMonitor system.  Declaration of Diana Hughes Leiden ("Leiden Decl.") at ¶ 1, Exhibit 1.  Defendants were informed by Ann Rubin, General Counsel for Harbor Labs, that the report was created exclusively by Dr. Monson and Dr. Nielson and that both had left the company. Leiden Decl. at ¶ 3.  Ms. Rubin also claimed that the President and Founder of Harbor Labs, Dr. Aviel Rubin, had no knowledge of the report, and Harbor Labs had

no relevant documents other than the report itself and its engagement letter with CCI[2]. Leiden Decl. at ¶ 3.

Accordingly, Defendants agreed to withdraw the subpoena on Harbor Labs and noticed depositions of Dr. Monson and Dr. Nielson. Leiden Decl. at ¶ 5. Prior to the depositions, Defendants' attempted to determine whether Dr. Monson or Dr. Nielson would be an appropriate individual substitute for a 30(b)(6) witness of Harbor Labs, but were not able to conclude that either of the witnesses alone possessed the relevant information. Leiden Decl. at ¶ 4, Exhibit 2. This left Defendants with no choice but to depose both of them. It only became apparent during the deposition of Dr. Monson that Dr. Nielson was far more knowledgeable about the issues in question. Leiden Decl. at ¶ 10 & 11, Exhibits 3 & 4. Defendants conducted both depositions in one day, and Plaintiffs also questioned each of the deponents. Leiden Decl. at ¶ 9.

**Audible Magic**

Further, Defendants only recently learned that Audible Magic was retained by the RIAA in 2012 to match the allegedly infringing files to original content using its proprietary audio "fingerprinting" technology. Golinveaux Decl. at ¶ 10. Despite its relationship with the RIAA, and its critical role in identifying the alleged infringements in this case, Audible Magic was never disclosed as a relevant witness in any of Plaintiffs' pleadings, their initial disclosures, or in response to the discovery served in this case, which specifically called for such information. Golinveaux Decl. at ¶ 4. It was only by reviewing documents produced by other third-parties (MarkMonitor, Stroz Friedberg, and the RIAA) that Defendants learned that Audible Magic was a relevant witness. Golinveaux Decl. at ¶ 4. On the other hand, Plaintiffs' expert, Barbara Frederickson-Cross, was permitted to interview a Erling Wold, Chief Scientist at Audible Magic

---

[2] The report itself does not disclose that either Dr. Monson or Dr. Nielson were the authors. Leiden Decl. at ¶ X.

6

about Audible Magic's technology, and used her findings in her expert report and opinions. Golinveaux Decl. at ¶ 4, Exhibit 3.

In light of these issues, and because the third-parties yet to be deposed have information critical to Cox's defenses, Defendants seek leave for three additional third-party depositions. Permitting Cox to take these three additional depositions will not prejudice Plaintiffs and shall produce useful and relevant information regarding critical issues in Plaintiffs' claims.

Defendants conferred with Plaintiffs regarding the need to take these additional third-party depositions. Leiden Decl. at ¶ 12, Exhibit 5. This was before the RIAA, represented by Plaintiffs' counsel, had designated its witness in response to Defendants' Rule 30(b)(6) notice. Plaintiffs agreed to stipulate to each party taking up to six third-party depositions. Leiden Decl. ¶ 19. Plaintiffs then indicated that the RIAA would designate only Steve Marks, its Chief of Business and General Counsel, as the RIAA's sole Rule 30(b)(6) witness, despite Ms. Sheckler having all of the relevant correspondence with Defendants. Golinveaux Decl. at ¶ 19, Exhibit 6. Plaintiffs refused to stipulate to the two additional depositions.

After numerous correspondence, the parties met and conferred on May 7 and 10, 2019 and Plaintiffs refused to stipulate to more than six third-party depositions per side. Golinveaux Decl. at ¶ 20.

### III.  ARGUMENT

####   A.  The Discovery Sought is Highly Relevant

Through its non-party, non-expert witness depositions, Defendants seek highly relevant information. Under Federal Rule of Civil Procedure 26, "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed.R.Civ.P. 26(b)(1).

7

Defendants have taken four highly important third-party depositions and seek leave to take three additional depositions above the current limit, in light of the facts explained above. The depositions of Jill Lesser and MarkMonitor seek crucial information regarding the efficacy of the MarkMonitor system used by the RIAA, on behalf of the Plaintiffs, to send notices of alleged infringement on Cox's network. The depositions of Victoria Sheckler and the RIAA will produce highly relevant information regarding the notices sent to Cox of alleged infringement on its network and of the correspondence between the RIAA and Cox negotiating the limit caps, which also form a critical part of Plaintiffs' theory of infringement in this case. The information held by each of these third-parties will provide crucial information regarding Plaintiffs' claims and the defenses.

