# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| SONY MUSIC ENTERTAINMENT, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>COX COMMUNICATIONS, INC., *et al.*,<br><br>    Defendants. | Case No. 1:18-cv-00950-LO-JFA |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL

Plaintiffs seek an order compelling Cox Communications, Inc. and CoxCom, LLC (collectively "Cox") to produce several categories of responsive documents and an adequately prepared Rule 30(b)(6) witness on certain topics. Plaintiffs have patiently and persistently tried to obtain this important discovery from Cox, but to no avail. Plaintiffs can wait no longer. The extended close of discovery is July 2, 2019, with motions and trial looming thereafter. Cox should be ordered to produce the documents it is withholding and produce a witness as required by Rule 30(b)(6).[1]

## I.  Audited financial statements for the years 2012-2014

Plaintiffs request that the Court order Cox to produce Cox Communications, Inc.'s 2012-2014 audited financial statements in full. Cox has produced only a few cherry-picked pages from within its audited financials, numbered pages 23, 24, and 26. Plaintiffs repeatedly requested more comprehensive documents that would allow them to understand the financials in context. Cox refuses to produce these relevant documents without justification. It merely recites form objections of overbreadth, burden, relevance, vagueness, privilege, and duplication. Gould Decl. ¶ 9; Ex. 7 (Cox's Objections to Plaintiffs' Third RFPs).

Request No. 1 in Plaintiffs' Third RFPs specifically calls for production of "Cox Communications, Inc.'s complete audited financial statements for 2011-2014. This request includes the full auditor reports, notes, letters, opinions, and narrative discussions and explanations

---

[1] For purposes of the instant motion:

    (a) "Gould Decl." refers to the Declaration of Jeffrey M. Gould filed contemporaneously with this motion.
    (b) "Ex." refers to the exhibits attached to the Gould Decl.
    (c) "First RFPs" refers to Plaintiffs' First Requests for Production served on November 19, 2018 (Gould Decl. Ex. 1); and
    (d) "Third RFPs" refers to Plaintiffs' Third Requests for Production, served on May 24, 2019 (Gould Decl. Ex. 7). While Cox's response to the Third RFP is forthcoming, Cox made its position clear in written objections served on June 10 and subsequent communications with Cox's counsel.

concerning the financial statements from which COX_SONY_00974168 through COX_SONY_00974176 are excerpted." *Id.*

Cox concedes the relevance and discoverability of its audited financial statements, by its own reliance upon and production of portions of the requested documents. On April 5, 2019, Sandford Mencher, Cox's Rule 30(b)(6) designee on financial topics, testified that ████████ ████████████████████████████████████████████ Gould Decl. ¶ 4; Ex. 2 (Mencher deposition transcript excerpt). On May 2, 2019, Cox produced certain excerpts of those audited financials—specifically the Balance Sheet, Income Statement/Statement of Operations, and Statement of Cash Flows for 2012-2014. The non-sequential numbering on the produced pages (pp. 23, 24, and 26) demonstrate that they were extracted from larger audited financial statements. Gould Decl. ¶ 7; Ex. 5 (Cox's partial financial statements).

Even without Cox's concession, there are multiple reasons for requiring the complete documents to be produced. As Cox's own auditor states, an "[a]udit is about much more than just the numbers. Those numbers tell a story." Gould Decl. ¶ 12; Ex. 9 (Deloitte web page printout). Courts also recognize that, where financial statements are pertinent to calculation of damages, such documents "should be produced in an unredacted [form] and in full." *Midwest Feeders, Inc. v. Bank of Franklin*, No. 5:14CV78-DCB-MTP, 2016 WL 3636132, at *5 (S.D. Miss. Feb. 26, 2016); *see also Beltran v. Interexchange, Inc.*, No. 14-CV-03074-CMA-KMT, 2017 WL 4418710, at *7 (D. Colo. July 24, 2017) (order vacated in part on other grounds) (finding that defendants violated court order to produce financial statements by producing only partial "redacted-however-the-producing-party-deems-appropriate" statements). Here, too, Cox financials should be presented to the jury in context, rather than just the excerpts Cox deemed fit to provide.

