UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

SONY MUSIC ENTERTAINMENT, *et al.*,

    Plaintiffs,

v.

COX COMMUNICATIONS, INC., *et al.*,

    Defendants.

Case No. 1:18-cv-00950-LO-JFA

**DECLARATION OF JEFFREY M. GOULD**

I, Jeffrey M. Gould, hereby declare pursuant to 28 U.S.C. § 1746 that the following statements are true and correct to the best of my personal knowledge and belief:

1. I am Senior Counsel Oppenheim + Zebrak, LLP, and am admitted to practice law in the District of Columbia, among other jurisdictions. I am counsel for Plaintiffs in the above-captioned case.

2. I submit this declaration in support of Plaintiffs' Motion for Compel filed contemporaneously herewith.

**Cox's Audited Financials**

3. On November 19, 2018, Plaintiffs served their First Set of Requests For Production Of Documents And Things To Defendants. Request No. 49 sought "Documents sufficient to show your total and average revenues and profits, by year and quarter, from January 1, 2010 to present." Attached hereto as **Exhibit 1** is a true and correct copy of Cox's Responses and Objections To Plaintiffs' First Set Of Requests For Production Of Documents And Things To Defendants, dated December 4, 2018.

1

4. On April 5, 2019, Sandford Mencher, Cox's Rule 30(b)(6) designee on financial topics, testified that ████████████████████████████████████████████ ████████████████████████████████████████ A true and correct copy of an excerpt from Mr. Mencher's April 5, 2019 deposition is attached hereto as **Exhibit 2**.

5. The parties conferred in writing over Plaintiffs' request for audited financials from April 15 through April 18, 2019, a true and correct copy of which is attached as **Exhibit 3**.

6. From April 24 through April 30, 2019, I exchanged several emails with Cox's Counsel, Jennifer Golinveaux, regarding Cox's audited financials, during which Cox agree to produce three component pieces of the audited financials—namely, the Balance Sheet, Income Statement/Statement of Operations, and Statement of Cash Flows for 2012-2014. I inquired what, if anything, Cox was withholding from the complete audited financial statement package and reiterated my request for Cox to produce the full audited financial statement package, "including narrative notes and other information included in the audited financial statement[s] that are necessary context for reviewing and understanding the actual financials." A true and correct copy of my April 24 through April 30 email exchange with Ms. Golinveaux is attached hereto as **Exhibit 4**.

7. On May 2, 2019, Cox produced excerpts for 2012-2014 with bates numbers COX_SONY_00974168 through COX_SONY_00974176. These excerpts from the audited financial statements are numbered at the bottom of each page, with page numbers 23, 24, and 26, demonstrating that they were extracted from larger audited financial statements. Cox did not produce any other pages or information from the audited financials. A true and correct copy of COX_SONY_00974168 through COX_SONY_00974176 is attached hereto as **Exhibit 5**.

8.      On May 16 and May 21, the parties again exchanged emails on this issue, and Cox again refused to produce the narrative notes, discussions, and other items in the audited financials. A true and correct copy of this exchange is attached hereto as **Exhibit 6**.

9.      On May 24, 2019, Plaintiffs served their Third Set of Requests for Production of Documents and Things. Request 1 sought "Cox Communications, Inc.'s complete audited financial statements for 2011-2014. This request includes the full auditor reports, notes, letters, opinions and narrative discussions and explanations concerning the financial statements from which COX_SONY_00974168 through COX_SONY_00974176 are excerpted." On June 10, 2019, Cox objected to this Request on the basis of overbreadth, burden, relevance, vagueness, privilege, and duplications, a true and correct copy of which is attached as **Exhibit 7**.

10.     On June 10, I asked Cox's counsel to confer on June 11 or 12 regarding Cox's objection. On June 11, I again explained by email that the "narrative notes and discussions Cox is withholding are critical to understanding those financials and providing context," that Cox had "articulated no burden and no basis for withholding them," and that its vagueness objections are misplaced given the clarity of the Request. On June 12, Cox's counsel asked in a brief phone call to delay the meet-and-confer to the June 17. On June 17, Cox's counsel asked to delay the meet-and-confer call to June 18. I replied on June 17 expressing frustration with the continued and repeated delays, particularly given the limited time remaining in discovery. A true and correct copy of this email exchange from June 10 through June 17 is attached hereto as **Exhibit 8**.

11.     I conferred with Ms. Golinveaux by phone on June 18 regarding Plaintiffs' request for complete audited financials and other issues, during which the parties could not resolve this dispute.

