UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| SONY MUSIC ENTERTAINMENT, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>COX COMMUNICATIONS, INC., *et al.*,<br><br>    Defendants. | Case No. 1:18-cv-00950-LO-JFA |

### DECLARATION OF JEFFREY M. GOULD

I, Jeffrey M. Gould, hereby declare pursuant to 28 U.S.C. § 1746 that the following statements are true and correct to the best of my personal knowledge and belief:

1.  I am Senior Counsel at Oppenheim + Zebrak, LLP, and am admitted to practice law in the District of Columbia, among other jurisdictions. I am counsel for Plaintiffs in the above-captioned case.

2.  I submit this declaration in support of Plaintiffs' Reply Brief in Further Support of Plaintiffs' Motion for Compel filed contemporaneously herewith.

**Cox's Audited Financials**

3.  A true and correct copy of the relevant excerpt from Dr. William Lehr's June 25, 2019 deposition is attached hereto as **Exhibit 1**.[1]

4.  Cox has not cited bates numbers for the four types of financial documents it describes in its opposition brief, so there is some ambiguity. All Cox has produced is cherry-

---

[1] Plaintiffs have designated the transcript for Dr. William Lehr's deposition as Confidential, but the specific portion quoted in Plaintiffs' Reply Brief is not confidential, and therefore is not filed under seal.

picked pages from its audited financials, time-limited profit and loss statements for residential products and Cox Business service, and billing reports for its subscribers that infringed Plaintiffs' works. None of those unaudited statements include auditor notes, explanations, qualifications, opinions, contingent liabilities, accounting descriptions, statements regarding corporate structure, intercompany transfers, risk factors or other disclosures commonly contained in audited financials. The first two bullet points Cox cites appear to refer to a single document (not two documents) showing profits and losses for Cox's residential Internet, video and phone services. The third bullet point is billing and payment information at the subscriber level that Cox only produced after Plaintiffs moved to compel and the Court required it. The fourth bullet concerns financial information concerning Cox Business, which Cox only agreed to produce after at least six separate demands from Plaintiffs on March 26 and 29, and April 15, 24, 25 and 26. These too are not as revealing as Cox's audited financials, lack any accompanying notes required for completeness, and are limited to the subset of Cox Business customers.

**CATS Work Log Notes for Cox Business Customers**

5. Cox's produced a document showing certain data extracted from CATS concerning subscribers implicated by Plaintiffs' infringement notices in a spreadsheet entitled "actions-history.csv," Bates No. COX_SONY_00515539. A true and correct copy of a five-page excerpt thereof is attached as **Exhibit 18** to Plaintiffs motion (ECF No. 177-19) showing the type and manner of data that Cox has already extracted and produced from CATS. The spreadsheet contains records of 570,261 records for tickets related to 57600 subscribers. It has 9 fields: icoms_id; ticket_id; create_date; ip_address; src_port; abuse_type; action_date; action; and action_content_form. There is no option for "call customer" or anything analogous to that; nor are there any customer care notes about interactions with customers (or lack thereof). The "action"

field (left below) and the "action_content_form" field (right below) contain only the following options as entries:

| action |
|---|
| Bounced Mail To Another Group |
| Changed Status To Closed |
| Changed Status To Open |
| Changed Status To Scanning |
| Changed Status To Working |
| Reactivated Customer |
| Sent Reply |
| Sent Warning |
| Suspended Customer |
| Terminated Customer |

| action_content_form |
|---|
| CB - Bulk Market - DMCA |
| CB - Compromised Machine/Unauthorized Access |
| CB - Conficker / Downadup |
| CB - DMCA |
| CB - Follow up letter to customer - DMCA |
| CB - Follow up letter to customer - Trojan/Virus |
| CB - SPAM TROJAN Advisement |
| DMCA |
| DMCA - Invalid Notice - Digital Sig (auto-only) |
| DMCA - Invalid Notice - General |
| DMCA Reply - SUB UNAWARE |
| Hard Limit for Complaints |
| SPA - CB - DMCA |
| SPA - RESI - DMCA |
| Trojan Compromise |
| Web Mail Comp Follow Up - Residential |

6. The work log notes that Plaintiffs seek are in Cox's CATS database, and Cox has already run a script to export data from it. Plaintiffs seek the work log notes for business customers only. Cox has already disclosed the names, addresses and account numbers of virtually all of the 2,793 business customers implicated by Plaintiffs' notices, pursuant to a stipulated order.

**Rosenblatt Report**

7. Cox has already inspected MarkMonitor's source code, taken a 30(b)(6) deposition of MarkMonitor on a number of issues, and is trying to pursue a further 30(b)(6) deposition of MarkMonitor in Lithuania solely on source code issues.

**Documents Concerning Messrs. Zabek, Sikes and Vredenburg's employment, and Abuse Reports**

8. In *BMG v. Cox*, Cox stated that copyright infringement is only one of many problems that Cox is dealing with. A true and correct copy of the cited excerpts from the *BMG v. Cox* trial are attached hereto as **Exhibit 2**. In Matthew Carothers's 30(b)(6) deposition testimony,

███████████████████████████████████████████████████████████

███████████████████████████████████████ A true and correct copy of the relevant excerpt from Mr. Carothers's testimony is attached hereto as **Exhibit 3**.

      9.      Notwithstanding that references within the "3-strikes" document reference to 2003, its metadata shows a creation date in 2013 and a modification in 2014, and it was attached to an email in 2014.

      Executed on June 27, 2019 in Washington, District of Columbia.

                                                  */s/ Jeffrey M. Gould*