# Exhibit 1

                                                            1
                    UNCERTIFIED DRAFT TRANSCRIPT

     1                  N O T I C E

     2       This transcript is an UNCERTIFIED ROUGH DRAFT

     3  TRANSCRIPT ONLY.  It contains the raw output from

     4  the court reporter's stenotype machine translated

     5  into English by the court reporter's computer,

     6  without the benefit of proofreading.  It will

     7  contain untranslated steno outlines,

     8  mistranslations (wrong words), and misspellings.

     9       These and any other errors will be corrected

    10  in the final transcript.  Since this rough draft

    11  transcript has not been proofread, the court

    12  reporter cannot assume responsibility for any

    13  error.  This rough draft transcript is intended to

    14  assist attorneys in their case preparation and is

    15  not to be construed as the final transcript.  It

    16  is not to be read by the witness or quoted in any

    17  pleading or for any other purpose and may not be

    18  filed with any court.

    19

    20

    21

    22

1          P R O C E E D I N G S

2          VIDEO TECHNICIAN: Good morning. We are

3    going on the record at 9:52 a.m. on June 25th,

4    2019.

5          Please note that the microphones are

6    sensitive and may pick up whispering, private

7    conversations, and cellular interference. Please

8    turn off all cell phones or place them away from

9    the microphones, as they can interfere with the

10   deposition audio.

11         Audio and video recording will continue

12   to take place unless all parties agree to go off

13   the record.

14         This is media unit 1 of the

15   video-recorded deposition of William H. Lehr, in

16   the matter of Sony Music Entertainment, et al., v.

17   Cox Communications, Inc., et al., filed in the

18   United States District Court, Eastern District of

19   Virginia, Case Number 1:18-cv-00950-LO-JFA.

20         This deposition is being held at

21   Winston & Strawn, located at 1700 K Street,

22   Northwest, Washington, D.C.

13   lot of that. And I think you've stated that if

14   you relied on any documents in this case,

15   generated from this case in discovery or exhibits

16   and you relied on them, that you've identified

17   them in your reports; is that true?

18       A.   I believe that's a fair characterization.

19       Q.   Is there any information that you

20   requested and didn't get in this case with regard

21   to information from the plaintiffs or the

22   defendants that you thought would be helpful?

                                          66
              UNCERTIFIED DRAFT TRANSCRIPT

1       A.   Well, I mean, I generally asked about

2   different sorts of data. For example, when I

3   wrote my initial report, we had some publicly

4   available data on Cox's business or, you know,

5   basically facts about the size of their business.

6   And I had made an estimate of, like, making

7   certain assumptions about what the value of the

8   business stuff was.

9          And then subsequent to that, additional

10   documents came out which, had I had at the time I

11   did my original report, I would have used.

12         And then I also saw a couple pages from,

13   you know, the audited financials. But it was my

14 understanding that the total document was not
15 provided.  Certainly that total document, were it
16 provided, would be interesting.  Whether or not it
17 would change any of my opinions or not, I can't
18 say until I see that whole document.
19     But often to interpret, you know,
20 financial things, you want to have some more
21 context to do them.  I think that what was
22 provided to me for the purposes in which I've used

67
UNCERTIFIED DRAFT TRANSCRIPT

1 it in my report, I feel like I understand it.  But
2 I would -- you know, I'm always interested in
3 seeing more.
4     So I know that, you know, there's always
5 going to be some limitations to what you can get.
6 Seems to me, for example, in that context, knowing
7 that there are these audited statements, part of
8 which has been provided, having the whole thing
9 would be a useful thing to have, but I'm not sure
10 it would change anything or cause me to offer any
11 different opinions were I have it now or had it
12 before.
13     Q.  Okay.  Have you ever not been qualified
14 as an expert in a case?  In other words, you were

15  challenged as an expert and the court of tribunal

16  ruled that you were not an expert in that case and

17  could not testify.  Has that ever happened to you?

18      A.  I don't believe I've ever been certified

19  not as an expert for the opinions I was offering.

20          I've had, in various context in testimony

21  I've offered, has been struck for various reasons.

22      Q.  So I think you stated with regard to the

                                                      68
                    UNCERTIFIED DRAFT TRANSCRIPT

1  audited financials that you thought the whole

2  thing would be a useful thing to have but you're

3  not sure it would change anything or was you to

4  change your opinions; is that right?

5      A.  Well, I haven't seen it, so I don't know

6  what's in it.

7      Q.  Okay.

8      A.  Often -- you know, usually, you know, the

9  pages that were provided were certainly -- had I

10  been given everything but those pages, I'd have a

11  much harder time.  Much less useful to me.  Having

12  the whole thing would give me more background in

13  the context.  And that's useful.  But without

14  having seen it, I don't know what it would

15  have -- might have revealed.