# Exhibit 2

1

```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF VIRGINIA
                     Alexandria Division




---------------------------------:
                                 :
                                 :
BMG RIGHTS MANAGEMENT (US) LLC,  :
et al.,                          :
           Plaintiffs,           :
                                 : Case No. 1:14-cv-1611
     vs.                         :
                                 :
                                 :
COX ENTERPRISES, INC., et al.,   :
           Defendants.           :
---------------------------------:




                       VOLUME 1 (a.m. portion)




                       TRIAL TRANSCRIPT

                       December 2, 2015

               Before:  Liam O'Grady, USDC Judge

                          And a Jury
```

Norman B. Linnell /Julie A. Goodwin OCR-USDC/EDVA  (703)549-4626

2212

1  had fixed its notices, it could have negotiated daily limits
2  because it represents multiple rights holders, and there would
3  be a record in CATS for every notice, including all these
4  one-ticket things, the first notices for hold for more, and
5  complaints above the daily limit.  They would all be preserved
6  with all the customer account information in it if they had
7  used the system that Cox already had in place long before
8  Rightscorp even first started creating its code to send all
9  these e-mails.
10          And Cox does a lot to do the things that BMG and
11 Rightscorp have said that they care about:  educating people,
12 working with people, getting them to understand the problem,
13 the graduated response program, complying with subpoenas are
14 obviously there, but they provide educational programs that you
15 heard about from Mr. Cadenhead, information on the Web site so
16 people could learn about this issue.  They cooperate with many
17 rights owners, and they also fight a huge number of other
18 problems on the Internet.
19          Copyright infringement is a big global problem, but
20 it's not the only problem.  There's hacking.  There's security
21 problems.  There's spam.  There's denial of service attacks.
22 There's viruses and malware that can take control of people's
23 accounts, that can take their credit card information, that can
24 wreak havoc on people, and Cox is dealing with all of those
25 problems.  It works with the FBI, it works with the Department

1  of Homeland Security, and it tries to balance all of these
2  issues.
3              Now, there are those cases when somebody goes through
4  the process and it's time to terminate, and there have been
5  some e-mails and some chats between employees, mostly Mr. Zabek
6  and his colleagues, about termination, reactivation, and
7  connecting those things to revenue.  People have said, we need
8  the revenue.  We need the customers.  We've all seen those
9  e-mails.
10             Those e-mails reflect bad judgment.  They reflect bad
11 decisions.  I think they're offensive, but they're not Cox's
12 policy, and they are not about this case.  Not one of those
13 e-mails was about a BMG notice, not about a situation with
14 Rightscorp at all.  They're not about the response to
15 Rightscorp or BMG.
16             Cox's response to Rightscorp, which is what the issue
17 here is in this case, was not about revenue.  It was about the
18 unfairness of demanding payment based on unproven accusations.
19             And Cox has worked to improve its process, as you
20 heard from Mr. Vredenburg:  "When we terminate somebody, we
21 don't turn them back on.  What we do now is we go through the
22 final suspensions, we tell the customer, 'All right, we're
23 going to talk to you twice, and on the next -- third
24 suspension, you're done.'  We terminate them.  We don't even
25 talk to them."