# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

SONY MUSIC ENTERTAINMENT, *et al.*,

    Plaintiffs,

v.

COX COMMUNICATIONS, INC., *et al.*,

    Defendants.

Case No. 1:18-cv-00950-LO-JFA

# PLAINTIFFS' AMENDED MEMORANDUM IN OPPOSITION TO DEFENDANTS' SECOND MOTION TO COMPEL

I. **PRELIMINARY STATEMENT**

Cox's motion is procedurally and substantively flawed and should be denied. In January 2019, the Court denied Cox's motion to compel relating to the same discovery requests it relies on here. In denying that motion concerning ownership discovery, the Court said that it would reconsider the issues if Cox identified specific works in suit or specific issues of concern. Ignoring that guidance, Cox now raises another speculative argument—this time about termination notices pursuant to Sections 203 and 304 of the Copyright Act. Cox has not identified a single work in suit about which it has a concern that a Plaintiff's rights have been terminated. Nor do Plaintiffs have reason to believe such termination notices exist, as explained in the supporting declarations.

Cox has had ample opportunity to seek discovery on termination notices during the more than seven months of discovery. Cox did not do so. To be clear, Cox has never served a discovery request for documents relating to termination notices Plaintiffs received, even after the Court denied Cox's earlier motion to compel. Instead, Cox brings this motion to compel (the "Motion"), to be heard after the close of discovery, based on document requests served in November 2018. Cox attempts to justify how it proceeds here by referring to recent SATV/EMI deposition testimony, but, as explained below, that is a red herring. There is nothing new here and Cox's motion lacks any basis in fact or law.

Apart from Cox's speculative argument and unreasonable delay, Cox's Motion seeks irrelevant information. Cox misunderstands the law on statutory terminations, demanding information that post-dates the relevant period. The relevant question is whether Plaintiffs owned or exclusively controlled the works in suit at the *time of infringement*. Termination notices with an effective date after the claim period would have no bearing on Plaintiffs' rights asserted in this case. The Motion should be denied.

## II. COX ALREADY LOST ITS MOTION TO COMPEL DOCUMENTS RESPONSIVE TO THE DOCUMENT REQUESTS IT RELIES ON AND IGNORES THIS COURT'S PRIOR GUIDANCE ON THE ISSUE

Cox asks the Court to compel SATV "to produce information relating to the works-in-suit from their termination database and any related valuations" and that "Plaintiffs should be further compelled to search for and produce any similar information maintained by the other plaintiff groups." Mot. at 8. In doing so, Cox relies on two extraordinarily broad document requests—RFP Nos. 13 and 18—both of which were the subject of Cox's earlier motion to compel relating to ownership and validity, which the Court denied.

RFP No. 13 seeks: "Documents sufficient to demonstrate whether any of the Copyright Works were created as a work for hire." This request cannot reasonably be interpreted to call for what Cox seeks now, *i.e.*, "information relating to notices of the statutory termination of Sony/ATV and EMI's rights in the copyrights in addition to any monetary valuations of any works-in-suit that were performed in connection with termination notices." *See* Mot. at 1. To the extent any of the works in suit are works for hire, they would *not* be subject to termination under the Copyright Act. 17 U.S.C. § 203(a) ("any work other than a work made for hire . . . is subject to termination under the following conditions . . ."); § 304(c) ("any copyright [in existence] on January 1, 1978, other than a work made for hire . . . is subject to termination under the following conditions . . .").

RFP No. 18 seeks: "All documents concerning disputes related to ownership at any time of the Copyright Works, including documents between You and any person concerning any question, uncertainty, litigation, or disputes over Your ownership, co-ownership, administration, control of, or rights to, the Copyright Works." *See* ECF No. 192-2. In briefing and arguing its first motion to compel, Cox narrowed the scope of its requests, including RFP No. 18, to three categories of documents, which included "documents concerning challenges to the validity of

2

Plaintiffs' copyrights or their ownership." *See* Reply Br. (ECF No. 86), at 10.

The Court denied Cox's motion to compel, finding Plaintiffs' agreement to produce copyright registrations and documents showing the chain of title from the copyright claimant to a Plaintiff was sufficient. Ex. 1 (Hr'g Tr., Jan. 25, 2019) at 39:24-25. The Court went on to say that it "would consider dealing with this issue on a copyrighted work-by-copyrighted work basis" or to the extent there is a specific issue such as a work for hire. *Id.* at 39:24 - 40:12. Cox has had ample opportunity in the five months since the Court denied its prior motion to raise the issue of termination notices or propound specific requests for production of documents relating to termination notices, but it chose not to.

