# Exhibit R

ANDREW D. CASTRICONE
acastricone@grsm.com
Direct: (415) 875-3183



ATTORNEYS AT LAW
275 BATTERY STREET, SUITE 2000
SAN FRANCISCO, CA 94111
(415) 986-5900
WWW.GRSM.COM

March 13, 2019

**VIA E-MAIL ONLY (DHLeiden@winston.com)>**

Diana Hughes Leiden, Esq.
Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

  *Re: Cox v. MarkMonitor*

Dear Diana:

  We have received and reviewed the Court's Order on Cox' Motion to Compel Compliance with the subpoena issued to MarkMonitor pursuant to FRCP 45. We take this opportunity to meet and confer to hopefully find a workable solution and documented agreement with respect to the source code-related requests and the related expense to alleviate the need for a motion for reconsideration or motion for clarification, or efforts to seek appellate review.

  Initially, it was not until our receipt and review of your reply papers, and Mr. Feamster's second declaration, that we were made aware that Cox intended to conduct a static analysis of MarkMonitor's source code. As defined in the subpoena, and used in Request Nos. 12 and 13, "Your System" connotes a dynamic analysis, which certainly warranted MarkMonitor's overall concerns with respect to its trade secrets and well as the great burden in time and effort and related expense as set forth in Mr. Bahun's declaration.

  While the scope of the request has now been "narrowed" to some extent, there are still issues that need to be addressed regarding compliance. For example, there are multiple pieces of source code that go into MarkMonitor's systemic review on a particular project, and this is not an "out of the box" type of software that is essentially "plug and play." Moreover, it is our understanding that, given the evolution of technology, and older versions of source code, including source code included in the definition of "Your System" at the relevant times in this matter, such responsive source code either no longer exist or are not, from a stand-alone basis, necessarily in the form of compileable source code.

  Rather, it is far more likely that the production of relevant and responsive source code in use during the relevant timeframe may need to be regenerated by running executable files through a source code disassembler with the assistance and oversight (on U.S. soil), of one or

more of MarkMonitor's European-based engineers who will have to put their daily duties, responsibilities and obligations on hold to the detriment of MarkMonitor and its other customers. This not-perfect process will result in the generation and output of source code that will need to be reviewed and possibly enhanced by the engineers to correct bugs, errors or other inaccurate results from the disassembly process. We obviously want to ensure that such processing of the source code leads to both an accurate representation of the source code in play at the times relevant to this case and that any corrective measures made in the regeneration process are not and will not be considered to be an effort to manipulate or modify the source code in any way.

Importantly, the Court did not condition production on the payment or expenses incurred and for our client's time and effort in complying with its response to the requests and adherence to the order. In our written response to the subpoena, deemed timely by the Court, MarkMonitor included objections that "compliance would be unduly burdensome, time consuming and expensive." *See also* Opposition (Dkt.12), pp.3:26-4:1, 9:8-16; Bahun Decl., ¶¶19-20. Pursuant to FRCP 46(d)(2)(B)(ii), "the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." The March 7, 2019 Order did not do so. Magistrate Judge Kim merely indicated

> Defendant's assertions of undue burden similarly fall flat. Allowing inspection by an expert in a secure environment does not pose an undue burden to Defendant. Likewise, requiring the production of revision information does not seem especially onerous given the amount at stake in the Eastern District of Virginia action and the fact that Defendant is in the technology business.

This is an oversimplification of what is required on cost-shifting in the scenario of a subpoena to a non-party, like MarkMonitor, to the actual litigation. The 9th Circuit agrees.

> We agree with the D.C. Circuit's analysis of the amended rule and hold that Rule 45(d)(2)(B)(ii) *requires* the district court to shift a non-party's costs of compliance with a subpoena, if those costs are significant. The plain language of the rule dictates our conclusion. The rule states that the district court's order compelling compliance with a subpoena "***must*** protect a person who is neither a party nor a party's officer from significant expense resulting from compliance," Fed. R. Civ. P. 45(d)(2)(B)(ii) (emphasis added), and provides no exceptions. This language leaves no room for doubt that the rule is mandatory. Thus, when discovery is ordered against a non-party, the only question before the court in considering whether to shift costs is whether the subpoena imposes significant expense on the non-party. If so, the district court ***must*** order the party seeking discovery to bear at least enough of the cost of compliance to render the remainder non-significant." *See Linder*, 251 F.3d at 182.

> Under this regime, we conclude that the district court erred in its interpretation of Rule 45(d)(2)(B)(ii) by framing the issue in terms of undue burden, rather than significant expense. The district court denied costs and sanctions because it found that "[t]he scope of production has been sufficiently limited by the Court such that the cost of producing said documents should not be *overly burdensome*." (Emphasis added.) Rather than considering whether compliance was unduly burdensome, the district court should have considered only whether that cost was significant. Applying the correct standard, we have no trouble concluding that

March 13, 2019
Page 3

$20,000 is "significant." See *Linder*, 251 F.3d at 182 (noting that $9,000 may be sufficiently significant to justify cost-shifting). Therefore, the district court was required to shift enough of the cost of compliance to render the remainder non-significant. Accordingly, we reverse the district court's denial of costs under Rule 45(d)(2)(B)(ii) and remand for its determination of the proper allocation of costs.

[Emphasis added.]  *See Legal Voice v. Stormans Inc.* (9th Cir.2013) 738 F.3d 1178, 1184.

Prior to undertaking what we believe is now being asked of MarkMonitor, and prior to MarkMonitor incurring and/or at least identifying the estimated time and expense we anticipate will be necessary, as well as to clarify specifically what Mr. Feamster wants, needs, or expects, it is essential that we get on the same page with respect to the scope and content of production. With respect to the latter, we would request that we schedule a telephone conference between you and Mr. Feamster and me and MarkMonitor representatives to delineate a scope of production that is at least an agreed upon scope of the present "ask."  Our client can then project and calculate the expense that would be required to respond and produce the information subject to the court's order to determine if Cox is in agreement to reimburse MarkMonitor for all or a portion of its costs, to avoid the necessity of further judicial intervention.

Please contact me upon receipt to discuss the above.  I look forward to hearing from you.

Very truly yours,

Andrew D. Castricone