**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

SONY MUSIC ENTERTAINMENT, *et al.*,

      Plaintiffs,

v.

COX COMMUNICATIONS, INC., *et al.*,

      Defendants.

Case No. 1:18-cv-00950-LO-JFA

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO PRECLUDE**
**CERTAIN EXPERT TESTIMONY BY DR. KEVIN C. ALMEROTH**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................................... ii

INTRODUCTION ....................................................................................................................... 1

BACKGROUND .......................................................................................................................... 2

ARGUMENT ............................................................................................................................... 3

    I.      LEGAL STANDARD ..................................................................................................... 3

    II.    COX IS ESTOPPED FROM USING DR. ALMEROTH'S TESTIMONY TO
           RELITIGATE ISSUES ALREADY DECIDED AGAINST IT ................................... 4

    III.   DR. ALMEROTH'S PROPOSED TESTIMONY CONCERNING THE
           "REASONABLENESS" OF COX'S POLICY WILL NOT ASSIST THE
           JURY ............................................................................................................................. 6

    IV.   DR. ALMEROTH'S PROPOSED TESTIMONY CONCERNING THE
           "REASONABLENESS" OF COX'S POLICY IS UNRELIABLE ............................. 8

    V.    DR. ALMEROTH'S OPINION ON "REASONABLENESS" IS NOT A REBUTTAL
           REPORT ...................................................................................................................... 10

    VI.   DR. ALMEROTH LACKS THE NECESSARY QUALIFICATIONS TO OPINE ON
           AN ISP INFRINGEMENT POLICY ........................................................................ 11

    VII.  COX CANNOT USE DR. ALMEROTH AS A VEHICLE FOR MISLEADING AND
           IRRELEVANT ASSUMPTIONS CONCERNING THE COPYRIGHT ALERT
           SYSTEM ..................................................................................................................... 12

    VIII. DR. ALMEROTH CANNOT TESTIFY AS TO THE LAW ON NET
           NEUTRALITY ........................................................................................................... 15

CONCLUSION........................................................................................................................... 16

## TABLE OF AUTHORITIES

<u>Cases</u>

*Alevromagiros v. Hechinger Co.*, 993 F.2d 417 (4th Cir. 1993) ...................................................10

*Arista Networks, Inc. v. Cisco Sys. Inc.*,
    No. 16-cv-00923-BLF, 2018 WL 8949299 (N.D. Cal. June 15, 2018) ...................................8

*Armstrong v. Bos. Sci. Corp.*,
    No. 2:13-cv-24784, 2018 WL 3824375 (S.D. W. Va. Aug. 10, 2018) ............................... 7-8

*BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*,
    881 F.3d 293 (4th Cir. 2018) ......................................................................................2, 4, 5

*BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*,
    149 F. Supp. 3d 634 (E.D. Va. 2015) ...........................................................................2, 4, 5

*BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*,
    No. 1:14-cv-1611, 2018 WL 4444011 (Aug. 9, 2018) ................................................... 13-14

*Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194 (4th Cir. 2001) ...............................................4, 8

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) ....................................................4, 10

*Dun & Bradstreet Software Servs., Inc, v. Grace Consulting, Inc.*,
    307 F.3d 197 (3d Cir. 2002) ..................................................................................................15

*Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997) .........................................................................10

*Gilbert v. Gulf Oil Corp.*, 175 F.2d 705 (4th Cir. 1949) ...............................................................9

*In re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322 (4th Cir. 2004) ...........................................4

*Kidder, Peabody & Co. v. IAG Int'l Acceptance Grp. N.V.*,
    14 F. Supp. 2d 391 (S.D.N.Y. 1998) .....................................................................................7

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) ...........................................................8, 11

*Oglesby v. Gen. Motors Corp.*, 190 F.3d 244 (4th Cir. 1999) ....................................................11

*Pugh v. Louisville Ladder, Inc.*, 361 F. App'x 448 (4th Cir. 2010) ...........................................10

*Radiance Found., Inc. v. NAACP*, 27 F. Supp. 3d 671 (E.D. Va. 2013) ...............................11, 15

*Sedlack v. Braswell Servs. Grp., Inc.*, 134 F.3d 219 (4th Cir. 1998)...........................................4

## TABLE OF AUTHORITIES

### (Continued)

Cases

*SMD Software, Inc. v. EMove, Inc.*, 945 F. Supp. 2d 628 (E.D.N.C. 2013) ................................11

*Sonos, Inc. v. D & M Holdings Inc.*, 297 F. Supp. 3d 501 (D. Del. 2017) ..................................15

