# Exhibit 3

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF VIRGINIA
# Alexandria Division

| | | |
|---|---|---|
| **BMG RIGHTS MANAGEMENT (US) LLC, and ROUND HILL MUSIC LP** | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:14-cv-1611(LO/JFA) |
| **COX COMMUNICATIONS, INC., COXCOM, LLC** | ) ) ) | **REDACTED PUBLIC VERSION** |
| Defendants. | ) ) | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF ITS MOTION
TO EXCLUDE PORTIONS OF THE EXPERT REPORT AND
<u>LIMIT THE TRIAL TESTIMONY OF COX'S EXPERT WILLIAM ROSENBLATT</u>**

███████████          He interprets the operation of the law.  *See, e.g.*, J. Engle Decl. Ex. 1 ¶¶ 46-47; Dkt. No. 390, ¶ 67 ███████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████. Mr. Rosenblatt then applies his own interpretation of the DMCA to cherry pick "evidence" to conclude that Cox has reasonably implemented a repeat infringer termination policy.  His opinion should be stricken, including Exhibit 1 paragraphs 37-123 and Exhibit 3 paragraphs 45-58.  *See The Harvester, Inc. v. Rule Joy Trammell N Rubio, LLC*, No. 3:09-CV-358, 2010 WL 2653373, at *5 (E.D. Va. July 2, 2010) (granting "motion to exclude [expert's] testimony interpreting the Copyright Act and concluding that Commonwealth's drawings are not 'the design of a building'").

### B.  Mr. Rosenblatt's Opinion that Cox Reasonably Implemented a Repeat Infringer Termination Policy Lacks Competence, Rests on Flawed Methodology, and Constitutes a Legal Conclusion.

Mr. Rosenblatt opines that Cox's procedures are effective at curbing allegedly infringing behavior, and therefore Cox has reasonably implemented a repeat infringer termination policy. Mr. Rosenblatt's opinion is improper for a multitude of reasons.  (1) Mr. Rosenblatt lacks expertise with respect to repeat infringer termination policies; (2) his methodology is baseless and contradicts the law; (3) he fails to consider millions of infringement notices that Cox ignores or deletes through its extensive filtration process; and (4) his opinion is an improper legal conclusion.

5

### *i. Mr. Rosenblatt Lacks Competence to Opine on ISP Policy.*

Mr. Rosenblatt is unqualified to opine as to whether Cox has reasonably implemented a repeat infringer termination policy under the DMCA and on the industry practices of other ISPs. *See Carter v. United States*, No. 4:13CV112, 2014 WL 3895751, at *2 (E.D. Va. Aug. 8, 2014) (citing *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir.1999)) ("Expert testimony must be based on the expert's specialized knowledge, and not based on mere belief or speculation."). Mr. Rosenblatt, a software engineer and self-proclaimed digital rights management expert, is not a lawyer, copyright expert, or otherwise competent to opine whether Cox has reasonably implemented a repeat infringer termination policy under the DMCA.

When an expert's opinion is based on experience alone, "the expert must explain '[1] how that experience leads to the conclusion reached, [2] why that experience is a sufficient basis for the opinion, and [3] how that experience is reliably applied to the facts.'" *SMD Software, Inc. v. Emove, Inc.*, 945 F.Supp.2d 628, 644 (E.D.N.C.2013) (quoting Fed.R.Evid. 702 advisory comm's notes (2000 amends.)). Mr. Rosenblatt's report fails on all three fronts. In addition to his lack of legal training, Mr. Rosenblatt has never worked for ISP, has never designed or implemented a repeat infringer termination policy, and has never advised an ISP about the implementation of such a policy. *See* J. Engle Decl. Ex 1 ¶¶ 9-19 (summarizing qualifications). His opinions concerning Cox's eligibility for the DMCA safe harbor and policies adopted by other ISPs are entirely unsupported by his experience and are based on cursory evaluations of selectively chosen documents produced in this litigation and publicly available Terms of Use from the websites of ISPs such as AT&T and Time Warner. *See e.g. id.* ¶¶ 48, 111-119. He has failed to show how any of his prior experience provide a sufficient basis to testify, logically support the conclusions he has reached, or were reliably applied to the facts in this case. The foundation of his opinions does not meet the rigorous standards required by *Daubert* in this area,

6

and therefore, Mr. Rosenblatt plainly lacks the necessary expertise for his opinions to be of any assistance to the trier of fact. *See Yates v. Ford Motor Co.*, No. 5:12-CV-752-FL, 2015 WL 3448905, at *5 (E.D.N.C. May 29, 2015) (excluding medical expert where expert failed to explain how "these qualifications are linked with knowledge or experience in making recommendations to industry as to what actions or technology are effective or appropriate in the prevention of disease.").

