# Exhibit 5

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| BMG RIGHTS MANAGEMENT (US) LLC, and ROUND HILL MUSIC LP ) ) ) ) Plaintiffs, ) ) v. ) ) COX COMMUNICATIONS, INC., ) COXCOM, LLC ) Defendants. ) ) | Case No. 1:14-cv-1611(LO/JFA) |

**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO MOTION
TO EXCLUDE PORTIONS OF THE EXPERT REPORT AND
LIMIT THE TRIAL TESTIMONY OF ROSENBLATT**

After reading Mr. Rosenblatt's nearly 50 page declaration summarizing his various "opinions" in this case, this Court correctly concluded that that Mr. Rosenblatt should be excluded. Dkt. No. 509 at 4:7-8 (Transcript, Oct. 30, 2015 Hearing on Summary Judgment) ("So in terms of whether you thought perhaps Mr. Rosenblatt would be a witness at trial, he won't be." (J. O'Grady)). Cox spends nearly 30 pages of briefing trying to rehabilitate Mr. Rosenblatt in the hope that something will stick. Cox's opposition, however, highlights why the motion to exclude should be granted. Rosenblatt cannot set forth the law, slavishly recite all the facts Cox wants to the jury to find (whether or not he has personal knowledge), and then apply those facts to the law. His proposed testimony usurps the role of the Court in instructing the jury on the law, and the role of the jury in applying the facts to the law. Such purported expert testimony is not appropriate on any issue, let alone virtually every issue in this case.

1

attempting to use legal experts to prove that liability and causation have been established and to interpret statutory language, Plaintiffs would effectively usurp the function of the trier of fact in this case.") (excluding expert reports and experts from Plaintiffs' witness list); *Basketball Mktg. Co. v. Steve & Barry's Univ. Sportswear,* Civ. A. No. 07-716, 2008 WL 5586141, at *1 n.2 (E.D. Pa. June 30, 2008) (excluding purported expert testimony on governing law on copyright and trademark disputes and corresponding legal conclusions).

Even if these legal conclusions were proper expert opinions – and they are not – Mr. Rosenblatt lacks the requisite qualifications to make them. As explained in Plaintiffs' opening brief, Mr. Rosenblatt, a software engineer and self-proclaimed digital rights management expert, is not a lawyer, copyright expert, or otherwise competent to opine whether Cox has reasonably implemented a repeat infringer termination policy under the DMCA. *See* Dkt. No. 450 at 4-7. In its opposition, Cox brands Mr. Rosenblatt a "technologist," but does not explain how being a technologist qualifies him to testify about the legal requirements of the DMCA or whether Cox has met them. It does not. *See* Dkt. No. 509 at 3:20-21 ("Mr. Rosenblatt is not qualified to make judgments about the law." (J. O'Grady)). Mr. Rosenblatt is no more qualified than the jury to assess the evidence under the law, on which the Court will instruct, and his opinions and testimony should be excluded. *See United States v. McDonnell*, No. 3:14-CR-12, 2014 WL 2916721, at *1 (E.D. Va. June 26, 2014) ("[Defendant's expert] is no more qualified as an expert in assessing fraudulent intent than lay persons, making his proposed testimony unhelpful and inadmissible.").

### b. Mr. Rosenblatt's "methodology" contradicts the law and is unreliable.

Not only are Mr. Rosenblatt's opinions about the DMCA safe harbor improper legal conclusions, they contradict the law and are unreliable. Despite the DMCA expressly requiring

4

termination of repeat infringers, Mr. Rosenblatt never considered whether Cox terminated any repeat infringers in any circumstances. *See* Dkt. No. 452 Ex. 4 at 55:12-56:9 (Rosenblatt 8/5/2015 Tr.) (testifying that it would not affect his opinion if Cox was "not really terminating subscribers for alleged copyright infringement notices."). Cox does not contend otherwise, but instead insists that it is proper for Mr. Rosenblatt to determine whether Cox reasonably implemented a repeat infringer termination policy based on whether, in Mr. Rosenblatt's opinion, Cox's procedures are effective at reducing infringement. *See* Dkt. No. 597 at 25. That is simply not the law and not the proper test. *See, e.g.*, *Capitol Records, LLC v. Escape Media Grp., Inc.*, 12-CV-6646 (AJN), 2015 WL 1402049, at *12 (S.D.N.Y. Mar. 25, 2015) ("Therefore, the relevant question is whether [the defendant] actually terminates the uploading privileges of repeat infringers under appropriate circumstances.").

    Mr. Rosenblatt's proposed testimony – that Cox reasonably implemented a repeat infringer termination policy because, in his opinion, Cox's procedures were effective at curbing infringement – would unquestionably confuse the jury about what the law is and how to apply it, along with usurping the role of the Court. *See Chicago Title Ins. Co.*, 1993 WL 27392, at *4 ("In a jury trial, because of the potential usurpation of the court's responsibility to state the meaning and applicability of the appropriate law and the jury's task to apply the appropriate law to the facts of the case, legal conclusions by an expert witness are inadmissible.") (citing *Adalman*, 807 F.2d at 366-68); *Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988) ("By permitting the jury to hear this array of legal conclusions touching upon nearly every element of the plaintiffs' burden of proof . . . the trial court allowed the exception to supplant both the court's duty to set forth the law and the jury's ability to apply this law to the evidence.").

