# Exhibit 7

## (Part 2 of 2)

**FINAL**
**7/6/2011**

Agreed as of July 6, 2011:

The Motion Picture Association of America, Inc.

By:_____
Name:_____
Title:_____

The Recording Industry Association of America, Inc.

By:_____
Name:_____
Title:_____

Walt Disney Studios Motion Pictures

By:_____
Name:_____
Title:_____

Paramount Pictures Corporation

By:_____
Name:_____
Title:_____

Sony Pictures Entertainment Inc.

By:_____
Name:_____
Title:_____

Twentieth Century Fox Film Corporation

By: *Ronald C. Wheeler /by atnyberg*
Name: *Ronald C. Wheeler*
Title: *Assistant Secretary*

Universal City Studios LLC

By:_____
Name:_____
Title:_____

Warner Bros. Entertainment Inc.

PRIVILEGED AND CONFIDENTIAL       21

CONFIDENTIAL

Plaintiffs_00286225

**FINAL**
7/6/2011

Agreed as of July 6, 2011:

The Motion Picture Association of America, Inc.

By: _____
Name: _____
Title: _____

The Recording Industry Association of America, Inc.

By: _____
Name: _____
Title: _____

Walt Disney Studios Motion Pictures

By: _____
Name: _____
Title: _____

Paramount Pictures Corporation

By: _____
Name: _____
Title: _____

Sony Pictures Entertainment Inc.

By: _____
Name: _____
Title: _____

Twentieth Century Fox Film Corporation

By: _____
Name: _____
Title: _____

NBCUniversal Media, LLC

By: _____
Name: _RICHARD COTTON_
Title: _Executive VP and General Counsel_

Warner Bros. Entertainment Inc.

PRIVILEGED AND CONFIDENTIAL      21

Plaintiffs_00286226

**FINAL**
**7/6/2011**

By: _____
Name: ___John Rogovin___
Title: ___EVP & General Counsel___

UMG Recordings, Inc.

By: _____
Name: _____
Title: _____

Warner Music Group

By: _____
Name: _____
Title: _____

Sony Music Entertainment

By: _____
Name: _____
Title: _____

EMI Music North America

By: _____
Name: _____
Title: _____

SBC Internet Services, Inc., BellSouth Telecommunications, Inc., Southwestern Bell
Telephone Company, Pacific Bell Telephone Company, Illinois Bell Telephone
Company, Indiana Bell Telephone Company, Incorporated, Michigan Bell Telephone
Company, Nevada Bell Telephone Company, The Ohio Bell Telephone Company,
Wisconsin Bell, Inc., The Southern New England Telephone Company, and BellSouth
Telecommunications, Inc. (the AT&T Inc. companies)

By: _____
Name: _____
Title: _____

Verizon Online LLC, Verizon Online LLC – Maryland, and Verizon Online
Pennsylvania Partnership (the Verizon companies)

By: _____
Name: _____
Title: _____

PRIVILEGED AND CONFIDENTIAL     22

CONFIDENTIAL

Plaintiffs_00286227

**FINAL**
**7/6/2011**

Warner Bros. Entertainment Inc.

By:_____
Name:_____
Title:_____

UMG Recordings, Inc.

By:_____
Name: Jeffrey Harleston
Title: General Counsel, EVP Business & Legal Affairs

Warner Music Group

By:_____
Name:_____
Title:_____

Sony Music Entertainment

By:_____
Name:_____
Title:_____

EMI Music North America

By:_____
Name:_____
Title:_____

SBC Internet Services, Inc., BellSouth Telecommunications, Inc., Southwestern Bell
Telephone Company, Pacific Bell Telephone Company, Illinois Bell Telephone
Company, Indiana Bell Telephone Company, Incorporated, Michigan Bell Telephone
Company, Nevada Bell Telephone Company, The Ohio Bell Telephone Company,
Wisconsin Bell, Inc., The Southern New England Telephone Company, and BellSouth
Telecommunications, Inc. (the AT&T Inc. companies)

By:_____
Name:_____
Title:_____

CONFIDENTIAL                    22

Plaintiffs_00286228

**FINAL**
**7/6/2011**

Warner Bros. Entertainment Inc.

By: _____
Name: _____
Title: _____

UMG Recordings, Inc.

By: _____
Name: _____
Title: _____

Warner Music Group Corp.

By: _____
Name: Paul Robinson
Title: EVP and General Counsel

Sony Music Entertainment

By: _____
Name: _____
Title: _____

EMI Music North America

By: _____
Name: _____
Title: _____

SBC Internet Services, Inc., BellSouth Telecommunications, Inc., Southwestern Bell Telephone Company, Pacific Bell Telephone Company, Illinois Bell Telephone Company, Indiana Bell Telephone Company, Incorporated, Michigan Bell Telephone Company, Nevada Bell Telephone Company, The Ohio Bell Telephone Company, Wisconsin Bell, Inc., The Southern New England Telephone Company, and BellSouth Telecommunications, Inc. (the AT&T Inc. companies)

By: _____
Name: _____
Title: _____

CONFIDENTIAL                              22

FINAL
7/6/2011

Warner Bros. Entertainment Inc.

