# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| SONY MUSIC ENTERTAINMENT, *et al.*, | |
| Plaintiffs, | Case No. 1:18-cv-00950-LO-JFA |
| v. | |
| COX COMMUNICATIONS, INC., *et al.*, | |
| Defendants. | |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO PRECLUDE CERTAIN EXPERT TESTIMONY BY CHRISTIAN TREGILLIS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 2

I.      THE LEGAL STANDARD ............................................................................. 2

II.     MR. TREGILLIS'S LOST LICENSING FEE MUST BE EXCLUDED BECAUSE IT IS BASED ON UNSUPPORTED AND UNRELIABLE ASSUMPTIONS ................ 3

        A.  Mr. Tregillis's lost licensing fee analysis relied on two inputs ............................... 3

        B.  The Court should exclude Mr. Tregilis's lost licensing fee analysis because Mr. Tregillis's use of the Record Company Plaintiffs' average revenues for the download of a single track from iTunes to estimate a licensing fee was not based on any economic analysis or the facts of the case .................................... 4

                1.  Cox's use of Plaintiffs' works is not comparable an iTunes user's use of Plaintiffs' works ......................................................................... 4

                2.  Mr. Tregillis did no analysis to support his choice of royalty rate ............. 5

                3.  Fourth Circuit precedent on lost licensing fee analysis requires excluding Mr. Tregillis's opinion because Mr. Tregillis used an inapposite benchmark ........................................................................................ 8

        C.  The Court should exclude Mr. Tregillis's lost licensing fee analysis because Mr. Tregillis's method for determining the number of Cox's infringements ignores basic facts about peer-to-peer file sharing and is not based on any reliable principle or method ................................................................................... 9

        D.  The flaws in Mr. Tregillis's lost licensing fee analysis bar its admissibility ........ 11

III.    THE COURT SHOULD PRECLUDE MR. TREGILLIS FROM TESTIFYING TO LEGAL ANALYSIS AND CONCLUSIONS ........................................................ 12

IV.     THE COURT SHOULD EXCLUDE MR. TREGILLIS' TESTIMONY REGARDING THE EFFICACY OF COX'S ANTIPIRACY PROCEDURES BECAUSE MR. TREGILLIS IS NOT QUALIFIED TO OPINE ON THE EFFICACY OF ANTIPIRACY PROCEDURES AND HIS TESTIMONY LACKS A RELIABLE FOUNDATION ................................................................................ 14

CONCLUSION .................................................................................................................. 17

# TABLE OF AUTHORITIES

Cases

*Buser v. Eckerd Corp.*, No. 5:12-CV-755-FL, 2015 WL 1438618 (E.D.N.C. Mar. 27, 2015) .....14

*Cooper v. Smith & Nephew*, 259 F.3d 194, 199 (4th Cir. 2001) ........................................................3

*Country Rd. Music, Inc. v. MP3.com, Inc.*, 279 F. Supp. 2d 325 (S.D.N.Y.2003) ........................8

*Dash v. Mayweather*, 731 F.3d 303 (4th Cir. 2013) ...................................................................8, 9

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) ...................................................3, 10

*Eastern Auto Distribs., Inc. v. Peugeot Motors of Am.*, 795 F.2d 329 (4th Cir.1986)..................11

*Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997) .............................................................................16

*Jackson v. United States*, 638 F. Supp. 2d 514 (W.D.N.C. 2009) ................................................14

*Macro Niche Software, Inc. v. 4 Imaging Sols., L.L.C.*, No. CV H-12-2293, 2013 WL 12140417
    (S.D. Tex. Dec. 18, 2013) ...........................................................................................................14

*Tyger Const. Co. Inc. v. Pensacola Const. Co.*, 29 F.3d 137 (4th Cir. 1994)...................10, 11, 12

*United States v. Barile*, 286 F.3d 749 (4th Cir. 2002) ..................................................................14

*United States v. Chapman*, 209 F. App'x 253 (4th Cir. 2006) .................................................13, 14

*United States v. Dorsey,* 45 F.3d 809 (4th Cir. 1995)....................................................................11

*United States v. McIver*, 470 F.3d 550 (4th Cir. 2006)...........................................................13, 14

*United States v. Offill*, 666 F.3d 168 (4th Cir. 2011)...........................................................3, 13, 14

*United States v. Wilson*, 133 F.3d 251 (4th Cir. 1997) .................................................................14

*Westberry v. Gislaved Gummi AB*, 178 F.3d 257 (4th Cir. 1999) ...........................................3, 11

Statutes

17 U.S.C. § 504(b) .........................................................................................................................12

Rules

Fed. R. Evid. 702 .....................................................................................................2, 3, 9, 13, 16

# TABLE OF AUTHORITIES

(Continued)

<u>Treaties</u>

4. J. Weinstein & Berger, *Weinstein's Federal Evidence*, § 702.03[2][a]
(J. McLaughlin ed., 2d 2010). ...................................................................................................13

## INTRODUCTION

Cox's trial strategy is to parade out a cadre of expert witnesses to distract, sow confusion, and offer opinions untethered to the facts.  Its objective is to hide behind experts with extensive resumes, who will tell the jury what to think and how to decide the case.  This motion addresses the improper testimony of Cox's proposed expert, Christian Tregillis.  He is an accountant that Cox hired to opine on Plaintiffs' actual damages resulting from Cox's infringement.

