UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| SONY MUSIC ENTERTAINMENT, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> COX COMMUNICATIONS, INC., *et al.*, <br><br> Defendants. | Case No. 1:18-cv-00950-LO-JFA |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO PRECLUDE CERTAIN EXPERT TEXTIMONY PROFFERED BY DR. NICK FEAMSTER**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION .....................................................................................................................1

BACKGROUND .......................................................................................................................2

      A.  Dr. Feamster Agrees with Ms. Frederiksen-Cross on the Technical Background ..................................................................................................2

      B.  Dr. Feamster's Opinions and Analysis ...........................................................3

ARGUMENT .............................................................................................................................3

    I.    LEGAL STANDARD ......................................................................................3

    II.   DR. FEAMSTER'S TESTIMONY IS UNRELIABLE, MISLEADING, AND WILL NOT ASSIST THE JURY ..................................................................4

          A.  MarkMonitor's Downloads ............................................................................5

          B.  MarkMonitor's Use of Audible Magic. .........................................................6

          C.  Accuracy of Audible Magic ...........................................................................8

          D.  Pretextual Reasons for Demanding Contemporaneous Downloads ............12

CONCLUSION ........................................................................................................................13

# TABLE OF AUTHORITIES

Cases

*Arista Records LLC v. Lime Wire LLC*, No. 06 Civ. 05936 KMW, 2010 WL 10031251
 (S.D.N.Y. Aug. 9, 2010) ...................................................................................................9

*Arista Records LLC v. Myxer Inc.*, No. CV 08-03935 GAF (JCX), 2011 WL 11660773
 (C.D. Cal. Apr. 1, 2011) ................................................................................................8-9

*Capitol Records, LLC v. Escape Media Grp., Inc.*, No. 12-cv-6646 (AJN), 2015 WL 1402049
 (S.D.N.Y. Mar. 25, 2015) .................................................................................................8

*Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020 (9th Cir. 2013) ......................................12

*Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194 (4th Cir. 2001) ....................................................4

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) .........................................................4

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) ...................................................................4

*Metro-Goldwyn- Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197
 (C.D. Cal. 2007) ...............................................................................................................9

*UMG Recordings, Inc. v. Shelter Capital Partners LLC,* 718 F.3d 1006 (9th Cir. 2013) ..............8

*United States v. Offill*, 666 F.3d 168 (4th Cir. 2011) ....................................................................4

*Westberry v. Gislaved Gummi AB*, 178 F.3d 257 (4th Cir. 1999) .................................................4

Rules

Fed. R. Evid. 403.................................................................................................................1, 4, 13

Fed. R. Evid. 702 .........................................................................................................1, 3, 4, 5, 13

Fed. R. Evid. 703 ....................................................................................................................1, 13

# INTRODUCTION

Cox's trial strategy is to parade out a cadre of expert witnesses to distract, sow confusion, and offer opinions untethered to the facts. Its objective is to hide behind experts with extensive resumes, who will tell the jury what to think and how to decide the case. This motion addresses the improper testimony of Cox's proposed expert, Dr. Nick Feamster. He is a computer science professor that Cox hired to rebut the proposed testimony of Plaintiffs' expert, Barbara Frederiksen-Cross.

Dr. Feamster purports to address the MarkMonitor system used to detect infringement, collect evidence, and send notices. But his testimony concerning MarkMonitor and its use of the Audible Magic technology will not assist the jury and should be precluded under Federal Rules of Evidence 702, 703, and 403. Dr. Feamster's challenged testimony is reminiscent of arguments raised in the early days of piracy on the Internet, when practical experience was scarce. He seeks to testify about mere technical possibilities, without regard to the facts of this case or actual probabilities encountered in the real world. Yet theoretical arguments of that sort have been cast aside time and again. Speculation and *ipse dixit* are unreliable, irrelevant, and unfairly prejudicial.

Dr. Feamster's proposed testimony lacks the intellectual rigor required of an expert. The analytical leaps in his testimony are extensive and would substantially confuse a jury about the record evidence. Dr. Feamster makes grandiose statements about the absence of downloads, content identification, and copying, but only because he deliberately refused to consider the key evidence that should have been at the core of his analysis. Likewise, there is no basis to believe that some of the Cox subscribers in the infringement notices used modified BitTorrent software to pretend that they downloaded and were distributing a file not actually on their computers. Similarly, it is improper for Dr. Feamster to opine as to what is necessary to show "true

1

infringement"—either based on his conjured-up notions of "live reporting" or his desire to rewrite the law to require proof that the Cox user downloaded and distributed "the entire alleged infringing content" rather than 90-100% of the file, which was the threshold used here. The list goes on.

