# Exhibit 4

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| **BMG RIGHTS MANAGEMENT (US) LLC, and ROUND HILL MUSIC LP** | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:14-cv-1611(LO/JFA) |
| **COX COMMUNICATIONS, INC., COXCOM, LLC** | ) ) ) | **REDACTED PUBLIC VERSION** |
| Defendants. | ) ) | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF ITS MOTION
TO EXCLUDE PORTIONS OF THE EXPERT REPORT AND
<u>LIMIT THE TRIAL TESTIMONY OF COX'S EXPERT WILLIAM ROSENBLATT</u>**

and therefore, Mr. Rosenblatt plainly lacks the necessary expertise for his opinions to be of any assistance to the trier of fact. *See Yates v. Ford Motor Co.*, No. 5:12-CV-752-FL, 2015 WL 3448905, at *5 (E.D.N.C. May 29, 2015) (excluding medical expert where expert failed to explain how "these qualifications are linked with knowledge or experience in making recommendations to industry as to what actions or technology are effective or appropriate in the prevention of disease.").

Without the necessary expertise, Mr. Rosenblatt's testimony is no more helpful than the opinion of any other lay witness or juror – and it should not be admitted. *See United States v. McDonnell*, No. 3:14-CR-12, 2014 WL 2916721, at *1 (E.D. Va. June 26, 2014) ("[Defendant's expert] is no more qualified as an expert in assessing fraudulent intent than lay persons, making his proposed testimony unhelpful and inadmissible."); *see also Minn. Lawyers Mut. Ins. Co. v. Batzli*, No. CIV. 3:09CV432, 2010 WL 670109, at *2 (E.D. Va. Feb. 19, 2010) ("The Fourth Circuit has . . . held that where lay jurors are fully able to understand and appreciate the implications of the evidence admitted, proffered expert testimony will not assist the jury in determining a factual issue; and, is therefore inappropriate.") .

### ii. Mr. Rosenblatt's "Reasonable Implementation" Opinion Rests on Fatally Flawed Methodology

Mr. Rosenblatt opines that 

. *See e.g.*, J. Engle Decl. Ex. 1 § V

He bases his opinion on self-selected data that he concludes shows that Cox's procedures are effective at curbing allegedly infringing behavior. *See id.* ¶ 107

*id.*

¶¶ 108-09; Ex. 3 ¶¶ 47-56. Rosenblatt admits that in reaching his opinion he did not consider

7

whether Cox actually terminates repeat infringers in appropriate circumstances. J. Engle Decl. Ex. 5 at 39:12-45:20 (Rosenblatt 8/18/2015 Tr.). Because his methodology does not consider actual terminations and rests on his own unsupported methodology, his opinion is fatally flawed. *See Trademark Props., Inc. v. A&E Television Networks*, C.A. No. 2:06-cv-2195-CWH, 2008 U.S. Dist. LEXIS 87731, at *7-8 (D.S.C. Oct. 28, 2008) (excluding expert testimony because there was no "evidence that his methodology has been tested, no evidence that his methodology has been subjected to peer review and publication, no evidence regarding his methodology's known or potential rate or error, and no information regarding the acceptance of his methodology within the relevant community."), *aff'd*, 422 F. App'x 199 (4th Cir. 2011).

Section 512(i) plainly states that a service provider is eligible for the safe harbor only if it "has adopted and reasonably implemented . . . a policy that provides for the termination in appropriate circumstances of subscribers . . . who are repeat infringers." Actual termination of repeat infringers is thus central to any Section 512(i) analysis. *See, e.g.*, *Capitol Records, LLC v. Escape Media Grp., Inc.*, 12-CV-6646 (AJN), 2015 WL 1402049, at *12 (S.D.N.Y. Mar. 25, 2015) ("Therefore, the relevant question is whether [the defendant] actually terminates the uploading privileges of repeat infringers under appropriate circumstances."); *Disney Enter., Inc. v. Hotfile Corp.*, No. 11-20427-CIV, 2013 WL 6336286 at *9 (S.D. Fla. Sept. 20, 2013) ("Thus, while Hotfile claims to have acted to 'terminate, and stop payments to accounts of users with numerous complaints at content owners' request,' it has failed to cite evidence to support the proposition, explain the conditions that led it to target or terminate users, or rebut the Studios' account of user termination only by litigation." (citation omitted)).

