# Exhibit 5

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| BMG RIGHTS MANAGEMENT (US) LLC, and ROUND HILL MUSIC LP, <br><br> Plaintiff, <br><br> v. <br><br> COX ENTERPRISES, INC., COX COMMUNICATIONS, INC., and COXCOM, LLC, <br><br> Defendants. | Case No. 1:14-cv-1611 (LOG/JFA) |

**COX'S OPPOSITION TO PLAINTIFFS' MOTION TO
EXCLUDE PORTIONS OF THE EXPERT REPORT AND
LIMIT THE TRIAL TESTIMONY OF WILLIAM ROSENBLATT**

**NON-CONFIDENTIAL PUBLIC VERSION**

System does not mean that an ISP has not satisfied the provisions of the DMCA with respect to a termination policy, nor does election to participate mean that it has. And Mr. Rosenblatt does not intend to opine otherwise. But that does not render the Copyright Alert system irrelevant to the issues before the jury in this case.

Rather, the footnote leaves the question of the extent to which the Copyright Alert System has any bearing on the reasonableness of an ISP's implementation of its DMCA termination policy where it belongs—with the finder of fact. The jury is entitled to hear Mr. Rosenblatt's reasoned views on that question as one who has substantial knowledge of the history, details, and role in industry practices of the Copyright Alert System.

Nor does the fact that the Copyright Alert System does not require termination as one of its graduated steps render it irrelevant to the DMCA issues in this case, as plaintiffs insist. Mr. Rosenblatt will not testify that the Copyright Alert System implies that Cox need not terminate repeat infringers to satisfy the DMCA. Nor will he testify that doing more than the Copyright Alert System requires automatically satisfies the DMCA. But Cox's termination procedures, like all graduated response procedures, involve many steps and components, and comparison to the steps and components of a procedure agreed among major copyright holders and major ISPs is certainly relevant to the jury's evaluation of Cox's overall procedures and whether they reasonably lead to termination in appropriate circumstances.

I. **Effectiveness of Cox's Graduated Response Procedures at Addressing the Conduct that Gives Rise to Allegations of Copyright Infringement**

In connection with developing his primary testimony, Mr. Rosenblatt also renders certain opinions about the effectiveness of Cox's graduated response procedures. *See, e.g.*, Engle Dec., Ex. 3 at ¶¶ 45-58. Drawing upon his two decades of experience as a technologist in the digital

---

Engle Dec., Ex. 10 at 7; *see also id. at* 8 ("[I]n addition to these Mitigation Measures, the Participating ISP may also adopt, in appropriate circumstances. . . .").

rights realm, and his review of all the materials described in the sections above, Mr. Rosenblatt bases his analysis on an evaluation of Cox's *overall* process: "To judge the reasonableness of a service provider's implementation of a repeat infringer policy, it is therefore necessary to examine the overall process that the service provider uses to determine whether account holders are subject to termination 'in appropriate circumstances.'" Dkt. No. 390 at ¶ 67. In determining how to evaluate the "effectiveness" of Cox's graduated response procedures, Mr. Rosenblatt has decided to focus on "the effectiveness of the process in curbing allegedly infringing behaviors," given that Cox personnel have indicated that this was their concern when dealing with subscribers who were the subject of infringement complaints. Engle Dec., Ex. 3 at ¶ 47; *see, e.g.*, Dkt. No. 476 at ¶ 12. And, in determining what metric to use to evaluate how well Cox's procedures curb allegedly infringing behavior, he looks at suspensions as well as terminations.

