# Exhibit 6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| BMG RIGHTS MANAGEMENT ) <br> (US) LLC, and ROUND HILL ) <br> MUSIC LP ) <br>     ) <br>     Plaintiffs, ) <br>     ) <br> v.     ) <br>     ) <br> COX COMMUNICATIONS, INC., ) <br> COXCOM, LLC ) <br>     Defendants. ) <br>     ) | Case No. 1:14-cv-1611(LO/JFA) |

**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO MOTION
TO EXCLUDE PORTIONS OF THE EXPERT REPORT AND
LIMIT THE TRIAL TESTIMONY OF ROSENBLATT**

After reading Mr. Rosenblatt's nearly 50 page declaration summarizing his various "opinions" in this case, this Court correctly concluded that that Mr. Rosenblatt should be excluded. Dkt. No. 509 at 4:7-8 (Transcript, Oct. 30, 2015 Hearing on Summary Judgment) ("So in terms of whether you thought perhaps Mr. Rosenblatt would be a witness at trial, he won't be." (J. O'Grady)). Cox spends nearly 30 pages of briefing trying to rehabilitate Mr. Rosenblatt in the hope that something will stick. Cox's opposition, however, highlights why the motion to exclude should be granted. Rosenblatt cannot set forth the law, slavishly recite all the facts Cox wants to the jury to find (whether or not he has personal knowledge), and then apply those facts to the law. His proposed testimony usurps the role of the Court in instructing the jury on the law, and the role of the jury in applying the facts to the law. Such purported expert testimony is not appropriate on any issue, let alone virtually every issue in this case.

1

attempting to use legal experts to prove that liability and causation have been established and to interpret statutory language, Plaintiffs would effectively usurp the function of the trier of fact in this case.") (excluding expert reports and experts from Plaintiffs' witness list); *Basketball Mktg. Co. v. Steve & Barry's Univ. Sportswear,* Civ. A. No. 07-716, 2008 WL 5586141, at *1 n.2 (E.D. Pa. June 30, 2008) (excluding purported expert testimony on governing law on copyright and trademark disputes and corresponding legal conclusions).

Even if these legal conclusions were proper expert opinions – and they are not – Mr. Rosenblatt lacks the requisite qualifications to make them. As explained in Plaintiffs' opening brief, Mr. Rosenblatt, a software engineer and self-proclaimed digital rights management expert, is not a lawyer, copyright expert, or otherwise competent to opine whether Cox has reasonably implemented a repeat infringer termination policy under the DMCA. *See* Dkt. No. 450 at 4-7. In its opposition, Cox brands Mr. Rosenblatt a "technologist," but does not explain how being a technologist qualifies him to testify about the legal requirements of the DMCA or whether Cox has met them. It does not. *See* Dkt. No. 509 at 3:20-21 ("Mr. Rosenblatt is not qualified to make judgments about the law." (J. O'Grady)). Mr. Rosenblatt is no more qualified than the jury to assess the evidence under the law, on which the Court will instruct, and his opinions and testimony should be excluded. *See United States v. McDonnell*, No. 3:14-CR-12, 2014 WL 2916721, at *1 (E.D. Va. June 26, 2014) ("[Defendant's expert] is no more qualified as an expert in assessing fraudulent intent than lay persons, making his proposed testimony unhelpful and inadmissible.").

### b. *Mr. Rosenblatt's "methodology" contradicts the law and is unreliable.*

Not only are Mr. Rosenblatt's opinions about the DMCA safe harbor improper legal conclusions, they contradict the law and are unreliable. Despite the DMCA expressly requiring

4

termination of repeat infringers, Mr. Rosenblatt never considered whether Cox terminated any repeat infringers in any circumstances. *See* Dkt. No. 452 Ex. 4 at 55:12-56:9 (Rosenblatt 8/5/2015 Tr.) (testifying that it would not affect his opinion if Cox was "not really terminating subscribers for alleged copyright infringement notices."). Cox does not contend otherwise, but instead insists that it is proper for Mr. Rosenblatt to determine whether Cox reasonably implemented a repeat infringer termination policy based on whether, in Mr. Rosenblatt's opinion, Cox's procedures are effective at reducing infringement. *See* Dkt. No. 597 at 25. That is simply not the law and not the proper test. *See, e.g.*, *Capitol Records, LLC v. Escape Media Grp., Inc.*, 12-CV-6646 (AJN), 2015 WL 1402049, at *12 (S.D.N.Y. Mar. 25, 2015) ("Therefore, the relevant question is whether [the defendant] actually terminates the uploading privileges of repeat infringers under appropriate circumstances.").

    Mr. Rosenblatt's proposed testimony – that Cox reasonably implemented a repeat infringer termination policy because, in his opinion, Cox's procedures were effective at curbing infringement – would unquestionably confuse the jury about what the law is and how to apply it, along with usurping the role of the Court. *See Chicago Title Ins. Co.*, 1993 WL 27392, at *4 ("In a jury trial, because of the potential usurpation of the court's responsibility to state the meaning and applicability of the appropriate law and the jury's task to apply the appropriate law to the facts of the case, legal conclusions by an expert witness are inadmissible.") (citing *Adalman*, 807 F.2d at 366-68); *Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988) ("By permitting the jury to hear this array of legal conclusions touching upon nearly every element of the plaintiffs' burden of proof . . . the trial court allowed the exception to supplant both the court's duty to set forth the law and the jury's ability to apply this law to the evidence.").

In addition to being improper legal conclusions that use the wrong legal test, Rosenblatt's opinions should also be excluded because the "methodology" he used to assess the purported effectiveness of Cox's policy is unreliable and will be highly prejudicial if presented to the jury. As explained in Plaintiffs' opening brief, Mr. Rosenblatt – who is *not* a statistician – analyzes Cox data on the number of subscribers that reach the suspensions level of Cox's graduated response, and based on those statistics, concludes that Cox's procedures are effective at curbing infringement. *See* Dkt. No. 450 at 5-13. One fatal flaw in Rosenblatt's "methodology" is that he does not consider the millions of infringement notices that Cox filters out and never acts upon. *Id.* at 11-13. Notably, Cox failed to refute the unreliability of Mr. Rosenblatt's statistical analysis.

Cox's policy is effective at one thing – virtually guaranteeing that no subscriber is terminated. Mr. Rosenblatt should not be permitted to don an expert hat and tell the jury otherwise based on incomplete data, flawed methodology, and a false statistical analysis.

## II. Mr. Rosenblatt should not be allowed to testify about "facts" for which he does not have personal knowledge.

### a. *Mr. Rosenblatt does not have any personal or specialized knowledge about how other ISPs handle DMCA notices.*

As explained in Plaintiffs opening brief, Mr. Rosenblatt's "knowledge" of the actions of other ISPs is limited to his general use of the internet and his reading of publically available documents. *See* Dkt. No. 452 Ex. 4 at 25:4-26:12, 30:19-37:1 (Rosenblatt 8/5/2015 Tr.). Mr. Rosenblatt has never been employed by an ISP. *See* Dkt. No. 452 Ex. 11. He has no knowledge about the *actual* internal implementation of other ISPs' DMCA policies. *See* Dkt. No. 452 Ex. 4 at 25:4-16, 30:3-32:21 (Rosenblatt 8/5/2015 Tr.). He has never spoken to or communicated in anyway with anyone at the other ISPs concerning how the ISPs handle DMCA complaints. *Id*. at

6