## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

SONY MUSIC ENTERTAINMENT, *et al.*,

        Plaintiffs,

   v.

COX COMMUNICATIONS, INC. and
COXCOM, LLC.

        Defendants.

Case No. 1:18-cv-00950-LO-JFA

## COX'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO EXCLUDE THE TESTIMONY OF PUTATIVE EXPERT GEORGE P. McCABE, Ph.D.

## REDACTED VERSION

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................... 1

II.     LEGAL STANDARD.................................................................................... 2

III.    BACKGROUND ........................................................................................... 3

    A.      Procedural Background.......................................................................... 3

    B.      Professor McCabe's Professional and Academic Experience ................ 4

    C.      Plaintiffs' Theory of the Case and Professor McCabe's "Task" ........... 4

    D.      Professor McCabe's "Opinions" and "Findings" Regarding the Datasets ............ 6

    E.      Professor McCabe Does Not Rebut Mr. Tregillis.................................. 8

IV.     ARGUMENT.................................................................................................. 9

    A.      Any testimony related to Professor McCabe's "task" is inadmissible under Federal Rule of Evidence 702.................................................................... 9

        1.      Professor McCabe did not rely on sufficient facts or data to perform his "task."....................................................................... 9

        2.      Allowing Professor McCabe's testimony at trial would be prejudicial to Cox.................................................................... 14

    B.      Professor McCabe should be precluded from testifying about his "Summary of Opinions," "Findings," and any other observations irrelevant to his task. .................................................................... 15

    C.      Professor McCabe should not be permitted to present an opinion regarding the number of times works were infringed. .......................................... 17

    D.      Professor McCabe should not be permitted to rebut Mr. Tregillis's opinions regarding Plaintiffs' purported harm or Dr. Feamster's opinions regarding MarkMonitor's data. .......................................................... 18

V.      CONCLUSION.......................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alevromagiros v. Hechinger Co.*,
　993 F.2d 417 (4th Cir. 1993) ...................................................................9

*Antekeier v. Lab. Corp. of Am.*,
　No. 1:17-CV-786, 2018 WL 3028609 (E.D. Va. May 1, 2018) ................................9

*Daubert v. Merrell Dow Pharms, Inc.*,
　509 U.S. 579 (1993)................................................................2, 3, 14

*Gen. Elec. Co. v. Joiner*,
　522 U.S. 136 (1997)................................................................9, 14

*Kumho Tire Co. v. Carmichael*,
　526 U.S. 137 (1999)................................................................2

*Palmer v. Big Lots Stores, Inc.*,
　No. 3:14-CV-276, 2015 WL 165315 (E.D. Va. Jan. 12, 2015) ................................9

*Small v. WellDyne, Inc.*,
　927 F.3d 169 (4th Cir. 2019) ...................................................................2

*United States v. Dorsey*,
　45 F.3d 809 (4th Cir. 1995) ...................................................................9

*United States v. Lester*,
　254 F. Supp. 2d 602 (E.D. Va. 2003) ...............................................3, 14

**Other Authorities**

Fed. R. Evid. 402 ...................................................................1, 15

Fed. R. Evid. 403 ...................................................................1, 15

Fed. R. Evid. 702(a) ...................................................................1, 2, 9, 15

## I.    INTRODUCTION

Pursuant to Federal Rules of Evidence 702, 402, and 403, Cox respectfully requests that the Court exclude, in their entirety and for any purpose, the opinions and testimony of Plaintiffs' putative expert George P. McCabe, Ph.D.

*First*, Professor McCabe's opinions and testimony are impermissibly based on insufficient facts and data.   Professor McCabe's "task" in this case was to determine ████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████████████████.   This is a key allegation in support of Plaintiffs' claims.   In order to do this, Professor McCabe relied on a spreadsheet purporting to show which of the songs listed in the notices were allegedly contained on each torrent file allegedly infringed by Cox's subscribers, and confirming that the content of the torrent file was, in fact, a work in suit.   But the MarkMonitor data Professor McCabe relied on to this end is indisputably unverifiable because the source data upon which it was based is no longer available.[1]   And to the extent that some of the source data is available, it is inconsistent with the summary data on which Professor McCabe relied, but he was not made aware of the discrepancy and, hence, made no effort to reconcile the datasets.   Had he done so, he would have learned that much of the data he used is severely flawed.   These facts render his opinion unreliable and therefore inadmissible as a matter of law.

