**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

SONY MUSIC ENTERTAINMENT, *et al.*,

        Plaintiffs,

   v.

COX COMMUNICATIONS, INC. and
COXCOM, LLC.

        Defendants.

Case No. 1:18-cv-00950-LO-JFA

**COX'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO EXCLUDE**
**THE TESTIMONY OF PUTATIVE EXPERT WILLIAM H. LEHR, Ph.D.**

**REDACTED VERSION**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................ 1

II.    FACTUAL BACKGROUND ............................................................................... 2

    A.    Lehr's opinion of Cox's economic incentive to permit infringement on its network ............................................................................................................. 3

    B.    Lehr's opinions regarding costs saved by Cox ..................................... 5

    C.    Lehr's opinion regarding Cox's data rates ............................................. 6

    D.    Lehr's opinion regarding the harm to content owners ........................... 8

    E.    Lehr's opinion regarding the economic impact to Plaintiffs ................. 8

III.   LEGAL STANDARD ....................................................................................... 10

IV.   ARGUMENT .................................................................................................... 11

    A.    Dr. Lehr's opinions regarding Cox's purported economic incentive to allow infringement and all related analyses, including the "lifetime value" of Cox's customers, are not relevant to liability. ................................... 11

        1.    Cox's "economic incentive" to provide Internet service to the accused subscribers is not relevant to vicarious liability. ......................... 12

        2.    Cox's "economic incentive" to provide Internet service to the accused subscribers is not relevant to contributory liability. .................... 13

    B.    Dr. Lehr's opinions regarding Cox's purported economic incentive to allow infringement are not relevant to statutory damages. ................... 14

        1.    Dr. Lehr's calculations are inconsistent with Plaintiffs' claims. .............. 14

        2.    This case differs from BMG and Dr. Lehr's proposed testimony is inadequate in light of the information he ignored. .................................... 17

    C.    Dr. Lehr should not be permitted to testify about the costs Cox saved by not doing more in response to infringement. ......................................... 19

    D.    Dr. Lehr's analysis regarding the average data rates for subscribers with 1-2 tickets as compared to those with 20 or more tickets should be excluded. ....... 20

        1.    Dr. Lehr's average data rate analysis is not relevant to vicarious liability. ................................................................................................... 20

        2.    Dr. Lehr's analysis is also flawed, contradictory, and unreliable. ............ 22

    E.    Dr. Lehr should be precluded from opining about the harm to the music industry generally, and to Plaintiffs specifically, from piracy. ............................. 25

V.    CONCLUSION .................................................................................................. 27

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Arista Records, LLC v. Lime Grp. LLC*,
    784 F. Supp. 2d 398 (S.D.N.Y. 2011)......................................................................20

*BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*,
    149 F. Supp. 3d 634 (E.D. Va. 2015) .......................................................12, 13, 19

*BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*,
    199 F. Supp. 3d 958 (E.D. Va. 2016) .................................................................13

*CoStar Grp. v. LoopNet, Inc.*,
    373 F.3d 544 (4th Cir. 2004) .............................................................................13

*Daubert v. Merrell Dow Pharms, Inc.*,
    509 U.S. 579 (1993)....................................................................................10, 11

*Eghnayem v. Bos. Sci. Corp.*,
    57 F. Supp. 3d 658 (S.D.W. Va. 2014)................................................................27

*ePlus, Inc. v. Lawson Software, Inc.*,
    764 F. Supp. 2d 807 (E.D. Va. 2011) .................................................................11

*Gen. Elec. Co. v. Joiner*,
    522 U.S. 136 (1977)..........................................................................................11

*Hopeman Bros., Inc. v. Cont'l Cas. Co.*,
    No. 4:16-CV-187, 2018 WL 4169282 (E.D. Va. Jan. 12, 2018) ...........................24

*James River Mgmt. Co. v. Kehoe*,
    No. 3:09-CV-00387, 2010 WL 431477 (E.D. Va. Feb. 5, 2010) ...........................11

*Keystone Transportation Sols., LLC v. Nw. Hardwoods, Inc.*,
    No. 5:18-CV-00039, 2019 WL 1756292 (W.D. Va. Apr. 19, 2019)......................27

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999)..........................................................................................10

*Nelson–Salabes, Inc. v. Morningside Dev., LLC*,
    284 F.3d 505 (4th Cir. 2002) .............................................................................12

*Scott v. Sears, Roebuck & Co.*,
    789 F.2d 1052 (4th Cir. 1986) ...........................................................................10

*Slaby v. Holder*,
    No. 112CV1235AJTIDD, 2013 WL 12147698 (E.D. Va. July 24, 2013)..............................27

*Small v. WellDyne, Inc.*,
    927 F.3d 169 (4th Cir. 2019) ....................................................................................10

*United States v. Dorsey*,
    45 F.3d 809 (4th Cir. 1995) ......................................................................................27

*United States v. Lester*,
    254 F. Supp. 2d 602 (E.D. Va. 2003) ...............................................................10, 11

## Other Authorities

Fed. R. Evid. 402 .......................................................................................................1

Fed. R. Evid. 403 .......................................................................................................1

Fed. R. Evid. 702 ...................................................................................................1, 10

## I.     INTRODUCTION

Pursuant to Federal Rules of Evidence 702, 402, and 403, Cox respectfully requests that the Court exclude all of the opinions and testimony of Plaintiffs' putative expert William H. Lehr, Ph.D., except for those related to his attempts to calculate Cox's profits from high-speed Internet service during the years 2013 and 2014,[1] which should be admitted only to the extent those calculations are deemed relevant to statutory damages.

None of Dr. Lehr's other analyses are relevant—whether to establish liability or in assessing damages.  Dr. Lehr should therefore be precluded from testifying with respect to the following topics addressed in his Expert Reports:

1.  Cox's purported economic incentive to allow allegedly infringing subscribers to remain on its network, which Dr. Lehr has not attempted to calculate.  This includes the following derivative analyses, which should also be excluded:

    

    o  ████████████████████████████████████████████ ████████████████████████████████████████.  Dr. Lehr inaccurately calculates the lifetime value and, just as critically, the concept is irrelevant to Plaintiffs' claims because Dr. Lehr does not tie the amount to the alleged infringement—though he could have tried.

    o  ████████████████████████████████████████████. Again, Dr. Lehr has no opinion about ████████████████ ████████████████████, so his observations regarding ████████████

---

[1] The Claim Period in this case is from February 1, 2013 through November 26, 2014 except for the Sony/ATV and EMI plaintiffs, for which it is August 1, 2013 through November 26, 2014.

