# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

SONY MUSIC ENTERTAINMENT, *et al.*,

      Plaintiffs,

v.

COX COMMUNICATIONS, INC., *et al.*,

      Defendants.

Case No. 1:18-cv-00950-LO-JFA

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR DISCOVERY SANCTIONS AND TO PRECLUDE PLAINTIFFS' USE OF MARKMONITOR EVIDENCE

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iv

CITATION GUIDE ........................................................................................ vi

INTRODUCTION ...........................................................................................1

BACKGROUND ............................................................................................4

I.     MARKMONITOR AND ITS WORK ON THE RIAA NOTICE
       PROGRAM...........................................................................................4

II.    COX'S MOTION MISLEADS THE COURT AND DISTORTS THE
       FACTS ................................................................................................8

       A.   The Audible Magic Spreadsheet is a time-limited snapshot that lacks foundation
            and authentication ..............................................................................10

       B.   The Mark Monitor Spreadsheet is not a "summary" but rather an extract of actual
            Audible Magic data............................................................................11

       C.   The allegedly spoliated data fields are superfluous and have no bearing on the
            accuracy of Audible Magic's verification................................................11

       D.   An infringing file is an infringing file no matter when the verification
            occurred.........................................................................................12

       E.   Cox misunderstands the Audible Magic data and draws false
            conclusions from it............................................................................12

ARGUMENT................................................................................................14

III.   COX FAILS TO DEMONSTRATE BY CLEAR AND CONVINVING EVIDENCE
       THAT ANY SPOLIATION OCCURRED ...............................................15

       A.   Cox fails to show clear and convincing evidence that Plaintiffs had a duty to
            preserve the allegedly spoliated evidence ................................................15

       B.   Cox fails to show by clear and convincing evidence that MarkMonitor failed to
            preserve material and relevant evidence ..................................................16

       C.   Cox fails to show by clear and convincing evidence that MarkMonitor spoliated
            evidence with a culpable state of mind ...................................................18

## TABLE OF CONTENTS
### (Continued)

IV.     COX'S REQUESTED REMEDY OF COMPLETE PRECLUSION OF THE
        MARKMONITOR SPREADSHEET IS GROSSLY DISPROPORTIONATE TO
        COX'S ALLEGED (BUT NON-EXISTENT) HARM ...............................................19

V.      COX'S OBJECTION THAT THE MARKMONITOR SPREADSHEET IS
        IRRELEVANT GOES TO WEIGHT, NOT ADMISSIBILITY, AND SHOULD BE
        OVERRULED ...........................................................................................................20

CONCLUSION.........................................................................................................................21

## TABLE OF AUTHORITIES

<u>Cases</u>

*Arista Records LLC v. Lime Wire LLC*, No. 06 Civ. 05936 (KMW), 2010 WL 10031251
    (S.D.N.Y. Aug. 9, 2010)........................................................................................5

*Arista Records LLC v. Myxer Inc.*, No. 08 Civ 03935 (GAF) (JCX), 2011 WL 11660773
    (C.D. Cal. Apr. 1, 2011)........................................................................................5

*B&D Boatworks, Inc. v. Doors, Inc.*, No. 2:05-CV-38 F(3), 2007 WL 9718184
    (E.D.N.C. Sept. 7, 2007)......................................................................................16

*Bouygues Telecom, S.A. v. Tekelec*, No. 4:05-CV-78-FL, 2007 WL 9718141
    (E.D.N.C. Feb. 12, 2007)......................................................................................20

*Capitol Records, LLC v. Escape Media Grp., Inc.*, No. 12-cv-6646 (AJN), 2015 WL 1402049
    (S.D.N.Y. Mar. 25, 2015).......................................................................................5

*Dorchester Fin. Holdings Corp. v. Banco BRJ S.A.*, 304 F.R.D. 178
    (S.D.N.Y. 2014)...................................................................................14, 19, 20

*E.I. Du Pont De Nemours & Co. v. Kolon Indus., Inc.*, No. 3:09-CV-58, 2011
    WL 1597528 (E.D. Va. Apr. 27, 2011).............................................................16-17

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 803 F. Supp. 2d 469
    (E.D. Va. 2011)..................................................................................................19

*Fed. Ins. Co. v. Locash,* No. 2:12-CV-504, 2014 WL 12588635
    (E.D. Va. Feb. 18, 2014)......................................................................................17

*Metro–Goldwyn–Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197
    (C.D. Cal. 2007)..................................................................................................5

*Passlogix, Inc. v. 2FA Tech.*, LLC, 708 F. Supp. 2d 378 (S.D.N.Y. 2010)..................20

*Samsung Elecs. Co. v. Rambus, Inc.*, 439 F. Supp. 2d 524 (E.D. Va. 2006)..........16, 17

*Steves & Sons, Inc. v. JELD-WEN, Inc.*, 327 F.R.D. 96 (E.D. Va. 2018)...................14

*Trigon Ins. Co. v. United States*, 204 F.R.D. 277 (E.D. Va. 2001)............................19

*Turner v. United States*, 736 F.3d 274 (4th Cir. 2013)...................................14, 15, 18

*UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006
    (9th Cir. 2013)....................................................................................................5

**TABLE OF AUTHORITIES**
**(Continued)**

Rules

Fed. R. Civ. P. 26 ...................................................................................................................8

Fed. R. Evid. 401 .................................................................................................................20

## CITATION GUIDE

**Declarations**:

- o  "**Bahun Decl**." refers to the Declaration of Samuel Bahun.

