# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| SONY MUSIC ENTERTAINMENT, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>COX COMMUNICATIONS, INC., et al.,<br><br><br>    Defendants. | Case No. 1:18-cv-00950-LO-JFA |

## COX'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO <u>PRECLUDE CERTAIN EXPERT TESTIMONY BY CHRISTIAN TREGILLIS</u>

## <u>TABLE OF CONTENTS</u>

**Page**

I.  Introduction ................................................................................................ 1

II. Factual Background ..................................................................................... 2

    A.  Mr. Tregillis is qualified to estimate Plaintiffs' actual damages. .......... 2

    B.  Mr. Tregillis has calculated Plaintiffs' actual damages from the alleged infringement. ....................................................................................... 2

III. Argument ................................................................................................... 4

    A.  An estimation of Plaintiffs' actual damages is relevant to the jury's determination of statutory damages in this case. .................................... 4

    B.  Mr. Tregillis's reliance on Plaintiffs' disclosures regarding digital download revenue is proper. ................................................................. 6

    C.  Mr. Tregillis's calculation of displaced revenue based on the notice data is proper. ................................................................................................ 8

    D.  Mr. Tregillis did not calculate a license fee to infringe infinitely ....... 13

    E.  Mr. Tregillis does not provide legal opinion. ..................................... 16

    F.  Mr. Tregillis is qualified to opine regarding the data he analyzed. ..... 18

IV. Conclusion ............................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bressler v. Wilmington Tr. Co.*,
855 F.3d 178 (4th Cir. 2017) ............................................................................11, 12

*Country Road Music, Inc. v. MP3.com, Inc.*, 279 F. Supp. 2d 325 (S.D.N.Y.)............................16

*Dae Han Video Prod., Inc. v. Chun*,
No. CIV. A. 89-1470-A, 1990 WL 265976 (E.D. Va. June 18, 1990) ......................................4

*Dash v. Mayweather*, 731 F.3d 303 (4th Cir. 2013) ....................................................16

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993)........................................................................................15

*EMI April Music, Inc. v. White*,
618 F. Supp. 2d. 497 (E.D. Va. 2009) ................................................................4

*Exclaim Mktg., LLC v. DIRECTV, LLC*,
No. 5:11-CV-684-FL, 2014 WL 6783171 (E.D.N.C. Dec. 2, 2014) ................................11, 12

*Macro Niche Software, Inc. v. 4 Imaging Sols., L.L.C.*, No. CV H-12-2293, 2013
WL 12140417, at *4 (S.D. Tex. Dec. 18, 2013)....................................................17

*Seoul Broad. Sys. Int'l, Inc. v. Young Min Ro*,
No. 1:09CV433 LMB/IDD, 2011 WL 3207024 (E.D. Va. July 27, 2011)............................4

*Tyger Const. Co. Inc. v. Pensacola Const. Co.*,
29 F.3d 137 (4th Cir. 1994) ..........................................................................15, 16

**Other Authorities**

Fed. R. Evid. 702 ..........................................................................................8, 18

Nimmer on Copyright § 14.04[B]........................................................................4

## I.    INTRODUCTION

Recognizing there is no legitimate basis to exclude Mr. Tregillis's opinion in which he estimates Plaintiffs' actual harm in a case where they seek upwards of $1.5 billion in statutory damages, Plaintiffs base their entire motion on a blatant misrepresentation.  Plaintiffs claim that Mr. Tregillis, one of Cox's experts, determined his calculations from a non-existent license through which an individual obtains one of Plaintiffs' works and then is granted permission to distribute it an infinite number of times.  Plaintiffs claim Mr. Tregillis has valued this "license to infringe" ███.  He did no such thing.

As is routinely done in cases such as this, Mr. Tregillis calculated Plaintiffs' actual harm from the alleged infringement by assuming that each infringement notice sent during the claim period displaced Plaintiffs' revenue from one legitimate digital download.  To do so, Mr. Tregillis utilized a document Plaintiffs produced with the ***express purpose*** of Cox's expert performing this calculation.  Plaintiffs inexplicably side-step that well-documented fact and instead seize on their construct that Mr. Tregillis equates Plaintiffs' harm from infinite infringement to ███

In so doing, Plaintiffs also largely ignore the substance of Mr. Tregillis's analyses.  And when disposing of Plaintiffs' fallacy, their motion falls apart.  This warrants denial.  Indeed, nowhere do Plaintiffs dispute the relevance of an actual damages estimate in a statutory damages case, indicate that this Court allowed such testimony to go forward in *BMG*, or contradict that Mr. Tregillis is an eminently qualified damages expert with a focus on intellectual property valuation.

This is a case in which a group of more than 50 companies seek upwards of $1.5 billion in statutory damages based on the alleged infringement of over 10,000 copyrights.  The time period at issue, which ended nearly five years ago, is a snap-shot in the history of on-line piracy.  Peer-to-peer networks and the underlying technology at issue in this case are complex.  Mr. Tregillis puts Plaintiffs' claims in appropriate context.  Mr. Tregillis clearly explained the data upon which

he relies, his assumptions and methodologies, and the scope of his opinions. There can be no reasonable question that Mr. Tregillis performed a sound, reliable, and admissible analysis that will aid the jury in this complex case.

