# Exhibit 5

```
                                                                1
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF VIRGINIA
                         Alexandria Division




---------------------------------:
                                 :
SONY MUSIC ENTERTAINMENT, et al.,:
            Plaintiffs,          :
                                 :
    -vs-                         :   Case No. 1:18-cv-950
                                 :
                                 :
COX COMMUNICATIONS, INC., et al.,:
            Defendants.          :
                                 :
---------------------------------:




                         HEARING ON MOTIONS

                         January 25, 2019

             Before:  John F. Anderson, U.S. Mag. Judge








APPEARANCES:

Matthew J. Oppenheim, Scott A. Zebrak, Jeffrey M. Gould,
and Kerry M. Mustico, Counsel for the Plaintiffs

Thomas M. Buchanan, Jennifer A. Golinveaux, and
Sean R. Anderson, Counsel for the Defendants
```

Norman B. Linnell   OCR-USDC/EDVA   (703)549-4626

21

1   -- if there are illegal distributions of it, right, and that
2   work was -- was displaced sales.  Maybe that's why there were
3   no sales, because their subscribers were massively infringing
4   it.
5           Now, in reality, we're talking about 11,000 works.
6   The overwhelming majority of them are very well known because
7   they are distributed by one of the major record companies or
8   music publishers in this country.
9           But, Your Honor, what -- we've tried to work with the
10  defendants to get at what they want here.
11          THE COURT:  All right.  Well, they want revenue by
12  work by channel.
13          MR. OPPENHEIM:  But the historical revenue, Your
14  Honor, doesn't inform that first variable.
15          What does inform that first variable is what would be
16  the lost revenue for each one of the distribution.  Leave
17  aside, they're never going to get the second variable, that is
18  how many distributions there were, they can't tell us, nobody
19  can tell us.  Right.  But even if they want that first
20  variable, we've given them a proffer, Your Honor, a detailed
21  proffer from each of the entities of what that -- what that
22  lost revenue per work is.  Right.
23          We didn't have to do that.  We did that to address
24  their request.  So we went ahead and we did that.  And that
25  actually informs on that one variable.

26

1   Honor, but --

2              THE COURT:  No, I mean --

3              MR. OPPENHEIM:  -- they have -- so, Your Honor, there
4   are statements by each one of the plaintiff groups in this case
5   describing that providing this revenue data would be
6   burdensome.  It would require an enormous amount of pulling of
7   information.  It is described as to each plaintiff group.  And
8   that burden needs to be measured as against the value of it.

9              Your Honor, to be clear, we're not saying that the
10  data doesn't exist, but it doesn't exist in a single system
11  where it's just a computer-generated printout.  If that were
12  the case, then we would just simply be arguing relevance.

13             But it would require an enormous amount of effort and
14  time and money to extract all of this information for -- for a
15  purpose that the defendants haven't explained.

16             THE COURT:  Well, I think they have explained the
17  purpose for it.  I don't think -- and again, I'm focusing on a
18  very limited aspect of what was requested in the various
19  document requests, 27, 28, 29, 36, 41, 43, and 44, and
20  interrogatories 2 and 3.

21             You know, I think under the circumstances -- and, you
22  know, I -- you know, there is no reasonable argument that
23  revenues do come into play even when you have statutory
24  damages.  So that puts it in the realm of we don't just get to
25  wash our hands of, you know, profit and loss information and

27

1  revenues and lost revenues and things like that, just because
2  we have statutory damages.
3         And I understand that getting revenues doesn't
4  translate directly into it, but it gives one a sense of how one
5  could calculate on an industry basis what one could expect a
6  general range of profit and loss to be based on revenues.
7         MR. OPPENHEIM:  So, Your Honor, what's interesting is
8  that the defendants pointed to the BMG case and what happened
9  in that case.  We went back and looked.  And without seeing
10 exactly what data was produced, we do know what their expert
11 said and did.
12        And all he did -- he didn't actually point to the
13 revenues, lost revenue per track.  What he did is he did an
14 analysis to determine the proportion of revenue from digital
15 downloads versus streaming.  So he took -- he got all of this
16 massive historical data and then he came up with just a simple
17 percentages.
18        That is, frankly, if that's all the expert wants,
19 that's publicly available information.  You don't need to ask
20 for historical revenue data to figure out the proportion of
21 streaming to downloads.  IFPI issues international reports on
22 those kinds of statistics, and their expert, I am sure, has
23 them or can easily find them.
24        So they argued for it, ultimately agreed, BMG agreed
25 to provide all that historical data in light of the motion, but

1 songs as well, right?

2     MS. GOLINVEAUX: Your Honor, I think that is likely
3 true, yes.

4     THE COURT: Okay. Well, again, one does not strive
5 for perfection in ruling on these things. One tries to rule
6 and move on and let the parties try and do things as best they
7 can given the information that they will have and have to do.

8     You're going to get their expert report on April 10,
9 it is going to have damages information. So my ruling is not
10 going to preclude you from seeking more information once you
11 get their expert report and provide -- come to me and say, you
12 know, based on their expert, my expert needs X.

13     I'll tell you that if your expert report comes in and
14 it has a lot of information that you say was too hard to get,
15 too tough to do, couldn't do it, all that kind of stuff, your
16 expert may not be able to testify.

17     I mean, I will consider a motion that would preclude
18 him or her from testifying if your representations that you and
19 your clients have made were only to defend against discovery
20 and not to prepare your own case.

21     MR. OPPENHEIM: Understood, Your Honor.

22     THE COURT: So you're going to be stuck with that.

23     You know, in reading through the declarations, you
24 know, I don't find that they are adequate to support a
25 proportionality argument relating to revenue information by