**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

SONY MUSIC ENTERTAINMENT, *et al.*,

       *Plaintiffs*,

       v.

COX COMMUNICATIONS, INC., *et al.*,

       *Defendants.*

Case No. 1:18-cv-00950-LO-JFA

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO PRECLUDE CERTAIN EXPERT TESTIMONY BY DR. KEVIN C. ALMEROTH**

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................. 1

II.    FACTUAL BACKGROUND ................................................................................ 2

III.   ARGUMENT ....................................................................................................... 5

    A.    Dr. Almeroth's Opinion that Cox's Response to Infringement Notifications Was Reasonable Will Assist the Jury in Understanding Key Evidence and Determining Important Facts in Issue ...................................................................... 5

    B.    Dr. Almeroth's Testimony is Reliable ................................................................... 9

    C.    Dr. Almeroth's Understanding of the Copyright Alert System as an "Industry Standard" is Accurate .......................................................................... 12

    D.    Dr. Almeroth's Testimony Cannot Be Curtailed by Plaintiffs' Failed Attempt to Assert Nonmutual Offensive Collateral Estoppel Against Cox ......... 15

    E.    Plaintiffs' Remaining Arguments Fail ................................................................. 17

        1.    Dr. Almeroth's Opinions Are Proper Rebuttal Testimony........................... 17

        2.    Dr. Almeroth Need Not Be an Expert in "ISP Infringement Policies" ......... 18

        3.    Dr. Almeroth is Not Proposing to Testify as to the Law of Net Neutrality....................................................................................................... 19

IV.    CONCLUSION.................................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Zurich Ins. Co.*,
  667 F.2d 1162 (4th Cir. 1982) ..............................................................16

*Arista Networks, Inc. v. Cisco Sys. Inc.*,
  2018 WL 8949299 (N.D. Cal. June 15, 2018) ...........................................8

*Armstrong v. Bos. Sci. Corp.*,
  2018 WL 3824375 (S.D. W. Va. Aug. 10, 2018) .......................................9

*Bresler v. Wilmington Tr. Co.*,
  855 F.3d 178 (4th Cir.), cert. denied, 138 S. Ct. 470, 199 L. Ed. 2d 357 (2017) ...................11

*Daugherty v. Ocwen Loan Servicing, LLC*,
  701 F. App'x 246 (4th Cir. 2017) ......................................................8, 9

*Gen. Elec. Co. v. Joiner*,
  522 U.S. 136 (1997)............................................................................11

*Kidder, Peabody & Co. v. IAG Int'l Acceptance Grp. N.V.*,
  14 F. Supp. 2d 391 (S.D.N.Y. 1998)......................................................9

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999)............................................................................19

*In re Microsoft Corp. Antitrust Litigation*,
  355 F.3d 322 (4th Cir. 2004) .........................................................16, 17

*Radiance Found., Inc. v. Nat'l Ass'n for the Advancement of Colored People*,
  27 F. Supp. 3d 671 (E.D. Va. 2013) ....................................................19

*SMD Software, Inc. v. EMove, Inc.*,
  945 F. Supp. 2d 628 (E.D.N.C. 2013)...................................................18

*Speechly Bircham, LLP v. Miller*,
  No. 8:10-CV-03041-AW, 2013 WL 1248779 (D. Md. Mar. 25, 2013) ...................................8

*Stewart Title Guar. Co. v. Linowes & Blocher*,
  42 F.3d 1386 (4th Cir. 1994) ................................................................8

*Team 7, LLC v. Protective Solutions, Inc.*,
  2010 WL 5348782 ..............................................................................11

*United States v. Barile*,
  286 F.3d 749 (4th Cir. 2002) ........................................................................7, 8, 9

*United States v. Offill*,
  666 F.3d 168 (4th Cir. 2011) ...............................................................................7

*United States v. Tsoa*,
  2013 WL 6145664 (E.D. Va. Nov. 20, 2013)........................................................9

*United States v. Wolf*,
  860 F.3d 175 (4th Cir. 2017) .............................................................................14

*Zoroastrian Ctr. v. Rustam Guiv Found.*,
  No. 1-13-CV-980, 2017 WL 63012 (E.D. Va. Jan. 4, 2017)..................................8

**Statutes**

DMCA...........................................................................................................................16

Fair Credit Reporting Act ............................................................................................10

**Other Authorities**

Federal Rule of Evidence 702......................................................................................18

Federal Rule of Evidence 702(a) ..................................................................................5

## I.      INTRODUCTION

Plaintiffs seek to preclude Cox's rebuttal expert, Dr. Kevin C. Almeroth, from testifying that Cox's response to notifications of copyright infringement was reasonable, claiming that this opinion will not help the jury determine any relevant issue in the case.  But Plaintiffs themselves put this at issue by taking the position from the beginning of this case that Cox's response to these notifications was insufficient and by putting forth two experts to opine that Cox could have taken additional steps to combat alleged infringement on its network.  At bottom, Plaintiffs seek to exclude Dr. Almeroth's testimony because it conflicts with evidence they will seek to introduce to the jury.  This is simply not a basis to exclude Dr. Almeroth's testimony under the principles set forth in the Federal Rules of Evidence and *Daubert*.

