UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

SONY MUSIC ENTERTAINMENT, *et al.*,

    Plaintiffs,

v.

COX COMMUNICATIONS, INC., *et al.*,

    Defendants.

Case No. 1:18-cv-00950-LO-JFA

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' OPPOSITION TO COX'S MOTION TO EXCLUDE THE TESTIMONY OF PUTATIVE EXPERT <u>WILLIAM H. LEHR, Ph.D.</u>**

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................1

BACKGROUND ..................................................................................................................2

ARGUMENT ........................................................................................................................3

    I.     The Legal Standard ................................................................................................3

    II.    Dr. Lehr's opinion that Cox had an economic incentive to tolerate infringement is relevant to liability ..........................................................................................4

    III.   Dr. Lehr's analysis is relevant to statutory damages because it shows how Cox profited from infringement and demonstrates the need for deterrence .........................6

    IV.   Dr. Lehr's opinion that Cox saved costs by tolerating infringement is relevant ..........8

    V.    Dr. Lehr's analysis of infringing subscribers' data charges is admissible .....................9

    VI.   Dr. Lehr's opinions regarding harm from piracy to the music industry generally, and to Plaintiffs specifically, are admissible ...................................................................11

CONCLUSION....................................................................................................................14

## TABLE OF AUTHORITIES

**<u>CASES</u>**

*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001) ...........................................12

*Arista Records, Inc. v. Flea World, Inc.*,
   No. CIV.A. 03-2670(JBS), 2006 WL 842883 (D.N.J. Mar. 31, 2006) ......................................6

*Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124 (S.D.N.Y. 2009) ..........................9

*Basic Books, Inc. v. Kinko's Graphics Corp.*, 758 F. Supp. 1522 (S.D.N.Y. 1991) ......................7

*BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 149 F. Supp. 3d 634 (E.D. Va. 2015),
   *aff'd in part, rev'd in part on other grounds*, 881 F.3d 293 (4th Cir. 2018) .............................5

*BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*,
   No. 1:14-cv-1611, Dec. 1, 2015 Hr'g Tr. ...................................................................................1

*BMG Rights Mgmt. v. Cox Comm'ns, Inc. et. al.*,
   199 F. Supp. 3d 958 (E.D. Va. 2016) ......................................................................................10

*Bresler v. Wilmington Tr. Co.*, 855 F.3d 178 (4th Cir. 2017) ........................................................4

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) ........................................................4

*Ellison v. Robertson*, 357 F.3d 1072 (9th Cir. 2004) .....................................................................6

*John Wiley & Sons, Inc. v. Book Dog Books, LLC*,
327 F. Supp. 3d 606 (S.D.N.Y. 2018) .............................................................................................7

*Lowry's Reports, Inc. v. Legg Mason, Inc.*, 302 F. Supp. 2d 455 (D. Md. 2004) ..........................7

*Psihoyos v. John Wiley & Sons, Inc.*, No. 11 CIV. 1416 JPO, 2012 WL 5506121
   (S.D.N.Y. Nov. 7, 2012), *aff'd*, 748 F.3d 120 (2d Cir. 2014) ....................................................7

*Shapiro, Bernstein & Co. v. H. L. Green Co.*, 316 F.2d 304 (2d Cir. 1963) ..................................5

*Sony BMG Music Entm't v. Tenenbaum*, 660 F.3d 487 (1st Cir. 2011) ...................................... 12

*Structural Polymer Grp. v. Zoltek Corp.*, 543 F.3d 987 (8th Cir. 2008) ........................................4

*UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC*,
   No. A-17-CA-365-LY, 2019 WL 3207803 (W.D. Tex. July 16, 2019) ................................. 12

## TABLE OF AUTHORITIES
(Continued)

*UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC*,
 No. A-17-CA-365-LY, 2019 WL 3207803 (W.D. Tex. July 16, 2019) ................................... 1

*UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC*,
 384 F. Supp. 3d 743 (W.D. Tex. 2019) ..................................................................................... 1

*United States v. Allen*, 403 F. App'x 800 (4th Cir. 2010) ................................................................ 4

*United States v. Leftenant*, 341 F.3d 338 (4th Cir. 2003) ............................................................ 4, 5

*United States v. Offill*, 666 F.3d 168 (4th Cir. 2011) ...................................................................... 4

*United States v. Queen*, 132 F.3d 991(4th Cir. 1997) ..................................................................... 5

*Westberry v. Gislaved Gummi AB*, 178 F.3d 257 (4th Cir. 1999) ................................................... 4

### **RULES**

Fed. R. Evid. 702 .........................................................................................................................3, 4

Fed. R. Evid. 403 ............................................................................................................................13

## INTRODUCTION

Dr. William H. Lehr offers testimony on the economic harms from the infringement and the direct financial benefits, in the forms of increased revenues and reduced costs, Cox has enjoyed from the infringement. Dr. Lehr's expert opinions reflect his review and analysis of the record evidence, his related research, and his extensive career advising clients on and studying the economic effects of digital technology infrastructure. His testimony will assist the jury to understand the effects of Cox's malfeasance and its financial interests in the infringement.

In trying to exclude Dr. Lehr's testimony, Cox conflates detriment to its cause with inadmissibility. In a brief of nearly 30 pages, Cox takes the Court on a journey through Cox's perception of the shortfalls in his testimony, akin to what it might do on cross-examination. But Cox's attacks are just that, *i.e.*, criticisms and counterpoints that go merely to weight. Cox hopes that something, anything, might stick; for purposes of admissibility, nothing does.

In BMG's lawsuit against Cox, this Court rejected Cox's near-identical attempt to bar Dr. Lehr's testimony. Decl. of Jeffrey M. Gould in Supp. of Pls.' Opp. to Mot. to Exclude the Testimony of Putative Expert William H. Lehr, Ph.D., Ex. 1 at 63:5-19 (*BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, No. 1:14-cv-1611, Dec. 1, 2015 Hr'g Tr.). Another court has similarly denied an internet service provider's attempts to exclude Dr. Lehr's testimony in near-identical circumstances. *UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC*, 384 F. Supp. 3d 743, 770 and n.8 (W.D. Tex. 2019) (relying on expert report from Dr. Lehr to deny defendant ISP's motion for summary judgment); *UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC*, No. A-17-CA-365-LY, 2019 WL 3207803, at *5 (W.D. Tex. July 16, 2019) (report and recommendation denying ISP's *Daubert* motion to exclude Dr. Lehr's testimony).

There is no reason to reach a different result here. Cox's motion to exclude the testimony of Dr. William H. Lehr should be denied.

## BACKGROUND

Dr. William H. Lehr is a telecommunications and Internet industry economist and consultant with over twenty-five years of experience and is a research scientist at the Computer Science and Artificial Intelligence Laboratory at the Massachusetts Institute of Technology ("MIT"). Decl. of Thomas M. Buchanan in Supp. of Cox's Mot. to Exclude the Testimony of Putative Expert William H. Lehr, Ph.D. ("Buchanan Decl."), ECF No. 307-1, Ex. A (Expert Report of William H. Lehr, Ph.D., April 19, 2019 ("Lehr Rept.")), App'x A. Dr. Lehr's research at MIT focuses on the economics and regulatory policy of Internet infrastructure industries. *Id.*

In this case, Dr. Lehr is prepared to offer expert testimony on the following points:

- Piracy of copyrighted materials, including peer-to-peer piracy of sound recordings and musical compositions, has caused copyright holders, including Plaintiffs, significant economic harm. Buchanan Decl. Ex. A ¶ 13 (Lehr Rept.).

