UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

SONY MUSIC ENTERTAINMENT, *et al.*,

   Plaintiffs,

v.

COX COMMUNICATIONS, INC., *et al.*,

   Defendants.

Case No. 1:18-cv-00950-LO-JFA

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
COX'S MOTION TO EXCLUDE THE TESTIMONY OF PUTATIVE
<u>EXPERT GEORGE P. McCABE, Ph.D.</u>**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................ 1

BACKGROUND ............................................................................................................................. 2

ARGUMENT .................................................................................................................................. 4

I. LEGAL STANDARD .................................................................................................. 4

II. PROFESSOR McCABE REASONABLY RELIED ON A MARKMONITOR SPREADSHEET THAT CONTAINS AUDIBLE MAGIC DATA SHOWING THAT THE FILES SUBJECT TO INFRINGEMENT NOTICES CONTAINED THE WORKS IN SUIT ...................................................................................................................... 5

    A. Cox's Arguments Concerning the Accuracy of the MarkMonitor Spreadsheet Go to Weight ......................................................................................................... 6

    B. The MarkMonitor Spreadsheet Contains Audible Magic Verification Data That Requires No Further Verification ............................................................................ 6

    C. Professor McCabe's Proferred Testimony Would Not Be Unfairly Prejudicial ..... 8

III. PROFESSOR McCABE'S OPINIONS WILL HELP THE JURY UNDERSTAND THE EVIDENCE AND DETERMINE ISSUES IN THE CASE ............................................... 8

IV. PROFESSOR McCABE PROFFERS OPINIONS ON THE INFRINGEMENT NOTICES SENT TO COX, NOT ON THE ULTIMATE ISSUE OF INFRINGEMENT ................................................................................................................................. 10

V. PROFESSOR McCABE PROFFERS PROPER REBUTTAL TESTIMONY CRITICIZING THE OPINIONS OF COX'S PUTATIVE EXPERT ............................. 12

CONCLUSION ............................................................................................................................. 13

## TABLE OF AUTHORITIES

**CASES**

*Bresler v. Wilmington Tr. Co.*, 855 F.3d 178 (4th Cir. 2017) ..............................5, 6, 10

*Buser v. Eckerd Corp.*, No. 5:12-CV-755-FL, 2015 WL 1438618
   (E.D.N.C. Mar. 27, 2015) ...............................................................................11

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993)............................................................4

*DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prod. Liab. Litig.*,
   No. 3:11-MD-2244-K, 2014 WL 3557345 (N.D. Tex. July 18, 2014) ......................................8

*Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997) ...............................................................5

*Glass v. Anne Arundel Cty.*, 38 F. Supp. 3d 705 (D. Md. 2014),
   aff'd, 716 F. App'x 179 (4th Cir. 2018) .................................................................10

*Hodge v. Soper*, 17 Fed. App'x 196 (4th Cir. 2001) ......................................................11

*Structural Polymer Grp. v. Zoltek Corp.*, 543 F.3d 987 (8th Cir. 2008) ..........................................5

*United States v. Moore*, 532 F. App'x 336 (4th Cir. 2013) ........................................................12

*United States v. Offill*, 666 F.3d 168 (4th Cir. 2011) ................................................................4, 9

*Westberry v. Gislaved Gummi AB*, 178 F.3d 257 (4th Cir. 1999) .................................................4

**RULES**

Fed. R. Evid. 403 ........................................................................................................8

Fed. R. Evid. 702 ............................................................................................1, 4, 5, 9

Fed. R. Civ. P. 26........................................................................................................9, 12

# INTRODUCTION

Cox's motion to exclude the proposed testimony of Professor George P. McCabe is meritless. Professor McCabe is an applied statistician and tenured professor with over 40 years of experience designing studies, analyzing data, and interpreting the results of statistical analyses in various roles, including as an academic and consultant. Professor McCabe intends to testify that all of the works in suit were the subject of infringement notices sent by Plaintiffs to Cox during the claim period concerning specific Cox subscribers already identified to Cox in at least two prior notices. He also intends to testify on his analyses of those infringement notices. His opinions are based on voluminous technical data produced by the parties and MarkMonitor, spread across multiple datasets, and will help the jury understand the evidence and resolve disputed issues in the case. His testimony squarely falls within the bounds and purpose of Rule 702.

