UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| SONY MUSIC ENTERTAINMENT, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> COX COMMUNICATIONS, INC., *et al.*, <br><br> Defendants. | Case No. 1:18-cv-00950-LO-JA |

**COX'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO PRECLUDE CERTAIN EXPERT TESTIMONY BY W. CHRISTOPHER BAKEWELL**

I.  INTRODUCTION

Mr. Bakewell opines, in part, that Dr. Lehr severely erred when he attributed *all* of Cox's profits (not only from its provision of high-speed Internet, but also from its provision of phone and cable services), from *all* of its subscribers who received at least one notice during the Claim Period (even those who received a single notice on the last day of the Claim Period), and for a period of time that greatly exceeds the Claim Period (the *entire* purported 5 ½ year average lifetime tenure of a Cox subscriber) to the infringement alleged in this action. In response, Mr. Bakewell opines, in part, and *from a financial and economic perspective*, that the use of such a factually untethered and massively overinclusive calculation in fashioning Plaintiffs' "remedy" would result in "windfall" to Plaintiffs.

With their Motion, Plaintiffs merely seek to preclude Mr. Bakewell from using those words ("windfall" and "remedy") in connection with this opinion—but nothing else from his 136 paragraph report. Plaintiffs claim without support that Mr. Bakewell's use of these words will somehow invade the province of the jury or are improper legal conclusions. That is not so. Mr. Bakewell's use of these words is intended to explain that Dr. Lehr failed to appropriately tie his calculations to the alleged infringement (as he was tasked to do). This opinion does not differ in substance from Mr. Bakewell's other critiques of Dr. Lehr's calculations, which Plaintiffs do not seek to strike. Plaintiffs' motion should be denied.

II.  BACKGROUND

W. Christopher Bakewell is a Managing Director of Duff & Phelps, LLC, where he is also the head of the firm's intellectual property disputes and advisory services practice. Gould Decl., Ex. 1 (Bakewell Rpt., ¶¶ 1-5 & Ex. A). Mr. Bakewell earned a M.B.A. from the University of Maryland at College Park, is an Accredited Senior Appraiser in Business Valuation, a professional designation of the American Society of Appraisers, and a Certified Licensing Professional, a

designation of the Licensing Executives Society. *Id.* In addition to his consulting and business experience in the field of intellectual property valuation, Mr. Bakewell has testified numerous times in cases dealing with the valuation of intellectual property. *See* Declaration of Thomas M. Buchanan in Support of Cox's Opposition to Plaintiffs' Motion to Preclude Certain Expert Testimony by W. Christopher Bakewell ("Buchanan Decl."), Ex. 1 (Bakewell Dep. Tr. 9:3-17:9). Cox retained Mr. Bakewell to rebut the opinions issued by Plaintiffs' expert Dr. William H. Lehr, and this is the scope of Mr. Bakewell's work. Gould Ex. 1 (Bakewell Rpt. ¶ 6). There is no challenge made to Mr. Bakewell's qualifications.

In this case, Dr. Lehr opines that *all* of Cox's profits, not only from its provision of high-speed Internet, but also from its provision of phone and cable services, from *all* of the subscribers who received RIAA Notices during the Claim Period (even those who received only one in the final days of the 22-month period), and for the *entire* average lifetime tenure of a Cox subscriber (a period of time that exceeds the Claim Period) is attributable to the infringement alleged in this action. Buchanan Decl., Ex. 2 (Expert Report of William H. Lehr, Ph.D., dated April 19, 2019 ("Lehr Rpt."), ¶ 13).

Indeed, when pressed at his deposition to explain the purported utility of his calculations, Dr. Lehr stated they could be considered by the jury as Cox's ▬▬▬▬▬▬▬▬▬▬ from the alleged infringement, even though he counts the entirety of Cox's revenue for a period that exceeds the Claim Period from subscribers who received only one notice:



Buchanan Decl., Ex. 2 (Lehr Dep. Tr. 336:7-337:19); *see also id.* 338:21-339:4 ███

███

███

███

In response, Mr. Bakewell methodically critiques each of Dr. Lehr's calculations, which Plaintiffs do not seek to exclude with their Motion. *See infra* at 6-7. Mr. Bakewell further opines that Dr. Lehr's analyses and calculations "do not establish any economic and technical nexus between any claimed damages and Plaintiffs' allegations of wrongdoing." Gould Ex. 1 (Bakewell Rpt., ¶ 13); *see also* Buchanan Decl., Ex. 1 (Bakewell Dep. Tr. 157:25-158:29). Plaintiffs do not seek to exclude this opinion, either.

Rather, all Plaintiffs seek to exclude are portions of Paragraph 15 of Mr. Bakewell's 136 paragraph report, Mot. at 3, in which he explains that any "remedy" based on Dr. Lehr's calculations—where there is a total lack of an economic connection to the alleged wrongdoings—would constitute a "financial windfall":

> By not showing any such nexus, or causal link, Dr. Lehr did not provide a reliable financial analysis of Cox's profits, if any, that might be attributable to its alleged wrongdoings and therefore overstated profits. In fact, the evidence indicates that Cox received little, if any, value [specifically] attributable to the alleged infringement. As such, from a financial and economic perspective, a remedy based upon Cox's profits would be unrelated to, and significantly in excess of, the potential value (if any) relieved by Cox from the alleged infringement. *This means that Dr. Lehr's calculations would result in a financial windfall to Plaintiffs*.

