# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| SONY MUSIC ENTERTAINMENT, *et al.*, | |
| *Plaintiffs*, | |
| v. | Case No. 1:18-cv-00950-LO-JFA |
| COX COMMUNICATIONS, INC., *et al*., | |
| *Defendants*. | |

## COX'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO PRECLUDE CERTAIN EXPERT TESTIMONY BY DR. NICK FEAMSTER

## TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................ 1

II.     ARGUMENT ............................................................................................................... 2

    A.      Dr. Feamster clearly identified the factual basis for his opinion concerning
        the absence of MarkMonitor downloads and reliably analyzed the download
        data. ............................................................................................................................ 2

    B.      Dr. Feamster's expert opinion concerning MarkMonitor's use of Audible
        Magic is relevant, reliable, and admissible. ........................................................... 7

    C.      Dr. Feamster reliably opined on the accuracy of Audible Magic. ........................ 11

    D.      Dr. Feamster's expert opinion concerning contemporaneous downloads is
        relevant, reliable, and admissible. ........................................................................ 12

III.    CONCLUSION .......................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Atlantic Recording Corp. v. Howell*,
     554 F. Supp. 2d 976 (D. Ariz. 2008) ....................................................................14

*Bilenky v. Ryobi Ltd.*,
     No. 2:13CV345, 2014 WL 7530365 (E.D. Va. Dec. 5, 2014)..........................................13, 15

*BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*,
     149 F. Supp. 3d 634 (E.D. Va. 2015), aff'd in part, rev'd in part, 881 F.3d 293
     (4th Cir. 2018)....................................................................................................4

*BMG v. Cox*,
     149 F. Supp. 3d 663 ..........................................................................................12

*Bresler v. Wilmington Tr. Co.*,
     855 F.3d 178 (4th Cir.), cert. denied, 138 S. Ct. 470, 199 L. Ed. 2d 357 (2017) ................1, 5

*Daubert* v. *Merrell Dow Pharms., Inc.*,
     509 U.S. 579 (1993)......................................................................................1, 2, 7

*E.E.O.C. v. Freeman*,
     778 F.3d 463 (4th Cir. 2015) ..............................................................................9

*Hose v. Chicago Northwestern Transp. Co.*,
     70 F.3d 968 (8th Cir. 1995) ................................................................................7

*Southland Sod Farms* v. *Stover Seed Co.*,
     108 F.3d 1134 (9th Cir. 1997) ............................................................................7

*Team 7, LLC v. Protective Solutions, Inc.*,
     2010 WL 5348782 ..............................................................................................5

*UMG Recordings, Inc. v. Hummer Winblad Venture Partners (In re Napster, Inc.)*,
     377 F. Supp. 2d 796 (N.D. Cal. 2005) ..................................................................14

*United States v. Wolf*,
     860 F.3d 175 (4th Cir. 2017) ............................................................................13

**Other Authorities**

Fed. R. Evid. 702(a) ..........................................................................................7

Report of Dr. Nick Feamster, ¶¶ 22, 97-98, 102...................................................4

Report of Plaintiffs' Expert Barbara Frederiksen-Cross, ¶ 81 .................................................... 4, 5

Statement of Work, Bates No., RIAA00000017, Appendix C ........................................................ 2

## I.      INTRODUCTION

Plaintiffs seek to exclude the testimony of Cox's expert, Dr. Nick Feamster, a highly-regarded Professor of Computer Science and the Director of Center for Data and Computing at the University of Chicago, under *Daubert* v. *Merrell Dow Pharms., Inc.,* 509 U.S. 579 (1993), and related authority.  Yet, Plaintiffs have not raised any substantive critiques concerning the relevance or reliability of Dr. Feamster's opinions.  And, beyond citing *Daubert* and related Federal Rules of Evidence, Plaintiffs have not applied the relevant standards to Dr. Feamster's analysis and conclusions.  It is clear that Plaintiffs simply disagree with Dr. Feamster's conclusions, challenging the factual basis for Dr. Feamster's analysis, which is not the proper focus or standard for a *Daubert* inquiry.  Plaintiffs' motion should consequently be denied. *See id.* 509 U.S. at 595 (1993).

