**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| SONY MUSIC ENTERTAINMENT, *et al.*,<br><br>  Plaintiffs,<br><br>v.<br><br>COX COMMUNICATIONS, INC., *et al.*,<br><br>  Defendants. | Case No. 1:18-cv-00950-LO-JFA |

**DECLARATION OF MICHAEL ABITBOL IN SUPPORT OF PLAINTIFFS'
OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

I, Michael Abitbol, hereby declare, pursuant to 28 U.S.C. § 1746, as follows:

1.  I am Senior Vice President, Business and Legal Affairs, Digital for Sony/ATV Music Publishing LLC ("SATV"). I have personal knowledge of the facts set forth below and/or have learned of these facts as a result of my position and responsibilities at SATV, and could and would testify competently thereto if called as a witness. I submit this Declaration in opposition to Cox's Motion for Summary Judgment to demonstrate that musical compositions have an economic life and value separate and apart from the sound recordings that embody them.

2.  Plaintiffs SATV and its affiliates EMI Al Gallico Music Corp., EMI Algee Music Corp., EMI April Music Inc., EMI Blackwood Music Inc., Colgems-EMI Music Inc., EMI Consortium Music Publishing Inc. d/b/a EMI Full Keel Music, EMI Consortium Songs, Inc., individually and d/b/a EMI Longitude Music, EMI Feist Catalog Inc., EMI Miller Catalog Inc., EMI Mills Music, Inc., EMI Unart Catalog Inc., EMI U Catalog Inc., Jobete Music Co. Inc., Stone Agate Music, Screen Gems-EMI Music Inc., Stone Diamond Music Corp. (collectively, "SATV/EMI") are full-service music publishing companies that collectively exploit with their

1

fellow music publishing affiliates a diverse catalog of over three million songs, including some of the most iconic musical compositions of all time. I am generally familiar with SATV/EMI's practices and procedures for acquiring, administering, publishing, licensing, and otherwise exploiting its catalogue of songs.

3. SATV/EMI is a music publisher that owns and/or controls exclusive rights with respect to copyrighted musical compositions. SATV/EMI does not own or control exclusive rights with respect to any of the sound recordings identified in the Amended Complaint.

4. In this litigation, SATV/EMI is claiming infringement of the compositions identified as owned and/or exclusively controlled, in whole or in part, by SATV/EMI in the current Exhibit B to the Amended Complaint, ECF No. 172-2, for the period of February 1, 2013 through November 26, 2014 (the "Claim Period").

5. SATV/EMI, among other functions: (1) discovers, signs and nurtures authors, composers and producers of musical compositions (collectively, the "Songwriters"); (2) provides financial support to Songwriters; (3) provides creative support to Songwriters; (4) promotes Songwriters and their musical compositions; (5) promotes, markets and licenses musical compositions: and (6) administers licenses, collects royalties, and provides other important administrative functions on behalf of songwriters.

6. Musical compositions and their associated copyrights have an economic life and value separate and apart from the sound recordings in which they are fixed.

7. Apart from promotion of musical compositions to artists, record producers and record company executives, SATV/EMI actively seeks out licensing opportunities for its songwriters' compositions. For instance, the most common form of exploitation of musical compositions is in the form of so-called "mechanical licensing," which allows the musical

composition to be reproduced and exploited in connection with "phonorecords" or sound recordings. SATV/EMI also negotiates, issues and otherwise maintains mechanical licenses issued to distributors and digital service providers.

8. In many cases, SATV/EMI attempts to maximize the value of its writers' works by seeking out synchronization deals to place those works in films, television shows and commercials. SATV/EMI also licenses the use of its compositions in digital sheet music on the Internet, as well as to karaoke companies. SATV/EMI was also involved in the ringtone market by granting early licenses for the use of its musical compositions as monophonic and polyphonic ringtones.

9. SATV/EMI also has responsibility for administering licenses and collecting royalties on behalf of its Songwriters. This includes fees generated from licenses and monies payable to the Songwriters and to SATV/EMI as an owner or exclusive administrator of the compositions.

10. The rights in a musical composition are typically enforced independently of the rights in sound recordings. Although in this case, SATV/EMI has asserted claims simultaneously with record label entities that own or control some of the sound recordings that embody the underlying musical compositions, SATV/EMI could have asserted its claims independent of any claims by any of the record labels.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 23 day of September 2019 in New York

3