UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| SONY MUSIC ENTERTAINMENT, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> COX COMMUNICATIONS, INC., *et al.*, <br><br> Defendants. | Case No. 1:18-cv-00950-LO-JFA |

**DECLARATION OF JEREMY BLIETZ IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

I, Jeremy Blietz, hereby declare, pursuant to 28 U.S.C. § 1746, as follows:

1. I am Senior Vice President of Administration at Warner Chappell Music, Inc. I have worked in the music industry for 26 years, and for Warner Chappell Music, Inc. for 25 years. As Senior Vice President of Administration, I oversee the Warner Chappell Plaintiffs' copyright and royalty departments. I submit this Declaration in further support of Plaintiffs' Motion for Summary Judgment, and in opposition to Cox's Motion for Summary Judgment, to demonstrate that musical compositions have an economic life and value separate and apart from the sound recordings that embody them.

2. The Warner Chappell Music Plaintiff group is comprised of Warner Chappell Music, Inc. (f/k/a Warner/Chappell Music, Inc.); Warner-Tamerlane Publishing Corp.; WB Music Corp. (now known as W Chappell Music Corp. dba WC Music Corp.); W.C.M. Music Corp. (f/k/a W.B.M. Music Corp.); Unichappell Music Inc.; Rightsong Music Inc.; Cotillion Music, Inc.; and Intersong U.S.A., Inc.

3. The Warner Chappell Plaintiff group is part of WMG's music publishing division

1

whose primary business is to own and/or exclusively license copyright interests in and to musical compositions.

4.      In this litigation, the Warner Chappell Plaintiff group is asserting claims for infringement of copyright interests in and to the musical compositions identified as owned or exclusively controlled by them in the current Exhibit B to the Amended Complaint, ECF No. 172-2, for the unauthorized and unlicensed reproductions and distributions of such compositions during the period of February 1, 2013 through November 26, 2014 (the "Claim Period").

5.      The Warner Chappell Plaintiff group, among other functions: (1) discovers, signs and nurtures authors, composers and producers of musical compositions (collectively, the "Songwriters"); (2) provides financial, creative and promotional support to the Songwriters; and (3) promotes, markets and licenses the musical compositions written by the Songwriters, along with other copyrighted compositions it owns or exclusively controls, including the copyrights in and to the musical compositions that are at issue in this litigation.

6.      The copyrights in and to musical compositions have an economic life and value separate and apart from the copyrights in and to sound recordings.

7.      Apart from promoting and marketing musical compositions to artists, record producers and record company executives, the Warner Chappell Plaintiff group actively seeks out licensing opportunities for them.  For instance, the most common form of exploitation of musical compositions is in the form of so-called "mechanical licensing," which allows the musical composition to be reproduced and exploited in connection with "phonorecords" or sound recordings.  The Warner Chappell Plaintiff group also negotiates, issues and otherwise maintains mechanical licenses issued to distributors and digital service providers.

8.      In many cases, the Warner Chappell Plaintiff group attempts to maximize the value

of the copyrights in and to the musical compositions by also securing synchronization deals to place its musical compositions in motion pictures, television shows, karaoke products and services and commercial advertisements; negotiating and issuing licenses for the digital distribution of sheet music on the Internet; and, in earlier days, by negotiating licenses to ringtone aggregators for the use of musical compositions as monophonic and polyphonic ringtones.

9. In addition to the negotiation and issuance of licenses of its musical compositions, the Warner Chappell Plaintiff group also collects and accounts for royalties and license fees generated from such licenses, including monies payable to the Songwriters and to itself as an owner or exclusive administrator of those compositions.

10. The revenue generated from the licensing of musical compositions by music publishers is separate and distinct from the revenue generated from the licenses issued by the record companies for use of the sound recordings they own or exclusively control.

11. The rights in a musical composition are typically enforced independently of the rights in sound recordings. Although in this case, the Warner Chappell Plaintiff group has asserted claims simultaneously with record label entities that own or control some of the sound recordings that embody the underlying musical compositions, the Warner Chappell Plaintiff group could have asserted its claims independent of any claims by any of the record labels.

_____
Jeremy Blietz

Executed this 23 day of September 2019 in Los Angeles, CA.