UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| SONY MUSIC ENTERTAINMENT, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>COX COMMUNICATIONS, INC., *et al.*,<br><br>    Defendants. | Case No. 1:18-cv-00950-LO-JFA |

**DECLARATION OF DAVID KOKAKIS IN SUPPORT OF PLAINTIFFS'
OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

I, David Kokakis, hereby declare, pursuant to 28 U.S.C. § 1746, as follows:

1.     I am Chief Counsel at Universal Music Publishing Group. In my capacity as Chief Counsel, I manage all legal and business affairs, including all songwriter contract negotiations, music publishing catalog acquisitions, and other matters, for Plaintiffs Music Corporation of America, Inc. d/b/a Universal Music Corp., Polygram Publishing, Inc., Songs of Universal, Inc., Universal Music – MGB NA LLC, Universal Music - Z Tunes LLC, Universal Music Corp., Universal Music Publishing AB, Universal Music Publishing Limited, Universal Music Publishing MGB Limited, Universal Music Publishing, Inc., Universal/Island Music Limited, and Universal/MCA Music Publishing Pty. Limited (collectively, the "UMPG Plaintiffs" or "UMPG"). I also help to oversee UMPG's copyright department. The copyright department's responsibilities include, among other things, filing copyright registration applications with the U.S. Copyright Office, registering musical compositions with performing rights organizations in the United States, such as ASCAP, BMI, and SESAC, and maintaining records of the UMPG Plaintiffs' ownership and control of the musical compositions in their publishing catalog. I submit this Declaration in

further support of Plaintiffs' Motion for Summary Judgment, and in opposition to Cox's Motion for Summary Judgment, to demonstrate that musical compositions have an economic life and value separate and apart from the sound recordings that embody them.

2. UMPG is a music publisher that owns and/or controls exclusive rights with respect to copyrighted musical compositions. UMPG does not own or control exclusive rights with respect to any of the sound recordings identified in the Amended Complaint.

3. In this litigation, UMPG is claiming infringement of the compositions identified in the current Exhibit B to the Amended Complaint, ECF No. 172-2, for the period of February 1, 2013 through November 26, 2014 (the "Claim Period").

4. UMPG, among other functions: (1) discovers and nurtures songwriting talent; (2) provides financial support to songwriters; (3) provides creative support to songwriters; (4) promotes songwriters and their musical compositions; (5) promotes, markets and licenses musical compositions: and (6) administers licenses, collects royalties, and provides other important administrative functions on behalf of songwriters.

5. Musical compositions have an economic life and value separate and apart from the sound recordings in which they are fixed.

6. Apart from promotion of musical compositions to artists, record producers and record company executives, UMPG actively seeks out licensing opportunities for its songwriters' compositions. For instance, a common form of exploitation of musical compositions is in the form of so-called "mechanical licensing," which allows the musical composition to be reproduced and exploited in connection with "phonorecords" or sound recordings.

7. In many cases, UMPG also attempts to maximize the value of its writers' works by seeking out synchronization licensing opportunities to place those works in films, television shows

and commercials. In the case of synchronization uses, any licenses for a musical composition are always negotiated separately from any licenses for the sound recording that may embody the composition. UMPG also licenses the use of its compositions in digital sheet music on the Internet, as well as to karaoke companies.

8. UMPG also has responsibility for administering licenses and collecting royalties for musical compositions on behalf of its songwriters, including collecting significant income in the form of public performance royalties earned in connection with the blanket licenses issued by performing rights organizations such as BMI, ASCAP and SESAC. Such royalties pertain only to musical compositions, not sound recordings. Similarly, licensing works for live theatrical productions, or so called "grand rights," and licensing lyrics for various uses, are other unique forms of exploitation that exist solely for musical compositions, not sound recordings.

9. The rights in a musical composition are almost always enforced independently of the rights in sound recordings, and litigation to protect those rights is also typically independent of litigation brought to enforce rights in sound recordings. Although in this case we have asserted claims simultaneously with record label entities that own or control some of the sound recordings that embody the underlying musical compositions, UMPG could have asserted its claims independent of any claims by any of the record labels.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

_David Kokakis_

Executed this 24th day of September 2019 in New York

3