UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

SONY MUSIC ENTERTAINMENT, *et al.*,

Plaintiffs,

v.

COX COMMUNICATIONS, INC., *et al.*,

Defendants.

Case No. 1:18-cv-00950-LO-JFA

**DECLARATION OF ALASDAIR MCMULLAN IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

I, Alasdair McMullan hereby declare, pursuant to 28 U.S.C. § 1746, as follows:

1. I am Senior Vice President of Business & Legal Affairs at UMG Recordings, Inc., which is the United States-based legal entity for recorded music operations, and part of the group of companies colloquially known as "Universal Music Group." Universal Music Group is a vertically integrated, global group of affiliated record labels, and other corporate entities, with common parentage through the French conglomerate, Vivendi S.A. Universal Music Group's foreign affiliated record labels operate on every continent. In my capacity as in-house counsel for UMG Recordings, Inc., among other things, I manage and supervise litigation for Plaintiffs UMG Recordings, Inc. and Capitol Records, LLC (formerly Capitol Records, Inc.) (collectively, the "UMG" or the "UMG Plaintiffs") and all of their record label affiliates. I submit this Declaration in further support of Plaintiffs' Motion for Summary Judgment, and in opposition to Cox's Motion for Summary Judgment, to demonstrate that sound recordings have an economic life and value separate and apart from the musical compositions embodied within them.

1

2. UMG is a record company, which owns or exclusively licenses copyrighted sound recordings. UMG does not own or exclusively license compositions.

3. In this litigation, UMG is claiming infringement of the sound recordings identified in the current Exhibit A to the Amended Complaint, ECF No. 172-1, for the period of February 1, 2013 through November 26, 2014 (the "Claim Period").

4. UMG develops and exploits sound recordings through various unincorporated label divisions.

5. As a general matter and routine business practice, UMG releases and monetizes its sound recordings individually even when they are part of an album, and often promotes and markets tracks individually as well. This practice has become particularly important within the past decade, given the emergence of digital downloading and streaming technology as the principal method by which fans consume music.

6. Specifically, during the Claim Period, UMG distributed all of its claimed copyrighted sound recordings as individual tracks available online through sources such as iTunes, Spotify, and YouTube, among others. Indeed, individual tracks are often available for streaming or downloading as "singles" at different times, including before a full album is released, in order to maximize their independent economic value.

7. Moreover, UMG generally licenses sound recordings to be included in a film, TV show, or other audiovisual work on an individual track basis, not as an album. These licenses are commonly referred to as synchronization licenses.

8. Each individual track on an album may have several different contributors who are compensated separately. These could include, for example, different studio musicians, side artists or producers.

9. UMG routinely enforces its sound recording copyrights without the participation of the copyright owner of the underlying musical composition embodied in a sound recording. Although in this case, we have asserted claims simultaneously with the music publishing entities that own or control some of the underlying musical compositions, UMG could have asserted its sound recording claims independent of any claims by the music publishers.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 20th day of September, 2019 in Santa Monica, California