# EXHIBIT 23

Case 1:18-cv-00950-LO-JFA   Document 398-23   Filed 09/25/19   Page 2 of 7 PageID# 16245

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

SONY MUSIC ENTERTAINMENT, *et al.*,

     Plaintiffs,

v.

COX COMMUNICATIONS, INC., *et al.*,

     Defendants.

Case No. 1:18-cv-00950-LO-JFA

## DECLARATION OF BRENT K. BECK IN SUPPORT OF COX'S OPPOSITION TO PLAINTIFFS' FEBRUARY 1, 2019 MOTION TO COMPEL

I, Brent K. Beck, declare as follows:

1.     I am a Software Engineer II working at Cox Communications, Inc. I have worked for Cox since 2001, and I have been involved with Cox's Cox Abuse Tracking System ("CATS") since 2007. I submit this declaration in support of Cox's opposition to Plaintiffs' February 1, 2019 motion to compel production of documents. I have personal knowledge of the facts stated in this Declaration, and if called as a witness, could testify competently to the matters contained herein.

2.     My current job duties focus on providing hardware and software support for the Cox Abuse Tracking System ("CATS"). Cox's Customer Abuse Team uses CATS to assist in its enforcement of the Cox Acceptable Use Policy. At its core, CATS is a system for handling emails received at abuse@cox.net. Persons with complaints about acts of alleged abuse on Cox's network can submit their complaints to this e-mail address.

1

3.      I understand that that Plaintiffs have represented that all of the copyright infringement complaints that are at issue were submitted on their behalf by their agent, the Recording Industry Association of America, or RIAA. I also understand that according to Plaintiffs, all of the complaints that RIAA submitted during the period from February, 2013 through November, 2014 were for Plaintiffs' works. Based on my review of CATS complaint records, there were approximately 164,000 copyright infringement complaints submitted by the RIAA during the period from February, 2013 through November, 2014. Based on my review, those complaints are related to 57,679 different Cox subscriber accounts.

4.      Cox receives emails about many different kinds of issues, generically termed "abuse" issues. Emails sent to abuse@cox.net include complaints about issues such as spam; "phishing" attacks or other attempts by malicious third parties to obtain sensitive information for purposes such as theft, fraud, identity theft, etc.; claims of copyright infringement; security issues; reports of illegal activity; technical issues; etc.

5.      Email complaints sent to the abuse@cox.net email inbox may be sent using a variety of different encodings. For example, raw email contents may sometimes be presented as plain-text; or the raw contents may be encoded in a format which must be parsed/decoded before a human reader would be able to read or understand it.

6.      CATS monitors the abuse@cox.net email inbox, and parses incoming email complaints to extract certain basic metadata (if it exists) such as the email subject line; sender's email address; and date-and-time stamp. The CATS parser works at a syntactic level, not a semantic level. Thus, while CATS can automatically locate and extract standardized information from complaint emails (such as the metadata referred to above), CATS cannot interpret emails. Although the automated process of ingesting and parsing complaint emails is sometimes referred

2

to as "reading" them, it is important to understand that CATS cannot "read" emails in the same way a person can.

7.      CATS will associate an emailed complaint with a "ticket." Depending on the circumstances, CATS may create a new ticket for a complaint, or it may add the complaint to an already-existing ticket.

8.      The first complaint which generates a ticket is used to determine the "abuse type" of the ticket. If later complaints are associated with the same ticket, the ticket's abuse type classification does not change. During the period from 2011-2014, CATS could associate additional complaints into an existing ticket, regardless of the ticket's abuse type.

9.      Thus, during the time period in question, a ticket with a copyright-related abuse type could also include some number of other complaints that are unrelated to copyright. For the same reasons, tickets with non-copyright-related abuse types could contain one or more copyright complaints.

10.     While it is possible to select all tickets that are associated with a particular account ID, and that were created during a particular time period, these tickets could include copies of both copyright infringement complaints, and complaints unrelated to copyright infringement, or both. Based on my review, there are approximately 460,000 tickets, containing a total of approximately 580,000 complaints, associated with the 57,679 accounts at issue for the period 2011-2014.

11.     There is no simple way to use CATS to retrieve all, and only, the set of *copyright infringement complaints* for a given subscriber or account ID. One the one hand, retrieving only tickets whose abuse type relates to copyright infringement will also retrieve all of the complaints associated with the ticket, including non-copyright complaints. On the other hand, by not

3

retrieving tickets with other abuse types, any copyright infringement complaints associated with *those* tickets will be missed. In other words, to be certain of retrieving all copyright infringement complaints for a given subscriber, CATS must retrieve all of the tickets associated with the subscriber, which will retrieve all complaints associated with those tickets.

12.     To retrieve only the copyright-related complaints from these tickets, it would be necessary to review the complaints. It is possible that, given a collection of complaints, some number of the copyright infringement complaints in the collection would be in a standard format, such that they could be located using keyword searches or similar techniques. However, the ability to do a keyword search is greatly hindered by the "encoding" issue discussed above. Because CATS stores complaints in the raw format in which they were received, doing keyword searching would require first "decoding" the complaint emails. Moreover, using keyword searching might miss an indeterminate number of copyright infringement complaints that are not in a standardized format. I am unaware of any automated process or keyword search, short of human review, that would reliably return all, and only, copyright infringement complaints.

13.     Depending on the type of abuse that is being reported, complaints submitted to Cox may contain private, sensitive or personal information about Cox subscribers. For example, it is possible that complaints related to spam, security issues, technical issues, or other types of issues or abuse could include information about Cox subscribers, for example, a subscriber's name, email address, other contact information, or even account password.

14.     I am not aware of any automated process or filtering technique, short of human review, that would ensure that complaints submitted to Cox are free of personally identifiable or sensitive information about Cox subscribers. This is particularly true in light of the broad range of different types of information that might reveal private information about an individual. I am

4

also aware that there have been numerous reports and studies showing that even supposedly

"anonymized" databases can be de-anonymized, including by correlating the data to third-party

information from other sources.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed at ⟨Atlanta, GA⟩ .

Date: February 6, 2019

Brent K. Beck