# Exhibit B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| BMG RIGHTS MANAGEMENT (US) LLC, and ROUND HILL MUSIC LP,<br><br>Plaintiff,<br><br>v.<br><br>COX ENTERPRISES, INC., COX COMMUNICATIONS, INC., and COXCOM, LLC,<br><br>Defendants. | Case No. 1:14-cv-1611 (LOG/JFA) |

**REPLY BRIEF IN SUPPORT OF COX'S MOTION TO EXCLUDE
THE TESTIMONY OF PUTATIVE EXPERT TERRENCE P. McGARTY, Ph.D.**

# NON-CONFIDENTIAL PUBLIC VERSION

# INTRODUCTION

Cox respectfully submits this reply in support of Cox's *Daubert* motion to exclude the testimony of Plaintiffs' putative expert, Terrence McGarty (Dkt. No. 489). Plaintiffs' opposition does not change the patent inadmissibility of Dr. McGarty's testimony. (Indeed, Plaintiffs largely use their opposition as another vehicle to inappropriately attack the testimony of Cox's expert, Mr. Rosenblatt.) If anything, Plaintiffs' arguments only confirm the critical infirmity of Dr. McGarty's opinions, admitting that, "*relying on his firsthand experience in the cable and telecommunications industry*, [he] opines about Cox's operations and logistics." Dkt. No. 587 at 5 (emphasis added). Simply put, Dr. McGarty's general experience in the telecommunications industry is not a valid basis for rendering his specific opinions in this case, which Plaintiffs concede all have to do with *Cox's* operations and logistics. *See id.* at 2-3 (listing opinions).

By his own admission, Dr. McGarty has an incomplete understanding of many of the systems and processes about which he opines. And Dr. McGarty took no steps to address the deficiencies in his understanding of these systems through study of readily available materials that Cox produced. Furthermore, Dr. McGarty fails to consider any relevant standard of reasonableness and dismisses, without analysis, evidence of highly pertinent industry practices. Because he fails to consider any relevant legal, operational, or industry framework, Dr. McGarty rendered his opinions in a vacuum. And Plaintiffs offer him in the hope that the jury will be impressed by Dr. McGarty's credentials and will therefore adopt his unreasoned *ipse dixit* conclusions. That is precisely the harm that *Daubert* aims to prevent, and the Court should exclude the entirety of Dr. McGarty's uninformed and irrelevant testimony.

1

# ARGUMENT

One's general qualifications do not serve as a reliable substitute for knowledge of a particular implementation, especially where the putative expert seeks to draw conclusions as to specific instances or facts, as Dr. McGarty does in this case. *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 249 (4th Cir. 1999) (affirming district court's exclusion of expert testimony, despite witness' knowledge of "general engineering principles," because the court found his testimony for the "particular analysis" unreliable); *see also United States v. Chang*, 207 F.3d 1169, 1172-73 (9th Cir. 2000) (practical experience in international finance did not amount to practical experience relevant to determining whether a particular security was counterfeit); *Taylor v. Cooper Tire & Rubber Co.*, 130 F.3d 1395, 1396-97 (10th Cir. 1997) (general qualifications in materials failure did not furnish a proper basis for testifying about a manufacturing defect); *Bertotti v. Charlotte Motor Speedway, Inc.*, 893 F. Supp. 565, 570 (W.D.N.C. 1995) (striking expert affidavit regarding design of go-kart track where expert had experience in automobile racing, but not go-kart racing).

Dr. McGarty's general experience in the telecommunications industry does not furnish a valid basis for rendering opinions with respect to Cox. Dr. McGarty made no effort to "fit" his opinions to the facts of this case, and ignored critical components of Cox's operations. *See James River Mgmt. Co. v. Kehoe*, No. 3:09-CV-00387, 2010 WL 431477, *4 (E.D. Va. Feb. 5, 2010) (excluding expert testimony that failed to meet the "fit" requirement). Moreover, Dr. McGarty failed to apply a relevant standard for reasonableness and ignored pertinent industry standards and practices without any explanation. Because his testimony will not help the jury in assessing the facts of this case (and is more likely to confuse rather than clarify the issues), the Court should exclude Dr. McGarty's opinions and testimony in their entirety.

