UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| SONY MUSIC ENTERTAINMENT, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> COX COMMUNICATIONS, INC. and COXCOM, LLC, <br><br> Defendants. | Case No. 1:18-cv-00950-LO-JFA |

**COX'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO EXCLUDE THE TESTIMONY OF PUTATIVE EXPERT BARBARA FREDERIKSEN-CROSS**

## TABLE OF CONTENTS

                                                                             **Page**

I. INTRODUCTION ................................................................................................................... 1

II. ARGUMENT ........................................................................................................................... 2

    A. The '431 Spreadsheet is the sole basis for the opinions at issue on this motion. ... 2

    B. The '431 Spreadsheet is an incompetent summary of the data. ............................. 3

    C. The author of the '431 Spreadsheet testified that it did not support Ms. Frederiksen-Cross' conclusion. ............................................................................... 8

    D. Ms. Frederiksen-Cross "cherry-picked" her data. .................................................. 10

III. CONCLUSION ..................................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Barber v. United Airlines, Inc.*,
  17 F. App'x 433 (7th Cir. 2001) ...............................................................................................11

*In re Bextra and Celebrex Mktg. Sales Practices and Prod. Liab. Litig.*,
  524 F. Supp. 2d 1166 (N.D. Cal. 2007) ....................................................................................11

*Branch v. Gov't Emps. Ins. Co.*,
  286 F. Supp. 3d 771 (E.D. Va. 2017) ................................................................................. *passim*

*U.S. ex rel. Bunk v. Birkart Globistics GmbH & Co.*,
  2011 WL 5005313 (E.D. Va. Oct. 19, 2011) ..............................................................................6

*Dobbs v. Wyeth Pharm.*,
  No. CIV-04-1762-D, 2007 WL 7660186 (W.D. Okla. Sept. 13, 2007) ....................................6

*Finestone v. Florida Power & Light Co.*,
  2006 WL 267330 (S.D. Fla. Jan. 6, 2006) ................................................................................12

*Holden Metal & Aluminum Works, Ltd. v. Wismarq Corp*
  2003 WL 1797844 (N.D. Ill. Apr. 3, 2003) .............................................................................11

*LeClercq v. The Lockformer Co.*,
  2005 WL 1162979 (N.D. Ill. Apr. 28, 2005) ............................................................................11

*Sprint Nextel Corp. v. Simple Cell Inc.*,
  248 F. Supp. 3d 663 (D. Md. 2017) ..............................................................................3, 5, 6, 8

*U.S. v. Mermelstein*,
  487 F. Supp. 2d 242 (E.D.N.Y. 2007) ........................................................................................6

*U.S. v. Thomas*,
  631 Fed. Appx. 847, 849 (11th Cir. 2015) .................................................................................6

**Other Authorities**

Fed. R. Evid. 702(a) .........................................................................................................................12

Fed. R. Evid. 703 ...............................................................................................................................3

Fed. R. Evid. 1006 .................................................................................................................. *passim*

## I. INTRODUCTION

Cox has moved to exclude certain opinions of Plaintiffs' expert Barbara Frederiksen-Cross on the grounds that the data she chose to rely on for those opinions is insufficient and incomplete. Specifically, Cox moved to preclude Ms. Frederiksen-Cross from opining that ██████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████.[1]

The sole factual basis cited by Ms. Frederiksen-Cross for her opinion that ██████ ████████████████████████████████████████ is a spreadsheet, produced as Plaintiffs_00286431 ("'431 Spreadsheet"), which purportedly lists the files that were verified as copies of copyrighted works by Audible Magic. The '431 Spreadsheet cannot be the sole basis for Ms. Frederiksen-Cross's opinion. This is for at least three reasons:

- The '431 Spreadsheet is not an admissible summary of the results of the Audible Magic matching inquiries under Federal Rule of Evidence 1006;

- Its author explicitly testified that ████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████ and

- It is materially incomplete insofar as it was purged of facially inconsistent evidence in the possession of MarkMonitor and Ms. Frederiksen-Cross blinded herself to this inconsistent evidence, "cherry-picking" only the evidence that Plaintiffs believed was helpful to them.

