UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

SONY MUSIC ENTERTAINMENT, *et al.*,

    Plaintiffs,

v.

COX COMMUNICATIONS, INC., *et al.*,

    Defendants.

Case No. 1:18-cv-00950-LO-JFA

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO PRECLUDE
CERTAIN EXPERT TESTIMONY BY DR. KEVIN C. ALMEROTH**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................. iii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 2

    I.    Cox Is Estopped From Proferring Expert Testimony on Factual Issues Already Decided Against It ................................................................................................... 2

    II.   Dr. Almeroth's Proffered Testimony Is Irrelevant and Will Not Assist the Jury ................ 4

    III.  Dr. Almeroth's Opinions on "Reasonableness" Are Unreliable .......................................... 5

    IV.  Dr. Almeroth's Proffered Testimony on "Reasonableness" Is Not Proper Rebuttal............ 6

    V.   Dr. Almeroth Is Not Qualified to Opine on ISP Infringment Policies or the "Reasonableness" of Cox's Policy ........................................................................ 7

    VI.  Dr. Almeroth's Proffered Testimony on CAS and Comparisons to Other ISPs Lack Proper Foundation ................................................................................................ 8

    VII. Dr. Almeroth Is Not Qualified to Testify on Net Neutrality Law ..................................... 10

CONCLUSION................................................................................................................... 10

## TABLE OF AUTHORITIES

**CASES**

*BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*,
  149 F. Supp. 3d 634 (E.D. Va. 2015) .................................................................................... 2

*BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*,
  881 F.3d 293 (4th Cir. 2018) ................................................................................................. 3

*BMG Rights Mgmt. (US) LLC v. Cox Enters., Inc.*,
  No. 1:14-CV-1611, 2018 WL 4444011 (E.D. Va. Aug. 9, 2018) .......................................... 9

*Bouchat v. Champion Prods., Inc.*,
  327 F. Supp. 2d 537 (D. Md. 2003) ...................................................................................... 3

*Collins v. Pond Creek Mining Co.*,
  468 F.3d 213 (4th Cir. 2006) ................................................................................................. 3

*Daugherty v. Ocwen Loan Servicing, LLC*,
  701 F. App'x 246 (4th Cir. 2017) ..................................................................................... 4, 6

*Gen. Elec. Co. v. Joiner*,
  522 U.S. 136 (1997) ............................................................................................................... 6

*In re Microsoft Corp. Antitrust Litig.*,
  355 F.3d 322 (4th Cir. 2004) ................................................................................................. 3

*Manganella v. Evanston Ins. Co.*,
  700 F.3d 585 (1st Cir. 2012) ................................................................................................. 3

*Pugh v. Louisville Ladder, Inc.*,
  361 F. App'x 448 (4th Cir. 2010) ......................................................................................... 6

*Radiance Found., Inc. v. NAACP*,
  27 F. Supp. 3d 671 (E.D. Va. 2013) ...................................................................................... 7

*Speechly Bircham, LLP v. Miller*,
  No. 8:10-CV-03041-AW, 2013 WL 1248779 (D. Md. Mar. 25, 2013) ................................ 4

*Stewart Title Guar. Co. v. Linowes & Blocher*,
  42 F.3d 1386 (4th Cir. 1994) ................................................................................................. 4

*Zoroastrian Ctr. v. Rustam Guiv Found.*,
  No. 1-13- CV-980, 2017 WL 63012 (E.D. Va. Jan. 4, 2017) ................................................ 4

**RULES**

Fed. R. Civ. P. 26 ........................................................................................................... 7

Fed. R. Evid. 702 ....................................................................................................... 6, 9

Fed. R. Evid. 704 .......................................................................................................... 4

iv

# INTRODUCTION

Plaintiffs' motion provided a number of reasons to exclude Dr. Almeroth's proposed testimony on the "reasonableness" of Cox's response to copyright infringement notices. Cox's opposition failed to adequately address any of them.

