UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

SONY MUSIC ENTERTAINMENT, *et al.*,

    Plaintiffs,

v.

COX COMMUNICATIONS, INC., *et al.*,

    Defendants.

Case No. 1:18-cv-00950-LO-JFA

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO PRECLUDE
CERTAIN EXPERT TEXTIMONY PROFFERED BY DR. NICK FEAMSTER**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION .................................................................................................................. 1

    I.   DR. FEAMSTER'S TESTIMONY IS UNRELIABLE, MISLEADING, AND WILL NOT ASSIST THE JURY ................................................................................................. 1

        A.   MarkMonitor Completed a Full Download of Every Work in Suit, But Dr. Feamster Blindly Claims Otherwise ................................................................................................. 1

        B.   MarkMonitor Matched Every Work in Suit to the Audible Magic Database, But Dr. Feamster Blindly Claims Otherwise ................................................................................................. 2

        C.   Dr. Feamster's Approach to Attacking the Accuracy of Audible Magic Identifications Is Emblematic of His Unreliable Approach and Opinions ................................................................................................. 4

        D.   Dr. Feamster Offers Only Speculative, Pretextual Reasons for Demanding Contemporaneous Downloads ................................................................................................. 5

            1.   Dr. Feamster's Testimony That a Full Download Is Required Is Misleading ............. 6

            2.   Dr. Feamster's Opinion on Falsified "Bitfield" Data Lacks Any Evidentiary Basis and Was Not Disclosed in His Report ................................................................................................. 6

CONCLUSION ................................................................................................. 7

## TABLE OF AUTHORITIES

**Cases**

*Golden Nugget, Inc. v. Chesapeake Bay Fishing Co., L.C.*,
   93 F. App'x 530 (4th Cir. 2004) ................................................................................................. 7

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999) ................................................................................................................... 1

**Rules**

Fed. R. Civ. P. 26 ............................................................................................................................ 4

Fed. R. Evid. 702 ............................................................................................................................ 1

# INTRODUCTION

Plaintiffs' opening brief explained why Dr. Feamster's testimony will not assist the jury and should be precluded under Federal Rules of Evidence 702, 703, and 403. Cox tries to skirt those criticisms by contending that Plaintiffs "simply disagree with Dr. Feamster's conclusions" rather than the "process by which he formed his opinion[s]." *See* Opp. at 1. But that is simply not accurate. Plaintiffs' motion is based on the fact that Dr. Feamster's testimony is not "a product of reliable principles and methods," let alone principles and methods applied "reliably to the facts of the case." *See* Fed. R. Evid. 702. Plaintiffs' arguments cannot be dismissed as all going to weight; a trial court must probe the reliability and relevance of expert testimony any time "such testimony's factual basis, data, principles, methods, or their application are called sufficiently into question." *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999). Dr. Feamster makes grandiose statements about the absence of downloads, content identification, and copying but only because he deliberately refused to consider the key evidence and opined on metaphysical issues in the abstract. The analytical leaps in his testimony are striking and would substantially confuse a jury about the record evidence. An extensive resume is not a license to provide testimony that lacks the intellectual rigor required of an expert in the courtroom.

# ARGUMENT

## I. DR. FEAMSTER'S TESTIMONY IS UNRELIABLE, MISLEADING, AND WILL NOT ASSIST THE JURY

### A. MarkMonitor Completed a Full Download of Every Work in Suit, But Dr. Feamster Blindly Claims Otherwise

Dr. Feamster has no factual basis to opine that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Gould Ex. 1, at 4, Executive Summary (Feamster Rept.). Cox contends that "Plaintiffs essentially mince his report into [that]

1

one sentence." Opp. 6. Yet that "one sentence" is the thrust of what Cox wants the jury to believe, even though it is a false and contrived assertion conclusively contradicted by the evidence.

Through depositions and this briefing, it has become clear that what Dr. Feamster really means is that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ *See id.*; Gould Ex. 2, 226:4-229:23, 233:12-234:18 (Feamster Tr.). Nonetheless, Dr. Feamster deceptively states in his report that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ The reality is that MarkMonitor downloaded every single work at issue and Cox and its experts must not be permitted to argue or testify otherwise.[1]

### B. MarkMonitor Matched Every Work in Suit to the Audible Magic Database, But Dr. Feamster Blindly Claims Otherwise

Dr. Feamster has no factual basis to opine that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ *See* Gould Ex. 1, ¶¶ 32, 35 (Feamster Rept.). An expert is supposed to assist the jury, based on the evidence in the case. Dr. Feamster does nothing of the sort. Instead, he ignores important evidence confirming Audible Magic verifications and manufactures a misleading and verifiably false theory based on a third-party document he does not understand.

