# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

SONY MUSIC ENTERTAINMENT, *et al.*,

    Plaintiffs,

v.

COX COMMUNICATIONS, INC., *et al.*,

    Defendants.

Case No. 1:18-cv-00950-LO-JFA

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO PRECLUDE CERTAIN EXPERT TESTIMONY BY CHRISTIAN TREGILLIS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ iii

INTRODUCTION ................................................................................................................................ 1

ARGUMENT ........................................................................................................................................ 2

I.       Mr. Tregillis erred by using Plaintiffs' digital download royalty rate to calculate a license fee. ................................................................................................................................ 2

      A. Mr. Tregillis's use of digital download royalty rates ignores the basic fact that a Cox subscriber infringing Plaintiffs' works can share the work many times. ............................ 2

      B. Mr. Tregillis flunks the Fourth Circuit's requirement that an expert conducting a comparable license rate analysis justify the expert's choice of royalty rate. ..................... 4

      C. Plaintiffs' production of digital download royalty rates does not justify Mr. Tregillis's flawed analysis. .................................................................................................................... 6

II.     Mr. Tregillis erred by not accounting for the undisputed fact that the total infringement of Plaintiffs' works by Cox's subscribers on Cox's network cannot be measured. ................ 8

III.    Mr. Tregillis cannot testify about the law and cannot tell the jury how to award statutory damages ........................................................................................................................ 10

IV.    Mr. Tregillis is not qualified to testify about Cox's antipiracy procedures and his opinion lacks an objective methodology. ...................................................................................... 11

CONCLUSION .................................................................................................................................. 12

## TABLE OF AUTHORITIES

**CASES**

*Country Rd. Music, Inc. v. MP3.com, Inc.*,
 279 F. Supp. 2d 325 (S.D.N.Y 2003) ....................................................................................... 6

*Dash v. Mayweather*,
 731 F.3d 309 (4th Cir. 2013) ................................................................................................... 4

*Macro Niche Software, Inc. v. 4 Imaging Sols., L.L.C.*, No. CV H-12-2293, 2013 WL 12140417
 (S.D. Tex. Dec. 18, 2013) ...................................................................................................... 11

*Tyger v. Const. Co. v. Pensacola Const. Co.*,
 29 F.3d 137 (4th Cir. 1994) ..................................................................................................... 5

**INTRODUCTION**

Plaintiffs obviously do not base their "entire motion on a blatant misrepresentation," as Cox argues. Defs.' Opp. 1. When a user pays to download a song from iTunes, the user obtains a copy for personal use. The price for that download does not reflect a license to distribute copies of the song on peer-to-peer networks an unlimited number of times. Distributing many copies of the song on peer-to-peer network is a fundamentally different use of the work and has a vastly different economic value, but Mr. Tregillis treated these uses as identical. Mr. Tregillis did not even do any analysis to compare these different uses. He focused only on the download side of the ledger, failing to attribute any value to what it would cost for permission to distribute copies of Plaintiffs' works on peer-to-peer networks. Under clear Fourth Circuit law, this error requires excluding Mr. Tregillis's opinion.

Similarly, Mr. Tregillis admits that the amount of infringement of Plaintiffs' works occurring on Cox's network cannot be measured. Despite this admission, Mr. Tregillis assumes the infringement notices are the only infringements he should include in his analysis. In other words, Mr. Tregillis recognizes that he lacks meaningful data as to the universe of infringements, but then proceeds anyway. This error, too, requires excluding his opinion.

Unable to defend Mr. Tregillis's flawed analysis on the merits, Cox tries to distract the Court by confusing the issues. Cox repeatedly insists that Plaintiffs have misinterpreted Mr. Tregillis's argument, claiming that Plaintiffs' criticisms do not apply because Mr. Tregillis simply did a different analysis than the one Plaintiffs critique (Cox describes Plaintiffs' argument as a "straw man" three times). This argument just creates confusion, because Mr. Tregillis's opinion is flawed either way. If, as Cox claims, Mr. Tregillis's lost licensing analysis did not calculate a license that reflected the facts of the underlying infringement—where users can

1

redistribute the works infinitely many times—then Mr. Tregillis calculated a license for the wrong underlying activity, and his opinion must be excluded. If Mr. Tregillis did try to calculate a license to infringe infinitely, then his method for doing so was so flawed and unreliable as to require exclusion. They are two sides of the same coin. Cox's argument that Mr. Tregillis did the wrong analysis correctly puts Mr. Tregillis in no better position than if he had done the correct analysis wrongly; either requires exclusion.

