UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

SONY MUSIC ENTERTAINMENT, *et al.*,

    Plaintiffs,

v.

COX COMMUNICATIONS, INC., *et al.*,

    Defendants.

Case No. 1:18-cv-00950-LO-JFA

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO PRECLUDE
<u>CERTAIN EXPERT TESTIMONY BY DR. LYNNE WEBER</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... iii

INTRODUCTION ..................................................................................................................... 1

ARGUMENT ............................................................................................................................. 2

    I.    Cox Is Estopped From Proferring Expert Testimony on Factual Issues Already Decided Against It .................................................................................................. 2

    II.    Dr. Weber's Proffered Testimony on "Effectiveness" Usurps the Jury's Role and Will Not Assist the Jury ................................................................................................. 3

    III.    Dr. Weber's Proffered Testimony On "Effectiveness" Is Not Proper Rebuttal ................... 5

    IV.    Dr. Weber's Opinions on "Effectiveness" Are Unreliable .................................................. 6

    V.    Dr. Weber Cannot Be Used as a Vehicle for Inadmissible Documents and Hearsay ........ 10

CONCLUSION ........................................................................................................................ 11

## TABLE OF AUTHORITIES

**Cases**

*BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*,
  149 F. Supp. 3d 634 (E.D. Va. 2015) .................................................................................. 2

*BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*,
  881 F.3d 293 (4th Cir. 2018) ............................................................................................... 2

*Bouchat v. Champion Prods., Inc.*,
  327 F. Supp. 2d 537 (D. Md. 2003) .................................................................................... 3

*Collins v. Pond Creek Mining Co.*,
  468 F.3d 213 (4th Cir. 2006) ............................................................................................... 3

*In re Microsoft Corp. Antitrust Litig.*,
  355 F.3d 322 (4th Cir. 2004) ............................................................................................... 3

*Kidder, Peabody & Co. v. IAG Int'l Acceptance Grp. N.V.*,
  14 F. Supp. 2d 391 (S.D.N.Y. 1998) ................................................................................... 4

*Manganella v. Evanston Ins. Co.*,
  700 F.3d 585 (1st Cir. 2012) ............................................................................................... 3

*R.F.M.A.S., Inc. v. Mimi SO*,
  748 F. Supp. 2d 244 (S.D.N.Y. 2010) ................................................................................. 8

*United States v. Offill*,
  666 F.3d 168 (4th Cir. 2011) ............................................................................................... 4

**Rules**

Fed. R. Civ. P. 26 ......................................................................................................................... 5

Fed. R. Evid. 702 ......................................................................................................................... 6

## INTRODUCTION

As explained by their motion, Plaintiffs do not seek to preclude Dr. Weber from testifying about calculations concerning Cox's responses to receiving copyright infringement notices. Issues with that testimony can be dealt with on cross-examination. However, Plaintiffs object to Dr. Weber's opinions of "effectiveness" that are aimed at telling the jury how to decide the issues in this case. Calculating percentages and averages for certain subscriber accounts is one thing. But opining on the "effect" of any particular response on those accounts or the "effectiveness" of Cox's response in general is another thing entirely.

Dr. Weber's opinions on "effectiveness" are not based on any recognized principles or methodology or, as Cox claims, any industry standard. Instead, Dr. Weber merely looked at her calculations, divined an "effect" whenever an action, inaction, or series of actions and inactions was followed by a percentage of accounts receiving no additional notices, and then slapped on a label of "effective." Dr. Weber admittedly did not perform any type of causation analysis. She says none is required, that causation can be inferred, but that is precisely the problem. To opine on an effect is to opine on the cause. Cox seeks to have the jury *infer* an expert opinion on causation when no proper analysis on causation had been conducted. This is the epitome of *ipse dixit* expert testimony that runs the high risk of misleading the jury simply because an expert is on the stand.

Cox insists that it is not proffering her "effectiveness" opinions to argue that Cox's actions were justified or proper. But this is not only Cox's plan; it is Cox's *trial theme*. At the forefront of its opposition to Plaintiffs' motion for summary judgment, Cox asserts that—based principally on Dr. Weber's opinions and other evidence on "effectiveness"—"Plaintiffs cannot establish secondary liability." *See* ECF No. 393, at 1-3 (Defendants' Memorandum in Opposition to

1

Plaintiffs' Motion for Summary Judgment ("Cox SJ Opp.")). In that same brief, Cox also argues that same evidence precludes a finding that it materially contributed to infringement. *Id.* at 31.

