# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| SONY MUSIC ENTERTAINMENT, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>COX COMMUNICATIONS, INC. and COXCOM, LLC.<br><br>Defendants. | Case No. 1:18-cv-00950-LO-JFA |

### COX'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO EXCLUDE THE TESTIMONY OF PUTATIVE <u>EXPERT GEORGE P. McCABE, Ph.D.</u>

## **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ....................................................................................................................... 2

    A. Professor McCabe's blind reliance on the MarkMonitor spreadsheet was improper. ................................................................................................................... 2

    B. Professor McCabe failed to follow his own methodology when forming certain of his opinions. ............................................................................................. 6

    C. Professor McCabe should not be permitted to rebut Mr. Tregillis's damages calculations. ................................................................................................ 8

III. CONCLUSION .................................................................................................................. 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Daubert v. Merrell Dow Pharmaceutical*,
    509 U.S. 579 (1993) ..................................................................................................................7

*Gen. Elec. Co. v. Joiner*,
    522 U.S. 136 (1997) ...............................................................................................................5, 8

*Glass v. Anne Arundel Cty.*,
    38 F. Supp. 3d 705 (D. Md. 2014), *aff'd*, 716 F. App'x 179 (4th Cir. 2018) ............................7

*Sparks v. Gilley Trucking Co., Inc.*,
    992 F.2d 50 (4th Cir. 1993) ......................................................................................................7

*United States v. Lester*,
    254 F. Supp. 2d 602 (E.D. Va. 2003) ...................................................................................6, 8

**Other Authorities**

Fed. R. Evid. 403 ............................................................................................................................6

Fed. R. Evid. 702 ..................................................................................................................4, 5, 10

Fed. R. Evid. 1006 ..........................................................................................................................3

I. INTRODUCTION

Cox moves to exclude Professor McCabe from providing an affirmative opinion for two primary reasons. *First*, contrary to Plaintiffs' assertions, Professor McCabe's blind reliance on documents produced by MarkMonitor and Audible Magic purporting to identify the contents of files allegedly infringed by Cox's subscribers is simply unacceptable. Professor McCabe does not merely assume the accuracy of these documents for purposes of his analysis, as experts often do. Instead, Professor McCabe ***affirmatively opines*** that the contents of these documents are ***accurate***. In other words, not only does Professor McCabe's opinion rely on the accuracy of these documents, Plaintiffs have put him forward to establish as much. But Professor McCabe did not take any of the necessary steps to do so. Professor McCabe's methodology is thus fundamentally flawed and his opinions relating to whether the notices implicate Plaintiffs' works in suit must be excluded.

*Second*, Professor McCabe is an applied statistician but does not utilize appropriate methodology with respect to several of his observations regarding Cox's Ticket Action Data. He admitted numerous times at his deposition that he did not understand the data he reviewed but he nevertheless presents analyses based on it. He even admitted that when he had questions about data that initially went unanswered, he never pursued them further: ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ Moreover, in other instances, his analyses are indisputably misleading. These opinions, too, must be excluded because Professor McCabe failed to utilize the standard methodology of an applied statistician.

Cox also seeks to exclude Professor McCabe from opining on rebuttal that Mr. Tregillis's damages model is unreasonable, flawed, or misleading. Not only is this pure *ipse dixit* but Professor McCabe admits that he has no expertise to provide such an opinion. Professor McCabe's

rebuttal opinion is also misleading because he continually mischaracterizes Mr. Tregillis's analysis as one that measures total infringement as opposed to what Mr. Tregillis actually does, which is to determine Plaintiffs' alleged harm from the actionable infringement for which Plaintiffs seek relief in this case.

II. **ARGUMENT**

    A. **Professor McCabe's blind reliance on the MarkMonitor spreadsheet was improper.**

Professor McCabe's core "task" was to 

. Mot. at 4-5 (citing McCabe Rpt., ¶ 4). In order to properly opine that all of Plaintiffs' works in suit are implicated in notices, Professor McCabe would have needed to know the actual contents of the torrent payloads that are referenced in the notice.[1] This is a critical step because the actual contents of a torrent payload are not identified in each notice. Rather, and in virtually all cases, the notice identifies only a single track but the referenced torrent payload may contain 5, 10, or 100 *different tracks*, only some of which may be Plaintiffs' works in suit. This process is further complicated by the fact that sometimes the track identified in the notice is not even on the referenced torrent payload. *See* Buchanan Reply Decl., Ex. A (Tregillis Supp./Rebuttal Rpt., ¶ 36) (identifying examples). Moreover, sometimes files within a torrent payload labeled as one thing turn out to be something entirely different. *Id*.

