# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| SONY MUSIC ENTERTAINMENT, *et al.*,<br><br>        Plaintiffs,<br><br>  v.<br><br>COX COMMUNICATIONS, INC. and<br>COXCOM, LLC.<br><br>        Defendants. | Case No. 1:18-cv-00950-LO-JFA |

**COX'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO EXCLUDE THE TESTIMONY OF PUTATIVE EXPERT WILLIAM H. LEHR, Ph.D.**

███████████████

# <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.    ARGUMENT ...................................................................................................... 3

    A.    Dr. Lehr's calculations are not relevant to vicarious liability.................................. 3

        1.    Dr. Lehr's calculations do not demonstrate a "causal relationship" between the infringing activity and Cox's purported financial benefit. ................................................................................ 3

        2.    Dr. Lehr's "lifetime value" of a Cox subscriber multiplied by the number of subscribers who received one, three, and five notices is irrelevant and prejudicial to Cox................................... 7

        3.    Dr. Lehr's analysis regarding Cox's data rates is not evidence of a "draw" and is otherwise inadmissible......................................... 8

        4.    Dr. Lehr's opinions relating to costs saved by Cox are not relevant to vicarious liability and otherwise inadmissible..................................... 11

    B.    Dr. Lehr's "economic incentive" calculations are not relevant to statutory damages, either. ................................................................................ 13

    C.    Plaintiffs fail to explain how Dr. Lehr's opinions relating to the economic effects of piracy is proper expert testimony.......................................... 15

III.    CONCLUSION.................................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arista Records, Inc. v. Flea World, Inc.*,
  No. CIV.A 03-2670(JBS), 2006 WL 842883 (D.N.J. Mar. 31, 2006)..................................6, 7

*Arista Records, LLC v. Usenet.com, Inc.*,
  633 F. Supp. 2d 124 (S.D.N.Y. 2009)................................................................................9, 10

*Basic Books, Inc. v. Kinko's Graphics Corp.*,
  758 F. Supp. 1522 (S.D.N.Y. 2018)......................................................................................15

*BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*,
  149 F. Supp. 3d 634 (E.D. Va. 2015), *aff'd in part, rev'd in part on other
  grounds*, 881 F. 3d 292 (4th Cir. 2018) .................................................................3, 4, 5, 7, 10

*Columbia Pictures Industries, Inc. v. Fung*,
  710 F.3d 1020 (9th Cir. 2013) .................................................................................................4

*Ellison v. Robertson*,
  357 F. 3d 1072 (9th Cir. 2004) ................................................................................................4

*James River Mgmt. Co. v. Kehoe*,
  No. 3:09-CV-00387, 2010 WL 431477 (E.D. Va. Feb. 5, 2010) .............................................8

*John Wiley & Sons, Inc. v. Book Dog Books, LLC*,
  327 F. Supp. 3d 606 (S.D.N.Y. 2018)....................................................................................15

*Perfect 10, Inc. v. Giganews, Inc.*,
  No. CV 11-07098-AB SHX, 2014 WL 8628031 (C.D. Cal. Nov. 14, 2014),
  *aff'd*, 847 F.3d 657 (9th Cir. 2017)......................................................................................4, 7

*Psihoyos v. John Wiley & Sons, Inc.*,
  No. 11 CIV. 1416 JPO, 2102 WL 5506121 (S.D.N.Y. Nov. 7, 2012), *aff'd*,
  748 F.3d 120 (2d Cir. 2014)...................................................................................................15

*Scott v. Sears, Roebuck & Co.*,
  789 F.2d 1052 (4th Cir. 1986) ...............................................................................................18

*Sony BMG Music Entm't v. Tenebaum*,
  660 F.3d 487 (1st Cir. 2011)..................................................................................................15

*United States v. Allen*,
  403 F. App'x 800 (4th Cir. 2010) ..........................................................................................12

*United States v. Dosey*,
 45 F.3d 809 (4th Cir. 1995) ................................................................................3

*United States v. Lester*,
 254 F. Supp. 2d 602 (E.D. Va. 2003) ................................................................12

*United States v. Portsmouth Paving Corp.*,
 694 F.2d 312 (4th Cir. 1982) ............................................................................18

## Other Authorities

Fed. R. Evid. 403 ................................................................................................3

## I.    INTRODUCTION

Cox does not seek to exclude the entirety of Dr. Lehr's proposed opinions regarding Cox's total profits from high-speed Internet during the Claim Period (2013 and 2014).  What it does seek to exclude are Dr. Lehr's broad and untethered observations regarding the general effects of piracy over the decades and his equally broad and untethered calculations in which he multiplies his bizarre "lifetime value" of a Cox subscriber (███████) by the total number of subscribers at issue in this case who received at least one, three, and five notices (████████████████████, respectively), how much Cox "collected" from those subscribers over several years (including years *outside* of the Claim Period), how much Cox's customers were billed for data based on the number of notices they received, and any opinions related to these calculations.[1]

Plaintiffs concede that their calculations are not relevant to their claim for contributory infringement.  Instead, they argue that these calculations are relevant both to their claim for vicarious liability and the jury's determination of statutory damages.  With respect to vicarious liability, Plaintiffs have failed to present any evidence that the ability to infringe on Cox's network served as a draw to these subscribers, as opposed to merely an added benefit.  Thus, Dr. Lehr's calculations which purport to measure Cox's "economic incentive" to keep these subscribers are not evidence of the "financial benefit" that Cox received from its subscribers' alleged infringement and are therefore not relevant to vicarious liability.  Moreover, assuming Cox did have an "economic incentive" to tolerate infringement on its network, which it did not, Plaintiffs cannot explain why Dr. Lehr ropes into his calculations all of the nearly 60,000 subscribers who received notices in this case, even though nearly half received only *one or two notices*, which is fewer than the number triggering liability under Plaintiffs' theory of the case.  These same calculations are

