# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

SONY MUSIC ENTERTAINMENT, *et al.*,

        Plaintiffs,

    v.

COX COMMUNICATIONS, INC. and
COXCOM, LLC.

        Defendants.

Case No. 1:18-cv-00950-LO-JFA

## DEFENDANTS' CONSOLIDATED OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE PORTIONS OF THE DECLARATION OF THOMAS KEARNEY (ECF 388) AND MOTION TO STRIKE THE DECLARATION OF THOMAS PATRICK LANE <u>AND PORTIONS OF THE DECLARATION OF THOMAS KEARNEY (ECF 420)</u>

## <u>NON-CONFIDENTIAL VERSION</u>

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 4

I.   Plaintiffs' Objections to Cox's Documentary Exhibits Are Without Merit. ......................... 4

   A.   The Audible Magic Spreadsheet is admissible. ............................................................. 4

      1.   Cox has made a prima facie case that the Audible Magic Spreadsheet is
authentic, which is all Rule 901 requires. ......................................................... 5

         a)   The AM Spreadsheet's source is a strong indicator of authenticity. .......... 5

         b)   Testimony of witnesses with knowledge and the AM Spreadsheet's
characteristics are strong indicators of authenticity. ................................... 6

      2.   The Audible Magic Spreadsheet is admissible under the business-record
exception to the hearsay rule. ............................................................................ 9

   B.   The "Lane/Kearney Summaries" And Related Statements Are Not Rule 1006
Summaries, and in Any Event Are Admissible. ........................................................... 9

      1.   The Lane/Kearney Summaries are not Rule 1006 summaries at all, making
Plaintiffs' arguments against them irrelevant. ................................................. 10

      2.   Even if the Lane/Kearney Summaries were Rule 1006 summaries, their use here
would be proper. ............................................................................................... 12

         a)   There is no blanket rule against attorney-sponsored summary evidence. ... 13

         b)   The Advocate-Witness Rule does not prevent the declarants from
sponsoring documents in support of summary judgment. ......................... 14

         c)   The Lane/Kearney Summaries are not inadmissible hearsay. .................. 15

   C.   The Lane Exhibits Showing Album Track Listings Are Admissible. ........................... 15

   D.   Kearney Exhibit K5 is Admissible. ............................................................................. 16

II.   Plaintiffs' Objections to The Declarants' "Testimony" Are Without Merit. ....................... 17

   A.   The Lane and Kearney Declarations are not inappropriately argumentative. .............. 17

   B.   Kearney's statements "on information and belief" are based upon personal
knowledge and so would be admissible if admissibility were required. ...................... 18

   C.   Mr. Kearney's and Mr. Lane's descriptions of documents are not "testimony,"
and are appropriate attorney declaration statements. ................................................. 21

CONCLUSION .................................................................................................................. 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bluiett v. Pierre M. Sprey*,
  No. CV AW-05-1244, 2009 WL 10685350 (D. Md. Jan. 27, 2009) ......................................13

*Boitnott v. Corning Inc.*,
  No. 7:06–CV–00330, 2010 WL 2465490 (W.D. Va. June 15, 2010) ...................................25

*Fed. Trade Comm'n v. Vantage Point Servs., LLC*,
  266 F. Supp. 3d 648 (W.D.N.Y. 2017) ...............................................................................18

*Hately v. Torrenzano*,
  No. 1116CV01143GBLMSN, 2017 WL 2274326 (E.D. Va. May 23, 2017) ...................9, 14

*Jones v. Chapman*,
  No. CV ELH-14-2627, 2017 WL 1546432 (D. Md. April 28, 2017).......................................6

*Milbourne v. JRK Residential America, LLC*,
  2016 WL 1070818 (E.D. Va. March 15, 2006) ......................................................................5

*Ondo v. City of Cleveland*,
  795 F.3d 597 (6th Cir. 2015) ..............................................................................................19

*Panoqicz v. Hancock*,
  2015 WL 4231712 (D. Md. July 9, 2015)...............................................................................24

*Pharmacy, Inc. v. Am. Pharm. Partners, Inc.*,
  No. CIV.A.05-776DRHAKT, 2007 WL 2728898 (E.D.N.Y. Sept. 14, 2007)...................1, 17

*Smeraldo v. City of Jamestown*,
  512 F. App'x 32 (2d Cir. 2013) .........................................................................................18

*Trustees of Local 8A-28A Welfare Fund v. Am. Grp. Administrators*,
  No. 14-CV-1088 (RRM)(PK), 2017 WL 3700899 (E.D.N.Y. Aug. 25, 2017) ...........17, 18, 22

*Tucker v. Navy Fed. Credit Union*,
  No. 3:10–CV–59, 2011 WL 6219852 (N.D.W.V. Dec. 14, 2011) ...................................11, 12

*United States v. Bray*,
  139 F.3d 1104 (6th Cir. 1998) ......................................................................................10, 11, 13

*United States v. Cunningham*,
  761 F. App'x 203 (4th Cir. 2019) .......................................................................................16

*United States v. Fogel*,
    901 F.2d 23 (4th Cir. 1990) ................................................................15

*United States v. Scales*,
    594 F.2d 558 (6th Cir. 1979) ..............................................................20

*Ward v. Branch Banking & Tr.*,
    No. ELH–13–1968, 2015 WL 4661851 (D. Md. Aug. 4, 2015).............................24

*Wells v. Liddy*,
    37 F. App'x 53 (4th Cir. 2002) ............................................................5

*Zenith Radio v Matsushita Elec.*,
    505 F. Supp. 1190 (E.D. Pa. 1980), *aff'd in part, rev'd in part sub nom. In re*
    *Japanese Elec. Prod. Antitrust Litig.*, 723 F.2d 238 (3d Cir. 1983), *rev'd sub*
    *nom. Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).......................5

## Other Authorities

Fed. R. Civ. P. 56 ............................................................................. *passim*

Fed. R. Evid. 611 ..............................................................................11

Fed. R. Evid. 803 .........................................................................3, 9, 15

Fed. R. Evid. 807 ..............................................................................16

Fed. R. Evid. 901 ........................................................................3, 5, 6, 8

Virginia Rule of Professional Conduct 3.7(a)(1) ........................................................15

# INTRODUCTION

Plaintiffs' motions to strike the Declaration of Thomas Patrick Lane and portions of two Declarations of Thomas Kearney are a pointless distraction from the merits of these summary judgment proceedings.[1]   The Declarations are wholly conventional attorney declarations supporting a summary judgment motion or opposition.  Although Rule 56 does not require the use of declarations to support citations "to particular parts of materials in the record," Fed. R. Civ. P. 56(c)(1), such declarations are commonly used to attach exhibits that excerpt the evidence supporting or preventing summary judgment and describe the contents of those exhibits.  Indeed, nothing here is unusual or improper, or different in quality or kind from Plaintiffs' own attorney declarations.[2]   As one court has explained, Rule 56 "allows an attorney [affidavit] a degree of latitude to characterize the evidence by informing the court of the basis for the summary judgment motion and identifying the portion of the record counsel believes demonstrates the absence of genuine issues of fact."  *Pharmacy, Inc. v. Am. Pharm. Partners, Inc.*, No. CIV.A.05-

