# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| SONY MUSIC ENTERTAINMENT, *et al.*, | |
| Plaintiffs, | Case No. 1:18-cv-00950-LO-JFA |
| v. | |
| COX COMMUNICATIONS, INC., *et al.*, | |
| Defendants. | |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR OMNIBUS MOTION IN LIMINE

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

LEGAL STANDARD ................................................................................................. 1

ARGUMENT .............................................................................................................. 1

I.   COX SHOULD BE PRECLUDED FROM OFFERING EVIDENCE OR ARGUMENT
     INCONSISTENT WITH THIS COURT'S FACTUAL FINDINGS IN ITS SUMMARY
     JUDGMENT DECISION CONCERNING COX'S DMCA DEFENSE IN BMG ........... 1

II.  THE COURT SHOULD PRECLUDE EVIDENCE AND ARGUMENT CONCERNING
     COX'S MISLEADING AND UNSUPPORTED CONTENTION THAT ██████████
     ███████ ........................................................................................................... 3

     A.   Background ................................................................................................ 3

     B.   Lack Of Foundation Warrants Preclusion....................................................... 4

     C.   Hearsay Warrants Preclusion ....................................................................... 6

     D.   Exclusion Is Also Appropriate Under Rule 403 .............................................. 7

III. THE COURT SHOULD PRECLUDE ANY EVIDENCE OR ARGUMENT RELATING
     TO THE POLICIES OR PRACTICES OF OTHER ISPS (INCLUDING THE
     COPYRIGHT ALERT SYSTEM)..................................................................... 7

     A.   The Policies And Practices Of Other ISPs Are Irrelevant ............................... 8

     B.   There Is No Competent Evidence On The Extent To Which Other ISPs Terminate (Or
          Do Not Terminate) For Repeat Infringement ................................................. 9

     C.   References To CAS Should Be Precluded Under Rules 401 and 403 .................. 9

IV.  THE COURT SHOULD PRECLUDE ANY ARGUMENT THAT COX IS NOT
     LIABLE FOR INFRINGEMENT OVER ITS NETWORK BY USERS OTHER THAN
     NAMED ACCOUNT HOLDERS ................................................................... 11

V.   THE COURT SHOULD PRECLUDE ANY EVIDENCE OR ARGUMENT
     CONCERNING THE MARKMONITOR '236 SPREADSHEET................................ 12

     A.   General Background ................................................................................. 13

     B.   Anything In The '236 Spreadsheet Not Cumulative Of The '431 Spreadsheet Is
          Irrelevant And Highly Misleading............................................................... 14

VI.  THE COURT SHOULD EXCLUDE THE REV0003444 SPREADSHEET AND ANY
     RELATED TESTIMONY OR ARGUMENT. .................................................... 17

A.    The REV0003444 Spreadsheet is Not Authenticated And Lacks Foundation ............. 18

B.    Rule 403 Warrants Exclusion ........................................................................................ 19

VII. THE COURT SHOULD PRECLUDE EMAILS COX RECEIVED FROM CUSTOMERS PURPORTING TO RESPOND TO PLAINTIFFS' INFRINGEMENT NOTICES ....................................................................................................................... 19

VIII. COX SHOULD BE PRECLUDED FROM PRESENTING EVIDENCE AND ARGUMENT CONCERNING PLAINTIFFS' TRACK-LEVEL REVENUES FROM THE WORKS IN SUIT ...................................................................................................... 20

IX. COX SHOULD BE PRECLUDED FROM OFFERING AFFIRMATIVE DEPOSITION TESTIMONY FROM WITNESSES COX CONTROLS AND COULD BRING TO TRIAL TO TESTIFY IN PERSON ................................................................................... 22

X. COX SHOULD BE PRECLUDED FROM OFFERING LIVE TESTIMONY FROM FOUR KEY WITNESSES IT REFUSES TO MAKE AVAILABLE FOR LIVE EXAMINATION IN PLAINTIFFS' CASE IN CHIEF .................................................... 24

XI. THE COURT SHOULD PRECLUDE TESTIMONY FROM VICTORIA SHECKLER 28

CONCLUSION .......................................................................................................................... 30

## TABLE OF AUTHORITIES

**Cases**

*Arista Records LLC v. Lime Wire LLC*,
   No. 06-CV-05936 (KMW), 2010 WL 10031251 (S.D.N.Y. Aug. 9, 2010) ............................ 14

*Arista Records LLC v. Myxer Inc.*,
   No. 08-CV-03935 (GAF) (JCX), 2011 WL 11660773 (C.D. Cal. Apr. 1, 2011) .................... 14

*BMG v. Cox*,
   149 F.Supp.3d 634 (E.D. Va. 2015) ............................................................................. 2, 12, 13

*Bouchat v. Bon-Ton Dep't Stores*,
   506 F.3d 315 (4th Cir. 2007) ....................................................................................................... 2

*Bouchat v. Champion Prods*., *Inc.,*
   327 F. Supp. 2d 537 (D. Md. 2003) ............................................................................................ 2

*Bryant v. Media Right Prods., Inc.,*
   603 F.3d 135 (2d Cir. 2010) ...................................................................................................... 22

*Buchwald v. Renco Grp., Inc.,*
   No. 13-CV-7948 (AJN), 2014 WL 4207113 (S.D.N.Y. Aug. 25, 2014) ................................. 28

*Capitol Records, LLC v. Escape Media Grp., Inc.*,
   No. 12-CV-6646 (AJN), 2015 WL 1402049 (S.D.N.Y. Mar. 25, 2015) ................................. 14

*CGC Holding Co., LLC v. Hutchens*,
   No. 11-CV-01012-RBJ-KLM, 2016 WL 6778853 (D. Colo. Nov. 16, 2016) ......................... 28

*Culebra II, LLC v. River Cruises and Anticipation Yachts, LLC*,
   564 F. Supp. 2d 70 (D. Me. 2008) ............................................................................................ 25

*Dun & Bradstreet Software Servs., Inc, v. Grace Consulting, Inc.*,
   307 F.3d 197 (3d Cir. 2002) ........................................................................................................ 9

*Fairfield 274-278* v. Clarendon *Tr. v. Dwek*,
   970 F.2d 990 (1st Cir. 1992) ..................................................................................................... 25

*Famous Music Corp. v. Seeco Records, Inc.*,
   201 F. Supp. 560 (S.D.N.Y. 1961) ............................................................................................. 9

*Griman v. Makousky*,
   76 F.3d 151 (7th Cir. 1996) ...................................................................................................... 27

*In re Gulf Oil/Cities Serv. Tender Offer Litig.*,
   776 F. Supp. 838 (S.D.N.Y.1991) ........................................................ 28

*In re Microsoft Corp. Antitrust Litig.*,
   355 F.3d 322 (4th Cir. 2004) ................................................................. 2

*Iorio v. Allianz Life Ins. Co. of N. Am.*,
   No. 05-CV-633 (JLS) (CAB), 2009 WL 3415689 (S.D. Cal. Oct. 21, 2009) ......................... 28

*Kauffman v. Park Place Hosp. Grp.*,
   468 F. App'x 220 (4th Cir. 2012).......................................................... 1

*Koger v. Norfolk S. Ry. Co.*,
   No. 08-CV-0909, 2009 WL 10688329 (S.D.W. Va. Oct. 8, 2009) ......................... 27

*Manganella v. Evanston Ins. Co.*,
   700 F.3d 585 (1st Cir. 2012) ............................................................... 2

*Maran Coal Corp. v. Societe Generale De Surveillance S.A.*,
   No. 92-CV-8728 (DLC), 1996 WL 11230 (S.D.N.Y. Jan. 10, 1996)...................... 26

