# Exhibit 15

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

```
---------------------------------:
                                 :
BMG RIGHTS MANAGEMENT (US) LLC,  :
et al.,                          :
            Plaintiffs,          :
                                 : Case No. 1:14-cv-1611
    vs.                          :
                                 :
                                 :
COX ENTERPRISES, INC., et al.,   :
            Defendants.          :
---------------------------------:
```

HEARING ON MOTIONS

October 30, 2015

Before: Liam O'Grady, USDC Judge

APPEARANCES:

Jeffrey M. Theodore, William G. Pecau, Walter D. Kelley, Jr., John M. Caracappa, Michael J. Allan, Jeremy D. Engle, and Stephanie L. Roberts, Counsel for the Plaintiffs

Andrew P. Bridges, Brian D. Buckley, Guinevere Jobson, and Craig C. Reilly, Counsel for the Defendants

Norman B. Linnell   OCR-USDC/EDVA   (703)549-4626

Case 1:18-cv-00950-PTG-JFA   Document 473-18   Filed 10/21/19   Page 3 of 5 PageID# 20605
Case 1:14-cv-01611-LO-JFA   Document 510-1   Filed 11/02/15   Page 49 of 81 PageID# 14743

49

1    And there are multiple cases, Your Honor, holding
2  that a repeat infringement policy is not adequate as a matter
3  of law where it is undisputed that, as it realistically is
4  here, there is not a genuine dispute that Cox has failed to
5  terminate known repeat infringers.  And when it fails to do
6  that, it takes itself out of the safe harbor.
7         As the <u>ALS Scan</u> case out of the Fourth Circuit said,
8  the safe harbor is for innocent, innocent service providers.
9  And that innocence disappears when you learn of infringement
10 and you do nothing.
11        That's what we have here.  Cox knew of infringement.
12 It did nothing.  That as a matter of law takes it outside of
13 the DMCA safe harbor.
14        THE COURT:  Okay.  Thank you.
15        Mr. Bridges.
16        MR. BRIDGES:  Thank you, Your Honor.  Evidence of
17 actual terminations, I would point the Court to Linda Trickey's
18 declaration on the summary judgment motion, paragraph 17.  The
19 Beck declaration opposing the plaintiffs' motion, Exhibit A.
20 Even Exhibit 55 of Mr. Theodore's declaration.
21        I actually commend to the Court, and they have picked
22 what they have found to be -- they think to be the most
23 inflammatory e-mails, it's actually worthwhile reading the full
24 e-mails and seeing the discussions that are going on.
25        There is a reluctance to terminate.  There is an

Case 1:18-cv-00950-PTG-JFA   Document 473-18   Filed 10/21/19   Page 4 of 5 PageID# 20606
Case 1:14-cv-01611-LO-JFA   Document 510   Filed 11/02/15   Page 50 of 81 PageID# 14744

50

1  effort to work with people.  It's, let's try to get them to
2  shape up.  And there is an effort.  And there is evidence that
3  people do shape up.  And that is why Cox works so hard with
4  them.
5           Your Honor asked about other ISPs.  And actually
6  that's one of the things we use the Rosenblatt declaration
7  about.
8           THE COURT:  Yeah, but he doesn't know.  He's familiar
9  with the policies, and he thinks this and he thinks that, but
10 you need third-party people who are working at those entities
11 to have personal information.  And he doesn't have the personal
12 information.
13          MR. BRIDGES:  But he did draw upon the published
14 statements --
15          THE COURT:  Yeah.
16          MR. BRIDGES:  AT&T, Your Honor --
17          THE COURT:  Well, if you drew upon the public
18 statements that Cox made, you would think that they had a
19 wonderful policy and that they had a very structured review of
20 when terminations would occur.  And the numbers belie that.  So
21 that's why it's of marginal use.
22          MR. BRIDGES:  So there is I think some other
23 information.  We do know that AT&T -- I am pretty sure, AT&T
24 actually requires an adjudication.
25          Verizon didn't terminate anybody, I believe, until

Case 1:18-cv-00950-PTG-JFA Document 473-18 Filed 10/21/19 Page 5 of 5 PageID# 20607
Case 1:14-cv-01611-LO-JFA Document 510-1 Filed 11/02/15 Page 51 of 81 PageID# 14745

51

1  2012.  One of their e-mails that they tried to use against Cox
2  because it has a chimp on it, chimp number 6, it's discussing a
3  news article that says that Verizon has started terminating
4  people.  And the evidence is that Cox has been terminating
5  people I think since at least 2004, if not earlier.  There was
6  a tip in the numbers, but there are real terminations.
7           THE COURT:  So that would be evidence if it's in the
8  record that you could present to a jury as to whether your
9  program was reasonable.
10          MR. BRIDGES:  That's correct, Your Honor.  One thing
11 though that I think is useful in looking at Rightscorp's
12 arguments here and its notices -- it's not an obligation.  It
13 is a condition of the safe harbor, is to adopt, notify users
14 of, and reasonably implement a policy for the termination of
15 account holders and subscribers who are repeat infringers.
16          Now, I can't remember if it was Mr. Pecau or somebody
17 on the other side earlier said the law makes no difference
18 between subscribers and users.  It absolutely does make a
19 difference in the text of section 512(i).  It doesn't say:
20 Terminate subscribers where their accounts have been misused.
21 It said:  Terminate subscribers or account holders who are
22 repeat infringers.
23          Now, the big question, and this is part of the
24 uncertainty that the Court has pointed to in the law, elsewhere
25 in section 512 there are references to claims of infringement.