1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

---------------------------------:
                                 :
SONY MUSIC ENTERTAINMENT, et al.,:
           Plaintiffs,           :
                                 :
     -vs-                        :   Case No. 1:18-cv-950
                                 :
                                 :
COX COMMUNICATIONS, INC., et al.,:
           Defendants.           :
                                 :
---------------------------------:


HEARING ON MOTIONS

September 27, 2019

Before:  John F. Anderson, U.S. Mag. Judge


APPEARANCES:

Matthew J. Oppenheim, Scott A. Zebrak, and Jeffrey M. Gould,
Counsel for the Plaintiffs

Thomas M. Buchanan, Michael L. Brody, and
Jennifer A. Golinveaux, Counsel for the Defendants




Norman B. Linnell  OCR-USDC/EDVA  (703)549-4626

Case 1:18-cv-00950-PTG-JFA Document 473-42 Filed 10/21/19 Page 2 of 5 PageID# 20721
Case 1:18-cv-00950-LO-JFA Document 433 Filed 10/08/19 Page 13 of 76 PageID# 18806

13

1  Okay. We get the '431 spreadsheet, initially has no metadata,
2  so we don't know when it was created. It turns out it was
3  created in 2018 and changed and verified. And then altered or
4  whatever and then produced.
5  　　　　　So you have these two spreadsheets. So let's start
6  off, why does the '236 spreadsheet have on it these files for 2
7  percent of the -- of the files on there? The columns or the
8  fields for 2 percent. And so, that -- why was that sanitized
9  if it's superfluous and means nothing?
10 　　　　　And then we know we have the Audible Magic, the Rev
11 344, which, according to our expert, and their expert agrees,
12 when you look at that and examine that, it only shows a match
13 for 25 percent of the works in suit.
14 　　　　　THE COURT: Tell me what you mean by "a match."
15 　　　　　MR. BUCHANAN: So the match is, the way it works, as
16 I understand it from reading everything in this case, is once
17 MarkMonitor downloads, say Born to Run, and they create a file,
18 and then they run it against, remotely against the Audible
19 Magic database. They run it for a certain period of time, an
20 unknown file against a known file.
21 　　　　　At some point in time there is a match, and that's
22 the Match Offset column which has been removed from the '431
23 spreadsheet.
24 　　　　　The Match Duration is how long the match takes place.
25 It is supposed to be 20 seconds. So it is like Shazam, I don't

14

1 know if you have that app. You hold it up to your TV, if there
2 is a song playing, it matches like in a second.
3            So that's how it works. And so -- and then Track
4 Duration, which is also a field that has been removed, that's
5 the length of the known file in the Audible Magic database.
6 That's been removed.
7            And then the Match Percentage file, interestingly
8 enough, MarkMonitor added that as a field. And that compares
9 the known -- the length of the known file with the unknown file
10 with the length of the match. And they say that's not
11 relevant.
12            So the point is, once you start running, okay, the
13 unknown file against the known file inside -- within the
14 database of Audible Magic, at some point in time you're running
15 that over 20 seconds to make -- there is a match. And that's
16 when this ID, this verification number comes out, which they
17 also say is not relevant.
18            So what we're saying is just step back, you say we go
19 to trial and we have the '431 spreadsheet. And it says Real as
20 to everyone. Yet there is a separate spreadsheet that they are
21 objecting to the admissibility, and which we never would have
22 obtained had MarkMonitor, okay, one -- when we moved to compel
23 them, there is a distinct possibility we would have never
24 gotten that. We would have never known what was on there, and
25 that had been sanitized.

Case 1:18-cv-00950-PTG-JFA   Document 473-42   Filed 10/21/19   Page 4 of 5 PageID# 20723
Case 1:18-cv-00950-LO-JFA   Document 433-1   Filed 10/08/19   Page 15 of 78 PageID# 18806

15

1    So then you look at that.  So we know for a fact that
2    for 2 percent of those files, that 2 percent, 10 percent do not
3    have a match.  It states right on there, it is 0 or negative 1.
4    There is no dispute about that.  For half of the 2 percent,
5    it's less than 50 percent.
6            So again, if you're running an unknown song against a
7    known song, and that might not be the proper technology --
8    terminology, but you're running them against Born to Run in a
9    digitized file against the equivalent on the Audible Magic
10   database, the unknown versus the known, and you run it for
11   20 seconds.
12           If only half of it matches, you're not sending a
13   notification.  That is not verification.
14           So at a minimum, we have all this data as to 2
15   percent of the files.  And what we're saying, what if we had
16   the entire 57,000 files, what would it project out?  We would
17   have 10 percent that would show no match.  And then we would
18   have -- we would have 50 have percent, that would be less than
19   half, or 42 percent that were less than half, 50 percent less
20   than 90 percent.
21           So before the jury, that would go definitely to the
22   credibility of that document.  We're talking about a
23   billion-and-a-half in damages.  So what's 10 percent?  That's
24   $150 million.  You get up to half, it is 750 million.
25           So what they're saying is, we don't get in the

1  Audible Magic database, that spreadsheet. We don't get in
2  '236. All that comes in is this sanitized version that
3  somebody created on behalf of the plaintiffs. Someone removed
4  that data. We don't who. Why did they move it? Who did it?
5  Those are questions that maybe the counsel for the plaintiffs
6  can answer.
7          But why, if it is so superfluous and irrelevant, did
8  they remove it? And why does it show no match for 10 percent?
9  That is -- that is really significant.
10         And the case law is clear. I mean, if you show that
11 you have data that is crucial to -- to the moving party that
12 could affect the jury, could be instrumental in
13 cross-examination or challenging the credibility of the
14 document, or challenging 750 million in damages, that is
15 something that should not be allowed in in that context unless
16 they prove -- put up the underlying data. And they haven't.
17         They came up with this post hoc Hail Mary, that's
18 what -- the only way I can look at it, it is inconsistent with
19 all the testimony, that somehow --
20         THE COURT: Again, let me just step back and make
21 sure I'm understanding. You're saying they have information
22 that they've removed from this spreadsheet that hasn't been
23 produced to you? Or are you saying that they destroyed
24 information that isn't currently available?
25         MR. BUCHANAN: I'm saying that -- both.