# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| SONY MUSIC ENTERTAINMENT, *et al.*,<br><br>        Plaintiffs,<br><br>   v.<br><br>COX COMMUNICATIONS, INC. and<br>COXCOM, LLC.<br><br>        Defendants. | Case No. 1:18-cv-00950-LO-JFA |

**COX'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION *IN LIMINE* (NO. 4) TO PRECLUDE EVIDENCE AND TESTIMONY OF INFRINGEMENT AND HARM <u>OTHER THAN THAT ALLEGEDLY REPRESENTED BY THE RIAA NOTICES</u>**

███████████████

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ................................................................................................ 1

II.    LEGAL AUTHORITY ....................................................................................... 2

III.   ARGUMENT ...................................................................................................... 2

    A.   Evidence relating to Cox's purported financial benefit from subscribers who received only one notice should be precluded, as it is not related to Plaintiffs' theory of liability.................................................................... 2

    B.   Evidence relating to Cox's purported financial benefit from subscribers who received notices outside of the Claim Period................................... 5

        1.   This evidence and testimony is not relevant to Plaintiffs' claim for vicarious liability. ..................................................................... 5

        2.   This evidence is not relevant to Plaintiffs' claim for statutory damages........................................................................................ 6

    C.   Evidence relating to Cox's profits from anything other than high-speed Internet during the Claim Period should be precluded. ......................... 7

    D.   Evidence relating to the general harm or effect from infringement, not specific to that purportedly represented by the RIAA Notices, should be precluded........................................................................................... 8

    E.   Evidence relating to instances of infringement by Cox's subscribers not otherwise allegedly represented by the RIAA Notices and testimony relating to the scale of MarkMonitor's RIAA notice program should be precluded......................................................................................... 11

IV.    CONCLUSION................................................................................................ 13

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*,
   149 F. Supp. 3d 634 (E.D. Va. 2015), *aff'd in part, rev'd in part,* 881 F.3d 293
   (4th Cir. 2018)..................................................................................................6, 7, 8

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993)........................................................................................3

*Intelligent Verification Sys., LLC v. Microsoft Corp.*,
   No. 2:12-CV-525, 2015 WL 1518099 (E.D. Va. Mar. 31, 2015), *aff'd sub*
   *nom. Intelligent Verification Sys., LLC v. Majesco Entm't Co.*, 628 F. App'x
   767 (Fed. Cir. 2016)........................................................................................2

*James River Mgmt. Co. v. Kehoe*,
   No. CIV.A. 3:09CV387, 2010 WL 431477 (E.D. Va. Feb. 5, 2010) ...............3, 4, 5

*Palmer v. Big Lots Stores, Inc.*,
   No. 3:14-CV-276, 2015 WL 165315 (E.D. Va. Jan. 12, 2015) .................................2

*Perfect 10, Inc. v. Giganews, Inc.*,
   No. CV 11-07098-AB SHX, 2014 WL 8628031 (C.D. Cal. Nov. 14, 2014),
   *aff'd*, 847 F.3d 657 (9th Cir. 2017).................................................................6

*United States v. Capers*,
   61 F.3d 1100 (4th Cir. 1995) ..........................................................................2

**Other Authorities**

Federal Rule of Evidence 401 ........................................................................5

Federal Rule of Evidence 403........................................................................5

## I.    INTRODUCTION

With this motion, Cox seeks to preclude Plaintiffs from eliciting evidence relating to alleged infringement or damages that is either unsubstantiated or irrelevant.  Specifically, Cox seeks an order precluding Plaintiffs from introducing the following evidence:

- Documents, testimony, and argument relating to Cox's purported financial benefit from retaining subscribers who received only <u>one</u> notice, which is fewer than the number triggering liability under Plaintiffs' theory of the case but for which Plaintiffs have put forward an expert to so opine;

- Documents, testimony, and argument relating to Cox's profits and/or revenue that is based, at least in part, on subscribers who received notices outside of the Claim Period;

- Documents, testimony, and argument relating to Cox's profits and/or revenue from outside of the Claim Period and from anything other than high-speed Internet;

- Documents, testimony, and argument relating to the general harm or effects of piracy, which is not specific to that harm allegedly caused by Cox to Plaintiffs at issue in this case, which is highly suspect; and

