# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| SONY MUSIC ENTERTAINMENT, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>COX COMMUNICATIONS, INC. and COXCOM, LLC,<br><br>Defendants. | Case No. 1:18-cv-00950-LO-JFA |

**COX'S MEMORANDUM OF LAW IN SUPPORT OF ITS
<u>MOTION *IN LIMINE* NO. 6 TO EXCLUDE CERTAIN MARKMONITOR EVIDENCE</u>**

**TABLE OF CONTENTS**

**TABLE OF CONTENTS**

Page

I.  INTRODUCTION ................................................................................................. 1

II. PROCEDURAL HISTORY.................................................................................. 2

III. ARGUMENT......................................................................................................... 3

    A.  Plaintiffs' Trial Exhibit 11 Should Be Excluded Because the '431 Spreadsheet Is Inadmissible Under Federal Rule of Evidence 1006 ...................... 3

        1.  The '431 Spreadsheet is a Summary as Defined by Rule 1006................... 4

        2.  The Audible Magic Data Summarized by the MarkMonitor Spreadsheet Was Destroyed and Cannot Possibly Be Made Available for "Examination or Copying" .................................................... 10

    B.  Plaintiffs Should Be Precluded from Offering Testimony from MarkMonitor Witness Sam Bahun on Technical Matters on Which He Was Not Designated as MarkMonitor's 30(b)(6) Witness ................................... 12

IV. CONCLUSION.................................................................................................... 15

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Aldridge v. Lake Cty. Sheriff's Office*,
  No. 11 C 3041, 2012 WL 3023340 (N.D. Ill. July 24, 2012) ................................................... 15

*Branch v. Government Employees Insurance Company*,
  286 F. Supp. 3d 771 (E.D. Va. 2017) ................................................................................. 9, 12

*U.S. ex rel. Bunk v. Birkart Globistics GmbH & Co.*,
  2011 WL 5005313 (E.D. Va. Oct. 19, 2011) ........................................................................... 3

*Cox Communications, Inc., et al v. MarkMonitor, Inc.*,
  Case No. 3:19-mc-80050-SK (N.D. Cal.) ............................................................................... 11

*Dobbs v. Wyeth Pharmaceuticals*,
  2007 WL 7660186 .................................................................................................................. 10

*Fairley v. Andrews*,
  No. 03 C 5207, 2011 WL 2142800 (N.D. Ill. May 31, 2011) .................................................. 4

*Housley v. Holquist*,
  No. CV L-10-1881, 2012 WL 13005803 (D. Md. July 11, 2012) ........................................... 3

*Portland Pipe Line Corp. v. City of S. Portland*,
  No. 2:15-CV-00054-JAW, 2018 WL 2995743 (D. Me. June 14, 2018) .................................. 4

*QBE Ins. Corp. v. Jorda Enterprises, Inc.*,
  277 F.R.D. 676 (S.D. Fla. 2012) ............................................................................................ 15

*Sprint Nextel Corporation v. Simple Cell Inc.*,
  248 F. Supp. 3d 663 (D. Md. 2017) .................................................................................. 10, 12

*U.S. v. Mermelstein*,
  487 F. Supp. 2d 242 (E.D.N.Y. 2007) ................................................................................... 10

*U.S. v. Thomas*,
  631 Fed. Appx. 847 (11th Cir. 2015) (approving district court's admission
  under Rule 1006 of an exhibit that was "an extract of a larger report") ................................. 10

**Other Authorities**

Federal Rule of Evidence 1006 .............................................................................................. *passim*

**I.      INTRODUCTION**

In order to prove that Cox Internet subscribers directly infringed their copyrighted works, Plaintiffs intend to rely at trial on a spreadsheet and related witness testimony regarding the process undertaken by their agent MarkMonitor, Inc. to ███████████████████████████████

███████████████████████████████

Cox respectfully requests that the Court grant this motion *in limine* to exclude this spreadsheet at trial because it is a summary within the meaning of Federal Rule of Evidence 1006, and the underlying data from which it was compiled was never made available for examination by Cox because it was <u>not</u> preserved or provided by Plaintiffs or MarkMonitor. As such, the spreadsheet itself is inadmissible. Indeed, courts have routinely held that a document, such as a spreadsheet, which selectively extracts data from a database is a "summary" of the database for Rule 1006 purposes, and that this is particularly true where the summarizing document contains additional information drawn from other sources and/or information interpreting the underlying data.

