# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| SONY MUSIC ENTERTAINMENT, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>COX COMMUNICATIONS, INC. and COXCOM, LLC.<br><br>Defendants. | Case No. 1:18-cv-00950-LO-JFA |

**COX'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION *IN LIMINE*
NO. 9 TO PRECLUDE EVIDENCE RELATING TO
<u>TERMINATIONS FOR NON-PAYMENT</u>**

## **TABLE OF CONTENTS**

Page

I. INTRODUCTION ............................................................................................................. 1

II. LEGAL AUTHORITY ..................................................................................................... 2

III. FACTUAL BACKGROUND ............................................................................................ 2

IV. ARGUMENT ..................................................................................................................... 3

    A. Even if Plaintiffs' vicarious liability claim survives summary judgment, this evidence is irrelevant to that claim and should be precluded ........................... 3

        1. This evidence is irrelevant to the "right and ability to supervise" prong of Plaintiffs' vicarious liability claim. .............................................. 3

        2. This evidence is not relevant to the "financial benefit" prong of Plaintiffs' vicarious liability claim ................................................................ 4

    B. This evidence is irrelevant to whether Cox's alleged secondary infringement was "willful." ....................................................................................... 5

    C. To the extent the evidence is deemed relevant, its marginal probity is far outweighed by its prejudice. ................................................................................... 7

V. CONCLUSION .................................................................................................................. 8

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*,
  149 F. Supp. 3d 634 (E.D. Va. 2015), *aff'd in part, rev'd in part*, 881 F.3d 293
  (4th Cir. 2018)...................................................................................................................4

*BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 199 F. Supp. 3d 958 (E.D.
  Va. 2016), *aff'd in part, rev'd in part*, 881 F.3d 293 (4th Cir. 2018).......................................5

*BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 881 F.3d 293 (4th Cir.
  2018) ....................................................................................................................................7

*Hamil America, Inc. v. GFI*,
  193 F.3d 92 (2d. Cir. 1999)....................................................................................................7

*Intelligent Verification Sys., LLC v. Microsoft Corp.*,
  No. 2:12-CV-525, 2015 WL 1518099 (E.D. Va. Mar. 31, 2015), *aff'd sub
  nom. Intelligent Verification Sys., LLC v. Majesco Entm't Co.*, 628 F. App'x
  767 (Fed. Cir. 2016)...............................................................................................................2

*Island Software Computer Serv., Inc. v. Microsoft Corp.*,
  413 F.3d 257 (2d Cir. 2005)...................................................................................................5

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*,
  658 F.3d 936 (9th Cir. 2011) .................................................................................................5

*Lyons P'ship, L.P. v. Morris Costumes, Inc.*,
  243 F.3d 789 (4th Cir. 2001) ............................................................................................5, 6

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
  545 U.S. 913 (2002)...............................................................................................................4

*Nelson-Salabes, Inc. v. Morningside Dev., LLC*,
  284 F.3d 505 (4th Cir. 2002) .................................................................................................4

*Palmer v. Big Lots Stores, Inc.*,
  No. 3:14-CV-276, 2015 WL 165315 (E.D. Va. Jan. 12, 2015).........................................2, 3

*United States v. Capers*,
  61 F.3d 1100 (4th Cir. 1995) .................................................................................................2

*United States v. Verges*,
  No. 1:13-CR-222, 2014 WL 559573 (E.D. Va. Feb. 12, 2014).............................................2

*Yellow Pages Photos, Inc. v. Ziplocal, LP*,
    795 F.3d 1255 (11th Cir. 2015) ................................................................................................7

*Yurman Design, Inc. v. PAJ, Inc.*,
    262 F.2d 101 (2d Cir. 2001)......................................................................................................6

**Other Authorities**

Federal Rule of Evidence 403 ........................................................................................................7

I.  **INTRODUCTION**

Plaintiffs should be precluded from introducing evidence regarding the number of Cox subscribers terminated for failing to pay their monthly bills as compared to the number terminated for receiving notices of alleged copyright infringement. This comparison is plainly irrelevant to Plaintiffs' claim for vicarious liability or establishing that Cox's alleged secondary infringement was willful. And even if this evidence were relevant, its introduction would confuse the jury and unfairly prejudice Cox.

