# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

SONY MUSIC ENTERTAINMENT, *et al.*,

   Plaintiffs,

v.

COX COMMUNICATIONS, INC., *et al.*,

   Defendants.

Case No. 1:18-cv-00950-LO-JFA

**CONSOLIDATED REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO STRIKE PORTIONS OF THE DECLARATION OF THOMAS KEARNEY AND PLAINTIFFS' MOTION TO STRIKE THE DECLARATION OF THOMAS PATRICK LANE AND PORTIONS OF THE DECLARATION OF THOMAS KEARNEY**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

INTRODUCTION ............................................................................................................................... 1

ARGUMENT ....................................................................................................................................... 2

    I.   THE LANE/KEARNEY SUMMARIES ARE INADMISSIBLE. ...................................... 2

        A.   The Lane/Kearney Summaries are inadmissible as demonstratives. ............................ 2

        B.   The Lane/Kearney Summaries are inadmissible because counsel cannot sponsor summary exhibits. ........................................................................................................ 3

        C.   The Lane/Kearney Summaries are inadmissible hearsay. ............................................ 5

    II.   MR. LANE AND MR. KEARNEY CANNOT PROVIDE ARGUMENT UNDER THE GUISE OF TESTIMONY, NOR TESTIFY TO ISSUES FOR WHICH THEY LACK PERSONAL KNOWLEDGE. ..................................................................................... 6

        A.   The Lane and Kearney Declarations are suffused with argumentation. ....................... 6

        B.   Mr. Lane's and Mr. Kearney's testimony about documents is inadmissible. ............... 9

    III.  NO WITNESS HAS LAID A FOUNDATION FOR THE ADMISSIBILITY OF THE AUDIBLE MAGIC SPREADSHEET. ................................................................................ 10

        A.   No witness has authenticated the Audible Magic Spreadsheet. ................................. 10

        B.   No witness has laid foundation for the business record exception to the hearsay rule. ............................................................................................................................. 11

        C.   Cox cannot cure the Audible Magic Spreadsheet's admissibility problems. .............. 12

    IV.  THE ALBUM TRACK LISTINGS ATTACHED TO THE LANE DECLARATION ARE INADMISSIBLE HEARSAY ............................................................................................ 12

    V.   KEARNEY EXHIBIT K5 IS INADMISSIBLE UNDER THE RESIDUAL HEARSAY EXCEPTION BECAUSE IT LACKS SUFFICIENT CIRCUMSTANTIAL GUARANTEES OF TRUSTWORTHINESS. ............................... 13

CONCLUSION ................................................................................................................................. 14

## TABLE OF AUTHORITIES

**Cases**

*Bluiett v. Pierre M. Sprey, Inc.*,
  No. CV AW-05-1244, 2009 WL 10685350 (D. Md. Jan. 27, 2009) ...................................... 3, 4

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ................................................................................................................ 7

*Lorraine v. Markel Am. Ins. Co.*,
  241 F.R.D. 534 (D. Md. 2007) .............................................................................................. 10

*Ondo v. City of Cleveland*,
  795 F.3d 597 (6th Cir. 2015) ................................................................................................... 8

*Pharmacy, Inc. v. Am. Pharm. Partners, Inc.*,
  No. CIV.A.05-776DRHAKT, 2007 WL 2728898 (E.D.N.Y. Sept. 14, 2007) ........................... 7

*Trustees of Local 8A-28A Welfare Fund v. Am. Grp. Administrators*,
  No. 14-CV-1088 (RRM)(PK), 2017 WL 3700899 (E.D.N.Y. Aug. 25, 2017) .......................... 7

*United States v. Bray*,
  139 F.3d 1104 6th Cir. 1998) .................................................................................................. 3

*United States v. Brown*,
  553 F.3d 768 (5th Cir. 2008) ................................................................................................. 11

*United States v. Cunningham*,
  761 F. App'x 203 (4th Cir. 2019) .......................................................................................... 13

*United States v. Grajales-Montoya*,
  117 F.3d 356 (8th Cir. 1997) ............................................................................................... 3, 4

