# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| SONY MUSIC ENTERTAINMENT, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>COX COMMUNICATIONS, INC. and COXCOM, LLC.<br><br>Defendants. | Case No. 1:18-cv-00950-LO-JFA |

**COX'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION *IN LIMINE*
NO. 2 TO PRECLUDE EVIDENCE AND TESTIMONY RELATING TO
<u>THIRD-PARTY INFRINGEMENT NOTICES</u>**

# TABLE OF CONTENTS

**Page**

A. Third-party infringement notices are irrelevant to any claim or defense in this case. .................................................................................................................. 1

    1. Evidence of third-party notices of alleged infringement are not evidence of anything. ................................................................................ 2

    2. Evidence of third-party notices concerning alleged acts of infringement that are not in suit are not relevant to Cox's knowledge of, or willful blindness to, the alleged acts of infringement at issue here. .................................................................... 3

    3. Evidence that specific Cox subscribers received third-party notices in addition to MarkMonitor notices is irrelevant to Cox's knowledge of the infringements alleged here. ........................................... 3

    4. The "volume of infringement notices" is not relevant to Plaintiffs' vicarious liability claim. ............................................................................ 5

    5. Third-party infringement notices are not relevant to willfulness. ............... 6

    6. Third-party infringement notices are not relevant to statutory damages, including the "need for deterrence." ........................................... 6

B. Admission of third-party infringement notices would be unfairly prejudicial to Cox. ................................................................................................ 7

C. Evidence of third-party infringement notices is otherwise inadmissible. ............... 8

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*,
   881 F.3d 293 (4th Cir. 2018) ...................................................................................... 3, 4

*Ellison v. Robertson*,
   357 F.3d 1072 (9th Cir. 2004) ..................................................................................... 5, 6

*The Carrolton of Fayetteville v. Pine Manor Rest Home*,
   215 B.R. 341 (E.D.N.C. 1997) ......................................................................................... 6

**Other Authorities**

Federal Rule of Evidence 403 ............................................................................................... 7

Federal Rule of Evidence 703 ............................................................................................... 8

Federal Rule of Evidence 1006 ............................................................................................. 8

Plaintiffs' opposition to Cox's Motion *in Limine* No. 2 to Preclude Evidence and Testimony Relating to Third-Party Infringement Notices confirms their intention to color the alleged infringements in this case by offering evidence of other alleged infringements *which have never been proven and will not be adjudicated*. Plaintiffs' attempt to litigate this case with evidence from an unrelated case concerning acts of infringement that are not at issue is inappropriate, improper, and prejudicial. Plaintiffs' evidence of third-party infringement allegations should be excluded from trial.[1]

### A.     Third-party infringement notices are irrelevant to any claim or defense in this case.

Plaintiffs variously argue that *all* third-party notices are relevant to show that Cox "knew about and willfully blinded itself to vast infringing activity on its network;" that a subset of those notices "associated with" subscribers who also received MarkMonitor notices are relevant to show Cox's knowledge of infringement for all of those subscribers' alleged infringements; and that "the volume of these infringement notices" shows Cox's "financial incentive to tolerate infringement." Plaintiffs thus conclude that these arguments are relevant to the "financial benefit" requirement of vicarious liability; that third-party notices are relevant to willfulness because they demonstrate "Cox's disregard for Plaintiffs' copyrights was even more reprehensible;" and that the notices are relevant to statutory damages—for reasons Plaintiffs do not articulate. All of Plaintiffs' theories fail.

---

[1] In its motion, Cox identified a nonexclusive list of 12 exhibits relating to third-party notices that should be excluded. These are attached hereto as Exhibits 2-13.

### 1. Evidence of third-party notices of alleged infringement are not evidence of anything.

As a preliminary matter, the infringement notices that Plaintiffs want to introduce into evidence are not evidence that anyone engaged in infringement. This Court specifically held as much in *BMG*, explaining that infringement notices were "accusation[s] only" and "not offered for the truth of … whether or not there was an infringement."[2] Indeed, Plaintiffs have not substantively disputed Cox's Motion *in Limine* seeking to preclude any argument that *Plaintiffs'* notices in *this* case are evidence of infringement.[3] The Rightscorp notices were admissible in *BMG* because there was additional evidence tending to show that the notices did in fact relate to actual infringing conduct. That evidence was disputed and it differed materially from the evidence in this case, but it would have been left to the jury to weigh it following retrial. Even accepting every theory that Plaintiffs intend to adduce in support of the third-party notices' admissibility, they do not prove that Cox ignored other acts of infringement, because they do not prove that any such acts of infringement took place. To be proof of the (false) claim that Cox turned a blind eye to infringing conduct relating to works not at issue in this case, Plaintiffs will be required to prove that such infringement existed. Plaintiffs have not identified any testimony or exhibits establishing the nature and scope of the Rightscorp infringement, and cannot establish the relevance of the notices. Even if they had proposed to offer such proof, such a "trial-within-a-trial" can only serve to massively prolong the evidence in this case and to confuse the jury as to what the evidence is as to the acts of infringement that are actually in dispute.

