# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| SONY MUSIC ENTERTAINMENT, *et al.*, <br><br>  Plaintiffs, <br><br>  v. <br><br> COX COMMUNICATIONS, INC. and COXCOM, LLC. <br><br>  Defendants. | Case No. 1:18-cv-00950-LO-JFA |

**COX'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION *IN LIMINE* NO. 4 TO PRECLUDE EVIDENCE AND TESTIMONY OF INFRINGEMENT AND HARM OTHER THAN THAT ALLEGEDLY REPRESENTED BY THE RIAA NOTICES**

███████████████

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

A.    Evidence and testimony relating to the "value" of subscribers who receive only one notice are irrelevant, misleading, and prejudicial. ....................................................... 1

B.    Calculations regarding the "value" of subscribers who received notices outside of the Claim Period should be precluded. .............................................................................. 2

C.    Financial calculations regarding the value of subscribers who received notices outside of the Claim Period are irrelevant to statutory damages. ....................................... 3

D.    Cox's profits from services other than high-speed Internet during the Claim Period are irrelevant. ............................................................................................................ 4

E.    Testimony related to the general harm from infringement is not relevant. ....................... 5

F.    MarkMonitor's unsubstantiated testimony regarding ████████ and any reference by other witnesses regarding the same should be precluded. ............................ 7

**A.     Evidence and testimony relating to the "value" of subscribers who receive only one notice are irrelevant, misleading, and prejudicial.**

In their Opposition, Plaintiffs largely recycle their broad-brush *Daubert* opposition arguments about why Dr. Lehr's various calculations will help them make their case to the jury. But they do not explain why any evidence or testimony specifically relating to the "value" of subscribers who receive only *one notice* is relevant to their claim for vicarious liability or statutory damages. It is not and should be precluded.

Plaintiffs concede that their theory of liability is based on the number of subscribers who received three or more notices. Opp. at 14, 15. Yet Plaintiffs claim that "Dr. Lehr opines that *all* of the revenue and profit Cox earned from the at-issue subscribers was relevant to Cox's incentive to tolerate infringement." *Id.* at 14 (emphasis in original). That is irreconcilable. ████ ████████████████████████████████████████████████████████████ It is not Plaintiffs' position that these subscribers should have been terminated. Thus, there is no reasonable argument that the "value" of these subscribers factored into Cox's purported economic incentive to tolerate infringement on its network, as they did not continue to infringe. In other words, there was nothing for Cox to "tolerate." Yet, because these subscribers received a single notice, Plaintiffs want to put forward a number that increases Cox's purported economic incentive to tolerate infringement by ████████████████████████████[1] Allowing Plaintiffs to exponentially augment Dr. Lehr's "economic incentive" calculations with these subscribers would be misleading to the jury and unfairly prejudicial to Cox.[2]

---

[1]   While Dr. Lehr does not calculate the "value" based on the number of subscribers who receive two or more notices, that too should be excluded, for the same reasons outlined herein.

[2]    Plaintiffs assert in a footnote that "Cox concedes that revenues and profits it generate from subscribers who were the subject of three or more notices are relevant to Plaintiffs' vicarious liability claim." Opp. at 14, n.6. That is false. Cox moved to preclude Dr. Lehr's calculations because none can be relevant to vicarious liability, as Plaintiffs failed to establish the requisite

**B.      Calculations regarding the "value" of subscribers who received notices outside of the Claim Period should be precluded.**

Plaintiffs appear confused as to what their own expert opines and what they intend to argue at trial.  Dr. Lehr calculated Cox's purported "financial incentive" to tolerate the infringement at issue at three different frequencies: subscribers who received one or more notices, subscribers who received three or more notices, and subscribers who received five or more notices.  Because there are different quantities of subscribers within each group, Cox's alleged financial incentive differs substantially (ranging from ███████████████ for residential subscribers).  One of the many problems with Dr. Lehr's calculation is that he counts notices received by Cox's subscribers before the start of the Claim Period.  Plaintiffs recognized this problem when, in moving for summary judgment, they had Dr. Lehr re-run his calculations, counting only notices received *during the Claim Period* from the RIAA.

