UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| SONY MUSIC ENTERTAINMENT, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>COX COMMUNICATIONS, INC. and COXCOM, LLC,<br><br>Defendants. | Case No. 1:18-cv-00950-LO-JFA |

**COX'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTIONS *IN LIMINE* NO. 6 TO EXCLUDE CERTAIN MARKMONITOR EVIDENCE**

## **TABLE OF CONTENTS**

|    |    | Page |
|----|----|------|
| A. | The MarkMonitor Spreadsheets Are Inadmissible Summaries | 1 |
| B. | The MarkMonitor Spreadsheets Are Not Business Records | 4 |
| C. | Sam Bahun Should Be Precluded from Testifying about the Technical Topics | 8 |

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Branch v. Gov't Employees Ins. Co.*,
   286 F. Supp. 3d 771 (E.D. Va. 2017) ..................................................................................1, 6

*Cox Communications, Inc., et al v. MarkMonitor, Inc.*,
   Case No. 3:19-mc-80050-SK (N.D. Cal.) ............................................................................3, 4

*Midfirst Bank, SSB v. C.W. Haynes & Co.*,
   893 F. Supp. 1304 (D.S.C. 1994), *aff'd*, 87 F.3d 1308 (4th Cir. 1996) ......................................2

*Potamkin Cadillac Corp. v. B.R.I. Coverage Corp.*,
   38 F.3d 627 (2d Cir. 1994) ....................................................................................................5, 7

*Sprint Nextel Corporation v. Simple Cell, Inc.*,
   248 F. Supp. 3d 663 (D. Md. 2017) ................................................................................2, 3, 5

*United States v. Channon*,
   881 F.3d 806 (10th Cir.), *cert. denied*, 139 S. Ct. 137, 202 L. Ed. 2d 85
   (2018), and *cert. denied*, 139 S. Ct. 138, 202 L. Ed. 2d 85 (2018) ..........................................2

*United States v. Davis*,
   571 F.2d 1354 (5th Cir. 1978) ....................................................................................................5

*United States v. Taylor*,
   2011 WL 13195944 (E.D. Va. 2011) .........................................................................................6

*United States v. Thomas*,
   315 Fed. Appx. 828 (11th Cir. 2009) ....................................................................................5, 7

**Other Authorities**

Fed. R. Civ. P. 803(6) ....................................................................................................................1, 5

Fed. R. Evid. 803 ..............................................................................................................................5

Fed. R. Evid. 803(6)(A) ...................................................................................................................6

Fed. R. Evid. 1006 ...................................................................................................................1, 2, 3

In their opposition to Cox's motion *in limine* to exclude certain MarkMonitor evidence, Plaintiffs admit that the two spreadsheets at issue are extracts from a larger database, and that the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Further, Plaintiffs do not rebut that the data in the two spreadsheets comes from multiple sources and has been manipulated. Even if Plaintiffs could prove that the spreadsheets are "business records" (which they cannot), under relevant and controlling case law, they are inadmissible summaries. Under Federal Rule of Evidence 1006, that ends the inquiry and prohibits their admission at trial.[1]

## A. The MarkMonitor Spreadsheets Are Inadmissible Summaries

The MarkMonitor Spreadsheets are inadmissible summaries under Fed. R. Evid. 1006 because the underlying data was not made available. As a preliminary matter, if the Court finds that the MarkMonitor Spreadsheets are inadmissible summaries under Fed. R. Evid. 1006, they cannot otherwise be admitted as "business records," as Plaintiffs argue. Plaintiffs misinterpret *Branch v. Gov't Employees Ins. Co.* by relying on *the defendant's* argument that an analysis under Rule 1006 is unnecessary after a determination that a document qualifies as a "business record." *Branch* rejected that reasoning, following the lead of other courts that held that "the Rule 803(6) analysis does not end the inquiry" of admissibility. The *Branch* court itself conducted an admissibility analysis under Rule 1006 *after* determining that the spreadsheets were business records under Rule 803(6), reasoning that a description of how the underlying database was created is "not equivalent to the 'original' data itself, which is what must be provided." 286 F. Supp. 3d 771, 779-80 (E.D. Va. 2017).[2] Yet such a description in the form of Mr. Bahun's declarations is

---

[1] The two spreadsheets at issue are Bates No. MM000236 (the "'236 Spreadsheet") and Bates No. Plaintiffs_0082431 (the "'431 Spreadsheet";[1] collectively, the "MarkMonitor Spreadsheets.")

