# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| SONY MUSIC ENTERTAINMENT, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>COX COMMUNICATIONS, INC. and COXCOM, LLC,<br><br>Defendants. | Case No. 1:18-cv-00950-LO-JFA |

**COX'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION *IN LIMINE* NO. 9 TO PRECLUDE EVIDENCE RELATING TO TERMINATIONS FOR NON-PAYMENT**

In seeking to admit evidence of Cox's terminations for reasons other than copyright infringement, Plaintiffs ignore the fact that the Court sustained an objection from BMG's counsel when Cox attempted to admit evidence of this very type. Ex. 1 (*BMG* Trial Tr. 1803:20-1805:7) ("[Court]: The whole focus … of this case is on what people in Atlanta were doing with BitTorrent infringements. And this is another universe, and it's not relevant, and it is prejudicial."). The Court's reasoning is applicable to this case and the evidence should be precluded.

Plaintiffs nevertheless argue that the number of subscribers Cox terminated for non-payment is relevant to Cox's "right and ability to supervise the infringing activity." Opp. at 35 (citing *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 199 F. Supp. 3d 958, 992 (E.D. Va. 2016)). Yet Plaintiffs also claim that Cox's "concession that it could also terminate for infringement … does not undermine this." *Id.* This makes no sense of course. It is undisputed that Cox has the right and ability to terminate subscribers for violation of its AUP, including for allegations of copyright infringement. What is in dispute is whether Cox maintained the "right and ability to *supervise*" these subscribers' on-line activities. That Cox's billing department terminated subscribers whose accounts were shown to be "past due" has absolutely nothing to do with that issue. Plaintiffs do not meaningfully argue otherwise.

Plaintiffs also misleadingly cite to *Arista Records, Inc. v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 157 (S.D.N.Y. 2009). Opp. at 35. In *Usenet.com, Inc.*, the defendant had never terminated a single user for posting copyrighted material and argued that it did not possess the right and ability to do so. The court rejected that argument, noting that the defendants had previously terminated subscribers for spamming, exceeding data thresholds, and posting child pornography. *Id.* Unlike the defendants in *Usenet, Inc.*, this is not a case in which Cox has never terminated a subscriber

for alleged copyright infringement. Thus, there is no need to look to whether Cox has terminated its subscribers for other reasons to establish that Cox had a termination right.

Plaintiffs also argue that the jury should be entitled to consider that "Cox terminates accounts when the subscriber no longer benefits its financial interests (non-payment of subscription fees) but retains accounts when doing so benefits its financial interest (failure to terminate repeat infringers)." Opp. at 35-36. If this is meant to suggest that the terminations of non-paying customers are evidence that a failure to terminate alleged copyright infringers was motivated by Cox's financial interest, that misses the mark. The fact that Cox terminated subscribers for one reason that made termination in its financial interest is not evidence one way or another that its termination practices regarding breaches of the AUP were or were not financially motivated. And because that comparison is not at all relevant to liability, presenting it at trial would mislead the jury and be unfairly prejudicial to Cox. Indeed, it is for many of these same reasons the Court precluded this evidence from *BMG*. Ex. 1 (*BMG* Trial Tr. 1803:20-1805:7).

Plaintiffs also claim that this improper comparison is relevant to rebutting Cox's argument that "the loss of service is a drastic measure." Opp. at 35. The loss of Internet service is indeed a drastic measure and there is no reasonable argument to the contrary. This is precisely the reason why Cox implemented its graduated response system to ensure that the subscriber who received an infringement notices had an opportunity to remedy the situation (*i.e.*, remove P2P software, secure networks, tell children, friends, visitors, to stop using the wireless to do so, etc.). This had the effect of reducing the number of subsequent notices received by subscribers and, because education was a main feature of Cox's graduated response system, had the effect of reducing infringing behavior generally. *See, e.g.*, Ex. 2 (Zabek Dep. Tr. 336:24-337:9); Ex. 3 (Cadenhead Dep. Tr. 298:6-20).

But the same type of graduated approach makes no sense for subscribers who fail to pay. In any event, Cox did not terminate service for non-payment until a subscriber was two months past due and after receiving numerous calls from Cox. Then, if the subscriber brought its account up to date, service was immediately restored, which means a subscriber could have multiple "terminations" a year simply by routinely falling behind on bills. For this reason, Plaintiffs have no idea how many unique subscribers were "terminated" for non-payment over the two-year period at issue. It is therefore misleading to compare the number of subscribers terminated for copyright infringement to the number of times Cox terminated service for non-payment.

Moreover, Plaintiffs have absolutely no idea why an account becomes two-months past due and is terminated. Subscribers could move, switch services, or, unfortunately, die. There are myriad reasons. None of them has anything to do with Cox's ability to supervise its subscribers' on-line activities. Allowing Plaintiffs to put this irrelevant and inflammatory number in front of the jury would be misleading and unfairly prejudicial. It should be precluded. Notably and finally, Plaintiffs do not oppose the portion of Cox's motion that argues that this evidence is not relevant to statutory damages. Thus, for the reasons set forth in Cox's Motion *in Limine* No. 9, this evidence should be precluded for the additional reason that it is irrelevant to statutory damages.

Dated: November 6, 2019					Respectfully submitted,

*s/ Thomas M. Buchanan*
Thomas M. Buchanan (VSB No. 21530)
WINSTON & STRAWN LLP
1700 K Street, NW
Washington, DC 20006-3817
Tel: (202) 282-5787
Fax: (202) 282-5100
Email: tbuchana@winston.com

3

*Attorney for Cox Communications, Inc. and CoxCom, LLC*

*Of Counsel for Defendants*

Michael S. Elkin (*pro hac vice*)
Thomas Patrick Lane (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Telephone:  (212) 294-6700
Facsimile:  (212) 294-4700
Email:  melkin@winston.com
Email:  tlane@winston.com

Jennifer A. Golinveaux (*pro hac vice*)
Thomas J. Kearney (*pro hac vice*)
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA  94111-5840
Telephone:  (415) 591-1000
Facsimile:  (415) 591-1400
Email:  jgolinveaux@winston.com
Email: tkearney@winston.com

Michael L. Brody (*pro hac vice*)
WINSTON & STRAWN LLP
35 W. Wacker Dr.
Chicago, IL 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700
Email: mbrody@winston.com

Diana Hughes Leiden (*pro hac vice*)
WINSTON & STRAWN LLP
333 S. Grand Avenue, Suite 3800
Los Angeles, CA 90071
Telephone:  (213) 615-1700
Facsimile:   (213) 615-1750
Email:  dhleiden@winston.com

## CERTIFICATE OF SERVICE

I certify that on November 6, 2019, a copy of the foregoing was filed electronically with the Clerk of Court using the ECF system, which will send notifications to ECF participants.

/s/ Thomas M. Buchanan
Thomas M. Buchanan (VSB No. 21530)
1700 K Street, NW
Washington, DC 20006-3817
Tel: (202) 282-5787
Fax: (202) 282-5100
Email: tbuchana@winston.com

*Attorney for Cox Communications, Inc. and CoxCom, LLC*