IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| SONY MUSIC ENTERTAINMENT, *et al.*, )<br>)<br>*Plaintiffs*, )<br>)<br>v. )<br>)<br>COX COMMUNICATIONS, INC., *et al.*, )<br>)<br>*Defendants*. )<br>) | Case No. 1:18-cv-950-LO-JFA<br>Hon. Liam O'Grady |

## ORDER

This matter comes before the Court on the Parties' motions *in limine* to exclude certain evidence at trial. Defendants Cox Communications, Inc., *et al.* ("Defendants" or "Cox") filed ten separate motions, which are listed below. Dkts. 471, 474, 478, 482, 487, 490, 493, 496, 499, 502. Plaintiffs Sony Music Entertainment, *et al.*, filed an Omnibus Motion *in Limine* (Dkt. 470) comprising eleven distinct requests to the Court, which are also detailed below. The matters are all fully briefed, and the Court heard oral argument on November 12, 2019. A memorandum opinion will follow to address certain matters in further detail.

As to Defendants' motions, the Court finds the following:

*1. To Preclude Evidence and Testimony Relating to the BMG Litigation.* To the extent that disputed testimony related to BMG and the relevant Claim Period arises at trial, the Court will rule when presented with the evidence at trial. The Court recognizes that this is a separate action with different Plaintiffs, and finds that the most efficient way to deal with these objections is to rule on admissibility of offered testimony under Fed. R. Evid. 801, 804, Fed. R. Civ. P. 32 and any other rules deemed relevant at the time of trial. The Court disagrees with any argument

that Fed. R. Evid. 404 is applicable here. Accordingly, Defendants' Motion *in Limine* No. 1 (Dkt. 471) is hereby **DENIED WITHOUT PREJUDICE**.

*2. To Preclude Evidence and Testimony Relating to Third-Party Infringement Notices.* The third-party infringement notices are relevant and admissible. Cumulative notices of infringement—particularly those targeted at the same subscribers receiving notices from Plaintiffs—are relevant for the many reasons in Plaintiffs' Opposition (Dkt. 538). As such, Defendants' Motion *in Limine* No. 2 (Dkt. 474) is hereby **DENIED**.

*3. To Preclude Evidence and Testimony Relating to Emails and Communications with No Connection to Alleged Infringement of Plaintiffs' Works.* This evidence is clearly probative and relevant to actual knowledge and willfulness in this case, as well as Defendants' internal policies and approach to the protection of Plaintiffs' works.

Defendants argue that communications not directed at *specific* infringement of works in suit are rendered inadmissible, and that this is improper propensity evidence. Neither assertion can be true. These communications are directly relevant circumstantial evidence regarding the policies and employees at issue. Plus, they are offered as evidence of continuing conduct, not any past action that could support a propensity argument. For these and other reasons stated in Plaintiff's Opposition, Defendants' Motion *in Limine* No. 3 (Dkt. 478) is hereby **DENIED**.

*4. To Preclude Evidence and Testimony of Infringement and Harm Other Than That Allegedly Represented by the RIAA Notices.* This motion aligns in several ways with Defendants' Motion to Exclude the Testimony of William H. Lehr, Ph.D. Dkt. 306. In that sense, the Court will allow Dr. Lehr to testify to harms outside the RIAA notices to the extent relevant to economic forces bearing on the Parties. Dr. Lehr's testimony has been subject to

scrutiny for many years, is generally admissible under Federal Rule of Evidence 702, and will allow Defendants an opportunity to raise Cox's arguments on cross examination.

But Dr. Lehr's testimony is subject to limitation. Specific damages-related valuations offered to the jury may not include notices unrelated to infringement of works in suit. As such, notices to subscribers with fewer than three notices may only be offered as evidence of Cox's knowledge of infringement, not a basis for statutory damages, unless the work identified in the notice is a work in suit. The Court finds it appropriate that Plaintiffs measure harms commensurate with the set of subscribers identified with three or more notices. The "value" of subscribers receiving fewer than three notices may be quantified for purposes of showing Cox's purported economic incentives to tolerate infringement for vicarious liability, but not for actual damages specific to this litigation. Similarly, notices from outside the Claim Period are inadmissible to inform actual damages unless sent to subscribers that serve to define the set of works in suit. Quantifying total infringement notices within the Claim Period and overall revenue trends is permissible, as the Court finds that context for the notices in suit is relevant.

