UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division


```
-------------------------------:
                               :
SONY MUSIC ENTERTAINMENT, et al.,:
             Plaintiffs,       :
                               :
     -vs-                       :   Case No. 1:18-cv-950
                               :
COX COMMUNICATIONS, INC., et al.,:
             Defendants.        :
                               :
-------------------------------:
```


PARTIAL TRANSCRIPT
(Jury Selection)

December 2, 2019


Before:  Liam O'Grady, USDC Judge


And a Jury

2

<u>APPEARANCES</u>:

FOR THE PLAINTIFFS:          MATTHEW J. OPPENHEIM, ESQ.
                                    SCOTT A. ZEBRAK, ESQ.
                                    JEFFREY M. GOULD, ESQ.
                                    MICHAEL J. DRUCKMAN, ESQ.
                                    ANDREW L. GUERRA, ESQ.
                                    LUCY G. NOYOLA, ESQ.
                                    JIA RYU, ESQ.
                                    Oppenheim + Zebrak, LLP
                                    4530 Wisconsin Avenue, N.W.
                                    5th Floor
                                    Washington, D.C. 20015


FOR THE DEFENDANTS:          THOMAS M. BUCHANAN, ESQ.
                                    Winston & Strawn LLP
                                    1700 K Street, N.W.
                                    Washington, D.C. 20006-3817
                                      and
                                    SEAN R. ANDERSON, ESQ.
                                    MICHAEL S. ELKIN, ESQ.
                                    THOMAS P. LANE, ESQ.
                                    CESIE C. ALVAREZ, ESQ.
                                    Winston & Strawn LLP
                                    200 Park Avenue
                                    New York, NY 10166-4193
                                    and
                                    JENNIFER A. GOLINVEAUX, ESQ.
                                    THOMAS J. KEARNEY, ESQ.
                                    Winston & Strawn LLP
                                    101 California Street, 35th Floor
                                    San Francisco, CA 94111-5840
                                    and
                                    MICHAEL L. BRODY, ESQ.
                                    Winston & Strawn LLP
                                    35 West Wacker Drive
                                    Chicago, IL 60601
                                    and
                                    DIANA HUGHES LEIDEN, ESQ.
                                    Winston & Strawn LLP
                                    333 South Grand Avenue
                                    Suite 3800
                                    Los Angeles, CA 90071

3

1          NOTE:  The jury selection process begins on December

2   2, 2019, in the presence of the jury panel as follows:

3   JURY PANEL IN

4          THE CLERK:  The court calls case 1:18-cv-950, Sony

5   Music Entertainment, et al., versus Cox Communications, Inc.,

6   et al., for a jury trial.

7          May I have the appearances, please, first for the

8   plaintiffs.

9          THE COURT:  Good morning, Mr. Zebrak.  If you would

10  identify the folks that are at counsel table this morning.

11  Thank you, sir.

12          MR. ZEBRAK:  Good morning.  Thank you, Your Honor.

13          To my left is my colleague, Mathew Oppenheim.  And my

14  colleague, Lucy Noyola.

15          THE COURT:  Thank you.  Okay.

16          Mr. Buchanan.

17          MR. BUCHANAN:  Good morning, Your Honor.  To my right

18  is Michael Elkin.  Ellen Brickman.  And Thomas Lane.

19          THE COURT:  All right, good morning.

20          And your second -- the second table as well, Mr.

21  Buchanan, if you would.  I didn't mean to --

22          MR. BUCHANAN:  Jennifer Golinveaux.  Marcus Delgado.

23  And Kristen Weathersby.

24          THE COURT:  All right, thank you.

25          And, Mr. Zebrak, those in the second table, if you

4

1  would.  I apologize for confusing you.

2           MR. ZEBRAK:  Thank you, Your Honor.  Geoffrey Israel.

3  Laurie Kuslansky.  And Jeffery Gould.

4           THE COURT:  All right, thank you.

5           All right, good morning, ladies and gentlemen.  My

6  name is Liam O'Grady, and I'll be the judge presiding over this

7  trial.

8           As you were made aware by a sheet of paper I sent

9  down to you to review, this is a civil case with a number of

10  plaintiffs against Cox and Cox Communications, and I'll discuss

11  it a little more fully in a minute.

12          I am assisted by my staff, who will try and keep me

13  traveling in the right direction.  And, importantly, Mr.

14  Ruelas, who is our Court Security Officer, who will be an

15  important part of our trial and your time here.

16          Let's start out by finding out who we have here.  So

17  let's call roll, please.

18          THE CLERK:  Good morning, ladies and gentlemen.  As I

19  call your name and your juror number, would you please stand,

20  answer present, and then you may be seated once your name is

21  called.

22          I apologize in advance if I mispronounce anybody's

23  name.

24          NOTE:  The jury panel is called and sworn.

25          THE COURT:  All right, thank you.

5

1          As I said, this is a civil case.  The plaintiff

2     comprises 53 record companies and music publishers.  The

3     defendant is Cox Communications and CoxCom, LLC.  And

4     plaintiffs are suing the defendants for infringing its

5     copyrighted sound recordings and musical compositions.

6          More specifically, they're suing defendants for

7     contributing to the infringement or vicarious liability for its

8     customers, Cox's customers, that it alleges unlawfully

9     downloaded a total of 10,017 copyrighted sound recordings and

10    music compositions without permission between February 13 of

11    2013 and November of 2014.

12         The defendants have denied the charges, and that's

13    why we're having a trial now to decide that very important

14    issue for all parties concerned.

15         Let's start out by asking -- do any of you know each

16    other on the jury pool?  There are a couple of similar names.

17         Yes, sir, please -- and I am going to -- this is

18    called voir dire, or voir dire depending upon what TV show you

19    watch, but it is an opportunity for counsel to decide who is

20    best suited to sit on this jury.

21         So when I get a positive answer to a question,

22    please, you will get the microphone, I will ask you to use your

23    juror number if you remember it, as well as your name before

24    you speak.

25         So, good morning, sir.

1          JUROR COSGROVE:  Good morning, Your Honor.  I am

2    juror number 9, Ryan Cosgrove.  I know the man next to me, Nick

3    Delaware, he used to be my lacrosse coach in high school.

4          THE COURT:  All right.  And, Mr. Cosgrove, can I rely

5    on you, if you are both selected on the jury, to both

6    independently make the important decisions that are necessary

7    in this case and not collectively?

8          JUROR COSGROVE:  Yes.

9          THE COURT:  All right.  Thank you, Mr. Cosgrove.

10         And you, sir, again your last name?

11         JUROR DELAWARE:  Delaware.

12         THE COURT:  Okay.  You are Nicholas Delaware, number

13   12?

14         JUROR DELAWARE:  Yes, sir.

15         THE COURT:  All right.  And you are a lacrosse coach

16   as well as involved in other activities.  And do I have your

17   agreement, sir, that you will not collaborative if both you and

18   Mr. Cosgrove are put on the jury together, but you will make

19   the decisions that you need to make individually, sir?

20         JUROR DELAWARE:  Yes, sir.

21         THE COURT:  All right, thank you.

22         I gave you all a list of the plaintiffs, they will be

23   placed in categories, I think a total of six groupings.  So

24   it's not as daunting as you may first perceive it.  And I am

25   sure that for both plaintiffs and defendants you all will

7

1    recognize the names.

2           But let me ask you more particularly, are any of you

3    personally acquainted with, current or former officers,

4    directors, or employees of any of those companies?  Or are you

5    yourself involved with those companies?

6           JUROR DELORENZO:  Hi.  I am juror number 13, Jill

7    Delorenzo.  I am not sure if it's 100 percent affiliated, but I

8    have a family member who is a vice-president, NBC Universal.  I

9    don't know if it is tied to the Universal Group.

10          THE COURT:  Okay.  Ms. Delorenzo, what type of work

11   does your cousin do?

12          JUROR DELORENZO:  Oh, it's my husband's uncle, he is

13   a vice-president of West Coast operations.  So he's involved

14   with the whole operation.  He has been with that company for a

15   very long time.

16          THE COURT:  Okay.  And is he involved in the music

17   industry portion of it, or --

18          JUROR DELORENZO:  I personally am not sure.  But he

19   also has his daughter working for the company too, so my

20   husband's cousin.

21          THE COURT:  Okay.  Is there any reason why, based on

22   information you've received from any family members, do you

23   think it would be difficult to be fair and impartial in this

24   case and decide it only on the evidence you hear in this

25   courtroom and the law that I give you?

8

1        JUROR DELORENZO:  Yeah.  I mean, I would do my

2   absolute best.  I think I would still be all right.  But if

3   it's tied to his company, then that would be challenging.  But,

4   yeah.

5        THE COURT:  Is he a plaintiff, I'm sorry?

6        MR. OPPENHEIM:  I believe, Your Honor, NBC Universal

7   is the movie studio, it is not the record company.

8        THE COURT:  Okay.  Does that --

9        JUROR DELORENZO:  He's involved in the television

10  side, yeah.

11       THE COURT:  Okay.  All right.  But if I instruct you

12  that you are to decide this case just based on the evidence you

13  hear and the law that I give you, will you do that?

14       JUROR DELORENZO:  Yes, sir.

15       THE COURT:  All right.  Thank you.

16       Anybody else?

17       JUROR NEWHOUSE:  Juror number 34, Neil Newhouse.  I

18  run a public affairs/public opinion research firm.  We have

19  done work for Cox Communications in the past.

20       THE COURT:  All right.  And how long ago?

21       JUROR NEWHOUSE:  It has been eight or nine years.  I

22  can't recall that.

23       THE COURT:  Eight or nine years.  And what is your

24  position in the company?  Or how were you involved?

25       JUROR NEWHOUSE:  Partner, founding partner.

9

1          THE COURT:  Okay.  And were you personally involved

2    in the work that you did with Cox?

3          JUROR NEWHOUSE:  I think I may have done some work,

4    but I don't -- it's been awhile.  We do a lot of projects.

5          THE COURT:  Is there any reason why the work that you

6    did you believe would make it difficult for you to be fair and

7    impartial in this case and decide it --

8          JUROR NEWHOUSE:  No, Your Honor.

9          THE COURT:  All right.  Thank you, Mr. Newhouse.

10          JUROR CALABRESE:  Yes, Michael Calabrese, number 5.

11          THE COURT:  Yes, sir.

12          JUROR CALABRESE:  I just wanted to point out, I do

13    employ -- not employ.  I utilize Cox residential services for

14    my home, Internet cable.

15          THE COURT:  All right.  I am sure that there is more

16    than one person that uses Cox.  Let me have a show of hands for

17    everybody that uses Cox in some form as the internet provider

18    and have you identify yourselves.

19          All right, Mr. Calabrese.

20          And, Joe, would you give the mike to the remaining

21    people who also -- again, Mr. Cosgrove.

22          JUROR COSGROVE:  Yeah, hi.  Number 9, Ryan Cosgrove.

23    I work for another telecom company that uses Cox as an

24    underlying carrier for the service we provide.

25          THE COURT:  All right.  And what's that other

1    carrier?

2            JUROR COSGROVE:  I work for Granite

3    Telecommunications.

4            THE COURT:  Okay.  Is there any reason why that

5    relationship would make it difficult for you to be fair and

6    impartial in this case, sir?

7            JUROR COSGROVE:  I don't believe so, no.  But I just

8    wanted to point it out.

9            THE COURT:  Yes, I appreciate it.

10           Mr. Calabrese, any reason why using Cox would make it

11   difficult for you to be fair and impartial in this case?

