# Exhibit C

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

```
-------------------------------:
                               :
SONY MUSIC ENTERTAINMENT, et al.,:
             Plaintiffs,       :
                               :
    -vs-                       :   Case No. 1:18-cv-950
                               :
                               :
COX COMMUNICATIONS, INC., et al.,:
             Defendants.       :
                               :
-------------------------------:
```

HEARING ON MOTIONS

October 24, 2019

Before:  Liam O'Grady, USDC Judge

APPEARANCES:

Matthew J. Oppenheim, Scott A. Zebrak, Jeffrey M. Gould,
and Andrew Guerra, Counsel for the Plaintiffs

Thomas M. Buchanan, Michael S. Elkin, Jennifer A. Golinveaux,
Thomas Patrick Lane, and Diana Hughes Leiden,
Counsel for the Defendants

1    But it's not -- in a statutory damages case, it is not an

2    affirmative defense, Your Honor.

3            With that, I will leave it to Mr. Zebrak.

4            THE COURT:  All right.

5            MR. ZEBRAK:  Thank you, Your Honor.  Very briefly, I

6    would like to briefly address each of the pair of arguments

7    that Cox raised with respect to statutory damages.

8            THE COURT:  Go ahead.

9            MR. ZEBRAK:  The first argument is what by shorthand

10   we reference as the album/track argument that they make.  Which

11   is that if multiple tracks were ever on the same album and they

12   are in this case, that means there is only one award of

13   statutory damages.

14           Quite frankly, Your Honor, this is not a serious

15   argument.  And in a tell of how insubstantial the argument is,

16   Cox in its initial briefing and then again here today didn't

17   brief Your Honor on what the law or the facts are.

18           THE COURT:  Well, Mr. Elkin cited the MP3 case and a

19   second case, right?

20           MR. ZEBRAK:  Sure.  But by that let me explain what I

21   mean.  So, first of all, in the BMG case Your Honor recognized

22   correctly that nothing in the Copyright Act bars a plaintiff

23   from recovering a statutory damage award for a sound recording

24   issued as an individual track simply because that plaintiff at

25   some point in time also included that sound recording as part

1    of an album or other compilation.

2             THE COURT:  Right.  The duplication argument.  Go

3    ahead.

4             MR. ZEBRAK:  Right.  But that was not in Cox's

5    initial papers or its argument today.  And I wished to bring it

6    before the Court because Your Honor wasn't the first court to

7    reach that correct result, nor the last court since.

8             The very MP3 Tunes case they rely on from the Second

9    Circuit reaches the same result that Your Honor did, as did the

10   LimeWire case in New York as well.  And the reason for that is

11   that what constitutes a work is different than registration.

12   Registration, you know, there are all sorts of different ways

13   that works are protected by registrations.  And Cox tries to

14   conflate the two.

15            And Your Honor and other courts, including the Second

16   Circuit, have correctly recognized that where a work is

17   separately distributed as a track, not just as part of an

18   album, separate statutory damage awards are appropriate.

19            Now, rather than address that head on today or in its

20   briefing, Cox ignored it.  And instead focuses on what some

21   other courts look to, which is whether a work has independent

22   economic value.

23            Now, we pointed out that these works do have

24   independent economic value, but that's not the sole basis for

25   our argument.  It's the fact that these tracks and these

1    compositions -- well, their argument applies with respect to

2    sound recordings.  But the point, Your Honor, is that these

3    sound recordings have been commercialized individually.  Now,

4    that's the evidence of the case.  We put in detailed

5    declarations to that effect.

6          Now, if there wasn't deposition testimony about it,

7    it's because Cox didn't choose to focus on that.  Winston &

8    Strawn is well aware that in the digital age these tracks have

9    been commercialized individually.  And there is a number of

10   courts that have essentially said that a per-track award is

11   appropriate on this ground.

12         And it's not just our testimonial evidence, which is

13   not -- though they address this just in a footnote in their

14   reply brief, we have multiple paragraphs from our declarants in

15   our opposition to their summary judgment motion explaining that

16   these were commercialized individually.

17         So let me move to the second of the pair of

18   arguments.  I know time is tight.

19         Mr. Elkin referred to our arguments as tortured and

20   largely dismissed them, but notably without addressing them,

21   Your Honor.  And that I think is reflective of the fact that

22   our argument, we believe, is a plain reading of the statutory

23   text and actually one that, though Cox asks this Court to sort

24   of blindly follow the Second Circuit's non-dispositive

25   decision, the Second Circuit didn't address our argument

1 either.  Which is that the plain statutory text indicates in

2 the singular, the copyright owner makes an election.

