# Exhibit A



# Lex Machina
## Copyright Litigation Report 2016



Lex Machina™
a LexisNexis® Company

*by Brian C. Howard, J.D./M.A.,*
*Legal Data Scientist & Director of Analytics Services*

Published January 2017

## Executive Summary

Lex Machina's Copyright Litigation Report demonstrates how Legal Analytics®can reveal trends and business strategies in copyright litigation. In today's data-driven world, knowing these trends and strategies can provide concrete advantages in planning strategy and better understanding the cost/benefit trade-offs of litigation.

This report, Lex Machina's second comprehensive study of U.S. copyright litigation, breaks down the thousands of copyright cases filed in recent years to showcase how this data can be used to inform litigation strategy: from detailed analysis of different judicial districts useful to forum planning, to timing data on trial and injunctions that can drastically improve budgeting, as well as top parties and firms for firm marketing and outside counsel selection. With extra charts focusing on more recent trends, this report both supplements and expands on Lex Machina's first copyright report.

The new data-driven, customized insights offered by Legal Analytics work together with traditional legal research and hard-earned experience to give firms and companies an edge in litigation. For example, in settlement negotiations, legal research or experience may furnish case law limiting damages or setting an appropriate amount but Legal Analytics can quantify the likelihood, timing, and amount of previously granted damages, creating a stronger negotiating position and a more accurate understanding of the risks and exposure behind it.

As anyone who has ever done legal research knows, a good search eliminates noise leaving one to focus on the relevant portion of the results. When it comes to copyright litigation, Lex Machina's platform makes this easy: our automated processes separate copyright litigation by identifying anonymous internet file sharing allegations and tagging those cases, allowing users to easily include or exclude them with a single click. The dynamics of these file sharing cases differ so significantly from other copyright litigation that any analysis must separate them in order to provide meaningful insight.

This report leverages that file sharing tag, excluding these cases from the body of the report and focusing on them only in a section at the end.

**Lex Machina's Copyright Litigation Report surveys and summarizes the key trends and insights over the last five years.**

**Based on the same data driving Lex Machina's platform, this report examines district court filing rates, top parties and firms, timing to remedy, case findings and resolutions, and damages to showcase the power of Legal Analytics .**

**Key insights and areas of focus for traditional (excluding filesharing) copyright litigation include:**

### Districts

- Copyright litigation is heavily concentrated in the top districts:  the Central District of California had 4,412 cases from 2009 to 2016 Q3, 25.4% of all such cases, and the Southern District of New York  had 2,029 cases (11.7%) in the same timeframe.

- Since 2015, these two districts have only increased in popularity, with Central District of California having 30.4% and the Southern District of New York 14.5% of the cases filed.

### Parties

- Top plaintiffs in copyright litigation include the music industry (Broadcast Music, Sony/ATV Songs, Songs of Universal, Rondor Music International, EMI, and more), publishing (Warner-Tamerlane), software (Microsoft), fashion (Coach), and fabrics (Star Fabrics).

- Several of the top plaintiffs in the more recently filed cases include:  Live Face on Web LLC is a video internet advertising firm,  FameFlynet and BWP Media, both photo licensing entities, and Design Basics LLC, a firm that licenses architectural house plans.

- Top defendants are primarily retailers (Ross Stores, TJX (TJ Maxx), Amazon, Burlington Coat Factory, Rainbow USA, Wal-mart, J.C. Penny, Forever 21, Sears, Nordstroms, and Target), along with music groups (Universal Music and Sony Music Entertainment), and publishing / education (Pearson Education).

### Law Firms

- Law firms for plaintiffs include many firms unfamiliar to a national audience:  Doniger Burroughs, a California fashion, art, and entertainment boutique leads with an incredible 1,079 cases, more than double the next firm.  Their leading clients include L.A. Printex Industries, Star Fabrics, United Fabrics International, and Unicolors Inc.

- Defense-side law firms share more evenly, with Call & Jensen (205 cases) leading over Davis Wright Tremaine (151 cases) and Greenberg Traurig (121 cases).

- In the more recently filed cases, Fox Rothschild (39 cases, a San Francisco firm) and Conkle Kramer & Engel (35 cases, a Santa Monica firm) also appear after Call & Jensen and Davis Wright Tremaine.

### Findings, Judgments, and Case Resolutions

- Fair use is overwhelmingly adjudicated on summary judgment; when the issue reaches trials more often than not the result is a finding of "no fair use."

- The Central District of California and the Southern District of New York have issued findings in more cases on the issue of fair use than any other courts, although S.D.N.Y. has found fair use more often than C.D.Cal.

- The majority of infringement cases finding infringement do so as a result of default, few other findings are made as a result of default.  While 12.1% of infringement cases finding infringement happen via summary judgment, 4.7% happen at trial.

- When ownership / validity is successfully contested (resulting in a finding of no ownership / invalidity), it's at summary judgment in 70.4% of the cases, but at trial in only 12.8% of

the cases.  More often than not, findings of ownership / validity happen as a result of consent judgment (50.0%).

