# Cited Trial Transcript Excerpts

538

```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF VIRGINIA
                         Alexandria Division




---------------------------------:
                                 :
SONY MUSIC ENTERTAINMENT, et al.,:
            Plaintiffs,          :
                                 :
    -vs-                         :   Case No. 1:18-cv-950
                                 :
COX COMMUNICATIONS, INC., et al.,:
            Defendants.          :
                                 :
---------------------------------:




                              VOLUME  3   (P.M. Portion)




                        TRIAL TRANSCRIPT

                        December 4, 2019

                Before:  Liam O'Grady, USDC Judge

                          And a Jury
```

1  network. And the group of people who connect around a specific
2  file, who are at some point downloading, but then eventually
3  distributing the file, that group of people who are
4  participating in the distribution of that file collectively are
5  referred to as the swarm.
6      So you can almost think of it like a swarm of bees.
7  I mean, I think that's where the term originates from. But
8  it's that group of people who are distributing that unique
9  file.
10 Q. And you are saying group of people. Would that be the
11 same as calling them peers?
12 A. Correct, yep.
13 Q. And then do you preserve the data that you collect from
14 this GDPI scanning?
15 A. Yes.
16 Q. And does it get digested in some manner?
17 A. Yeah, we preserve it and store it in a database. And then
18 through kind of the reporting interfaces that we have, we
19 present the data in a more kind of digestible format for humans
20 to look at in reports and things like that.
21 Q. And is that data organized by ISP?
22 A. Yes. That's one of the views, yeah.
23 Q. And in your experience, how reliable is this data?
24 A. It's very reliable. In the ways that we use it for
25 evaluating the overall volume and activity of the piracy, you

|  |  |
|---|---|
| 1 | know, for that type of an analysis, it's extremely accurate. |
| 2 | Q.  Now, you're not using this data to send notices, are you? |
| 3 | A.  No, never. |
| 4 | Q.  And so, in the -- in the period at issue in the contract |
| 5 | that's in front of you, PX 4, did you have GDPI data for Cox? |
| 6 | A.  Yes. |
| 7 | Q.  And do you have a recollection of what that GDPI data |
| 8 | showed? |
| 9 | A.  I do.  I don't recall the exact number, but I remember |
| 10 | there being more than 10,000 infringements per day that we |
| 11 | observed across that data set related to subscribers or, you |
| 12 | know, Cox customers. |
| 13 | Q.  Now, you said per day, right? |
| 14 | A.  Correct. |
| 15 | Q.  Now, Appendix A, is that -- are those figures per day? |
| 16 | A.  No.  Those are -- those are monthly volumes. |
| 17 | Q.  So roughly speaking, if you were sending notices 20 days |
| 18 | in a month at 10,000 a day, what would that have been, the |
| 19 | volume? |
| 20 | A.  I'm sorry, 10,000 a day? |
| 21 | Q.  Yeah -- |
| 22 | A.  For 20 days? |
| 23 | Q.  For 20 days in a month, what would that volume have been? |
| 24 | A.  So 200,000.  Testing my math skills. |
| 25 | Q.  You passed.  Are you familiar with how the MarkMonitor |

924

```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF VIRGINIA
                     Alexandria Division




---------------------------------:
                                 :
SONY MUSIC ENTERTAINMENT, et al.,:
           Plaintiffs,           :
                                 :
    -vs-                         :  Case No. 1:18-cv-950
                                 :
COX COMMUNICATIONS, INC., et al.,:
           Defendants.           :
                                 :
---------------------------------:




                          VOLUME  5  (A.M. Portion)




                       TRIAL TRANSCRIPT

                      December 6, 2019

            Before:  Liam O'Grady, USDC Judge

                       And a Jury
```

1  A.   The ones that they did not receive, yes.

2  Q.   And the reason that Cox blacklisted Rightscorp is because

3  there was language in the notice and a link in the notice where

4  Rightscorp was offering to settle the copyright infringement

5  claim with Cox's subscriber, right?

