# Exhibit A

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

```
-------------------------------:
                               :
SONY MUSIC ENTERTAINMENT, et al.,:
             Plaintiffs,       :
                               :
     -vs-                       :     Case No. 1:18-cv-950
                               :
COX COMMUNICATIONS, INC., et al.,:
             Defendants.        :
                               :
-------------------------------:
```

VOLUME  1

TRIAL TRANSCRIPT

December 2, 2019

Before:  Liam O'Grady, USDC Judge

And a Jury

D. Kooker - Direct

105

1   A.   Yes.  So A&R ultimately is the team that is working with

2   the artists in the studio.  First, often talent scouting,

3   finding the artist, signing and developing those artists,

4   working with them in the study to ultimately make the sound

5   recordings.

6   Q.   Thank you.

7        MR. ZEBRAK:  I would like to show the witness

8   plaintiffs binder one, specifically the first tab.

9        We would like to show PX 1 from plaintiffs' binder of

10  the exhibits to the witness.

11       THE COURT:  Mr. Elkin, do you need a moment to find

12  that binder?

13       MR. ZEBRAK:  It's the overall set of exhibits in the

14  case.  It is Plaintiff's Exhibit No. 1.  It's a straightforward

15  exhibit --

16       THE COURT:  It's an exhibit which identifies the

17  overall number of exhibits you have?  Is that what you're

18  saying?

19       MR. ZEBRAK:  No, Your Honor.  This -- if I could

20  identify what it is.  It's the list of the record companies'

21  list of sound recordings in the case.  It's the first exhibit

22  in the plaintiffs' exhibits.  We would like to show it to the

23  witness.  Cox has copies.

24       THE COURT:  All right.  Any objection?  Any

25  objection?

D. Kooker - Direct

106

1      MR. ELKIN:  No objection, Your Honor, now that I know
2  what it is.
3      THE COURT:  All right.  Thank you, sir.
4      Please go ahead.  It's received.
5      MR. ZEBRAK:  Thank you.
6  BY MR. ZEBRAK: (Continuing)
7  Q.  Let's start again, Mr. Kooker.
8  A.  Sure.
9  Q.  So if you could turn your attention to the first tab in
10  that -- in that document.
11  A.  Yes.
12  Q.  And do you recognize what's there?
13  A.  Yes.  This is a list of the plaintiffs' copyrighted sound
14  recordings in this case.
15      MR. ZEBRAK:  Your Honor, with the Court's permission,
16  we would like to move PX 1 into evidence.
17      THE COURT:  It's received.
18      MR. ZEBRAK:  Thank you, Your Honor.
19  BY MR. ZEBRAK: (Continuing)
20  Q.  Mr. Kooker, how many record companies' sound recordings
21  are on that list that you have at Plaintiffs' PX 1 in front of
22  you?
23  A.  6,734.
24  Q.  Thank you.  And if you could also look at that document
25  and tell me, how many Sony Music sound recordings are on that

139

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

```
-------------------------------:
                               :
SONY MUSIC ENTERTAINMENT, et al.,:
            Plaintiffs,        :
                               :
    -vs-                       :   Case No. 1:18-cv-950
                               :
COX COMMUNICATIONS, INC., et al.,:
            Defendants.        :
                               :
-------------------------------:
```

<u>VOLUME  2  (A.M. Portion)</u>

TRIAL TRANSCRIPT

December 3, 2019

Before:  Liam O'Grady, USDC Judge

And a Jury

D. Kokakis - Direct

156

1   A.   Yes, I am.

2         MS. NOYOLA:  I would like to hand up to the witness a

3   document that's been previously marked as PX 2.  And I also

4   have a copy for Your Honor as well.  And I'm hoping counsel

5   also has a copy.

6         THE COURT:  All right.  Thank you.

7         THE WITNESS:  Thank you, sir.

8   BY MS. NOYOLA: (Continuing)

9   Q.   Mr. Kokakis, do you recognize this document?

09:37:11 10   A.   Yes, I do.

11   Q.   And what is PX 2 at a high level?

12   A.   It's a list of compositions that are subject to this

13   litigation.

14   Q.   And are you familiar with how this document was prepared?

15   A.   I am, yes.

16         MS. NOYOLA:  Your Honor, I'd like to move PX 2 into

17   evidence.

18         THE COURT:  Any objection?

19         MR. BUCHANAN:  No, Your Honor.

09:37:34 20         THE COURT:  It's received.

21         MS. NOYOLA:  Mr. Duval, thank you.  Can you please

22   pull up page 22.

