# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

|  |  |
|---|---|
| SONY MUSIC ENTERTAINMENT, *et al.*, | |
|     Plaintiffs, | Case No. 1:18-cv-00950-LO-JFA |
| v. | |
| COX COMMUNICATIONS, INC., *et al.*, | |
|     Defendants. | |

## <u>PLAINTIFFS' POST-TRIAL BRIEF</u>
## <u>PURSUANT TO THIS COURT'S JUNE 2 ORDER</u>

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ....................................................................................................................... 4

  I.   COX'S ARGUMENT ABOUT DERIVATIVE WORKS DOES NOT WARRANT ANY
      REDUCTION TO THE JURY'S $1 BILLION VERDICT ............................................... 4

     A.  Cox forfeited this post-trial challenge to the number of works eligible for statutory
        damages ....................................................................................................................... 5

     B.  It is not a "ministerial" task to determine whether any sound recordings in PX-1 are
        derivative of any musical compositions in PX-2. ..................................................... 8

  II.  EVEN IF THE COURT REDUCES THE JURY'S DAMAGE AWARD, COX'S
      CHALLENGE STILL FAILS FOR CERTAIN WORKS. ............................................... 14

     A.  Background. .............................................................................................................. 14

     B.  Cox's effort to exclude specific works from the jury's statutory damage awards fails.16

  III.  COX'S CHALLENGES TO THE WORKS THAT WERE WITHDRAWN FROM THE
       *CHARTER* CASE ARE MISPLACED AND SHOULD BE REJECTED. ............................... 18

     A.  Background. .............................................................................................................. 18

     B.  Withdrawal of some works in a separate action is not a basis for Cox to relitigate
        summary judgment of Plaintiffs' ownership of these works. ................................... 19

     C.  Cox double counts some Charter works it seeks to remove. ....................................... 24

CONCLUSION .................................................................................................................. 24

# TABLE OF AUTHORITIES

## CASES

*Arista Records LLC v. Lime Grp. LLC*,
   No. 06-cv-5936, 2011 WL 1641978 (S.D.N.Y. Apr. 29, 2011) -----------------------------------23

*Atlas Food Sys. and Servs., Inc. v. Crane Nat'l Vendors, Inc.*,
   99 F.3d 587 (4th Cir. 1996) -----------------------------------------------------------------------------------19

*Blackman v. District of Columbia*,
   633 F.3d 1088 (D.C. Cir. 2011)------------------------------------------------------------------------------ 4

*BMG Music v. Gonzalez*,
   430 F.3d 888 (7th Cir. 2005) --------------------------------------------------------------------------------- 8

*BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*,
   199 F. Supp. 3d 958 (E.D. Va. 2016),
   *aff'd in part, rev'd in part,* 881 F.3d 293 (4th Cir. 2018) ------------------------------------14

*Brundle v. Wilmington Trust., N.A.*,
   919 F.3d 763 (4th Cir. 2019) --------------------------------------------------------------------------------- 7

*Columbia Pictures Television, Inc. v. Krypton Broad. Of Birmingham, Inc.*,
   259 F.3d 1186 (9th Cir. 2001) ------------------------------------------------------------------------------- 8

*Durham v. Jones*,
   737 F.3d 291 (4th Cir. 2013) --------------------------------------------------------------------------------15

*Elusta v. Rubio*,
   418 Fed. Appx. 552 (7th Cir. 2011) ------------------------------------------------------------------------16

*EMI Christian Music Grp., Inc. v. MP3tunes, LLC*,
   844 F.3d 79 (2d Cir. 2016) -----------------------------------------------------------------------------------15

*Exxon Shipping Co. v. Baker*,
   554 U.S. 471 (2008) ----------------------------------------------------------------------------------------- 7

*Fairley v. Wal-Mart Stores, Inc.*,
   No. 15-462, 2016 WL 6584778 (E.D. La. Nov. 7, 2016) -----------------------------------------20

*Feltner v. Columbia Pictures Television, Inc.*,
   523 U.S. 340 (1998) ------------------------------------------------------------------------------- 8, 12

*Gorbea v. Verizon N.Y., Inc.*,
   11–cv–3758, 2014 WL 2916964 (E.D.N.Y. June 25, 2015)-----------------------------------------20

*John Wiley & Sons, Inc. v. Book Dog Books, LLC*,
   No. 13CV816, 2017 WL 10844685 (S.D.N.Y. Dec. 8, 2017) ------------------------------------20

*Ortiz v. Jordan*,
   562 U.S. 180 (2011) -----------------------------------------------------------------------------------------15

*Paez v. Gelboym*,
   578 Fed. App. 407 (5th Cir. 2014) -------------------------------------------------------------------------16

*Passantino v. Johnson & Johnson*,
   212 F.3d 493 (9th Cir. 2000) --------------------------------------------------------------------------------13

*Reeves v. Sanderson Plumbing Prod., Inc.*,
   530 U.S. 133 (2000) -----------------------------------------------------------------------------------------12

*Rodriguez-Torres v. Caribbean Forms Manufacturer, Inc.*,
   399 F.3d 52 (1st Cir. 2005)-----------------------------------------------------------------------------------13

*Roe v. Howard*,
   917 F.3d 229 (4th Cir. 2019) --------------------------------------------------------------------------------14

**STATUTES**

17 U.S.C. § 504 ------------------------------------------------------------------------------ 4, 8, 13

**RULES**

Fed. R. Civ. P. 50 --------------------------------------------------------------------------- 14, 15, 18

Fed. R. Civ. P. 59 -------------------------------------------------------------------------------18

**TREATISES**

11 Wright & Miller Fed. Prac. & Proc. Civ. § 2803 (3d ed. 2020) ----------------------------------18

11 Wright & Miller Fed. Prac. & Proc. Civ. § 2808 (3d ed. 2020) ----------------------------------19

# INTRODUCTION

After a lengthy trial, followed by two days of deliberations, the jury rendered a carefully considered damages verdict of $1 billion based on the evidence presented.  This Court should reject Cox's thirteenth-hour attempt to disturb the jury's verdict by 1) recalculating the number of works eligible for statutory damage awards, and 2) eliminating works that Plaintiffs declined to pursue in an entirely different case.

