# Exhibit D

1

```
 1              IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF COLORADO
 2
    Case No. 19-cv-00874-RBJ-MEH
 3  _____

 4  WARNER BROS. RECORDS, INC., et al.,

 5       Plaintiffs,
    vs.
 6

 7  CHARTER COMMUNICATIONS, INC.

 8       Defendant.
    _____
 9

10          Proceedings before MICHAEL E. HEGARTY, United

11  States Magistrate Judge, United States District Court for the

12  District of Colorado, commencing at 3:03 p.m., February 19,

13  2020, in the United States Courthouse, Denver, Colorado.

14  _____

15          WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS

16  ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED. . .

17  _____

18                       APPEARANCES

19          NEEMA SAHNI, JONATHAN SPERLING and MATT OPPENHEIM,

20  Attorneys at Law, appearing for the Plaintiffs.

21          ERIN RANAHAN, SEAN ANDERSON, CRAIG JOYCE and

22  JENNIFER GOLINVEAUX (via phone), Attorneys at Law, appearing

23  for the Defendant.

24  _____

25                    DISCOVERY CONFERENCE
```

27

1  not challenged on things like this and they will go to the
2  end still claiming a right when they -- if they look deeper.
3           THE COURT:  Are you doing anything to challenge
4  that, then, in Cox?
5           MS. RANAHAN:  I would hope so.  I'm not on the Cox
6  team, unfortunately or fortunately, depending on how you look
7  at it, but I believe that's a subject of -- I mean, that --
8  it just happened here, right, and we're looking at it, you
9  know, it's interesting that it would -- and they were ordered
10 to produce the work-for-hire agreements in that case.
11          So I don't know what the reason was that they
12 pursued damages claims which now, looking at the face of the
13 registration so obvious, if it's obvious, why was it in this
14 case.
15          THE COURT:  Let me ask you something.
16          MR. SPERLING:  Yes, Your Honor.
17          THE COURT:  Are you counsel in Cox?
18          MR. SPERLING:  I am not, Your Honor, Mr. Oppenheim.
19          MR. OPPENHEIM:  I was lead counsel for Cox.
20          THE COURT:  Can I ask you this?
21          MR. OPPENHEIM:  Happy to.
22          THE COURT:  Is it acceptable in a federal court
23 after a jury renders a verdict that there may be a 5
24 percent -- I'm going to throw out a number, a 5 percent rate
25 that the collective plaintiffs had no right to the works so

28

1   that that's $50 million?  Is that an acceptable way to
2   proceed in federal court in a damages case, that you get that
3   $50 million, even though as a technical matter you weren't
4   entitled to it?  Is that proper?
5           MR. OPPENHEIM:  So the answer, I have no idea that
6   that's not the situation in the slightest.
7           THE COURT:  No, but hypothetically, is that proper?
8           MR. OPPENHEIM:  I can't -- Your Honor, I'm not in a
9   position to opine on that.  The plaintiffs in that case were
10  sued works that we had every rights to pursue.  The
11  defendant, counsel on the other side, Winston & Strawn,
12  defended vigorously on the ownership issue, on the
13  registration working, on the work-for-hire issue.  They lost
14  those issues.  We won those issues.
15          THE COURT:  You mean on the discovery?
16          MR. OPPENHEIM:  Not only on discovery, Your Honor,
17  but on summary judgment.  We won summary judgment of
18  ownership on everyone of the works that we moved on.
19  Actually, I take that back, there were a handful of works
20  that we dropped found at the end because of issues, but we're
21  talking about 10 or 12, I believe.
22          On the work-for-hire issue, we had an entire
23  briefing and there was a decision by the Court on the
24  work-for-hire issue, and the Court decided that if a -- if a
25  company -- the designation of a copyright registration, of a

1   work is a work for hire, even if it's not work for hire, does
2   not invalidate the registration.
3          So Ms. Ranahan --
4          THE COURT:  No, she said it just doesn't entitled
5   you to statutory damages, that's what she said.
6          MR. OPPENHEIM:  No, she's simply wrong.  She is
7   (inaudible - away from mic) in this case, Your Honor.  They
8   assert that if a party marks the work as work for hire, and
9   it's not, a copyright registration is invalid, that's the
10  assertion.  They cite to no authority for that proposition,
11  and the reason they cite to no authority for that proposition
12  is because there is no authority for that.  In fact, they are
13  acutely aware that the authority in the Cox case goes the
14  other way and says that not the case.
15         The registration of something where a party may
16  have marked it as work for hire when it's not, does not
17  invalidate.  And in this case, as in Cox, they acknowledge
18  that the plaintiffs ultimately own works.  It's not an issue
19  of ownership.  They're not disputing the ownership and even
20  their letter here said they don't dispute ownership.  They're
21  just saying that there may have been a box checked for eight,
22  or they disagree.  Whether or not -- we could litigate over
23  those eight, but it doesn't matter, the plaintiffs still own.
24         Going back to the Cox case, Your Honor, in the Cox
25  case the Court ruled that we own works and they were properly

1    registered and they were before the jury.

2            THE COURT:  Right, and by -- you don't need to
3    stand, but you can.  Have you seen the outcome of this 110
4    sample?

5            MR. OPPENHEIM:  I have, Your Honor.

6            THE COURT:  Okay.  And do you believe now that
7    every plaintiff that prevailed in the Virginia case actually
8    was the correct legal entity, having the correct ownership
9    right, every single one, was the correct legal entity having
10   the correct legal ownership right and is entitled to that
11   money as a matter of law?  Do you believe that sitting here
12   today?

13           MR. OPPENHEIM:  Your Honor, I believe that the
14   judgment --

15           THE COURT:  No, no, that's not what I'm asking you.
16   If you can't answer the question, say you can't answer the
17   question.

18           MR. OPPENHEIM:  Your Honor, I'm not sure -- I
19   can't -- I believe that the judgment that was rendered there
20   on every single work was an appropriate judgment.  I believe
21   that the -- not only by the jury, but by the judge.

22           To the extent that they're now suggesting because
23   certain works were dropped that we did not -- appear to not
24   own the works, there is no evidence to suggest that.

25           THE COURT:  That's not the question I asked you.

1   If you can't answer my question, I appreciate that.

2            MR. OPPENHEIM:  I can't answer your question.

3            THE COURT:  Okay.

4            MS. RANAHAN:  Can I just say one thing about what

5   happened on this issue?

6            THE COURT:  Yes.

7            MS. RANAHAN:  In the Cox case, we didn't have the

8   work-for-hire agreements, so it wasn't before the judge, and

9   the discovery court didn't allow it, but it wasn't raised

10  like I'm raising it now.  It was kind of a side issue that

11  wasn't really emphasized.  Once we got to trial, we realized

12  we needed this, we didn't have them, so now we're going to

13  try to get them in this case.

14           Separately what happened on the Cox rulings for

15  these issues that were presented on summary judgment, is the

16  Court struck our declarations finding them to be getting

17  around the page limit, the attorney declarations trying to

18  make this argument, so just disregarded all of the chain of

19  title issues that we found just as a procedural matter saying

20  these are trying to get around the page number, I'm not going

21  to read it.  I understand it's dry and boring and long stuff,

22  but we had a lot of arguments there that were disregarded

23  procedural.

24           On top of that, plaintiffs were able to cure any --

25  they were able to submit declarations that said, Well, we may