## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| SONY MUSIC ENTERTAINMENT, *et al.*,   )<br><br>*Plaintiffs*,   )<br><br>v.   )<br><br>COX COMMUNICATIONS, INC., *et al.*,   )<br><br>*Defendants*.   ) | Civil Action No. 1:18-cv-00950<br>Hon. Liam O'Grady |

## <u>ORDER</u>

This matter comes before the Court on the parties' post-trial briefs pursuant to the Court's June 2, 2020 Order. Dkt. 707. In that Order, the Court permitted Defendant Cox to submit post-trial briefing supporting its contention that the damage award by the jury was improper because certain works at issue were derivative of others; the Court also allowed Cox to submit its calculation of appropriate statutory damages based on the number of unique works in the case. Dkt. 707 at 52. The Court permitted Plaintiffs to produce evidence to rebut Cox's assertions. *Id.* The Court also permitted the parties to submit argument concerning whether the works withdrawn from another of Plaintiffs' cases, *Warner Records, Inc. et al v. Charter Communications, Inc.* (No. 1:19-cv-00874-RJB-MEH (D. Colo.), ECF No. 100, should be included in the determination of damages. *Id.* Defendants have submitted their post-trial brief (Dkt. 711), and Plaintiffs have submitted their response (Dkt. 718).

### I.   BACKGROUND

Members of the music industry, including record companies and publishers, filed this

action against Defendants Cox Communications, Inc. and CoxCom, LLC (collectively, "Cox"), an Internet service provider and its parent company, on July 31, 2018.[1] In its suit, Plaintiffs alleged copyright infringement by Defendants' subscribers during the period between February 1, 2013 and November 26, 2014 (the "claim period"). Plaintiffs accordingly sued Cox for contributory copyright infringement and vicarious copyright infringement. Dkt. 1 at 25–29. Plaintiffs claimed this infringement occurred on peer-to-peer networks.

At trial, Plaintiffs presented to the jury a total of 10,017 copyrights that Defendants' subscribers allegedly infringed upon during the claim period. The Court found during summary judgment proceedings that Plaintiffs owned all of the copyrights in suit within the meaning of the Copyright Act, and that Cox had sufficient knowledge of the alleged infringement to satisfy the knowledge element of the contributory infringement claim.

At the close of evidence, Cox moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a). The Court denied the motion, and the jury returned a verdict holding Cox liable for both vicarious and contributory infringement of all 10,017 claimed works. Plaintiffs elected statutory damages, and the jury awarded Plaintiffs $99,830.29 per work for a total of one billion dollars in statutory damages.

After the jury returned its verdict, Cox moved the Court for post-verdict relief under Federal Rules of Civil Procedure 50 and 59. The Court found no basis on which to disturb the jury's findings, and thus denied Cox's Rule 59 Motion for a New Trial. Dkt. 707. The Court granted Cox's Rule 50 Renewed Motion for Judgment as a Matter of Law in part and denied it in part. *Id.* at 52. In that portion of its Order, the Court permitted Cox to challenge the amount of damages awarded to Plaintiff based on its argument that some of the 10,017 works in suit were

---

[1] The information in this section is consistent with this Court's June 2 Order, Dkt. 707. Information that is not helpful to understanding the calculation of the number of works for which Plaintiffs will receive damages has been omitted.

derivative of others, and thus ineligible for a separate statutory damage award. The Court instructed Cox to submit a new calculation of damages by eliminating the works Cox claimed were derivative, and allowed Plaintiffs to respond to that new calculation and provide evidence to rebut it. The parties' post-trial briefings addressing this issue are now before the Court.

## II.   DISCUSSION

The questions presented by the parties' post-trial briefings are whether Cox forfeited the right to challenge the number of works eligible for statutory damages by not raising the same challenge at trial and whether the Court may do so if it involves only a ministerial action. At the close of trial, the jury awarded Plaintiffs statutory damages for the works listed by Plaintiffs. Cox argues that Plaintiffs should receive only one award for statutory damages per work, rather than receiving redundant awards for works that are derivative of other works, as the Court found in its June 20 post-trial Order, and that the re-calculation is a ministerial act. Dkt. 712. Plaintiffs argue that this challenge was indeed forfeited because "Cox tried its case without providing the jury with any evidentiary foundation to discern what, if any, relationship existed between any of the 6,734 sounds recordings on PX-1 and any of the musical compositions on PX-2", and determining the duplicative works is not a ministerial act. Dkt. 718 at 5–6.

The Supreme Court has held that the Seventh Amendment guarantees the right to a jury trial in the case of a copyright owner seeking statutory damages, and that the "right to a jury trial includes the right to have a jury determine the *amount* of statutory damages, if any, awarded to the copyright owner." *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 353, (1998) (emphasis in original). The Court later clarified that holding by stating that it did not give the jury any powers it did not already have; rather, *Feltner* established only that copyright actions are typical civil actions, wherein the jury should determine questions of fact and the appropriate

amount of damages and the judge should answer questions of law. *BMG Music v. Gonzalez*, 430 F.3d 888, 892–93 (7th Cir. 2005).