**B.     The Benefit of the Proposed Discovery Strongly Outweighs the Burden or Expense**

The benefit of discovering the information held by the third-parties far outweighs any burden on them, or on the Plaintiffs. The Court can limit the discovery request if it finds that "the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P. 26(b)(1). Courts have held that "a movant must show depositions in excess of the number permitted by the pretrial order will assist in proving the movant's case and will not prejudice the opposing party or delay the proceedings." *M. Shanken Commc'ns, Inc. v. Variant Events, LLC*, No. 3:10-CV-804, 2011 WL 2078007, at *4 (E.D. Va. May 25, 2011) (citing *Eggleston v. Wal–Mart Stores East, LP*, No. 3:05–CV–721, 2006 WL 585152, at *3 (E.D.Va. Mar. 10, 2006)). Here, defendants are mindful of the burden imposed upon third parties as part of the discovery process, but the addition of three depositions will elicit crucial information regarding

8

the accuracy of the MarkMonitor system that is integral to Plaintiffs' claim. Plaintiffs include fifty-three entities with vast resources seeking vast damages from the Defendants. On the other hand, Defendants seek three additional depositions to seek highly relevant information from third-parties two of which, the RIAA and Victoria Sheckler, were Plaintiffs' agents in sending all of the notices at issue. And Plaintiffs failure to disclose Audible Magic hid this highly relevant witness from Defendants until late in the discovery.

**C.    The Discovery Sought is not Unreasonably Cumulative or Duplicative, nor Has There Been Ample Opportunity to Obtain the Information.**

The three additional third-party depositions seek to discover unique information that Defendants will be unable to obtain from Plaintiffs or by any other means. Relevant discovery may be limited if the "discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive" or "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." Fed.R.Civ.P. 26(b)(C). Here, the information sought is neither unreasonably cumulative, nor duplicative, as Defendants seek to take one deposition from each third-party,[3] in order to gather relevant information regarding the MarkMonitor system and Plaintiffs system of notifying Defendants of alleged infringement. This information is unobtainable through less burdensome or expensive means because each third-party has unique information and involvement with the issues in this case. In fact, the actions and omissions of the Plaintiffs and the third-parties have caused unnecessary burden and delay in gathering relevant information from third-parties.

First, while Defendants recognize that the RIAA may designate a witness with the necessary knowledge to respond to the subpoena, here, by designating Mr. Marks as its sole

---

[3] Excluding the instance where the RIAA has designated a witness that lacks the relevant information known by Ms. Sheckler, forcing Defendant to subpoena her individually.

9

witness and instead of Ms. Sheckler, Defendants have been placed in a position where they must depose an additional individual witness to obtain highly relevant information regarding the RIAA's communications with Defendants about the notices at issue. Ms. Sheckler must be deposed because she was directly involved in, and has unique knowledge regarding, correspondence with Cox relevant to the notices sent by MarkMonitor and the RIAA.

Second, had Harbor Labs and Drs. Monson and Nielsen been even moderately cooperative, Defendants would have known that Dr. Nielsen was the only Harbor Labs witnesses necessary to depose regarding the MarkMonitor critique.

Finally, had Plaintiffs complied with their basic discovery obligations and identified Audible Magic as a relevant party in their initial disclosures or in response to discovery requests, Defendants would have realized that they needed to take more than five third-party depositions, and would have acted accordingly.

Consequently, Defendants must now seek additional third-party depositions to obtain the relevant information in an effective and timely manner. For these reasons, Defendants respectfully request that the Court grant Defendants three additional non-party, non-expert witness depositions.

Dated: May 10, 2019                /s/ / *Thomas M. Buchanan /*
                                   Thomas M. Buchanan (VSB No. 21530)
                                   WINSTON & STRAWN LLP
                                   1700 K Street, NW
                                   Washington, DC 20006-3817
                                   Tel: (202) 282-5787
                                   Fax: (202) 282-5100
                                   Email: tbuchana@winston.com

                                   *Attorneys for Defendants Cox Communications, Inc. and CoxCom, LLC*

*Of Counsel for Defendants*

Michael S. Elkin (*pro hac vice*)
Thomas Patrick Lane (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Tel: (212) 294-6700
Fax: (212) 294-4700
Email: melkin@winston.com
Email: tlane@winston.com

Jennifer A. Golinveaux (*pro hac vice*)
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111-5840
Tel: (415) 591-1000
Fax: (415) 591-1400
Email: jgolinveaux@winston.com

Diana Hughes Leiden (*pro hac vice*)
WINSTON & STRAWN LLP
333 S. Grand Avenue, Suite 3800
Los Angeles, CA 90071
Tel: (213) 615-1700
Fax: (213) 615-1750
Email: dhleiden@winston.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 10, 2019, the foregoing was filed and served electronically by the Court's CM/ECF system upon all registered users.

/s/ /*Thomas M. Buchanan*/
Thomas M. Buchanan (VSB No. 21530)
1700 K Street, NW
Washington, DC 20006-3817
Tel: (202) 282-5787
Fax: (202) 282-5100
Email: tbuchana@winston.com

*Attorney for Cox Communications, Inc. and CoxCom, LLC*