## II. Data underlying Cox's claim that 96% of infringers stop after 5 notices

Cox witnesses have relied upon a Cox document to support its contention that ▄▄▄ ▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄ Gould Decl. ¶ 13; Ex. 10 at p. 21 (Cox presentation slides titled "Education"). During Cox's 30(b)(6) deposition, one of its designee, Matt Carothers, testified that ▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄ ▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄ ▄▄▄ Gould Decl. ¶ 14; Ex. 11 at p. 129-30 (Carothers deposition transcript excerpt). Mr. Carothers testified that ▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄ ▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄ *Id.* One of Cox's expert witnesses, Dr. Lynne Weber, relies upon the 30(b)(6) testimony and document. Gould Decl. ¶ 15; Ex. 12 at p. 47 and n.82 (Weber expert report). None of Cox's witnesses, however, has been able to explain how this ▄▄▄▄▄▄ figure was calculated. Gould Decl. ¶ 14; Ex. 11 at p. 138-40 (Carothers deposition transcript excerpt).

Cox should be ordered to produce the data underlying this contention. *See, e.g., Temp. Servs., Inc. v. Am. Int'l Grp., Inc.*, No. C/A 3:08-271-JFA, 2011 WL 652485, at *4 (D.S.C. Feb. 15, 2011) (finding that defendants should produce the data underlying figures represented by defendants in an insurance form, stating that the court "does find these documents relevant to Plaintiffs' case" and "Plaintiffs need the underlying data to vet Defendants' Form 2007s for alleged inaccuracies"). Multiple witnesses have admitted that ▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄ ▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄ ▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄ Gould Decl. ¶ 16; Ex. 13 at pp. 291–298 (Cadenhead deposition transcript excerpt). Mr. Cadenhead testified that ▄▄▄▄▄▄▄▄▄ ▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄

3

██████████████████████████████████████████ Gould Decl. ¶ 17; Ex. 14 at pp. 26–30 (Beck deposition transcript excerpt).

The data underlying the slide presentation is responsive to several requests, including Request Nos. 16 and 26 from Plaintiffs' First RFPs:

> **REQUEST NO. 16** All documents concerning any copyright or infringement policy, including but not limited to . . . the effects of such policies . . .
>
> **REQUEST NO. 26** All documents concerning analyzing, assessing, investigating or responding to an Infringement Notice . . .

Gould Decl., ¶ 18; Ex. 1 (Cox's objections to Plaintiffs' First RFPs). Cox has not offered a basis for withholding the data. *Id.* The bald claim in the document, parroted by Cox's fact and expert witnesses, needs to be understood and tested. If Cox intends to put forward testimony on this alleged "study," Plaintiffs should be able to see the underlying data and how it was collected.

### III. Documents regarding Cox's implementation of its graduated response policy with respect to business subscribers

Cox has failed to produce sufficient documents regarding its implementation of its graduated response policy for business subscribers. Cox claims that ████████████████████ ████████████████████████████████████████████████████████████████████████ Gould Decl. ¶ 20; Ex. 15 at p. 5 (Cox's ticket handling procedures for business customers). According to Cox, the graduated response process for business subscribers provided that upon receiving an infringement notice, a representative must "[c]all the customer contact listed in ICOMS" and inform them of the complaint. *Id.*

There are substantial questions about whether Cox contacted its business customers to inform them of infringement reports or did anything at all. *Id.* For instance, one telling internal Cox email reports that ████████████████████████████████████████████ ████████████████████████████████████████████████

4

██████████████████████████████████████████

Gould Decl. ¶ 21; Ex. 16 at p. 2 (October 28, 2011 email from Jason Zabek).

Whether Cox followed its own policies is directly relevant, including to rebut Cox's argument that its graduated response program was effective. Gould Decl. ¶ 12; Exs. 11 (Carothers deposition transcript), 12 (Weber expert rebuttal report). A failure by Cox to even inform its subscribers (business or residential) of infringement reports is highly relevant evidence. It certainly is discoverable. Plaintiffs have pressed Cox to produce documents sufficient to identify whether Cox actually contacted its business subscribers when receiving notices of infringement. Gould Decl. ¶¶ 23, 24; Ex. 16 (June 11, 2019 email from J. Gould.) Specifically, the CATS database contains ████████████████████████████████████████████████ ████████████████ which is relevant to what Cox knew, said and did in response to copyright complaints. Gould Decl. ¶ 24; Exs. 14 at pp. 207-09 (Beck deposition transcript excerpt), 18 (CATS ticket data excerpt). The absence of work log entries indicating ████████ ████████ would be indicative of Cox's failure to implement its own graduated response policy. Indeed, the records produced to date indicate that ████████████████████████ ████████████████████████████████████████████████ ████████████████████ Yet Cox refuses to produce *any* documents to substantiate its claim that ████████████████████████████████ Gould Decl. ¶ 25.