12. During the relevant period, Cox employed Deloitte to audit Cox's financials. A true and correct copy of Deloitte's webpage titled "What is Audit & Assurance?" is attached hereto as **Exhibit 9**, explaining that an "[a]udit is about much more than just the numbers. Those numbers tell a story."

**Data Underlying Cox's Alleged Repeat Infringer Analysis**

13. Cox contends that ███████████████████████████████████████ ███████████████████████████████. This is reflected in a Cox presentation titled █████ ██████████████████████████████████ The document does not present any analysis or underlying data to support this statement. A true and correct copy of Cox's presentation titled "Education" is attached hereto as **Exhibit 10**.

14. During Cox's 30(b)(6) deposition on Cox's graduated response policy for copyright infringement, Cox's designee, Matthew Carothers, testified that ████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████ Mr. Carothers could not, however, explain how ███████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ██████ A true and correct copy of the relevant excerpt from Mr. Carothers's April 25, 2019 deposition is attached hereto as **Exhibit 11.**

15. Dr. Lynne Weber, one of Cox's expert witnesses, quoted in her expert report Mr. Carothers testimony on Cox's contention that █████████████████████████████ Dr. Weber also cites to the relevant portion of the presentation attached hereto as **Exhibit 10**. A true and correct copy of the relevant excerpt from the Rebuttal Expert Report of Lynne J. Weber, Ph.D. is attached hereto as **Exhibit 12**.

4

16. Randall J. Cadenhead, a former Cox employee, testified that ███████ ██████████████████████████████████████████ Mr. Cadenhead testified that ████████████████████████████████████ A true and correct copy of the relevant excerpt from Mr. Cadenhead's June 4, 2019 deposition is attached hereto as **Exhibit 13**.

17. During Cox's 30(b)(6) deposition on CATS data, Brent Beck testified that █ ████████████████████████████ A true and correct copy of the relevant excerpt from Mr. Beck's June 5, 2019 deposition is attached hereto as **Exhibit 14**.

18. In Plaintiffs' First RFPs, Plaintiffs made multiple requests encompassing the data underlying the slide presentation attached as **Exhibit 10**. These requests include:

> REQUEST NO. 16 <u>All documents concerning any copyright or infringement policy</u>, <u>including but not limited to</u> any draft or final versions of such policies; <u>the effects of such policies</u>; documents sufficient to identify the employees or agents with responsibility for developing, conceiving, drafting and/or implementing such policies; documents sufficient to show when you first adopted such policies and the date of any changes to such policies; and documents sufficient to show how and when such policies were communicated to third parties including but not limited to Subscribers or Users. This request includes but is not limited to any DMCA Policy, Repeat Infringer Policy, and/or Acceptable Use Policy.
>
> REQUEST NO. 26 <u>All documents concerning analyzing, assessing, investigating or responding to an Infringement Notice</u>, including but not limited to actions considered or taken in response to any Infringement Notice. To the extent such actions have changed over time, this Request calls for documents sufficient to show any such change and the time such change occurred.
>
> REQUEST NO. 38 All documents concerning any investigation by Defendants into any allegation of copyright infringement by Subscribers or Users, including but not limited to documents concerning Defendants' identification of Subscribers or Users alleged to have infringed one or more copyrights, and efforts to determine if any Subscribers or Users infringed copyrights using Defendants' internet service.

(emphasis added) Cox's objections to these requests consist of form objections of overbreadth, relevance, vagueness, and privilege. A true and correct copy of these Requests and Cox's

5

objections thereto are attached as **Exhibit 1**.  Cox later served supplemental responses and objections, but its responses to these three requests did not change.

**CATS Work Log Notes (or Customer Comments) for Cox Business Customers**

19.     Request No. 4 in Plaintiffs' Third RFPs sought "Documents sufficient to show all Customer Comments, from 2012 through 2014, concerning allegations of copyright infringement or COPYOTHER abuse complaints for the Cox Business customers identified in the ICOMS billing reports produced at COX_SONY_00973760 through COX_SONY_00973767, including the date and ICOMS ID associated with those Customer Comments."  On June 10, 2019, Cox objected to this Request on the basis of overbreadth, burden, relevance, vagueness, privilege, and privacy, a true and correct copy of which is attached as **Exhibit 7**.

20.     Cox has produced documents reflecting its policies and procedures in handling abuse tickets for Cox business customers.  This includes a ████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████ Cox has not, however, produced any information as to whether Cox personnel followed this policy by ████████████████████████████████████████  A true and correct copy of a document titled "Abuse Department CBS Ticket Handling Procedures" dated January 17, 2010 (bates numbered at COX_SONY_00506742 through COX_SONY_00506804) is attached hereto as **Exhibit 15**.