Now, ignoring the Court's guidance, Cox comes to the Court again with the same type of speculative arguments it asserted in its first motion to compel. Cox has not articulated any basis to believe that any Plaintiff's rights in a single work in suit was terminated during the claim period, despite having more than seven months of discovery to identify any such issue. Moreover, if Cox had a legitimate concern about whether any work in suit was the subject of a valid termination notice effective during the claim period, Cox can and should have queried the Copyright Office's website.[1] As discussed in more detail below, as a condition precedent to a valid termination, an author must record the termination notice with the Copyright Office prior to the effective date of termination. 17 U.S.C. § 203(a)(4)(A), § 304(c)(4)(A). Cox has not identified any recorded termination notices affecting the works in suit here.

If Cox was concerned about termination notices, it can and should have timely sought

---

[1] *See* https://www.copyright.gov/recordation/ (document recordation including "Notices of Termination"); https://www.copyright.gov/rrc/ (records research including "recorded documents") (last visited July 8, 2019).

3

discovery on them. Cox did not.[2] Even after its first motion to compel was denied, Cox did not serve discovery requests specifically seeking termination notices and any concomitant valuations performed after receipt of a termination notice. Cox also never mentioned termination notices as potentially relevant in any of the numerous meet-and-confer discussions the parties had prior to June 27, 2019. Yet, Cox now accuses Plaintiffs of bad faith and failing to comply with their discovery obligations. Cox's desperate plea is disingenuous to say the least.

Cox also attempts to excuse its failure to request the discovery it seeks now by arguing that Plaintiffs misrepresented how they keep their files relating to ownership disputes. *See* Mot. at 2. But, Plaintiffs correctly informed Cox that they do not maintain centralized files relating to all ownership disputes relating to the works in suit (as Cox acknowledges in its Motion). Mot. at 2–3. Statutory termination notices are a specific category unto themselves and are not maintained in centralized files with "disputes" or "challenges" to Plaintiffs' ownership of the works in suit.

### III. COX SEEKS IRRELEVANT DOCUMENTS BASED ON ITS MISUNDERSTANDING OF THE LAW REGARDING TERMINATION

Cox's request for termination notices misapprehends the relationship between the statutory termination scheme and Plaintiffs' burden to prove ownership at the time of infringement. Proceeding on that misunderstanding, Cox seeks irrelevant documents.

#### A. Conditions Precedent to Effective Termination

As an initial matter, there are procedural requirements, or conditions precedent, for a termination notice to effectively revoke the transfer of or license to a copyright. Notably, among other requirements, an author of a copyrighted work must send notice to the transferee or licensee of the author's intent to terminate the transfer or license at least two years, but up to ten years,

---

[2] Cox's RFP No. 9 mentions "terminations of transfer" in their request for "documents issued by the Copyright Office," but termination notices are not issued by the Copyright Office.

before the alleged effective date of termination. 17 U.S.C. § 203(a)(4)(A), § 304(c)(4)(A). Therefore, at a minimum, for any termination relevant to a work in suit to have been potentially effective during the claim period, a Plaintiff must have received a notice prior to November 26, 2012.

Further, in order for a termination to be effective, the author must record the termination notice with the Copyright Office before the purported effective date of termination. *Id.* Thus, as an additional requirement, for any termination relevant to a work in suit to have been effective during the claim period, a notice must have been filed with the Copyright Office prior to November 26, 2014. Termination notices filed with the Copyright Office are publicly available via a search of the Copyright Office's records.[3] In its motion, Cox has not identified any such termination notices filed with the Copyright Office that even purport to affect Plaintiffs' rights in any of the works in suit.

B. Temporal Limitations on Termination

The relevant inquiry on an infringement claim is whether the plaintiff owned or exclusively controlled the copyrights in the works in suit *at the time the infringement occurred.* 17 U.S.C. 501(b) ("The legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right committed while he or she is the owner of it."). *See also X-IT Prod., L.L.C. v. Walter Kidde Portable Equip., Inc.*, 155 F. Supp. 2d 577, 607-08 (E.D. Va. 2001) (holding that plaintiff had standing to bring infringement claim because it owned the copyright when the alleged infringement occurred) (citing *ABKCO Music,*

---

[3] *See* https://www.copyright.gov/recordation/ (document recordation including "Notices of Termination"); https://www.copyright.gov/rrc/ (records research including "recorded documents"); https://cocatalog.loc.gov (Copyright Office public catalog) (last visited July 8, 2019).