*Tyger Constr. Co. v. Pensacola Constr. Co.*, 29 F.3d 137 (4th Cir. 1994) ........................... 12-13

*United States v. Barile*, 286 F.3d 749 (4th Cir. 2002) ....................................................................6

*United States v. Offill*, 666 F.3d 168 (4th Cir. 2011)................................................................4, 6

*United States v. Oldbear*, 568 F.3d 814 (10th Cir. 2009) ...........................................................15

*United States v. Tsoa*, No. 1:13CR137, 2013 WL 6145664 (E.D. Va. Nov. 20, 2013) ................8

*Viterbo v. Dow Chem. Co.*, 826 F.2d 420 (5th Cir. 1987) ............................................................10

*Westberry v. Gislaved Gummi AB*, 178 F.3d 257 (4th Cir. 1999) ..........................................4, 6, 8

*Woods v. Lecureux*, 110 F.3d 1215 (6th Cir. 1997) .......................................................................6

*Yates v. Ford Motor Co.*, No. 5:12-cv-752-FL, 2015 WL 3448905
      No. 2:13-cv-24784, 2018 WL 3824375 (E.D.N.C. May 29, 2015) .........................................12

*Zuckerman v. Wal-Mart Stores E., L.P.*, 611 F. App'x 138 (4th Cir. 2015) ................................10


Statutes

17 U.S.C. § 512(g)(3) .......................................................................................................................7


Rules

Fed. R. Evid. 702 .................................................................................................3, 6, 8, 9, 11

**INTRODUCTION**

Cox's trial strategy is to parade out a cadre of expert witnesses to distract, sow confusion, and offer opinions untethered to the facts.  Its objective is to hide behind experts with extensive resumes, who will tell the jury what to think and how to decide the case.  This motion addresses the improper testimony of Cox's proposed rebuttal expert, Dr. Kevin Almeroth.  He is a professional expert witness whom Cox hired to tell a jury, among other things, that its response to notices of infringement was "reasonable."

There are a number of reasons to exclude Dr. Almeroth's proposed testimony as to "reasonableness."  First, Cox is collaterally estopped from using his testimony to relitigate issues already decided against it in a prior proceeding.  Second, rather than assist the jury, Dr. Almeroth's testimony on reasonableness is an attempt at jury nullification.  Third, Dr. Almeroth failed to apply the level of intellectual rigor that characterizes the practice of an expert in the relevant field and provides only *ipse dixit*.  Fourth, his opinion is improper affirmative testimony masquerading as rebuttal testimony.  Fifth, Dr. Almeroth lacks the necessary qualifications or specialized knowledge to provide that opinion.  Sixth, Cox improperly seeks to use Dr. Almeroth as a vehicle for irrelevant and misleading testimony concerning the Copyright Alert System and the law on net neutrality.

Cox is secondarily liable for its continued provision of Internet service to specific known repeat infringers and the financial benefits it received from the infringing activity.  Cox's alleged "reasonableness" is not an element of any of the claims or affirmative defenses in the case.  By declaring Cox's conduct as "reasonable," Dr. Almeroth intends to tell the jury that Cox's conduct was appropriate and justified.  This seal of approval from Dr. Almeroth improperly usurps the role of the judge as to the law and the role of the jury in applying the law to the facts.  The jury is

1

more than capable of resolving the factual issues in the case without his misleading *ipse dixit* testimony.

Cox is also estopped from using Dr. Almeroth in this manner by this Court's and the Fourth Circuit's determination that Cox's policy concerning repeat infringers was a sham and not reasonably implemented.  *See BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 149 F. Supp. 3d 634, 655-62 (E.D. Va. 2015), *aff'd in relevant part*, 881 F.3d 293 (4th Cir. 2018).  Cox cannot relitigate those issues.  In particular, Cox cannot argue that its response to infringement notices was reasonable when this Court expressly found to the contrary.

## BACKGROUND

Dr. Almeroth is a computer science professor, has a Ph.D. in computer science, and is the epitome of a professional testifier.  In the last four years alone, he has provided deposition and/or live trial testimony (not merely expert reports) in over forty separate cases.  *See* Gould Decl. Ex. 1, (Rebuttal Expert Report of Kevin C. Almeroth, Ph.D., dated May 15, 2019 ("Almeroth Rept.")).