Without the necessary expertise, Mr. Rosenblatt's testimony is no more helpful than the opinion of any other lay witness or juror – and it should not be admitted. *See United States v. McDonnell*, No. 3:14-CR-12, 2014 WL 2916721, at *1 (E.D. Va. June 26, 2014) ("[Defendant's expert] is no more qualified as an expert in assessing fraudulent intent than lay persons, making his proposed testimony unhelpful and inadmissible."); *see also Minn. Lawyers Mut. Ins. Co. v. Batzli*, No. CIV. 3:09CV432, 2010 WL 670109, at *2 (E.D. Va. Feb. 19, 2010) ("The Fourth Circuit has . . . held that where lay jurors are fully able to understand and appreciate the implications of the evidence admitted, proffered expert testimony will not assist the jury in determining a factual issue; and, is therefore inappropriate.") .

### ii. Mr. Rosenblatt's "Reasonable Implementation" Opinion Rests on Fatally Flawed Methodology

Mr. Rosenblatt opines that  . *See e.g.*, J. Engle Decl. Ex. 1 § V

He bases his opinion on self-selected data that he concludes shows that Cox's procedures are effective at curbing allegedly infringing behavior. *See id.* ¶ 107

*id.*

¶¶ 108-09; Ex. 3 ¶¶ 47-56. Rosenblatt admits that in reaching his opinion he did not consider

7

whether Cox actually terminates repeat infringers in appropriate circumstances. J. Engle Decl. Ex. 5 at 39:12-45:20 (Rosenblatt 8/18/2015 Tr.). Because his methodology does not consider actual terminations and rests on his own unsupported methodology, his opinion is fatally flawed. *See Trademark Props., Inc. v. A&E Television Networks*, C.A. No. 2:06-cv-2195-CWH, 2008 U.S. Dist. LEXIS 87731, at *7-8 (D.S.C. Oct. 28, 2008) (excluding expert testimony because there was no "evidence that his methodology has been tested, no evidence that his methodology has been subjected to peer review and publication, no evidence regarding his methodology's known or potential rate or error, and no information regarding the acceptance of his methodology within the relevant community."), *aff'd*, 422 F. App'x 199 (4th Cir. 2011).

Section 512(i) plainly states that a service provider is eligible for the safe harbor only if it "has adopted and reasonably implemented . . . a policy that provides for the termination in appropriate circumstances of subscribers . . . who are repeat infringers." Actual termination of repeat infringers is thus central to any Section 512(i) analysis. *See, e.g.*, *Capitol Records, LLC v. Escape Media Grp., Inc.*, 12-CV-6646 (AJN), 2015 WL 1402049, at *12 (S.D.N.Y. Mar. 25, 2015) ("Therefore, the relevant question is whether [the defendant] actually terminates the uploading privileges of repeat infringers under appropriate circumstances."); *Disney Enter., Inc. v. Hotfile Corp.*, No. 11-20427-CIV, 2013 WL 6336286 at *9 (S.D. Fla. Sept. 20, 2013) ("Thus, while Hotfile claims to have acted to 'terminate, and stop payments to accounts of users with numerous complaints at content owners' request,' it has failed to cite evidence to support the proposition, explain the conditions that led it to target or terminate users, or rebut the Studios' account of user termination only by litigation." (citation omitted)).

However, Mr. Rosenblatt does not consider terminations or deem terminations relevant in rendering his opinion that Cox has reasonably implemented a repeat infringer termination policy

8

under Section 512(i). Nowhere in 178 pages of Mr. Rosenblatt's expert reports does Mr. Rosenblatt consider circumstances in which Cox actually terminated a subscriber for repeated copyright infringement. *See e.g.*, J. Engle Decl. Exs. 1, 2 and 3. Neither the circumstances behind nor the number of purported terminations impact Mr. Rosenblatt's opinion. ▮

▮ J. Engle Decl. Ex. 5 at 55:12-56:9 (Rosenblatt 8/18/2015 Tr.). When presented with ▮

▮ *Id*. at 109:11-20.

▮ J. Engle Decl. Ex. 4 at 249:2-250:11 (Rosenblatt 8/5/15 Tr.).