In addition to being improper legal conclusions that use the wrong legal test, Rosenblatt's opinions should also be excluded because the "methodology" he used to assess the purported effectiveness of Cox's policy is unreliable and will be highly prejudicial if presented to the jury. As explained in Plaintiffs' opening brief, Mr. Rosenblatt – who is *not* a statistician – analyzes Cox data on the number of subscribers that reach the suspensions level of Cox's graduated response, and based on those statistics, concludes that Cox's procedures are effective at curbing infringement. *See* Dkt. No. 450 at 5-13. One fatal flaw in Rosenblatt's "methodology" is that he does not consider the millions of infringement notices that Cox filters out and never acts upon. *Id.* at 11-13. Notably, Cox failed to refute the unreliability of Mr. Rosenblatt's statistical analysis.

Cox's policy is effective at one thing – virtually guaranteeing that no subscriber is terminated. Mr. Rosenblatt should not be permitted to don an expert hat and tell the jury otherwise based on incomplete data, flawed methodology, and a false statistical analysis.

### II. Mr. Rosenblatt should not be allowed to testify about "facts" for which he does not have personal knowledge.

#### a. *Mr. Rosenblatt does not have any personal or specialized knowledge about how other ISPs handle DMCA notices.*

As explained in Plaintiffs opening brief, Mr. Rosenblatt's "knowledge" of the actions of other ISPs is limited to his general use of the internet and his reading of publically available documents. *See* Dkt. No. 452 Ex. 4 at 25:4-26:12, 30:19-37:1 (Rosenblatt 8/5/2015 Tr.). Mr. Rosenblatt has never been employed by an ISP. *See* Dkt. No. 452 Ex. 11. He has no knowledge about the *actual* internal implementation of other ISPs' DMCA policies. *See* Dkt. No. 452 Ex. 4 at 25:4-16, 30:3-32:21 (Rosenblatt 8/5/2015 Tr.). He has never spoken to or communicated in anyway with anyone at the other ISPs concerning how the ISPs handle DMCA complaints. *Id.* at

6

33:4-34:15. Cox does not contend otherwise and offers no explanation as to why Mr. Rosenblatt should be allowed to testify about how other ISPs handle DMCA notices when he is only aware of what other ISPs publicly claim to do. As this Court recognized, what ISPs publicly claim to do with DMCA notices can be very different from what they actually do. *See* Dkt. No. 509 at 50 ("Well, if you drew upon the public statements that Cox made, you would think that they had a wonderful policy and that they had a very structured review of when terminations would occur. And the numbers belie that. So that's why it's of marginal use." (J. O'Grady)).

While not specifically addressing Mr. Rosenblatt's broad opinions about how other ISPs handle DMCA notices, Cox argues that Mr. Rosenblatt should be able to offer opinions and testimony about "the consistency of Cox's treatment of Rightscorp notices with their treatment by other ISPs." Dkt. No. 597 at 13-15. Mr. Rosenblatt has no personal or specialized knowledge of DMCA notices or whether Cox's treatment of Rightscorp notices is consistent with the treatment of other ISPs. Nor does Mr. Rosenblatt have any knowledge of any kind about how other ISPs treat Rightscorp notices apart from what Rightscorp testified at depositions and documents produced by Rightscorp. Indeed, there is no evidence in the case about how other ISPs actually treat Rightscorp's notice or any other DMCA notices.[1] Cox did not take any third party discovery of any other ISP to determine how Rightscorp notices are treated, or how any DMCA notice is treated. Mr. Rosenblatt should not be allowed to testify about how other ISPs treat Rightscorp notices, when he has no basis to give that testimony.

Even if the record contained relevant and admissible evidence of how other ISPs treat Rightscorp notices, that is simply not a subject for which the jury needs expert testimony. The

---

[1] Plaintiffs have moved to prevent Cox from introducing letters from other ISPs' lawyers arguing their legal positions in connection with Rightscorp's notices. *See* Dkt. Nos. 568 & 569. As stated in their motion, these letters are not evidence of how other ISPs treat Rightscorp's notices.

7

jury is well equipped to review the evidence in the case and make a determination on its own. *See D'Angelo v. Giant Food, Inc.*, 956 F.2d 1162 (4th Cir. 1992) (table decision), 1992 WL 42881, at *3 ("There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute.") (citation omitted); *Minn. Lawyers Mut. Ins. Co. v. Batzli*, No. CIV. 3:09CV432, 2010 WL 670109, at *2 (E.D. Va. Feb. 19, 2010) ("The Fourth Circuit has . . . held that where lay jurors are fully able to understand and appreciate the implications of the evidence admitted, proffered expert testimony will not assist the jury in determining a factual issue; and, is therefore inappropriate.").