By: _____
Name: _____
Title: _____

UMG Recordings, Inc.

By: _____
Name: _____
Title: _____

Warner Music Group

By: _____
Name: _____
Title: _____

Sony Music Entertainment

By: _____
Name: Julie Snidler
Title: EVP, Business Affairs +
General Counsel

EMI Music North America

By: _____
Name: _____
Title: _____

SBC Internet Services, Inc., BellSouth Telecommunications, Inc., Southwestern Bell
Telephone Company, Pacific Bell Telephone Company, Illinois Bell Telephone
Company, Indiana Bell Telephone Company, Incorporated, Michigan Bell Telephone
Company, Nevada Bell Telephone Company, The Ohio Bell Telephone Company,
Wisconsin Bell, Inc., The Southern New England Telephone Company, and BellSouth
Telecommunications, Inc. (the AT&T Inc. companies)

By: _____
Name: _____
Title: _____

CONFIDENTIAL

Plaintiffs_00286230

**FINAL**
**7/6/2011**

Warner Bros. Entertainment Inc.

By:_____
Name:_____
Title:_____

UMG Recordings, Inc.

By:_____
Name:_____
Title:_____

Warner Music Group

By:_____
Name:_____
Title:_____

Sony Music Entertainment

By:_____
Name:_____
Title:_____

EMI Music North America

By:_____
Name:  PAUL  KAHN
Title:  CFO

SBC Internet Services, Inc., BellSouth Telecommunications, Inc., Southwestern Bell
Telephone Company, Pacific Bell Telephone Company, Illinois Bell Telephone
Company, Indiana Bell Telephone Company, Incorporated, Michigan Bell Telephone
Company, Nevada Bell Telephone Company, The Ohio Bell Telephone Company,
Wisconsin Bell, Inc., The Southern New England Telephone Company, and BellSouth
Telecommunications, Inc. (the AT&T Inc. companies)

By:_____
Name:_____
Title:_____

CONFIDENTIAL                              22

Plaintiffs_00286231

FINAL
7/6/2011

Warner Bros. Entertainment Inc.

By: _____
Name: _____
Title: _____

UMG Recordings, Inc.

By: _____
Name: _____
Title: _____

Warner Music Group

By: _____
Name: _____
Title: _____

Sony Music Entertainment

By: _____
Name: _____
Title: _____

EMI Music North America

By: _____
Name: _____
Title: _____

SBC Internet Services, Inc., BellSouth Telecommunications, Inc., Southwestern Bell
Telephone Company, Pacific Bell Telephone Company, Illinois Bell Telephone
Company, Indiana Bell Telephone Company, Incorporated, Michigan Bell Telephone
Company, Nevada Bell Telephone Company, The Ohio Bell Telephone Company,
Wisconsin Bell, Inc., The Southern New England Telephone Company, and BellSouth
Telecommunications, Inc. (the AT&T Inc. companies)

By: _____
Name: __Wayne Watts_____
Title: __Sr. Exec Vice President__ & General Counsel
       AT&T Inc.

CONFIDENTIAL                    22

CONFIDENTIAL                                          Plaintiffs_00286232

FINAL
7/6/2011

Verizon Online LLC, Verizon Online LLC – Maryland, and Verizon Online
Pennsylvania Partnership (the Verizon companies)

By: *Randal S. Milch*
Name: *Randal S. Milch*
Title: *E V P & General Counsel*

Comcast Cable Communications Management, LLC

By: _____
Name: _____
Title: _____

CSC Holdings, LLC

By: _____
Name: _____
Title: _____

Time Warner Cable Inc.

By: _____
Name: _____
Title: _____

CONFIDENTIAL                    23

CONFIDENTIAL
Plaintiffs_00286233

**FINAL**
**7/6/2011**

Verizon Online LLC, Verizon Online LLC – Maryland, and Verizon Online
Pennsylvania Partnership (the Verizon companies)

By:_____
Name:_____
Title:_____

Comcast Cable Communications Management, LLC

By: *Catherine Avgiris*
Name: *CATHERINE AVGIRIS*
Title: *SVP GM Communications and Data Services*

CSC Holdings, LLC

By:_____
Name:_____
Title:_____

Time Warner Cable Inc.

By:_____
Name:_____
Title:_____

23

Plaintiffs_00286234

**FINAL**
**7/6/2011**

Verizon Online LLC, Verizon Online LLC – Maryland, and Verizon Online
Pennsylvania Partnership (the Verizon companies)

By:_____
Name:_____
Title:_____

Comcast Cable Communications Management, LLC

By:_____
Name:_____
Title:_____

CSC Holdings, LLC

By:_____
Name:___ Tom Rutledge____
Title:___ C OO_____

Time Warner Cable Inc.

By:_____
Name:_____
Title:_____

23

CONFIDENTIAL                                                                 Plaintiffs_00286235

**FINAL**
**7/6/2011**

Verizon Online LLC, Verizon Online LLC – Maryland, and Verizon Online
Pennsylvania Partnership (the Verizon companies)

By:_____
Name:_____
Title:_____

Comcast Cable Communications Management, LLC

By:_____
Name:_____
Title:_____

CSC Holdings, LLC

By:_____
Name:_____
Title:_____

Time Warner Cable Inc.