Mr. Tregillis proposes to testify that Plaintiffs incurred actual damages of only ███████ for all 10,729 Works in Suit.  He reaches this conclusion by ignoring the underlying evidence about the extent and nature of the infringement.  Instead, Mr. Tregillis performs simple arithmetic on a limited data set without considering whether it is the appropriate data set.  His analysis is fundamentally inaccurate, unreliable, and misleading, and fails to meet the Fourth Circuit's admissibility standard for an expert performing a damages analysis.

Mr. Tregillis's report is also problematic because he offers legal analysis and conclusions, usurping the Court's role to instruct the jury on the law.  And he proffers groundless opinions on the efficacy of Cox's anti-piracy procedures, about which he is plainly unqualified to opine.

## BACKGROUND

Christian Tregillis is a partner at an accounting and consulting firm, Hemming Morse, LLP.  Decl. of Jeffrey M. Gould in Supp. of Pls.' Mot. to Preclude Certain Expert Testimony By Christian Tregillis ("Gould Decl.") Ex. 1, ¶ 1 (Expert Report of Christian Tregillis, April 10, 2019 ("Tregillis  Apr. 10, 2019 Rept.")).  He holds an M.B.A. in Finance and Accounting and various professional accounting certifications.  *Id*. App'x B.  His professional practice focuses on analyzing financial, accounting, economic, statistical, and market issues.  *Id.*  He is a professional expert witness who undertakes roughly 40 expert engagements per year on average.

Gould Decl. Ex. 2, 26:17-21 (Deposition Transcript of Christian Tregillis, dated June 24, 2019 ("Tregillis Tr.")).

Mr. Tregillis's expert report has two main parts.  In the first part, Mr. Tregillis analyzes whether the works in suit are supported by the infringement evidence.  By the time of his deposition, he had concluded that more than 95% of the works in suit are supported by infringement notices to Cox.  *Id.* 18:22-19:7.  As to the remainder, he had not yet made a match and was continuing his analysis.  *Id.*  Plaintiffs do not seek to exclude testimony regarding this part of Mr. Tregillis's proposed testimony in the instant motion.

In the second part of his report, Mr. Tregillis purports to analyze Plaintiffs' actual damages in this case by conducting a lost licensing fee analysis.  In this analysis, he purports to calculate the number of infringements of Plaintiffs' works, and then multiplies this amount by his estimate of an appropriate royalty rate.  However, in conducting this lost licensing analysis, Mr. Tregillis chooses a blatantly inappropriate benchmark for estimating a royalty rate.  Mr. Tregillis also limits his analysis to a single download for each work in each notice, entirely ignoring the unlimited distributions of those works.  Mr. Tregillis admits data does not exist to accurately calculate the losses.[1]

## ARGUMENT

### I.   THE LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony.  Under Rule 702, scientific, technical, or other specialized knowledge may be presented to the jury by an expert witness if:  (1) it is potentially helpful to the jury; (2) it is based on sufficient facts or data; (3) it is the product of reliable principles and methods; and (4) the testimony is applied to the

---

[1] Plaintiffs have elected to receive statutory damages.  The Copyright Act provides for statutory damages because it is sometimes difficult, if not impossible, to quantify actual damages when it comes to copyright infringement.  That certainly applies in the instant case.

facts of the case.  Fed. R. Evid. 702.  The "touchstone of the rule is whether the testimony will

assist the jury."  *United States v. Offill*, 666 F.3d 168, 175 (4th Cir. 2011).

Trial courts act as gatekeepers to ensure that expert testimony is reliable and relevant.

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993).  The Court must determine if

the "reasoning or methodology underlying the expert's proffered opinion is reliable" and

"whether the opinion is relevant to the facts at issue."  *Westberry v. Gislaved Gummi AB*, 178

F.3d 257, 260-61 (4th Cir. 1999).

The burden is on the party proffering the expert to prove by a preponderance of the

evidence that the expert's testimony is admissible and that the requirements of the Federal Rules

of Evidence are satisfied.  *See Cooper v. Smith & Nephew*, 259 F.3d 194, 199 (4th Cir.

2001); *Daubert*, 509 U.S. at 592 n.10.