## BACKGROUND

**A. Dr. Feamster Agrees with Ms. Frederiksen-Cross on the Technical Background**

Dr. Feamster's report provides a technical background on Internet technology, peer-to-peer file sharing, MarkMonitor, and Audible Magic that actually supports Plaintiffs' case, reinforcing the underpinnings to Ms. Frederiksen-Cross's opinions.[1] *See* Decl. of Jeffrey M. Gould in Supp. of Pls.' Mot. to Preclude Certain Expert Testimony By Dr. Nick Feamster ("Gould Decl.") Ex. 1, ¶¶ 49-127 (Rebuttal Expert Report of Dr. Nick Feamster, Ph.D., May 15, 2019 ("Feamster Rept.")). Dr. Feamster testifies that hash values are unique representations of the contents of a digital file. Gould Decl. Ex. 2, 186:13-187:11 (Deposition Transcript of Dr. Nicholas Feamster, Ph.D., May 29, 2019 ("Feamster Tr.")). Two files with the same hash value should have the same content. *Id.* 190:7-24.

Dr. Feamster testified that  Gould Decl. Ex. 1, ¶ 71 (Feamster Rept.); *see also id.* ¶ 67; Gould Decl. Ex. 2, 198:4-200:15 (Feamster Tr.) . Dr. Feamster further testified that, *Id.* 201:6-16.

---

[1] Although Dr. Feamster quibbles over some terminology and level of detail, those criticisms of Ms. Frederiksen-Cross are at the margins, at best.

2

In the context of BitTorrent, peers report within a set of data called a "Bitfield" the portions of the content files that they have downloaded and have on their computer for others to download. *See id.* 203:13-204:7. Dr. Feamster did not analyze the Bitfield evidence in this case, nor does he dispute Ms. Frederiksen-Cross's testimony that, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See id.* 273:8-279:16.

### B. Dr. Feamster's Opinions and Analysis

Dr. Feamster prepared his report and testified at deposition before Cox deposed Plaintiffs' experts and MarkMonitor. As a result, it is unclear whether he has backed off some of his opinions at issue in this motion. In any event, Dr. Feamster opined that, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Gould Decl. Ex. 1, at 4, Executive Summary (Feamster Rept.). He asserted that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* ¶¶ 32, 35. He also tried to raise doubts about Audible Magic's accuracy, speculating that 1-2% of the identifications could be false positives and that its database of reference fingerprints may be of questionable provenance. *See id.* ¶¶ 36-38, 169. Finally, he contended that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* ¶¶ 24, 26; Gould Decl. Ex. 2, 279:17-301:14 (Feamster Tr.).



## ARGUMENT

### I. LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Under Rule 702, scientific, technical, or other specialized knowledge may be presented to the jury by an

3

expert witness if: (1) it is potentially helpful to the jury; (2) it is based on sufficient facts or data; (3) it is the product of reliable principles and methods; and (4) the testimony is applied to the facts of the case. Fed. R. Evid. 702. The "touchstone of the rule is whether the testimony will assist the jury." *United States v. Offill*, 666 F.3d 168, 175 (4th Cir. 2011).

Trial courts act as gatekeepers to ensure that expert testimony is reliable and relevant. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). The Court must determine if the "reasoning or methodology underlying the expert's proffered opinion is reliable" and "whether the opinion is relevant to the facts at issue." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 260 (4th Cir. 1999).

The burden is on the party proffering the expert to prove by a preponderance of the evidence that the expert's testimony is admissible and that the requirements of the Federal Rules of Evidence are satisfied. *See Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001); *Daubert*, 509 U.S. at 592 n.10. Rule 403 provides that relevant evidence may still be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

## II.    DR. FEAMSTER'S TESTIMONY IS UNRELIABLE, MISLEADING, AND WILL NOT ASSIST THE JURY

The objective of *Daubert*'s gatekeeping requirement is to ensure that an expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it." *Daubert*, 509 U.S. at 595. "Because of this risk, the judge in weighing possible prejudice against

4

probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses." *Id.*

Here, Dr. Feamster's testimony regarding MarkMonitor's downloads, MarkMonitor's use of Audible Magic, and the accuracy of Audible Magic is not "a product of reliable principles and methods," let alone ones applied "reliably to the facts of the case." *See* Fed. R. Evid. 702. His testimony does not rest on a reliable foundation nor is it relevant. It is misleading, unfairly prejudicial, will not assist the jury, and should be excluded.