However, Mr. Rosenblatt does not consider terminations or deem terminations relevant in rendering his opinion that Cox has reasonably implemented a repeat infringer termination policy

8

under Section 512(i). Nowhere in 178 pages of Mr. Rosenblatt's expert reports does Mr. Rosenblatt consider circumstances in which Cox actually terminated a subscriber for repeated copyright infringement. *See e.g.*, J. Engle Decl. Exs. 1, 2 and 3. Neither the circumstances behind nor the number of purported terminations impact Mr. Rosenblatt's opinion. ███

███ J. Engle Decl. Ex. 5 at 55:12-56:9 (Rosenblatt 8/18/2015 Tr.). When presented with ███

███ *Id*. at 109:11-20.

███ J. Engle Decl. Ex. 4 at 249:2-250:11 (Rosenblatt 8/5/15 Tr.).

Ignoring terminations, Mr. Rosenblatt instead rests his opinions on the irrelevant and inaccurate claim that Cox's procedures are effective at curbing alleged infringing behavior. *See* J. Engle Decl. Ex. 4 235:16-18 (Rosenblatt 8/5/15 Tr.) ███ *id.* at 238:12-17 ███ *id.* at 293:7 ███ [3] That data consists

---

[3] And a change in that data is the only way Mr. Rosenblatt would change his opinion. J. Engle Decl. Ex. 5 66:19-67:2 (Rosenblatt 8/18/15 Tr.) ███

9

of ███████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████ *See* J. Engle Decl. Ex. 1 ¶ 107; Ex. 3

¶¶ 51-53. According to Mr. Rosenblatt, ███████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████ *See* J.

Engle Decl. Ex 1 ¶ 107. Mr. Rosenblatt opines that █████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████. *See*

J. Engle Decl. Ex. 3 ¶¶ 51-53.

The data that Mr. Rosenblatt relies upon to form his ultimate opinion has nothing to do with whether Cox actually terminates repeat infringer in appropriate circumstances. Even if Cox's procedures are effective at curbing allegedly infringing behavior (which they are not), that is simply not the test for whether Cox has reasonably implemented a repeat infringer termination policy. *See, e.g.*, *Capitol Records*, 2015 WL 1402049, *12 ("Therefore, the relevant question is



███████████████████████████████████ *id.* at 68:16-18 ████████████████
████████████████████████ ; *id.* at 69:9-15 ████████████████████████████
████████ *id.* at 69:20-21 ████████████████████████████████ *id.* at 109:11-111:10 ██████████████████████████████████████████████████████████
████████████████████████████████████████████████ *id.* at 110:7-111:10
████████████████████████████████████████ ; *id.* at 112:3-112:15 █████
███████████████████████████████████████████████████.

10

whether [the defendant] actually terminates the uploading privileges of repeat infringers under appropriate circumstances.")

If permitted, Mr. Rosenblatt's testimony would rest on the legally irrelevant claim that Cox's procedures are effective at curbing allegedly infringing behavior. Mr. Rosenblatt should not be allowed to offer an opinion contrary to the law and the instructions that this Court will provide the jury. *See Chicago Title Ins.*, 1993 WL 27392, at *4 ("In a jury trial, because of the potential usurpation of the court's responsibility to state the meaning and applicability of the appropriate law and the jury's task to apply the appropriate law to the facts of the case, legal conclusions by an expert witness are inadmissible."); *Roche v. Lincoln Prop. Co.*, 278 F. Supp. 2d 744, 750 (E.D. Va. 2003) (finding expert's testimony inadmissible when opinion was based on unacceptable methodology).

### iii. Mr. Rosenblatt's Methodology Is also Unreliable Because He Fails to Consider Millions of Infringement Notices that Cox Ignores or Deletes

Mr. Rosenblatt's entire analysis of whether Cox's procedures are effective at curbing infringement is based on the number of infringement notices Cox accepted for its subscribers. J. Engle Decl. Ex. 1 ¶ 107 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *see also* Ex. 3 ¶ 51-56. He reached his conclusion by looking only at the notices that Cox accepted and took action on, while ignoring tens of millions of infringement notices that Cox deleted or ignored. Mr. Rosenblatt cannot ignore millions of infringement notices and reliably opine that the limited number of infringement notices for its customers shows its procedures are effective.

Further, Mr. Rosenblatt does not consider the effect on the data upon which he relies of Cox's various other procedures to ensure that the vast majority of copyright infringement notices fall into a vacuum and go unheeded. First, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

11