Plaintiffs maintain that every one of Mr. Rosenblatt's methodological choice here is wrong. Rather than evaluate the overall process, Plaintiffs maintain he should have looked only at isolated, anecdotal cases of specific behavior. *See* Rosenblatt MTE at 9. Instead of considering effectiveness in terms of curbing allegedly infringing behaviors, which Plaintiffs deem "irrelevant," he should have considered only those circumstances in which Cox terminated (rather than suspended) an account holder.[24] *See id.* at 9-10. Although Plaintiffs may disagree with his conclusions, Mr. Rosenblatt's methodology for evaluating Cox's termination procedures is sound. The point of terminating repeat infringers is to stop them from engaging in further infringement. And the final step of Cox's graduated procedure is to terminate those account

---

[24] Plaintiffs' argument that curbing allegedly infringing is "irrelevant" to an ISP's reasonable implementation of a repeat infringer termination policy just reinforces that this case has never been about stopping infringement of Plaintiffs' copyrights; rather, it has focused only on termination, and in particular monetizing the threat of termination of Internet access based on unverifiable allegations of infringement.

25

holders for whom the other steps have failed to curb the allegedly infringing behavior. But in Mr. Rosenblatt's view, a well-designed graduated response procedure will aim to stop allegedly infringing behavior, through escalating consequences, without relying solely on the drastic final step of termination. If a procedure is effective at doing so, a small number of terminations may nevertheless reflect circumstances in which it was ultimately appropriate to impose a termination. For these reasons, Mr. Rosenblatt examined both suspensions (penultimate steps before terminations) and terminations, and the relationship between the two, to make an assessment of whether Cox's procedures were eliminating allegedly infringing behavior before reaching the termination step. Mr. Rosenblatt makes clear the basis and rationale of his methodology as well as the conclusions he draws based on that methodology. Again, just because Plaintiffs disagree with his ultimate *conclusions* does not render *his principles and methodology* unreliable. *See Daubert*, 509 U.S. at 595. Plaintiffs also attack Mr. Rosenblatt for purportedly "cherry pick[ing] 'evidence' to conclude that Cox has reasonably implemented a repeat infringer termination policy." Rosenblatt MTE at 5. (In doing so, they simultaneously "cherry pick" the evidence that they contend Mr. Rosenblatt should have given greater weight.)

  The very nature of these disputes demonstrates exactly why Mr. Rosenblatt's ultimate opinion on the effectiveness of Cox's termination procedure can be adequately tested by vigorous cross-examination in front of a jury. *See ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, No. 2:10-cv-00248, 2011 WL 7036049, *3 (E.D. Va. July 15, 2011) (holding that defendant's argument that damages expert "cherry-picked" certain agreements in establishing a reasonable royalty rate went "to the weight and not the admissibility of [the expert's] testimony"). A jury can (and should) consider whether Mr. Rosenblatt (and Cox) appropriately considered effectiveness in terms of "curbing allegedly infringing behavior," or whether he should have instead focused only

26

on the number and specific circumstances of each individual termination. Similarly, a jury can decide what weight Mr. Rosenblatt should have given to Plaintiffs' evidence on isolated cases. *See Westberry*, 178 F.3d at 265; *Kannankeril,* 128 F.3d at 809.

Because Mr. Rosenblatt fully discloses his extensive basis and methodology for his testimony that Cox's graduated response procedures, taken as a whole, are effective at curbing the incidence of alleged infringement, the Court should allow Mr. Rosenblatt to offer this this to the jury.

### J.  Rebuttal of Opinions by Plaintiffs' Putative Industry Expert

Finally, Mr. Rosenblatt will offer testimony rebutting the opinions offered by Plaintiffs' putative industry expert, Dr. McGarty. Dr. McGarty offers various opinions about  *See* Dkt. No. 464, Ex. A at ¶ 15. Mr. Rosenblatt responds to all of these arguments in his expert reports. *See* Engle Dec., Ex. 2 at ¶¶ 110-130; Ex. 3 at ¶¶ 59-65, 72-80, 94-100. Mr. Rosenblatt's basis for his rebuttal testimony comes from his review of Cox's internal technical documentation about Cox's graduated response procedures; his analysis of CATS, its source code, and related documentation; and his review of the deposition testimony of Cox personnel. Plaintiffs do not appear to challenge the admissibility of Mr. Rosenblatt's rebuttal testimony on these subjects, and the Court should allow Mr. Rosenblatt to testify to these matters if it decides to admit the testimony of Dr. McGarty. If this Court were to

27