*Second*, Professor McCabe includes in his report a smattering of observations regarding the parties' spreadsheets—observations that ██████████████████████████████████

---

[1] Indeed, one critical piece of evidence (the spreadsheet purporting to demonstrate that the notices are accurate) is subject to Cox's pending motion for discovery sanctions before Judge Anderson, as the underlying data was spoliated.   Thus, there is no way to verify whether this summary spreadsheet is accurate.   *See* ECF Nos. 238-239.



█████. Professor McCabe instead explained that ██████████████████████████

████████████████████████████████████████████████████████████████████████

██████████████████. He also admits that ████████████████████████████████

████████████████. Thus, any "opinion" from him regarding these observations (and the

observations themselves) are not the appropriate subject matter of expert testimony.  These

observations are not relevant, pose a substantial risk of confusing the jury, and are not permissible

expert testimony.  As such, they must be precluded.

*Third*, Professor McCabe should be precluded from rebutting the opinions of Christian

Tregillis and Dr. Nick Feamster.  Professor McCabe admitted at his deposition that ███████

████████████████████████████████████████████████████████████████████████

████████████. And because Professor McCabe failed to investigate the data upon which he relies,

some of which was indisputably demonstrated by Dr. Feamster to be faulty, Professor McCabe has

no basis to opine as to Dr. Feamster's findings regarding this data and what it does or does not

represent.

## II.    LEGAL STANDARD

"[O]n the most basic level, to be admissible, [] expert testimony must be 'scientific,

technical, or other specialized knowledge.'"  *Small v. WellDyne, Inc.*, 927 F.3d 169, 177 (4th Cir.

2019) (quoting Fed. R. Evid. 702(a)).  Moreover, expert testimony is only admissible if it "will

help the trier of fact to understand the evidence or determine a fact in issue … ."  Fed. R. Evid.

702(a).

Federal Rule of Evidence 702 requires a trial court to play a "gatekeeping role" in

evaluating whether proposed expert testimony should be admitted at trial.  *Daubert v. Merrell Dow

Pharms, Inc.*, 509 U.S. 579, 596-97 (1993); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137,

2

147 (1999). This "gatekeeping" function is important to the integrity of the trial process because "expert testimony often carries a certain aura that might lead a jury to attach more significance to the testimony than is reasonably warranted." *See United States v. Lester*, 254 F. Supp. 2d 602, 607 (E.D. Va. 2003); *see also Daubert*, 509 U.S. at 595 ("Because of this risk, the judge weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses.") (citations omitted).

## III.    BACKGROUND

### A.    Procedural Background

Professor McCabe issued his opening report on April 10, 2019. *See* Declaration of Thomas M. Buchanan in Support of Defendants' Motion to Exclude the Testimony of Putative Expert George P. McCabe, Ph.D. ("Buchanan Decl."), Ex. A (Report of George P. McCabe, Ph.D., dated April 10, 2019 ("McCabe Rpt.")). On May 15, 2019, Professor McCabe issued a rebuttal report in which he responded to the opening report of Christian Tregillis, which was also served on April 10, 2019. *See* Buchanan Decl., Ex. B (Expert Report of George P. McCabe, Ph.D., dated May 15, 2019 ("McCabe Rebuttal Rpt.")). On June 13, 2019, Professor McCabe served his reply report, in which he addressed critiques from both Mr. Tregillis and another Cox expert, Dr. Lynne Weber. *See* Buchanan Decl., Ex. C (Expert Supplemental/Reply Report of George P. McCabe, Ph.D., dated June 19, 2019 ("McCabe Reply Rpt.")).[2] Cox deposed Professor McCabe on June 20, 2019. *See* Buchanan Decl., Ex. D (June 20, 2019 Deposition Transcript of George P. McCabe, Ph.D. ("McCabe Dep. Tr.")).