████████████████████████████████████████████████████ are
irrelevant, and would be confusing to the jury and prejudicial to Cox.

- o That Cox could have, or should have, done more to prevent infringement and any costs it saved by not doing what it could or should have.  Dr. Lehr admits
████████████████████████████████████████.  But he
nevertheless opines that ████████████████████████████
████████████████████████████████████████████████
██████████████████████████████████████████████.
That is not expert testimony.

2. Dr. Lehr's flawed observations regarding ████████████████████
████████████████████████████████████████.  As a matter of law, this purported analysis is not relevant to liability, so it is inadmissible and would be otherwise prejudicial to Cox.

3. The economic impact of infringement on Plaintiffs' respective businesses, as Dr. Lehr admits ████████████████████████████████.

4. The alleged harm caused by infringement to the music industry generally, as this is unnecessary expert testimony and would be confusing to the jury and prejudicial to Cox.

## II.     FACTUAL BACKGROUND

Dr. Lehr issued his opening report on April 19, 2019.  *See* Declaration of Thomas M. Buchanan in Support of Defendants' Motion to Exclude the Testimony of Putative Expert William H. Lehr, Ph.D. ("Buchanan Decl."), Ex. A (Expert Report of William H. Lehr, Ph.D., dated April 19, 2019 ("Lehr Rpt.")).  He issued a rebuttal report on May 15, 2019, in which he responded to

the opening report of Cox's expert Christian Tregillis.  *See* Buchanan Decl., Ex. B (Expert Rebuttal Report of William H. Lehr, Ph.D., dated May 15, 2019 ("Lehr Rebuttal Rpt.")).  Lehr served his reply report on June 13, 2019.  *See* Buchanan Decl., Ex. C (Expert Reply Report of William H. Lehr, Ph.D., dated June 13, 2019 ("Lehr Reply Rpt.")).  Lehr was deposed on June 25, 2019.  *See* Buchanan Decl., Ex. D (June 25, 2019 Deposition Transcript of William H. Lehr, Ph.D. ("Lehr Dep. Tr.")).

Lehr is an economist whose only notable experience in copyright matters are his two prior retentions in cases closely related to this one.[2]  As in those cases, Dr. Lehr issued reports here in which he attempts to perform two tasks: (1) "

," and (2) "

" Buchanan Decl., Ex. A (Lehr Rpt., ¶ 11).  Dr. Lehr's opinions are outlined in more detail in the following sections.

### A.   Lehr's opinion of Cox's economic incentive to permit infringement on its network

Dr. Lehr opines that Cox ███████████████████████████, which he attempted to quantify in three ways.

*First*, ████████████████████████████████

████████████████████████████████████

███████████████████████████"[3]  Buchanan Decl., Ex. A (Lehr Rpt., ¶¶ 34,

---

[2] Lehr was retained in *BMG Rights Mgmt. (US) LLC et al. v. Cox Enterprises, Inc. et al.*, 1:2014-cv-01611 (E.D. Va.) ("*BMG*") and is currently retained in *UMG Recordings, Inc. et al v. Grande Communications Networks LLC et al.*, 1:2017-cv-00365 (W.D. Tex.).

[3] Dr. Lehr states that ████████████████████████████████████

████████████████████████████████" Buchanan Decl., Ex. A (Lehr Rpt., ¶ 34).

38, 47); Buchanan Decl., Ex. C (Lehr Rebuttal Rpt., ¶ 27).  These totals range from ███████ ███████████████████████████████████████████████████████████████████████████ ███████████████████████.  Buchanan Decl., Ex. A (Lehr Rpt., ¶ 47) (residential subscriber estimate); Buchanan Decl., Ex. C (Lehr Rebuttal Rpt., ¶ 27) (business subscriber estimate).

*Second*, Dr. Lehr totaled ███████████████████████████████████████████ ███████████████████████, even though the Claim Period specified in the Amended Complaint is February 1, 2013 to November 26, 2014.  Buchanan Decl., Ex. A (Lehr Rpt., ¶ 13).  He calculated this total as ██████████.  *Id.*  He also looked at Cox's billing data to determine how much residential subscribers who allegedly received at least 1, 3, and 5 notices were billed between 2012 and 2016 ████████████████████████████, respectively) and the same with the business subscribers ███████████████████████████, respectively).  *Id.*, ¶¶ 37-38, 41.[4]  Dr. Lehr also applies ████████████████████████████████████████████.  *Id.*

*Third*, in an attempt to address specific criticisms levied by Cox's expert Christopher Bakewell ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████.  Buchanan Decl., Ex. C (Lehr Reply Rpt., ¶¶ 18-19, n.36).  ██████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████

---

[4] Dr. Lehr also highlighted Cox's total bills between 2012 and 2016 for two specific customers. Buchanan Decl., Ex. A (Lehr Rpt., ¶ 46).  In his reply report, Dr. Lehr performed a "████████ ████████████████████████████████████████████████.  Buchanan Decl., Ex. C (Lehr Reply Rpt., ¶17).  These analyses suffer from the same flaws as Dr. Lehr's other totals.

██████████████████████████████████████).  Buchanan

Decl., Ex. D (Lehr Dep. Tr. 188:13-16) ("████████████████████████████████████

██████████████████████████████████████."); *see*

*also* Buchanan Decl., Ex. C (Lehr Reply Rpt., ¶ 13).[5]

Each of these calculations derive from the prong of Dr. Lehr's analysis relating to ███

███████████████████████████████████.  But as

demonstrated below, Dr. Lehr does not tie these calculations to that theory.  Instead, as Dr. Lehr

aptly summarized during his deposition, his opinion amounts to nothing more than the following:

"██████████████████████████████████████

████████████████████" Buchanan Decl., Ex. D (Lehr Dep. Tr. 118:9-12).