- o  "**Gould Decl**." refers to the Declaration of Jeffrey M. Gould.

- o  "**Gould Ex**." refers to a document filed as an Exhibit to the Gould Decl.

- o  "**Ikezoye Decl**." refers to the Declaration of Vance Ikezoye.

- o  "**Leiden Decl**." refers to the Declaration of Diana Hughes Leiden filed in support of Cox's Motion For Discovery Sanctions And To Preclude Plaintiffs' Use Of MarkMonitor Evidence (ECF No. 238-1)

- o  "**Leiden Ex**." refers to a document filed as an Exhibit to the Leiden Decl.

- o  "**Marks Decl**." refers to the Declaration of Steven Marks.

**Other References**:

- o  "***BMG***" or "***BMG v. Cox***" refers to the case captioned *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, Civ. No. 14-cv-1611 (E.D. Va.).

- o  "**Cox**" refers to Defendants CoxCom, LLC and Cox Communications, Inc.

- o  "**Depo.**" or "**Tr**." refers to the transcript of a deposition taken in this case.

- o  "**ECF**" refers to a document filed publicly via ECF in this case.

## INTRODUCTION

Cox's preclusion motion is baseless.  Cox manufactured this dispute based on a disingenuous description of the evidence and in a desperate attempt to scuttle a case in which it has no defense.  At the heart of Cox's motion is the question of whether the audio files that Cox subscribers downloaded and distributed contained Plaintiffs' copyrighted music.  But there is no credible dispute that those files are infringing.  Cox has not raised even a single instance of Audible Magic (the content identification software used by MarkMonitor) inaccurately identifying the contents of the files that Cox subscribers downloaded and distributed.  If Cox had a genuine concern about any specific identifications, it could have listened to the infringing audio files to confirm the accuracy of the Audible Magic confirmations, but it did not.  Cox and its technical expert received a hard drive in discovery with copies of those infringing audio files.  Tellingly, they have done absolutely nothing with it.  For years, Cox's response to copyright infringement notices was a mirage.  That record is firmly established.  Yet, instead of taking responsibility for its actions, or defending this case on the merits, Cox makes matters worse by leveling spurious attacks on the integrity of one of the top anti-piracy firms in the world.

Cox's spoliation allegations are fatally flawed, both factually and legally.  Cox either deliberately misrepresents the evidence or, after eight months of discovery, still does not understand it.  Either way, Cox overlooks or mischaracterizes key facts and their significance.  Cox also misstates the law and how to apply it.  The Fourth Circuit only permits a finding of spoliation where the movant can establish: (1) a duty to preserve, (2) destruction of material evidence, and (3) culpable conduct.  Cox has not shown that any of those elements exist here and certainly not by clear and convincing evidence, as required.  Nor has Cox demonstrated the

serious prejudice (let alone any prejudice) required to warrant the harsh sanction of evidentiary preclusion.

First, Cox fails to show a reasonable anticipation of litigation existed to trigger a duty to preserve the evidence in question.  As set forth in the attached declaration from the former general counsel of the Recording Industry Association of America ("RIAA"), the RIAA notice program was intended to avoid litigation, not provoke it.  Cox nevertheless contends that Plaintiffs reasonably anticipated litigation because MarkMonitor agreed to maintain evidence and, upon request, provide affidavits and legal documentation concerning the infringement notices it sent to Internet Service Providers ("ISPs").  Cox ignores that the contract setting forth the terms of MarkMonitor's work concerned only a ███████████████████," not a litigation program, and expressly contemplated ███████████████████
██████████████ Leiden Decl. Ex. T at 1 (2012 SOW).  That separate contract never happened.  Had Cox acted responsibly in response to the infringement notices, this lawsuit would not exist.  The fact that litigation was a theoretical possibility does not create a duty.  Cox ignores these realities and attempts to convert a record-keeping term in a notice-program contract between MarkMonitor and RIAA into a common law preservation obligation that simply does not exist.

Second, Cox has not shown a failure to preserve any evidence whatsoever, let alone material evidence favorable to Cox's case, as required.  Cox misdescribes the "MarkMonitor Spreadsheet" that it seeks to preclude as a "summary" of Audible Magic data—even though the MarkMonitor Spreadsheet contains the actual Audible Magic data—it is not a summary.  When Audible Magic positively identified the contents of an unknown audio file, ███████████████
████████████████████████████████████████████

2

███████ MarkMonitor retained █████████████████████████████████

████████████████████████████████████████████████████████████████

███████ and produced in discovery in the MarkMonitor Spreadsheet that is the subject of Cox's

motion (along with ████████████████████████████████). Thus, the core predicate to

Cox's spoliation motion—*i.e.*, that the MarkMonitor Spreadsheet is a "summary"—is hollow.