## II.  FACTUAL BACKGROUND

### A.  Mr. Tregillis is qualified to estimate Plaintiffs' actual damages.

Christian Tregillis, CPA, ABV, CFF, CLP[1] has a M.B.A. from the University of Chicago and a Bachelor's in Economics from Occidental College.[2]  Mr. Tregillis was formerly the chair of the Economic Damages Task Force of the American Institute of Certified Public Accountants.  *Id.* He is also a past chair of the Economic Damages Section and past member of the Steering Committee of the Forensic Services Section of the California Society of Public Accountants.  *Id.* Mr. Tregillis has testified in approximately 120 matters, including at depositions, hearings, arbitrations, and at trial in state and federal courts.  *Id.*

Mr. Tregillis's focus over the last 25 years has been analyzing financial, accounting, economic, statistical and market issues, primarily in regard to disputes and valuations.  *Id.*  He has extensive experience with disputes and valuations where intellectual property is at issue, including with respect to the music industry.  *Id.*

### B.  Mr. Tregillis has calculated Plaintiffs' actual damages from the alleged infringement.

Unlike Plaintiffs' experts[3] who are concerned with *all* of the notices sent to Cox for which there is data (including notices from outside the claim period, not relating to the works in suit, and

---

[1] Certified Public Accountant ("CPA"), Accredited in Business Valuation ("ABV"), Certified in Financial Forensics ("CFF"), Certified Licensing Professional ("CLP").

[2] Declaration of Thomas Patrick Lane in Support of Cox's Opposition to Plaintiffs' Motion to Preclude Certain Expert Testimony by Christian Tregillis ("Lane Decl."), Ex. 1 (Report of Christian Tregillis, CPA, ABV, CFF, CLP, dated April 10, 2019 ("Tregillis Rpt."), App. B).

[3] Specifically, Dr. Lehr, Dr. McGarty, and Professor McCabe.

from other rights holders), Mr. Tregillis was focused on estimating how Plaintiffs may have been damaged by the actionable infringement actually alleged in this case.[4]  In other words, assuming Cox is held liable for the infringement alleged between February 1, 2013 and November 26, 2014, which is purportedly represented by the notices sent during that time for the works in suit, Mr. Tregillis calculated how much of Plaintiffs' revenue, if any, might have been displaced by such actions.

In order to estimate Plaintiffs' displaced revenue from the actionable infringement alleged in this case, and for which there is evidence, Mr. Tregillis assumed that each RIAA Notice[5] sent regarding a Cox subscriber constitutes an act of actionable infringement (*i.e.*, evidence of an illegal digital download).  Mr. Tregillis then compared those figures to Plaintiffs' average revenue for a digital download during the Claim Period, derived from Plaintiffs' disclosures.  Based on the foregoing, Mr. Tregillis opined that a reasonable estimate of Plaintiffs' displaced revenue is ████████.  Lane Decl., Ex. 2 (Tregillis Supp./Rebuttal Rpt., ¶ 49).

Mr. Tregillis also performed variations of the above calculation, looking only at notices at different thresholds—*e.g.*, more than two, more than five, and more than 25.  Mr. Tregillis did so because, as outlined above, he has estimated Plaintiffs' displaced revenue.  Lane Decl., Ex. 2 (Tregillis Supp./Rebuttal Rpt., ¶¶ 22-34, 46-47); *id.*, Ex. 3 (Tregillis Dep. Tr. 111:24-112:8, 117:14-118:3, 130:15-131:10).  So, if the jury determined that ████████ overstates Plaintiffs' harm from Cox's subscribers' alleged actions, Mr. Tregillis has provided figures that assume that only

---

[4] Lane Decl., Ex. 1 (Tregillis Rpt., ¶¶ 1, 72-74); *id.*, Ex. 2 (Supplemental/Rebuttal Report of Christian Tregillis, CPA, ABV, CFF, CLP, dated May 15, 2019 ("Tregillis Supp./Rebuttal Rpt."), ¶ 49); *id.*, Ex. 3 (Tregillis Dep. Tr. 53:10-19).

[5] RIAA Notices refers to those notices sent by the RIAA on behalf of the Record Company Plaintiffs.  The Music Publisher Plaintiffs did not send Cox any notices during the Claim Period relating to the works in suit.

a subset of the notices would have displaced Plaintiffs' revenue.  *See, e.g.*, *id.* 83:19-86:24, 88:12-89:15.  These thresholds are also relevant because Plaintiffs (and their experts) rely on certain thresholds as well.  *See, e.g.*, *id.*, Ex. 14 (Lehr Rpt. ¶ 13).  In connection with the above analyses, Mr. Tregillis further determined how many times each of Plaintiffs' works were allegedly infringed and how many relevant notices were directed at each subscriber.  Lane Decl., Ex. 2 (Tregillis Supp./Rebuttal Rpt., ¶¶ 20-39); *id.*, Ex. 3 (Tregillis Dep. Tr. 128:15-129:3).  Mr. Tregillis also analyzed Plaintiffs' historical revenue data for each work in suit (to the extent it was produced by Plaintiffs).  Lane Decl., Ex. 1 (Tregillis Rpt., ¶¶ 79-82); *id.*, Ex. 2 (Tregillis Supp./Rebuttal Rpt., ¶¶ 50-52).

## III.    ARGUMENT

### A.    An estimation of Plaintiffs' actual damages is relevant to the jury's determination of statutory damages in this case.