Plaintiffs do not question that Dr. Almeroth, a Ph.D. in computer science, is eminently qualified to testify regarding Cox's ISP system and how it functions within the Internet as a whole. Dr. Almeroth's rebuttal to the proposed testimony of Plaintiffs' experts assesses Cox's graduated response process in the context of the complexities of Cox's network within the broader Internet ecosystem, taking into account factors such as the ████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████ in addition to the objective effectiveness of Cox's graduated response process and industry standards in place during the relevant timeframe.  This testimony is well-grounded in the facts and will assist the jury to both understand the evidence relating to Cox's graduated response and determine the sufficiency of Cox's response to alleged infringement on its network—a fact that Plaintiffs put at issue—within the proper context.  And Plaintiffs' remaining objections to Dr. Almeroth's testimony are simply part of Plaintiffs' ongoing quest to prevent the jury from hearing evidence that Cox's graduated response was ███████████████████████████████████████████████████████████ But

this evidence is indisputably relevant and a proper basis for Dr. Almeroth's conclusions.  Plaintiffs'

motion should be denied in its entirety.

## II.     FACTUAL BACKGROUND

Dr. Almeroth holds a Bachelor of Science, a Master of Science, and a Ph.D., all in the area

of computer science.  Dr. Almeroth has been a Professor in the Department of Computer Science

at the University of California, Santa Barbara since 1997.  Over his nearly 30-year career, Dr.

Almeroth has concentrated his research on, among other things, the delivery of multimedia content

and data between computing devices, including study of network architectures.[1]  He is both a re-

spected member of the academic community, having been awarded a number of leadership posi-

tions for academic journals and conferences, as well as a professional sought after as a consultant

by both major well-established technology companies as well as innovative start-ups.[2]

Dr. Almeroth relies on his background and experience in the area of computer networking

to rebut certain opinions of Plaintiffs' experts Barbara Frederiksen-Cross and Dr. Terrence P.

McGarty.

*First*, Dr. Almeroth rebuts opinions in the Ms. Frederiksen-Cross' Report tha

[3]

This rebuttal opinion is grounded in Dr. Almeroth's extensive knowledge of computer networking

---

[1] *See* Declaration of Diana Hughes Leiden ("Leiden Decl."), Ex. 1 Almeroth Report, ¶ 8.
[2] *See id.*, ¶¶ 20-23.  Dr. Almeroth has served as a witness on these topics in a number of cases, as detailed in his CV.  While Plaintiffs characterize him as "the epitome of a professional testifier" based solely on the number of times he has been deposed and testified at trial on the last four years, Mot. at 2, they do not argue that this has any bearing whatsoever on the propriety of his testimony in this case.  Nor do they challenge in any way that Dr. Almeroth in eminently qualified as an expert in computer networking and computer science.
[3] *See id.*, ¶¶ 139-40.

in general and his analysis of Cox's network specifically.[4]  He opines that, in light of the ████

████████████████████████████████████████████████████████████

████████████████████████████████████████  Cox's graduated response

process is a reasonable response to notices of alleged copyright infringement.[5]  He also notes that

Ms. Frederiksen-Cross████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████

    *Second*, Dr. Almeroth rebuts opinions in the McGarty Report that████████████

████████████████████████████████████████████████████████████

Dr. Almeroth relies on both his extensive knowledge of computer networking, the capabilities of

tools such as Procera to "block" or "shape" categories of Internet traffic, and his knowledge and

analysis of Cox's network specifically ████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████[7]  Dr. Almeroth concludes that

Cox reasonably responded to notifications of copyright infringement by employing its graduated

response (including suspending and terminating subscribers for repeated violations when appro-

priate).████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████[8]  Dr. Almeroth also rebuts McGarty's opinion that ████████████



---

[4] *See, e.g., id.* ¶ 134.
[5] *Id.*
[6] *See* Leiden Decl., Ex. 1 (Almeroth Rpt., ¶ 139).
[7] *Id.*, ¶¶ 162-82.
[8] *Id.*, ¶¶ 141-42, 182.