- Myriad factors, such as the amount of infringement that goes undetected, make a quantification of the economic harm Plaintiffs experience as a result of piracy, including copyright infringement by Cox and its subscribers, virtually impossible to calculate. Buchanan Decl. Ex. A ¶ 13 (Lehr Rept.).





Cox has moved to exclude all of Dr. Lehr's testimony, except for that related to his attempts to calculate Cox's profits from the provision of high-speed Internet during the years 2013 and 2014.  Cox's Mot. to Exclude the Testimony of Putative Expert William H. Lehr, Ph.D. ECF No. 306.

## ARGUMENT

I.   **The Legal Standard**

Federal Rule of Evidence 702 governs the admissibility of expert testimony.  Under Rule 702, scientific, technical, or other specialized knowledge may be presented to the jury by an

expert witness if: (1) it is potentially helpful to the jury; (2) it is based on sufficient facts or data; (3) it is the product of reliable principles and methods; and (4) the testimony is applied to the facts of the case. Fed. R. Evid. 702. The "touchstone of the rule is whether the testimony will assist the jury." *United States v. Offill*, 666 F.3d 168, 175 (4th Cir. 2011).

Trial courts act as gatekeepers to ensure that expert testimony is reliable and relevant. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). "The inquiry to be undertaken by the district court is 'a flexible one' focusing on the 'principles and methodology' employed by the expert, not on the conclusions reached." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999) (quoting *Daubert*, 509 U.S. at 594-95). Courts "should be mindful that Rule 702 was intended to liberalize the introduction of relevant expert evidence" and that, "[a]s with all other admissible evidence, expert testimony is subject to being tested by '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.'" *Id.* (quoting *Daubert*, 509 U.S. at 596); *see also* Fed. R. Evid. 702 advisory committee's note to 2000 amendment ("[R]ejection of expert testimony is the exception rather than the rule."). As a rule, "questions regarding the factual underpinnings of the [expert witness'] opinion affect the weight and credibility" of the witness' assessment, "not its admissibility." *Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 195 (4th Cir. 2017) (quoting *Structural Polymer Grp. v. Zoltek Corp.*, 543 F.3d 987, 997 (8th Cir. 2008)).

## II. Dr. Lehr's opinion that Cox had an economic incentive to tolerate infringement is relevant to liability.

Dr. Lehr's opinion concerning Cox's economic incentive to tolerate infringement is relevant to liability. "[R]elevance typically presents a low barrier to admissibility." *United States v. Allen*, 403 F. App'x 800, 801 (4th Cir. 2010) (quoting *United States v. Leftenant*, 341 F.3d 338, 346 (4th Cir. 2003)). Thus, evidence is relevant if it is "worth consideration by the

jury" or has a "plus value." *Id.* (quoting *United States v. Queen*, 132 F.3d 991, 998 (4th Cir. 1997)). Dr. Lehr's opinion that Cox had an economic incentive to tolerate infringement is directly relevant to Cox's vicarious liability, and a jury should have the opportunity to consider it in determining whether Cox received a direct financial benefit from the infringement.[1]

Vicarious liability requires a "causal relationship between the infringing activity and any financial benefit a defendant reaps, regardless of how substantial the benefit is in proportion to a defendant's overall profits." *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 149 F. Supp. 3d 634, 675 (E.D. Va. 2015), *aff'd in part, rev'd in part on other grounds*, 881 F.3d 293 (4th Cir. 2018) (quoting *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004)). "When the right and ability to supervise coalesce with an obvious and direct financial interest in the exploitation of copyrighted materials—even in the absence of actual knowledge that the copyright monopoly is being impaired—the purposes of copyright law may be best effectuated by the imposition of liability upon the beneficiary of that exploitation." *Shapiro, Bernstein & Co. v. H. L. Green Co.*, 316 F.2d 304, 307 (2d Cir. 1963) (internal citations omitted). Cox cannot credibly argue that its economic incentives are not relevant to assessing whether it had a direct financial interest in the exploitation of Plaintiffs' copyrighted works. The two are inextricably related.