Cox's motion fundamentally distorts the data upon which Professor McCabe relies and what constitutes admissible expert testimony. There is no credible dispute that the audio files that Cox subscribers downloaded and distributed contained Plaintiffs' copyrighted music. Yet Cox improperly levies attacks against Professor McCabe for not checking the accuracy of the data produced by MarkMonitor showing that the files that were the basis for infringement notices contained the works in suit. Professor McCabe's reliance on that data was reasonable and sufficient to form his opinions.

None of Cox's arguments warrant exclusion of Professor McCabe's opinions. Cox's arguments concerning purported inaccuracies with the MarkMonitor data, his understanding of that data, and his "task" either go to the weight of his opinions—not their admissibility—or are

1

based on mischaracterizations of his opinions. Cox's challenges regarding Professor McCabe's proffered rebuttal testimony are also misguided as to what constitutes proper rebuttal testimony. Cox's motion to exclude the proffered testimony of Professor McCabe should be denied.

## BACKGROUND

Professor McCabe provides affirmative expert testimony on his analysis of multiple large and complex data sources pertaining to copyright infringement notices sent to Cox. *See* Buchanan Decl. in Supp. of Cox's Mot. to Exclude the Testimony of Putative Expert George P. McCabe Ph.D. ("Buchanan Decl.") Ex. A (Report of George P. McCabe, Ph.D., dated April 10, 2019 ("McCabe Rpt.")); Buchanan Decl. Ex. C (Expert Supplemental / Reply Report of George P. McCabe, Ph.D., dated June 13, 2019 ("McCabe Reply Rpt.")). He opines that all of the works in suit were the subject of infringement notices sent by Plaintiffs to Cox during the claim period concerning specific Cox subscribers already identified to Cox in at least two prior notices. *Id.*, ¶¶ 4, 10 (McCabe Reply Rpt.). He also provides opinions concerning the unique Cox subscribers who were the subject of copyright abuse tickets resulting from Plaintiffs' infringement notices, including the percentage of subscribers who are residential versus business, the number of subscribers who received a ticket before the claim period, the number of subscribers who received a ticket on behalf of an entity other than Plaintiffs during the claim period, and the number of subscribers who received multiple tickets (and a breakdown of the number of tickets received). *Id.* ¶ 11; Buchanan Decl. Ex. A, ¶ 16 (McCabe Rpt.).

In addition, Professor McCabe provides opinions in response to three expert reports submitted on behalf of Cox: (1) Report of Christian Tregillis, CPA, ABV, CFF, CLP, dated April 10, 2019; (2) Supplemental/Rebuttal Report of Christian Tregillis, CPA, ABV, CFF, CLP, dated May 15, 2019; and (3) Rebuttal Expert Report of Lynne J. Weber, Ph.D., dated May 15,

2019. *See* Buchanan Decl. Ex. B, ¶ 2 (Expert Report of George P. McCabe, Ph.D., dated May 15, 2019 ("McCabe Rebuttal Rept.")); Buchanan Decl. Ex. C, ¶ 2 (McCabe Reply Rept.). Of relevance to Cox's motion is Professor McCabe's opinions rebutting those of Cox's putative expert, Mr. Christian Tregillis, on the extent to which notices of infringement by Cox subscribers pertain to the works in suit. Professor McCabe concludes that Mr. Tregillis's opinions are flawed because his analysis excluded thousands of notices. *See*, *e.g.*, Buchanan Decl. Ex. C, ¶¶ 28, 35, 37 (McCabe Reply Rept.).

For his opinions, Professor McCabe analyzed numerous documents and data produced in discovery by the parties and MarkMonitor, including a "MarkMonitor spreadsheet" showing that ███████████████████████████████████████████████████████████████████. *See*, *e.g.*, Buchanan Decl. Ex. A, ¶ 5 (McCabe Opening Rpt.); Buchanan Decl. Ex. C, ¶ 4, 11 (McCabe Reply Rept.). ████████████████████████████████████████

████████████████████████████ Gould Decl. Ex. 1, ¶ 15 (Bahun Decl. in Supp. of Pls.' Mot. for Summ. J., ECF No. 325-6 ("Bahun Decl.")). ████████████████████

████████████████████████████████████████████

██████ *Id.* ¶ 23. ████████████████████████████████

████████████████████████████████████████████

████████████████████ *Id.*; Gould Decl. Ex. 2, ¶ 17 (Ikezoye Decl. in Supp. of Pls.' Mot. for Summ. J. ("Ikezoye Decl.")). ████████████████████████

████████████████████████████████████████████

████████████████████████████████████

██████ Gould Decl. Ex. 1, ¶ 22 (Bahun Decl.).