Gould Decl., Ex. 1 (Bakewell Rpt., ¶ 15) (emphasis added).[1]

---

[1] At his deposition, Mr. Bakewell defined "windfall" in the context of his report, as follows: "That if you overstate value, and that causes you to reach a conclusion that's greater than what the actual – I'll call it the fundamental, or intrinsic value … of the economic activity. *If it's too much, it's going to result in a windfall, a financial windfall, something greater than what the actual value is – would overcompensate, tend towards overcompensating is another phrase you*

3

### III. ARGUMENT

#### A. Mr. Bakewell's use of the term "windfall" and related opinions do not usurp the province of the jury or the Court.

Plaintiffs claim, without support, that Mr. Bakewell's use of the term "windfall," when critiquing Dr. Lehr's damages calculation, and a related opinion that "from a financial and economic perspective, a remedy based on upon Cox's profits would be unrelated to, and significantly in excess of, the potential value (if any) [received] by Cox from the alleged infringement," would improperly invade the province of the jury or the Court. Mot. 2-3 (citing Bakewell Rpt., ¶ 15). Plaintiffs' Motion is baseless and should be denied for the following reasons.[2]

*First*, Plaintiffs fail to acknowledge that Mr. Bakewell explicitly offers his opinion only "from a financial and economic perspective," and in response to Dr. Lehr. As Mr. Bakewell makes clear, he does not intend or purport to offer any legal opinions. Gould Decl., Ex. 1 (Bakewell Rpt., ¶ 15); Buchanan Decl., Ex. 1 (Bakewell Dep. Tr. 164:1-25, 170:22-171:9, 174:12-19, 174:22-175:5, 216:20-217:4). Nor is he opining about what the jury should determine. *Id.* 154:7-11, 156:21-157:3, 166:21-168:3, 172:5-14, 243:4-23. Rather, after reviewing the same materials as Dr. Lehr, Mr. Bakewell analyzes Dr. Lehr's work and concludes that Dr. Lehr severely erred in opining that *all* of Cox's profits are attributable to the infringement alleged in this case.[3]

---

*could use by – to mean financial windfall*." Buchanan Decl., Ex. 1 (153:16-154:4) (emphasis added).
[2] The only case Plaintiffs cite in purported support of this argument is *Macro Niche Software, Inc. v. 4 Imaging Sols., L.L.C.*, No. CV H-12-2293, 2013 WL 12140417, at *4 (S.D. Tex. Dec. 18, 2013). Mot. at 4. In *Macro Niche Software, Inc.*, the court precluded an expert from testifying that the defendants' "infringement was willful" and consequently that the plaintiffs should be awarded $150,000 per copyright. *Id.* Mr. Bakewell offers no such opinion.
[3] Moreover, it is entirely proper for an expert to explain that he or she considered a party's profits from certain activities as opposed to others because such a consideration may be deemed relevant to a fact-finder's determination of statutory damages, as this Court held in *BMG*. Buchanan Decl., Ex. 3 (*BMG* Trial Tr. 1763:12-1767:17) (allowing BMG to cross-examine

*Second*, Plaintiffs do not explain how Mr. Bakewell's use of these two words differs in substance from his opinions in which he states that Dr. Lehr improperly counted services other than high-speed Internet, years outside of the Claim Period, and subscribers who Plaintiffs do not even believe should be terminated. In other words, that Dr. Lehr's calculations are not at all tied to the infringement and thus to do not serve as an appropriate factor when considering Plaintiffs' harm or Cox's benefit. Plaintiffs do *not* seek to strike these opinions, which are interrelated with, if not the same as, the import of the words they do not like and seek to keep the jury from hearing.

*Third*, Plaintiffs intend to use Dr. Lehr's calculations regarding the purported financial benefit to Cox to argue their statutory damages case to the jury. The law is clear that the profit to be considered by the jury are those *from the alleged infringement*. *See, e.g.*, Buchanan Decl., Ex. 3 (*BMG* Trial Tr. 2150:1-10) (instructing the jury that it can consider "[t]he profits that Cox earned *because of the infringement*."). Thus, Mr. Bakewell is, quite within his role as a damages expert, opining that Dr. Lehr failed to appropriately parse Cox's benefit attributable to the alleged infringement from any of its revenue that is distinct. His use of the words "windfall" and "remedy" in connection with this opinion do not change that fact.[4]

*Lastly*, to the extent Plaintiffs take issue with Mr. Bakewell's use of the term "windfall" and "remedy," such a concern is better addressed in a motion *in limine*. Plaintiffs cite no support for their claim that the use of either term is facially improper. Indeed, they seem to seize on the

---

Cox's financial expert on precisely what statutory damages factors he did and did not take into account in developing his damages figures).