Dr. Feamster applied his knowledge and expertise in computer science to reliably review the evidence produced in this case and proffer an opinion, thus meeting the standards set by the Federal Rules of Evidence.  He is a renowned researcher, professor, and intellect and, is more than qualified to opine on the topics underlying his report.  He is acutely familiar with the methodology required to perform this evidentiary analysis, having published numerous peer-reviewed publications covering the subject matter of his expert report in this case.[1]

In short, Dr. Feamster has the expertise and has completed the analysis necessary to assist the trier of fact grasp the concepts and better understand the evidence and data that the parties will present at trial.  The fact that Plaintiffs disagree with Dr. Feamster's conclusions instead of the process by which he formed his opinion, is not a proper reason to exclude his testimony. *See Bresler v. Wilmington Tr. Co.,* 855 F.3d 178, 195 (4th Cir.), cert. denied, 138 S. Ct. 470, 199 L. Ed. 2d

---

[1] *See* Declaration of Cesie C. Alvarez ("Alvarez Decl."), Ex. 1 (Dr. Feamster C.V.).

357 (2017) (noting that to perform a *Daubert* analysis "courts may not evaluate the expert witness' conclusion itself, but only the opinion's underlying methodology").

## II.   ARGUMENT

### A.   Dr. Feamster clearly identified the factual basis for his opinion concerning the absence of MarkMonitor downloads and reliably analyzed the download data.

MarkMonitor, whose "antipiracy" system Plaintiffs' used to detect instances of alleged infringement in this case, offered Plaintiffs' agent, the Recording Industry Association of America,

███████████████████████████████████████████████████████

████████ One such configuration, the one that MarkMonitor told Plaintiffs it would implement in this case, involved downloading the contents of an allegedly infringing file twice. ████████

███████████████████████████████████████████ The first download occurred when MarkMonitor downloaded the content of a file it encountered on a peer-to-peer network and sent it to third party, Audible Magic, for verification purposes.[4]  Audible Magic would verify the work by confirming or disconfirming that the file was a copy of a work MarkMonitor was monitoring for Plaintiffs.[5]  Parallel to this process, MarkMonitor would scan the peer-to-peer networks using metadata to locate peers sharing the work it was monitoring for Plaintiffs.[6]  MarkMonitor represented that it would verify that the file the peer possessed was in-

---

[2] *See id.*, Ex. 7 (2012 Statement of Work, Bates No., RIAA00000017, Appendix C).
[3] *Id.*
[4] *See* Alvarez Decl., Ex. 9 (P2P Enforcement Process, MM0000189 at 10 ████████

████████████████████████████████████████████████

[5] *See id.*
[6] *See id.* at 10-12.

deed a work it was monitoring by seeing if the peer had assigned to the file the same unique iden-

tifier – known as a "hash" – as the identifier for work as confirmed by Audible Magic.[7]  In addition

to matching the hash of the peer's file with the hash of the work it was monitoring, ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮ who independently assessed MarkMonitor's system,

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[9]  The fact that a

piece of the allegedly infringing file was downloaded and verified was supposed to be memorial-

ized in "evidence packages" that MarkMonitor created and maintained to confirm that an (alleg-

edly) infringing file was found on a peer's computer.[10]  Where the peer in question was determined

to have an infringing file, and if the peer was operating at a Cox IP address, a notice alleging that

the peer was engaging in copyright infringement was prepared and sent to Cox.[11] This process of