I. **DR. MCGARTY'S GENERAL QUALIFICATIONS DO NOT PROVIDE A RELEVANT AND RELIABLE FOUNDATION FOR HIS OPINIONS ABOUT COX'S OPERATIONS.**

While Plaintiffs spend much of their opposition bolstering Dr. McGarty's credentials (which Cox does not dispute), that background gives him only a generalized idea of how ISPs operate.[1] *See* Dkt. No. 587 at 3-4. That broad experience does not furnish a reliable basis for his specific opinions "about the operational and logistical capabilities and functions of Cox." *Id.* at 2-3; Dkt. No. 489, Ex. A ¶¶ 15, 35-63; Ex. B ¶¶ 4, 19-33; Ex. C ¶¶ 4-28; *see also Oglesby*, 190 F.3d at 249 (general qualifications of putative expert did not provide him with an adequate foundation to deliver reliable testimony about specific issues); *In re Cessna 208 Series Aircraft Prods. Liab. Litig.*, No. 2:05-md-01721, 2009 WL 3756980, *13 (D. Kan. Nov. 9, 2009) ("Where alleged expertise with regard to other aspects of a field gives a proffered expert no special insight into the issues of the case, such alleged expertise does not qualify the witness as an expert."). Moreover, Dr. McGarty confesses that he has an incomplete understanding of the details of Cox's operations: "I don't know the capacity of the CATS system, and I don't know the details of this volume of complaints. . . . I just don't know enough about the system to give you an opinion." Dkt. No. 489, Ex. D at 132:25-134:13; *see also id.* at 51:25-53:4, 53:12-55:6, 55:8-18, 63:22-64:7, 86:4-16, 135:18-136:1. And, despite his time in the telecommunications industry, Dr. McGarty has no relevant experience with systems for handling allegations of copyright infringement. *Id.* at 128:5-129:23. Therefore, the testimony Dr. McGarty offers about Cox's systems and processes is speculative at best.

---

[1] Plaintiffs also misrepresent Dr. McGarty's experience, stating that it "includes the design, development, implementation, and operations of a variety of peer-to-peer type applications similar to BitTorret [*sic*]. . . ." *See* Dkt. No. 587 at 4. In deposition, Dr. McGarty's denied having any experience with BitTorrent technology: "I don't use pay toilets. No. I wouldn't go near that, okay?" Dkt. No. 489, Ex. D at 153:25-154:3. And his testimony overall reflected an incomplete and incorrect understanding of how BitTorrent works. *See id.* at 151:6-155:11.

3

Dr. McGarty's testimony consists of several sweeping opinions about what Cox *could* theoretically do. But Dr. McGarty does not offer any analysis of whether Cox *should* undertake his proposals, and in many cases he believes that Cox should not. For instance, Plaintiffs intend to have Dr. McGarty offer testimony that, using deep packet inspection (DPI), "Cox has the ability to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ the information provided in the Rightscorp notices."[2] *See* Dkt. No. 587 at 3. But all Dr. McGarty knows about Cox's use of DPI is what he gleaned from "statements that have been in the depositions that tends to indicate that [Procera is] used," and he admits that those statements show that Cox uses DPI "in a more limited fashion" than would be necessary to accomplish what he proposes. Dkt. No. 489, Ex. D at 70:20-72:15.

Nor does Dr. McGarty's opinion take into account the costs of implementing his proposal: "I have neither considered the costs to do it, nor the costs if they don't do it, all right. . . ." Dkt. No. 489, Ex. D at 80:11-21. And Dr. McGarty admits he never examined the issue of whether Cox *should* use DPI to potentially investigate alleged infringements, because he "wasn't asked to do that." *Id.* at 81:21-82:10. Moreover, Dr. McGarty's proposal is at odds with his "very strong position [on net neutrality] that, other than network management functionalities, looking at headers, that, indeed, *the ISPs should not examine the content or manage the traffic accordingly.*" *See* Dkt. No. 311, Ex. 56 at 176:3-177:21 (emphasis added).