---

[1] *See* Declaration of Cesie C. Alvarez in Support of Mot. (ECF No. 310-1) ("Alvarez Decl."), Ex. D (Frederiksen-Cross Rpt., at 8-9).

Ms. Frederiksen-Cross also chose to ignore material evidence in conducting her analysis and drawing her conclusions.

Cox respectfully requests that the Court exclude Ms. Frederiksen-Cross's expert opinions concerning Audible Magic verifications. They are based on unreliable facts and, as a consequence, an unreliable methodology.

## II. ARGUMENT

### A. The '431 Spreadsheet is the sole basis for the opinions at issue on this motion.

The opinions of Ms. Frederiksen-Cross challenged by this motion go to the question of whether ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ There is no dispute that MarkMonitor relied on the digital "fingerprinting" technology of Audible Magic to make the connection between the allegedly infringing files and the works in suit. *See* Cox's Motion to Exclude Testimony of Putative Expert Barbara Frederiksen-Cross ("Mot.") at 4-6; *see also* Plaintiffs' Opposition to Cox's Motion to Exclude ("Opp'n.") at 4. The only evidence cited for that proposition in either of Ms. Frederiksen-Cross's reports is the '431 Spreadsheet.[2] *See* Mot. at 6. Thus, as Plaintiffs themselves have acknowledged, "The ['431] Spreadsheet containing Audible Magic verifications is the crucial link between the files 'shared' by Cox subscribers and Plaintiffs' copyrighted works. Plaintiffs' experts … rely upon that evidence and the case is organized around it."[3]

---

[2] *See* Alvarez Decl., Ex. D (Frederiksen-Cross Rpt., ¶¶ 51-63); *Id.*, Ex. E. (Frederiksen-Cross Reply, ¶¶ 11-14).

[3] ECF No. 353 (Plaintiffs' Opposition to Cox's Motion for Discovery Sanctions and to Preclude Plaintiffs' Use of MarkMonitor Evidence at 20).

2

### B. The '431 Spreadsheet is an inadmissible summary of the data.

As explained in Cox's opening brief, the '431 Spreadsheet is an inadmissible summary of the Audible Magic data under Federal Rule of Evidence 1006. Cox has discussed this issue at length in multiple pleadings, and most recently in the Reply in support of Cox's Motion for Summary Judgment filed on this date.[4]

Federal Rule of Evidence 1006 provides that a party "may use a summary … to prove the content of voluminous writings" only if "[t]he proponent … makes the originals … available for examination or copying." The '431 Spreadsheet is a "summary" within the meaning of Rule 1006, but the "originals" from which it was compiled were not "ma[d]e available for examination" by Cox. It is inadmissible, and Ms. Frederiksen-Cross cannot rely on it.[5]

Courts routinely hold that a spreadsheet which selectively extracts data from a database is a "summary" of the database for Rule 1006; this is particularly true where the summarizing spreadsheet contains additional information drawn from other sources and/or the author's interpretation of the summarized data. *Branch v. Gov't Emps. Ins. Co.*, 286 F. Supp. 3d 771, 779 (E.D. Va. 2017) (spreadsheet selectively compiled from database was a Rule 1006 summary); *Sprint Nextel Corp. v. Simple Cell Inc.*, 248 F. Supp. 3d 663, 672-674 (D. Md. 2017) ("spreadsheets [that] combine data from at least three different … databases and have been edited to remove redundancies … and also contain 'analysis' based on certain assumptions provided by [their sponsor]" are summaries which must satisfy Rule 1006 to be admissible). The '431 Spreadsheet is a summary within the courts' definitions.