First, Cox is collaterally estopped from proffering Dr. Almeroth's testimony to relitigate how Cox responded to infringement notices and approached the issue of terminating repeat infringers. This "fact" is identical to the fact litigated, actually determined, and necessarily decided in *BMG*. That the DMCA safe harbor defense was not raised in this case has no bearing on the preclusive effect of that factual determination.

Second, Dr. Almeroth's opinions on "reasonableness" will not help the jury because it is not relevant to any issue in the case. His testimony goes far beyond providing so-called "context" for Cox's failure to stop its subscribers from using its Internet services to infringe. His testimony amounts to a stamp of approval of Cox's response, thus telling the jury what result to reach in disregard of the facts and applicable law. Cox's goal with Dr. Almeroth (as well as Dr. Weber and Mr. Bakewell) is to have an expert provide the equivalent of closing argument on the witness stand by using loaded terms like "reasonable" (or "effective" and "windfall"). The Court should shut down Cox's transparent attempt at jury nullification.

Third, Dr. Almeroth's opinions on "reasonableness" are not reliable because they are not based on any recognized principles or methodology nor sufficient facts. Cox's claim that Dr. Almeroth employed an accepted "totality of the circumstances" analysis is *post hoc* reasoning and incorrect, both legally and factually.

Fourth, Dr. Almeroth's opinions on "reasonableness" are improper rebuttal testimony. Those opinions do not "conflict with" or even criticize any aspect of the expert opinions proffered

1

by Plaintiffs concerning Cox's functional and technical ability to respond to infringement notices and Cox's actions inconsistent with that ability.

Fifth, Dr. Almeroth lacks the necessary qualifications to opine on ISP infringement policies and the law on net neutrality. Cox does not dispute that Dr. Almeroth has no prior experience with ISP infringement policies or legal issues relating to controlling P2P traffic. Any background and experience in the areas of "computer science, computer networks and protocols, and wireless networking" does not constitute specialized knowledge nor sufficient skill, experience, training, or education on the particular issues on which he seeks to provide testimony.

Sixth, Dr. Almeroth's proffered testimony on the Copyright Alert System ("CAS") and comparisons to other ISPs lack proper foundation and is irrelevant. Dr. Almeroth lacks sufficient experience or knowledge to hold up CAS as an "industry standard" or to testify on how other ISPs handled the issue of terminating accounts of repeat infringers, much less compare Cox's responses to that of other ISPs. Allowing Dr. Almeroth to provide such testimony would confuse and mislead the jury as to the relevant issues in the case.

## ARGUMENT

### I. COX IS ESTOPPED FROM PROFERRING EXPERT TESTIMONY ON FACTUAL ISSUES ALREADY DECIDED AGAINST IT

Cox does not get a "do-over" to relitigate the factual issues decided in *BMG* regarding how Cox responded to infringement notices and addressed the issue of terminating the accounts of repeat infringers. This Court, as affirmed by the Fourth Circuit, made various factual findings rejecting Cox's defense of its policy for responding to infringement notices: that it was an "absolute mirage" and "very limited" and that "Cox very clearly determined *not* to terminate subscribers who in fact repeatedly violated the policy." *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 149 F. Supp. 3d 634, 658 (E.D. Va. 2015); *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*,