---

[1] Though not part of Dr. Feamster's proposed testimony, Cox goes on at length in its opposition about a fabricated theory that MarkMonitor did not perform the work that it promised to undertake. *See* Opp. 2-4. Cox misconstrues the Statement of Work and failed to ask questions about this in any deposition. Plaintiffs will address this issue in a forthcoming motion *in limine*.

2

In discovery, Plaintiffs and MarkMonitor produced a spreadsheet that contains Audible Magic identifications.² It conclusively demonstrates that MarkMonitor matched every work at issue in this case by using Audible Magic. Dr. Feamster refused to consider that evidence.

Instead, Feamster relied solely on a spreadsheet bearing bates number REV00003444 that Audible Magic produced in discovery. *See* Gould Ex. 2, 204:8-210:5, 347:25-352:9 (Feamster Tr.). Cox believes it to be ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ As already explained, however, Cox did not show the REV00003444 spreadsheet to Audible Magic's designee during its deposition on May 6, 2019, and thus the spreadsheet was *never authenticated*. Audible Magic produced more than ▮▮▮▮ documents. Cox asked Audible Magic's deponent general questions ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ never bothered to find out if REV00003444 is what the witness had in mind.

Perhaps even more importantly, Dr. Feamster makes broad conclusions from incomplete data. Although MarkMonitor used Audible Magic for identifications from 2008 through 2014, the REV00003444 spreadsheet covers the years 2012-2014 only, and even then with with some amount of data missing for those 3 years. Dating back to 2008, MarkMonitor looked for potentially infringing files on P2P networks, downloaded them, and used the Audible Magic technology to identify the contents. With Audible Magic lookups occurring as far back as 2008, it is neither surprising nor meaningful that a transaction log for 2012-2014 would not contain matches for all the works in suit. Indeed, Magistrate Judge Anderson saw right through Cox's (and Dr. Feamster's) confounding argument on this point in rejecting Cox's discovery sanctions motion

---

² *See* Declaration of Jeffrey M. Gould in Support of Plaintiffs' Motion for Summary Judgment, Ex. 2 (ECF No. 325-1). Due to the spreadsheet size, Plaintiffs have not resubmitted the spreadsheet showing Audible Magic verifications. If the Court would like another copy, Plaintiffs are happy to provide one.

to preclude the MarkMonitor Spreadsheet.³  *See* ECF No. 419 (Order denying Defendants' motion for discovery santions).

Dr. Feamster should not be able to walk into court to say there is no evidence of matching when his "basis" for saying so is nothing more than a stubborn refusal to look at the actual evidence.  Cox cannot defend the case by hiring an expert to testify that a podium is a chair.⁴

### C. Dr. Feamster's Approach to Attacking the Accuracy of Audible Magic Identifications Is Emblematic of His Unreliable Approach and Opinions

Dr. Feamster's attacks on Audible Magic are emblematic of why he cannot be an expert in this case.  In his report, Dr. Feamster ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████  *See* Gould Ex. 1, ¶¶ 36-38, 169 (Feamster Rept.).

It is undisputed that Dr. Feamster has not identified a single error in Audible Magic's identifications.  Nor has he identified any shortfalls in Audible Magic's software.  Instead, Dr. Feamster opined that ███████████████████████████████████████████████████████████████  In reality, his mind was made up before the

---

³ Magistrate Judge Anderson explained: "So my understanding of the Audible Magic transaction log is that it is related to a period of time of, let's just say two years.  That matches were done long before that two-year period.  And the idea that that transaction log only covers a certain percentage of works doesn't mean there wasn't ever a match to a work prior to that."  ECF No. 433, at 65 (Sept. 27, 2019 Hr'g Tr.).

⁴ In opposing Plaintiffs' summary judgment motion, Cox misrepresents Dr. Feamster's testimony to argue that "the Audible Magic records show that when putative copies of 75% of the works in suit were compared to the Audible Magic fingerprint database, they did not match."  *See* ECF No. 393, at 13 (Defendants' Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment).  Not even Dr. Feamster states that the copies of the works in suit were compared to the Audible Magic fingerprint database without producing a match.

case began, all as part of a paper he was paid to write to influence Congress not to require Internet platforms to filter for copyright infringement. In that published paper, which he omitted from his list of published papers accompanying his Rule 26 expert report, Dr. Feamster wrote that Audible Magic suffered from regular false positives. *See* Gould Ex. 7, Ex. 149 (Evan Engstrom and Nick Feamster, Engine, *The Limits of Filtering: A look at the Functionality & Shortcomings of Content Detection Tools* (March 2017)); Gould Ex. 2, 74:3-74:24 (Feamster Tr.). He made the statement without having examined Audible Magic's source code but by assuming that it must have the same false positive rates as the unrelated system he had examined. *See* Gould Ex. 2, 151:4-154:15 (Feamster Tr.). Dr. Feamster incorporated the same "analysis" into his expert report in this case.