Not content with confusing the issues, Cox seeks to bail out a sinking ship by casting unwarranted aspersions on Plaintiffs' discovery conduct. Plaintiffs produced revenue information for lawful digital downloads because Cox pursued it in discovery and the Court ordered it after motions practice. Plaintiffs produced royalty rate information for lawful downloads as an effort to resolve that discovery dispute through compromise. That Plaintiffs' did so, long before any expert conducted an actual analysis, has no bearing on whether Mr. Tregillis performed a proper analysis. Mr. Tregillis's opinion is unsalvageable and Cox's objections to Plaintiffs' discovery conduct are baseless. Plaintiffs' motion to preclude Mr. Tregillis's testimony should be granted.

## ARGUMENT

**I. Mr. Tregillis erred by using Plaintiffs' digital download royalty rate to calculate a license fee.**

    **A. Mr. Tregillis's use of digital download royalty rates ignores the basic fact that a Cox subscriber infringing Plaintiffs' works can share the work many times.**

Cox makes clear in its Opposition that Mr. Tregillis did not calculate a "license to infringe infinitely." Defs.' Opp. 13-16. Instead, Cox claims that "Mr. Tregillis assumed that each notice constituted a displaced digital download." Defs.' Opp. 14. The problem with Mr. Tregillis's assumption is that it renders his opinion unconnected to the facts of the case.

As Plaintiffs explained in their opening brief, when a Cox subscriber infringes one of Plaintiffs' works on a peer-to-peer network, that subscriber can redistribute the work infinitely many times. But when a person downloads a digital song from iTunes, he or she obtains a copy for their personal use. A license to redistribute a song infinitely many times has a different, much greater value than an iTunes user's ability to download the song for personal use because a license to redistribute displaces further sales, while a legitimate download for personal use does not. Even Mr. Tregillis agreed with that, *see* Pls. Mem. 5 (citing Tregillis deposition testimony), and Cox does not contest this fundamental reality in its Opposition.

In light of these uncontested facts, Mr. Tregillis's decision to "estimate Plaintiffs' lost revenue by estimating that each infringement notice displaced a single digital download," Defs.' Opp. 16, without taking into account the infringer's ability to redistribute the work, is indefensible. Cox offers only two responses, neither successful. First, Cox argues that Mr. Tregillis can ignore the infringer's ability to redistribute the work many times, and therefore the value of that infinite redistribution right, because Plaintiffs have not produced evidence of these further distributions. Defs.' Opp. 8. In Cox's view, Mr. Tregillis can ignore a known but unquantifiable reality because it is unquantifiable.

This argument fails. Cox's premise that Plaintiffs' infringement notices comprise the sum total of infringements of Plaintiffs' works on Cox's network during the Claims Period is unfounded. To prove their claims, Plaintiffs are not required to introduce evidence of every infringing distribution of their works that ever occurred on Cox's system. *See infra* at 8-9. Further, Mr. Tregillis admits that it is impossible to detect and measure all infringing distributions. *See* Pls. Mem. 10 (citing Tregillis deposition testimony). Plaintiffs obviously could not have produced data showing those additional infringements when everyone agrees

3

those infringements are impossible to measure. But just because they are impossible to measure does not mean they do not exist, and Mr. Tregillis has no basis to assume so. Mr. Tregillis even admits that others, recognizing this problem, have attempted to develop methods to estimate the amount of undetectable distributions. *Id.* Mr. Tregillis made no such attempt to estimate or account for these additional distributions in any way; he just blithely assumed them away. That assumption makes his method flawed and unreliable.