"Effectiveness"—whatever it means—is not relevant to any issue. Because it is not an element of an asserted claim or defense, it would only confuse the jury. Nor is it rebuttal to an expert opinion proffered by Plaintiffs. None of Plaintiffs' experts analyzed effectiveness or intend to offer an opinion on effectivness at trial.

When neither the law nor the case calls for evidence on "effectiveness," it can amount to one thing only—improper jury nullification. Cox's goal with Dr. Weber (as well as Dr. Almeroth and Mr. Bakewell) is to have an expert provide the equivalent of closing argument on the witness stand by using loaded terms like "effective" (or "reasonable" and "windfall"). The Court should shut down Cox's transparent attempt at jury nullification. Dr. Weber's proffered testimony on "effectiveness" is impermissible expert testimony and should be excluded.

## ARGUMENT

### I. COX IS ESTOPPED FROM PROFERRING EXPERT TESTIMONY ON FACTUAL ISSUES ALREADY DECIDED AGAINST IT

Cox does not get a "do-over" to relitigate the factual issues decided in *BMG* regarding how Cox responded to infringement notices and approached the issue of terminating the accounts of repeat infringers. This Court, as affirmed by the Fourth Circuit, made various factual findings rejecting Cox's defense of its policy for responding to infringement notices: that it was an "absolute mirage" and "very limited" and that "Cox very clearly determined *not* to terminate subscribers who in fact repeatedly violated the policy." *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 149 F. Supp. 3d 634, 658 (E.D. Va. 2015); *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 881 F.3d 293, 299, 303 (4th Cir. 2018). Cox should not be permitted to resurrect that policy here as "effective."

As explained in Plaintiffs' motion, the facts concerning Cox's graduated response policy are identical to those previously litigated in *BMG*, actually resolved, and critical and necessary to the *BMG* judgment; that judgment is final and valid; and Cox had a full and fair opportunity to litigate them. *See* Mot. 6-7. No more is required. *See In re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322, 326 (4th Cir. 2004). Cox incorrectly suggests that none of the factual determinations from *BMG* apply because the DMCA was not raised as a defense in this case. *See* Opp. 26. The doctrine of collateral estoppel requires an "issue or fact," not the ultimate issue, to be identical. *Manganella v. Evanston Ins. Co.*, 700 F.3d 585, 591 (1st Cir. 2012) ("[T]he issue need not have been the ultimate issue decided by the [prior proceeding]; issue preclusion can extend to necessary intermediate findings . . . ."); *see also Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 219 (4th Cir. 2006) (finding the issue of whether decedent suffered from pneumoconiosis as a result of his work in the mines identical in both the widow's claim for survivor's benefits and the husband's prior claim for benefits under the Black Lung Act); *Bouchat v. Champion Prods., Inc.*, 327 F. Supp. 2d 537, 546 (D. Md. 2003) ("The claim presented need not be the same for collateral estoppel to preclude relitigation of an issue."), *aff'd on other grounds sub nom. Bouchat v. Bon-Ton Dep't Stores, Inc.*, 506 F.3d 315 (4th Cir. 2007).

Because Cox is estopped from relitigating an issue already decided against it, any attempt to introduce evidence, including expert testimony, inconsistent with this Court's prior finding is improper. Allowing Dr. Weber to testify on issues that have already been litigated and resolved would defeat the purpose of collateral estoppel.

## II. DR. WEBER'S PROFFERED TESTIMONY ON "EFFECTIVENESS" USURPS THE JURY'S ROLE AND WILL NOT ASSIST THE JURY

Dr. Weber's opinions on "effectiveness" will not help the jury because it is not relevant to any issue in the case. Her proffered testimony will serve no purpose other than to tell the jury what

result to reach in disregard of the facts and applicable law. This is classic improper jury nullification.

This Court need not rely on Plaintiffs' arguments alone. Cox professes as much. In its opposition to Plaintiffs' motion for summary judgment, Cox asserts that "Plaintiffs cannot establish secondary liability" based on what it claims is undisputed evidence that Cox's policy for responding to copyright infringement notices was "effective." ECF No. 393, at 1-3 (Cox SJ Opp). Cox specifically refers to Dr. Weber's testimony on "effectiveness" as part of that evidence. *Id.* Cox's opposition to Plaintiffs' motion here similarly concedes that Dr. Weber's opinions "will aid the jury in determining whether Cox's actions were sufficient or insufficient to establish liability." Opp. 8. Thus, based on its own pronouncements, Cox improperly seeks to use Dr. Weber's testimony on "effectiveness" to "suppl[y] the jury with no information other than the witness's view of how the verdict should be read." *See United States v. Offill*, 666 F.3d 168, 175 (4th Cir. 2011).