To sift through this morass, Plaintiffs produced what Professor McCabe refers to as the

---

[1] A torrent payload could be comprised of a single song, a collection of songs, an album, a discography, or any combination thereof. Torrent payloads are first created by users of peer-to-peer networks.

2

██████████████████████████. Opp. at 3-4. Plaintiffs claim that ████████████
████████████████████████████████████████████████████████████████
█████████████. *Id.* Professor McCabe's reliance on this chart is improper, however, because it is an inadmissible summary that cannot be verified—MarkMonitor did not retain the data upon which it is based.[2] Plaintiffs and their agents claim—without any support—that this chart *is* the actual data—not merely a summary of it. Opp. at 6-7. But that is demonstrably false. Cox established in its preclusion motion that ████████████████████████████████
████████████████████████████████.[3]

Professor McCabe relies on another chart as well. In connection with his task of matching the works in suit to the notices, Professor McCabe opines that he has "█████████████
████████████████████████████████████████████████████████████████."
Buchanan Decl., Ex. A (McCabe Rpt., ¶ 26) (emphasis and alteration added). Professor McCabe did not review the hard drive to confirm this, however. He instead reviewed a document that

---

[2] Cox moved to preclude Plaintiffs from utilizing this document on the ground that it was spoliated. ECF 241. After a lengthy hearing, Judge Anderson ruled that Plaintiffs were not precluded from utilizing this document pursuant to Federal Rule of Civil Procedure 37(e), concluding that there was no duty to preserve the underlying data at the time it was destroyed. ECF 419; *see also* Buchanan Reply Decl., Ex. B (Sept. 27, 2019 Hr'g Tr. 27:4-9, 76:6-77:2). Judge Anderson did not, however, rule on the admissibility of this document on evidentiary issues and specifically preserved Cox's ability to move to preclude. *Id.* 27:6-8, 77:13-22; *see also* ECF 419 ("This order does not preclude defendants from moving to exclude the Markmonitor evidence on another basis other than discovery sanctions."). Moreover, there was no finding as to whether Plaintiffs' representations regarding the completeness of this document are accurate. In connection with its opposition to Plaintiffs' motion for summary judgment, Cox seeks to preclude the admissibility of this document pursuant to Federal Rule of Evidence 1006 as well. *See also* ECF 241 (noting this ground for preclusion). Cox will also do so through a motion *in limine*.
[3] *See also* Opp. at 7 (Plaintiffs admit that the Audible Magic Data is an "████████
███████████."). They also claim that █████████████████████████████████
████████████." *Id.* The merits of that claim aside (and Cox believes that claim to be baseless), it demonstrates that ████████████████████████████████████.

3

MarkMonitor created that purports to " ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." *Id.*

Based on his review of the Audible Magic Data and the Download Data, Professor McCabe opines that he has " ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* The problem with Professor McCabe's methodology, however, is that the Audible Magic Data is unverified and the Download Data is based on Audible Magic Data. Thus, he has not confirmed *anything* other than "the chart says what it says" and "the hard drive has what it has on it." The only way to actually confirm whether the notices implicate Plaintiffs' works in suit is to open up the files on the hard drive and determine whether they do indeed contain Plaintiffs' works in suit (*i.e.*, listen to them). But as Plaintiffs admit, *he never did this* (nor did Plaintiffs).[4]



Plaintiffs claim without any support that Cox's critiques go to the weight of Professor McCabe's opinion, not its admissibility, because there is no requirement for "experts to conduct detailed investigations on the veracity of the facts and data upon which they rely." Opp. at 6. Plaintiffs argue that disputes as to whether "one version of the facts and not the other" is accurate is not a basis to exclude an expert's opinion under Federal Rule of Evidence 702(b). *Id.* (citing Fed. R. Evid. 702 advisory committee's note to 2000 amendment). Plaintiffs add that "facts and