---

[1] Cox also seeks to exclude the Dr. Lehr's analogous calculations with respect to Cox's business subscribers.

also irrelevant to statutory damages, and would additionally be misleading and confusing to the jury and prejudicial to Cox. If Dr. Lehr were able to opine that the *total value* of the nearly 60,000 subscribers at issue in this case was equal to the profits Cox earned *because* of the alleged infringement, which is what the jury is to consider when determining statutory damages, the jury would be left with the impression that Cox should have done something with respect to each and every one of these subscribers, such as terminate them, when there is no claim in this case to support such a notion.

Cox also seeks to exclude Dr. Lehr's opinion and related analysis that Cox benefitted more from its subscribers who infringed more. Dr. Lehr compared how much Cox billed its subscribers who received only one or two infringement notices, versus those who received 20 or more. Plaintiffs fail to explain how this analysis either demonstrates the requisite draw to establish vicarious liability (it does not) or is evidence of Cox's purported financial benefit from the infringement alleged in this case (it is not).

Cox further seeks to exclude Dr. Lehr from opining as to the economic effects of piracy both to the music industry generally and to Plaintiffs specifically. The *general* effects from piracy—unrelated to Plaintiffs' harm and Cox's alleged acts—are plainly irrelevant. With respect to any specific effects to Plaintiffs allegedly caused by Cox, Plaintiffs—*which collectively represent approximately 80% of the music industry*—have listed a dozen senior executives on their witness list each with personal knowledge of the effects of piracy based on many years of experience. These fact witnesses can readily attempt to explain to the jury how they have been harmed by Cox's alleged actions. Plaintiffs have not otherwise explained why expert testimony on this issue is necessary.

Dr. Lehr has a narrow role in this case—providing the jury with his calculations of Cox's total profits from high-speed Internet during the Claim Period.  The balance of his proposed testimony is irrelevant, misleading, and prejudicial.  It should be excluded.

## II.    ARGUMENT

### A.    Dr. Lehr's calculations are not relevant to vicarious liability.

#### 1.    Dr. Lehr's calculations do not demonstrate a "causal relationship" between the infringing activity and Cox's purported financial benefit.

Plaintiffs claim that Dr. Lehr's calculations, in which he (1) multiplies the number of subscribers who received at least one, three, and five infringement notices by his "lifetime value" of a Cox subscriber and, separately, (2) his totals of how much Cox collected between February 2013 and 2016 from these same subscribers, are relevant to their claim for vicarious liability.  Opp. at 4-6.  However, Plaintiffs have failed to demonstrate that the ability to infringe on Cox's network constituted the requisite draw to these subscribers.  Thus, Dr. Lehr's calculations regarding these subscribers' "value" or how much Cox "collected" from them over time do not support the financial benefit prong of Plaintiffs' vicarious liability claim.  The calculations should therefore be excluded.[2]

Plaintiffs admit in their opposition that "[v]icarious liability requires a 'causal relationship between the infringing activity and any financial benefit a defendant reaps … .'"  Opp. at 5 (citing *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 149 F. Supp. 3d 634, 675 (E.D. Va. 2015),

---

[2] Plaintiffs concede that Dr. Lehr's analyses are not relevant to their contributory liability claim. *See* Opp. at 5, n.1.  But they claim that his analyses are "relevant as crucial case background" because "[t]hat Cox had an economic incentive to tolerate infringement informs the jury's evaluation of the evidence and credibility of Cox's witnesses."  *Id.*  Plaintiffs cite nothing in support of this argument.  The proposed testimony is improper; the fact that it may inform the jury's determination of a question solely within their province (*i.e.*, credibility) demonstrates why it would be prejudicial as well.  *See United States v. Dosey*, 45 F.3d 809, 814-15 (4th Cir. 1995) (witness's credibility is the province of the jury); *see also* Fed. R. Evid. 403.

*aff'd in part, rev'd in part on other grounds*, 881 F. 3d 292 (4th Cir. 2018)).[3]  Plaintiffs further

admit that Cox charges flat monthly fees for its services.  *Id.* at 9.  Thus, as the Court held in *BMG*,

"the relevant inquiry … [then becomes] whether the infringing activity constitutes a *draw* for

subscribers, *not just an added benefit*."  *BMG*, 149 F. Supp. 3d at 676 (quoting *Columbia Pictures*

*Industries, Inc. v. Fung*, 710 F.3d 1020, 1044 (9th Cir. 2013)) (emphases added).