---

[1] The Declaration of Thomas Kearney submitted with Cox's Motion for Summary Judgment (ECF 329-1) is herein referred to as the "1st Kearney Declaration."  The Declaration of Thomas Kearney submitted with Cox's Opposition to Plaintiffs' Motion for Summary Judgment (ECF 404) is herein referred to as the "2d Kearney Declaration."  The Declaration of Thomas Patrick Lane submitted with Cox's Opposition to Plaintiffs' Motion for Summary Judgment is herein referred to as the "Lane Declaration."  The 1st Kearney Declaration, 2d Kearney Declaration, and Lane Declaration are collectively referred to as the "Declarations."  Plaintiffs' Memorandum of Law in Support of their Motion to Strike Portions of the Declaration of Thomas Kearney (ECF 391) is herein referred to as the "Kearney Motion."  Plaintiffs' Memorandum of Law in Support of their Motion to Strike the Declaration of Thomas Patrick Lane and Portions of the Declaration of Thomas Kearney (ECF 422) is herein referred to as the "Lane/Kearney Motion."  To the extent exhibits referenced in these declarations, or otherwise relied upon in this opposition, were previously filed by the parties in support of or opposition to motions for summary judgment or *Daubert* motions, or was a declaration filed in connection with a specific motion, reference is made to the location on the docket of those previously-filed documents.

[2]  Plaintiffs themselves submitted a declaration in support of their motion for summary judgment in which their counsel "filtered" documents, explaining what they demonstrate.  *See, e.g.*, ECF 312 at 4, n.1 (referencing Gould Exhibits 44, 46, and 48); *see also id*, ¶ 6.

776DRHAKT, 2007 WL 2728898, at *3 (E.D.N.Y. Sept. 14, 2007) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)).  To the extent the Court finds that a particular characterization crosses the line into argument, the appropriate remedy is not to strike all or a substantial portion of the declaration, but to simply disregard the purportedly argumentative statements.

Tellingly, Plaintiffs offer virtually no substantive objections to the accuracy of Cox's summary judgment evidence.  Nor could they do so.  The majority of Plaintiffs' evidence is excerpted or summarized from Plaintiffs' own documents or those of their agents.  Their technical challenges to the admissibility of Cox's exhibits are ill-founded for a host of reasons.  In any event they employ the wrong standard under Federal Rule of Civil Procedure 56, which permits the use of evidence in summary judgment if it is admissible in its present form *or* can be put into admissible form at trial.  All of Cox's evidence is admissible in its current form, and if there were doubt about its admissibility could easily be put into admissible form.

Plaintiffs' specific objections fall into two categories: (1) objections to documents; and (2) objections to the Declarants' statements about those documents (which Plaintiffs incorrectly call "testimony").  Neither category of objections has any merit.

**Plaintiffs' objections to documents**.  Plaintiffs seek to strike a number of documents offered in support of or in opposition to summary judgment, including the Audible Magic Spreadsheet and various documents that Plaintiffs call the "Lane Summaries" and the "Kearney Summaries" (collectively, the "Lane/Kearney Summaries").  The Audible Magic Spreadsheet (the "AM Spreadsheet")—a transaction log of alleged "fingerprint" match records that MarkMonitor once possessed but destroyed, and which seriously undermines Plaintiffs' only evidence of direct infringement—was produced by Audible Magic in response to discovery requests seeking precisely the kind of data the AM Spreadsheet contains, and corresponds in every key respect to

testimony by both MarkMonitor and Audible Magic witnesses regarding the transaction log data that Audible Magic provided to MarkMonitor. That evidence is more than sufficient to make a *prima facie* case of authenticity, which is all that Federal Rule of Evidence 901 requires. Nor is the AM Spreadsheet subject to a hearsay objection, because it satisfies (or, at a minimum could be made to satisfy) the exception for business records provided by Federal Rule of Evidence 803(6).

Plaintiffs' objections to the Lane/Kearney Summaries fare no better. Contrary to Plaintiffs' assumption, the documents are not Federal Rule of Evidence 1006 summaries at all. They are not being offered in lieu of the evidence they summarize. They are demonstrative excerpts and summaries of the portions of that evidence that support summary judgment for Cox or preclude summary judgment for Plaintiffs. To the extent Plaintiffs believe the Summaries are materially incomplete or inaccurate, their remedy is to provide the Court with contrary evidence sufficient to create a question of fact. They have not done so.

In any event, the "Summaries" would be admissible if admissibility were required. There is no blanket rule against attorney-sponsored summaries of admissible evidence, especially where—as here—there is no meaningful dispute about the provenance or accuracy of the summaries at issue. Nor are the Summaries hearsay, since they were prepared by or at the direction of the Declarants.

**Plaintiffs' objections to declarant "testimony."** Plaintiffs also complain that aspects of both Declarations are inappropriately argumentative, that the Declarants lack personal knowledge of attached exhibits sufficient to "testify" regarding them, and that their "testimony" is inadmissible hearsay. These arguments also lack merit. As to Plaintiffs' complaints about "argumentation," the complained-of passages merely inform the Court of the basis for Cox's motion for or opposition to summary judgment and identify those portions of the record that the

Declarant believes demonstrate the absence or existence of a genuine dispute of material fact. There is nothing unusual or inappropriate about such characterizations of the evidence, which are provided merely to guide the Court's understanding of the summary judgment record. They are not intended to supplement or supplant the arguments made in Cox's briefs, which speak for themselves.

Plaintiffs' claim that Mr. Lane and Mr. Kearney lack personal knowledge of various exhibits sufficient to support their "testimony" about those exhibits fares no better. The statements to which Plaintiffs object are not "testimony" at all, but basic descriptions of the documentary evidence being offered in support of or opposition to summary judgment. Because they are not evidence, their admissibility is irrelevant.

To the extent those exhibits are summaries prepared by or at the direction of the Declarants, the Declarants unquestionably have personal knowledge of their contents. And to the extent the exhibits are excerpts or summaries from Plaintiffs' own documents, the Declarations merely set forth basic information that is apparent on the face of the documents. No personal knowledge is necessary to support such statements except knowledge gained by reading the documents, which the Declarants have undisputedly done.

In short, Plaintiffs' motions to strike portions of the Kearney Declarations and the entirety of the Lane Declaration are utterly lacking in merit, and should be denied.

## ARGUMENT

## I.      Plaintiffs' Objections to Cox's Documentary Exhibits Are Without Merit.

### A.      The Audible Magic Spreadsheet is admissible.

Plaintiffs contend that the Audible Magic Spreadsheet is inadmissible because it "has not been authenticated," "lacks foundation," and is hearsay. Kearney Motion at 4-5. Plaintiffs are wrong on all counts.