*Metro–Goldwyn–Mayer Studios, Inc. v. Grokster, Ltd.*,
   518 F. Supp. 2d 1197 (C.D. Cal. 2007) ................................................. 14

*R.B. Matthews, Inc. v. Transamerica Transp. Servs., Inc.*,
   945 F.2d 269 (9th Cir.1991) ................................................................ 28

*Ramsay v. U.S.I.N.S.*,
   14 F.3d 206 (4th Cir. 1994) ................................................................ 2

*UMG Recordings, Inc. v. Shelter Capital Partners LLC*,
   718 F.3d 1006 (9th Cir. 2013) ............................................................. 14

*United States v. Oldbear*,
   568 F.3d 814 (10th Cir. 2009) ............................................................. 8

*Weinstein Co. v. Smokewood Entm't Grp., LLC*,
   664 F. Supp. 2d 332 (S.D.N.Y. 2009) ................................................... 9

**Statutes**

Fed. R. Civ. P. 1 ....................................................................................... 26

Fed. R. Civ. P. 32 ............................................................................... 24, 25

Fed. R. Evid. 402 ............................................................................... 1, 12

Fed. R. Evid. 403 ................................................................................ passim

v

Fed. R. Evid. 611 ................................................................................................................... 26, 28

Fed. R. Evid. 802 ................................................................................................................ 1, 6, 21

Fed. R. Evid. 804 ....................................................................................................................... 24

Fed. R. Evid. 901 .................................................................................................................... 1, 18

## INTRODUCTION

This case is about Cox putting its corporate profits over its legal obligations.  For years, Cox continued to provide Internet service to tens of thousands of particular Cox subscribers that Cox knew were using it to infringe.  Rather than litigate on the merits, Cox's strategy is clear: confuse, obscure, and deflect.  Accordingly, and in order to ensure a fair and efficient trial, Plaintiffs respectfully request that the Court preclude Cox from offering certain evidence and argument at trial.  These *in limine* requests and supporting points are set forth below.

## LEGAL STANDARD

Irrelevant evidence is not admissible.  Fed. R. Evid. 402.  Even if relevant, evidence may be excluded "if its probative value is substantially outweighed by the danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  Hearsay evidence is also generally not admissible, Fed. R. Evid. 802, and documents must be authenticated, Fed. R. Evid. 901.  The decision to grant a motion *in limine* excluding evidence or argument as irrelevant, prejudicial, confusing, or otherwise inadmissible is within the Court's broad discretion.  *Kauffman v. Park Place Hosp. Grp.*, 468 F. App'x 220, 222 (4th Cir. 2012).

## ARGUMENT

I.    **The Court Should Preclude Evidence Or Argument Inconsistent With This Court's Factual Findings In Its Summary Judgment Decision Concerning Cox's DMCA Defense in BMG**

At summary judgment in *BMG*, this Court entered an Order dismissing Cox's affirmative defense of the DMCA safe harbor and establishing a number of facts beyond genuine dispute.  That decision was affirmed on appeal.  The Courts factual findings should not be contradicted or

1

relitigated by Cox in the upcoming trial in this case.  Nevertheless, as Cox has demonstrated during summary judgment briefing, that is exactly what Cox intends to do at trial.

The facts concerning Cox's process for responding to infringement notices and addressing repeat infringers were identical; actually resolved; critical and necessary to the final and valid judgment; and Cox had a full and fair opportunity to litigate them.  No more is required for collateral estoppel.  *In re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322, 326 (4th Cir. 2004); *Ramsay v. U.S.I.N.S.*, 14 F.3d 206, 210 (4th Cir. 1994).  This Court should not permit Cox to offer evidence or argument contrary to its prior findings.  Doing so would be inconsistent with principles of judicial economy and fairness underlying the collateral estoppel doctrine.  It would serve no purpose other than to permit Cox to relitigate decided issues and invite the jury to reach contrary conclusions.

Collateral estoppel applies even though Cox did not plead the DMCA as an affirmative defense in this case.  Any related facts already addressed and resolved are precluded from relitigation.  Application of collateral estoppel merely requires an "issue or fact" to be identical, not the ultimate issue.  *See Microsoft*, 355 F.3d at 326; *Manganella v. Evanston Ins. Co.*, 700 F.3d 585, 591 (1st Cir. 2012) ("[T]he issue need not have been the ultimate issue decided by the [prior proceeding]; issue preclusion can extend to necessary intermediate findings . . . ."); *Bouchat v. Champion Prods.*, *Inc.,* 327 F. Supp. 2d 537, 546 (D. Md. 2003) (collateral estoppel "precludes relitigation of issues of fact or law . . . The claim presented need not be the same for collateral estoppel to preclude relitigation of an issue"), *aff'd on other grounds sub nom. Bouchat v. Bon-Ton Dep't Stores*, 506 F.3d 315 (4th Cir. 2007).

2

Plaintiffs have provided a copy of this Court's summary judgment decision in *BMG v. Cox*, 149 F.Supp.3d 634 (E.D. Va. 2015), and highlighted facts that Cox is collaterally estopped from disputing with contrary evidence or argument in this proceeding.  Gould Ex. 1.

**II.    The Court Should Preclude Evidence And Argument Concerning Cox's Misleading And Unsupported Contention That** ███████████████████

Cox should be precluded from offering evidence or argument concerning a Cox slide presentation containing figures purporting to show ████████████████████████ ████████████████████████████████████████████████ Gould Ex. 2 at 21-22 (DX 74).  Cox's policies and procedures for responding to copyright infringement notices were smoke-and-mirrors.  At trial, Cox seeks to deflect from that reality by having its fact and expert witnesses discuss the baseless claim that ████████████████ Indeed, Cox has argued at summary judgment that "[a] 2010 study showing the *effect* of the CATS system indicated that ████████████████████████████████████████ ████████  ECF No. 393 at 2 (emphasis added).  It should be precluded from doing so at trial.

**A.  Background**

In 2010, Cox's former in-house privacy counsel, Randy Cadenhead, purportedly created a slide presentation (now referred to by Cox's counsel as a "study") ████████████████ ████████████████████████████████ Cadenhead testified that he ████████████████████████████████████████████████████ ████████.  Gould Exs. 2 at 21–22, 3 at 283:2–285:9, 291:13–298:20 (Cadenhead Tr.).

In discovery, Plaintiffs diligently sought to probe the nature and reliability of this "study," including its methodology, underlying data, and conclusions.  Cox obstructed those efforts.  In response to Plaintiffs' November 2018 discovery requests, Cox produced the slide presentation, on March 1, 2019, because it wants to rely upon it.  Gould Decl. ¶ 4.  But Cox

failed to produce any underlying data or analysis.  In April 2019, Cox's Rule 30(b)(6) designee on Cox's graduated response program could not answer basic questions about the so-called "study"—though it was well within the scope of his deposition topics and is now a cornerstone of Cox's trial strategy.  *See* Gould Ex. 4 at 138:23–140:25, 184:10–189:16 (Carothers Tr.).

In early June 2019, Mr. Cadenhead and Mr. Beck testified in their depositions with only vague recollections of the "study."  Neither knew how the underlying data was selected, the time frame it covered, or whether the underlying data had been preserved.  Gould Exs. 3 at 291:13-298:20, 323:19-325:10 (Cadenhead Tr.), 8 at 25:16–38:13 (Beck Tr.).  Mr. Cadenhead said that Mr. Beck "████████████████████████████████████████ ████████████████████████████████████████████████████."  Gould Ex. 3 at 292.  Thereafter, Cox still refused to produce the underlying data until Plaintiffs moved to compel.  ECF No. 177.  Cox finally agreed in response to that motion that it would produce the data.  ECF No. 181.  On July 2, the very last day of discovery, Cox finally produced a single email with summary level figures.  *See* Gould Decl. ¶ 7; Ex. 5 (DX 140).  That email does not contain the underlying data and does not support the claims in the slides in any way.[1]

## B.  Lack Of Foundation Warrants Preclusion

First, Cox's witnesses were unable to establish a foundation for the "████████ ████" claim.  During Cox's 30(b)(6) deposition on its graduated response policy for copyright infringement, Cox's designee, Matthew Carothers, had no idea how Cox reached the ████ ████—indeed his only basis was what his counsel told him during his deposition preparation.