- Documents, testimony, and argument relating to observations of alleged infringement by Cox's subscribers beyond those allegedly represented by the RIAA Notices[1] that were produced in this case, including MarkMonitor's so-called "████████."[2]

Plaintiffs seek relief for alleged copyright infringement by nearly 60,000 of Cox's subscribers involving more than 10,000 of Plaintiffs' alleged works.  The alleged infringement took place over a nearly two-year period.  There is no basis for Plaintiffs to attempt to introduce

---

[1] The RIAA Notices are those sent by MarkMonitor and the RIAA on behalf of the Label Plaintiffs.

[2] Cox also moves in its motion *in limine* No. 2 to exclude Plaintiffs' use of third-party notices.

evidence relating to alleged harm that is simply not part of this case.  This case is complicated enough without adding allegations of harm and proof that is well outside the Claim Period set by the Plaintiffs in their Amended Complaint, which is a recipe for juror confusion.  Plaintiffs should not be permitted to further muddy the waters with this extraneous evidence.  It will only mislead and confuse the jury and unfairly prejudice Cox.

## II.     LEGAL AUTHORITY

"The purpose of a motion *in limine* is to allow a court to rule on evidentiary issues in advance of trial in order to avoid delay, ensure an even-handed and expeditious trial, and focus the issues the jury will consider." *Intelligent Verification Sys., LLC v. Microsoft Corp.*, No. 2:12-CV-525, 2015 WL 1518099, at *9 (E.D. Va. Mar. 31, 2015), *aff'd sub nom. Intelligent Verification Sys., LLC v. Majesco Entm't Co.*, 628 F. App'x 767 (Fed. Cir. 2016) (citing *United States v. Verges,* No. 1:13-CR-222, 2014 WL 559573, at *2 (E.D. Va. Feb. 12, 2014)).  The motion *in limine* is a party's avenue to "exclude evidence prior to the commencement of trial." *Palmer v. Big Lots Stores, Inc.*, No. 3:14-CV-276, 2015 WL 165315, at *1 (E.D. Va. Jan. 12, 2015).  And the admissibility of evidence "rests within the sound discretion of the trial court." *United States v. Capers,* 61 F.3d 1100, 1106 (4th Cir. 1995); *see also Palmer*, No. 3:14-CV-276, 2015 WL 165315, at *1.

## III.    ARGUMENT

### A.    Evidence relating to Cox's purported financial benefit from subscribers who received only *one notice* should be precluded, as it is not related to Plaintiffs' theory of liability.

Plaintiffs seek to hold Cox secondarily liable for alleged instances of infringement committed by Cox's subscribers after those subscribers were the subject of at least two prior notices (*i.e.*, upon the subscriber's receipt of a third notice).  Am. Compl., ¶ 10; *see also* ECF 325 (Pls.' MSJ, SUF, ¶ 16); Ex. 1 (McCabe Rpt., ¶ 4).  Accordingly, Plaintiffs' expert Dr. Lehr

performed calculations based on the total "value" of Cox's subscribers who received at least three notices and those who received at least five notices. *See, e.g.*, Ex. 2 (Lehr Rpt., ¶ 13); ECF 325 (Pls' MSJ, SUF, ¶ 37). Yet he also performed these same calculations based on the number of subscribers who received at least *one notice*. *See, e.g.*, Ex. 2 (Lehr Rpt., ¶ 13). Because Plaintiffs do not seek to hold Cox liable for the alleged infringement committed by Cox's subscribers who received only one notice, this calculation and any testimony related to it is irrelevant, prejudicial, and should be precluded.

It is axiomatic that an expert's opinion must "fit" the case. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591, (1993). "'Fit is not always obvious, and scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes.'" *James River Mgmt. Co. v. Kehoe*, No. CIV.A. 3:09CV387, 2010 WL 431477, at *2 (E.D. Va. Feb. 5, 2010) (quoting *Daubert*, 509 U.S. at 591).