Cox also requests that the Court issue an order precluding Plaintiffs from eliciting testimony from MarkMonitor's corporate designee, Sam Bahun, on any technical issues for which he was not so designated at deposition—including but not limited to testifying as to the technical meaning of values located in the spreadsheet at issue. Because MarkMonitor designated a <u>different</u> corporate witness (located in Eastern Europe) to testify at deposition on all of the technical topics in Cox's subpoena, and objected to any lines of questioning directed at Mr. Bahun touching on computer science, engineering, source code, or other technical issues, it would be patently unfair and prejudicial for Plaintiffs to elicit this testimony from Mr. Bahun at trial.

## II. PROCEDURAL HISTORY

As set forth in more detail below, Plaintiffs and MarkMonitor produced multiple versions of a spreadsheet purporting to show the link between Plaintiffs' works at issue in this case and files that were allegedly available at IP addresses associated with Cox subscribers. Plaintiffs now intend to rely on one of those spreadsheets at trial to show ██████████████████████ ██████████████████████████████████████████████████ This spreadsheet was produced by Plaintiffs with Bates No. Plaintiffs_00286431 (the "'431 Spreadsheet"). The '431 Spreadsheet is Plaintiffs' Trial Exhibit 11 ("PX 11").

MarkMonitor designated two separate 30(b)(6) witnesses to testify on the topics set forth in Cox's deposition subpoena to MarkMonitor. One witness, Sam Bahun, was designated to testify regarding, among other things, the non-technical aspects of MarkMonitor's anti-piracy services for the RIAA that resulted in copyright infringement notices being sent to Cox. The other, Slawomir Paszkowski, was designated on topics involving source code, computer engineering, and the technical aspects of MarkMonitor's services for the RIAA. Cox separately deposed each of these witnesses, and MarkMonitor's counsel ████████████████████ ████████████████████████████████████ Plaintiffs have indicated that they will call Mr. Bahun to testify at trial—but not Mr. Paszkowski.[1]

In August 2019, Cox moved for discovery sanctions and to preclude Plaintiffs from relying on any version of the MarkMonitor Spreadsheet on the basis that: (1) neither Plaintiffs nor MarkMonitor retained data provided by Audible Magic showing ████████████ ████████████

---

[1] Both witnesses are located outside of the Court's subpoena power and could not be compelled to testify at trial. Mr. Bahun resides and works in Ohio, and Mr. Paszkowski resides and works in Lithuania. Ex. 1 (June 12, 2019 MarkMonitor's Objections and Responses to Cox Deposition Subpoena).

██████████; and (2) the MarkMonitor Spreadsheet was an inadmissible summary. ECF No. 433. On September 27, 2019, this motion was heard by Judge Anderson.[2] He expressly declined to reach the question of whether or not the MarkMonitor Spreadsheet was an inadmissible summary under Federal Rule of Evidence 1006 ("Rule 1006"), finding that this issue was for this Court.[3] This issue has also been raised in Cox's Motion for Summary Judgment and its Motion to Preclude Barbara Frederiksen-Cross's Testimony, both filed on October 11, 2019.

### III. ARGUMENT

#### A. Plaintiffs' Trial Exhibit 11 Should Be Excluded Because the '431 Spreadsheet Is Inadmissible Under Federal Rule of Evidence 1006

A document which purports to summarize underlying data is inadmissible at trial unless the underlying data is made available for copying and inspection. *See* Fed. R. Evid. 1006 ("The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both … [a]nd the court may order the proponent to produce them in court."). Where, as here, the underlying data was not preserved, was destroyed, or was simply not produced, the summary is inadmissible because there is no "opportunity to test [the summary's] accuracy or reliability." *U.S. ex rel. Bunk v. Birkart Globistics GmbH & Co.*, 2011 WL 5005313, at *8 (E.D. Va. Oct. 19, 2011).