*First*, there is no dispute that Cox possessed the right and ability to terminate subscribers who received notices of alleged copyright infringement, as the record indisputably demonstrates that it did so. The separate fact that it also terminated subscribers for failing to pay their bills adds nothing to that established fact. Moreover, that Cox terminated subscribers who fail to pay their bills has absolutely no bearing on whether Cox actually possesses the "right and ability to *supervise*" its subscribers' on-line activities (the operative test in the Fourth Circuit), including their use of peer-to-peer networks to infringe Plaintiffs' works. Further, whether Cox was financially incentivized to terminate its non-paying subscribers is entirely unrelated to the question of whether it was separately financially incentivized to retain other subscribers who were alleged to infringe Plaintiffs' works.

*Second*, this evidence is also irrelevant to Plaintiffs' argument that Cox's secondary infringement was willful. To the extent Plaintiffs argue, as they have previously, that this comparison to the number of terminations demonstrates that Cox was "bad," "greedy," or acted "recklessly," there is absolutely no nexus to the question of whether it recklessly *disregarded* instances of infringement. Indeed, that Cox terminated more subscribers for non-payment than for receiving notices of alleged infringement has no bearing on Cox's knowledge of infringement and

how it acted with respect to it. To the contrary, the record demonstrates that Cox actually processed *all* of the RIAA's notices. In fact, Cox was willing to accept even more notices than the RIAA deigned to send.

*Lastly*, to the extent this evidence is deemed even marginally relevant, it would be unfairly prejudicial to Cox and misleading and confusing to the jury. Plaintiffs want the jury to consider the number of subscribers terminated for non-payment and conclude that Cox should have terminated exponentially more for copyright infringement than it did. Plaintiffs should not be permitted to use this irrelevant and prejudicial metric at trial.

## II.    LEGAL AUTHORITY

"The purpose of a motion *in limine* is to allow a court to rule on evidentiary issues in advance of trial in order to avoid delay, ensure an even-handed and expeditious trial, and focus the issues the jury will consider." *Intelligent Verification Sys., LLC v. Microsoft Corp.*, No. 2:12-CV-525, 2015 WL 1518099, at *9 (E.D. Va. Mar. 31, 2015), *aff'd sub nom. Intelligent Verification Sys., LLC v. Majesco Entm't Co.*, 628 F. App'x 767 (Fed. Cir. 2016) (citing *United States v. Verges,* No. 1:13-CR-222, 2014 WL 559573, at *2 (E.D. Va. Feb. 12, 2014)). The motion *in limine* is a party's avenue to "exclude evidence prior to the commencement of trial." *Palmer v. Big Lots Stores, Inc.*, No. 3:14-CV-276, 2015 WL 165315, at *1 (E.D. Va. Jan. 12, 2015). And the admissibility of evidence "rests within the sound discretion of the trial court." *United States v. Capers,* 61 F.3d 1100, 1106 (4th Cir. 1995); *see also Palmer*, No. 3:14-CV-276, 2015 WL 165315, at *1.

## III.   FACTUAL BACKGROUND

Plaintiffs argue in support of summary judgment on their vicarious liability claim that "Cox did not hesitate to terminate users when its profit motives were not being served, *i.e.*, for non-payment. In 2013 and 2014 alone, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2

██████████████████████████████████████████████████ *See* ECF 392 (Pls.' MSJ at 32) (citing SUF, ¶ 29). Plaintiffs contrast that number with the number of subscribers Cox terminated for copyright infringement during the same time period (33). *See id.* (citing SUF, ¶ 31).