*United States v. Heyward*,
  729 F.2d 297 (4th Cir. 1984) ................................................................................................. 13

*United States v. Johnson*,
  54 F.3d 1150 (4th Cir. 1995) ............................................................................................... 2, 4

**Other Authorities**

Argument,
  Black's Law Dictionary (11th ed. 2019) ................................................................................. 6

**Rules**

FED. R. CIV. P. 45 .................................................................................................................. 12

FED. R. CIV. P. 56 ............................................................................................................. 4, 8, 9

FED. R. EVID. 1006 .................................................................................................................. 2

FED. R. EVID. 403 .................................................................................................................. 14

FED. R. EVID. 602 .................................................................................................................... 9

FED. R. EVID. 611 .................................................................................................................... 2

FED. R. EVID. 803 .................................................................................................................. 12

FED. R. EVID. 807 .................................................................................................................. 13

FED. R. EVID. 901 .................................................................................................................. 11

# INTRODUCTION

In its consolidated opposition to Plaintiffs' motions to strike, Cox backpedals and twists itself into knots trying to justify the Declarations of Thomas Patrick Lane (ECF No. 397) and Thomas Kearney (ECF Nos. 329-1 and 400). Cox describes these as "wholly conventional attorney declarations." But one look reveals that they do much more than merely attach exhibits with admissible evidence from the record. The declarations summarize evidence (inaccurately), attach inadmissible documents, and contain substantial legal argument and testimony.

Cox now claims—for the first time—that the Lane and Kearney Summaries are demonstrative exhibits, not Rule 1006 summaries. This post hoc attempt to recast the Rule 1006 summaries as demonstratives does not hold water. Cox cited these summaries as *evidence* while attempting to establish or dispute facts. Regardless, the summaries are improper here whether as Rule 1006 summaries or demonstratives.

Cox contends that the challenged statements in the Lane and Kearney Declarations are not testimony, evidence or argument, and that it was appropriate for its attorney declarations to comment on and analyze the record. Cox is wrong. The rules do not allow for that. Cox cannot submit 50+ pages of additional legal briefing through attorney declarations, let alone utilize its litigation counsel as *de facto* testifying experts or summary witnesses. Cox can no more rely on its attorneys' testimony and argument as *evidence* on summary judgment than it can at trial.

Finally, Cox tries various end-runs around the plain inadmissibility of the Audible Magic Spreadsheet (REV0003444). Each falls flat. The same is true for the other inadmissible documents attached to the Lane and Kearney Declarations. These missteps are all incurable. The motions to strike should be granted and the Court should consider only properly admissible evidence in ruling on the parties' summary judgment motions.

# ARGUMENT

## I. The Lane/Kearney Summaries are inadmissible.

### A. The Lane/Kearney Summaries are inadmissible as demonstratives.

Cox manufactures in its opposition a new argument that the Lane/Kearney Summaries are not Rule 1006 summaries, but demonstratives offered under FED. R. EVID. 611(a). (Opp. at 9–12.) Cox did not refer to the Lane/Kearney Summaries as "demonstratives" in its summary judgment declarations and briefs; it cited them as evidence. But even if demonstratives, they are still inadmissible for similar reasons to why they fail under FED. R. EVID. 1006.

"Demonstrative evidence is a form of testimonial evidence because it illustrates, usually in visible form, the testimony of the witness." 28 Charles Allan Wright et al., *Federal Practice & Procedure* § 6164(a) n.96 (2d ed.). Accordingly, it must be offered by a live witness subject to cross examination or else cannot be shown to the jury. *See United States v. Johnson*, 54 F.3d 1150, 1160 (4th Cir. 1995) (the most important "safeguard" is "ensuring that the individual who prepared the chart . . . [is] available for cross-examination by the [other party] to test the competence of the evidence as presented in the summary chart."). Cox agrees that neither Mr. Lane nor Mr. Kearney will testify at trial and the alleged demonstratives therefore fail under *Johnson*. The mistakes, omissions, confusing terminology, and argumentative descriptions in the Lane/Kearney Summaries, s*ee* Pls.' SJ Reply Mem. (ECF No. 456) at 9–14, n.7,10,14,17, illustrate the importance of the cross-examination safeguard and the risk of prejudice absent that.