---

[2] Ex. 14 (*BMG* Trial Tr. 235:15-23).

[3] *See* Opp. at 30 (admitting that notices are merely "shorthand" for the output of infringement detection systems, and that "[w]hile witnesses may use the term infringement, or infringement notices, the ultimate decisions on the existence of direct infringement and secondary infringement are for the jury alone").

2

>    2.   **Evidence of third-party notices concerning alleged acts of infringement that are not in suit are not relevant to Cox's knowledge of, or willful blindness to, the alleged acts of infringement at issue here.**

As Cox explained in its motion, Plaintiffs' claim that third-party infringement notices are relevant to proving the knowledge element of contributory infringement must fail under the standard established by the Fourth Circuit in *BMG*. Under that standard, the only knowledge that is legally relevant to Cox's culpability for the acts of infringement in suit, is knowledge "that Cox knew of *specific* instances of infringement or was willfully blind to *such instances*." *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 881 F.3d 293, 312 (4th Cir. 2018) (emphasis added). Mere "generalized knowledge" that "infringement was occurring somewhere on its network" is not sufficient to establish secondary liability. *Id*. Knowledge of third-party infringement allegations—including the nearly 15 million allegations listed in the Rightscorp database—does not confer knowledge of the "specific instances of infringement" at issue here. At most, it is precisely the kind of "generalized knowledge" of infringement that the Fourth Circuit *specifically* rejected as a basis for contributory infringement liability.

>    3.   **Evidence that specific Cox subscribers received third-party notices in addition to MarkMonitor notices is irrelevant to Cox's knowledge of the infringements alleged here.**

Aware that their claim of relevance for nearly 15 million third-party notices that somebody allegedly engaged in infringement on Cox's network is tenuous (at best), Plaintiffs argue that a smaller subset of those notices are relevant on the theory that they relate to "the same subscribers who were the subject of MarkMonitor's notices." Opp. at 6. But even these third-party notices are irrelevant for the same reason the rest of the third-party notices are: they indisputably do not involve the "*specific* instances of infringement" alleged here, as required by the Fourth Circuit's knowledge standard.

3

To avoid this barrier, Plaintiffs invent a new theory of contributory infringement liability, under which "Cox's knowledge that a specific subscriber is engaged in infringement" is not "cabined to the rightsowner's notice to Cox concerning the infringing subscriber." Instead, according to Plaintiffs, Cox's purported knowledge that a particular subscriber is the subject of one infringement notice relating to a third party's works is sufficient to establish Cox's knowledge of infringing acts by that subscriber (including infringements of Plaintiffs' works).

This remarkable expansion of copyright liability is based entirely on a single sentence in the Fourth Circuit's *BMG* decision, in which that court said that "the proper standard" for contributory infringement "requires a defendant to have specific enough knowledge of infringement that the defendant could *do* something about it." *BMG*, 881 F.3d at 311-312. Plaintiffs' argument is apparently that: (1) Cox knew that Subscriber X was accused of infringement by Rightscorp or other rights holders; (2) that knowledge was sufficient to allow Cox to stop the infringement that was the subject of the notice by "doing something about it," *i.e.*, terminating Subscriber X; and (3) that level of awareness is sufficient enough to prove Cox's knowledge of a "specific act of infringement" by Subscriber X of Plaintiffs' works, establishing that Cox was contributorily liable for Subscriber X's infringement of Plaintiffs' works. *See* Opp. at 6-7.

This illogical and extreme argument misses the point of *BMG*. Plaintiffs are essentially arguing that the knowledge requirement exists at the level of the *subscriber*, not the specific act of infringement. Put another way, Plaintiffs maintain that once an ISP is on notice that a subscriber *may* have infringed *one* copyright, it has culpable knowledge of that subscriber's infringement of *every* copyright. To the contrary, the purpose and effect of the Fourth Circuit's decision was to

4

*strengthen* the knowledge requirement and to lay to rest the notion, urged by BMG in that case, that mere "generalized knowledge" of infringement was a valid basis for liability.