In proffering this evidence in support of the financial benefit prong of their vicarious liability claim, Plaintiffs do not address the Court's holding in *BMG*, which limits the vicarious liability analysis to "the infringing activities *at issue in th[e] case* … ."  *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 149 F. Supp. 3d 634, 676 (E.D. Va. 2015), *aff'd in part, rev'd in part*, 881 F.3d 293 (4th Cir. 2018) (quoting *Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-07098-AB SHX, 2014 WL 8628031, at *4 (C.D. Cal. Nov. 14, 2014), *aff'd*, 847 F.3d 657 (9th Cir. 2017)) (emphases and alterations in original).  In short, Cox's alleged "incentives" to "tolerate" infringement cannot be a free floating affair.  It must be shown to be an incentive applicable to the infringements in dispute.

---

draw.  Thus, nothing Cox earns from the subscribers who are alleged to have infringed Plaintiffs' works is relevant to the financial benefit factor of vicarious liability.

In this case, Cox cannot be found secondarily liable for alleged acts of infringement of other rights holders' works or for notices received outside of the Claim Period. Thus, the fact that Cox's subscribers received notices from other rights holders is not at issue in the case. Nor is the fact that Cox's subscribers received notices from the RIAA regarding the Label Plaintiffs' works prior to the Claim Period. Accordingly, any "financial incentive" calculation based on these notices is improper, as it is not tied to the alleged infringements at issue in the case.

It is plainly improper for Plaintiffs to purport to represent Cox's financial incentive to tolerate the infringement "at issue in this case" based on notices of alleged infringement that is not "at issue in the case." This evidence should be precluded.

### C.   Financial calculations regarding the value of subscribers who received notices outside of the Claim Period are irrelevant to statutory damages.

As discussed above, Dr. Lehr has put forward two variations of his calculation, one which is limited to notices received during the Claim Period and another that is based on notices dating back to 2012 (more than a year prior to the Claim Period).[3] Plaintiffs cite no support for their argument that profits Cox earned from specific subscribers outside of the Claim Period are relevant to statutory damages. Instead, they argue that "it is no stretch to conclude that the total profit Cox derives from each infringing subscriber at issue is … a relevant consideration." Opp. at 16. But, as argued in Cox's motion, and ignored by Plaintiffs in their Opposition, the relevant consideration is "[t]he profits Cox earned because of the infringement;" not the profits that Cox earned because of some other infringement. Moreover, with respect to deterrence, the relevant metric is not how much it earned from a misleading subset of subscribers. Plaintiffs know that their use of a subset of subscribers who received notices outside of the Claim Period is improper and misleading, which

---

[3]   Plaintiffs use only the former (Claim Period-limited) calculation in their motion for summary judgment.

is precisely why they abandoned those calculations on summary judgment. They should be precluded prior to trial from using this information.

    **D.**    **Cox's profits from services other than high-speed Internet during the Claim Period are irrelevant.**

Plaintiffs have blindly followed in the *BMG* plaintiffs' footsteps, including the hiring of Dr. Lehr and the re-purposing of his opinions from that case. However, there are critical differences here. Unlike in *BMG*, Cox processed all of the RIAA's notices. And because of that, Cox was able to provide subscriber-specific data to Plaintiffs, including how much these Plaintiffs were billed over the Claim Period. Accordingly, Dr. Lehr's "lifetime value," which assumes <u>every</u> subscriber is a triple play customer and has a 5 ½ year tenure, is entirely unnecessary. Plaintiffs recognize this, as they commissioned Dr. Lehr to also calculate how much each subscriber was actually billed (utilizing Cox's billing data). Thus, Dr. Lehr's one-size-fits-all "lifetime value" calculation, which might have had some relevance in *BMG* where subscriber identity was unknown, should be precluded from this case.

Moreover, Plaintiffs should be precluded from including in any "economic incentive" calculation Cox's profits from services other than high-speed Internet, the only service at issue in this case. In support of this over-inclusive calculation, Plaintiffs quote, out of context, the deposition testimony of Cox's VP of Finance and Accounting, Sanford Mencher. Opp. at 17-18. But Mr. Mencher testified that ███████████████████████████████████ ███████████████████████████████████████ Gould Ex. 7 (Mencher Dep. Tr. 144:17-22). Of course ████████████████████████████████ ████████████████████████████████████████. However, it is a far leap of logic, and a bridge too far for purposes of vicarious liability, to claim that Cox's economic incentive to tolerate infringement is the total amount nearly 60,000 subscribers paid to Cox not

only for Internet, but also for phone and video (which would not be terminated if a subscriber's Internet access were cut off).  The evidence in this case should be limited to Cox's profits from high-speed Internet during the Claim Period, which Dr. Lehr can attempt to calculate in this case based on Cox's billing data (which, as discussed above, was not possible in *BMG*).