[2] It is notable that Plaintiffs continue to misrepresent the holding in *Branch*, even after Cox pointed out the relevant language and holding of that case at the summary judgment hearing. *See* Ex. 19 (Oct. 24 Hr'g Tr., 123:21-24) (explaining that Plaintiffs ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

effectively all that Plaintiffs offer here in lieu of the missing data. *See Sprint Nextel Corporation v. Simple Cell, Inc.*, 248 F. Supp. 3d 663, 673 (D. Md. 2017) (spreadsheets must be analyzed as summaries, rather than business records where the incorporated data from multiple sources, were "edited to remove redundancies," and "contain[ed] analysis based on certain assumptions provided by" their sponsor). As set forth below in Section B, the MarkMonitor Spreadsheets do not meet the requirements to be considered business records.

Plaintiffs have not rebutted Cox's showing in its initial motion, ECF No. 490, Cox's Motion *in Limine* No. 6 ("Initial Motion"), that the MarkMonitor Spreadsheets are summaries, and that the underlying data has not been produced. As such, they have effectively conceded the Spreadsheets' inadmissibility. Plaintiffs acknowledge that the MarkMonitor Spreadsheets are ████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████ *United States v. Channon*, relied on by Plaintiffs, is inapplicable. 881 F.3d 806, 810 (10th Cir.), *cert. denied*, 139 S. Ct. 137, 202 L. Ed. 2d 85 (2018), and *cert. denied*, 139 S. Ct. 138, 202 L. Ed. 2d 85 (2018).[3] In *Channon,* the court found that the government's spreadsheets were originals and not summaries under Rule 1006 because they were direct printouts from the database and accurately reflected the information in the underlying database. *Id.* But the MarkMonitor Spreadsheets are *not* direct printouts from the underlying Audible Magic data. Rather, much of the ████████████████████████████

---

[3] Similarly, *Midfirst Bank, SSB v. C.W. Haynes & Co.*, 893 F. Supp. 1304, 1310 (D.S.C. 1994), *aff'd*, 87 F.3d 1308 (4th Cir. 1996) is distinguishable where the exhibits at issue were direct printouts from the underlying database and did not concern altered extracts of data. Plaintiffs can never provide Cox with the direct printouts from the underlying database because ████████ ████████████ them, and refused to produce much of the rest.

2

███ simply withheld in defiance of a court order, as Cox explained in its opening brief.  For example, ███

███

███

███ Much of the missing ███

███ Some of it – relating to BitTorrent files – ███ but simply not produced in defiance of a court order and notwithstanding multiple demands.

In the *Sprint* case, the court found similar spreadsheets to be inadmissible under Rule 1006 when the underlying data was not produced because they were not printouts, but summaries of the data, which incorporated data from multiple sources, were edited, and contained analysis.  248 F. Supp. 3d 673 (D. Md. 2017).  Plaintiffs attempt to distinguish the ruling in *Sprint* by noting that the spreadsheets in *Sprint* were from three separate databases, were edited, and contained analysis. But here too the MarkMonitor Spreadsheets ███

███ They also contain data from multiple sources: ███

███

███ These Spreadsheets are squarely subject to the *Sprint* holding, and cannot be considered original documents under Fed. R. Evid. 1006. Plaintiffs were obligated to produce the underlying data from which the MarkMonitor Spreadsheets were extracted; indeed, the Northern District of California ordered them to do so.[6]

---

[4] Ex. 20 (Paszkowski Dep., 97:19-98:12).
[5] *Id.* at 80:6-81:18, 87:23-91:22 ███
███
[6] *See* Ex. 15 (March 7, 2019 Order on Cox's Motion to Compel from *Cox Communications, Inc., et al v. MarkMonitor, Inc.,* Case No. 3:19-mc-80050-SK (N.D. Cal.)). References to Exhibits 1-

3

Because Plaintiffs have not and cannot produce this underlying data, the MarkMonitor Spreadsheets are inadmissible evidence and Plaintiffs should be precluded from relying on them at trial.