Bundling services is a main part of Cox's business plan, and valuations considering bundled services are relevant and admissible to help the jury understand the context of business decisions at issue. Pulse checks are not excluded at this time. The Court will consider any further objections at trial.

With these qualifications, Defendants' Motion *in Limine* No. 4 (Dkt. 482) is hereby **GRANTED IN PART AND DENIED IN PART**.

*5. To Exclude Plaintiffs' Exhibit Number 39.* The admissibility of the hard drive will be determined at trial. Plaintiffs will need to lay a proper foundation for the Court to consider its admissibility. Defendants' Motion *in Limine* No. 5 (Dkt. 487) is hereby **DENIED**.

*6. To Exclude Certain MarkMonitor Evidence.* The MarkMonitor evidence will be admissible at trial should Plaintiffs lay a proper foundation at that time. The data at issue is not a summary within the meaning of Fed. R. Evid. 1006, as Defendants claim, but rather an extraction of data that is not materially altered since the time of its collection. Further, it qualifies as a business record under Rule 803(6). The Court agrees that "'[p]roducing limited data from a larger database is more akin to reviewing a set of documents in response to a discovery request and producing only responsive documents ... a smaller subset of data provided as evidence from [a] database' is admissible under Rule 803(6) if all the rule's elements are met." *Branch v. Gov't Employees Ins. Co.*, 286 F. Supp. 3d 771, 778 (E.D. Va. 2017) (quoting *Health Alliance Network, Inc. v. Cont'l Cas. Co.*, 245 F.R.D. 121, 129 (S.D.N.Y. 2007)). With proper authentication, the MarkMonitor evidence satisfies the elements of Rule 803(6), and, therefore, Defendants' Motion *in Limine* No. 6 (Dkt. 490) is hereby **DENIED**.

*7. To Preclude Plaintiffs from Relying on Copyright Notices as Proof of Direct Infringement.* The Parties agree that the use of "infringement" as a conclusion and "infringement notice" as evidence of infringement require an instruction to the jury. The Court will await the Parties' invitation to collaborate on an acceptable instruction before trial. Defendants' Motion *in Limine* No. 7 (Dkt. 493) is **GRANTED IN PART AND DENIED IN PART**.

*8. To Exclude Certain Evidence Relating to Peer-To-Peer Traffic on Cox's Network.* The Court finds that Peer-to-Peer ("P2P") traffic is relevant to Cox's business model and spending decisions, financial incentives, and knowledge of potentially infringing activity. Plaintiffs' proposed testimony regarding Procera and other capabilities related to deep packet inspection is admissible to the extent that it is relevant to Cox's anti-piracy conduct. Defendants assert "there is no evidence in the record that Cox could have used Procera to control the infringing activity

alleged in this case. None." Dkt. 585, Hrg. Tr. 58 13:15. The Court is not convinced that the topic is apt for exclusion, given that Jason Zabek's performance review from a year before the Claim Period notes, "[w]e are still getting our feet wet with Procerra [sic], but are excited about how it can assist us in our daily duties." Gould Ex. 15 at 17 (PX-381, Section 4). Defendants are free to offer evidence in rebuttal or to demonstrate corporate policy changes during the Claim Period. As such, Defendants' Motion *in Limine* No. 8 (Dkt. 496) is hereby **GRANTED IN PART AND DENIED IN PART**.

*9. To Preclude Evidence Relating to Terminations for Non-Payment.* Reference to termination for non-payment versus for infringement is too far afield and the evidence is therefore excluded, unless Cox suggests that they terminate lots of customers for cause. If Cox so suggests, then it can be introduced. Accordingly, Defendants' Motion *in Limine* No. 9 is hereby **CONDITIONALLY GRANTED**.

*10. To Exclude Cox Performance Evaluations.* Cox moves to exclude both performance evaluations and separation agreements, specifically those pertaining to Jason Zabek and Joseph Sikes. The Parties will have an opportunity to reach an agreement as to the extent that the credibility of Messrs. Zabek and Sikes will be at issue.[1] The Court will rule after hearing from the Parties as to the admissibility of this evidence, and Defendants' Motion *in Limine* No. 10 (Dkt. 502) is hereby **DENIED WITHOUT PREJUDICE**; Defendants' objection may be renewed at the time the exhibits are sponsored.