12           JUROR CALABRESE:  No, no reason.

13           THE COURT:  All right, thank you.

14           Mr. Delaware.

15           JUROR DELAWARE:  Number 12, Nick Delaware.  I also

16   use Cox for Internet.

17           THE COURT:  All right.  Any reason why that would

18   make it difficult for you to be fair and impartial in this

19   case?

20           JUROR DELAWARE:  No, sir.

21           THE COURT:  All right, thank you.

22           We have some over on the other side too.  Okay.

23           JUROR LIEBHABER:  Richard Liebhaber, number 31.

24           THE COURT:  All right, good morning.  Do you use Cox

25   for Internet?

11

1              JUROR LIEBHABER:  No, I'm a Fios subscriber.

2              THE COURT:  Okay.  Any reason why -- I'm going to

3    have a broader question for you all, but is there anything in

4    your relationship with your Internet service provider which

5    would make it difficult for you to be fair and impartial in

6    this case?

7              JUROR LIEBHABER:  No.

8              THE COURT:  Thank you, Mr. Liebhaber.

9              JUROR FURNEAUX:  Juror 19, Pam Furneaux.

10             THE COURT:  Yes, ma'am.

11             JUROR FURNEAUX:  I also use Cox.

12             THE COURT:  You use Cox?  Any reason why that would

13   make it difficult for you to be fair and impartial in this

14   case?

15             JUROR FURNEAUX:  Not at all.

16             THE COURT:  All right, thank you.

17             JUROR SHAAFI:  Good morning.  I am judge -- I am

18   juror number 45, Mojgan Shaafi.  I use Cox.

19             THE COURT:  All right.  Ms. Shaafi, any reason why

20   that would make it difficult for you to be fair and impartial

21   in this case?

22             JUROR SHAFFI:  No, not at all.

23             THE COURT:  Thank you, Ms. Shaafi.

24             JUROR JIN:  Juror number 26, Tina Jin.  I also use

25   Cox for personal and business.

1          THE COURT:  All right.  Ms. Jin, any reason why that

2    would make it difficult for you to be fair and impartial in

3    this case?

4          JUROR JIN:  No.

5          THE COURT:  Thank you, Ms. Jin.

6          JUROR MOHAN:  Juror number 33, Manoj Mohan.  I also

7    use Cox for Internet service.

8          THE COURT:  All right.  Any reason why that would

9    make it difficult for you to be fair and impartial in this

10   case?

11         JUROR MOHAN:  No, sir.

12         THE COURT:  Thank you, Mr. Mohan.

13         JUROR KHAN:  Juror number 27, Jamil Khan.  In the

14   past I used Cox Communications.

15         THE COURT:  All right.  Any reason why that would

16   make it difficult for you to be fair and impartial, sir?

17         JUROR KHAN:  Not at all, sir.

18         THE COURT:  All right, thank you.

19         Anybody else?  All right.

20         Related questions.  Do you or any family member have

21   a financial relationship, past or present, with any of these

22   companies?  For instance, stock in the company.

23         Do you or any family members or anyone close to you

24   have strong feelings positive or negative towards any of these

25   companies?  All right, thank you.

13

1          Mr. Zebrak or Mr. Oppenheim, would you now introduce

2     the law firms, and where you're located, who are working on

3     behalf of the plaintiffs in the case.  And then when you're

4     done with that, give me a moment to ask a question.

5          Go ahead.

6          MR. OPPENHEIM:  Good morning.  My name is Matt

7     Oppenheim, and I am here with my colleagues from the law firm

8     of Oppenheim + Zebrak located in Washington, D.C.

9          THE COURT:  All right, thank you.  Does anybody work

10    with or have done any work with that firm?

11         Do any of you know any of the lawyers who were

12    introduced or other parties here in the court -- in the well of

13    the court on behalf of plaintiffs?

14         All right.  Then, Mr. Elkin, if you would do the

15    same, please.

16         MR. ELKIN:  Good morning.  Michael Elkin, Winston &

17    Strawn is the name of our firm representing Cox.  We are based

18    in Washington -- the lawyers representing Cox here come from

19    our Washington, D.C., office, New York, Chicago, Los Angeles,

20    and San Francisco.

21         THE COURT:  All right.  Do any of you know Mr. Elkin

22    or the other members of the Winston & Strawn law firm?

23         Yes, sir.

24         JUROR PATEL:  Milin Patel, number 36.  I am an IP

25    attorney.  I have seen their faces before, I don't know where.

14

1    Possibly I came to a courtroom to see them.  I work for

2    Hewlett-Packard Enterprise.  So we may have used one of the

3    attorneys at some point.

4            THE COURT:  Okay.  Did you personally work with --

5    recall working with any of the attorneys at Winston & Strawn?

6            JUROR PATEL:  No.

7            THE COURT:  Okay.  Any reason why it would prevent

8    you from being fair and impartial in this case?

9            JUROR PATEL:  No.

10           THE COURT:  All right.  Thank you, Mr. Patel.

11           Anyone else?  All right.

12           Mr. Oppenheim, please identify for plaintiff the

13   witnesses that you expect to testify in the case.

14           And, ladies and gentlemen, please listen carefully.

15   If you recognize any of those names, I will ask you to stand

16   and tell me how.

17           Please, go ahead.

18           MR. OPPENHEIM:  These are the list of the witnesses

19   we may call during the course of this trial.  Michael Abitbol.

20   Sam Bahun.  David Benjamin.  Barbara Frederiksen-Cross.  Matt

21   Flott.  David Kokakis.  Paul Kahn.  Dennis Kooker.  Wade Leak.

22   Dr. William Lehr.  Steve Marks.  Dr. George McCabe.  Dr.

23   Terrence McGarty.  Alasdair McMullan.  Brent Beck.  Matt

24   Carothers.  Sanford Mencher.  Sidd Negretti.  Joseph Sikes.

25   Linda Trickey.  Roger Vredenburg.  Jason Zabek.  Chris Bell.

15

1    Neil Carfora.  William Basquin.  Tom Foley.  Jorge Fuenzalida.

2    Jason Gallien.  Jon Glass.  Vance Ikezoye.  Dong Jang.  Paul

3    Jarchow.  Clint Summers.  Brian Stifel.  And Jeff Walker.

4              THE COURT:  All right.  Do any of you recognize any

5    of those names?  All right.  Thank you.

6              Mr. Elkin, if you would do the same, please.

7              MR. ELKIN:  Yes.  And with apologies to the Court and

8    to the prospective jurors, some of these names are repetitive,

9    but I didn't have a chance to cross them off the list.

10             THE COURT:  All right.

11             MR. ELKIN:  So I apologize for that.  Brent Beck.

12   Christian Tregillis.  Christopher Bakewell.  Kevin Almeroth.

13   Linda Trickey.  Lynn Weber.  Matt Carothers.  Nick Feamster.

14   Sandy Mencher.  Christopher Monson.  Sam Bahun.  Sidd Negretti.

15   Slawomir Paszkowski.  Steven Marks.  Vance Ikezoye.  Victoria

16   Sheckler.  Barbara Frederiksen-Cross.  Brian Stifel.  Clint

17   Summers.  George McCabe.  Jason Zabek.  Joseph Sikes.  Paul

18   Jarchow.  Randy Cadenhead.  Terrence McGarty.  William Lehr.

19   Alasdair McMullan.  Anish Patel.  Christopher Bell.  David

20   Benjamin.  David Kokakis.  Dong Jang.  Jason Gallien.  Jeremy

21   Blietz.  Jon Glass.  Matt Flott.  Michael Abitbol.  Neil

22   Carfora.  Paul Kahn.  Steven Poltoak.  Tom Foley.  Wade Leak.

23   Jill Lesser.  Jorge Fuenzalida.  Samuel Rubin.  Seth Nielson.

24   And William Basquin.

25             THE COURT:  All right, thank you.

16

1              Anybody recognize any of those names?  Yes, ma'am.

2              JUROR KRAYER:  Juror number 29, Erin Krayer.  I

3     recognize the name Chris Bell.

4              THE COURT:  All right.  In a professional or a

5     personal way?

6              JUROR KRAYER:  Professional.  I worked for him in a

7     former company, Active Risk.  So likely no relation, but --

8              THE COURT:  Okay.  Where is Mr. Bell from, Mr. Elkin?

9     Is he local, or is he --

10             Where did you come in contact with him?

11             JUROR KRAYER:  Our offices were in Herndon.  I'm not

12    sure if he still works there any longer.

13             THE COURT:  Okay.  Mr. Oppenheim.

14             MR. OPPENHEIM:  I am happy to answer your question.

15             THE COURT:  Yes, sir.

16             MR. OPPENHEIM:  I assume there are many Chris Bells

17    in the world.  The one that is a potential witness for both

18    parties works for Warner Music Group in New York.  I believe

19    it's in New York, correct?  No, I'm sorry, in Los Angeles.

20    Sorry.  I apologize.  In Los Angeles.

21             THE COURT:  Okay.  Does that sound like the same

22    person?

23             JUROR KRAYER:  I doubt it's the same person.  I don't

24    think so.

25             THE COURT:  All right.  Thank you, Mr. Krayer.

17

1          JUROR NEWHOUSE:  Juror 34, Neil Newhouse.  I

2    recognize the name Tom Foley as a former congressman, if that's

3    the right -- the same Tom Foley.

4          THE COURT:  I am not sure.

5          MR. OPPENHEIM:  We don't intend to call any members

6    of Congress.

7          JUROR NEWHOUSE:  He is a former member.

8          MR. OPPENHEIM:  Or a former member of Congress.

9          JUROR NEWHOUSE:  Thank you.

10          MR. OPPENHEIM:  I assume it is a different Tom Foley.

11          MR. ELKIN:  Agreed.

12          THE COURT:  Thank you Mr. Newhouse.

13          Anybody else?  All right.

14          The attorneys estimate that the evidence in the case,

15    as you probably can glean from the number of witnesses who were

16    just identified, is going to last approximately two weeks.  And

17    I know that you're all thinking about the holidays as you're

18    listening to me with trepidation.

19          I believe that the case will be submitted to the jury

20    in the first part of the third week, which would be the 16th,

21    17th.  Perhaps you will be here on the 18th deliberating, but

22    you will be free a week before Christmas.

23          And for those of you who are like my wife and do all

24    your Christmas shopping in October and November, it's not a big

25    problem.

18

1           For of those of you who are like me and wait until

2     the 22nd of December, you will have time to do that.  So I hope

3     that you won't be concerned that we're going to really -- we

4     are definitely going to take up a lot of your time, but we'll

5     have you out of the courthouse in time to enjoy the holiday

6     season.

7           And there is never a good time for a jury to sit, and

8     most people want to do it, but nobody wants to do it today, we

9     are all very busy.  But our system of justice is the greatest

10    in the world because of you all.  You come in here and you give

11    us your time, your concentration, you make difficult decisions

12    on very important matters, and it should be a jury making those

13    decisions.  So it's a very important, vital part of our

14    administration of justice.

15          I do excuse jurors for certain reasons.  If you are a

16    single parent and have no one to take care of children if you

17    are here in the courtroom.  If you are a solo practitioner, and

18    I mean solo practitioner, whose store is closed, whose business

19    is not operating if you are here in the courthouse.  If you

20    have medical appointments which cannot be rescheduled.  Or,

21    obviously, hopefully not, but any surgeries or hospital visits.

22    If you have business trips which cannot be rescheduled.  Or

23    prepaid vacations which cannot be rescheduled as well.