3        And we think the plain reading of the statute is that

4 the all parts of a derivative work or one work limitation only

5 applies where it's a single owner that owns the derivative work

6 and the underlying work.  And I will explain why.

7        First of all, Congress obviously knows how to write

8 in the singular or the plural.  And five times in section 504

9 it uses the singular.

10        Now, it's not just that.  I noticed this earlier

11 today, but actually in 504(b) it's not just the singular or

12 referring to the infringer, but it refers to him or her.  Which

13 is further reenforcing that we're talking about a singular

14 here.  It's hard to pluralize him or her with just the addition

15 of an "s."

16        Now, when we made this argument, Cox has never cited

17 a court that rejects our argument.  Instead, it cites 1 U.S.C.

18 1, which says, unless the context indicates otherwise, words

19 can be pluralized or from pluralized made to the singular in

20 interpreting a statute.

21        Now, we submit, Your Honor, that the context clearly

22 indicates otherwise.  It's not -- you know, the context might

23 not indicate otherwise if there was an interchangeable use of

24 singular or not, but it used it five times.  So that's the

25 first thing.

1          The second point, Your Honor, is that to pluralize

2     "copyright owner" here gives it a very different meaning.  Now,

3     I understand pluralizing a word, if it just allows for various

4     permutations of the same meaning, but it is a clearly different

5     meaning if in a case like this, when two works are independent

6     -- two works have been infringed, we get one award, that's a

7     very different meaning and not one that we think should just be

8     shooed under the rug based on a statutory provision that says

9     that you have to pay attention to whether the context indicates

10    otherwise.

11          And the third reason why the context indicates

12    otherwise, Your Honor, is something that Judge Rakoff

13    recognized in the TV Tunes decision that we cite in our papers

14    that the MP3 Tunes case disagreed with.  Cox refers to our

15    argument in this regard as a policy argument.  It's not a

16    policy argument.  It's an argument for why the context

17    indicates otherwise.

18          And it's as follows.  The statutory damage provision

19    talks about this election being made and all parts of a

20    derivative work being one work for statutory damage purposes.

21    It talks about it in the context of a single action.  Cox

22    acknowledges that we could avoid the draconian anti-copyright

23    results that totally stifles the ability of a copyright owner's

24    incentive to create, and all the fundamental logic behind the

25    Copyright Act, that draconian result that they advocate for

1    here, we could avoid that result by bringing separate cases.

2    This is the absurdity that Judge Rakoff pointed out.

3          Now, if Congress intended for something like -- well,

4    first of all, Congress wouldn't -- why would Congress intend

5    for a result that you could separately obtain awards that you

6    couldn't obtain in a single case?  It's anti-judicial

7    efficiency.  It stifles peoples' ability to protect their

8    works.  There is a million reasons why.

9          So for those reasons, we argue that our plain text

10   reading is -- ought not to be dismissed as a tortured reading.

11   It is a correct one, notwithstanding that the Second Circuit

12   didn't address this issue.

13         And, quite frankly, the Second Circuit, what it did,

14   it laid out the statutory provisions.  Then what it did, it

15   proceeded to cite a treatise, Patry, which simply cited the

16   derivative work provision.  And then it cites legislative

17   history.

18         And Your Honor is well aware about the utility of

19   legislative history in a matter like this.  And the legislative

20   history is sparse, there is not much there.  And to the extent,

21   you know, one looks at the legislative history -- and we don't

22   think you need to because the plain text, as the rules of

23   construction command, we think is in our favor.  Especially in

24   our favor when you recognize that it is an obligation of

25   construction to give meaning to each of the disparate language,

123

1   and ours is the only one that does that.

2          But if you look at the legislative history, what we

3   think is much more likely is that what Congress had in mind was

4   some scenario where -- and I'm speculating, obviously -- is a

5   scenario where you have, you know, a software company that

6   maybe has three versions of a piece of software, and they own

7   the work and the various components in it.

8          There is no indication that Congress had in mind

9   owners of different types of works, let alone sound recordings

10  and musical works.  And we think, again, you don't even need to

11  look at that because the statute is clear.

12         Thank you.

13         THE COURT:  Thank you.

14         MR. ELKIN:  Your Honor, may I have 60 seconds?

15         THE COURT:  You may have three minutes.

16         MR. ELKIN:  All right, thank you.  I'll try to make

17  good use of it.

18         First of all, shockingly, I actually did read the

19  Branch case.

20         THE COURT:  Yeah, I --

21         MR. ELKIN:  And I can tell you that the Branch case

22  confirms that even if spreadsheets qualify as business records,

23  such business records are inadmissible if they are summaries

24  under FRE 1006 and the underlying data is not made available.

25         And the Sprint Nextel case also confirms, as it