- About a two thirds of cases end with settlement.  Claimant wins are about 10 times as likely as claim defendants wins (20.9% vs 2.7%), driven largely by the number of default judgments.

**Timing**

- The median time to temporary restraining order (TRO) is 8 days, for a preliminary injunction 3.9 months, and for permanent injunction 14.4 months.

**Damages**

- Few of the copyright cases filed ever reach damages.  Of 17,994 cases terminated between 2009 and 2016 Q3, 23.6% have reached a merits decision.  Less than half of those generated an award of compensatory damages (9.0% of the cases filed), but only about 1.5% were not via default or consent judgments.

- Default judgments ($608m, 41.8% of damages awarded) and consent judgments ($509m, 35.0% ) dominate damages for copyright infringement.  Juries have awarded more damages than judges ($245m to $92m).

- Top parties winning damages are mainly movies and entertainment (Disney, Twentieth Century Fox, Columbia Pictures, Warner Brothers, Universal, Paramount Pictures, etc. along with one software company (Quantlab).

**Key insights into file sharing litigation include:**

- File sharing cases comprised only a small fraction of the cases in 2011, then grew to outnumber other copyright cases around 2014-2015, and have declined in 2016 to represent only 38% of cases filed.

- File sharing cases are concentrated most highly in the Northern District of Illinois (1,299 cases since 2009), followed by the District of New Jersey (721 cases) and the District of Colorado (691 cases).  In 2016, the Eastern District of California has risen to become the favored district (with 168 cases in the first three quarters of 2015).

- Malibu Media, an erotic website, leads the list of plaintiffs with 5,878 cases, more than 15 times as many cases as the next most litigious plaintiff.  Other plaintiffs include movie production companies and music / recording companies.  Although Malibu Media has filed fewer new cases in 2016 than in previous years, it remains the leading filer of file sharing cases.

- Maddox, Hoppe Hoofnagle & Hafey, Nicoletti & Associates, Schulz Law, Fiore & Barber, the Kotzker Law Group, Lipscombe, Eisenberg & Baker, and William Tabot all represent Malibu media and lead among plaintiff firms in file sharing cases.

This report provides a starting point for understanding the impact of Legal Analytics on the business and practice of copyright law.  It sheds light on the big trends in copyright litigation.  But the full power of Legal Analytics is revealed when users engage with the platform to produce actionable and strategic insights tailored to their particular context and circumstance.  When users have the ability to "twist the dials," their results provide a competitive advantage in landing clients, winning cases, and closing deals by making data-driven decisions.

# Table of Contents

**Copyright Cases and File Sharing Cases**

Figure 1: Copyright and file sharing cases over time, Jan. 1, 2011 to Sept. 30, 2016................1
Figure 2: Copyright and file sharing cases over time (pecentage), Jan. 1, 2011 to Sept. 30, 2016....1

**Districts**

Figure 3: Top districts, by cases filed  Jan. 1, 2009 to Sept. 30, 2016................................3
Figure 4: Top districts (pie) by cases filed Jan. 1, 2009 to Sept. 30, 2016........................4
Figure 5: Top districts over time, by cases filed Jan. 1, 2011 to Sept. 30, 2016................4
Figure 6: Recent top districts by cases filed Jan. 1, 2015 to Sept. 30, 2016......................5
Figure 7: Recent top districts by cases filed Jan. 1, 2015 to Sept. 30, 2016......................5

**Parties and Law Firms**

Figure 8: Top plaintiffs by cases filed Jan. 1, 2009 to Sept. 30, 2016............................6
Figure 9: Recent top plaintiffs by cases filed Jan. 1, 2015 to Sept. 30, 2016....................6
Figure 10: Top defendants (excluding John Doe and other unknown defendants) by cases filed
        Jan. 1, 2009 to Sept. 30, 2016................................................................7
Figure 11: Recent top defendants (excluding John Doe and other unknown defendants) by cases
        filed Jan. 1, 2015 to Sept. 30, 2016.........................................................7
Figure 12: Top law firms representing plaintiffs, by cases filed Jan. 1, 2009 to Sept. 30, 2016....8
Figure 13: Recent top law firms representing plaintiffs, by cases filed Jan. 1, 2015 to Sept. 30,
        2016.........................................................................................8
Figure 14: Top law firms representing defendants, by cases filed Jan. 1, 2009 to Sept. 30, 2016....10
Figure 15: Recent top law firms representing defendants, by cases filed Jan. 1, 2015 to Sept. 30,
        2016.........................................................................................10

**Findings and Judgments**

Figure 16: Findings by judgment in cases terminated Jan. 1, 2009 to Sept. 30, 2016)..............11
Figure 17: Judgment by findings in cases terminated Jan. 1, 2009 to Sept. 30, 2016)..............12
Figure 18: Table of findings and judgments, cases terminated Jan. 1, 2009 to Sept. 30, 2016).....13
Figure 19: Case resolutions, in cases terminated Jan. 1, 2009 to Sept. 30, 2016).................13
Figure 20: Fair use findings, in cases terminated Jan. 1, 2009 to Sept. 30, 2016)................14