6  A.   Okay. I think we're talking about, again -- one, you were

7  talking about when they sent them and we blocked them because

8  they were trying to flood the system.

9       Now you're talking about the other type where we said

10 we would not process them and send them to customers because

11 they had language in them that was, we felt, akin to, you know,

12 blackmail extortion. I mean, they were trying to get them to

13 pay up or else.

14 Q.   Copyright owners, when they have their rights infringed,

15 are allowed to assert those rights, right? You don't dispute

16 that?

17 A.   Well, but they were preying upon peoples' lack of

18 knowledge. Yes, they can assert their rights.

19 Q.   Ms. Trickey, if you -- I'm going to try to ask my

20 questions clearly, and if you could answer my questions, that

21 would be great.

22       A copyright owner whose works are infringed by

23 peer-to-peer has a right, you know this as a lawyer, to assert

24 a claim against that infringer, right?

25 A.   Yes.

2483

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

```
---------------------------------:
                                 :
SONY MUSIC ENTERTAINMENT, et al.,:
          Plaintiffs,            :
                                 :
   -vs-                          :   Case No. 1:18-cv-950
                                 :
COX COMMUNICATIONS, INC., et al.,:
          Defendants.            :
                                 :
---------------------------------:
```

VOLUME 10   (P.M. Portion)

TRIAL TRANSCRIPT

December 16, 2019

Before:  Liam O'Grady, USDC Judge

And a Jury

2654

1  cited, which is really all we need?
2           MR. EATON:  There is more than I said aloud.
3           THE COURT:  Well, I am sure you focused on the
4  important cases.
5           MR. EATON:  100 percent.
6           THE COURT:  I will give you -- why don't you just
7  give us the cases you relied on --
8           MR. EATON:  We will do that after.
9           THE COURT:  -- and we will take a look.  Thank you.
18:58:42 10          But if you, for the record purposes, want to submit a
11  brief, I certainly am not going to stop you from doing that.
12          MR. EATON:  Thank you, Your Honor.
13          MR. OPPENHEIM:  Your Honor, otherwise in all right.
14  30, there is also -- there was a discussion we had on Thursday
15  on --
16          THE COURT:  On the last paragraph?
17          MR. OPPENHEIM:  The last two paragraphs, I think.  I
18  think the last paragraph there shouldn't be any dispute about
19  that.  That is Woolworth.
18:59:17 20          The second-to-last paragraph, there was a discussion
21  about.
22          THE COURT:  "The effect the award may have on other
23  Internet service providers in the marketplace"?
24          MR. OPPENHEIM:  Yes, Your Honor.
25          THE COURT:  And have you thought about that?  Do you

2655

1  want to withdraw that sentence?

2  MR. OPPENHEIM:  I kind of like it, Your Honor.  And I
3  think I would like to have the Court deliver it.  I recognize
4  that you're laughing, Your Honor, so maybe I'm just going to
5  have to just lose this one gracefully.

6  THE COURT:  Yeah, I am going to cut that out.  I
7  mean, do you want to modify and say, "the effect the award may
8  have on Cox"?  Or do you want to leave it, "in considering what
9  amount would have a deterrent effect, you may consider Cox's
10 total profits"?

11 MR. OPPENHEIM:  It is certainly appropriate for the
12 jury in considering deterrence and punishment to consider Cox's
13 total profits.  And that is true.  And though I like the idea
14 of adding in "the effect the award may have on Cox," I think
15 even if you end it just at "profits," we could live with that,
16 Your Honor.

17 THE COURT:  Okay.

18 MR. EATON:  Sorry, I'm just trying to see what --
19 what was the idea that you just proposed?

20 THE COURT:  "The effect the award may have on Cox in
21 the marketplace."

22 MR. EATON:  We don't have objection to that, Your
23 Honor.

24 THE COURT:  All right.  I will give it that way.

25 MR. EATON:  On this one, there were -- their bench

Norman Linnell and Anneliese Thomson - EDVA-OCRs  (703)549-4626