23   BY MS. NOYOLA: (Continuing)

24   Q.   And, Mr. Kokakis, I'd like to direct your attention to

25   page 22, starting at line 903.  And if you could, just peruse

D. Kokakis - Direct

157

1    through page 47, Mr. Kokakis, through line 1969.

2    A.    Yep, I recall this.

3    Q.    What do these entries show?

4    A.    These entries show those compositions subject to this suit

5    that are owned or controlled by Universal Music Publishing

6    Group.

7    Q.    Can you identify a couple tracks that -- and the different

8    columns that are shown here, can you go through them very

9    quickly.

09:38:20 10   A.    Certainly.  It shows the song title, which is listed under

11   Track.  It shows the corporate entity that owns or controls

12   that composition.  And it shows the copyright registration

13   number in the third right-hand column.

14   Q.    Can you identify a couple tracks here that we might

15   recognize or that strike out to you.

16   A.    Sure.  Rather than flip pages, if I may, I'll go a bit

17   from memory.  Some of them, I -- some of them I already named.

18   But "Lose Yourself," written and performed by Eminem, "Insane

19   In The Brain," by Cypress Hill.  "I Go To Extremes," by Billy

09:39:05 20   Joel.  "Bonnie and Clyde," by Jay-Z and Beyoncé.  Our writer on

21   that track happens to be Tupac Shakur because one of his

22   pre-existing works was sampled into that song.  "She Will Be

23   Loved," by Maroon 5.

24            There were a few Aerosmith songs that I mentioned

25   before that are subject to the case, like "Rag Doll" and

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

```
--------------------------------:
                                :
SONY MUSIC ENTERTAINMENT, et al.,:
              Plaintiffs,       :
                                :
     -vs-                       :   Case No. 1:18-cv-950
                                :
COX COMMUNICATIONS, INC., et al.,:
              Defendants.       :
                                :
--------------------------------:
```

VOLUME  11  (A.M. Portion)

TRIAL TRANSCRIPT

December 17, 2019

Before:  Liam O'Grady, USDC Judge

And a Jury

2690

1          MR. GOULD:  No objection, Your Honor.

2          MS. LEIDEN:  Okay.  Thank you.

3          THE COURT:  All right.  96 is received.

4          MR. GOULD:  Wanted to double-check.

5          MR. BUCHANAN:  And, Your Honor, yesterday with regard

6    to the copyright registrations, the Court admitted them subject

7    to the plaintiffs reviewing the list, and I assume they've done

8    that.  So we would move into evidence PX 612 to PX 8478, the

9    electronic version of those copyright registrations and

10   lookups.

11         THE COURT:  All right.  Any objection?

12         MR. OPPENHEIM:  Yes, Your Honor.

13         THE COURT:  Okay.

14         MR. OPPENHEIM:  Your Honor, yesterday when the issue

15   came up, and I asked what they were actually seeking to admit,

16   Ms. Leiden indicated to the Court and us that they were seeking

17   to admit DX 3758.  I don't know -- to this day, I still don't

18   know what DX 3758 was.

19         Ms. Golinveaux came up to us yesterday afternoon and

20   said, no, no, no, that's not what we're trying to admit.  We're

21   trying to admit PX 612 to 8478.  So it seems to be a

22   back-and-forth here.

23         Now, we have not reviewed in great detail the

24   7,200-plus documents that that includes.  It does, however,

25   include registrations for works that aren't even in the case.

2691

1    It -- it's -- it is -- this is why -- I mean, the plaintiffs

2    would never have proceeded -- we put it on our list initially

3    out of an abundance of caution.  We would have cleaned it up

4    before trial, and that's what we did.  Now we've got this

5    wholesale effort to just throw everything against the wall and

6    admit it, and I think it's improper.

7            Also, by the way, none of these exhibits have ever

8    been marked, so I don't know what's on the hard drive.  What --

9    we had them on a list, but we don't actually have hard copies.

10   We have no idea that what we're talking about is 347 -- 612 to

11   8478 is what they're talking about.  So we would object, Your

12   Honor.  This is improper.

13           THE COURT:  Where did it come from?  It came from --

14   Sony produced the registrations, and how would it be --

15           MR. OPPENHEIM:  So --

16           THE COURT:  -- that they don't include registrations

17   for songs or music that aren't at issue in the case?