For the reasons explained previously, Plaintiffs respectfully disagree with the Court's interpretation of Section 504(c)(1) where separate parties own distinct and separately copyrighted musical compositions and sound recordings, as here.  But, putting that aside, the unique circumstances presented in this case render that legal issue academic.

First, Cox forfeited the argument that any of the sound recordings on PX-1 are derivative of any of the musical compositions on PX-2.  The Supreme Court has held that all fact questions regarding statutory damages are reserved for the jury.  At summary judgment, this Court indicated that whether any works in PX-1 are derivative of any works in PX-2 for purposes of statutory damages presents fact questions.  At trial, however, Cox failed to adduce any evidence that would allow the jury to determine if any works in suit are derivative of any other works in suit.  Now, with no legal authority or other support for this process, Cox asks the Court to engage in its own post-trial factfinding on issues that Cox should have presented to the jury but did not. Indeed, Plaintiffs are not aware of a single other case in which this issue was litigated *after the jury returned its verdict*.  Cox must live with its trial strategy and its complete failure of proof on the question that it now asks the Court to decide instead of the jury.

Second, Cox tries to sidestep binding Supreme Court precedent and cure its forfeiture by representing to this Court that determining whether overlapping titles in suit are, in fact,

derivative is a mere "ministerial" task that should not prevent judgment as a matter of law. But Cox's August 3 submission speaks for itself—the task is far from "ministerial." The mountain of material from Cox includes: a 25-page legal memorandum; lengthy schedules; a hard-drive of documents, including documents outside the trial record; and extensive descriptions of Cox's methodology and judgment calls. Tellingly, Cox tries to prop up its "ministerial" analysis by repeatedly analogizing it to the *expert* analysis from Plaintiffs' trial witness Dr. George McCabe. And it is indeed akin to expert testimony. Cox did not merely compare title names—as, by its own admission, that would be *unreliable*. Instead, Cox asserts it reviewed multiple different fields of information in the copyright registrations to identify possible links between the titles. Cox described further factual complexities in its review, analysis, and decision-making. For example, titles can appear *only once* on both PX-1 and PX-2 with no relationship between the sound recordings and the musical compositions. At the same time, a title can appear *more than once* on one or both of PX-1 or PX-2, yet the works may or may not be derivative of another work in suit. This is no "ministerial" exercise. It is precisely what an expert witness for Cox should have done at trial—and Cox did not provide that testimony.

Each of the foregoing grounds separately and independently compels entry of judgment for the full amount of the jury's $1 billion verdict. Entry of judgment for $1 billion also effectuates the clear intent of the jury. The jury's unmistakable intent was for Cox to pay $1 billion on account of its willful contributory and vicarious infringement. It cannot be reasonably disputed that the jury first determined the overall award of $1 billion, and then translated that total amount into the per-work damage award, not vice-versa. It is not mere happenstance that the per-work award is a specific number, down to the penny, whereas the overall award is a round figure of $1 billion. Accordingly, it does not matter whether $1 billion is calculated at

10,017 works for $99,830.29 per work, or at 7,579 works (Cox's proposal) for $131,943.53 per work. Both amounts are comfortably within the per-work statutory range set by Congress and deference is owed to the clear intent of the jury.

If the Court decides to disturb the jury's verdict (and it should not), however, Cox's proposed removals overreach by 135 unique works. As explained in Section II below, Cox has not demonstrated that those 135 works are derivative of other works in suit.

Apart from the issue of derivative works, Cox further demands that the Court remove 88 works from this case simply because Plaintiffs chose not to proceed on them in an entirely separate case. As to these 88 works, 41 are unique works and the other 47 are works that Cox also contends should be excluded as derivatives. But Cox offers nothing more than speculation and innuendo—much of which this Court has already rejected—in support of its request. This Court already granted summary judgment on Plaintiffs' ownership of these works. The fact that Plaintiffs may have withdrawn works from a different case after the trial in this case is not evidence of anything—let alone of Cox's assertion that Plaintiffs do not own the works.

In sum, Plaintiffs request entry of judgment in the full amount of the $1 billion jury verdict. But if the Court decides to disturb the jury's verdict (and it should not), Cox's proposed removals overreach by 176 unique works and double count another 26 works. Thus, in no event should entry of judgment be for less than $776,779,486.49. That figure is computed based on 7,781 works, rather than Cox's submission of $756,613,767.91 based on 7,579 works.

## ARGUMENT

### I.  COX'S ARGUMENT ABOUT DERIVATIVE WORKS DOES NOT WARRANT ANY REDUCTION TO THE JURY'S $1 BILLION VERDICT.

Plaintiffs respectfully disagree with the Court's June 2 opinion as to how statutory damages apply to a work and a derivative work.  Cox's interpretation leads to the absurd, litigation-multiplying result that rights holders suing *separately* can each recover their own statutory damages award, but those suing together in the same action against a common infringer are limited to a single award.  Cox's interpretation also leads to the absurd scenario where one statutory damage award applies in an action for infringement of a famous musical composition and every single recording of it by dozens, hundreds, or thousands of different artists.[1]  Contrary to such results, which Congress could not have intended, the plain language in 17 U.S.C. § 504 precludes only the same "copyright owner," singular, from recovering multiple statutory damages awards when *that owner* holds multiple copyrights in the same work.  *See Blackman v. District of Columbia*,  633 F.3d 1088, 1092 (D.C. Cir. 2011) (declining to apply the Dictionary Act to pluralize the singular, finding the context indicated otherwise because pluralizing would have provided a "perverse incentive" for breaking a single action "into inefficient multiple actions").

---

[1] To illustrate, there are over 2,000 different recordings of the musical composition *Yesterday*, made famous by the Beatles.  *See* https://en.wikipedia.org/wiki/Yesterday_(Beatles_song). Under Cox's logic, if the copyright owners of the 2,000+ recordings and the musical composition all join together in a single action against a common infringer, they would share a single statutory damage award.  In addition to the Beatles, some of the artists who recorded that song include Elvis Presley, Boyz II Men, Frank Sinatra, James Brown, and Gladys Knight.  *See* https://web.archive.org/web/20060910071729/http://www.guinnessworldrecords.com/content_pa ges/record.asp?recordid=50867.