Whether Plaintiffs are entitled to statutory damages for derivative works is a question of law, and one that has been answered in the negative by case law persuasive to the Court. *See Xoom, Inc. v. Imageline, Inc.*, 323 F.3d 279, 287 (4th Cir. 2003), abrogated by *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 130 S. Ct. 1237, 176 L. Ed. 2d 18 (2010) ("Although parts of a compilation or derivative work may be regarded as independent works for other purposes, for purposes of statutory damages, they constitute one work." (internal quotations omitted)). However, Plaintiffs assert that the question of which works are derivative is a question of fact that should be left to the jury, and that Cox has forfeited its opportunity to present evidence concerning that issue.

Cox did not present evidence of the supposed relationship between the sound recordings and musical compositions at trial. However, it did present this argument in its Motion for Summary Judgment of August 2019. Dkt. 329 at 44–45.

Sony successfully argued in its opposition to Defendants' Motion for Summary Judgment, Dkt. 392, that whether any of the sound recordings in PX-1 were derivative of any of the musical compositions in PX-2 presented factual questions that a jury was required to answer.  The Court denied the Motion for Summary Judgment because issues of material fact remained that were proper for determination at trial by the jury. Dkt. 586 at 24.  The Court clearly signaled in so finding that it was aware that it might be required to rule on Cox's motion that separate awards were impermissible  as a matter of law.  Trial then proceeded and Cox put forth no testimony regarding the duplicative works.  Instead it proposed a jury instruction on the issue at the close of evidence.  At the ensuing jury instruction conference the Court inquired how the jury would make such a decision and Cox pointed to PX-1 and PX-2, two compilations containing the lists of the

4

recordings and musical compositions, although no testimony about the overlap was introduced or a summary exhibit introduced. Cox proposed that the jury make this determination of duplicate works without the benefit of expert testimony or even a Summary Chart under Federal Rule of Evidence 1006. The Court denied the request, finding it unreasonable for the jury to cull through 13,000 titles of works and try to analyze their similarities or dissimilarities without any guidance from testimony in the record. The jury found all 10,017 copyrighted works infringed as stated above, and awarded plaintiff 1 billion dollars.

In post-trial rulings, the Court determined that although there was conflicting caselaw, duplicative awards were impermissible under the Copyright Act. It then asked the parties to consider what effect its ruling should have on the jury verdict. The court also incorrectly assumed that the calculation of the number of duplicative works would be a ministerial act using evidence in the trial record. Sony in its brief, correctly and forcefully points out that this analysis is not ministerial, using Cox's own brief as compelling evidence. Cox submitted three relevant schedules in its brief in support of a reduction in the number of works and each is indeed complex. Cox admits that sound recordings in PX-1 may not be derivative of the musical compositions appearing in PX-2. The many steps Cox performed in its analysis required examining the names of the artist, the name of the album, ownership information, and publication date. Performing this analysis required Cox to make judgment calls on whether works were derivative by giving the above factors different weight. These are questions of fact that must be answered by a jury. The Court was therefore wrong that this re-calculation could be made on the trial record by the Court performing a ministerial act. Cox's failure to present evidence to the jury that it had infringed on only 7,579 works resulted in the jury's determination that Cox had infringed on 10,017 works. Dkt. 712 at 1; Dkt. 669 at 2.

Cox's brief in footnote 10 makes clear that even if the jury had been asked to make this factual determination by requiring them to comb through the thousands of entries on the PX-1 and PX-2 lists, they would have been unable to determine which of them were derivative of each other.[2] Clearly, the number of derivative works in play in this case was a question for the jury. The jury answered that question with the information available, and Cox did not provide the information to the jury that it has provided to the Court in its post-trial brief.

### III.    CONCLUSION

For the foregoing reasons, the Court finds that the jury's determination of the number of works infringed stands. Cox's failure to present evidence of its own calculation to the jury at trial is determinative.

A separate judgment Order shall enter forthwith.

It is **SO ORDERED.**

January 12, 2021
Alexandria, Virginia

Liam O'Grady
United States District Judge

---

[2] "At trial, asked by the Court to explain why Cox witness Christian Tregillis could not just "add up the number of sound recordings and musical compositions," Plaintiffs' counsel successfully precluded the Tregillis testimony by arguing, in part, that Tregillis' review of only PX-1 and PX-2 meant that he had "not looked at the underlying registration[s], [so] he can't do that analysis." Ex. A (Trial Tr. 2697:6-18). But as counsel knew, Plaintiffs' expert McCabe had done precisely "that analysis," comparing PX-1 and PX-2 for the overlapping unique titles and using the registration certificates only to "disambiguate" the small number of works with non-unique titles. *See supra* at 7. Later, in opposing Cox's motion for JMOL, Plaintiffs argued that "there are simply too many separate musical compositions that happen to have the same title to have any certainty" as to which recordings derive from which compositions without going outside the record evidence. ECF 699 at 17, n.10. As Plaintiffs knew from McCabe's analysis, only a handful of the compositions in suit share the same title. *See* Ex. D (McCabe Rpt., Apr. 10, 2019), ¶¶ 42-43 (noting that "automated matching" of recordings and compositions of the two lists of works in suit worked for all but "approximately 10%" of the works in suit); *see also id.,* ¶ 37 (cross-referencing for musical compositions on "track")."