5

This information is responsive to several of Plaintiffs' document requests.[2] In an abundance of caution, and to avoid any objection by Cox about responsiveness, Plaintiffs also served a supplemental request seeking "[d]ocuments sufficient to show all Customer Comments, from 2012 through 2014, concerning allegations of copyright infringement or COPYOTHER abuse complaints for the Cox Business customers identified in the ICOMS billing reports produced at COX_SONY_00973760 through COX_SONY_00973767, including the date and ICOMS ID associated with those Customer Comments." Ex. 7 (Cox's Objections to Plaintiffs' Third RFPs, Request No. 4). Plaintiffs agreed to limit the request for work log notes to 2012-2014. Gould Decl. ¶ 23; Ex. 17 (June 11, 2019 email from J.Gould).

In response, Cox has raised a variety of unsubstantiated form objections and refused to provide *any* documents whatsoever. Ex. 7 (Cox's Objections to Plaintiffs' Third RFPs). Absent

---

[2] For instance:

First RFPs, REQUEST No. 21. Documents sufficient to show how and when Defendants communicated any Infringement Notice to third parties, including but not limited to Subscribers or Users. This request includes Defendants' policies for forwarding to or otherwise informing Subscribers or User of copyright infringement allegations and any notices or communications to Subscribers or Users.

First RFPs, REQUEST NO. 23. All communications with your Subscribers or Users concerning copyright or alleged infringement, including but not limited to communications concerning Infringement Notices and documents sufficient to show the number, nature, date and content of such communications.

First RFPs, REQUEST NO. 26. All documents concerning analyzing, assessing, investigating or responding to an Infringement Notice, including but not limited to actions considered or taken in response to any Infringement Notice. To the extent such actions have changed over time, this Request calls for documents sufficient to show any such change and the time such change occurred.

First RFPs, REQUEST NO. 27. All documents concerning communications to or from Subscribers or Users regarding Infringement Notices (or any other notices of copyright infringement claims).

First RFPs, REQUEST NO. 38. All documents concerning any investigation by Defendants into any allegation of copyright infringement by Subscribers or Users, including but not limited to documents concerning Defendants' identification of Subscribers or Users alleged to have infringed one or more copyrights, and efforts to determine if any Subscribers or Users infringed copyrights using Defendants' internet service.

Ex. 1 (Cox's objections to Plaintiffs' First RFPs).

an order compelling Cox to produce documents, Plaintiffs are disadvantaged in rebutting Cox's bald contentions that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Though there are emails like the one above, a review of the work notes logs is necessary to understand Cox's actual practices during the relevant time.

## IV. William Rosenblatt Expert Report(s)

In the *BMG* case, Cox put forth an expert, William Rosenblatt, who prepared reports and offered opinions concerning many issues related to this case, including the reliability of the MarkMonitor system, a technical tutorial on BitTorrent and ISP infrastructure, CATS handling of copyright infringement notices, whether Cox's graduated response program was effective at curbing copyright infringement, and a comparison of Cox's infringement policies with the Copyright Alert System. Gould Decl., ¶ 28; Ex. 21 (BMG's motion to compel additional time to depose Rosenblatt).

In this case, Cox has tried to attack the reliability of the MarkMonitor system used to detect and report infringement. Gould Decl., ¶¶ 26, 30; Exs. 17 (June 11, 2019 email from J. Gould), 19 at pp. 53-56 (Cox's Counterclaims to Plaintiffs' Complaint). At the same time, Cox refuses to produce documents discussing the reliability of the MarkMonitor system, including Mr. Rosenblatt's report. Gould Decl. ¶¶ 26-27; Ex. 20 (November 20, 2015 Hearing transcript excerpt). Cox can hardly criticize MarkMonitor in this litigation if it touted it when attacking another anti-piracy entity in *BMG*.