21.     On October 28, 2011, Jason Zabek sent an internal email titled ████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████

6

████████████████████████████████████████████████████████████████

████████████████████████████████████████ A true and correct copy of the October 28, 2011 email chain titled "Abuse Issue" is attached hereto as **Exhibit 16**.

22.  Cox claims that its graduated response program was ████████ Dr. Weber's expert report, an excerpt of which is attached hereto as **Exhibit 12**, concludes that ████████ ████████████████████████████████████████████████████████████████ ████████████████████████ During Cox's 30(b)(6) deposition on its graduated responses program, an excerpt of which is attached hereto as **Exhibit 11**, Mr. Carothers stated that ████████ ████████████████████████████████████████████████████████████████ ████████████

23.  On June 11, I explained that the Cox's work log notes pertaining to processing of copyright abuse complaints are relevant to what Cox knew, said and did in responding to those complaints. I further agreed to limit the documents requested to 2012-2014 (which matches Cox's prior production of copyright ticket actions based on this Court's prior order). A true and correct copy of my June 11 email is attached hereto as **Exhibit 17**.

24.  During Cox's Rule 30(b)(6) deposition on CATS data, Brent Beck testified that █ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ A true and correct copy of the relevant excerpt from Mr. Beck's June 5 deposition is attached hereto as

**Exhibit 14**. Mr. Beck previously submitted a declaration in this case asserting an undue burden in providing certain ticket data from CATS. ECF No. 103-1. In that instance, the Court overruled Cox's objection and ordered Cox to produce the data, and Cox was able to do so in a spreadsheet bates numbered SONY_COX_515539. The spreadsheet shows that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ A true and correct copy of a five-page excerpt of SONY_COX_515539 is attached hereto as **Exhibit 18**, showing the type and manner of data that Cox has already extracted and produced from CATS.

25. On June 18, I conferred with Ms. Golinveaux by phone regarding Plaintiffs' request for the work log notes, during which the parties could not resolve this dispute.

**Rosenblatt Report**

26. In Cox's Counterclaims to Plaintiffs' Complaint, Cox claims that certain MarkMonitor notices were "fundamentally flawed" and "had characteristics that raised clear questions about their validity[.]" A true and correct copy of Cox's Answers, Affirmative Defenses, and Counterclaims to Plaintiffs' Complaint is attached hereto as **Exhibit 19**.

27. Request No. 5 in Plaintiffs' Third RFPs sought the "expert reports of William Rosenblatt in the BMG Litigation, served on behalf of Cox." Mr. Rosenblatt appears to have offered opinions on behalf of Cox in the BMG case that bear on the reliability of MarkMonitor. A true and correct copy of an excerpt of the November 20, 2015 Daubert hearing transcript in the BMG case, discussing this aspect of Mr. Rosenblatt's report, is attached hereto as **Exhibit 20**.

28. In BMG's Memorandum In Support Of Their Motion To Compel Additional Time To Depose William Rosenblatt, BMG lists examples of Mr. Rosenblatt's opinions, including his comparison between MarkMonitor's identification process with that of Rightscorp. Mr.

Rosenblatt prepared reports and offered opinions in the BMG case apparently concerning many issues related to this case, including the reliability of the MarkMonitor system, a technical tutorial on BitTorrent and ISP infrastructure, CATS handling of copyright infringement notices, whether Cox's graduated response program was effective at curbing copyright infringement, and a comparison of Cox's infringement policies with the Copyright Alert System. A true and correct copy of BMG's Memorandum In Support Of Their Motion To Compel Additional Time To Depose William Rosenblatt is attached hereto as **Exhibit 21**.

29. On June 10, 2019, Cox objected to this Request on the basis of overbreadth, burden, relevance, privilege, and to the extent it implicated third-party confidential or proprietary information, a true and correct copy of which is attached as **Exhibit 2**.

30. On June 11, I explained that Cox has attacked the reliability of MarkMonitor in this case, and Plaintiffs' understand that Mr. Rosenblatt discussed just that issue in his BMG report submitted on behalf of Cox. A true and correct copy of my June 11 email is attached hereto as **Exhibit 17**.

31. On June 18, I conferred with Ms. Golinveaux by phone regarding Plaintiffs' request for Mr. Rosenblatt's reports, during which the parties could not resolve this dispute.