5

*Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971, 980 (2d Cir. 1991) ("The legal or beneficial owner of an exclusive right under a copyright is entitled to bring actions for infringements of that right occurring during the period of its ownership")). Thus, the question in this case is whether Plaintiffs owned or exclusively controlled the copyrights to their works in suit during the claim period. For all Plaintiffs except the SATV Plaintiffs, the claim period is February 4, 2013 through November 26, 2014. For the SATV Plaintiffs, the period of infringement claimed is August 1, 2013 through November 26, 2014. ECF No. 136 (Plaintiffs' First Amended Complaint), ¶ 10.

The relevant provisions of the Copyright Act have temporal limitations on terminations, under which the vast majority of the works in suit are not subject to possible termination within the relevant time period (and Plaintiffs have not found any termination notices for the other works, as explained below). Under § 203 of the Copyright Act, an author of a work may seek to effect termination of the grant of a transfer or license of his or her copyright in a work (not for hire) executed <u>on or after January 1, 1978</u> during a limited period beginning no earlier than <u>35 years</u> from the date of execution of the grant. 17 U.S.C. § 203(a)(3). Under § 304, an author of a work may seek to effect termination of the grant of a transfer or license of his or her copyright in a work (not for hire) executed <u>before January 1, 1978</u> during a limited period beginning <u>56 years</u> after the grant was executed. *Id.* § 304(c)(3). Rights in sound recordings transferred prior to 1972 are not terminable.[4]

---

[4] *See, e.g., Federal Copyright Protection for Pre-1972 Sound Recordings*, U.S. Copyright Office Report (Dec. 2011), at 149, available at: http://www.copyright.gov/docs/sound/pre-72-report.pdf ("[T]o recognize termination rights for grants of copyright transfers or licenses that were made prior to the enactment of a statute granting federal copyrights would be unprecedented and would raise significant concerns relating to retroactive legislation and possible takings. Because of those concerns, the Office is reluctant to recommend that termination rights should apply to any grants that have already been made with respect to pre-1972 sound recordings.").

As relevant to this case, a termination under § 203 could only pertain to rights granted on or before November 26, 1979 because the termination could not be effective until at least 35 years after the grant. Any purported termination of a grant that was made after November 26, 1979 could not affect Plaintiffs' ownership of or exclusive license to the copyrights in suit during the claim period because the 35-year period would not end until after the claim period.[5] Thus, as it relates to this case, a termination under § 203 would only be relevant if the effective date occurred between January 1, 2013 (35 years after January 1, 1978—the earliest date under the statute) and November 26, 2014 (the end of the claim period).

Similarly, § 304 allows for possible termination beginning 56 years after transfer or grant of an author's exclusive rights in a copyright. Thus, as relevant to this case, a termination under § 304 would only be relevant if it pertains to rights granted prior to November 26, 1958 (56 years prior to the end of the claim period—November 26, 2014). This means that § 304 cannot affect any rights in the sound recordings in suit because pre-1972 sound recordings are not terminable.[6] This leaves only a small fraction of the works in suit that could possibly be the subject of a termination notice purporting to be effective before or during the claim period. And, as explained below, Plaintiffs have not identified any such relevant termination notices.

C. Cox's Argument for Relevance Overlooks Black-Letter Copyright Law

Cox's Motion demonstrates its misunderstanding of terminations under the Copyright Act. Cox argues:

> If Sony/ATV and EMI received a termination notice concerning works-in-suit *after* they have completed their searches for chain-of-title documents, Cox is entitled to know that. For example, works-in-suit could

---

[5] Practically speaking, even if a transfer or license granted in November 1979 was effectively terminated at the earliest possible point, the Plaintiff, as grantee, would still own the copyrights during the vast majority of the period of infringement in this case.

[6] Moreover, there are no pre-1972 sound recordings in suit.

>be subject to termination during the pendency of this case, which would necessitate their removal before trial. With discovery ending on July 2, 2019, Cox has no other means to ensure it is aware of all pending or anticipated termination notices.

Mot. at 6 (emphasis in original). For the reasons explained above, if the SATV Plaintiffs (or any Plaintiff) received a termination notice after they searched for documents in this case, such notices could not as a matter of law terminate or otherwise affect Plaintiffs' rights in the works in suit at the time the infringement occurred in this case, i.e., between 2013 and 2014. Thus, even if a grant respecting any of the works in suit could be or have been effectively terminated "during the pendency of this case," such termination would *not* necessitate removal of the works from suit as Cox argues, because that has no bearing on whether Plaintiffs owned the works at the time of infringement. *See* 17 U.S.C. 501(b). For the same reasons, "pending or anticipated termination notices," whatever those may be, have no bearing on this lawsuit.[7]