Dr. Almeroth seeks to provide testimony in five areas: (1) the functionality of Cox's ISP system; (2) the functionality of Cox's ISP system within the Internet as a whole; (3) the functionality of peer-to-peer file-sharing applications, including how they function within Cox's ISP system and the Internet as a whole; (4) the capabilities of Internet monitoring tools, such as Procera generally and on Cox's network specifically; and (5) the reasonableness of Cox's response process to notices of alleged copyright infringement in light of the characteristics of Cox's network, the Internet as a whole, and industry standards.  *Id.* ¶ 2.  It is the fifth category that is the focus of this motion.[1]

---

[1] Dr. Almeroth's improper testimony about "reasonableness" that should be precluded includes paragraphs 30, 35 (starting on the second sentence), 134-138, and 143-158.

Specifically, Dr. Almeroth opines:



*Id.* ¶ 30; *see also id.* ¶¶ 134, 136-137.

Dr. Almeroth proposes to tell the jury that Cox processed copyright infringement

notifications 

*Id.* ¶ 35.  His opinion is that

*Id.*

Dr. Almeroth purports to "corroborate" his opinion as to the reasonableness of Cox's graduated

response

(*see*

*id.* ¶¶ 134-137).

Dr. Almeroth also opines on the legal issues associated with controlling peer-to-peer

traffic.  *See id.* ¶¶ 34, 114-122.

## ARGUMENT

### I.    <u>LEGAL STANDARD</u>

Federal Rule of Evidence 702 governs the admissibility of expert testimony.  Under Rule

702, a "witness who is qualified as an expert by knowledge, skill, experience, training, or

education" may testify in the form of an opinion" if:  (1) it is potentially helpful to the jury; (2) it

is based on sufficient facts or data; (3) it is the product of reliable principles and methods; and (4) the testimony is applied to the facts of the case.  Fed. R. Evid. 702.  The "touchstone of the rule is whether the testimony will assist the jury."  *United States v. Offill*, 666 F.3d 168, 175 (4th Cir. 2011).

Trial courts act as gatekeepers to ensure that expert testimony is reliable and relevant. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993).  The Court must determine if the "reasoning or methodology underlying the expert's proffered opinion is reliable" and "whether the opinion is relevant to the facts at issue."  *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 260 (4th Cir. 1999).

The burden is on the party proffering the expert to prove by a preponderance of the evidence that the expert's testimony is admissible and that the requirements of the Federal Rules of Evidence are satisfied.  *See Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001); *Daubert*, 509 U.S. at 592 n.10.

## II.    COX IS ESTOPPED FROM USING DR. ALMEROTH'S TESTIMONY TO RELITIGATE ISSUES ALREADY DECIDED AGAINST IT

"Collateral estoppel forecloses the relitigation of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation in which the party against whom [issue preclusion] is asserted had a full and fair opportunity to litigate." *Sedlack v. Braswell Servs. Grp., Inc.*, 134 F.3d 219, 224 (4th Cir. 1998) (internal quotation marks omitted).  The facts that underpin this Court's summary judgment decision against Cox in *BMG* involve Cox's own behavior and satisfy the elements for applying collateral estoppel here. *See In re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322, 326 (4th Cir. 2004).

In *BMG*, this Court already determined, and the Fourth Circuit affirmed, that Cox did not reasonably implement a repeat infringement policy.  *See BMG*, 149 F. Supp. 3d at 655-62; *BMG*, 881 F.3d at 303-05.  That is the identical issue Dr. Almeroth intends to refute.  This Court found

that "Cox employees followed an unwritten policy put in place by senior members of Cox's abuse group by which accounts used to repeatedly infringe copyrights would be nominally terminated, only to be reactivated upon request." *BMG*, 149 F. Supp. 3d at 655-56.  The emails in the *BMG* record "strip[ped] Cox of any innocence" and made "clear" that Cox's repeat infringer policy on the books was an "absolute mirage" given how Cox acted.  *Id.* at 658.  The Fourth Circuit further explained that "Cox created only a very limited automated system to process notifications of alleged infringement" and that, "in carrying out its thirteen-strike process, Cox very clearly determined *not* to terminate subscribers who in fact repeatedly violated the policy." *BMG*, 881 F.3d at 299, 303.  "Cox formally adopted a repeat infringer 'policy,' but, both before and after September 2012, made every effort to avoid reasonably implementing that policy." *Id.* at 303.