Ignoring terminations, Mr. Rosenblatt instead rests his opinions on the irrelevant and inaccurate claim that Cox's procedures are effective at curbing alleged infringing behavior. *See* J. Engle Decl. Ex. 4 235:16-18 (Rosenblatt 8/5/15 Tr.) ▮ *id.* at 238:12-17 ▮ *id.* at 293:7 ▮

▮[3] That data consists

---

[3] And a change in that data is the only way Mr. Rosenblatt would change his opinion. J. Engle Decl. Ex. 5 66:19-67:2 (Rosenblatt 8/18/15 Tr.) ▮

9

of  *See* J. Engle Decl. Ex. 1 ¶ 107; Ex. 3

¶¶ 51-53. According to Mr. Rosenblatt, *See* J.

Engle Decl. Ex 1 ¶ 107. Mr. Rosenblatt opines that

. *See*

J. Engle Decl. Ex. 3 ¶¶ 51-53.

  The data that Mr. Rosenblatt relies upon to form his ultimate opinion has nothing to do with whether Cox actually terminates repeat infringer in appropriate circumstances. Even if Cox's procedures are effective at curbing allegedly infringing behavior (which they are not), that is simply not the test for whether Cox has reasonably implemented a repeat infringer termination policy. *See, e.g.*, *Capitol Records*, 2015 WL 1402049, *12 ("Therefore, the relevant question is

---



10

whether [the defendant] actually terminates the uploading privileges of repeat infringers under appropriate circumstances.")

If permitted, Mr. Rosenblatt's testimony would rest on the legally irrelevant claim that Cox's procedures are effective at curbing allegedly infringing behavior. Mr. Rosenblatt should not be allowed to offer an opinion contrary to the law and the instructions that this Court will provide the jury. *See Chicago Title Ins.*, 1993 WL 27392, at *4 ("In a jury trial, because of the potential usurpation of the court's responsibility to state the meaning and applicability of the appropriate law and the jury's task to apply the appropriate law to the facts of the case, legal conclusions by an expert witness are inadmissible."); *Roche v. Lincoln Prop. Co.*, 278 F. Supp. 2d 744, 750 (E.D. Va. 2003) (finding expert's testimony inadmissible when opinion was based on unacceptable methodology).

### iii. Mr. Rosenblatt's Methodology Is also Unreliable Because He Fails to Consider Millions of Infringement Notices that Cox Ignores or Deletes

Mr. Rosenblatt's entire analysis of whether Cox's procedures are effective at curbing infringement is based on the number of infringement notices Cox accepted for its subscribers. J. Engle Decl. Ex. 1 ¶ 107 ███████████████████████████████████████████████

███████████████████████████████████████████████████████████████ *see also* Ex. 3 ¶ 51-56. He reached his conclusion by looking only at the notices that Cox accepted and took action on, while ignoring tens of millions of infringement notices that Cox deleted or ignored. Mr. Rosenblatt cannot ignore millions of infringement notices and reliably opine that the limited number of infringement notices for its customers shows its procedures are effective.

Further, Mr. Rosenblatt does not consider the effect on the data upon which he relies of Cox's various other procedures to ensure that the vast majority of copyright infringement notices fall into a vacuum and go unheeded. First, ███████████████████████████████████

11

Evidence 702 serve to limit precisely this kind of testimony. *See* Fed. R. Evid. 702, advisory coom.'s notes (2000 amends.) (amended rules reflecting trial court's role as gatekeeper for assessing the reliability and helpfulness of proffered expert testimony. Testimony of this nature must be excluded as it supplants the critical roles served by both the judge and jury. *See Offill*, 666 F.3d at 174 ("[W]hen an expert's testimony directly concerns the ultimate issue in the case, the risk that the testimony will hinder the jury's deliberations is especially heightened."); *Wilson*, 133 F.3d at 265 ("Permitting such testimony as to legal conclusions gives cogent meaning to the 'apprehensions that jurors will turn to the expert, rather than to the judge, for guidance on the applicable law.'" (citation omitted)).

Mr. Rosenblatt's testimony that Cox has reasonably implemented a repeat infringer termination policy is simply legal argument dressed as an expert opinion that Cox hopes the jury will adopt instead of assessing the evidence for themselves. Mr. Rosenblatt's testimony, opinions, and reports should be excluded.

### C. Mr. Rosenblatt Cannot Opine on the Copyright Alert System or Other ISP's DMCA Policies and Procedures.

#### i. Mr. Rosenblatt Has No Specialized Knowledge about the Copyright Alert System or Other ISP's Policies and Procedures.