      **b.** ***The Copyright Alert System is not a DMCA policy or procedure and Mr. Rosenblatt does not have any personal or specialized knowledge about it.***

Mr. Rosenblatt cannot use the Copyright Alert System to create some non-existent industry standard for two main reasons: First, Rosenblatt has no personal or specialized knowledge about the Copyright Alert System ("CAS") or how any of the participating ISPs actually treat notices under the CAS. All of the information he has concerning the CAS is information that is publically available. Second, the CAS is not a DMCA termination policy and there is no ambiguity on that point despite Cox's desperate attempt to find some.

Exclusion is proper here because Mr. Rosenblatt has no knowledge about what the ISPs that are part of the Copyright Alert System agreement actually do with infringement notices or how they handle DMCA notices. Mr. Rosenblatt bases his entire understanding of the Copyright Alert System on the publically available Memorandum of Understanding. *See* Dkt. No. 450 at 15. He has no knowledge about the internal procedures of those ISPs for implementing the Copyright Alert System or their DMCA policies and procedures. *See id.* at 16.

8

Exclusion is also proper because an unqualified comparison to a system that is admittedly not a "DMCA Termination Policy" would create an improper, unfair, and highly prejudicial means of comparison for the jury. Cox does not refute that the Copyright Alert System is merely an agreement by a select group of ISPs and copyright holders and not a policy or procedure for handling DMCA complaints. *See* Dkt. No. 452 Ex. 10 at BR_00000012 n.1 ("entering into this Agreement is not, by itself, intended to address whether a Participating ISP has adopted and reasonably implemented a DMCA Termination Policy"). Cox argues that it is relevant anyway because "[c]areful review of the overall language of Footnote 1 of the Memorandum of Understanding reveals that it takes no position about whether participation in the Copyright Alert System has any impact on an ISP's compliance with the DMCA." Dkt. No. 597 at 23. Cox's "careful review" of the Memorandum of Understanding misses the point – Plaintiffs agree that the CAS has no bearing on whether an ISP has satisfied the DMCA requirements. And *because the Copyright Alert System has no bearing on whether an ISP has satisfied the DMCA safe harbor requirements, it is an irrelevant comparison for Cox's supposed DMCA policies and procedures.* Indeed, the Copyright Alert System does not provide for termination in any circumstances, so it cannot be a standard for a DMCA policy, which requires ISPs to terminate repeat infringers in appropriate circumstances. *See* § 512(i) (A service provider is eligible for the safe harbor only if it "has adopted and reasonably implemented . . . a policy that provides for the termination in appropriate circumstances of subscribers . . . who are repeat infringers."); *Capitol Records*, 2015 WL 1402049, at *12 ("Therefore, the relevant question is whether [the defendant] actually terminates the uploading privileges of repeat infringers under appropriate circumstances."). Because the Copyright Alert System has nothing to do with how ISPs – let alone Cox – handle DMCA complaints, Cox cannot introduce evidence at trial about it. And

9

Cox certainly should not be allowed to have Mr. Rosenblatt give the appearance of expert credibility to it.[2]

### c. *Mr. Rosenblatt has no personal or specialized knowledge about how MarkMonitor works.*

Mr. Rosenblatt merely repeats back information he gleaned from a 13-page redacted summary of the MarkMonitor system by Stroz Friedberg. Cox does not directly deny that, but criticizes Plaintiffs for "recklessly" not citing Mr. Rosenblatt's testimony that he's "known the company for years" and has "spoken to their executives" and that the executives have "been on panels at my conferences," as if those things give Mr. Rosenblatt inside knowledge about how MarkMonitor works. Dkt. No. 597 at 11. It is Cox that recklessly cites Mr. Rosenblatt. Following up on Mr. Rosenblatt's response, Plaintiffs' counsel expressly asked him, "[o]ther than the Stroz Friedberg report, do you have any inside information about their technical processes?" Mr. Rosenblatt could not identify any information other than that in the Stroz Friedberg report of which he was aware about the MarkMonitor system. Dkt. No. 597 at Ex. C 152-53. Mr. Rosenblatt has never seen the MarkMonitor source code and has no personal knowledge of how the code actually works. His proffered opinion comparing Rightscorp's code to MarkMonitor's code is nothing more than speculation.

Cox also argues that Mr. Rosenblatt is entitled to rely on the publicly available Stroz Friedberg because the "proper method for challenging an expert's reliance on publicly available information is through cross-examination, not exclusion." Dkt. No. 597 at 12. Cox misses the point. Mr. Rosenblatt's opinions about the MarkMonitor system are not improper because the

---

[2] Cox also comments that Mr. Rosenblatt's testimony should be admissible because the Copyright Alert System "is the single most publicized and best documented graduated response system for handling allegations of copyright infringement." Dkt. No. 597 at 23. Cox does not cite any support for that comment. Even if it were true, that does not make the Copyright Alert System relevant to a "DMCA Termination Policy" – because it has no such policy.

10