By: _____
Name: _JEFF ZIMMENMAN_
Title: _SUP & DEPUTY GC_

CONFIDENTIAL                    23

CONFIDENTIAL

FINAL
7/6/2011

## Attachment A – Participating ISPs

The Participating ISPs are the following:  SBC Internet Services, Inc., BellSouth Telecommunications, Inc., Southwestern Bell Telephone Company, Pacific Bell Telephone Company, Illinois Bell Telephone Company, Indiana Bell Telephone Company, Incorporated, Michigan Bell Telephone Company, Nevada Bell Telephone Company, The Ohio Bell Telephone Company, Wisconsin Bell, Inc., The Southern New England Telephone Company, and BellSouth Telecommunications, Inc. (the AT&T Inc. companies); Verizon Online LLC, Verizon Online LLC – Maryland, and Verizon Online Pennsylvania Partnership (the Verizon companies); Comcast Cable Communications Management, LLC; CSC Holdings, LLC (solely with respect to its cable systems operating in New York, New Jersey, and Connecticut) (the Cablevision systems); and Time Warner Cable Inc.

CONFIDENTIAL                          24

Plaintiffs_00286237

**FINAL**
**7/6/2011**

### Attachment B – Participating Content Owners Group

The members of the Participating Content Owners Group are the following:

1. MPAA and the following MPAA members:  Walt Disney Studios Motion Pictures, Paramount Pictures Corporation, Sony Pictures Entertainment Inc., Twentieth Century Fox Film Corporation, Universal City Studios LLC, and Warner Bros. Entertainment Inc., and their successors and assigns.

2. RIAA and the following RIAA members:  UMG Recordings, Inc., Warner Music Group, Sony Music Entertainment, and EMI Music North America, and their successors and assigns.

CONFIDENTIAL                                                      Plaintiffs_00286238

**FINAL**
**7/6/2011**

## Attachment C – Independent Review Program

The Independent Review Program described below is intended to provide an alternative, fast, efficient and low-cost means for Subscribers and Copyright Owners to obtain independent resolution of genuine disputes that may occur in connection with the Copyright Alert program outlined in the Agreement.  Its purpose is to provide a Subscriber with a non-exclusive procedure to seek review of Copyright Alerts associated with the Subscriber's account in the event a Mitigation Measure is about to be applied on the Subscriber's account.

The Independent Review process shall be just one avenue of appeal for Subscribers challenging such measure.  This Independent Review process does not prevent Subscribers or Copyright Owners from addressing disputes through the courts, and that is the proper forum for addressing issues that are beyond the scope of this Independent Review process.

1.  <u>Grounds for Independent Review</u>.  Once a Subscriber has received a Copyright Alert stating that a Mitigation Measure is about to be applied, the Subscriber may request an Independent Review of that Copyright Alert and prior Copyright Alerts (as described in paragraph 4.1.4) on the following grounds:

    (i)    <u>Misidentification of Account</u> – that the ISP account has been incorrectly identified as one through which acts of alleged copyright infringement have occurred.

    (ii)    <u>Unauthorized Use of Account</u> – that the alleged activity was the result of the unauthorized use of the Subscriber's account of which the Subscriber was unaware and that the Subscriber could not reasonably have prevented.

    (iii)    <u>Authorization</u> – that the use of the work made by the Subscriber was authorized by its Copyright Owner.

    (iv)    <u>Fair Use</u> – that the Subscriber's reproducing the copyrighted work(s) and distributing it/them over a P2P network is defensible as a fair use.

    (vi)    <u>Misidentification of File</u> – that the file in question does not consist primarily of the alleged copyrighted work at issue.

    (vii)    <u>Work Published Before 1923</u> – that the alleged copyrighted work was published prior to 1923.

All determinations shall be made by an independent "<u>Reviewer</u>" as described below, and the determinations shall have the effect set forth herein.

2.  <u>Standard of Review</u>.

CONFIDENTIAL              26

Plaintiffs_00286239

**FINAL**
**7/6/2011**

2.1.  Misidentification of Account.  A Subscriber shall prevail on this defense if the Participating ISP's and/or Copyright Owner's records indicate, upon Independent Review, that a factual error was made in (1) identifying the IP address at which the alleged copyright infringement occurred and/or (2) correlating the identified IP address to the Subscriber's account.  In reviewing the Participating ISP's or Copyright Owner's records, automated systems for capturing IP addresses or other information in accordance with Methodologies have a rebuttable presumption that they work in accordance with their specifications, unless the Independent Expert's review of any such Content Owner Representative Methodology resulted in a Finding of Inadequacy in which event such rebuttable presumption shall not apply to such Content Owner Representative Methodology.