## II.   MR. TREGILLIS'S LOST LICENSING FEE MUST BE EXCLUDED BECAUSE IT IS BASED ON UNSUPPORTED AND UNRELIABLE <u>ASSUMPTIONS</u>

### A.   Mr. Tregillis's lost licensing fee analysis relied on two inputs.

Mr. Tregillis attempted to calculate the amount of licensing fees Cox would have owed to

Plaintiffs.  Gould Decl. Ex. 1, ¶¶ 87-88 (Tregillis Apr. 10, 2019 Rept.); Gould Decl. Ex. 3, ¶¶ 40-

53 (Supplemental/Rebuttal Report of Christian Tregillis, May 15, 2019 ("Tregillis May 15, 2019

Rept.")); Gould Decl. Ex. 4, ¶ 66 (Reply Report of Christian Tregillis, June 13, 2019 ("Tregillis

June 13, 2019 Rept.")).  To do this calculation, he multiplied a figure for the number of

infringements by a royalty rate for a single download for each infringement.  For the applicable

royalty rate, he used the average revenues the Record Company Plaintiffs receive from iTunes

for the download of a single track, while not accounting for any revenue Publishing Company

Plaintiffs receive.  Gould Decl. Ex. 1, ¶¶ 72-74 (Tregillis Apr. 10, 2019 Rept.); Gould Decl. Ex.

4, ¶ 66 (Tregillis June 13, 2019 Rept.).  Based on these average revenues for the download of a

single track from iTunes, Mr. Tregillis estimated the applicable license fee in this case to be

approximately ███████████ *Id.*  Mr. Tregillis calculates the universe of infringements by

counting each infringement notice Plaintiffs sent to Cox during Plaintiffs' claim period for the

works in suit as one infringement.  Gould Decl. Ex. 1, ¶ 87 (Tregillis Apr. 10, 2019 Rept.);

Gould Decl. Ex. 4, ¶ 45 (Tregillis June 13, 2019 Rept.).  Nowhere does Mr. Tregillis attempt to

determine the totality of the infringements for each of the Cox subscribers at issue.  Nor does he

make any attempt to determine the universe of subsequent infringing copies made by virtue of

the viral nature of peer-to-peer infringement.

**B. The Court should exclude Tregilis's lost licensing fee analysis because Mr. Tregillis's use of the Record Company Plaintiffs' average revenues for the download of a single track from iTunes to estimate a licensing fee was not based on any economic analysis or the facts of the case.**

**1. Cox's use of Plaintiffs' works is not comparable an iTunes user's use of Plaintiffs' works.**

Mr. Tregillis' use of the average revenues the Record Company Plaintiffs receive for the

download of a single track from iTunes as a benchmark to estimate a licensing fee is a fatal

approach to a lost licensing fee analysis.  Cox's use of Plaintiffs' works is not comparable to an

iTunes user's use of Plaintiffs' works.  When a user downloads a single track from iTunes, that

user can use the download for personal use only.  Gould Decl. Ex. 2, 179:15-181:8 (Tregillis

Tr.).  Purchasing a track from iTunes does not entitle the purchaser to copy and distribute the

track an unlimited number of times over a peer-to-peer network.  The Record Company

Plaintiffs' average revenues for the download of a single track from iTunes reflect these

limitations on the purchaser's use.  But it is precisely this conduct—distributing copies of a track

an unlimited number of times over a peer-to-peer network—that the hypothetical licensing fee

Mr. Tregillis calculates would cover.

The ability to copy and distribute a track an unlimited number of times on a peer-to-peer network negatively affects the value of the work, while downloading a track from a licensed service for personal use only does not.  Mr. Tregillis does not dispute this fundamental difference, admitting that a license allowing users to give away Plaintiffs' works for free on a peer-to-peer network would have a "downward influence" on Plaintiffs' sales. *Id.* 198:3-14.  Mr. Tregillis even agrees that Plaintiffs would charge a license greater than ███████ to grant a licensee the right to distribute copies of their work on an unlimited basis through a peer-to-peer network. *Id.* 199:6-16.  Yet, his analysis fails to take this into consideration.

In effect, Mr. Tregillis used the price of a bottle of wine when he should have used the cost of the vineyard.

### 2.  Mr. Tregillis did no analysis to support his choice of royalty rate.

Mr. Tregillis did no analysis at all to determine whether the Record Company Plaintiffs' average revenues for the download of a single track from iTunes were the proper benchmarks to use in calculating a lost licensing fee for Cox's infringement.  When asked whether a license to distribute Plaintiffs' works on a peer-to-peer network would cost more than the royalty rate of ████████ that Mr. Tregillis used, he admitted, "***I haven't made that analysis.***  I think that it would depend on a variety of factors and I don't know the answer to that.  But I am certainly open to the idea that it would be more than ████████." *Id.* 196:21-197:8 (emphasis added).  As a license to distribute Plaintiffs' works on a peer-to-peer network would cost more than ███ ███, his chosen royalty rate was not applicable to Cox's infringement.