### A. MarkMonitor's Downloads

Dr. Feamster has no factual basis to opine that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Gould Decl. Ex. 1, at 4, Executive Summary (Feamster Rept.). This opinion is a deceptive and contrived assertion conclusively contradicted by the evidence. Indeed, Dr. Feamster acknowledged that MarkMonitor's process ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See id.* ¶ 88, last bullet & n.35.[2]

Dr. Feamster's true point merely appears to be that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See id.* Dr. Feamster clarified as such at his deposition, stating that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Gould Decl. Ex. 2, 226:4-229:23, 233:12-234:18 (Feamster Tr.). In that same deposition, Dr. Feamster expressly disavowed any testimony to the effect that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[2] In addition, MarkMonitor confirmed that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Gould Decl. Ex. 3, at ¶ 15 (Decl. of Sam Bahun in Supp. of Pls.' Mot. for Summ. J.).

█████████████████ *Id.* 227:5-227:21.  Accordingly, Dr. Feamster must not be allowed to offer baseless testimony that ███████████████████████████████████████████████ ████████████████.

### B. MarkMonitor's Use of Audible Magic

Dr. Feamster has no factual basis to opine that ███████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████ *See* Gould Decl. Ex. 1, ¶¶ 32, 35 (Feamster Rept.).  Dr. Feamster so concludes only because he refuses to utilize ███████ ██████████████. *See* Gould Decl. Ex. 2, 347:25-352:9 (Feamster Tr.).

In discovery, Plaintiffs and MarkMonitor produced data containing the Audible Magic identifications for the copyrighted works in this case.  In particular, the document bearing bates number Plaintiffs_00286431 is an Excel Workbook with ██████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████. Gould Decl. Ex. 3, at ¶ 23 (Decl. of Sam Bahun in Supp. of Pls.' Mot. for Summ. J. ("Bahun Decl."); *see* Gould Decl. Ex. 4, ¶ 23 (Report of George P. McCabe, Ph.D., April 10, 2019 ("McCabe Rept.")).  Both Plaintiffs' expert George McCabe and Cox's expert Christian Tregillis used this data in connection with their analyses to confirm that █████████████████████ ██████. Gould Decl. Ex. 4, ¶¶ 13, 16(d), 23 & Appx. 2 (McCabe Rept.); Gould Decl. Ex. 5, ¶¶ 9-13 (Supplemental/Rebuttal Expert Report of Christian Tregillis, dated May 15, 2019

("Tregillis Rept.")).³ This evidence conclusively demonstrates that MarkMonitor matched every work at issue in this case by using Audible Magic.

Dr. Feamster inexplicably casts this evidence aside. Only by burying his head in the sand was Dr. Feamster able to opine that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ He relied solely on a spreadsheet ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Gould Decl. Ex. 2, 204:8-210:5, 347:25-352:9 (Feamster Tr.). Cox did not show ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and thus the spreadsheet was *never authenticated or explained*.⁴ *See id.* 210:6-24. Audible Magic testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Gould Decl. Ex. 6, 173:21-177:19 (Rule 30(b)(6) Deposition Transcript of Vance Ikezoye for Audible Magic, dated May 6, 2019 ("Audible Magic Tr.")). Audible Magic testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* 138:6-144:3, 175:8-178:11.

Giving up the game, Dr. Feamster concedes that, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Gould Decl. Ex. 1, ¶ 33 (Feamster Rept.). At trial, Dr. Feamster must not be allowed to confuse and mislead the jury with the specious contention that there is an absence of Audible Magic identifications for the works in suit, while another Cox

---

³ Plaintiffs_00286431 and Plaintiffs_00286281 are the same document, except that Plaintiffs_00286431 contains additional metadata requested by Cox.

⁴ The unexplained ▮▮▮▮▮ spreadsheet ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

7

expert, Mr. Tregillis, uses the very "absent" Audible Magic identifications in his analysis. The evidence that Dr. Feamster inexplicably disregards conclusively sets forth the Audible Magic identifications for the works.

Dr. Feamster's analysis patently fails to meet any of the *Daubert* requirements. It is not based on any reliable methodology or the facts in the case. He should not be able to walk into court to say there is no evidence when his "basis" for saying so is nothing more than a stubborn refusal to look at the actual evidence.

### C. Accuracy of Audible Magic

Dr. Feamster casts aspersions . *See* Gould Decl. Ex. 1, ¶¶ 36-38, 169 (Feamster Rept.). He adds that ▬▬▬. *See id.* ¶ 169. He even postulates that, ▬▬▬ *See id.* ¶ 36. Yet, despite having access to all of the evidence in this case, none of Dr. Feamster's testimony on Audible Magic is based on any of that evidence or any analysis of Audible Magic. His testimony on Audible Magic is unreliable, purely speculative, and should be precluded.