---

[2] Professor McCabe issued a "corrected" reply report on June 19, 2019. The corrected report is attached as Exhibit C.

**B.**     **Professor McCabe's Professional and Academic Experience**

Professor McCabe is a statistics professor at Purdue University, where he has worked since receiving a doctorate in 1970. *See* Buchanan Decl., Ex. A (McCabe Rpt., App. 1). For the last 20 years, Professor McCabe has ███████████████████████████████████████ ████████████████████████████. Buchanan Decl., Ex. D (McCabe Dep. Tr. 73:9-77:2).

Professor  McCabe ████████████████████████████████████████ ██████████████████████████████████████████████████████ ███████████████████████████████████. *Id.* 44:5-45:19, 50:1-21, 51:11-52:17, 53:6-10, 55:16-20, 282:4-17.

**C.**     **Plaintiffs' Theory of the Case and Professor McCabe's "Task"**

Plaintiffs allege in their Complaint that they "seek relief for claims of infringement that accrued between February 1, 2013 through November 26, 2014, with respect to works infringed by Cox's subscribers *after* those particular subscribers were identified to Cox in multiple infringement notices." Am. Compl., ¶ 10 (emphasis in original). Referring to this allegation in his report, Professor McCabe was clear about his given "task":



Buchanan Decl., Ex. A (McCabe Rpt., ¶ 4); *see also* Buchanan Decl., Ex. D (McCabe Dep. Tr. 88:10-13) ████████████████████████████████████████████████ ██████████████████████████████"); Buchanan Decl., Ex. C (McCabe Reply Rpt., ¶ 8).

In order to perform this task, Professor McCabe worked with five basic spreadsheets, each of which was prepared by or for the parties specifically for this litigation. They are:

1. <u>Plaintiffs' Notice Data</u> – 

2. <u>Cox's Subscriber ID Data</u> –

3. <u>Ticket Action Data</u> –

4. <u>Audible Magic Data</u> –

5. <u>Lists of the Works-in-Suit</u> – These are the attachments to Plaintiffs' Complaint that list all of the sound recordings (by "track" and "artist") and music compositions (by "track")

---

[3] The Claim Period here is February 1, 2013 through November 26, 2014 for all Plaintiffs other than those in the Sony/ATV and EMI group, for which is August 1, 2013 through November 26, 2014.

[4] Professor McCabe also relies on a document that Audible Magic prepared for him that

. These exemplars were not necessarily downloaded from Cox subscribers, however. As discussed below, *see infra* § IV.A.1,

.

allegedly infringed in this case and for which Plaintiffs collectively seek relief.

Buchanan Decl., Ex. A (McCabe Rpt., ¶¶ 5, 17-39).  Professor McCabe did not ███████████████ ████████████████████████████████████████████████████████"  Buchanan Decl., Ex. D (McCabe Dep. Tr. 106:9-20, 122:18-21).  As demonstrated below, *see infra* § IV.A.1, the Audible Magic Data is both flawed and deficient, which renders Professor McCabe's opinion unreliable as a matter of law.

### D.     Professor McCabe's "Opinions" and "Findings" Regarding the Datasets

Professor McCabe also includes in his Opening Report a series of general observations about the parties' spreadsheets.  First, in his "Summary of Opinions" section, Professor McCabe states:



[5] In this same section, Professor McCabe states: "███████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████"  Buchanan Decl., Ex. A (McCabe Rpt., ¶ 16(c)).



Buchanan Decl., Ex. A (McCabe Rpt., ¶ 16(a)-(b), (d)-(f)).

Separately, in a section of his report titled "Findings," McCabe states:



- █████████████████████████████████████████

*Id.*, ¶¶ 47-52.  Professor McCabe explained at his deposition that ███████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████" Buchanan Decl., Ex. D (McCabe Dep. Tr. 169:6-14); *see also id.* 142:17-144:10,

159:11-160:12, 167:2-22, 175:2-176:4, 180:6-183:8, 190:11-191:3, 193:11-22, 197:5-16, 213:5-

216:10, 222:3-4.