**B.      Lehr's opinions regarding costs saved by Cox**

Dr. Lehr also opines that a "██████████████████████████████████

██████████████████████████████████████

████████████████" Buchanan Decl., Ex. A (Lehr Rpt., ¶ 40).  While Lehr has no experience

(outside of litigation) analyzing an ISP's response to receiving infringement notices and what, if

anything, it can do in response, Dr. Lehr nevertheless provides some examples of areas in which

Cox allegedly saved costs:



---

[5] Dr. Lehr opines: "I cannot and did not say what else Cox would have or should have done to
address the infringing activity by its subscribers, and as a result, I am not able to estimate the size
of Cox's subscriber base in the but-for world."  *Id.*, ¶ 13.  Accordingly, there is, again, no basis
for Dr. Lehr to pin any calculation to 13 notices.

███████████████████████████████

*Id.*

When asked whether he attempted to quantify any of these costs, Dr. Lehr answered that

he did not:



Buchanan Decl., Ex. D (Lehr Dep. Tr. 339:19-340:4).  Dr. Lehr thus made clear that he has no

opinion about what Cox should have done, or even could have done, differently in response to

receiving infringement notices.  *See, e.g.*, *id.* 158:21-22 ("████████████████████

██████████████"); *id.* 165:8-167:14 ("███████████████████████

██████████████"); *id.* 176:18-19.  The totality of his opinion thus amounts to

the following: ██████████████████████████.[6]

### C.   Lehr's opinion regarding Cox's data rates

Lehr also opines—for the first time in his rebuttal report—that "████████████████

████████████████████████████████████████████

██████████████████" Buchanan Decl., Ex. B (Lehr Rebuttal Rpt., ¶ 31).  Dr. Lehr

calculates this amount to be approximately ██████████████.  *Id.*; *see also id.*, Exs. 3 & 4.  Dr.

Lehr speculates that this differential is attributable to ██████████████████████

████████████████████████████████████████████

██████████████████████████████████" *Id.*, ¶ 31.

---

[6] Indeed, in response to criticisms levied by Mr. Bakewell, Dr. Lehr devotes a single paragraph
to this opinion in his reply report and merely reiterates his conclusory statements from his
opening report.  *See* Buchanan Decl., Ex. C (Lehr Reply Rpt., ¶ 21).

At his deposition, Dr. Lehr unequivocally agreed, however, that ██████████ ████████████████████████████████:



Buchanan Decl., Ex. D (Lehr Dep. Tr. 116:22-118:21).

Dr. Lehr also agreed that he ████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████. *Id.* 344:12-346:14.  He admitted that he ████████████████████████████████████████████████████ ████████████████████████████████████████████. *Id.* 357:5-358:22.  And he acknowledged that he ████████████████████████ ████████████████████████████████████████████████████████ ██████. *Id.* 352:13-355:2; *see also* Buchanan Decl., Ex. E (COX_SONY_00515537).

### D.   Lehr's opinion regarding the harm to content owners

The second prong of Dr. Lehr's analysis concerns ███████████████████████████

████████████████████████████████████████████████████.  Buchanan

Decl., Ex. A (Lehr Rpt., ¶¶ 17-21, 22-24).  But Dr. Lehr does not attempt to actually quantify this

alleged harm because he believes ██████████████████.  *Id.*, ¶ 22.

Critically, Dr. Lehr also entirely fails ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████.  *Id.*, ¶¶ 18-22.  And he does not even

begin to ████████████████████████████████████████████████

████████████████████████████████.  *Id.*  Such a broad,

sweeping, and obvious "opinion" that ██████████████████████████████

██████████████████, is not expert testimony and not necessary in this case.

### E.   Lehr's opinion regarding the economic impact to Plaintiffs

Separately, Lehr further opines that infringement, including the infringement alleged in

this case, ██████████████████████████.   For example, Lehr claims, largely

without support, the following:

- "████████████████████████████████████████████

  ████████████████████████████████████████████

  ██████████" Buchanan Decl., Ex. A (Lehr Rpt., ¶ 20).

- ████████████████████████████████████████████████

  ████████████████████████████████████████████████

  ████████████████████████████████████████████████

  ██████████" *Id.*; *see also id.*, ¶ 23

- ███████████████████████████████████████████████████████

  ███████████████████████████████████████" Buchanan Decl., Ex. B (Lehr

  Rebuttal Rpt., ¶ 12).

But all of this relates to the ████████████████████████████████

████████████████████████.   The acts of infringement at issue allegedly relate to an

enumerated collection of works, owned or controlled by a subset of the industry, and where the

infringement allegedly occurred over a period of just under two years.   Online piracy dates back

decades and occurs on all networks on every continent.   Cox is simply not responsible for the

injury to every music publisher or record label arising from every act of infringement ever

undertaken anywhere in the world.   The injury at issue here is the injury to Plaintiffs for these

specified acts of infringement during this less than two-year period on Cox's networks.   Dr. Lehr's

discussion ██████████████████████████████████████████████████

████████████████████████.

That is particularly true because Dr. Lehr admitted at his deposition that ███████████████

███████████████████████████" even though he could have reviewed documents in

the record or simply asked Plaintiffs.   Buchanan Decl., Ex. D (Lehr Dep. Tr. 218:3-15).[7]   For

example, when Dr. Lehr was asked ████████████████████████████████████

████████████████,[8] he answered:



---

[7] In his report, the only document Dr. Lehr pointed to was ████████████████████████
████████.   But he does not specify anything from the report.

[8] Further, Plaintiffs resisted producing such documents, despite repeated requests from Cox.   *See,*
*e.g.*, Buchanan Decl., Ex. M (Plaintiffs' Objections and Responses to Cox's Third Set of
Requests for Production, Response No. 190-198).



*Id.* 217:4-218:15.

### III.    LEGAL STANDARD

"[O]n the most basic level, to be admissible, … [] expert testimony must be 'scientific, technical, or other specialized knowledge.'" *Small v. WellDyne, Inc.*, 927 F.3d 169, 177 (4th Cir. 2019) (quoting Fed. R. Evid. 702(a)). Moreover, expert testimony is only admissible if it "will help the trier of fact to understand the evidence or determine a fact in issue … ." Fed. R. Evid. 702(a). But "Rule 702 makes *inadmissible* expert testimony as to a matter which obviously is within the common knowledge of jurors because such testimony, almost by definition, can be of no assistance." *Scott v. Sears, Roebuck & Co.*, 789 F.2d 1052, 1055 (4th Cir. 1986) (emphasis added); *see also United States v. Lester*, 254 F. Supp. 2d 602, 607 (E.D. Va. 2003).