Cox also fails to recognize that, even where a duty to preserve exists, there is no

requirement to retain every piece of data. Cox complains that after the claim period in this case,

█████████████████████████████████████████ While that may be true, the fact

that █████████████████████████████████████████████████████████

When Audible Magic compared the fingerprint of a suspect file to the fingerprint of a

copyrighted work, it provided MarkMonitor with a "yes" or "no" answer as to whether there was

a match. If yes, Audible Magic provided ████████████████████████████████████

which was retained by MarkMonitor. At that point, MarkMonitor had the relevant

information—the works contained in the infringing files matched the works owned by the

Plaintiffs. Any other data that MarkMonitor received from Audible Magic was superfluous.

*Third*, Cox has not and cannot show that MarkMonitor or Plaintiffs acted negligently,

recklessly or willfully by spoliating evidence that would have been favorable to Cox's cause.

Cox has the underlying files, yet has failed to identify a single file that was misidentified.

Moreover, the additional Audible Magic data fields that Cox faults MarkMonitor for not

capturing are simply irrelevant. That data was not necessary to understand that Audible Magic

verified the contents of a file and it says nothing about the accuracy of that verification.

*Finally*, Cox's requested remedy—exclusion of the MarkMonitor Spreadsheet—is

grossly disproportionate to the alleged harm and wholly unwarranted. Cox has never pursued the

obvious manner of disproving the infringement.  Instead, it seeks a windfall through a fatally flawed sanctions motion premised on supposition, misunderstanding, and a record that does not remotely support a finding of spoliation.  Plaintiffs do not stand to benefit from the alleged spoliation.  Nor is Cox prejudiced.

By contrast, the MarkMonitor Spreadsheet containing Audible Magic verifications is important to Plaintiffs' case.  It is a crucial link between the files "shared" by Cox subscribers and Plaintiffs' copyrighted works.  Plaintiffs' case is largely organized around this connection. Plaintiffs' experts and Cox's experts rely on that evidence and an order precluding its use at trial would be highly prejudicial.  Such a remedy is far too harsh and neither Plaintiffs nor the jury should be deprived of such critical evidence.

## BACKGROUND

### I.   MARKMONITOR AND ITS WORK ON THE RIAA NOTICE PROGRAM.

Plaintiffs are the leading record companies and music publishers in the world, and the owners and stewards of the copyrighted works of the most legendary artists and songwriters of our time.  In an effort to combat online piracy, the Record Company Plaintiffs' trade association, RIAA, hired MarkMonitor to conduct certain anti-piracy activities, including sending copyright infringement notices to ISPs.  Bahun Decl., Appendix A ¶ 7.

MarkMonitor is an anti-piracy company headquartered in San Francisco, California. Over half of the Fortune 100 companies rely on MarkMonitor to help them protect their brands and content online.  MarkMonitor has more than 1,300 customers in over 50 countries, including leaders in the technology, fashion, sports, entertainment, pharmaceutical, media, automobile and healthcare industries.  Bahun Decl. ¶ 2.

MarkMonitor's contract with RIAA setting forth the terms of MarkMonitor's work concerned ▮▮▮▮▮▮▮▮▮▮ not a litigation program. Leiden Ex. T at 1 (2012 SOW); Marks Decl. ¶ 5. The contract defined the ▮▮▮▮▮▮▮▮▮ services MarkMonitor was to provide, *id.* at 2, and expressly provided that ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮ *Id.* at 1 (emphasis added); Marks Decl. ¶ 6. The 2013 and 2014 SOWs included the same language. Gould ¶ 5. RIAA and MarkMonitor did not enter into a separate SOW concerning any litigation program. Bahun Decl. ¶ 11.[1]

In 2008, on behalf of RIAA, MarkMonitor began monitoring for potentially infringing files being copied and distributed on P2P networks.[2] ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮

▮▮▮▮.[3] Bahun Decl. ¶ 16.



---

[1] Cox's counsel misleads the Court on this point in her sworn declaration by claiming that the contracts "notified MarkMonitor that it was collecting evidence on behalf of Plaintiffs for the purpose of litigation" and "stated that MarkMonitor was collecting evidence in anticipation of litigation." Leiden Decl. ¶ 21-22. This is false. The agreement contemplates ▮▮▮▮▮▮▮▮ as explained above, and says nothing at all about Plaintiffs. *See supra* & Leiden Decl. Exs. T-U.

[2] MarkMonitor acquired an anti-piracy company named DtecNet Inc. Accordingly, some documentation and testimony refer to DtecNet rather than MarkMonitor. Plaintiffs refer to them collectively as "MarkMonitor."