Plaintiffs' motion simply ignores the irrefutable fact that a copyright plaintiff's actual damages is relevant to the jury's consideration of statutory damages.  *See, e.g.*, *Seoul Broad. Sys. Int'l, Inc. v. Young Min Ro*, No. 1:09CV433 LMB/IDD, 2011 WL 3207024, at *8 (E.D. Va. July 27, 2011) (a court begins by assessing "the underlying economic realities of the situation, including the actual damages suffered by the plaintiff, any expenses saved by the defendant in avoiding a licensing arrangement, and any profits reaped by the defendants in connection with the infringement") (citing *Olde Mill Co., Inc. v. Alamo Flag, Inc.,* No. 1:10cv130, 2010 WL 3430917 (E.D. Va. Aug. 27, 2010)); *see also EMI April Music, Inc. v. White,* 618 F. Supp. 2d. 497, 508-09 (E.D. Va. 2009); Nimmer on Copyright § 14.04[B] at 14-41 (actual damages, including revenues lost, should be considered in awarding statutory damages).  This is because "statutory damages should bear some relation to the actual damages suffered."  *Dae Han Video Prod., Inc. v. Chun*,

No. CIV. A. 89-1470-A, 1990 WL 265976, at *7 (E.D. Va. June 18, 1990) (considering actual damages suffered for setting the applicable range of statutory damages).

In *BMG*, after rejecting BMG's motion to exclude Cox's expert Dr. Ryan Sullivan (the arguments from which are largely parroted in Plaintiffs' instant motion), the Court permitted Dr. Sullivan to opine regarding BMG's purported actual damages.  After doing so, this Court instructed the jury on the issue of statutory damages as follows:

> You should award as statutory damages an amount that you find to be fair under the circumstances.  In determining the appropriate amount to award, you may consider the following factors: The profits that Cox earned because of the infringement; the expenses Cox saved because of the infringement; *the revenues that BMG lost because of the infringement*; the difficulty of proving BMG's damages; the circumstances of the infringement; whether Cox acted willfully or intentionally in contributorily or vicariously infringing BMG's copyrights; deterrence of future infringement; and the amount of harm, in the form of monetary loss, that BMG could reasonably have avoided but for the failure to mitigate damages, if you find that BMG did fail to mitigate.

Lane Decl., Ex. 4 (*BMG* Trial Tr. 2149:23-2150:10) (emphasis added).

In this case, Cox was forced to move to compel Plaintiffs to produce information relating to their actual damages.  In ruling in Cox's favor, Judge Anderson stated:

> ***There is no reasonable argument that revenues do [not] come into play even when you have statutory damages***.  So that puts it in the realm of we don't just get to wash our hands of … profit and loss information and revenues and lost revenue and things like that, just because we have statutory damages.
>
> ***And I understand that getting revenues doesn't translate directly into it, but it gives one a sense of how one could calculate on an industry basis what one could expect a general range of profit and loss to be based on revenues***.

Lane Decl., Ex. 5 (Jan. 25, 2019 Hr'g Tr. 26:21- 27:2) (emphases added).

Moreover, as Mr. Tregillis explained, his analysis demonstrates whether a work was infringed once or many times.  *Id.*, Ex. 1 (Tregillis Rpt., ¶ 86); *id.*, Ex. 2 (Tregillis Supp./Rebuttal

Rpt. ¶ 39).  Notably, Plaintiffs do not challenge these and related calculations, or Mr. Tregillis's conclusions drawn therefrom, with their Motion.

In sum, with their Motion, Plaintiffs do not even address, let alone dispute, that actual damages are relevant in a case in which a copyright plaintiff seeks statutory damages.

**B.   Mr. Tregillis's reliance on Plaintiffs' disclosures regarding digital download revenue is proper.**

The entire premise of Plaintiffs' motion is misplaced: Mr. Tregillis did ***not*** equate Plaintiffs' average revenue for a digital download to the value of a license to infringe infinitely, as they claim. Mot. at 4-5.  Rather, Mr. Tregillis counted each notice of infringement as a displaced digital download.  Plaintiffs' straw-man argument aside, they claim that "Mr. Tregillis did no analysis at all to determine whether the Record Company Plaintiffs' average revenue for the download of a single track from iTunes were the proper benchmarks to use in calculating a lost licensing fee for Cox's infringement."  Mot. at 5.  But Mr. Tregillis used information Plaintiffs produced to Cox ***for the express purpose of calculating actual damages***.  Indeed, Plaintiffs produced four documents that are each titled "████████████████████████████████ ████████"[6] They include information relating to how much revenue each Plaintiff group earned from digital downloads during the Claim Period.  Lane Decl., Ex. 6-9 (collectively, "Revenue Disclosures").

Plaintiffs' current claim that Mr. Tregillis cannot rely on these documents is remarkable because Plaintiffs' counsel unequivocally represented at a hearing before Judge Anderson that the Revenue Disclosures could be used, in part, to calculate actual damages:

---

[6] *See* Lane Decl., Ex. 3 (Tregillis Dep. 176:11-18) ("Q: Why did you look at the royalty rate for downloads on iTunes to come up with your royalty rate for your damages analysis? A: Because your disclosures identified that your clients received ████████████████████████ ████████"); *see also id.* 181:4-18.

Mr. Oppenheim: We've given them *… a detailed proffer from each of the entities of what – what that lost revenue per work is*. Right.

We didn't have to do that.  We did that to address their request.  So we went ahead and we did that.  *And actually informs on that one variable* [of revenue per work].

Lane Decl., Ex. 5 (Jan. 25, 2019 Hr'g Tr. at 21:20-25) (emphases added).  Moreover, Plaintiffs' corporate designees testified that the Revenue Disclosures were accurate and representative of how much Plaintiffs earned per digital download during the Claim Period.  *See, e.g.*, Lane Decl., Ex. 10 (Foley Dep. Tr. 82:12-85:12); *id.*, Ex. 11 (Leak Dep. Tr. 112:5-113:23); *id.*, Ex. 12 (Gallien Dep Tr. 75:3-78:13); *id.*, Ex. 13 (Kahn Dep. Tr. 97:19-99:15).