████████████████████████████████████████████████████████████████

███████████████ opining that this would not have been reasonable given the importance of education and investigation involving human interaction that was involved in Cox's graduated response process.[9]

Dr. Almeroth's rebuttals of Ms. Frederiksen-Cross and Dr. McGarty are further corroborated by his review of the Copyright Alert System ("CAS") and the fact that ████████████ ████████████████████████████████████████████████████████████████

████████████████████[10]   They are also corroborated by his review of the Rebuttal Expert Report of Cox's expert Lynne J. Weber, Ph.D., whose analysis ████████████████████ ████████████████████████████████████████████████████████████████ ███████████████████████████

Notably, Plaintiffs do not seek to exclude any of Dr. Almeroth's opinions relating to computer networking, the nature and complexities of Cox's ISP system and how it relates to the broader Internet, the technical operation of peer-to-peer file-sharing protocols, or the capabilities of network management tools like Procera (including on Cox's network).  Instead, Plaintiffs' motion is focused *solely* on his testimony relating to "the reasonableness of Cox's response process to notices of alleged copyright infringement in light of the characteristics of Cox's network, the Internet as a whole, and industry standards."  Mot. at 2-3.[12]

---

[9] *Id.*, ¶ 142.
[10] *Id.*, ¶¶ 143-58.
[11] *Id.*, ¶ 135.
[12] Specifically, Plaintiffs seek to preclude testimony relating to the opinions set forth in Paragraphs 30, 35, 134-138, and 143-158 of Dr. Almeroth's report.  *See* Mot at 3 n.1; *see also* Leiden Decl., Ex. 1 (Almeroth Rpt.).

III.    **ARGUMENT**

A.    **Dr. Almeroth's Opinion that Cox's Response to Infringement Notifications Was Reasonable Will Assist the Jury in Understanding Key Evidence and Determining Important Facts in Issue**

Plaintiffs argue that Dr. Almeroth's testimony on the reasonableness of Cox's response to notifications of copyright infringement is a pure "legal conclusion" that will not assist the jury to "understand the evidence or to determine a fact in issue" as required by Federal Rule of Evidence 702(a). *See* Mot. at 6-8. This is plainly untrue from even a cursory review of Dr. Almeroth's expert report.

As is clear from their motion, Plaintiffs will seek to present evidence to the jury that, in response to infringement notices from Plaintiffs, "Cox continued to provide its Internet service to known infringers" "[r]ather than stop those subscribers from using its Internet service to infringe." Mot. at 7. As Plaintiffs argue in their summary judgment brief:

> Cox had knowledge that infringement was substantially certain to result from its continued provision of Internet access to subscribers who failed to stop infringing despite repeated warnings and suspensions. Cox explicitly reserved to itself in its AUP the right to terminate subscribers who infringed. Yet, rather than exercise the that authority to stop the infringement, Cox did exactly the opposite, taking steps ██████████ of infringement notices it would accept and process … and providing a safe haven to specific infringers repeatedly cited in notices.

ECF No. 312 at 26-27; *see also id*. at 29-30 (arguing that Cox had the right and ability to control the alleged infringements because it could have terminated additional subscribers); *id*. at 37 (arguing that Cox is not entitled to the affirmative defense of innocent infringement due to the nature of its response to infringement notifications).

This is also the subject of testimony of Plaintiffs' proposed experts. ████████████

████████████████████████████████████████████████████████████

.[13]   And Dr. McGarty proposes to testify that

[14]

Dr. Almeroth's testimony rebuts the proposed opinions of Ms. Frederiksen-Cross and Dr. McGarty and will assist the jury in understanding the evidence relating to Cox's response to notifications of copyright infringement that will be presented at trial.  Specifically, Dr. Almeroth puts Cox's graduated response in the context of a number of important factors, including:



- ████████████████████████████████████████████████
- ████████████████████████████ and
- █████████████████████████████████████████████████
  ████████████████████████████[15]

Based on his analysis of these factors in addition to his extensive technical background in computer networking, Dr. Almeroth concluded that Cox's graduated response was reasonable, and also that

███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
████████[16]   He further concluded, in response to Dr. McGarty's opinions, that ████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████

---

[13]*See* Leiden Decl., Ex. 2 (Frederiksen-Cross Rpt, pg. 9).
[14] *Id.* Ex. 3 (McGarty Rpt., ¶¶ 29-30).
[15] *See* Leiden Decl., Ex. 1 (Almeroth Rpt., ¶¶ 30, 134); *Id.,* Ex. 4 (Almeroth Dep., 94:21-95:21).
[16] *Id.*

████████████████████████████████████████████████ [17] Putting Cox's
response to copyright infringement notifications in the context of all of these factors will undoubtedly assist the jury to both understand the evidence and determine whether Cox's response to alleged infringement was sufficient.

Dr. Almeroth is therefore neither offering a "legal conclusion" or stating a legal standard, and the case law cited by Plaintiffs is easily distinguishable. *See United States v. Barile*, 286 F.3d 749, 760 (4th Cir. 2002) (excluding the expert's opinion that a 510(k) submission "did not contain materially misleading statements" because the term "materially" has a "specialized legal meaning" in the securities context); *United States v. Offill*, 666 F.3d 168, 174-75 (4th Cir. 2011) (noting that expert testimony merely stating a legal standard or drawing a legal conclusion by applying law to the facts is generally not helpful to a jury, but holding that expert testimony concerning "general securities law concepts and practice" was *admissible* because it clarified a complex legal regime.). Plaintiffs' reliance on *Barile* is particularly surprising because the court in that case held that expert opinion on whether or not aspects of submissions on which the defendant was indicted "were reasonable is precisely the type of expert testimony that could assist the trier of fact in its determination." 286 F.3d at 761.