Cox argues that a direct financial benefit requires showing that the ability to infringe was a "draw" for Cox's subscribers but ignores that showing a "draw" is not the only way to establish a direct financial benefit. *See* Pls.' Mem. in Supp. of Pls.' Mot. for Summ. Judg., ECF No. 325, at 33-34. The *Ellison* case, which the Court quoted in *BMG*, held that in some circumstances

---

[1] Unlike vicarious liability, the elements of contributory infringement do not include that the contributory infringer received a direct financial benefit from the infringing activity. But, more broadly, Dr. Lehr's opinion is also relevant as crucial case background. That Cox had economic incentives to tolerate infringement informs the jury's evaluation of the evidence and credibility of Cox's witnesses.

showing the existence of a draw is not required. *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004) (quoting S. Rep. 105-90, at 44 (1988)).

Cox's criticism of Dr. Lehr for refusing to allocate his ▇▇▇▇▇▇



▇▇▇▇ As Dr. Lehr made clear, ▇▇▇▇▇▇ ▇▇▇▇▇▇ ▇▇▇▇▇▇ Buchanan Decl. Ex. C. ¶¶ 15-16, 25 (Lehr Reply Rept.). Further, Dr. Lehr made clear ▇▇▇▇▇▇ ▇▇▇▇▇▇ Buchanan Decl. Ex. A ¶ 47 (Lehr Rept.). That an actual damages analysis is not possible in these circumstances indicates the problems with the analysis of Cox's expert, Christian Tregillis, who purports to undertake such analysis, not any shortfalls in the reliability or relevance of Dr. Lehr's testimony. Finally, vicarious liability does not require the jury find the defendant received a particular amount of a direct financial benefit; it need only conclude there was one. *See, e.g.*, *Arista Records, Inc. v. Flea World, Inc.*, No. CIV.A. 03-2670(JBS), 2006 WL 842883, at *13 n.14 (D.N.J. Mar. 31, 2006) (admitting expert report on direct financial benefit that did not apportion financial benefit between infringing and non-infringing sources).

**III.     Dr. Lehr's analysis is relevant to statutory damages because it shows how Cox profited from infringement and demonstrates the need for deterrence.**

Dr. Lehr estimated the lifetime value of a subscriber to Cox and then calculated the value to Cox of all ▇▇▇▇▇▇ Buchanan Decl. Ex. A ¶ 47, Ex. 18 (Lehr Rept.). Dr. Lehr also calculated the actual revenue

6

Cox collected from ████████████████████████████████████████████████ *Id.* ¶ 38, Ex. 15B.  Dr. Lehr's analysis is relevant to statutory damages because it shows how profitable Cox's tolerance of infringing subscribers was.  Cox's criticism that Dr. Lehr's calculations are not tethered to Cox's infringement is misplaced.

First, Dr. Lehr accounted for the infringement by calculating separate lifetime values and billing totals for ████████████████████████████████████████  Cox's argument that Dr. Lehr did not consider these subscribers' non-infringing uses or the marginal value the subscribers placed on the ability to infringe ignores that, if Cox had terminated infringing subscribers, it would have lost all of its revenue from those subscribers, not just any revenue that could hypothetically be directly traced to infringement.  Buchanan Decl. Ex. C ¶¶ 15-16, 25 (Lehr Reply Rept.).