3

Professor McCabe applied his background, experience, and skill to conduct statistical analyses to the data sets that underlie his opinions. He has a B.S. in Mathematics from Providence College and a Ph.D. in Mathematical Statistics from Columbia University. Buchanan Decl. Ex. 1, McCabe Rept. ¶ 3. He has designed studies, analyzed data, and interpreted the results of statistical analyses in various roles, including Professor of Statistics at Purdue University, Director of the Statistical Consulting Service at Purdue where he advised thousands of university clients on the use of statistical methods, and co-author of widely-used statistics texts. *Id.* ¶¶ 1-2 & Appx 1. His practical experience spans decades. *Id.*

## ARGUMENT

**I.     LEGAL STANDARD**

Federal Rule of Evidence 702 permits an expert to provide opinions on scientific matters, technical matters, or matters involving other specialized knowledge if the testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). The "touchstone of the rule is whether the testimony will assist the jury." *United States v. Offill*, 666 F.3d 168, 175 (4th Cir. 2011).

Trial courts act as gatekeepers to ensure that expert testimony is reliable and relevant. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). "The inquiry to be undertaken by the district court is 'a flexible one' focusing on the 'principles and methodology' employed by the expert, not on the conclusions reached." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999) (quoting *Daubert*, 509 U.S. at 594-95). Courts "should be mindful that Rule 702 was intended to liberalize the introduction of relevant expert evidence" and that, "[a]s with all other admissible evidence, expert testimony is subject to being tested by '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the

burden of proof.'" *Id.* (quoting *Daubert*, 509 U.S. at 596); *see also* Fed. R. Evid. 702 advisory committee's note to 2000 amendment ("[R]ejection of expert testimony is the exception rather than the rule."). As a rule, "questions regarding the factual underpinnings of the [expert witness'] opinion affect the weight and credibility" of the witness' assessment, "not its admissibility." *Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 195 (4th Cir. 2017) (quoting *Structural Polymer Grp. v. Zoltek Corp.*, 543 F.3d 987, 997 (8th Cir. 2008)).

## II. PROFESSOR McCABE REASONABLY RELIED ON A MARKMONITOR SPREADSHEET THAT CONTAINS AUDIBLE MAGIC DATA SHOWING THAT THE FILES SUBJECT TO INFRINGEMENT NOTICES CONTAINED THE WORKS IN SUIT

Cox seeks to exclude Professor McCabe's proffered testimony because it claims that his opinion is not based on sufficient facts or data. *See* Cox Mot. 9. Specifically, Cox argues that Professor McCabe failed to confirm the accuracy of the MarkMonitor spreadsheet showing that ███████████████████████████████████████████████████████████████ *See* 9-10. These arguments are premised on a deeply flawed understanding of the MarkMonitor spreadsheet, MarkMonitor's processes, and Rule 702 jurisprudence.

███████████████████████████████████████████████████████████████ ███ and thus forms a sufficient basis for Professor McCabe's opinions. *See* Fed. R. Evid. 702(b). Cox does not challenge Professor McCabe's methodology, so there is no "analytical gap between the data and the opinion proffered." *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Cox's claims of undue prejudice are entirely premised on its unfounded claims of inaccuracy and the need for additional verification. Professor McCabe's opinions are reliable, not unduly prejudicial, and thus admissible.

### A. Cox's Arguments Concerning the Accuracy of the MarkMonitor Spreadsheet Go to Weight

Cox cites no authority requiring experts to conduct detailed investigations on the veracity of the facts and data upon which they rely. Indeed, the facts and data relied upon by experts are often in dispute, and the jury is tasked with resolving those disputes. *See* Fed. R. Evid. 702 advisory committee's note to 2000 amendment ("The emphasis in the amendment on 'sufficient facts or data' is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other."). The jury will have an opportunity to assess the accuracy of the MarkMonitor spreadsheet and what it purports to show based on the testimony of other witnesses. Questions concerning the accuracy of that spreadsheet go to the weight of Professor McCabe's opinions, not their admissibility, and may be challenged on cross-examination. *See Bresler*, 855 F.3d at 195.