[4] Plaintiffs also claim that a jury can consider factors other than the defendant's profits from the alleged infringement. *See* Mot. at 4-5. To the extent Plaintiffs want to argue at trial that Cox's total profits are relevant to statutory damages (or for any other statutory damages factor *other than profits from the alleged infringement*), Mr. Bakewell's opinions are certainly relevant and should not be excluded.

5

words merely because they superficially relate to damages. But for the reasons outlined above, Plaintiffs fail to explain why the *substance* of Mr. Bakewell's opinion is improper.[5]

### B. Plaintiffs do not otherwise move to strike any of Mr. Bakewell's analyses.

Plaintiffs' motion is very limited, targeting only a single paragraph of Mr. Bakewell's 136 paragraph report. Plaintiffs seek only to prelude Mr. Bakewell from using the terms "windfall" and "remedy" in connection with his critique of Dr. Lehr's calculations. *See* Mot. at 2.[6] Thus, Plaintiffs do not seek to exclude any of Mr. Bakewell's other opinions, which are directed at rebutting Dr. Lehr and the evidence Plaintiffs seek to elicit at trial related to Cox's financials, including, at a high level, the following:

- "Dr. Lehr's analysis does not establish any economic or technical nexus between any claimed damages and Plaintiffs' allegations of wrongdoing"[7];

- "In calculating Cox's residential profits, Dr. Lehr did not deduct certain categories of costs related to the sales of the high-speed Internet, video, and voice services. Because these additional costs are required to support the broad stream of revenues that Dr. Lehr claims are applicable, Dr. Lehr substantially overstated Cox's profits," which ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[8];

---

[5] If the Court considers the use of either term improper, the substance of the opinions is unaffected by their use. The terms can be substituted.

[6] Plaintiffs state that "Mr. Bakewell also takes issue with Dr. Lehr's analysis showing the financial benefits Cox received from infringement and the incentives Cox had to tolerate infringement. While Mr. Bakewell's conclusions on those issues are flawed, they are not the subject of this motion." *Id.* (internal citations omitted).

[7] Gould Ex. 1 (Bakewell Rpt., ¶¶ 14, 65-74, 89-103, 122, 129).

[8] *Id.*, ¶¶ 16-17, 54-64, 75-88, 109-113.

6

- "Dr. Lehr disregarded and did not account for other intangible and tangible assets driving [Cox's profits from the accused subscribers], including the business risks taken by Cox and the longstanding investment in infrastructure and technology contributing to Cox's high-speed Internet, video and voice services"[9]; and

- Dr Lehr's erroneous profit calculations for business and residential customers from 2011 to 2014 both for high-speed Internet, video and voice services and for high-speed Internet only products.[10]

The opinions offered by Mr. Bakewell that Plaintiffs seek to strike merely summarize these more granular observations and analyses. Plaintiffs should not hamstring Mr. Bakewell's ability to communicate how aggressive their position on damages is. The jury should be permitted to hear Mr. Bakewell explain his opinions in their entirety.

## IV.  CONCLUSION

Based on the foregoing, the Court should deny Plaintiffs' motion in its entirety. Mr. Bakewell should be permitted to opine that, based on his review of Dr. Lehr's opinion and the underlying data in this case, Dr. Lehr's opinions regarding the entirety of Cox's profits is unreasonable, and its use by the jury in determining statutory damages would be improper.

Dated: September 24, 2019
                                                           *s/ Thomas M. Buchanan*
Thomas M. Buchanan (VSB No. 21530)
WINSTON & STRAWN LLP
1700 K Street, NW
Washington, DC 20006-3817
Tel: (202) 282-5787
Fax: (202) 282-5100
Email: tbuchana@winston.com

---

[9] *Id.*, ¶¶ 20, 66-74.
[10] *Id.*, ¶¶ 21, 89-99, 120-121.

*Attorneys for Defendants Cox Communications, Inc. and CoxCom, LLC*

*Of Counsel for Defendants*

Michael S. Elkin (*pro hac vice*)
Thomas Patrick Lane (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Tel: (212) 294-6700
Fax: (212) 294-4700
Email: melkin@winston.com
Email: tlane@winston.com

Jennifer A. Golinveaux (*pro hac vice*)
Thomas J. Kearney (*pro hac vice*)
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111-5840
Tel: (415) 591-1000
Fax: (415) 591-1400
Email: jgolinveaux@winston.com
Email: tkearney@winston.com

Diana Hughes Leiden (*pro hac vice*)
WINSTON & STRAWN LLP
333 S. Grand Avenue, Suite 3800
Los Angeles, CA 90071
Tel: (213) 615-1700
Fax: (213) 615-1750
Email: dhleiden@winston.com

**CERTIFICATE OF SERVICE**

I hereby certify that on September 24, 2019, the foregoing was filed and served electronically by the Court's CM/ECF system upon all registered users.

*s/ Thomas M. Buchanan*
Thomas M. Buchanan (VSB No. 21530)
1700 K Street, NW
Washington, DC 20006-3817
Tel: (202) 282-5787
Fax: (202) 282-5100
Email: tbuchana@winston.com

*Attorney for Cox Communications, Inc. and CoxCom, LLC*