---

[7] To be clear, Plaintiffs are ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *see* Alvarez Decl., Ex. 7 (2012 Statement of Work ("SOW"),
RIAA_00000017, at RIAA_00000026, 28). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at RIAA00000028.  MarkMonitor explained
to RIAA ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮ *See id.* at 10 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮ *see also, id.* at 10-12, 23.
[8] There are four peer-to-peer networks from which the allegedly infringing files were downloaded.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Alvarez Decl., Ex. 5 (Deposition of
Slawomir Paszkowski, 35:17-36:5). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮ *See id.* at 39:4-40:5, 41:22-42:20.
[9] *See* Alvarez Decl., Ex. 9 (P2P Enforcement Process at 10, 13, 16, 18, 20); *see also id.*, Ex. 8
(Stroz Friedberg Independent Assessment, RIAA_00127769 at 777, 779, 780, 786).
[10] *See id.*; *see also* Alvarez Del., Ex. 7, (2012 SOW, RIAA00000026, 28).
[11] *See* Alvarez Decl., Ex. 9, (P2P Enforcement Process at 26-27).

downloading and verifying at least some of content found on a peer computer is similar to the verification process employed by Rightscorp in the *BMG* case, where the entirety of the file on the peer was downloaded and saved as authentication of what the peer was actually offering to share.[12]



Dr. Feamster has opined ██████████████████████████████████████

██████████████████████████████████████████████████████████

██████████   ████████████████████████████████████████████

████████████████████████████████████[14]  In addition to examining the evidence packages, Dr. Feamster also examined MarkMonitor's source code.  He concluded ████████████████████████████████████████████

██████[15]

Dr. Feamster's opinion ████████████████████████████ is actually confirmed by Plaintiffs' expert, Barbara Frederiksen-Cross, who reports that ██████████

████████████████████████████████████████████████

████[16]  Ms. Frederiksen-Cross opined ████████████████████████████

████████████████████████████████████████████████

████[17]  She ████████████████████████████████████████

████████████████████████████████████████████████

████████████[18]

_____

[12] *See BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 149 F. Supp. 3d 634, 640 (E.D. Va. 2015), aff'd in part, rev'd in part, 881 F.3d 293 (4th Cir. 2018).
[13] *See* Alvarez Decl. Ex. 2 (Rebuttal Expert Report of Dr. Nick Feamster, ¶¶ 22, 97-98, 102).
[14] *Id.* at ¶ 99, bullet 1; *see also* Alvarez Decl., Ex. 4 (Deposition of Dr. Nick Feamster, 234:4-6█

██████████████████████████████████████████
[15] *See* Alvarez Decl., Ex. 2 (Feamster Rebuttal Rpt., ¶¶ 22-27; 128-142).
[16] *See* Alvarez Decl., Ex. 3 (Expert Report of Plaintiffs' Expert Barbara Frederiksen-Cross, ¶ 81).
[17] *See id.*
[18] *See id.*

Plaintiffs seek to exclude Dr. Feamster's opinion concerning ███████████ ██████ on its weight, instead of challenging the reliability of his analysis and methodology. However, "questions regarding the factual underpinnings of the expert witness' opinion affect the weight and credibility of the witness' assessment, not its admissibility." *See* Bresler, 855 F.3d at 195 (4th Cir. 2017) (finding that a disagreement based on the values the expert witness chose to conduct his analysis went to the weight and credibility of the expert's assessment, and not its admissibility); *see also Team 7, LLC v. Protective Solutions, Inc.,* 2010 WL 5348782 at *3 (An objection to proffered expert testimony or report does not call for the trial judge's consideration of whether the proffered evidence is correct). Instead, pursuant to the court's "gatekeeping" role, Plaintiffs' focus should solely be on whether the testimony is reliable and can aid the finder of fact at trial. *See Team 7,* 2010 WL 5348782 at *3.