---

[2] Plaintiffs' statement mischaracterizes Dr. McGarty's opinion. He never asserted that Cox could use DPI to ▮▮▮▮▮ the allegations in Rightscorp's notices with ▮▮▮▮▮▮. *See* Dkt. No. 587 at 3. Rather, Dr. McGarty opined only that Cox could ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dkt. No. 489, Ex. A ¶ 15 (emphasis added); *see also id.*, Ex. C ¶ 9 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. When asked in deposition whether Cox could verify or validate Rightscorp's allegations, Dr. McGarty responded: "The best Cox could do is corroborate it if they were keeping DPI records with Procera or some other. *Validating would mean that someone would – in my terminology, would have to know a considerable amount more.*" *Id.*, Ex. D at 69:1-11 (emphasis added).

4

Dr. McGarty bases his opinions on fatally incomplete understandings of Cox's operations.³ He opines that "[t]here is no ▬▬▬▬▬▬▬ reason for Cox to reject the notices from Rightscorp." Dkt. No. 587 at 3. But Dr. McGarty admits that he does not "know the details of the Cox system. . . ." Dkt. No. 489, Ex. D at 86:4-16; *see also id.* at 51:25-53:4, 53:12-55:6, 55:8-18, 59:3-61:15, 63:22-64:7, 132:25-134:13, 135:18-136:1, 167:6-18 (displaying his ignorance of Cox's systems). And his speculative claims about Cox's capabilities also fail to consider Rightscorp's conduct and the purported accuracy of its notices, despite Rightscorp's central role in this case. *See id.* at 72:22-75:6, 76:9-14. What Dr. McGarty actually knows about Cox is that it has developed a system for handling allegations of copyright infringement (the Cox Abuse Tracking System, or CATS for short), and Dr. McGarty extrapolates from this single fact to argue that Cox could theoretically change that system: "it could be redesigned, it could be upgraded or it could be replaced." *Id.* at 59:3-60:8; *see also id.* at 134:24-135:8 ("Cox always has the ability to change the capacity and configuration of its systems. Companies are doing that all the time.").

Plaintiffs defend Dr. McGarty's ignorance of the details of Cox's system as a *virtue*. Because "Dr. McGarty's opinions concern CATS at an operational level," they argue, he was not

---

³ The incomplete nature of Dr. McGarty's testimony also makes some of his opinions misleading and thus excludable under Federal Rule of Evidence 403. *See Daubert*, 509 U.S. at 595 ("[T]he judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses."). For example, Dr. McGarty opines that, "[b]y providing its subscribers with broadband access, Cox provides its subscribers the means by which to use Bittorrent [*sic*]." Dkt. No. 587 at 2. But Cox does not specifically provide BitTorrent access to Cox users; it offers only access to the Internet generally. And Dr. McGarty agrees that it would be improper for Cox to block or throttle BitTorrent or any other specific type of user traffic: "all traffic should be handled equally and fairly, in a nondiscriminatory manner, and that the IP [*sic*] can examine headers for traffic management and network management purposes. But in terms of discriminating against users, I was strongly opposed to that." Dkt. No. 311 ¶ 16(b), Ex. 56 at 177:23-178:22. Such opinions have a "greater potential to mislead than to enlighten." *See Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999) (citing *United States v. Dorsey*, 45 F.3d 809, 815-16 (4th Cir. 1995)).

5

required to review materials demonstrating how CATS actually functions. *See* Dkt. No. 587 at 6-7. Cox produced substantial materials about its operations in discovery (including but not limited to the CATS source code). And, though Dr. McGarty had ready access to these materials, he nevertheless chose to ignore them.[4] Dr. McGarty provides opinions about the capabilities of CATS parsers without having reviewed their functionality, *see* Dkt. No. 489, Ex. D at 59:3-60:8; he opines on scaling the CATS system but lacks even a basic understanding of its capacity, *see id.* at 59:3-61:15, 132:25-134:13, 135:18-136:1, 167:6-18; and he speculates about theoretical implementations for handling complaints of alleged copyright infringement without any concept of how his proposals would affect the larger CATS ecosystem, *see id.* at 57:13-59:1.