First, the '431 Spreadsheet is a selective extract from the Audible Magic data, not a simple

---

[4] Cox's argument is that both the '431 Spreadsheet and the spreadsheet produced as MM000236 (the "'236 Spreadsheet") are inadmissible summaries under Fed. R. Evid. 1006.
[5] In theory, of course, an expert can rely on inadmissible evidence. Fed. R. Evid. 703. Plaintiffs have not advanced that argument in response to this motion.

3

reproduction of that data. Plaintiffs acknowledge that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.[6] ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. In preparing the '236 Spreadsheet, MarkMonitor included ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ for files downloaded from the BitTorrent network,[7] and ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.[8] For the '431 Spreadsheet, MarkMonitor included only ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ for all networks.[9] Indeed, Ms. Frederiksen-Cross described the '431 Spreadsheet as containing ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.[10] A spreadsheet comprising selective "extracts" from a database is a summary of the database. *Branch, supra.*

---

[6] *See* Alvarez Decl., Ex. G (Sept. 27, 2019 Hr'g Tr. at 35:20-21, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇).

[7] *See* Alvarez Decl., Ex. C (Sorted MM000236 spreadsheet, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇); *see also* ECF 352-1, Declaration of Sam Bahun in Support of Plaintiffs' Opposition to Cox's Motion for Sanctions, ¶¶ 17-19 (regarding origin of ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇).

[8] *Id.,* ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

*See also* ECF No. 352-2 (Declaration of Vance Ikezoye in Support of Plaintiffs' Opposition to Cox's Motion for Sanctions, ¶¶ 11, 14, 15 (▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇)); *see also* Declaration of Cesie C. Alvarez in Support of Cox's Reply Motion to Preclude Testimony by Barbara Frederiksen-Cross ("Alvarez Reply Decl."), Ex. A (Deposition of Slawomir Paszkowski, 80:6-81:11 (▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇)).

[9] *See* Alvarez Decl., Ex. A ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.

[10] Alvarez Decl., Ex. D, (Frederiksen-Cross Rpt., ¶ 14 and n. 2).

4

Second, the '431 Spreadsheet contains data from sources *other* than Audible Magic, including data from peer-to-peer networks, data from internal MarkMonitor databases, and data representing MarkMonitor's interpretation of the Audible Magic results.[11] An example is the

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████

██████████████████████████████████████████[13] In short, the '431 Spreadsheet contains a selection of the data received from Audible Magic and other sources, along with MarkMonitor's interpretation of that data. It is not a compendium of the Audible Magic data. It is a summary, indistinguishable from the spreadsheets treated as Rule 1006 summaries in *Branch* and *Sprint*.

Plaintiffs have nonetheless argued that Rule 1006 is inapplicable to the '431 Spreadsheet because it "includes Audible Magic data, not a summary of it." Opp'n. at 4.[14] This argument, made without citation to any legal authority, is simply wrong as a matter of law. The cases are clear that "extracting data from a database," and storing the extracted data in a spreadsheet is a

---

[11] *See* Alvarez Reply Decl., Ex. A (Paszkowski Dep., at 80:6-81:18, 87:23-91:22 ██████████████████████████████████████)).

[12] *See* Alvarez Reply Decl., Ex. A (Paszkowski Dep., 81:13-18); *see also* Alvarez Decl., Ex. L (Stroz Friedberg Assessment at RIAA_00127775); *see also Id.*, Ex. D (Frederiksen Cross Rpt., ¶ 153).