2

881 F.3d 293, 299, 303 (4th Cir. 2018).  Cox should not be permitted to resurrect that policy here as "reasonable."

As explained in Plaintiffs' motion, the facts concerning Cox's graduated response process are identical to those previously litigated in *BMG*, actually resolved, critical and necessary to the *BMG* judgment; that judgment is final and valid; and Cox had a full and fair opportunity to litigate them.  *See* Mot. 4-6.  No more is required.  *See In re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322, 326 (4th Cir. 2004).  Cox disputes only one of the elements for the applicability of collateral estoppel, namely, that the issue or fact be identical.  However, Cox incorrectly suggests that none of the factual determinations from *BMG* apply because the DMCA was not raised as a defense in this case.  *See* Opp. 16.  The doctrine of collateral estoppel requires an "issue or fact," not the ultimate issue," to be identical.  *Manganella v. Evanston Ins. Co.*, 700 F.3d 585, 591 (1st Cir. 2012) ("[T]he issue need not have been the ultimate issue decided by the [prior proceeding]; issue preclusion can extend to necessary intermediate findings . . . ."); *see also Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 219 (4th Cir. 2006) (finding the issue of whether decedent suffered from pneumoconiosis as a result of his work in the mines identical in both the widow's claim for survivor's benefits and the husband's prior claim for benefits under the Black Lung Act); *Bouchat v. Champion Prods., Inc.*, 327 F. Supp. 2d 537, 546 (D. Md. 2003) ("The claim presented need not be the same for collateral estoppel to preclude relitigation of an issue."), *aff'd on other grounds sub nom. Bouchat v. Bon-Ton Dep't Stores, Inc.*, 506 F.3d 315 (4th Cir. 2007).

Because Cox is estopped from relitigating an issue already decided against it, any attempt to introduce evidence, including expert testimony, inconsistent with the Court's prior finding is improper.  Allowing Dr. Almeroth to testify on issues that have already been litigated and resolved would defeat the purpose of collateral estoppel.

## II.     DR. ALMEROTH'S PROFFERED TESTIMONY IS IRRELEVANT AND WILL NOT ASSIST THE JURY

Dr. Almeroth's opinions on "reasonableness" will not help the jury because it is not relevant to any issue in the case. His proffered testimony will serve no purpose other than to tell the jury what result to reach in disregard of the facts and applicable law. This is improper jury nullification.

Cox contends that Dr. Almeroth's testimony will assist the jury in understanding the "context" of Cox's graduated response to copyright infringement notices. *E.g.*, Opp. 6. But his testimony does much more than put the evidence in "context." It is one thing for Dr. Almeroth to testify on the functionality of Cox's ISP system (alone and within the Internet as a whole), the functionality of peer-to-peer file-sharing applications, and the capabilities of Internet monitoring tools. *See* Mot. 2-3. It is quite another for him to tell the jury that Cox's response to infringement notices was "reasonable." Dr. Almeroth's testimony amounts to approval of Cox's actions and impermissibly "tells the jury what result to reach." *See* Fed. R. Evid. 704 advisory committee's note on proposed rule.

Cox has not shown how "reasonableness" is relevant to any issue. Cox's alleged reasonableness is not an element of any claim or defense in this case. The cases cited by Cox all involved claims in which reasonableness was an element or otherwise helpful to resolve an issue in the case.[1]

---

[1] *See*, *e.g.*, *Daugherty v. Ocwen Loan Servicing, LLC*, 701 F. App'x 246, 253 (4th Cir. 2017) (Fair Credit Report Act claim requiring furnisher of credit information to "conduct a reasonable investigation of [its] records to determine whether the disputed information can be verified"); *Stewart Title Guar. Co. v. Linowes & Blocher*, 42 F.3d 1386, at *4 (4th Cir. 1994) (legal malpractice claim requiring proof of "neglect of a reasonable duty"); *Zoroastrian Ctr. v. Rustam Guiv Found.*, No. 1-13- CV-980, 2017 WL 63012, at *1 (E.D. Va. Jan. 4, 2017) (attorneys' fees recoverable upon showing that fees are reasonable); *Speechly Bircham, LLP v. Miller*, No. 8:10-CV-03041-AW, 2013 WL 1248779, at *2 (D. Md. Mar. 25, 2013) (same).

Even if the "reasonableness" of Cox's conduct were relevant to any issue here—which it is not—the jury can make that determination without Dr. Almeroth's opinions that Cox's actions were "reasonable." The jury will hear evidence on the functionality and capabilities of Cox's ISP system, P2P applications, and Internet monitoring tools and is capable of deciding liability and damages without expert testimony suggesting that Cox's conduct was justified or proper.