Deposition testimony blew Dr. Feamster's speculation on the accuracy of Audible Magic out of the water. *See id*. 154:6-175:7, 355:7-368:7. It brought Feamster's undisclosed paper to light and made clear that he had no basis to challenge Audible Magic's accuracy. In its opposition to Plaintiffs' *Daubert* motion, Cox now represents to the Court that Dr. Feamster will not offer any of these opinions as trial testimony. *See* Opp. 11. While Cox should certainly be held to that representation, the larger point is that Dr. Feamster's approach to his work in this case is deeply unreliable. His lack of regard for the facts of this case and failure to apply the requisite intellectual rigor is not limited to his opinions on the accuracy of Audible Magic.

**D. Dr. Feamster Offers Only Speculative, Pretextual Reasons for Demanding Contemporaneous Downloads**

Dr. Feamster offers several improper opinions on why a full download contemporaneous to each infringement notice is "absolutely critical." *See* Gould Ex. 1, ¶ 24 (Feamster Rept.). None of Dr. Feamster's rationales has a factual basis in this case. He offers only unfounded speculation and possibilities, but litigation exists in a world of probabilities. His academic theory, without

application to the evidence, is irrelevant. It also conflicts with the law. Cox cannot hand-wave this away by contending that it goes to weight.

### 1. Dr. Feamster's Testimony That a Full Download Is Required Is Misleading

Dr. Feamster contends that contemporaneous downloads for each notice are ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* ¶¶ 24, 26 (Feamster Rept.). But Dr. Feamster's testimony is premised on an improper legal assumption, as it is irrelevant whether the Cox subscriber was "sharing" 100% of the infringing file as opposed to 90-100%. The file is infringing either way. Dr. Feamster's opinion also completely ignores the evidence. The uncontested evidence shows that, in virtually every case, the Cox subscribers that MarkMonitor reported for infringement ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Dr. Feamster must not be allowed to offer this testimony, improperly aimed at jury confusion.[5]

### 2. Dr. Feamster's Opinion on Falsified "Bitfield" Data Lacks Any Evidentiary Basis and Was Not Disclosed in His Report

During deposition questioning, Dr. Feamster offered conjecture that, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Gould Ex. 2, 279:17-301:14 (Feamster Tr.). This testimony appears nowhere in his report, and, on that basis alone, he should be precluded from offering it at trial. There is no merit to Cox's argument that "[b]y monitoring activity on BitTorrent, Plaintiffs have

---

[5] Cox argues that Dr. Feamster's expert opinion about the need for contemporaneous downloads is relevant by pointing to MarkMonitor's contract with RIAA and Stroz Friedberg's assessment of MarkMonitor for the Copyright Alert System. *See* Opp. 13-14. Casting aside Cox's misunderstanding of those documents, none of it matters for the purposes of this motion. He does not offer any testimony about those documents to justify his opinion that contemporaneous downloads for each notice are "absolutely critical" to ensure that the subject of the notice has the entire file. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

6

opened the door to an analysis on the data BitTorrent produces, including bitfield data." *See* Opp. 15 n. 52. Whether Feamster could have explored this alleged issue in his report is a red herring. He cannot testify to an undisclosed opinion. *See* Fed. R. Civ. P. 26(a)(2)(B) (requiring report containing a "complete statement of all opinions the witness will express and the basis and reasons for them" to provide notice of expert testimony); *Golden Nugget, Inc. v. Chesapeake Bay Fishing Co., L.C.*, 93 F. App'x 530, 535 (4th Cir. 2004) (affirming lower court's decision that expert's testimony should be limited to what was disclosed in his expert report). Because Dr. Feamster left it out of his report, the issue was not explored by experts in discovery.

Moreover, expert testimony on falsifying Bitfield information will not assist the jury. It is not a "general principle[]," nor is the possibility of falsifying Bitfield information a "habit[] on BitTorrent." *See id.* Cox wants to raise it to cast doubt on the reliability of Bitfield data. Yet even Dr. Feamster conceded that ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉ Gould Ex. 2, 306:9-313:20 (Feamster Tr.). There is absolutely no reason to believe that such inaccuracy occurred here. It is not appropriate for trial.

## CONCLUSION

For the reasons set forth herein, pursuant to Rules 702, 703, and 403, Plaintiffs' motion concerning Dr. Feamster should be granted in its entirety.

7

Respectfully submitted,

Dated October 11, 2019 /s/ Scott A. Zebrak
Scott A. Zebrak (38729)
Matthew J. Oppenheim (*pro hac vice*)
Jeffrey M. Gould (*pro hac vice*)
Kerry Mustico (*pro hac vice*)
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Avenue, NW, 5th Floor
Washington, DC 20015
Tel:  202-480-2999
scott@oandzlaw.com
matt@oandzlaw.com
jeff@oandzlaw.com
kerry@oandzlaw.com

*Attorneys for Plaintiffs*