Second, Mr. Tregillis ignores that Cox's subscribers indisputably had the ability to redistribute the works. As Plaintiffs explained in their opening brief, a license must account for all of the rights that are transferred. *See* Pls.' Mem. 8. When Cox's subscribers infringed Plaintiffs' works, Plaintiffs lost the exclusive ability to control and limit the distribution of their works. On the other hand, when a user downloads a song from iTunes, Plaintiffs do not lose the ability to limit further distributions. Plaintiffs' digital download royalty rate reflects the fact that Plaintiffs have retained that ability. In calculating his licensing fee Mr. Tregillis failed to take the loss of this ability into account, and Cox does not even address this point in its Opposition. Because Mr. Tregillis used an inapplicable license rate, this error requires exclusion.

### B. Mr. Tregillis flunks the Fourth Circuit's requirement that an expert conducting a comparable license rate analysis justify the expert's choice of royalty rate.

Fourth Circuit law is clear that, when an expert conducts a lost licensing analysis as Mr. Tregillis did, the expert must justify his or her choice of royalty rate. *Dash v. Mayweather*, 731 F.3d 309, 319 (4th Cir. 2013); *Tyger v. Const. Co. v. Pensacola Const. Co.*, 29 F.3d 137, 143 (4th Cir. 1994). Mr. Tregillis failed to do this. He did no analysis to compare the royalty rate he used to a royalty reflecting the infringement at issue to show why the royalty rate he used was appropriate. Cox does not deny that Mr. Tregillis did no analysis to justify his choice of royalty rate at all:

4

> What Plaintiffs apparently mean is that Mr. Tregillis failed to analyze the similarities or differences between the license fee for a single-use digital download (the rate for which Plaintiffs produced in this case and do not challenge) and a license fee for infringing infinitely (which admittedly does not exist). ***Again, this is not what Mr. Tregillis has done, nor what he intends to do at trial.***

Cox Opp. 16 (emphasis added); *see also* Decl. of Jeffrey M. Gould in Supp. of Pls.' Mot. To Preclude Certain Expert Testimony by Christian Tregillis ("Gould Decl."), ECF No. 298-1, Ex. 2 196:21-197:8 (Tregillis Tr.) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ This admission is fatal under Fourth Circuit law.

Cox tries to distinguish this line of cases in a footnote by suggesting *Dash* applies only when an expert uses an improper comparable. Defs.' Opp. 16 n.15. In Cox's view, because Mr. Tregillis was not using his chosen royalty rate as a comparable to a royalty to infringe infinitely, *Dash*'s requirement did not apply to him.

This argument fails. As shown above, *see supra* at 2-4, Cox's view of the facts of infringement is wrong. Accordingly, under *Dash* and *Tyger*, Mr. Tregillis needed to show how the royalty rate he chose matched the facts of the infringement. He did not do so. This failure requires excluding his opinion.

Even under Cox's cramped view of the facts of infringement, Mr. Tregillis does not satisfy *Dash* and *Tyger*'s requirements. The royalty rate Mr. Tregillis used was the rate a user pays for downloading a single track from iTunes. Downloading a track from iTunes is not an identical use to illegally downloading or distributing a digital track on a peer-to-peer network. Using the royalty rate from the former as a stand-in for the latter is thus use of a comparable, triggering the Fourth Circuit's requirement to do an analysis to justify the choice of comparable.

Thus, even if Mr. Tregillis and Cox were right that the facts of infringement were limited to the evidence Plaintiffs produced (they are not), Mr. Tregillis still needed to explain why his

5

chosen royalty rate was appropriate. Such an analysis would need to consider, for example, the terms of use, exclusivity (or lack thereof), breadth, and business purposes of the two uses being compared. *Country Rd. Music, Inc. v. MP3.com, Inc.*, 279 F. Supp. 2d 325, 331 (S.D.N.Y 2003). Mr. Tregillis utterly failed to do this. Instead, he mechanically applied the royalty rates Plaintiffs earn from a lawful iTunes download, with no explanation or justification. Gould Decl. Ex. 1 ¶¶ 73-75, 87 (Tregillis Apr. 10, 2019 Rept.); Gould Decl. Ex. 3 ¶ 49 (Tregillis May 15, 2019 Rept). Tregillis's only explanation is in a footnote to his Reply Report:



Gould Decl. Ex. 4 ¶ 66 n.37 (Tregillis June 13, 2019 Rept.). Notably, Tregillis admits here that he is indeed doing a comparable license rate analysis. But his explanation of his choice of rate is entirely conclusory. There is none of the analysis of terms, purpose, and so on that *Dash*, *Tyger*, and *Country Road* require.