In addition, although the alleged "effectiveness" of Cox's response to infringement notices is not an element of any claim or defense in this case, Cox seeks to use expert testimony on "effectiveness" as a "functional equivalent" of an opinion on ultimate issues. *See Kidder, Peabody & Co. v. IAG Int'l Acceptance Grp. N.V.*, 14 F. Supp. 2d 391, 398 (S.D.N.Y. 1998). Indeed, Cox relies on Dr. Weber's opinions on "effectiveness" to argue that "a reasonable jury could easily find that because Cox's Graduated Response was demonstrably effective, and Cox actually terminated subscribers who continued to infringe, Cox did not materially contribute to infringement by its subscribers." ECF No. 393, at 31 (Cox SJ Opp.). Or a jury may improperly consider "effectiveness" when assessing whether Cox failed to exercise control to stop or limit the

4

infringement. Cox's confused concept of "effectiveness" must not be allowed to interfere with the jury's job of applying the law to the facts.[1]

### III. DR. WEBER'S PROFFERED TESTIMONY ON "EFFECTIVENESS" IS NOT PROPER REBUTTAL

In her report, Dr. Weber opined on "effectiveness" as purported rebuttal to the opinions of two of Plaintiffs' proffered experts, Dr. McGarty and Professor McCabe. *See*, *e.g.*, Gould Ex. 1, ¶¶ 40-41, 83-84 (Weber Rept.).[2] Cox's opposition tacks on the proffered testimony of Dr. Lehr—whose opinions are mentioned nowhere in her report—as a third source for rebuttal. *See* Opp. 24-25. Dr. Weber's proffered testimony fails to satisfy the basic requirements for rebuttal expert testimony. Her opinions do not "contradict or rebut evidence on the same subject matter" of the reports of Dr. McGarty and Professor McCabe, were not properly disclosed as rebuttal to the report of Dr. Lehr, and thus is not proper rebuttal to any of Plaintiffs' experts. *See* Fed. R. Civ. P. 26(a)(2)(D)(ii).

Dr. Weber's opinions on "effectiveness" respond not to what Plaintiffs' experts have testified about, but on incorrect notions of what their testimony implies. *See* Opp. 22-24. For example, Dr. McGarty plans to testify about Cox's capabilities in responding to copyright infringement notices and Cox's actions that were inconsistent with its capability, whereas Professor

---

[1] Contrary to Cox's arguments (Opp. 26-27), in *BMG* it proffered the testimony of Mr. Rosenblatt, who "render[ed] certain opinions about the effectiveness of Cox's graduated response procedures" (*see* Gould Ex. 5, at 24 (Cox's Opp'n to Pls.' Mot. to Exclude Portions of the Expert Report and Limit the Trial Testimony of Cox's Expert William Rosenblatt, *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, No. 1:14-cv-1611, ECF No. 597 (E.D. Va. Nov. 10, 2015))). This Court precluded Mr. Rosenblatt's proffered testimony. Dr. Weber's testimony on the same subject matter should similarly be excluded.

[2] Gould Exhibits 1–7 are attached to the Gould Declaration in support of Plaintiffs' Motion to Preclude Certain Expert Testimony by Dr. Lynn Weber (ECF No. 299-1); Gould Exhibits A and B are attached to the Gould Declaration filed contemporaneously herewith.

McCabe plans to testify on his analysis showing that all of the works in suit were the subject of infringement notices sent by Plaintiffs to Cox during the claim period concerning specific Cox subscribers already identified to Cox in at least two prior notices. *See* Buchanan Ex. 2, ¶ 13 (Expert Report of Dr. Terrence P. McGarty, dated Apr. 10, 2019 ("McGarty Rept.")); Buchanan Ex. 5, ¶ 4 (Report of George P. McCabe, Ph.D., dated Apr. 10, 2019). None of Plaintiffs' experts did an analysis on effectiveness.

Cox points to Dr. McGarty's sole reference to "effectiveness" on page 12 of his opening report (Opp. 23), but Dr. McGarty explained that he was not opining on whether Cox's policy was "effective" (*see* Gould Ex. B, 204:12-212:6 (Deposition Transcript of Terrence McGarty, Ph.D., dated July 2, 2019)). Nor does he intend to offer an opinion on effectiveness at trial. Dr. McGarty used that word colloquially in his report when opining on the extent to which Cox's actions were inconsistent with the functionality and capability of Cox's system. *See* Buchanan Ex. 2, ¶¶ 31-45 (McGarty Rept.). His deposition testimony is consistent with the opinions in his report and does not imply, as Cox claims, an opinion on "effectiveness." *See* Opp. 23 & n.27.