---

[4] Plaintiffs instead urge the Court to ignore Professor McCabe's omission because "if Cox had a genuine concern" regarding the contents of the hard drive, Cox could have listed to the over 54,000 files. Opp. at 8. But it is not Cox's burden to establish direct infringement in this case. Nor did it put forward an expert who purports to "confirm" this issue, as Plaintiffs have done with Professor McCabe.

data relied upon by experts are often in dispute, and the jury is tasked with resolving those disputes." *Id*. That simply misstates the fundamental and inherent flaws of Professor McCabe's methodologies.

Plaintiffs ignore that Professor McCabe is not merely relying on or assuming the veracity of the chart for purposes of his analysis, ▇▇▇▇▇ (*i.e.*, ▇▇▇▇▇).[5] Indeed, in support of Plaintiffs' motion for summary judgment, Professor McCabe testifies that ▇▇▇▇▇." ECF 325-2, ¶ 7. And Plaintiffs rely on this assertion to support their claim for direct infringement. *See* ECF 313, ¶ 16. Thus, contrary to Plaintiffs' conclusory arguments in opposition to Cox's motion to exclude Professor McCabe's proposed testimony, it is not that Cox merely disagrees with Plaintiffs' "version of the facts;" Cox disagrees that Professor McCabe can form his opinion *at all* because he simply did not do what was required to do so: he never actually reviewed the underlying data about which he opines (*i.e.*, the hard drive). A review of the underlying MarkMonitor and Audible Magic data may have also sufficed, but that is hypothetical, since it was not retained. *See supra* n.2. His methodology is thus fundamentally flawed. This analysis in which he claims to have confirmed the contents of the torrent files and ties those contents to the works in suit should be excluded. *See* Fed. R. Evid. 702(b); *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).[6]

---

[5] Buchanan Decl., Ex. A (McCabe Rpt., ¶ 26); *see also id.*, ¶ 16 (Professor McCabe's analysis "▇▇▇▇▇"). He relatedly opines that, based on his analysis, ▇▇▇▇▇ *Id.*, ¶ 52.

[6] Professor McCabe's testimony should be excluded for the independent reasons that it unfairly prejudices Cox. Professor McCabe has a concrete opinion about whether Cox's subscribers

### B. Professor McCabe failed to follow his own methodology when forming certain of his opinions.

Professor McCabe admitted during his deposition that he did not understand the data he reviewed in forming several of his observations, as Cox highlights in its motion. Mot. at 15-17. For example, when asked about the meaning of various terms in Cox's Ticket Action Data, a core document for Professor McCabe's analyses, he responded:



Buchanan Decl., Ex. D (McCabe Tr. 180:6-182:6); *see also id.* 180:6-183:8. Professor McCabe also admitted that with respect to other data he reviewed " ." Buchanan Reply Decl., Ex. C (McCabe Tr. 189:3-190:14); *see also id.* 187:13-192:14.

While Plaintiffs claim critiques regarding Professor McCabe's lack of understanding of the data he reviewed goes to the weight and not the admissibly of his analyses, *see* Opp. at 10, they are wrong. This is because, as Professor McCabe acknowledged during his deposition, an applied statistician's " ." Buchanan Reply Decl., Ex. C (McCabe Dep. Tr. 191:6-193:6). The role of an applied statistician like Professor McCabe is to get and review the data in order to summarize it, learn from it, explain

---

infringed Plaintiffs' works in suit. This goes to the core of Plaintiffs' case. But he plainly did not investigate the data properly to determine this. Allowing Professor McCabe as an expert to opine on this would unduly prejudice Cox. Fed. R. Evid. 403; *see also United States v. Lester*, 254 F. Supp. 2d 602, 607 (E.D. Va. 2003).

6

it, and ultimately give a voice to it.[7] In fact, Professor McCabe testified that as part of his standard methodology, he "████████████████████████████████████████████████████████████████████████████████████." Id. 190:11-191:3. But he admitted that when he asked Plaintiffs' counsel what the above-referenced variables meant, he did not get an answer. Id.