While Plaintiffs side-step in their opposition to the instant motion the fact that they have

failed to demonstrate that the ability to infringe on Cox's network served as a draw to Cox's

subscribers, they attempt to explain (in opposition to Cox's motion for summary judgment) that a

"draw" may not always be required because the Ninth Circuit once used the word "ordinarily"

when stating that "flat periodic payments for service … *ordinarily* would not constitute a financial

benefit directly attributable to the infringing activity … ."  ECF 392 at 32 (citing *Ellison v.*

*Robertson*, 357 F. 3d 1072, 1079 (9th Cir. 2004)) (emphasis added).[4]  But Plaintiffs fail to address

the balance of the sentence they quote from *Ellison*, which states that "flat periodic payments for

service" could constitute evidence of a financial benefit where "the value of the services lies in

providing access to infringing material."  *See id.*  And if that is the approach the plaintiff seeks in

demonstrating the requisite causal connection between the infringing activity and the financial

---

[3] Plaintiffs also admit that "the requisite causal connection must be 'the infringing activities *at issue in th[e] case* and a direct financial benefit to the defendant.'"  Opp. at 5 (citing *BMG*, 149 F. Supp. 3d at 676 (quoting *Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-07098-AB SHX, 2014 WL 8628031, at *4 (C.D. Cal. Nov. 14, 2014), *aff'd*, 847 F.3d 657 (9th Cir. 2017))) (emphases and alterations in original).

[4] Plaintiffs' citation to the Court's opinion in *BMG* where the Court quoted *Ellison* is misleading.  It is the Ninth Circuit that added the word "ordinarily" to the Senate Report quoted in that opinion.  *See Ellison*, 357 F.3d at 1079 ("ordinarily" is in brackets); *see also* S. Rep. 105-190 at 44 (the word "ordinarily" does not appear in the Senate Report).  When the Court cited *Ellison*, it noted that it had removed the alteration (*i.e.*, the brackets around the word "ordinarily.").  *See BMG*, 149 F. Supp. 3d at 676.  In opposition to Cox's motion for summary judgment, Plaintiffs also argue that "[c]ourts (including this one) have cited *Ellison*" for this proposition.  Plaintiffs do not cite any other opinions, however.  *See* ECF 392 at 32.

benefit, *as Plaintiffs do here*, then the plaintiff must show that the "infringing activity constitutes a *draw* for subscribers, not just an added benefit." *Id.* (emphasis added). In other words, the need to demonstrate the draw arises precisely in the instant situation where a defendant, like Cox, charges flat monthly payments for the service at issue.

It is thus inexplicable why Plaintiffs believe that Dr. Lehr's rote multiplication of the number of subscribers who received different quantities of notices by his "lifetime value" of a Cox subscriber, and his separate calculation of how much Cox collected from these specific subscribers over several years, supports the financial benefit prong of their vicarious liability claim when they have failed to demonstrate the requisite draw. In *BMG*, the Court held that a survey conducted by Dr. Stephen Nowlis was just enough to allow BMG's vicarious liability claim to go to the jury.[5] And because BMG had put forward such evidence, certain of Dr. Lehr's financial calculations had some relevance to the question of vicarious liability in *BMG*.[6] Here, however, Plaintiffs did not conduct a survey or otherwise demonstrate that the ability to infringe served as a "draw" to the

---

[5] In *BMG*, the Court held the following:

> BMG offers evidence of the draw of infringing activity in the form of a survey conducted by its expert, Stephen Nowlis. The study of Cox internet subscribers concluded that 16% of subscribers "download or upload free digital music through sites such as ThePirateBay, KickAssTorrents, and Torrentz," and of that 16%, 70% characterized the ability to do so as a reason they subscribe to Cox. *While this evidence is hardly overwhelming, it is also not clearly insufficient to satisfy the legal standard*. At this stage, viewing the evidence in the light most favorable to BMG, the Court finds *a close question remains* and reasonable minds could differ. Accordingly, summary judgment is inappropriate.

*BMG*, 149 F. Supp. 3d at 676 (internal citations omitted) (emphases added).

[6] Because there was no data in *BMG* about how many notices each subscriber received over time, Dr. Lehr calculated his lifetime value of a Cox subscriber (the same $5,232 at issue here) by the approximate number of subscribers at issue (~70,000).

Cox customers at issue in this case, as opposed to merely "an added benefit." Thus, Dr. Lehr's financial calculations are not relevant to vicarious liability and should be excluded.

Plaintiffs additionally claim that "vicarious liability does not require the jury [to] find the defendant received a particular amount of a direct financial benefit; it need only conclude there was one." Opp. at 6. In support of this proposition, Plaintiffs cite *Arista Records, Inc. v. Flea World, Inc.*, No. CIV.A 03-2670(JBS), 2006 WL 842883 (D.N.J. Mar. 31, 2006). *Id.* at 6. As demonstrated below, not only do Plaintiffs misrepresent the holding of that case, but they also conflate the requirement that the alleged infringement constitute a "draw" with the caveat that it need not be a "significant" draw.

As a preliminary matter, in *Arista Records, Inc.*, the plaintiffs sought to admit the expert testimony of Dr. Nowlis (the same *BMG* expert) who determined that a certain percentage of consumers were drawn to the defendant's flea market *because* of the availability of pirated CDs and mixtapes. While Plaintiffs here claim the court admitted Dr. Nowlis's opinion despite his failure to "apportion" the defendants' financial benefit between infringing and non-infringing uses, *see* Opp. at 6, that is untrue.[7] In *Arista Records, Inc.*, Dr. Nowlis performed a survey in order to determine the draw of infringing activity. Dr. Nowlis did not opine on the quantum of financial benefit that specific draw conferred to the defendants,[8] which Dr. Lehr attempts to do here. Moreover, contrary to Plaintiffs' assertion, the defendants in *Arista Records, Inc.* did not argue that Dr. Nowlis's testimony should be excluded because he failed to apportion financial benefit from infringing and non-infringing uses. Rather, as the court and the underlying briefing make