**1.      Cox has made a *prima facie* case that the Audible Magic Spreadsheet is authentic, which is all Rule 901 requires.**

The burden to authenticate evidence "is not a high one."  *Wells v. Liddy*, 37 F. App'x 53, 63 (4th Cir. 2002).  Under Federal Rule of Evidence 901, a document's "proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."  Fed. R. Evid. 901(a).  That is, the Rule requires only that the proponent "make a prima facie showing that the exhibit is what the proponent claims it to be."  *Wells,* 37 F. App'x at 63 (quoting Weinstein's Federal Evidence, § 901.02[3] (2d. ed. 2001)).

The Rule provides a nonexclusive list of authentication methods, but authentication requires no particular kind of proof.  Indeed, "authentication may be accomplished entirely through circumstantial evidence, and any and all manner of circumstantial evidence may be used to establish that the document is genuine."  *Milbourne v. JRK Residential America, LLC*, 2016 WL 1070818, at *3 (E.D. Va. March 15, 2006) (quotation omitted).   Relevant circumstantial considerations may include, among other things, the source of the document and its characteristics. *See, e.g., Zenith Radio v Matsushita Elec.*, 505 F. Supp. 1190, 1223 (E.D. Pa. 1980), *aff'd in part, rev'd in part sub nom. In re Japanese Elec. Prod. Antitrust Litig.*, 723 F.2d 238 (3d Cir. 1983), *rev'd sub nom. Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

Here, these considerations strongly support the conclusion that the Audible Magic Spreadsheet is what Cox "claims it to be":  a transaction log of MarkMonitor's fingerprinting inquiries to Audible Magic during the Claims Period of the kind identified by Audible Magic's 30(b)(6) witness in his deposition.

**a)      The AM Spreadsheet's source is a strong indicator of authenticity.**

The Audible Magic Spreadsheet was produced in discovery by Audible Magic in response to three highly specific requests for production, all of which sought documents in the nature of a

fingerprinting transaction log.  For example, one request sought "[a]ny databases, indices, or other repositories of information concerning the fingerprinting, identification, and/or verification conducted by Your System of the Copyright Works."  Ex. 1[3] (RFP 6. (AM Subpoena)).[4]  The AM Spreadsheet's production by Audible Magic is strong evidence that the document is an authentic Audible Magic document.  *See, e.g., Jones v. Chapman*, No. CV ELH-14-2627, 2017 WL 1546432, at *3 (D. Md. April 28, 2017).  Its production in response to highly specific requests for production of "databases … or other repositories of information concerning the fingerprinting" by Audible Magic of the works in suit is similarly strong evidence that it is the kind of document Cox "claims it to be"—a transaction log of MarkMonitor authentication requests relating to Plaintiffs' works.

> **b)  Testimony of witnesses with knowledge and the AM Spreadsheet's characteristics are strong indicators of authenticity.**

The testimony of multiple witnesses with knowledge of the Audible Magic "transaction logs" and the AM Spreadsheet's characteristics also support authenticity.  *See* Fed. R. Evid. 901(b)(1), (4) (authenticity may be established by "testimony that an item is what it is claimed to be" or "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances").  Audible Magic's 30(b)(6) witness, Mr. Ikezoye, who is the Chief Executive Officer of Audible Magic, testified that his company produced

---

[3] Documents not otherwise filed in support of or opposition to the parties' motions for summary judgment or *Daubert* motions are attached directly hereto.

[4] Other RFPs to which the Audible Magic Spreadsheet was arguably responsive include one seeking "Documents sufficient to show Your process of matching files shared on peer-to-peer file sharing sites with copies of the Copyright Works" and another seeking "All documents concerning any files, or portions thereof, concerning the Copyright Works, that Your System fingerprinted, identified, and/or verified."  Ex. 1 (RFP 7, 9 (AM Subpoena)).  In producing responsive documents, Audible Magic did not specifically identify which request each document related to, but the only requests to which the Spreadsheet is responsive are the three identified here.

██████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████. Ex.

2 (Ikezoye Dep. Tr. 138:10-141:4); *see also id.* at 173:21-174:8; 175:8-178:10.   The data

represented in the Audible Magic Spreadsheet corresponds with the information provided by both

Audible Magic and MarkMonitor describing the contents of those "transaction logs."

    For example, MarkMonitor's Slawomir Paszkowski confirmed ███████████████

██████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████.

ECF 454-2 (Paszkowski Dep. Tr. at 80:9-83:13).   ████████████████████████████

███████████████████████████████.

    Similarly, Audible Magic's Mr. Ikezoye confirmed that the data his company provided to

MarkMonitor in response to fingerprint requests included ████████████████████████

██████████████████████."   Ex. 2 (Ikezoye Dep. 120:9-121:2).   All of those

values appear to exist in the AM Spreadsheet, ████████████████████████████

██████████████████.   Cox's expert Dr. Nick Feamster, who attended Mr. Ikezoye's

deposition and reviewed both the AM Spreadsheet and the two MarkMonitor Spreadsheets among

other relevant materials, opined that ████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████████████████   ECF 364-11 (Feamster Decl. (9-20-19),

¶¶ 5-6).   And Plaintiffs' expert Barbara Frederickson-Cross referred to the AM Spreadsheet as ███

███████████████████████████████████████████.   Ex. 3 (Frederiksen-Cross Dep. Tr.

90:15-91:10).

In addition, MarkMonitor admits that its own '236 and '431 spreadsheets—the latter of which, if admitted into evidence, would constitute Plaintiffs' only evidence of direct infringement—are based heavily on Audible Magic data that directly corresponds to the data fields in the Audible Magic Spreadsheet. *See, e.g.,* ECF 453-7 (Sept. 27, 2019 Hr'g Tr. 35:18-21). Seven of the fields in the AM Spreadsheet are represented in the '236 Spreadsheet, and three of those are carried over into the '431 Spreadsheet derived from the '236.[5]  MarkMonitor's Sam Bahun confirmed █████████████████████████████████████████████████████████

████████████████████████████████████████████████████     ECF 352-1

(Bahun Decl.), ¶¶ 17, 21.

Finally, and perhaps most tellingly, Plaintiffs have not attempted to substantively dispute that the Audible Magic Spreadsheet is, in fact, the "██████████" referred to by Mr. Ikezoye. After Cox raised the AM Spreadsheet as the basis for its motion for sanctions, Plaintiffs presented a new declaration from Mr. Ikezoye, giving him a new opportunity to assert that the AM Spreadsheet was *not* the "████████" described in his testimony.  He did not do so.

This evidence is more than sufficient to establish a *prima facie* case for the authenticity of the Audible Magic Spreadsheet.  Nothing more is required under Federal Rule of Evidence 901.