---

[1] In *BMG*, the Court granted a motion *in limine* to exclude Cox from using the misleading statistics and argument from the "96%" study.  Gould Ex. 6 at ¶ 18 (*BMG* Order dated November 25, 2015, ECF No. 691).  Based upon how the trial progressed, the Court later allowed Mr. Cadenhead to sponsor the document.  Gould Ex. 7 at 1377:19–1379:14 (*BMG* Trial Tr.).

Gould Ex. 4 at 138:23–25 (Carothers Tr.). He neither conducted nor reviewed the analysis. *Id.*
Messrs. Cadenhead and Beck had little more to say. Neither knew how the data was gathered.
Gould Exs. 3 at 291:13-298:20, 323:19-325:10 (Cadenhead Tr.), 8 at 25:16–38:13 (Beck Tr.).

Second, Cox has failed to produce the data underlying the ███████████████
claim. Without the underlying data, Cox's claims (in the email, slides, testimony and argument)
are unreliable, self-serving statements, and the jury has no basis to test their accuracy. In
response to Plaintiffs' Motion to Compel seeking the documents and information underlying the
study, Cox unequivocally told the Court that it would produce the data. ECF Nos. 177 at 3, 181
at 2, 7. But Cox still never did so. Instead it produced a single email on the last day of discovery
with yet more summary level figures. It contained neither the specific data nor calculations
supporting the ██████ Gould Ex. 5. That email provides no information about what data
was examined, how it was selected, whether it was selected to generate a specific result, or how
the data was analyzed. When Plaintiffs pressed Cox again for the underlying data, Cox finally
admitted that nothing exists beyond Mr. Beck's summary email. Gould Ex. 9. Mr. Cadenhead
testified there was more. Gould Ex. 3 at 292.

There is simply no foundation whatsoever for the assertion in slide 21 of DX 74 about the
number of ████████████████." Ex. 2 (emphasis in original). Mr. Beck's email (the
supposed underlying data) discusses █████████████ It say nothing at all about ██████████
████████ This is a critical distinction because Cox acknowledged that, in the ordinary
course, ███████████████████████████. *See* Gould Ex. 8 at 88-90 (Beck
Tr.). To be clear, content owners send infringement *notices* to Cox. ██████████████
███████████████████████████████████████████

███████████████████████████████████████████████████████

████. *See id.* at 99-105.

Third, the conclusions in the slides are fundamentally disconnected from whatever data supposedly underlay it. The punchline of the "study" is that "█████████████." Yet the "study" purports to track only █████████████████████████████████████████ ███████████████████████████. Cox made no effort to determine in any way whether its subscribers stopped infringing. As such, there is no evidentiary basis to conclude that any of Cox's subscribers "stopped" at any point. Mr. Cadenhead agreed: "█ ███████████████████████████████████████████████ ████████████████████████████" Gould Exs. 3 at 298. Of course, Cox limited the number of infringement notices it would receive and process through blacklisting and caps. It is also undisputed that not all infringement is detected. There is simply no basis to assume that a lack of additional notices means a subscriber stopped infringing.

**C. Hearsay Warrants Preclusion**

Cox offers the ████████████ for the truth of the matter asserted. Cox's 30(b)(6) witness on Cox's policies and procedures for responding to infringement notices and the graduated response program testified that ███████████████████████████████ ████████████████████████████████████████████████ ███████████████████████ *See* Gould Ex. 4 at 129:13–130:1 (Carothers Tr. (emphasis added)). This conclusion is also the primary basis for Dr. Lynne Weber's, one of Cox's expert witnesses, opinion that Cox's response to infringement notices was "effective." Ex. 10 at ¶ 95. By any measure, the document and any testimony about the "study" are hearsay under Fed. R. Evid. 802 and no exception applies. In fact, there are multiple layers of hearsay—

6

Mr. Cadenhead's statement that ███████████████ as well as his contorted restatement of

whatever Mr. Beck told him via email.

### D.  Exclusion Is Also Appropriate Under Rule 403

For all these reasons, the claim that ██████████████ is highly misleading,

deceptive, and unfairly prejudicial.  Cox has no proof that these subscribers actually stopped

infringing but wants to use this document as "evidence" that the subscribers stopped (and Cox's

graduated response process was therefore "effective").  The ████████ is misleading in other

ways, too.  Though the ███████████████████████████

████████████████████████████

████████████████████████████

████████████████████ are not the same.  As explained above, █████████

████████████████████████████

████████████████

### III.     The Court Should Preclude Any Evidence Or Argument Relating To The Policies Or Practices Of Other ISPs (Including The Copyright Alert System)

At the upcoming trial, Cox wants to point to the copyright practices of other ISPs,

including those that participated in the Copyright Alert System ("CAS"), which Cox mislabels as

the "industry standard."  *See*, *e.g.*, Gould Exs. 11 at ¶¶ 30, 143-158 (Almeroth Expert Report), 12

at ¶ 75 (Tregillis Expert Report); ECF No. 404 at 2 (Cox SJ Opp.).  But Cox's proffered

testimony and argument concerning how Cox compares to other ISPs, or the requirements of

CAS, are irrelevant, unfairly prejudicial, likely to mislead the jury, and lack foundation.  As in

*BMG*, it should be precluded.  Gould Exs. 6 at ¶ 14; 13 (BMG Orders excluding CAS),.

In *BMG*, this Court concluded "that a comparison of Cox's policies to the policies of

other ISPs would be irrelevant, prejudicial, and likely to mislead the jury" and that Cox's

proposed testimony was "of dubious reliability at best." Gould Ex. 13 at *1–2. The same

applies here. Just as in *BMG*, there was no discovery in this case from other ISPs to determine if,

when or why they terminate the accounts of repeat infringers. Just as in *BMG*, Cox witnesses do

"not have independent knowledge of the polices of other ISPs" and any testimony in this area

"would be speculative, unreliable, and not helpful to the jury." *Id.* at *2. As set forth below,

there are multiple grounds for exclusion.

### A.    The Policies And Practices Of Other ISPs Are Irrelevant

Plaintiffs' allegations concern Cox's violation of its own legal obligations, not whether

Cox acted better, worse, or the same as another ISP. The actions of other ISPs and how Cox's

misconduct compares to them is simply irrelevant. "An 'everybody-is-doing-it defense' . . . [i]s

a sideshow from which the jury c[an] [] glean[] little valuable information." *United States v.*

*Oldbear*, 568 F.3d 814, 821 (10th Cir. 2009).

Cox's behavior must be measured against its legal obligations, not how others acted. Cox

cannot deflect from its misconduct by claiming that it was not alone, or that there were worse

actors. *See Dun & Bradstreet Software Servs., Inc, v. Grace Consulting, Inc.*, 307 F.3d 197, 211

(3d Cir. 2002) ("A defense of industry custom and practice in the face of the protective

provisions of the Copyright Act could undermine the purposes and objectives of the statute and

reduce it to rubble."); *Weinstein Co. v. Smokewood Entm't Grp., LLC*, 664 F. Supp. 2d 332, 348

(S.D.N.Y. 2009) ("[N]otwithstanding plaintiff's claims about 'custom and practice' in the

entertainment industry, federal copyright law dictates the terms by which an exclusive license

can be granted."); *Famous Music Corp. v. Seeco Records, Inc.*, 201 F. Supp. 560, 566 (S.D.N.Y.