While Plaintiffs do not reference in their motion for summary judgment Dr. Lehr's calculation of the purported "value" of Cox's subscribers who received at least one notice, or how much Cox "collected" from these subscribers, *see* ECF 325 (Pls.' MSJ at 1-2), Plaintiffs argue in response to Cox's motion to exclude Dr. Lehr's testimony that Dr. Lehr is prepared to provide these calculations at trial:





ECF 376 at 2-3 (emphases added).

In *James River Mgmt. Co. v. Kehoe*, the court excluded a putative expert's testimony in part "because the theory posited … is not tethered to the facts of this case. [It] … is not tied in any way to any particular misconduct in which the Defendants are alleged to have engaged[, which] … underscores the lack of relevance in the testimony proposed … ." The court further held that the "the testimony proffered … would be far more likely to confuse and mislead, than to assist, the finder of fact." No. CIV.A. 3:09CV387, 2010 WL 431477, at *4.

The same would be true here. While Cox has moved for summary judgment on Plaintiffs' vicarious liability claim, and separately to preclude Dr. Lehr from providing these calculations on relevance grounds, Dr. Lehr's specific calculations relating to subscribers who received at least one notice are not tied to Plaintiffs' theory of liability. His calculations necessarily sweep in every single subscriber who received a RIAA Notice, █████████████████████████████████████ █████████████, which is fewer than the number triggering liability under Plaintiffs' varying theory of the case. *See supra* at 3. Thus not only are these calculations irrelevant, but they also "would be far more likely to confuse and mislead, than to assist, the trier of fact." *James River Mgmt. Co.*, No. CIV.A. 3:09CV387, 2010 WL 431477, at *4.

To the extent Plaintiffs intend to introduce testimony or elicit evidence outside of Dr. Lehr relating to the "value" of Cox's subscribers who received at least one notice, or how much Cox "collected" from these subscribers, it should be precluded pursuant to Federal Rules of Evidence 401 and 403, as it is plainly irrelevant and would be prejudicial, for the same reasons outlined above.

**B.**   **Evidence relating to Cox's purported financial benefit from subscribers who received notices outside of the Claim Period.**

Plaintiffs intend to have Dr. Lehr testify as to the value of Cox's subscribers who received varying numbers of notices between 2012 and 2014. *See supra* at 4. To the extent Dr. Lehr is permitted to testify with respect to his various calculations, Plaintiffs should be precluded from relying on notices sent outside of the Claim Period (*i.e.*, in 2012, January of 2013, or after November 26, 2014).[3]

**1.**   **This evidence and testimony is not relevant to Plaintiffs' claim for vicarious liability.**

With respect to Plaintiffs' claim for vicarious liability, the Court has held that evidence of a defendant's financial benefit must at least be causally connected to "'the infringing activities *at issue in th[e] case ... .'" BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 149 F. Supp. 3d 634, 676 (E.D. Va. 2015), *aff'd in part, rev'd in part*, 881 F.3d 293 (4th Cir. 2018) (quoting *Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-07098-AB SHX, 2014 WL 8628031, at *4 (C.D. Cal. Nov. 14, 2014), *aff'd*, 847 F.3d 657 (9th Cir. 2017)) (emphases and alterations in original). In *Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-07098-AB SHX, 2014 WL 8628031, the court explained

---

[3] Plaintiffs also list in support of their motion for summary judgment the number of Cox subscribers who received different quantities of notices between 2012 and 2014. ECF 325 (Pls.' MSJ, ¶ 31). These calculations also include notices received from other rights holders (*i.e.*, not relating to Plaintiffs' works in suit). Cox moves separately to preclude Plaintiffs from introducing evidence or testimony relating to notices sent by other rights holders.

that "[t]his action is a specific lawsuit by a specific plaintiff against a specific defendant about specific copyrighted images; it is not a lawsuit against copyright infringement in general." *Id.*, at *4.

Putting aside the issue of whether a RIAA Notice is evidence of infringement, any acts of alleged infringement as purportedly evidenced by RIAA Notices sent to Cox outside of the Claim Period are plainly not actionable in this case. Indeed, these notices cannot be used as evidence of the direct infringement for which Plaintiffs seek to hold Cox vicariously liable. Thus, they also cannot be used to demonstrate Cox's purported financial benefit from the alleged infringement, which is an essential element of Plaintiffs' vicarious liability claim.