A motion *in limine* is the appropriate vehicle to seek the exclusion of an inadmissible summary at trial. *See e.g., Housley v. Holquist*, No. CV L-10-1881, 2012 WL 13005803, at *4 (D. Md. July 11, 2012), supplemented, No. CIV. L-10-1881, 2012 WL 3239887 (D. Md. Aug. 3, 2012) (granting defendants' motion *in limine* excluding Plaintiffs' summary of records as inadmissible

---

[2] Ex. 2, ECF No. 433 (Sept. 27, 2019 Hr'g Tr.).
[3] *Id.* at 27:4-8.

3

evidence); *Portland Pipe Line Corp. v. City of S. Portland*, No. 2:15-CV-00054-JAW, 2018 WL 2995743, at *1 (D. Me. June 14, 2018) (granting defendants' motion *in limine* to exclude to summary tables under Rule 1006); *see also Fairley v. Andrews*, No. 03 C 5207, 2011 WL 2142800, at *5 (N.D. Ill. May 31, 2011) (granting defendants' motion *in limine* to exclude Rule 1006 summaries). Similarly, here, the Court should grant Cox's motion *in limine* to exclude the summary '431 Spreadsheet because the underlying data was not made available to Cox, rendering it inadmissible under Rule 1006.

1. **The '431 Spreadsheet is a Summary as Defined by Rule 1006**

As has now been well-established in the record, Plaintiffs used the MarkMonitor infringement detection and notification system to monitor their works on peer-to-peer networks and to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[4] MarkMonitor relied on Audible Magic software to determine whether a file was an actual copyrighted work at issue through a "fingerprinting" process.[5] However, it is undisputed that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

MarkMonitor used Audible Magic's service for two main purposes. The first was to access a database of "fingerprints" of the works owned by Plaintiffs that MarkMonitor monitored on peer-

---

[4] *See* Ex. 3 (RIAA and MarkMonitor Master Agreement, RIAA_00000003-16); Ex. 4 (P2P Enforcement Process, MM000189); Ex. 5 (Initial Report of Barbara Frederiksen-Cross, ¶ 59).
[5] *See* Ex. 4 (P2P Enforcement Process, 10) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
[6] *Id.* at ¶ 134.

to-peer networks. The second was to determine whether the files MarkMonitor located on peer-to-peer networks when scanning for works owned by Plaintiffs matched those fingerprinted files.[7]

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[8] Audible Magic, in turn, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮ When a match was found, MarkMonitor relied on the Audible Magic data confirming the match to conclude that, if a file having the same identifier (known as a hash value) as the fingerprint-matched file was found at an IP address associated with a Cox subscriber, then the file was a copy of one of Plaintiffs' works. Thus, the fingerprinting process was the basis on which MarkMonitor concluded that copyright infringement was occurring and the basis on which a copyright infringement notice would be sent to Cox.[9] In Plaintiffs' words, "The ['431] Spreadsheet containing Audible Magic verifications is the crucial link between the files 'shared'

---

[7] *See* Ex. 6 (Rebuttal Expert Report of Dr. Nick Feamster, ¶ 109) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See also* Ex. 4 (P2P Enforcement Process, 24) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; *see also* Ex. 5 (Frederiksen-Cross Rpt., ¶¶ 77-79).
[8] While MarkMonitor claims that it downloaded the allegedly infringing file when it was initially located on a peer-to-peer network (not necessarily being made available by a Cox subscriber), it is undisputed that it did not download any allegedly infringing files when it subsequently allegedly located copies of those files being made available by Cox subscribers. The evidence of the subsequent hash-match is solely metadata.
[9] *See* Ex. 4 (P2P Enforcement Process, 10) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

by Cox subscribers and Plaintiffs' copyrighted works. Plaintiffs' experts … rely upon that evidence and the case is organized around it."[10]

### a. Audible Magic's Transaction Logs

Audible Magic saved every transaction it conducted for MarkMonitor in a set of "transaction logs" which it produced in a spreadsheet, Bates No. REV00003444 (the "Audible Magic Spreadsheet") for the period 2012-2014. Specifically, the Audible Magic Spreadsheet ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[11] Audible Magic shared the same results of its fingerprinting process with MarkMonitor for its records.