In support of their motion to compel this information, Plaintiffs separately argued that this evidence is relevant to the jury's determination of whether Cox's infringement was willful at the statutory damages phase. ECF 71 at 6-7. Plaintiffs claimed that the evidence that Cox took certain violations of the AUP "seriously" but not copyright infringement demonstrates that it turned a blind eye to the alleged infringement. *Id.*

## IV. ARGUMENT

### A. Even if Plaintiffs' vicarious liability claim survives summary judgment, this evidence is irrelevant to that claim and should be precluded.

If Plaintiffs' claim for vicarious liability goes to the jury, this evidence should nevertheless be precluded because it is irrelevant to either the "right and ability to supervise" or "financial benefit" prongs of that claim.[1]

#### 1. This evidence is irrelevant to the "right and ability to supervise" prong of Plaintiffs' vicarious liability claim.

Plaintiffs do not utilize this evidence in their motion for summary judgment to support the "right and ability to supervise" prong of their vicarious liability claim. Yet Plaintiffs previously argued that the number of Cox's terminations for non-payment is relevant to that issue. ECF 71 at 4-6. It is not. It is undisputed that Cox possessed the legal right and technical ability to terminate its subscribers for violating its Acceptable Use Policy, including for alleged copyright

---

[1] Cox has moved for summary judgment on Plaintiffs' vicarious liability claim because, in part, Plaintiffs did not and cannot establish the requisite draw. ECF 329 (Cox's MSJ at 32-36). If Cox's motion is granted then this evidence should be precluded, as Plaintiffs' only other claimed relevance of this evidence is meritless. As discussed below, *see infra* at 5, this evidence is irrelevant to whether Cox's secondary infringement was willful, among other reasons.

3

infringement. ECF 404 (Cox's Opp. to Pls.' MSJ, Resp. to SUF, ¶ 25). That fact alone forecloses the purported relevance of this evidence.

To the extent Plaintiffs argue that the number of Cox subscribers terminated for non-payment is relevant to establishing that Cox possessed "the right and ability to *supervise*" its subscribers' on-line activities (as opposed to merely "control"), which is what is required under Fourth Circuit law to establish vicarious liability,[2] they are wrong. That Cox terminates subscribers who fail to pay their monthly bills, a ministerial accounting action that has nothing to do with a subscriber's on-line activities, has no bearing at all on whether it possesses the right and ability to *supervise* its subscribers' use of peer-to-peer networks to download infringing material. Plaintiffs cannot reasonably argue otherwise.

      **2.    This evidence is not relevant to the "financial benefit" prong of Plaintiffs' vicarious liability claim.**

By pointing to the number of subscribers Cox terminated for non-payment as compared to those it terminated for alleged copyright infringement, Plaintiffs argue that Cox "prioritized" collecting subscription payments over limiting infringement. ECF 392 at 34. Plaintiffs point to this evidence as relevant to its claim Cox received a "direct financial benefit" from the infringement alleged in this case. *Id.* There is no support for these arguments, however, and the evidence should be precluded because it is irrelevant.

As discussed above, in order to establish their claim for vicarious liability, Plaintiffs must prove that Cox received a "direct financial benefit" from its subscribers who were specifically drawn to its service in order to infringe. *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 149 F. Supp. 3d 634, 675-76 (E.D. Va. 2015), *aff'd in part, rev'd in part*, 881 F.3d 293 (4th Cir.

---

[2] *See Nelson-Salabes, Inc. v. Morningside Dev., LLC*, 284 F.3d 505, 513 (4th Cir. 2002); *see also Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2002) (noting that "a vicarious liability theory … [requires] a right and ability to supervise the direct infringer").

4

2018). Cox's rational business decision to terminate subscribers who failed to pay their bills is *entirely* unrelated to and has no bearing on whether: (1) Cox's subscribers were drawn to its service to infringe Plaintiffs' works; and (2) Cox received a direct financial benefit from those subscribers. Plaintiffs do not, and cannot, argue otherwise.

Even if Plaintiffs were right that Cox "prioritized" collecting subscription payments over limiting infringement (they are not), this evidence would still be irrelevant to Plaintiffs' vicarious liability claim. Plaintiffs would be required to argue that Cox's decision to terminate subscribers who failed to pay their bills contributed to the purported draw that the ability to infringe on Cox's network served. That of course makes no sense. This evidence is irrelevant and admitting it would be improper.