Cox's argument that Plaintiffs should just respond by providing contrary evidence, and its disclaimer that it will not offer the Lane and Kearney Summaries at trial, misses the point. (Opp. at 11–12.) Cox cannot establish or oppose a genuine issue of material fact on summary judgment with inadmissible evidence. Further, the proper response to a party's offering inadmissible,

2

argumentative declarations and summaries is not to respond by offering dueling inadmissible, argumentative declarations and summaries.

### B. The Lane/Kearney Summaries are inadmissible because counsel cannot sponsor summary exhibits.

The Lane/Kearney Summaries are also inadmissible as Rule 1006 summaries because neither outside counsel can testify at trial. Cox admits that the proponent of a summary must put "present the testimony of the witness who supervised its preparation." *United States v. Bray*, 139 F.3d 1104, 1109–10 (6th Cir. 1998). There is no question that Mr. Lane and Mr. Kearney supervised the preparation of the Lane/Kearney summaries. (Opp. at 13.)

Cox is wrong that that "there is no blanket rule against attorney-sponsored summary evidence." (Opp. at 13.) It cites no authority to support its claim, nor even a single example of an attorney being allowed to sponsor a summary exhibit at trial. Nor does Cox successfully distinguish the case law Plaintiffs cited holding attorney-sponsored summaries inadmissible.

Cox tries to distinguish *Bluiett v. Pierre M. Sprey, Inc.* and *United States v. Grajales-Montoya* on the ground that the summaries in those cases contained "arguments and conclusions that the attorney is attempting to present as evidence." (Opp. at 13.) But the Lane/Kearney Summaries do that too. Cox's contention that the Lane/Kearney Summaries "simply summarize or excerpt the evidence to which they relate," and "contain no argument at all" (*see* Opp. at 14), does not withstand even minimal scrutiny. *See* Pls.' Mem. 5–6 (ECF No. 391). The Summaries argumentatively characterize and comment on the evidence they purport to summarize. *See, e.g.,* Lane Decl. ¶ 10 (asserting that Ex. L2 lists Plaintiffs' registration certificates that "contain facial deficiencies"); Lane Decl. ¶ 13 (asserting that Ex. L5 summarizes Plaintiffs' Works that "suffer from a common issue"). *Grajales-Montoya* held that a summary was "written argument" because it "was prepared by a lawyer trying the case and [] restates and distills other properly admitted

3

exhibits . . . ." 117 F.3d 356, 361 (8th Cir. 1997). *Grajales-Montoya* could have been describing the Lane/Kearney summarizes; there is no daylight between "restating and distilling evidence" and "summarizing and excerpting evidence."

Cox does not even address the main rationale for why counsel cannot sponsor summary exhibits: "Rule 1006 'appears to contemplate . . . that a summary . . . will have been prepared by a witness available for cross-examination, not by the lawyers trying the case.'" *Bluiett v. Pierre M. Sprey, Inc.*, No. CV AW-05-1244, 2009 WL 10685350, at *5 (D. Md. Jan. 27, 2009) (quoting *Grajales-Montoya*, 117 F.3d at 361). The same logic and risk of prejudice exist here that the Fourth Circuit recognized with regard to demonstratives. *See Johnson*, 54 F.3d at 1160. But when the sponsor is an attorney, not a testifying witness, that safeguard is lost.

Cox concedes its counsel will not testify. (*See* Opp. 14.) That admission should doom the Lane/Kearney Summaries' admissibility. Cox's acrobatics trying to explain how it could put the Summaries into admissible form nevertheless fail. As the proponent of the evidence, "the burden is on [Cox] . . . to explain the admissible form that is anticipated." FED. R. CIV. P. 56(C)(2) advisory comm. note. Cox suggests it might use the Lane/Kearney Summaries when cross-examining Plaintiffs' witnesses, but, as Plaintiffs have shown, Cox cannot use them without putting forth a witness who can explain how the summaries were prepared; obviously, Plaintiffs' witnesses will not sponsor Cox's summaries in this way.