If adopted, Plaintiffs' position here would have completely bizarre and unprecedented results. For example, it is axiomatic that evidence that a subscriber directly infringed Copyright X could not be used to prove that he or she also directly infringed Copyright Y, any more than evidence that a driver ran a stop sign in Bethesda could be used to prove that he later ran a different stop sign in Arlington. But under Plaintiffs' theory, evidence that Cox knew that a subscriber allegedly infringed Copyright X *could* be used to prove that Cox knew he also infringed Copyright Y. That result makes no sense, and is inconsistent with the requirement of knowledge of the "specific act of infringement" at issue.

### 4. The "volume of infringement notices" is not relevant to Plaintiffs' vicarious liability claim.

Plaintiffs make a conclusory and novel claim that the "volume" of third-party infringement notices is relevant to vicarious liability, on the theory that the receipt of large numbers of infringement notices combined with Cox's purported failure to "enforce its own policies" demonstrates "Cox's financial incentive to tolerate infringement." Opp. at 7.

First, this presumes that the notices related to actual underlying infringement and that Cox's behavior with respect to these notices was financially motivated. As explained above, Plaintiffs have not proposed to adduce any such evidence, and the trial-within-a-trial that would ensue if they did would be inappropriate.

In addition, vicarious infringement requires a showing that "the value of the service lies in providing access to infringing material;" that infringement is an "added benefit" for the provider is not sufficient. *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004). Cox's receipt of infringement notices is not at all probative of Plaintiffs' burden to show that the infringement

5

alleged in those notices (which has not been and cannot be proven) is the "draw" for Cox's subscribers. *Id*. As Cox has explained elsewhere, the notion that infringing activity provides "the value of" Cox's high-speed internet service is absurd: the demand for Internet access is ubiquitous, and there is no evidence that access to infringing materials increases it whatsoever. Without such evidence, Cox's receipt of infringement notices is irrelevant to vicarious infringement.

### 5. Third-party infringement notices are not relevant to willfulness.

Plaintiffs assert that evidence of third-party infringement notices is relevant to willful infringement because "Cox's reckless disregard for Plaintiffs' copyright is based, in part, on Cox's lax response to severity of the overall infringing activity on its network." Opp. at 7. This is nonsense. First, it relates, once again, to the existence of unproven infringement of third party works—proof that Plaintiffs have not proposed to put before the jury. Second, whether Cox acted with reckless disregard to some third party's rights is not probative of whether Cox acted with reckless disregard of Plaintiffs' rights. This is particularly true in the case of the Rightscorp notices. Cox blocked those notices, and that decision on Cox's part was at the heart of BMG's willfulness case. But Cox processed every one of Plaintiffs' notices here. Even if it were established that Cox acted with "reckless disregard" to the copyrights underlying the blocked Rightscorp notices, that would demonstrate nothing about Cox's intent with respect to Plaintiffs' *unblocked* notices.

### 6. Third-party infringement notices are not relevant to statutory damages, including the "need for deterrence."

Finally, Plaintiffs offer a single sentence suggesting that "all the issues covered above fall squarely within the broad considerations for a jury when assessing statutory damages, especially the need for deterrence." Opp. at 7. Plaintiffs' failure to offer any explanation or analysis in support of this assertion bars its consideration here. *See, e.g.*, *The Carrolton of Fayetteville v. Pine*

*Manor Rest Home*, 215 B.R. 341, 343 (E.D.N.C. 1997) (issues "averted to in a perfunctory manner, un-accompanied by some effort at developed argumentation, are deemed waived"). Regardless, Plaintiffs' argument is meritless. Any need for "deterrence" of Cox's conduct must be rooted in the conduct that is established by the evidence in *this* case and that is accused in *this* case, not in allegations that are unproven on this record and involve different parties and different copyrighted works.

> **B.  Admission of third-party infringement notices would be unfairly prejudicial to Cox.**

As Cox explained in its motion, admitting evidence into this case of third-party infringement notices would unfairly prejudice Cox and severely complicate the trial; it would present the jury with evidence of millions of allegations of infringement that Cox could not easily evaluate—never mind refute. The effect on the jury could only be to paint Cox as (to use the word Plaintiffs repeatedly invoke) a "reprehensible" actor, responsible for massive and systematic infringement. But none of that alleged infringement is at issue here nor can it be proven in this case, and Plaintiffs have not identified witnesses who would be capable of proving it. There are serious questions about the accuracy and validity of the infringement notices at issue in *this* case; introducing evidence of millions of additional third-party notices would require a massive trial within the trial, distracting the jury from the infringement questions actually at issue and unfairly forcing Cox to defend allegations of infringement of copyrights Plaintiffs do not own, but are owned by entities not party to this case. Plaintiffs have offered no response to these issues, effectively conceding the need for a full-blown trial on the third-party infringement notices without proof. Such a mini-trial would "confus[e] the issues, mislead[ ] the jury," result in "undue delay" and "wast[ed] time" at trial, and the evidence requiring it is properly excluded under Federal Rule of Evidence 403.