       **E.**       **Testimony related to the general harm from infringement is not relevant.**

Cox's motion to exclude testimony regarding the general effects from digital piracy over the last 20 years, including harm unrelated to Cox's subscribers' alleged infringements of Plaintiffs' works, is not limited to proposed expert opinion testimony by Dr. Lehr.  Cox also seeks to preclude Plaintiffs' fact witnesses and third parties from testifying with respect to these topics because they are plainly irrelevant to Plaintiffs' claims or statutory damages.  Plaintiffs do not address this issue in their Opposition and instead focus on the proposed expert testimony from Dr. Lehr.

Plaintiffs also confusingly double-down on their reliance on *BMG Music Entm't v. Tenenbaum*, 660 F.3d 487, 502-03 (1st Cir. 2011).  But as demonstrated in Cox's Motion, *see* Mot. at 8, n.5, and in the portion quoted by Plaintiffs' in their Opposition, Opp. at 19, the relevant consideration of harm for purposes of statutory damages is "the loss in value of *copyrights at issue* that resulted from [*the defendant's*] conduct, and the harm of [*the defendant's*] actions to [*the plaintiff*] and the recording industry, including reduced income and profit." *Id.* (emphases added). The testimony in this case should therefore be limited to the effects from ***Cox's*** actions to ***Plaintiffs' copyrights at issue***—not the general effects from digital piracy over the last 20 years to the entire music industry perpetrated by all types of entities, including notorious and now-defunct file-sharing sites like Napster, Grokster, and the Pirate Bay.

Putting aside the general irrelevance and unfair prejudice of this topic, Plaintiffs fail to explain why an expert is *needed* to opine regarding the "unquantifiable phenomenon and harm of

digital piracy."  As Plaintiffs acknowledge in their Opposition, certain of their fact witnesses testified during their depositions that the harm from digital piracy could not be quantified because it was impossible to measure the amount of actual infringement.  Opp. at 20-21.  The reason that one cannot measure the amount of actual infringement (again according to Plaintiffs' fact witnesses) is because one does not know how many times users of peer-to-peer networks upload and download works.  *Id.*  Dr. Lehr's proposed opinion adds nothing to that issue.  Indeed, Dr. Lehr admits that he did not speak with a single representative from Plaintiffs, nor did he cite a single deposition transcript or internal document in his reports regarding Plaintiffs' lack of ability to quantify infringement and harm.  Thus, his opinion is necessarily based *not* on the alleged harm caused by Cox (or its subscribers) to Plaintiffs, but an impermissibly broad view of the harm to the *entire* industry over the last 20 years.  Accordingly, not only is an expert unnecessary for such testimony, the testimony is also irrelevant and should therefore be precluded.

Plaintiffs also claim that, "[i]n order for the jury understand why the scope of and harm from infringement cannot be quantified, it must also understand the evolution of the music industry."  Opp. at 19.  Plaintiffs further claim that Dr. Lehr will explain "the historic shift from sale of physical media (such as records, tapes, and CDs) to online digital distribution … ."  *Id.*  The entirety of Dr. Lehr's "opinion" on this is reading a publicly-available chart he downloaded from the RIAA's website, which takes no expertise whatsoever to decipher.  *Id.*  Moreover, Dr. Lehr does not explain, nor do Plaintiffs, how this "evolution" is relevant to their theory that "the scope and harm of infringement cannot be quantified."  In addition, Plaintiffs fail to acknowledge that their fact witnesses are equipped to testify with respect to "the evolution of the music industry," to the extent it is deemed relevant.  This general testimony from Dr. Lehr should be

precluded and, to the extent Plaintiffs' fact witnesses testify regarding this topic, they should be limited to what is deemed relevant to statutory damages.