At a minimum, the BitTorrent portions of the MarkMonitor Spreadsheets should be excluded. Plaintiffs admit that, for BitTorrent files, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ that are at issue.[7] Plaintiffs were directly asked to produce the withheld BitTorrent data by subpoena and were ordered to comply.[8] When Plaintiffs were asked ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ both at deposition and subsequently in writing, they did not do so.[9] No one has argued that there was any reason for simply refusing to produce ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ which was a basis for the Spreadsheets, and that was produced for the other networks.[10]

### B. The MarkMonitor Spreadsheets Are Not Business Records

As set forth above, the fact that the MarkMonitor Spreadsheets are inadmissible summaries is the end of the inquiry. However, even if it was relevant whether these documents could be considered "business records," Plaintiffs do not, and cannot, make this showing. In order to be an admissible "business record, the sponsor of the document must show that:

> (A) the record was made at or near the time by ... someone with knowledge;
> (B) the record was kept in the course of a regularly conducted activity of a business ...;
> (C) making the record was a regular practice of that activity;
> (D) all these conditions are shown by the testimony of the custodian or

---

18 are references to those attached to ECF No. 490 Cox's Motion in *Limine* No. 6. Exhibits 19-21 are attached hereto.
[7] Ex. 20 (Paszkowski Dep., 86:14-87:22).
[8] *See* Ex. 14 (MarkMonitor Subpoena).
[9] *See* Ex. 16 (July 12, 2019 email).
[10] *See* Ex. 15 (March 7, 2019 Order on Cox's Motion to Compel from *Cox Communications, Inc., et al v. MarkMonitor, Inc.,* Case No. 3:19-mc-80050-SK (N.D. Cal.)).

   another qualified witness ...; and
   (E) the opponent does not show that the source of information or the method
   or circumstances of preparation indicate a lack of trustworthiness.
Fed. R. Evid. 803(6).

  *First*, as explained in detail in Cox's initial motion, both MarkMonitor Spreadsheets materially altered the underlying Audible Magic data from which Plaintiffs claim they were extracted. *See Sprint Nextel Corp. v. Simple Cell Inc.*, 248 F. Supp. 3d 663, 673 (D. Md. 2017) (discussing that to qualify as a business record, extracts must be produced "presented with minimal alterations."). For example, the '431 Spreadsheet ███████████████ ███████████ which makes it not a computer printout, but an altered summary document. *Id.* (noting that the spreadsheets contain "analysis based on certain assumptions" making it a "far cry from a computer printout," which would be an admissible business record). Similarly, the '431 Spreadsheet is in no way an original document, as Plaintiffs argue. ████████████ ████████████████████████████. *See* Mot. at 7-11.

  *Second*, several courts have held that extractions from a larger database cannot be admitted as a business record. *See Sprint,* 248 F. Supp. 3d 673 (holding that "summaries or selective extractions of responsive data" are not business records under Fed. R. Evid. 803). This is particularly true where the database extract is created for use in the litigation. *Potamkin Cadillac Corp. v. B.R.I. Coverage Corp.*, 38 F.3d 627, 632 (2d Cir. 1994) ("Data prepared or compiled for use in litigation are not admissible as business records"); *United States v. Thomas*, 315 F. App'x 828, 836 (11th Cir. 2009) (contrasting "computer printouts" with spreadsheets created for litigation "after analyzing and reorganizing" the data); *see also United States v. Davis,* 571 F.2d 1354, 1360 (5th Cir. 1978) (Excluding ATF form showing date and origin of firearm where the document was "plainly [offered] as a substitute for the presentation of live sworn testimony of the

5

records custodian of" the manufacturer of the firearm in question). Here, Plaintiffs created a spreadsheet for the purposes of litigation by ████████████████████ ████████████████████████████████████████████ thus presenting an incomplete picture ██████████████████████. *Branch v. Gov't Emps. Ins. Co.*, 286 F. Supp. 3d 771, 778 (E.D. Va. 2017) (noting that certain summaries do not "qualify as business records if they are compiled through selective extraction") (internal quotations omitted).