Turning to the Plaintiffs' omnibus motion *in limine* (Dkt. 470), the Court finds the following:[2]

---

[1] At oral argument on November 12, 2019, Defendants presented to Plaintiffs and the Court that they will not call Mr. Zabek or Mr. Sikes to testify live at trial.
[2] Roman numerals indicate Plaintiffs' motion numbers both to match their briefs and to distinguish from Defendants' motion numbers.

*I. The Court Should Preclude Evidence or Argument Inconsistent with this Court's Factual Findings in its Summary Judgment Decision Concerning Cos's DMCA Defense in* BMG. The Court will consider this evidence as it is presented at trial, just as discussed above in Defendants' Motion *in Limine* No. 1. Plaintiffs' Motion *in Limine* is **DENIED** as to issue I.

*II. The Court Should Preclude Evidence and Argument Concerning Cox's Misleading and Unsupported Contention that "96% Stop By 5 Notices."* There is no adequate foundation for the information presented in the "96% Stop By 5 Notices" evidence. Defendants have had ample time to produce such a foundation, and failed to do so. Discrepancies in numbers and figures as detailed in Plaintiffs' briefs raise an alarming number of questions that demand the underlying data be produced, not just the emails Defendants offer in support. *See* Pls.' Br. Ex. 5, Dkt. 476-7. The Court does not believe that Defendants can authenticate this evidence in good faith for many reasons, including a preview of proposed authentication and clarification in Defendants' Opposition (Dkt. 543). Discussing the confusion between "notices" and "tickets," Defendants offer:

> Beck explained at deposition that the chart represents the number of Cox's customer facing actions (i.e. *tickets* memorializing notices sent to customers). His underlying email to Cadenhead thus supports the assertion in DX-74 that it is reporting on just that: "*notices* sent to customers."

*Id.* 5-6 (footnote omitted) (emphasis added). The Court understands this to mean, in other words, that tickets and notices are apples and oranges, but here, we are talking about apples so they are called oranges. The Court finds this to be unhelpful.

But even if Cadenhead could, *arguendo*, authenticate the slides, they are still inadmissible hearsay. The email does not qualify as a business record under Fed. R. Evid. 803(6), nor do the slides that purportedly resulted from it. "While properly authenticated emails

may be admitted into evidence under the business records exception," the evidence is not properly authenticated here, as just discussed. *U.S. v. Cone*, 714 F.3d 197, 220 (4th Cir. 2013). Given the deficiency in underlying data to support the slides, they likewise are inadmissible as a summary under Fed. R. Evid. 1006. Accordingly, Plaintiffs' Motion *in Limine* is **GRANTED** as to issue II.

*III. The Court Should Preclude Any Evidence or Argument Relating to the Policies or Practices of Other ISPs (Including the Copyright Alert System).* Defendants are permitted to put on evidence about the Copyright Alert System ("CAS") as well as its own graduated response system, the Cox Abuse Ticket System ("CATS"). Evidence about other ISPs as identified in the Stroz Friedberg Reports will also be admissible to the extent that it is relevant and there is a proper foundation. As such, and for much of the reasoning in Defendants' pleadings, Plaintiffs' Motion *in Limine* is **DENIED** as to issue III.

*IV. The Court Should Preclude Any Argument that Cox is Not Liable for Infringement Over its Network by Users Other Than Named Account Holders.* Defendants intend to challenge direct infringement evidence by questioning the identities of actual end users. The Court notes that no specific names are required to establish direct infringement, as Plaintiffs may establish direct infringement using circumstantial evidence. But Cox is not precluded from introducing relevant evidence to weaken the inference of infringement. Business subscribers, however, are not categorically excluded from Defendants' basis of liability. Thus, Plaintiffs' Motion *in Limine* is **GRANTED IN PART AND DENIED IN PART** as to issue IV.

*V. The Court Should Preclude Any Evidence of Argument Concerning the MarkMonitor '236 Spreadsheet.* The MarkMonitor '236 Spreadsheet will only confuse the jury in this case, and is largely cumulative of the '431 Spreadsheet. Further, Defendants' claim that the data in the

7

'236 Spreadsheet casts doubt on the '431 Spreadsheet is unsupported, as Cox makes arguments based on a largely empty data set. The only conclusion properly drawn, the Court finds, is that MarkMonitor began keeping more data some time in or after 2015—well after the claim period—and the later-added data is not relevant. For these and many of the reasons stated in Plaintiffs' pleadings, Plaintiffs' Motion *in Limine* is hereby **GRANTED** as to issue V.