24          So if any of you fit into one of those categories,

25    let's go to the far side first.  Please raise your hand.

19

1          JUROR TINSLEY:  Hi.  I am juror number 48, Sarah

2    Tinsley.  I am settling on a new home on Monday, the 9th, that

3    I will need to attend to sign.  And moving on the 10th.

4          THE COURT:  All right.  Thank you, Ms. Tinsley.

5          I forgot -- I forgot to mention, students to have

6    exams over the next several weeks.

7          Yes, sir.

8          JUROR EMBREY:  Juror 17, Kenneth Embrey.

9          THE COURT:  Yes, sir.

10          JUROR EMBREY:  I am the sole provider of

11    transportation for my mother of 81 years, double cancer

12    survivor.  She has quite a few appointments.  I did not realize

13    that this would be turning into such a long situation.

14          THE COURT:  All right.  And there is nobody else that

15    can --

16          JUROR EMBREY:  The closest brother I have is in

17    Williamsburg, and the next one is over in Ohio working.

18          THE COURT:  All right.  Thank you, Mr. Embrey.

19          JUROR EMBREY:  Thank you.

20          JUROR KOCH:  Juror number 28, Megan Koch.  I have

21    prepaid travel December 26 through January.  I don't know if

22    that would affect this.

23          THE COURT:  All right.  Thank you.  It will not.

24          JUROR MOHAN:  Juror number 33, Manoj Mohan.  I have

25    two trips planned.  On December 9 through 12th I have a

20

1    business trip.  And then December 23 onwards to January 3 I

2    have an international trip planned, which is prepaid.

3           THE COURT:  Your business trip on the 9th, that can't

4    be rescheduled, Mr. Mohan?

5           JUROR MOHAN:  No.  It's already prepaid.  And time to

6    reschedule -- I worked hard for it, to get into that

7    conference.

8           THE COURT:  All right.  Thank you, Mr. Mohan.

9           JUROR CISIEWICZ:  Hi, I am juror number 7, Melanie

10   Cisiewicz.  My fiancé has surgery on Wednesday, he's a fireman

11   and he was injured on Thanksgiving at a house fire.

12          I'm also a teacher, and it's the end of the quarter,

13   semester.  And I teach drivers ed.  And we have finals coming

14   up.  So I would like to be there for them.

15          THE COURT:  All right.  Thank you, Ms. Cisiewicz.

16          JUROR ATKINSON:  Hi.  I am juror number 2, Cynthia

17   Atkinson.  And I have surgery scheduled for December 9.

18          THE COURT:  All right.  And that can't be

19   rescheduled, Ms. Atkinson?

20          JUROR ATKINSON:  No, sir.

21          THE COURT:  Okay.  All right, thank you.

22          JUROR LOMBARDO:  Good morning.  Juror number 32,

23   Rhonda Lombardo.  I have several doctors' appointments

24   scheduled this week.

25          THE COURT:  Immediately over the course of this week?

1            JUROR LOMBARDO:  Yes, sir.

2            THE COURT:  And those can't be rescheduled?

3            JUROR LOMBARDO:  Well, they could, sir, but I

4    experience pain if I don't attend those appointments.

5            THE COURT:  All right, thank you.

6            JUROR LOMBARDO:  Thank you, sir.

7            JUROR DELORENZO:  Hi.  I am juror number 13, Jill

8    Delorenzo.  I am five months pregnant with my third child.  And

9    I have an appointment on Tuesday, the 10th, with the RN who

10   works with the practice, it is a midwifery practice, and I'm

11   required to see her at least once during my pregnancy.  And she

12   actually comes out from Winchester to Chantilly.

13           So it would be very hard to reschedule that.  I have

14   actually been trying to get that for awhile.

15           And I am responsible for bringing my kindergartner

16   and first grader to and from school.

17           THE COURT:  All right.  Thank you, Ms. Delorenzo.

18           JUROR BUCHHOLZ:  Juror number 4, Paul Buchholz.  I

19   have an appointment on the 10th.  I am currently being

20   on-boarded to a new medication.  So like I only have pills

21   through the 11th.  So if I don't get in on the 10th, then I

22   don't know where that leaves me in respect with my health.

23           THE COURT:  You don't think you can get an

24   appointment on the weekends to do that or in the evenings, sir?

25           JUROR BUCHHOLZ:  My psychiatrist doesn't have

22

1    anything but daytime.

2            THE COURT:  Okay.  All right.  Thank you, Mr.

3    Buchholz.

4            JUROR BUCHHOLZ:  Thanks.

5            JUROR GIBSON:  Juror number 20, Daijah Gibson.  On

6    the 10th, next week, I will be moving into my new home.

7            THE COURT:  Okay.  You are moving from one location?

8            JUROR GIBSON:  To a new city, I am moving to

9    Fredericksburg.

10           THE COURT:  Moving to Fredericksburg?

11           JUROR GIBSON:  Yes.

12           THE COURT:  All right.  Thank you, Ms. Gibson.

13           JUROR KREMPIN BRIDGMAN:  I am juror 30, Jennifer

14   Krempin Bridgman.  I am self-employed, so ever day I sit here,

15   I am not earning an income.  So please keep that in mind.

16           THE COURT:  All right.  And there is nobody else that

17   can help you while you're absent?

18           JUROR KREMPIN BRIDGMAN:  It's doable, but not great.

19           THE COURT:  Okay.  All right, thank you.

20           JUROR ARNOLD:  Juror number 1, Joseph Arnold.  I have

21   prepaid travel scheduled for this Thursday and Friday.

22           THE COURT:  I am sorry, tell me your name.  You are

23   Mr. Arnold?

24           JUROR ARNOLD:  Yes.

25           THE COURT:  You have a prepaid trip this Thursday and

23

1  Friday?

2          JUROR ARNOLD:  Correct.

3          THE COURT:  Is that one you can't --

4          JUROR ARNOLD:  I have already paid for the moving

5  truck.

6          THE COURT:  Okay.  All right.  Thank you, Mr. Arnold.

7          JUROR NEWHOUSE:  Juror number 34, Neil Newhouse.  I

8  have a prepaid vacation out of the country starting on Sunday.

9          THE COURT:  Starting when, Mr. Newhouse?

10          JUROR NEWHOUSE:  This Sunday?

11          THE COURT:  This coming Sunday?

12          JUROR NEWHOUSE:  Yes, sir, Your Honor.

13          THE COURT:  All right, thank you.

14          JUROR DINH:  Juror number 14, Kimberly Dinh.  I do

15  have a medical appointment tomorrow.  I don't know if I can

16  reschedule at this point, it's too abrupt.  I didn't get a

17  notice until after 6 p.m. on Friday, and they already closed.

18          THE COURT:  Well, that's when we send the notices out

19  because we want to make sure that the cases are going to trial

20  before we ask people to come in.

21          You don't know whether you can reschedule that

22  appointment?  Is it just a routine appointment?

23          JUROR DINH:  Yes.  It takes along time to get another

24  appointment, that's the only problem.

25          THE COURT:  Okay.  All right.  Thank you, Ms. Dinh.

24

1            JUROR ROSENBERGER:  Hi.  Heather Rosenberger, number

2    42.  I have a vacation scheduled the 12th through the 14th.

3            THE COURT:  I'm sorry, I didn't hear any of that, Ms.

4    Rosenberger.  Tell me again.

5            JUROR ROSENBERGER:  I have a vacation scheduled the

6    12th through the 14th.

7            THE COURT:  12th through the 14th.  Okay.  And you've

8    already paid for that, and you're out of town, is that fair?

9            JUROR ROSENBERGER:  Yes, sir.

10            THE COURT:  Okay.  All right.  Thank you, Ms.

11    Rosenberger.

12            JUROR KHAN:  Juror number 27, Jamil Khan.  I have a

13    planned vacation scheduled December 22 to all the way

14    January 3, I believe.  And I have several medical appointments

15    before I go to vacations.

16            THE COURT:  All right.  Thank you, Mr. Khan.

17            JUROR PATEL:  Milin Patel, number 36.  I have a

18    prepaid vacation scheduled from the 21st to the 31st.

19            THE COURT:  Okay.  All right.  Thank you, Mr. Patel.

20            JUROR VELAZQUEZ:  I am juror number 53, Carmen

21    Velazquez.  This Thursday I had to spend half a day in the

22    emergency room with a kidney stone coming down.

23            THE COURT:  I am sorry.

24            JUROR VELAZQUEZ:  And the doctor said that it could

25    take up to 31 days.  The pain can come at any time, can

25

1    reoccur.

2              Apart from that, my son and his wife are in the

3    middle of a custody battle in the State of Minnesota with the

4    District Court for Winona County.  And my grandson, who is in

5    temporary foster care, with his uncle, has asked me to go see

6    him.  So I had to already plan to go there at the end of

7    December or the beginning of January.

8              THE COURT:  All right.  I don't want to get too

9    personal.  Are you taking medication for the pain presently?

10             JUROR VELAZQUEZ:  If the pain comes again, I am

11   supposed to take medication, otherwise -- I mean, it's

12   uncomfortable right now, but not to the point of me taking

13   medication.

14             THE COURT:  Okay.  All right.  Thank you, Ms.

15   Velazquez.

16             JUROR VELAZQUEZ:  Thank you.

17             JUROR NOLDE:  Juror number 35, Susan Nolde.  We have

18   a planned vacation returning -- leaving Friday night, returning

19   Monday night.

20             THE COURT:  Leaving this Friday night and returning

21   next Monday night?

22             JUROR NOLDE:  Correct.

23             THE COURT:  Okay.  And your last name, I'm sorry?

24             JUROR NOLDE:  Nolde.  35.

25             THE COURT:  35, okay.  All right.  Thank you, Ms.

1  Nolde.

2  JUROR SHAAFI:  I am number 45, Mojgan Shaafi.  I am

3  the only dentist in my practice.  I have patients scheduled

4  until mid-January.  Some of the patients coming next week and

5  this week have more urgent matters, cavities and crowns, that

6  may be a little difficult or may get complicated if I were to

7  reschedule them to mid-January.

8  My husband has a colonoscopy next Thursday, I am the

9  ride, but I could always arrange somebody else to do that.

10  THE COURT:  Is there somebody else in your practice

11  that practices --

12  JUROR SHAAFI:  I'm the only dentist.  It's my

13  practice, I'm the only dentist, yes.

14  THE COURT:  Thank you, Ms. Shaafi.

15  JUROR SHAAFI:  Sure.

16  JUROR LIEBHABER:  Number 31, Richard Liebhaber.  This

17  is just a heads-up, Your Honor.

18  THE COURT:  Yes, sir.

19  JUROR LIEBHABER.  So I have a three-week ski vacation

20  starts December 21.

21  THE COURT:  All right.  Thank you, Mr. Liebhaber.

22  JUROR LIEBHABER:  That kind of gets close to the

23  edge.

24  THE COURT:  Yeah.  We will be done by then, but thank

25  you for bringing it to my attention.

27

1              JUROR JIN:  Hi, 26, Tina Jin.  I am a solo

2   practitioner child psychiatrist, and I don't have anybody else

3   to see my patients while I'm here.

4              THE COURT:  Are you seeing people during the day, or

5   in the evenings, or --

6              JUROR JIN:  Unfortunately, I have small kids too, so

7   I have to be home in the evening.

8              THE COURT:  All right.  Thank you, Ms. Jin.

9              JUROR SANDOVAL:  Number 44, Robert Sandoval.  I have

10  overseas travel scheduled for my work on December 18.

11             THE COURT:  So you're leaving on the 18th; is that

12  right?