**Timing**

Figure 21: Preliminary injunctions granted  from Jan. 1, 2009 to Sept. 30, 2016..................15
Figure 22: Permanent injunctions granted  from Jan. 1, 2009 to Sept. 30, 2016....................16
Figure 23: Temporary restraining orders granted  from Jan. 1, 2009 to Sept. 30, 2016............16

**Damages**

Figure 24: Damages by judgment type (damages awarded Jan. 1, 2009 to Sept. 30, 2016).............17
Figure 25: Top parties by damages won (damages awarded Jan. 1, 2009 to Sept. 30, 2016, parties
        with $100m or more)..........................................................................18

Figure 26: Top parties by damages won (excluding default and consent judgments, damages awarded Jan. 1, 2009 to Sept. 30, 2016, parties with $25m or more)⸻18
Figure 27: Table of damages by judgment type (damages awarded Jan. 1, 2009 to Sept. 30, 2016)⸻18

## File Sharing

Figure 28: Top districts by cases filed Jan. 1, 2009 to Sept. 30, 2016⸻19
Figure 29: Top districts over time, by cases filed Jan. 1, 2009 to Sept. 30, 2016⸻19
Figure 30: Recent top districts by cases filed Jan. 1, 2016 to Sept. 30, 2016⸻20
Figure 31: Top plaintiffs, by cases filed Jan. 1, 2009 to Sept. 30, 2016⸻20
Figure 32: Recent top plaintiffs, by cases filed Jan. 1, 2016 to Sept. 30, 2016⸻20
Figure 33: Top law firms representing plaintiffs, by cases filed Jan. 1, 2009 to Sept. 30, 2016⸻21
Figure 34: Top law firms representing plaintiffs, by cases filed Jan. 1, 2016 to Sept. 30, 2016⸻21
Figure 35: Findings and judgments (cases terminated Jan. 1, 2009 to Sept. 30, 2016)⸻21
Figure 36: Case resolutions (cases terminated Jan. 1, 2015 to Sept. 30, 2016)⸻22
Figure 37: Top parties by damages awarded (damages awarded Jan. 1, 2009 to Sept. 30, 2016), parties with $50k or more⸻22
Figure 38: Damages by judgment type (damages awarded Jan. 1, 2009 to Sept. 30, 2016)⸻22
Figure 39: Table of damages by judgment type (damages awarded Jan. 1, 2015 to Sept. 30, 2016)⸻24

## Lex Machina's Data, Methodology, and Terminology⸻25

## Using Boxplots to Understand Timing⸻26

# Copyright Cases and File Sharing Cases

*Figure 1: Copyright and file sharing cases over time, Jan. 1, 2011 to Sept. 30, 2016*



*Figure 2: Copyright and file sharing cases over time (pecentage), Jan. 1, 2011 to Sept. 30, 2016*



Note: All charts reflect copyright litigation in the U.S. District Courts.

A large proportion of copyright litigation consists of cases involving allegations of internet file sharing.

File sharing cases are defined as copyright cases involving claims of infringement for BitTorrent/P2P file sharing brought against John Doe or anonymous defendants' or their IP addresses or Internet Service Providers (ISP).

These cases differ substantially from other, more traditional copyright litigation:  they are often brought against large numbers of defendants, are distributed across districts differently, and have vastly different dynamic surround settlement and damages.  Separating these two different kinds of cases allows practitioners to focus on the set they care about and exclude data from the other which may otherwise skew the analysis.

File sharing cases comprised only a small fraction of the cases in 2011, then grew to outnumber other copyright cases around 2014-2015, and have declined in 2016 to represent only 38% of cases filed.

Analysis of file sharing cases is confined to its own section at the end of this report; the rest of the report excludes these cases.

Note:  Charts in this section reflect copyright cases filed January 1, 2011, to September 30, 2016.

# Districts

*Figure 3: Top districts, by cases filed  Jan. 1, 2009 to Sept. 30, 2016*



Copyright litigation is heavily concentrated in the top districts:  the Central District of California  had 4,412 cases from 2009 to 2016 Q3, 25.4% of all such cases, and the Southern District of New York  had 2,029 cases (11.7%) in the same timeframe.  No other district has had more than 1,000 cases filed since 2009.  Since 2015, these two districts have only increased in popularity, with Central District of California having 30.4% and the Southern District of New York 14.5% of the cases filed.

The spikes in litigation have largely been driven by increases in the Central District of California, although the most recent has occurred largely in the Southern District of New York.  In Q3 of 2012, Warner Brothers filed 41 cases.  In contrast, the spike in Q2 2014 was not driven by any single plaintiff.