18           MR. OPPENHEIM:  During the course of the case, we did

19   a very large production.  As Your Honor is well aware, that

20   production often included works that we ended up not proceeding

21   on.  And, you know, sometimes you produce things out of an

22   abundance of caution because you don't know where things are

23   going, and from our perspective, we'd rather overproduce than

24   underproduce.

25           When we put these on our initial exhibit list, we

2692

1  didn't go through them and say, do we have absolutely every

2  registration that corresponds to the works in suit?  We put

3  the -- we put a list out so that we had a placeholder because

4  we didn't want, if we needed them, for anybody to come back

5  later and say, you didn't put them on.

6          We've not had an opportunity to go through and figure

7  out of these 7,200-plus exhibits that they propose putting

8  on -- putting into evidence, how they match up.  We don't know

9  that it includes everything, but we do know that it includes

10  more than it needs to.

11          This is -- you know, I recognize I made this argument

12  yesterday and I lost, but I'll make it again because I think

13  it's the right argument, which is the defendants should have --

14  if they wanted to put this in evidence, they should have had it

15  on their exhibit list, and they didn't.  They didn't produce --

16  they didn't put it in.  They haven't established any foundation

17  for it.  There is no basis for these registrations to go in,

18  Your Honor.

19          And when we get to the next issue, Your Honor, which

20  is the issue of Mr. Tregillis's ever-evolving analysis in

21  slides, which have changed now, I think, three times since,

22  since we initially discussed it, it just -- it further

23  demonstrates that this is a last-minute effort and this is

24  exactly what isn't supposed to happen at trials, Your Honor.

25          THE COURT:  But what is the -- are registrations of

2693

1    the accused infringing works already in evidence?

2            MR. OPPENHEIM:  No.

3            THE COURT:  They're --

4            MR. OPPENHEIM:  No.

5            THE COURT:  They're -- I mean, what relevance do they

6    have?  I'm just seeking where -- just trying to understand --

7            MR. OPPENHEIM:  The Court already determined -- I'm

8    telling you what you did.

9            THE COURT:  Yeah.  No --

10           MR. OPPENHEIM:  That the works in the case, the

11   10,017 works in the case are owned by the plaintiffs and

12   properly registered.

13           THE COURT:  All right.

14           MR. OPPENHEIM:  That doesn't mean that the

15   registrations have been admitted, and, in fact, there's no

16   reason to admit them.  That's why we took them -- took off the

17   list everything that could possibly have been a registration.

18           So now the defendants want to find a way of throwing

19   this evidence in at the last minute, without a single witness

20   to testify about it, without having reviewed these to make sure

21   that it is -- that it is -- addresses the specific works in

22   suit, and haven't set forth how the jury could possibly use

23   this.  This is really -- this whole last-minute thing is

24   intended to confuse not only the jury but the rest of us.

25           And if I can turn to the Tregillis slides, because it

2694

1    all goes hand in hand.

2         THE COURT:  Yeah, go ahead.

3         MR. OPPENHEIM:  So yesterday I asked the Court for an

4    opportunity to review and consider the slides in a little more

5    detail, and as I promised, my colleagues, who are a lot smarter

6    than I am, took a look at them and said this doesn't make a lot

7    of sense.

8         And sure enough, the defendants, they're trying to

9    fix their mistakes.  As of 9:30 last night, they send us a

10   revised version of the slides with different numbers than were

11   in the original version.  And then this morning, I got handed

12   yet additional slides, which have yet other numbers.

13        This just demonstrates, Your Honor, this was never an

14   analysis that was previously done by Mr. Tregillis.  This is an

15   analysis that is being done on the last day of a trial, and

16   this is exactly what isn't supposed to happen here.

17        THE COURT:  So what is it that you think --

18        MR. OPPENHEIM:  Oh, Mr. Tregillis should be excused.

19   I'm sorry, Your Honor.

20        THE COURT:  Mr. Tregillis, please wait outside.

21   Thank you, sir.

22        MR. TREGILLIS:  Sure.  Thank you.

23        NOTE:  Mr. Tregillis left the courtroom.

24        THE COURT:  So I looked -- I had a chance to look at

25   it last night as well, and Mr. Tregillis in his opening report

2695

1    references the copyrights and the tracks and, slash, songs, and

2    has Schedule 6, which identifies the songs and the music and

3    the overlap of which ones -- which accused songs and music

4    overlap, right?  So that's in this Schedule 6.

5           MR. OPPENHEIM:  I believe if you look at the bottom

6    of that Schedule 6, Your Honor, the -- it references 2,000 or

7    2,200 works.