Plaintiffs and Cox thus hold different views on the issue of whether a musical composition and a sound recording embodying that composition are entitled to separate statutory damage awards when the works are (i) separately copyrighted; (ii) separately exploited; and, most important, (iii) owned by separate entities who bring suit together against a common infringer.  Notwithstanding this Court's June 2 order, judgment should be entered for Plaintiffs without any reduction of the jury's unequivocal $1 billion jury verdict.  The unique circumstances of this case render the answer to that legal question irrelevant for two independent reasons.

### A. Cox forfeited this post-trial challenge to the number of works eligible for statutory damages.

At trial, the Court properly rejected Cox's request to instruct the jury that if any of the sound recordings in suit embody any of the musical compositions in suit, Plaintiffs should be limited to a single statutory damage award.  Tr. 2905:11-19.[2]  As Plaintiffs pointed out, Cox presented no evidence to support the argument or requested instruction.  Cox is not entitled to another bite at the apple.

On November 15, 2019, the Court denied Cox's motion for summary judgment on the number of works eligible for statutory damages based on an alleged overlap between sound recordings and musical compositions because "issues of material fact remain."  ECF 586 at 24 (Section II.C).  Recognizing this, and fully on notice that the Court had determined that the identification of derivative works for damages purposes presented fact issues, Cox requested a proposed jury instruction on the issue.  ECF 606-1 at 42 (Cox's Proposed Jury Instruction No. 34); ECF 645-1 at 36 (Cox's Revised Proposed Jury Instruction 32).  However, Cox tried its case

---

[2] Citations to the trial transcript in this case are denoted "Tr." and are attached hereto as Exhibit C.

without providing the jury with any evidentiary foundation to discern what, if any, relationship existed between any of the 6,734 sound recordings on PX-1 and any of the 3,283 musical compositions on PX-2.

Jury instructions must be based on the evidence presented at trial. If Cox intended to argue that certain sound recordings in suit are derivative works of certain musical compositions in suit, it was incumbent on Cox to present that evidence. Yet Cox failed to have its expert—or any witness, for that matter—perform an analysis of the derivative work issue. At the time of his deposition, Cox's expert, Christian Tregillis, had not performed the analysis, nor had he even attempted to address the issue in his expert report. Accordingly, the Court properly sustained Plaintiffs' objection to Mr. Tregillis' testifying on the issue at trial. Tr. 2713:3-18. Cox also made no attempt to cross-examine Plaintiffs' witnesses at trial to elicit any testimony concerning whether certain sound recordings on PX-1 were derivative works of certain musical compositions on PX-2.

Cox simply presented no evidence to the jury concerning the relationship, if any, between sound recordings in suit and musical compositions in suit. During the charge conference, the Court asked, "whether there has been any evidence that the jury could consider whether to give one statutory damages award for the works that include a song and the music composition." Tr. 2893:22-2894:3.

After hearing from counsel, the Court explained:

[Y]ou-all map out how you want to put your case on, what witnesses you want to put in, and what testimony you believe is appropriate and admissible, and then I look at the end of the case to see what's there and what's not there ….

And the registrations, obviously, we looked at them at the issue when it was, when it was initially offered on summary judgment and ownership and registration issues, and then it comes up again yesterday with these 7,200, which there's just no testimony as to what's in that pile.

And so to now somehow expect the jury to pluck out the works that are both sound recordings and music compositions or allow you to, I guess, in closing arguments just say, listen, there's 4,000 of these or 3,000 of these that are both one and the other, that, I think is improper.

I expected that there would be testimony about how many of these sound recordings were also music compositions, and the jury would be -- would have that evidence through the witness stand when they were deliberating.

[] I just don't see that there's evidence from which they could collect and cull and determine whether they wanted to combine the statutory damages award for those works that are -- contained both sound recordings and music compositions.

Tr. 2904:5-2905:15.

Under binding Fourth Circuit law, Cox must live with the consequences of its strategic choices. *Brundle v. Wilmington Trust., N.A.*, 919 F.3d 763, 781–82 (4th Cir. 2019). For example, in *Brundle*, a participant in an employee stock ownership plan sued the plan's trustee for breach of his fiduciary obligations by overpaying in a stock purchase. *Id.* at 769. Following a multi-day trial, the district court issued findings of liability and damages in plaintiff's favor, and the defendant appealed. *Id.* The Fourth Circuit affirmed, rejecting the defendant's challenge to the damages award. *Id.* Specifically, the Fourth Circuit held that because the defendant "did not provide the district court with an alternative damages calculation or offer any evidence that the court could use to devise its own[,]" the defendant "has forfeited its challenge to the methodology used by the district court when calculating the damages award." *Id.* at 781-82 (citing *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 487 n.6 (2008) ("[W]aiver and forfeiture rules ... ensure that parties can determine when an issue is out of the case, and that litigation remains, to the extent possible, an orderly progression.")). Just as in *Brundle*, by failing to present the jury with evidence from which it could reasonably determine that certain works on PX-1 were derivative of certain works on PX-2, Cox forfeited any argument that statutory

damages should be based on anything other than the undisputed total number of works for which the jury found liability.

For forfeiture to apply where the jury is the factfinder, the disputed issue of course must be a jury question. The question here was and remains squarely a question of fact for the jury. The Supreme Court has held that "the Seventh Amendment provides a right to a jury trial *on all issues* pertinent to an award of statutory damages under § 504(c) of the Copyright Act, including the amount itself." *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 355 (1998) (emphasis added). That includes the number of works eligible for separate awards. Indeed, the Court denied Cox's motion for summary judgment on the number of works eligible for statutory damage awards specifically *because* the alleged overlap required resolution of disputed fact questions. ECF 586 at 24 (Section II.C). Accordingly, under *Feltner*, there can be no doubt that the fact question was for the jury and forfeiture applies.[3]

### B. It is not a "ministerial" task to determine whether any sound recordings in PX-1 are derivative of any musical compositions in PX-2.