While Plaintiffs do not have a copy of any of Mr. Rosenblatt's report(s), at a hearing in the *BMG* case, BMG's counsel stated that:

> Mr. Rosenblatt claims to know everything he needs to know about MarkMonitor's code based on a redacted 13-page summary and because some employees of MarkMonitor have been on panels he's hosted. That's an ironic position by Cox. They have been very upset about not reviewing every single piece of source code from Rightscorp over the last three-

> and-a-half years, yet they claim that based on his 13-page redacted summary and because some employees have been on panels, that Mr. Rosenblatt is able to fully analyze MarkMonitor's system for detecting infringement. Our bottom line with Mr. Rosenblatt, he should be limited to offering opinions within his purported area of specialized knowledge, that is overview of the BitTorrent, and opinions on the technical aspects of the Rightscorp source code.

*Id*. In a separate motion, BMG explained that "Mr. Rosenblatt purports to describe the Rightscorp computer code for detecting infringement and compares Rightscorp identification process with that of MarkMonitor, which he also describes. *See e.g.*, Ex. 1, ¶¶ 79-80; Ex. 2, ¶¶ 36-47; Ex. 3, ¶ 85." Gould Decl., ¶ 28; Ex. 21 (BMG's motion to compel additional time to depose Rosenblatt).

Request No. 5 in Plaintiffs' Third RFPs calls for the "expert reports of William Rosenblatt in the BMG Litigation, served on behalf of Cox." Ex. 7 (Cox's Objections to Plaintiffs' Third RFPs). Cox has objected to this Request based on its form objections of overbreadth, burden, relevance, privilege, and to the extent it implicates third-party confidential or proprietary information. *Id.*; Gould Decl. ¶ 9. But Cox can hardly deny that its own expert's evaluation of MarkMonitor is relevant, when Cox is challenging the reliability of the MarkMonitor system in this case.

Further, Mr. Rosenblatt's statements in the BMG case may constitute party admissions, including to the extent that he evaluated the MarkMonitor systems, discussed BitTorrent and peer-to-peer technology, and described what is sufficient to detect, verify and report infringement. *See, e.g.*, *Samaritan Health Ctr. v. Simplicity Health Care Plan*, 459 F.Supp.2d 786, 799 (E.D. Wis. 2006) ("[B]ecause First Health proffers its opponent's previous expert report against that opponent, the report can be considered an admission by a party-opponent."); *Long v. Fairbank Farms, Inc.*, Nos. 1:09–cv–592, 2:10–cv–60, 2011 WL 2516378, at *10 (D. Me. May 31, 2011) (statements of defendant's expert admissible under Rule 801(d)(2)(C) because defendant "expected him to testify impartially within the sphere of his expertise as to his independently formed opinions.... Therefore

8

he was authorized by [the defendant] to make a statement concerning the subject matter about which he testified ....”). In any event, Mr. Rosenblatt's report may be useful for impeachment.

Even though the Rosenblatt report easily passes the test for relevance and does not present any kind of undue burden to produce, a meet-and-confer with Cox's counsel proved unsuccessful. Cox should be ordered to produce it.

## V. Video recordings of the depositions of Cox's fact witnesses in the BMG case

Cox should be ordered to produce the videos of depositions in the *BMG v. Cox* case for which it produced the written transcripts. Video is often more powerful and assistive to a jury than a mere written transcript. Fairness demands equal footing and access by the parties here. That is especially true where witnesses will not testify in person at trial, as is likely here given the number of Cox witnesses located in Atlanta. These videos may well be used at trial.

Request No. 4 in Plaintiffs' First RFPs call for production of "[t]ranscripts of all depositions taken in the BMG Litigation." Gould Decl. ¶ 32; Ex. 1 (Cox's objections to Plaintiffs' First RFPs). In response, Cox produced copies of the written deposition transcripts of Cox fact witnesses in the *BMG* case. *Id*. Cox agreed to produce transcripts for witnesses it may rely on at trial, whereas others Cox agreed to produce only after Plaintiffs filed a motion to compel. Gould Decl. ¶ 33. Yet Cox has steadfastly refused to provide the video of those depositions, arguing it is cumulative, duplicative and irrelevant. Gould Decl. ¶¶ 34–38; Exs. 22-26 (email correspondence between Plaintiffs and Cox).