**Video Transcripts of Cox's Fact Witnesses in the BMG Case**

32. In Plaintiffs First RFPs, Request No. 4 sought "Transcripts of all depositions taken in the BMG Litigation, including any exhibits used during those depositions." Cox responded on December 4, 2018, objecting to producing anything beyond deposition transcripts for witnesses identified in its Rule 26(a)(1) disclosures (witnesses Cox deems favorable). Attached hereto as **Exhibit 1** is a true and correct copy of Cox's Responses and Objections To Plaintiffs' First Set

9

Of Requests For Production Of Documents And Things To Defendants, dated December 4, 2018. Cox's supplemental responses to these requests did not change its response to Request No. 4.

33. During the conferral process, Plaintiffs offered to narrow Request No. 4 to depositions for Cox's fact witnesses and experts. Cox maintained its object, forcing Plaintiffs first motion to compel on December 14, 2018. ECF No. 54. Only in opposition to Plaintiffs' motion did Cox agree on December 19 to produce deposition transcripts for the remaining Cox fact witnesses from the BMG case. ECF No. 61.

34. On March 26, 2019, I asked Cox's counsel by email to produce deposition videos for the 10 Cox witnesses whose BMG deposition transcripts Cox had produced in this case. On March 28, I further explained that "the video transcripts are encompassed by Plaintiffs' request for deposition transcripts," and that their production "may impact the nature and number of depositions Plaintiffs need to take in this case." A true and correct copy of my email March 26-28, 2019 exchange with Mr. Golinveaux and Thomas Kearney, regarding video depositions is attached hereto as **Exhibit 22**.

35. Having heard no reply, I asked Ms. Golinveaux again on April 15 whether Cox would agree to produce the videos and noted Cox's failure to identify any basis for withholding them. I did not receive a response and so, on April 17, I asked Ms. Golinveaux to meet-and-confer on this and other issues the following day. No conferral took place. On April 18, 2019, Mr. Kearney replied by email, alleging that the video footage is cumulative and duplicative in light of Cox's production of the written transcripts, and also irrelevant. A true and correct copy of my April 15 and April 17 emails to Ms. Golinveaux, and Mr. Kearney's April 18 email, are attached hereto as **Exhibit 23**.

36. As of May 10, 2019, I emailed again, explaining that "Cox has refused to produce videos of the fact depositions of Cox witnesses in the BMG case. There is no basis for this refusal, nor fairness in Cox being able to use and present these for any unavailable witnesses at the trial in this case while Plaintiffs cannot." Cox' still did not respond by May 16 and so I email again inquiring. A true and correct copy of my May 10 and May 16 emails to Ms. Golinveaux are attached hereto as **Exhibit 24**.

37. On May 21, Cox's counsel, Mr. Kearney, replied and now stated that Cox was considering the request. A true and correct copy of and Mr. Kearney's May 21 email is attached hereto as **Exhibit 25**.

38. On June 17, 2019, Plaintiffs asked again whether Cox would produce the videos of Cox's fact witnesses from the BMG case. On June 18, 2019, I conferred by telephone with Ms. Golinveaux on this and numerous other issues for approximately 40 minutes. I explained during the call that Plaintiffs need the videos because video testimony from unavailable witnesses (or for impeachment) can be more compelling than reading it. I further explained that fairness demands that Plaintiffs have the same access to the video testimony of witnesses, particularly given that virtually all of them are located outside the Court's subpoena power and Plaintiffs may need to rely on them to present testimony at trial. Later that day, Ms. Golinveaux confirmed by email that Cox would not produce the videos. A true and correct copy of this June 17-18 email exchange is are attached hereto as **Exhibit 26**.

**Documents Concerning Messrs. Zabek, Sikes and Vredenburg's employment**

39. Request Nos. 6-8 in Plaintiffs' Third RFPs sought documents concerning the circumstances under with Jason Zabek, Joseph Sikes and Roger Vredenburg's employment with Cox ended, as well as Cox's performance evaluations of each for 2010-2016. On June 10, 2019,

Cox objected to this Request on the basis of overbreadth, burden, relevance, third-party confidentiality and/or privacy, and as duplicative of depositions of Messrs. Zabek and Sikes, a true and correct copy of which is attached as **Exhibit 7**.

40.     On June 11, I explained that depositions of Messrs. Zabek and Sikes were no substitute for Cox's internal documents concerning each's ███████████, and that Plaintiffs are entitled to discover Cox's internal reasoning, discussions and documents concerning these issues. I further explained that the requested documents, including performance reviews, are relevant to understanding Cox's internal views on key individuals that ran the abuse department during the relevant time frame, all of whom ████████████████████████████ ███████  A true and correct copy of my June 11 email is attached hereto as **Exhibit 17**. Indeed, Mr. Sikes testified that ████████████████████████████████████ ████████████████████████████████████ A true and correct copy of the relevant excerpt from Mr. Sike's May 15, 2019 deposition is attached hereto as **Exhibit 30**.