Cox asserts that "[t]ermination notices received by Plaintiffs are critical evidence in determining whether Plaintiffs own or have rights in in [sic] the works-in-suit because the notices indicate whether the author had sought to reclaim her exclusive rights." Mot. at 7. But, whether an author sought to reclaim his or her exclusive rights" in a copyright is in and of itself irrelevant. All that matters is that Plaintiffs held the rights at the time of infringement.[8]

## IV. DISCOVERY SOUGHT RELATING TO THE SATV PLAINTIFFS

A. <u>The SATV Plaintiffs Did Not Receive Any Notices Purporting to Terminate Their Rights in Any of Their Works in Suit Before or During the Claim Period.</u>

---

[7] Termination notices also have no bearing on "the validity of the copyrights in the works-in-suit" as Cox argues. *See* Mot. at 5. As explained above, §§ 203 and 304 relate to the termination of a transfer of or license to a copyright after a number of years, not whether a copyright is valid.

[8] There is also a 5-year window within which to potentially effectuate termination, which begins 35 years (§ 203) or 56 years (§ 304) after the transfer or license is executed. 17 U.S.C. § 203(a)(3), § 304(c)(3).

Mr. Anish Patel, who is an Associate Director in Sony/ATV Music Publishing's Business and Legal Affairs Department ("BLA"), was the SATV Plaintiffs' Rule 30(b)(6) designee relating to ownership of their works in suit. Part of Mr. Patel's responsibilities is processing termination notices received pursuant to §§ 203 and 304. Ex. 2 (Patel Dep. Tr.) at 11:21–12:7. Mr. Patel testified during his deposition that ██████████████████████████████ ██████████████ *Id.* at 56:16–57:13.

After his deposition, ██████████████████████████████████████████████████████████████████████████████████████████████████████████ *See* Patel Decl. ¶ 7. Accordingly, the spreadsheet Cox seeks has no relevance to this case.

B.    Cox Misrepresents Mr. Patel's Testimony Regarding "Valuations."

With respect to information relating to valuations of the works in suit, Cox has misrepresented Mr. Patel's testimony. Mr. Patel testified that ██████████████████████ ██████████████████████████████ Ex. 2 (Patel Dep. Tr.) at 96:13-22. Over Plaintiffs' counsel's objections regarding the scope of Mr. Patel's 30(b)(6) deposition, as well as to the lack of foundation, Cox's counsel continued to pepper Mr. Patel with questions regarding ████████ ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ *Id.* at 96:23 – 97:19. Regardless, as stated above, there were no notices received for terminations effective during the claim period, thus there would be no attendant valuations done to evaluate compositions in suit subject to termination during the claim period.

9

## V. NONE OF THE OTHER PLAINTIFF GROUPS SHOULD BE COMPELLED TO SEARCH FOR TERMINATION NOTICES OR RELATED VALUATIONS, IF ANY EXIST

Given the fatal flaws in Cox's speculative demand for information relating to termination notices received and valuations that may have been done by the SATV Plaintiffs, the other Plaintiffs should not be compelled to scour their records for similar documents after the close of discovery. Despite Cox's failure to articulate any relevance or any particular works for which it believes there is a concern, the remaining Plaintiff groups attempted to review their records relating to termination notices they may have received. All of the record-company Plaintiffs (the Sony Music, UMG, and Warner Music Plaintiffs) ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Battino Decl. ¶ 4; Genovese Decl. ¶ 4; Jacoby Decl. ¶ 4; Mustico Decl. ¶¶ 2-3.

The music-publisher Plaintiffs' records involve a different scenario, due in part to the fact that termination notices for compositions potentially go back further in time under § 304. ██ ████████████████████████████████████████████████████████████████ Chen Decl. ¶ 4 (recall that to be potentially effective within the claim period any termination notice would have to have been received by November 2012 at the latest). ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

---

[9] Aside from being irrelevant, spreadsheets tracking termination notices received raise privilege concerns to the extent they are maintained by in-house counsel and include attorney work product. *See, e.g.,* Jacoby Decl. ¶ 5.

10

███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
████

    ███████████████████████████████████████████████

███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
█████████████████████████████

    ███████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
█████████████████████████████████████

## VI. CONCLUSION

For all the foregoing reasons, Cox's motion to compel should be denied.

Dated: July 10, 2019                                          Respectfully submitted,

/s/ Scott A. Zebrak
Scott A. Zebrak (38729)
Matthew J. Oppenheim (*pro hac vice*)
Jeffrey M. Gould (*pro hac vice*)
Kerry M. Mustico (*pro hac vice*)
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Avenue, NW, 5th Floor
Washington, DC 20015
Tel: 202-480-2999
scott@oandzlaw.com
matt@oandzlaw.com
jeff@oandzlaw.com
kerry@oandzlaw.com

*Attorneys for Plaintiffs*