In addition, this Court in *BMG* precluded Cox's putative expert, William Rosenblatt, from opining on topics identical to those proffered by Dr. Almeroth.  Specifically, the Court precluded Mr. Rosenblatt's testimony that Cox's implementation of its infringement policy was reasonable and his testimony comparing Cox's policy with the Copyright Alert System and the policies of other ISPs.  *See* Gould Decl. Ex. 2, ¶ 9 (Order, *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, No. 1:14-cv-1611, ECF No. 691 (E.D. Va. Nov. 25, 2015) (granting, *inter alia*, Pls.' Mot. to Exclude Portions of the Expert Report and Limit the Trial Testimony of Cox's Expert William Rosenblatt)).[2]

---

[2] Plaintiffs have not had the opportunity to review Mr. Rosenblatt's report; Cox refused to produce it.  But the briefing indicates that Mr. Rosenblatt performed analyses on "reasonableness," and the Copyright Alert System and other ISP policies, similar to Dr. Almeroth.  *See* Gould Decl. Ex. 3, at 5-11, 15-17 (Pls.' Mem. in Supp. of its Mot. to Exclude Portions of the Expert Report and Limit the Trial Testimony of Cox's Expert William Rosenblatt, *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, No. 1:14-cv-1611, ECF No. 450 (E.D. Va. Oct. 23, 2015)); Gould Decl. Ex. 4, at 21-27 (Cox's Opp'n to Pls.' Mot. to Exclude Portions of the Expert Report and Limit the Trial Testimony of Cox's Expert William

Cox previously litigated and lost when the Court and the Fourth Circuit rejected its DMCA defense.  Cox cannot now proffer Dr. Almeroth's opinion inconsistent with the findings underlying the Court's judgment.  This is basic collateral estoppel.  Cox is not entitled to a second bite at the apple.

## III.   DR. ALMEROTH'S PROPOSED TESTIMONY CONCERNING THE "REASONABLENESS" OF COX'S POLICY WILL NOT ASSIST THE JURY

Dr. Almeroth offers opinions that will not "help the trier of fact to understand the evidence or to determine a fact in issue."  *See* Fed. R. Evid. 702(a).  "[T]estimony offering nothing more than a legal conclusion—i.e., testimony that does little more than tell the jury what result to reach—is properly excluded under the Rules."  *United States v. Barile*, 286 F.3d 749, 760 (4th Cir. 2002) (quoting *Woods v. Lecureux*, 110 F.3d 1215, 1220 (6th Cir. 1997)); *see also Offill,* 666 F.3d at 175 ("[I]t does not help the jury for an expert to give testimony that states a legal standard or draws a legal conclusion by applying law to the facts, because it supplies the jury with no information other than the witness's view of how the verdict should be read." (internal quotation marks and citations omitted)).  Here, Dr. Almeroth's opinion "has a greater potential to mislead than to enlighten" and thus should be excluded.  *See Westberry*, 178 F.3d at 261.

The plain purpose of Dr. Almeroth's opinion is to invite the jury to nullify the law and to ignore the standards for determining liability and damages.  Cox repeatedly received infringement notices from Plaintiffs (and other copyright holders) identifying specific subscribers who were illegally copying and distributing Plaintiffs' copyrighted works.  Rather

---

Rosenblatt, *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, No. 1:14-cv-1611, ECF No. 597 (E.D. Va. Nov. 10, 2015)); Gould Decl. Ex. 5, at 4-10 (Pls.' Reply to Def.'s Opp'n to Pls.' Mot. to Exclude Portions of the Expert Report and Limit the Trial Testimony of Cox's Expert William Rosenblatt, *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, No. 1:14-cv-1611, ECF No. 646 (E.D. Va. Nov. 17, 2015)).

than stop these subscribers from using its Internet service to infringe, Cox continued to provide

its Internet service to known infringers and lined its pockets with substantial revenues as a

result.[3]  Dr. Almeroth's opinion that Cox's response to receiving infringement notices was

"reasonable" conveys a seal of approval and tells the jury that Cox's conduct was justified or

proper.  This opinion impermissibly reaches ultimate legal issues that are entrusted to the jury.

The risk of jury nullification here is high.  The jury, not an expert, should decide the

ultimate issues.  But Dr. Almeroth's opinions invite the jury to cast aside all facts relevant to the

issues in the case and the relevant legal standards.  There is no significant distinction between

Dr. Almeroth's opinions on "reasonableness" and opinions on whether Cox acted willfully, knew

of ongoing infringement, and/or failed to act sufficiently to stop or limit the infringement.  *See*

*Kidder, Peabody & Co. v. IAG Int'l Acceptance Grp. N.V.*, 14 F. Supp. 2d 391, 398, 403-04

(S.D.N.Y. 1998) (excluding expert report on reasonableness of plaintiff's conduct where it was

"functional equivalent" of opinion that plaintiff did not act with malice and told jury what result

to reach on ultimate issue).