Mr. Rosenblatt purports to describe the Copyright Alert System and other ISP's policies and procedures for handling DMCA complaints and opines that what Cox does is better. J. Engle Decl. Ex. 1 ¶¶ 48, 74-119; *see also* Dkt. No 390 ¶¶ 67-87. First, Mr. Rosenblatt has no specialized knowledge concerning the Copyright Alert system. His "knowledge" of the actions of other ISPs is limited to his general use of the internet and his reading of publically available documents. *See* J. Engle Decl. Ex. 4 at 25:4-26:12; 30:19-37:1 (Rosenblatt 8/5/2015 Tr.). Second, the Copyright Alert System is not even relevant to the issues in this case. It is not a system for handling DMCA complaints. Rather, the Copyright Alert System is an agreement

15

between a small group of ISPs and copyright holders, and by its express terms is not intended to be a replacement for DMCA policy and procedures. *See* J. Engle Decl. Ex. 10 at BR_00000012 n.1 ("entering into this Agreement is not, by itself, intended to address whether a Participating ISP has adopted and reasonably implemented a DMCA Termination Policy"). The Copyright Alert System does not even provide for termination of repeat infringers, as is required by the plain language of Section 512(i). *See* Section 512(i); *Capitol Records*, 2015 WL 1402049, at *12.

Mr. Rosenblatt has no other special knowledge or experience to opine on what other ISPs do with respect to DMCA complaints. Mr. Rosenblatt has never been employed by an ISP. *See* J. Engle Decl. 11. He has no knowledge about the internal implementation of other ISPs' DMCA policies. *See* J. Engle Decl. Ex. 4 at 25:4-16; 30:3-32:21 (Rosenblatt 8/5/2015 Tr.). He has never spoken to or communicated in anyway with anyone at the other ISPs concerning how the ISPs handle DMCA complaints. *Id.* at 33:4-34:15.

Because Mr. Rosenblatt lacks any special knowledge and because the Copyright Alert System is irrelevant to DMCA procedures, he should not be allowed to opine on comparisons between Cox's and other ISPs' procedures for handling DMCA complaints. *See Oglesby* 190 F.3d at 250-51 (affirming district court's finding that expert's opinion did not properly draw on specialized knowledge, lacked probative value; and lacked sufficient knowledge about applicable facts and instead made improper assumptions); *Zellars*, 895 F. Supp. 2d at 747 (finding neurologist unqualified to provide expert testimony because she did not have specialized knowledge about toxicity; any conclusions would be only inadmissible speculation because the expert "needed to conduct an Internet search for articles on the topic . . . in order to develop her knowledge of exposure"); *See Trademark Props*, 2008 U.S. Dist. LEXIS 87731, at *7-8

16

Case 1:18-cv-00950-PTG-JFA Document 286-4 Filed 08/30/19 Page 12 of 12 PageID# 8182
Case 1:14-cv-01611-LO-JFA Document 456 Filed 10/23/15 Page 21 of 24 PageID# 12806

(excluding expert testimony that was based on "an article in the *New York Times* and information revealed by various Internet searches").

### D. Mr. Rosenblatt Cannot Offer Comparisons between Rightscorp's Source Code and MarkMonitor's Infringement Finder Software.

Mr. Rosenblatt attempts to draw comparisons between Rightscorp's infringement finder software and the infringement finder software of MarkMonitor. Incredibly, Mr. Rosenblatt claims he can make this opinion by only reviewing the Rightscorp software. He has no meaningful knowledge about MarkMonitor's software upon which to base a comparison. First, Mr. Rosenblatt never reviewed MarkMonitor's code. J. Engle Decl. Ex. 4 at 326:17-327:1 Second, the *only* knowledge Mr. Rosenblatt has about MarkMonitor is a public, *redacted* report by Stroz Friedberg about the Copyright Alert System. *See* J. Engle Decl. Ex. 2 ¶ 37 n.17; J. Engle Decl. Ex. 4 at 325:5-22 (Rosenblatt 8/5/2015 Tr.) Mr. Rosenblatt's own lack of knowledge about MarkMonitor is demonstrated by his quoting the redacted Friedberg analysis in his Rebuttal Report. *See* J. Engle Decl. Ex. 2 ¶¶ 38-40. He then provides a *id.* ¶¶ 41-47, and concludes that the processes of Rightscorp and MarkMonitor differ *Id.* ¶ 48. He then determines that *Id.* ¶ 73.

Virtually everything Mr. Rosenblatt writes about MarkMonitor is pure conjecture. Reading a heavily-redacted 13 page report written by someone else does not make an expert on the subject—especially to the level necessary to compare MarkMonitor's underlying system to Rightscorp's system. *S.G. Supply Co. v. Greenwood Int'l, Inc.*, 769 F. Supp. 1430, 1435 n.6 (N.D. Ill. 1991) (excluding portions of opinion testimony that are "beyond the knowledge of the

17