2.2.  Unauthorized Use of Account.  A Subscriber shall prevail on this defense if the Subscriber adequately and credibly demonstrates that the alleged activity was the result of unauthorized use of the Subscriber's account by someone who is not a member or invitee of the household (e.g., via an unsecured wireless router or a hacked Internet connection) of which the Subscriber was unaware and that the Subscriber could not reasonably have prevented.  The foregoing sentence notwithstanding, the Reviewer may in his or her discretion conclude that a Subscriber is entitled to prevail under this defense despite the Subscriber's failure to secure a wireless router if the Reviewer otherwise concludes that the Subscriber adequately and credibly demonstrates that the alleged activity was the result of unauthorized use of the Subscriber's account by someone who is not a member or invitee of the household of which the Subscriber was unaware.   In determining whether this standard has been satisfied, the Reviewer shall consider the evidence in light of the educational messages previously provided by the Participating ISP.  Except as set forth herein, this defense may be asserted by a Subscriber only one (1) time to give the Subscriber the opportunity to take steps to prevent future unauthorized use of the Subscriber's account.  Any subsequent assertion of this defense by a Subscriber shall be denied as barred, unless the Subscriber can show by clear and convincing evidence that the unauthorized use occurred despite reasonable steps to secure the Internet account and that the breach of such security could not reasonably have been avoided.

2.3.  Authorization.  A Subscriber shall prevail on this defense if the Subscriber adequately and credibly demonstrates with written or other documented evidence that the Subscriber's alleged activity was actually specifically authorized by the Copyright Owner or its authorized representative.  Such written or other documented evidence typically must include a true and unaltered copy of the agreement or communication asserted to grant the claimed authorization.  Such evidence shall not be deemed adequate and credible if, among other things, (i) the evidence on its face does not support a claim of authorization, (ii) the evidence does not appear authentic, or (iii) a reasonable person in the Subscriber's position would not have concluded that the communication was in fact authorizing the specific use made of the work and that such authorization came from the actual Copyright Owner or by someone authorized to act on his/her behalf.  The defense shall fail if the Copyright Owner has demonstrated:  (x) that the specific use of the work made by the Subscriber was not in fact authorized by the Copyright Owner; (y) if the

CONFIDENTIAL                              27

FINAL
7/6/2011

alleged authorization did not come directly from the Copyright Owner, that the person purporting to grant authorization was not authorized to act on behalf of the Copyright Owner for purposes of authorizing the specific use made of the work by the Subscriber; or (z) that the documentary evidence submitted by the Subscriber likely is not authentic or has been altered in a material manner.

2.4.  <u>Fair Use</u>.  A Subscriber shall prevail on this defense if the Subscriber adequately and credibly demonstrates fair use of the copyrighted work under prevailing principles of copyright law (which shall be identified as described in section 6).

2.5.  <u>Misidentification of File</u>.  A Subscriber shall prevail on this defense if the Subscriber adequately and credibly demonstrates that a factual error was made in identifying the file at issue as consisting primarily of the alleged copyrighted work.  In making this determination, the Content Owner Representative Methodology used to identify the file shall have a rebuttable presumption that it works in accordance with its specifications, unless the Independent Expert's review of any such Content Owner Representative Methodology resulted in a Finding of Inadequacy in which event such rebuttable presumption shall not apply to such Content Owner Representative Methodology.

2.6.  <u>Work Published Before 1923</u>.  A Subscriber shall prevail on this defense if the Subscriber adequately and credibly demonstrates that the alleged copyrighted work in question was actually published prior to 1923.

3.  <u>Effect of Decision</u>.  If the Reviewer's decision is in favor of the Subscriber for a particular Copyright Alert, that Copyright Alert shall be deemed invalid, the filing fee described in paragraph 4.1.6 shall be promptly refunded to the Subscriber, and the Participating ISP shall remove that Copyright Alert from the Subscriber's account records and refrain from applying any Mitigation Measures based on the invalidated Copyright Alert(s).  All other Copyright Alerts shall remain valid, and shall count toward future Mitigation Measures.  If the Reviewer's decision for a particular Copyright Alert is in favor of the Copyright Owner, that Copyright Alert shall be deemed valid, and if applicable, the Mitigation Measure shall be applied promptly.  The Reviewer's decision will be binding solely for the purposes of the Copyright Alert program.  By participating in the Independent Review, the Subscriber, the Participating ISP, and the Copyright Owner agree to waive all rights to challenge the Reviewer's decision for purposes of the Copyright Alert program.  The Reviewer's decision shall have no effect outside of the Copyright Alert program, shall not act as res judicata or collateral estoppel or any similar bar, and shall not have any precedential impact for other Independent Reviews with respect to other Subscribers within the Copyright Alert program.  In any judicial proceeding between a Subscriber and a Copyright Owner concerning subject matter that is or has been the subject of Independent Review, neither the Subscriber nor the Copyright Owner shall seek to enter into evidence, or otherwise refer to or cite, either the fact of the Independent Review or any outcome of the Independent Review.

4.  <u>Independent Review Procedure</u>.

CONFIDENTIAL                          28

CONFIDENTIAL                                                        Plaintiffs_00286241

**FINAL**
**7/6/2011**

4.1.   <u>How to Initiate an Independent Review</u>.