Mr. Tregillis does not deny that, when choosing a royalty rate for a licensing fee analysis, a licensing fee must reflect the underlying economic realities of the use being licensed. *Id.* 176:19-177:7.  But by his own admission he did no analysis of any kind comparing the underlying economic realities of obtaining a track from iTunes for personal use and a license to

copy and distribute on a peer-to-peer platform.  When asked how he would attempt to measure what Plaintiffs might charge for a license to distribute Plaintiffs' works on a peer-to-peer network, Mr. Tregillis testified that "would attempt to gather data, talk with the labels, review literature." *Id.* 196:10-19.  Mr. Tregillis did none of this.  If he had done this analysis, he would have concluded, as shown above, that the underlying economic realities are incomparable.

Instead of choosing his benchmark by analyzing the underlying economics, Mr. Tregillis chose the Record Company Plaintiffs' average revenues for the download of a single track from iTunes solely because it was the only rate for which he had been given data.  Mr. Tregillis admitted that he chose that royalty rate ███████████████████████████████████████ ███████████████████████████████████████████████ *Id.* 176:11-18.  But there is no historical data on the fee for a license to distribute content on a peer-to-peer network because Plaintiffs have never granted such a license.  Mr. Tregillis himself admitted that he was "not aware of such a license being granted." *Id.* 227:20-228:11.  Mr. Tregillis's use of the Record Company Plaintiffs' average revenues for the download of a single track from iTunes as a benchmark solely because that was what he had data for is a classic example of the "streetlight effect" error of searching where it is easiest to look rather than where the answer is most likely to be found.[2]

---

[2] Also known as the Drunkard's Search, the streetlight effect is named after an old parable:

> A policeman sees a drunk man searching for something under a streetlight and asks what the drunk has lost. He says he lost his keys and they both look under the streetlight together. After a few minutes the policeman asks if he is sure he lost them here, and the drunk replies, no, and that he lost them in the park. The policeman asks why he is searching here, and the drunk replies, "this is where the light is."

*Streetlight effect*, Wikipedia, https://en.wikipedia.org/wiki/Streetlight_effect (last visited Aug. 14, 2019).

Mr. Tregillis's attempt to defend his indefensible choice of royalty rate only further highlights the problem with his analysis.  Mr. Tregillis argues that in determining a licensing fee for Cox's infringement he is entitled to ignore a user's ability to distribute Plaintiffs' works via Cox's services through a peer-to-peer system because Plaintiffs have not introduced evidence as to how many times such distributions actually took place:

> Q. It strikes me that these activities are apples to oranges and I am hoping you could help explain why you think that is not the case.  So the royalty rate that you are looking to from iTunes is the rate for a user to download a song for their individual personal use, correct, we have covered that?
> A.  Yes.
> Q.  But you are then taking that and using that as the rate for an individual to upload that song to a peer-to-peer network which strikes me as an entirely different activity than the single track download on iTunes.  Can you explain to me if you agree with that or if you disagree why?
> A. What I am saying is I am measuring the fact that it has appeared as available is an indication that for purposes of my analysis it -- there is a wrongful activity that has it there.  That is my measurement.  It is there by some wrongful means and is there some unknown number of occasions in which there has been a wrongful transmission to somewhere else, that is not something for which we have any evidence so I have not performed a calculation for unknown, unquantified additional downloads. It is based on the information for which there is evidence.
> . . .
> Q.  So other than the fact that the infringement notice data is the only data that you have, do you have any basis to presume in your damages analysis that there are -- were no distributions of these files by the Cox subscribers cited in the notices?
> A.  ***I am not saying there were no other downloads.  I am saying there is no evidence of them.***

*Id.* 182:11-183:22, 184:23-185:8 (emphasis added).

Mr. Tregillis's argument fails for two reasons.  First, as Mr. Tregillis himself admits, an inability to quantify the number of distributions does not mean they did not occur.  As explained at length below in Section II.C, it is impossible to count how many times an individual on a peer-to-peer network has distributed an infringing file.  Mr. Tregillis cannot blithely assume these distributions out of his analysis.  Second, a licensing fee must cover all of the relevant rights included in the license, regardless of whether the licensee ultimately exercises all of those rights; the loss to the licensor is the rights and control the licensor surrenders.  The infringement on

Cox's network stripped Plaintiffs of the ability to control distribution of Plaintiffs' works and subjected Plaintiffs to the risk that their works would be copied and distributed an unlimited number of times.  Mr. Tregillis does not dispute this factual point.  A lost license fee must compensate Plaintiffs for the right that Cox unilaterally took for itself, *i.e.*, allowing its subscribers both to download *and* distribute Plaintiffs' works via peer-to-peer, but his chosen royalty does not account for it.

### 3. Fourth Circuit precedent on lost licensing fee analysis requires excluding Mr. Tregillis's opinion because Mr. Tregillis used an inapposite benchmark.