First, in matters stretching well over a decade, numerous courts have recognized the use of the Audible Magic software as a proper method to match an infringing file with a copyrighted work. *See*, *e.g.*, *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1012 (9th Cir. 2013) ("Audible Magic's technology takes audio 'fingerprints' from video files and compares them to a database of copyrighted content provided by copyright holders."); *Capitol Records, LLC v. Escape Media Grp., Inc.*, No. 12-cv-6646 (AJN), 2015 WL 1402049, at *23 (S.D.N.Y. Mar. 25, 2015); *Arista Records LLC v. Myxer Inc.*, No. CV 08-03935 GAF (JCX),

2011 WL 11660773, at *5 (C.D. Cal. Apr. 1, 2011); *Arista Records LLC v. Lime Wire LLC*, No. 06 Civ. 05936 KMW, 2010 WL 10031251, at *6 (S.D.N.Y. Aug. 9, 2010); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1205-06 (C.D. Cal. 2007).  Dr. Feamster's speculation and theoretical possibilities constrained none of these decisions.

Audible Magic has indicated that, in the time frame at issue in this case, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  Gould Decl. Ex. 6, 75:14-76:7 (Audible Magic Tr.).  Dr. Feamster did not measure the extent to which the Audible Magic technology has yielded any false positives, nor has he found even a single instance of one.  *See* Gould Decl. Ex. 2, 257:25-260:24, 372:5-373:15 (Feamster Tr.).  Nonetheless, Dr. Feamster opines that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Gould Decl. Ex. 1, ¶¶ 37, 39 (Feamster Rept.).

In contending that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Dr. Feamster makes clear that his principles and methods in this case are unreliable and will not assist a jury.  To be clear, Dr. Feamster has not identified a single error in Audible Magic's identifications.  Nor has he found any shortfalls in Audible Magic's software.  Instead, Dr. Feamster resorts to mere speculation and conjecture.  Dr. Feamster's claim is that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  In reality, his mind was made up before the case began, and it is all based on fatally flawed logic.

Years ago, Dr. Feamster reviewed an audio fingerprinting technology called Echoprint in connection with an advocacy paper he co-authored entitled "The Limits of Filtering."  *See* Gould Decl. Ex. 7, Ex. 149 (Evan Engstrom and Nick Feamster, Engine, *The Limits of Filtering: A look at the Functionality & Shortcomings of Content Detection Tools* (March 2017)).  Dr. Feamster



9

failed ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See id.* 74:3-74:24. It turns out, however, that Dr. Feamster ▮▮▮▮▮▮▮▮ to write the paper on behalf of a policy organization named Engine, which exists "to harness the political power of the startup and tech communications." *Id.* 122:17-128:2; Gould Decl. Ex. 8 (Engine, *About Engine*, https://www.engine.is/about-old (last visited Aug. 26, 2019)).

Dr. Feamster's co-author is the executive director of the organization, and the paper attempted to persuade Congress not to enact legislation that would require intermediaries to require platforms to filter content. *See* Gould Decl. Ex. 2, 130:9-133:7 (Feamster Tr.). Dr. Feamster told Congress that "complex fingerprinting tools that examine the underlying contents of a file . . . suffer from regular false positives" (*id.* 138:16-139:11), and ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ (*id.* 150:15-151:2).

In deposition, Dr. Feamster testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See id.* 141:6-22. Dr. Feamster testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See id.* 151:4-152:11. Dr. Feamster attempted to justify his assertions in the paper merely by arguing that ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* 152:13-154:15.

It gets worse from there. Dr. Feamster proceeded to explain that ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

■. *Id.* 154:6-160:23. But Dr. Feamster admits he does not know ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■. *Id.* 155:6-159:15. Dr. Feamster also admits he does not know ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■. *See id.* 159:16-175:7. Finally, ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■. *See id.* 355:7-368:7. Nonetheless, he divines that ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■. This analytical leap lacks a reliable foundation and must not be allowed at trial.[5]

Second, Dr. Feamster speculates that ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■. *See* Gould Decl. Ex. 1, ¶ 169 (Feamster Rept.). The Audible Magic content identification technology compares a fingerprint of a suspect infringing file against a fingerprint of the authentic original stored in a reference database. Dr. Feamster's expert report conflates ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■. *See id.* At deposition, he shied away from the assertion, indicating