### E.   Professor McCabe Does Not Rebut Mr. Tregillis.

Professor McCabe devotes a substantial portion of his rebuttal and reply reports responding

to █████████████████████████████████, which Mr. Tregillis performed

from the point of view of Plaintiffs' purported harm from the alleged proof of infringement in this

case.

Separately, though Professor McCabe readily admits that ███████████████

████████████████████████████████. *See, e.g.*, Buchanan

Decl., Ex. B (McCabe Rebuttal Rpt., ¶ 29) (stating that ████████████████████

███████████████████████████████████████████);

Buchanan Decl., Ex. C (McCabe Reply Rpt., ¶ 30) (opining that ████████████████

███████████████████████████████████████"). In

doing so, Professor McCabe appears to fail to grasp that Mr. Tregillis's analysis is directed at

Plaintiffs' purported harm (*i.e.*, damages).  Indeed, Professor McCabe ████████████

████████████████████████████████████. Buchanan

Decl., Ex. D (McCabe Dep. Tr. 44:5-45:19, 50:1-21, 51:11-52:17, 53:6-10, 55:16-20, 282:4-17).

## IV.   ARGUMENT

### A.   Any testimony related to Professor McCabe's "task" is inadmissible under Federal Rule of Evidence 702.

#### 1.   Professor McCabe did not rely on sufficient facts or data to perform his "task."

Rule 702 requires that for a putative expert's testimony to be admissible, it must rely on "sufficient facts or data." Fed. R. Evid. 702(b); *see also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("A court may conclude that there is simply too great an analytical gap between the data and the opinion offered."). When assessing whether an expert's testimony is based on "sufficient facts or data," the Advisory Committee "calls for a quantitative rather than qualitative analysis." Advisory Committee Note to Fed. R. Evid. 702(b) (2000). Moreover, [a]n expert's professional judgment, standing alone and without any supporting facts or data, is insufficient to support opinion testimony." *Antekeier v. Lab. Corp. of Am.*, No. 1:17-CV-786, 2018 WL 3028609, at *1 (E.D. Va. May 1, 2018) (citing *Alevromagiros v. Hechinger Co.*, 993 F.2d 417, 421 (4th Cir. 1993)); *see also United States v. Dorsey*, 45 F.3d 809, 815 (4th Cir. 1995); *Palmer v. Big Lots Stores, Inc.*, No. 3:14-CV-276, 2015 WL 165315, at *4 (E.D. Va. Jan. 12, 2015).

Here, Professor McCabe admits that ██████████████████████████████
████████████████████████████████████████████████████████████████
████████████████. Buchanan Decl., Ex. D (McCabe Dep. Tr. 106:9-20, 122:18-21); *see also* Buchanan Decl., Ex. A (McCabe Rpt., ¶¶ 11-13, 22-27). While this in itself may not always be the basis to exclude an expert, Professor McCabe's failures are fatal to his analysis in this instance. As discussed above, each RIAA Notice ████████████████████████████
████████████████████████████. *See supra* at 5. Audible Magic and MarkMonitor together created a document that purports to ████████████████████████████
████████████████████████████████████████████████████████████████

9



████████████████████████████████████████████████████████████████

█████████████████████████████████████████. *See also supra* at 5.  They

also created a hard drive that ████████████████████████████████████████████

███████████████.  But Professor McCabe *never checked* to determine whether the songs

listed as being associated with each torrent in the Audible Magic Data are indeed on the

corresponding torrent payload.[6]  In other words, he never bothered to look at the hard drive to see

if these representations in the data upon which he relied are accurate.  Buchanan Decl., Ex. A

(McCabe Rpt., ¶¶ 23, 26-27); Buchanan Decl., Ex. D (McCabe Dep. Tr. 122:5-21).