Federal Rule of Evidence 702 requires a trial court to play a "gatekeeping role" in evaluating whether proposed expert testimony should be admitted at trial. *Daubert v. Merrell Dow Pharms, Inc.*, 509 U.S. 579, 596-97 (1993); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court

10

to admit opinion evidence that is connecting to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1977).  Rather, the proffered testimony must be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Daubert*, 509 U.S. at 591.  The expert opinion must "fit" the facts of the case.  *See James River Mgmt. Co. v. Kehoe*, No. 3:09-CV-00387, 2010 WL 431477, at *4 (E.D. Va. Feb. 5, 2010); *accord ePlus, Inc. v. Lawson Software, Inc.*, 764 F. Supp. 2d 807, 812 (E.D. Va. 2011).  "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.  *Daubert*, 509 U.S. at 591.

This "gatekeeping" function is important to the integrity of the trial process because "expert testimony often carries a certain aura that might lead a jury to attach more significance to the testimony than is reasonably warranted."  *See Lester*, 254 F. Supp. 2d at 607; *see also Daubert*, 509 U.S. at 595 ("Because of this risk, the judge weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses.") (citations omitted).

As demonstrated below, Dr. Lehr's proposed opinions and testimony are not tailored to issues relevant to this case and are therefore inadmissible under the Federal Rules of Evidence.

## IV.    ARGUMENT

**A.    Dr. Lehr's opinions regarding Cox's purported economic incentive to allow infringement and all related analyses, including the "lifetime value" of Cox's customers, are not relevant to liability.**

Dr. Lehr's analyses concerning ████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

11

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████"

Buchanan Decl., Ex. A (Lehr Rpt., ¶ 11).  However, Dr. Lehr's various calculations are not relevant to Plaintiffs' claim for either contributory or vicarious liability.  Thus, the Court should preclude Dr. Lehr from testifying with respect to these calculations and any opinions related to them.

### 1. Cox's "economic incentive" to provide Internet service to the accused subscribers is not relevant to vicarious liability.

Plaintiffs claim Cox is vicariously liable for its subscribers' alleged infringement, Am. Compl., ¶¶ 108-116, which requires a showing that Cox "'(1) possessed the right and ability to supervise the infringing activity; and (2) possessed an obvious and direct financial interest in the exploited copyrighted materials.'"  *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 149 F. Supp. 3d 634, 673-74 (E.D. Va. 2015) (quoting *Nelson–Salabes, Inc. v. Morningside Dev., LLC*, 284 F.3d 505, 513 (4th Cir. 2002)).  To the extent Plaintiffs argue that Dr. Lehr's "████████ ████████" analysis is relevant to the "direct financial interest" requirement, they are wrong.

In *BMG*, the Court held that "Cox's receipt of monthly fees is only evidence of direct financial benefit if some portion of those fees is generated from subscribers that are drawn to Cox's service at least in part *because* of the infringing activity alleged in this case.  Without that evidence, the requisite causal connection between the benefit and the infringing activity is not established."  *BMG*, 149 F. Supp. 3d at 676 (emphasis in original).

Under the *BMG* standard, Dr. Lehr's "█████████████" analysis is irrelevant to proving Cox's "direct financial interest," if any, in the alleged infringement.  Even if Dr. Lehr were correct that  Cox ███████████████████████████████████████████ ████████, *see* Buchanan Decl., Ex. A (Lehr Rpt. ¶ 11), it does not logically follow that those subscribers were "*drawn*" to Cox's service in order to infringe.  Equally important, Dr. Lehr's

calculation regarding ████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████ "subscribers that are drawn to Cox's service at least in part *because* of the infringing activity alleged in this case." *BMG*, 149 F. Supp. 3d at 676 (emphasis in original).

### 2.   Cox's "economic incentive" to provide Internet service to the accused subscribers is not relevant to contributory liability.

"Under a theory of contributory infringement, 'one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another' is liable for the infringement, too." *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 199 F. Supp. 3d 958, 973 (E.D. Va. 2016) (quoting *CoStar Grp. v. LoopNet, Inc.*, 373 F.3d 544, 550 (4th Cir. 2004)).   Whether or not the defendant has a financial interest or incentive in the alleged direct infringement is thus not a relevant factor in establishing liability.   Dr. Lehr's analyses concerning

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████.   Those opinions are not probative of whether Cox was (a) on notice of, but (b) turned a blind eye to any (c) direct infringement by its customers.

---

[9] The same is true when limiting this calculation during the Claim Period.

**B.      Dr. Lehr's opinions regarding Cox's purported economic incentive to allow infringement are not relevant to statutory damages.**

The Court instructed the jury in *BMG* that one of the relevant consideration in their determination of BMG's statutory damages is "[t]he profits that Cox earned *because of the infringement*." Buchanan Decl., Ex. F (*BMG* Trial Tr. 2150:1-10). As demonstrated below, Dr. Lehr failed to tie any of his analyses to the alleged infringement, though he certainly could have attempted to do so with the evidence Cox produced at Plaintiffs' request. Dr. Lehr's legally irrelevant and highly prejudicial analyses must therefore be excluded.

**1.      Dr. Lehr's calculations are inconsistent with Plaintiffs' claims.**

Dr. Lehr has no opinion about when, if ever, profits generated from Cox's subscribers are attributable to their alleged infringement. Nor does he have any opinion as to whether subscribers who received one notice, three notices, five notices, or 13 notices should have been terminated. He nevertheless opines, however, ███████████████████████████████████

████████████████████████████████████████████████████████████████████████████

██████████████████████████████████:

█████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
███████████████████████████████████████████.

Buchanan Decl., Ex. D (Lehr Dep. Tr. 336:7-337:19); *see also id.* 338:21-339:4 (█████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████"). Dr. Lehr thus admits

that his █████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

14

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████. Similarly,

Dr. Lehr does not calculate the extent to which these subscribers utilized their broadband services

for infringing activities,[11] the extent to which infringing subscribers chose Cox because they

thought it would be easier to infringe than on other networks,[12] or the extent to which Cox's profit

on these subscribers derived from the increment of bandwidth used by infringers in the course of

their infringement.[13] Because this total value concededly does not account for the portion of that

_____

[10]  Both parties agree that ████████████

████████████████████████.  Buchanan Decl., Ex. G (Rebuttal Expert Report of Lynne J.