[3] For over a decade, courts have recognized the use of the Audible Magic software as a proper method to identify the content of an audio file as a specific copyrighted work. *See, e.g.*, *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1012 (9th Cir. 2013) ("AudibleMagic's technology takes audio 'fingerprints' from video files and compares them to a database of copyrighted content provided by copyright holders."); *Capitol Records, LLC v. Escape Media Grp., Inc.*, No. 12-cv-6646 (AJN), 2015 WL 1402049, at *23 (S.D.N.Y. Mar. 25, 2015); *Arista Records LLC v. Myxer Inc.*, No. 08 Civ 03935 (GAF) (JCX), 2011 WL 11660773, at *5 (C.D. Cal. Apr. 1, 2011); *Arista Records LLC v. Lime Wire LLC*, No. 06 Civ. 05936 (KMW), 2010 WL 10031251, at *6 (S.D.N.Y. Aug. 9, 2010); *Metro–Goldwyn–Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1205–06 (C.D. Cal. 2007).

███████████████████████████████

████████████████████████████████

████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

Bahun Decl., ¶ 17; Ikezoye Decl. ¶ 11.

One of the projects that MarkMonitor worked on for RIAA involved detecting infringement by ISPs' subscribers on BitTorrent, Gnutella, eDonkey and Ares P2P networks and sending infringement notices to ISPs so they could address the infringement on their networks.

Bahun Decl., Appendix A ¶ 7. ████████████████████████████

████████████████████████████████████

████████████████████████████████████

███████████████████████████████████

███████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

███████████████████████████████ Gould

Ex. 4 at ¶ 16 (Frederiksen-Cross Decl.); Gould Ex. 6 (Feamster Tr.) at 186:13–198:03; *see also* Bahun Decl., Appendix A ¶¶ 10-11.

In connection with that project, MarkMonitor sent Cox 260,873 infringement notices from January 2012 through November 26, 2014.  The infringement notices identified █████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████ Bahun

Decl., Appendix A ¶¶ 17-18, 21-22.  This is what MarkMonitor was hired to do—send notices to

ISPs so the ISPs could get their subscribers to stop infringing.   Marks Decl. ¶ 5.  Based on those

notices and other information, years later Plaintiffs asserted claims that accrued from February 1,

2013 through November 26, 2014 (the "Claim Period").[4]

During this same time period, MarkMonitor also sent infringement notices to ISPs in the

context of the Copyright Alert System ("CAS")—a private, multi-industry agreement between 18

separate parties to work collectively to address copyright infringement.  As part of CAS,

MarkMonitor's system was twice evaluated by "Independent Experts" to assess its accuracy.  A

consulting firm, Stroz Friedberg, "conducted an assessment of the MarkMonitor Methodologies

for monitoring, verifying, and enforcing online copyright infringement on P2P file sharing

networks."  Gould Ex. 2 at 1 (Stroz Report).  Stroz reported the following:

- MarkMonitor's Methodologies effectively identify P2P online copyright infringers.

- MarkMonitor's Methodologies are well-developed and matured.

- MarkMonitor's evidence collection in connection with P2P infringement is robust, defensible, and will withstand adverse party scrutiny or evidentiary challenges.

- The Methodologies include appropriate checks and balances at key points in the work flow to ensure accuracy.

- The reporting and notice-generating abilities allow MarkMonitor to accurately report on identified infringers.

*Id.* at 1-2.

---

[4] The Claim Period is slightly narrower for the Sony/ATV and EMI Music Publisher Plaintiffs, *i.e.*, August 1, 2013 through November 26, 2014.  For the other Plaintiffs, the Claim Period is February 1, 2013 through November 26, 2014.

During discovery, ███████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████ Bahun Decl. ¶ 24.

In addition, Plaintiffs provided Cox with a hard drive containing copies of the infringing audio

files that Cox subscribers downloaded and distributed. *Id.* ¶ 25.[5]

## II.   COX'S MOTION MISLEADS THE COURT AND DISTORTS THE FACTS.

Cox seeks a preclusion order prohibiting Plaintiffs from relying on the "MarkMonitor

Spreadsheet," which was produced in discovery in several forms under bates numbers

MM000236 (the "236 Spreadsheet"), Plaintiffs_00286431 (the "431 Spreadsheet"), and

Plaintiffs_00286281 (the "281 Spreadsheet").  (Mot. at 1).  Though styled as a motion for

"discovery sanctions," Cox does not complain about anything that took place during the course

of discovery.  Rather, Cox alleges that MarkMonitor spoliated data it received during the period

of 2012-2014 (and years beforehand dating back to 2008).  Cox contends that MarkMonitor

failed to retain critical portions of the evidence it compiled and that the MarkMonitor

Spreadsheet is, "at best, a partial and inaccurate summary" that is "manifestly incomplete and

unreliable."  (Mot. at 1-2.)  Cox alleges that MarkMonitor "destroyed the underlying data [sent to

it by Audible Magic], leaving no way to assess the accuracy of this summary."  (Mot. at 1-2.).

As explained below, Cox is wrong.