In addition, though Plaintiffs do not address (let alone critique) the substance of Mr. Tregillis's calculations in their Motion, relying entirely on their erroneous straw-man argument, they nevertheless misrepresent how he reached his calculations.  Plaintiffs claim that Mr. Tregillis utilized only the Record Company Plaintiffs' Revenue Disclosures to calculate the lost revenue for all Plaintiffs—including the Music Publisher Plaintiffs.  Mot. at 5.  Yet Mr. Tregillis clearly explained in his Opening Report that he conservatively estimated that Plaintiffs' revenue per digital download was ████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████  Lane Decl., Ex. 1 (Tregillis Rpt., ¶¶ 73-74); *see also id.*, Ex. 2 (Tregillis Supp./Rebuttal Rpt., ¶ 40).  Mr. Tregillis further explained that this estimate of ███████████████████████████████████████████████████████████

█████████████████████████████████  is conservative because it collectively credits Plaintiffs with revenue from *both* a sound recording and music composition, even though Plaintiffs are not asserting infringement of both for every work in this case.  *See also* Lane Decl., Ex. 3 (Tregillis

7

Dep. 171:16-172:4).  This estimate is conservative for the additional reason that Mr. Tregillis did not discount it based on each Plaintiff's profit margin during the Claim Period, ███████████ ███████████████████████.  Lane Decl., Ex. 2 (Tregillis Supp./Rebuttal Rpt., ¶ 42, n.13).

Given Plaintiffs' express representations to the Court and in depositions, there can be no reasonable dispute that Plaintiffs' Revenue Disclosures can be used to measure how much revenue each Plaintiff Group may have earned for every displaced digital download during the Claim Period for which there is evidence.  Thus, Mr. Tregillis's utilization of this information to determine this precise calculation is entirely proper.

**C.     Mr. Tregillis's calculation of displaced revenue based on the notice data is proper.**

In order to quantify Plaintiffs' displaced revenue from the infringement for which Plaintiffs claim in this case, Mr. Tregillis multiplied Plaintiffs' average revenue per digital download during the Claim Period, as disclosed by Plaintiffs, by the number of relevant notices.  In doing so, Mr. Tregillis also determined the number of notices received per subscriber and the number of notices received per work.  To the extent Plaintiffs have elicited evidence in support of their claim for liability and damages, Mr. Tregillis has considered it in reaching his opinion.  Accordingly, each of these measurements is relevant to the jury's determination of statutory damages in this case. Plaintiffs do not meaningfully argue otherwise and, for the reasons discussed herein, their Motion should be denied.

**1.     Mr. Tregillis considered all of the purported evidence in support of direct infringement.**

Plaintiffs claim that because it is impossible to determine the total amount of infringement that occurs on peer-to-peer networks, Mr. Tregillis's specific attempt in this case to estimate Plaintiffs' harm from the alleged infringement by *Cox's subscribers* is improper under Federal

Rule of Evidence 702.  Mot. at 9-10.  But the fact that one of Plaintiffs' works may have been infringed before or after the Claim Period, during the Claim Period but for which there is no evidence, or by users of other networks does not preclude Mr. Tregillis from opining as to Plaintiffs' actual harm from the infringement by Cox's subscribers that is alleged in this case.  For the following reasons, Plaintiffs' circular and unsupportable argument must be rejected.

*First*, Plaintiffs argue that Mr. Tregillis did not perform an analysis to determine whether the notice data "accurately represented the actual infringement occurring on Cox's network during the Claim Period."  Mot. at 10.  But Mr. Tregillis offers no opinions as to whether the notice data is an accurate representation of all of the infringement occurring on Cox's network during the Claim Period, so his decision not to analyze whether that is the case is entirely proper.  Moreover, Plaintiffs' flawed theory of exclusion is on full display with this argument in that it is not limited to the works in suit.  Plaintiffs cite no authority holding that an expert must analyze irrelevant theories that have nothing to do with the task at hand in order to be admissible under the Federal Rules of Evidence.

More critically, however, Plaintiffs' argument misses the very basic point that *if* there were evidence of additional infringement of the works in suit by Cox's subscribers during the Claim Period, Plaintiffs would be claiming relief for such infringement.  But Plaintiffs are expressly not claiming relief for any infringement other than that which is demonstrated by the data in this case.  *See* ECF 313, ¶ 14 (referring to the RIAA notices).  Further, Plaintiffs ignore that Mr. Tregillis repeatedly explained that had there been any additional data (there is not), he would have taken it

into account.  Lane Decl., Ex. 3 (Tregillis Dep. Tr. 24:5-20, 88:12-89:15, 91:16-92:9, 98:6-18, 159:14-160:10).  Plaintiffs' argument should be rejected.[7]

*Second*, Plaintiffs argue that on a peer-to-peer network, "it is impossible to observe the interactions between peers and count their distributions."  Mot. at 10.  While that may be true, Plaintiffs do not allege in this case that *Cox's subscribers* are responsible for any instance of infringement other than those purportedly captured by the notices in this case, let alone assert as a basis for excluding Mr. Tregillis's opinion.  For example, Plaintiffs do not allege that a specific Cox subscriber who received a notice on May 1, 2013 relating to Work X is *responsible* for Work X being available on a given peer-to-peer network.  In other words, this is not a case where Cox (or its subscribers) is solely responsible for making a pirated copy of a work available in the first instance.[8]  In fact, Plaintiffs' own notice data demonstrates that *all of the works* they allege Cox's subscribers infringed were actually available on peer-to-peer networks *before* they have any data demonstrating that a Cox subscriber infringed it.