Nor is Dr. Almeroth's opinion on the reasonableness of Cox's graduated response process merely a "lay matter" that the "jury is capable of understanding and deciding without the expert's help." *See* Mot. at 8. As set forth above, Dr. Almeroth's testimony will put the evidence at issue (i.e., Cox's graduated response process) in the context of Cox's network capabilities, the multiple

---

[17]*See* Leiden Decl., Ex. 1 (Almeroth Report, ¶ 138); *see also id.*, Ex. 4 (Almeroth Dep., 94:21-95:21)████████████████████████████████████████

risks that Cox must manage on its network on a daily basis, and industry standards, and he rebuts

the opinions of Plaintiffs' experts who propose to testify that Cox's response to notifications of

copyright infringement were insufficient.

Indeed, courts in this circuit routinely permit experts to testify on what is "reasonable."

*See Daugherty v. Ocwen Loan Servicing, LLC*, 701 F. App'x 246, 255 (4th Cir. 2017) (finding the

expert's testimony on the reasonableness of the party's conduct because "[r]easonableness is a

subject on which experts routinely testify"); *Speechly Bircham, LLP v. Miller*, No. 8:10-CV-

03041-AW, 2013 WL 1248779, at *2 (D. Md. Mar. 25, 2013) ("expert testimony can be required

in making a reasonableness determination"); *Zoroastrian Ctr. v. Rustam Guiv Found.*, No. 1-13-

CV-980, 2017 WL 63012, at *3 (E.D. Va. Jan. 4, 2017) (noting that defendants could have proven

their entitlement to a portion of the attorneys' fees "through other, well-established means includ-

ing time reports and expert testimony as to reasonableness"); *Stewart Title Guar. Co. v. Linowes*

*& Blocher*, 42 F.3d 1386 (4th Cir. 1994) ("As a general rule, in order to prove the [element of

neglect of a reasonable duty], a plaintiff must introduce expert testimony to establish what consti-

tutes a reasonable duty."); *Barile*, 286 F.3d at 761.[18]

As the cases relied on by Plaintiffs make clear, expert opinion on "reasonableness" is gen-

erally not helpful to the jury where it is an element of the cause of action, because in that scenario

---

[18] Plaintiffs claim in a footnote that "Dr. Almeroth has been precluded in other cases from opining on factual issues that require no expert testimony."  Mot. at 8 n.4.  In the single case cited by Plaintiffs, the court struck a handful of paragraphs in his expert report in which he summarized facts on which he relied to come to ultimate conclusions which the court found him qualified to offer, but clarified that it was not precluding the defendant's ability generally to introduce those facts at trial.  *Arista Networks, Inc. v. Cisco Sys. Inc.*, 2018 WL 8949299, at *3 (N.D. Cal. June 15, 2018).  While this ruling is of course irrelevant to the admissibility of Dr. Almeroth's opinions in this case, here the reasonableness of Cox's response to notifications of infringement is not "a factual issue about which the jury needs no expert testimony"—it is a conclusion based on his expertise in computer networking and his analysis of the specific facts in this case.

the expert would merely be opining on a legal conclusion or applying the law to the facts.  *See United States v. Tsoa*, 2013 WL 6145664 (E.D. Va. Nov. 20, 2013) (excluding expert testimony regarding "[t]he reasonableness of conduct and a party's then-existing state of mind" because "reasonableness" was a legal element of the cause of action); *Compare Armstrong v. Bos. Sci. Corp.*, 2018 WL 3824375 (S.D. W. Va. Aug. 10, 2018) (same); *Kidder, Peabody & Co. v. IAG Int'l Acceptance Grp. N.V.*, 14 F. Supp. 2d 391 (S.D.N.Y. 1998) (finding that an expert's opinion on reasonableness was the "functional equivalent" of an opinion that Kidder did not act with malice, which was one of the elements of the claims).  As Plaintiffs themselves note, "Cox's alleged 'reasonableness' is not an element of any of the claims or affirmative defenses in the case."  Mot. at 1.  Dr. Almeroth's testimony that Cox reasonably responded to alleged infringement on its network, however, properly rebuts proposed testimony from Plaintiffs' experts that Cox's response was insufficient.