Second, Cox's criticism does not affect the relevance of Dr. Lehr's opinion.  Statutory damages analysis can encompass a wide range of factors, including "deterrence of future infringement."  Buchanan Decl. Ex. F (*BMG* Trial Tr. 2150:1-10).  "The wealth of the defendant has been widely recognized as relevant to the deterrent effect of a damages award."  *Lowry's Reports, Inc. v. Legg Mason, Inc.*, 302 F. Supp. 2d 455, 461 (D. Md. 2004) (citing cases).  Thus, in analyzing deterrence, factfinders regularly consider a defendant's total profits, and not just the defendants' profits directly linked to the infringement.  *See, e.g., John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 327 F. Supp. 3d 606, 635 (S.D.N.Y. 2018) (upholding damages award in part based on defendant's total profits over a four-year period); *Basic Books, Inc. v. Kinko's Graphics Corp.*, 758 F. Supp. 1522 (S.D.N.Y. 1991) (considering defendant's total income and assets in determining statutory damages award); *Psihoyos v. John Wiley & Sons, Inc.*, No. 11 CIV. 1416 JPO, 2012 WL 5506121, at *4 (S.D.N.Y. Nov. 7, 2012), *aff'd*, 748 F.3d 120 (2d Cir. 2014)

(upholding statutory damages award in part based on "the fact that Defendant is a $300 million a year division of a $1.7 billion company . . ."). The total profit Cox derives from each infringing subscriber is important context for the jury when determining statutory damages.

### IV. Dr. Lehr's opinion that Cox saved costs by tolerating infringement is relevant.

Dr. Lehr concludes that Cox received an economic benefit from tolerating infringement because it █████████████████████████████████████████████████████████████ ████████████████ Buchanan Decl. Ex. A ¶ 49 (Lehr Rept.). Dr. Lehr then provides several examples of these costs, including:



*Id.*

By showing how Cox received a direct economic benefit from tolerating infringement, Dr. Lehr's opinion speaks directly to evidence a jury should consider in assessing Cox's vicarious liability. Moreover, the costs Dr. Lehr identifies are all costs Cox saved directly and exclusively by tolerating infringement. These costs are therefore, contra Cox, tied to Cox's subscribers' infringing use. Cox cites no case holding that a cost saved is not a direct financial benefit; a dollar saved is a dollar earned.

Cox's other arguments to exclude Dr. Lehr's costs analysis are equally meritless. Cox criticizes Dr. Lehr for not quantifying the saved costs, but quantification is not a *sine qua non* of relevance. To find Cox vicariously liable, the jury must find Cox received direct financial benefit, but the jury need not find the precise amount of direct financial benefit Cox received.

Nor does Cox explain how these costs could have been quantified or point to the data that would have enabled Lehr to quantify them.

In wrongly attacking Dr. Lehr for not opining on what Cox could or should have done; Cox misunderstands Dr. Lehr's testimony.  Dr. Lehr is not an expert on how internet service providers should respond to copyright infringement notices.  Dr. Lehr's testimony regarding costs focuses on identifying certain business operations associated with a compliance program that cost money to operate.  Dr. Lehr's opinion is not that Cox could or should have done the activities he identifies, only that, *if* Cox had done so, it would have cost Cox money, and therefore Cox had an economic incentive to avoid those activities.  Unlike Cox's experts, Dr. Lehr limited his opinions to his expertise and refrained from telling the jury what to think.

V.   **Dr. Lehr's analysis of infringing subscribers' data charges is admissible.**

Dr. Lehr concluded that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Buchanan Decl. Ex. B. ¶ 31 (Lehr Rebuttal Rept.).  Dr. Lehr bases this conclusion on his analysis of Cox's billing data, which shows that Cox subscribers ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.*

Cox's argument that Cox bills its customers the same regardless of whether the subscribers are infringing misses the point.  No one has suggested that Cox identified infringing subscribers specifically in order to charge them higher rates, and the law of vicarious liability does not require such a finding.  Dr. Lehr's analysis shows that, to enable their infringement, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ providing Cox with a direct financial benefit from the infringement.  *See Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 156 (S.D.N.Y. 2009) (granting summary judgment on vicarious liability where

9

"[d]efendants' revenues increased depending on their users' volume of downloads; thus, the greater the volume of downloads (the majority of which has been shown to be infringing), the greater the [d]efendants' income").