### B. The MarkMonitor Spreadsheet Contains Audible Magic Verification Data That Requires No Further Verification

Cox fundamentally distorts the MarkMonitor spreadsheet and MarkMonitor's processes.[1] Cox faults Professor McCabe for not checking the accuracy of the spreadsheet, but he had no reason to do so.

Contrary to Cox's contention, the MarkMonitor spreadsheet is not a "summary" of Audible Magic data. *See* Cox Mot. 11. The spreadsheet contains the *actual* Audible Magic verification data. Gould Decl. Ex. 1, ¶ 23 (Bahun Decl.). ███████████████████████
███████████████████████████████████████████

---

[1] In a separate motion, Cox requests discovery sanctions to preclude Plaintiffs' use of the MarkMonitor spreadsheet. For the detailed reasons explained in Plaintiffs' opposition to that motion and related supporting declarations, Cox's motion is wholly without merit. *See* Dkt. No. 352.

6

██████████████████████████████████████████████ *Id.*; Gould

Decl. Ex. 2, ¶ 11 (Ikezoye Decl.). ████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

infringing file.  Gould Decl. Ex. 1, ¶¶ 15, 23 (Bahun Decl.). ███████████████████

████████████████████████████████████████████████████

Cox.  *Id.*

      Any other Audible Magic data fields that MarkMonitor received—whether from 2012 to

2014, before, or after—is irrelevant. ████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████.  The other Audible Magic fields that Cox contends MarkMonitor should have

retained in earlier periods are superfluous.  *See* Cox Mot. 12.  None of them speak to whether

Audible Magic performed a verification or the accuracy of the verification.  *Id.* ¶ 23; Gould Decl.

Ex. 2, ¶ 13  (Ikezoye Decl.).

7

If Cox had a genuine concern about any specific identifications, it could have listened to the infringing audio files produced by Plaintiffs to confirm the accuracy of the Audible Magic verifications, but it did not.[2] Any further verification that Cox believes is necessary could be fodder for cross-examination but is not a basis to exclude Professor McCabe's testimony.

### C. Professor McCabe's Proferred Testimony Would Not Be Unfairly Prejudicial

Cox argues that Professor McCabe's testimony would be "highly prejudicial" to Cox but makes no attempt to show "unfair prejudice," as required by Federal Rule of Evidence 403. *See* Cox Mot. 14. In claiming prejudice, Cox conflates evidence that hurts its case with unfair prejudice and simply reiterates its unfounded claims of inaccuracy and the need for additional verification. This argument fares no better under Rule 403.

### III. PROFESSOR McCABE'S OPINIONS WILL HELP THE JURY UNDERSTAND THE EVIDENCE AND DETERMINE ISSUES IN THE CASE

This case involves data concerning hundreds of thousands of notices received by Cox and nearly ▇▇▇ unique subscribers who were the subject of tickets relating to copyright infringement during the claim period. Professor McCabe provides various analyses and opinions concerning data associated with those notices and subscribers. His expert testimony would undoubtedly be helpful to the jury and thus is relevant. *See In re DePuy Orthopaedics, Inc.*

---

[2] Cox contends that the full complement of Audible Magic data would show that Plaintiffs did not actually verify through Audible Magic the contents of the infringing files. *See* Cox Mot. 12. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Id.* But Cox fails to inform the Court that such "testing records" were never authenticated during any questions or answers in Audible Magic's deposition and are, at best, an incomplete, time-limited log of content identifications for the period of 2012-2014, with gaps, and thus of course would not include the Audible Magic verifications that took place over the course of the preceding years (when such verifications are in the MarkMonitor spreadsheet). Gould Decl. ¶ 5 & Ex. 4, 6-7 (Deposition of Audible Magic by Vance Ikezoye, dated May 6, 2019).

8

*Pinnacle Hip Implant Prod. Liab. Litig.*, No. 3:11-MD-2244-K, 2014 WL 3557345, at *7 (N.D. Tex. July 18, 2014) ("[T]he documents and other information the expert is reviewing are complicated, voluminous, or involve scientific or technical data and such narrative summary would assist the trier of fact in understanding the documents."). Indeed, as discussed *infra*, Cox proffers expert testimony from Mr. Tregillis on the same data. Cox's attempt to carve out Professor McCabe's opinions as inconsistent with his "task" or based on "his understanding of the data" is without basis.