Primarily, Plaintiffs attack Dr. Feamster's conclusion ██████████████ ███ by focusing on a straw man. Notably, Plaintiffs do not object to Dr. Feamster's ██████ ██████████████████████████████████████████████ ██████████████ In fact, Dr. Feamster and Ms. Frederiksen-Cross, both analyzed the evidence packages, which was the evidence of alleged infringements MarkMonitor gathered ████████████████████[19] and MarkMonitor source code to form their individual opinions ██████████████████████[20] Indeed, they agree about what the evidence packages show: ████████████[21]



---

[19] *See* Alvarez Decl., Ex. 3 (Frederiksen-Cross Rpt., ¶ 51). Notably, Ms. Federiksen-Cross ██████
[20] *Id.* at ¶ 94.
[21] *See* Alvarez Decl., Ex. 10 (Deposition of Barbara Frederiksen-Cross, 45:21-46:11; 57:20-58:9).

Instead of contesting Dr. Feamster's actual opinions, Plaintiffs essentially mince his report into one sentence: ███████████████████████████████████ ███████████ Mot. at 5. Plaintiffs treat this as an opinion that ████████████████ ████████████████████████████████ That is, they accuse Dr. Feamster of opining that ████████████████████████████████████ ██████████████████████████████████████████ ██████████████████████████████████████████ But Dr. Feamster's opinion is clear that what he is talking about is ███████████████ █████████████████████ Indeed, another section of his report not only acknowledges that MarkMonitor ███████████████████████████████████████████████ █████████████████████████████ Notably, an expert with Dr. Feamster's qualifications and experience could replicate Dr. Feamster's calculations regarding the ██████████████████████ using the same evidence, and would obtain the same result. Indeed, Plaintiffs own expert did just that.[25]  Thus, Dr. Feamster's conclusion regarding Mark-Monitor's ████████████████████████████████████████ ███ is based on his review of MarkMonitor evidence, which he analyzed using reliable methodology and should be admitted.

---

[22] *See* Alvarez Decl., Ex. 2 (Feamster Rpt., Executive Summary).
[23] *See* Alvarez Decl., Ex. 4 (Deposition of Nick Feamster at 234:4-6, stating that his opinion was ██████████████████████████████████████████ ███████████████████████ *ee also id.*, Ex. 2 (Feamster Rpt., ¶¶ 22-27, 128-137).
[24] *See* Alvarez Decl., Ex. 2, (Feamster Rpt., ¶¶ 32-35, 138-142).
[25] *See* Alvarez Decl., Ex. 3 (Frederiksen-Cross Rpt., ¶¶ 81-82).

Dr. Feamster's conclusion is based "on a reliable foundation" and his testimony will help the jury understand what the evidence packages reveal about how MarkMonitor detected an alleged infringement and should thus be admitted. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 584-587; Fed. R. Evid. 702(a) (expert testimony is only admissible if it "will help the trier of fact to understand the evidence or determine a fact in issue …."). As such, his testimony concerning ███████████████████████████████ should not be barred.

### B.   Dr. Feamster's expert opinion concerning MarkMonitor's use of Audible Magic is relevant, reliable, and admissible.

Plaintiffs claim that Dr. Feamster had "no factual basis" for his opinion concerning ████ ████████████████████████████████████████████ Plaintiffs are wrong, and their argument is, at best, a factual dispute that does not raise issues with Dr. Feamster's methodology. The factual basis of an expert opinion "goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Hose v. Chicago Northwestern Transp. Co.,* 70 F.3d 968, 974 (8th Cir. 1995); *accord Southland Sod Farms* v. *Stover Seed Co.,* 108 F.3d 1134, 1143 (9th Cir. 1997) ("Technical unreliability goes to the weight accorded a survey, not its admissibility") (citations omitted). The evidence and methodologies Dr. Feamster used to formulate his opinion about ████ ████████████████████████████████ are detailed in his report and, under the law, his expert testimony is admissible.