As Plaintiffs readily admit, "relying on his firsthand experience in the cable and telecommunications industry," and seemingly nothing else, Dr. McGarty "opines about Cox's operations and logistics." *See* Dkt. No. 587 at 5. Neither *Daubert* nor the Federal Rules of Evidence allow a putative expert to make such a leap. "It is not enough that the proposed expert have expertise in an area of knowledge." *In re Canvas Specialty, Inc.*, 261 B.R. 12, 19 (Bankr. C.D. Cal. 2001) (putative expert's general training as an architect did not make him an expert in "the manufacturing and use of canvas products"). Rather, "[t]he expertise must be relevant to *the determination of the facts in issue.*" *Id.* (emphasis added). Moreover, if there exists relevant "evidence tending to refute the expert's theory and the expert does not acknowledge or account for that evidence, the expert's opinion is unreliable." *Yates v. Ford Motor Co.*, No. 5:12-CV-00752, 2015 WL 3948303, *13 (E.D.N.C. June 29, 2015),

---

[4] Cox is not, as Plaintiffs claim, "arguing that an accounting expert cannot opine about how an accountant performed his job because he did not review the source code for Excel." *See* Dkt. No. 587 at 7. But if an accountant seeks to offer testimony about theoretical improvements to the spreadsheet functionality of Microsoft Office, he ought to know a thing or two about Excel and how it functions.

6

*reconsideration denied*, No. 5:12-CV-752-FL, 2015 WL 6758983 (E.D.N.C. Nov. 5, 2015) (quoting *In re Rezulin Prods. Liab. Litig.*, 369 F. Supp. 2d 398, 425 (S.D.N.Y. 2005)). Because Dr. McGarty "utterly fails to consider" the operational details of Cox's system (and Rightscorp's conduct and its generation of notices that Plaintiffs believe Cox should have processed), and indeed "fails to offer an explanation for why" he did not consider these facts relevant, this Court "is justified in excluding [his] expert[ ] testimony." *See Peters-Martin v. Navistar Int'l Transp. Corp.*, 410 F. App'x 612, 623 (4th Cir. 2011) (affirming district court's exclusion of putative expert testimony concerning a "proposed safer alternative design") (quoting *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 202 (4th Cir. 2001)).

## II. DR. MCGARTY FAILS TO APPLY ANY RELEVANT STANDARD OF REASONABLENESS.

In light of Dr. McGarty's deposition testimony, Plaintiffs do not dispute that Dr. McGarty has no familiarity with the standards of reasonableness at play under the DMCA. *See* Dkt. No. 489, Ex. D at 43:14-24, 44:3-45:4, 51:21-24, 81:21-82:10. Rather, Plaintiffs merely claim that "Dr. McGarty does not purport to offer any legal conclusions that would require him to analyze the law." Dkt. No. 587 at 5. That contention is plainly false. Dr. McGarty *does* render opinions that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dkt. No. 489, Ex. B ¶¶ 19-33; *see also id.*, Ex. C ¶ 28 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[5]

---

[5] Similarly, Dr. McGarty opines that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Dkt. No. 489, Ex. A ¶ 15 (emphasis added). This opinion essentially parrots the language of one of the elements of vicarious liability: "In order to establish vicarious liability, a copyright owner must demonstrate that the entity to be held so liable: (1) possessed *the right and ability to supervise* the infringing activity . . . ." *See Nelson-Salabes, Inc. v. Morningside Dev., LLC*, 284 F.3d 505, 513 (4th Cir. 2002) (emphasis added).

7

Because Dr. McGarty does not know what reasonableness means under the DMCA, he provides no foundation for his opinions. As a result, Dr. McGarty calls attention to aspects of Cox's procedures and systems without offering any explanation for why he considers them relevant. For example, Plaintiffs intend to have Dr. McGarty testify that "Cox ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓" Dkt. No. 587 at 3; *see also* Dkt. No. 489, Ex. A ¶¶ 15, 63; Ex. C ¶¶ 4, 14-16. That is merely a recitation of fact without any analysis at all. The implication is that Cox should treat allegations of copyright infringement similarly to other abuse violations, *but Dr. McGarty admits he did not perform any analysis of other types of abuse complaints.* See Dkt. No. 489, Ex. D at 57:13-59:1. Without any foundation, such testimony will only confuse the jury.[6] *See Hines v. Wyeth*, No. 2:04-cv-00690, 2011 WL 2680814, *7 (S.D.W. Va. July 8, 2011) (excluding proffered expert testimony that, while "finding some limited support in the scientific literature, ha[d] a great potential to mislead the jury") (quoting *Westberry*, 178 F.3d at 261); *accord United States v. Fultz*, 591 F. App'x 226, 228 (4th Cir.), *cert. denied*, 135 S. Ct. 2370 (2015).