[13] *See* Alvarez Decl., Ex. D (Frederiksen-Cross Rpt. ¶ 153 ████████████████████████
████████████████████████████████████████████████████

[14] *See* Alvarez Decl., Ex. G (Sept. 27, 2019 Hr'g Tr. at 52:23-24 ████████████████████
██████ *see also* ECF No. 352 at 11 (The ████████████████████████████████████
██████) (Emphasis in original.)

summary under Rule 1006. *See Branch, supra; Sprint, supra.* [15] All summaries are, by definition, extracts from the information source that they are summarizing. The fact that some of the underlying data is "extracted" for inclusion in a summary, and that some is not, is what differentiates the summary from the underlying data. Where, as here, the underlying data was not preserved, was destroyed, or was simply not produced, the summary is inadmissible because there is no "opportunity to test [the summary's] accuracy or reliability." *U.S. ex rel. Bunk v. Birkart Globistics GmbH & Co.*, 2011 WL 5005313, at *8 (E.D. Va. Oct. 19, 2011).

This is particularly true where, as here, the extracted data is not just selected, but is also interpreted and juxtaposed with data from other sources. *Sprint, supra.* Indeed, the only data contained in the '431 Spreadsheet that was relied on by Ms. Frederiksen-Cross is an explicit summary of the information received by MarkMonitor from Audible Magic. The ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. It is precisely MarkMonitor's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

That summary is inadmissible because Cox should have, but did not, receive the data that it summarizes.[16] Plaintiffs readily admit that they received all of the Audible Magic data

---

[15] *See also Dobbs v. Wyeth Pharm.,* 2007 WL 7660186, *3-*4 (Applying Rule 1006 where witness proposed to "present only a summary of the factual information he extracted from those databases."); *U.S. v. Mermelstein*, 487 F. Supp. 2d 242, 266 (E.D.N.Y. 2007) (applying Rule 1006, where the witness proposed to summarize voluminous medical records by "extract[ing] data" from them.); *U.S. v. Thomas*, 631 F. App'x 847, 849 (11th Cir. 2015) (approving district court's application of Rule 1006 to an exhibit that was "an extract of a larger report").

[16] Alvarez Reply Decl., Ex. B (MarkMonitor subpoena, ¶¶ 8, 11 (Cox subpoenaed all MarkMonitor "databases … or other repositories of information concerning notices of claimed infringement … in connection with alleged infringement of the Copyright Works," and "all Documents concerning any files, or portions thereof, concerning the Copyright Works, that You downloaded from a Cox subscriber, account holder, or customer")). The Northern District of California ordered MarkMonitor to comply. *See* Alvarez Reply Decl., Ex C (*Cox Commc'ns, Inc., et al v. MarkMonitor, Inc.*, Case No. 3:19-mc-80050-SK, ECF No. 14 ordering MarkMonitor to comply with Cox's Subpoena). When it became clear at Mr. Paszkowski's deposition that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

summarized in the '431 Spreadsheet, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ was "immaterial" to infringement.[17] Even for the post-February 2015 period when MarkMonitor started retaining all of the Audible Magic data, its witness was clear that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[18]

Plaintiffs primarily justify the omissions and destruction by arguing that the missing data is immaterial. They are wrong about materiality, but in any event it is irrelevant: Rule 1006 by its terms requires that the data that is summarized in a document must be produced if the summary is to be admitted.[19] There is no materiality requirement. The sponsor of the summary does not get to decide whether the summary is an accurate and complete account of the underlying data. The opposing party must be allowed to test, and, if appropriate, challenge the summary, based on its own review of the summarized data, and that is impossible if the summarized data is not produced.

Notwithstanding being ordered to do so, MarkMonitor has not produced the following:

- For files downloaded from the BitTorrent network (i.e., for the BitTorrent tabs of the '431 and '236 Spreadsheets), ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[20]

- For files downloaded from the eDonkey, Gnutella, and Ares networks, (i.e., for the eDonkey, Gnutella, and Ares tabs in the '431 and '236 Spreadsheets), the pertinent Audible Magic data was not produced other than the data for ▮▮▮▮▮▮

---

▮. Alvarez Reply Decl., Ex. A (Paszkowski Dep., 86:14-87:22). Subsequently, when the data was not produced, counsel for Cox reiterated the request in writing. *See* Alvarez Reply Decl., Ex. D (July 12, 2019 email from Leiden to Castricone).
[17] *See* ECF No. 352 (Plaintiffs' Opposition to Cox's Motion for Discovery Sanctions at 12).
[18] Alvarez Reply Decl., Ex. A (Paszkowski Dep., 86:14-87:22).
[19] *See, e.g.,* ECF No. 364 (Cox's Memorandum in Support of its Reply Motion for Sanctions, at 3-11).
[20] *See* Alvarez Reply Decl. Ex. A (Paszkowski Dep., 86:14-87:22, 94:20-98:12).