In any event, Dr. Almeroth's testimony on "reasonableness" crosses the line into impermissible expert testimony and should be excluded. Cox insists upon preserving his ability to dub its conduct "reasonable" only in the hopes of the jury either ignoring the law or, alternatively, deeming Cox's "reasonableness" to be the functional equivalent of not materially contributing to infringement, failing to exercise control to limit the infringement, and/or not willfully infringing.[2]

### III. DR. ALMEROTH'S OPINIONS ON "REASONABLENESS" ARE UNRELIABLE

Dr. Almeroth's opinions regarding the "reasonableness" of Cox's response to infringement notices fail the basic reliability requirements of the Federal Rules of Evidence. Dr. Almeroth's proffered testimony is neither the "product of reliable principles and methods" nor "based on sufficient facts or data." *See* Fed. R. Evid. 702. As a result, his testimony is mere *ipse dixit*.

Cox argues that Dr. Almeroth arrived at his opinions by analyzing the "totality of the circumstances" and that courts have approved this approach for assessing "reasonableness." Opp.

---

[2] Contrary to Cox's arguments (Opp. at 16), in *BMG* it proffered the testimony of Mr. Rosenblatt opining on "Cox's *overall* process," a "methodology for evaluating Cox's termination procedures," and the "effectiveness of Cox's graduated response procedures" (*see* Gould Ex. 4, at 24-25 (Cox's Opp'n to Pls.' Mot. to Exclude Portions of the Expert Report and Limit the Trial Testimony of Cox's Expert William Rosenblatt, *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, No. 1:14-cv-1611, ECF No. 597 (E.D. Va. Nov. 10, 2015))). This Court precluded Mr. Rosenblatt's proffered testimony. Dr. Almeroth's testimony on the same subject matter should similarly be excluded.

5

9-10. But neither of Cox's cases stands for this proposition. *Barile* and *Daugherty* contain no reference to a "totality of the circumstances" analysis nor any suggestion that the expert conducted such an analysis to determine the reasonableness of a party's conduct. *See Barile*, 286 F.3d at 758-62; *Daugherty*, 701 Fed. App'x at 253 (limiting "reasonable" analysis to information within defendant's possession). Cox's attempt at ad hoc reasoning cannot hide the fact that Dr. Almeroth's opinions on "reasonableness" were not guided by any definition or threshold for "reasonable" nor any specific factors. *See* Mot. 9. Further, Dr. Almeroth did not even consider the "totality of the circumstances." As Cox acknowledges, Dr. Almeroth omitted from his analysis various facts he had deemed "not relevant." Opp. 11; *see also* Mot. 9-10.

Cox's other attempts to dress up Dr. Almeroth's analysis also fail. Cox argues that Dr. Almeroth applied his "background and qualification as an expert" to the facts and that his opinions are "grounded" in "his own knowledge of computer networking." *See* Opp. 11-12. Not only are these assertions vague, they conflate reliability with qualifications (the latter of which Dr. Almeroth also lacks, as discussed below). Cox also argues that his opinions are "extrapolate[d] from existing data" and that he "tested the evidence," but he cites no such extrapolations or tests in his reports. *See id.*

As Cox's arguments demonstrate, Dr. Almeroth's opinion "is connected to existing data only by the *ipse dixit* of the expert" and should be excluded. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *Pugh v. Louisville Ladder, Inc.*, 361 F. App'x 448, 454 n.4 (4th Cir. 2010).

## IV.  DR. ALMEROTH'S PROFFERED TESTIMONY ON "REASONABLENESS" IS NOT PROPER REBUTTAL

Cox proffers Dr. Almeroth's opinions on "reasonableness" as rebuttal to the opinions of two of Plaintiffs' proffered experts, Dr. McGarty and Ms. Frederiksen-Cross. But Dr. Almeroth's

proffered testimony does not "contradict or rebut evidence on the same subject matter" of either expert's report and thus is not proper rebuttal. *See* Fed. R. Civ. P. 26(a)(2)(D)(ii).