At deposition, Tregillis admitted why he chose the license rate he did: it was the only data he was provided. Pls. Mem. 6 (quoting Tregillis's deposition testimony). As Plaintiffs showed in their opening brief, relying on data simply because it is easily available is classically fallacious reasoning. *Id.* And it is an entirely insufficient basis to ground a comparable license rate analysis under Fourth Circuit law.

### C. Plaintiffs' production of digital download royalty rates does not justify Mr. Tregillis's flawed analysis.

Cox's only remaining defense of Mr. Tregillis's flawed approach is to argue that Plaintiffs produced the data Tregillis used for the express purpose of calculating actual damages, and so cannot now complain about Mr. Tregillis's analysis. Cox Opp. 6. Revealingly, Cox cites

no legal authority for this proposition. In support, Cox cites only some remarks from Plaintiffs' counsel during oral argument but Cox's point is unclear. Cox's argument appears to sound in some strained concept of estoppel, but Cox does not mention any estoppel doctrine (or any other legal doctrine), let alone cite and apply any applicable standards for estoppel (wisely so, as there are no grounds for estoppel here).

More importantly, Magistrate Judge Anderson correctly recognized at the same hearing Cox references that the parties' damages theories were necessarily tentative and subject to revision. At the time of the hearing, discovery was in its infancy and expert reports were still months from being served. Litigation is a dynamic event, and the parties' legal theories inevitably evolve as a case progresses. Accordingly, Magistrate Judge Anderson explicitly instructed Cox it could come back and seek additional discovery if Cox's damages expert needed additional data:

> You're going to get their expert report on April 10, it is going to have damages information. So my ruling is not going to preclude you from seeking more information once you get their expert report and provide – come to me and say, you know, based on their expert, my expert needs X.

Decl. of Thomas Patrick Lane in Supp. of Defs.' to Pls.' Mot. to Preclude Certain Expert Testimony by Christian Tregillis, ECF No. 370-1, Ex. 5 at 31:8-12 (Jan. 25, 2019 Hr'g Tr.). Magistrate Judge Anderson made clear that Mr. Tregillis was not required to just blindly plug in whatever numbers Plaintiffs produced, but that, if in Mr. Tregillis's expert opinion, he needed additional data, Cox could seek to obtain it. Mr. Tregillis even admitted that, to calculate a license reflecting the infringement in this case, he would need additional data:



Gould Decl. Ex. 2, 196:10-19 (Tregillis Dep. Tr.).  Mr. Tregillis's choice to blindly rely on the data he was provided was his own choice, and the admissibility of his opinion must reflect that that choice was a mistake.

## II. Mr. Tregillis erred by not accounting for the undisputed fact that the total infringement of Plaintiffs' works by Cox's subscribers on Cox's network cannot be measured.

In calculating his version of actual damages, Mr. Tregillis counted as the total number of infringements only the infringements for which Plaintiffs sent notices.  But Mr. Tregillis admits that the full extent of infringement on Cox's network cannot be determined, Pls.' Mem. 10, and Cox does not dispute this fundamental fact.  Defs.' Opp. 10 ("Plaintiffs argue that on a peer-to-peer network, it is impossible to observe the interactions between peers and count the distributions.  While that may be true . . .").  Mr. Tregillis admits that his method of determining the total number of infringements by counting the number of infringement notices does not accurately measure the total number of infringements.  Pls. Mem. 11.  And he admits that he did no analysis to determine whether his method was accurate.  *Id.* 10.  In light of these admissions, Mr. Tregillis's method is indefensible and his opinion must be excluded.