At bottom, Dr. Weber's opinions introduce an entirely new issue having no relevance to this case. Her testimony on "effectiveness" should be excluded as improper rebuttal testimony.

### IV. DR. WEBER'S OPINIONS ON "EFFECTIVENESS" ARE UNRELIABLE

Dr. Weber's opinions on "effectiveness" fail the basic reliability requirements of the Federal Rules of Evidence and *Daubert*. Dr. Weber's proffered testimony is neither the "product of reliable principles and methods" nor "based on sufficient facts or data." *See* Fed. R. Evid. 702. As a result, her testimony is mere *ipse dixit*.

To be clear, aside from their confounding nature, Plaintiffs do not object to Dr. Weber testifying about her calculations, which make up the bulk of her report (and Cox's opposition), or

6

her qualifications to perform such calculations. Her opinions on "effectiveness," however, are an entirely different matter. Absent from her report and Cox's opposition is any description of reliable principles or methods as to how she concluded that each step of Cox's policy in responding to infringement notices has an "effect" on the occurrence of additional notices for an account and that Cox's response in general was "effective for the vast majority of accounts." She merely looks at the percentages and averages she calculated, found an "effect" every time an account received no additional notices, and slapped on a label of "effective." *See*, *e.g.*, Gould Ex. 1, ¶¶ 74-77, 92-93 (Weber Rept.).

Cox's claims that the industry has accepted and historically applied this "analysis" do not withstand any scrutiny. *See* Opp. 1, 12-13.³ During her deposition, Dr. Weber was unable to say whether the term "effectiveness" has been used in scientific or technical literature, instead testifying that the term "*may or may not* have been used in the scientific literature" and that it is the "*kind* of analysis that is done in a variety of different kinds of literature" and the "*kind* of analysis that's conducted regularly for ordinary course of business purposes." *See id.* 116:14-117:1 (Weber Tr.) (emphasis added). Nor did she refer to any analysis of "effectiveness" (or any analysis similar in kind) in the industry.

Cox's opposition now says that Dr. Weber's analysis on "effectiveness" is not only the "same" as that performed by content owners in the industry, but that it is consistent with what it claims is the "industry standard." *See* Opp. 12-17, 19. Nothing resembling an "industry standard" can be found or even discerned from the documents cited by Cox. First, Cox relies on an email that purportedly attaches ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

---

³ Cox also claims that Professor McCabe described her analysis as "standard" (Opp. 7, 12 n.16), but he was referring to her calculations, not her analysis concerning "effectiveness" (*see* Buchanan Ex. 3, 204:19-207:12 (Deposition Transcript of George P. McCabe, Ph. D., dated June 20, 2019)).

7

████████████████████████ These calculations say nothing about analyzing effectiveness, much less an industry standard on measuring effectiveness. *See* Buchanan Ex. 6 (Corrected), at COX_SONY_00523050 (spreadsheet). Second, Cox relies on its own calculations and deposition testimony referring to data and statistics but, again, no analysis or mention of a measure of effectiveness. *See* Buchanan Ex. 8, 26:5-31:3 (Deposition Transcript of Brent Beck, dated June 5, 2019); Buchanan Ex. 9, 127:23-130:15 (Deposition Transcript of Matthew E. Carothers, dated Apr. 24, 2019). Third, Cox refers to the Copyright Alert System ("CAS") Memorandum of Understanding, which provides a (non-exhaustive) list of six factors to consider—only two of which appear to correspond to Dr. Weber's calculations—but no mention of a measure of effectiveness that is remotely similar to Dr. Weber's convoluted definition. *Compare* Gould Ex. A, at § 9.D (Plaintiffs_00286217-18) (Memorandum of Understanding) *with* Gould Ex. 2, 115:1-6 (Weber Tr.). Further, the CAS was not an industry standard, but an educational experiment developed in the context of a private agreement between a group of movie studios, record companies, and ISPs to address peer-to-peer infringement.

Dr. Weber's opinions on "effectiveness" are essentially unreliable opinions on "causation." Dr. Weber admits she did not conduct a causation analysis or use a control group. *See* Gould Ex. 2, 50:19-24 (Weber Tr.). She testified that such analysis was unnecessary and that causation can be inferred. *Id.*; *see also* Opp. 19 ("All she is opining is that, every time Cox intervened, some subscribers changed their behavior, and that it is a reasonable inference from this fact that Cox's interventions had an effect in curtailing the conduct in question."). But Dr. Weber's opinions on the "effect" of each step of Cox's response policy are necessarily opinions on the cause of that "effect." This is not a relevance or weight issue. This is an issue of reliability required by *Daubert*.