Thus, in performing these analyses, including as summarized in his Appendices 5 and 6, Professor McCabe did not utilize the standard methodology of an applied statistician. Not only does his failure to fully understand the data about which he purportedly opines render his proposed testimony unreliable as a matter of law, it is also inexcusable in the context of this case. *Daubert v. Merrell Dow Pharmaceutical*, 509 U.S. 579, 595 (1993).[8] The record contains information relevant to certain of Professor McCabe's unanswered questions. For example, Cox employees Brent Beck and Matthew Carothers were examined extensively regarding the very data Professor McCabe reviewed but he does not rely on any of this testimony in his reports. Instead, he claims his questions regarding this data went unanswered by his actual clients Plaintiffs.

---

[7] *See also* Buchanan Reply Decl., Ex. C (McCabe Dep. Tr. 83:8-13); *see id.* 148:17-19 ████████████████ "); *id.* 164:10-11 ("████████████████████████████████████████"); *id.* 169:11-14 ████████████████████████ "); *Id.* 176:3-4 (explaining his observations as a "████████████████████████████").

[8] The "focus ... must be solely on principles and methodology ... ." *Id.* Plaintiffs cite *Glass v. Anne Arundel Cty.*, 38 F. Supp. 3d 705, 716 (D. Md. 2014), *aff'd*, 716 F. App'x 179 (4th Cir. 2018) for the proposition that these critiques go to the weight not admissibility of Professor McCabe's opinion. Opp. at 10. Yet Plaintiffs ignore that in that case, the court actually excluded some of the expert's proposed testimony because they were based on faulty assumptions. Because the record did not support opinions based on that assumption, the court held that the proposed testimony would not help the trier of fact. *Id.*; *see also id.* ("[A] court may refuse to allow a generally qualified expert to testify if his factual assumptions are not supported by the evidence.") (quoting *Sparks v. Gilley Trucking Co., Inc.*, 992 F.2d 50, 54 (4th Cir. 1993)).

Cox further seeks to exclude Professor McCabe's Appendix 8 and any related opinions because it also is not based on a standard methodology. *See* Mot. at 17-18. As discussed in Cox's motion, Professor McCabe created this appendix to demonstrate that ███████████████████████████████████████████████████████████████ ███. *See* Mot. at 17-18. At his deposition, Professor McCabe described a standard methodology with respect to presenting representative information as "███████████████████████ ███████████████████████████████████████████████████." Buchanan Reply Decl., Ex. C (McCabe Dep. Tr. 237:10-15). Appendix 8 does not include any of this standard information, however. It is also misleading.

Plaintiffs fail to meaningfully address these arguments in their opposition. They instead urge the Court to permit Professor McCabe to misleadingly opine about data that he does not understand, or in ways that are demonstrably misrepresentative, because any perceived errors can be addressed through either cross-examination and rebuttal experts. Opp. at 6, 10. But that is not how it works. Expert testimony "carries a certain aura that might lead a jury to attach more significance to the testimony than is reasonably warranted." *United States v. Lester*, 254 F. Supp. 2d 602, 607 (E.D. Va. 2003). As Cox argued in its motion, where the methodology is demonstrably unreliable or not even applied, as Professor McCabe's is here, expert testimony should be excluded because there is "too great an analytical gap between the data and opinion offered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). These analyses of Professor McCabe's and any opinions related thereto should be excluded.

      **C.**     **Professor McCabe should not be permitted to rebut Mr. Tregillis's damages calculations.**

Unlike Professor McCabe, who opines regarding notices of infringement sent outside of the Claim Period and from content owners other than Plaintiffs, Mr. Tregillis actually estimates

8

Plaintiffs' actual damages from the actionable infringement for which Plaintiffs seek relief in this case. He does so by examining only those notices sent during the Claim Period and for Plaintiffs' works in suit. Thus, he necessarily excludes from his calculations some of the notices that Professor McCabe (and other experts, including Cox's expert Dr. Weber) analyze, namely those outside of the Claim Period and not for Plaintiffs' works in suit.