---

[7] Specifically, Plaintiffs claim in their opposition that an expert's testimony may be admissible on the issue of "direct financial benefit" where the expert does "not apportion financial benefit between infringing and non-infringing sources." *Id.*

[8] *See* Buchanan Reply Decl., Ex. A (Expert Report of Dr. Stephen M. Nowlis, *Arista Records, Inc. v. Flea World, Inc.*, No. CIV.A 03-2670(JBS) (D.N.J.), ECF 114-3 at 7-31).

clear, the defendants sought to exclude the testimony due to perceived deficiencies with respect to Dr. Nowlis's methodologies, including how he conducted his survey.  *See Arista Records, Inc.*, No. CIV.A 03-2670(JBS), 2006 WL 842883, at *13 n.14 (not citing any financial calculations as a basis for exclusion).[9]

Furthermore, and as noted above, in citing to this case Plaintiffs appear to conflate the requirement for demonstrating a "draw" with the caveat that the draw "need not be significant … ."  *BMG*, 149 F. Supp. 3d at 676 (citing *Giganews, Inc.*, No. CV 11-07098-AB SHX, 2014 WL 8628031, at *4).  Here, Cox is not simply arguing that Dr. Lehr should have apportioned the draw to Cox's services to infringe from a draw to its services to do other legitimate things, like stream Netflix or Spotify, upload photos and videos to Facebook, play high resolution video games, check email, or FaceTime family and friends.  Cox instead argues that there is *no evidence* of a draw one way or the other, thus Dr. Lehr's analyses regarding Cox's purported economic incentive to tolerate infringement are not relevant to financial benefit prong of vicarious liability and should be excluded.

### 2. Dr. Lehr's "lifetime value" of a Cox subscriber multiplied by the number of subscribers who received one, three, and five notices is irrelevant and prejudicial to Cox.

Cox also moves to exclude Dr. Lehr's calculations because they are not even remotely tied to the infringement alleged in this case, but instead sweep in the entire value of a subscriber for a time period much broader than the 22 months at issue. Mot. at 11-17.  In opposition, Plaintiffs agree with this characterization but claim that the calculations are nevertheless relevant because "the entire lifetime value of the subscriber, and not just any portion 'caused' by infringement, is

---

[9] *See also* Buchanan Reply Decl., Ex. B (Memorandum in Support of Motion to Exclude Plaintiffs' Expert, Dr. Stephen M. Nowlis, *Arista Records, Inc. v. Flea World, Inc.*, No. CIV.A 03-2670(JBS) (D.N.J.), ECF 114-1).

relevant to Cox's incentive to tolerate infringement because, if Cox terminates a subscriber, it loses all of that subscriber's revenue, not just any portion 'resulting' from infringement."  Opp. at 6.

While it is true that if Cox permanently terminates a subscriber, "it loses all of that subscriber's revenue" going forward, Plaintiffs do not explain the relevance of why Dr. Lehr has multiplied his lifetime value of a Cox subscriber by the nearly 60,000 specific subscribers at issue in this case (or why he counts *all* of what Cox collected from these same subscribers).  Contrary to Plaintiffs' offered justification, such a calculation does not show what Cox would have lost had it terminated these subscribers; instead, it demonstrates what Cox would have lost had it never had these subscribers in the first place because it counts their *entire value*.  But there is no claim in this case to support such a notion, particularly where nearly half of the subscribers Dr. Lehr ropes into his calculation received only one or two notices, which is fewer than the number triggering liability under Plaintiffs' theory of the case.  Such an opinion is thus irrelevant, misleading, and prejudicial. The Court should exclude these calculations.[10]

### 3.    Dr. Lehr's analysis regarding Cox's data rates is not evidence of a "draw" and is otherwise inadmissible.

Plaintiffs concede that Dr. Lehr's analysis, in which he calculates that subscribers who received only one or two infringement notices paid on average ███ less a month for data than those subscribers who received 20 or more infringement notices, "does not show why any particular subscriber *chose* Cox."  Opp. at 10 (emphasis added).  Rather, Plaintiffs urge the Court

---

[10] Dr. Lehr's calculations relating to subscribers who received one notice should be excluded for the additional reason that it is inconsistent with Plaintiffs' own claims and therefore does not "fit," as it must, to be admissible.  *See, e.g.*, *James River Mgmt. Co. v. Kehoe*, No. 3:09-CV-00387, 2010 WL 431477, at *4 (E.D. Va. Feb. 5, 2010).  Plaintiffs seek to hold Cox liable for its subscribers' infringement after those subscribers were the subject of at least two prior notice (*i.e.*, upon receipt of the third notice).  Accordingly, Plaintiffs do not argue in support of their motion for summary judgment how much Cox purportedly benefitted from the subscribers who received at least one notice.  *See* ECF 325 at 2, 30-31.

to allow Dr. Lehr to testify regarding this analysis because it purportedly "supports the *inference* these subscribers chose service plans with higher data allowances to infringe, thus establishing a direct relationship between Cox subscribers' infringement and Cox' [sic] financial benefit." *Id.* (emphasis added).  Plaintiffs' claimed inference is unfounded and, in any event, irrelevant to the financial benefit prong of vicarious liability for at least the following reasons.

*First*, the only inference that can be drawn from Dr. Lehr's analysis is that subscribers who paid more for data on a monthly basis received more infringement notices.  Plaintiffs concede, however, that inference has no bearing on *why* those subscribers *chose* Cox in the first place (or even why they paid more for data).  This analysis is therefore irrelevant.