---

[5] Kearney Declaration in Support of Cox's Motion for Summary Judgment, ECF 329-1, Ex. 37 ('236 Spreadsheet), ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████. *See* ECF 352-1 (Bahun Decl.), ¶¶ 17-19 (██████████████████████████████████████████████████████ ██████████"); *see also* ECF No. 352-2 (Ikezoye Decl.), ¶¶ 11, 14, 15 (regarding origin of all seven data types); ECF 454-2 (Paszkowski Dep. Tr. 80:6-81:11) (regarding origin of Columns O through R); *see also see also* Kearney Declaration in Support of Cox's Motion for Summary Judgment, ECF 329-1, Ex. 38 ██████████████████████████████████████ ████████████████████████  The exhibits attached to the Kearney Declaration in Support of Cox's Motion for Summary Judgment were filed on an external hard drive, per Court order.

### 2. The Audible Magic Spreadsheet is admissible under the business-record exception to the hearsay rule.

Plaintiffs argue that "the Audible Magic Spreadsheet is inadmissible hearsay," and that because "no witness laid any foundation for any of the hearsay exceptions," it is inadmissible. Mot. at 5. Plaintiffs are incorrect. If the Court determines that the AM Spreadsheet is hearsay, the spreadsheet falls within the hearsay exception for records of regularly conducted activity. Fed. R. Evid. 803(6). ███████████████████████████████████████████████████████████

████████████████████████████████████. *See* Kearney Decl., ¶4(d) and Ex. 3. Cox's expert Dr. Feamster stated in his declaration that ██████████████████████████

███████████████████████████████████████████████████████████. ECF 364-11 (Feamster Decl. (9-20-19)), ¶ 6. This evidence is sufficient to lay a foundation for the business records exception to the hearsay rule. And even if it were not sufficient in its present form, it would be easy to "put the information into an admissible form," making its use at the summary judgment stage appropriate.[6] *Hately v. Torrenzano,* No. 1116CV01143GBLMSN, 2017 WL 2274326, at *4 (E.D. Va. May 23, 2017) (citing *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 538–39 (4th Cir. 2015)).

### B. The "Lane/Kearney Summaries" And Related Statements Are Not Rule 1006 Summaries, and in Any Event Are Admissible.

Plaintiffs make a lengthy series of arguments about what they call the "Lane Summaries" (Lane Decl., Exs. L1-L6, L14), the "Kearney Summaries" relating to Cox's opposition to Plaintiffs' motion for summary judgment (2d Kearney Decl., Exs. K13_A, K13_B), and the "Kearney Summaries" relating to Cox's own motion for summary judgment (a category that

---

[6] Plaintiffs have listed Mr. Ikezoye on their "may call" list.

appears to include 1st Kearney Decl., Exs. 27, 28, 33, 33A, and 34[7])—and statements in the Declarations discussing those exhibits.  Plaintiffs claim that the Lane/Kearney Summaries are inadmissible variously because they are Rule 1006 summaries that cannot be sponsored by counsel, because the advocate-witness rule bars it, and because they are hearsay.  *See* Lane/Kearney Mot. at 6-9; Kearney Mot. at 5-8.  Plaintiffs are again mistaken.  The Lane/Kearney Summaries are not Rule 1006 summaries at all—and even if they were, they are admissible as-is or could easily be put into admissible form for trial, which is all Rule 56 requires.

**1.      The Lane/Kearney Summaries are not Rule 1006 summaries at all, making Plaintiffs' arguments against them irrelevant.**

Plaintiffs' arguments against the Lane/Kearney Summaries are rooted in the premise that they are summary exhibits under Federal Rule of Evidence 1006, and so must be independently admissible at trial.  But they are not, making Plaintiffs' arguments against them irrelevant.

A Rule 1006 summary is one used "to prove the content of voluminous writings … that cannot be conveniently examined in court."  Fed. R. Evid. 1006.  Such summaries are introduced as evidence *instead of* the underlying writings they purport to summarize, which must be admissible but need not be admitted.  As the courts have explained, the documents underlying a Rule 1006 summary "need not themselves be in evidence," because the "summary admitted under Rule 1006 is *itself* the evidence that the trier of fact should consider."  *United States v. Bray*, 139 F.3d 1104, 1110 (6th Cir. 1998) (emphasis added).  That is, the summary is admitted "in lieu of the underlying documents."  *Id*.

---

[7] Plaintiffs' formal definition of "Kearney Summaries" in the 1st Kearney Declaration includes only ¶ 44 and Exhibits 27, 28, 33, 33A, and 34 "collectively," but their motion also seems to apply the term to ¶¶ 29, 35, 37, and 40.  Kearney Mot. at 3

The Lane/Kearney Summaries are not Rule 1006 summaries, because they are not offered "in lieu of" any underlying documents.  Rather, each of the Lane/Kearney Summaries condenses or excerpts documents and data produced by Plaintiffs in discovery that will themselves be offered as evidence at trial.  For example, all of the "Lane Summaries" and two of the "Kearney Summaries" present information derived from Plaintiffs' own copyright registration information and chain of title-related documents.  *See* Lane Decl., Exs. L1-L6, L14; 1st Kearney Decl., Exs. 33 and 33A. Four of the "Kearney Summaries" present data derived from Plaintiffs' Notice Chart of infringement notices sent to Cox.  *See* 1st Kearney Decl., Exs. 27 and 28; 2d Kearney Decl., Exs. K13_A, K13_B.  The remainder of the objected-to "Summaries" present data provided from Plaintiffs' lists of allegedly infringed sound recordings (1st Kearney Decl., Ex. 34) and Plaintiffs' spreadsheet purporting to show Audible Magic fingerprint matches of the works-in-suit (1st Kearney Decl., Ex. 40).

All of these documents from which the Lane/Kearney Summaries are derived will be in evidence at trial—most of them actually introduced by Plaintiffs.  The Lane/Kearney Summaries, by contrast, will *not* be offered as evidence at trial.  They are offered to the Court on summary judgment as demonstrative excerpts of the underlying trial evidence.  Such "summarized exhibits" are "used as pedagogical devices" and so "do not … fall within the purview of Rule 1006." *Bray*, 139 F.3d at 1111 (quotation omitted).  Trial courts have "discretionary authority" under Rule 611 to permit counsel to employ" such documents "to clarify and simplify complex testimony or other information and evidence … in the presentation of argument to the court." *Id*.  That discretion applies equally at the summary judgment stage as at trial.  *See, e.g., Tucker v. Navy Fed. Credit Union*, No. 3:10–CV–59, 2011 WL 6219852, at *5 n.1 (N.D.W.V. Dec. 14, 2011) (declining to

strike a demonstrative exhibit summarizing telephone records that were separately in evidence that was offered by plaintiffs in connection with summary judgment motion).

In short, Cox seeks and opposes summary judgment not on the basis of the Lane/Kearney Summaries themselves, but on the facts of the underlying evidence they present, which would be in evidence at trial.   If Plaintiffs believe that the Lane/Kearney Summaries are materially inaccurate depictions of the underlying evidence, their remedy is simple: provide contrary evidence to the Court and thereby show the existence of a genuine question of material fact that must be resolved at trial.[8]   *See Tucker*, 2011 WL 6219852, at *5 n. 1 (denying motion to strike demonstrative exhibit showing call volume and noting the "exact number of calls is an issue reserved for the finder of fact" precluding summary judgment).