1961) ("Custom and usage may not be invoked to relieve defendant of the clear cut obligations

imposed by the application of the statute.")

**B.      There Is No Competent Evidence On The Extent To Which Other ISPs Terminate (Or Do Not Terminate) For Repeat Infringement**

Cox wants to present "evidence" that other ISPs did not terminate repeat infringers.  In *BMG*, the Court provided Cox with a roadmap for that kind of evidence: "no other ISPs were deposed to determine when they took action on notices," and "you need third-party people who are working at those entities to have personal information."  Gould Exs. 14 at 69:2-3 (*BMG* Nov. 20, 2015 Hr'g Tr.), 15 at 50:10-12 (*BMG* Oct. 30, 2015 Hr'g Tr.)  Cox ignored that directive and again chose not to take discovery from any ISPs about how they deal with repeat infringers and whether they terminate accounts.  As a result, Cox has no competent evidence to offer.  Cox's fact witnesses should not be allowed to offer speculation or provide hearsay statements about whatever Cox's competitors may have stated—either publicly or to Cox privately.  Cox's expert, Dr. Almeroth, likewise has no personal knowledge about how other ISPs deal with repeat infringers, what their acceptable use or DMCA policies provide, or whether they terminate accounts.  He spoke with no one at any ISPs in connection with his work in this matter.[2]

**C.      References To CAS Should Be Precluded Under Rules 401 and 403**

Cox's witnesses and counsel should be precluded from presenting evidence and argument that CAS represented an "industry standard" or that it defines what some Plaintiffs deemed acceptable on whether termination of repeat infringers was required.  There is zero support in the record for these assertions—in fact, the evidence shows exactly the opposite.

In declarations submitted earlier in this case, *see* ECF Nos. 82-1 ¶¶ 12-14; 82-2 ¶¶ 29-32; 82-8 ¶¶ 26-28, each Record Company Plaintiff explained that CAS was a private agreement between 18 private parties (30 parties, including all affiliated entities), including trade groups,

---

[2] The exclusion of Dr. Almeroth's proffered testimony, on this and other issues, is addressed in Plaintiffs' Daubert motion (ECF No. 286).

copyright holders, and ISPs, designed to educate consumers, deter online infringement, and direct consumers to lawful online legitimate sources of content.  These declarations further explained that Cox did not participate in CAS, and that CAS did not establish, or attempt to establish, an industry standard.  *Id.*  Indeed, the Memorandum of Understanding setting forth CAS's framework acknowledged that "the limitations on ISP liability under the DMCA are conditioned on an ISP's adoption and reasonable implementation of a policy that provides for the termination in appropriate circumstances of subscribers and account holders who are repeat infringers," *see* MOU at 9 n.1 (ECF No. 295-8, 9), and that "entering into this Agreement is not, by itself, intended to address whether a Participating ISP has adopted and reasonably implemented a DMCA Termination Policy." *Id.*[3]

Jill Lesser, the executive director of the Center for Copyright Information, which administered CAS, corroborated that CAS simply did not address what participating ISPs should do with respect to terminating accounts of repeat infringers.  As she explained it, "[t]ermination was not part of the educational system of the Copyright Alert System . . . [T]he whole system

---

[3] The pertinent language reads as follows:

The Parties acknowledge and agree that the limitations on ISP liability under the DMCA are conditioned on an ISP's adoption and reasonable implementation of a policy that provides for the termination in appropriate circumstances of subscribers and account holders who are repeat infringers ("DMCA Termination Policy"). Notwithstanding the foregoing, . . . (2) the adoption, implementation, enforcement, or other action in furtherance of a DMCA Termination Policy is not part of any step of the Copyright Alert program or enforceable under this Agreement; and (3) *entering into this Agreement is not, by itself, intended to address whether a Participating ISP has adopted and reasonably implemented a DMCA Termination Policy*. This Agreement does not and is not intended to establish any legal inference regarding any ISP that does not participate in the Copyright Alert program or to *address whether or not any ISP has adopted and reasonably implemented a DMCA Termination Policy*.

MOU at 9 n.1 (emphasis added).

was an educational system.  So it wasn't – it wasn't addressed." Gould Ex. 20 at 111-12 (Lesser Tr.).

CAS included certain agreed upon, voluntary measures but left it to each ISP to decide how to address its legal obligations under the copyright laws.  There is no record concerning the steps, if any, that CAS ISPs took outside of CAS, including whether they terminated the accounts of repeat infringers.  RIAA's corporate designee and former general counsel, Steve Marks, explained that ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████ Gould Ex. 19 at 203–204 (Marks Tr.).  Cox thus has no basis to compare its behavior on terminating (or not terminating) repeat infringers with that of the ISPs who participated in CAS.  Accordingly, a comparison of Cox's policies to the requirements of CAS is inherently deceptive, unfairly prejudicial, and irrelevant.

*        *        *

Should the Court rule that the policies and practices of other ISPs are excluded, that would not only limit certain testimony and argument from Cox and its witnesses, but also obviate the need for *any* live or deposition testimony from Jill Lesser (former executive director of the Center for Copyright Information), Christopher Monson and Seth Nielson (former research scientists at Harbor Labs), or Samuel Rubin (managing director of Stroz Friedberg LLC).  Each witness was deposed only on matters pertaining to CAS.

## IV.     The Court Should Preclude Any Argument that Cox is Not Liable for Infringement Over Its Network by Users Other Than Named Account Holders

Pursuant to Federal Rules of Evidence 402 and 403, the Court should preclude Cox from arguing that it is not liable for infringement over its network by users other than named account holders.  This Court has already rejected Cox's attempt to make the exact same argument in

11

*BMG*.  *BMG*, 149 F. Supp. 3d at 663–64.  The Court explained that in a secondary liability case, the rightsholder may use evidence of direct infringement by *"any one of those users* [with access to Cox's service], notwithstanding the fact that the individual's name does not appear on the bill." *Id.* at 664 (emphasis added).  Accordingly, the Court granted in part BMG's motion *in limine* to exclude argument that Cox is not liable for infringement over its network by users other than named account holders.[4]  Gould Ex. 6 at ¶ 17.

The same logic applies here.  Plaintiffs, through MarkMonitor, have identified rampant infringement of their copyrights by users of the Cox network traceable to Cox-assigned IP addresses.  It does not matter that the infringer happens to be a household member or other network user rather than the named account holder.  *Id.* at 663–64.

In addition to this Court's prior finding and supporting cases cited therein, Cox's own Acceptable Use Policy ("AUP") is instructive.  It provided that each subscriber was responsible for infringement occurring over their account—either by a household member or the account holder.  Gould Ex. 16.  Allowing Cox to make an argument to the jury that contravenes its own AUP would be improper.

## V.      The Court Should Preclude Any Evidence Or Argument Concerning The MarkMonitor '236 Spreadsheet

Under Federal Rules of Evidence 401 and 403, the Court should preclude evidence and argument about a document referred to as the MarkMonitor '236 Spreadsheet.  *See* Gould Decl. ¶ 19 & Ex. 17.  This particular MarkMonitor spreadsheet, produced with Bates Number

---

[4] While the Court granted BMG's motion in part to allow use of related evidence for cross-examination, BMG ECF No. 692 at ¶ 17, the Court should grant Plaintiffs' motion in full.  As the Court held in *BMG* (subsequent to its Order on the parties' motions *in limine*), the identity of individual infringers (whether named account holders or not) has "little relevance in a large-scale secondary liability suit." *BMG*, 149 F. Supp. 3d at 663–64.