No doubt recognizing their irrelevance, Dr. Lehr revised his calculations in his reply report to count only the number of notices Cox's subscribers received during the Claim Period. *See* Ex. 3 (Lehr Reply Rpt., Ex. 1A). And Plaintiffs rely only on these revised calculations in their motion for summary judgment. ECF 325 (Pls.' MSJ, SUF, ¶ 37) (citing Lehr Decl., ¶¶ 10, 18). Nevertheless, Plaintiffs continue to assert that Dr. Lehr is prepared to testify with respect to his calculations based on Cox's subscribers' receipt of notices outside of the Claim Period. *See supra* at 4. Plaintiffs should be precluded from eliciting such evidence, as it is not relevant to their claim for vicarious liability.

### 2. This evidence is not relevant to Plaintiffs' claim for statutory damages.

Dr. Lehr's calculations relying on notices sent outside of the Claim Period are irrelevant to Plaintiffs' claim for statutory damages as well. In *BMG*, the Court instructed the jury that it could consider "[t]he profits Cox earned because of the infringement." Ex. 4 (*BMG* Trial Tr. 2149:23-2150:14). To the extent Dr. Lehr's calculations relating to the "value" of different numbers of Cox subscribers or how much it "collected" from them can be construed as measuring Cox's profits

from the alleged infringement, the inclusion of any profits from infringement the jury is not being asked to decide is palpably improper.

Plaintiffs should separately be precluded from using this evidence in support of the deterrence factor of statutory damages. While the Court also instructed the jury in *BMG* that it could consider "deterrence of future infringement,"[4] there is no basis to admit testimony related to how much Cox may have profited from subscribers who received notices outside of the Claim Period. It would be highly misleading for the jury to hear such figures as it overstates the infringement that will have been established (if any) by the jury at that stage in the proceeding.

**C.     Evidence relating to Cox's profits from anything other than high-speed Internet during the Claim Period should be precluded.**

Plaintiffs intend to have Dr. Lehr testify about Cox's profits outside of the Claim Period and from services other than high-speed Internet. As referenced herein, Dr. Lehr offers opinions relating to how much Cox "collected" from certain of its subscribers through 2016, which is more than two years *after* the Claim Period. *See supra* at 4. These calculations, and others he provides are completely over inclusive. They include Cox's revenue from its voice and video services, which are not at issue in this case. *Id.; see also* Ex. 2 (Lehr Rpt., ¶ 25); *see also id.*, ¶¶ 27-31 (explaining "lifetime value" calculation). Dr. Lehr separately highlights in his report how much Cox allegedly earned in total from its residential subscribers between 2011 and 2014 (which includes two years prior to the Claim Period). *Id.*, ¶ 13; Ex. 5 (Lehr Rebuttal Rpt., ¶ 27) (performing the same calculation with respect to business subscribers).

For the same reasons discussed above, Cox's revenue or profits from outside of the Claim Period and from services other than the one allegedly utilized by Cox's subscribers to infringe Plaintiffs works, are not relevant to any potential damages, statutory or otherwise. *See supra* at 5-

---

[4] Ex. 4 (*BMG* Trial Tr. 2149:23-2150:14).

7.   Thus, not only should Plaintiffs be precluded from offering up Dr. Lehr to provide these calculations, they should be precluded from eliciting the underlying information from Cox's witnesses or otherwise.

> **D.   Evidence relating to the general harm or effect from infringement, not specific to that purportedly represented by the RIAA Notices, should be precluded.**

The general harm caused by piracy, whether to Plaintiffs or the music industry as a whole, is not relevant to this case.  It is prejudicial and irrelevant.  Plaintiffs should be precluded from eliciting evidence from their witnesses about this issue, including the effects beginning with the onset of Napster in 1999, how much revenue the industry has "lost" since that time, how "rampant" they believe peer-to-peer infringement is, how it has affected the way in which people consume music, and how it has generally changed the music industry.