### b. MarkMonitor's Summary of Audible Magic Data

Instead of preserving the data it received from Audible Magic, MarkMonitor saved certain fields, deleted others, and created multiple spreadsheets summarizing whether or not Audible Magic was able to find a match. However, the spreadsheets omitted a significant and dispositive amount of the underlying data Audible Magic sent MarkMonitor. Two such spreadsheets, Bates Nos. MM000236 (the "'236 Spreadsheet") and the '431 Spreadsheet (collectively, the "MarkMonitor Spreadsheets"), were produced in this litigation. MarkMonitor produced the '236 Spreadsheet on March 22, 2019 in response to Cox's third-party subpoena. The metadata of the '236 Spreadsheet revealed that it was first created on December 7, 2018 and last modified on December 21, 2019. The '236 Spreadsheet was modified again on February 21, 2019 and produced by Plaintiffs (*not* MarkMonitor) on March 25, 2019 as the '431 Spreadsheet. Neither Plaintiffs

---

[10] *See* ECF No. 352 at 20 (Plaintiffs' Opposition to Cox's Motion for Discovery Sanctions and to Preclude Plaintiffs' Use of MarkMonitor Evidence).
[11] Ex. 7 (Deposition of Vance Ikezoye at 138:10-139:6, noting that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

Case 1:18-cv-00950-PTG-JFA   Document 491   Filed 10/21/19   Page 10 of 20 PageID# 21673

nor MarkMonitor ever produced the full scope of Audible Magic data that MarkMonitor received from Audible Magic. For the period prior to February 2015, this was because ███ ███. For the period after February 2015, MarkMonitor had this information, and the data was ███.



Notably, at the September 27, 2019 hearing on Cox's spoliation motion, Plaintiffs' counsel initially represented to Judge Anderson that ███.[12] Then, following an off-the-record colloquy with his co-counsel, he corrected himself and stated that ███."[13] Thus, Plaintiffs themselves have conceded that the '431 Spreadsheet only contains the fields that Plaintiffs unilaterally determined were relevant.

### c. The '431 Spreadsheet is a Summary of Audible Magic Data

The '431 Spreadsheet is manifestly a selective extract from the Audible Magic data, not a simple reproduction of that data. Audible Magic sent MarkMonitor ███.[14] In preparing the '236 version of the MarkMonitor Spreadsheet, MarkMonitor selected only ███. These represent about ███ in the '236 Spreadsheet, and

---

[12] See Ex. 2 at 47:12-21.
[13] Id. at 48:1-7.
[14] Ex. 8 (REV00003444); see also Ex. 9 (Deposition of Slawomir Paszkowski, 81:6-14); see also Ex. 2 at 35:20 ███.
[15] See ECF 352-1, Declaration of Sam Bahun in Support of Plaintiffs' Opposition to Cox's Motion for Sanctions ("Bahun Decl."), ¶¶ 17-19 ███.

about ▮▮▮▮▮ For files downloaded from the BitTorrent peer-to-peer network, MarkMonitor selected ▮▮▮▮▮[16] The '236 Spreadsheet was modified in ▮▮▮▮▮ was produced as the '431 Spreadsheet.[17] The '431 Spreadsheet contains only ▮▮▮▮▮ of the '236 Spreadsheet.[18] In addition to this selection of data from Audible Magic, the MarkMonitor Spreadsheets contain from ▮▮▮▮▮

MarkMonitor made a record of files that Audible Magic verified by entering the value ▮▮▮▮▮[19] But this value ▮▮▮▮▮

---

▮▮▮▮▮ *see also* ECF No. 352-2, Declaration of Vance Ikezoye in Support of Plaintiffs' Opposition to Cox's Motion for Sanctions, ¶¶ 11, 14, 15 ▮▮▮▮▮ *see also* Ex. 9 (Paszkowski Dep., 80:6-81:11 ▮▮▮▮▮
[16] *See* Ex. 10 (MM000236) ▮▮▮▮▮.
[17] Ex. 11 (Screenshot of '236 Spreadsheet metadata).
[18] Ex. 12 ('431 Spreadsheet ▮▮▮▮▮ *see also* Ex. 5 (Frederiksen-Cross Initial Report, ¶ 149, ▮▮▮▮▮ *Compare* Ex. 8 (REV00003444).
[18] Audible Magic provided ▮▮▮▮▮ *See* ECF No. 352-2 (Ikezoye Decl., ¶15); ECF 352-1 (Declaration of Sam Bahun, ¶ 21). The ▮▮▮▮▮, ECF No. 353 at 13 (Plaintiffs' Opposition to Cox's Motion for Discovery Sanctions), and claim that it ▮▮▮▮▮ But MarkMonitor confirmed that ▮▮▮▮▮ *See* ECF No. 353-1 at ¶ 26 (Declaration of Sam Bahun).
[19] Ex. 9 (Paszkowski Dep.) at 97:19-98:12.