**B. This evidence is irrelevant to whether Cox's alleged secondary infringement was "willful."**

Plaintiffs have argued that this evidence is also relevant to whether Cox's secondary infringement was "willful." ECF 71 at 6-7. It is not. In order to prove that Cox's alleged secondary infringement was willful for purposes of statutory damages, Plaintiffs must prove "by a preponderance of the evidence that Cox had knowledge that its subscribers' actions constituted infringement of [Plaintiffs'] copyrights, acted with reckless disregard for the infringement of [Plaintiffs'] copyrights, or was willfully blind to the infringement of [Plaintiffs'] copyrights." *See BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 199 F. Supp. 3d 958 (E.D. Va. 2016), *aff'd in part, rev'd in part*, 881 F.3d 293 (4th Cir. 2018) (quoting Trial Tr. 2150) (citing *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 799 (4th Cir. 2001); *Island Software Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 263 (2d Cir. 2005); *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 936, 944 (9th Cir. 2011)) (internal citations and quotations omitted); *see also BMG*, 881 F.3d 293, 312-313 (4th Cir. 2018) (same)).

Each of these doctrines—(i) knowledge, (ii) reckless disregard; and (iii) willful blindness—are paths for demonstrating whether the defendant was aware of infringement alleged in an action for purposes of establishing whether the defendant acted willfully. There is no reasonable argument that the number of subscribers Cox terminated for non-payment during the Claim Period is relevant to Cox's knowledge of whether other of its subscribers were engaged in the infringement alleged in this action. Plaintiffs have not, and could not, argue otherwise.

Instead, Plaintiffs appear to intend to use this evidence to argue that Cox acted recklessly, which they erroneously equate with being "bad" or "greedy." *See, e.g.*, ECF 85 at 3-4 ("When the jury considers the question of willfulness and the amount of the award, it is entitled to consider the degree to which Cox acted to protect Cox's interests but declined to take similar action to stop infringement."); ECF 392 ("…Cox did not hesitate to terminate users when its profit motives were not being served, *i.e.*, for non-payment.").[3]

Contrary to Plaintiffs' generalized use of the term recklessness to mean that Cox is "bad" or "greedy," it is the defendant's "reckless *disregard*" that is relevant to willfulness. *See Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 799 (4th Cir. 2001) ("Although the Copyright Act does not define willful infringement, other circuits have held that infringement is willful if the defendant has knowledge, either actual or constructive, that *its* actions constitute an infringement, *or recklessly disregards a copyright holder's rights*.") (emphasis added). "Willfulness … means that the defendant 'recklessly disregarded' the possibility that 'its conduct represented infringement.'" *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.2d 101, 112 (2d Cir. 2001) (quoting

---

[3] ECF 71 at 6-7; *see also* ECF 85 at 4, n.2 (Plaintiffs make the circular and baseless argument that "[w]illfulness can be shown through reckless disregard or willful blindness.").

6

*Hamil America, Inc. v. GFI*, 193 F.3d 92, 98 (2d. Cir. 1999) (cited with approval in *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 881 F.3d 293 (4th Cir. 2018)).

A comparison of the number of subscribers Cox terminated for non-payment to those it terminated for receiving notices of alleged copyright infringement does not demonstrate that Cox recklessly *disregarded* notices of copyright infringement. It has absolutely nothing to do with Cox's *knowledge* of the infringement alleged in this action. It is therefore entirely irrelevant to whether Cox's alleged secondary infringement was willful. It should not be considered by the jury.[4]

### C. To the extent the evidence is deemed relevant, its marginal probity is far outweighed by its prejudice.

To the extent there is any marginal relevance to the number of subscribers Cox terminated for non-payment—and there is not—the prejudice to Cox would be much greater than the probative value. The evidence should therefore be precluded. *See* Fed. R. Evid. 403. Cox had legitimate business reasons for terminating subscribers for non-payment the way that it did, which have no bearing on its separate legitimate business decisions regarding its termination policy for subscribers who receive notices of alleged copyright infringement.