Cox also cannot use its experts to sponsor the Lane/Kearney Summaries. First, the sponsoring witness must be the person who prepared the summary, and Cox admits that its attorneys prepared them. (Opp. at 13.) Nor should the Court countenance the proposed fiction of Cox's experts "recreating" the Lane/Kearney Summaries in an identical form; Cox's experts would be in no better position to testify to the Summaries than a copy machine. Second, the deadline for

4

expert discovery and witness list disclosures has long passed. None of Cox's expert reports disclosed the Summaries as the subjects of expert testimony, nor did Cox disclose any summary witnesses. Those disclosure requirements are important and exist, once again, to safeguard against the prejudice caused by having no opportunity to test such summaries in advance of trial. The Court should not permit Cox to conduct trial by ambush and should reject Cox's last-ditch scramble to find a suitable undisclosed witness to sponsor its summaries. Because Cox has no witness to offer the Lane/Kearney summaries at trial, the Lane/Kearney Summaries cannot be considered on summary judgment either.

Cox's failure to properly and timely disclose a non-attorney summary witness puts to bed its argument that Plaintiffs' position would require submitting "the entirety of every piece of evidence on which a [a summary judgment movant] relies." (Opp. 12 n.8.) Summaries are a perfectly legitimate means of putting evidence before the Court on summary judgment; they just must be prepared by a timely-disclosed witness capable of testifying at trial. Cox's failure to follow these simple rules is a problem of its own making.

### C. The Lane/Kearney Summaries are inadmissible hearsay.

The Lane/Kearney Summaries are out-of-court statements offered for the truth of the matters asserted therein. That makes them hearsay. Cox only argues otherwise by suggesting that, because Mr. Lane and Mr. Kearney *could* testify at trial, the Lane/Kearney Summaries are not hearsay. (Opp. at 15.) This is silly because Cox is wrong about that and it has already conceded that they will not *actually* do so.

> **II.     Mr. Lane and Mr. Kearney cannot provide argument under the guise of testimony, nor testify to issues for which they lack personal knowledge.**
>
> **A.  The Lane and Kearney Declarations are suffused with argumentation.**

An argument is "a statement that attempts to persuade by setting forth reasons why something is true or untrue, right or wrong, better or worse, etc.; esp., the remarks of counsel in analyzing and pointing out or repudiating a desired inference, made for the assistance of a decision-maker."  Argument, Black's Law Dictionary (11th ed. 2019).  The statements at issue in the Lane and Kearney Declarations comfortably fit that definition.

In trying to explain why the Lane and Kearney Declarations do not contain attorney argument, Cox characterizes them as:

- [M]erely inform[ing] the Court of the basis for Cox's motion for or opposition to summary judgment and identify[ing] those portions of the record that the Declarant believes demonstrate the absence or existence of a genuine dispute of material fact.  (Opp. at 3–4.)

- [G]uid[ing] the Court's understanding of the summary judgment record.  (Opp. at 4.)

- [M]erely point[ing] to evidence that Plaintiffs attached to their summary judgment motion and identify[ing] specific statements, omissions, errors, and characteristics that appear on the face of that evidence.  (Opp. at 18.)

- [C]haracterizations and explanations of the evidence embodied in attached documents or Plaintiffs' attached documents.  (Opp. at 22.)

Guiding the Court's understanding, identifying and characterizing relevant evidence, informing the Court of the basis for a motion—this is all obviously argument.  Cox's assertion that argument is limited to arguing for legal conclusions is wrong; arguing for factual inferences to be drawn from evidence is also argument.  (Opp. at 18.)  Beyond that, Cox's claim that the Kearney and Lane Declarations do not draw legal conclusions is just flat wrong.  For example, Mr. Lane argues based on Plaintiffs' declarations who owns the rights to certain works, Lane Decl. ¶¶ 29, 30, 146, 148–50, and Mr. Kearney analyzes whether the RIAA's notices complied with the Digital Millennium Copyright Act's notice requirements.  Lane 2d Decl. ¶¶ 13(b), 14.