### C. Evidence of third-party infringement notices is otherwise inadmissible.

Plaintiffs' evidence of the Rightscorp notices is a spreadsheet produced in discovery about which none of Plaintiffs' witnesses has any personal knowledge. It is a statement by an unknown out-of-court declarant offered for its truth and is clearly hearsay. It purports to be a summary of millions of infringement notices that are themselves not in evidence, and so is an improper summary under Federal Rule of Evidence 1006. Plaintiffs dispute none of this. Their only argument for the admissibility of the Rightscorp spreadsheet is that it was admitted in *BMG*. But admissibility in one case does not confer admissibility in another, and the circumstances of the spreadsheet's admission in *BMG* were starkly different. In *BMG*, the plaintiffs offered the spreadsheet through a Rightscorp *witness* with personal knowledge of its provenance. Plaintiffs have no such witness here. *See* ECF 222 (Plaintiffs' Witness List). In *BMG*, the spreadsheet was not an improper summary because the underlying data was available for inspection by Cox, which it was able to cross-examine the Rightscorp witness about it. Plaintiffs do not have either the data underlying the spreadsheet or the Rightscorp notices (and so far as Cox knows, made no attempt to obtain them) and have no witness who can be cross-examined about their contents. *See id.*

As for Plaintiffs' fallback assertion that they can bootstrap inadmissible Rightscorp data into evidence through their expert Dr. McGarty, they are wrong. Federal Rule of Evidence 703 allows an expert witness to disclose inadmissible facts to the jury "only if their probative value in helping the jury evaluate [his] opinion substantially outweighs their prejudicial effect." Fed. R. Evid. 703. As already noted, Plaintiffs have made no attempt to rebut Cox's showing that evidence of the Rightscorp notices would be irrelevant and unfairly prejudicial to Cox. Those problems would persist whether the evidence comes in on its own or through Dr. McGarty. Further, Rule 703 applies only if the expert in question is prepared to vouch for the otherwise inadmissible data. Here Dr. McGarty's report simply accepts the *bona fides* of the *BMG* spreadsheet, it does not opine

as to that document's reliability.  Nor have Plaintiffs' offered a declaration from Dr. McGarty opining as to the document's reliability.  Indeed, there is no way that such an offer could have been made, since Dr. McGarty's report does not identify any evidence from the *BMG* record relied on or even reviewed by him, and, hence, offers no basis on which he could have opined as to the spreadsheet's reliability.

For all the reasons given in Cox's motion and this reply, Plaintiffs should be precluded from introducing any evidence of third-party allegations of infringement of copyrights held by non-parties to this case.

Dated: November 6, 2019

Respectfully submitted,

*/s/ Thomas M. Buchanan*
Thomas M. Buchanan (VSB No. 21530)
WINSTON & STRAWN LLP
1700 K Street, NW
Washington, DC 20006-3817
Tel: (202) 282-5787
Fax: (202) 282-5100
Email: tbuchana@winston.com

*Attorney for Cox Communications, Inc. and CoxCom, LLC*

*Of Counsel for Defendants*

Michael S. Elkin (*pro hac vice*)
Thomas Patrick Lane (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Telephone:  (212) 294-6700
Facsimile:  (212) 294-4700
Email:  melkin@winston.com
Email:  tlane@winston.com

Jennifer A. Golinveaux (*pro hac vice*)
Thomas J. Kearney (*pro hac vice*)
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA  94111-5840
Telephone:  (415) 591-1000
Facsimile:  (415) 591-1400
Email:  jgolinveaux@winston.com
Email: tkearney@winston.com

Michael L. Brody (*pro hac vice*)
WINSTON & STRAWN LLP
35 W. Wacker Dr.
Chicago, IL 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700
Email: mbrody@winston.com

Diana Hughes Leiden (*pro hac vice*)
WINSTON & STRAWN LLP
333 S. Grand Avenue, Suite 3800
Los Angeles, CA 90071
Telephone:  (213) 615-1700
Facsimile:  (213) 615-1750
Email:  dhleiden@winston.com

**CERTIFICATE OF SERVICE**

I certify that on November 6, 2019, a copy of the foregoing was filed electronically with the Clerk of Court using the ECF system, which will send notifications to ECF participants.

*/s/ Thomas M. Buchanan*
Thomas M. Buchanan (VSB No. 21530)
1700 K Street, NW
Washington, DC 20006-3817
Tel: (202) 282-5787
Fax: (202) 282-5100
Email: tbuchana@winston.com

*Attorney for Cox Communications, Inc. and CoxCom, LLC*