**F.     MarkMonitor's unsubstantiated testimony regarding ███████████ and any reference by other witnesses regarding the same should be precluded.**

Plaintiffs' defense of MarkMonitor's unsubstantiated testimony regarding ███████████ is nonsensical and should be rejected. *First*, Plaintiffs do not even attempt to argue how this evidence would be relevant to this case. And they are wrong to assert that Cox concedes that it is relevant. Of course, unsubstantiated testimony regarding instances of alleged (but unprovable) infringement by Cox's subscribers that are unrelated to the works in suit, and even the subscribers at issue in this case, would be irrelevant, not to mention prejudicial. *Second*, Plaintiffs erroneously claim that this evidence demonstrates that ████████████████████████████████ ███████████████████████████████████████████████████████████ Opp. at 21. However, as Plaintiffs point out later in their Opposition, MarkMonitor's purported ███████████████████████████████████████████████████████████ ███████████████████████████████ Opp. at 21. Thus, contrary to Plaintiffs' claim, these observations ████████████████████████████████████████ ████████████████████████

Plaintiffs also claim that Cox's discovery requests to MarkMonitor did not call for the underlying information; but they are wrong. To the extent the ███████████ involved the works-in-suit, Cox's Request No. 8 plainly seeks the underlying data.[4]  And to the extent the ███████ ███████ were unrelated to the works in suit, then Cox's Request No. 22, which seeks

---

[4]   "Any databases, indices, or other repositories of information concerning notices of claimed infringement that were created with Your System and that were sent to Cox or any of Cox's subscribers, account holders, or customers in connection with alleged infringement of the Copyright Works." Cox Ex. 16 (RFP to MarkMonitor, RFP No. 8).

communications "with or concerning Cox or any Cox subscriber, account holder, or customer relating to alleged copyright infringement," would plainly encompass the underlying information.[5] In any event, MarkMonitor admitted that it maintained this data yet failed to produce it prior to the end of discovery. Plaintiffs should be precluded from eliciting this irrelevant and highly misleading and prejudicial testimony from MarkMonitor, or having its expert opine with respect to it.

Dated: November 6, 2019                          Respectfully submitted,

                                                 *s/ Thomas M. Buchanan*
                                                 Thomas M. Buchanan (VSB No. 21530)
                                                 WINSTON & STRAWN LLP
                                                 1700 K Street, NW
                                                 Washington, DC 20006-3817
                                                 Tel: (202) 282-5787
                                                 Fax: (202) 282-5100
                                                 Email: tbuchana@winston.com

                                                 *Attorney for Cox Communications, Inc. and CoxCom, LLC*

---

[5] Cox did not cite RFP No. 22 in its Motion because all that is relevant to this case are alleged instances of infringement of the works in suit. To the extent Plaintiffs seek to argue, as they appear to be doing in Opposition, that observations of Cox's subscribers' allegedly infringing activity of works outside of this case are relevant, then RFP No. 22 calls for such information.

*Of Counsel for Defendants*

Michael S. Elkin (*pro hac vice*)
Thomas Patrick Lane (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Telephone:  (212) 294-6700
Facsimile:  (212) 294-4700
Email:  melkin@winston.com
Email:  tlane@winston.com

Jennifer A. Golinveaux (*pro hac vice*)
Thomas J. Kearney (*pro hac vice*)
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA  94111-5840
Telephone:  (415) 591-1000
Facsimile:  (415) 591-1400
Email:  jgolinveaux@winston.com
Email: tkearney@winston.com

Michael L. Brody (*pro hac vice*)
WINSTON & STRAWN LLP
35 W. Wacker Dr.
Chicago, IL 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700
Email: mbrody@winston.com

Diana Hughes Leiden (*pro hac vice*)
WINSTON & STRAWN LLP
333 S. Grand Avenue, Suite 3800
Los Angeles, CA 90071
Telephone:  (213) 615-1700
Facsimile:  (213) 615-1750
Email:  dhleiden@winston.com

**CERTIFICATE OF SERVICE**

I certify that on November 6, 2019, a copy of the foregoing was filed electronically with

the Clerk of Court using the ECF system, which will send notifications to ECF participants.


/s/ Thomas M. Buchanan
Thomas M. Buchanan (VSB No. 21530)
1700 K Street, NW
Washington, DC 20006-3817
Tel: (202) 282-5787
Fax: (202) 282-5100
Email: tbuchana@winston.com

*Attorney for Cox Communications, Inc.*
*and CoxCom, LLC*