*Third,* the MarkMonitor Spreadsheets were not made "at or near the time" of the events recorded. Fed. R. Evid. 803(6)(A). The Spreadsheets purport to ████████████████ of the files summarized as of the period (2012-2014) when MarkMonitor was sending notices to Cox. But their author (Mr. Paszkowski) testified that they were created recently ██████████ ██████████████████████████, and that the underlying database was constantly updated, so that ██████████████████████████████████████████████ ██████████████████████████████ Audible Magic data sent to MarkMonitor was contemporaneously created and contained date/time stamps memorializing its creation, but this data was not retained by MarkMonitor until after 2015. *United States v. Taylor*, 2011 WL 13195944, at *1-2 (E.D. Va. 2011) (ATF form showing date and origin of firearm was not a business record where it was created for litigation and where actual business records of firearms dealers were created contemporaneously with firearms sale).

*Fourth,* Plaintiffs' argument that the MarkMonitor Spreadsheets are business records rests on the underlying database *itself* qualifying as a business record. However, because Plaintiffs ██████████ refused to produce material portions of the underlying Audible Magic data, no

---

[11] Ex. 20 (Paszkowski Dep., 128:14-129:5).

one can determine whether the database of the information that MarkMonitor retained would qualify as a business record. *Potamkin Cadillac Corp. v. B.R.I. Coverage Corp.*, 38 F.3d 627, 633 (2d Cir. 1994) (discussing that appellees had "refused to produce the computer tapes from which it claimed the [extracts] had been culled, and hence the special master could not determine whether those tapes themselves would qualify as business records"); *see also United States v. Thomas*, 315 F. App'x 828, 836 (11th Cir. 2009) (finding that the trial court abused its discretion when it admitted certain spreadsheets and corresponding testimony as business records because plaintiffs did not offer the underlying records into evidence "or give opposing counsel the opportunity to inspect such records").[12]  To remedy the defects in the MarkMonitor database underlying the Spreadsheets, Plaintiffs have provided declarations from a MarkMonitor employee involved in sales, Sam Bahun, who had zero involvement in creating either the underlying database nor the MarkMonitor Spreadsheets. *See* ECF No. 539-1. He also was not designated as a witness for technical topics, to explain how the database and MarkMonitor Spreadsheets were created.[13] Plaintiffs have also provided a declaration from an Audible Magic witness, Vance Ikezoye, but his testimony concerns ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ not how or when MarkMonitor recorded the information in its own database. *See* ECF No. 539-2. If anything, Mr. Ikezoye's testimony ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

At bottom, the MarkMonitor Spreadsheets cannot be admitted as business records.

---

[12] This defect is particularly glaring for the BitTorrent files, where MarkMonitor admittedly retained a fuller range of Audible Magic data for the post-February 2015 period than was produced, but simply refused to give this information to Cox. Plaintiffs have offered no explanation or justification for this failure.

[13] Ex. 17 (June 12, 2019 MarkMonitor's Objections and Responses to Cox Deposition Subpoena).

Plaintiffs have not provided sufficient proof through testimony that they were created near the time the information was generated or in the ordinary course of business, nor can they show that the data in the underlying database was entered in a reliable manner. Thus they are inadmissible hearsay and should be excluded as exhibits at trial.

### C. Sam Bahun Should Be Precluded from Testifying about the Technical Topics

Mr. Bahun should be precluded from testifying about the technical aspects of MarkMonitor at trial. MarkMonitor specifically designated another witness, Slawomir Paszkowski, to testify about all technical topics in Cox's 30(b)(6) deposition notice.[14] During Mr. Bahun's deposition, MarkMonitor's counsel objected to <u>every</u> question Cox's counsel asked concerning anything remotely technical about MarkMonitor's system as beyond the scope of his designation.[15] And even when Mr. Bahun attempted to answer questions after his counsel objected that it would be a better topic for Mr. Paszkowski, he often could not provide the information requested.[16] Indeed, there were several times when Mr. Bahun had to ask for clarification of technical terms, because

---

[14] Ex. 17 (June 12, 2019 MarkMonitor's Objections and Responses to Cox Deposition Subpoena).
[15] Ex. 21 (Bahun Dep., 56:11-16,  Ex. 21 (Bahun Dep. 59:6-14, Plaintiffs'
[16] *See* Ex. 21 (Bahun Dep. 61:14-61:17, *see also id.*, 63:14-22 *see also id.* at 210:17-210:21

8

the relevant technology was outside the scope of his personal knowledge and expertise.[17]