*VI. The Court Should Exclude the REV0003444 Spreadsheet and Any Related Testimony or Argument.* The Audible Magic Spreadsheet, as the REV00003444 is also called, is inadmissible. It is unauthenticated, as Cox made a choice not to inquire about it or Audible Magic's data collection practices more specifically during depositions. Defendants' expert Dr. Feamster cannot authenticate it, as Cox suggests, simply because he was present at the deposition in which Mr. Ikezoye from Audible Magic referenced "transaction logs." The foundation for the data is vague, the data itself is incomplete, and the Parties' attempts to explain its significance thus far suggest it will not help the jury in its factfinding role. Plaintiffs' Motion *in Limine* is hereby **GRANTED** as to issue VI.

*VII. The Court Should Preclude Emails Cox Received from Customers Purporting to Respond to Plaintiffs' Infringement Notices.* Defendants intend to offer 1,800 emails at trial as evidence that Cox's subscribers in some way objected to the emailed infringement tickets from Cox. The Parties agree that the truth of the content of the email is hearsay, but Defendants offer additional relevancy regarding: the knowledge element of contributory infringement; a rebuttal to Plaintiffs' claim that no subscriber disputed an allegation of infringement; and the claim that it was reasonable for Cox not to terminate repeat infringers. If Defendants can demonstrate that the emails are relevant to Cox's state of mind during the Claim Period, not retroactively, Defendants may offer the evidence. Limitations on its admissibility and potential prejudice

under Rule 403 will be determined at trial. Plaintiffs' Motion *in Limine* is hereby **GRANTED IN PART AND DENIED IN PART** as to issue VII.

*VIII. Cox Should be Precluded from Presenting Evidence and Argument Concerning Plaintiffs' Track-Level Revenues from the Works in Suit.* Mr. Tregillis' testimony regarding pricing calculations based on track-level data will be permitted, and he can testify to his methodology and findings. The Court is mindful of the sensitive nature of Plaintiffs' proprietary pricing information, though several years old, and thus Mr. Tregillis may testify to summary findings without the underlying documents being admitted into evidence. Defendants are advised to avoid any testimony or demonstratives that might compromise proprietary pricing information as to specific Plaintiffs or works without authorization from the Court. As such, Plaintiffs' Motion *in Limine* is hereby **GRANTED IN PART AND DENIED IN PART** as to issue VIII.

*IX. The Court Should Exercise its Discretion to Preclude Cox from Offering Deposition Testimony from Witnesses it Controls and Could Bring to Trial.* Upon consideration of the Parties' arguments and governing law, the Court does not find that Plaintiffs met their burden to show that Cox has procured the absence of the witnesses in question. Accordingly, Defendants are not compelled to invoke contractual obligations to produce particular witnesses at trial, and Plaintiffs' Motion *in Limine* is hereby **DENIED** as to issue IX.

*X. Cox Should be Precluded from Offering Live Testimony from Four Key Witnesses it Refuses to Make Available for Live Examination in Plaintiffs' Case in Chief.* For the reasons stated from the bench, no deposition testimony shall be offered at trial for a witness who will appear to give live testimony. Plaintiffs' Motion *in Limine* is hereby **GRANTED** as to issue X.

*XI. The Court Should Preclude Testimony from Victoria Sheckler.* Plaintiffs argue that Defendants should be precluded from calling RIAA employee Victoria Sheckler to testify because, among other objections, she is not the Fed. R. Civ. P. 30(b)(6) designee. Considering the Parties' arguments surrounding burdens on the witness and cumulative testimony, the Court will not preclude Defendants from calling Ms. Sheckler. The fact that Mr. Marks was the 30(b)(6) witness for RIAA does not disqualify Ms. Sheckler as a witness altogether. Further, the Court trusts that the Parties are capable of coordinating such that the witness would not be torn away from work for the entirety of the trial. Plaintiffs' Motion *in Limine* is hereby **DENIED** as to issue XI.

It is **SO ORDERED**.

November 19, 2019
Alexandria, Virginia

Liam O'Grady
United States District Judge