13             JUROR SANDOVAL:  Yes, sir.

14             THE COURT:  All right.  Thank you, Mr. Sandoval.

15             JUROR COURTIEN:  Steven Courtien, juror number 10.

16  Next week we had an unscheduled grievance arbitration hearing

17  in Washington, D.C.  Also, we are establishing a new

18  organization that I will be the head of, and I have interviews

19  for new employees for the rest of the month.

20             THE COURT:  All right.  Thank you, Mr. Courtien.

21             JUROR COSGROVE:  Juror number 9, Ryan Cosgrove.  I

22  have prepaid travel plans starting this Thursday evening

23  through the rest of the weekend.  We just moved my grandmother

24  to my nursing home, so I was traveling up to visit her.  So I

25  already paid for all of that.

28

```
1                THE COURT:  All right.  Thank you, Mr. Cosgrove.

2                JUROR COSGROVE:  Thank you.

3                JUROR HENRIQUEZ:  Number 22, Andy Henriquez.  I'm a

4     student and have exams coming up over the next few weeks.

5                THE COURT:  Are you going full-time, or are you in

6     the evenings?

7                JUROR HENRIQUEZ:  Full-time.

8                THE COURT:  Okay.  And where are you going to school?

9                JUROR HENRIQUEZ:  It's community college, Lord

10    Fairfax.

11               THE COURT:  How many exams do you have scheduled?

12               JUROR HENRIQUEZ:  I have four.

13               THE COURT:  All right.  Thank you, Mr. Henriquez.

14               JUROR TRAN:  Juror number 50, Bay Tran.  I have a

15    doctor's appointment on the 9th.  And also I have the jury

16    summons on the 18th.  So I have two at the same time.

17               THE COURT:  Okay, I'm sorry, I didn't get that.

18               JUROR TRAN:  I have summons for the jury duty for the

19    Loudoun County on the 18th.

20               THE COURT:  Okay.

21               JUROR TRAN:  And I also have the doctor's appointment

22    on the 9th.

23               THE COURT:  Can you reschedule your medical

24    appointment, sir?

25               JUROR TRAN:  Medical maybe, but I don't know how I
```

29

1    can reschedule for the jury duty.

2              THE COURT:  Yeah, you can't be two places at one

3    time, can you?

4              JUROR TRAN:  Yeah, I don't know how to do that.

5              THE COURT:  Okay.  All right.  Thank you, Mr. Tran.

6              JUROR TRAN:  Thank you.

7              JUROR DELAWARE:  Juror number 12, Nick Delaware.  I

8    am also self-employed where I have got to rent out facilities

9    to see clients.  And I have a number of appointments over the

10   next couple of weeks.

11             THE COURT:  All right.  Thank you, Mr. Delaware.

12             All right, thank you.  Have any of you acquired any

13   information about this case from any source?

14             Do any of you have an interest in the trial or the

15   outcome of the case?

16             Do any of you have a close friend or family member

17   that has education, training, or does work in the Internet,

18   satellite, or communications services, including wireless?

19             All right, Joe -- is there anybody on the far side?

20   Ms. Delorenzo.

21             JUROR DELORENZO:  Yes, that's me again, number 13.

22   My husband's uncle that I talked to you about prior with NBC

23   Universal, he also works satellite operations with TV.  I do

24   remember him talking about that specifically.

25             THE COURT:  Okay.  Thank you, Ms. Delorenzo.

30

1          JUROR COURTIEN:  Steven Courtien, juror number 10.  A

2   lot of the contractors that we work with and negotiate with do

3   work for Cox Communications and the communication industry in

4   Northern Virginia.

5          THE COURT:  All right.  Mr. Courtien, any reason why

6   that would make it difficult for you to be fair and impartial

7   in this case?

8          JUROR COURTIEN:  No, it won't.

9          THE COURT:  Thank you.  All right.

10         JUROR COSGROVE:  Juror number 9, Ryan Cosgrove.  As I

11   stated before, I work for another telecom company, so I am very

12   familiar with mobility and different wireless services,

13   Internet connectivity, stuff like that.

14         THE COURT:  All right.  And again, I asked you

15   previously, but that wouldn't affect your ability to be fair

16   and impartial in this case; is that right?

17         JUROR COSGROVE:  No.

18         THE COURT:  Thank you, Mr. Cosgrove.

19         JUROR LIEBHABER:  Richard Liebhaber, number 31.  On

20   November 4 I retired as a director of Cogent Communications

21   Group, which is an Internet packet service company.  We do not

22   serve -- we did not serve end users, do not serve end users.

23   We are basically a carrier's carrier.

24         THE COURT:  All right.  So clearly there will be

25   evidence in this case about how the Internet service providers

1    operate, including expert testimony.

2         Is there any problem with you listening to the

3    testimony and deciding the case only on the basis of the

4    information you hear in the courtroom and the law that I give

5    you and disregarding anything based on your employment history?

6         JUROR LIEBHABER:  No.

7         THE COURT:  All right.  Thank you, Mr. Liebhaber.

8         JUROR PATEL:  Milin Patel, number 36.

9         THE COURT:  Yes, sir.

10        JUROR PATEL:  I work for Hewlett-Packard Enterprise,

11   I'm a patent attorney.  So I generally know --

12        THE COURT:  Okay.

13        JUROR PATEL:  -- how it works.

14        THE COURT:  Is your focus on any intellectual

15   property which crosses with these services?

16        JUROR PATEL:  First, mostly servers right now and

17   cloud computing.  I don't know whether or not that's --

18        THE COURT:  It's the same question I asked Mr.

19   Liebhaber, would you be able to decide this case just based on

20   the evidence you hear, not on any personal ideas or information

21   that you have acquired through your work, and the law that I

22   give you?  Are you able to do that, sir?

23        JUROR PATEL:  Yes, I can do that.

24        THE COURT:  All right.  Thank you, Mr. Patel.

25        JUROR TINSLEY:  Hi.  Juror number 48, Sarah Tinsley.

1   I work for an IT company.  And the contracts I support, we do

2   provide telecommunications services.

3           THE COURT:  All right.  Any reason why that would

4   make it difficult for you to be fair and impartial here, Ms.

5   Tinsley?

6           JUROR TINSLEY:  No.

7           THE COURT:  All right, thank you.

8           JUROR BUCHHOLZ:  Juror number 4, Paul Buchholz.  I

9   don't know if this applies.  I am a network engineer at Oracle.

10  I do work with like Cogent, Kayo, and XO.  I don't know if that

11  counts.

12          THE COURT:  And what do you do for them?  That got

13  drowned out as well.

14          JUROR BUCHHOLZ:  I am a network engineer.

15          THE COURT:  Any reason why you couldn't decide this

16  case just based on the evidence you hear and the law that I

17  give you?

18          JUROR BUCHHOLZ:  No.

19          THE COURT:  All right.  Thank you, Mr. Buchholz.

20          JUROR REID:  Juror number 40, William Reid.  I am a

21  retired federal law enforcement officer.  I worked as a

22  criminal investigator for the U.S. Customs Service and the

23  Department of Homeland Security.  And for a period of time I

24  was a director of the IPR Center, which is a multi-agency

25  investigative center that was run by the former Customs Service

1    and is now run by the Department of Homeland Security.

2           THE COURT:  All right.  And the same question, any

3    reason why you couldn't put any of your professional

4    experiences aside and decide this case just based on the

5    evidence you hear and the law that I give you?

6           JUROR REID:  No, Your Honor.

7           THE COURT:  All right.  Thank you, Mr. Reid.

8           Anyone else?  All right.

9           Do any of you, and this may be a cumulative question,

10   but do any of you, or a close friend, or a family member have

11   education, training, and do work in the software development or

12   programming, or in electrical or computer engineering, or

13   generally in the information technology industries?

14          JUROR MOHAN:  Juror number 33, Manoj Mohan.  I am an

15   IT professional, I work for Capital One.

16          THE COURT:  All right.  And you work in their IT

17   section at Capital One?

18          JUROR MOHAN:  Yes, sir.

19          THE COURT:  Okay.  Any reason why you can't decide

20   this case based on the evidence you hear and the law that I

21   give you and put abide any of your other training?

22          JUROR MOHAN:  No.

23          THE COURT:  All right.  Thank you, Mr. Mohan.

24          JUROR BUCHHOLZ:  Juror number 4, Paul Buchholz.  I'm

25   a network engineer for Oracle.

34

```
 1              THE COURT:  And the same question I asked you a
 2    minute ago, not a problem?
 3              JUROR BUCHHOLZ:  No.
 4              THE COURT:  All right.  Thank you, Mr. Buchholz.
 5              JUROR ROSENBERGER:  Juror 42, Heather Rosenberger.  I
 6    negotiate contracts for an R&D company.
 7              THE COURT:  All right.  Thank you, Ms. Rosenberger.
 8              JUROR WING-BONICA:  Hannah Wing-Bonica, 55.  My
 9    husband works for a T-shirt company, and he does cloud
10    computing.  And I also work for a -- technically a tech
11    start-up, but specializes in location data.
12              THE COURT:  All right.  And any reason why you
13    couldn't put aside any information between your husband or you
14    and your business and decide this case just based on the
15    evidence you hear and the law that I give you?
16              JUROR WING-BONICA:  No, sir.
17              THE COURT:  Thank you, Ms. Wing-Bonica.
18              Yes, sir, Mr. Patel.
19              JUROR PATEL:  Milin Patel, number 36.  I have a
20    computer engineering background.
21              THE COURT:  All right.  Any reason why you can't just
22    decide this cased based on the evidence you hear and the law
23    that I give you?
24              JUROR PATEL:  No.
25              THE COURT:  Thank you, Mr. Patel.
```

35

1          JUROR SHAAFI:  Number 45.  My husband was in the IT
2    industry.  And no reason why I can't judge fairly.
3          THE COURT:  All right.  Thank you, Ms. Shaafi.
4          JUROR SANDOVAL:  Number 44, Robert Sandoval.  I am
5    currently retired from the U.S. government, but I have degrees
6    in electrical and computer engineering and a network
7    specialist.
8          THE COURT:  All right.  And any reason why you
9    couldn't put that training aside and just decide this case
10   based on the evidence you hear and the law that I give you?
11         JUROR SANDOVAL:  No, sir.
12         THE COURT:  All right.  Thank you, Mr. Sandoval.
13         Anyone else?
14         JUROR HERR:  23, Dana Herr.  I'm retired from the IT
15   industry.
16         THE COURT:  All right.  And what did you do in your
17   work?
18         JUROR HERR:  Just everything.  Computers, everything.
19         THE COURT:  All right.  Any reason why you think you
20   couldn't put aside any of your own training and decide this
21   case just based on the evidence you hear?
22         JUROR HERR:  No problem.
23         THE COURT:  All right.  Thank you, Mr. Herr.
24         Anyone else?  All right.
25         I asked you all previously whether you were Cox

1    subscribers or worked with Cox.  And none of you believed that

2    that would preclude you from being fair and impartial in this

3    case.  And let me broaden out the question and ask whether any

4    of you believe that based on your experience with any Internet

5    service provider or cable company, that you have any prejudices

6    or bias that you believe would make it difficult for you to be

7    fair and impartial in this case?

8              All right, thank you.

9              This case involves, as I said, Internet providers,

10   Cox, and also it's customers who are alleged to have downloaded

11   music through BitTorrent or other sites that we will talk about

12   in a minute, and as a result not paid for the music that they

13   acquired.