Textile pattern litigation has risen greatly:  looking at four leading plaintiffs in the space (Star Fabrics, Unicolors, L.A. Printex, and United Fabrics Int'l.) case filings have increased:  from 67 in 2011, 62 in 2012, 87 in 2013, and 106 in 2014, to 147 in 2015, and 139 in 2016 through September 30.  Since 2009, these two parties have filed 749 cases.  These companies are generally represented by the Doniger Burroughs law firm, causing that firm to be the top copyright plaintiffs firm as discussed below.

Note:  Charts in this section reflect copyright cases filed January 1, 2011, to September 30, 2016.

*Figure 4: Top districts (pie) by cases filed Jan. 1, 2009 to Sept. 30, 2016*



*Figure 5: Top districts over time, by cases filed Jan. 1, 2011 to Sept. 30, 2016*



*Figure 6: Recent top districts by cases filed Jan. 1, 2015 to Sept. 30, 2016*



*Figure 7: Recent top districts by cases filed Jan. 1, 2015 to Sept. 30, 2016*



# Parties and Law Firms

*Figure 8: Top plaintiffs by cases filed Jan. 1, 2009 to Sept. 30, 2016*



*Figure 9: Recent top plaintiffs by cases filed Jan. 1, 2015 to Sept. 30, 2016*



Note:  Charts in this section reflect copyright cases filed January 1, 2009, to September 30, 2016.

*Figure 10: Top defendants (excluding John Doe and other unknown defendants) by cases filed Jan. 1, 2009 to Sept. 30, 2016*



*Figure 11: Recent top defendants (excluding John Doe and other unknown defendants) by cases filed Jan. 1, 2015 to Sept. 30, 2016*



*Figure 12: Top law firms representing plaintiffs, by cases filed Jan. 1, 2009 to Sept. 30, 2016*



*Figure 13: Recent top law firms representing plaintiffs, by cases filed Jan. 1, 2015 to Sept. 30, 2016*



The top plaintiffs in copyright litigation provide insight into the industries seeking enforcement of their copyrights:  music (Broadcast Music, Sony/ATV Songs, Songs of Universal, Rondor Music International, EMI, and more), publishing (Warner-Tamerlane), software (Microsoft), fashion (Coach), and fabrics (Star Fabrics).  Copyright infringement of the movie/film industry tends to occur over the internet, so these cases to fall under the 'file sharing' category.  MJ Publishing Trust became Sony / ATV Publishing, and is jointly owned by Michael Jackson's estate and Sony.

In 2010, the leading plaintiff was Righthaven LLC, a company formed to pursue copyright infringement actions on behalf of newspapers and which gained notoriety by suing online posters of news clippings.  In June of 2011, Chief U.S. District Judge for Nevada Roger Hunt held that Righthaven did not own the copyrights and lacked standing to bring its suits (Order on Motion to Dismiss, Case 2:10-cv-01356 Dkt. 116, D.Nev., June 14, 2011); the company was sanctioned shortly thereafter for misleading the courts.  Righthaven collapsed and became insolvent later in 2011.

Several of the top plaintiffs in the more recently filed cases include:  Live Face on Web LLC (a video internet advertising firm) FameFlynet and BWP Media (both photo licensing entities) and Design Basics LLC (a firm that licenses architectural house plans).

> Top plaintiffs include companies in the music industry, software, and fashion.  Broadcast Music has filed the most cases each year since 2009 except in 2010.  Top defendants include retailers, music groups and publishers.

Top defendants are primarily retailers (Ross Stores, TJX (TJ Maxx), Amazon, Burlington Coat Factory, Rainbow USA, Wal-mart, J.C. Penny, Forever 21, Sears, Nordstroms, and Target), along with music groups (Universal Music and Sony Music Entertainment), and publishing / education (Pearson Education).

Law firms for plaintiffs include many firms unfamiliar to a national audience:  Doniger Burroughs, a California fashion, art, and entertainment boutique leads with an incredible 1,079 cases, more than double the next firm.  Their leading clients include L.A. Printex Industries, Star Fabrics, United Fabrics International, and Unicolors Inc.  The Sanders law firm (357 cases) represents BWP Media USA and FameFlynet.  The J Andrew Coombs Law Offices, another California firm, represents Disney, Warner Brothers, Twentieth Century Fox, and DC Comics among others, with 321 cases. The firm in tenth place, One, is not a typo but a law firm in Orange County specializing in IP and entertainment law.  National plaintiff firms include Perkins Coie (183 cases) and Bryan Cave (116 cases).

Defense-side law firms share more evenly, with Call & Jensen (205 cases) leading over Davis Wright Tremaine (151 cases) and Greenberg Traurig (121 cases).  In the more recently filed cases, Fox Rothschild (39 cases, a San Francisco firm) and Conkle Kramer & Engel (35 cases, a Santa Monica firm) also appear after Call & Jensen and Davis Tremaine Wright.