8           THE COURT:  Right.

9           MR. OPPENHEIM:  I'm just pulling it up here, which is

10   clearly -- that was -- I don't know where he came up with that

11   number, but that's never been a number in this case.

12          THE COURT:  Right.

13          MR. OPPENHEIM:  So there was no way we could look at

14   this and say, boy, he's done an analysis as to all the works in

15   suit, the 10,017.

16          THE COURT:  So he can't use this to come up with the

17   numbers of songs and music compositions which have -- which are

18   together in one --

19          MR. OPPENHEIM:  -- SR.

20          THE COURT:  Where the song and the composition are

21   included in the infringing work.

22          MR. OPPENHEIM:  I believe that what -- when he's

23   asked, what he will say is that he looked at some version of

24   PX 1 and PX 2, which is -- has been put before the jury so they

25   can see the works in suit.

2696

1        THE COURT:  All right.

2        MR. OPPENHEIM:  He's not looked, as far as I know,

3    and if he has, it's certainly not in his report, looked at a

4    single underlying copyright registration.  He's not looked at

5    whether or not there are multiple registrations for a

6    particular work, which happens all the time.

7        And we've produced in the discovery instances where

8    an album may have been registered and the individual track may

9    have been registered, which is entirely proper and the

10   copyright office allows.  And so he's not looked at any of

11   that.  All he's done is said, okay, I'm going to scan down

12   PX 1, and I'm going to look at the -- and I'm assuming this is

13   what he's going to say:  I'm looking at the SRs listed.

14       Those SRs listed there do not purport to be the

15   universe of SRs that are relevant to the registrations in the

16   case.  Those were marked and identified and admitted based on

17   the plaintiffs' testimony that those are the works in suit, and

18   not with reference to the registrations.  Benefit of hindsight,

19   we probably shouldn't have included the registration numbers on

20   there, but they -- nobody has purported that that's the entire

21   universe of registrations for those works.

22       So now he wants to do an analysis that he didn't do

23   before which doesn't look at the underlying registrations.

24   Now, if he gets up and says, I have, well, how does a forensic

25   accountant who's never looked at a copyright registration in

2697

1   his life have any expertise to do that analysis?

2         So that's the problem with page 13.  There are

3   further problems with page 21.

4         THE COURT:  So --

5         MR. OPPENHEIM:  I'm sorry.

6         THE COURT:  What's the problem with 13?  He can't add

7   up the number of sound recordings and music compositions, or he

8   can't identify which ones have one track and which ones have

9   multiple tracks?

10        MR. OPPENHEIM:  So he's purporting to do a 1006

11  summary, I think, I think.  But in order to do that, he has

12  to -- he has to know what he's summarizing, what it

13  constitutes.  What he's summarizing is simply plaintiffs'

14  exhibit of the works in suit, not the registration information.

15        Plaintiffs have never contended and never admitted

16  PX 1 with respect to that issue, but that's the only thing he's

17  looking at in that exhibit.  He has not looked at the

18  underlying registration, so he can't do that analysis.

19        So, yeah, we have no -- sorry, to be clear, we have

20  no objection to the top of this.  That's not a problem.  Our

21  only objection is the reference on the bottom of the page,

22  which refers to 664 SRs with one track -- and by the way, the

23  word "track" doesn't appear anyone on PX 1 -- and 789 SRs with

24  multiple tracks.

25        THE COURT:  Does he equate tracks with songs?  It

2698

1   seems in -- there's a reference in his opening report where he

2   says "tracks" and then has "(songs)."

3            MR. OPPENHEIM:  I presume that's what he's doing.

4            THE COURT:  Right.

5            MR. OPPENHEIM:  But again, Your Honor, what he's

6   purporting to do is do an analysis of PX 1.  While

7   Mr. Tregillis may have many talents and expertises, copyright

8   registrations is not one of them, and doing this -- this is not

9   how defendants get to do this.  If defendants wanted to put an

10  expert up on this, they could have.  If defendants wanted to

11  cross-examine plaintiffs' witnesses, they could have.  Using

12  Mr. Tregillis at the last minute when it's not in his expert

13  report, it wasn't part of his deposition, is outside the

14  bounds.

15           And what -- one of the things that Your Honor has

16  said -- one of the things that Your Honor has said is that

17  these trials are not supposed to be about ambush, which is why

18  you asked that we exchange exhibits in advance in binders, but

19  that's exactly what this is.  Plaintiffs are supposed to

20  have --

21           THE COURT:  Okay.  Let's go to 21, 22, 23.

22           MR. OPPENHEIM:  So with respect to 21, the question

23  is which version of 21 we should look at, the first version or

24  the second version.  So the first version, Your Honor, I

25  believe --

2699

1          THE COURT:  I just have what you passed up to me or

2    somebody passed up to me yesterday.