To persuade the Court that it would not be engaging in improper factfinding despite *Feltner* and this Court's earlier summary judgment ruling, Cox argued that the process of determining which sound recordings in PX-1 are derivative of musical compositions in PX-2 is a

---

[3] Courts can decide some issues relating to statutory damages, but only in the absence of an underlying factual dispute. *See, e.g., BMG Music v. Gonzalez*, 430 F.3d 888, 892 (7th Cir. 2005) ("*Feltner* holds that a claim for statutory damages under § 504(c) is a suit at law to which the seventh amendment applies. This does not mean, however, that a jury must resolve every dispute. When there are no disputes of material fact, the court may enter summary judgment without transgressing the Constitution."); *Columbia Pictures Television, Inc. v. Krypton Broad. Of Birmingham, Inc.*, 259 F.3d 1186, 1193-94 (9th Cir. 2001) ("Although there may be a case in which the issue of what constitutes a "work" is a jury question, we need not address that issue at this time. In the present action, the question whether each episode of a television series is a separate work is a question of law because there are no underlying factual disputes for the jury to resolve.").

"ministerial" task that should not prevent judgment as a matter of law.  ECF 682 at 10 n.6.  But Cox's own submissions in response to the Court's June 2 Order proves that Cox's argument is demonstrably untrue.  The nature and volume of material that Cox submitted, and the lengthy analysis that it conducted, show that the task is anything but ministerial.  The process of determining whether any works in suit are derivative of one another requires detailed review, research, analysis, and decision-making.  Cox's August 3 submission is akin to a full-blown expert analysis.

Cox created a number of different documents for its August 3 submission.  Cox's "Schedule 1" is a spreadsheet with 2,200 rows, 11 columns, and thousands of cited exhibits. ECF 711-3.  It includes Cox's post-trial analysis concerning possible links between certain sound recordings in suit and certain musical compositions in suit.  Cox's "Schedule 2" and "Schedule 3," though smaller, are just as complex.  ECF 711-4; ECF 711-5.  Cox's 25-page memorandum adds layers of discussion concerning the meaning and significance of these brand new schedules and cited exhibits.[4]

Cox concedes that its post-trial analysis consists of much more than a mere comparison to check if a title on PX-1 also is on PX-2.  Indeed, Cox acknowledges that a title comparison alone across PX-1 and PX-2 would be an *unreliable* means to conclude one work is derivative of

---

[4] Plaintiffs request that the Court expressly disregard, or strike, Cox's "Schedule 4" and the column of Cox's Schedules 1 and 3 entitled "Multiple Works Asserted as Part of Same Compilation." Those materials address whether certain sound recordings in suit were registered with the U.S. Copyright Office as part of *compilations*.  They are not germane to the briefing presently before the Court; rather they relate to Cox's other statutory damages argument that the Court already rejected.  ECF 707 at 24-36 (Section II.B.3(a)).  Cox failed to present admissible evidence on this issue at summary judgment and failed to do so again at trial.  Cox presumably provides this never-offered testimony now so that it can cite to something on appeal.  The submissions are improper. They serve only to confuse the record.

another.  Cox's August 3 brief recognizes that titles certainly can appear only once on both PX-1 and PX-2, and yet the sound recording reflected on PX-1 may not be derivative of the musical composition appearing with the same title on PX-2.  Mot. at 10 (describing Cox's Schedule 2).  By way of example, PX-1 includes a sound recording named *Immortality* by the artist Celine Dion.  No other recording on PX-1 bears that same title.  But there is one musical composition named *Immortality* on PX-2, with a cited copyright registration record that lists members of the band Pearl Jam as the authors.  Based on PX-1 and PX-2 and the registration certificates cited therein, there is no indication whether Celine Dion's *Immortality* sound recording has any relationship to Pearl Jam's *Immortality* musical composition.  For its August 3 submission, Cox located a separate copyright registration for a musical composition titled *Immortality* by Celine Dion.  ECF 711-4 at 1 (Schedule 2).  In other words, two separate compositions and sound recordings just happen to bear the same title.  Cox's August 3 brief further explains that the same title can appear multiple times on one or both of PX-1 or PX-2, yet reflect distinct works without any relationship to one another.  Mot. at 11, 15-19 (describing Cox's Schedule 3, using the example of multiple sound recordings and musical compositions named *Angel*).

After comparing the titles on PX-1 and PX-2, Cox then reviewed the overlapping titles against copyright registrations to identify a possible link to "confirm or support the conclusion that the sound recording is derivative of the musical composition."  Mot. at 9-10.  And Cox's review was by no means ministerial.  Cox analyzed at least four different factors on each copyright registration:  (1) name of the artist; (2) name of the album; (3) ownership information; and (4) publication date.  Mot. at 14.  Cox reviewed these fields across thousands of registration documents, engaging in additional research and analysis, as Cox deemed required, and making judgment calls.

Depending on the title, Cox chose to rely upon different aspects of the copyright registrations.  In some instances, Cox relied on the name of the artist or album.  In other instances, Cox relied on publication date.  Moreover, there are further factual complexities within Cox's analysis.  As mentioned, some titles appear only once on both PX-1 and PX-2 but *without* the sound recording being derivative of the musical composition.  Mot. at 10, 12 n.17.  In other instances, the same title appears multiple times on one or both of PX-1 or PX-2.  Mot. at 11, 15-19.  In reviewing the copyright registration certificates, Cox came to the conclusion that some sound recordings in suit were derivatives of a musical composition in suit.  For others, however, it did not come to that conclusion through a review of the registration certificates. Mot. at 11 n.16,18 n.19.