Cox should be ordered to produce the video. Cox possesses the video, which it may try to use. Moreover, Cox is not entitled to restrict Plaintiffs from using, and the jury from seeing, the video. This case should be litigated on the merits, not gamesmanship.

VI. **Documents Concerning Messrs. Zabek, Sikes, and Vredenburg's Employment**

Plaintiffs seek an order compelling Cox to produce documents concerning the circumstances under which Jason Zabek, Joseph Sikes, and Roger Vredenburg's employment with Cox ███████████████████████████████, as well as Cox's performance evaluations of each of them for the years 2010-2016. The requested documents are relevant to understanding Cox's internal views on key individuals that ran the abuse department during these years, ███████████████████████████████████████.

Personnel files are discoverable if relevant, as they are here. *See, e.g.*, *Johnson v. Morris*, 903 F.2d 996, 998 (4th Cir. 1990) (noting, without further comment, that relevant personnel files were produced under protective order); *Weller v. Am. Home Assur. Co.*, No. 3:05-CV-90, 2007 WL 1097883, at *6 (N.D.W. Va. Apr. 10, 2007) (holding that personnel files are discoverable for employees "whose action or inaction has a direct bearing on the Plaintiffs' claims or Defendant's affirmative defenses" under a protective order, albeit limiting discovery to records pertaining to relevant information, i.e. training, experience, work record, and qualifications); *Royse v. Tyco Elecs. Corp.*, No. 5:05-CV-380-FL(3), 2006 WL 8438621, at *3 (E.D.N.C. May 12, 2006), supplemented, No. 5:05-CV-380-FL(3), 2006 WL 8438622 (E.D.N.C. May 18, 2006) (ordering production of personnel files with employment evaluations and salary/bonus history for certain senior managers, who were alleged to have been rewarded for promoting younger managers over older workers). The protective order in place in this action can address any confidentiality concerns.

Plaintiffs made multiple document requests for the files.[3] On June 10, 2019, Cox objected on the basis of overbreadth, burden, relevance, third-party confidentiality and/or privacy, and duplicative of depositions of Mr. Zabek and Mr. Sikes. Gould Decl. Ex. 39; Ex. 7 (Cox's objections to Plaintiffs' Third RFPs). Plaintiffs explained to Cox that the requested documents are critical to understanding Cox's internal views on key individuals that ran its abuse department during the relevant period, ████████████████████████████████████ Gould Decl. ¶ 40; Ex. 17 (June 11, 2019 email from J. Gould). Depositions of Mr. Zabek and Mr. Sikes are no substitute for Cox's internal documents concerning the circumstances of ██████ ████████, and Plaintiffs are entitled to discover Cox's internal reasoning, discussions, and documents concerning these issues. Indeed, Mr. Sikes testified that ████████████ ████████████████████████████████████████████████ Gould Decl. ¶ 40; Ex. 30. At trial, Cox may try to place responsibility for Cox's failures at the feet of these employees. A jury should see how Cox viewed them.

VII. **Abuse Reports for 2012-2014**

Request No. 3 in Plaintiffs' Third RFPs sought the "[w]eekly or monthly abuse reports generated by abuse category (i.e., showing how many tickets concern DMCA/copyright infringement vs. phishing vs. spam, etc), described by Jason Zabek and Joseph Sikes in their

---

[3] Third RFPs, REQUEST NO. 6: All Documents concerning the circumstances under which Jason Zabek's, Joseph Sikes', Randall Cadenhead's and Roger Vredenburg's employment with Cox concluded, including but not limited to documents sufficient to show the date each's employment with Cox ended.

Third RFPs, REQUEST NO. 7: All Documents concerning the conclusion of Jason Zabek's, Joseph Sikes', Randall Cadenhead's and Roger Vredenburg's employment with Cox, including but not limited to any agreements, notices of termination, resignation, severance, or payments.

Third RFPs, REQUEST NO. 8: Performance reviews for Joseph Sikes, Jason Zabek, and Roger Vredenburg from 2010-2016.

Gould Decl. ¶ 39; Ex. 7 (Cox's objections to Plaintiffs' Third RFPs).