41.     On June 18, I conferred with Ms. Golinveaux by phone regarding Plaintiffs' request for documents concerning Messrs. Zabek, Sikes and Vredenburg, during which the parties could not resolve this dispute.

**Weekly or Monthly Abuse Reports**

42.     Request No. 3 in Plaintiffs' Third RFPs sought the "Weekly or monthly abuse reports generated by abuse category (i.e., showing how many tickets concern DMCA/copyright infringement vs. phishing vs. spam, etc), described by Jason Zabek and Joseph Sikes in their depositions in the BMG Litigation." On June 10, 2019, Cox objected to this Request on the basis of overbreadth, burden, relevance, and vagueness, a true and correct copy of which is attached as **Exhibit 7**.

43. On June 11, I identified the page and line numbers in Mr. Zabek's and Mr. Sikes' BMG depositions in which each discussed these reports.  Mr. Sikes described ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Mr. Zabek agreed that reports ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ I further agreed to limit the request to 2012-2014, and explained the relevance of the request.  A true and correct copy of my June 11 email, which includes true and correct excerpts from the Sikes and Zabek BMG depositions, is attached hereto as **Exhibit 17**.

44. In his expert report, Dr. Kevin C. Almeroth states that  A true and correct excerpt from Dr. Almeroth's Rebuttal Expert Report is attached hereto as **Exhibit 27**.

45. On June 18, I conferred with Ms. Golinveaux by phone regarding Plaintiffs' request for the weekly or monthly abuse reports, during which the parties could not resolve this dispute.

**Cox's Three-Strike Policy or Procedure**

46. Plaintiffs served a Rule 30(b)(6) Notice on Cox on March 20, 2019, which they amended on April 2 and 23.  The noticed topics included the following topics concerning Cox's policies, procedures and handling of copyright infringement notices:

- **Topic 9**.  Cox's Graduated Response program for responding to copyright infringement notices, including what each step in the process is, Cox's rationale for those steps, whether such steps are automated or manual, and implementation of the program.

- **Topic 30.**  Cox's policies and/or procedures, and implementation of such policies or procedures, for responding to or handling copyright infringement notices, including notifying Subscribers of infringement notices.

13

- **Topic 31.**  Actions that Cox has taken or considered taking against its Subscribers who have been the subject of infringement notices, the bases and requirements for taking any such actions, whether such actions have changed over time, and the frequency with which such actions are taken.

- **Topic 32.**  Actions that Cox has taken or considered taking against its Subscribers who have been the subject of infringement notices sent by the RIAA, the basis and requirements for taking any such actions, whether such actions have changed over time, and the frequency with which such actions are taken.

47.     A true and correct copy of Plaintiffs' April 23, 2019 Second Amended Rule 30(b)(6) Notice is attached hereto as **Exhibit 13**.

48.     Cox produced a document entitled ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The document contains no metadata identifying its author.  True and correct copies of the May 6, 2014 email and the "3 strike rule" attachment are attached hereto as **Exhibit 28**.[1]

49.     Cox designated Matt Carothers to testify on the bulk of Topics 9, 30, 31 and 32 (with Linda Trickey designated to testify on caps or limits on the number of notices Cox would accept and Brent Beck designated to testify on certain CATS ticket data that Cox produced). Contrary to Exhibit 28, Mr. Carothers claimed Cox ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[1] Other attachments to the cover email that are not at issue on this motion are not included in Exhibit 28.

███████   True and correct copies of excerpts of the April 23, 2019 deposition of Mr. Carothers and the June 4, 2019 deposition of Mr. Beck are attached hereto as **Exhibits 13 and 14**.

50.   Cox produced several documents clearly stating or indicating that ███████ ███████   True and correct copies of examples of such documents are attached hereto as **Exhibits 28 and 29**.

51.   On June 17, 2019, I emailed Ms. Golinveaux explaining that Cox's Rule 30(b)(6) designees on Cox's copyright policies and graduated response were unable to adequately answer questions about Cox's use of the three-strike rule or policy in its graduated response for addressing copyright abuse, and asked if Cox would agree that its sole remaining Rule 30(b)(6) designee would testify about the issue. I asked that, at a minimum, the remaining designee testify about who authored the ███████████████████████████████████████ ███████████████, which Cox appears to disclaim was ever in effect. I reiterated my request on June 19 because I had not received a response. True and correct copies of my June 17 and 19 emails are attached hereto as **Exhibit 26**.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 21, 2019 in Washington, District of Columbia.

                                                             /s/ Jeffrey M. Gould
                                                      _____