Further, the "reasonableness of [a party's] conduct" is "the sort of question[] that lay

jurors have been answering without expert assistance from time immemorial" and therefore "not

appropriate for expert testimony."  *See id.* at 404; *Armstrong v. Bos. Sci. Corp.*, No. 2:13-cv-

---

[3] As explained in Plaintiffs' summary judgment brief, between February 1, 2013 and November 26, 2014, Plaintiffs put Cox on notice of 163,148 specific instances of its subscribers using its Internet service to infringe.  Cox's records reveal that Plaintiffs' infringement notices informed Cox of 57,679 infringing Cox subscribers: ██████████████████████████████

████ ██ Not a single one of the infringing Cox subscribers provided a counter-notification to Cox to dispute the allegations of infringement pursuant to 17 U.S.C. § 512(g)(3).  Nor did any send an email to RIAA or MarkMonitor to dispute the infringement allegation.  For the thousands of infringing Cox subscribers who received multiple warnings and even temporary suspensions but refused to stop infringing, Cox nonetheless continued to provide virtually all of them with the Internet access they were using to infringe, ████████████████████
████████

24784, 2018 WL 3824375, at *2 (S.D. W. Va. Aug. 10, 2018).  What Dr. Almeroth proffers to

tell the jury is directed to "lay matters which a jury is capable of understanding and deciding

without the expert's help."  *See United States v. Tsoa*, No. 1:13CR137, 2013 WL 6145664, at *8

(E.D. Va. Nov. 20, 2013).[4]  His opinion should be excluded.

## IV.   DR. ALMEROTH'S PROPOSED TESTIMONY CONCERNING THE "REASONABLENESS" OF COX'S POLICY IS UNRELIABLE

Rule 702 bars Dr. Almeroth's opinion on the "reasonableness" of Cox's infringement

policy.  The objective of *Daubert*'s gatekeeping requirement is to ensure that an expert "employs

in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in

the relevant field."  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).  To be admissible,

an expert's testimony must "rest[] on a reliable foundation."  *Westberry*, 178 F.3d at 260

(quoting *Kumho*, 526 U.S. at 156).  Dr. Almeroth's report and proposed testimony fail the basic

requirements of *Daubert* and *Kumho*.

Absent from Dr. Almeroth's analysis is a standard or generally accepted technique used

to determine "reasonableness."  *See Cooper*, 259 F.3d at 199.  Dr. Almeroth's testimony is

nothing more than quintessential *ipse dixit*.

First, although opining on reasonableness, he provides no definition of the term.  *See*

Gould Decl. Ex. 6, 72:12-19 (Deposition Transcript of Dr. Kevin C. Almeroth, May 31, 2019.

("Almeroth Tr.") ("Again, I think I testified I don't have a specific definition.  I haven't

established a specific threshold.  It's more of a functional definition that looks at what Cox is

---

[4] Dr. Almeroth has been precluded in other cases from opining on factual issues that require no
expert testimony.  *See*, *e.g.*, *Arista Networks, Inc. v. Cisco Sys. Inc.*, No. 16-cv-00923-BLF, 2018
WL 8949299, at *3 (N.D. Cal. June 15, 2018) ("Dr. Almeroth will not be allowed to testify
whether Cisco had a 'public and consistent' position regarding its [command line interface]
because he does not have the expertise to opine what it means for a company to take a 'public
and consistent' position.  Moreover, this is a factual issue about which the jury needs no expert
testimony."); *id.* ("Dr. Almeroth opines on the subjective intent of others.  Experts may not
speculate about the state of mind or vouch for opinions of others . . . .").

doing and to determine whether or not it's reasonable unto itself.").  He was unable (or unwilling) to identify the line dividing "reasonable" and "unreasonable" but deemed it a "fairly straightforward conclusion" that what Cox was doing was reasonable.  *See id.* 69:22-70:11.  He simply "looked generally" at ██████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████  *Id.* 64:16-65:13.  Indeed, when asked about specific factors concerning reasonableness, he testified:  "I think it's based on my expertise and the available evidence.  So what the criteria would be is as to what was available based on the evidence."  *Id.* 74:4-10.  That Dr. Almeroth cannot even define the basis for his finding fundamentally disqualifies the "analysis" as being the product of reliable methods or principles.