4.1.1.   *ACIR Form.*  When the Participating ISP sends a Copyright Alert stating that the Subscriber's account is subject to a Mitigation Measure, the Participating ISP will also make available to the Subscriber access to an online Application to Commence Independent Review ("<u>ACIR</u>") form and related materials.  The ACIR form and related materials will permit the Subscriber to review all of the Copyright Alerts applicable to the Subscriber's account that have not previously been subject to review, as further described in paragraph 4.1.4.  The ACIR form will identify all of the information necessary for the Subscriber to invoke an Independent Review, including each defense asserted as to each work identified in a Copyright Alert under review, and also include space for provision of the Subscriber's contact information.

4.1.2.   *Authorization.*  The ACIR form will contain an authorization by the Subscriber to disclose relevant personal information to the Reviewer and to the Participating ISP.  Such information includes: (1) information contained on the ACIR form, (2) information in the Participating ISP's possession, custody or control identifying the Subscriber or relating to any Copyright Alert sent to the Subscriber by the Participating ISP concerning alleged infringement, (3) information regarding the Participating ISP's matching of the IP address in an ISP Notice to the Subscriber's account, and (4) details of actions taken or proposed to be taken as Mitigation Measures by the Participating ISP with respect to the Subscriber's account.  Except as explained in the next sentence or as required by judicial order or other legal process, all Subscriber personal information will be held in confidence and not disclosed to the Copyright Owner.  If the Subscriber's defense is based on authorization, then the Reviewer may, in his or her discretion, disclose to the Copyright Owner only such personal information concerning the Subscriber as is reasonably necessary to permit the Copyright Owner to rebut a claim of authorization if that information is required for such purposes.  The ACIR form will contain an authorization by the Subscriber to disclose relevant personal information to the Copyright Owner in the circumstances described in the immediately preceding sentence.

4.1.3.   *Information Required.*  The Subscriber must (1) identify the defenses asserted as to each work identified in each Copyright Alert at issue by checking the proper boxes on the ACIR form, (2) explain the specific basis for each defense, and (3) provide the corresponding back-up material to support such grounds.  In the case of a defense of authorization, the ACIR form must be accompanied by the applicable written or other documented evidence that the Subscriber's alleged activity was specifically authorized by the Copyright Owner or its authorized representative, as described in paragraph 2.3.  In the case of a defense of fair use, the ACIR form must (1) be accompanied by a true and unaltered copy of each content file that the Subscriber asserts to be a fair use under prevailing principles of copyright law; and (2) an explanation of each use

CONFIDENTIAL                                  29

FINAL
7/6/2011

the Subscriber made of the file, including any distribution or downloading identified in the Copyright Alert(s), and the basis for claiming each such use as a fair use.

4.1.4. *Copyright Alerts Subject to Review*. The Subscriber shall have the right to invoke Independent Review for the last Copyright Alert sent as well as prior Copyright Alerts, provided that the right to have a particular Copyright Alert reviewed shall be waived if that right is not invoked the first time the Copyright Alert becomes eligible to be reviewed. Accordingly, when a Subscriber first receives a Mitigation Measure Copyright Alert, the Subscriber may invoke the Independent Review process as to any prior Copyright Alert, but if any of those Copyright Alerts is not reviewed at that time it will thereafter be unreviewable.

4.1.5. *Multiple Works Identified in a Copyright Alert*. In cases in which a Copyright Alert alleges infringing activity with respect to multiple works, the Independent Review process may be invoked by a Subscriber only if the Subscriber offers a defense as to every work cited in the Copyright Alert. A Copyright Alert will be considered valid and provide a basis for the application of a Mitigation Measure if the Subscriber is found to have no valid defense as to any one work cited in the Copyright Alert, unless the Independent Review establishes a pattern of invalid allegations in the Copyright Alert sufficient to cast substantial doubt on the Copyright Alert's remaining allegations.

4.1.6. *Filing Fee*. The Subscriber shall be required to pay a filing fee of thirty-five dollars ($35) in order to invoke the Independent Review, unless the Subscriber qualifies for a waiver or reduction in the filing fee in accordance with the procedures of the Administering Organization (as defined in paragraph 5.1 below). This fee will be refunded to the Subscriber in the event that the Reviewer decides in favor of the Subscriber as to any Copyright Alert eligible for review.

4.1.7. *Deadline*. The ACIR form, related materials and filing fee ("ACIR Package") must be submitted electronically within ten (10) business days after receipt of the relevant Copyright Alert. Except as contemplated in paragraph 5.6 below, failure to properly submit an ACIR form by the due date shall be deemed a waiver of the right to seek Independent Review regarding the applicable Mitigation Measure.

4.1.8. *Submission of ACIR Package*. The Subscriber must submit the ACIR Package to the Administering Organization. The Administering Organization shall immediately send a copy of the ACIR Package to the applicable Participating ISP.

4.1.9. *Effect of Filing for Independent Review*. A Subscriber's filing of the ACIR form stays implementation of any Mitigation Measure. A Subscriber's failure to file an ACIR or otherwise challenge an allegation of copyright

CONFIDENTIAL                                          30

infringement shall not be construed as an admission or waiver in any other forum or context.

4.2   <u>Process for Independent Review</u>.

     4.2.1.   *Selection of Reviewer.*   All Independent Reviews shall be resolved by one (1) individual serving as an independent Reviewer.  The Reviewer will be selected by the Administering Organization from a panel of neutrals, as further described in paragraph 5.2.