The Fourth Circuit has rejected Mr. Tregillis's approach to calculating lost licensing fees. Under Fourth Circuit law, an expert opinion calculating lost licensing revenues that attempts to use a comparable license benchmark must use a benchmark license that contemplates "comparable uses" of the work.  *Dash v. Mayweather*, 731 F.3d 303, 319 (4th Cir. 2013) (quotations and citations omitted).  "[I]f the benchmarks relied on are inapposite, they may, without more, be too speculative to support" a lost licensing fee analysis.  *Id*. (citing *Country Rd. Music, Inc. v. MP3.com, Inc.*, 279 F. Supp. 2d 325, 331 (S.D.N.Y.2003)).  The *Country Road* decision, which the Fourth Circuit cited, noted "the error of beginning with a benchmark license for a use different from that made by the infringer" and excluded an expert report that "relied on a single, inapposite license."  *Country Rd.*, 279 F. Supp. 2d. at 331-32.  A license is inapposite as a benchmark when it has, for example, different terms of use, exclusivity, breadth, and is for a different business purpose.  *Id.*

Relying on a benchmark license for a use different from that made by the infringer is exactly the error Mr. Tregillis has made.  By using the Record Company Plaintiffs' average revenues for the download of a single track from iTunes for his analysis, Mr. Tregillis adopted a benchmark that is inapposite to Cox's infringing use of distributing Plaintiff's works an

unlimited number of times over a peer-to-peer network.  Further, he committed the disqualifying

error of "fail[ing] to explain how the differences between the benchmarks used and [the license

at issue] factored into his analysis . . . ."  *Dash*, 731 F.3d at 322.  Accordingly, under Fourth

Circuit precedent Mr. Tregillis's opinion must be excluded.

> **C.  The Court should exclude Mr. Tregillis's lost licensing fee analysis because Mr. Tregillis's method for determining the number of Cox's infringements ignores basic facts about peer-to-peer file sharing and is not based on any reliable principle or method.**

Mr. Tregillis's methodology for approaching of the second input in his lost licensing fee

analysis, the number of Cox's infringements, is equally flawed.  Mr. Tregillis determines the

number of Cox's infringements by counting as one infringement each infringement notice

Plaintiffs sent to Cox during Plaintiffs' Claim Period for the Works in Suit.  Gould Decl. Ex. 1, ¶

87 (Tregillis Apr. 10, 2019 Rept.); Gould Decl. Ex. 4, ¶ 45 (Tregillis Jun. 13, 2019 Rept.).

Because Mr. Tregillis's calculation conflicts with the facts of Cox's actual infringement and

because Mr. Tregillis did no analysis to support his conclusion, his opinion is not based on

sufficient facts or data and is not the product of reliable principles and methods, and therefore

must be excluded under Fed. R. Evid. 702.

Mr. Tregillis's method of determining the number of Cox's infringements ignores a

fundamental reality of peer-to-peer infringement: it is impossible to observe the interactions

between peers and count their distributions.  Mr. Tregillis does not dispute this reality:

> Q.  So when an individual is on a peer-to-peer network with a copy of a copyrighted file on their computer and another individual on the network downloads a copy from the first individual do you know if records are kept of that activity?
> A. My general understanding is that there are not the records of that but I have seen and am aware of this being an issue that some people have attempted to address in making estimations.

Gould Decl. Ex. 2, 71:22-72:10 (Tregillis Tr.).  He further admits that his damages analysis must

be rooted in an understanding of how a peer-to-peer network works.  *Id.* 71:6-14.  An expert's

proffered testimony must be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Daubert*, 509 U.S. at 591 (citations and quotations omitted).  Yet Mr. Tregillis fails this requirement.

Tregillis's opinion is not sufficiently reliable because Mr. Tregillis did no analysis to determine whether the infringement notice data he used accurately represented the actual infringement occurring on Cox's system during the Claim Period.  He did no analysis to determine if any adjustments to the infringement notice data were necessary to make it more accurately represent the total number of infringements.  Despite admitting, as noted above, that others have attempted estimations to address this problem, Mr. Tregillis did not himself attempt one.  *See* Gould Decl. Ex. 2, 71:22-72:10 (Tregillis Tr.).  Nor did he analyze whether the total number of Cox's infringements could be precisely determined at all.  He just conveniently proceeded while knowing that his data was not a reasonable proxy for the thing he was trying to study.  But Mr. Tregillis cannot point to any facts showing this method of calculating infringements accurately measures the totality of Cox's infringement.  "Expert opinion evidence based on assumptions not supported by the record should be excluded."  *Tyger Const. Co. Inc. v. Pensacola Const. Co.*, 29 F.3d 137, 143 (4th Cir. 1994) (vacating jury verdict and reversing admission of expert testimony where expert's opinion was based on unsupported assumptions and without factual support).