---

[5] Cox's and Dr. Feamster's attacks on MarkMonitor and Audible Magic are even more confounding given that copies of the infringing audio files have been produced in discovery but not considered by them. In discovery, Plaintiffs produced copies of the infringing files pertaining to the hash values cited in Plaintiffs' infringement notices to Cox. Plaintiffs produced those files on a hard drive, and anyone can listen to the audio recordings. This is laid out in Dr. McCabe's expert report. *See* Gould Decl. Ex. 3, ¶¶ 13, 16(d), 23 & Appx. 2 (McCabe Rept.). In deposition, Cox did not ask Dr. McCabe or MarkMonitor any questions concerning the hard drive. Dr. Feamster claimed that ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■. Gould Decl. Ex. 2, 234:19-245:21, 251:5-257:5 (Feamster Tr.). Yet, had Dr. Feamster compared the file sizes in the documents bearing bates number Plaintiffs_00286431 ("Audible Magic Data") and Plaintiffs_00286432 ("Download Data"), both of which were used by Dr. McCabe and Mr. Tregillis, he would have found the files matched the sizes of the files on the hard drive. *See* Gould Decl. Ex. 3, ¶¶ 23-24 (Bahun Decl.); Gould Decl. Ex. 4, ¶¶ 23, 27 (McCabe Rept.); Gould Decl. Ex. 5, ¶ 13 (Tregillis Rept.).

11

███████████████████████████████████████████████████████

███████████████████████████████████████████ *See*

Gould Decl. Ex. 2, 373:16-380:22 (Feamster Tr.). He should not be allowed to offer this confused testimony and speculation at trial.

Third, Dr. Feamster speculates that the ████████████████████████ ██████████████████. He contends that ██████████████████████ ████████████████████████████████████ Gould Decl. Ex. 1, ¶ 36 (Feamster Rept.). Of course, Dr. Feamster is not allowed to testify about what amounts to "true infringement" under the law. The Court instructs the jury on the law, not Dr. Feamster. Nor does he have any grounds to believe that the downloads and distributions in this case have anything to do with ████████████████████████████ This testimony, which is speculative and not tied to the actual evidence in the case, must be precluded.

### D. Pretextual Reasons for Demanding Contemporaneous Downloads

Dr. Feamster offers several improper arguments for why ████████████ █████████████████████████████████████ *See* Gould Decl. Ex. 1, ¶ 24 (Feamster Rept.). None of Dr. Feamster's rationales has a factual basis in this case. Litigation exists in a world of probabilities. His academic theory, without application to the evidence, is irrelevant. It also conflicts with the law.

First, Dr. Feamster contends that ████████████████████████████ ████████████████████████████████. *Id.* ¶¶ 24, 26 (Feamster Rept.). But Dr. Feamster's testimony is premised on an improper legal assumption: that there is no infringement unless has 100% of the infringing file on their computer. The law says otherwise. *See*, *e.g.*, *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1034 (9th Cir. 2013) (affirming grant of summary judgment for infringement on BitTorrent). Dr. Feamster's

opinion also completely ignores the evidence. The uncontested evidence shows that the Cox subscribers that MarkMonitor reported for infringement had 90-100% of the infringing file. Moreover, BitTorrent works by breaking files into pieces and, per Dr. Feamster, individuals ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Gould Decl. Ex. 1, ¶ 76 (Feamster Rept.). Dr. Feamster must not be allowed to attempt to offer this testimony, improperly aimed at jury confusion.

Second, Dr. Feamster offers conjecture that, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Gould Decl. Ex. 2, 279:17-301:14 (Feamster Tr.). This testimony appears nowhere in his report, and, on that basis alone, he should be precluded from offering it at trial. Had he included it is his report, it still does not pass muster for admissibility. Dr. Feamster can say only ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *See id.* 285:9-288:21. He cannot point to a single instance in this case where he has a reason to believe it actually happened. *See id.* 290:11-301:1. Dr. Feamster relies on his "expertise" and unnamed research by others for the possibility that a peer will lie, without any sense of how likely that is to happen. Ultimately, Dr. Feamster even conceded that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Id.* 306:9-313:20. There is no reason to believe that such inaccuracy occurred here.

## CONCLUSION

For the reasons set forth herein, pursuant to Rules 702, 703, and 403, Dr. Feamster should be precluded from contending that the files in Plaintiffs' infringement notices to Cox did not contain copies of Plaintiffs' sound recordings and musical compositions. In particular, Dr. Feamster should be barred from:

(1) Testifying that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

(2) Testifying that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮;

(3) Testifying against ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

(4) Testifying that proof of infringement (whether reproduction or distribution) requires a contemporaneous download at the time of each infringement notice and/or that the alleged infringer has 100% of the infringing file.