       Thus, when he █████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████.[7]  This is not a technicality.  McCabe purports to be Plaintiffs' expert on

infringement.[8]  If he cannot confirm that the spreadsheet data purporting to establish the alleged

infringement is accurate (*i.e.*, ██████████████████████████████████████████████

████████████████████████████████████████████████████████████████

---

[6] Specifically, Professor McCabe states that ████████████████████████████████████

████████████████████████████████████████████████."  Buchanan Decl., Ex. A
(McCabe Rpt., ¶ 26) (emphases in the original).  Notably, Professor McCabe did not check the
files on the hard drive.  Nor did he cite any data that otherwise demonstrates that it is accurate.
This is because there is none in this case.
[7] Professor McCabe opines that ████████████████████████████████████.  Buchanan Decl., Ex C
(McCabe Reply Rpt., ¶¶ 4, 8, 10, 19).
[8] *See, e.g.*, Buchanan Decl., Ex. D (McCabe Dep. Tr. 87:12-13) ("████████████████
████████████████████"); *id.* 88:7-21 ("████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████").

██████████ ), he cannot competently testify that the infringement occurred—let alone after ████████

██████████████████████████████ .[9]

This failure might be forgivable if there were another way of authenticating what is in the listed payloads. But, as Cox demonstrates in its currently-pending motion for sanctions, MarkMonitor (Plaintiffs' agent for sending the notice at issue in this case) spoliated the data received by MarkMonitor from Audible Magic that allegedly made this connection. What Plaintiffs produced is instead only a summary file, which was created years *after* the Claim Period (*i.e.*, Professor McCabe's Audible Magic Data). Indeed, as MarkMonitor's witness admitted, the

████████████████████████████████████████████████████████████

███████████████████████████ ,[10] and █████████████████████████████████

█████████████████████████████ .[11] Thus, Plaintiffs cannot demonstrate that any of the works implicated by the infringement notices was matched to a work in suit at the time the notices were sent.[12]

---

[9] Indeed, Professor McCabe's analysis relies on legitimate notices. Buchanan Decl., Ex. D (McCabe Dep. Tr. 143:6-10) ███████████████████████████████████████ ).

[10] Buchanan Decl., Ex. E, (July 2, 2019 Deposition Transcript of Slawomir Paszkowski ("Paszkowski Dep. Tr.") 129:2-5) (" █████████████████████████████████████ ).

[11] Buchanan Decl., Ex. E (Paszkowski Dep. Tr. 97:19-98:12).

[12] ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

Moreover, when reviewing the foundational data MarkMonitor ███████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

██████████████████████████████.[13] Because ███████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

██████████████████████████████████████████████.

For example, Audible Magic retained ███████████████████████████████

███████████████████████████████████. *See* Buchanan Decl., Ex. I (May 6, 2019

Deposition Transcript of Vance Ikezoye 175:25-177:22) (████████████████████

███████████████████████████████████████████████████████████████████

██████████████████████████); *id.* 177:3-178:7 ("████████████████████████

████████████████████████). Analysis of that data confirms that ████████████

███████████████████████████████████████████████████████████████████

███. *See* Buchanan Decl., Ex. J (Rebuttal Expert Report of Dr. Nick Feamster, Ph.D., dated May

15, 2019 ("Feamster Rpt."), ¶¶ 35, 156-159); Buchanan Decl., Ex. K (Supplemental and Reply

Expert Report of Barbara Frederiksen-Cross, dated June 13, 2019, ¶ 11) (███████████

███████████████████████████████████████████████████████████████████

████████). In other words, ████████████████████████████████████████████

---

████████████████████████████████████████████████████." Buchanan Decl., Ex. F (Stroz
Friedberg Audit, RIAA_00127775).
[13] Buchanan Decl., Ex. G (MM000236 spreadsheet, sorted).
[14] Buchanan Decl., Ex. H (Report of Barbara Frederiksen-Cross, dated April 10, 2019
("Frederiksen-Cross Rpt."), ¶ 81).

██████████████████████████████████████████████████████████████

████████████████████.