Weber, Ph.D., dated May 15, 2019 ("Weber Rpt."), ¶ 43 & App. C, Ex. C-2); Buchanan Decl.,

Ex. D (McGarty Dep. Tr. 198:11-199:2) (confirming the calculation).  And evidence compiled

by Cox's expert indicates that Cox's "██████████████████████████████████

██████.  Buchanan Decl., Ex. G (Weber Rpt., ¶ 43 & App. C, Ex. C-2).  In almost all instances,

following a subscriber's receipt of its final notice from Cox, ████████████████████

███████████████.  *Id.*  Plaintiffs deride what they refer to as Cox's "13 strike" policy,

but they ignore the fact that Cox's extensive engagement with the 57,000-plus subscribers

accused of infringement in this case bore fruit in all but a handful of cases.

[11]  Answer: Not much.  For example, an average song download is 4MB.  An average two-hour

movie is 5.6 Gb per hour, or 11.2 Gb in total.  *See* https://www.att.com/esupport/data-

calculator/index.jsp.  Thus, streaming a single movie uses the same amount of data as does

downloading 2,800 songs, meaning that it would take less data to download every work at issue

in this case than it does for a typical broadband subscriber to stream the original six Star Wars

films.  *See also* Buchan Decl., Ex. H (Reply Report of Christian Tregillis, CPA, ABV, CFF,

CLP, dated June 13, 2019, ¶¶ 83-86).

[12]  Answer: None.  There is no evidence in this case that infringers are attracted to the Cox

network because they see it as an opportunity to infringe, or even that infringement is more

commonplace on the Cox network than it is on Comcast's network or AT&T's or Dish

Network's or anyone else's.

[13]  Answer: None.  Cox charges a flat fee for different bandwidth tiers.  Dr. Lehr opines that

infringers use higher value data plans than average, but there is no evidence that this has

anything to do with the amount of illicit downloads they perform, as opposed to the amount of

legitimate music streaming, online gaming, or Netflix watching they perform.

"██████████████" that "Cox earned *because* of the infringement,"[14] it is not relevant to the determination of statutory damages.  *See* Buchanan Decl., Ex. F (BMG Trial Tr. 2150:1-10).

The same is true for the calculations Dr. Lehr performed in his reply report in response to criticism levied by Cox's expert Mr. Bakewell.  There, Dr. Lehr calculated ████████████



██.  Buchanan Decl., Ex. C (Lehr Reply Rpt., ¶¶ 18-19, n.36).  But again, Dr. Lehr has no opinion as to whether even the revenue ascribable to the four subscribers he selected was attributable to infringement.  Buchanan Decl., Ex. D (Lehr Dep. Tr. 188:13-16) ("████████████████

████████████").  Nor do Plaintiffs.[15]  Any opinion related to the amount Cox billed ████████

████████████████████ is not relevant to any issue in this case and would be prejudicial to Cox.

Accordingly, Dr. Lehr should not be permitted to provide the "value" of a single subscriber or the total value of any quantity of subscribers, as he has not determined what percentage, if any, of any individual subscriber's value is attributable to infringement—even though there is data that may have provided him the ability to attempt to formulate such an opinion. Relatedly, he should not be permitted to tally up how much any given subscriber, or group of subscribers, were billed over time because, again, he has not determined what portion, if any, of

---

[14] Dr. Lehr also admits that ██████████████████████████████████

████████████████████████████.  Buchanan Decl., Ex. D (Lehr Dep. Tr. 277:16-20).  To the extent he intends to present any other calculations before or at trial, he should be precluded, as it is improper and irrelevant.

[15] Buchanan Decl., Ex. I (Plaintiffs' Responses to Cox's Second Set of Requests for Admission, RFA Nos. 91-95) (refusing to admit that termination is required at specific numbers of notices).

those billings are attributable to infringement—yet, again, such data was available.  Allowing Dr. Lehr to provide testimony untethered to the infringement at issue would be highly misleading and confusing to the jury and greatly prejudicial to Cox.

> **2.    This case differs from *BMG* and Dr. Lehr's proposed testimony is inadequate in light of the information he ignored.**

While Dr. Lehr was permitted in *BMG* to testify regarding his "lifetime value" of a Cox residential subscriber and he multiplied that figure by the total number of assumed subscribers, this case differs from *BMG* in several critical ways; and these differences are starkest when comparing any utility of Dr. Lehr's analysis in *BMG* to what he could have done here.

*First*, in *BMG*, there was no data tying Rightscorp data to specific Cox subscribers.  The parties only knew the Cox IP addresses stated in the Rightscorp data (and subscribers can have different IP addresses at different times).  Thus, BMG retained Dr. Robert Bardwell to perform a highly-complex analysis in an attempt to define "subscribers" based purely on the information listed in the Rightscorp data (IP addresses, time/date received, and the identified song).

Dr. Bardwell's type of analysis is not necessary here, however, as Cox produced in this case information tying each and every notice received from the RIAA on behalf of Plaintiffs (the "RIAA Notices") to an actual Cox subscriber account.  Thus, Plaintiffs and Dr. Lehr have subscriber-specific information from which they could have performed an analysis that attempts to tie Cox's profits to the alleged infringement.  For example, Dr. Lehr could have determined that any profits generated from a subscriber *after* a certain number of notices is attributable to infringement and therefore should be considered by the jury in determining statutory damages,[16] but, instead, he simply calculated the *entire* lifetime value of the subscriber relationship.  He also

---

[16] While Dr. Lehr did ███████████████████████████████████████████████
████████████████████████.  *See supra* at 15.

could have calculated how much infringement occurred by the accused subscribers and how long it lasted, but, again, he did nothing to apportion the lifetime value of the customer to the portion of that value attributable to the infringement.