---

[5] Cox chides Plaintiffs for not listing Audible Magic as a relevant witness in their initial disclosures.  But nothing in Rule 26 required such disclosure.  Fed. R. Civ. P. 26.  Plaintiffs and MarkMonitor produced documents referencing Audible Magic early in discovery and Cox took months of discovery from Audible Magic thereafter.  Cox also complains about supposed difficulties obtaining responsive documents and information from MarkMonitor. (Mot. at 7 n.15, 10.).  Cox neglects to mention the enormous burden of the discovery it sought and the substantial efforts by MarkMonitor in response.  Cox further neglects to mention the manner in which it pursued that discovery, which another court described as "needlessly hostile," singling out one email from Cox's counsel in particular and admonishing the parties' counsel "to practice civilly."  Gould Decl. ¶ 7, Ex. 1.

Cox acknowledges that ███████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████ (Mot. at 2-3.)  Cox argues, however, that the

MarkMonitor database is "materially incomplete because MarkMonitor did not retain ████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████ Mot. at 11, 13.)

Cox contends that the materiality of those fields not included in the MarkMonitor

Spreadsheet is "incontestable."  (Mot. at 3.)  Critically, however, Cox draws false conclusions.

Cox's "support" for its materiality theory is the testimony of its putative expert, Dr. Feamster,

that ████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████ (Mot. at 3, 11-12.)  Cox argues

that, "according to [Audible Magic's] 30(b)(6) deponent," the Audible Magic Spreadsheet is a

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████ (Mot. at 8.)  Cox cites to Dr.

---

[6] ███████████████████████████████████████████████████████ ¶ 14.

Feamster's testimony, who, relying on the Audible Magic Spreadsheet, opines that ███████

███████████████████████████████████████████████████████████████

███████████████████████ (Mot. at 3, 9, 11-12.).  As explained below, this is

hogwash.

### A. <u>**The Audible Magic Spreadsheet is a time-limited snapshot that lacks foundation and authentication.**</u>

Cox misleadingly implies that the Audible Magic Spreadsheet is an authenticated,

complete document that Audible Magic testified about during its deposition.  (Mot. at 8.)  That is

simply not the case.  The Audible Magic Spreadsheet was not identified during any questions or

answers in Audible Magic's deposition, nor was it an exhibit.  Gould Decl. ¶ 3 & Ex. 3 at 6–7

(Ikezoye Tr.)  The sole testimony that Cox relies upon comes from a handful of questions to

Audible Magic's corporate designee regarding its production of so-called ████████████ in

the abstract.  Gould Decl. Ex. 3 at 173:21–177:2 (Ikezoye Tr.)  In response to those questions,

the Audible Magic witness said that █████████████████████████████████████

█████████████████████████████████████████████████

████████████████████ *Id.*  Audible Magic produced nearly ████████

documents and Cox has not shown that the Audible Magic Spreadsheet is the document the

witness had in mind when answering questions.  Gould Decl. ¶ 15.

But even assuming the Audible Magic Spreadsheet is what Cox contends, at best, it is a

time-limited and incomplete snapshot of MarkMonitor look-ups.  It makes perfect sense that the

spreadsheet would not contain Audible Magic verifications for each of the works in suit.  When

MarkMonitor ████████████████████████████████████████████████

Bahun Decl. ¶ 16.  ████████████████████████████████████████

████████████████████████████████████████ *Id.*  Cox acknowledges that the

Audible Magic Spreadsheet covers ███████████████████████████████████

thus of course would not have the Audible Magic verifications that predated that period.

**B. <u>The MarkMonitor Spreadsheet is not a "summary" but rather an extract of actual Audible Magic data.</u>**

Cox incorrectly describes the "MarkMonitor Spreadsheet" that it seeks to preclude as a "summary" of Audible Magic data for which all underlying data must be provided. In fact, the MarkMonitor Spreadsheet *contains* Audible Magic data; it is *not a summary* of such data. Cox conflates extracting data from a database with providing a summary of data. The two are not the same thing. When Audible Magic positively identified the contents of an unknown audio file,



███████████████████ Bahun Decl. ¶ 17; Ikezoye Decl. ¶ 13. Those Audible Magic data records ██████████████████████████████████████████████

███████████ Bahun Decl. ¶ 18.

**C. <u>The allegedly spoliated data fields are superfluous and have no bearing on the accuracy of Audible Magic's verification.</u>**

The Audible Magic fields that Cox contends MarkMonitor should have captured earlier are superfluous. Bahun Decl. ¶¶ 22–24; Ikezoye Decl. ¶ 17. None of that Audible Magic data speaks to whether Audible Magic performed a verification or the accuracy of the verification. Bahun Decl. ¶ 22; Ikezoye Decl. ¶ 17. When Audible Magic tested whether there was a match, it provided a yes or no answer. *Id.* If yes, Audible Magic identified, ████████████ ████████████████████████████████ *Id.* That Audible Magic verification data was ████████████████████████████████ Bahun Decl. ¶ 18.