Relatedly, apart from how one of Plaintiffs' works first appeared on a peer-to-peer network, Plaintiffs also do not claim that Cox is liable in this case for the acts of users of other ISPs.[9]  For example, if a Time Warner subscriber downloaded Work X (or made it available), and there is also evidence that a Cox subscriber possessed Work X (by virtue of the notice data), Plaintiffs are not

---

[7] To the extent Plaintiffs wish to argue that Mr. Tregillis's calculations do not take into account that there may be other instances of infringement, given the nature of peer-to-peer networks, they may attempt to do so on cross-examination.

[8] Indeed, this is not a case where content owners have sued a website that is responsible for hosting the infringing material in the first instance.  *See, e.g.*, *Capitol Records, Inc. v. MP3tunes, LLC*, Case No. 07-cv-09931-WHP (S.D.N.Y.) (file locker or hosting site sued by record labels and music publishers); *Columbia Pictures Industries, Inc. v. Fung*, Case No. 2:06-cv-05578-SVW-JC (C.D. Cal.) (file locker or hosting site sued by film studios); *UMG Recordings, Inc. v. Escape Media Group, Inc.*, Case No. 11-cv-008407 (S.D.N.Y.) (peer-to-peer website sued by record companies).

[9] Though, Plaintiffs' expert's damages calculations sweep in harm that is not attributable to their claims against Cox and its subscribers.

alleging that *Cox* is responsible for the *Time Warner subscriber's* allegedly infringing act.  Putting aside the legal bases of such a theory (there are none), if Plaintiffs wanted to pursue it, they could have produced notice data relating to other ISPs—yet they did not.  If they had, Mr. Tregillis would have considered it.  *See, e.g.*, Lane Decl., Ex. 3 (Tregillis Dep. Tr. 86:8-87:11).[10]

   *Fourth*, Plaintiffs do not address the fact that Mr. Tregillis's calculations were conservative in that he assumed that each notice, even if it is for the *same* work directed at the *same* subscriber, constitutes a unique instance of infringement.  In other words, if Cox Subscriber A received a notice on Monday, Tuesday, and Wednesday of a given week for Work X, Mr. Tregillis counted that as three unique instances of infringement by a Cox subscriber even though the data is merely alleged to be MarkMonitor communicating with the Cox subscriber on those sequential days and confirming that the Cox subscriber possesses the work.  Thus, Mr. Tregillis is assuming not only that every notice displaced a legitimate sale (which over-counts Plaintiffs' harm from Cox's subscribers' acts) but also that Cox's subscribers are solely responsible for many more instances of infringement than in actuality.  In any event, disputes as to conclusions drawn from an otherwise reliable damages methodology go to weight—not admissibility.  *Bressler v. Wilmington Tr. Co.*, 855 F.3d 178, 195 (4th Cir. 2017) ("[C]ourts may not evaluate the expert witnesses' conclusion itself, but only the opinion's underlying methodology.");  *see also Exclaim Mktg., LLC v.*

---

[10] Plaintiffs also ignore the fact that to the extent a Cox subscriber distributed a work to another Cox subscriber, only Cox subscribers are at issue, as opposed to other hundreds of millions of Internet subscribers globally who may be utilizing peer-to-peer networks, such acts of alleged infringement would necessarily be captured by the notice data that he considers, as he explained. Lane Decl., Ex. 17 (Reply Report of Christian Tregillis, CPA, ABV, CFF, CLP, dated June 13, 2019 ("Tregillis Reply Rpt."), ¶ 44) ("Assuming that the file was wrongfully obtained, then I understand the notice may be evidence of one distribution event.  If there were to have been a download by another user who had file sharing turned on, presumably the same file would have been seen on that downloader's computer, available for download.  But all of those events for which there is any evidence that these things occurred are already in the infringement notice dataset."); *id.*, Ex. 3 (Tregillis Dep. Tr. 83:19-85:24).

*DIRECTV, LLC*, No. 5:11-CV-684-FL, 2014 WL 6783171, at *5 (E.D.N.C. Dec. 2, 2014) (denying motion to exclude expert where methodology was sound and criticisms went to weight not admissibility).

*Lastly*, Plaintiffs disingenuously conclude that Mr. Tregillis "just conveniently proceeded while knowing that his data was not a reasonable proxy for the thing he was trying to study." Mot. at 10. But Mr. Tregillis sought to measure how much of Plaintiffs' revenue was displaced by Cox's subscribers' acts of infringement, assuming each notice constituted an act of infringement—not what Plaintiffs claim he did in this Motion. Accordingly, because Plaintiffs do not dispute that Mr. Tregillis counted all of the instances of alleged infringement implicated by the notices sent to Cox during the Claim Period, and they fail to assert any legitimate objections to his opinion and proposed testimony, Plaintiffs' Motion should be denied.[11]

###### 2. Plaintiffs resisted producing information relating to other instances of infringement, despite repeated inquiries.

Plaintiffs repeatedly claim as a basis to exclude Mr. Tregillis's opinion that he failed to take into account the full quantum of infringement on peer-to-peer networks. As discussed above, those arguments are meritless, as Mr. Tregillis's opinion is limited to actual damages related to this case. *See supra* at 8-12. Plaintiffs' claims are also disingenuous, however, as Plaintiffs resisted producing any information relating to the amount of infringement on peer-to-peer networks for the works in suit.