### B.  Dr. Almeroth's Testimony is Reliable

Plaintiffs next argue that Dr. Almeroth's testimony regarding the reasonableness of Cox's response to notices of infringement does not meet the standards set forth in *Daubert* because his analysis lacks "a standard or generally accepted technique used to determine 'reasonableness,'" Mot. at 8-11, noting that Dr. Almeroth does not "provide[s] [a] definition of the term or "identify the line dividing 'reasonable' and 'unreasonable.'"  *Id*. at 9.  But Plaintiffs cite no authority—and do not even argue—that an expert must provide a definition of "reasonableness" in order to pass *Daubert*'s gatekeeping requirement.  In fact, the case law makes clear that expert testimony on "reasonableness" is appropriate where the expert undertakes an assessment based on the totality of the circumstances.  *See Barile*, 286 F.3d at 759 (expert opined that the defendant acted reasonably in light of his legal obligations under a complex statutory scheme); *Daugherty*, 701 Fed.

App'x at 254-55 (court permitted expert testimony that the defendant did not reasonably investigate erroneous information on the plaintiff's credit report, based on both the totality of the defendant's conduct and the regulatory framework of the Fair Credit Reporting Act). As set forth above, Dr. Almeroth's opinions are predicated on his extensive background in computer networks, the characteristics of Cox's network, his analysis of a number of risks that Cox manages, the nature and effectiveness of Cox's graduated response, and his review of the conduct of other ISPs during the same timeframe, among other things. *See supra*.[19]  Because his opinion was grounded in his analysis of the totality of the circumstances, Dr. Almeroth was not required to put forth a "definition" or "test" of reasonableness.[20]

And Plaintiffs' argument that Dr. Almeroth should have considered a number of *additional* facts in reaching his conclusions provides no basis to exclude the testimony at issue here. *See* Mot. at 10-11 (listing seven facts that Dr. Almeroth either did not consider, or considered and did not find relevant, such as ███████████████████████████████████████████

███████████████████████████████████████████████████████████████████

---

[19] *See also* Leiden Decl., Ex. 4 (Almeroth Dep., 19:24-21:12) (listing a number of bases for his opinions on the reasonableness of Cox's graduated response, including █████████████

*see also id.* at 64:12- 65:13 █

[20] Plaintiffs' argument is particularly unconvincing given that their own experts testified that ████

██████████████████████.  But it is black letter law that any question regarding the sufficiency of the evidence that Dr. Almeroth considered goes to the weight of his testimony, not its admissibility.  *See Bresler v. Wilmington Tr. Co.,* 855 F.3d 178, 195 (4th Cir.), cert. denied, 138 S. Ct. 470, 199 L. Ed. 2d 357 (2017) ("questions regarding the factual underpinnings of the expert witness' opinion affect the weight and credibility of the witness' assessment, not its admissibility"); *see also Team 7, LLC v. Protective Solutions, Inc.,* 2010 WL 5348782 at *3.  Instead, pursuant to the court's "gatekeeping" role, the focus is on whether the testimony is reliable and can aid the finder of fact at trial.  *Id.*  In any event, Dr. Almeroth explained in detail during his deposition why ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Dr. Almeroth's conclusions, therefore, are not his "*ipse dixit*" or his "subjective beliefs concerning the role of an ISP in the Internet ecosystem," *see* Mot. at 10, but rather opinions based on his background and qualification as an expert in the relevant field applied to the specific facts of the case.  None of Plaintiffs' cases are applicable here.  Unlike in *Joiner* where the expert did not rely on any facts in the record, here Dr. Almeroth's opinions are "extrapolate[d] from existing data." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).  And, unlike in *Zuckerman v. Wal-Mart Stores E., L.P.*, Dr. Almeroth's testimony is not based on unsupported "speculation."  611 F. App'x 138, 138 (4th Cir. 2015) (per curiam).  Finally, in *Pugh v. Louisville Ladder, Inc.*, the court found that the expert's testimony was admissible because he properly analyzed and tested the evidence,

---

[21] *See, e.g.*, Leiden Decl., Ex. 4 (Almeroth Dep. at 81:16-82:2).

and there was no evidence to suggest that his analysis was unreliable. 361 F. App'x 448, 454 (4th Cir. 2010).  Similarly, here, Dr. Almeroth grounded his rebuttal opinions in his own knowledge of computer networking in addition to facts and data specific to this case (including ██████████ ████████████████████████████████████████████████

### C.   Dr. Almeroth's Understanding of the Copyright Alert System as an "Industry Standard" is Accurate

In addition to examining Cox's graduated response in the context of the characteristics of Cox's network and the Internet as a whole, Dr. Almeroth also considered an inter-industry agreement in place during Plaintiffs' claim period which established a similar graduated response to notifications of copyright infringement on other ISPs' networks.[22]