Cox similarly misses the point in arguing that Dr. Lehr does not show why any particular subscriber chose Cox. By showing a statistically significant relationship between serial infringement and higher data charges, Dr. Lehr's analysis supports the inference these subscribers chose services plans with higher data allowances to infringe, thus establishing a direct relationship between Cox subscribers' infringement and Cox' financial benefit.

Cox's arguments that Dr. Lehr's rates analysis is flawed or unreliable all boil down to attempts to draw different conclusions from Dr. Lehr's data than the conclusions Dr. Lehr drew. Cox can argue its version of events at trial, but that Cox thinks the data support different conclusions is not a basis to exclude Dr. Lehr's opinion.

To conclude a subscriber ███████████████████████████████████████████ ███████████████████████, Dr. Lehr relied on a study finding that the average household engaged in peer-to-peer activities consumed 82 GB of broadband data per month. Buchanan Decl. Ex. B. ¶¶ 29-30 (Lehr Rebuttal Rept.). Contra Cox, the correlation between usage rates and infringement is neither presupposed nor spurious. As Dr. Lehr points out, substantial evidence, including testimony from Cox witnesses, shows that the vast majority of peer-to-peer usage is infringing. *Id.* ¶ 29 n.67, n.68; *see also BMG Rights Mgmt. v. Cox Comm'ns, Inc. et. al.*, 199 F. Supp. 3d 958, 964 (E.D. Va. 2016) (noting that BitTorrent "fosters a staggering amount of infringement" and citing sources that at least 96% of BitTorrent usage is infringing). Cox's suggestion that increased data usage may be due to other factors is not a basis to exclude. Similarly, Cox's criticisms that Dr. Lehr did not determine the quantum of infringement or

calculate incremental bandwidth ignore Dr. Lehr's reliance on the evidence showing that substantially all peer-to-peer usage is infringing. Cox does not argue that Dr. Lehr's reliance on that evidence was so unreasonable as to sink his testimony; Cox does not even engage with this evidence's existence.

Cox's argument to exclude Dr. Lehr's opinion on the basis that Dr. Lehr's analysis implies Cox subscribers infringed works not represented in the notice data again misses the point of Dr. Lehr's testimony. Dr. Lehr is not testifying to the scope of Cox's infringement. Dr. Lehr's conclusion merely relies on evidence that peer-to-peer activities are associated with both infringement and higher data usage. That opinion is not speculative but based in evidence.

Similarly, Cox's recurring attack that Dr. Lehr's analysis is not tethered to the infringement in the case misses the mark. Dr. Lehr describes a general relationship between a usage associated with infringement and higher data usage, and he concludes that relationship applies to the subscribers at issue. Cox does not argue this analytical approach is invalid and provides no evidence showing this general relationship does not apply to those subscribers.

### VI.   Dr. Lehr's opinions regarding harm from piracy to the music industry generally, and to Plaintiffs specifically, are admissible.

Dr. Lehr's proposed testimony covers the evolution of the economics of the music industry, Lehr Report ¶¶ 14-16, and the harm from piracy to copyright holders. *Id.* ¶¶ 17-22. Far from merely "explaining the obvious," Dr. Lehr reviews and summarizes the relevant academic literature on the economic effects of piracy and discusses the economic effects of piracy on the creative industries. *Id.* ¶¶ 20-21.

Dr. Lehr is qualified to testify to these subjects. Dr. Lehr's impressive credentials, research, and review of the record inform his analysis. Contrary to Cox's argument, it does, in fact, take a trained and qualified economist to review the relevant economic literature, including

11

multiple meta-analyses, and to opine on the myriad economic effects of piracy. Cox suggests that Dr. Lehr's lack of experience in the music industry specifically is disqualifying but provides no argument for why music-industry experience is required for Dr. Lehr's testimony. In light of Dr. Lehr's background and qualifications, Cox cannot credibly argue that Dr. Lehr lacks relevant expertise to opine on these issues. *See UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC*, No. A-17-CA-365-LY, 2019 WL 3207803, at *5 (W.D. Tex. July 16, 2019) (report and recommendation) (holding that "opining on topics like the economic impact on that industry of piracy, and the public policy benefits of holding ISPs secondarily liable for the infringement of their subscribers, is squarely within the scope of [Dr. Lehr's] expertise.").