Professor McCabe provided affirmative opinions in both an opening report and a supplemental report. His opening report includes various analyses and opinions concerning the infringement notices, including the percentage of subscribers who are residential versus business, the number of subscribers who received a copyright abuse ticket before the claim period, the number of subscribers who received multiple tickets (and a breakdown of the number of tickets received), and the actions Cox noted for the tickets. *See* Buchanan Decl., Ex. A, ¶¶ 16, 46-52 (McCabe Rept.). Cox argues that those analyses and opinions in his opening report are inadmissible because it claims that they are unrelated to his "task." *See* Cox Mot. 15-18.

Cox's argument that Professor McCabe's analyses does not fall within the scope of his assignment is simply unfounded. Professor McCabe was asked to analyze various data sources pertaining to infringement notices and to provide opinions on those notices. *See* Buchanan Decl., Ex. A, ¶ 4 (McCabe Rept.). As required, Professor McCabe's reports contain "a complete statement of all opinions [he] will express and the basis and reasons for them." *See* Fed. R. Civ. P. 26(a)(2)(B)(i). Regardless of whether they squarely fit within Cox's understanding of the purpose for which he was retained, Professor McCabe's opinions "will assist the trier of fact to understand the evidence or to determine a fact in issue." *See* Fed. R. Evid. 702(a); *Offill*, 666

9

F.3d at 175 ("The touchstone of the rule is whether the testimony will assist the jury"). In other words, Cox puts form over substance. Professor McCabe's analysis and opinions are clearly disclosed and explained in his report. Cox deposed Professor McCabe on his analysis and opinions. Whether Cox would draft his "task" differently is not a basis for preclusion.

Cox's argument that Professor McCabe's opinions should be precluded because they are based on "his own understanding of the data" associated with the infringement notices has it backwards. *See* Cox Mot. 15-17. Professor McCabe's understanding of the data and how it informs his opinions should be shared with the jury, not kept from it. Just as Professor McCabe's findings helped him understand the data and inform his opinions, so too will they assist the jury in understanding the different data sets and their implications. Cox's claims that Professor McCabe misunderstood or failed to understand the data, and that Professor McCabe's analysis is misrepresentative or biased, all go to the weight of his testimony, not its admissibility. *See Bresler*, 855 F.3d at 195; *Glass v. Anne Arundel Cty.*, 38 F. Supp. 3d 705, 716 (D. Md. 2014), aff'd, 716 F. App'x 179 (4th Cir. 2018) (denying motion to strike motions of expert report where objections to expert's "conclusions from his calculations—and to [the expert's] failure to take other data into account—go to the weight of the report, not its admissibility, and may be challenged on cross-examination."). Professor McCabe's testimony should be permitted.

### IV. PROFESSOR McCABE PROFFERS OPINIONS ON THE INFRINGEMENT NOTICES SENT TO COX, NOT ON THE ULTIMATE ISSUE OF INFRINGEMENT

Cox's motion mischaracterizes Professor McCabe as an expert on infringement and his testimony as opining on the number of times works were infringed. *See* Cox Mot. 10, 17-18. Professor McCabe is proffered as an expert not on infringement but on applied statistics. Gould Decl. Ex. 3, 83:2-14 (Deposition of George P. McCabe, Ph.D., dated June 20, 2019 ("McCabe

10

Tr."); Buchanan Decl. Ex. A, ¶ 1 (McCabe Rept.). As discussed above, he opines on the infringement notices sent to Cox and the extent to which they concern the works in suit. Cox's motion points to deposition testimony in which Professor McCabe refers to the level of infringement. *See* Cox Mot. 17. But it omits the very next line of questioning in which Cox's counsel expressly recognizes that Professor McCabe was speaking colloquially and meant *notice* of infringement:

> A.   . . . So I didn't think—to support what I was saying in paragraph 52 [of my opening report], I believed that this was sufficient, to take a handful of tracks and say, look, there's some serious infringement going on here.
>
> Q.   Notice of infringement?
>
> A.   Yes.

*See* Gould Decl. Ex. 3, 225:19-226:4 (McCabe Tr.). Thus, Cox is well aware that Professor McCabe does not proffer testimony on the number of times works were infringed and that its argument is unfounded. Professor McCabe confirmed as much in his deposition, explaining repeatedly that he was analyzing infringement notices, not whether an infringement actually occurred. *Id.* 214:5-215:13, 219:13-220:6. Consistent with his report and his deposition testimony, and for the avoidance of doubt, Professor McCabe does not intend to offer legal conclusions at trial, including whether infringement occurred.