Dr. Feamster clearly testified that ████████████████████████████████ ██████████████████████████████████ on a spreadsheet produced in discovery by Audible Magic, with Bates No. REV00003444 (the "Audible Magic Spreadsheet").[26] He did not "refuse" any data presented as Plaintiffs suggest. Rather, Dr. Feamster used the data

---

[26] *See* Alvarez Decl., Ex. 4 (Feamster Dep., 349:3-10).

that he concluded, based on testimony and his own analysis, was the most complete and accurate

account of ███████████████████████████████████

Specifically, Dr. Feamster relied on testimony by Vance Ikezoye, Audible Magic's

30(b)(6) designee, that ████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████[27] The Audible Magic

Spreadsheet also ████████████████████████████████████████

████.[28] Mr. Ikezoye testified that ██████████████████

████████████████████████ However, Plaintiffs' Spreadsheet, which Plaintiffs

argue Dr. Feamster should have solely relied on, was ████████████████████████

████ which the Audible Magic Spreadsheet contained.[30]   The missing data included ████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████ The ████████████████████████

████████████████████████████████████████████████

---

[27] Alvarez Decl., Ex 6 (Deposition of Vance Ikezoye, 175:25-177:22, ███████████████

[28] *See id.* (Ikezoye Dep. at 138:10-139:6, noting that the ████████████████████████
████████████████████.

[29]*See id.* (Ikezoye Dep., 177:3-178:7, ██████████████████████████████

[30] *See* ECF No. 353-2 (Declaration of Vance Ikezoye ¶ 13 ██████████████████████
██████████████████ *see also* ECF
No. 353-1 (Declaration of Sam Bahun, ¶¶ 22-23).

[31] *See* ECF No. 353-2 (Ikezoye Decl., ¶¶ 11-13); *see also* Alvarez Decl., Ex. 5 (Paszkowski Dep., 89:17-22).

8



████████████████ [32] Subsequent to Dr. Feamster's report and his deposition, Cox was able to depose the MarkMonitor employee ████████████████, at which point Cox learned that the Audible Magic data ████████████████████████████ ████████████████ [33] Therefore, Dr. Feamster had to rely on the Audible Magic Spreadsheet to analyze the ███████████████████████████████ [34]

Additionally, Cox later learned that Plaintiffs' Spreadsheet ███████████

██████████████████████████████████

████████████████████████ As a consequence, the data in Plaintiffs' spreadsheet shows ███████████████████████████

████████ As a consequence, as the MarkMonitor witness acknowledged, ███████████

██████████████████████████████████

████████████████████ [35] Thus, Dr. Feamster relied on data that he could reasonably have concluded was the more accurate and complete ████████████████████

████████████████ See E.E.O.C. v. Freeman, 778 F.3d 463, 472 (4th Cir. 2015) ("trial judges may evaluate the data offered to support an expert's bottom-line opinions to determine if that data provides adequate support to mark the expert's testimony as reliable") (citations omitted).

Dr. Feamster did not "bury his head in the sand" nor did he "inexplicably cast evidence aside." In fact, Dr. Feamster thoroughly reviewed Plaintiffs' Spreadsheet, ████████████

---

[32] *See id.*
[33] ███████████████████████████████████████
███████████████ *See* Alvarez Decl., Ex
5 (Paszkowski Dep. at 97:19-98:12).
[34] Alvarez Decl., Ex. 6 (Ikezoye Dep. at 175:25-177:22█████████████████
███████████████████████████
[35] *See* Alvarez Decl., Ex. 5 (Paszkowski Dep. at 128:14-129:5).

██████████████████████████████████████████████ Based on his anal-

ysis, Dr. Feamster determined that ███████████████████████████████

████████████████ Had he solely used Plaintiffs' Spreadsheet, his calculations would have

been materially flawed.

Dr. Feamster did not "give up the game" by surmising that ██████████████

████████████████████████████████ He stated it ██████████████████████

█████████████████ ██ Dr. Feamster knew that the Audible Magic Spreadsheet

was ███████████████████████████████████████████████████

█████████████████████████ Thus a substantially complete

Audible Magic Spreadsheet was far more complete than Plaintiffs' Spreadsheet and was the best

data Dr. Feamster had available for his analysis.