The only apparent measure of reasonableness Dr. McGarty considered was whether Cox's conduct was sufficiently "reasonable" to avoid this lawsuit: "What I'm saying is that there is – the costs associated with executing this, all right, in the fullest degree, is, most likely, not unreasonable compared to the downside costs of substantial litigation." Dkt. No. 489, Ex. D at 105:11-108:15. No surprise there, as Dr. McGarty's understanding that "Cox's system does not appear to comply with [the DMCA] appropriately" served as one of the core assumptions of his

---

[6] The same fundamental problem resulted in Dr. McGarty's exclusion in *Arzoomanian v. British Telecomms, PLC*, No. 2:03-00374, 2007 WL 132983 (D.N.J. Jan. 12, 2007). *See* Dkt. No. 587 at 9 n.3. In that case, Dr. McGarty offered a report in support of a plaintiff that described the role and usual compensation for "an Intermediary." *Id.* at *16. The problem: the plaintiff in *Arzoomanian* was *not an Intermediary*, so Dr. McGarty's testimony did not shed light on any of the material issues. *Id.*

8

testimony, supplied to him by Plaintiffs' counsel at the outset of his analysis. *Id.* at 94:2-95:14. At no point did Dr. McGarty question or try to investigate that assumption, *i.e.*, by comparing Cox's procedures to any industry standard. *See id.* at 95:15-21. Instead, Dr. McGarty let that assumption drive his analysis of what Cox *could* theoretically be doing differently, and considered the fact that Cox had not already adopted his hypothetical proposals as evidence of its unreasonableness. Thus, Dr. McGarty's circular reasoning is impermissibly "syllogistic." *See Oglesby*, 190 F.3d at 249 (describing the inadmissible syllogism considered in *Kumho Tire, Co., v. Carmichael*, 526 U.S. 137, 152 (1999)) ("His reasoning was syllogistic — a properly manufactured tire carcass stays bound to its innertread; the tread of the tire at issue did not stay so bound; thus the tire was defectively manufactured.").

Because Dr. McGarty failed to consider any relevant standard of reasonableness, but instead *assumed* that Cox failed to comply with the DMCA safe harbor requirements, Dr. McGarty's testimony "is the quintessential *ipse dixit*." *See ePlus, Inc., v. Lawson Software, Inc.*, 764 F. Supp. 2d 807, 815 (E.D. Va. 2011).

### III. DR. MCGARTY IGNORES HIGHLY RELEVANT INDUSTRY PRACTICE WITHOUT EXPLANATION.

Dr. McGarty admits that he has no idea what the applicable DMCA standards could mean. *See* Dkt. No. 489, Ex. D at 43:14-24, 44:3-6, 44:10-45:4, 49:17-50:10, 51:21-24, 81:21-82:10. He is also unaware of any evidence of any ISP terminating its customers based on mere allegations of copyright infringement. *Id.* at 165:1-21. Yet Dr. McGarty, Plaintiffs' putative industry expert, fails to meaningfully account for the Copyright Alert System, declaring without explanation that the Copyright Alert System is irrelevant. *Id.*, Ex. B ¶¶ 4, 37-38; *see also McEwen v. Baltimore Washington Med. Ctr. Inc.*, 404 F. App'x 789, 791 (4th Cir. 2010) (affirming district court's exclusion of expert testimony where experts "failed to meaningfully

9

account for medical literature at odds with their testimony, declaring without explanation that the studies cited [d]id not apply").

"Federal courts have consistently held that compliance with industry standards is relevant to a reliability determination under Rule 702." *Heer v. Costco Wholesale Corp.*, 589 F. App'x 854, 862 (10th Cir. 2014) (holding that district court did not abuse its discretion in excluding putative expert for his failure to consider industry practices). Indeed, "expert testimony pertaining to industry standards and defendant's compliance or non-compliance is undoubtedly helpful to the trier of fact in this highly technical and often complex [telecommunications] industry. . . ." *Bouygues Telecom, S.A. v. Tekelec*, 472 F. Supp. 2d 722, 728 (E.D.N.C. 2007). Moreover, in ignoring the Copyright Alert System, Dr. McGarty dismisses one of the most significant and best documented industry practices regarding the handling of notices of alleged infringement that exists.[7] *See* Dkt. No. 489, Ex. B ¶¶ 4, 37-38.