███████████████████████████████████████[21]

Because MarkMonitor failed to produce the vast majority of the original Audible Magic data summarized by the '431 Spreadsheet, including (for BitTorrent) originals in its possession, that document is inadmissible under Rule 1006.[22] *See, e.g., Sprint*, 248 F. Supp. 3d at 672 (spreadsheet summarizing database was not admissible where plaintiff "has not made the underlying data on which its spreadsheets are based available."); *compare Branch, supra*, 286 F. Supp. 3d, at 779-780 (allowing spreadsheet summarizing database where the defendant offered to make the originals of the summarized data available). As such, Ms. Frederiksen-Cross cannot rely on it.

### C. The author of the '431 Spreadsheet testified that it did not support Ms. Frederiksen-Cross's conclusion.

In addition to being an incompetent summary, the '431 Spreadsheet simply does not provide information that goes to the conclusion that Ms. Frederiksen-Cross draws from it. She opines that ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████[23] But the author of the '431 Spreadsheet testified that █████████████████████████████████████████████████ Accordingly, the '431 Spreadsheet cannot be used to support the conclusion that Ms. Frederiksen-Cross draws from it.

---

[21] *Id.* at 80:6-82:15, 94:20-98:12.
[22] *See* ECF No. 364-9 (Declaration of Lynne J. Weber, Ph.D.), Ex. B-2 (Showing that ███████████████████████████████████████████████.
[23] *See* Alvarez Decl., Ex. D (Frederiksen-Cross Rpt. ¶ 17, at 8-9).
[24] *See* Alvarez Reply Decl., Ex. A (Paszkowski Dep., 128:14-25).

8

The '431 Spreadsheet ███████████████████████████████, and which continued to be re-downloaded up to the date it was created ███ ██[25] The author of the '431 Spreadsheet, Slawomir Paszkowski, testified that MarkMonitor did ████████████████████████████[26] This is ██████████████████████████████████████████████████████████████████████████████████████[27] Mr. Paszkowski also testified that the ██████████████████████████████████████████████████████████[28] Thus, as he further acknowledged it is ████████████████████████████████████████████[29]

Yet, Ms. Frederiksen-Cross opines that the MarkMonitor system ████████████████████████████████████████[30] If ████████████████ that document cannot be used to support an opinion that they were verified when the notices were sent; namely, as of those dates. Since the '431 Spreadsheet simply does not say what it needs to say to support Ms. Frederiksen-Cross's opinion about the

---

[25] *Id.* at 121:17-122:10.
[26] *Id.* at 84:7-11.
[27] *Id.* at 84:10-16.
[28] ████████████████████████████████████ *See* Alvarez Decl., B.
[29] *See* Alvarez Reply Decl., Ex. A (Paszkowski Dep., 128:14-25).
[30] *See* Alvarez Reply Decl., Ex. E (Deposition of Barbara Frederiksen-Cross, 62:8-22█ ████████████████, 152:1-7, ████████████████████████████████████████████

accuracy of the Cox notices, she cannot rely on it to support those opinions. These opinions should thus be stricken.

Plaintiffs respond to this argument by contending that it does not matter when a file was verified, and that many of the files in question were verified before 2012. Opp'n. at 5-6. But this misses the point. The files in the spreadsheet were verified continuously before, during, and after the notice period. The problem is that no one can tell which file was verified when, so the conclusion that *all* of them were sent only *after* verification is insupportable on the basis of this document, and Ms. Frederiksen-Cross offers no other basis for it.