Cox contends that Dr. Almeroth's testimony "rebuts proposed testimony from Plaintiffs' experts that Cox's response was insufficient." *See* Opp. 9. But neither Dr. McGarty nor Ms. Frederiksen-Cross offers such testimony. Instead, Dr. McGarty plans to testify about Cox's capabilities in responding to copyright infringement notices and Cox's actions that were inconsistent with its capability, whereas Ms. Frederiksen-Cross plans to testify about Cox's capabilities and processing of notices (among other subjects). Cox does not dispute that neither expert performed a "reasonableness" analysis. Cox also does not contend that Dr. Almeroth's opinions on "reasonableness" contradict or criticize any aspect of either expert's testimony.[3] Nor can it. Whether Cox's actions were "reasonable" has nothing to do with its capabilities in processing infringement notices, the functional and technical ability of Cox's system, or the degree to which Cox's actions in response to infringement notices were inconsistent with that ability.

Instead, Dr. Almeroth's opinions introduce an entirely different issue having no relevance to this case. His testimony on "reasonableness" should be excluded as improper rebuttal testimony.

V. **DR. ALMEROTH IS NOT QUALIFIED TO OPINE ON ISP INFRINGMENT POLICIES OR THE "REASONABLENESS" OF COX'S POLICY**

Dr. Almeroth has neither specialized knowledge nor sufficient skill, experience, training, or education to opine on ISP infringement policies, much less the "reasonableness" of Cox's policy. *See Radiance Found., Inc. v. NAACP*, 27 F. Supp. 3d 671, 674 (E.D. Va. 2013) ("[W]here a purported expert witness has neither satisfactory knowledge, skill, experience, training nor

---

[3] Cox cites certain paragraphs of Dr. Almeroth's report where he opines on network monitoring tools that Cox "could not have used" and the purpose for which tools like Procera "could only be used." *See* Opp. 3 & nn. 7-8 (citing Leiden Ex. 1, ¶¶ 141-142, 162-182 (Almeroth Rept.)). None of these paragraphs are the subject of Plaintiffs' motion. *See* Mot. 3.

education on the issue for which the opinion is proffered, that witness's testimony may be excluded."). His claimed background and experience in the areas of "computer science, computer networks and protocols, and wireless networking" may qualify him to testify on topics concerning Cox's ISP system, peer-to-peer file-sharing applications, and Internet monitoring tools. *See* Opp. 18; Mot. 2-3. But that general expertise does not translate to "scientific, technical, or other specialized knowledge" relating to ISP policies on infringement, as required by Rule 702.

Cox does not dispute Dr. Almeroth's lack of experience or training in how ISPs address copyright infringement concerns. Cox claims he is "knowledgeable" of how ISPs have responded to copyright infringement allegations. *See* Opp. 18. But Cox's record citations show that Dr. Almeroth's knowledge comes solely from reviewing the documents produced in this litigation, not from any prior work with infringement policies or even industry research on copyright infringement policies. *See* Leiden Ex. 1, ¶¶ 124-158 (Rebuttal Expert Report of Kevin C. Almeroth, dated May 15, 2019 ("Almeroth Rept.")); Gould Ex. 6, 23:23-24:3, 24:22-25:8 (Almeroth Tr.). If Dr. Almeroth does not have the necessary qualifications to opine on the infringement policies of ISPs, he certainly has no business providing expert testimony on whether Cox's infringement policy was "reasonable." This is not a case of an "imperfect fit" where a jury can assess what weight to give to an expert's testimony. *See* Opp. 18-19. Dr. Almeroth's general expertise does not fit at all for the particular issues in this case.

Because Dr. Almeroth has neither satisfactory knowledge, skill, experience, training nor education on ISP infringement policies, his testimony must be excluded.

VI. **DR. ALMEROTH'S PROFFERED TESTIMONY ON CAS AND COMPARISONS TO OTHER ISPS LACK PROPER FOUNDATION**

Dr. Almeroth's testimony that Cox's response to infringement notices was more "stringent" than CAS and thus reasonable is based on incorrect assumptions.