Cox's attempt to defend Mr. Tregillis's opinion relies on a significant misunderstanding of the case.  Cox defends Mr. Tregillis's calculation on the ground that, "if there were evidence of additional infringement of the works in suit by Cox's subscribers during the Claim Period, Plaintiffs would be claiming relief for such infringement."  Defs.' Opp. 9.  Similarly, Cox misleadingly argues that "Plaintiffs do not allege in this case that *Cox's subscribers* are

responsible for any instance of infringement other than those purportedly captured by the notices in this case . . . ." Defs.' Mem. 10.[1]

Cox's argument fundamentally misunderstand how proving copyright infringement works. Plaintiffs have never claimed that the infringements shown by the notices are the *only* infringements of those works occurring on Cox's network during the Claims Period. The infringement notices are merely representative instances of much larger activity. As Mr. Tregillis himself admitted, the latter cannot be measured. To prove their claims, Plaintiffs have no obligation to produce data showing every instance of infringement; in any event, to do so would be impossible because that data does not exist.

Cox's other arguments traffic in irrelevant confusions. Despite Cox's contention, Plaintiffs are not arguing that Mr. Tregillis should have considered evidence of infringement outside the Claims period, or by users of other networks, or of works not in the case. The problem with Mr. Tregillis's analysis is that the total infringements of the works in suit by Cox subscribers on Cox's network during the Claims Period is unknowable, as Mr. Tregillis admits. Nor does Cox's diversion into the making-available theory have any relevance to Plaintiffs' criticisms of Mr. Tregillis's opinion. Plaintiffs have argued that Mr. Tregillis failed to account for all actual distributions, not for works made available. And Cox's argument that Mr. Tregillis's calculations were conservative cannot save him: it is irrelevant whether Mr. Tregillis's calculations were conservative within the bounds of his assumptions if those assumptions were fatally flawed to begin with.

---

[1] If Cox or its experts are going to purport to state Plaintiffs' positions at trial, they must do so responsibly. It is obviously not Plaintiffs' position that the infringement notices represent the sum total of the infringing activity.

9

Perhaps recognizing the weaknesses of its other arguments, Cox again resorts to baseless attacks on Plaintiffs' discovery conduct. Cox argues that Plaintiffs cannot complain about Mr. Tregillis's failure to account for all infringement because Plaintiffs resisted producing data related to the amount of infringement. Defs.' Mem. 12. Again, the point of Cox's objection is unclear, and Cox cites no authority. But more fundamentally, Cox misunderstands the problem with Mr. Tregillis's analysis. The problem is not that Mr. Tregillis failed to consider additional data of infringement; the problem is that Mr. Tregillis failed to account for infringements that he admitted cannot be detected and for which, accordingly, no data exists that Plaintiffs could have produced. Cox's discovery complaint is thus irrelevant to the flaw in Mr. Tregillis's opinion.

### III. Mr. Tregillis cannot testify about the law and cannot tell the jury how to award statutory damages.

Cox's attempt to defend Mr. Tregillis's legal opinion testimony reveals why that testimony must be excluded. Cox first points to other legal opinions Mr. Tregillis has not offered as some sort of justification. Defs.' Opp. 17. But the fact that Mr. Tregillis refrained from offering some legal opinions does not give him license to offer other legal opinions. Cox next describes Mr. Tregillis as "merely rebutting Dr. Lehr's own claims as what is relevant to statutory damages." Defs.' Opp. 18. This is problematic on multiple counts. First, Dr. Lehr did not offer an opinion on what is legally relevant to statutory damages; Dr. Lehr criticized Mr. Tregillis's economics and financial calculations, not his legal analysis. *See* Gould Decl. Ex. 3 ¶ 70 (Tregillis June 13, 2019 Rept.) (quoting Lehr May 15, 2019 Rept. ¶ 23). There is thus no legal analysis from Dr. Lehr for Mr. Tregillis to rebut. This argument also ignores that Mr. Tregillis offered legal opinions in his April 10, 2019 report, served nine days before Dr. Lehr's April 19 opening report. *See* Gould Decl. Ex. 1 ¶¶ 83-86 (Tregillis Apr. 10, 2019 Rept.). Indeed, portions of Mr. Tregillis's opening report read like a legal brief. Second, Mr. Tregillis

should not be testifying, as Cox claims he is, as to what is relevant to statutory damages. Under Fourth Circuit, law, as Plaintiffs explained at length, *see* Pls.' Mem. 14-15, that is a function for the Court, not a non-legal expert witness. Cox offers no authority otherwise.