8

Further, Cox's argument that a causation analysis "does not need to control for alternate factors" is contrary to caselaw that has held the opposite. *See* Opp. 19; *R.F.M.A.S., Inc. v. Mimi SO*, 748 F. Supp. 2d 244, 273 (S.D.N.Y. 2010) ("It is plain that one cannot determine whether something caused an observed effect without controlling for other equally plausible causes of that effect."). Without using any controls, Dr. Weber makes improper assumptions, not based on sufficient facts, as to what brought on the "effect" of no additional infringement notices. Cox's dismissal of an alternative explanation for the elimination of notices defies logic. For example, Cox acknowledges that a subscriber may leave a BitTorrent swarm for reasons separate and apart from receiving an infringement notice. Opp. 20-21. But—even though its action (or inaction or series of action or inactions) had no connection with that account receiving no further notices other than happenstance—Cox is quick to take credit for it.[4]

Cox unabashedly seeks to use Dr. Weber's opinions on "effectiveness" so that the jury can *infer* an expert opinion on causation when no proper analysis on causation had been conducted. But no expert testimony is needed for that.

Cox also seeks to use Dr. Weber's opinions to improperly infer that Cox's policy stopped subscriber infringement. Dr. Weber describes her opinions only in terms of "whether there are no additional such RIAA notices, after Cox's responses," and did not measure the likelihood that the absence of additional notices meant that a subscriber had stopped infringing or opine on actual

---

[4] Cox's FedEx example is also apt. *See* Opp. 13-14. Whereas one may evaluate FedEx's on-time delivery by counting the frequency of on-time deliveries across different variables (region, day of the week, time of day, type of package, season, etc.), analyzing the effectiveness of FedEx's services with respect to on-time delivery would require controlling for each of these variables and other factors that could have an effect on on-time delivery. The use of controls would help determine whether FedEx's on-time delivery is a result of its services or some other reason, such as less traffic during certain times of the day. Cox complains that such controls would disrupt business activities, but someone with Dr. Weber's practical experience should be well-aware of ways to design studies without ceasing business operations.

9

subscriber infringement. *See* Gould Ex. 2, 35:21-24, 126:10-127:14, 206:2-14 (Weber Tr.). But, in its opposition to Plaintiffs' motion for summary judgment, Cox cuts through that morass and reveals that Dr. Weber is opining on the effectiveness of Cox's system in "ending infringement." Dkt. No. 393, at 3 (Cox SJ Opp).

These inferences are improper and based on expert opinions on "effectiveness" that are nothing but speculation and say-so. Dr. Weber's opinions should be excluded as unreliable.

## V.   DR. WEBER CANNOT BE USED AS A VEHICLE FOR INADMISSIBLE DOCUMENTS AND HEARSAY

Dr. Weber also plans to testify about deposition testimony and documents that are unnecessary to any part of a true rebuttal report and that should not come into evidence at all, much less through an expert. First, Dr. Weber relies on a Cox "study" purportedly stating that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ is hearsay, lacks foundation, and will be the subject of a forthcoming motion *in limine*. *See* Gould Ex. 1, ¶ 95 (Weber Rept.). Second, Dr. Weber relies on hearsay documents, namely, the deposition testimony of two Cox employees and ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *See id.* ¶¶ 78-79, 109. Cox argues that the emails are not being offered for their truth, but Dr. Weber's opinion—▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇—is necessarily based on the truth of those emails. *See* Opp. 30. None of this is necessary for Dr. Weber to put forward her calculations on the numbers with respect to infringement notices and repeat infringement, which is the only permissible scope of her rebuttal report. Her opinions on these materials should be excluded.



## CONCLUSION

Plaintiffs' motion should be granted. Dr. Weber should be precluded from providing expert opinions that Cox's response to copyright infringement notices had an "effect" or was "effective" in reducing the number of subsequent notices for subscribers.

Respectfully submitted,

Dated October 11, 2019 /s/ Scott A. Zebrak
Scott A. Zebrak (38729)
Matthew J. Oppenheim (*pro hac vice*)
Jeffrey M. Gould (*pro hac vice*)
Kerry Mustico (*pro hac vice*)
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Avenue, NW, 5th Floor
Washington, DC 20015
Tel: 202-480-2999
scott@oandzlaw.com
matt@oandzlaw.com
jeff@oandzlaw.com
kerry@oandzlaw.com

*Attorneys for Plaintiffs*