Professor McCabe admits that he did not perform a "damages" calculation and has no expertise in ever building a model to estimate damages in a case such as this. Buchanan Reply Decl., Ex. C (McCabe Dep. Tr. 259:1-8, 282:12-17). Yet he nevertheless opines Mr. Tregillis's damages model was unreasonable, flawed, and misleading. Buchanan Decl., Ex. B (McCabe Rebuttal Rpt., ¶ 23); see also id. ("████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████."); id. ¶¶ 29, 31, 32; Buchanan Decl., Ex. C (McCabe Reply Rpt., ¶ 30, 33).

Plaintiffs focus their opposition on Professor McCabe's proposed rebuttal of Mr. Tregillis's effort to match the notices to works in suit. See Opp. at 12-13. But Cox does not seek to exclude Professor McCabe from rebutting Mr. Tregillis's effort to match the works in suit to notices, to the extent Mr. Tregillis provides that affirmative testimony. Cox instead seeks to exclude Professor McCabe from opining regarding Mr. Tregillis's damages model because Professor McCabe has no expertise in creating one. Moreover, Professor McCabe plainly misunderstood what Mr. Tregillis did, as he repeatedly mischaracterized Mr. Tregillis's damages model as a measure of infringement per subscriber, Buchanan Decl., Ex. B (McCabe Rebuttal Rpt., ¶¶ 24, 29-32),[9] as

---

[9] See also Buchanan Decl., Ex. C (McCabe Reply Rpt., ¶¶ 29-37). Professor McCabe further admitted that his critiques of Mr. Tregillis's analysis is limited to matching works in suit to notices. Buchanan Reply Decl., Ex. C (McCabe Dep. 257:8-18); see also id. 271:7-274:17.

9

opposed to a measure of actual damages based on actionable infringement. Allowing such rebuttal testimony would be inappropriate under Federal Rule of Evidence 702, as it would mislead the jury and prejudice Cox.

### III.    CONCLUSION

Based on the foregoing, the Court should exclude Professor McCabe from opining that each of Plaintiffs' works is implicated in a notice to a Cox subscriber after that subscriber received at least two prior notices and, separately, his opinions relating to the Cox's Ticket Action Data, which he admittedly does not understand. The Court should further exclude Professor McCabe from opining on rebuttal regarding Mr. Tregillis's damages model.

Dated: October 11, 2019

Respectfully submitted,

*/s/ Thomas M. Buchanan*
Thomas M. Buchanan (VSB No. 21530)
WINSTON & STRAWN LLP
1700 K Street, NW
Washington, DC 20006-3817
Tel: (202) 282-5787
Fax: (202) 282-5100
Email: tbuchana@winston.com

*Attorney for Cox Communications, Inc. and CoxCom, LLC*

*Of Counsel for Defendants*

Michael S. Elkin (*pro hac vice*)
Thomas Patrick Lane (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Telephone:  (212) 294-6700
Facsimile:   (212) 294-4700
Email:  melkin@winston.com
Email:  tlane@winston.com

Jennifer A. Golinveaux (*pro hac vice*)
Thomas J. Kearney (*pro hac vice*)
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA  94111-5840
Telephone:  (415) 591-1000
Facsimile:   (415) 591-1400
Email:  jgolinveaux@winston.com
Email: tkearney@winston.com

Michael L. Brody (*pro hac vice*)
WINSTON & STRAWN LLP
35 W. Wacker Dr.
Chicago, IL 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700
Email: mbrody@winston.com

Diana Hughes Leiden (*pro hac vice*)
WINSTON & STRAWN LLP
333 S. Grand Avenue, Suite 3800
Los Angeles, CA 90071
Telephone:  (213) 615-1700
Facsimile:   (213) 615-1750
Email:  dhleiden@winston.com

## CERTIFICATE OF SERVICE

I certify that on October 11, 2019, a copy of the foregoing was filed electronically with the Clerk of Court using the ECF system, which will send notifications to ECF participants.

*/s/ Thomas M. Buchanan*
Thomas M. Buchanan (VSB No. 21530)
1700 K Street, NW
Washington, DC 20006-3817
Tel: (202) 282-5787
Fax: (202) 282-5100
Email: tbuchana@winston.com

*Attorney for Cox Communications, Inc. and CoxCom, LLC*