*Second*, Cox responded to notices of infringement in the same way regardless of the size of its subscriber's data plan, and Plaintiffs do not claim otherwise.  Thus, there is no basis to infer from Dr. Lehr's analysis that Cox subscribers *chose* higher data plans to somehow benefit from more lenient treatment by Cox and therefore infringe more.  Any "financial benefit" Cox earned from the marginal ▮▮▮ more a month for data it collected from subscribers whose accounts were the subject of 20 or more infringement notices is therefore not relevant to vicarious liability.

*Third*, Plaintiffs' reliance on *Arista Records, LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 156 (S.D.N.Y. 2009) is misplaced.  It demonstrates another of Plaintiffs' misconceptions regarding the factual record.  In *Usenet.com, Inc.*, the court observed that the defendant, a file distribution service, earned more money from each of its subscriber's downloads, "the majority of which has been shown to be infringing."  *Id.*  Here, however, there is no evidence (and no reason to infer) that the vast majority of Cox's subscribers' activities involved infringing Plaintiffs' works.  Moreover, not only did Cox have a flat, monthly rate, as Plaintiffs admit, Opp. at 9, but when its subscribers exceed their monthly data allowances, ▮▮▮▮▮▮▮▮▮▮.  Buchanan

Reply Decl., Ex. C (Negretti Dep. Tr. 182:15-183:15).  In other words, Cox subscribers did ***not***

***need*** to elect higher tiers of service to download in excess of their data caps.  For these reasons,

*Usenet.com, Inc.* is entirely inapposite and the factual record undermines Plaintiffs' claimed

relevance of Dr. Lehr's analysis.

    *Fourth*, Plaintiffs fail to explain why this stated inference (*i.e.*, that subscribers who receive

one or two notices pay on average ██ less a month for data than those who received 20 or more)

is relevant to this case.  Plaintiffs are not seeking to hold Cox liable for its subscribers'

infringement of the works in suit after those subscribers received 20 or more infringement notices.

Rather, Plaintiffs seek to hold Cox liable for the alleged infringement by its subscribers after those

subscribers received ████████████████  Notably, Dr. Lehr does

not draw any conclusions regarding whether there is a "statistically significant difference" between

the subscribers who received only one or two infringement notices versus those who received three

notices (or even five notices).  In fact, his analysis shows that the average difference between what

those sets of subscribers pay is around ██.  Buchanan Decl., Ex. B (Lehr Rebuttal Rpt., Exs. 3-

4).  Thus, even assuming the inference that could be drawn from this analysis demonstrates the

requisite "draw," (which it does not, as Plaintiffs concede), this hypothetical inference would

pertain only to those subscribers who received 20 or more notices.  But that is a small subset of

the subscribers at issue and not directly relevant to Plaintiffs' theory of liability, nor is it something

by which Dr. Lehr has limited his other financial calculations.[11]  *See BMG*, 149 F. Supp. 3d at 676

("[T]he requisite causal connection must be between the infringing activities *at issue in th[e] case*

---

[11] Dr. Lehr instead calculated Cox's purported financial benefit from subscribers who received at least one, three, and five notices.

and a direct financial benefit to the defendant.") (emphasis and alteration in original) (internal quotation marks omitted).

For these reasons, Plaintiffs arguments in response to Cox's motion to exclude Dr. Lehr's analysis based on how much Cox's customers were charged for data should be rejected.  The analysis is not relevant to vicarious liability and should be excluded.

### 4. Dr. Lehr's opinions relating to costs saved by Cox are not relevant to vicarious liability and otherwise inadmissible.

Plaintiffs claim in opposition that Dr. Lehr's highly-generalized observation that there were steps that Cox could have taken in response to receiving infringement notices (which had it taken would have cost some unspecified amount of money) is evidence of "a direct financial benefit from tolerating infringement." Opp. at 8.  In so urging, Plaintiffs again ignore that a direct financial benefit is only evidenced where the infringing act alleged constitutes a *draw* to the defendant's service.  *See supra* at 3-8.  Because Plaintiffs cannot demonstrate this requisite draw, Dr. Lehr's opinion that Cox saved some amount of money because it did not do more in response to receiving infringement notices is not a "financial benefit" that is relevant to vicarious liability and should therefore be excluded.

Moreover, aside from the irrelevance of this opinion, Plaintiffs fail to explain how this generalized factual observation is the proper subject of expert testimony.  As Plaintiffs acknowledge in their opposition, the entirety of Dr. Lehr's opinion consists of several examples of additional or different steps Cox *could* have taken in response to receiving infringement notices, though without any quantification of how much those steps would have cost, coupled with the conclusion that Cox "benefitted from infringement by avoiding incurring incremental costs that Cox would have otherwise incurred to address the infringement."  Opp. at 3 (citing Buchanan Decl., Ex. A (Lehr Rpt., ¶ 13)).  To the extent Plaintiffs want to elicit testimony with respect to

11

steps Cox could have taken in response to receiving infringement notices and whether they would have cost money, they can attempt to do so through Cox's fact witnesses. Cox has identified several witnesses who have first-hand knowledge of these topics and Plaintiffs have already deposed these very witnesses on the same.[12]