Because the Lane/Kearney Summaries are simply intended to guide the Court's understanding of the underlying evidence and are not being offered as evidence themselves, Plaintiffs' arguments against their admissibility are irrelevant.

## 2. Even if the Lane/Kearney Summaries were Rule 1006 summaries, their use here would be proper.

Plaintiffs argue that the Lane/Kearney Summaries "must be stricken because summaries are inadmissible when offered by a party's attorney" and because the "advocate-witness rule" prohibits Kearney from testifying in support of his client. Lane/Kearney Mot. at 6-8.  Not so.  Even if the challenged documents were Federal Rule of Evidence 1006 summaries required to be admissible, their use here would be proper.

---

[8] The logic of Plaintiffs' position would require that every summary judgment movant include as exhibits to their motions the entirety of every piece of evidence on which their motion relies—the full contents of every database, the full transcript of every deposition, the entirety of every administrative record, and each exhibit in full, with attachments. Cos is aware of no authority for such a requirement, which would in complex cases like this, make summary judgment wholly unmanageable for the parties and the court.

         **a)**       **There is no blanket rule against attorney-sponsored summary evidence.**

Plaintiffs state that "in order to lay a foundation for a summary, the proponent should present the testimony of the witness who supervised its preparation."  Lane/Kearney Mot. at 6 (quoting *Bray*, 139 F.3d at 1109-10).  The Lane/Kearney Summaries meet that standard. They are documents created for this litigation that excerpt or organize documents and data produced by Plaintiffs.  The witnesses who supervised their preparation were the Declarants themselves, who each explained in their Declarations exactly "what the summaries are and how they were prepared"—precisely what Plaintiffs concede is required.  *See, e.g.,* 1st Kearney Decl., ¶ 29 (stating that Exhibits 27 and 28 were "prepared under [his] direction" and explaining how the spreadsheets were created); *id.*, ¶ 37 (same with respect to Exhibit 33A); *id.*, ¶ 40 (same with respect to Exhibit 34); *id.*, ¶ 44 (same with respect to Exhibit 37A); Lane Decl., ¶ 9 (explaining that Exhibit L1 is a list of 1,715 works "for which plaintiffs have only produced, attached and/or cited" Copyright Office printouts as proof of ownership).

That the Declarants are members of Cox's legal team does not change the analysis.  Contrary to Plaintiffs' claim, there is no blanket rule providing that a "summary's sponsoring witness cannot be the attorney litigating the case."  Kearney Mot. at 6; Lane/Kearney Mot. at 6-7.  Certainly neither of the cases cited by Plaintiffs establish such a rule.  In *Bluiett v. Pierre M. Sprey*, No. CV AW-05-1244, 2009 WL 10685350 at *5 (D. Md. Jan. 27, 2009), the court struck the attorney-sponsored summaries in part because they were not "mere factual summaries" but "arguments and conclusions that [the attorney] is attempting to present as evidence."  For example, "rather than listing the totals of the attached receipts," the proponent "argue[d] that" the other party "overstated receipts." *Id*; *see also Grajales-Montoya*, 117 F.3d 356, 361 (8th Cir. 1997) (rejecting attorney-sponsored summary because it constituted "a written argument.")  The Lane/Kearney

Summaries, by contrast, simply summarize or excerpt the evidence to which they relate. They contain no argument at all.

Even if the Court were to conclude that the Lane/Kearney Summaries are not admissible as currently presented, they need not be stricken from the summary judgment record so long as Cox "shows that it will be possible to put the information into an admissible form." *Hately*, No. 1116CV01143GBLMSN 2017 WL 2274326, at *4. Here, it would be simple to do so: with respect to certain of the Kearney Summaries, Cox has experts who have reviewed the evidence underlying the documents, each of whom could re-create the calculations and spreadsheet operations necessary to produce the Summaries and present that evidence at trial. And with respect to other Kearney Summaries and the Lane Summaries, the underlying evidence at issue (Plaintiffs' copyright registrations and related chain-of-title documents, all of which were authenticated by Plaintiffs' witnesses and attached to their declarations in support of summary judgment) would either have be introduced at trial by Plaintiffs or by Cox on cross-examination.

### b) The Advocate-Witness Rule does not prevent the declarants from sponsoring documents in support of summary judgment.

Plaintiffs argue that the Lane/Kearney Summaries are inadmissible because Messrs. Lane and Kearney, as counsel to Cox, cannot appear as a witness for his client under the "advocate-witness rule." Kearney Mot. at 7; Lane/Kearney Mot. at 7-8. This argument is irrelevant. Cox does not intend to have Mr. Lane or Mr. Kearney sponsor any evidence at trial or otherwise appear before the jury. To the extent the Lane/Kearney Summaries would be used at trial at all, they would either be used as demonstrative exhibits during the cross examination of Plaintiffs' witnesses (the Lane Summaries and certain of the Kearney Summaries) or Cox's experts or re-created by those experts by performing the necessary calculations during live testimony (the balance of the Kearney Summaries).

Plaintiffs have again simply overstated the law.  As they concede, "there is no rule of evidence absolutely excluding the testimony of a lawyer on behalf of his client."  Indeed, "the question of whether an attorney is competent to testify is committed to the discretion of the district court."  *United States v. Fogel*, 901 F.2d 23, 26 (4th Cir. 1990).  If Mr. Lane or Mr. Kearney were to be called at trial, the Court would be well within its discretion to allow them to testify for the limited purpose of proving the provenance of the exhibits—testimony that cannot be contested, and so would not violate the applicable ethics rules or taint the trial process.[9]

**c)      The Lane/Kearney Summaries are not inadmissible hearsay.**

Plaintiffs' argument that the Lane/Kearney Summaries are inadmissible hearsay is based on their assertion that Lane/Kearney cannot testify at trial.  Because that is not true (as demonstrated in the previous section), the statements are not hearsay.

**C.      The Lane Exhibits Showing Album Track Listings Are Admissible.**

Plaintiffs complain that Lane Declaration Exhibits L7-L10, which are screenshots of "third-party internet sources purporting to show the track listings for various albums," are inadmissible hearsay.  Lane/Kearney Mot. at 9.  Plaintiffs notably do not dispute the *accuracy* of Exhibits L7-L10, which a cursory review of any of the listed albums quickly confirms.  These track lists are technically hearsay in their current form, but fall within the exception in Fed. R. Evid. 803(17) for "lists, directories, or other compilations that are generally relied on by the public."  Even if that exception does not apply to the lists in their current form, they can easily be

---

[9] Contrary to Plaintiffs' suggestion, Virginia Rule of Professional Conduct 3.7(a)(1) permits a party's attorney to testify without withdrawing if "he testimony relates to an uncontested issue." There is no reason to believe that either Mr. Kearney's or Mr. Lane's testimony about these factual summaries would be meaningfully contested.  Each of the challenged Summaries is a summary, excerpt, or distillation of Plaintiffs' own documents or data.  With few limited exceptions, Plaintiffs have not challenged the accuracy of the Summaries, and there is no reason to think that any of the concerns that underlie the advocate-witness rule even apply here.

rendered admissible at trial in any number of ways—for example, by admitting compact discs of each album that list the included tracks or by simply asking Plaintiffs' witnesses on cross-examination.  In the absence of any substantive dispute about the accuracy of these track lists, Plaintiffs' objection to them is frivolous.