MM000236 and known as the "'236 Spreadsheet," shows ████████████████

████████████████████████████████████████████████████████████████

███████████ *See id.*; Gould Ex. 18 at 113-115 (Paszkowski Tr.). ██████████████

████████████████████████████████████████████ that Cox never asked

about in discovery and which Cox has misinterpreted to its own improper benefit.  Cox intends

to use that confusing information to mislead the jury about Audible Magic's verifications.  The

'236 Spreadsheet is otherwise cumulative and should be excluded.[5]

### A.    General Background

MarkMonitor monitored for potentially infringing files being copied and distributed on

the BitTorrent, Gnutella, eDonkey and Ares P2P ████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████.[6]  Declaration of Sam Bahun ("Bahun Decl."), Appx. 1 at ¶ 16.[7]

---

[5] In addition to the actual '236 Spreadsheet, Cox has included on its exhibit list several excerpts or screenshots of the same.  See ECF No. 278-1 (DX 98- DX 100).  All should be excluded for the reasons discussed here.

[6] For over a decade, courts have recognized the use of the Audible Magic software as a proper method to identify the content of an audio file as a specific copyrighted work.  *See, e.g.*, *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1012 (9th Cir. 2013) ("AudibleMagic's technology takes audio 'fingerprints' from video files and compares them to a database of copyrighted content provided by copyright holders."); *Capitol Records, LLC v. Escape Media Grp., Inc.*, No. 12-cv-6646 (AJN), 2015 WL 1402049, at *23 (S.D.N.Y. Mar. 25, 2015); *Arista Records LLC v. Myxer Inc.*, No. 08-CV-03935 (GAF) (JCX), 2011 WL 11660773, at *5 (C.D. Cal. Apr. 1, 2011); *Arista Records LLC v. Lime Wire LLC*, No. 06-CV-05936 (KMW), 2010 WL 10031251, at *6 (S.D.N.Y. Aug. 9, 2010); *Metro–Goldwyn–Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1205–06 (C.D. Cal. 2007).

[7] Appendix 1 to the Bahun Declaration (hereinafter "Bahun Decl., Appx. 1") is a prior declaration from Mr. Bahun submitted in opposition to Cox's discovery sanctions motion.



Bahun Decl., Appx. 1 ¶ 24.  The spreadsheet is Bates Numbered

Plaintiffs_00286431 (the "'431 Spreadsheet");

Gould Decl. ¶ 19 & Ex. 17. Two of

Plaintiffs' experts (Dr. George McCabe and Barbara Frederiksen-Cross), along with one of

Cox's experts (Christian Tregillis), considered and utilized the '431 Spreadsheet.  Plaintiffs and

Cox both included the '431 Spreadsheet on their proposed exhibits lists.  ECF Nos. 278-1 (DX

141), 280-1 (PX 11).

### B.   Anything In The '236 Spreadsheet Not Cumulative Of The '431 Spreadsheet Is Irrelevant And Highly Misleading

Later in discovery, in response to a subpoena, MarkMonitor produced a spreadsheet that

included the data from the '431 Spreadsheet, as well as

—*this is the '236*

*Spreadsheet that is the subject of this motion.*



Gould Decl. ¶ 20.

Cox did not ask either of MarkMonitor's two Rule 30(b)(6) designees to explain the

this case.  Though Cox has no idea what those numbers mean, it has repeatedly made patently

incorrect and misleading arguments concerning their meaning and significance.  For instance, on

its request for discovery sanctions, Cox argued that "we know for a fact that for 2 percent of

those files" (i.e. columns C+D), "10 percent do not have a match.  It states right on there, it is 0

or negative 1.  There is no dispute about that."  Gould Ex. 39 at 15 (Sept. 27, 2019 Hr'g Tr.).

Cox totally ignores ███████████████████████████████████████████

████████████████████████████████████████████████████████████████

█████████████████  Gould Ex. 18 at 94:20–95:22 (Paszkowski Tr.).  Magistrate Judge Anderson

picked up on this and pointed out to Cox's counsel that an entry of -1 was illogical:

> Mr. Buchanan, you're looking at something that says the track duration. That
> is that the work that I am examining is minus one second or minute long.
> Doesn't that -- just a red flag that something doesn't make sense here? That it's
> less than 0 time? To give you the impression that, you know, this information
> really isn't valid information?

Gould Ex. 18 at 71:13-19.

Far from showing a false match or no match as Cox claims, MarkMonitor has confirmed

that ███████████████████████████████████████████████

████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████  It is

like placing an orange pylon over a pothole so drivers swerve around it to avoid mucking up their wheels. [8]

Cox has made these orange pylons the foundation of its attack on the reliability and accuracy of Audible Magic's verifications. Cox made this argument in its sanctions motion, its summary judgment motion, and in several Daubert motions. Cox should not be permitted to infect the jury with its palpably false and misleading theories that lack a basis in the record. The remainder of the '236 Spreadsheet is materially duplicative of the '431 Spreadsheet. Thus, exclusion of the entire '236 Spreadsheet, and any argument based on the additional fields, is warranted to avoid confusion and needless presentation of cumulative evidence.

## VI.     The Court Should Exclude The REV0003444 Spreadsheet And Any Related Testimony Or Argument.

Pursuant to Federal Rules of Evidence 901, 401, and 403, Cox and its expert, Dr. Nick Feamster, should be precluded from presenting evidence or argument at trial concerning a spreadsheet produced by non-party Audible Magic in discovery. The document that should be excluded is Bates numbered REV0003444 and identified as DX 144 on Cox's exhibit list. Cox and Dr. Feamster have indicated that they believe this spreadsheet is ███████████████ ███████████████████████████████████████████████████ Cox and Dr. Feamster have used the spreadsheet to argue that there is an absence of Audible Magic identifications for the works in suit. Specifically, Dr. Feamster has opined that ███████ ████████████████████████████████████████████████ ███████████████████████████████████████████████ *See*

---

[8] To highlight the nature of this "orange pylon" data, Gould Ex. 21 contains all 75 entries across the '236 Spreadsheet in which ████████████████████████████████████ ███████████████

17

Gould Decl. Ex. 22 ¶¶ 32, 35 (Feamster Rept.).  Cox adopted Dr. Feamster's patently inaccurate statement and then piled on.  Cox argued to the Court that these "Audible Magic records show that when putative copies of 75% of the works in suit were compared to the Audible Magic fingerprint database, they did not match."  ECF No. 404 at 12 (Cox SJ Opp.).

### A.  The REV0003444 Spreadsheet is Not Authenticated And Lacks Foundation

At Audible Magic's deposition, Cox failed to authenticate the REV0003444 spreadsheet or ask a single question about it to understand what it purported to be or what it included.  Cox asked questions about a "transaction log" in the abstract but did not present the witness with a specific document or confirm what document the witness had in mind.  Audible Magic's designee testified that ████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████ Gould

Ex. 23 at 173–78 (Ikezoye Tr.).

Elsewhere, Cox has made several baseless arguments to try to overcome its failure to authenticate the document and lay a foundation.  Cox argued that testimony and documents from MarkMonitor about *other* documents somehow authenticates *this* document.  Cox argued that its expert Dr. Feamster can authenticate the document because he attended the deposition and is familiar with how data is recorded.  Finally, Cox argues that Audible Magic authenticated the spreadsheet when it provided a declaration that explains the meaning of certain data fields that Audible Magic tracks, while failing to dispute Cox's arguments to the Court regarding the REV0003444 spreadsheet.  None of these has merit.  Cox had to explore it with Audible Magic.