At most, what is relevant to this case for purposes of Plaintiffs' claim for statutory damages are, as the Court instructed in *BMG*, Plaintiffs' "revenues … lost as a result of the infringement." Ex. 4 (*BMG* Trial Tr. 2149:23-2150:14).  To the extent Plaintiffs claim, as they do elsewhere, that the "[s]tatutory damages analysis permits considering all of the harms of a defendant's infringement causes, not merely those that can be quantified in a traditional actual damages analysis," then that too precludes this generalized, untethered evidence.[5]  To allow Plaintiffs to elicit evidence relating to an unquantifiable, decade-spanning, and industry-altering harm (as Plaintiffs characterize it), which is indisputably much greater than any harm allegedly caused by Cox, would undeservedly render Cox an inexcusable and prejudicial scapegoat.  This evidence should be precluded.

---

[5] *See* ECF 376 at 12 (citing *Sony BMG Music Entm't v. Tenebaum*, 660 F.3d 487, 502-03 (1st Cir. 2011))

Moreover, to the extent Plaintiffs argue that it is impossible to distinguish the harm caused by Cox specifically to them, as opposed to the harm caused generally, that is even more reason to preclude this testimony in its entirety. This is not the legitimate basis of a claim. The probity of this evidence is incredibly baseless but the prejudice is great.

Furthermore, Plaintiffs should not be rewarded with the admission of this highly-generalized and highly-prejudicial testimony when they failed to respond to discovery requests and prepare corporate designees for depositions. Plaintiffs did not produce a <u>single</u> internal document meaningfully relating to their harm. And when deposed, Plaintiffs' duly-noticed designees mostly provided nothing more than pablum. For example, Sony/ATV and EMI's designee testified as follows:



And Sony Music Entertainment's financial designee provided the following testimony:



---

[6] Ex. 6 (Abitbol Dep. Tr. 146:17-147:8); *see also id.* 145:10-149:6.



Where overly generalized recitations of the harms of piracy were not provided, Cox's questions went largely unanswered. For example, Warner Music Group's financial designee testified as follows:



---

[7] Ex. 7 (Carfora Dep. Tr. 115:14-116:20); *see also* Ex. 8 (Gallien Dep. Tr. 49:3-50:2, 64:10-66:12, 83:2-9); Ex. 9 (Kahn Dep. Tr. 100:23-105:4); Ex. 10 (Kokakis Dep. Tr. 71:14-72:16, 75:5-14, 88:13-89:25).



Sony Music Entertainment's financial designee testified similarly:

[REDACTED]

[9]

    In addition to being irrelevant and prejudicial, Plaintiffs should not be permitted to admit this testimony when they failed to adequately respond to discovery requests and prepare corporate designees for depositions.

**E.**    **Evidence relating to instances of infringement by Cox's subscribers not otherwise allegedly represented by the RIAA Notices and testimony relating to the scale of MarkMonitor's RIAA notice program should be precluded.**

    Plaintiffs should be precluded from introducing any evidence relating to Cox's subscribers engaging in any other acts of alleged infringement, whether in general or of Plaintiffs' works, than is allegedly represented by the RIAA Notices that have been produced in this case. Specifically, Plaintiffs should be precluded from introducing testimony or documents through MarkMonitor or anyone else related to MarkMonitor's so-called "[REDACTED]," a process through which

[REDACTED]

    Despite repeated specific requests to Plaintiffs, to MarkMonitor, and to the RIAA for documents demonstrating alleged infringement by Cox's users beyond what is allegedly

---

[8] Ex. 11 (Flott Dep. Tr. 102:7-103:4); *see also id.* 91:16-19, 119:7-120:25, 123:15-125:18, 127:5-11.

[9] Ex. 7 (Carfora Dep. Tr. 113:12-113:18).

represented by the RIAA Notices that were produced in this case,[10] nothing was produced. However, MarkMonitor's Director of Strategic Accounts, Sam Bahun, asserted at his deposition that ██████████████████████████████████ Ex. 12 (Bahun Dep. Tr. 126:16-128:21).[11] He further claimed that ██████████████████████████. *Id.* 301:25-302:7. Mr. Bahun further explained, however, that these ██████████████████████ ████████████████████████████████ *Id.* 293:4-16. This was the first time any party or non-party had mentioned any such process. And neither before nor after Mr. Bahun's deposition did MarkMonitor or Plaintiffs or the RIAA produce any documentation to substantiate this testimony.