8

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ included in the '431 Spreadsheet.[20] The ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[21] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ In other words, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮ Audible Magic also supplied data ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[23] But because these were not retained, ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

In short, the '431 Spreadsheet ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ MarkMonitor ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and MarkMonitor's assessment that the Audible Magic data confirmed that a file have been successfully matched to a work in suit. As such, it is indistinguishable from spreadsheets that other courts have treated as Rule 1006 summaries. *See Branch v. Government Employees Insurance Company*, 286 F. Supp. 3d 771, 779 (E.D. Va. 2017) (holding that spreadsheet compiled from database was a summary which needed to satisfy Rule 1006 to be admissible); *Sprint Nextel Corporation v. Simple Cell Inc.*, 248 F. Supp. 3d 663, 672-674 (D. Md. 2017) (holding that "spreadsheets [that] combine data from at least three different … databases and have been edited

---

[20] Plaintiffs conceded that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 2 at 35:20-21.
[21] *See* Ex. 13 (Audible Magic OEM Application and Programming Guide, 91).
[22] Ex. 9 (Paszkowski Dep., 80:22-81:5).
[23] *Id*. at 81:6-11.

to remove redundancies … and also contain 'analysis' based on certain assumptions provided by [their sponsor]" are summaries which must satisfy Rule 1006 to be admissible); *cf. Dobbs v. Wyeth Pharmaceuticals,* 2007 WL 7660186, at *3-*4 (allowing testimony of witness under Rule 1006 as to "a compilation of the contents of extensive databases he reviewed and analyzed" where witness proposed to "present only a summary of the factual information he extracted from those databases"); *U.S. v. Mermelstein*, 487 F. Supp. 2d 242, 266 (E.D.N.Y. 2007) (allowing testimony of witness under Rule 1006, where the witness proposed to summarize voluminous medical records by "extract[ing] data" from them.); *U.S. v. Thomas*, 631 Fed. Appx. 847, 849 (11th Cir. 2015) (approving district court's admission under Rule 1006 of an exhibit that was "an extract of a larger report"). The '431 Spreadsheet fits easily within this line of decisions.

### d. "Extracts" of Data from a Database Are Summaries

Plaintiffs have argued that Rule 1006 is inapplicable because the "MarkMonitor Spreadsheet *contains* Audible Magic data; it is *not a summary* of such data. Cox conflates extracting data from a database with providing a summary of data." *See* ECF No. 352 at 17. But, as the cases cited above establish, this assertion (made without citation to any legal authority) is just wrong. "Extracting data from a database," including doing so in the form of a spreadsheet, is exactly as way of summarizing the database's contents. And such extracts are routinely treated as Rule 1006 summaries.

### 2. The Audible Magic Data Summarized by the MarkMonitor Spreadsheet Was Destroyed and Cannot Possibly Be Made Available for "Examination or Copying"

The data underlying the summary represented by the '431 Spreadsheet— ██████ ████████████████████████████████████████████████████████████████ was not produced in discovery, and cannot be made "available for examination or copying or both" because

10

it was destroyed by MarkMonitor. As such, Rule 1006 mandates that the '431 Spreadsheet is inadmissible.

Cox subpoenaed all MarkMonitor "databases … or other repositories of information concerning notices of claimed infringement … that were sent to Cox … in connection with alleged infringement of the Copyright Works," and "all Documents concerning any files, or portions thereof, concerning the Copyright Works, that You downloaded from a Cox subscriber, account holder, or customer."[24] The Northern District of California ordered MarkMonitor to comply with this subpoena.[25] When it became clear at the deposition of MarkMonitor's technical designee that portions of the requested data had not been produced, counsel for Cox requested it.[26] Subsequently, when the data was not produced, counsel for Cox reiterated the request in writing.[27]

Notwithstanding being ordered to do so, MarkMonitor has not produced the following:



Because MarkMonitor failed to produce the originals of the Audible Magic data summarized by the '431 Spreadsheet, that document is inadmissible under Rule 1006. *See, e.g., Sprint*, 248 F. Supp. 3d at 672 (spreadsheet summarizing database was not admissible where plaintiff "has not made the underlying data on which its spreadsheets are based available");

---

[24] *See* Ex. 14 (MarkMonitor Subpoena)
[25] *See* Ex. 15 (March 7, 2019 Order on Cox's Motion to Compel from *Cox Communications, Inc., et al v. MarkMonitor, Inc.,* Case No. 3:19-mc-80050-SK (N.D. Cal.)).
[26] *See* Ex. 9 (Paszkowski Dep., at 86:14-87:22).
[27] *See* Ex. 16 (July 12, 2019 email)
[28] Ex. 9 (Paszkowski Dep., 86:14-87:22).

*compare Branch*, *supra*, 286 F. Supp. 3d at 779-780 (allowing spreadsheet summarizing database where plaintiff did not avail herself of defendant's offer to make the originals of the summarized data available).

> **B.     Plaintiffs Should Be Precluded from Offering Testimony from MarkMonitor Witness Sam Bahun on Technical Matters on Which He Was Not Designated as MarkMonitor's 30(b)(6) Witness**

Mr. Bahun should be precluded from testifying at trial regarding topics on which he was not designated as MarkMonitor's corporate witness.

Over Cox's objections, MarkMonitor designated multiple witnesses to testify on its behalf regarding the topics in Cox's deposition subpoena on the grounds that the only two witnesses capable of testifying on technical topics resided overseas (in Denmark and Lithuania) and that it would be overly burdensome to educate a U.S.-based witness on those topics.  MarkMonitor designated Mr. Bahun to testify regarding, among other things, MarkMonitor's anti-piracy services for the RIAA and in connection with the Copyright Alert System, and designated Slawomir Paszkowski to testify regarding MarkMonitor's software revision policies and its available configurations during Plaintiffs' claim period.  MarkMonitor designated *both* witnesses on the following topics, noting that Mr. Paszkowski alone would testify as to any aspects of the topics "that may pertain to source code or computer engineering:"[29]

- MarkMonitor's "retention policies as they relate to Documents, Your Systems, and any associated source code or technical materials;"

- MarkMonitor's "preservation of Documents and other materials responsive to the Document Subpoena, including the manner and extent to which Your System(s), revision history, and associated source code has been maintained and preserved from 2010 to the present;" and

---

[29] Ex. 17 (June 12, 2019 MarkMonitor's Objections and Responses to Cox Deposition Subpoena).

- "The processes and methods by which [the MarkMonitor] System generated and/or sent notices of claimed infringement to Cox or any of Cox's subscribers, account holders, or customers in connection with alleged infringement of the Copyright Works, including, without limitation the "evidence packages" You produced in this litigation as Bates No. MM000306."

MarkMonitor's counsel repeatedly represented in correspondence to Cox's counsel that Mr. Bahun was not qualified "to address technical source code/engineering issues" and that the only such qualified witnesses resided abroad.[30]

Notably, despite initially indicating in their initial disclosures that MarkMonitor could be contacted through Plaintiffs' counsel, Plaintiffs not only did not encourage MarkMonitor to comply with Cox's document or deposition subpoenas (Cox had to seek judicial intervention from the Northern District of California multiple times) but actually joined MarkMonitor in blocking Cox from taking Mr. Paszkowski's deposition in person. This forced Cox to take this deposition via videoconference on the final day of discovery at 2am Eastern Time. Plaintiffs did not serve their own document or deposition subpoena on MarkMonitor, but attended both depositions and questioned both witnesses.

Mr. Bahun is the director of strategic accounts at MarkMonitor, which he testified is ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Mr. Bahun testified ▇▇▇▇▇▇

---

[30] Ex. 18 (June 6, 2019 email from MarkMonitor's counsel).
[31] Ex. 19 (Bahun Dep., 80:2-80:24).

████████████████████████████████████████████████████████████.[32] Cox's counsel then deposed Mr. Paszkowski. Because he had been designated as MarkMonitor's 30(b)(6) witness on technical topics, Cox questioned him on the MarkMonitor Spreadsheets in addition to other technical matters, such as how the contents of the evidence packages were gathered, what the files within the evidence packages were, and how MarkMonitor communicated with peers on peer-to-peer networks.