Cox will demonstrate at trial that its policy with respect to responding to notices of alleged copyright infringement was reasonable, in that it caused a reduction of number of subsequent

---

[4] The same argument applies if Plaintiffs attempt to further contort the "reckless disregard" doctrine to mean "wantonness" or some other adjective connoting bad actions by Cox; that argument, too, should be rejected for the same reasons discussed herein. Courts and commentators have held that "wantonness" or evidence of bad acts is merely an indicator of "reckless disregard" and establishes the requisite knowledge for willfulness. *See, e.g.*, 4 Nimmer on Copyright § 14.04 (2019) (" … the standard of "reckless disregard" connotes wantonness … .") (citing *Yellow Pages Photos, Inc. v. Ziplocal, LP*, 795 F.3d 1255, 1272 (11th Cir. 2015), in which the "court inferred willfulness from statements along the lines that the source of the images 'wasn't a concern' and 'wouldn't have made any difference to us.'"). Cox's practice with respect to terminations for non-payment has no bearing on how it acted with respect to subscribers alleged to have infringed Plaintiffs' copyrights.

notices received by specific subscribers. Cox will also demonstrate that multiple steps in a graduated response contributed to this reasonable approach, as educating its subscribers is essential to ultimately getting them to stop infringing—as Plaintiffs conceded by joining the CAS and other initiatives.

It would be unfairly prejudicial to allow the comparison of the number of subscribers who were terminated for non-payment to those for infringement, as they are, simply put, comparing apples and chicken. Plaintiffs want the jury to consider and confuse the relatively large number of subscribers terminated for non-payment and conclude that Cox should have terminated exponentially more for copyright infringement than it did. Plaintiffs should not be permitted to use this irrelevant and prejudicial metric.

## V.  CONCLUSION

Based on the foregoing, Cox respectfully requests the Court preclude Plaintiffs from introducing any evidence regarding the number of Cox's subscribers terminated for non-payment, as it is irrelevant. And to the extent it is deemed even marginally relevant, it is unduly prejudicial to Cox.

Dated: October 19, 2019

Respectfully submitted,

*/s/ Thomas M. Buchanan*
Thomas M. Buchanan (VSB No. 21530)
WINSTON & STRAWN LLP
1700 K Street, NW
Washington, DC 20006-3817
Tel: (202) 282-5787
Fax: (202) 282-5100
Email: tbuchana@winston.com

*Attorney for Cox Communications, Inc. and CoxCom, LLC*

8

*Of Counsel for Defendants*

Michael S. Elkin (*pro hac vice*)
Thomas Patrick Lane (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
Email: melkin@winston.com
Email: tlane@winston.com

Jennifer A. Golinveaux (*pro hac vice*)
Thomas J. Kearney (*pro hac vice*)
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111-5840
Telephone: (415) 591-1000
Facsimile: (415) 591-1400
Email: jgolinveaux@winston.com
Email: tkearney@winston.com

Michael L. Brody (*pro hac vice*)
WINSTON & STRAWN LLP
35 W. Wacker Dr.
Chicago, IL 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700
Email: mbrody@winston.com

Diana Hughes Leiden (*pro hac vice*)
WINSTON & STRAWN LLP
333 S. Grand Avenue, Suite 3800
Los Angeles, CA 90071
Telephone: (213) 615-1700
Facsimile: (213) 615-1750
Email: dhleiden@winston.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on October 19, 2019, a copy of the foregoing was served by email to Jeffrey Gould at jeff@oandzlaw.com, by party agreement, due to technical issues with the ECF system.

      *s/ Sean R. Anderson*
      Sean R. Anderson
      Winston & Strawn LLP
      200 Park Avenue
      New York, NY 10166
      Tel: (212) 294-6700
      Fax: (212) 294-4700
      Email: sranderson@winston.com