The authority Cox cites does not support Cox's position. (Opp. at 18.) Cox relies on *Trustees of Local 8A-28A Welfare Fund v. Am. Grp. Administrators* for the proposition that "[a]ttorney affidavits are nevertheless allowed a degree of latitude to characterize the evidence by informing the court of the basis for the summary judgment motion and identifying the portion of the record counsel believes demonstrates the absence of genuine issues of fact." No. 14-CV-1088 (RRM)(PK), 2017 WL 3700899, at *1 (E.D.N.Y. Aug. 25, 2017). *Trustees* quotes *Pharmacy, Inc. v. Am. Pharm. Partners, Inc.* for this proposition. No. CIV.A.05-776DRHAKT, 2007 WL 2728898, at *3 (E.D.N.Y. Sept. 14, 2007). *Pharmacy* in turn cites the Supreme Court's opinion in *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). But *Celotex* says nothing about the proper scope specifically of attorney *affidavits* on summary judgment.

Further, both *Trustees* and *Pharmacy*'s actual holdings suggest far less latitude for attorney declarations than the broad general language Cox quotes. *Pharmacy* struck several paragraphs from an attorney affidavit that were "more appropriate for a memorandum of law than an affidavit" and disregarded several other paragraphs that characterized the evidence. 2007 WL 2728898 at *1. Similarly, *Trustees* held that, "[t]o the extent any statements in a Declaration mischaracterize the attached exhibits, the Court will disregard those statements and consider the exhibits themselves." 2017 WL 3700899 at *3. The holdings of Cox's authorities do not provide any basis in law for the broad proposition that Cox's attorneys can use affidavits to "guide the Court's understanding" and "characterize and explain the evidence." This is particularly so in light of the multiple appellate authorities Plaintiffs cited condemning argumentative attorney affidavits, *see* Pls.' 2d Mem. at 5 (ECF No. 422), and the text of Rule 56 itself, which requires that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge," FED. R.

7

CIV. P. 56(c)(4). Contrary to Cox's view, these cases show that attorneys should *not* use affidavits to advance legal arguments and characterize evidence.

### A. Mr. Kearney's statements based on "information and belief" are inadmissible.

Cox is simply wrong that Kearney's statements made on "information and belief" are not necessarily made without personal knowledge. (Opp. at 18–21.) Mr. Kearney admits as much in the very first paragraph of both of his declarations, stating, "I have personal knowledge of all facts stated in this declaration, *except where such facts are stated on information and belief, and as to such facts I believe them to be true.*" Mr. Kearney 1st Decl. ¶ 1; Kearney 2d Decl. ¶ 1 (emphasis added). Mr. Kearney's own sworn statements make clear that he has no personal knowledge as to the subjects on which he testifies on "information and belief."

The authority Cox cites does not support its position that testimony based on "information" is admissible. Cox cites *Ondo v. City of Cleveland*, where the Sixth Circuit, after referencing Fed. R. Civ. P. 56(c)(4)'s personal knowledge requirement, distinguished between "knowledge" and "belief" (not, as Cox suggests, between "information" and "belief"). 795 F.3d 597, 605 (6th Cir. 2015). The Court held that it "must admit the parts [of the affidavit] *based solely on personal knowledge*, while striking the parts based on belief." *Id*. (emphasis added). This accords with the authorities Plaintiffs cited, *see* Pls.' 2d Mem. at 10–11, holding that testimony based on information and belief is not based on personal knowledge and so cannot be considered on summary judgment.

Moreover, Cox ignores the reason for Rule 56's personal knowledge requirement: Fed. R. Evid. 602 limits testimony at trial to subjects on which the witness has personal knowledge. Since summary judgment determines whether genuine issues exist to be tried, the same standard applies. There is simply no authority for Cox's position that testimony based on "information" derived from the attorney witness's "research," but about which the witness has no direct personal

knowledge, is admissible either at summary judgment or at trial. If Cox wanted to admit the results of Mr. Kearney research, it needed to lay sufficient foundation to admit the third-party sources directly, not have Mr. Kearney testify about what third-party sources said.