Plaintiffs' suggestion that Cox should have questioned Mr. Bahun about all of the technical questions is baseless, particularly considering that MarkMonitor did not designate Mr. Bahun as its technical witness, objected to every question Cox posed remotely concerning these topics, and specifically designated Mr. Paszkowski to testify about anything technical. Cox abided by MarkMonitor's designations and treated Mr. Bahun as its non-technical witness and Mr. Paszkowski as its technical witness.[18] Cox focused Mr. Bahun's deposition on those non-technical topics on which he was designated and took nearly the full seven hours it was allotted exploring them. If Mr. Bahun is permitted to testify about technical topics at trial, Cox will be severely prejudiced by not having had the opportunity to properly cross-examine him on the technical topics at his deposition. Nor will his testimony be helpful to the jury, given his admitted unfamiliarity with the technical topics.

The only appropriate witness to testify regarding the relevant technical topics is Mr. Paszkowski, who Plaintiffs have not designated for trial. As noted in the initial motion, MarkMonitor and Plaintiffs blocked Cox's efforts to take Mr. Paszkowski's deposition in person from Lithuania, forcing Cox to take his deposition via videoconference beginning at 2 a.m. Eastern Time. The Court should reject Plaintiffs' attempt to minimize the importance of his testimony, which will be sponsored by Cox. Mr. Paszkowski, MarkMonitor's designated technical witness, provided detailed testimony ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[17] *See* Ex. 21 (Bahun Dep., 92:10-92:11 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; *id.* at 18:23-18:24 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *id.* at 46:6-46:6 ▮▮▮▮▮▮.

[18] Ex. 17 (June 12, 2019 MarkMonitor's Objections and Responses to Cox Deposition Subpoena).

9

████████████████████████████[19]  His testimony is critical to Cox's exploration of

Plaintiffs' reliance on the MarkMonitor Spreadsheets.[20]

Dated: November 6, 2019                              Respectfully submitted,

                                                                        *s/ Thomas M. Buchanan*
                                                                         Thomas M. Buchanan (VSB No. 21530)
                                                                          WINSTON & STRAWN LLP
                                                                          1700 K Street, NW
                                                                          Washington, DC 20006-3817
                                                                          Tel: (202) 282-5787
                                                                          Fax: (202) 282-5100
                                                                          Email: tbuchana@winston.com

                                                                        *Attorney for Cox Communications, Inc.*
                                                                        *and CoxCom, LLC*

---

[19] *See, e.g.,* Ex. 20 (Paszkowski Dep., at 89:17-22, 97:19-98:12, 114:4-10, 129:2-5).
[20] *See* Ex. 21 (Bahun Dep., 78:21-78:23, Plaintiffs objected and noted, "Mr. Paszkowski would be the designee for the other categories pertaining to computer engineering source code").

*Of Counsel for Defendants*

Michael S. Elkin (*pro hac vice*)
Thomas Patrick Lane (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Telephone:  (212) 294-6700
Facsimile:   (212) 294-4700
Email:  melkin@winston.com
Email:  tlane@winston.com

Jennifer A. Golinveaux (*pro hac vice*)
Thomas J. Kearney (*pro hac vice*)
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA  94111-5840
Telephone:  (415) 591-1000
Facsimile:   (415) 591-1400
Email:  jgolinveaux@winston.com
Email: tkearney@winston.com

Michael L. Brody (*pro hac vice*)
WINSTON & STRAWN LLP
35 W. Wacker Dr.
Chicago, IL 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700
Email: mbrody@winston.com

Diana Hughes Leiden (*pro hac vice*)
WINSTON & STRAWN LLP
333 S. Grand Avenue, Suite 3800
Los Angeles, CA 90071
Telephone:  (213) 615-1700
Facsimile:   (213) 615-1750
Email:  dhleiden@winston.com

## CERTIFICATE OF SERVICE

I certify that on November 6, 2019, a copy of the foregoing was filed electronically with the Clerk of Court using the ECF system, which will send notifications to ECF participants.

>*/s/ Thomas M. Buchanan*
>Thomas M. Buchanan (VSB No. 21530)
>1700 K Street, NW
>Washington, DC 20006-3817
>Tel: (202) 282-5787
>Fax: (202) 282-5100
>Email: tbuchana@winston.com
>
>*Attorney for Cox Communications, Inc. and CoxCom, LLC*