14             And have any of you ever received notices from your

15   own Internet service provider indicating that they believed

16   that you may have downloaded yourself or a family member music

17   that wasn't paid for and got a notice as a customer that you

18   were unlawfully using their computer to do so?

19             That would be Mr. Cosgrove.

20             JUROR COSGROVE:  Yeah, number 9, Ryan Cosgrove.

21   Yeah, I received one one time back in college when I was, you

22   know, poor kid buying or not buying music.

23             THE COURT:  All right.  And any reason why that

24   experience would make it difficult for you to be fair and

25   impartial in this case?

37

1            JUROR COSGROVE:  I mean, I don't believe so.

2            THE COURT:  Well, I mean, some people believe that

3    they should be able to download music from any source that they

4    can acquire it and that it's fair game.  And that's not what

5    the law is.

6            So will you agree to follow the law that I give you

7    and listen to the evidence notwithstanding your experience as a

8    college student?

9            JUROR COSGROVE:  Yeah.

10           THE COURT:  All right.  Thank you, Mr. Cosgrove.

11           Anybody else?

12           JUROR COERR:  Juror number 8, Kimberly Coerr.  It

13   actually wasn't music, it was movies, it was my underage son

14   downloading illegal movies.

15           THE COURT:  All right.  So you got a notice?

16           JUROR COERR:  We had like, like a restriction on --

17   they slowed the speed, that's how I found out about it.  Like,

18   why the hell is my Internet so bad?  And it's because he was

19   downloading movies.  So he stopped.

20           THE COURT:  And who was the provider?

21           JUROR COERR:  Verizon Fios.

22           THE COURT:  And any reason why that experience would

23   make it difficult for you to be fair and impartial in this

24   case?

25           JUROR COERR:  No.

38

1          THE COURT:  All right.  Thank you, Mr. Coerr.

2          JUROR NEWHOUSE:  Juror number 34, Neil Newhouse.  A

3  decade or so more ago we had a lot of songs from Napster.  So

4  we received a few notices.

5          THE COURT:  All right.  And that was a different

6  version of how music was acquired.

7          JUROR NEWHOUSE:  Right.

8          THE COURT:  But it won't be the subject of this

9  lawsuit, but it may be referenced.  And any reason based on the

10  experience you had back in the day that you couldn't be fair

11  and impartial in this case?

12          JUROR NEWHOUSE:  No, Your Honor.

13          THE COURT:  All right.  Thank you, Mr. Newhouse.

14          All right, thank you.

15          Do any of you, or a family member, or someone close

16  to you have experience with copyrights or musical artists,

17  including yourself if you're a musical artist, personally or

18  for a company that you have worked for?

19          JUROR WING-BONICA:  Hannah Wing-Bonica, 55.  I have a

20  close friend who works for -- she's like an analyst for a music

21  copyright with a company based out of D.C.  I am blanking out

22  on the name of it, but she does that for a living.

23          THE COURT:  All right.  Anything that she has

24  communicated to you about the industry which you believe would

25  make it difficult for you to be fair and impartial here?

39

```
 1              JUROR WING-BONICA:  No.

 2              THE COURT:  All right.  Thank you, Mr. Wing-Bonica.

 3              JUROR COERR:  Again, Kimberly Coerr, number 8.  I am

 4    in the events industry, and I am very familiar with ASCAP, EMI,

 5    and paying the licensing fees and such like that.

 6              THE COURT:  Okay.  Any reason why that knowledge you

 7    couldn't put aside and decide this case just based on the

 8    evidence you hear and the law I give you?

 9              JUROR COERR:  No reason.

10              THE COURT:  Thank you, Ms. Coerr.

11              JUROR ROSENBERGER:  Number 42, Heather Rosenberger.

12    I negotiate copyright and IP.

13              THE COURT:  Okay.  Thank you, Ms. Rosenberger.

14              Mr. Patel.

15              JUROR PATEL:  Milin Patel, 36.  I'm a patent lawyer.

16    I took a course on copyrights.  I have it as a small part of my

17    job duties.

18              THE COURT:  Okay.  Any reason why you couldn't follow

19    the law that I give you, which may or may not be inconsistent

20    with your practice, and also listen to the evidence and decide

21    the case only on that?

22              JUROR PATEL:  No reason.

23              THE COURT:  All right.  Thank you, Mr. Patel.

24              JUROR NOLDE:  Juror 35, Susan Nolde.  My husband is

25    the director of post-production for Monumental Sports and
```

40

1    Entertainment.  So he does work with copyrighted music at

2    times.

3           THE COURT:  All right.  Any reason why the

4    discussions you have had with him would make it difficult for

5    you to be fair and impartial in this case, Ms. Nolde?

6           JUROR NOLDE:  No.

7           THE COURT:  Thank you.

8           JUROR PERLMUTTER:  Bernard Perlmutter, juror 37.  I

9    worked for 24 years for AFTRA, the American Federation of

10   Television and Radio Artists, in New York.  And we represented

11   recording artists.  And I was familiar with recording artists

12   and with labels.

13          THE COURT:  Okay.  And what was your -- what were

14   your job duties generally?

15          JUROR PERLMUTTER:  Well, I negotiated contracts when

16   I worked directly for AFTRA.  And then I was director of

17   operations for their health and retirement fund.

18          THE COURT:  All right.  Any reason why you couldn't

19   be fair and impartial in this case and decide it just on the

20   evidence you hear and the law that I give you?

21          JUROR PERLMUTTER:  No.

22          THE COURT:  All right.  Thank you, Mr. Perlmutter.

23          JUROR TREENE:  Juror 51, Eric Treene.  When I was a

24   law clerk, I drafted an opinion in a case involving a dispute,

25   a copyright dispute between two movie studios.

41

1          THE COURT:  All right.  How long ago was that?

2          JUROR TREENE:  That was now 25 years.

3          THE COURT:  All right.  Do you think you can put that

4    aside and decide the case just based on the evidence you hear

5    and the law that I give you today?

6          JUROR TREENE:  Yes, yes, Your Honor.

7          THE COURT:  Thank you, Mr. Treene.

8          Anyone else?

9          Do any of you have strong opinions, either positive

10   or negative, about music publishers, or record companies, or

11   copyright protection for music or the downloading of music

12   which would make it difficult for you to be fair and impartial

13   in this case?  Thank you.

14         Do any of you, or a relative, or a friend make a

15   portion of your livelihood from writing, or performing, or

16   selling, distributing, or managing the rights to music,

17   including licensing or royalties from music?

18         And I heard from one or more of you about licensing,

19   but anyone else who hasn't previously answered that related

20   question?  All right.

21         Have any of you heard or visited the Web sites

22   torrentfreak.com, arstechnica.com, or techdirt.com?

23         JUROR ARNOLD:  Number 1, Joseph Arnold.

24         THE COURT:  Yes, go ahead, sir.

25         JUROR ARNOLD:  I visited the Web site ARS Technica.

42

1    And I have heard of TorrentFreak.

2          THE COURT:  Do you recall what the purpose of that

3    visit was?

4          JUROR ARNOLD:  It was articles, reading articles.

5          THE COURT:  All right.  Thank you, sir.

6          Ms. Wing-Bonica.

7          JUROR WING-BONICA:  Hannah Wing-Bonica, 55.  Yes, I

8    do read ARS Technica, my husband does as well, just kind of

9    more like for technology articles, things that interest me.

10         THE COURT:  All right.  Thank you, Ms. Wing-Bonica.

11         Mr. Patel.

12         JUROR PATEL:  Also ARS Technica, read the articles.

13         THE COURT:  Okay.  Thank you.

14         JUROR KRAYER:  Juror number 29, Erin Krayer, also ARS

15   Technica.  I work in communications and social media.  So it's

16   one of the sites I have been to for articles.

17         THE COURT:  Thank you, Ms. Krayer.

18         I have got a few more here.  Have you heard or

19   visited any of the following Web sites?  ThePirateBay.  Kickass

20   Torrents.  PublicBT.  Or ExtraTorrent.  Or any of the other

21   torrent Web sites?  Anybody on the left?  Okay.

22         Mr. Cosgrove.

23         JUROR COSGROVE:  Yeah, I have.  Juror number 9, Ryan

24   Cosgrove.  I have visited PirateBay, BitTorrent.  I think I

25   used Kickass one time in the past.

43

1          THE COURT:  Okay.  Any reason why, as I said before,

2     you couldn't follow the law and the evidence that you hear and

3     decide the case on it?

4          JUROR COSGROVE:  No.

5          THE COURT:  All right.  Thank you, Mr. Cosgrove.

6          Anybody else?  Okay.

7          Do any of you use any of those sites I just

8     mentioned, or Gnutella, or Ares, or eDonkey to download music?

9          Have any of you used Internet file sharing, all

10    called peer-to-peer or P2P networking or computing, either

11    personally or in your business?

12         Mr. Mohan.

13         JUROR MOHAN:  Number 33, Manoj Mohan.  We use that

14    for our work, but obviously work-related stuff.

15         THE COURT:  All right.  Thank you, sir.

16         JUROR BUCHHOLZ:  Juror number 4, Paul Buchholz.  I

17    have to use it for work sometimes.

18         THE COURT:  All right.  Thank you, Mr. Buchholz.

19         Do any of you have -- any of you, I guess in the

20    past, or a member of your family, or a close friend worked at

21    the Federal Communications Commission, the FCC, or the Library

22    of Congress?

23         Have any of you heard of prior litigation or lawsuits

24    in which the recording industry either has been involved in

25    lawsuits with, for instance, Napster in the past, have any of

44

1    you heard or read about any of those lawsuits?

2           We have Mr. Treene, of course, who wrote an opinion.

3    But, Mr. Patel.

4           JUROR PATEL:  I probably read about most of them or

5    saw CLEs.

6           THE COURT:  Any reason why you can't be fair and

7    impartial here and decide this case just based on the evidence

8    you hear and the law that I give you?

9           JUROR PATEL:  No.

10          THE COURT:  Thank you, Mr. Patel.

11          Anyone else?

12          Mr. Treene, did you have anything in addition to

13   the -- was that your hand that was up?  I couldn't see.

14          JUROR TREENE:  Just I am generally aware and follow

15   those in the media.

16          THE COURT:  Right.  And any reason why you couldn't

17   disregard those and handle this case just based on what you

18   hear here and the law I give you?

19          JUROR TREENE:  No, Your Honor.

20          THE COURT:  Thank you, Mr. Treene.

21          All right.  Let me see counsel at the sidebar then.

22          You know what, I'm sorry, I have additional

23   questions, I missed a whole group of them.  Have a seat and we

24   will continue on.  Reading off of too many sheets this morning.

25          Do any of you have a problem seeing, or hearing, or

45

1  understanding the English language, or any other disability

2  which might make it difficult for you to hear or see or

3  understand the evidence as it's being put in?

4  JUROR BUCHHOLZ:  Juror number 4, Paul Buchholz.

5  THE COURT:  Yes, sir.

6  JUROR BUCHHOLZ:  I get migraines from the lights

7  which bother me.

8  THE COURT:  I am sorry to hear that.  And I

9  understand.  All right.  Thank you, Mr. Buchholz.  That I can't

10  cure with some amplifiers for hearing, I am afraid.

11  Have any of you served previously as a juror in a

12  criminal or civil case, or as a member of a grand jury in

13  either state or federal court?

14  Yes, Ms. Coerr.

15  JUROR COERR:  Coerr, Kimberly Coerr, juror 8.  I was

16  on a federal civil case.