*Figure 14: Top law firms representing defendants, by cases filed Jan. 1, 2009 to Sept. 30, 2016*



*Figure 15: Recent top law firms representing defendants, by cases filed Jan. 1, 2015 to Sept. 30, 2016*



# Findings and Judgments

*Figure 16: Findings by judgment in cases terminated Jan. 1, 2009 to Sept. 30, 2016)*



**Judgment Type**
- Consent Judgment
- Default Judgment
- Judgment on the Pleadings
- Summary Judgment
- Trial
- JMOL

Using Lex Machina, you can drill down into the data shown here for findings, judgments, and resolutions (as well as the damages data in the next section) by any number of other criteria, including judges or courts, parties, particular kinds of cases (e.g. cybersquatting or declaratory judgment), law firms and lawyers, various date ranges, and much more.

For more on what a "finding" is, see the Data, Methology, and Terminology section at the back of the report!

*Figure 17: Judgment by findings in cases terminated Jan. 1, 2009 to Sept. 30, 2016)*



Note: percentage labels for small slices may be omitted in this and the previous figure.
Charts in this section reflect findings made between January 1, 2009, and September 30, 2016.

*Figure 18: Table of findings and judgments, cases terminated Jan. 1, 2009 to Sept. 30, 2016)*

| | Consent Judgment | Default Judgment | Judgment on the Pleadings | Summary Judgment | Trial | JMOL |
|---|---|---|---|---|---|---|
| **Ownership / Validity** | 112 cases | 27 cases | 1 cases | 80 cases | 36 cases | 4 cases |
| **No Ownership / Validity** | 3 cases | 8 cases | 7 cases | 88 cases | 16 cases | 4 cases |
| **Fair Use Defense** | 1 cases | 2 cases | 4 cases | 46 cases | 7 cases | |
| **No Fair Use Defense** | 2 cases | | 1 cases | 33 cases | 17 cases | 1 cases |
| **Infringement** | 459 cases | 1,514 cases | 4 cases | 319 cases | 124 cases | |
| **No Infringement** | 22 cases | 17 cases | 29 cases | 372 cases | 63 cases | 4 cases |
| **License or Equitable Defense** | 2 cases | 1 cases | 9 cases | 99 cases | 9 cases | 1 cases |
| **No License or Equitable Defense** | 1 cases | | | 53 cases | 12 cases | 1 cases |

*Figure 19: Case resolutions, in cases terminated Jan. 1, 2009 to Sept. 30, 2016)*



*Figure 20: Fair use findings, in cases terminated Jan. 1, 2009 to Sept. 30, 2016)*



Legal Analytics show how differently the various counts and defenses at issue in copyright litigation are resolved.

For example, fair use is overwhelmingly adjudicated on summary judgment; when the issue reaches trials more often than not the result is a finding of "no fair use." The Central District of California and the Southern District of New York have issued findings in more cases on the issue of fair use than any other courts, although S.D.N.Y. has found fair use more often than C.D.Cal.

The majority of infringement cases finding infringement  do so as a result of default, few other findings are made as a result of default.  While 12.1% of infringement cases finding infringement happen via summary judgment, 4.7% happen at trial.

When ownership / validity is successfully contested (resulting in a finding of no ownership / invalidity), it happens at summary judgment in 70.4% of the cases, but at trial in only 12.8% of the cases.  More often than not, findings of ownership / validity happen as a result of consent judgment (50.0%).

Licensing and other equitable defenses are overwhelmingly determined by summary judgment (more than 80% of the findings regardless of direction) and only sometimes at trial  (7.4% for a positive findings and 17.9% for a negative one).  Judgments on the pleadings are findings of no license or equitable defense about 56.9% of the time.

About a two thirds of cases end with settlement.  More strikingly, claimant wins are about 10 times as likely as claim defendants wins (20.9% vs 2.7%), driven largely by the number of default judgments.

# Timing

*Figure 21: Preliminary injunctions granted  from Jan. 1, 2009 to Sept. 30, 2016*



Understanding timing data is one of the best uses of Legal Analytics - knowing the probability and distribution of when an injunction will be decided informs better decision making: clients can know when their bills will rise and fall, lawyers can calendar their schedules with greater confidence, and  budgets accurately account for the costs.

These charts show the median time to an event (the middle number between the shaded boxes).  The median represents the middle value, where as many took longer as shorter, and serves as useful single-figure average.  The median time to temporary restraining order (TRO) is 8 days, for a preliminary injunction 3.9 months, and for permanent injunction 14.4 months.

Where the median lies in relation to the edges of the boxes also provides useful data.

For example in looking at the preliminary injunction chart, the median of 3.9 months lies much closer to the top of the box (1.7 months) than the bottom (8.7) months.  This means that the odds of getting a preliminary injunction are greatest early on:  fastest half of injunctions are issued in less than about 4 months while the next quarter of injunctions are spread out over a more than 4.5 months, and the final quarter over even more time.

A savvy practitioner then knows to counsel expecting a decision on preliminary injunction in about 3-4 months (knowing that the odds draw longer each day afterwards) with only a 25% chance of the decision taking longer than 8-9 months.

Note: Case timing reflects cases reaching an injunction, TRO, or trial (respectively) between January 1, 2009 and September 30, 2016.  Only one time per case per type included (the earliest).