3          MR. OPPENHEIM:  Yesterday.  So that, I believe, on

4    the bottom of the page, on page 21, lists 4,324 --

5          THE COURT:  Right.

6          MR. OPPENHEIM:  -- only SR, right?

7          And the new version that we were handed -- given at

8    9:30 last night says 4,322.  And then on the SR and MC, the

9    first version said 2,409, and this version says -- the new

10   version says 2,412.  And then the final, and then the final

11   number about only musical composition, the first version said

12   871.  This version says 874.

13         I don't know, Your Honor, how anything could be more

14   evident that this analysis is still going on after, you know,

15   as of 9:30 last night.

16         THE COURT:  What, what do you object to in 21, 22,

17   and 23?  Everything below the number of recordings and

18   compositions?

19         MR. OPPENHEIM:  Yes, Your Honor.

20         THE COURT:  And is any of this in his report, any of

21   his reports?  And does he do the analysis of 32 percent of the

22   tracks are both SR and MC and -- I mean, Mr. Buchanan said

23   yesterday it's just doing the math, and evidently you're

24   telling me that this exhibit to his report, which contains

25   2,222 sound recordings and 1,195 isn't the exhibit, that he

2700

1   would have to have gone back to PX 1 and 2; is that right?

2           MR. OPPENHEIM:  Yeah, I don't know where he did this.

3   The sole reference that Cox has given us for this in his expert

4   report is the same Schedule 6, which doesn't do this.  So I

5   have no idea where this comes from, you know.

6           THE COURT:  Did he ever -- you know, was there any

7   evidence that he had analyzed a proper royalty rate for those

8   works which contained both an SR and an MC?

9           MR. OPPENHEIM:  As I understand it, his royalty

10  analysis just presumed that the works were in the case, and he

11  just, he just accepted all of them for purposes of his royalty

12  analysis.  That's now changing because he's, he's now changed

13  his analysis, because his initial analysis was I'm just going

14  to accept that everything is in and do my analysis.

15          THE COURT:  All right.

16          MR. OPPENHEIM:  There are other flaws with that, but

17  leave that for cross-examination.  But this, there's nothing

18  about this in his report.

19          And just so Your Honor doesn't think that we're done,

20  this morning we got handed two entirely new slides, which we've

21  never seen before, which purport to summarize this even

22  further.  I apologize -- oh, here we go.

23          So these slides aren't numbered.  I don't know if

24  counsel for Cox has a copy for the judge.

25          I'll just say while you're turning to the last two

2701

1    pages, Your Honor, the purpose of our pushing Mr. Tregillis

2    until today was not to give Cox an opportunity to change the

3    analysis and do more analysis.  The purpose was to give

4    plaintiffs an opportunity to take a look at what they had

5    already said they had done.

6              So these two new slides, you know, what I think

7    they're purporting to do is just they're going to say it's just

8    arithmetic, but those numbers, when you look at the first of

9    the two last -- I guess the second-to-the-last slide, which

10   starts with total number of works in suit, Your Honor, so they

11   start with 10,016.

12             Everybody in this courtroom by now knows it's 10,017,

13   so I have no idea where the 16 comes from.  Now, maybe they

14   say, oh, it was another math error, but just to our point.

15             And then the 2,408 number, which is the number of SRs

16   for which the PAs are in suit, that's not the same number

17   that's on slide 21.  Slide 21 has 2,412.  So I don't know where

18   2,408 comes from.  That's new.

19             When you go into the last slide, again, they're going

20   to say, well, this is just math, but, but this purports -- I

21   mean, this reads like adjusting for compilations.  Where is the

22   word "compilations" in anything he looked at?

23             There's nothing he looked at that talks about

24   compilations, as far as I can tell, unless they're going to get

25   up and say he's now reviewed all the registrations, and I come

2702

1    back to the same point.  He has no expertise to have done that,

2    and he didn't do it, and it's not in his report.  So --

3              THE COURT:  Okay.  Got it.

4              MR. OPPENHEIM:  -- I think there are serious problems

5    here, Your Honor.