Cox acknowledges that even this level of detailed analysis was not always sufficient.  For 101 titles it labels as derivative, Cox could not find any connection between the works on PX-1 and PX-2.  Mot. at 14.  In those instances, Cox makes the flimsy argument that the *lack* of any contrary information is somehow sufficient to presume works are derivative.  *Id.*

In looking at publication dates to serve as the possible link between works on PX-1 and PX-2, Cox acknowledges that in some instances, the dates do not match, but claims the dates "are in close proximity."  Mot. at 14.  Here, Cox asks the Court to *draw the inference* that dates "in close proximity" means that one work is derivative of the other.  Of course, Cox does not explain what methodology it employed to determine when publication dates were "close enough" to link the sound recording to the musical composition, or when the dates are too far apart.  *Id.*

None of Cox's analyses or various exercises of judgment presented above have been subject to any cross-examination, let alone consideration by a jury.  And Cox would be hard-pressed to dispute that its August 3 submission is akin to expert analysis, given that Cox goes on

at length to compare its approach to the *expert* analysis of Plaintiffs' testifying expert, Dr. George McCabe.  Mot. at 6-7.  Cox's comparison is misplaced, however.  Dr. McCabe is a statistician who opined, *inter alia*, on the connection between notices and works in suit.  Dr. McCabe did not opine—either in his reports, his summary judgment declarations, or at trial—on whether sound recordings in PX-1 are derivative of musical compositions in PX-2.  ECF 712 (McCabe Reports); ECF 325-2 (McCabe Summary Judgment Decl.); Tr. 775:20-871:21 (McCabe Testimony).  Even if Dr. McCabe had conducted the analysis that Cox attributes to him, moreover, that would only demonstrate that Cox's alleged copycat analysis was not the ministerial act it told the Court it would be, but in fact, required a detailed examination of numerous sources of information, including analysis and judgment regarding the meaning of the information.  If Cox wanted the jury or Court to consider an expert analysis on the derivative work damages issue, it should have timely provided that expert analysis during discovery and then at trial.

The consequence for Cox's complete failure of proof is simple:  Cox cannot ask this Court to engage in post-trial factfinding, including making inferences, crediting Cox's assumptions, and drawing conclusions on issues constitutionally reserved for the jury.  *Feltner*, 523 U.S. at 355; *see also Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150 (2000) ("Credibility determination, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.").  Accordingly, judgment should be entered for Plaintiffs without any reduction from the $1 billion jury verdict.

\*       \*       \*

Each of the foregoing grounds separately and independently compels entry of judgment for the full amount of the jury's $1 billion verdict.

Rejecting Cox's request also is consistent with the jury's unmistakable intent.  The jury carefully weighed the evidence and statutory damages considerations, including the irrefutable evidence of Cox's blatant disregard for Plaintiffs' rights and the law, and awarded Plaintiffs exactly $1 billion—the amount that the jury determined Cox must pay in light of its willful infringement.  Indeed, it is clear that the jury *first* determined the total award it deemed appropriate, and *then*, based on that, divided that award by the total works in suit to determine the per-work award amount.  It is not a coincidence that the per-work award is a specific number, down to the penny, whereas the overall award is a round figure of $1 billion.  Whether dividing the $1 billion by 10,017 works or by 7,579 works (Cox's proposal), the award rests comfortably within the Copyright Act's statutory range for willful infringement and is consistent with the jury's unequivocal findings and intent.  Thus, the award should remain intact.  17 U.S.C. § 504(c)(2).

Where the intent of the jury is clear, courts should ensure that it is honored.  For example, in the employment discrimination context, where plaintiffs routinely bring claims under parallel state and federal laws and where juries occasionally award plaintiffs more damages than federal law permits, courts regularly reallocate the jury award between state and federal claims in order to preserve as much of it as possible.  *See, e.g., Rodriguez-Torres v. Caribbean Forms Manufacturer, Inc.*, 399 F.3d 52, 66 (1st Cir. 2005) (collecting similar cases from five other courts of appeal).  The reason for this solicitude is clear: "[a]n allocation that would serve to reduce lawfully awarded damages would fail to respect the jury's verdict and conflict with the purpose and intent of" the governing statutes.  *Passantino v. Johnson & Johnson*, 212 F.3d 493, 510 (9th Cir. 2000).  The same reasoning applies here.  The jury awarded damages within the

range permitted by the Copyright Act, and its verdict should be respected and maintained in whole.

## II. EVEN IF THE COURT REDUCES THE JURY'S DAMAGE AWARD, COX'S CHALLENGE STILL FAILS FOR CERTAIN WORKS.

As demonstrated above, Cox's attempt at a post-verdict factfinding exercise is improper. Nonetheless, if the Court is inclined to engage in Cox's requested reduction of the number of works eligible for statutory damages (and it should not), Cox's proposal of $756,613,767.91 removes too many works.  For a number of Cox's proposed removals, Cox has failed to demonstrate that the sound recording in PX-1 is derivative of the musical composition in PX-2.

### A. Background.

#### 1. Cox bears the burden to demonstrate there was insufficient evidence to support the jury's conclusion that the musical compositions and sound recordings each receive their own award.

This post-trial briefing is a continuation in part of Cox's Rule 50(b) motion for judgment as a matter of law, on which Cox bears a heavy burden.  A motion for judgment as a matter of law may only be granted if "a party has been fully heard . . . and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party."  Fed. R. Civ. P. 50(a)(1). A court must affirm a verdict "if, viewing the facts in the light most favorable to the non-moving party, there is sufficient evidence for a reasonable jury to have found in the non-moving party's favor."  *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 199 F. Supp. 3d 958, 969 (E.D. Va. 2016) (*aff'd in part, rev'd on other grounds*) ("*BMG II*") (alterations omitted).  A court is "likewise obliged to accord the prevailing party the benefit of all reasonable inferences to be drawn from the evidence."  *Roe v. Howard*, 917 F.3d 229, 233 (4th Cir. 2019).

Recognizing the difficulty it faces under that standard, Cox tries to upend the process and shift the burden.  Cox asserts that titles appearing only once on both PX-1 and PX-2 "are

*presumptively derivative* under the Court's order," and that Plaintiffs then bear the burden to show otherwise.  Mot. at 1 (emphasis added); *see also* Mot. at 13-14.  But Cox makes that up from whole cloth.  Nor would such a presumption even make sense, as even Cox concedes that a sound recording listed on PX-1 can bear the same title as a musical composition listed on PX-2, yet not be a derivative work of that composition.  Mot. at 10.

The Court endorsed no such presumption, either.  It indicated that Cox could prepare a list of overlapping works in suit, based on how the copyrights correspond with one another, and that Plaintiffs may respond to that proposal.  ECF 707 at 52.  Cox's further documentation of its request to reduce the number of damage awards based on the relationship between sound recordings and musical compositions is just another part of Cox's Rule 50(b) motion for judgment as a matter of law.  Plaintiffs already prevailed at trial.  Cox bears the same heavy burden as any non-prevailing party who files a Rule 50(b) motion.[5]

### 2.  Cox cannot go outside the trial record to argue in its Rule 50(b) motion that a particular work is derivative of another work in suit.