11

depositions in the BMG Litigation." Gould Decl. ¶ 42; Ex. 7 (Cox's objections to Plaintiffs' Third RFPs). These reports ▮▮▮ Gould Decl. ¶ 43; Ex. 17 (June 11, 2019 email from J. Gould). This is important because Cox argues that ▮▮▮ Gould Decl. ¶ 44; Ex. 27 (Dr. Kevin Almeroth's Rebuttal Expert Report excerpt). Cox, however, refuses to produce the requested documents showing ▮▮▮ Gould Decl. ¶ 45.

It will be useful for a jury to understand how the number of infringement reports compare to those for other issues such as spam and phishing. In addition, the jury should see what Cox employees saw on a weekly basis as they received these reports. This counterbalances the notion that Cox personnel were focused on hacking, spam and malware abuse, without awareness of the scope of copyright violations or how they eclipsed the volume of complaints for other abuse types. Given that Cox has not produced a single of these abuse reports to Plaintiffs' knowledge (and they have asked), Plaintiffs cannot foreclose the possibility that they also contain relevant narrative text.

VIII. **Testimony concerning Cox's** ▮▮▮

Cox produced documents indicating it had a ▮▮▮ Gould Decl. ¶ 48; Ex. 28 (May 6, 2014 email and attachment describing the "3 strike rule"). Under this policy, ▮▮▮ *Id.* Plaintiffs have asked several witnesses about Cox's adoption and use of ▮▮▮. Each denied knowing anything about it. Gould

Decl. ¶ 49; Exs. 13 at pp. 164–170 (Carothers deposition transcript excerpt), 14 at pp. 248–254 (Beck deposition transcript excerpt).

In fact, Cox witnesses ███████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ██████████████████████ Gould Decl. ¶ 49.  One such document clearly states that █████ ███████████████████████████████████████████████████████████████████████ ██████████████ Gould Decl. Ex. ¶ 50; Ex. 28 at pp. COX_SONY_00525121–22 (May 6, 2014 email and attachment describing the "3 strike rule").  In another document, Cox instructs its employees: ████████████████████████████████████████████████████ Gould Decl. ¶ 50; Ex. 29 (Cox internal document titled ██████████████████████████).

Whether, when and how Cox had or implemented a three-strike policy, procedure or practice is included in several of Plaintiffs' Rule 30(b)(6) topics.[4]  Cox, however, did not prepare a single witness to testify on these topics concerning the three-strike policy.  Gould Decl. ¶ 51; Ex. 26 (June 17 and 19, 2019 emails from J. Gould).  "When an organizational representative is not adequately prepared, an appropriate remedy will often require the deposition of an additional 30(b)(6) representative to provide answers where the first designee failed to do so."  *Runnels v.*

---

[4] Topic 9.  Cox's Graduated Response program for responding to copyright infringement notices, including what each step in the process is, Cox's rationale for those steps, whether such steps are automated or manual, and implementation of the program.

Topic 30.  Cox's policies and/or procedures, and implementation of such policies or procedures, for responding to or handling copyright infringement notices, including notifying Subscribers of infringement notices.

Topic 31.  Actions that Cox has taken or considered taking against its Subscribers who have been the subject of infringement notices, the bases and requirements for taking any such actions, whether such actions have changed over time, and the frequency with which such actions are taken.

Topic 32.  Actions that Cox has taken or considered taking against its Subscribers who have been the subject of infringement notices sent by the RIAA, the basis and requirements for taking any such actions, whether such actions have changed over time, and the frequency with which such actions are taken.

Gould Decl. ¶¶ 46-47; Ex. 13 (Rule 30(b)(6) Notice).

13

*Norcold, Inc.*, No. 1:16-CV-713, 2017 WL 3026915, at *1 (E.D. Va. Mar. 30, 2017). Accordingly, Cox should be required to provide a 30(b)(6) witness prepared to testify to the three-strike policy.

| | |
|---|---|
| Dated June 21, 2019 | Respectfully Submitted,<br><br>/s/ Scott A. Zebrak<br>Scott A. Zebrak (38729)<br>Matthew J. Oppenheim (*pro hac vice*)<br>Jeffrey M. Gould (*pro hac vice*)<br>OPPENHEIM + ZEBRAK, LLP<br>4530 Wisconsin Avenue, NW, 5th Floor<br>Washington, DC 20015<br>Tel:  202-480-2999<br>scott@oandzlaw.com<br>matt@oandzlaw.com<br>jeff@oandzlaw.com<br><br>*Attorneys for Plaintiffs* |