Second, Dr. Almeroth lacks anything close to "sufficient facts or data."  *See* Fed. R. Evid. 702.  He failed to put himself "in possession of such facts as would enable him to express a reasonably accurate conclusion as distinguished from guess or conjecture."  *See Gilbert v. Gulf Oil Corp.*, 175 F.2d 705, 709 (4th Cir. 1949).  In forming his opinion, Dr. Almeroth did not consider, or deemed irrelevant, basic facts concerning Cox's infringement policy and the ISP industry, including:

- Why Cox structured its graduated response the way that it did (*see* Gould Decl. Ex. 6, 59:23-62:8 (Almeroth Tr.));

- Cox's financial resources and whether Cox considered retaining subscribers as a factor in formulating its graduated response process (*id.* 79:19-82:2);

- Cox's considerations in assessing whether to terminate an account or how long those assessments take (*see id.* 90:15-93:9, 103:7-14);

- How Cox exercises its discretion on whether to terminate an account (*id.* 108:7-15);

- How Dr. Weber defines effectiveness and whether an ineffective graduated response process speaks to whether the response to infringement notices is "reasonable," despite relying on her opinion that Cox's graduated response was "effective" (*id.* 114:22-115:17);

- Whether Cox imposed daily caps, blacklists, or reactivations (*see id.* 131:19-136:11, 145:15-146:7, 151:8-19); and

- Any other scenario in which a customer is given 13 chances to stop using a service to violate the law (*id.* 117:17-118:9).

"[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. . . . [T]here is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *see also Pugh v. Louisville Ladder, Inc.*, 361 F. App'x 448, 454 n.4 (4th Cir. 2010).  Dr. Almeroth provides no basis, much less a methodology, to explain how he determined that Cox's policy was reasonable.  His testimony thus boils down to his subjective beliefs concerning the role of an ISP in the Internet ecosystem and his improper say-so, both of which have no place before a jury.  *See Zuckerman v. Wal-Mart Stores E., L.P.*, 611 F. App'x 138, 138 (4th Cir. 2015) (per curiam) ("Expert testimony rooted in 'subjective belief or unsupported speculation' does not suffice." (quoting *Daubert*, 509 U.S. at 590)); *Alevromagiros v. Hechinger Co.*, 993 F.2d 417, 421 (4th Cir. 1993) ("[W]e are unprepared to agree that 'it is so if an expert says it is so.'" (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 421 (5th Cir. 1987)))).  His opinion should be precluded.

## V.  DR. ALMEROTH'S OPINION ON "REASONABLENESS" IS NOT A REBUTTAL REPORT

Cox hired Dr. Almeroth to review and evaluate certain aspects of two expert reports submitted on behalf of Plaintiffs: (1) Dr. Terrence P. McGarty, dated April 10, 2019, and (2) Barbara Frederiksen-Cross, dated April 10, 2019.  *See, e.g.*, Gould Decl. Ex. 1, ¶ 1 (Almeroth Rept.).  But Dr. Almeroth's "reasonableness" analysis is not a rebuttal to either report.

Dr. McGarty provided an overview of the architecture, operations, and management of the networks used to provide broadband internet services to consumers; considered Cox's functional and technical ability to receive, process, and respond to copyright infringement notices, including those from MarkMonitor on behalf of the music industry; and examined the degree to which Cox's actions in response to infringement notices were consistent with this ability. He did not undertake a "reasonableness" assessment. Ms. Frederiksen-Cross provided a technical tutorial about peer-to-peer file distribution, assessed the MarkMonitor detection and notification system, including the data it collected, and evaluated Cox's capabilities and processing of notices. She, too, did not conduct a "reasonableness" assessment. Accordingly, the Court should preclude Dr. Almeroth's testimony on reasonableness as improper rebuttal.

## VI.   DR. ALMEROTH LACKS THE NECESSARY QUALIFICATIONS TO OPINE ON AN ISP INFRINGEMENT POLICY

Dr. Almeroth is not "qualified as an expert by knowledge, skill, experience, training, or education" to provide an expert opinion on the reasonableness of an ISP's graduated response policy. *See* Fed. R. Evid. 702. Expertise in one area does not automatically make a witness an expert in other area. In evaluating a proffered expert's qualifications, the "trial court ha[s] to decide whether this particular expert ha[s] sufficient specialized knowledge to assist the jurors in deciding the particular issues in the case." *Kumho*, 526 U.S. at 156 (internal quotation marks and citation omitted). "A reliable expert opinion must be based on scientific, technical, or other specialized knowledge and not on belief or speculation . . . ." *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999). "[W]here a purported expert witness has neither satisfactory knowledge, skill, experience, training nor education on the issue for which the opinion is proffered, that witness's testimony may be excluded." *Radiance Found., Inc. v. NAACP*, 27 F. Supp. 3d 671, 674 (E.D. Va. 2013) (quoting *SMD Software, Inc. v. EMove, Inc.*, 945 F. Supp. 2d 628 (E.D.N.C. 2013)).