     4.2.2.   *Initial Review of ACIR Package.*   A Reviewer will review the ACIR package within five (5) business days of receipt to determine whether it is substantially complete.  To be considered substantially complete, (1) the ACIR Package must include a substantially completed ACIR form; (2) the ACIR form must assert a defense as to each work identified in the relevant Copyright Alert subject to Independent Review; (3) for each defense asserted as to each work, the ACIR Package must include sufficient information as described in paragraph 4.1.3 to permit the Independent Review to proceed meaningfully and to potentially result in a decision in favor of the Subscriber; and (4) the ACIR Package must include the required payment as provided in paragraph 4.1.6.  If the ACIR Package is not substantially complete, the case will be denied.  The first time an ACIR Package is denied, such a denial shall be without prejudice to afford the Subscriber one additional opportunity to correct any mistakes or omissions in the ACIR Package.  In such a case, the Reviewer shall notify the Subscriber of the relevant defects and afford the Subscriber five (5) business days to remedy the defects by submitting a substantially complete ACIR Package.  Otherwise (except as provided in paragraph 5.6 below), such a denial shall be with prejudice.  Either a denial without prejudice that is not remedied within 5 business days or a denial with prejudice shall have the same effects as a denial on the merits (see section 3).

     4.2.3.   *Verification that Defense of Unauthorized Use of Account is not Barred.*   In the case of any defense of unauthorized use of account, the Reviewer's initial review will also consider whether that defense is barred because the Administering Organization's records indicate that the Subscriber previously asserted that defense in another Independent Review.  If so, the defense shall be denied, unless the Subscriber can show by clear and convincing evidence that the unauthorized use occurred despite reasonable steps to secure the Internet account and that the breach of such security could not reasonably have been avoided.  If for any reason the Administering Organization's records are inconclusive as to this question, the Reviewer will request clarification from the Participating ISP pursuant to paragraph 4.2.4.

     4.2.4.   *Collection of Standard Information from Participating ISP and Copyright Owner.*   If the ACIR Package is substantially complete, the Reviewer will, if needed, request standard relevant information from the Participating ISP

CONFIDENTIAL                    31

Plaintiffs_00286244

and/or Copyright Owner to assess the grounds for review.  Details of the standard
information to be provided by the Participating ISP and/or Copyright Owner for
different types of defenses shall be determined by mutual agreement of
representatives of the Administering Organization, Participating ISPs and
Copyright Owners as implementation proceeds, with the goal of having provision
of this standard information be a straightforward and largely automated process.
In the case of a defense of misidentification of account, information to be
provided by the Participating ISP is anticipated to consist of information in the
Participating ISP's possession, custody, or control relating to (1) ISP Notices
received by the Participating ISP and matched to the Subscriber's account,
(2) Copyright Alerts sent to the Subscriber by the Participating ISP, and (3) the
Participating ISP's matching of IP addresses on ISP Notices received by the
Participating ISP to the Subscriber's account.  Information to be provided by the
Copyright Owner is anticipated to consist of all or part of the evidence package(s)
(*i.e.*, information relating to the alleged access to copyrighted material) for one (1)
or more Copyright Alerts that are the subject of the Independent Review.  The
Participating ISP and Copyright Owner, as applicable, will provide the relevant
information to the Reviewer within ten (10) business days after receipt of the
request.

    4.2.5.  *First Substantive Review*.  Within five (5) business days from
receipt of the relevant standard information from the Participating ISP and/or the
Copyright Owner, the Reviewer will review the case record substantively to
determine if additional information from the Participating ISP and/or Copyright
Owner is required, or whether it is apparent without soliciting further information
that the Subscriber will not prevail as to all works cited in any one (1) or more
Copyright Alerts.

    4.2.6.  *Supplemental Information*.  The Reviewer shall have the discretion
to request supplemental information from the Participating ISP, Copyright Owner
or Subscriber within the five (5) business day period referred to in paragraph
4.2.5, if such information would likely be material to a just resolution of the
Independent Review.  If the Reviewer makes such a request, the applicable
party(ies) shall have ten (10) business days to respond.  If the Subscriber asserts a
defense of authorization or fair use and the Reviewer determines that the defense
may have merit, then the Copyright Owner shall receive all relevant information
about the defense from the Reviewer and be afforded an opportunity to provide
evidence to rebut the defense within ten (10) business days from receipt of such
information.  Such information shall include (1) in the case of a defense of
authorization, all substantiating evidence and explanation submitted by the
Subscriber as to each relevant work and the Subscriber's identifying information,
unless the Reviewer concludes that the Copyright Owner does not need to know
the identity of the Subscriber to evaluate the Subscriber's claim that his or her
activity was authorized; and (2) in the case of a defense of fair use, the content
file submitted by the Subscriber as to each relevant work and an explanation of
why the Subscriber believes each use of that content file to be a fair use.