Notably, Mr. Tregillis does not dispute that his method for determining the number of Cox's infringements does not accurately measure the total number of infringements.  He admitted, as seen above, "I am not saying there were no other downloads.  I am saying there is no evidence of them."  Gould Decl. Ex. 2, 184:23-185:8 (Tregillis Tr.).  But absence of evidence is not evidence of absence.  Mr. Tregillis fails to incorporate the distributions into his analysis. By including only infringements for which Mr. Tregillis claims to have data, Mr. Tregillis

deliberately distorts and minimizes the actual number of infringements that occurred.  This error renders his opinion unreliable and it must be excluded.

### D.  The flaws in Mr. Tregillis's lost licensing fee analysis bar its admissibility.

The flaws in Mr. Tregillis's lost licensing fee analysis not only affect its weight; they bar its admissibility.  To properly fulfill the Court's gatekeeping duty, the Court must exclude expert testimony that threatens to mislead and confuse the fact-finder.  "[G]iven the potential persuasiveness of expert testimony, proffered evidence that has a greater potential to mislead than to enlighten should be excluded."  *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999) (citing *United States v. Dorsey,* 45 F.3d 809, 815-16 (4th Cir. 1995)).  Mr. Tregillis's analysis will mislead and confuse the jury by wrongly suggesting that Plaintiffs' actual damages can be exactly determined.  The Fourth Circuit has cautioned that "[s]crutiny of expert testimony is especially proper where it consists of an array of figures conveying a delusive impression of exactness in an area where a jury's common sense is less available than usual to protect it."  *Tyger*, 29 F.3d at 145 (quoting *Eastern Auto Distribs., Inc. v. Peugeot Motors of Am.*, 795 F.2d 329, 338 (4th Cir.1986) (internal quotation marks omitted)).  Conveying a delusive impression of exactness is exactly what Cox wants Mr. Tregillis to do, and the Court should not permit such tactics.

The facts of *Tyger* are instructive.  In *Tyger*, a damages expert testified to a specific amount of costs associated with mining an uneconomical sand pit that were excessive due to the defendant's misrepresentations.  *Id.* at 143.  The expert calculated this amount by using as a benchmark the costs associated with mining a different sand pit.  *Id.*  The Fourth Circuit held this opinion must be excluded because the expert did no analysis of the similarities between the two pits, and there was no evidence in the record showing the pits were comparable.  *Id.*  Further, the expert admitted that he could not quantify costs attributable to any specific factors.  *Id.*

11

The Fourth Circuit in *Tyger* could well have been describing Mr. Tregillis's testimony. Just as in *Tyger*, Mr. Tregillis did no analysis of the similarities between the use at issue in his chosen royalty rate and Cox's infringing use. Just as in *Tyger*, Mr. Tregillis admitted the thing he was trying to quantify—cost overruns for the *Tyger* expert, total infringements for Mr. Tregillis—could not actually be quantified.

*Tyger* rejected the argument that these errors went merely to weight, not admissibility. *Id.* at 144. *Tyger* reasoned that admitting such flawed testimony would raise the danger that "that the jury may accept as fact not just the faulty assumptions on which [the expert] relied, but may also accept the conclusions that are drawn through his use of these assumptions" and concluded that, "when the assumptions made by an expert are not based on fact, the expert's testimony is likely to mislead a jury, and should be excluded by the district court." *Id.*

### III.   THE COURT SHOULD PRECLUDE MR. TREGILLIS FROM TESTIFYING TO LEGAL ANALYSIS AND CONCLUSIONS

In his reports, Mr. Tregillis repeatedly offers legal analysis and legal arguments. For example, he opines on the legal relevance of his analysis to statutory damages. Gould Decl. Ex. 1, ¶¶ 83-86 (Tregillis Apr. 10, 2019 Rept.); Gould Decl. Ex. 3, ¶ 54 (Tregillis May 15, 2019 Rept.); Gould Decl. Ex. 4, ¶¶ 72-73 (Tregillis June 13, 2019 Rept.). Mr. Tregillis cites the Copyright Act's statutory damages provisions and discusses the relevant caselaw interpreting it. Gould Decl. Ex. 1, ¶¶ 83-86 (Tregillis Apr. 10, 2019 Rept.). Mr. Tregillis uses this analysis of the caselaw to argue that his actual damages calculations are more legally relevant to statutory damages than Dr. Lehr's analysis. Gould Decl. Ex. 4, ¶¶ 72-73 (Tregillis Jun. 13, 2019 Rept.). He repeatedly compares his damages calculation to 17 U.S.C. § 504(b)'s statutory damages thresholds. Gould Decl. Ex. 1, ¶ 87 (Tregillis Apr. 10, 2019 Rept.); Gould Decl. Ex. 3, ¶¶ 40, 45 (Tregillis May 15, 2019 Rept.). Mr. Tregillis even goes so far as to opine on how the jury should award statutory damages, stating that "a low level of statutory damages is appropriate given the

facts in this matter."  Gould Decl. Ex. 3, ¶ 54 (Tregillis May 15, 2019 Rept.).  Mr. Tregillis

criticizes Dr. McCabe's analysis as "go[ing] beyond an indication of infringements that would be

recoverable in a damages award," *id.* ¶ 25, implicitly making a legal argument about the scope of

recoverable damages.