Professor McCabe makes a point in his opening report to explain what he understands the data in this case to represent and goes so far as to opine that █████████████████████ ███████████████████████████████████████████████████████" Buchanan Decl., Ex. A (McCabe Rpt., ¶ 46); *see also id.*, ¶¶ 12-15 (███████████████████████ ███████). Professor McCabe further testified at his deposition ██████████████████ ██████████████████████████████████████████. *See, e.g.*, Buchanan Decl., Ex. D (McCabe Dep. Tr. 174:11-21) ("██████████████████████████████████████ ███████████████████████████████████████").[15] Yet it appears that Professor McCabe was never provided with a copy of the above-referenced data for his review (nor does it appear he ever requested it).[16] This is inexcusable, as this data's flaws were extensively outlined in Dr. Feamster's rebuttal report,[17] which Professor McCabe entirely ignored in his reply report. There was ample time left within discovery for Professor McCabe to attempt to amend his analysis but he failed to do so.

These critical flaws and gaps in the spreadsheets render Professor McCabe's blind reliance on them unreasonable and untenable. Indeed, Professor McCabe uses this flawed and incomplete data as the proverbial Rosetta Stone for his "task" of tying notices to works in suit. Buchanan Decl., Ex. A (McCabe Rpt., ¶¶ 22-25).[18] Professor McCabe's failures, and the inadequacy of the

---

[15] *See also id.* 118:19-119:5, 123:8-124:1, 144:15-146:14

[16] *See* Buchanan Decl., Ex. A (McCabe Rpt., App. 2); Buchanan Decl., Ex. B (McCabe Rebuttal Rpt., App. A); Buchanan Decl., Ex. C (McCabe Reply Rpt., App. A) (not listing the data in the materials reviewed and relied upon).

[17] Buchanan Decl., Ex. J (Feamster Rpt., ¶¶ 32-35).

[18] Specifically, Professor McCabe states ████████████████████████████████████████

information upon which he relies, results in an insurmountable analytical gap that renders any testimony relating to his "task" inadmissible. *Gen. Elec. Co.*, 522 U.S. at 146.

### 2. Allowing Professor McCabe's testimony at trial would be prejudicial to Cox.

Moreover, in light of the structural and technical deficiencies outlined above, Professor McCabe's proposed testimony would be highly prejudicial to Cox. Professor McCabe intends to explain how he combined spreadsheets to prove one of Plaintiffs' key allegations (*i.e.*, ███████

████████████████████████████████████████████████████████████

█████████████████████████). And Professor McCabe's task, as he admits, relies on the accuracy of the data. But it cannot be reasonably disputed that the data has significant deficiencies and Professor McCabe neither investigated them nor did he form any opinions about them. The jury should therefore not be presented with an opinion that purports to prove Plaintiffs' key allegations where the factual record demonstrates his conclusions are not only unverified but contradicted.

It is well established that expert testimony "has the potential to be substantially prejudicial because of the 'aura effect'" of the expert designation; this may lead the jury to attach undue significance to Professor McCabe's proffered testimony. *See Lester*, 254 F. Supp. 2d at 607-608; *see also Daubert*, 509 U.S. at 595. Even if Professor McCabe's testimony manages to slip over the admissibility bar, it is highly prejudicial to Cox and would be confusing to the jury—it should be excluded under Rule 403.

---

███████████████████████████████████████████████████████ " Buchanan Decl., Ex. A (McCabe Rpt., ¶ 23). To "██████████████████████████████████████████████████████████████. *See id.*, ¶ 26.

**B.**      **Professor McCabe should be precluded from testifying about his "Summary of Opinions," "Findings," and any other observations irrelevant to his task.**

At a minimum, expert testimony must aide the jury in a factual determination and be relevant.  *See* Fed. R. Evid. 402, 403, and 702(b).  However, Professor McCabe's "Summary of Opinions" and "Findings" in paragraphs 16 and 46 through 52 of his Opening Report (in addition to related Appendices 5-6, 8) are not directly relevant to his "task."  Any testimony based on these observations would be improper and could only serve to confuse the jury.  As such, they should therefore be deemed inadmissible.