*Second*, in *BMG*, Cox blocked the Rightscorp notices at the server level, so there was no data about how many notices Cox processed over time per subscriber. Thus, there could be no assessment of which subscribers BMG (or the jury) believed Cox should have, but failed, to take action with respect to, whether suspension, termination, or some other measure. And because notices were not processed, there was no basis for assessing whether Cox was able to abate the infringement. Again, that is not the case here, as Cox tied every single RIAA Notice to an accused subscriber; it also produced all ***other*** copyright infringement tickets created for these same subscribers (*e.g.*, tickets created both from RIAA Notices and other content owners). Dr. Lehr could have determined which subscribers actually stopped infringing Plaintiffs' works before termination became necessary,[17] and which should have been terminated and what profits would therefore be attributable to infringement (*i.e.*, any of the allegedly "illicit revenue"). He did not do that either.

Accordingly, the fact that Dr. Lehr was permitted to put forward some of these opinions in *BMG* should not affect the Court's consideration in this case. Dr. Lehr's analyses are entirely untethered from the infringement alleged in this case, do not rely on available information, and must be excluded.

---

[17] Cox's expert made this calculation. ███████████. Buchanan Decl., Ex. G (Weber Rpt., ¶ 43).

**C.  Dr. Lehr should not be permitted to testify about the costs Cox saved by not doing more in response to infringement.**

Dr. Lehr also opines that a "████████████████████████████ ██████████████████████████████████████████████████ ████████████" Buchanan Decl., Ex. A (Lehr Rpt., ¶ 40).  Dr. Lehr lists several examples of operational areas in which Cox might have saved "████████████████" *Id.*  But he does not provide any quantification of these allegedly saved costs, even though there is available data. Moreover, he refuses to provide an opinion about what Cox could have done—let alone what it *should* have done.  *See supra* at 4, 6.  Thus, the jury will be presented with testimony from an expert economist who says, in sum:

- Cox saved money because it could have done more things in response to infringement, but I don't know what they were or what they would have cost.

- Because it did not do more things it benefitted from the alleged infringement, but I don't know how much.

Such testimony cannot bear on the damages in this case, because it does not provide the jury with any basis for determining the extent to which Cox derived a benefit from allegedly turning a blind eye to the alleged infringement.

Nor is it relevant to any liability issue.  Because this opinion is not tied to any benefit received from the alleged infringement, it is not relevant to contributory liability.  And any theoretical and unspecified indirect "benefit" to Cox from not spending more in response to instances of alleged infringement is legally distinct from the financial benefit that is relevant to vicarious liability, which must be derived from the infringing use of its product.  *See BMG*, 149 F. Supp. 3d at 675–76 ("Financial benefit can be shown by evidence that 'users are attracted to a defendant's product because it enables infringement, ***and that use of the product for infringement***

*financially benefits the defendant*.'") (emphasis added) (quoting *Arista Records, LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 435 (S.D.N.Y. 2011)).  Thus, any consideration of these saved costs (putting aside that they were not even calculated) is irrelevant to damages and liability and should be precluded.

> **D.**  **Dr. Lehr's analysis regarding the average data rates for subscribers with 1-2 tickets as compared to those with 20 or more tickets should be excluded.**

Dr. Lehr opined for the first time in rebuttal that ███████████████████████████

███████████████████████████████████████████████████████████████████████████.

This analysis is not relevant to liability or damages and must therefore be excluded.  In addition, this analysis is not only deeply flawed and contradictory, but Dr. Lehr relies on insufficient data for it to be admissible under Federal Rule of Evidence 702.

> **1.**  **Dr. Lehr's average data rate analysis is not relevant to vicarious liability.**

Dr. Lehr describes his analysis ██████████████████████████████████████

██████████████████████████████████████████████████████████████████████████,"

Buchanan Decl., Ex. B (Lehr Rebuttal Rpt., ¶ 31).  The connection, Dr. Lehr opines, is that, ████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████" *Id.*

As a preliminary matter, the assertion that "███████████████████████████████

██████████████████████████ appears as an *ipse dixit* in the report.  There is no analysis of how much bandwidth is required to download a song, how many unique songs were allegedly downloaded per ticket (as opposed to a subscriber receiving multiple tickets for the same exact song that is merely sitting on the user's computer), how many songs are improperly downloaded by repeat infringers, or how that increment of bandwidth usage compares to the

bandwidth available in the average plan of a non-infringing subscriber who, for example, enjoys playing bandwidth-intensive online games (*e.g.*, World of Warcraft), uploading photos and videos to Facebook, streaming the Bourne Trilogy, listening to Spotify, or shopping in the iTunes store.

Further, as outlined above, the relevant question in determining vicarious liability in the context of Cox's flat-fee subscription revenues is whether the specific ability to infringe Plaintiffs' works through peer-to-peer sites while connected to Cox's network served as a "draw" to customers, and any benefit to that specific infringing use may be thus considered to establish vicarious liability. *See supra* at 12-13.

Dr. Lehr's average data rate analysis does not establish that Cox's service was a "draw" for would-be infringers.  At his deposition, Dr. Lehr agreed that his analysis does ***not*** demonstrate that Cox bills its infringing customers any differently from its non-infringing subscribers:



Buchanan Decl., Ex. D (Lehr Dep. Tr. 116:22-117:12); *see also id.* 355:12-16 ██████████ ██████████████████████████████████████████████████████"); *id.* 118:18-21 ██████████████████████████████████████████████████████████████████ ████████████).

Accordingly, Dr. Lehr's analysis does not demonstrate that subscribers selected Cox *because* they saw an opportunity to infringe.  Even assuming his opinions are accurate (which they are not, as demonstrated below) the most his opinion demonstrates is that people who are more active on the Internet (as evidenced only by infringement notices/tickets in this case) *may* pay more for data.  Again, it does not show why these subscribers *selected* Cox and it certainly does not

show why any of these subscribers may have elected a higher tier of service.  Because this analysis is not relevant it must be excluded.[18]

### 2.      Dr. Lehr's analysis is also flawed, contradictory, and unreliable.

While Dr. Lehr's analysis is irrelevant to Plaintiffs' claims, it is also based on insufficient data to be admissible under Federal Rule of Evidence 702, as demonstrated by the flaws and contradictions outlined below; it must be excluded for this additional reason.