Any other Audible Magic data fields that MarkMonitor received at any point in time were wholly immaterial to the "yes" or "no" question of whether Audible Magic confirmed the suspect song as a match to a copyrighted work.  Bahun Decl. ¶ 22; Ikezoye Decl. ¶ 17.  That



Ikezoye Decl. ¶ 16.  Cox is free to challenge Audible Magic's false positive rate but having additional data showing ███████████████ While those data fields could conceivably be useful for other customers of Audible Magic, they have no bearing on whether Audible Magic accurately confirmed a match or what that match was.  Ikezoye Decl. ¶ 13.[7]

**D.** **An infringing file is an infringing file no matter when the verification occurred.**

Cox misleadingly presumes that there is some significance to whether the contents of the infringing files in MarkMonitor's infringement notices were identified during 2012-2014 versus before that period.  (Mot. at 14-15.)  It does not matter.  A file that is confirmed to be infringing in 2008-2011 is still infringing when a Cox subscriber is found downloading or distributing it in the Claim Period.

**E.** **Cox misunderstands the Audible Magic data and draws false conclusions from it.**

---

[7] For example, a video game streaming company might use this additional data to readily identify the location, scope and duration of infringing content on its platform for removal or muting of the audio.  Ikezoye Decl. ¶ 18.

Cox argues the materiality of the allegedly spoliated evidence based on its

misunderstanding of the Audible Magic data ██████████████████████████. (Mot. at 12,

examining the 236 spreadsheet.).  Cox argues that such data shows that some files did not match

any Audible Magic fingerprint, some had less than a 50% match, some had less than a 90%

match, and "[b]ecause MarkMonitor was not supposed to send a notice unless there was at least a

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████ (Mot. at 12.)

Once again, Cox's arguments are misleading, confused and wrong. ████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████ ¶ 21-23.

Cox then confuses things further by incorrectly conflating the ████████████████

███████████████████████████████████████. MarkMonitor sent

Cox infringement notices when the Cox subscriber ██████████████████████

█████████████████████ Bahun Decl., Appendix A ¶ 19.  That has absolutely nothing to

do with ███████████████████████████████████████

13

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████

## ARGUMENT

On motions for spoliation sanctions, "the general approach of courts in the Fourth Circuit has been to apply the clear and convincing evidence standard, especially where a relatively harsh sanction like an adverse inference is sought." *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 327 F.R.D. 96, 104–05 (E.D. Va. 2018) (citing cases). Preclusion, as Cox seeks here, is an even harsher sanction than an adverse inference. *See Dorchester Fin. Holdings Corp. v. Banco BRJ S.A.*, 304 F.R.D. 178, 184–85 (S.D.N.Y. 2014). In order to prevail on its motions, therefore, Cox must demonstrate, by clear and convincing evidence, a preservation obligation, spoliation of material evidence, and culpable conduct. *Turner v. United States*, 736 F.3d 274, 281-82 (4th Cir. 2013); Leiden Decl., Ex. BB (*BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, Case No. 1:14-cv-01611-LO-JFA, ECF. No. 447 at 3-4, Order on Defendants' Motion for Evidentiary Sanctions). Cox cannot satisfy those elements by any standard, and certainly not by clear and convincing evidence. And even if Cox could establish spoliation, Cox fails to show prejudice caused by the alleged spoliation and therefore the requested remedy is unwarranted.

---

[8] Cox's brief and the declaration from its counsel also misrepresent the data in the MarkMonitor Spreadsheet in arguing materiality. For example, Cox's counsel attests in her declaration that that ███████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████

### III.   COX FAILS TO DEMONSTRATE BY CLEAR AND CONVINCING EVIDENCE THAT ANY SPOLIATION OCCURRED.

#### A.   Cox fails to show clear and convincing evidence that Plaintiffs had a duty to preserve the allegedly spoliated evidence.

A duty to preserve attaches when a party reasonably anticipates litigation. *Turner*, 736 F.3d at 282.  Cox has not shown that Plaintiffs or RIAA or MarkMonitor reasonably anticipated litigation when the alleged spoliation occurred—*i.e.*, 2012-2014 and dating back to 2008.  Cox summarily contends, "[i]t cannot be disputed that Plaintiffs had a duty to retain their own evidence, and their agent's evidence, of the alleged direct infringements in this case."  (Mot. at 18.)  Cox theorizes: (1) "Plaintiffs anticipated the need for this data when they contractually obligated MarkMonitor to retain it"; and (2) Plaintiffs had a duty to preserve all the evidence generated by their agent, MarkMonitor, as it gathered evidence of infringement.  (Mot. at 18-19.).  But Cox is wrong.

Cox has not pointed to a single piece of evidence or testimony other than the RIAA contract to support its claim that Plaintiffs should have reasonably anticipated litigation.  Its reliance on that the contract misses the mark.  MarkMonitor was hired by RIAA to conduct a "P2P notice program," not a litigation program, and the contract expressly anticipated ███████ ████████████████████████████████████████████████████  Leiden Ex. T at 1; Marks Decl. ¶ 5.  That separate contract never happened and a litigation program did not take place.  Bahun Decl. ¶ 11.  Indeed, the entire purpose of the notice program was to move away from litigation against P2P end users and work with ISPs to address the problem of P2P infringement by their subscribers.  Marks Decl. ¶ 5.  The hope was that the ISPs, including Cox, would assist in changing the behaviors of end users by, among other things, adopting and reasonably implementing a repeat infringer policy that provides for termination of users'

accounts in appropriate circumstances.  *See Id.*; Gould Ex. 5 at 192:24–194:9 (McMullan Tr.).