Cox originally requested Plaintiffs produce all notices of infringement sent to Cox and any other data relating to alleged infringement by Cox's subscribers not otherwise represented by the

---

[11] To the extent Plaintiffs claim that Mr. Tregillis excluded certain notices because he believes that the notice does not relate to a work in suit, such critiques go to the weight of Mr. Tregillis's analysis—not whether it is admissible. *Bressler*, 855 F.3d at 195; *see also Exclaim Mktg., LLC*, No. 5:11-CV-684-FL, 2014 WL 6783171, at *5.

notices.  In this regard, Plaintiffs produced only the notices that Mr. Tregillis counted—nothing else.  Cox sought the same from both the RIAA (Plaintiffs' agent for the notice program) and MarkMonitor (the entity that sent the notices) and received nothing.[12]  What Cox was looking for was some measure of how many notices Plaintiffs *could* have sent to Cox's subscribers but did not for one reason or the other.  Cox was also looking for any information that attempted to measure how much peer-to-peer activity there may have been, regardless of whether it made its way into a notice.  Plaintiffs produced nothing.  Nor did their agents, the RIAA and MarkMonitor.

Had Plaintiffs or their agents produced any such information, Mr. Tregillis would have considered it, as appropriate.  *See, e.g.*, Lane Decl., Ex. 3 (Tregillis Dep. Tr. 86:8-87:11).  Plaintiffs should not be rewarded for resisting production of information, to the extent it even exists, and later arguing that it is a basis for excluding one of Cox's experts.[13]  While Plaintiffs may believe that they have been harmed by peer-to-peer piracy since well before the claimed period here, and that it is rampant across the Internet, in this case they are only claiming relief for the instances of infringement by Cox's subscribers that they have alleged—nothing else.

### D.    Mr. Tregillis did not calculate a license fee to infringe infinitely.

Plaintiffs persistently argue that Mr. Tregillis opined that ▮▮▮ is a reasonable license fee for someone to make infinite copies of one of Plaintiffs' works.  That Plaintiffs continue to make

---

[12] Lane Decl., Ex. 18 (Cox's First Set of Requests for Production of Documents, Request No. 78); *see also* Ex. 19 (Cox's Subpoena *Duces Tecum* to MarkMonitor, Request Nos. 8, 9, 10, 11); *id.*, Ex. 20 (Cox's Subpoena *Duces Tecum* to the RIAA, Request No. 17).

[13] Indeed, Judge Anderson admonished Plaintiffs in another context that he would strike an expert report if Plaintiffs tried to utilize information that they did not otherwise provide to Cox because it was too difficult to produce.  *See* Lane Decl., Ex. 5 (Jan. 25, 2019 Hr'g Tr. at 31:13-20) ("I'll tell you that if your expert report comes in and it has a lot of information that you say was too hard to get, too tough to do, couldn't do it, all that kind of stuff your expert may not be able to testify. I mean, I will consider a motion that would preclude him or her from testifying if your representations that you and your clients have made were only to defend against discovery and not to prepare your own case.").

this argument, even though Mr. Tregillis plainly and patiently explained during his deposition that he calculated no such thing, is absurd.  It is a blatant straw-man argument and should be rejected for the reasons discussed herein.

*First*, Plaintiffs argue that "Cox's use of Plaintiffs' works is not comparable to an iTunes user's use of Plaintiffs' works."  Mot. at 4.  In so doing, Plaintiffs ignore that for purposes of calculating Plaintiffs' actual damages, Mr. Tregillis assumed that each notice constituted a displaced digital download.  As he explained during his deposition, he did *not* opine that each notice constituted a license to a Cox subscriber to infringe infinite times:

> Q: So when you say 'customary royalties' are you aware whether Plaintiffs have ever granted a license for licensees to distribute digital copies of Plaintiffs' works on peer-to-peer networks?
>
> A: That is not what I am talking about.  I am talking about the royalties for a download for individual use.

Lane Decl., Ex. 3 (Tregillis Dep. 195:17-25); *see also* 192:17-198:11.  Plaintiffs' counsel probed Mr. Tregillis regarding this numerous times; Mr. Tregillis consistently responded that he assumed each notice constituted a displaced digital download:

> Q: But the single track download on iTunes, you have acknowledged is the price for the user to pay to obtain a copy of that track for personal use, right?
>
> A: Right.
>
> Q: Okay.  But you are using that same royalty of an individual to upload a copy of that track to [peer] to peer network for unlimited distribution, aren't you?
>
> --
>
> A: No. No. It is not for unlimited distribution.  It is for distribution for which there is evidence.

*Id.* 181:4-18; *see also id.* 83:19-85:24, 99:6-22.[14]

*Second*, because Mr. Tregillis was not opining as to the value of a license to infringe infinitely, but rather a single displaced digital download (which is based on Plaintiffs' own disclosures), that he did not attempt to estimate the quantum of infringement is completely irrelevant.  Absent their argument that Mr. Tregillis performed an analysis that he plainly did not, Plaintiffs cannot articulate another basis to exclude this opinion.

*Third*, Plaintiffs devote only a few confused and conclusory sentences to arguing that the jury may be misled by Mr. Tregillis's opinions.  Mot. at 11-12.  Plaintiffs claim that Mr. Tregillis's analysis may "wrongly suggest[] that Plaintiffs' actual damages can be exactly determined."  *Id.* at 11.  Plaintiffs cite no case in which the plaintiff has elected statutory damages for which an actual damages expert has been excluded from a copyright case for this reason.  Indeed, putting aside Plaintiffs' misrepresentation regarding Mr. Tregillis's analysis (he is not opining on a license fee to infinitely infringe), his calculations are quite clear, as are the assumptions he has made and the variables he applies.  If Plaintiffs wish to expose what they view as infirmities, they should attempt to do so on cross-examination.  *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 596 (1993) (holding that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means" of attacking admissible expert evidence).