Specifically, during the timeframe at issue in this case, five major ISPs (Comcast, Time Warner, Cablevision, AT&T, and Verizon, which together provided Internet service to the vast majority of Internet users in the United States), content owners, the RIAA, and the Motion Picture Association of America ("MPAA") entered into an agreement to address and deter online copyright infringement. That agreement was memorialized in a Memorandum of Understanding ("MOU") signed by the participating parties.[23] The MOU established "[a] reasonable, alert-based approach [to] help to protect legal rights granted by copyright and stem the unlawful distribution of copyrighted works, while providing education, privacy protection, fair warning, and an opportunity for review that protects the lawful interests of consumers" known as the "Copyright Alert System" or "CAS."[24]  The RIAA and many of the Plaintiffs were signatories to this MOU and participants in CAS.[25]  The CAS MOU required participating ISPs to develop, implement, and

---

[22] Leiden Decl., Ex. 1 (Almeroth Rpt., ¶¶ 143-58).
[23] *See* ECF No. 286-1, Declaration of Jeffrey M. Gould ("Gould Decl."), Ex. 7 (Memorandum of Understanding or "MOU," Plaintiffs_00286200 at Plaintiffs_00286220-36).
[24] *See id.* at pg. 1.
[25] *See id.*, at pgs. 2-3, 16, 24.

enforce copyright alert programs under which copyright owners would send infringement notices to participating ISPs (to be forwarded to subscribers) and set out steps that ISPs would take in response to multiple notices of infringement relating to a single subscriber, and established limits to the number of notices an ISP was required to process.[26]

Cox was not a signatory to the CAS, and instead had already implemented its own graduated response for responding to copyright infringement notices sent to Cox by rights holders years before CAS was implemented by the other ISPs.  In fact, Cox's graduated response ███████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ █████████████████████████[27]  Dr. Almeroth analyzed the CAS MOU and other related evidence (such as the ISPs' implementation agreements) and concluded that the fact that the RIAA and certain Plaintiffs signed onto CAS ██████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████[28]

Plaintiffs dispute that CAS was an "industry standard" (despite the fact that it was inarguably an inter-industry agreement between five major ISPs and the owners of the vast majority of musical compositions and sound recordings in the U.S.) and ask this Court to preclude Dr. Almeroth from characterizing it as such.  Mot. at 13-16.  But, whatever issue Plaintiffs have with the phrase "industry standard," Dr. Almeroth's conclusions were based on the simple (and undisputed)

---

[26] *Id.* at pgs. 8-15.
[27] *See* Leiden Decl., Ex. 5, (Cox Residential Abuse Ticket Handling Procedures).
[28] *See* Leiden Decl., Ex. 1 (Almeroth Rpt., ¶ 158).

fact that ███████████████████████████████████ [29] Dr. Almeroth reviewed the

relevant materials and concluded that ████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████ This conclusion is based on the

relevant CAS documentation that he reviewed and which details in black and white: (1) the identity

of the parties who signed onto CAS; (2) what the CAS MOU required; and (3) how the ISPs im-

plemented the CAS.  Dr. Almeroth's conclusion ████████████████████████

██████████████████████████████████ not "faulty

assumptions," no matter how much Plaintiffs dispute the term "industry standard."  Furthermore,

the case law is clear that it is appropriate for experts to opine on relevant industry standards.  *See,*

*e.g.*, *United States v. Wolf*, 860 F.3d 175, 194 (4th Cir. 2017).

Plaintiffs' only remaining arguments on this score boil down to their position that CAS is

simply irrelevant to this case.  Mot. at 15.  But this argument is meritless.  Plaintiffs allege that

Cox ███████████████████████████████████████████████████████

████████████████████ [31]  At the same time, the RIAA and many Plaintiffs signed onto the

CAS, which was touted as the standard participating rights holders and ISPs were to abide by for

detecting copyright infringements, for sending notices of infringements to ISPs, and for how ISPs

were to interact with their subscribers in response to receiving notices.  Cox has taken the position

---

[29] *See* Leiden Decl., Ex. 4 (Almeroth Tr., 168:1-13); *see also id.* at 70:16-71:14 ████████

████████████████████████████████████████████████████

*see also id.* at 77:13-19.
[30] *Id.*, Ex. 1 (Almeroth Rpt., ¶ 158).
[31] ECF No. 136, Amended Complaint ¶ 2.

that its graduated response was a more effective method for combating alleged copyright infringe-

ment than the CAS because, among other things, ████████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████ The effectiveness of the measures de-

tailed in the CAS and that the ISPs implemented for responding to the copyright infringement

notices—endorsed by the RIAA and Plaintiffs—is therefore highly relevant to this case.