Dr. Lehr's testimony is relevant. Dr. Lehr does more than merely opine that infringement is harmful: he explains *why* economists have concluded that infringement is harmful. Statutory damages analysis permits considering all of the harms a defendant's infringement causes, not merely those that can be quantified in a traditional actual damages analysis. *See Sony BMG Music Entm't v. Tenenbaum*, 660 F.3d 487, 502–03 (1st Cir. 2011) (affirming statutory damages award in part based on record evidence of "extensive testimony regarding the loss in value of the copyrights at issue that resulted from [the defendant's] conduct, and the harm of [the defendant's] actions to [the plaintiff] and the recording industry, including reduced income and profit"). In order to properly award statutory damages, the jury should be aware of the academic consensus that piracy harms rights holders and how the harms piracy causes affect the marketplace for creative content. Indeed, it was not so long ago that infringers were arguing that the P2P piracy they encouraged was actually beneficial to rights holders. *See, e.g. A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1017 (9th Cir. 2001) (noting that Napster offered an expert report that "concluded that Napster is beneficial to the music industry because MP3

music file-sharing stimulates more audio CD sales than it displaces"). That Cox has chosen not to contest Dr. Lehr's conclusions with an opposing expert does not render them either irrelevant or "mere factual recitations."

Dr. Lehr's testimony is not unfairly prejudicial. Cox baldly asserts otherwise without argument, pointing only to Dr. Lehr's supposed vagueness. But what Cox means by describing this testimony as "prejudicial" is that it would be *bad for Cox* for the jury to learn that Cox's infringement has had significant negative economic consequences for the music industry. Unfortunately for Cox, "bad for Cox" is not the standard for prejudice under Fed. R. Evid. 403 and is not a basis to exclude evidence. Fed. R. Evid. 403 excludes only evidence that is both "unfairly prejudicial" and whose "probative value is substantially outweighed" by its prejudicial effect. Dr. Lehr's testimony is not unfairly prejudicial— the jury should be made aware of the harms Cox has caused. Dr. Lehr's opinion is powerfully probative on that point.

Dr. Lehr's opinion that Cox's subscribers have caused harm both generally and specifically to Plaintiffs is a straightforward extension of the more general economic principles Dr. Lehr had already discussed. Cox objects that Dr. Lehr did not attempt to measure the extent of the harm, but this again ignores Dr. Lehr's opinion that the quantum of infringement could not be determined, and therefore the extent of the harm could not be calculated. The jury needs to know that too.

Cox provides no argument for its objection to Dr. Lehr's comparison of Plaintiffs' revenue and profits to Cox's. Contrary to Cox's unsupported assertion that there is "no reasonable economic basis" for the comparison, Dr. Lehr uses the comparison to highlight how Cox's increased profit margins compared to Plaintiffs' show the effects of infringement on the relevant industries.

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that Cox's Motion to Exclude the Testimony of Putative Expert William H. Lehr, Ph.D., be denied in its entirety.

Respectfully submitted,

Dated September 24, 2019
/s/ Scott A. Zebrak
Scott A. Zebrak (38729)
Matthew J. Oppenheim (*pro hac vice*)
Jeffrey M. Gould (*pro hac vice*)
Kerry Mustico (*pro hac vice*)
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Avenue, NW, 5th Floor
Washington, DC 20015
Tel:  202-480-2999
scott@oandzlaw.com
matt@oandzlaw.com
jeff@oandzlaw.com
kerry@oandzlaw.com

*Attorneys for Plaintiff*