Further, "the use of legal terms alone is insufficient to justify exclusion of [an expert]'s opinion in its entirety." *Buser v. Eckerd Corp.*, No. 5:12-CV-755-FL, 2015 WL 1438618 at *7-8 (E.D.N.C. Mar. 27, 2015) (allowing testimony of the expert but requiring the expert to use alternative descriptions of terms); *see also Hodge v. Soper*, 17 Fed. App'x 196, 197 n.2 (4th Cir. 2001) (sustaining order permitting expert to testify to factual matters, but prohibiting testimony as to "the meaning of various legal terms"). Professor McCabe's reference to infringement is not a basis to exclude his opinions concerning infringement notices.

## V. PROFESSOR McCABE PROFFERS PROPER REBUTTAL TESTIMONY CRITICIZING THE OPINIONS OF COX'S PUTATIVE EXPERT

Cox has not shown that Professor McCabe's proffered rebuttal testimony is improper. Professor McCabe's challenged opinions are quintessential rebuttals that identify flaws in, and cast doubt on, the opinions of Mr. Tregillis regarding the extent to which notices concerning infringement by Cox subscribers pertain to the works in suit. The purpose for which Mr. Tregillis proffers his testimony (*i.e.*, damages) does not prevent Professor McCabe from testifying on the topics on which he is qualified and has provided a rebuttal report.

Expert rebuttal testimony is expert testimony provided by a party "to explain, repel, counteract, or disprove facts given in evidence by the opposing party." *See United States v. Moore*, 532 F. App'x 336, 338 (4th Cir. 2013). Rebuttal reports need not mirror the initial expert's report; they must simply "contradict or rebut evidence on the same subject matter identified by another party." *See* Fed. R. Civ. P. 26(a)(2)(D)(ii).

Professor McCabe proffers expert testimony to rebut aspects of Mr. Tregillis's proffered testimony. While proffering testimony on the issue of damages, Mr. Tregillis opines on the extent to which notices concerning infringement by Cox subscribers pertain to the works in suit. Here, the experts agree that Plaintiffs' notices support the "overwhelming majority" of the works in suit. *See* Buchanan Decl., Ex. C, ¶ 25 (McCabe Reply Rept.). Whereas Professor McCabe was able to match all of the works in suit to infringement notices, Mr. Tregillis found a match for over 95% of the works in suit. *Id.* ¶ 26. Addressing this gap, Professor McCabe opines that Mr. Tregillis's analysis failed to include thousands of notices, including notices from other rights owners, notices before the claim period, and notices misunderstood to not involve any of the works in suit. *See, e.g., id.* ¶¶ 28, 35, 37. These opinions directly address and contradict Mr. Tregillis's opinions matching only 95% of the works in suit to infringement notices by

12

pointing out a flawed methodology and failure to account for a significant number of infringement notices. Cox's decision to present Mr. Tregillis's opinions for the purpose of damages does not in any way limit the relevance or admissibility of Professor McCabe's opinions as rebuttal testimony.

Professor McCabe's opinions are narrowly prescribed within his expertise—statistical analysis. He does not delve into issues such as the quantum of alleged infringement or Plaintiffs' harm. But the fact that he does not address those other aspects of Mr. Tregillis's testimony has no bearing on whether he can contradict or rebut some aspects of Mr. Tregillis's testimony.[3] Professor McCabe's proffered testimony is proper rebuttal expert testimony.

## CONCLUSION

For the reasons discussed above, Plaintiffs respectfully request that the Court deny Cox's motion to preclude the proffered testimony of Professor McCabe.

---

[3] Cox's motion also refers to Dr. Feamster's proffered testimony. *See* Cox Mot. 19. The fact that Professor McCabe did not provide a report in response to Dr. Feamster's report is not a basis to preclude Professor McCabe's affirmative expert testimony or rebuttal testimony to Mr. Tregillis's opinions.

Respectfully submitted,

Dated September 24, 2019

/s/ Scott A. Zebrak
Scott A. Zebrak (38729)
Matthew J. Oppenheim (*pro hac vice*)
Jeffrey M. Gould (*pro hac vice*)
Kerry Mustico (*pro hac vice*)
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Avenue, NW, 5th Floor
Washington, DC 20015
Tel:  202-480-2999
scott@oandzlaw.com
matt@oandzlaw.com
jeff@oandzlaw.com
kerry@oandzlaw.com

*Attorneys for Plaintiffs*

14