Contrary to Plaintiffs' suggestion, Dr. Feamster's informed decision to rely on the Audible

Magic verification data is not undermined by the fact that one of Cox's damages experts, Christian

Tregillis ████████████████████████████████████[37] As Plaintiffs concede, Mr.

Tregillis used Plaintiffs' Spreadsheet ███████████████████████████████

███████████████████████████ Mot. at 6. Mr. Tregillis did not analyze Plaintiffs' Spread-

sheet, as Dr. Feamster did, ███████████████████████████████

███████████████████████████████ Dr. Feamster's testimony

concerning the Audible Magic verification data is unaffected by Mr. Tregillis' separate and distin-

guishable analysis.[38]

---

[36] *See* Alvarez Decl., Ex. 2 (Feamster Rebuttal Rpt., ¶ 33).
[37] For clarification purposes, Mr. Tregillis used Plaintiffs_00286281 which is identical to Plain-
tiffs_00286431, minus critical metadata.
[38] How Plaintiffs' expert, Goerge P. McCabe, used Plaintiffs' Spreadsheet is irrelevant, especially
considering that Plaintiffs concede it was used for a separate analysis and calculation.

Dr. Feamster's analysis of ███████████████████████████████████

████████████████████████████████████████████████████████████████

– is manifestly relevant.  As Plaintiffs have conceded, the Audible Magic verification data is "the crucial link between the files 'shared' by Cox subscribers and Plaintiffs' copyrighted works."[39] Thus, Dr. Feamster's analysis ████████████████████████████ is directly relevant to the issue of whether Plaintiffs will be able to meet their burden of proving direct infringement of the works in suit.  Dr. Feamster's opinion would also assist the jury to understand the process by which MarkMonitor detected allegedly infringing works and verified ████████████████ ███████████████ Dr. Feamster's testimony would assist the trier of fact to understand what information the Audible Magic Spreadsheet captures, what it shared with MarkMonitor, and its importance to MarkMonitor's infringement detection process.  As explained in his report, Dr. Feamster ██████████████████████████████████████████████████████

████████████████████████████████████████████████████████████.[40]

### C.   Dr. Feamster reliably opined on the accuracy of Audible Magic.

Plaintiffs' critique of Dr. Feamster's opinion, ████████████████████████

██████████████████████████████████.[41]  Dr. Feamster's opinions are well-founded and Cox believes that they would ultimately prevail at trial.  However, in order to streamline the issues that will be presented to the jury, Cox does not intend to ask Dr. Feamster present these opinions at trial.

---

[39] *See* ECF No. 353 (Plaintiffs' Motion in Opposition to Cox's Motion to Preclude Certain Mark-Monitor Evidence).
[40] *See id.* at ¶¶ 32-34, 114, 119, 127, 157-58.
[41] *See id.* at ¶¶ 36-39, 160-170.

**D.     Dr. Feamster's expert opinion concerning contemporaneous downloads is relevant, reliable, and admissible.**

Dr. Feamster's opinion on ███████████████████ is based on his academic experience and draws from the facts of the case. Plaintiffs again seek to exclude Dr. Feamster's opinion concerning such downloads on its weight, because they disagree with it, instead of its admissibility.   Dr. Feamster was tasked to analyze how MarkMonitor functioned, serving as a direct rebuttal to Ms. Frederiksen-Cross's findings.[42] In her report, and consistent with Dr. Feamster's own review of the MarkMonitor source code, Ms. Frederiksen-Cross ████████████



Drawing from his past experience, Dr. Feamster opined that ████████████ Plaintiffs conveniently omit the reasons Dr. Feamster included in his report for why ████████████ Dr. Feamster notes that ████████████ [44] Dr. Feamster formed his opinion based on his vast experience analyzing peer-to-peer protocols, which Plaintiffs notably do not challenge and Frederiksen-Cross supports.[45]  His opinion concerns why it is important, as a general