Dr. McGarty's kneejerk dismissal of the Copyright Alert System (and more broadly, any evidence that dares undermine his testimony) is a product of his ignorance of the digital rights technology space. As Dr. McGarty admitted in his deposition: "It's not clear to me what the Copyright Alert System, as an entity, is." Dkt. No. 489, Ex. D at 156:24-159:1. Rather than study the literature concerning the Copyright Alert System to determine how and whether it applied to his analysis, Dr. McGarty summarily deemed this cross-industry set of best practices immaterial and moved on. Dr. McGarty's "failure to adequately account for this obvious

---

[7] Plaintiffs claim that "[n]either the Copyright Alert System nor what other ISPs make available about their DMCA policies and procedures has any bearing on Dr. McGarty's opinions or the issues in this case." *See* Dkt. No. 587 at 7-8. To the contrary, Cox has briefed why the Copyright Alert System and the DMCA-related practices of other ISPs are highly relevant to the issues in this case. *See* Dkt. No. 626; *see also* Dkt. No. 597 at 21-24.

10

alternative explanation creates a fatal analytical gap in his testimony" and warrants exclusion. *See Perkins v. United States*, 626 F. Supp. 2d 587, 594 (E.D. Va. 2009).

"The objective of [*Daubert's* 'gate-keeping'] requirement is to ensure the reliability and relevancy of expert testimony." *Kumho Tire*, 526 U.S. at 152. Dr. McGarty's testimony — which ignores industry practices, fails to consider any relevant standard of reasonableness, and overlooks significant details about Cox's operations and logistics—does not speak to any of the issues in this case. "Ordinarily, a key question to be answered in determining whether a theory or technique is scientific [or specialized] knowledge that will assist the trier of fact will be whether it can be (and has been) tested." *Daubert*, 509 U.S. at 593. But, because Dr. McGarty fails to provide any legal, industrial, or operational context for his opinion, his testimony is impossible to test through cross-examination. The only point of view Dr. McGarty considers relevant is his own, and for that reason this Court should exclude his testimony.

## CONCLUSION

For the reasons set forth here, Cox respectfully requests that the Court exclude all putative expert testimony and opinions offered by Dr. McGarty.

Dated: November 17, 2015

Respectfully submitted,

/s/ Craig C. Reilly
Craig C. Reilly VSB # 20942
111 Oronoco Street
Alexandria, Virginia 22314
TEL: (703) 549-5354
FAX: (703) 549-5355
E-MAIL: craig.reilly@ccreillylaw.com

*Counsel for Defendants*

11

*Of Counsel for Defendants*

Andrew P. Bridges (*pro hac vice*)
David L. Hayes (*pro hac vice*)
Jedediah Wakefield (*pro hac vice)*
Guinevere L. Jobson (*pro hac vice*)
Fenwick & West LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Tel: (415) 875-2300
Fax: (415) 281-1350
Email: abridges@fenwick.com
gjobson@fenwick.com

Brian D. Buckley (*pro hac vice)*
Fenwick & West LLP
1191 2nd Avenue, 10th Floor
Seattle, WA 98101
Tel: (206) 389-4510
Fax: (206) 389-4511
Email: bbuckley@fenwick.com

Armen N. Nercessian (*pro hac vice*)
Ronnie Solomon (*pro hac vice*)
Ciara Mittan (*pro hac vice*)
Nicholas A. Plassaras (*pro hac vice*)
Fenwick & West LLP
801 California Street
Mountain View, CA 94041
Tel: (650) 988-8500
Fax: (650) 938-5200
Email: anercessian@fenwick.com
rsolomon@fenwick.com
cmittan@fenwick.com
nplassaras@fenwick.com

12

## CERTIFICATE OF SERVICE

I hereby certify that on November 17, 2015, the foregoing was filed and served electronically by the Court's CM/ECF system upon all registered users:

/s/ Craig C. Reilly
Craig C. Reilly, Esq. (VSB # 20942)
111 Oronoco Street
Alexandria, Virginia 22314
TEL: (703) 549-5354
FAX: (703) 549-5355
E-MAIL: craig.reilly@ccreillylaw.com

*Counsel for Defendants*

13