### D. Ms. Frederiksen-Cross "cherry-picked" her data.

Finally, Ms. Frederiksen-Cross's opinions about the accuracy of MarkMonitor's detection of files containing the works in suit are inadmissible because she "cherry-picked" the evidence by relying exclusively on the '431 Spreadsheet.

Briefly, the '431 Spreadsheet ▮▮▮▮▮▮▮▮[31]▮▮▮▮▮▮▮▮. The '236 Spreadsheet is an earlier version of the '431 Spreadsheet. The principal difference between the two is that ▮▮▮▮▮▮▮▮▮▮▮▮[32] The Audible Magic data in the '236 Spreadsheet shows that, ▮▮▮▮▮▮▮▮▮▮▮▮. *See* Mot. at 1, n.

---

[31] As evidenced in the metadata of the spreadsheet. *See* Alvarez Decl., Ex. B (Screenshot of the '431 Spreadsheet metadata).

[32] *See, supra,* at 7, n. 20. As noted above, ▮▮▮▮▮▮▮▮ but never produced.

10

2. The '431 Spreadsheet is listed as a document upon which Ms. Frederiksen-Cross reviewed and relied.[33] The '236 Spreadsheet is not.

The data which Ms. Frederiksen-Cross reviewed – and, necessarily, the data on which she relied – was "cherry-picked." An expert cannot "disregard … relevant data [that] undermines the reliability of [her] entire opinion." *LeClercq v. The Lockformer Co.*, No. 00 C 7164, 2005 WL 1162979, at *4 (N.D. Ill. Apr. 28, 2005) (excluding the expert's opinion for failing to consider material facts in his report concluding that it amounted to "cherry-picking"); *see also In re Bextra and Celebrex Mktg. Sales Practices and Prod. Liab. Litig.*, 524 F. Supp. 2d 1166, 1176 (N.D. Cal. 2007) (expert excluded for, *inter alia*, "cherry-picking observational studies that support his conclusion and rejecting or ignoring the great weight of the evidence that contradicts his conclusion"). Such "cherry-picking" of facts and selective use of data "fail[s] to satisfy the scientific method and *Daubert*." *Holden Metal & Aluminum Works, Ltd. v. Wismarq Corp.*, No. 00 C 0191, 2003 WL 1797844, at *2 (N.D. Ill. Apr. 3, 2003) (finding that the expert's data was "so unreliable that it fails to pass muster under *Daubert* and *Kumho*" because he failed to "sufficiently take into account existing data"); *see also Barber v. United Airlines, Inc.*, 17 F. App'x 433, 437 (7th Cir. 2001) (finding that the expert's opinion was unreliable and failed to satisfy *Daubert* because he "cherry-picked the facts he considered to render an expert opinion").

Ms. Frederiksen-Cross's selectivity would simply not assist the trier of fact because it is contrived to skew the data in Plaintiffs' favor and, thus, does not reveal the full picture of how many files Audible Magic actually verified. *See Holden Metal*, 2003 WL 1797844, at *2 (N.D. Ill. Apr. 3, 2003) (upholding the district court's exclusion of the expert's testimony where he accepted

---

[33] *See* Alvarez Decl., Ex. D (Frederiksen-Cross Rpt. ¶¶ 14(c), 51); *see also* Alvarez Reply Decl., Ex. F (Ex. B "Materials Considered" to Frederiksen-Cross Rpt.).

11

testimony that "suited his theory and ignored other portions of it that did not" finding that this failed to satisfy *Daubert* and failed to "fail[ed] to assist the trier of fact").