8

First, Dr. Almeroth incorrectly assumes that CAS is an industry standard. Dr. Almeroth is not qualified to testify about industry standards concerning ISP responses to infringement notices and, in any event, CAS is not an industry standard. As discussed above, Dr. Almeroth lacks the qualifications to testify on ISP infringement policies. He read the CAS Memorandum of Understanding and the Stroz Friedberg CAS compliance reports produced in this litigation but did not speak with even a single ISP that participated in CAS. Cox claims that CAS was "touted as the standard" for the industry but provides no support for that claim. *See* Opp. 14. Thus, Dr. Almeroth has no basis to hold up CAS as an "industry standard." He understands very little about it.

Second, Dr. Almeroth relies on the CAS as some sort of proxy for how other ISPs handled the issue of terminating the accounts of repeat infringers. But the CAS Memorandum of Understanding states that it does not provide for a policy or procedures for terminating repeat infringers. Even if the CAS were relevant here, Dr. Almeroth did no investigation into what ISPs do outside of CAS to understand whether and how ISPs terminate the accounts of repeat infringers. Thus, Dr. Almeroth has no basis to compare Cox's "actual implementation" of its policy to that of other ISPs.

Third, what other ISPs did to address terminating the accounts of repeat infringers is irrelevant to whether *Cox* should be held liable for copyright infringement. The law does not negate liability simply because "everybody else does it, too," or even "we do it less." Indeed, this Court previously precluded Cox from introducing evidence comparing its policies to those of other ISPs by referencing CAS. *See BMG Rights Mgmt. (US) LLC v. Cox Enters., Inc.,* No. 1:14-CV-1611, 2018 WL 4444011, at *1 (E.D. Va. Aug. 9, 2018) ("[A] comparison of Cox's policies to the

9

policies of other ISPs would be irrelevant, prejudicial, and likely to mislead the jury."). Cox makes no attempt to explain why Dr. Almeroth's testimony should be treated any differently.

### VII. DR. ALMEROTH IS NOT QUALIFIED TO TESTIFY ON NET NEUTRALITY LAW

Cox does not dispute that Dr. Almeroth, a non-lawyer, lacks the necessary qualifications to opine on legal issues such as net neutrality. Yet his report offers expert testimony on the various ways to control P2P traffic on Cox's network and "the question of whether it is legal to implement such controls for P2P traffic." Gould Ex. 1, ¶ 114. Dr. Almeroth then proceeds to address that question in several paragraphs of his report. *See*, *e.g.*, *id.* ¶ 115 (opining that "there are legal risks in blocking P2P traffic"); *id.* ¶¶ 117-120 (referring to the "legal question," "legal uses of P2P," "legal considerations," and "the impact of blocking legally exchanged traffic"); *id.* ¶ 122 (concluding that certain blocking is problematic in part due to "legal concerns"). Cox's claim that Dr. Almeroth does not opine on the legality of blocking peer-to-peer traffic is contradicted by the express language in his report. *See* Opp. 19. Dr. Almeroth's proffered testimony at paragraphs 114-122 in his report is improper and thus should be excluded.

### CONCLUSION

Plaintiffs' motion should be granted. Dr. Almeroth should be precluded from providing expert opinions on "reasonableness," including the Copyright Alert System, the actions of other ISPs, and net neutrality law. Specifically, his opinions set forth in paragraphs 30, 34, 35 (starting at the second sentence), 114-122, 134-138, and 143-158 should be excluded.

Respectfully submitted,

Dated October 11, 2019 /s/ Scott A. Zebrak
Scott A. Zebrak (38729)
Matthew J. Oppenheim (*pro hac vice*)
Jeffrey M. Gould (*pro hac vice*)
Kerry Mustico (*pro hac vice*)
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Avenue, NW, 5th Floor
Washington, DC 20015
Tel:  202-480-2999
scott@oandzlaw.com
matt@oandzlaw.com
jeff@oandzlaw.com
kerry@oandzlaw.com

*Attorneys for Plaintiffs*