Finally, Cox does not cite a single case where an expert witness was allowed to affirmatively offer legal opinion testimony. This makes sense; courts in this Circuit regularly exclude such testimony. See Pls. Mem. 14 n.4. Cox points to the trial record in *BMG*, Defs.' Opp. 17 n.16, but there the Court allowed *BMG*'s counsel to *cross-examine* Cox's damages expert regarding statutory damages. That is fundamentally different from allowing an expert on direct examination to affirmatively opine regarding statutory damages. Cox also tries to distinguish *Macro Niche Software, Inc.* on the ground that the expert there was precluded from testifying that the "infringement was willful" and from recommending a specific statutory damages award, which Cox claims Tregillis does not do. Defs.' Opp. 17 n.16 (citing *Macro Niche Software, Inc. v. 4 Imaging Sols., L.L.C.*, No. CV H-12-2293, 2013 WL 12140417, at *4 (S.D. Tex. Dec. 18, 2013). But Cox fails to explain how Mr. Tregillis's opinion that ▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Gould Decl. Ex. 3 ¶ 54 (Tregillis May 15, 2019 Rept.), is any different from the precluded opinion in *Macro Niche Software, Inc.* that willfulness required a large statutory damages award there. Mr. Tregillis's opinion should be similarly precluded.

### IV. Mr. Tregillis is not qualified to testify about Cox's antipiracy procedures and his opinion lacks an objective methodology.

Mr. Tregillis is plainly unqualified to testify that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Nor does Mr. Tregillis have a reliable method for so concluding. *See* Pls. Mem. 15-17.

Cox's attempts to defend Mr. Tregillis's antipiracy testimony fail. Cox accuses Plaintiffs of "cherry-picking two statements," but the statements Plaintiffs identified represent Mr. Tregillis's ultimate conclusions—they are hardly cherry-picked. Nor are Mr. Tregillis's conclusions proper rebuttal to Dr. Lehr. Dr. Lehr opines that Cox had an economic incentive to tolerate infringement. Testimony regarding a party's economic incentives is fundamentally an economic analysis. Mr. Tregillis, however, does not opine that Cox lacked such an incentive; instead, he opines as to whether the infringement which Cox had an economic incentive to tolerate actually occurred. Unlike Dr. Lehr's opinion, whether infringement actually occurred is not fundamentally an economic analysis. It thus requires different qualifications to offer expert testimony about it, qualifications Mr. Tregillis lacks.

Cox describes Mr. Tregillis's opinion as merely making observations about infringement based on notice data. Defs.' Mem. 19. But Cox ignores the two problems with this testimony Plaintiffs identified. First, Mr. Tregillis does not explain or justify why he relied on the particular data points he used and how he chose them. That renders his opinion unreliable. Second, Mr. Tregillis has no criteria or basis for his conclusions that ▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓ *See* Pls. Mem. 16-17. Mr. Tregillis never explains how the two data points he relies on are sufficient to allow him to reach these conclusions. Because Mr. Tregillis has no objective methodology, his opinion must be excluded.

## CONCLUSION

For the reasons set forth herein, Plaintiffs' respectfully request that the Court preclude Christian Tregillis from:

(1) Testifying to his lost licensing fee analysis that Plaintiffs' total actual damages are ▓▓▓▓▓▓;

12

(2) Offering legal analysis and conclusions; and

(3) Testifying to the efficacy of Cox's anti-piracy procedures.

Respectfully submitted,

Dated October 11, 2019

/s/ Scott A. Zebrak
Scott A. Zebrak (38729)
Matthew J. Oppenheim (*pro hac vice*)
Jeffrey M. Gould (*pro hac vice*)
Kerry Mustico (*pro hac vice*)
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Avenue, NW, 5th Floor
Washington, DC 20015
Tel:  202-480-2999
scott@oandzlaw.com
matt@oandzlaw.com
jeff@oandzlaw.com
kerry@oandzlaw.com

*Attorneys for Plaintiff*