Moreover, in response to Cox's argument that Dr. Lehr failed to quantify *any* of these potential costs avoided by Cox, despite the fact that it was possible to do so, Plaintiffs blithely claim that "quantification is not a *sine qua non* of relevance." Opp. at 8-9. But they fail recognize that Cox's attack on this opinion is not one of relevance but of *admissibility*. And while Plaintiffs also claim that "[r]elevance typically presents a low barrier to admissibility," Opp. at 4 (citing *United States v. Allen*, 403 F. App'x 800, 801 (4th Cir. 2010)), that is not the rule when it comes to expert testimony because such testimony "often carries a certain aura that might lead a jury to attach more significance to the testimony than is reasonably warranted." *See United States v. Lester*, 254 F. Supp. 2d 602, 607 (E.D. Va. 2003). Dr. Lehr should be precluded from providing his assessment that Cox saved money by not spending more money in response to receiving infringement notices. To the extent the topic is deemed admissible, it is properly addressed through fact witnesses. Dr. Lehr's "opinion" adds nothing, particularly in light of the fact that Plaintiffs admit he has no opinion as to what Cox should have done and he has no expertise in the subject matter. *See* Mot. at 19-20.

---

[12] Buchanan Decl., Ex. K (Rule 26(a) Initial Disclosure by Defendants Cox Communications, Inc. and CoxCom, LLC) (identifying Brent Beck, Matt Carothers, Sanford Mencher, and Linda Trickey); *id.*, Ex. L (Defendants' Witness List/Rule 26(a)(3) Disclosures) (listing these same employees as witnesses who Cox expects to call live at trial).

**B.      Dr. Lehr's "economic incentive" calculations are not relevant to statutory damages, either.**

Since fewer than 60,000 of Cox's four million subscribers are the subject of notices in this case and there are myriad reasons why Cox would profit from its high-speed Internet customers other than infringement, there is no reasonable argument that *all* of Cox's profits from high-speed Internet during the Claim Period were earned *because* of the infringement alleged in this case. However, in support of their claim for statutory damages, Plaintiffs may be entitled to attempt to argue that some portion of these profits were earned because of the alleged infringement.[13]

Plaintiffs claim, however, that Dr. Lehr's analyses in which he estimates the lifetime value of a subscriber and then multiplies that figure by the number of subscribers who received at least one, three, or five infringement notices, and his separate calculation regarding how much Cox collected from these same subscribers between February 2013 and 2016, are relevant to statutory damages "because it shows how profitable Cox's tolerance of infringing subscribers was."  Opp. at 7.  For the reasons stated below, these calculations are not appropriate considerations for the jury when determining Plaintiffs' statutory damages.

*First*, in attempting to explain the relevance of Dr. Lehr's calculations to statutory damages, Plaintiffs argue that "*if* Cox had *terminated* infringing subscribers, it would have lost all of its revenue from those subscribers, not just any revenue that could hypothetically be directly traced to infringement."  Opp. at 7 (emphases added).  That is wrong, of course.  If Cox permanently terminated any of these nearly 60,000 specific subscribers, it only would have lost

---

[13] As noted in Cox's motion, this should be the only figure about which Dr. Lehr permitted to testify—that is, Dr. Lehr should be permitted to state the information he relied upon, information he would have preferred to have, the way he calculated his figure, his conclusions, and any assumptions he may have made reaching those conclusions.  Plaintiffs will have to try to present other witnesses to support their argument that some portion of profits is attributable to the alleged infringement, and therefore relevant to statutory damages.  If they fail to do so, however, Cox will seek to limit the consideration of Cox's profits.

the profits it otherwise would have received *after* it terminated each one.  But that is not what Dr. Lehr calculates (though he could have);[14] he instead calculates the *entire* lifetime value of a subscriber and the total amount that Cox collected from each specific subscriber over several years.  Thus, Dr. Lehr's calculations of the total value of 60,000 subscribers are not at all tied to Cox's profits from failing to *terminate* these specific subscribers.

*Second*, while Plaintiffs use the word "terminated" when explaining the purported relevance of these calculations, what they really mean is that Cox would not have earned *any profit* whatsoever from a subscriber if it never had that subscriber in the *first place*.  And because that is the actual import of Dr. Lehr's proposed testimony, there is no basis for him to tie that truism to the number of actual subscribers who received notices in this case.  Indeed, allowing Dr. Lehr to opine as to Cox's total profits from (or the value of) these nearly 60,000 specific subscribers would imply that Cox never should have had them in the first place, where there is no claim here to support such a notion.  Such an opinion is particularly prejudicial where nearly half of the subscribers Dr. Lehr includes in his analysis received only one or two notices, which is fewer than the number triggering liability under Plaintiffs' theory of the case.

*Third*, in support of Dr. Lehr's calculations, Plaintiffs also note from the Court's jury instruction in *BMG* that "deterrence of future infringement" can also be considered.  Opp. at 7 (citing Buchanan Decl., Ex. F (*BMG* Trial Tr. 2150:1-10)).  Plaintiffs argue that "in analyzing deterrence, factfinders regularly consider a defendant's total profits, and not just the defendant's profits linked to the infringement."  *Id.*  But there is no support for Plaintiffs' separate claim that

---

[14] In response to criticisms levied by Cox's expert Christopher Bakewell, Dr. Lehr calculated how much Cox collected from a handful of subscribers *after* those subscribers received 13 notices. Buchanan Decl., Ex. C (Lehr Reply Rpt., ¶¶ 18-19, Ex. 3B and 4F-4L).  Dr. Lehr failed to do this for all subscribers, however, even though the data was available.