### D.   Kearney Exhibit K5 is Admissible.

Plaintiffs argue that Exhibit K5, an email and two email attachments, should be stricken as inadmissible hearsay.  Plaintiffs are wrong, for at least two reasons.

First, the portion of Exhibit K5 on which Cox's opposition relies (slides 8 through 22 of a slide deck attached to the email, Bates numbered COX_SONY_00519178-00519199) is admissible under Fed. R. Evid. 807.  The "residual exception" of Rule 807 permits admission where the statement has "circumstantial guarantees of trustworthiness" equivalent to those in other hearsay exceptions; is offered "as evidence of a material fact"; is more probative of that fact than other reasonably available evidence; and its admission would serve the purpose of the rules of evidence and the interests of justice.  The circumstantial trustworthiness of the evidence in light of the totality of the circumstances is "the most important" of these elements.  *United States v. Cunningham*, 761 F. App'x 203, 206 (4th Cir. 2019) (quotation and citation omitted).

The relevant parts of the Exhibit easily meet this standard.  The slide deck of which they are a part exists in multiple Cox documents that were produced to Plaintiffs.  *See, e.g.*, Ex. K5 (COX_SONY_00519139).  Its creator, former Cox attorney Randy Cadenhead, was deposed in this case and testified extensively about this slide deck, expressly confirming his authorship of slides 8-22.  *See, e.g.*, Ex. 4 (Cadenhead Dep. Tr. 285:2-4).  Mr. Cadenhead is also a listed recipient on the email to which the slide deck is attached.  *Id*. 285:14-17; *see also* Ex. K5 (at COX_SONY_00519137).  If these circumstances are not sufficient to render the slide deck non-

hearsay, they certainly provide "circumstantial guarantees of trustworthiness" sufficient to render it admissible.

Second, even if Exhibit K5 were not admissible in its current form, Cox can easily render it admissible at trial:  at the very least, its creator Mr. Cadenhead could testify at trial, rendering it non-hearsay.

## II.    Plaintiffs' Objections to The Declarants' "Testimony" Are Without Merit.

Plaintiffs argue at length that Mr. Lane's and Mr. Kearney's Declarations provide "testimony" about the Lane/Kearney Summaries and other matters that is inadmissible because it is "attorney argument," is not based on personal knowledge, and is hearsay.  Kearney Mot. at 8-11; Lane/Kearney Mot. at 10-14.  Plaintiffs are wrong.

### A.    The Lane and Kearney Declarations are not inappropriately argumentative.

Plaintiffs seek to strike the entirety of the Lane Declaration and portions of the Second Kearney Declaration "because they are legal briefs masquerading as sworn testimony." Lane/Kearney Mot. 5.  This is a gross mischaracterization. Both the Lane Declaration and the Second Kearney Declaration serve the wholly conventional purpose of "characteriz[ing] the evidence by informing the court of the basis for the summary judgment motion and identifying the portion of the record counsel believes demonstrates the absence of genuine issues of fact." *Trustees of Local 8A-28A Welfare Fund v. Am. Grp. Administrators*, No. 14-CV-1088 (RRM)(PK), 2017 WL 3700899, at *1 (E.D.N.Y. Aug. 25, 2017); *see also Pharmacy, Inc. v. Am. Pharm. Partners*, No. 05–776 (DRH)(AKT), 2007 WL 2728898, at *3 (E.D.N.Y. Sept. 14, 2007) (applying same principle to summary judgment oppositions).

For example, Plaintiffs complain that Paragraph 10 of the Lane Declaration inappropriately "argues that Plaintiffs' copyright registrations have deficiencies."  Lane/Kearney Mot. at 2.  But all Paragraph 10 does is describe Lane Declaration Exhibit L2, which is a list of "13 registration

certificates" produced by Plaintiffs "that contain facial deficiencies," so that the Court understands what the document actually is.  That is not "attorney argument."  The same is true of the vast majority of other portions of the Lane Declaration to which Plaintiffs object, all of which merely point to evidence that Plaintiffs attached to their summary judgment motion and identify specific statements, omissions, errors, and characteristics that appear on the face of that evidence.  To the extent they draw conclusions, they are *factual* conclusions that are evident from the face of the document, not legal conclusions; none of the challenged Declarations includes any legal analysis of any kind.

In any event, to the extent the Court deems any portions of the Declarations to be unduly argumentative, the appropriate remedy is simply to disregard the argumentative portions and rely exclusively on the attached exhibits and factual statements about them.  *Trustees of Local 8A-28A Welfare Fund*, No. 14-CV-1088 (RRM)(PK), 2017 WL 3700899, at *1 ("[Attorney] characterization will not prejudice the court, who will conduct its own review of the evidence submitted and draw its own conclusions based on that evidence.").  Indeed, Plaintiffs' own authorities opt for this less-drastic remedy.  *See, e.g., Smeraldo v. City of Jamestown*, 512 F. App'x 32, 34 (2d Cir. 2013) (cited in Lane/Kearney Mot. at 5); *Fed. Trade Comm'n v. Vantage Point Servs., LLC*, 266 F. Supp. 3d 648, 654 (W.D.N.Y. 2017) (same).  Certainly Plaintiffs have identified no authority supporting their radical request to strike "the *entirety* of the Lane Declaration" (Lane/Kearney Mot. at 5) (emphasis added), extensive portions of which are not the subject of any stated objection and are not even conceivably argumentative.

**B.    Kearney's statements "on information and belief" are based upon personal knowledge and so would be admissible if admissibility were required.**

Plaintiffs state that "[i]n five instances in the [1st] Kearney declaration, Mr. Kearney testifies based on "information and belief," and argue that all such "testimony" must be stricken

because it is not based on personal knowledge.  Kearney Mot. at 8 (citing Kearney Decl., ¶¶ 23, 33, 39, 51, 52).