### B.  Rule 403 Warrants Exclusion

Cox should not be allowed to pollute the trial with testimony designed to confuse and deceive the jury.  The record is clear that MarkMonitor used the Audible Magic technology for audio identifications from 2008-2014.  Thus, even assuming the Audible Magic Spreadsheet is the transaction log that Cox believes, the log is only partially complete for 2012-2014 and, by definition, would not include Audible Magic verifications done for MarkMonitor during 2008-2011.  In addition, nothing about the spreadsheet supports Cox's argument that "when putative copies of 75% of the works in suit were compared to the Audible Magic fingerprint database, they did not match."  The spreadsheet simply does not contain unsuccessful attempted matches of the works in suit to the Audible Magic fingerprint database.

This case is large and complicated enough.  The jury should not have to contend with dizzying spreadsheets and statistical games based on incomplete evidence and misleading from Cox and its witnesses.  As explained above, *see supra* at 14, █████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

While Dr. Feamster has refused to utilize that evidence, it underpins testimony from two of Plaintiffs' experts (Dr. George McCabe and Barbara Frederiksen-Cross) and one of Cox's experts (Christian Tregillis).  The unauthenticated REV0003444 spreadsheet and Cox's misleading testimony and argument about it should be precluded.

### VII.  The Court Should Preclude Emails Cox Received From Customers Purporting To Respond to Plaintiffs' Infringement Notices

When Cox forwarded MarkMonitor's infringement notices to the email addresses Cox had in its records for its subscribers, Cox occasionally received responses.  Cox partially

produced those responses in discovery, with redactions of all names and email addresses of the

purported authors.  No discovery has been taken from those unnamed subscribers.  Cox has

included more than 1,800 of those emails on its exhibit list.  Gould Decl. ¶ 27 & Ex. 24

(examples of Cox subscriber emails); ECF No. 278-1 (DX 363 through DX 2200).

These emails from Cox's subscribers are hearsay that should be excluded under Rules

802 and 403.  Cox cannot use them to cast doubt on whether Plaintiffs have proven direct

infringement.  This is classic hearsay, with a strong potential to mislead and cause unfair

prejudice.  These out of court declarants cannot be cross-examined, nor their assertions

meaningfully tested.  Their names were not even disclosed to Plaintiffs.  The situation is rife for

speculation, confusion, and abuse.  All should be excluded, along with any testimony or

argument about them.

### VIII.   Cox Should Be Precluded From Presenting Evidence and Argument Concerning Plaintiffs' Track-Level Revenues From the Works In Suit

Pursuant to Federal Rules of Evidence 401 and 403, Cox should be precluded from

offering evidence and argument concerning Plaintiffs' track-level revenue generated from the

copyrighted works in suit.  Plaintiffs' track-level revenue has no bearing on any element of

liability or any statutory damages factor and would serve only to mislead and confuse the jury.

This information is also highly confidential, competitively sensitive information that Plaintiffs do

not share publicly.  Its probative value is substantially outweighed by the risk of confusion,

waste of time and prejudice.

Plaintiffs have elected statutory damages.  ECF No, 100.  Cox myopically wishes to

focus a jury only on Plaintiffs' actual damages, which is incorrect.  A jury considering statutory

damages is entitled to consider a range of factors, including lost revenues caused by the

infringement and deterrence.  But Plaintiffs' historic track-level revenues do not inform

20

Plaintiffs' actual damages or even lost revenue.  Nor do Plaintiffs' actual revenues per track

provide a basis to understand the relative value of individual works for purposes of assessing

statutory damages per work.  Plaintiffs' lawful sales were cannibalized by the massive piracy and

everyone agrees the extent of that infringement is unknown and unknowable.  Allowing Cox to

use Plaintiffs' track-level revenue to frame work-by-work damages arguments to the jury is

inherently misleading, unduly prejudicial and unsupported by the evidence.

In moving to compel Plaintiffs' track-level revenue information, Cox argued that it

needed the sensitive data to perform an actual damages analysis.  ECF No. 75 at 7.  Cox said that

"if one assumed that each observation of an alleged infringement displaced a legitimate sale,

then a more precise estimation of Plaintiffs' damages could be calculated with Plaintiffs' per-

work, per-channel revenue data."  *Id.*  Based, in part, on this confounding representation and

over Plaintiffs' vigorous objection, the Court ordered Plaintiffs to produce voluminous and

burdensome track-level revenue by channel for the five-year period from 2011-2014.  ECF No.

93 at 12-33 (Jan. 25, 2019 Hr'g Tr.).  Plaintiffs did so, to the extent available, for the roughly

10,000 works in suit, separating out revenue generated from each work from downloads,

streaming and licensing.  It was a grueling and expensive detour, which, as expected, brought

nothing to the case.

Cox's experts barely considered the information produced.  Its damages expert, Mr.

Tregillis, purported to calculate actual damages by multiplying the number of infringement

notices Cox received (*i.e.*, a false proxy for the number of displaced sales) by an estimated

royalty rate that the Record Company Plaintiffs earn from a lawful digital download (*i.e.*, the

wrong royalty rate).  Gould Ex. 12 at ¶ 87.  His lost revenue analysis is wrong for the reasons

explained in Plaintiffs' Daubert motion, ECF No. 298, but, for purposes of this motion, he did not even touch Plaintiffs' track-level revenue or past sales in that analysis.

Mr. Tregillis' only reference to past sales is a summary of download and streaming revenue for a single year for a handful of individual sound recordings (out of more than 10,000 copyrighted sound recordings and musical compositions). Gould Ex. 12 at ¶¶ 80-82. He also waived his hand and summarily opined that "███████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████" *Id.* at ¶ 13. Setting aside whether this vague opinion means anything at all, it is classic *ipse dixit* with no support or reliable process. Mr. Tregillis did absolutely no analysis of the data and did not rely on it, claiming that there was no relevant deposition testimony about the track-level revenue reports on which he could rely. *Id.* at ¶ 82. He then served two more reports, the last served just weeks before the close of discovery, and still he did nothing more. Cox's *de minimis* use of Plaintiffs' track-level revenue by its damages expert is telling—it is simply not relevant and would not be helpful to the jury. It should be excluded.

### IX. Cox Should be Precluded from Offering Affirmative Deposition Testimony From Witnesses Cox Controls And Could Bring To Trial To Testify In Person

Cox should be precluded from offering deposition testimony from six witnesses it controls because they are not unavailable under Fed. R. Evid. 804(a)(5)(A) and such deposition testimony is therefore inadmissible hearsay. Cox indicated on its witness list that it may offer deposition testimony from Brian Stifel, Clint Summers, Paul Jarchow, Marcus Delgado, Jason Zabek, and Joseph Sikes. ECF No. 221. It also filed affirmative deposition designations for each. *See* ECF No. 359. Messrs. Stifel, Summers, Jarchow, and Delgado are current Cox employees. Messrs. Zabek and Sikes are former employees with separation agreements

requiring each to " ███████████████████████████████████████

████████████████████." *See* Gould Exs. 25–26 at ¶¶ 6-7 (PX 429, PX 430), 27 at 26:3-6

(Sikes Tr.); 28 at 17:20-25 (Zabek Tr.).  Mr. Zabek testified that he would come to trial if asked.

Gould Exs. 28 at 13:5-7 (Zabek Tr.).

Under FRE 804(a)(5)(A), "[a] declarant is considered unavailable as a witness if the

declarant:  (5) is absent from the trial or hearing and the statement's proponent has not been able,

by process *or other reasonable means*, to procure:  (A) the declarant's attendance."  (emphasis

added).  There can be no question that Cox has failed to use reasonable means to get these

witnesses to trial, as their presence would require Cox simply asking (or telling).