Nevertheless, in the days following Mr. Bahun's deposition, two of Plaintiffs' experts, Dr. McGarty and Dr. Lehr, each testified at their depositions regarding these so-called "████████" and how it reinforced certain of their opinions. Ex. 13 (Lehr Dep. Tr. 305:15-306:1); *see also id.* 312:13-19, 313:19-319:14; Ex. 14 (McGarty Dep. Tr. 252:5-254:7, 255:22-259:21). This is not reconcilable.

Plaintiffs should be precluded from eliciting any testimony relating to observations of instances of infringement by Cox's subscribers beyond those allegedly represented by the RIAA Notices. Further, Plaintiffs should be precluded from eliciting testimony that the number of notices that Cox accepted during the Claim Period were somehow inadequate based on the purported number of infringements that MarkMonitor (or any other entity) observed during the same period.

---

[10] *See* Ex. 15 (Cox's First Set of Requests for Production of Documents, Request No. 78); *see also* Ex. 16 (Cox's Subpoena *Duces Tecum* to MarkMonitor, Request Nos. 8, 9, 10, 11); Ex. 17 (Cox's Subpoena *Duces Tecum* to the RIAA, Request No. 17).
[11] Some of this testimony was elicited by Plaintiffs' counsel during Mr. Bahun's deposition. Ex. 12 (Bahun Dep. Tr. 289:12-291:4).

## IV.    CONCLUSION

Based on the foregoing, Plaintiffs should be precluded from introducing evidence relating to the following:

- Cox's purported financial benefit from retaining subscribers who received only one notice, which is fewer than the number triggering liability under Plaintiffs' theory of the case but for which Plaintiffs have put forward an expert to so opine;

- Cox's profits and/or revenue that is based, at least in part, on subscribers who received notices outside of the Claim Period;

- Cox's profits and/or revenue from outside of the Claim Period and from anything other than high-speed Internet;

- Documents, testimony, and argument relating to the general harm or effects of piracy, which is not specific to that harm allegedly caused by Cox to Plaintiffs at issue in this case; and

- Documents, testimony, and argument relating to observations of alleged infringement by Cox's subscribers beyond those allegedly represented by the RIAA Notices that were produced in this case, including MarkMonitor's so-called "████████."

Dated: October 19, 2019                     Respectfully submitted,

                                            */s/ Thomas M. Buchanan*
                                            Thomas M. Buchanan (VSB No. 21530)
                                            WINSTON & STRAWN LLP
                                            1700 K Street, NW
                                            Washington, DC 20006-3817
                                            Tel: (202) 282-5787
                                            Fax: (202) 282-5100
                                            Email: tbuchana@winston.com

                                            *Attorney for Cox Communications, Inc.
                                            and CoxCom, LLC*

*Of Counsel for Defendants*

Michael S. Elkin (*pro hac vice*)
Thomas Patrick Lane (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Telephone:  (212) 294-6700
Facsimile:  (212) 294-4700
Email:  melkin@winston.com
Email:  tlane@winston.com

Jennifer A. Golinveaux (*pro hac vice*)
Thomas J. Kearney (*pro hac vice*)
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA  94111-5840
Telephone:  (415) 591-1000
Facsimile:  (415) 591-1400
Email:  jgolinveaux@winston.com
Email: tkearney@winston.com

Michael L. Brody (*pro hac vice*)
WINSTON & STRAWN LLP
35 W. Wacker Dr.
Chicago, IL 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700
Email: mbrody@winston.com

Diana Hughes Leiden (*pro hac vice*)
WINSTON & STRAWN LLP
333 S. Grand Avenue, Suite 3800
Los Angeles, CA 90071
Telephone:  (213) 615-1700
Facsimile:  (213) 615-1750
Email:  dhleiden@winston.com

**CERTIFICATE OF SERVICE**

I hereby certify that on October 19, 2019, a copy of the foregoing was served by email to Jeffrey Gould at jeff@oandzlaw.com, by party agreement, due to technical issues with the ECF system.

*s/ Sean R. Anderson*
Sean R. Anderson
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166
Tel: (212) 294-6700
Fax: (212) 294-4700
Email: sranderson@winston.com