Plaintiffs have indicated that they intend to call Mr. Bahun as a witness at trial, but not Mr. Paszkowski. Cox has listed both individuals on its witness list, but Mr. Paszkowski resides in Lithuania outside the Court's subpoena power. Mr. Bahun's testimony should be limited to the topics on which he was designated to testify; namely, topics 1, 6, 7, 8, and 10 and topics 2, 3, and 9 insofar as they do not involve any aspects of computer engineering or source code.

Courts routinely limit witness testimony to the confines of their 30(b)(6) testimony out of concerns of fairness. *See QBE Ins. Corp. v. Jorda Enterprises, Inc.*, 277 F.R.D. 676, 698 (S.D. Fla. 2012) (precluding witness from testifying about certain topics at trial for which the witness refused to provide 30(b)(6) deposition testimony noting that it would be "patently unfair" to permit the witness to avoid certain topics at deposition "yet allow it to take a position at trial on those very same issues by introducing testimony which [the Defendant] was unable to learn about during a pre-trial 30(b)(6) deposition"); *see also Aldridge v. Lake Cty. Sheriff's Office*, No. 11 C 3041, 2012 WL 3023340, at *5 (N.D. Ill. July 24, 2012) (limiting the 30(b)(6) witness' trial testimony

---

[32] Ex. 19 (Bahun Dep., 56:11-16 after a question regarding ████████████████ ████████████████████████████████████████████████████████████ ████████████████████ Ex. 18 (Bahun Dep. 59:6-14, ████████ ████████████████████████████████████████████████████████████

noting that "defendant will not be able to take a position at trial on those issues where one of its Rule 30(b)(6) designees did not provide testimony"). Similarly, here it would be "patently unfair" for Plaintiffs to elicit trial testimony from Mr. Bahun regarding the '431 Spreadsheet or any other topics that were exclusively in the purview of MarkMonitor's technical witness when Cox was not afforded the opportunity to depose Mr. Bahun on those topics. Furthermore, any such testimony from Mr. Bahun would not be helpful to the jury or probative of any issue in the case given that MarkMonitor has repeatedly indicated that Mr. Bahun is both unqualified and unable to testify regarding technical issues.

## IV.     CONCLUSION

For all of the foregoing reasons, the Court should exclude the '431 Spreadsheet, and those expert opinions and testimony that rely on it. The Court should further limit the testimony of Sam Bahun to the topics on which he was designated by MarkMonitor as its corporate witness.

Dated: October 19, 2019

Respectfully submitted,

/s/ Thomas M. Buchanan
Thomas M. Buchanan (VSB No. 21530)
WINSTON & STRAWN LLP
1700 K Street, NW
Washington, DC 20006-3817
Tel: (202) 282-5787
Fax: (202) 282-5100
Email: tbuchana@winston.com

*Attorney for Cox Communications, Inc. and CoxCom, LLC*

15

*Of Counsel for Defendants*

Michael S. Elkin (*pro hac vice*)
Thomas Patrick Lane (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Telephone:  (212) 294-6700
Facsimile:  (212) 294-4700
Email:  melkin@winston.com
Email:  tlane@winston.com

Jennifer A. Golinveaux (*pro hac vice*)
Thomas J. Kearney (*pro hac vice*)
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA  94111-5840
Telephone:  (415) 591-1000
Facsimile:  (415) 591-1400
Email:  jgolinveaux@winston.com
Email: tkearney@winston.com

Michael L. Brody (*pro hac vice*)
WINSTON & STRAWN LLP
35 W. Wacker Dr.
Chicago, IL 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700
Email: mbrody@winston.com

Diana Hughes Leiden (*pro hac vice*)
WINSTON & STRAWN LLP
333 S. Grand Avenue, Suite 3800
Los Angeles, CA 90071
Telephone:  (213) 615-1700
Facsimile:   (213) 615-1750
Email:  dhleiden@winston.com

## CERTIFICATE OF SERVICE

    I hereby certify that on October 19, 2019, a copy of the foregoing was served by email to Jeffrey Gould at jeff@oandzlaw.com, by party agreement, due to technical issues with the ECF system.

    *s/ Sean R. Anderson*
Sean R. Anderson
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166
Tel: (212) 294-6700
Fax: (212) 294-4700
Email: sranderson@winston.com