### B. Mr. Lane's and Mr. Kearney's testimony about documents is inadmissible.

Having argued that Mr. Lane and Mr. Kearney's declarations are not argument, Cox abruptly switches gears and bizarrely argues that their declarations are not testimony. This claim is again directly belied by the face of the Declarations. (Opp. at 21–24.) The Declarations are made under penalty of perjury and both Mr. Kearney and Mr. Lane declare, with regard to the claims in their declarations, "[i]f called as a witness, I could and would *testify* competently thereto." Lane Decl. ¶ 1; Mr. Kearney 1st Decl. ¶ 1; Kearney 2d Decl. ¶ 1 (emphasis added). Cox does not explain the nature of this supposed territory that is neither argument nor testimony. Nor does Cox explain how statements from counsel that it claims are neither evidence, nor arguments from that evidence, deserve any attention or regard from the Court.

The rest of Cox's argument fundamentally misunderstands the personal knowledge requirement. Cox argues that Mr. Lane and Mr. Kearney can testify about documents about which they otherwise admittedly have no personal knowledge because Mr. Lane and Mr. Kearney read the documents. (Opp. at 23.) This, of course, is not what "personal knowledge" means in FED. R. CIV. P. 56(c)(4) and FED. R. EVID. 602. As the case law Plaintiffs cited shows, *see* Pls.' 2d Mem. at 10–11, personal knowledge of a document means the witness has independent knowledge of the document, and a witness cannot just parrot what the documents show. If any witness could testify to a document's contents just by virtue of having read it, the personal knowledge requirement would be meaningless. Cox tries to distinguish these cases on the basis that none involved attorney affidavits, but Cox does not explain why non-attorneys cannot parrot documents they have read

while attorneys can. Mr. Lane and Mr. Kearney have no more knowledge of the documents they have read than the declarations that were struck in the cases Plaintiffs cited.

### III. No witness has laid a foundation for the admissibility of the Audible Magic Spreadsheet.

#### A. No witness has authenticated the Audible Magic Spreadsheet.

Cox cannot point to any testimony by a witness with personal knowledge that the Audible Magic Spreadsheet is what Cox claims it is. Cox does not dispute that Audible Magic's 30(b)(6) witness was neither shown the Audible Magic Spreadsheet nor asked any questions about it.

Recognizing this barren record, Cox fabricates a new theory of authentication in which third-party and expert witnesses who have no personal knowledge of a document can authenticate it. "The question for the court under Rule 901 is whether the proponent of the evidence has offered a foundation from which the jury could reasonably find that the evidence is what the proponent says it is . . . ." *Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 542 (D. Md. 2007) (internal quotations and citations omitted). None of the supposed "circumstantial" evidence Cox cites meets this standard.

Cox points to the fact that Audible Magic produced the spreadsheet, but this fact shows nothing other than that document came from Audible Magic. Cox served 16 document requests on Audible Magic, (Opp. Ex. 1 at 14–15), to which Audible Magic responded by producing nearly 15,000 documents. Gould Decl. in support of Pls.' Motion to Strike (ECF No. 391-1) ("Gould Decl. I") ¶ 4. Cox admits that, "Audible Magic did not specifically identify which request each document related to" and it concedes that the Audible Magic Spreadsheet "was arguably responsive" to at least two other document requests. (Opp. 6 n.4). But no record evidence shows to which of Cox's requests the Audible Magic Spreadsheet was responsive. Cox's claim that

10

Audible Magic produced the Spreadsheet "in response to three highly specific requests for production" (Opp. at 5) is unsupported speculation.

The witness testimony Cox cites gets it no further. While Mr. Izekoye, Audible Magic's 30(b)(6) witness, testified generally that Audible Magic produced "transaction logs," he was never asked about *this* document.