17  THE COURT:  Okay.  And how long ago was that?

18  JUROR COERR:  Maybe 12 to 15 years ago.

19  THE COURT:  Okay.  And where was it?

20  JUROR COERR:  San Diego.

21  THE COURT:  All right.  Do you remember the type of

22  case it was?

23  JUROR COERR:  Yes, it was a lawsuit by some

24  individuals against San Diego County Sheriff's Office.

25  THE COURT:  All right.  And was the jury able to

1    reach a verdict in the case?

2              JUROR COERR:  Yes.

3              THE COURT:  All right.  Any reason why that

4    experience would make it difficult for you to be fair and

5    impartial here?

6              JUROR COERR:  No.  It's a good experience, everybody

7    should go through it.

8              THE COURT:  All right.  Thank you very much for

9    saying that.  All right, thank you.

10             JUROR CISIEWICZ:  Number 7, Melanie Cisiewicz.  I

11   actually served as a juror here about five years ago.

12             THE COURT:  All right.  Was it civil or a criminal

13   case?

14             JUROR CISIEWICZ:  Civil.  It was two insurance

15   companies.

16             THE COURT:  All right.  Was the jury able to reach a

17   verdict in the case?

18             JUROR CISIEWICZ:  Yes.

19             THE COURT:  All right.  Thank you, Ms. Cisiewicz.

20   I'm sorry, anything about that experience which would make it

21   difficult for you to be fair and impartial here?

22             JUROR CISIEWICZ:  No.

23             THE COURT:  Thank you.

24             JUROR ATKINSON:  Juror number 2, Cynthia Atkinson.

25   Probably about 25 years ago I served as a juror in Arlington

47

1    County, an embezzlement case.

2            THE COURT:  All right.  And was the jury able to

3    reach a verdict in that case, Ms. Atkinson?

4            JUROR ATKINSON:  No.

5            THE COURT:  The jury what, what they call hung?

6            JUROR ATKINSON:  A hung jury.

7            THE COURT:  It was a hung jury?

8            JUROR ATKINSON:  Yes.

9            THE COURT:  All right.  Anything about that

10   experience which would make it difficult for you to be fair and

11   impartial here?

12           JUROR ATKINSON:  No, sir.

13           THE COURT:  Thank you, Ms. Atkinson.

14           JUROR COURTIEN:  Juror number 10.  About five years

15   ago, Virginia state, Fairfax County, criminal case.  It was

16   dismissed for evidence.  And no effect.

17           THE COURT:  All right.  So you never got to

18   deliberate?

19           JUROR COURTIEN:  No.

20           THE COURT:  All right.  Thank you, Mr. Courtien.

21           JUROR TREENE:  Juror number 51, Eric Treene.  I was

22   on a criminal jury in Arlington County about 15 years ago.

23           THE COURT:  All right.  And was the jury able to

24   reach a verdict, Mr. Treene?

25           JUROR TREENE:  Yes, it was.

48

1           THE COURT:  All right.  Anything about that

2    experience which would make it difficult for you to be fair and

3    impartial here?

4           JUROR TREENE:  No, Your Honor.

5           THE COURT:  All right, thank you.

6           JUROR PERLMUTTER:  Bernard Perlmutter, juror 37.  I

7    was on a civil case in Brooklyn, New York, about 20 years ago.

8           THE COURT:  All right.  And were you able to reach a

9    verdict in the case?

10          JUROR PERLMUTTER:  Yes.

11          THE COURT:  Any reason why you couldn't be fair and

12   impartial here?

13          JUROR PERLMUTTER:  No.

14          THE COURT:  Thank you, Mr. Perlmutter.

15          Anyone else?

16          JUROR LIEBHABER:  Juror number 31, Richard Liebhaber.

17   1972, Stanford, Connecticut, burglary.  He changed his plea

18   when he saw the jury.

19          THE COURT:  All right.  And any reason why you

20   couldn't be fair and impartial here, Mr. Liebhaber?

21          JUROR LIEBHABER:  No.

22          THE COURT:  All right.  Thank you, sir.

23          JUROR FURNEAUX:  Juror 19, Pam Furneaux.  I served

24   twice in D.C., it was criminal, and dismissed; and in Fairfax

25   three years ago, civil, we reached a verdict.

49

1          THE COURT:  Okay.  And anything about those

2     experiences, Ms. Furneaux, which would make it difficult for

3     you to be fair and impartial here?

4          JUROR FURNEAUX:  No.

5          THE COURT:  All right, thank you.

6          Has any member of the panel ever served as an expert

7     witness for any party in a lawsuit, or as a fact witness?

8          All right, Mr. Courtien.

9          JUROR COURTIEN:  Not in court, but for arbitrations,

10    grievances.

11         THE COURT:  All right.  And, Mr. Courtien, anything

12    about that experience which would make it difficult for you to

13    be fair and impartial?

14         JUROR COURTIEN:  No, Your Honor.

15         THE COURT:  All right, thank you.  I think there was

16    another hand.

17         JUROR NEWHOUSE:  Juror 34, Neil Newhouse.  I did a

18    poll in a change of venue case for a murder case.

19         THE COURT:  Okay.  And so, did you wind up testifying

20    in court?

21         JUROR NEWHOUSE:  Yes, Your Honor.

22         THE COURT:  All right.  Anything about that

23    experience which would make it difficult for you to be fair and

24    impartial here?

25         JUROR NEWHOUSE:  No.

1          THE COURT:  All right.  Thank you, Mr. Newhouse.

2          JUROR WILLS:  Your Honor, juror 54, Chris Wills.  I

3     served as a prosecution witness in a court-martial at Fort

4     Leonard Wood, Missouri.

5          THE COURT:  All right.  How long ago was that, Mr.

6     Wills?

7          JUROR WILLS:  It was about five years ago, sir.

8          THE COURT:  All right.  And anything about that

9     experience which would make it difficult for you to be fair and

10    impartial here?

11         JUROR WILLS:  None at all.

12         THE COURT:  Thank you, Mr. Wills.

13         JUROR REID:  Juror number 40, William Reid.  I served

14    as an expert witness in a criminal case involving money

15    laundering, I testified as a money laundering expert.

16         THE COURT:  How long ago was that, Mr. Reid?

17         JUROR REID:  That was probably in 1995, 1996.

18         THE COURT:  All right.  Really any reason why you

19    couldn't be fair and impartial here based on that prior

20    experience?

21         JUROR REID:  No, Your Honor.

22         THE COURT:  All right.  Thank you, Mr. Reid.

23         Mr. Liebhaber.

24         JUROR LIEBHABER:  Juror number 31, Richard Liebhaber

25    again.  2005 Denver federal, an income tax debate.  And I

51

1    served as an expert witness for the Government.

2              THE COURT:  For the Government.  All right.  Anything

3    about that experience which you believe would make it difficult

4    for you to be a juror in this case?

5              JUROR LIEBHABER:  No.

6              THE COURT:  All right, thank you.

7              All right.  Do you or any member of your family or

8    close friend have any legal training or background?

9              We have Mr. Patel, who is a lawyer.  And Mr. Treene,

10   who is a lawyer as well.

11             Anyone else?

12             JUROR ROSENBERGER:  Heather Rosenberger, 42.  I

13   negotiate contracts.

14             THE COURT:  All right.  Thank you.

15             Mr. Wills.

16             JUROR WILLS:  Yes, sir.  Juror 54, Chris Wills.  I

17   was an Army military policeman for 21 years.

18             THE COURT:  All right.  Any reason why that would

19   make it difficult for you to be fair and impartial in this

20   case, sir?

21             JUROR WILLS:  Not at all.

22             THE COURT:  All right, thank you.

23             Mr. Reid, your law enforcement background.

24             JUROR REID:  Law enforcement.  I have a juris

25   doctorate degree from George Mason University School of Law.

52

1    And I served the Supreme Court of Virginia as a magistrate,

2    supervising magistrate in Northern Virginia, and I also heard

3    cases as a magistrate.

4                THE COURT:  All right.  For any of particular -- for

5    Fairfax County or --

6                JUROR REID:  So I was supervisory magistrate for the

7    Northern Virginia region, which encompasses the four judicial

8    districts in Northern Virginia:  Arlington, Alexandria, Prince

9    William County, and Fairfax County.

10                THE COURT:  All right.  And were they mostly

11   misdemeanor matters?

12                JUROR REID:  So in the state court system,

13   magistrates hear probable cause and they hold bail hearings.

14   And so, I did both of those.

15                THE COURT:  Okay.  And any reason why that experience

16   would make it difficult for you to be fair and impartial here?

17                JUROR REID:  No.

18                THE COURT:  All right.  Thank you, Mr. Reid.

19                JUROR KREMPIN BRIDGMAN:  Juror number 30, Jennifer

20   Krempin Bridgman.  I attended law school.  For about ten years

21   I worked in-house in legal marketing.

22                THE COURT:  In what kind of work?

23                JUROR KREMPIN BRIDGMAN:  Legal marketing.  And now in

24   a consulting capacity.

25                THE COURT:  Okay.  And any reason why that would make

1  it difficult for you to be fair and impartial and decide the

2  case just based on the law I give you?

3         JUROR KREMPIN BRIDGMAN:  No, sir.

4         THE COURT:  All right.  Thank you, Ms. Bridgman.

5         JUROR LOMBARDO:  Yes, sir, number 32, Rhonda

6  Lombardo.  My husband is an FBI agent who administers polygraph

7  tests.

8         THE COURT:  All right.  Any reason why that would

9  make it difficult for you to be fair and impartial here?

10         JUROR LOMBARDO:  No, sir.

11         THE COURT:  All right.  Thank you, Ms. Lombardo.

12         JUROR TINSLEY:  Number 48, Sarah Tinsley.  I

13  negotiate contracts.  And my sister is a paralegal.

14         THE COURT:  All right.  And again, any reason why you

15  couldn't be fair and impartial here in this case?

16         JUROR TINSLEY:  No.

17         THE COURT:  Thank you, Ms. Tinsley.

18         JUROR WING-BONICA:  Hannah Wing-Bonica, 55.  I have a

19  friend who works for a law firm and he focuses on GDPR.

20         THE COURT:  GDPR.  What does that stand for?

21         JUROR WING-BONICA:  So it's kind of like the privacy

22  data law that is kind of coming in, make sure that you kind of

23  follow that.  It has to do with like cookies and things like

24  that.

25         THE COURT:  All right.  Does any of the information

54

1  that he has shared with you make it difficult for you to be

2  fair and impartial here?

3         JUROR WING-BONICA:  No.

4         THE COURT:  All right, thank you.

5         JUROR FANG:  Juror number 18, Duanming Fang.  My son

6  is a lawyer, works for SEC.

7         THE COURT:  All right.  Mr. Fang, what does he focus

8  on at his work, do you know?

9         JUROR FANG:  I don't know exactly what he is working

10 on.  Looks like he works on the security department.

11        THE COURT:  All right.  Any reason why any

12 conversations you have had with your son would make it

13 difficult for you to be fair and impartial in this case?

14        JUROR FANG:  No, not at all.

15        THE COURT:  All right.  Thank you, Mr. Fang.

16        Mr. Perlmutter.

17        JUROR PERLMUTTER:  Bernard Perlmutter, juror 37.

18 From 1986 to 2000 I negotiated collective bargaining agreements

19 for AFTRA in New York, primarily for broadcast talent.  And I

20 backed up some people who worked under the commercial radio

21 code and the radio recorded commercials contract and sound

22 recordings.

23        THE COURT:  All right.  Any reason why that would

24 make it difficult for you to be fair and impartial here?