*Figure 22: Permanent injunctions granted from Jan. 1, 2009 to Sept. 30, 2016*

*Figure 23: Temporary restraining orders granted from Jan. 1, 2009 to Sept. 30, 2016*





# Damages

Few of the copyright cases filed ever reach damages.  Of 17,994 cases terminated between 2009 and 2016 Q3, 23.6% have reached a merits decision.  Less than half of those generated an award of compensatory damages (9.0% of the cases filed), but only about 1.5% were not via default or consent judgments.

Default judgments ($608m, 41.8% of damages awarded) and consent judgments ($509m, 35.0% ) dominate damages for copyright infringement.  Juries have awarded more damages than judges ($245m to $92m).

Top parties winning damages are mainly movies and entertainment (Disney, Twentieth Century Fox, Columbia Pictures, Warner Brothers, Universal, Paramount Pictures, etc. along with one software company (Quantlab).

Excluding default and and consent judgments, the list of top winners includes Oracle and Foundry Networks (later acquired by Brocade), plus music labels (including many EMI entities).

The public performance license damages category has produced few and small awards; however, the theory of actual damages and infringer's profits has garnered about $27.3m from judges and just under $156.7m from juries.

| | | |
|---|---|---|
| Cases terminated 2009 - 2016Q3 | 17,994 | |
| Cases terminated 2009 - 2016Q3 on the merits | 4,247 | 23.6% of terminated cases |
| Cases terminated 2009 - 2016Q3 on the merits with compensatory damages awarded | 1,636 | 9.0% of terminated cases |
| Cases terminated 2009 - 2016Q3 on the merits with compensatory damages awarded (other than via consent or default judgment) | 264 | 1.5% of terminated cases |

*Figure 24: Damages by judgment type (damages awarded Jan. 1, 2009 to Sept. 30, 2016)*



Note: Lex Machina considers as "Judge" damages awarded by judicial action (e.g. at summary judgment, judgment as a matter of law, judgment on the pleadings, etc.).

*Figure 25: Top parties by damages won (damages awarded Jan. 1, 2009 to Sept. 30, 2016, parties with $100m or more)*



*Figure 26: Top parties by damages won (excluding default and consent judgments, damages awarded Jan. 1, 2009 to Sept. 30, 2016, parties with $25m or more)*



*Figure 27: Table of damages by judgment type (damages awarded Jan. 1, 2009 to Sept. 30, 2016)*

| Damages Type | Consent Judgment | Default Judgment | Judge | Jury Trial |
|---|---|---|---|---|
| **Statutory Damages (Copyright)** | $740,016<br>21 cases | $60,411,763<br>637 cases | $11,563,842<br>92 cases | $3,292,275<br>16 cases |
| **Statutory Damages - Willful (Copyright)** | $25,746,500<br>17 cases | $373,030,938<br>476 cases | $42,548,109<br>54 cases | $51,696,250<br>25 cases |
| **Actual Damages & Infringer's Profits** | $1,757,003<br>14 cases | $31,912,104<br>89 cases | $27,328,247<br>27 cases | $156,652,899<br>40 cases |
| **Public Performance License (ß 504d)** | $9,473<br>3 cases | $38,766<br>2 cases | | |
| **Other / Mixed Damage Types** | $480,316,450<br>210 cases | $142,482,950<br>175 cases | $10,673,426<br>20 cases | $32,892,522<br>17 cases |
| **(Combined non-statutory CR damages)** | $487,044,283<br>245 cases | $196,592,286<br>1,247 cases | $149,026,974<br>391 cases | $189,545,420<br>56 cases |
| **Attorneys' Fees** | $4,931,771<br>28 cases | $21,099,231<br>956 cases | $88,295,995<br>248 cases | |
| **Costs** | $29,586<br>11 cases | $1,059,235<br>663 cases | $22,729,306<br>258 cases | |

Note: Compensatory damages exclude costs and fees.

# File Sharing

*Figure 28: Top districts by cases filed Jan. 1, 2009 to Sept. 30, 2016*



File sharing cases are defined as copyright cases involving claims of infringement for BitTorrent/P2P file sharing brought against John Doe(s), anonymous defendants, their IP addresses, or Internet Service Providers (ISP).

*Figure 29: Top districts over time, by cases filed Jan. 1, 2009 to Sept. 30, 2016*



*Figure 30: Recent top districts by cases filed Jan. 1, 2016 to Sept. 30, 2016*

*Figure 31: Top plaintiffs, by cases filed Jan. 1, 2009 to Sept. 30, 2016*

*Figure 32: Recent top plaintiffs, by cases filed Jan. 1, 2016 to Sept. 30, 2016*



*Figure 33: Top law firms representing plaintiffs, by cases filed Jan. 1, 2009 to Sept. 30, 2016*



*Figure 34: Top law firms representing plaintiffs, by cases filed Jan. 1, 2016 to Sept. 30, 2016*