6              THE COURT:  All right.  Thank you.

7              MR. OPPENHEIM:  One more minute.  Sorry, Your Honor.

8              I think last but not least, apart from this all being

9    new and the plaintiffs not having an opportunity to examine it

10   and that there's no real appropriate opinion here, the jury is

11   going to just be horribly confused by all of this.  It has not

12   been anywhere in the case to date, and on literally the last

13   day of trial, to try to throw this in, it just -- it reeks of

14   trying to sabotage the case.

15             THE COURT:  All right.  Thank you.

16             MR. BUCHANAN:  I didn't really consider that these

17   computations were sabotage, but in any event, Your Honor, with

18   regard to the copyright registrations, we can start there, the

19   Court admitted those yesterday, subject to them reviewing them.

20             And just so the Court knows, they know what the

21   copyright registrations are.  They are referenced in -- with

22   regard to the -- they're referenced in the complaint, and

23   they're also part of their summary judgment motion.  There's

24   six affidavits, one from each corporate representative,

25   attesting to all those.  They're all referenced.

2703

1          THE COURT:  But they're not the same registrations,

2    right?  This is a much larger set.  Some are relevant, some are

3    irrelevant, and nobody's evidently gone through them, and

4    they've never been analyzed, and they can't be reviewed by the

5    jury.

6          What, what is the value, what's the relevance for

7    putting these registrations in?

8          MR. BUCHANAN:  Well, first of all, just so -- we gave

9    them the list that we're talking about over the weekend, and we

10   discussed it.  So they can easily determine, you know, which

11   ones they don't want and which ones they do.  Obviously, the

12   copyright registrations is a jurisdictional issue.  They can't

13   bring the case.  They then used those copyright registrations

14   to get summary judgment.

15         THE COURT:  Right.

16         MR. BUCHANAN:  We listed the sound recordings

17   registrations as an exhibit, and we had a savings clause as to

18   the others.  We also had a clause that said -- actually we

19   identified all pleadings in the case as potential -- as

20   exhibits.

21         So in contrast to what plaintiffs' counsel said, we

22   identified the sound recordings as exhibits, we saved the rest,

23   and we also identified the pleadings, and all this was attached

24   to the pleadings.

25         And it's relevant.  It goes to the statutory damages

2704

1  issue, the 504 issue, and it goes to the whole, you know, their

2  case.  This is, in essence, their case.

3          They used them to get summary judgment, so they --

4  and the Court basically admitted them at that point.

5          THE COURT:  Yeah, my question was I didn't use 7,200.

6  They identified the fact they had registrations for X number of

7  works and -- but I'm trying to figure out what is the relevance

8  of the --

9          MR. BUCHANAN:  Well, the idea is it's not an exact

10  science, and, in fact, if there's more in there, it's not

11  impacting their case.  It's just creating a record.

12          THE COURT:  What are you going to do with this, or is

13  this just putting it in in case you need it down the road?

14          MR. BUCHANAN:  Yes.  Sure.

15          THE COURT:  Okay.  So this isn't subject to

16  Tregillis's testimony, or it's not going to be part of your

17  defense in closing argument to ask the jury to look at this --

18  these exhibits.

19          MR. BUCHANAN:  We're not going to point to the,

20  the -- we're not going to play the, the hard drive or, you

21  know, it's just -- it's important for the record that we have

22  this in there for our case, and that's why we want it in.  We

23  think it should be in.

24          We're not going to make use -- there's no surprise

25  here.  I mean, we asked them to stipulate to this a long time

2705

1    ago.  So there's been discussions forever about these exhibits,

2    and they've used them to their advantage to get summary

3    judgment.

4          So we think, you know, if they're out of the case,

5    then we should remove them from the summary judgment, and then

6    we don't have proof of ownership.

7          THE COURT:  Okay.  All right.  The registrations will

8    be received.

9          MR. OPPENHEIM:  Your Honor, may I just quickly

10   respond to that one point?  I understand where you're going,

11   Your Honor.

12         THE COURT:  Go ahead.

13         MR. BUCHANAN:  Judge --

14         THE COURT:  Hold on.  Let him finish this topic.

15         Go ahead, Mr. Oppenheim.

16         MR. OPPENHEIM:  So first of all, the idea that, that

17   the defendants can tell the plaintiffs over the weekend, here

18   are 72 exhibits, you have to go figure out which ones should be

19   in and which ones should be out, is ludicrous.  And it's not a

20   standing issue.

21         THE COURT:  All right.  I'm done.

22         MR. OPPENHEIM:  One last comment on this?  To the

23   extent that all they're trying to do with them is preserve

24   issues on appeal, they don't need them because the grant of the

25   summary judgment on ownership preserves that issue in its