The Supreme Court has made clear that motions under Rule 50(b) must be adjudicated based on the trial record, not the pretrial record.  "Once trial has been had … the availability of [a defense] should be determined by the trial record, not the pleadings nor the summary judgment record."  *Ortiz v. Jordan*, 562 U.S. 180, 184 (2011) (internal quotations omitted); *see also Durham v. Jones*, 737 F.3d 291, 302 (4th Cir. 2013) (affirming denial of Rule 50(b) motion

---

[5] Cox's reliance upon *EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 844 F.3d 79,101 (2d Cir. 2016) is misplaced.  Mot. at 19-20.  That decision did not concern which party bears the burden on a Rule 50(b) motion.  Nor did it discuss more generally which party, if any, must prove whether an infringed work in suit is or is not derivative of another work in suit.  The court merely relied on the jury instruction given below and found that there was sufficient evidence in the record to uphold the jury's verdict on statutory damages.  *MP3tunes*, 844 F.3d 79 at 101.

based on examination of trial record and explaining that "[w]hatever artful affidavits might have suggested at summary judgment, we examine here the trial record, not a hypothetical rumination on what could have or might have transpired."); *Elusta v. Rubio*, 418 Fed. Appx. 552, 554-55 (7th Cir. 2011) (refusing to consider appellant's argument about the scope of Illinois' intentional infliction of emotional distress law based solely on pretrial record); *Paez v. Gelboym*, 578 Fed. App. 407, 408 n.1 (5th Cir. 2014) (affirming partial grant of renewed motion for judgment as a matter of law, stating "[w]e do not consider evidence that was not presented to the jury").

Ignoring this maxim, Cox relies upon documents in the pretrial record, plus some entirely new documents that were neither offered nor admitted into evidence at trial. Cox argues about what it characterizes as "Plaintiffs' reliance on title matching to prove their liability case"[6]— citing the summary judgment hearing, reports and a declaration from Plaintiffs' expert, Dr. George McCabe, and even an exhibit that was never presented or admitted at trial. Mot. at 5-8, 20. Cox further requests the Court take judicial notice of 41 copyright registration records that *are not* part of the trial record. Mot. at 9-10 n.12. These materials cannot support Cox's attempt to lower the number of statutory damage awards. Cox's strenuous avoidance of the trial record is, of course, not surprising; the trial is where Cox should have made its record. It did not.

**B. Cox's effort to exclude specific works from the jury's statutory damage awards fails.**

**1. Where Cox relies upon nothing more than a title match and the absence of information, the Court should reject Cox's claim that the sound**

---

[6] Cox takes liberties by asserting Plaintiffs "relied on unique title-matching to prove that Cox had knowledge of, and was liable for, its subscribers' infringement of compositions." Mot. at 20, citing to Mot. at 5-8. Plaintiffs' argument at summary judgment as to Cox's knowledge speaks for itself. ECF 325 at 24-28 (Plaintiffs' Motion for Summary Judgment); ECF 392 at 24-29 (Plaintiffs' Opposition to Cox's Motion for Summary Judgment); and ECF 456 at 25-27 (Plaintiffs' Reply in Support of their Motion for Summary Judgment).

**recording is derivative of the musical composition.**

For 101 of the 2,220 unique titles that Cox contends are overlapping, Cox argues that "the certificates are at least consistent with [Cox's] conclusion." Mot. at 14. Here, Cox argues from the negative that the certificates "include[] no information to suggest that the sound recording is *not* derivative of the composition." *Id.* But that logic is clearly flawed.

The fact that a registration certificate lacks information to *disprove* that a work is not derivative of another work is, of course, not the same as proof that a given work is, in fact, derivative of the other. Indeed, Cox's August 3 memorandum recognizes that sound recordings and musical compositions that appear only once on PX-1 and PX-2 can bear the same title but *not* be derivative works. Mot. at 10. For these 101 works, Cox identifies nothing from the registration certificate supporting a conclusion that the sound recordings and musical compositions bearing the same title are in fact derivative.

Cox bears the burden to show these works are derivative, *see supra* Section II.A.1, and it has failed to do so. Thus, for these 101 works, which are identified on Plaintiffs' Exhibit A, Cox's challenge fails.

### 2. Where Cox relies upon copyright registrations outside the trial record, the Court should reject Cox's claim that the sound recording is derivative of the musical composition.

Cox relies upon copyright registrations that are not in the trial record as its sole basis for challenging a statutory damage award for 41 of the 2,220 unique titles that Cox contends are overlapping. Mot. at 10 n.12. But that is improper. *See supra* Section II.A.2. Cox provides no authority that would permit a court to take judicial notice of documents that are outside the trial record in deciding a post-trial motion for judgment as a matter of law. In fact, the notion that a party may supplement a trial record with judicially noticeable "facts" subverts the very idea that

a defendant is entitled to judgment as a matter of law solely based on the facts presented to the jury.

Both because Cox agrees that sound recordings and musical compositions that appear only once on both PX-1 and PX-2 can bear the same title but not be derivative works, and because Cox cannot rely upon registration certificates outside the trial record, Cox's challenge as to these 41 works, which are identified on Plaintiffs' Exhibit A, fails. Seven of these 41 works are also among the 101 works addressed in Section II.B.1, *supra*. In total, there are 135 unique works addressed in all of Section II for which Cox's challenge fails.

### III.   COX'S CHALLENGES TO THE WORKS THAT WERE WITHDRAWN FROM THE *CHARTER* CASE ARE MISPLACED AND SHOULD BE REJECTED.

Cox's challenge also overreaches by seeking to remove works that, after the trial in this case, Plaintiffs chose not to proceed on in an unrelated action, *Warner Records Inc. et al. v. Charter Communications, Inc.*, No. 1:19-cv-00874 (D. Colo.) ("*Charter*").