Dr. Almeroth has neither specialized knowledge nor sufficient skill, experience, training, or education to opine on ISP infringement policies, much less the "reasonableness" of Cox's policy.  Dr. Almeroth has never provided services to an ISP with respect to copyright infringement, has never spoken with an ISP about how they respond to copyright infringement allegations, and has never done any research concerning how ISPs address subscriber infringement.  *See* Gould Decl. Ex. 6, 23:23-24:3, 24:22-25:8 (Almeroth Tr.).  This case was the first time Dr. Almeroth looked into how ISPs respond to notices of copyright infringement.  *See id.* 25:13-18.  His opinions concerning Cox's policy and the supposed industry standard in responding to copyright infringement notices thus are entirely unsupported by his experience or knowledge.

Dr. Almeroth has not demonstrated how any of his prior experience provides a sufficient basis to testify on ISP infringement policies.  *See Yates v. Ford Motor Co.*, No. 5:12-cv-752-FL, 2015 WL 3448905, at *5 (E.D.N.C. May 29, 2015) (excluding medical expert where party failed to explain how his "qualifications are linked with knowledge or experience in making recommendations to industry as to what actions or technology are effective or appropriate in the prevention of disease").  Because Dr. Almeroth offers no specialized knowledge or experience that will assist the jury on the issues of ISP policies, his testimony on those issues should be excluded.

## VII.   COX CANNOT USE DR. ALMEROTH AS A VEHICLE FOR MISLEADING AND IRRELEVANT ASSUMPTIONS CONCERNING THE COPYRIGHT ALERT SYSTEM

Dr. Almeroth opines that CAS is an industry standard and that Cox's graduated response policy is reasonable because it exceeds that standard.  *See, e.g.*, Gould Decl. Ex. 1, ¶¶ 35, 136-137 (Almeroth Rept.); Gould Decl. Ex. 6, 189:22-190:3 (Almeroth Tr.).  Almeroth's assumption is inaccurate.  His misleading and irrelevant testimony should be excluded.  *See Tyger Constr.*

*Co. v. Pensacola Constr. Co.*, 29 F.3d 137, 144 (4th Cir. 1994) ("When the assumptions made by an expert are not based on fact, the expert's testimony is likely to mislead a jury, and should be excluded by the district court.").  This Court previously precluded Cox from introducing evidence comparing its policies to those of other ISPs by referencing CAS.  *See BMG*, No. 1:14-cv-1611, 2018 WL 4444011, at *1 (Aug. 9, 2018).  This case should be no different.

CAS was not an industry standard.  Allowing Dr. Almeroth to characterize it as an industry standard would deceive and confuse the jury.  CAS was an educational experiment developed in the context of a private agreement between a group of movie studios, record companies, and ISPs to address peer-to-peer infringement.  Dr. Almeroth has no experience with CAS.  He also has no foundation for testifying how ISPs (including those who participated in CAS) approached the issue of terminating the accounts of subscribers that were repeatedly identified in infringement notices.

The CAS Memorandum of Understanding expressly provides that it is not a replacement for DMCA policy and procedures for terminating repeat infringers:

> The Parties acknowledge and agree that the limitations on ISP liability under the DMCA are conditioned on an ISP's adoption and reasonable implementation of a policy that provides for the termination in appropriate circumstances of subscribers and account holders who are repeat infringers ("DMCA Termination Policy"). Notwithstanding the foregoing, . . . (2) the adoption, implementation, enforcement, or other action in furtherance of a DMCA Termination Policy is not part of any step of the Copyright Alert program or enforceable under this Agreement; and (3) *entering into this Agreement is not, by itself, intended to address whether a Participating ISP has adopted and reasonably implemented a DMCA Termination Policy*. This Agreement does not and is not intended to establish any legal inference regarding any ISP that does not participate in the Copyright Alert program or to *address whether or not any ISP has adopted and reasonably implemented a DMCA Termination Policy*.

*See* Gould Decl. Ex. 7 at 9 n.1 (Plaintiffs_00286208) (Memorandum of Understanding) (emphasis added).  This Court "concluded that a comparison of Cox's policies to the policies of other ISPs would be irrelevant, prejudicial and likely to mislead the jury."  *BMG*, 2018 WL

4444011, at *1.  The Court explained that proposed testimony regarding CAS was "of dubious reliability at best" where "[n]o third-party discovery took place to determine if and when and why other ISPs took action on the notices."  *Id.* at *2.  So, too, here.