CONFIDENTIAL                                    32

Plaintiffs_00286245

**FINAL**
**7/6/2011**

     4.2.7. *Final Assessment and Issuance of Decision.* Within ten (10) business days of receipt of all requested information, including any supplemental information provided pursuant to paragraph 4.2.6, or passage of the relevant time to provide supplemental information in the event no supplemental information is received, the Reviewer shall assess the complete case record and enter a final decision. In doing so, the Reviewer shall determine the relevance, materiality and weight of all evidence based on the available record. The proceedings will take place exclusively on the written record, and there shall be no live hearings. For a Copyright Alert alleging infringement of multiple copyrighted works, in order to find in favor of the Subscriber with respect to the Copyright Alert, the Reviewer must consider and find in favor of the Subscriber as to a defense for each individual work referenced in the Copyright Alert or must find a pattern of invalid allegations in the Copyright Alert sufficient to cast substantial doubt on all allegations in the Copyright Alert. Upon reaching a final decision, the Reviewer will notify the Subscriber, Participating ISP and Copyright Owner of the outcome, and if the decision is a denial of the Subscriber's defense, the Reviewer will also include a short description of the rationale for the denial.

     4.2.8. *Withdrawal of Notice by Copyright Owner.* A Copyright Owner may withdraw an ISP Notice at any time during the Independent Review process, which shall have the same effect as a finding for the Subscriber as to the withdrawn Copyright Alert (see section 3).

     4.2.9. *Communications Among Parties.* Except as specifically described in these rules (*e.g.*, in the case of requests for information as described in paragraphs 4.2.4 and 4.2.6), there will be no communication between the Reviewer and the Participating ISP, Copyright Owner or Subscriber concerning the Independent Review. There is to be absolutely no discovery between the parties to the dispute, and no party shall have any obligation to respond to any request for information or to provide any particular information, except as described herein.

5. Administration of Independent Review Process.

     5.1. In General. The Independent Review process shall be coordinated by the administering organization selected by the CCI Executive Committee ("Administering Organization"). The Independent Review process shall be governed exclusively by these rules.

     5.2. Selection of Reviewers. The Administering Organization shall have mechanisms for establishing a panel of neutrals and for ensuring their continuing neutrality, their compliance with these rules, and their adherence to the governing principles of copyright law as provided in section 6. Reviewers must be lawyers, but need not necessarily have the legal or case management expertise that would qualify them to act as arbitrators of more complex disputes in a broader-ranging alternative

CONFIDENTIAL                                        33

Plaintiffs_00286246

FINAL
7/6/2011

dispute resolution process. The Administering Organization shall provide Reviewers training in this Independent Review process and governing principles of copyright law determined as described in section 6. Reviewers may be staff employees of the Administering Organization if the volume of disputes subject to the Independent Review process so warrants.

5.3. <u>Automation</u>. The Administering Organization shall implement automated processes for managing the workflow of cases proceeding through the Independent Review process, including means for seeking and obtaining information from Participating ISPs and Copyright Owners in a manner that minimizes the associated workload on Participating ISPs and Copyright Owners and is automated to the maximum extent practicable.

5.4. <u>Records of Subscriber History of Invoking Independent Review</u>. The Administering Organization will maintain a secure database of Subscribers' history of invoking the Independent Review process, which will be available to Reviewers when evaluating future disputes involving the relevant Subscribers. Thus, for example, it should be possible for a Reviewer to determine from this database whether a Subscriber has previously asserted a defense of unauthorized use of account, and a Reviewer may consider a Subscriber's Independent Review history in evaluating the credibility of claims under review.

5.5. <u>Recordkeeping and Review</u>. The CCI Executive Committee and Administering Organization will establish processes for (1) maintaining records concerning proceedings, (2) periodically reviewing anonymous, aggregated information about issues and outcomes so that trends can be identified and addressed if warranted, and (3) confidentially auditing decisions for purposes of evaluating the performance of Reviewers and the Administering Organization. Except to the extent necessary to maintain records of outcomes of proceedings for purposes of operation and review of the Independent Review process or as otherwise expressly set forth herein, Reviewers shall not prepare written decisions in the cases they decide. The Parties to the Agreement agree to negotiate in good faith as to adjustments in the Independent Review process if such adjustments are warranted by actual experience in operating the Independent Review process.

5.6. <u>Provision of Information</u>. Fair and efficient administration of the Independent Review process depends upon timely provision of information requested by the Reviewer at various steps of the process, as described in paragraph 4.2. Whenever these rules set forth a timeframe for provision of information requested by the Reviewer, the Reviewer may grant reasonable extensions of such period (not to exceed ten (10) business days) for substantial good cause shown. In the absence of the requested information at the deadline for providing the same, the following provisions will apply:

5.6.1. *Delays in Providing Standard Information*. If the Reviewer properly requests a standard package of information from a Participating ISP or Copyright Owner, as described in paragraph 4.2.4, and the Participating ISP or

CONFIDENTIAL                              34

FINAL
7/6/2011

Copyright Owner does not provide the requested information as to some or all claims or works on a timely basis, (1) the Reviewer shall promptly notify the Participating ISP or Copyright Owner and the Participating ISP or Copyright Owner shall have a further five (5) business days to provide the requested information; and (2) the Administering Organization shall reflect such deficiency in reports to be provided periodically to the CCI Executive Committee. Recurring failure of a Participating ISP or Copyright Owner to provide requested standard information during the initial period identified in paragraph 4.2.4, in other than isolated instances, will be considered a breach of its obligations under the Agreement. If a Participating ISP or Copyright Owner does not provide available requested information within a further five (5) business days, (a) the dispute will proceed to the next step of decision making based on the available record without such information, giving the Subscriber the benefit of any doubt concerning the missing requested information; (b) the Administering Organization shall reflect such deficiency in reports to be provided periodically to the CCI Executive Committee; and (c) the Participating ISP or Copyright Owner will be considered in breach of its obligations under the Agreement.