Mr. Tregillis should be precluded from offering any legal analysis, legal argument, and

legal conclusions at trial.  First, By Mr. Tregillis's own admission, he has no legal expertise.  Mr.

Tregillis states in his report that, " I do not hold myself out to be an expert in the law, nor am I

offering legal opinions."  Gould Decl. Ex. 4, ¶ 71 (Tregillis June 13, 2019 Rept.).  He is therefore

not qualified under Fed. R. Evid. 702 to offer any expert opinion testimony analyzing legal

issues.

Second, the Fourth Circuit has made clear that "opinion testimony that states a legal

standard or draws a legal conclusion by applying law to the facts is generally inadmissible."

*United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006).  Such testimony does not assist the

jury because it "supplies the jury with no information other than the witness's view of how the

verdict should read."  *United States v. Offill*, 666 F.3d 168, 175 (4th Cir. 2011) (quoting

*Weinstein's Federal Evidence* § 704.04[2][a] (2d ed. 2003)).  Further, allowing an expert witness

to opine generally on legal issues "could confuse the jury and usurp the district court's obligation

to explain the governing law to the jury."  *United States v. Chapman*, 209 F. App'x 253, 269–70

(4th Cir. 2006).  Allowing the expert to "giv[e] a legal conclusion [] is better handled by the

judge and, coming from the witness, will be of little assistance to the jury."  *Offill*, 666 F.3d at

175.

Applying these principles, courts in this Circuit regularly exclude expert testimony where the expert offers legal analysis or a legal conclusion.[3]  While the Fourth Circuit has noted that "the line between a permissible opinion on an ultimate issue and an impermissible legal conclusion is not always easy to discern," *McIver*, 470 F.3d at 562, Mr. Tregillis's testimony does not present a close call.  Mr. Tregillis's testimony does not shed light on particularly complex or highly technical legal issues, where some courts have found an exception to the general rule against admissibility.  *See Offill*, 666 F.3d at 175.  The Court should not allow Mr. Tregillis to usurp its role of instructing the jury on the law of statutory damages, nor permit Mr. Tregillis to parrot Defense Counsel's closing argument.  *See Macro Niche Software, Inc. v. 4 Imaging Sols., L.L.C.*, No. CV H-12-2293, 2013 WL 12140417, at *4 (S.D. Tex. Dec. 18, 2013) (excluding expert testimony that recommended a statutory damages award to the jury).  Mr. Tregillis's testimony should be excluded.

## IV. THE COURT SHOULD EXCLUDE MR. TREGILLIS' TESTIMONY REGARDING THE EFFICACY OF COX'S ANTIPIRACY PROCEDURES BECAUSE MR. TREGILLIS IS NOT QUALIFIED TO OPINE ON THE EFFICACY OF ANTIPIRACY PROCEDURES AND HIS TESTIMONY LACKS A RELIABLE FOUNDATION

In attempting to rebut Dr. Lehr's opinion that Cox had incentives to tolerate infringers, Mr. Tregillis opines with regard to Cox's antipiracy procedures that "Cox's procedures generally

---

[3] *See, e.g.*, *United States v. Wilson*, 133 F.3d 251, 265–66 (4th Cir. 1997) (holding that the district court erred by allowing witnesses to "give opinions on what the law means or how it is interpreted"); *United States v. Barile*, 286 F.3d 749, 761 (4th Cir. 2002) (affirming exclusion in FDA fraud case of expert testimony that FDA submissions did not contain "materially misleading statements"); *Chapman*, 209 F. App'x at 269-70 (affirming exclusion in financial fraud case of both expert testimony regarding the scope of Defendant's fiduciary duties and testimony more generally about the existence and scope of a fiduciary duty under various securities laws); *Jackson v. United States*, 638 F. Supp. 2d 514, 527 (W.D.N.C. 2009) (excluding attorney affidavits opining that Defendant received ineffective assistance of counsel and collecting cases); *Buser v. Eckerd Corp.*, No. 5:12-CV-755-FL, 2015 WL 1438618, at *7-*8 (E.D.N.C. Mar. 27, 2015) (excluding in ADA violation suit expert's opinion as to a job's "essential function" and "essential duty").

worked" and that "the processes Cox have employed have functioned well." Gould Decl. Ex. 4, ¶¶ 77, 80 (Tregillis June 13, 2019 Rept.). The Court should exclude this testimony.