Professor McCabe readily agreed that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  For example, when Professor McCabe was asked why he ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"  Buchanan Decl., Ex. D (McCabe Dep. Tr. 160:4-12).  Similarly, when asked why he ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Professor McCabe stated:



*Id.* 167:14-22.

Further, when asked why he counted ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Professor McCabe answered: "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"  *Id.* 175:1-13.

When asked about his "Finding" that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮," Professor McCabe stated:

15



*Id.* 180:6-182:6.  The same is true when asked about the "█████████████████████████

████, Professor McCabe responded:



*Id.* 191:6-193:6.  Indeed, with respect to three specific variables about which he opines ("█████

████████████████████████████████████████████████), Professor

McCabe admits he █████████████████████████████████.  *See, e.g. id.* 189:3-

12 (█████████████████████████████████████████████████████████

███████");  *see also id.* 180:6-183:8, 187:13-192:14.  But he nevertheless presents this data in

a way that disingenuously *implies* that Cox did something improper by closing tickets for

subscribers who received infringement notices and that it reached hard limits more often than it

did.  Buchanan Decl., Ex. A (McCabe Rpt., ¶¶ 49-50).  Thus, even assuming these observations

were relevant, any "opinion" from Professor McCabe as to what this data represents would be

prejudicial to Cox, as Professor McCabe misunderstands (or failed to even try to understand) it

and presents it in a biased and misleading way in his report.

For each of the "Opinions" summarized in paragraph 16 and the "Findings" in paragraphs

46 through 52, Professor McCabe readily admits this information is for his *own* understanding of

data—not to aid the jury.[19]   Moreover, none of this information is directly relevant to his task,

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████. As a consequence,

the only possible inference that jurors will be able to make of these "observations" is that they

relate to actual issues in the case or that they imply some sort of wrongdoing on the part of Cox,

neither of which is Professor McCabe's opinion.  The Court should preclude Professor McCabe

from testifying about these general and untethered observations of the datasets.

### C.   Professor McCabe should not be permitted to present an opinion regarding the number of times works were infringed.

Professor  McCabe  opines  in  his  report  that  ████████████████████████████

████████████████████████████████████████████"  Buchanan Decl., Ex. A (McCabe

Rpt., ¶ 52).  To support this "opinion," Professor McCabe created Appendix 8 to his report, which

lists the 34 works in suit for which there are the most infringement notices.  *Id.*, App. 8.

When asked at his deposition why he only showed the 34 works for which there were the

most notices (out of the over 7,000 at issue), Professor McCabe stated that he "██████████████

████████████████████████████████████████.  Buchanan Decl., Ex. D (McCabe Dep.

Tr. 216:5-10, 222:2-3).  He admitted, however, that ████████████████████████████████

████████████████████████████████████████████.  *Id.* 229:3-

5.  Professor McCabe explained that ████████████████████████████████████████

████████████████████████████████████████.  *Id.* 225:19-226:1.



---

[19] Professor McCabe's opinions in Paragraph 16(c) and (d) relate to his efforts ██████████████
██████████████.  Cox does not seek to exclude these
opinions on the basis that they are not related to Professor McCabe's task.  Rather, Cox seeks to
exclude them because they are based on unverified data.  *See supra* § IV.A.1.

This Appendix and any opinion related to it is non-representative of the data, as it shows only those works for which there were high numbers of notices, as opposed to for those were there were fewer.  Indeed, Professor McCabe performed a more standard assessment of other data sets elsewhere in his report, which demonstrates that this one is plainly biased.  *See, e.g.*, Buchanan Decl., Ex. A (McCabe Rpt., App. 4); Buchanan Decl., Ex. D (McCabe Dep. Tr. 237:10-15) ( ██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████ ").

Because this opinion is not relevant to Professor McCabe's "task" to demonstrate that each

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████ , it should be precluded.