*First*, Dr. Lehr did not calculate the number of subscribers who would have needed to elect a higher tier of service in order to account ███████████████████████.  For example, of the ████████████████████████████████████████████████████████████ ████████████████████████████████████████████.  Thus, the jury would be left with the false impression that subscribers who receive many tickets *all* elected higher tiers of service, when there is no basis to state that, as Dr. Lehr agrees.  Buchanan Decl., Ex. D (Lehr Dep. Tr. 355:12-16) ██████████████████████████████████████████████████ █████████████████").

*Second*, Dr. Lehr failed to take into account that Cox ████████████████████ ████████████████  For example, Cox ████████████████████████████████████ ████████████████████.  Buchanan Decl., Ex. E (COX_SONY_00515537).  In addition, there is also substantial variation in rates depending on whether the customer has subscribed to a bundle or only data.  *Id.*  Thus, his opinion that █████████████████████████████████ ████████████████████████████████████████████████████████████████████

---

[18] This analysis is also not relevant to contributory liability or statutory damages, as Dr. Lehr admits that it is not tied to the alleged infringement.  *See, e.g.*, Buchanan Decl., Ex. D (Lehr Dep. Tr. 355:12-16) (██████████████████████████████████████████████████ █████████████████").

██████████████.[19]   Dr. Lehr did not appropriately consider any of this, though the data was available to him.

*Third*, Dr. Lehr cites an industry study stating that ████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████. Buchanan Decl., Ex. B (Lehr Rebuttal Rpt., ¶ 30). But such a claim necessarily relies on some understanding of the quantum of the alleged infringement on peer-to-peer networks, which Dr. Lehr says ████████████████. Buchanan Decl., Ex. D (Lehr Dep. Tr. 280:10-12) ("████████████████████████ ████████████████████████████"). Dr. Lehr's spurious correlation thus presupposes that these usage rates are ascribable to infringement. The link to higher data usage may equally be ascribable to the fact that the sorts of people who improperly download music are also the sorts of people who like to engage in other high bandwidth activities. Moreover, Dr. Lehr acknowledged that ████████████████████████████████████████████ ████████████████████████. As a result, he could have, at the very least, calculated the incremental bandwidth usage attributable to this infringement, but he did not. Dr. Lehr thus has no basis to opine ████████████████████████████████████████████████████████ ████.

*Fourth*, Dr. Lehr's analysis necessarily relies on an implication that the Cox subscribers at issue in this case infringed works other than those purportedly represented in the notice data in this

---

[19] There is no room for any implication of such, either. During the Claim Period, Cox offered Internet ████████████████████████. Buchanan Decl., Ex. A (Lehr Rpt., ¶ 27). Moreover, it ████████████████████. Buchanan Decl., Ex. J (June 14, 2019 Deposition Transcript of Sidd Negretti 183:11-15).

case.  Moreover, Dr. Lehr repeatedly testified that he believes ████████████████

████████████████████████████████████████████████████████

████████.  Despite these unsupported claims, Dr. Lehr unequivocally stated ████████

████████████████████████████████████████████████████████

████████████.  *See* Buchanan Decl., Ex. D (Lehr Dep. Tr. 280:10-12) ("████████

████████████████████████████████████████████").  Dr. Lehr

also admitted ████████████████████████████████████████.  *Id.* 312:22-

313:12 ("████████████████████████████").  This is because, as he admitted, he

████████████████████████████████████████).[20]  *Id.* 152:8-16.

Thus, Dr. Lehr's wholly speculative opinion related to alleged infringement by Cox's subscribers

not otherwise purportedly represented by the data in this case must be excluded.

In addition to this analysis and any related opinions being wholly speculative, it should be

excluded for the simple reason that the benefit Cox purportedly reaped from alleged infringement

***not at issue*** in this case is ***not*** evidence of the benefit Cox allegedly received from the infringement

at issue.  And it is only the benefit of the latter that is relevant.  If anything, Dr. Lehr's reliance on

data usage (and the implied infringement that caused such usage) unrelated to the infringement

---

[20] Buchanan Decl., Ex. D (Lehr Dep. Tr. 305:15-306:1); *see also id.* 312:13-19.  He also referenced
testimony  from ████████████████████████████████████████████████
████████████████████████████.  *Id.* 313:19-319:14.  To the extent Plaintiffs, or Dr.
Lehr, attempt to rely on this or any related evidence, Cox will move to prelude it as Plaintiffs,
MarkMonitor, and the RIAA have each refused to produce any data supporting such a speculative
claim.  Moreover, Plaintiffs, MarkMonitor, and the RIAA have each attempted to shield any
disclosure as to how they scanned for works under the veil of privilege.  Plaintiffs cannot use any
claimed privilege as both a shield and a sword.  *Hopeman Bros., Inc. v. Cont'l Cas. Co.*, No. 4:16-
CV-187, 2018 WL 4169282, at *5 (E.D. Va. Jan. 12, 2018) (striking in part testimony offered in
support of motion for summary judgment previously withheld on the basis of privilege).  Any such
evidence must therefore be excluded, as should any analyses based upon it.

alleged in this case is evidence that Cox receives a benefit from its Internet subscribers that is not attributable to the infringement of Plaintiffs' works.  In other words, there is no basis to assume that the entire value of a subscriber is attributable to infringement alleged in this case, as Dr. Lehr has done.

Dr. Lehr's analyses thus should be precluded for this additional reason that he relies on insufficient data.

### E.   Dr. Lehr should be precluded from opining about the harm to the music industry generally, and to Plaintiffs specifically, from piracy.

Apart from his expert retentions since 2015 in three closely-related matters, Dr. Lehr has no experience with the music industry.  Nevertheless, he attempts to explain the "███████████ █████████," including the changes in revenue for different formats (*e.g.*, from physical media, like CDs, to digital downloads, and then to streaming).  Buchanan Decl., Ex. A (Lehr Rpt., ¶¶ 14-16).  He also attempts to explain the obvious, which is that piracy can cause harm to copyright holders.  *Id.*, ¶ 13.  For the following reasons, Dr. Lehr should be precluded from opining with respect to these topics.

*First*, Dr. Lehr has no relevant "scientific, technical, or other specialized knowledge" to provide this opinion.  It does not take an economist, let alone one without any relevant experience, to generally opine that piracy may cause harm to rights holders.  Moreover, there are fact witnesses who can readily testify to this.  *See, e.g.*, Buchanan Decl., Ex. K (Plaintiffs' Amended Rule 26 Disclosures); Buchanan Decl., Ex. L (Plaintiffs' Witness List).  Because Dr. Lehr does not go beyond simply opining that infringement is harmful—that is, he does not seek to quantify the harm, let alone tie it to the facts of this case—his opinion does not help the jury by virtue of his expertise.  Indeed, because he has no expertise in this industry, it cannot do so.