Had Cox acted responsibly in response to its overwhelming knowledge of infringement

occurring on its network, this lawsuit would not exist.  It was Cox's disregard for the notices that

necessitated litigation after-the-fact, not before.

Even setting all that aside, a contractual provision requiring MarkMonitor to keep copies

of evidence does not *ipso facto* mean that litigation was reasonably anticipated.  The law is clear

that the mere theoretical possibility of litigation is not the same as reasonably anticipating

litigation.  *Samsung Elecs. Co. v. Rambus, Inc.*, 439 F. Supp. 2d 524, 547 (E.D. Va. 2006) (duty

to preserve is not triggered where litigation is a "vague or far-off possibility") (vacated on other

grounds); *B&D Boatworks, Inc. v. Doors, Inc.*, No. 2:05-CV-38 F(3), 2007 WL 9718184, at *5

(E.D.N.C. Sept. 7, 2007) (duty to preserve evidence exists when litigation is "reasonably

foreseeable[,]" but not when litigation is "merely possible").  The witnesses who were asked in

depositions testified that there was no expectation of litigation.  Gould Exs. 5, 7 (McMullan Tr.,

Bahun Tr.); Bahun Decl. ¶ 12.  And critically, Cox has no explanation how any duty by

MarkMonitor arising from its work for the Record Company Plaintiffs' agent (RIAA) could

attach to the Music Publisher Plaintiffs.[9]

## B. Cox fails to show by clear and convincing evidence that MarkMonitor failed to preserve material and relevant evidence.

Corporations are not obligated, "[u]pon recognizing the threat of litigation," to "preserve

every shred of paper, every e-mail or electronic document, and every backup tape[.]"  *E.I. Du

Pont De Nemours & Co. v. Kolon Indus., Inc.*, No. 3:09-CV-58, 2011 WL 1597528, at *10 (E.D.

---

[9] Cox's reliance on this Court's ruling in *BMG* regarding Rightscorp's duty to preserve evidence is misplaced. (Mot. at 4-5 and n.6).  Rightscorp was retained directly by the BMG Plaintiffs and the record was clear that both BMG and Rightscorp actually anticipated litigation all along, including from the threat of lawsuits in the Rightscorp notices to Cox and its retention of a litigation expert early in the claim period.

Va. Apr. 27, 2011) (noting that such a strict obligation "would cripple large corporations"); *see also Samsung*, 439 F. Supp. 2d at 542–43 (same).  Rather, the duty to preserve extends to relevant evidence that is material to the movant's cause.  *See Fed. Ins. Co. v. Locash,* No. 2:12-CV-504, 2014 WL 12588635, at *7 (E.D. Va. Feb. 18, 2014) ("[T]he record must show the Court that the spoliated matter was likely to have been favorable to its case.");  *E.I. Du Pont,* 2011 WL 1597528, at *12 (movant must establish, "based on concrete evidence rather than a fertile imagination, that access to the lost material would have produced evidence favorable to his cause.") (internal quotation omitted).  Evidence is therefore relevant for this purpose only if "a reasonable factfinder could conclude that the lost evidence would have supported the claims or defenses of the party that sought it." *E.I. Du Pont* 2011 WL 1597528, at *12 (internal quotation omitted).

The evidence Cox alleges MarkMonitor spoliated simply does not matter to Cox's cause and so cannot be the basis for a spoliation sanction.  Cox complains that, ███████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████

█████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████

17

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████[10]

### C. Cox fails to show by clear and convincing evidence that MarkMonitor spoliated evidence with a culpable state of mind.

To warrant spoliation, "the alleged destroyer must have known that the evidence was relevant to some issue in the anticipated case, and thereafter willfully engaged in conduct resulting in the evidence's loss or destruction." *Turner*, 736 F.3d at 281-82. There is no evidence here that MarkMonitor had a culpable mindset and certainty no clear and convincing evidence of it. Cox has nothing.

MarkMonitor was hired to send takedown notices to try to change the behavior of ISP's subscribers (including Cox's subscribers). At the time of the alleged spoliation, neither MarkMonitor nor Plaintiffs had reason to know the additional Audible Magic data that Cox claims was spoliated would years later be relevant to some unknown future litigation. It was only Cox's total disregard for Plaintiffs' notices that triggered the prospect of litigation years after MarkMonitor used Audible Magic for the file verification. In any event, MarkMonitor retained the Audible Magic identification of the audio files and has also provided copies of the infringing audio files themselves.

---

[10] The date of the Audible Magic verification also does not matter. The MarkMonitor Spreadsheet indicates ████████ ████████████████████████████████████████████ ahun Decl. ¶ 16. It is undisputed that some verifications occurred before the Claim period, but there is no requirement that verifications take place during the Claim Period. What matters is that the files identified in MarkMonitor's infringement notices to Cox contained Plaintiffs' copyrighted works. They did.