*Lastly*, Plaintiffs' claim that the facts of *Tyger Const. Co. Inc. v. Pensacola Const. Co.*, 29 F.3d 137 (4th Cir. 1994) "are instructive."  Mot. at 12.  In *Tyger*, the Fourth Circuit excluded an

---

[14] *See also* Lane Decl., Ex. 17 (Tregillis Reply Rpt., ¶ 66, n.37) ("I use a license fee as a relevant metric, based on the idea that Plaintiffs have not been paid this fee (actual damages and lost revenue/profits to Plaintiffs), as well as an amount that Cox arguably could have paid to cover the infringement notices, as a proxy for downloads (*i.e.*, license fees costs saved by Cox)—even though it would not be typical for an ISP to pay a license for its subscribers' downloads.").

expert's opinion because the expert utilized costs associated with mining one sand pit to estimate damages incurred in connection with mining another. The Fourth Circuit held that the expert should have analyzed the differences between these two sand pits in forming his opinion. Plaintiffs' heavy reliance on *Tyger* is premised on their sustained misrepresentation that Mr. Tregillis calculated a license fee for a subscriber to infringe infinitely. Indeed, Plaintiffs claim "[j]ust as in *Tyger*, Mr. Tregillis did no analysis of the similarities between the use at issue in his chosen royalty rate and Cox's infringing use." Mot. at 12. What Plaintiffs apparently mean is that Mr. Tregillis failed to analyze the similarities or differences between the license fee for a single-use digital download (the rate for which Plaintiffs produced in this case and do not challenge) and a license fee for infringing infinitely (which admittedly does not exist). Again, this is not what Mr. Tregillis has done, nor what he intends to do at trial. He has estimated Plaintiffs' lost revenue by estimating that each infringement notice displaced ***a single digital download***. There is no support for Plaintiffs' fear that Mr. Tregillis is going to testify that their damages from a subscriber infringing a single work ***infinite times*** is ███. That absurd premise was disposed of repeatedly by Mr. Tregillis during his deposition. *See supra* at 13-15. Plaintiffs' reliance on *Tyger* is misplaced and their arguments for Mr. Tregillis's exclusion should be rejected.[15]

**E.    Mr. Tregillis does not provide legal opinion.**

Mr. Tregillis does not provide legal opinion, as Plaintiffs argue. While Plaintiffs cite to portions of Mr. Tregillis's reports in support of his claim that he does so, they do not adequately explain why his opinions constitute legal opinion or how his use of legal terms is improper or

---

[15] Plaintiffs' reliance on *Dash v. Mayweather*, 731 F.3d 303, 319 (4th Cir. 2013) and *Country Road Music, Inc. v. MP3.com, Inc.*, 279 F. Supp. 2d 325, 331 (S.D.N.Y.) are similarly misplaced, as those cases deal with calculating a lost royalty or revenue rate where an improper comparable was used by the experts. That is not what Mr. Tregillis has done here. *See supra* at 13-16.

prejudicial.  For the reasons discussed below, Mr. Tregillis should not be excluded from providing necessary context to his opinions.

*First*, Plaintiffs point to certain paragraphs of Mr. Tregillis's reports in which he outlines the framework for statutory damages.  *See* Mot. at 13 (citing Tregillis Rpt., ¶¶ 83-86, 87; Tregillis Supp./Rebuttal Rpt., ¶¶ 40, 45, 54; Tregillis Reply Rpt., ¶¶ 72-73).  The requisite basis of Mr. Tregillis's opinion is the Copyright Act.  The framework of statutory damages provides the basic context to these calculations.  But he does not explain why the damages amounts are what they are under the Copyright Act, why Congress provided for the remedy, what factors are more important than others, or anything else that would improperly invade the province of the Court or the jury. Instead, Mr. Tregillis appropriately calculates how many of Plaintiffs' works exceed the statutory damages minimum of $750—███████  *See, e.g.,* Lane Decl., Ex. 3 (Tregillis Dep. Tr. 221:11-25). Thus, it is entirely proper for Mr. Tregillis to explain what considerations he took into account in calculating his damages estimate, as he did.[16]

*Second,* Plaintiffs point to two paragraphs of Mr. Tregillis's reply report in which he responds to criticisms from Dr. Lehr.  Mr. Tregillis merely opined that his attempt to calculate actual damages (*i.e.,* displaced digital downloads based on the number of infringement notices) is relevant to statutory damages and has more bearing on Plaintiffs' actual harm than the highly generalized academic studies cited by Dr. Lehr.  Indeed, Dr. Lehr cites numerous studies spanning decades that study the global impact of infringement on rights holders.  These studies are not

---

[16] In *BMG*, this Court allowed BMG's counsel to cross-examine Cox's actual damages expert regarding statutory damages, including the range of damages available and the relevant factors. *See* Lane Decl., Ex. 4 (*BMG* Trial Tr. 1763:12-1767:17).  Plaintiffs also cite *Macro Niche Software, Inc. v. 4 Imaging Sols., L.L.C.*, No. CV H-12-2293, 2013 WL 12140417, at *4 (S.D. Tex. Dec. 18, 2013).  In *Macro Niche Software, Inc.*, the court precluded an expert from testifying that the defendants' "infringement was willful" and consequently that the plaintiffs should be awarded $150,000 per copyright.  *Id.*  Mr. Tregillis offers no such opinion.

specific to the time period, not specific to the music industry, not specific to Plaintiffs, not specific to the works in suit, and not specific to the acts of Cox. Mr. Tregillis is thus rebutting Dr. Lehr's own claim as to what is relevant to statutory damages.