### D.   Dr. Almeroth's Testimony Cannot Be Curtailed by Plaintiffs' Failed Attempt to Assert Nonmutual Offensive Collateral Estoppel Against Cox

In this motion and in their motion for summary judgment, Plaintiffs attempt to estop Cox

from litigating certain factual and legal issues that (they claim) were raised and resolved in the

*BMG* litigation.  Mot. at 4-6.  Specifically, Plaintiffs argue that "[i]n *BMG*, this Court already

determined, and the Fourth Circuit affirmed, that Cox did not reasonable implement a repeat in-

fringement policy," which they claim is "the identical issue Dr. Almeroth intends to refute."  *Id.*

at 5.  This argument fails several times over.[32]

*First*, this argument is inappropriate for a *Daubert* motion and appears to be Plaintiffs'

attempt to circumvent the page limit for its summary judgment motion—Plaintiffs relegated its

collateral estoppel argument to a footnote in its summary judgment motion, while spending pages

on this argument in this motion.  And Plaintiffs cite to no authority whatsoever to support its po-

sition that the Court should exclude an expert witness because the party offering the expert is

estopped from "relitigating" an issue.

---

[32] Cox incorporates by reference the portion of its summary judgment opposition brief relating to collateral estoppel as if fully set forth herein.

15

*Second*, collateral estoppel simply does not apply here.  "To apply collateral estoppel or issue preclusion to an issue or fact, the proponent must demonstrate" that the issue or fact is identical to one previously litigated, actually resolved, and "critical and necessary" to the prior judgment, that the prior judgment is final and valid, and that the party to be precluded had a full and fair opportunity to litigate the issue.  *In re Microsoft Corp. Antitrust Litigation*, 355 F.3d 322, 326 (4th Cir. 2004).  "The burden is on the party asserting collateral estoppel to establish its predicates, and this of course includes presenting an adequate record for the purpose." *Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1166 (4th Cir. 1982).  As in their motion for summary judgment, here Plaintiffs appear to seek preclusive effect for an issue addressed by the Fourth Circuit in rejecting Cox's DMCA safe harbor defense in *BMG*.  *See* Mot. at 5.  But because Cox has not raised a DMCA safe harbor here, the facts and conclusions recited there are not "identical" to any issue presented here, making estoppel unavailable.  *See, e.g., Microsoft*, 355 F.3d at 326.

*Third*, Plaintiffs' argument that "this Court in *BMG* precluded Cox's putative expert, William Rosenblatt, from opining on topics identical to those proffered by Dr. Almeroth" is simply false.  Mot. at 5.  In *BMG*, Mr. Rosenblatt's affirmative testimony relating to the DMCA, Cox's repeat infringer policy, the policies of other ISPs, and Rightscorp's software compared to MarkMonitor's was excluded because Mr. Rosenblatt was offered as a "technologist" and was thus limited to discussing the technical overview of Rightscorp, BitTorrent, and how ISPs function in general.[33]  Mr. Rosenblatt, who was not an expert in computer networking, was not proposing to offer opinions on Cox's graduated response in the context of Cox's network capabilities or the Internet as a whole.  In any event, Plaintiffs do not even attempt to argue that the elements of

---

[33] *See* Leiden Decl., Ex. 6 (ECF No. 676, Nov. 23, 2015 transcript of proceedings); *see also* Gould Decl., Ex. 3 (ECF No. 450, BMG's Motion *in Limine*).

collateral estoppel would apply to bar Dr. Almeroth's testimony based on the Court's prior ruling relating to Mr. Rosenblatt in *BMG*, and of course they would not because the issues are not "identical." *Microsoft*, 355 F.3d at 326.

### E.    Plaintiffs' Remaining Arguments Fail

#### 1.    <u>Dr. Almeroth's Opinions Are Proper Rebuttal Testimony</u>

Dr. Almeroth's analysis was conducted directly in rebuttal to opinions set forth in the Frederiksen-Cross and McGarty Reports.  *See supra*, Section II.  Plaintiffs claim that the opinions at issue in their motion are not truly "rebuttal" opinions because neither Ms. Frederiksen-Cross nor Dr. McGarty used the word "reasonable" in their reports.  Mot. at 11.  This semantic argument lacks any merit.

First, Ms. Frederiksen-Cross's opinion was not limited to  *See* Mot. at 11.  She analyzed Cox's CATS system and opined on what she perceived as its flaws.[34]  Ms. Frederiksen-Cross specifically opined                             The fact that she did not specifically opine that Cox's graduated response was "unreasonable" is irrelevant—her proposed testimony is that                             Similarly, although Dr. McGarty did not use the term "unreasonable," his opinion was that                             Again, Dr. McGarty espoused that Cox

---

[34] *See* Leiden Decl., Ex. 2 (Frederiksen-Cross Rpt, ¶¶ 144, 147).
[35] *Id.* at ¶ 17.
[36] *See* Leiden Decl., Ex. 3 (McGarty Rpt., ¶ 30).

███████████████████████████████████████████████████████████████

████████████████   Dr. Almeroth's opinion that Cox's graduated response was reasonable in light of

the restraints of its network and other abuses it was required to manage is a direct rebuttal to these

opinions.