---

[42] *See* Alvarez Decl., Ex. 2 (Feamster Rebuttal Rpt., ¶ 15); Ex. 3 (Frederiksen-Cross Rpt., ¶ 17).
[43] *Id.*, Ex. 3 (Frederiksen-Cross Rpt., ¶81).
[44] Alvarez Decl., Ex. 2 (Feamster Rebuttal Rpt., ¶ 24).
[45] Alvarez Decl., Ex. 1 (Feamster CV); ████████████
████████████
*See* Alvarez Decl., Ex. 10 (Frederiksen-Cross Dep., 45:2-46:9).

12

practice, ███████████████████████████████████ which is admissible expert testi-

mony.[46] *Bilenky v. Ryobi Ltd.*, No. 2:13CV345, 2014 WL 7530365, at *5 (E.D. Va. Dec. 5, 2014)

(noting that expert testimony can be helpful "to educate the factfinder about general principles,

without ever attempting to apply these principles to the specific facts of the case"); *see also United*

*States v. Wolf,* 860 F.3d 175, 194 (4th Cir. 2017) ("Expert testimony intended to help the jury

understand the relevant industry is admissible").  Notably, it is impossible for Dr. Feamster, or

anyone, to test the importance of ██████████████████████ in this case, because ████

██████████████████ Dr. Feamster was restricted to the evidence MarkMonitor gathered

and produced.

MarkMonitor also contemplated the importance ███████████████████████████

███████████████████████████████████████████ *First*, Mark-

Monitor offered.██████████████████████████████████████████

████████████████████████ [47] As MarkMonitor explained in its agreement with the RIAA, ████

████████████████████████████████████████████████

████████████████████████████ [48]  As a cost savings method, ████████

████████████████████████████ *Second*, as noted above, MarkMonitor promised in

a presentation it made to the RIAA, that.████████████████████████████████

████████████████████████████████████████████████

---

[46] Downloading full files from peers was a practice implemented by BMG. *BMG v. Cox,* 149 F. Supp. 3d 663 ("[plaintiff's agent] itself downloaded ... full copies of BMG's works using Cox's service").

[47] *See* Alvarez Decl., Ex. 7 (2012 SOW, Appendix C).

[48] *Id.* at 10. Notably.████████████████████████████████████████████

████████████████████████████████████████████



[REDACTED][49] *Third*, Stroz Fried-berg, who conducted an independent assessment of MarkMonitor's system for the Center for Copyright Infringement and issued a report on it, test drove MarkMonitor's "piece" download functionality.[50] Thus, MarkMonitor itself saw some benefit to [REDACTED] and included a variant of doing just that [REDACTED]

Plaintiffs' object that Dr. Feamster offers the legal conclusion that [REDACTED] is required for proof of copyright infringement. That is not what he says. He does opine – as did MarkMonitor and Stroz Friedberg – [REDACTED] But that is a technical and factual question.[51] Dr. Feamster's opinion is that [REDACTED] if Plaintiffs'

---

[49] *See* Alvarez Decl., Ex. 9 (P2P Enforcement Process at 10, 13, 16, 18, 20). *See also* Ex. 7 (2012 SOW, RIAA_00000026, MarkMonitor [REDACTED].

[50] Alvarez Decl., Ex. 8 (Stroz Friedberg Independent Assessment, at 777, 779, 780, 786).