Plaintiffs respond by arguing that the one-sided abridgement of the record that Ms. Frederiksen-Cross reviewed goes merely to the weight of her opinions, and that the evidence in the '236 Spreadsheet that she never saw does not, at the end of the day, undermine her conclusions based on the '431 Spreadsheet. Opp'n. at 6-7, 8-9. Again, Plaintiffs miss the point. Such a determination, that Ms. Frederiksen-Cross selectively considered certain data to form her opinion goes to the credibility of her methodology not the weight of the evidence. *Finestone v. Florida Power & Light Co.*, 2006 WL 267330 (S.D. Fla. Jan. 6, 2006) ("a district court may properly consider whether the expert's methodology has been contrived to reach a particular result").

Plaintiffs' arguments about the (supposed) insignificance of the data that is in the '236 Spreadsheet, which Ms. Frederiksen-Cross did not review, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, may or may not persuade the jury, but they are all attorney arguments. None of Plaintiffs' arguments are ones that Ms. Frederiksen-Cross made. That is because she never saw the '236 Spreadsheet and could not have weighed or opined on the facts that it contains but that the '431 Spreadsheet omits. The rule against such cherry-picking goes not to the weight of the evidence omitted (or, for that matter, the evidence considered); it goes to the propriety of an expert's methodology in analyzing the evidence. An expert wearing blinders is not acting as an expert. The courts that have precluded cherry-picked testimony have done so not as a way of adjudicating the substance of the evidence, but in order to preclude expert opinion that is not based on all of the facts. The testimony of an expert does not offer "specialized knowledge [that] will help the trier of fact understand the evidence" and it not "based on sufficient facts" if the only evidence considered is the evidence that supports one side of the story. Fed. R. Evid. 702(a).

Ms. Frederiksen-Cross never looked at the evidence. She should be precluded from opining on issues where she saw only a slanted version of the record.

### III. CONCLUSION

Based on the foregoing, the Court should exclude, in their entirety and for any purpose, the opinions and testimony of Plaintiffs' putative expert Barbara Frederiksen-Cross that rely on Plaintiffs_00286431.

Dated: October 11, 2019

    Respectfully submitted,

    /s/ Thomas M. Buchanan
    Thomas M. Buchanan (VSB No. 21530)
    WINSTON & STRAWN LLP
    1700 K Street, NW
    Washington, DC 20006-3817
    Tel: (202) 282-5787
    Fax: (202) 282-5100
    Email: tbuchana@winston.com

    *Attorney for Cox Communications, Inc. and CoxCom, LLC*

*Of Counsel for Defendants*

Michael S. Elkin (*pro hac vice*)
Thomas Patrick Lane (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
Email: melkin@winston.com
Email: tlane@winston.com

Jennifer A. Golinveaux (*pro hac vice*)
Thomas J. Kearney (*pro hac vice*)
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111-5840
Telephone: (415) 591-1000
Facsimile: (415) 591-1400
Email: jgolinveaux@winston.com
Email: tkearney@winston.com

Michael L. Brody (*pro hac vice*)
WINSTON & STRAWN LLP
35 W. Wacker Dr.
Chicago, IL 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700
Email: mbrody@winston.com

Diana Hughes Leiden (*pro hac vice*)
WINSTON & STRAWN LLP
333 S. Grand Avenue, Suite 3800
Los Angeles, CA 90071
Telephone: (213) 615-1700
Facsimile: (213) 615-1750
Email: dhleiden@winston.com

**CERTIFICATE OF SERVICE**

I certify that on October 11, 2019, a copy of the foregoing Cox's Reply Memorandum of Law in Support of Its Motion to Exclude the Testimony of Putative Expert Barbara Frederiksen-Cross was filed electronically with the Clerk of Court using the ECF system, which will send notifications to ECF participants.

/s/ Thomas M. Buchanan
Thomas M. Buchanan (VSB No. 21530)
WINSTON & STRAWN LLP
1700 K Street, NW
Washington, DC 20006-3817
Tel: (202) 282-5787
Fax: (202) 282-5100
Email: tbuchana@winston.com

*Attorney for Cox Communications, Inc. and CoxCom, LLC*