"[t]he total profit Cox derives from *each infringing subscriber* is important context for the jury when determining statutory damages." *Id.* (emphasis added). Indeed, contrary to Dr. Lehr's analysis, the relevant consideration in each of the cases Plaintiffs cite was not all the defendant's profits from its customers who are alleged to have infringed, coupled with the claim that such profits are the defendant's direct financial benefit from infringement. *Id.*[15] Thus, and for the reasons stated above, a calculation of profits based on this subset of specific subscribers would mislead and confuse the jury and prejudice Cox.

The Court should exclude Dr. Lehr's calculations relating to the subscribers who received notices in this case, as they are not related to statutory damages.

### C.    Plaintiffs fail to explain how Dr. Lehr's opinions relating to the economic effects of piracy is proper expert testimony

Plaintiffs' only explanation for why Dr. Lehr's proposed testimony regarding the general and specific economic effects of piracy is relevant is because "[s]tatutory damages analysis permits considering all of the harms of a defendant's infringement causes, not merely those that can be quantified in a traditional actual damages analysis." Opp. at 12 (citing *Sony BMG Music Entm't v. Tenebaum*, 660 F.3d 487, 502-03 (1st Cir. 2011)).

As a preliminary matter, there is no basis to admit any evidence, whether through Dr. Lehr or otherwise, regarding the *general* economic effects of piracy, which are untethered to the infringement alleged by Cox's subscribers of Plaintiffs' works in suit. Such information is plainly irrelevant to Plaintiffs' claims and statutory damages, and prejudicial. It is the purported effects from Cox's alleged infringement for which Plaintiffs seek relief in this case that the jury may

---

[15] *See John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 327 F. Supp. 3d 606, 634 (S.D.N.Y. 2018); *Basic Books, Inc. v. Kinko's Graphics Corp.*, 758 F. Supp. 1522 (S.D.N.Y. 2018); *Psihoyos v. John Wiley & Sons, Inc.*, No. 11 CIV. 1416 JPO, 2102 WL 5506121, at *4 (S.D.N.Y. Nov. 7, 2012), *aff'd*, 748 F.3d 120 (2d Cir. 2014).

15

consider when awarding statutory damages.  Thus, Plaintiffs should be precluded from putting forward any testimony relating to the "general" effects of piracy since the onset of Napster in 1999, how many dollars the industry may have lost over those decades, the number of users of peer-to-peer networks, how much data those users transfer daily, and how the shifting sands of music consumption have negatively impacted the music industry and its ability to exploit its product.  It is all irrelevant to the claims at issue.  Yet this is precisely what Dr. Lehr attempts to opine about by paraphrasing various articles, studies, and other documents regarding the general effects of piracy.  *See* Buchanan Decl., Ex. A (Lehr Rpt., ¶¶ 17-21).  Not only is this irrelevant, but it would also be unfairly prejudicial.   Such testimony would render Cox the scapegoat for this unquantifiable, decade-spanning, and industry-altering harm (as Plaintiffs characterize it), which is indisputably much greater than that allegedly caused by Cox and for which Plaintiffs seek relief in this case.  Plaintiffs should not be permitted to use an expert to explain the basic but irrelevant concept that "piracy may harm rights holders" in order to unduly sully Cox.

To the extent Plaintiffs intend to put Dr. Lehr forward to opine with respect to the purported *specific* economic effects to Plaintiffs from the alleged infringement by Cox's subscribers, Plaintiffs have failed to explain why an expert is necessary, given that to the extent there is any proof of this harm in the record, fact witnesses can provide such testimony.  Indeed, Plaintiffs collectively represent approximately 80% of the music industry and have listed a dozen senior executives on their witness list who each have personal knowledge regarding the effects from piracy on the music industry.   They include: (1) Dennis Kooker – President, Global Digital Business & U.S. Sales, Sony Music Entertainment; (2) Jeff Walker – Executive Vice President and Head, Business & Legal Affairs, Global Digital Business, Sony Music Entertainment; (3) Wade Leak – Senior Vice President, Deputy General Counsel and Chief Compliance, Ethics and

Privacy Officer, Sony Music Entertainment; (4) <u>Neil Carfora</u> – Executive Vice President, Finance and Operations, Sony Music Entertainment; (5) <u>Tom Foley</u> – Vice President, Royalty Administration and Analysis, Sony Music Entertainment; (6) <u>Jason Gallien</u> – Chief Financial Officer – North America, Universal Music Group; (7) <u>Alasdair McMullan</u> – Senior Vice President, Head of Litigation, Business and Legal Affairs, Universal Music Group; (8) <u>Matt Flott</u> – Chief Financial Officer, Global Finance & Analysis & Operations, Warner Music Group; (9) <u>Jon Glass</u> – Senior Vice President, Digital Legal Affairs, Warner Music Group; (10) <u>Michael Abitbol</u> – Senior Vice President, Business & Legal Affairs, Digital, Sony/ATV Music Publishing; (11) <u>David Kokakis</u> – Chief Counsel, Universal Music Publishing Group; and (12) <u>Paul Kahn</u> – Executive Vice President, Chief Financial Officer, Warner/Chappell Music.  There is plainly no need for an economist to explain the specific effects from Cox's alleged infringement on Plaintiffs where Plaintiffs plan on calling witnesses who can speak to this from personal knowledge and decades of experience.[16]

Moreover, Dr. Lehr's observations regarding the purported specific effects from Cox's alleged infringement on Plaintiffs span a mere three paragraphs of his 20-page report and are entirely unsubstantiated conjecture.  *See* Buchanan Decl., Ex. A (Lehr Rpt., ¶¶ 22-24).  He admitted at his deposition that he did not speak with a single of Plaintiffs' employees about their purported harm, though Plaintiffs identify a dozen on their witness list.  *See, e.g.*, Buchanan Decl., Ex. D (Lehr Dep. Tr. 217:4-218:15).  He also does not cite a single Plaintiff-specific document in forming these "opinions."  Buchanan Decl., Ex. A (Lehr Rpt., ¶¶ 22-24).[17]

---

[16] The magnitude of this case critically differentiates it from *BMG* as well, where only a single music publisher sued Cox.  Thus, in that case, Dr. Lehr's testimony may have had some utility to the extent it related to BMG's harm from Cox's actions.