This claim is borderline frivolous.  It is rooted in the premise that a statement made on "information and belief" is necessarily made without personal knowledge.  That premise is false: As many courts have explained, "information and belief" are two distinct sources of knowledge. *Information* is a valid basis for an assertion of fact in support of summary judgment; mere *belief* is not.  *See, e.g.*, *Ondo v. City of Cleveland*, 795 F.3d 597, 605 (6th Cir. 2015).  As the Sixth Circuit put it, "[W]hen affidavits based on knowledge and belief are submitted to support or oppose a motion for summary judgment, the district court has discretion to determine whether it can differentiate between knowledge and belief for each averment in the affidavit. If the court can distinguish between the two, then … the court should excuse the affiant's stylistic error, and must admit the parts based solely upon personal knowledge, while striking the parts based upon belief." *Id.*

Here, it is plain on the face of the Declaration that the challenged Kearney statements are based on "information," not belief.  For example:

- In ¶ 23, Mr. Kearney states that "On information and belief, and as stated in Exhibits 24A and 25B in ¶ 25 below, DtecNet, Inc. was subsequently purchased by MarkMonitor, Inc., which thereby became a party to the Master Agreement" between RIAA and DTecNet. Exhibits 24A and 24B are both copies of "Statements of Work" between MarkMonitor and the RIAA, and refer to the "Master Agreement between MarkMonitor Inc. (Formerly 'DtecNet Inc.' and hereinafter MarkMonitor) and" the RIAA.  Mr. Kearney's statement that MarkMonitor purchased DtecNet and so assumed DtecNet's role in the Master Agreement (the accuracy of which

Plaintiffs do not dispute) is based on information provided in MarkMonitor's own documents, not unsubstantiated belief.

- In ¶ 33, Mr. Kearney states that "Based on my research, including a search of online Copyright Office registration records, on information and belief the Copyright Office has registered at least 29 musical works titled "Motivation" since 1978; none of them were authored by Kelly Rowland."   Again, Kearney's statement is clearly "based on [his] research," not on unsubstantiated belief.

- In ¶ 39, Mr. Kearney states that "on information and belief, based on my research including a review of Copyright Office records available online, the title "Another One Rides the Bus" does not refer to any Weird Al Yankovic album."   This statement too is self-evidently based on Mr. Kearney's "research," and specifically "a review of Copyright Office records available online."

- In ¶ 51, Mr. Kearney states that "On information and belief, Plaintiffs have not sought to obtain any discovery" from "thousands of Cox Business subscribers who had received" infringement notices.   Mr. Kearney's knowledge here is personal knowledge, and the facts at issue are facts wholly within Plaintiffs' control.  As the Sixth Circuit has explained, "Testimony, by one who has examined records," that a particular record is not present "is receivable" in evidence and preferable "to producing the entire mass [of evidence] for perusal in the courtroom."  *United States v. Scales*, 594 F.2d 558, 562 (6th Cir. 1979) (quoting 4 Wigmore, Evidence, §1230 (Chadbourn rev. 1972)).

- In ¶ 52, Mr. Kearney states that "On information and belief, Plaintiffs did not attempt to obtain discovery from any Cox subscriber during the course of this litigation."  This statement is certainly based on personal knowledge: Mr. Kearney has no information indicating

that Plaintiffs attempted to obtain discovery from any Cox subscribers during the litigation. It is unclear what personal knowledge would be sufficient to prove this negative, which (we note) Plaintiffs do not dispute.

Plaintiffs' assertion that Mr. Kearney's statements made on "information and belief" are "unreliable" is meritless. That assertion is based entirely on the statement in Paragraph 33 that "the Copyright Office has registered at least 29 musical works titled "Motivation" since 1978," and "none of them were authored by Kelly Rowland." Contrary to Plaintiffs' claim, Kearney's statement is accurate: online Copyright Office registration records do not list any *musical works* titled "Motivation" authored by Kelly Rowland. That those records do (as Plaintiffs point out) list *sound recordings* titled "Motivation" and registered to Kelly Rowland is irrelevant to Kearney's point—and indeed proves the point, which is that notice of Ms. Rowland's registration of a sound recording for "Motivation" does not put Cox on notice of registration of a musical composition for that title.

In any event, the assertion that Mr. Kearney's statements based upon his own research are *incorrect* is not a basis for striking them. Plaintiffs' remedy for any purported inaccuracy in the Kearney Declaration is to submit countervailing evidence sufficient to create a fact question.

Because Mr. Kearney's statements made on information and belief are, in fact, based on personal knowledge and not mere "belief", they are admissible under Rule 56. As already explained at length, however, those statements are not themselves offered as evidence, making their admissibility irrelevant.

### C. Mr. Kearney's and Mr. Lane's descriptions of documents are not "testimony," and are appropriate attorney declaration statements.

Finally, Plaintiffs argue that various portions of the Lane and Kearney Declarations constitute improper "testimony" regarding exhibits about which they purportedly lack personal

knowledge.  Lane/Kearney Mot. at 11-13 (citing 2d Kearney Decl., ¶¶13-22 and Lane Decl., ¶¶ 1, 52, 146);[10] Kearney Mot. at 10 (citing 1st Kearny Decl., ¶¶ 28, 29, 31, 32, 33, 34, 36, 38, 39, 40, 41, 44, 46, 47, 48, 53).  This argument is wholly without merit.

First, as discussed at length above, the attorney's statements in the Declarations are not "testimony" or evidence of any kind.  They are characterizations and explanations of the evidence embodied in attached documents or Plaintiffs' attached documents.  Such statements are entirely appropriate for inclusion in an attorney declaration in support of or opposition to summary judgment, and need not be independently admissible.  *See, e.g., Trustees of Local 8A-28A Welfare Fund*, No. 14-CV-1088 (RRM)(PK), 2017 WL 370899, at \*1.  This principle also renders Plaintiffs' hearsay objection irrelevant.

Second, many of the challenged statements relates to documents that the two Declarants created (or directed the creation of and reviewed) based upon Plaintiffs' own data.[11]  Plaintiffs' motions do not explain how a declarant could lack personal knowledge of documents that he created (or directed the creation of) and then personally reviewed.

Third, much of the remaining "testimony" challenged by Plaintiffs consists of little more than very basic descriptions of Plaintiffs' own documents that were produced in discovery. Paragraph 28 of the 1st Kearney Declaration, for example, simply lists the column titles in

---

[10] Plaintiffs' argument identifies only portion of the Lane Declaration (Paragraph 1).  We assume that its two references to the "Lehr Declaration" (Lane/Kearney Mot. at 12) are intended to refer to the Lane Declaration.

[11] For example, Paragraph 29 describes Exhibits 27 and 28, which are excerpts prepared by Mr. Kearney of Plaintiffs' own Notice Chart.  Paragraph 35 describes Exhibit 33, which is a spreadsheet prepared at Mr. Kearney's direction "summarizing copyright registration information that Plaintiffs have produced in discovery for the sound recording works-in-suit."  Paragraph 36 describes the information in that spreadsheet.  Paragraph 37 describes Exhibit 33A, a summary chart prepared by Mr. Kearney based on data provided by Plaintiffs listing their works registered as works made for hire.  Paragraph 40 describes Exhibit 34, a summary chart prepared by Mr. Kearney comprising data extracted from Plaintiffs' list of allegedly infringing works.