Nor does Fed. R. Civ. P. 32 compel a different result.  In relevant part, Rule 32(a)(4)

provides:  "A party may use for any purpose the deposition of a witness, whether or not a party,

if the court finds:  (B) that the witness is more than 100 miles from the place of hearing or trial or

is outside the United States, *unless it appears that the witness's absence was procured by the

party offering the deposition*."  Fed. R. Civ. P. 32(a)(4) (emphasis added).  "As the proponent of

the deposition, [Cox bears] the burden of demonstrating to the trial court that [it] had not

procured [the witnesses'] absence."  *Fairfield 274-278 Clarendon Tr. v. Dwek*, 970 F.2d 990,

995 (1st Cir. 1992) (citations omitted).  Cox has procured the absence of Messrs. Stifel,

Summers, Jarchow, Delgado, Zabek and Sikes by failing to exercise its control over them and

bring them to trial.  Other federal courts have found a party's failure to bring its own witnesses to

trial grounds for excluding the witnesses' affirmative deposition testimony.  *See Culebra II, LLC

v. River Cruises and Anticipation Yachts, LLC*, 564 F. Supp. 2d 70, 80 (D. Me. 2008)

(defendant's unexplained failure to appear at trial precluded admission of his deposition

testimony under Fed. R. Civ. P. 32).  Because the witnesses are not unavailable, their affirmative

23

deposition testimony is hearsay and should be excluded.[9]  Alternatively, as can be explored in connection with jury instructions, the Court should consider an adverse inference instruction concerning material witnesses peculiarly within Cox's control that it does not bring to trial.

### X.   Cox Should Be Precluded From Offering Live Testimony From Four Key Witnesses It Refuses To Make Available For Live Examination in Plaintiffs' Case in Chief

The Court should preclude Cox from presenting live testimony from four key witnesses it controls but refuses to make available live during Plaintiffs' case in chief.  Cox's refusal to produce Jason Zabek, Joseph Sikes, Brent Beck, and Matt Carothers live in Plaintiffs' case undermines a fair, efficient and sensible trial.  As one district court put it under identical circumstances:

> [A]lthough the testimony of these two witnesses is critical to the jury's understanding of the issues, [Defendant] wishes to hold back their live testimony, from which the jury will be able to evaluate their demeanor and better assess their credibility, until its own case.  This gamesmanship will not assist the ascertainment of truth and will needlessly consume the jury's time by requiring [Plaintiff] to read to the jury the witnesses' deposition testimony.

*Maran Coal Corp. v. Societe Generale De Surveillance S.A.*, No. 92-CV-8728 (DLC), 1996 WL 11230, at *2 (S.D.N.Y. Jan. 10, 1996) (footnote omitted) (ordering defendants to produce key witnesses for plaintiff's case or be precluded from calling them as live witnesses in their own case).  The Court has inherent power under Fed. R. Evid. Rule 611(a) and Fed. R. Civ. P. Rule 1 to grant this remedy and should do so to ensure a fair, efficient and sensible trial.

---

[9] Because Cox did not identify Mr. Delgado on its Rule 26(a)(3) Witness List, *see* ECF No. 221, he should be precluded from testifying in any manner, whether live or by deposition.  *See* ECF No. 52 ("Non-expert witnesses and exhibits not so disclosed and listed [on the parties' Rule 26(a)(3) disclosures] will not be permitted at trial except for impeachment or rebuttal . . ."

Plaintiffs seek to call Messrs. Zabek, Sikes, Beck, and Carothers in their case in chief. *See* Gould Ex. 29 (Pls'. Witness List).[10]   There can be no dispute that all four are key witnesses. Messrs. Zabek and Sikes were the number one and two leaders in the abuse department overseeing and implementing Cox's graduated response policy during the relevant time frame. They are the authors of the most telling documents about Cox's copyright abuse handling (e.g., "f the dmca!" and deciding not to terminate customers to retain revenue).   Mr. Carothers is the Principal Security Architect, designed CATS and was Cox's Rule 30(b)(6) designee on Cox's policies and procedures for responding to infringement notices, CATS, Cox's graduated response, its right and ability to terminate subscribers, infringement notices from Plaintiffs and other key topics.   Gould Exs. 4 at 12-14 (Carother Tr.), 30 at Topics 8-11, 13-15, 23-24, 30-32, 37, 40, 50 (Rule 30(b)(6) Notice).   Mr. Beck is the senior engineer who interfaced with the abuse department and the lead developer and engineer of CATS.   He was Cox's Rule 30(b)(6) designee on the core infringement ticket data Cox produced (including actions taken on those tickets), Cox's IP assignment protocol and process for identifying customers associated with IP addresses in notices, and Cox's termination of subscribers for violations of Cox's Acceptable Use Policy. Gould Exs. 8 at 13-15 (Beck Tr.), 30 at Topics 24-29, 32, 38, 41.

---

[10] Though Plaintiffs also expect to present testimony from two other witnesses Cox controls (Sidd Negretti and Sanford Mencher), and may do so for several others, Plaintiffs have conservatively limited their request for live attendance in their case to just the four key witnesses discussed here. The testimony Plaintiffs anticipate presenting from Messrs. Negretti and Mencher is shorter, narrower and can be accomplished on cross examination in Cox's case.  Plaintiffs therefore request that they be permitted to cross examine them outside the scope of direct as part of their case.  This will minimize the need for disjointed presentation in part by deposition and in separate part by live cross examination.  *See* Fed. R. Evid. 611(b)(2) (cross ordinarily limited to scope of direct but "[t]he court may allow inquiry into additional matters as if on direct examination").

Defendants have similarly indicated that they intend to call Messrs. Carothers and Beck live, and may call Messrs. Zabek and Sikes live or by deposition.  *See* Gould Ex. 31 (Defs'. Witness List).  All four witnesses are beyond the Court's Rule 45 subpoena power, but under Cox's control.  Messrs. Carothers and Beck are current Cox employees.  Messrs. Zabek and Sikes are contractually required to attend trial if asked by Cox, as described above.  *See supra*, Section IX.  Mr. Zabek testified that he would come to trial if asked.  Gould Exs. 27 at 13:5-7 (Zabek Tr.)  Plaintiffs have asked Cox to make all four available for live testimony during Plaintiffs' case in chief, but Cox has refused.[11]

There is a strong preference for live testimony given in person from the witness stand. *See Koger v. Norfolk S. Ry. Co.*, No. 08-CV-0909, 2009 WL 10688329, at *1 (S.D.W. Va. Oct. 8, 2009); *see also Griman v. Makousky*, 76 F.3d 151, 153 (7th Cir. 1996).  To further that goal, prevent unfairness and avoid wasting time, courts routinely hold "that a party may not limit a witness that the party intends to call at trial from testifying only during its own case in chief." *Buchwald v. Renco Grp., Inc.,* No. 13-CV-7948 (AJN), 2014 WL 4207113, at *1 (S.D.N.Y. Aug. 25, 2014) (citing cases).  "This is not to say that these defendants must necessarily appear at all. Rather, it is to say that defendants can't have it both ways.  If these individuals will appear live, then they must appear live during plaintiffs' case in chief so that they can be called by the

---

[11] Cox has indicated that it would consider making one of Carothers *or* Beck available live in Plaintiffs' case if Plaintiffs could explain why they cannot use the witness's deposition testimony.  Plaintiffs explained all the reasons discussed herein to no avail.  Gould Exs. 37-38 (email chains between counsel).  Cox said it has not decided whether it will call Zabek or Sikes live and would not agree to produce them live in Plaintiffs' case.  *Id.*  For the reasons discussed above, Cox cannot present Zabek or Sikes by deposition and must do so live or not at all.

plaintiffs if they so desire." *CGC Holding Co., LLC v. Hutchens*, No. 11-CV-01012-RBJ-KLM, 2016 WL 6778853, at *2 (D. Colo. Nov. 16, 2016).[12]

   *Buchwald v. Renco Grp., Inc.* is instructive.  2014 WL 4207113.  The parties agreed that five out-of-state witnesses were critical to the Trustee-Plaintiff's case; four were defendant employees and one an employee of defendant's subsidiary.  *Id.* at n.1.  The defendant moved for a protective order preventing the Trustee from compelling their trial testimony during his case in chief.  Recognizing the limit on its Rule 45 power, the court instead applied its "authority under Rule 611(a) to prevent those witnesses from testifying for Defendants if they are not made available to testify for the Trustee."  *Id.* at *2.