Cox's attempt to rely on third-party and expert testimony to authenticate the Audible Magic Spreadsheet also fails. Cox relies on testimony from Slawomir Paszkowski, a MarkMonitor witness, but there is no evidence Mr. Paszkowski has personal knowledge of any internal Audible Magic documents. Nor does Cox's expert, Dr. Feamster, have personal knowledge of the Audible Magic Spreadsheet's creation, origin, or provenance. He also has not claimed to have any relevant expertise regarding Audible Magic's record-keeping practices. *See United States v. Brown*, 553 F.3d 768, 793 (5th Cir. 2008) (affirming exclusion where expert could not lay foundation because expert's "expertise in statistics and in the computer program used did not give him any knowledge about [the producing party's] record keeping practices.").

Finally, Cox's argument that Mr. Ikezoye has not affirmatively denied the authenticity of the Audible Magic Spreadsheet turns the authentication requirement upside down. Under FED. R. EVID. 901, "the proponent must produce evidence sufficient to" authenticate it. Pointing to a lack of contrary evidence is plainly insufficient to carry this burden. If a witness's failure to affirmatively deny authenticity were sufficient to satisfy a proponent's authentication burden, FED. R. EVID. 901's authentication requirement would be meaningless.

### B. No witness has laid foundation for the business record exception to the hearsay rule.

Even if the Audible Magic Spreadsheet could be authenticated by testimony from non-Audible Magic witnesses, that testimony cannot lay the foundation for the business record

11

exception because those witnesses are not qualified to testify regarding whether the Audible Magic Spreadsheet is a business record of Audible Magic. *See* FED. R. EVID. 803(6).

### C. Cox cannot cure the Audible Magic Spreadsheet's admissibility problems.

Cox cannot put the Audible Magic Spreadsheet into admissible form that addresses the document's authenticity and hearsay problems. To do so would require live testimony from an Audible Magic witness, such as Mr. Ikezoye. Cox did not indicate on its witness list an intention to call Mr. Ikezoye to testify live at trial, ECF No. 221, and, in any event, Audible Magic is located in California, well outside the range of the Court's trial subpoena power. FED. R. CIV. P. 45(c)(1). Without live trial testimony from Audible Magic, the Audible Magic Spreadsheet cannot be admitted.

### IV. The album track listings attached to the Lane Declaration are inadmissible hearsay.

Cox admits that the album track listings submitted as exhibits to the Lane Declaration are "technically hearsay." (Opp. at 15.) Cox argues that the hearsay exception in FED. R. EVID. 803(17) applies, but Cox has laid no foundation for this exception. Rule 803(17) requires showing that the statements are "market quotations, lists, directories, or other compilations that are generally relied on by the public or by persons in particular occupations." According to the Advisory Committee notes, "The basis of trustworthiness is general reliance by the public or by a particular segment of it . . . ." FED. R. EVID. 803(17) advisory comm. note. The problem for Cox is that there is no evidence in the record showing that the general public, or some particular group or occupation, generally relies on Discogs.com's track listings in the same way that market participants rely on price quotations in a newspaper (the canonical example of this exception).

Cox also will not be able to put this information into some other admissible form. Cox suggests it could admit compact discs of each album at trial, but it has not included these albums on its exhibit list, ECF No. 232, and so could not introduce them at trial.

## V. Kearney Exhibit K5 is inadmissible under the residual hearsay exception because it lacks sufficient circumstantial guarantees of trustworthiness.

Cox does not dispute that Kearney Exhibit K5 is hearsay, instead arguing that the residual hearsay exception, codified at FED. R. EVID. 807, applies. It does not. The residual hearsay exception "was meant to be invoked sparingly" and "[i]t is intended that the residual hearsay exceptions will be used very rarely, and only in exceptional circumstances." *United States v. Heyward*, 729 F.2d 297, 299–300 (4th Cir. 1984) (quoting Senate Committee note).

The "most important" requirement for the residual exception is that the statement have "equivalent circumstantial guarantees of trustworthiness." *United States v. Cunningham*, 761 F. App'x 203, 206 (4th Cir. 2019). "The traditional exceptions to the hearsay rule, in turn, provide the benchmark against which the trustworthiness of evidence must be compared." *Schering Corp. v. Pfizer Inc.,* 189 F.3d 218, 232–33 (2d Cir. 1999) (Sotomayor, J.)