25        JUROR PERLMUTTER:  No.

55

```
 1              THE COURT:  Thank you, Mr. Perlmutter.

 2              Anyone else?

 3              THE COURT:  Mr. Khan.

 4              JUROR KHAN:  Yes, sir.  My daughter have her last

 5   year in law college.  And she also working --

 6              THE COURT:  I am sorry, we lost some of that.  Your

 7   daughter is in law school?

 8              JUROR KHAN:  Yes, yes, Your Honor.

 9              THE COURT:  Okay.

10              JUROR KHAN:  And she also working Fairfax law firm, I

11   am not sure what the name is, but she is working there

12   part-time.

13              THE COURT:  All right.  And any reason based on

14   anything that she has told you that would make it difficult for

15   you to be fair and impartial here, sir?

16              JUROR KHAN:  Not at all, sir.

17              THE COURT:  All right.  Thank you, Mr. Khan.

18              JUROR BENNETT:  Juror number 3, Nicholas Bennett.  My

19   dad works for the FBI, he does 508 compliance.

20              THE COURT:  He does what kind of compliance?

21              JUROR BENNETT:  Section 508 compliance.

22              THE COURT:  All right.  Is there anything that he has

23   told you about his work that would make it difficult for you to

24   be fair and impartial here, Mr. Bennett?

25              JUROR BENNETT:  No, Your Honor.
```

56

1            THE COURT:  All right, thank you.

2            Has anyone, you or anyone in your immediate family

3  ever participated in a lawsuit as a party or in another

4  capacity?  I know we have some witnesses who were involved in

5  litigation.  But anyone else who has not previously answered?

6            Yes, Mr. Reid.

7            JUROR REID:  Number 40.  I was a plaintiff in a

8  personal injury lawsuit several years ago.

9            THE COURT:  All right.  And Was that resolved to your

10  satisfaction?

11            JUROR REID:  Yes, it was.

12            THE COURT:  So it wouldn't have any effect on your

13  ability to be fair and impartial here?

14            JUROR REID:  No, it would not.

15            THE COURT:  All right.  Thank you, Mr. Reid.

16            JUROR NOLDE:  Number 35, Susan Nolde.  It was also a

17  personal injury lawsuit from a traffic accident.

18            THE COURT:  Okay.  Was it resolved to your

19  satisfaction?

20            JUROR NOLDE:  Yes, it was fine.

21            THE COURT:  And any reason why you couldn't be fair

22  and impartial here based on that?

23            JUROR NOLDE:  No.

24            THE COURT:  All right, thank you.

25            JUROR TREENE:  Yes, Eric Treene, juror 51.  I was a

57

1    defendant along with several other DoJ officials in a lawsuit

2    by someone who didn't like a brief we had filed in a case.  And

3    it was a crank, one of these crank suits, and eventually was

4    dismissed.

5              THE COURT:  Any lasting effect that would affect your

6    ability to be fair and impartial here, Mr. Treene?

7              JUROR TREENE:  No, Your Honor.

8              THE COURT:  All right, thank you.

9              COURT SECURITY OFFICER:  One more, Judge.

10             JUROR TINSLEY:  Juror number 48, Sarah Tinsley.  My

11   mother was a plaintiff in a case against my sister.  So it was

12   family court.

13             THE COURT:  All right.  And any -- that's always

14   unfortunate.  But is there any reason why you couldn't be fair

15   and impartial here based on that experience?

16             JUROR TINSLEY:  No.

17             THE COURT:  All right.  Thank you, Ms. Tinsley.

18             All right, anyone else?

19             All right.  Have any of you formed or expressed any

20   opinion as to how you expect this lawsuit will conclude?

21             Are any of you sensible of any bias or prejudice

22   against either the plaintiff or the defendant in this case?

23             If you're selected to sit on this case, will you be

24   able to render a verdict solely on the evidence presented in

25   the context of the law that I give you in my instructions and

```
1    disregard any other ideas, notions, or beliefs about the law

2    you may have encountered in the past in reaching your verdict?

3               All right.  All right, let me see counsel at sidebar

4    then.

5               NOTE:  A sidebar discussion is had between the Court

6    and counsel out of the hearing of the jury panel as follows:

7    AT SIDEBAR

8               THE COURT:  Are there additional questions that you

9    want me to ask?  I think I covered the terrain.

10              MR. ELKIN:  No, Your Honor.

11              THE COURT:  Okay.  All right.  Let's do --

12              MR. OPPENHEIM:  I have one, Your Honor, for one of

13   veniremen.  Mr. Patel, I believe is his name.

14              THE COURT:  Patel.

15              MR. OPPENHEIM:  Yes, the HP lawyer.  And whether in

16   any of his firm experience he has ever -- his firms have ever

17   represented Cox.

18              THE COURT:  You know, you know more about him than I

19   do.  He didn't say anything about prior firms.  He said he is

20   an intellectual property lawyer.

21              MR. OPPENHEIM:  For Hewlett-Packard.

22              THE COURT:  Right.

23              MR. OPPENHEIM:  I'm guessing like most lawyers who go

24   in-house at HP, since I know a bunch of them, are usually in

25   private practice first.  So I just wanted to make sure there is
```

1    no connection there.

2              THE COURT:  Okay.

3              MR. OPPENHEIM:  But that would be the only follow-up,

4    Your Honor, that I would offer.

5              THE COURT:  I will ask Mr. Patel that question after

6    we're done here.

7              MR. OPPENHEIM:  That's fine.

8              THE COURT:  All right.  Let's go on to excuse for

9    cause.  I will go down the ones that I think are clear, and

10   then we will -- I mean, we are going to have enough jurors to

11   use our strikes and still have eight or nine leftover at the

12   time even if we excuse everybody.  So I think that's the good

13   news.

14             Mr. Arnold has a prepaid trip.  I think it's next

15   week, right?  And I would propose excusing him for that trip.

16             Is there any objection to that?

17             MR. ELKIN:  No.

18             THE COURT:  Okay, we will strike Mr. Arnold.

19             Ms. Atkinson has a doctor's appointment on the 9th,

20   and I propose excusing her.  Any objection?

21             MR. ELKIN:  That's fine.

22             THE COURT:  Mr. Buchholz has an appointment on the

23   10th to begin a new therapy with his psychiatrist, and

24   indicated he is out of medication as of the 11th.  I think I

25   pushed him a little bit, but I think we should excuse him as

60

1   well.  Any objection?

2           MR. ELKIN:  No, Your Honor.

3           MR. OPPENHEIM:  No.

4           THE COURT:  Number 7, Ms. Cisiewicz, had a number of

5   reasons that she wanted to be excused, but including her

6   husband's surgery, he is a fire fighter who was injured on

7   Thanksgiving, and she also has kids at home.

8           Any objection to excusing number 7?

9           MR. ELKIN:  No, Your Honor.

10          MR. OPPENHEIM:  No, Your Honor.

11          THE COURT:  All right.  Mr. Cosgrove has prepaid

12  travel beginning I think Thursday through Friday, and he asked

13  to be excused.

14          Any objection to excusing him?

15          MR. OPPENHEIM:  No.

16          MR. ELKIN:  No.

17          THE COURT:  Ms. Delorenzo is number 13.  She is

18  pregnant and has a scheduled visit with an RN.  And she also

19  has two young kids.

20          Any objection to excusing her?

21          MR. ELKIN:  No, Your Honor.

22          MR. OPPENHEIM:  No.

23          THE COURT:  Number 14, Ms. Dinh, has a medical

24  appointment, and I really didn't get a sense of when that was

25  or whether --

61

```
1            MR. OPPENHEIM:  In my note, she said that it was
2    tomorrow and it took a long time to get the appointment.  I
3    think that's what she said.
4            THE COURT:  All right, any objection to excusing her?
5            MR. ELKIN:  No.
6            THE COURT:  Number 17, Mr. Embrey, his mother is very
7    ill and he is the primary caregiver for her, doesn't think he
8    can get his brother up here from Williamsburg.  I would propose
9    we excuse Mr. Embrey.
10            Any objection?
11            MR. ELKIN:  No objection.
12            MR. OPPENHEIM:  No.
13            THE COURT:  Number 20, Ms. Gibson, is moving to
14    Fredericksburg on the 10th.  That's an excuse that I haven't
15    heard in a long time, but I don't know what to say about that.
16            What do you all feel about that?
17            MR. ELKIN:  I didn't hear enough of a hardship, Your
18    Honor.
19            MR. BUCHANAN:  Distance is pretty far if she moves
20    down there.
21            THE COURT:  In the middle of the case, that's a good
22    point.  It is still within our district, but it takes forever
23    to get her.
24            Is there any objection to excusing her?
25            MR. OPPENHEIM:  Was there a sense of whether -- I
```

```
 1   can't remember whether we asked her if that could be deferred

 2   or not.

 3           THE COURT:  I did not ask her because she -- you

 4   know, she is young, I think she's single.  She is a teacher.

 5   Yeah, she is single.  So I didn't ask any follow-up.

 6           MR. OPPENHEIM:  That's fine.

 7           THE COURT:  All right, let's excuse her.

 8           Number 22, Mr. Henriquez, has exams.  I propose

 9   excusing him.

10           MR. OPPENHEIM:  Yes.

11           MR. ELKIN:  Yes, Your Honor.

12           THE COURT:  Number 26, Ms. Jin, is a child

13   psychologist who has appointments and said she could not

14   rearrange them.  Any objection to excusing her?

15           MR. ELKIN:  No.

16           MR. OPPENHEIM:  I guess the only question, if you're

17   treating children, it's usually going to be after school, but

18   there is --

19           THE COURT:  Well, that's why I asked her that

20   question.

21           MR. OPPENHEIM:  You did ask her that, but I am not

22   sure I understood the answer.  But, okay, Your Honor.

23           THE COURT:  Well, she also said she has young

24   children.

25           MR. OPPENHEIM:  Yes, small kids I think she said.
```

63

1              THE COURT:  32, Ms. Lombardo, has a doctor's

2    appointment which she said she couldn't rearrange.  I can't

3    remember the reason for it.  32.

4              MR. OPPENHEIM:  It was kind of an odd answer.  She

5    said, yeah, I have doctors' appointments this week, but it

6    wasn't very particularized.

7              Oh, I guess she is the one that said she had pain

8    without her appointments.

9              THE COURT:  All right.  Any objection to excusing

10   her?

11             MR. BUCHANAN:  Kidney stones.

12             THE COURT:  She had the kidney stones?

13             MR. OPPENHEIM:  No, she wasn't the kidney stones.

14   That was somebody else.

15             MR. BUCHANAN:  My bad.

16             MR. OPPENHEIM:  The question is whether she can

17   manage it.

18             THE COURT:  All right, let's excuse her.

19             33 is Mr. Mohan, and he says he has a business trip

20   scheduled for I think later this week that he can't reschedule

21   and it took him a long time to get the appointment.

22             So any objection to excusing him?

23             MR. ELKIN:  No objection.

24             MR. OPPENHEIM:  No objection.

25             THE COURT:  Mr. Newhouse also has a trip coming up

1    shortly which is prepaid.  Any objection to excusing him?

2              MR. ELKIN:  No objection, Your Honor.

3              MR. OPPENHEIM:  No.

4              THE COURT:  Number 42 is Heather Rosenberger, who has

5    a prepaid trip between the 12th and the 14th.  Any objection to

6    excusing her?

7              MR. ELKIN:  No objection, Your Honor.

8              THE COURT:  44 is Mr. Sandoval, who is leaving on the

9    18th to Europe with a business trip prepaid.  He is on the cusp

10   there.  I don't know whether you want to take a chance or not.