*Figure 35: Findings and judgments (cases terminated Jan. 1, 2009 to Sept. 30, 2016)*

| | Consent Judgment | Default Judgment | Judgment on the Pleadings | Summary Judgment | Trial |
|---|---|---|---|---|---|
| **Ownership / Validity** | 34 cases | 5 cases | | 1 cases | |
| **No Fair Use Defense** | | | | 1 cases | |
| **Infringement** | 49 cases | 254 cases | 1 cases | 3 cases | 1 cases |
| **No Infringement** | | 1 cases | | 1 cases | |
| **No License or Equitable Defense** | | | | 1 cases | |

*Figure 36: Case resolutions (cases terminated Jan. 1, 2015 to Sept. 30, 2016)*



*Figure 37: Top parties by damages awarded (damages awarded Jan. 1, 2009 to Sept. 30, 2016), parties with $50k or more*

| Party Name | Total Damages | Cases |
|---|---|---|
| Malibu Media, LLC | $5,088,124 | 118 |
| Zambezia Film (Pty.) Ltd | $330,750 | 3 |
| Patrick Collins, Inc. | $174,500 | 7 |
| AF Holdings LLC | $166,500 | 6 |
| CP Productions, Inc. | $150,000 | 1 |
| Cobbler Nevada, LLC | $126,250 | 20 |
| Good Man Productions, Inc. | $100,000 | 4 |
| Dallas Buyers Club, LLC | $76,000 | 24 |
| Manny Film LLC | $67,407 | 4 |
| Purzel Video GmbH | $65,250 | 9 |
| Voltage Pictures, LLC | $53,750 | 13 |
| Glacier Films (USA), Inc. | $51,250 | 7 |

*Figure 38: Damages by judgment type (damages awarded Jan. 1, 2009 to Sept. 30, 2016)*



**File sharing cases - those against anonymous internet defendants for P2P or bittorrent sharing of copyrighted material - follow different dynamics than other copyright cases.  For example, more than 90% of file sharing cases terminate with settlement.**

File sharing cases - those against anonymous internet defendants for P2P or bittorrent sharing of copyrighted material - follow different dynamics than other copyright cases.

File sharing cases are concentrated most highly in the Northern District of Illinois (1,299 cases since 2009), followed by the District of New Jersey (721 cases) and the District of Colorado (691 cases). In 2016, the Eastern District of California has risen to become the favored district (with 168 cases in the first three quarters of 2016).

Malibu Media, an erotic website, leads the list of plaintiffs with 5,878 cases, more than 15 times as many cases as the next most litigious plaintiff.  Other plaintiffs include movie production companies and music / recording companies.  Although Malibu Media has filed fewer new cases in 2016 than in previous years, it remains the leading filer of file sharing cases.

Maddox, Hoppe Hoofnagle & Hafey, Nicoletti & Associates, Schulz Law, Fiore & Barber, the Kotzker Law Group, Lipscombe, Eisenberg & Baker, and William Tabot all  represent Malibu media and lead among plaintiff firms in file sharing cases.

Prenda Law, sanctioned for its antics including "cottage-industry lawsuits," misrepresentation, fraud on the court, and "blatant lies" * - also appears among the top plaintiffs.

These cases are nearly frequently decided on default or consent judgments; summary judgments are rare and trials even more rare.  Malibu Media has had the only infringement trial in a file sharing case since 2009.

Unsurprisingly, over 90% of file sharing cases settle - a much higher figure than for other copyright cases (65.4%).

Top winners of damages awards include movie production companies.

A majority of damages awarded in file sharing cases comes from default judgments ($7.0m in default judgments vs $.7m in consent judgments and only about $100,000 from judges).

* Sanctions Order, Judge Wright, Case No. 2:12-cv-08333 Dkt. 130 (N.D. Cal., May 6, 2013).

*Figure 39: Table of damages by judgment type (damages awarded Jan. 1, 2015 to Sept. 30, 2016)*

| Damages Type | Consent Judgment | Default Judgment | Judge |
|---|---|---|---|
| **Statutory Damages (Copyright)** | $81,500<br>4 cases | $3,183,357<br>174 cases | $1,500<br>2 cases |
| **Statutory Damages - Willful (Copyright)** | $364,250<br>4 cases | $2,901,924<br>72 cases | $112,500<br>1 cases |
| **Other / Mixed Damage Types** | $53,900<br>7 cases | $22,750<br>4 cases | $7,000<br>1 cases |
| **(Combined non-statutory CR damages)** | $229,381<br>14 cases | $894,688<br>225 cases | $22,516<br>7 cases |
| **Attorneys' Fees** | $167,981<br>6 cases | $819,199<br>223 cases | $12,195<br>4 cases |
| **Costs** | $7,500<br>1 cases | $52,739<br>98 cases | $3,321<br>5 cases |

# Lex Machina's Data, Methodology, and Terminology

This report draws on data from Lex Machina's proprietary intellectual property litigation database. Although some of our data is derived from litigation information publicly available from PACER (the federal court system's document website), Lex Machina applies additional layers of intelligence to bring consistency to, and ensure the completeness of, the data. Beyond the automation, key areas of Lex Machina's data are either human-reviewed or hand-coded by a dedicated team of attorneys to ensure accuracy.