#### A.   Background.

In the portion of this Court's June 2 order addressing Cox's Rule 50(b) renewed motion for judgment as a matter of law, the Court indicated that Cox may address the works withdrawn from *Charter* as part of its proposal for the number of works in suit for statutory damages. ECF 707 at 52. Cox's post-trial motions addressed these works under Federal Rule of Civil Procedure 59(a). ECF 684 at 30 n.23. Cox's challenges to the withdrawn *Charter* works fail regardless of whether they are considered under either Rule 50(b) or 59(a).

Rule 50(b) standards are set forth above. *See supra* Section II.A.1-2. A Rule 59(a) motion will be granted only if "(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Atlas Food*

*Sys. and Servs., Inc. v. Crane Nat'l Vendors, Inc.*, 99 F.3d 587, 594 (4th Cir. 1996).  Pursuant to

that rule, a district court does not take any action "unless it is reasonably clear that prejudicial

error has crept into the record or that substantial justice has not been done, and the burden of

showing harmful error rests on the party seeking the new trial."  11 Wright & Miller Fed. Prac.

& Proc. Civ. § 2803 (3d ed. 2020).  A motion under Rule 59(a) on the ground of newly

discovered evidence "must be of facts existing at the time of trial" and "[t]he moving party must

have been excusably ignorant of the facts despite using due diligence to learn about them[.]"  11

Wright & Miller Fed. Prac. & Proc. Civ. § 2808 (3d ed. 2020).  Under either standard, Cox's

challenge to the withdrawn *Charter* works fails.

### B.  Withdrawal of some works in a separate action is not a basis for Cox to relitigate summary judgment of Plaintiffs' ownership of these works.

Cox argues that there are 88 works for which Plaintiffs received statutory damages in this

case, but which should be removed because Plaintiffs later withdrew them from the *Charter*

litigation.  Mot. at 9, 20.  Cox postulates that Plaintiffs' decision not to proceed on the works in

another case means that Plaintiffs lacked copyright ownership of them.  Cox is wrong.

As a threshold matter, Cox cannot now challenge Plaintiffs' ownership of certain works

after the jury was told, with Cox's consent, that Plaintiffs owned those works.  Tr. 23:24-24:3

(preliminary instruction); ECF 606-1 at 26 (Cox's Proposed Jury Instruction No. 23); ECF 645-1

at 25 (Cox's Revised Proposed Jury Instruction 23); ECF 671 at 23 (Instruction No. 22).

Moreover, the Court already granted summary judgment on Plaintiffs' ownership of those works.

Cox offers nothing more than speculation and innuendo—much of which this Court has already

rejected—in support of its request.  Withdrawing works from a different case after the trial in

this case is not evidence of anything.  These works, which are identified on Plaintiffs' Exhibit A,

should not be removed.

### 1. Plaintiffs' decision not to pursue works in another litigation is not evidence of anything—let alone a lack of ownership.

It is routine in large-scale infringement litigations for plaintiffs to add or remove works in suit over the course of litigation, for a broad array of reasons.  Cox nonetheless contends that the *Charter* Plaintiffs withdrew works in that case because they do not own them.  Cox has no basis for this argument.

While ownership is obviously one of the elements for a copyright claim, the tactical question of what works to proceed upon involves a broad set of considerations, including discovery burdens and how the works fit into the liability theory.  A plaintiff choosing not to proceed on certain works is not evidence of anything.  *See, e.g., John Wiley & Sons, Inc. v. Book Dog Books, LLC*, No. 13CV816, 2017 WL 10844685, at *2 (S.D.N.Y. Dec. 8, 2017) ("Plaintiffs' motion to preclude evidence regarding Plaintiffs' withdrawn claims is granted.  Plaintiffs may have dropped these claims for any number of reasons, and it would be confusing and a waste of time to subject the jury to sorting through testimony about other works given the number of works at issue in this case"); *Gorbea v. Verizon N.Y., Inc.*, 11–cv–3758, 2014 WL 2916964, at *2 (E.D.N.Y. June 25, 2015) ("The previously dismissed claims ... are not of consequence in determining the action and therefore will be excluded."); *Fairley v. Wal-Mart Stores, Inc.*, No. 15-462, 2016 WL 6584778, at *1 (E.D. La. Nov. 7, 2016) (granting motion in limine to exclude evidence on plaintiff's voluntarily dismissed claims).

Against that backdrop, Cox resorts to distorting the record from *Charter*.  As to the works in this case that Plaintiffs chose not to proceed on in *Charter*, Cox told this Court that Plaintiffs "have confirmed in their representations" in *Charter* "that they cannot establish ownership over them."  Mot. at 2.  Cox's statement is false, however, and Cox points to nothing other than its own say-so and incomplete excerpts from a hearing transcript.  When the *Charter* court asked if

it is acceptable for plaintiffs in a case to obtain damages on works they had no rights to, Plaintiffs' counsel responded by saying, "that's not the situation in the slightest." Ex. D (*Charter* Tr. at 27:22-28:6). The *Charter* court asked, "but hypothetically, is that proper?" and Plaintiffs' counsel then defended how Plaintiffs proceeded. Ex. D (*Charter* Tr. at 28:7-30:24). Far from how Cox depicted the discussion, Plaintiffs' counsel indicated that, "[t]o the extent that [Charter is] now suggesting because certain works were dropped that we did not – appear to not own the works, there is no evidence to suggest that." Ex. D (*Charter* Tr. at 30:22-24).

Cox's assertion that an order in *Charter* to produce ownership documentation led Plaintiffs to drop works is idle speculation. Mot. at 8. The amendment of the lists of sound recordings and musical compositions asserted by Plaintiffs in *Charter* was contemplated from the start of that case. *Charter* ECF 44 at 10 (June 13, 2019 scheduling order providing for Jan. 15, 2020 deadline for Plaintiffs to file amended versions of Exhibit A and B to the Complaint).

Accordingly, the Court should reject Cox's attempt to read anything into the fact that Plaintiffs elected not to proceed with their infringement claims in an unrelated case as to certain works from a lengthy list of over 10,000 works in suit.