Dr. Almeroth has no factual basis to hold up CAS as an alleged "industry standard." Dr. Almeroth's knowledge of CAS is limited to his reading of the CAS Memorandum of Understanding and the Stroz Friedberg CAS compliance reports.  *See* Gould Decl. Ex. 6, 65:25-68:6 (Almeroth Tr.).  He does not know anything about the negotiations that led up to it, what the participants thought about it, and whether it is in effect today (which it is not).  *See id.* 165:16-169:8.  Cox took discovery from various third parties, including Jill Lesser (formerly executive director of Center for Copyright Information), Stroz Friedberg and Harbor Labs (two consulting firms that audited CAS compliance), and the RIAA, about what the participating ISPs did within the confines of CAS.  Notably, Cox chose not to depose any ISPs, including any of the ISPs that participated in CAS.  Cox made that strategic choice knowing full well this Court excluded evidence and argument concerning CAS in *BMG*, in part, because it has not taken discovery of any third-party ISPs.

Additionally, there is no evidence in the record about how other ISPs handled the issue of terminating accounts of repeat infringers.  There is only Cox's conduct (which is what matters) and the non-exhaustive set of steps set forth in CAS.  Dr. Almeroth acknowledges that he is unaware of what the ISPs that participated in CAS do outside of CAS, including whether they terminate the accounts of repeat offenders, and that his knowledge of CAS is limited to the documents and deposition testimony in this case.  *See id.* 170:20-173:22, 187:3-190:11.  Thus,

Dr. Almeroth is without sufficient knowledge regarding how Cox compared to other ISPs on the issue of terminating the accounts of repeat infringers.[5]

Even if he did have such knowledge, the law does not recognize an "everybody else does it, too" defense.  *See, e.g.*, *Dun & Bradstreet Software Servs., Inc, v. Grace Consulting, Inc.*, 307 F.3d 197, 211 (3d Cir. 2002) ("A defense of industry custom and practice in the face of the protective provisions of the Copyright Act could undermine the purposes and objectives of the statute and reduce it to rubble."); *United States v. Oldbear*, 568 F.3d 814, 821 (10th Cir. 2009) ("An 'everybody-is-doing-it defense' . . . [i]s a sideshow from which the jury c[an] [] glean[] little valuable information . . . .").  It is simply an appeal to ignore the law.  Accordingly, his testimony on CAS and comparisons to other ISPs have no factual or legal foundation and should be excluded.

## VIII.   DR. ALMEROTH CANNOT TESTIFY AS TO THE LAW ON NET NEUTRALITY.

Dr. Almeroth also seeks to proffer improper testimony on the law of net neutrality. Specifically, he opines on "whether it is legal to implement [] controls for P2P traffic."  *See*, *e.g.*, Gould Decl. Ex. 1, ¶¶ 114-22 (Almeroth Rept.).  Dr. Almeroth is not a lawyer and has neither specialized knowledge nor sufficient skill, experience, training, or education to opine on such legal issues.  *See Radiance Found.*, 27 F. Supp. 3d at 677 (limiting expert's testimony where she was unfamiliar with trademark law).  This testimony is improper and should be excluded.

---

[5] The comparative testimony that Dr. Almeroth proffers here is no different from expert testimony that he recently proffered in another case that was excluded as conclusory and unhelpful.  *See Sonos, Inc. v. D & M Holdings Inc.*, 297 F. Supp. 3d 501, 521 (D. Del. 2017) ("The jury may draw its own inferences, for example, about the similarities between the [product names and product lines].  The jury would not be aided by expert testimony in that regard. Those portions of Dr. Almeroth's report are summaries of evidence and conclusory statements that imply that [defendant] copied [plaintiff's] technology.  Such unhelpful restatement[s] of the facts as [the expert] sees them are inadmissible."  (internal quotation marks and citations omitted)).

**CONCLUSION**

Dr. Almeroth's opinions on "reasonableness," including the Copyright Alert System, the actions of other ISPs, and the net neutrality law, go beyond the bounds of permissible expert testimony.  For the reasons set forth herein, such opinions should be precluded.


Respectfully submitted,


Dated August 30, 2019

/s/ Scott A. Zebrak
Scott A. Zebrak (38729)
Matthew J. Oppenheim (*pro hac vice*)
Jeffrey M. Gould (*pro hac vice*)
Kerry Mustico (*pro hac vice*)
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Avenue, NW, 5th Floor
Washington, DC 20015
Tel:  202-480-2999
scott@oandzlaw.com
matt@oandzlaw.com
jeff@oandzlaw.com
kerry@oandzlaw.com

*Attorneys for Plaintiff*