5.6.2. *Delays in Providing Supplemental Information*. If the Reviewer properly requests supplemental information from a Participating ISP, Copyright Owner or Subscriber pursuant to paragraph 4.2.6, and the Participating ISP, Copyright Owner or Subscriber does not provide the requested information as to some or all claims or works on a timely basis, the dispute will proceed to the next step of decision making based on the available record without such information. If the Reviewer believes that the position of a party to the proceeding other than the one that has failed to provide the requested information is otherwise meritorious, the Reviewer shall give such party the benefit of any doubt concerning the missing requested information.

6. <u>Legal Principles to Be Applied in Independent Review</u>. The Independent Review process will, to the extent relevant, apply prevailing legal principles as determined by United States federal courts. The Administering Organization will commission an accepted, independent expert on copyright law, who is approved by the CCI Executive Committee, to outline prevailing legal principles of fair use for purposes of deciding defenses of fair use, and any other legal principles necessary for resolution of issues within the scope of this Independent Review process. Such outline will be updated from time to time as necessary. If additional material questions of law arise as the Independent Review process is implemented, they may be referred to an accepted, independent expert approved by the CCI Executive Committee as needed. The Administering Organization will advise the Parties to the Agreement of issues referred to, and principles determined by, such an expert, and provide a process for the Parties to the Agreement to provide input concerning the issues, so as to ensure that the expert's determinations are fully-informed and reflect prevailing law as determined by United States federal courts.

CONFIDENTIAL                                   35

**FINAL**
**7/6/2011**

CONFIDENTIAL                              36

CONFIDENTIAL                                                                 Plaintiffs_00286249

**FINAL**
**7/6/2011**

## Attachment D – MPAA Member Company Affiliates

The MPAA member companies' affiliates are entities under the control of an MPAA member company.  For purposes of this Attachment D, "control" is defined as (1) the ownership of at least fifty percent (50%) of the equity or beneficial interest of the controlled entity, (2) the right to vote for or appoint a majority of the board of directors or other governing body of such entity (if the board or governing body may exercise authority with less than a majority, then the right to vote or appoint the number of directors necessary to exercise that authority), or (3) the right or authority to grant, approve or withhold, directly or indirectly, financial resources necessary to the operation of the controlled entity.  As of the Effective Date of this Agreement, the following entities are MPAA member company affiliates:

- Disney Enterprises, Inc., entities controlled, directly or indirectly, by Disney Enterprises, Inc. (together, "Disney Enterprises Entities"), and such other entities as have authorized the foregoing to send Copyright Alerts on their behalf with respect to works distributed by Disney Enterprises Entities.
- Fox Entertainment Group, Inc., entities controlled, directly or indirectly, by Fox Entertainment Group, Inc., (together, "Fox Entertainment Entities") and such other entities as have authorized the foregoing to send Copyright Alerts on their behalf with respect to works distributed by Fox Entertainment Entities.
- NBCUniversal Media LLC, entities controlled, directly or indirectly, by NBCUniversal Media LLC, (together, "NBCU Entities") and such other entities as have authorized the foregoing to send Copyright Alerts on their behalf with respect to works distributed by NBCU Entities.
- Sony Pictures Entertainment Inc., entities controlled, directly or indirectly, by Sony Pictures Entertainment Inc. (together, "SPE Entities"), and such other entities as have authorized the foregoing to send Copyright Alerts on their behalf with respect to works distributed by SPE Entities.
- Turner Entertainment Networks, Inc., entities controlled, directly or indirectly, by Turner Entertainment Networks, Inc. (together, "Turner Entities"), and such other entities as have authorized the foregoing to send Copyright Alerts on their behalf with respect to works distributed by Turner Entities.
- Viacom, Inc., entities controlled, directly or indirectly, by Viacom, Inc. (together, "Viacom Entities"), and such other entities as have authorized the foregoing to send notices on their behalf with respect to works distributed by Viacom Entities.
- Walt Disney Studios Motion Pictures, entities controlled, directly or indirectly, by Walt Disney Studios Motion Pictures (together, "Walt Disney Studios Entities"), and such other entities as have authorized the foregoing to send notices on their behalf with respect to works distributed by Walt Disney Studios Entities.
- Warner Bros. Entertainment Inc., entities controlled, directly or indirectly, by Warner Bros. Entertainment Inc. (together, "Warner Bros. Entities"), and such other entities as have authorized the foregoing to send notices on their behalf with respect to works distributed by Warner Bros. Entities.

CONFIDENTIAL                                37

Plaintiffs_00286250