Mr. Tregillis has no relevant expertise to opine on the efficacy of Cox's antipiracy procedures. Mr. Tregillis is an accountant and a financial valuation consultant, not an ISP anti-piracy officer or consultant. Mr. Tregillis' extensive C.V. reveals zero experience in designing, implementing, managing, remediating, or evaluating antipiracy programs or procedures. *See* Gould Decl. Ex. 1, App'x B (Tregillis Apr. 10, 2019 Rept.). Of the 65 publications, presentations, and speaking engagements included in his C.V., not one appears to relate to antipiracy procedures. *Id.* Because Mr. Tregillis has no relevant "knowledge, skill, experience, training, or education" on this issue, this testimony should be excluded under Fed. R. Evid. 702.

Mr. Tregillis's evaluation of Cox's antipiracy procedures is not based on sufficient facts and data. In his report, Mr. Tregillis relies for his opinion solely on two data points: ███ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ █████████████████████████████████████████ Gould Decl. Ex. 4, ¶¶ 77-80 (Tregillis June 13, 2019 Rept.). Mr. Tregillis does not explain the significance of these two data points in evaluating an antipiracy program, nor how he could draw broad conclusions from only these two data points.

Mr. Tregillis's evaluation of Cox's antipiracy procedures is not based on reliable principles and methods. In fact, Mr. Tregillis's conclusions do not appear to be based on *any* principles and methods. Mr. Tregillis did practically no investigation to reach his conclusion, admitting that his entire "investigation" consisted of looking at a single pie chart. Gould Decl. Ex. 2, 246:4-15 (Tregillis Tr.). Mr. Tregillis admits that he applied no objective standard and did no analysis:

> Q.  What standard are you applying when you conclude that the procedures worked well?  Is it merely the citations to the data you referred to or is there something beyond that?
> A.  That is it.

*Id.* 246:16-21.

Mr. Tregillis cannot explain why Cox's performance on his chosen criteria is sufficient. Mr. Tregillis cannot say what it means for an antipiracy procedure to "generally work" or "function well."  He admits that he has no objective standard or benchmark on which he is evaluating Cox's performance and that his opinion is based on his subjective feeling:

> Q.  I mean, is -- from whose perspective is the conclusion that it functioned well or worked generally?  Is that from Cox's perspective, from the copyright owner's perspective, the user's perspective.  Something else?  Can you explain that to me?
> A.  It is from the perspective of the observation of data.  It is just what the data show and in terms of what those data mean . . . .  They are relatively small numbers compared to the way that I have heard your arguments and the arguments of your experts.

*Id.* 249:23-251:3.  Mr. Tregillis's admission that his conclusion "is from the perspective of the observation of data" reveals the emptiness of his opinion.  The data can have no perspective on its own—it is the expert who puts the data into perspective.  But Mr. Tregillis cannot identify a basis for putting the data into perspective.  His subjective belief, based on no identifiable standard and untethered to any objective principle, that the two data points he has selected seem like "relatively small numbers" to him is not a basis for expert testimony under Fed. R. Evid. 702.  Mr. Tregillis's testimony epitomizes what the Supreme Court has described as "opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."  *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (affirming exclusion of expert opinion where the district court

concluded that "there is simply too great an analytical gap between the data and the opinion proffered").  His testimony should be excluded.[4]

## CONCLUSION

For the reasons set forth herein, Plaintiffs' respectfully request that the Court preclude Christian Tregillis from:

(1) Testifying to his lost licensing fee analysis that Plaintiffs' total actual damages are



(2) Offering legal analysis and conclusions; and

(3) Testifying to the efficacy of Cox's anti-piracy procedures.

Respectfully submitted,

Dated August 30, 2019

/s/ Scott A. Zebrak
Scott A. Zebrak (38729)
Matthew J. Oppenheim (*pro hac vice*)
Jeffrey M. Gould (*pro hac vice*)
Kerry Mustico (*pro hac vice*)
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Avenue, NW, 5th Floor
Washington, DC 20015
Tel:  202-480-2999
scott@oandzlaw.com
matt@oandzlaw.com
jeff@oandzlaw.com
kerry@oandzlaw.com

*Attorneys for Plaintiff*

---

[4] Mr. Tregillis's opinion references "some standards employed in the industry, allowing for as many as six 'strikes,' and even not requiring that a user be cut from the internet service provider's system."  Gould Decl. Ex. 1, ¶ 75 (Tregillis Apr. 10 Rept.).  Mr. Tregillis makes clear that the industry standard to which he refers here is the Copyright Alert System.  Gould Decl. Ex. 4, ¶ 66 n.36 (Tregillis June 13, 2019 Rept.).  Mr. Tregillis's references to the Copyright Alert System should be precluded for the same reasons as set forth in Plaintiffs' Motion to Preclude Certain Expert Testimony by Dr. Kevin C. Almeroth.

17