**D.      Professor McCabe should not be permitted to rebut Mr. Tregillis's opinions regarding Plaintiffs' purported harm or Dr. Feamster's opinions regarding MarkMonitor's data.**

Professor McCabe was not asked to perform an analysis regarding Plaintiffs' purported harm in this case.  Buchanan Decl., Ex. A (McCabe Rpt., ¶ 4); *see also* Buchanan Decl., Ex. D (McCabe Dep. Tr. 87:18-88:16, 259:10-20).  Nor was he asked to form any opinion regarding the quantum of alleged infringement—whether in general or by subscriber.  Buchanan Decl., Ex. A (McCabe Rpt., ¶ 4); *see also* Buchanan Decl., Ex. D (McCabe Dep. Tr. 178:10-19, 259:8).  Instead, as he makes abundantly clear in his reports, and repeatedly confirmed during his deposition, Professor McCabe had one "task"—to attempt to demonstrate whether a key allegation in support of *liability* in Plaintiffs' Complaint is true.  *Id.*; *see also* Am. Compl., ¶ 10.

Because of Professor McCabe's aforementioned narrow focus, and otherwise lack of expertise in this area, there is no basis for him to rebut Mr. Tregillis's damages-related analysis.

18

Indeed, he has no basis to opine as to whether it is appropriate to consider only notices during the Claim Period, to calculate the number of works-in-suit implicated in notices after a subscriber receives 3, 5, or more notices, or whether it is appropriate to otherwise gauge Plaintiffs' alleged harm by comparing the numbers of notices to Plaintiffs' revenues.  Thus any proposed rebuttal testimony from Professor McCabe regarding Mr. Tregillis's damages-related calculations would be improper, confusing to the jury, and prejudicial to Cox.

Separately, while Professor McCabe did not respond to Cox's expert Dr. Feamster's report, Dr. Feamster's analyses directly undermines the reasonableness of Professor McCabe's reliance on the parties' spreadsheets.  Because Professor McCabe purported to act in his role as an applied statistician to verify the data, instead blindly relying on its accuracy, and because he otherwise has no expertise in the area of BitTorrent or the underlying data at issue here, Professor McCabe should be precluded from rebutting any opinion put forward by Dr. Feamster as well.

## V.     CONCLUSION

Based on the foregoing, the Court should exclude, in their entirety and for any purpose, the opinions and testimony of Plaintiffs' putative expert George P. Professor McCabe.


Dated: August 30, 2019

<div style="margin-left: 40%;">

Respectfully submitted,

*/s/ Thomas M. Buchanan*
Thomas M. Buchanan (VSB No. 21530)
WINSTON & STRAWN LLP
1700 K Street, NW
Washington, DC 20006-3817
Tel: (202) 282-5787
Fax: (202) 282-5100
Email: tbuchana@winston.com

</div>

*Attorney for Cox Communications, Inc.
and CoxCom, LLC*

*Of Counsel for Defendants*

Michael S. Elkin (*pro hac vice*)
Thomas Patrick Lane (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Telephone:  (212) 294-6700
Facsimile:  (212) 294-4700
Email:  melkin@winston.com
Email:  tlane@winston.com

Jennifer A. Golinveaux (*pro hac vice*)
Thomas J. Kearney (*pro hac vice* pending)
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA  94111-5840
Telephone:  (415) 591-1000
Facsimile:  (415) 591-1400
Email:  jgolinveaux@winston.com
Email: tkearney@winston.com

Diana Hughes Leiden (*pro hac vice*)
WINSTON & STRAWN LLP
333 S. Grand Avenue, Suite 3800
Los Angeles, CA 90071
Telephone:  (213) 615-1700
Facsimile:  (213) 615-1750
Email:  dhleiden@winston.com

**CERTIFICATE OF SERVICE**

I certify that on August 30, 2019, a copy of the foregoing Cox's Memorandum of Law in

Support of Its Motion to Exclude the Testimony of Putative Expert George P. McCabe, was filed

electronically with the Clerk of Court using the ECF system, which will send notifications to

ECF participants.

/s/ Thomas M. Buchanan
Thomas M. Buchanan (VSB No. 21530)
1700 K Street, NW
Washington, DC 20006-3817
Tel: (202) 282-5787
Fax: (202) 282-5100
Email: tbuchana@winston.com

*Attorney for Cox Communications, Inc.
and CoxCom, LLC*