*Second*, Dr. Lehr's proposed recitation of the findings of various academic studies and other industry reports regarding the effects from piracy is not relevant to Plaintiffs' claims.  If Plaintiffs establish liability, what is relevant to their claim of statutory damages is, among other things, their actual damages arising from the infringement.  The general effect of all piracy—unbounded by time or geography—on an industry (or even broader, on all content owners) over the past two decades does not inform that consideration and it should be excluded.

Furthermore, as demonstrated below, the imprecision and vagueness of his opinions would be highly prejudicial to Cox and confusing to the jury:



Buchanan Decl., Ex. A (Lehr Rpt., ¶ 20); *see also id.*, ¶ 21 ("█████████████████████
███████████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████████
███████████████████.").

*Third*, while Dr. Lehr opines that piracy has caused harm to rights holders generally, he goes further and states that ███████████████████████████████████████████████████████
██████████.  *See, e.g., id.*, ¶ 17 (emphasis added); *see also id.*, ¶ 23 ("████████████████
███████████████████████████████████████████████████████████████████████████████
█████████████████████████.").  But Dr. Lehr admits that he never actually tried to measure

26

Plaintiffs' harm, even though data and witnesses were available to him.[21]   Indeed, the only document upon which he relies in support of this opinion is the Warner Music Group's 10-K, in which Warner notes that piracy affects its business.  But that information provides no basis for Dr. Lehr's opinion either.

*Fourth*, Dr. Lehr should be precluded from comparing Plaintiffs' revenue and profits to Cox's, as there is no reasonable economic basis for him to do so.  *Id.*, ¶¶ 23-24.  Notably, Dr. Lehr does not tie the level of Cox's revenue to any purported decrease in Plaintiffs' respective revenues and profits.

*Fifth*, to the extent Dr. Lehr's "opinion" is comprised of mere factual recitations, it is improper and should be excluded for that reason as well.[22]

## V.      CONCLUSION

Dr. Lehr has failed to calculate the percentage or portion of Cox's profits that are attributable to the alleged infringement, though he could have attempted to do so, but he does attempt to calculate (albeit incorrectly) Cox's total profits from high speed Internet during the Claim Period.  This should be the only figure about which is permitted to testify—that is, he can

---

[21] Moreover, Plaintiffs should not be permitted to put forward an opinion that relies on no data when they resisted producing any of the information that could have supported such an opinion.
[22] *Slaby v. Holder*, No. 112CV1235AJTIDD, 2013 WL 12147698, at *2 (E.D. Va. July 24, 2013) (excluding proposed expert opinion because it "is not expert testimony at all, but rather a summary of the evidence, developed during the litigation and provided to him, followed by his own factual commentary, observations, inferences, arguments and conclusions that are not based on or do not require any particular expertise and are equally within the capabilities and kin of the jury") (citing *United States v. Dorsey*, 45 F.3d 809, 815 (4th Cir. 1995)); *Eghnayem v. Bos. Sci. Corp.*, 57 F. Supp. 3d 658, 699 (S.D.W. Va. 2014) (excluding an expert who purports to opine "on what course of action [the defendant] should have taken … [but] … simply recites what [the defendant] did or did not do"); *Keystone Transportation Sols., LLC v. Nw. Hardwoods, Inc.*, No. 5:18-CV-00039, 2019 WL 1756292, at *7 (W.D. Va. Apr. 19, 2019) (excluding proposed expert testimony that is "merely [the plaintiff's] narrative of the events at issue offered in the guise of expert testimony.").

state the information he relied upon, information he would have preferred to have, the way he calculated his figure, his conclusions, and any assumptions he may have made reaching those conclusions.  Plaintiffs will have to try to present other witnesses to support their argument that some portion of those profits are attributable to the alleged infringement.  If they fail to do so, however, Cox will seek to limit the consideration of Cox's profits.  The balance of Dr. Lehr's proposed opinions and testimony should be excluded.


Dated: August 30, 2019

                                                    Respectfully submitted,

                                                    */s/ Thomas M. Buchanan*
                                                    Thomas M. Buchanan (VSB No. 21530)
                                                    WINSTON & STRAWN LLP
                                                    1700 K Street, NW
                                                    Washington, DC 20006-3817
                                                    Tel: (202) 282-5787
                                                    Fax: (202) 282-5100
                                                    Email: tbuchana@winston.com

                                                    *Attorney for Cox Communications, Inc.*
                                                    *and CoxCom, LLC*

*Of Counsel for Defendants*

Michael S. Elkin (*pro hac vice*)
Thomas Patrick Lane (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Telephone:  (212) 294-6700
Facsimile:  (212) 294-4700
Email:  melkin@winston.com
Email:  tlane@winston.com

Jennifer A. Golinveaux (*pro hac vice*)
Thomas J. Kearney (*pro hac vice* pending)
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA  94111-5840
Telephone:  (415) 591-1000
Facsimile:  (415) 591-1400
Email:  jgolinveaux@winston.com
Email: tkearney@winston.com

Diana Hughes Leiden (*pro hac vice*)
WINSTON & STRAWN LLP
333 S. Grand Avenue, Suite 3800
Los Angeles, CA 90071
Telephone:  (213) 615-1700
Facsimile:  (213) 615-1750
Email:  dhleiden@winston.com

**CERTIFICATE OF SERVICE**

I certify that on August 30, 2019, a copy of the foregoing Cox's Memorandum of Law in Support of Its Motion to Exclude the Testimony of Putative Expert William H. Lehr, Ph.D. was filed electronically with the Clerk of Court using the ECF system, which will send notifications to ECF participants.

*/s/ Thomas M. Buchanan*
Thomas M. Buchanan (VSB No. 21530)
1700 K Street, NW
Washington, DC 20006-3817
Tel: (202) 282-5787
Fax: (202) 282-5100
Email: tbuchana@winston.com

*Attorney for Cox Communications, Inc.
and CoxCom, LLC*