**IV.    COX'S REQUESTED REMEDY OF COMPLETE PRECLUSION OF THE MARKMONITOR SPREADSHEET IS GROSSLY DISPROPORTIONATE TO COX'S ALLEGED (BUT NON-EXISTENT) HARM.**

Cox's requested remedy—exclusion of the MarkMonitor Spreadsheet—is unwarranted. There is no allegation of bad faith and the preclusion is grossly disproportionate to the alleged spoliation or any alleged harm.  Because the infringement notices MarkMonitor sent to Cox identify only a representative sample of what was infringed, the hash value in the MarkMonitor Spreadsheet is the critical link between the notices and the full list of all works in suit.

"Determination of the correct sanction for a discovery violation is a fact-specific inquiry … Thus, judicial decisions which are discretionary cannot be tied down to a fixed rule or formula." *Trigon Ins. Co. v. United States*, 204 F.R.D. 277, 288 (E.D. Va. 2001).  However, "[i]t is well accepted that a court should always impose the least harsh sanction that can provide an adequate remedy.  The choices include—from least harsh to most harsh—further discovery, cost-shifting, fines, special jury instructions, preclusion, and the entry of default judgment or dismissal (terminating sanctions)." *Dorchester Fin. Holdings,* 304 F.R.D. at 185 (internal citations omitted).

Determining sanctions "depends most significantly on the blameworthiness of the offending party and the prejudice suffered by the opposing party." *Trigon*, 204 F.R.D. at 288; *see also E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 803 F. Supp. 2d 469, 509 (E.D. Va. 2011).  In order for Plaintiffs to have benefited and Cox to suffer prejudice, Cox would have to show that some of the allegedly infringing files are not what Audible Magic says they are. There is no record that has happened even once.  Cox has the Audible Magic artist, album, and track data, along with copies of the infringing files, and can check for itself whether Audible

Magic's verifications are correct.  Thus, no sanctions should issue, let alone the onerous one sought here.

Courts also consider the overall effect of preclusion on the case.  For instance, preclusion is a "particularly harsh measure" where the evidence is central to the offending party's claims. *Dorchester Fin. Holdings*, 304 F.R.D. at 185 (declining to preclude evidence that was destroyed "in bad faith" where offender's claims relied heavily on that evidence); *see also Passlogix, Inc. v. 2FA Tech.*, *LLC*, 708 F. Supp. 2d 378, 419–421 (S.D.N.Y. 2010) (finding that preclusion was "too harsh" even where offending party acted with "intentional bad faith[,]" because it would preclude the party from asserting its defense); *Bouygues Telecom, S.A. v. Tekelec*, No. 4:05-CV-78-FL, 2007 WL 9718141, at *6 (E.D.N.C. Feb. 12, 2007) (finding that even adverse inference instruction is not warranted unless the resulting prejudice is severe).

The MarkMonitor Spreadsheet containing Audible Magic verifications is the crucial link between the files "shared" by Cox subscribers and Plaintiffs' copyrighted works.  Plaintiffs' experts and Cox's experts rely upon that evidence and the case is organized around it.  There is no allegation of bad faith.  Precluding the MarkMonitor Spreadsheet is much too harsh.  Cox has not remotely justified any sanction, much less the draconian one it has requested.

## V.    COX'S OBJECTION THAT THE MARKMONITOR SPREADSHEET IS IRRELEVANT GOES TO WEIGHT, NOT ADMISSIBILITY, AND SHOULD BE OVERRULED.

Finally, Cox half-heartedly argues that the MarkMonitor Spreadsheet should be excluded as irrelevant because it is allegedly incomplete and lacks evidence of contemporaneous verification.  Of course, relevance is a broad standard and evidence having "any tendency to make a fact more or less probable than it would be without the evidence" is relevant.  Fed. R. Evid. 401.  There can be no real dispute that the MarkMonitor Spreadsheet tends to make it more

probable that the works in suit were verified by Audible Magic than without it.  It also tends to make it more probable that Plaintiffs' copyrighted works with the same hash values listed in Plaintiffs' notices were infringed by Cox's subscribers.  Cox ignores these vital points and presents arguments not on admissibility but weight.  Cox is free to cross-examine and a jury is more than capable of deciding what weight to afford it.

## CONCLUSION

For the multitude of reasons set forth herein, the Court should deny in its entirety Cox's motion for discovery sanctions and preclusion of the MarkMonitor Spreadsheet.

Dated September 13, 2019

Respectfully Submitted,

/s/ Scott A. Zebrak
Scott A. Zebrak (38729)
Matthew J. Oppenheim (*pro hac vice*)
Jeffrey M. Gould (*pro hac vice*)
Kerry M. Mustico (*pro hac vice*)
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Avenue, NW, 5th Floor
Washington, DC 20015
Tel:  202-480-2999
scott@oandzlaw.com
matt@oandzlaw.com
jeff@oandzlaw.com
kerry@oandzlaw.com

*Attorneys for Plaintiffs*