*Third*, Plaintiffs erroneously claim that Mr. Tregillis "goes so far as to opine on how the jury should award statutory damages …." Mot. at 13. Mr. Tregillis does not opine that the jury should or should not award a certain amount. Rather, Mr. Tregillis opines that Plaintiffs' actual damages are approximately ███████—which is indisputably much lower than the $1.5 billion Plaintiffs seek in statutory damages. Lane Decl., Ex. 2 (Tregillis Supp./Rebuttal Rpt. ¶ 49); *id.*, Ex. 3 (Tregillis Dep. Tr. 151:18-153:19, 209:7-23). Plaintiffs cite no case in which an expert is precluded from opining as to whether his estimate is lower or higher than another calculation. The Court will no doubt instruct the jury on the factors relevant to statutory damages, of which actual damages is one. Thus, Mr. Tregillis's opinion as to Plaintiffs' actual damages should have appropriate context and poses no prejudice to Plaintiffs.

### F.     Mr. Tregillis is qualified to opine regarding the data he analyzed.

Plaintiffs claim that Mr. Tregillis opines as to the "efficacy of Cox's antipiracy procedures" by cherry-picking two statements he makes in connection with his observations regarding the data he analyzed. Mot. at 15-17. Mr. Tregillis is qualified to provide the two opinions upon which Plaintiffs seize. They are otherwise admissible under Federal Rule of Evidence 702.

Dr. Lehr opines that Cox had an incentive to tolerate infringement based, in part, on the number of notices its subscribers received over time. Lane Decl., Ex. 14 (Lehr Rpt. ¶ 38). He provides this opinion because he claims it is relevant to statutory damages. Lane Decl., Ex. 15 (Lehr Reply Rpt., ¶ 12); *id.*, Ex. 16 (Lehr Dep. Tr. 270:15-271:12). In response, Mr. Tregillis opines that Cox's incentive to tolerate infringement, if any, is not indicated by the data he reviewed. Lane Decl., Ex. 17 (Tregillis Reply Rpt., ¶¶ 74-82).

18

In focusing his review of the infringement for which Plaintiffs can actually claim relief in this litigation—that is, Cox subscribers infringing Plaintiffs' works in suit during the Claim Period—Mr. Tregillis's analyses demonstrate that *more than half* of Cox's subscribers who were the subject of one relevant notice were not the subject of another.  Mr. Tregillis also explained that not one of Plaintiffs' works in suit was the subject of more than 31 notices.

As discussed above, these and Mr. Tregillis's other opinions are relevant to his calculation of actual damages.  *See supra* at 4-8.  There is no basis to exclude them.  However, Mr. Tregillis is further entitled to rebut Dr. Lehr's claim that the data demonstrates a financial incentive to tolerate infringement.  Mr. Tregillis should be permitted to explain that, in connection with calculating Plaintiffs' actual damages, he observed that infringement (as measured by the notice data) by Cox's subscribers does not increase, but rather decreases over time, and the vast majority of Plaintiffs' works were infringed only a very few times.  This demonstrates that contrary to Plaintiffs' inflammatory allegations in their Complaint, the vast majority of Cox's subscribers were *not* subject to multiple notices regarding Plaintiffs' works.  It also refutes the notion that Plaintiffs have been significantly harmed by the infringement in this case.

Plaintiffs' motion to preclude Mr. Tregillis from opining what the data he reviewed demonstrates in response to Dr. Lehr's opinions regarding Cox's purported financial incentive to permit infringement should be denied.  Mr. Tregillis is qualified to provide these opinions and they are otherwise admissible.

## IV.    CONCLUSION

Based on the foregoing, Plaintiffs' motion should be denied.  Mr. Tregillis should be permitted to testify at trial with respect to the opinions he put forward in his reports dated April 10, 2019, May 15, 2019, and June 13, 2019.

Dated: September 24, 2019

_s/ Thomas M. Buchanan_
Thomas M. Buchanan (VSB No. 21530)
WINSTON & STRAWN LLP
1700 K Street, NW
Washington, DC 20006-3817
Tel: (202) 282-5787
Fax: (202) 282-5100
Email: tbuchana@winston.com

_Attorneys for Defendants Cox_
_Communications, Inc. and CoxCom, LLC_

_Of Counsel for Defendants_

Michael S. Elkin (_pro hac vice_)
Thomas Patrick Lane (_pro hac vice_)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Tel: (212) 294-6700
Fax: (212) 294-4700
Email: melkin@winston.com
Email: tlane@winston.com

Jennifer A. Golinveaux (_pro hac vice_)
Thomas J. Kearney (_pro hac vice_)
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111-5840
Tel: (415) 591-1000
Fax: (415) 591-1400
Email: jgolinveaux@winston.com
Email: tkearney@winston.com

Diana Hughes Leiden (_pro hac vice_)
WINSTON & STRAWN LLP
333 S. Grand Avenue, Suite 3800
Los Angeles, CA 90071
Tel: (213) 615-1700
Fax: (213) 615-1750
Email: dhleiden@winston.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 24, 2019, the foregoing was filed and served electronically by the Court's CM/ECF system upon all registered users.

<div style="margin-left: 40%;">

*s/ Thomas M. Buchanan*
Thomas M. Buchanan (VSB No. 21530)
WINSTON & STRAWN LLP
1700 K Street, NW
Washington, DC 20006-3817
Tel: (202) 282-5787
Fax: (202) 282-5100
Email: tbuchana@winston.com

*Attorney for Cox Communications, Inc.
and CoxCom, LLC*

</div>