2.   Dr. Almeroth Need Not Be an Expert in "ISP Infringement Policies"

The law does not require Dr. Almeroth to be an expert on "ISP infringement policies" in

order testify about Cox's CATS system.[37]   Rather, experts must have "specialized knowledge"

measured by "satisfactory knowledge, skill, experience, training nor education on the issue for

which the opinion is proffered." *SMD Software, Inc. v. EMove, Inc.*, 945 F. Supp. 2d 628 (E.D.N.C.

2013); *see also* Fed. R. Evid. 702.  Plaintiffs do not dispute that Dr. Almeroth has expertise in the

areas of computer science, computer networks and protocols, and wireless networking, which pro-

vides the basis for his opinions that Cox's graduated response process was reasonable in light of

(among other things) how Cox's network functioned within the broader context of the Internet.

And while not offered as an expert in "ISP infringement policies," he is knowledgeable both about

Cox's graduated response process and how other major ISPs responded to copyright infringement

on their networks during the relevant timeframe.[38]   And, even assuming that Plaintiffs are correct

(despite the fact that their own experts lack specialized knowledge about "ISP infringement poli-

cies" yet propose to testify on the same subject), "[a]n imperfect fit between the expert's

knowledge and experience and the issues before the court impacts the weight given to the expert's

---

[37] Notably, even though Ms. Frederiksen-Cross is neither an expert on ISP infringement policies
nor statistics. ████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
████████████████████████████████   *See* Leiden Decl., Ex. 2 (Fred-
eriksen-Cross Rpt.).
[38] *See* Leiden Decl., Ex. 1 (Almeroth Rpt., ¶¶ 124-58).

testimony, not its admissibility." *Radiance Found., Inc. v. Nat'l Ass'n for the Advancement of Colored People*, 27 F. Supp. 3d 671, 674 (E.D. Va. 2013).[39]

> 3. Dr. Almeroth is Not Proposing to Testify as to the Law of Net Neutrality

Contrary to Plaintiffs' argument, Mot. at 16, Dr. Almeroth is not offering an opinion "on the law of net neutrality." Instead, in rebutting McGarty's opinion ███████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ███████████████████████████████████ He provides no opinion on the legality of blocking peer-to-peer traffic; instead, ███████████████████████ ████████████████████████████████████████████████ ██████████ Tellingly, Plaintiffs do not seek to exclude any of Dr. Almeroth's ultimate conclusions about what Cox could have done to manage peer-to-peer traffic.

## IV. CONCLUSION

Based on the foregoing, Plaintiffs' motion should be denied. Dr. Almeroth should be permitted to testify at trial with respect to the opinions he put forward in his report dated May 15, 2019.

---

[39] Plaintiffs misunderstand the holding in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). There, the expert's testimony was not excluded because of a lack of specialized knowledge in the relevant area, but because the court found that his testimony was unreliable. *Id.* at 1173 ("the methodology employed by the expert in analyzing the data obtained in the visual inspection, and the scientific basis, if any, for such an analysis"). Similarly, in *Oglesby v. Gen. Motors Corp.*, the court held that the expert was qualified but that the testimony was unreliable because it was based on assumptions. 190 F.3d 244, 250 (4th Cir. 1999).
[40] *See* Leiden Decl., Ex. 1 (Almeroth Rpt., ¶ 115). While Plaintiffs cite Paragraphs 114 through 122 of the Almeroth Report, he discusses net neutrality only in Paragraphs 114 through 116.
[41] *See id.* at ¶ 122.

Dated: September 24, 2019

Respectfully submitted,

*/s/ Thomas M. Buchanan*
Thomas M. Buchanan (VSB No. 21530)
WINSTON & STRAWN LLP
1700 K Street, NW
Washington, DC 20006-3817
Tel: (202) 282-5787
Fax: (202) 282-5100
Email: tbuchana@winston.com

*Attorney for Cox Communications, Inc.
and CoxCom, LLC*

*Of Counsel for Defendants*

Michael S. Elkin (*pro hac vice*)
Thomas Patrick Lane (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
Email: melkin@winston.com
Email: tlane@winston.com

Jennifer A. Golinveaux (*pro hac vice*)
Thomas Kearney (*pro hac vice*)
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111-5840
Telephone: (415) 591-1000
Facsimile: (415) 591-1400
Email: jgolinveaux@winston.com
Email: tkearney@winston.com

Diana Hughes Leiden (*pro hac vice*)
WINSTON & STRAWN LLP
333 S. Grand Avenue, Suite 3800
Los Angeles, CA 90071
Telephone: (213) 615-1700
Facsimile: (213) 615-1750
Email: dhleiden@winston.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 24, 2019, the foregoing was filed and served electronically by the Court's CM/ECF system upon all registered users.

<u>*/s/ Thomas M. Buchanan*</u>
Thomas M. Buchanan (VSB No. 21530)
1700 K Street, NW
Washington, DC 20006-3817
Tel: (202) 282-5787
Fax: (202) 282-5100
Email: tbuchana@winston.com

*Attorney for Cox Communications, Inc.*
*and CoxCom, LLC*