[51] What needed to be downloaded to meet Plaintiffs' burden of proof as a matter of law is the subject of a pending summary judgment motion that addresses issues on which Dr. Feamster does not opine. *See*, Docket No. 328. For the reasons stated in that pleading, Plaintiffs misstate the requirements for proof of copyright infringement. Without a full-file download, Plaintiffs cannot prove that any portion of work was actually disseminated, as opposed to merely being "made available" by and Cox subscriber. *See, e.g., Atlantic Recording Corp. v. Howell*, 554 F. Supp. 2d 976, 983 (D. Ariz. 2008) ("Merely making an unauthorized copy of a copyrighted work available to the public does not violate a copyright holder's exclusive right of distribution."); *UMG Recordings, Inc. v. Hummer Winblad Venture Partners (In re Napster, Inc.)*, 377 F. Supp. 2d 796, 802 (N.D. Cal. 2005) ("merely listing a copyrighted musical composition or sound recording in an index of available files falls short of satisfying these 'actual dissemination' or 'actual transfer' standards.")

direct infringement case survives summary judgment, it is information that the jury should be allowed to consider.[52]

## III.   CONCLUSION

Based on the foregoing, Cox respectfully requests the Court deny Plaintiffs' Motion to preclude certain expert testimony by Dr. Nick Feamster in its entirety.


Dated: September 24, 2019

*s/ Thomas M. Buchanan*
Thomas M. Buchanan (VSB No. 21530)
WINSTON & STRAWN LLP
1700 K Street, NW
Washington, DC 20006-3817
Tel: (202) 282-5787
Fax: (202) 282-5100
Email: tbuchana@winston.com

*Attorneys for Defendants Cox Communications, Inc. and CoxCom, LLC*

*Of Counsel for Defendants*

---

[52] Plaintiffs' argument that Dr. Feamster should be precluded from testifying about ███████ ██████████████████ is misguided. *First*, he raised it directly in response to a question from Plaintiffs ████████████████ *See* Alvarez Decl., Ex. 4 (Feamster Dep., 280:21-282:3; 284:16-21). *Second*, bitfields are a part of BitTorrent.  Dr. Feamster's opinion concerns ████ ███████████████████████████████████████████████ By monitoring activity on BitTorrent, Plaintiffs have opened the door to an analysis on the ████████████████ Furthermore, the bitfield is ████████████████████████████████ *See* Alvarez Decl., Ex. 11 (Frederiksen-Cross Reply Rpt., ¶¶ 22, 31).  Dr. Feamster should be able to testify ████████ as his testimony would allow the jury to understand habits on BitTorrent. *See Bilenky v. Ryobi Ltd.*, No. 2:13CV345, 2014 WL 7530365, at *5 (E.D. Va. Dec. 5, 2014) (noting that expert testimony can be helpful "to educate the factfinder about general principles, without ever attempting to apply these principles to the specific facts of the case"). *Third*, Plaintiffs' challenge to Dr. Feamster's testimony ████████ goes to its weight instead of whether or not it was reliably analyzed. *Lastly*, Dr. Feamster cannot point to an instance of where ████████████████████████ As detailed above, ████████████████████████████████████

Michael S. Elkin (*pro hac vice*)
Thomas Patrick Lane (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Tel: (212) 294-6700
Fax: (212) 294-4700
Email: melkin@winston.com
Email: tlane@winston.com

Jennifer A. Golinveaux (*pro hac vice*)
Thomas J. Kearney (*pro hac vice*)
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111-5840
Tel: (415) 591-1000
Fax: (415) 591-1400
Email: jgolinveaux@winston.com
Email: tkearney@winston.com

Diana Hughes Leiden (*pro hac vice*)
WINSTON & STRAWN LLP
333 S. Grand Avenue, Suite 3800
Los Angeles, CA 90071
Tel: (213) 615-1700
Fax: (213) 615-1750
Email: dhleiden@winston.com

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on September 24, 2019, the foregoing was filed and served electronically by the Court's CM/ECF system upon all registered users.

<u>s/ *Thomas M. Buchanan*</u>
Thomas M. Buchanan (VSB No. 21530)
1700 K Street, NW
Washington, DC 20006-3817
Tel: (202) 282-5787
Fax: (202) 282-5100
Email: tbuchana@winston.com

*Attorney for Cox Communications, Inc.*
*and CoxCom, LLC*

17