[17] In fact, the **only** Plaintiffs-specific document Dr. Lehr cites in his entire report regarding the purported economic effects from piracy in this case is the Warner Music Group's Form 10-K

The inappropriateness of expert testimony on the effects of piracy in this case notwithstanding, Plaintiffs separately claim that Dr. Lehr should be permitted to explain "*why* economists have concluded that infringement is harmful." Opp. at 12 (emphasis in original). But Plaintiffs have not articulated *why* the jury needs an answer to this unsolicited question. If all Plaintiffs mean is that someone should be able to explain to the jury all of the different ways in which piracy affects the industry generally, that testimony is plainly irrelevant, prejudicial and should be excluded for the reasons set forth herein. To the extent Plaintiffs claim they need an expert to explain the various ways they have been harmed by Cox's subscribers' infringement alleged in this action, they can attempt to bring that testimony in through any or all of the 12 fact witnesses listed above. Plaintiffs further fail to explain how any of this proposed testimony is beyond the ken of the jury, requiring Dr. Lehr's purported expertise. It plainly is not, as evidenced by the multitude of *fact witnesses* who are prepared to testify with respect to it.[18]

In sum, Plaintiffs fail to articulate any legitimate basis for Dr. Lehr's proposed testimony regarding the effects of piracy either generally or specifically in this case. To the extent deemed relevant, Plaintiffs' fact witnesses can attempt to address this issue obviating the need for an expert.

---

from 2013, from which Dr. Lehr quotes verbatim as follows: "as part of its efforts to combat piracy, Warner Music Group Corp. has been involved with 'the development of new business models, technological innovation, litigation, education, and the promotion of legislation and voluntary agreements to combat piracy, including participating in education programs, lobbying for tougher anti-piracy legislation, and other initiatives to preserve the value of music copyrights.'" Buchanan Decl., Ex. A (Lehr Rpt. at 7, n.14) (quoting WBR_00001849-2014 at WBR_00001857).

[18] *Scott v. Sears, Roebuck & Co.*, 789 F.2d 1052, 1055 (4th Cir. 1986) ("Rule 702 makes inadmissible expert testimony as to a matter which obviously is within the common knowledge of jurors because such testimony, almost by definition, can be of no assistance."); *United States v. Portsmouth Paving Corp.*, 694 F.2d 312, 324 (4th Cir. 1982) (affirming trial court's decision to exclude expert because it was cumulative of testimony provided by fact witnesses).

## III.     CONCLUSION

Based on the foregoing, all of Dr. Lehr's proposed testimony other than his attempt to calculate Cox's total profits from high-speed Internet during the Claim Period should be excluded.


Dated: October 11, 2019                        Respectfully submitted,

                                               */s/ Thomas M. Buchanan*
                                               Thomas M. Buchanan (VSB No. 21530)
                                               WINSTON & STRAWN LLP
                                               1700 K Street, NW
                                               Washington, DC 20006-3817
                                               Tel: (202) 282-5787
                                               Fax: (202) 282-5100
                                               Email: tbuchana@winston.com

                                               *Attorney for Cox Communications, Inc.
                                               and CoxCom, LLC*

*Of Counsel for Defendants*

Michael S. Elkin (*pro hac vice*)
Thomas Patrick Lane (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Telephone:  (212) 294-6700
Facsimile:  (212) 294-4700
Email:  melkin@winston.com
Email:  tlane@winston.com

Jennifer A. Golinveaux (*pro hac vice*)
Thomas J. Kearney (*pro hac vice*)
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA  94111-5840
Telephone:  (415) 591-1000
Facsimile:  (415) 591-1400
Email:  jgolinveaux@winston.com
Email: tkearney@winston.com

Michael L. Brody (*pro hac vice*)
WINSTON & STRAWN LLP
35 W. Wacker Dr.
Chicago, IL 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700
Email: mbrody@winston.com

Diana Hughes Leiden (*pro hac vice*)
WINSTON & STRAWN LLP
333 S. Grand Avenue, Suite 3800
Los Angeles, CA 90071
Telephone:  (213) 615-1700
Facsimile:  (213) 615-1750
Email:  dhleiden@winston.com

**CERTIFICATE OF SERVICE**

I certify that on October 11, 2019, a copy of the foregoing was filed electronically with

the Clerk of Court using the ECF system, which will send notifications to ECF participants.


*/s/ Thomas M. Buchanan*
Thomas M. Buchanan (VSB No. 21530)
1700 K Street, NW
Washington, DC 20006-3817
Tel: (202) 282-5787
Fax: (202) 282-5100
Email: tbuchana@winston.com

*Attorney for Cox Communications, Inc.*
*and CoxCom, LLC*