Plaintiffs' own spreadsheet summarizing RIAA notices sent to Cox.[12]  Similarly, with respect to

the Lane Declaration, in multiple paragraphs Mr. Lane merely points out that the registration

certificate that Plaintiffs claim covers a specific work either states on its face that the asserted work

is *excluded* or is otherwise not listed.[13]  He similarly points out in other paragraphs that Plaintiffs

have failed to attach or reference any documents to their declarations, such as agreements.[14]  To

the extent these bare-bones descriptions are "testimony" at all, it is testimony relating to what

appears on the face of the attached documents or that there is a lack of documents.  To have

"personal knowledge" that particular words appear on a piece of paper or that a document has not

been attached or referenced in a declaration, one need only read the piece of paper, and Messrs.

Kearney and Lane did so.  Given the very limited scope of Messrs. Kearney's and Lane's

declarations about these documents, no additional knowledge is necessary.

Finally, a handful of the challenged statements provide descriptions of exhibits that go

beyond merely reciting information that appears on the face of the document.  For example,

Plaintiffs point to Paragraph 41 of the 1st Kearney Declaration, in which Mr. Kearney states that

"Plaintiffs' list of allegedly infringed musical compositions also contains six musical compositions

whose copyright registrations indicate they were performed by Weird Al Yankovic.  Exhibit 35 is

---

[12] Similarly, Paragraphs 31-33 identify documents produced by Plaintiffs in discovery as RIAA notices and briefly summarize the information on the face of those notices.  Paragraph 34 briefly describes the contents of two exhibits to Plaintiffs' own Complaint that contain lists of the allegedly infringed works.  Paragraph 52 of the Lane Declaration simply compares a particular Plaintiff's copyright registration certificate to inconsistent information provided by that Plaintiff's own declarant in support of summary judgment.

[13] *See, e.g.*, Lane Decl., ¶¶ 23, 26, 34, 36-47, 51-59, 69, 131, 137, 140.

[14] *See, e.g.*, Lane Decl., ¶¶ 60, 70, 82, 91, 104, 117, 160. In connection with certain paragraphs, Mr. Lane points out that, based on Plaintiffs' own statements, Plaintiffs have represented that a non-party owns or controls the work in suit, which would mean that the asserting Plaintiff lacks standing to sue, a decision the Court will ultimately make. *See, e.g., id.*, ¶¶ 29, 30, 146, 148-150.

a true and correct copy of Plaintiffs' production concerning copyright registrations for those works" and that "[b]ased on my review, none of these six song titles was identified in an RIAA Notice during the Claims Period." Kearney Mot. at 11. Plaintiffs argue that Mr. Kearney lacks personal knowledge of the underlying documents, making his statement inadmissible.

This is, frankly, nonsense. It is clear on the face of the Declaration that the source of Mr. Kearney's knowledge about the contents of "Plaintiffs' list of allegedly infringed musical compositions" is Plaintiffs' list itself, which is attached as an exhibit. If Mr. Kearney's description of a document provided by Plaintiffs that he personally reviewed is not based on "personal knowledge," it is unclear who, if anyone, would have personal knowledge sufficient to satisfy Federal Rule of Civil Procedure 56. *See also* 1st Kearney Decl., ¶¶ 31, 32, 33, 34, 38, 41, 44, 46.

The authorities on which Plaintiffs rely to suggest that Kearney's knowledge of these materials is not sufficient to constitute "personal knowledge" for purposes of Rule 56 are inapposite here. None involves an attorney affidavit attaching documents produced by the opposing party in discovery or summarized from documents that were so produced. All of those cases involve fact-witness declarants whose assertions either lacked any documentary support at all[15] or that merely parroted information set forth in the declarant's company's business records

---

[15] In *Ward v. Branch Banking & Tr.*, No. ELH–13–1968, 2015 WL 4661851 at *7 (D. Md. Aug. 4, 2015), the declarant made statements about "the central fact at issue" in the case—the date on which the defendant acquired the plaintiff's loan— "based both on [his] personal knowledge and the information [he had] acquired pursuant to his duties as Vice President … as well as his review of [his company's business records." The court found, however, that the declaration failed to provide "a specific explanation of how [the declarant] came to know this crucial fact," because although he attached some documents to support his declaration "he did not attach any documents pertinent to this crucial fact." *Id.* at *6. Here, there is no question as to how Mr. Kearney or Mr. Lane gained personal knowledge of the information set forth in their Declarations; in every instance, that knowledge is directly traceable to the attached documents. Similarly, in *Panoqicz v. Hancock*, 2015 WL 4231712 at *1 n.1 (D. Md. July 9, 2015), the court declined to credit statements in the plaintiff's declaration that amounted to "speculative assertions without … any evidence to substantiate those assertions." Again, no such "speculative assertions" are at issue here.

but prepared by others, the contents of which were concededly not within the declarant's personal knowledge.[16]   None of this has anything to do with a conventional attorney's affidavit sponsoring documents produced by the opposing party or of his own creation.

---

[16] *See Boitnott v. Corning Inc*., No. 7:06–CV–00330, 2010 WL 2465490 (W.D. Va. June 15, 2010).

## CONCLUSION

For all the reasons given, Plaintiffs' Motion to Strike Portions of the Declaration of Thomas Kearney and Motion to Strike the Declaration of Thomas Patrick Lane and Portions of the Declaration of Thomas Kearney should be DENIED.

Dated: October 14, 2019

Respectfully submitted,

*/s/ Thomas M. Buchanan*
Thomas M. Buchanan (VSB No. 21530)
WINSTON & STRAWN LLP
1700 K Street, NW
Washington, DC 20006-3817
Tel: (202) 282-5787
Fax: (202) 282-5100
Email: tbuchana@winston.com

*Attorney for Cox Communications, Inc.
and CoxCom, LLC*

*Of Counsel for Defendants*

Michael S. Elkin (*pro hac vice*)
Thomas Patrick Lane (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Telephone:  (212) 294-6700
Facsimile:  (212) 294-4700
Email:  melkin@winston.com
Email:  tlane@winston.com

Jennifer A. Golinveaux (*pro hac vice*)
Thomas J. Kearney (*pro hac vice*)
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA  94111-5840
Telephone:  (415) 591-1000
Facsimile:  (415) 591-1400
Email:  jgolinveaux@winston.com
Email: tkearney@winston.com

Michael L. Brody (*pro hac vice*)
WINSTON & STRAWN LLP

35 W. Wacker Dr.
Chicago, IL 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700
Email: mbrody@winston.com

Diana Hughes Leiden (*pro hac vice*)
WINSTON & STRAWN LLP
333 S. Grand Avenue, Suite 3800
Los Angeles, CA 90071
Telephone:  (213) 615-1700
Facsimile:  (213) 615-1750
Email:  dhleiden@winston.com

**CERTIFICATE OF SERVICE**

I certify that on October 14, 2019, a copy of the foregoing was filed electronically with

the Clerk of Court using the ECF system, which will send notifications to ECF participants.


*/s/ Thomas M. Buchanan*
Thomas M. Buchanan (VSB No. 21530)
1700 K Street, NW
Washington, DC 20006-3817
Tel: (202) 282-5787
Fax: (202) 282-5100
Email: tbuchana@winston.com

*Attorney for Cox Communications, Inc.*
*and CoxCom, LLC*