   The Court should reach the same result.  The trial is expected to last three weeks, heading right into December holidays.  The parties have each listed over 40 witnesses they expect to call or may call; many overlap.  Efficiency and fairness strongly favor having witnesses take the stand once with both sides conducting their full examinations at that time.  Such presentation saves time and promotes a smoother and more sensible case for the jury.  It also avoids the tactical advantage of Cox refusing to make key witnesses available and reduces the need for days-long deposition testimony from key witnesses who will later appear in person.  Forcing Plaintiffs to rely on deposition testimony while Cox presents the same witness live may be

---

[12] *See also R.B. Matthews, Inc. v. Transamerica Transp. Servs., Inc.*, 945 F.2d 269, 273 (9th Cir.1991) ("By denying RBM's requests to produce Reed and White as live witnesses, TTS engaged in gamesmanship, forcing RBM to rely on depositions.  The district court did not abuse its discretion when it forced TTS to rely on deposition testimony as well."); *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 776 F. Supp. 838, 839 (S.D.N.Y.1991) ("If [the witness] elects to absent himself during plaintiffs' case, he will not testify at all, and plaintiffs will be free to comment upon his absence."); *Iorio v. Allianz Life Ins. Co. of N. Am.*, No. 05CV633 (JLS) (CAB), 2009 WL 3415689 at *6 (S.D. Cal. Oct. 21, 2009) ("[I]f Plaintiffs are forced to show the videotaped depositions or read the transcript into the record of any of the movants in this action because Defendants have failed to produce them, Defendants will thereafter be precluded from producing the same witnesses in person.").

confusing, and the jury may draw inappropriate conclusions from the disparity.  The Court

should exercise its inherent authority to ensure a fair, more efficient trial.

## XI.      The Court Should Preclude Testimony From Victoria Sheckler

This is the second time Cox has tried to force duplicative and cumulative testimony from

Victoria Sheckler, a Recording Industry Association of America ("RIAA") employee.

Magistrate Judge Anderson already rejected Cox's effort to permit her deposition to proceed.  As

before, it should not be allowed.  Plaintiffs therefore move to preclude Cox from presenting

testimony from Ms. Sheckler.  Her testimony would be duplicative of that from RIAA's General

Counsel at the time, Steve Marks.  Mr. Marks was Ms. Sheckler's direct supervisor, and he has

already appeared as the corporate designee for the RIAA.

Exclusion is warranted under Federal Rule of Evidence 403 because the probative value

Ms. Sheckler's testimony is substantially outweighed by the danger of undue delay, wasting time

and needless presentation of cumulative evidence during an already lengthy three-week trial.  In

addition (or in the alternative), the Court should quash Cox's trial subpoena to Ms. Sheckler

because forcing her to be available to testify for up to three weeks on issues Cox can present

through RIAA's corporate designee subjects her to an undue burden.[13]

In April 2019, Cox served a Rule 30(b)(6) deposition subpoena on RIAA covering 28

broad topics, as well as an individual deposition subpoena on Ms. Sheckler.  *See* Gould Exs. 32

(RIAA subpoena), 33 (Sheckler subpoena).  The Rule 30(b)(6) topics included the number of

infringement notices Cox would accept from RIAA, RIAA's relationship with Plaintiffs and

---

[13] Undersigned counsel also represents Ms. Sheckler in this matter.  Plaintiffs incorporate this quash request here because the issues materially overlap and to minimize the burden on the Court of filing additional papers on the same issue.  If the Court prefers or requires a standalone motion to quash from Ms. Sheckler, she would be happy to file one.

MarkMonitor, and numerous broad issues concerning the Copyright Alert System ("CAS").  *Id.*

When RIAA designated Mr. Marks as its Rule 30(b)(6) designee, Cox complained and tried to

force RIAA to designate Ms. Sheckler on certain topics.  Cox then sought leave of Court to take

an extra non-party deposition of Ms. Sheckler in her individual capacity (in addition to the non-

party RIAA deposition) to explore several of the noticed topics.  Specifically, Cox told this Court

that it needed testimony from Ms. Sheckler "due to her intimate knowledge of the

correspondence between the RIAA and Cox, as she was the employee of the RIAA who had all

of the relevant correspondence with Cox concerning the RIAA notices that form the basis for

Plaintiffs' claims in this case," including "the number of notices [Cox] would accept from the

RIAA."  ECF Nos. 141 at 5.

Magistrate Judge Anderson rightly denied Cox's request.  *See* Gould Ex. 34 at 16-17

(May 17, 2019 Hr'g Tr.)  The Court understood that Ms. Sheckler had no personal knowledge

outside of her work as an RIAA representative and that RIAA had already offered a corporate

designee on all the topics Cox wanted to explore with Ms. Sheckler.  As the Court explained:

> I think anything that she did she would have done as a corporate representative
> of RIAA. The 30(b)(6) notice covers those particular topics, and I really don't
> see there being good cause to extend the number of depositions to allow the
> person wanting to take the deposition to designate who should be the 30(b)(6)
> designee, which is, in essence, what they're trying to do.

*Id.* at 16-17.  Thereafter, in June 2019, Cox deposed RIAA, through Mr. Marks, on 28 broad

topics over the course of a full-day.

Undeterred, Cox indicated that it "expects" to present live testimony from both Mr.

Marks and Ms. Sheckler, ECF No. 221, and served trial subpoenas on both putative witnesses on

July 29, 2019.  *See* Gould Exs. 35 (Marks trial subpoena), 40 (Sheckler trial subpoena).  On

August 12, 2019, Ms. Sheckler, RIAA and Plaintiffs timely objected to Ms. Sheckler's subpoena on the grounds stated in this motion.  Gould Ex. 36.

As before, there is no good reason to drag Ms. Sheckler into Court to testify on topics Cox has deposed RIAA on and can present through Mr. Marks.  Cox has already proffered to the Court the testimony it wants to present from Ms. Sheckler and the Court rejected it as unnecessarily duplicative of RIAA's Rule 30(b)(6) testimony.  Permitting Cox to present that testimony from both Mr. Marks and Ms. Sheckler would be needlessly cumulative and unnecessary extend an already long trial.  In addition, Ms. Scheckler is a non-party and should be spared being called away from work and hauled into court for days on end for no good purpose. *Cook v. Howard*, 484 F. App'x 805, 812 n.7 (4th Cir. 2012) (under Rule 45, courts are required to quash a subpoena that "subjects a person to undue burden").

## CONCLUSION

For the reasons set forth herein, the Court should preclude the evidence and argument discussed above at trial.  A proposed Order is submitted herewith.

Dated October 19, 2019

Respectfully Submitted,

/s/ Scott A. Zebrak
Scott A. Zebrak (38729)
Matthew J. Oppenheim (*pro hac vice*)
Jeffrey M. Gould (*pro hac vice*)
Kerry M. Mustico (*pro hac vice*)
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Avenue, NW, 5th Floor
Washington, DC 20015
Tel:  202-480-2999
scott@oandzlaw.com
matt@oandzlaw.com
jeff@oandzlaw.com
kerry@oandzlaw.com

*Attorneys for Plaintiffs*