The circumstances to which Cox points do not indicate anything about trustworthiness. That Cox produced the document shows nothing. The creator of the slide deck, Mr. Cadenhead, has testified that the data in ▓▓▓▓▓▓▓▓▓▓ and could not testify to how the data was gathered. Gould Decl. in support of Pls.' Motion in Limine (ECF No. 476-3) ("Gould Decl. II") Ex. 3 at 291:13–298:20, 323:19–325:10 (Cadenhead Tr.). In response to Plaintiffs' Motion to Compel seeking the documents and information supporting the data, Cox produced a single email, on the very last day of discovery, that contained neither the specific data nor calculations supporting the ▓ claim in the slide. Gould Decl. II Ex. 5 (March 9-10, 2010 Email chain between B. Beck and R. Cadenhead, DX140). That email provides no information about

13

what data was examined, how it was selected, whether it was selected for the purpose of generating a specific result, or how the data was analyzed. Cox subsequently admitted that nothing exists beyond this summary email. Gould Decl. II Ex. 9 (July 25, 2019 Email from T. Kearney to J. Gould).

Because Mr. Cadenhead did not create the data in the slides, he is not the "declarant" of the data for the purposes of hearsay analysis. Accordingly, that Mr. Cadenhead was deposed and may testify at trial is irrelevant. Further, far from being guarantees of trustworthiness, the lack of evidence showing what data was examined, how it was selected, whether it was selected for the purpose of generating a specific result, or how the data was analyzed indicate that the data Mr. Cadenhead relied on is highly unreliable. There are certainly no circumstances here that minimize the hearsay dangers. Accordingly, the slides must be stricken as inadmissible hearsay and Cox's argument based thereon that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇ Cox's SJ Opp. at 2 and n.1, must be disregarded.[1]

## CONCLUSION

For the reasons set forth herein, Plaintiffs' respectfully request that the Court strike from the summary judgment record and give no consideration in deciding the parties' summary judgment motions to:

- The Lane Declaration and all exhibits;
- The Audible Magic Spreadsheet (Kearney 1st Decl. Ex. 40);
- The Kearney Summaries (Kearney 1st Decl. Exs. 27, 28, 33, 33A, 34 and ¶ 44; Kearney 2d Decl. Exs. K13_A and K13_B);

---

[1] Plaintiffs have explained at length Exhibit K5's many flaws in their motion in limine to exclude the same document at trial, and they incorporate those arguments by reference herein. ECF No. 476 at Section II (arguing to exclude ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. In addition to hearsay problems, Exhibit K5 lacks foundation and must be excluded under FED. R. EVID. 403.

- All testimony in the Kearney Declaration about, and based on, the Kearney Summaries (Kearney 1st Decl. ¶¶ 29, 35, 37, 40, 44);

- Exhibit K5 to the Second Kearney Declaration and all of Kearney's testimony regarding Exhibit K5 (Kearny 2d Decl. ¶ 6, Ex. K5)

- All testimony in the Kearney Declarations based on information and belief (Kearney 1st Decl. ¶¶ 23, 33, 39, 51, 52; Kearney 2d Decl. ¶¶ 9-12); and

- All testimony in the Kearney Declarations based on Mr. Kearney's review of documents about which he has no personal knowledge (Kearney 1st Decl. ¶¶ 28, 29, 31, 32, 33, 34, 36, 38, 39, 40. 41, 44, 46, 47, 48, 53; Kearney 2d Decl. ¶¶ 13-22).

Respectfully submitted,

Dated October 21, 2019

/s/ Scott A. Zebrak
Scott A. Zebrak (38729)
Matthew J. Oppenheim (*pro hac vice*)
Jeffrey M. Gould (*pro hac vice*)
Kerry Mustico (*pro hac vice*)
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Avenue, NW, 5th Floor
Washington, DC 20015
Tel:  202-480-2999
scott@oandzlaw.com
matt@oandzlaw.com
jeff@oandzlaw.com
kerry@oandzlaw.com

*Attorneys for Plaintiff*