11   We have enough jurors.

12             So any objection to excusing him?

13             MR. OPPENHEIM:  Tell the jurors they have to decide

14   within a short period of time.

15             THE COURT:  No.

16             MR. ELKIN:  That's fine, Your Honor.

17             THE COURT:  45 is Ms. Shaafi, who is a dentist.  And

18   she says she is the sole dentist in her practice and she has

19   got appointments coming up.  So I would propose that we excuse

20   her.

21             Any objection?

22             MR. ELKIN:  No, Your Honor.

23             MR. OPPENHEIM:  That's fine, Your Honor.

24             THE COURT:  48 is Sarah Tinsley, who has a settlement

25   coming up in the next several days on a home.  And I think I

1  asked her whether she could do it later in the day, but I

2  didn't get any answer that satisfied me.  I don't know whether

3  you want -- I mean, I think that is a legitimate cause.

4          But is there any objection to excusing her?

5          MR. OPPENHEIM:  No, Your Honor.

6          MR. ELKIN:  No objection.

7          THE COURT:  53 is Carmen Velazquez, who has the

8  kidney stones.  Any objection to excusing her?

9          MR. OPPENHEIM:  No.

10          MR. ELKIN:  No, Your Honor.

11          THE COURT:  Okay.  That's all that I have on my list.

12          Mr. Oppenheim.

13          MR. OPPENHEIM:  I think -- did we skip Mr. Tran, who

14  said he had a doctor's appointment on the 9th and then jury

15  duty on the 18th, and he said he didn't know how to be in two

16  places at once?

17          THE COURT:  I can get him excused from the 18th jury

18  duty.  I didn't understand what the doctor's appointment --

19  whether that was an important appointment or not.  Maybe that's

20  because I failed to ask the question.

21          So let's leave Mr. Tran in the mix and we will work

22  with him.  You keep looking.

23          Mr. Elkin.

24          MR. ELKIN:  Thank you, Your Honor.  I think juror

25  number 10, Steven Courtien, said that he had an arbitration

66

1    hearing next week.

2            THE COURT:  Yeah.  And I didn't sense that that

3    wasn't something that he could get around.  But maybe I wasn't

4    appreciating that.  I guess they are set way in advance and

5    they are essentially like trials.  He is a union rep.

6            Do you want to excuse him?  I don't have any

7    objection to that.

8            MR. OPPENHEIM:  We don't object.

9            THE COURT:  I think that's best.  Okay, let's excuse

10   number 10.

11           MR. OPPENHEIM:  Did we skip number 12, who I

12   thought -- Mr. Delaware, who said he is self-employed and has

13   appointments?

14           THE COURT:  Yes.  And I didn't get the sense -- did

15   he say he was self-employed?

16           MR. OPPENHEIM:  I think that's what he said, yeah.

17   At least that's what I have in my notes.

18           MR. ZEBRAK:  He is the lacrosse coach and a trainer.

19           THE COURT:  Yes.  He and Mr. Cosgrove were standing

20   strong.

21           MR. BUCHANAN:  That's the LAX connection.

22           THE COURT:  All right.  Any objection to excusing Mr.

23   Delaware?

24           MR. ELKIN:  No.

25           THE COURT:  Okay, let's excuse Mr. Delaware.

67

1              The only other one I had my list at all was Mr. Khan

2    had indicated he had some medical appointments, but he wasn't

3    very specific.  And I didn't get a sense that there was any

4    that were a problem.  So I would not propose to excuse him.

5              MR. MORRISSY:  I am sorry, which number?  I am lost

6    in my papers.

7              THE COURT:  27.

8              MR. OPPENHEIM:  Right.  Was he the one who said he

9    had a vacation planned.

10             THE COURT:  Yes, but it was later after the holidays.

11   It was after Christmas.

12             MR. OPPENHEIM:  Is that right?

13             THE COURT:  I think.

14             All right.  Anyone else?

15             MR. OPPENHEIM:  One moment, Your Honor.

16             MR. ELKIN:  This is not for cause yet?

17             THE COURT:  This is for cause.

18             MR. ELKIN:  I do have one.

19             THE COURT:  Okay.

20             MR. ELKIN:  37, Bernard Perlmutter.  He worked for

21   AFTRA, so he was representing artists and labels and

22   negotiating contracts.  And --

23             THE COURT:  You think that's too close to the action?

24             MR. OPPENHEIM:  Well, wait a minute, AFTRA is adverse

25   to the labels, they don't --

68

1          THE COURT:  I understand.

2          MR. OPPENHEIM:  It's a union for mostly television

3    performers.  They do have -- they end up negotiating adversely

4    to the record companies from time to time.

5          I think what he said was he negotiates health and

6    retirement benefit contracts.

7          THE COURT:  During this more recent part of his

8    career.

9          MR. ELKIN:  I think he did say that he negotiates

10   contracts for artists --

11         THE COURT:  Earlier on.

12         MR. OPPENHEIM:  But not for the labels.

13         THE COURT:  Well, he said he could be fair and

14   impartial, and I am not going to strike him.  But, obviously,

15   he's somebody you might look at in your strikes.  But he was

16   clear, he was open, he answered that he could be fair and

17   impartial.  And so, I am not going to strike him for cause.

18         Anybody else, Mr. Elkin?

19         MR. ELKIN:  No, Your Honor.

20         THE COURT:  Okay.  Mr. Oppenheim?

21         MR. OPPENHEIM:  No, Your Honor.  Thank you.

22         THE COURT:  I forgot, 35 is Ms. Nolde.  She said she

23   has a paid vacation leaving this Friday and not home until

24   Monday evening.

25         Any objection to excusing her?

69

1              MR. ELKIN:  No.

2              MR. OPPENHEIM:  No, Your Honor.

3              THE COURT:  All right.  Why don't we take ten minutes

4    so you can get your thoughts together, and then we will pick

5    our jury.  I will tell them, please, don't discuss the case and

6    please come back in ten minutes, and we'll get our jury.  And

7    we'll probably take a break after we get our jury in for a

8    lunch break.  Okay?

9              Yes, sir.  You each get four strikes.

10             MR. OPPENHEIM:  So when will you select the eight?

11   Is it when we come back in ten minutes, is that the process?

12             THE COURT:  Yes.

13             MR. OPPENHEIM:  Sorry.

14             THE COURT:  We will randomly call eight names and

15   we'll begin the process.

16             MR. OPPENHEIM:  Thank you, Your Honor.

17             THE COURT:  All right.  Thank you, counsel.

18             MR. ELKIN:  Thank you.

19             NOTE:  The sidebar discussion is concluded; whereupon

20   the case continues before the jury panel as follows:

21   BEFORE THE JURY PANEL

22             THE COURT:  All right.  Thank you for your patience,

23   ladies and gentlemen.

24             We are going to take a brief recess and then come

25   back and begin our jury selection.  So, please, don't discuss

1  the case among yourselves while you're on break.  Please, all

2  of you come back in ten minutes, and we'll be able to finish

3  the jury selection at that time.  All right?

4          So we're in recess.

5          NOTE:  At this point a recess is taken; at the

6  conclusion of which the case continues in the presence of the

7  jury panel as follows:

8  JURY PANEL IN

9          THE COURT:  All right, we are going to begin the

10  selection process for our jury.  So, please, we don't have the

11  Virginia Lottery ping-pong balls going to choose from, but I

12  assure you that this is a random selection and you're not being

13  targeted for some unjust cause.

14          So when you hear your name, please come forward.

15          THE CLERK:  Ladies and gentlemen, as I call your

16  name, would you please come forward and have a seat in the jury

17  box as instructed by Joe, our Court Security Officer.

18          Juror number 27, Jamil Khan.  Juror number 39, Fred

19  Reger.  Juror number 18, Duanming Fang.  Juror number 6, Erica

20  Calhoun.  Juror number 24, Debra Hetmanek.  Juror number 5,

21  Michael Calabrese.  Juror number 23, Dana Herr.  And juror

22  number 29, Erin Krayer.

23          NOTE:  The lawyers exercise their strikes.

24          THE CLERK:  The following jurors may return to their

25  seat in the courtroom.  Juror number 6, Erica Calhoun.  Juror

71

1   number 27, Jamil Khan.  And juror number 18, Duanming Fang.

2           NOTE:  The above-named jurors return to their seats

3   in the courtroom.

4           THE CLERK:  Ladies and gentlemen, as I call your

5   name, would you please come forward and have a seat in the jury

6   box as instructed by Joe, our Court Security Officer.

7           Juror number 36, Milin Patel.  Juror number 55,

8   Hannah Wing-Bonica.  And juror number 30, Jennifer Krempin

9   Bridgman.

10           NOTE:  The lawyers exercise their strikes.

11           THE CLERK:  The following jurors may return to their

12   seat in the courtroom.  Juror number 36, Milin Patel.  And

13   juror number 55, Hannah Wing-Bonica.

14           NOTE:  The above-named jurors return to their seats

15   in the courtroom.

16           THE CLERK:  Ladies and gentlemen, as I call your

17   name, would you please come forward and have a seat in the jury

18   box as instructed by Joe, our Court Security Officer.

19           Juror number 19, Pamela Furneaux.  Juror number 25,

20   Diana Holbrook.

21           NOTE:  The lawyers exercise their strikes.

22           THE CLERK:  The following juror may return to their

23   seat in the courtroom.  Juror number 19, Pamela Furneaux.

24           NOTE:  The above-named juror returns to her seat in

25   the courtroom.

72

1          THE CLERK:  As I call your name, will you please come

2     forward and have a seat in the jury box as instructed by Joe,

3     our Court Security Officer.

4          Juror number 46, Jennifer Simonds.

5          NOTE:  No further strikes are taken.

6          THE COURT:  Counsel, any objection to the composition

7     of the jury?

8          MR. OPPENHEIM:  Not from plaintiffs, Your Honor.

9          MR. ELKIN:  Not from defendants, Your Honor.

10         THE COURT:  All right, thank you.

11         THE CLERK:  Jurors, would you now stand, raise your

12     right hand, and respond by stating "I shall" after the oath is

13     administered.

14         NOTE:  The jury for the case is sworn.

15         THE COURT:  All right, Joe, do our jurors need to go

16     to a different courtroom?

17         COURT SECURITY OFFICER:  No, they can go home or

18     return to work, but they need to call the 866 number after

19     6 p.m. this evening.

20         THE COURT:  Before you leave, let me thank you for

21     coming in.  As I said earlier today, our system of justice is

22     the best in the world, and it is so because of each of you who

23     bring your experience and knowledge and make the important

24     decisions that are made here in our courthouses all across

25     America.

73

1        And so, I thank you very much for coming in.  I know

2   I will hear the collective sigh of relief except for Ms. Coerr

3   as you leave to get to the elevator.  But I promise you, for

4   those who have not had the opportunity to serve on a jury, it

5   is a very difficult but rewarding and important event, and I

6   hope that you will have the opportunity to serve near in the

7   future.

8        Enjoy your holidays, and thank you again.  You are

9   excused now.

10       NOTE:  Those jurors not selected for jury duty are

11  excused and leave the courtroom and the jury selection process

12  is completed.

13  -------------------------------------------------

                         PARTIAL TRANSCRIPT CONCLUDED

14

15

16

17

18

19

20

21       I certify that the foregoing is a true and

22     accurate transcription of my stenographic notes.

23

24

                    /s/  Norman B. Linnell

25          Norman B. Linnell, RPR, CM, VCE, FCRR