Cases are first identified as copyright based on the primary filing codes Nature of Suit (NOS) 820 and Cause of Action codes for copyright Infringement and then verified; additional cases with copyright claims are found from cases filed as NOS 830 (patent) and NOS 840 (trademark). Terminated cases are coded for injunctive relief, merits decisions on the claims brought and defenses raised, and damages awarded for copyright infringement violations.  Damages may be compensatory (including statutory damages, statutory damages for willful infringement, actual damages & infringer's profits, and public performance licenses under § 504d) or non-compensatory (including attorneys' fees, costs, and prejudgment interest).

Lex Machina defines a copyright case to be a case with one or more claims involving copyright infringement brought under the U.S. Copyright Act, 17 U.S.C. § 101. This definition excludes cases with only state claims of infringement, Digital Millennium Copyright Act claims, Visual Artists Rights Act claims, or 47 U.S.C. § 605 / 553 cable service claims.

A copyright finding is defined as a court-enforceable finding regarding one of the claims or defenses listed below. Findings may also include negatives like "No Fair Use Defense," when such is found in a granted order.
•        Copyright Infringement – Activity of copyright infringement including indirect infringement pursuant to the Copyright Act, 17 U.S.C. § 101.
•        Copyright Ownership / Validity – Proof that the party enforcing the copyright owns the right to do so and that the copyright is valid.
•        License or Equitable Defense – A defense against a claim of copyright infringement involving license / authorized use, forfeiture / abandonment, first-sale doctrine, or laches.
•        Fair Use Defense – An affirmative defense permitting the limited use of a protected copyright, including statutory fair use, nominative use, comparative advertising, and parody, or independent creation or innocent infringement.

The file sharing tag targets the phenomenon of mass copyright litigation for file sharing (often movies). File sharing cases are defined as copyright cases involving claims of infringement for BitTorrent/P2P file sharing brought against multiple John Doe defendants or anonymous defendants' or their  IP addresses or Internet Service Providers (ISP).

Lex Machina's data is focused on the U.S. District Courts and does not include appeals or modifications of judgments on appeal.

This report generally covers copyright cases filed between Jan. 1, 2009 and Sept. 30, 2016 in first three sections on copyright versus file sharing case, courts, parties and law firms; cases terminated between Jan. 1, 2009 and Sept. 30, 2016 in the sections on Findings, Judgments and Resolutions, and Timing;, and cases with damages granted between Jan. 1, 2009 and Sept. 30, 2016 in the Damages section.

# Using Boxplots to Understand Timing

Lex Machina's analytics use a data visualization known as the boxplot to convey information about the timing of significant events in a case.  Knowing how to interpret this data gives you an advantage when it comes to strategy, budgeting, and setting expectations, as well as in other decisions that involve case timing.

Consider a newly filed case:  Regardless of whether you're an outside counsel, say, trying to determine how large of a flat fee to charge or trying to make sure two trials don't overlap, or an inside counsel estimating legal spend and evaluating a firm's proposed budget, case timing matters.  Knowing the lower and upper bounds of how long it may reasonably take the case to reach injunction can give both kinds of counsel a strategic advantage over opponents lacking such nuanced information.  Moreover, knowing the best and worst case scenarios for timing, or exactly how likely it is that a case will be active in 6 months enables more far-sighted contingency planning.

A boxplot summarizes a series of data points to help you understand the shape, or distribution of the values in those points.  The boxplot is drawn based on five numbers:  the median, the upper and lower quartiles, and the whiskers for a distribution.



*Lower Whisker*    *Lower Quartile*    *Median*    *Upper Quartile*    *Upper Whisker*

Paying attention to these key parts of the plot will help you quickly understand what you need to know.  Although boxplots provide a wealth of information, the four observations below, in order from simplest onwards, are all one needs to easily grasp the significance of a boxplot.

**Median**:  the middle dividing line of the box splits the data points evenly so that 50% fall to either side.  It's a form of average that gives a single number representation of what to reasonably expect.

**Box bounds**:  the box encloses the middle-most 50% of the datapoints (from the 25th percentile to the 75th), with 25% of the datapoints falling outside to either side.  This makes the box a good representation of the range one can reasonably expect.

**Box compressed or elongated:**  a more compressed box means that more datapoints fall into a smaller range of time and therefore are more consistent; in contrast a longer box means that the datapoints are spread out over a wider time period and are therefore less predictable.

**Whiskers:**  Whiskers are drawn to show the outside bounds of reasonable expectation, beyond which datapoints are considered outliers.[1]

---

1        By statistical convention, boxplots define outliers as points beyond more than 1.5 times the width of the box (sometimes called the "interquartile range").





Lex Machina
1010 Doyle Street, Suite 200
Menlo Park, CA 94025
Phone: (650) 390-9500
**www.lexmachina.com**

© 2017 Lex Machina