### 2. This Court should not draw an "inference" of lack of ownership of 38 Works withdrawn from *Charter*.

Nor is there merit to Cox's post-trial argument on these *Charter* works. For 38 of the 88 *Charter* works, Cox's sole argument is that the Court should "infer" that Plaintiffs do not own them simply because Plaintiffs chose not to proceed on them in *Charter—nothing more*. Mot. at 20. Cox asks this Court to *speculate* that Plaintiffs withdrew them in *Charter* because Plaintiffs do not own them and that it should be Plaintiffs' burden to prove the contrary. Mot. at 24. Even that speculation is improper, as explained immediately above. But in any event, Cox misunderstands which party carries the burden at this juncture of the proceeding.

Plaintiffs already carried their burden on this issue at summary judgment.  Now Cox

bears the burden on its motion, both under Rule 50(b) and Rule 59(a).  *See supra* at Sections

II.A.1 and III.A.  Cox's speculation is not evidence.  Nor can Cox go outside the record and rely

on events that took place after trial.  *Id.*

Cox has no authority for its proposed burden shifting, or for the proposition that a party's

withdrawal of certain works in one case constitutes *prima facie* evidence that the party does not

own those works in another case.  Mot. at 24.  As explained above, there are many

considerations that can inform a copyright owner's decision regarding which works to proceed

with in a particular case.  Plaintiffs already carried their burden in this case to prove ownership

by submitting detailed declarations, copyright registrations, and chain of title documents.  *See*

ECF 325-3 (Leak Decl.); ECF 325-4 (Patel Decl.); ECF 325-5 (Poltorak Decl.); ECF 325-8

(Kokakis Decl.); ECF 325-9 (McMullan Decl.); ECF 325-10 (Blietz Decl.).  Cox tried and failed

to defeat Plaintiffs' ownership claim on these 38 works at summary judgment, offered no

evidence at trial, and its naked assertions now do not fare any better.

### 3.  Cox's challenges fail for the remaining 50 *Charter* works.

Cox asserts that, of the works withdrawn from the *Charter* case, there are 50 for which

there is "affirmative evidence that Plaintiffs do not own them, or for which there is insufficient

proof of copyright validity and ownership in the record."  Mot. at 20.  Cox's attempt at

relitigating the Court's summary judgment decision on ownership, especially given the parties'

stipulated jury instruction that Plaintiffs own these works, should be rejected.

For 15 of the 50 works, Cox's argument is not that Plaintiffs lack ownership, but rather

that the summary judgment schedules cited the wrong registration certificates.  Mot. at 21-23.

Even assuming, *arguendo*, that the incorrect registrations were listed, that does not indicate that

Plaintiffs do not own these works or that they were never registered.  Moreover, the parties already litigated ownership at summary judgment, which is when Cox could have, but failed to, make this argument.  Cox cannot seek reconsideration of the Court's summary judgment ruling ten months later, in a second round of briefing on its Rule 50(b) motion.

For the other 35 works, Cox relies on documents outside the trial record to speculate that Plaintiffs may not own the works.  Mot. at 23-24 (discussing 26 sound recordings and nine musical compositions).  Again, the parties already litigated ownership at summary judgment, which is when Cox could have, but failed to, make this argument.  In any event, as to these 35 works, Cox merely argues that the chain of title that Cox received during discovery did not also include a specific document (*e.g.*, a contract term extension) showing an extension of rights into the claim period.  Mot. at 23-24.  Cox overlooks, however, that Plaintiffs further provided a copyright registration and declaration testimony explaining ownership.  That Plaintiffs could potentially have provided *more* proof does not mean that the proof they provided was insufficient.  Declaration testimony is sufficient, without a need for documentation to connect every dot.  *Arista Records LLC v. Lime Grp. LLC*, No. 06-cv-5936, 2011 WL 1641978, at *4 (S.D.N.Y. Apr. 29, 2011) ("Plaintiff has submitted competent evidence, in the form of unrefuted affidavit testimony, establishing chain of title to these sound recordings"); ECF 610 at 11-12 ("Once again, Cox demands documentation and ignores fact testimony from business representatives with extensive personal knowledge of the relevant business agreements and associated copyright ownership status.").

Cox cannot relitigate the Court's grant of summary judgment as to Plaintiffs' ownership of these works.  Nor does Cox have a basis to contest Plaintiffs' ownership of these works given that Cox accepted a jury instruction, given to the jury, that Plaintiffs own the works.  But even if

Cox could be heard on those arguments, they go only to the weight of the evidence, at best, without showing that any of these works must be removed from the case.

### C.  Cox double counts some *Charter* works it seeks to remove.

Finally, even if there were any merit to Cox's rank speculation concerning the works withdrawn from *Charter*, and even if Cox were entitled to re-litigate issues already decided on summary judgment and presented as fact to the jury, Cox also double counts works it seeks to remove.  Cox maintains that 21 of the 88 *Charter* works are also derivative works that should not be counted twice, in the event the Court removes derivative works from the damages award.  Mot. at 24.  Cox's math is incorrect.  In actuality, *47* of the 88 *Charter* works that appear in Cox's Schedule 5 are works that Cox *also* alleges are derivative works.  *See* Plaintiffs' Exhibit B.  After adjusting for Cox's miscounting, Cox's actual position is that the award of statutory damages should be for 7,605 works, not the 7,579-work figure that Cox put forward in its brief.

## <u>CONCLUSION</u>

The Court should enter judgment for Plaintiffs in the amount of $1 billion, as the jury intended.  If the Court decides to disturb the amount of the verdict, however, Cox's proposed list of removals overreaches by 176 unique works and double counts another 26 works.  Thus, if judgment is not entered for $1 billion, it should be entered for $776,779,486.49, based on 7,781 works.  That is calculated by adding the 176 unique works on Plaintiffs' Exhibit A to Cox's proposed list of 7,579 works [which is really 7,605 works after fixing Cox's math error] for statutory damages and, pursuant to the Court's June 2 order, continuing to use the multiplier of $99,830.29 per work.

Respectfully submitted,

Dated October 2, 2020

/s/ Scott A. Zebrak
Scott A. Zebrak (38729)
Matthew J. Oppenheim (*pro hac vice*)
Jeffrey M. Gould (*pro hac vice*)
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Avenue, NW, 5th Floor
Washington, DC 20016
Tel:  202-480-2999
scott@oandzlaw.com
matt@oandzlaw.com
jeff@oandzlaw.com

*Attorneys for Plaintiff*