# Exhibit 1

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

| |
|---|
| WARNER RECORDS, INC., *et al.* |
|      Plaintiffs, |
| v. |
| CHARTER COMMUNICATIONS, INC. |
|      Defendant. |

Case No. 1:19-cv-00874-RBJ-MEH

## COX COMMUNICATIONS INC'S MOTION TO INTERVENE
## FOR PURPOSES OF MODIFYING THE PROTECTIVE ORDER

Pursuant to Federal Rule of Civil Procedure 24(b), Cox Communications Inc., by and through counsel, hereby moves for leave to intervene in the above-captioned action for the limited purpose of moving the court to modify the Protective Order, ECF 63, to grant Cox access to a narrow set of materials bearing on the validity of a judgment Plaintiffs in this action obtained against Cox in *Sony Music Ent'mt v. Cox Commc'ns, Inc.*, No. 1:18-cv-00950-LO-JFA (E.D. Va.).

In support of this motion, Cox relies upon its Memorandum in Support of Cox Communications Inc's Motion to Intervene for Purposes of Modifying the Protective Order; its Memorandum in Support of Cox Communications Inc.'s Motion to Modify the Protective Order; the Declaration of Elyse D. Ecthman (Echtman Decl.), as well as exhibits attached thereto; and any proper submissions made hereafter. A proposed form of Order is also submitted for the Court's consideration.

**Certification of Compliance with L.R. 7.1.**  On September 14, Cox, through counsel, requested Charter's consent to intervene in the case for purposes of seeking to modify the

protective order. Counsel for Charter indicated that Charter takes no position. *See* Echtman Decl. ¶ 8.

On September 10, Cox, through counsel, sought consent from Plaintiffs to intervene for purposes of seeking to modify the protective order. The parties conducted a meet and confer by telephone on September 10 and exchanged further email correspondence on September 17, September 19, September 20, and September 21 concerning the basis for Cox's motion. Despite Cox's efforts to fully meet and confer, Plaintiffs have declined to provide a position on Cox's motion. *See* Echtman Decl. ¶ 9.

Dated:  September 21, 2021                    Respectfully submitted,


                                             */s/ Elyse D. Echtman*
                                             Elyse D. Echtman
                                             ORRICK, HERRINGTON & SUTCLIFFE LLP
                                             51 West 52nd Street
                                             New York, NY  10019
                                             Tel: (212) 506-5000
                                             Fax (212) 506-5151
                                             eechtman@orrick.com

                                             *Attorney for Movant Cox Communications Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 21, 2021, I caused the foregoing document and

supporting materials to be filed electronically with the Clerk of the court using the CM/ECF

system, which will send a notice of electronic filing to all counsel of record registered within

CM/ECF.

*s/ Elyse D. Echtman*
Elyse D. Echtman
Orrick, Herrington & Sutcliffe LLP
51 West 52nd Street
New York, NY  10019
Tel: (212) 506-5000
Fax (212) 506-5151
eechtman@orrick.com

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

WARNER RECORDS, INC., *et al.*

      Plaintiffs,

v.

CHARTER COMMUNICATIONS, INC.

      Defendant.

Case No. 1:19-cv-00874-RBJ-MEH

**MEMORANDUM IN SUPPORT OF COX COMMUNICATIONS, INC.'S MOTION TO**
<u>**INTERVENE FOR PURPOSES OF MODIFYING THE PROTECTIVE ORDER**</u>

# TABLE OF CONTENTS

FACTUAL BACKGROUND ........................................................................................... 1

LEGAL STANDARDS ................................................................................................... 6

ARGUMENT ................................................................................................................... 7

     A.    Cox Has Standing To Intervene. .......................................................... 7

     B.    The *Cox* Litigation Shares Common Questions Of Law And Fact With This
          Action. ................................................................................................. 8

     C.    No Prejudice Will Result From Intervention. ....................................... 9

CONCLUSION ............................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Gubricky ex rel. Chipotle Mexican Grill, Inc. v. Ells*,
    No. 16-cv-3180, 2018 WL 1558264 (D. Colo. Mar. 26, 2018) .............................6, 9

*City of Stilwell v. Ozarks Rural Elec. Coop. Corp.*,
    79 F.3d 1038 (10th Cir. 1996) ...............................................................................6

*CRST Expedited, Inc. v. TransAm Trucking Inc.*,
    No. 16-cv-0052, 2018 WL 9880439 (N.D. Iowa Oct. 9, 2018) ...............................7

*EEOC v. Nat'l Children's Ctr.*,
    146 F.3d 1042 (D.C. Cir. 1998) ..............................................................................6

*Holland & Hart LLP v. Mills*,
    No. 8-cv-1408, 2009 WL 3046318 (D. Colo. Sept. 22, 2009) ...............................7

*Kahle v. Adams Cnty.*,
    No. 4-cv-1536, 2007 WL 2381403 (D. Colo. Aug. 16, 2007) ...........................8, 10

*Martindell v. Int'l Tel. & Tel. Corp.*,
    594 F.2d 291 (2d Cir. 1979) ...................................................................................7

*Pub. Citizen v. Liggett Grp., Inc.*,
    858 F.2d 775 (1st Cir. 1988) ..................................................................................7

*Rightchoice Managed Care, Inc. v. Hosp. Partners, Inc.*,
    No. 18-cv-6037, 2020 WL 5733203 (W.D. Mo. Sept. 24, 2020) .............................................6

*United Nuclear Corp. v. Cranford Ins. Co.*,
    905 F.2d 1424 (10th Cir. 1990) ..................................................................................6, 7, 8, 9

*Utahns for Better Transp. v. U.S. Dep't of Transp.*,
    295 F.3d 1111 (10th Cir. 2002) ...................................................................................7

*Young v. Glanz*,
    No. 13-cv-315, 2018 WL 1588026 (N.D. Okla. Mar. 31, 2018) .............................................7

**Other Authorities**

Fed. R. Civ. P. 24(b)(1)(B) ...............................................................................................6

Fed. R. Civ. P. 24(b)(3) ...................................................................................................7

Fed. R. Civ. P. 60(b)(3).............................................................................................1, 6

Fed. R. Civ. P. 60(c)(1)....................................................................................................6

## INTRODUCTION

Cox Communications, Inc. is an internet service provider ("ISP") that defended a nearly identical case brought by most of the same plaintiffs here. *Sony Music Ent. v. Cox Commc'ns, Inc.*, No. 1:18-cv-00950-LO-JFA (E.D. Va.).[1] Based on information disclosed in the public record of this action, it appears that Plaintiffs failed to produce to Cox certain documents related to a key exhibit underlying Plaintiffs' showing of direct infringement: A hard drive allegedly containing contemporaneously downloaded files that Plaintiffs claim were infringed by Cox's subscribers. Having concealed the nature of this exhibit, Plaintiffs misrepresented it at trial, where they ultimately obtained a $1 billion verdict.

Cox intends to file a motion under Federal Rule of Civil Procedure 60(b)(3) to obtain relief from that judgment, which was procured through misconduct. Cox respectfully requests to intervene in this action for the limited purpose of modifying the Protective Order, ECF 63, to obtain access to materials that should have been disclosed in the *Cox* litigation and that are necessary to fully support Cox's anticipated Rule 60 motion (the "Rule 60 Material"). Cox has concurrently filed a motion for relief under the Protective Order to obtain these documents should it be granted leave to intervene.

## FACTUAL BACKGROUND

Plaintiffs are a collection of major record companies and music publishers. Over the last several years, they have filed a series of infringement lawsuits against ISPs on the theory that the ISPs should be held secondarily liable for the copyright infringement of internet subscribers. On December 19, 2019, Plaintiffs obtained a $1 billion jury verdict for secondary infringement in their

---

[1] We cite docket entries from the *Cox* litigation "*Cox* ECF __"; docket entries in this action "ECF ___"; Cox's contemporaneously filed Motion to Modify the Protective Order "Mot. to Modify PO"; and the Declaration of Elyse D. Echtman in support of Cox's Motions "Echtman Decl."

suit against Cox. Exh. 3 (*Cox* ECF 669). On January 12, 2021, a judgment was entered on that

verdict. Exh. 4 (*Cox* ECF 723). Cox's appeal is pending. *Sony Music Entertainment et al., v. Cox

Communications, Inc. and CoxCom, LLC*, No. 21-1168 (4th Cir).

   ***Plaintiffs' Direct Infringement Case.*** A central contested evidentiary issue in the *Cox*

litigation concerned a hard drive (the "*Cox* Hard Drive") that, according to Plaintiffs, contained

files proving Cox subscribers' direct infringement of Plaintiffs' works. Echtman Decl. ¶ 5.

Plaintiffs' direct infringement case was based largely on evidence generated by two consultants:

MarkMonitor, which monitors the internet for infringing music files and sends notices to ISPs like

Cox when it detects infringement; and Audible Magic, which uses an automated system to verify

whether internet files that are suspected of being infringing match the recordings of protected

works in its database. Ex. 5 (*Cox* ECF 535, Oct. 24, 2019 Hr'g Tr. at 93-97). At trial, Plaintiffs

introduced (i) the infringement notices generated by MarkMonitor and sent to Cox between 2012

and 2014, which identified the works allegedly shared by Cox's subscribers; (ii) a MarkMonitor

spreadsheet, which purportedly documented Audible Magic's verification of the allegedly

infringed works; and (iii) the *Cox* Hard Drive. Ex. 6 (*Cox* Trial Tr. at 788:1-789:4, 791:13-24,

792:4-14). The hard drive purportedly contained the very files that MarkMonitor and Audible

Magic verified before sending notices between 2012 and 2014.

   So foundational was the *Cox* Hard Drive to Plaintiffs' case that their expert, George

McCabe, testified that each work in suit needed to appear on the drive before he could opine that

the work had been infringed by a Cox subscriber. Ex. 6 (*Cox* Trial Tr. at 788:1-789:4, 791:13-24,

792:4-14). So, without the contents of the *Cox* Hard Drive, Plaintiffs' expert, by his own

admission, would not have opined as to any of the direct infringement for which Cox was held

secondarily liable.

Because of the *Cox* Hard Drive's centrality to Plaintiffs' direct infringement case, Cox sought extensive discovery concerning MarkMonitor's involvement in the sending of notices and compilation of evidence of alleged direct infringement. *See infra* 4-6; Mot. to Modify PO 2-7. But Plaintiffs disclosed nothing that demonstrated when and how the files on the hard drive were first downloaded from the internet. As explained below, and in Cox's Motion to Modify the Protective Order, it is now clear that Plaintiffs' nondisclosures concealed a critical detail: That the files on the Hard Drive were not downloaded contemporaneously with MarkMonitor and Audible Magic's alleged detection and verification of infringement, but were downloaded *years later*, in 2016, as part of a litigation-focused effort to recreate evidence.

**Plaintiffs' Misrepresentations.** Before and during trial, Plaintiffs exploited the gap in the record they had worked to create, securing admission of the *Cox* Hard Drive through misrepresentations about its contents.

Before trial, Cox moved to exclude the *Cox* Hard Drive for lack of foundation, arguing that the drive's metadata showed that the drive itself was created in 2016. *See* Ex. 7 (*Cox* ECF 488 at 3-6, Plaintiffs' Omnibus Memorandum in Opposition to Cox's Motions in Limine Numbers 1-10); Ex. 5 (*Cox* ECF 535, Oct. 24, 2019 Hr'g Tr. at 93-97). In response, Plaintiffs misleadingly claimed that it "contains digital files that were the basis of MarkMonitor's infringement notices to Cox," downloaded when the notices were sent between 2012 and 2014. Ex. 8 (*Cox* ECF 539 at 22, Plaintiffs' Omnibus Memorandum in Opposition to Cox's Motions in Limine Numbers 1-10). Specifically, at trial, one of their experts testified that the drive contained the files that "were captured by MarkMonitor during [the] downloading step in" MarkMonitor's verification process, which occurred before the notices were sent between 2012 and 2014. Ex. 6 (*Cox* Trial Tr. at 515:15-22); *see id.* at 516:17-20 ("[W]hat's on the hard drive" are "[t]he [specific files] that were

downloaded [and] matched."). Another witness, Samuel Bahun, MarkMonitor's Director of
Strategic Accounts, then claimed that the drive contained the very "song files that were
downloaded from the corresponding peer-to-peer networks" to verify infringement. *Id.* at 648:23-
25.

Cox pressed Bahun on cross-examination concerning both "when ... those songs [were] put
on" the drive, *id.* at 705:23-24, and when they were actually downloaded, *id.* at 708:03-709:14.
Bahun testified that the drive itself was created at "the end of 2015, beginning of 2016," *id.* at
706:01, but that the files on it were downloaded on "different dates," and that "some of them" were
stored on MarkMonitor's "system when they were first downloaded from the Internet." *Id.* at
708:3-709:14. Bahun thus testified that, though the *Cox* Hard Drive had been *created* after the fact,
the files it contained were *downloaded* contemporaneously with the alleged infringement they
were offered to prove. On the basis of Plaintiffs' and their witnesses' representations, the district
court ultimately overruled Cox's several objections to the admission of the *Cox* Hard Drive, Ex. 9
(*Cox* ECF 590 at 3); Ex. 6 (*Cox* Trial Tr. at 647:8-648:12, 706:12-707:22). This enabled Plaintiffs'
expert McCabe to rely on the presence of each of the works in suit to opine that all 10,017 of
Plaintiffs' works had been infringed. Ex. 6 (*Cox* Trial Tr. at 791:13-24).

***Revelation of Plaintiffs' Misconduct.*** As detailed in Cox's Motion to Modify the
Protective Order, discovery in this action has revealed a strong likelihood that Plaintiffs in *Cox*
concealed materials and information that would have demonstrated that all the files on the hard
drive were downloaded in 2016—and not as contemporaneous verification of alleged infringement
before the notices were sent between 2012 and 2014.

The public record in this case and the record in Cox strongly suggest that Plaintiffs
produced a near-identical hard drive (the "*Charter* Hard Drive"). Ex. 10 (*Charter* ECF 287-1,

Oppenheim Decl. ¶ 9); *see* Cox's Mot. to Modify PO 3-4. But, pursuant to an order compelling production in this case, the *Charter* Hard Drive contained "packet capture" ("PCAP") data that, according to Plaintiffs' counsel here, were recorded by MarkMonitor to show "when and where each of the audio files on the drive was downloaded" from peer-to-peer networks. Ex. 10 (*Charter* ECF 287-1, Oppenheim Decl. ¶ 9). Also produced here pursuant to a motion to compel was a so-called "Hash Report." Ex. 11 (*Charter* ECF 436 at 4-9, Order on Pending Motions/Objections (2)). According to the Court's order on the motion to compel, the purpose for which Charter sought the Hash Report was to determine the extent to which Plaintiffs' counsel and MarkMonitor were unable to re-verify in 2016 the infringement they alleged from 2012 to 2014—in other words, because of its propensity to demonstrate the extent to which Plaintiffs' *ex post facto* attempt to recreate evidence was unsuccessful, the Hash Report sheds light on the reliability of the methodology. *Id.* And Plaintiffs in this case also disclosed the 2016 Statement of Work, which detailed a 2016 project led by Plaintiffs' counsel Matthew Oppenheim and his firm Oppenheim + Zebrak LLP for purposes of the *Charter* case "and other cases against other ISPs," which ultimately yielded the files put onto the hard drives and the Hash Report. Ex. 10 (*Charter* ECF 287-1, Oppenheim Decl. ¶¶ 5, 9).

All of this should have been disclosed during discovery in *Cox*—indeed, it all falls within categories of information Plaintiffs either pledged to produce or were specifically ordered to produce by the district court. As detailed in Cox's Motion to Modify the Protective Order, Plaintiffs represented during discovery that they had disclosed (or would disclose) any "evidence that MarkMonitor has captured for purposes of the [*Cox*] case." Ex. 12 (*Cox* Jan. 25, 2019 Hr'g Tr. at 68:14-20). Both the PCAP data and the Hash Report are plainly evidence "captured for purposes of the case," and therefore should have been turned over. And in failing to produce the

2016 Statement of Work, Plaintiffs flouted the district court's order that they "produc[e] … the documents that are sufficient to show the relationship between MarkMonitor and each individual Plaintiff." Ex. 12 (*Cox* Jan. 25, 2019 Hr'g Tr. at 73:1-5).

Based on the foregoing, Cox believes that relief is warranted in *Cox* under Rule 60(b)(3). Plaintiffs' discovery violations and misstatements at trial fundamentally prejudiced Cox's ability to challenge Plaintiffs' proof of direct infringement—a prerequisite for holding an ISP like Cox secondarily liable. Cox seeks to intervene here to gain access to materials that were wrongly withheld in *Cox*, as well as other targeted discovery material concerning the 2016 project that led to the creation of that withheld evidence. These documents will provide the *Cox* court with a full record to decide Cox's anticipated Rule 60 motion, the deadline for which is January 12, 2022. *See* Fed. R. Civ. P. 60(c)(1); Echtman Decl. ¶ 6-7.

## LEGAL STANDARDS

"[C]ourts have widely recognized that the correct procedure for a nonparty to challenge a protective order is through intervention for that purpose." *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990); *see EEOC v. Nat'l Children's Ctr.*, 146 F.3d 1042, 1045 (D.C. Cir. 1998) (collecting cases and explaining that "every circuit court that has considered the question has come to the conclusion that nonparties may permissively intervene for the purpose of challenging confidentiality orders").

Rule 24 permits intervention for the purpose of obtaining discovery where the party "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B); *see Rightchoice Managed Care, Inc. v. Hosp. Partners, Inc.*, No. 18-cv-6037, 2020 WL 5733203, at *2 (W.D. Mo. Sept. 24, 2020). In weighing whether to exercise its discretion to grant a motion for permissive intervention, the Court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights," *Gubricky ex rel. Chipotle*

6

*Mexican Grill, Inc. v. Ells*, No. 16-cv-3180, 2018 WL 1558264, at *2 (D. Colo. Mar. 26, 2018)

(citing *City of Stilwell v. Ozarks Rural Elec. Coop. Corp.*, 79 F.3d 1038, 1043 (10th Cir. 1996)).

Courts construe Rule 24(b) liberally in favor of intervention. *See Utahns for Better Transp. v. U.S.*

*Dep't of Transp.*, 295 F.3d 1111, 1115 (10th Cir. 2002).

## ARGUMENT

### A.    Cox Has Standing To Intervene.

"[T]he Tenth Circuit [has] permitted 'collateral litigants" to intervene under Rule 24(b) for

the purpose of modifying a protective order to gain access to pretrial discovery materials for use

in other litigation, without any discussion of standing requirements." *Young v. Glanz*, No. 13-cv-

315, 2018 WL 1588026, at *6 (N.D. Okla. Mar. 31, 2018) (citing *United Nuclear Corp.*, 905 F.2d

at 1427). Regardless, Cox can readily demonstrate its standing to intervene.

A party has Article III standing to intervene in a case for purposes of obtaining unfiled

discovery when it can show "that it would 'directly benefit from modification of the protective

order.'" *CRST Expedited, Inc. v. TransAm Trucking Inc.*, No. 16-cv-0052, 2018 WL 9880439, at

*4 (N.D. Iowa Oct. 9, 2018) (alterations omitted) (quoting *Pub. Citizen v. Liggett Grp., Inc.*, 858

F.2d 775, 790 (1st Cir. 1988)). This burden is met when "there is evidence that one of the parties

would share the documents with the third party if not for the protective order." *Id.* (collecting

cases). That condition is satisfied here: Charter has not opposed sharing the documents. Echtman

Decl. ¶ 8. Moreover, and independently, because the protective order impedes Cox's access to

materials that would permit Cox to fully exercise its right to file its Rule 60 motion, Cox "would

be adversely affected by the court's refusal to modify or vacate it" and therefore "ha[s] standing

in the constitutional sense to seek review of the order" *Martindell v. Int'l Tel. & Tel. Corp.*, 594

F.2d 291, 294 (2d Cir. 1979). Finally, the relationship between the collateral litigants is sufficiently

close. *See Holland & Hart LLP v. Mills*, No. 8-cv-1408, 2009 WL 3046318, at *1 (D. Colo. Sept.

22, 2009) (Hegarty, J.). As in *Mills*, Cox seeks access to discovery produced by a party to which it is adverse in another case. *Id.* This close relationship further underscores Cox's interest here.

**B.      The *Cox* Litigation Shares Common Questions Of Law And Fact With This Action.**

"When a collateral litigant seeks permissive intervention solely to gain access to discovery subject to a protective order, no particularly strong nexus of fact or law need exist between the two suits." *United Nuclear Corp.*, 905 F.2d at 1427.

This lenient standard is plainly satisfied here. As detailed above, Plaintiffs filed nearly identical cases against Cox and Charter. The form of infringement notices, the technical data, the copyrighted works, the parties and third parties, and the legal issues are the same. More specifically, the hard drive of "infringing" files used in the *Cox* case appears to be the same as the hard drive that was produced in this case, except that the hard drive here contains additional information that appears to reveal the true origins of the hard drives' contents—information that was omitted from the *Cox* production. *Supra* 4-6. Cox seeks that information here because it bears directly on identical proof offered by identical plaintiffs relevant to an identical legal issue.

This strong legal and factual nexus between the two suits is sufficient to satisfy Rule 24. And any argument Plaintiffs may raise with respect to the underlying law or facts that will ultimately form the basis for Cox's Rule 60 motion are properly litigated before the district court in *Cox. See Kahle v. Adams Cnty.*, No. 4-cv-1536, 2007 WL 2381403, at *2 (D. Colo. Aug. 16, 2007) (permitting intervention because there is "sufficient commonality between the facts" in the cases and noting that the objecting party "may, of course, challenge the relevance of any documents produced" in the other litigation).

### C.     No Prejudice Will Result From Intervention.

Allowing Cox to intervene for purposes of modifying the Protective Order and obtaining

access to the Rule 60 Material poses no prejudice. There is little chance of prejudice where

"intervention [i]s not on the merits, but for the sole purpose of challenging a protective order."

*United Nuclear Corp.*, 905 F.2d at 1427. The timeliness of Cox's motion is also a nonissue. Cox

moved to intervene shortly after public disclosure, in this action, of the high probability that

documents produced in this case are material to Cox's anticipated Rule 60 motion. Discovery is

still underway here, and, again, because Cox's request to intervene "is for a collateral purpose,"

intervention would therefore not interrupt or delay "the adjudication of the rights of the existing

parties." *Id.*; *see Gubricky*, 2018 WL 1558264, at *2-3 (finding "no cogent objection" to

intervention for such a "limited purpose"); *see also United Nuclear Corp.*, 905 F.2d at 1427 ("Rule

24(b)'s timeliness requirement is to prevent prejudice in the adjudication of the rights of the

existing parties, a concern not present when the existing parties have settled their dispute and

intervention is for a collateral purpose.").

Nor would granting Cox access to the materials it seeks impose any burden on Plaintiffs

and their third-party agents. Plaintiffs have already produced the materials. In any event, Cox seeks

access to only a very narrow set of materials. Specifically, Cox seeks (i) a hard drive of files,

partially identical to a version produced in the *Cox* case, but with complete and accurate PCAP

data, and an index related to the same; (ii) a spreadsheet that demonstrates the results of the 2016

investigation that generated the hard drive (the "Hash Report"); and (iii) certain deposition

transcripts, exhibits, and expert reports, which either authenticate or otherwise provide necessary

background information for these documents and additionally demonstrate the prejudice to Cox

from Plaintiffs' discovery violations. *See* Mot. to Modify PO 3-7; Echtman Decl. ¶ 10.

Further, the rights of Plaintiffs and their third-party agents in maintaining the confidentiality of these documents will be fully preserved. A virtually identical protective order to the one here is in place in *Cox*, ensuring continuity of confidentiality protections. *See* Ex. 2 (*Cox* ECF 58). In addition, if necessary, Cox would sign the Protective Order in this case and/or agree to be bound by any additional restrictions.[2]

Finally, to the extent Plaintiffs or the third parties have any "cogent objection," it would be to the merits of Cox's anticipated Rule 60 motion and not to Cox's ability to seek access to the documents. Any such objection belongs in the *Cox* court. *See Kahle*, 2007 WL 2381403, at *2 (noting that objections regarding the produced documents can be asserted in the collateral litigation).

---

[2] As set forth in its concurrently filed Motion to Modify the Protective Order (at 10), Cox does not believe that Plaintiffs and the third parties have a strong basis to maintain designations over these documents, as they are not confidential or highly confidential and, in any event, their contents have largely been publicly disclosed in court filings and hearings conducted in open court. Moreover, any argument as to confidentiality from Plaintiffs is undermined by the fact that Plaintiffs should have produced these documents to Cox already—so, but for Plaintiffs' improper withholding, Cox would already have them.

## CONCLUSION

Based on the foregoing, Cox respectfully requests that the Court permit it to intervene in this action for the limited purpose of seeking relief under the Protective Order to obtain a narrow set of discovery material to support its anticipated Rule 60 motion in the *Cox* action.

Dated: September 21, 2021    Respectfully submitted,

*/s/ Elyse D. Echtman*
Elyse D. Echtman
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY  10019
Tel: (212) 506-5000
Fax (212) 506-5151
eechtman@orrick.com
*Counsel for Movant*
*Cox Communications, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 21, 2021, I caused the foregoing document and

supporting materials to be filed electronically with the Clerk of the court using the CM/ECF

system, which will send a notice of electronic filing to all counsel of record registered within

CM/ECF.

*/s/ Elyse D. Echtman*
Elyse D. Echtman
ORRICK, HERRINGTON & SUTCLIFFE
LLP
51 West 52nd Street
New York, NY  10019
Tel: (212) 506-5000
Fax (212) 506-5151
eechtman@orrick.com

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

WARNER RECORDS, INC., *et al.*

     Plaintiffs,

v.

CHARTER COMMUNICATIONS, INC.

     Defendant.

Case No. 1:19-cv-00874-RBJ-MEH

## COX COMMUNICATIONS INC.'S MOTION TO MODIFY THE PROTECTIVE ORDER

Cox Communications Inc., by and through counsel, hereby moves for modification of the Protective Order in the above-captioned action, ECF 63, to grant Cox access to a narrow set of documents bearing on the validity of a judgment Plaintiffs in this action obtained against Cox in *Sony Music Ent'mt v. Cox Commc'ns, Inc.*, No. 1:18-cv-00950-LO-JFA (E.D. Va.).

In support of this motion, Cox relies upon its Memorandum in Support of Cox Communications Inc's Motion to Modify the Protective Order; its Memorandum in Support of Cox Communications Inc's Motion to Intervene for Purposes of Modifying the Protective Order; the Declaration of Elyse D. Echtman (Echtman Decl.), as well as exhibits attached thereto; and any proper submissions made hereafter. A proposed form of Order is also submitted for the Court's consideration.

**Certification of Compliance with L.R. 7.1.**  On September 14, Cox, through counsel, requested Charter's consent to modify the protective order for purposes of accessing the Rule 60 materials. Counsel for Charter indicated that Charter takes no position. *See* Echtman Decl. ¶ 8.

On September 10, Cox, through counsel, sought consent to modify the protective order for purposes of accessing the Rule 60 materials. The parties conducted a meet and confer by

telephone on September 10 and exchanged further email correspondence on September 17,

September 19, September 20, and September 21 concerning the basis for Cox's motion. Despite

Cox's efforts to fully meet and confer, Plaintiffs have declined to provide a position on Cox's

motion. *See* Echtman Decl. ¶ 9.

Dated:  September 21, 2021                              Respectfully submitted,

                                                        */s/ Elyse D. Echtman*
                                                        Elyse D. Echtman
                                                        ORRICK, HERRINGTON & SUTCLIFFE LLP
                                                        51 West 52nd Street
                                                        New York, NY  10019
                                                        Tel: (212) 506-5000
                                                        Fax (212) 506-5151
                                                        eechtman@orrick.com

                                                        *Attorney for Movant Cox Communications Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on September 21, 2021, I caused the foregoing document and supporting materials to be filed electronically with the Clerk of the court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record registered within CM/ECF.

*s/ Elyse D. Echtman*
Elyse D. Echtman
Orrick, Herrington & Sutcliffe LLP
51 West 52nd Street
New York, NY  10019
Tel: (212) 506-5000
Fax (212) 506-5151
eechtman@orrick.com

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

WARNER RECORDS, INC., *et al.*

      Plaintiffs,

v.

CHARTER COMMUNICATIONS, INC.

      Defendant.

Case No. 1:19-cv-00874-RBJ-MEH

**MEMORANDUM IN SUPPORT OF COX COMMUNICATIONS, INC.'S**
**<u>MOTION TO MODIFY THE PROTECTIVE ORDER</u>**

## TABLE OF CONTENTS

FACTUAL BACKGROUND .................................................................................................... 2

LEGAL STANDARD ............................................................................................................. 7

ARGUMENT ........................................................................................................................ 8

     A.    No Prejudice Will Result From Modifying The Protective Order ......................... 8

     B.    The Benefits Of Modifying The Protective Order Outweigh Any Prejudice. ................................................................................................................... 11

CONCLUSION ..................................................................................................................... 12

## TABLE OF AUTHORITIES

**Cases**

*Holland & Hart LLP v. Mills*,
    08-CV-01408-REB-MEH, 2009 WL 3046318 (D. Colo. Sept. 22, 2009) ..............................11

*Mann v. Boatright*,
    477 F.3d 1140 (10th Cir. 2007) ..............................................................................10

*Martindell v. Int'l Tel. & Tel. Corp.*,
    594 F.2d 291 (2d Cir.1979) ....................................................................................11

*SEC v. Merrill Scott & Assocs., Ltd.*,
    600 F.3d 1262 (10th Cir. 2010) ...........................................................................7, 11

*United Nuclear Corp. v. Cranford Ins. Co.*,
    905 F.2d 1424 (10th Cir. 1990) ..................................................................7, 8, 10, 11

**Statutes**

Fed. R. of Civ. P. 60(b)(3) ...................................................................................1, 12

## INTRODUCTION

Cox Communications, Inc. ("Cox") is a defendant in a nearly identical suit brought by most of the same plaintiffs in this case. *See Sony Music Ent. v. Cox Commc'ns*, No. 1:18-cv-950 (E.D. Va.).[1] In its concurrently filed Motion to Intervene for Purposes of Modifying the Protective Order ("Motion to Intervene"), Cox seeks to intervene for the limited purpose of modifying the Protective Order (ECF 63) in this case so it may obtain a targeted set of discovery material (the "Rule 60 Material") for use in a motion for relief from judgment under Federal Rule of Civil Procedure 60(b)(3) in the *Cox* case.

In *Cox*, Plaintiffs appear to have engaged in significant misconduct related to their evidence of direct infringement—a threshold issue that Plaintiffs must prove before seeking to hold an ISP like Cox or Charter secondarily liable. As set forth more fully in Cox's Motion to Intervene, Plaintiffs' direct infringement case depended on a hard drive (the "*Cox* Hard Drive") that, according to Plaintiffs, contained files proving Cox subscribers' direct infringement of Plaintiffs' works. But Plaintiffs breached their discovery obligations with respect to certain materials that fundamentally undermine that evidence by demonstrating that, contrary to Plaintiffs' assertions at trial, the files contained on the hard drive were downloaded by Plaintiffs' consultants several years after the alleged infringement the files purport to prove. Plaintiffs then misrepresented the contents of the hard drive in persuading the district court, over Cox's repeated objections, to allow that exhibit into evidence, and ultimately to obtain an unprecedented $1 billion judgment against Cox.

Public filings and statements in the instant action demonstrate that Plaintiffs' disclosed materials in discovery here that they should have produced in the *Cox* litigation. There is sufficient

---

[1] We cite docket entries from the *Cox* litigation "*Cox* ECF __"; docket entries in this action "ECF ___"; Cox's contemporaneously filed Motion to Modify the Protective Order "Mot. to Modify PO"; and the Declaration of Elyse D. Echtman in support of Cox's Motions "Echtman Decl."

cause to modify the Protective Order in this case for purposes of allowing Cox to obtain and use these materials in a Rule 60 motion, promoting the efficient and just resolution of the *Cox* case.

There is no prejudice to Plaintiffs in modifying the Protective Order. The Rule 60 Material should have been produced to Cox by Plaintiffs and their third-party agents in the *Cox* litigation or would have flowed from proper disclosure in that case. Even now, the burden on Plaintiffs and their third-party agents would be minimal: Cox does not ask them to do anything; Cox can seek the information from other parties to the case. And modifying the Protective Order would in no way expose material that ought to be kept confidential. Indeed, there is good reason to lift the Protective Order as to the Rule 60 Material, as much of its content has already been publicly disclosed. Nevertheless, Cox will abide by the Protective Order's terms and maintain the purported confidentiality of the Rule 60 Material.

Modifying the Protective Order would also advance good judicial administration and justice. Because discovery is now closed in *Cox*, modifying the Protective Order so that Cox can obtain and use the Rule 60 Material is the most efficient option. Doing so would also ensure that Plaintiffs are not able to profit from their misconduct in *Cox*. Plaintiffs should not be able use the Protective Order to shield their misdeeds and perpetuate their fraud. For these and the additional reasons set forth below, Cox respectfully requests that the Court grant the motion.

## **FACTUAL BACKGROUND**

The Rule 60 Material relates to a litigation-focused project initiated by Plaintiffs' counsel in 2016 (the "2016 Project"), which enlisted a consultant—MarkMonitor—to recreate a set of files allegedly downloaded by users of peer-to-peer networks. As detailed below, Plaintiffs in *Cox* concealed critical information about the 2016 Project and the evidence it generated.

***The Hard Drives.*** Plaintiffs' direct infringement case in *Cox* was based on evidence generated by two consultants, MarkMonitor and Audible Magic. Together, these consultants

claimed to have monitored the internet for infringing downloads or uploads, verifying contemporaneously that the files being exchanged matched a recording in a database of Plaintiffs' protected works. *See* Mot. to Intervene at 2-3. At trial, Plaintiffs offered the *Cox* Hard Drive, claiming through its witnesses that the drive contained contemporaneously downloaded files that MarkMonitor and Audible Magic had used to verify infringement before notices were sent to Cox between 2012 and 2014. *Id.* at 2. Plaintiffs' expert, George McCabe, then relied on a file's presence on the drive as a necessary condition to a demonstration of direct infringement. *Id.*

The nature of both MarkMonitor's work and the *Cox* Hard Drive's contents was a central issue during discovery. Cox sought documents related to the analyses of MarkMonitor's system and to the evidence that MarkMonitor compiled. Ex. 13 (Defendants Cox Communications, Inc.'s and CoxCom, LLC's First Set of Requests for Production, dated November 19, 2018, Request Nos. 141 & 142). Although Plaintiffs initially proposed to limit their response to analyses from 2012-2014, Ex. 14 (Plaintiffs' Objections and Supplemental Responses to Defendants Cox, Inc. and CoxCom, LLC's First Set of Request for Production, Supp. Resp. to RFP 141, dated January 10, 2019), Cox insisted that Plaintiffs provide analyses generated after the fact as well. Ex. 15 (*Cox* ECF 75 at 20, Defendants' Memorandum of Law in Support of Their Motion to Compel). Plaintiffs ultimately agreed to produce any information "regarding the reliability of the MarkMonitor system used to produce the copyright notices sent to Cox." Ex. 16 (*Cox* ECF 82 at 24, Plaintiffs' Memorandum of Law in Opposition to Defendants' Moton to Compel). And at a January 25, 2019 hearing, Plaintiffs represented that their proposed production would contain "the evidence that MarkMonitor has captured for purposes of the case," including "all the music," and "[d]ocuments to show the information concerning the infringement of the copyrighted works in suit by their subscribers." Ex. 12 (*Cox* Jan. 25, 2019 Hr'g Tr. at 68:14-20).

This was not done. In this action, pursuant to Charter's motion to compel, Plaintiffs appear to have produced a hard drive similar to the *Cox* Hard Drive, but that included "packet capture" ("PCAP") files that seemingly had been omitted from the *Cox* Hard Drive. Ex. 10 (*Charter* ECF 287-1, Oppenheim Decl. ¶ 9). According to Plaintiffs' counsel here, the PCAPs were recorded by MarkMonitor to show "when and where each of the audio files on the drive was downloaded" from peer-to-peer networks. *Id.* Plaintiffs' counsel further averred that the hard drive "contain[ed] all of the 2016 downloads" from the 2016 Project. *Id.*

These disclosures and statements on the public record demonstrate a high likelihood that Plaintiffs in *Cox* did not, as they represented they would, disclose all "evidence that MarkMonitor … captured," nor complete information "regarding the reliability of the MarkMonitor system used to produce the copyright notices sent to Cox." Ex. 16 (*Cox* ECF 82 at 24, Plaintiffs' Memorandum of Law in Opposition to Defendants' Moton to Compel). And these failures prevented Cox, the district court, and the jury from learning key information that would have shown that the contents of the *Cox* Hard Drive were in fact downloaded not contemporaneously with any alleged infringement, but years after the fact. Mot. Intervene at 3-6.

***The Hash Report.*** Also produced in this case, after extensive litigation on Charter's motion to compel, is a document known as the "Hash Report." Ex. 11 (*Charter* ECF 436, Order on Pending Motions/Objections (2)). The Hash Report was also created in 2016, as part of the 2016 Project. Ex. 10 (*Charter* ECF 287-1, Oppenheim Decl. ¶ 6). In its motion to compel, Charter argued that the Hash Report reflects "the extent to which MarkMonitor was unable in 2016 to locate and authenticate (with Audible Magic) the hashes for which the RIAA sent notices between 2012 and 2015," which "goes directly to Charter's ability to challenge Plaintiffs' direct infringement evidence." Ex. 11 (*Charter* ECF 436 at 5-6, Order on Pending Motions/Objections (2)). After a

two-day hearing, the Court ruled that Charter had demonstrated "substantial need," ordering
Plaintiffs to produce the Hash Report. *Id.*

Like the PCAPs, the Hash Report seemingly contains what Plaintiffs' counsel in *Cox*
labeled "the evidence that MarkMonitor ha[d] captured for purposes of the [*Cox*] case," Ex. 12
(*Cox* ECF 93, Jan. 25, 2019 Hr'g Tr. at 68:14-20), and information "regarding the reliability of the
MarkMonitor system," Ex. 16 (*Cox* ECF 82 at 24, Plaintiffs' Memorandum of Law in Opposition
to Defendants' Moton to Compel). Yet Plaintiffs disclosed neither the existence of the Hash Report
nor the report itself in the *Cox* litigation. Based on Charter's arguments for disclosure here, the
Hash Report seemingly would have shown when the files on the *Cox* Hard Drive were downloaded,
as well as the extent to which the 2016 Project was unable to replicate the alleged verification of
infringement that took place in 2012-2014. *See* Ex. 11 (*Charter* ECF 436 at 5-6, Order on Pending
Motions/Objections (2)).

*2016 Statement of Work.* Lastly, the public record in this case strongly suggests that
Plaintiffs in *Cox* breached discovery obligations with respect to a statement of work with
MarkMonitor from 2016 (the "2016 Statement of Work"). The 2016 Statement of Work documents
the 2016 Project that ultimately yielded the Hard Drives and their contents, as well as the Hash
Report. Ex. 10 (*Charter* ECF 287-1, Oppenheim Decl. ¶ 9).

The district court in *Cox* explicitly ordered "production of the documents that are sufficient
to show the relationship between MarkMonitor and each individual Plaintiff." Ex. 12 (*Cox* ECF
93, Jan. 25, 2019 Hr'g Tr. at 73:1-5); *see id.* at 73:16-74:4 ("[I]f you signed a contract with them,
if you have a written agreement, if you have an understanding, you know, a letter agreement that
says you're going to do this, we will pay you this, you provide me with these services, these are
your obligations, these are my obligations, that kind of agreement or description of the relationship

between MarkMonitor and your clients ... with respect to ... the program at issue in this case.").
But while Plaintiffs disclosed other agreements pursuant to that order, they did not produce the
2016 Statement of Work, Ex. 17 (*Charter* ECF 400, Feb. 23, 2021 Hr'g Tr. at 50:12-16) (Charter
counsel: "Your Honor, the plaintiffs did not produce the 2016 consulting agreement in Cox, even
though such agreements were ordered by the magistrate. So we were not aware of the project in
Cox, so it was a very different setup.").

Ultimately, the 2016 Statement of Work was produced in *Cox* by MarkMonitor in a later,
unrelated production, *id.* at 72:9-14, buried among other MarkMonitor agreements unrelated to
Plaintiffs' ISP notice program. But Cox—led to believe it had already received any agreement
showing "the relationship between MarkMonitor and each individual Plaintiff," Ex. 12 (*Cox* ECF
93, Jan. 25, 2019 Hr'g Tr. at 73:1-5)—could not have appreciated the significance of the 2016
Statement of Work. As Plaintiffs acknowledged in a public hearing here, the 2016 Statement of
Work vaguely says only that it was conducted "'[in] anticipation of litigation.'" Ex. 18 (*Charter*
ECF 400, Feb. 23, 2021 Hr'g Tr. at 66:10-11).

It now appears, however, that the 2016 Statement of Work outlined the process by which
Plaintiffs generated evidence of direct infringement for all of their litigation against ISPs, Cox
included. Ex. 11 (*Charter* ECF 436 at 5, Order on Pending Motions/Objections (2)); *see* Ex. 10
(*Charter* ECF 287-1, Oppenheim Decl. ¶ 9). As a result of the timely revelation of the 2016
Statement of Work in this case, Charter had the opportunity to depose Plaintiffs' witnesses with
respect to the 2016 Project. Cox never had that opportunity in the action against it because
Plaintiffs concealed the 2016 Statement of Work's significance by representing it had previously
disclosed all agreements relevant to the *Cox* litigation.

***

The Rule 60 Material Cox seeks consists of: (i) a hard drive of files partly identical to a version produced in the *Cox* case but with complete and accurate data that demonstrates that the allegedly infringing files were *not* downloaded during the claims period in *Cox*, but years later as part of the 2016 Project and in anticipation of the litigations against Cox, Charter, and other ISPs; (ii) a directory of that hard drive; (iii) an Excel spreadsheet that compiles the results of the 2016 Project; and (iv) certain deposition transcripts, exhibits, and expert reports that Cox believes will support its anticipated Rule 60 motion. Echtman Decl. ¶¶ 5, 10. Cox believes there is a strong probability that had Plaintiffs disclosed this Rule 60 Material, the evidence on which they relied at trial would not have been admitted or, at a minimum, the jury would have had the opportunity to assess the credibility of infringement claims that relied on an after-the-fact and partial re-creation of the allegedly infringing files. A table specifically identifying the Rule 60 Material appears in the Echtman Declaration at ¶ 10.

## LEGAL STANDARD

"As long as a protective order remains in effect, the court that entered the order retains the power to modify it…." *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990). "Typically, when considering whether to modify a protective order, courts examine any tangible prejudice to the party opposing modification that outweighs the benefits of modification." *SEC v. Merrill Scott & Assocs., Ltd.*, 600 F.3d 1262, 1272 (10th Cir. 2010). "[W]here an appropriate modification of a protective order can place private litigants in a position they would otherwise reach only after repetition of another's discovery, such modification can be denied only where it would tangibly prejudice substantial rights of the party opposing modification." *United Nuclear*, 905 F.2d at 1428 (quotation marks and citation omitted). And even then, the district court still has "broad discretion" to modify the Protective Order if the benefits outweigh that prejudice. *Id.*

## ARGUMENT

Neither Plaintiffs nor their third-party agents in this case will suffer any tangible prejudice—let alone "substantial" prejudice—if this Court modifies the Protective Order so that Cox may obtain and use the Rule 60 Material. *United Nuclear*, 905 F.2d at 1428. At the same time, modifying the order will spare the *Cox* court and parties undue burden. And it will prevent Plaintiffs from shielding their misconduct and its consequences from the *Cox* court.

### A.   No Prejudice Will Result From Modifying The Protective Order.

Modifying the Protective Order will not prejudice Plaintiffs. To start, the Rule 60 Material should have already been made available in the *Cox* litigation. It was only because of Plaintiffs' misconduct that it was not. As demonstrated above and in Cox's Motion to Intervene, there appears to be a high likelihood that Plaintiffs wrongfully withheld information showing that they generated the bulk of their direct infringement evidence *after-the-fact* in 2016—through an effort to recapture files allegedly downloaded two to four years *earlier.*

For instance, Plaintiffs relied on a hard drive that they said "contain[ed] digital files that were the basis of MarkMonitor's infringement notices [sent] to Cox" between 2012 and 2014. Motion to Intervene at 3 (quoting Ex. 8, *Cox* ECF 539 at 22, Plaintiffs' Omnibus Memorandum in Opposition to Cox's Motions *in Limine* Numbers 1-10). Plaintiffs' technical expert specifically testified that the "hard disc" contained files that "were captured during [the] downloading step" in the process MarkMonitor used between 2012 and 2014 to verify that the illegally downloaded works were owned by Plaintiffs. Ex. 6 (*Cox* Trial Tr. at 515:10-22). "[T]hat's what's on the hard drive," she confirmed, "the [specific files] that were downloaded [and] matched." *Id.* at 516:17-20.

But Plaintiffs failed to disclose the PCAP data that would have shown when and where the files on the hard drive were downloaded from peer-to-peer networks, despite the representation

that they had produced "the evidence that MarkMonitor ha[d] captured for purposes of the [*Cox*] case." *Supra* 2-4. They also failed to produce the Hash Report, while concealing the significance of the 2016 Statement of Work. Through public disclosures of discovery conducted in this case, Cox learned that the audio files on the *Cox* Hard Drive were downloaded in 2016, not before notices were sent between 2012 and 2014, and that the 2016 Project may in fact have failed to replicate significant portions of the infringement allegedly detected by MarkMonitor and Audible Magic. *Supra* 4-6.

Had Plaintiffs produced a complete hard drive, and timely and adequately produced the 2016 Statement of Work, Cox would have been able to build its case that Plaintiffs' evidence of direct infringement was defective. Those materials appear to show that Plaintiffs lacked direct evidence that the works they claimed Cox subscribers infringed actually were downloaded over the Cox network during the relevant period.

Because the Rule 60 Material is information that Plaintiffs or their third-party agents were required to, but did not, timely or adequately disclose in the *Cox* litigation, Plaintiffs cannot be prejudiced by an order permitting Cox to obtain it now. In fact, it is the same kind of material Plaintiffs and their third-party agents produced to Cox—except that this time it would be complete. It also is the same information Plaintiffs or third-party agents produced in this litigation. Plaintiffs were not unfairly prejudiced by disclosing that information to Charter's counsel in this case, and they will not be unfairly prejudiced by disclosing it to Cox's counsel, either. The two are similarly situated—indeed, the two parties share counsel.

There is no reason to think that permitting Cox to obtain the Rule 60 Material subject to the Protective Order's strictures would burden Plaintiffs in any other way. The Protective Order in this case will fully protect Plaintiffs' and their third-party agents' respective interests in

maintaining the confidentiality of these materials upon their disclosure to Cox just the same as with their production to Charter. As the Tenth Circuit explained in *United Nuclear*, "any legitimate interest the defendants have in continued secrecy as against the public at large can be accommodated by placing [i]ntervenors under the restrictions on use and disclosure contained in the original protective order." 905 F.2d at 1428. The concern is even further diminished here because there is a nearly identical protective order governing the *Cox* case. Echtman Decl. ¶ 12. These dual layers of protection will ensure that the material stays confidential.

Not that any of that is necessary. Much of the content of the Rule 60 Material has already been publicly disclosed through public court filings, including transcripts of hearings in open court and pleadings. *Supra* 2-6. Accordingly, and in lieu of permitting Cox to intervene and modifying the Protective Order to admit Cox to its terms, the Court would be fully justified in de-designating the Rule 60 Material. *See United Nuclear*, 905 F.2d at 1427 ("As long as a protective order remains in effect, the court that entered the order retains the power to modify it"; "modification of a protective order, like its original entry, is left to the discretion of the district court."). There is, after all, a "strong presumption in favor of public access to judicial records." *Mann v. Boatright*, 477 F.3d 1140, 1149 (10th Cir. 2007).

What is more, granting Cox's proposed relief would not require Plaintiffs to take any action. Cox is not presently asking this Court to order Plaintiffs, their third-party agents, or anyone else to produce anything. Cox simply asks that the Protective Order not be a hindrance to its efforts to obtain and use the documents, subject to the existing terms of the Protective Order. Echtman Decl. ¶ 12. That is consistent with Judge Hegarty's decision in *Holland & Hart LLP v. Mills*, 08-CV-01408-REB-MEH, 2009 WL 3046318 (D. Colo. Sept. 22, 2009), to grant a party's request to

intervene for purposes of modifying a protective order so that it would not bar that party from obtaining material produced in discovery to support a collateral litigation.

**B. The Benefits Of Modifying The Protective Order Outweigh Any Prejudice**.

Plaintiffs face no prejudice from the proposed modification of the Protective Order, but even if they did, the benefits outweigh any prejudice.

Modifying the Protective Order would "serve the vital function of 'secur[ing] the just, speedy, and inexpensive determination'" of Cox's dispute with Plaintiffs in *Cox*. *Merrill Scott*, 600 F.3d at 1272 (alteration in original) (quoting *Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291, 295 (2d Cir.1979)). As for efficiency, "when a collateral litigant seeks access to discovery produced under a protective order, there is a countervailing efficiency consideration—saving time and effort in the collateral case by avoiding duplicative discovery." *United Nuclear*, 905 F.2d at 1428. Cox cannot obtain the Rule 60 Material case as expeditiously in the *Cox* case as it can here because discovery there closed long ago and judgment has been entered. Plaintiffs may suggest there is some other way for Cox in its case to obtain the Rule 60 Material, but their "desire to make it more burdensome for [i]ntervenors to pursue their collateral litigation is not legitimate prejudice." *Id.*

As for justice, Plaintiffs should not be able to use the Protective Order in this case to hide their misconduct in the *Cox* case. In *Cox*, Plaintiffs wrongfully withheld certain materials in discovery and otherwise misrepresented the origin of discovery they did produce. *Supra* 2-6. For that reason, Cox intends to file a Rule 60(b)(3) motion for relief from judgment. Without the Rule 60 Material, the district court in *Cox* will not have the full picture it needs to evaluate that motion.

## <u>CONCLUSION</u>

Based on the foregoing, Cox respectfully requests that the Court modify the Protective

Order so that it may obtain and make use of the Rule 60 Material in the *Cox* case.


Dated: September 21, 2021                Respectfully submitted,

                                         */s/ Elyse D. Echtman*
                                         Elyse D. Echtman
                                         ORRICK, HERRINGTON & SUTCLIFFE LLP
                                         51 West 52nd Street
                                         New York, NY  10019
                                         Tel: (212) 506-5000
                                         Fax (212) 506-5151
                                         eechtman@orrick.com
                                         *Counsel for Movant*
                                         *Cox Communications, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 21, 2021, I caused the foregoing document and

supporting materials to be filed electronically with the Clerk of the court using the CM/ECF

system, which will send a notice of electronic filing to all counsel of record registered within

CM/ECF.

*/s/ Elyse D. Echtman*
Elyse D. Echtman
ORRICK, HERRINGTON & SUTCLIFFE
LLP
51 West 52nd Street
New York, NY  10019
Tel: (212) 506-5000
Fax (212) 506-5151
eechtman@orrick.com

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

### U.S. District Court - District of Colorado

### District of Colorado

**Notice of Electronic Filing**

The following transaction was entered on 11/22/2021 at 11:23 AM MST and filed on 11/22/2021

| | |
|---|---|
| **Case Name:** | Warner Records Inc et al v. Charter Communications, Inc. |
| **Case Number:** | 1:19-cv-00874-RBJ-MEH |
| **Filer:** | |
| **Document Number:** | 579(No document attached) |

**Docket Text:**
**ORDER denying [521] MOTION to Intervene by Intervenor Cox Communications, Inc. Discovery issues in Sony Music Entertainment v. Cox Communications, Inc., No. 1:18-cv-00950-LO-JFA (E.D.Va.) should be addressed by the presiding judge or magistrate judge in that case. By Judge R. Brooke Jackson on 11/22/2021. Text Only Entry(rbjsec. )**

**1:19-cv-00874-RBJ-MEH Notice has been electronically mailed to:**

Craig D. Joyce      cjoyce@fwlaw.com, dlawrence@fwlaw.com, paralegal@fwlaw.com, smeyer@fwlaw.com

John Markham Tanner      jtanner@fwlaw.com, nwessels@fwlaw.com, paralegal@fwlaw.com, smeyer@fwlaw.com

Regina M. Rodriguez      regina.rodriguez@wilmerhale.com, WHDocketing@wilmerhale.com, darla.pearsall@wilmerhale.com, misty.newton@wilmerhale.com, tracy.gomez@wilmerhale.com

Michael S. Elkin      melkin@winston.com, docketny@winston.com, michael-elkin-6841@ecf.pacerpro.com

Janette L. Ferguson      jferguson@williamsweese.com, btrujillo@williamsweese.com, ccarroll@williamsweese.com, mmunyon@williamsweese.com

Jennifer Ann Golinveaux      jgolinveaux@winston.com, cchea@winston.com, ecf_sf@winston.com, jennifer-golinveaux-1530@ecf.pacerpro.com

Michael L. Brody      mbrody@winston.com

Todd Steven Anten      toddanten@quinnemanuel.com

Krishnan Padmanabhan      kpadmanabhan@winston.com, ECF_CH@winston.com, PACERCourtFile@winston.com, docketny@winston.com, krishnan-padmanabhan-6052@ecf.pacerpro.com

Elyse D. Echtman      eechtman@orrick.com, ccariello@orrick.com, nymao@orrick.com, rshalev@orrick.com

Erin R. Ranahan      eranahan@winston.com, ecf_la@winston.com, erin-ranahan-2698@ecf.pacerpro.com, gmontoya@winston.com

Thomas Patrick Lane (Terminated)      tlane@winston.com

Mitchell Aaron Kamin      mkamin@cov.com, ccamp@cov.com, docketing@cov.com

Charles Kramer Verhoeven      charlesverhoeven@quinnemanuel.com, rhodapiland@quinnemanuel.com

Jeffrey M. Gould      jeff@oandzlaw.com, Derek@oandzlaw.com, alex@oandzlaw.com, andrew@oandzlaw.com, corey@oandzlaw.com, daniella@oandzlaw.com, kellyn@oandzlaw.com, paralegal@oandzlaw.com, rebecca@oandzlaw.com

Scott A. Zebrak     scott@oandzlaw.com

Matthew J. Oppenheim     matt@oandzlaw.com, Daniella@oandzlaw.com, Derek@oandzlaw.com, Kellyn@oandzlaw.com, andrew@oandzlaw.com, jeff@oandzlaw.com, paralegal@oandzlaw.com, rebecca@oandzlaw.com

Rebecca G. Van Tassell (Terminated)     rvantassell@cov.com, moneill@cov.com, thomas-spath-5447@ecf.pacerpro.com

Neema T. Sahni     nsahni@cov.com, ccamp@cov.com, docketing@cov.com

Jonathan Michael Sperling     jsperling@cov.com, docketing@cov.com, maony@cov.com

Seth Eliot Spitzer     sspitzer@winston.com, docketny@winston.com, seth-spitzer-7067@ecf.pacerpro.com

Mark Y. Chen     mychen@cov.com, docketing@cov.com

Megan Michelle O'Neill     moneill@cov.com, docketing@cov.com

William E. O'Neil     woneil@cov.com

Phillip R. Malone     pmalone@law.stanford.edu, jipic@law.stanford.edu

Sean R. Anderson     sranderson@winston.com, docketny@winston.com

Cesie C. Alvarez     calvarez@winston.com

John Hardy Ehlers     jehlers@cov.com

David Eiseman, IV     davideiseman@quinnemanuel.com, elenemebuke@quinnemanuel.com

Andrew H. Schapiro     andrewschapiro@quinnemanuel.com, katherinefuller@quinnemanuel.com

Michael Lee McDorman     mcdorman@mcdormanlawoffice.com, cook@mcdormanlawoffice.com, satterfield@mcdormanlawoffice.com

Andrew David Castricone     acastricone@grsm.com

Linda J. Brewer     lindabrewer@quinnemanuel.com, monitajones@quinnemanuel.com

Allison Harnack Huebert     allisonhuebert@quinnemanuel.com

Kayven Ghaffari     KGhaffari@crowell.com, cromo@crowell.com

Nathan A. Hamstra     nathanhamstra@quinnemanuel.com, katherinefuller@quinnemanuel.com

Michelle A. Clark     michelleclark@quinnemanuel.com, gillianlicudo@quinnemanuel.com

Alexander Kaplan     alex@oandzlaw.com

Phillip Aaron Lee Hill     PAHill@cov.com

Stacey Kamya Grigsby     sgrigsby@cov.com, skamy@hotmail.com

Grace E. Chang     graciechang@quinnemanuel.com

Katy Akopjan     katyakopjan@quinnemanuel.com, melissarutt@quinnemanuel.com

John J. Rosenthal     jrosenthal@winston.com

Anders Linderot     alinderot@cov.com

Michael F. Trombetta     miketrombetta@quinnemanuel.com, trombett@umich.edu

Corey Michael Sclar Miller     corey@oandzlaw.com

Dylan I. Scher     dylanscher@quinnemanuel.com

D. Seth Fortenbery      sethfortenbery@quinnemanuel.com

Jessica Anne Rose      jessicarose@quinnemanuel.com

Raphael Julian Ginsburg      raphaelginsburg@quinnemanuel.com, calendar@quinnemanuel.com

Krishna Shah      krishnashah@quinnemanuel.com

David Denton Doak      daviddoak@quinnemanuel.com

Nathan Evans Shafroth      nshafroth@cov.com, ncutright@cov.com

Joseph Evans Reed      joereed@quinnemanuel.com

**1:19-cv-00874-RBJ-MEH Notice has been mailed by the filer to:**

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

### U.S. District Court - District of Colorado

### District of Colorado

**Notice of Electronic Filing**

The following transaction was entered on 11/22/2021 at 11:24 AM MST and filed on 11/22/2021

| | |
|---|---|
| **Case Name:** | Warner Records Inc et al v. Charter Communications, Inc. |
| **Case Number:** | 1:19-cv-00874-RBJ-MEH |
| **Filer:** | |
| **Document Number:** | 580(No document attached) |

**Docket Text:**
**ORDER denying [522] MOTION to Amend/Correct/Modify 63 Protective Order. By Judge R. Brooke Jackson on 11/22/2021. Text Only Entry(rbjsec.)**

**1:19-cv-00874-RBJ-MEH Notice has been electronically mailed to:**

Craig D. Joyce     cjoyce@fwlaw.com, dlawrence@fwlaw.com, paralegal@fwlaw.com, smeyer@fwlaw.com

John Markham Tanner     jtanner@fwlaw.com, nwessels@fwlaw.com, paralegal@fwlaw.com, smeyer@fwlaw.com

Regina M. Rodriguez     regina.rodriguez@wilmerhale.com, WHDocketing@wilmerhale.com, darla.pearsall@wilmerhale.com, misty.newton@wilmerhale.com, tracy.gomez@wilmerhale.com

Michael S. Elkin     melkin@winston.com, docketny@winston.com, michael-elkin-6841@ecf.pacerpro.com

Janette L. Ferguson     jferguson@williamsweese.com, btrujillo@williamsweese.com, ccarroll@williamsweese.com, mmunyon@williamsweese.com

Jennifer Ann Golinveaux     jgolinveaux@winston.com, cchea@winston.com, ecf_sf@winston.com, jennifer-golinveaux-1530@ecf.pacerpro.com

Michael L. Brody     mbrody@winston.com

Todd Steven Anten     toddanten@quinnemanuel.com

Krishnan Padmanabhan     kpadmanabhan@winston.com, ECF_CH@winston.com, PACERCourtFile@winston.com, docketny@winston.com, krishnan-padmanabhan-6052@ecf.pacerpro.com

Elyse D. Echtman     eechtman@orrick.com, ccariello@orrick.com, nymao@orrick.com, rshalev@orrick.com

Erin R. Ranahan     eranahan@winston.com, ecf_la@winston.com, erin-ranahan-2698@ecf.pacerpro.com, gmontoya@winston.com

Thomas Patrick Lane (Terminated)     tlane@winston.com

Mitchell Aaron Kamin     mkamin@cov.com, ccamp@cov.com, docketing@cov.com

Charles Kramer Verhoeven     charlesverhoeven@quinnemanuel.com, rhodapiland@quinnemanuel.com

Jeffrey M. Gould     jeff@oandzlaw.com, Derek@oandzlaw.com, alex@oandzlaw.com, andrew@oandzlaw.com, corey@oandzlaw.com, daniella@oandzlaw.com, kellyn@oandzlaw.com, paralegal@oandzlaw.com, rebecca@oandzlaw.com

Scott A. Zebrak     scott@oandzlaw.com

Matthew J. Oppenheim    matt@oandzlaw.com, Daniella@oandzlaw.com, Derek@oandzlaw.com, Kellyn@oandzlaw.com, andrew@oandzlaw.com, jeff@oandzlaw.com, paralegal@oandzlaw.com, rebecca@oandzlaw.com

Rebecca G. Van Tassell (Terminated)    rvantassell@cov.com, moneill@cov.com, thomas-spath-5447@ecf.pacerpro.com

Neema T. Sahni    nsahni@cov.com, ccamp@cov.com, docketing@cov.com

Jonathan Michael Sperling    jsperling@cov.com, docketing@cov.com, maony@cov.com

Seth Eliot Spitzer    sspitzer@winston.com, docketny@winston.com, seth-spitzer-7067@ecf.pacerpro.com

Mark Y. Chen    mychen@cov.com, docketing@cov.com

Megan Michelle O'Neill    moneill@cov.com, docketing@cov.com

William E. O'Neil    woneil@cov.com

Phillip R. Malone    pmalone@law.stanford.edu, jipic@law.stanford.edu

Sean R. Anderson    sranderson@winston.com, docketny@winston.com

Cesie C. Alvarez    calvarez@winston.com

John Hardy Ehlers    jehlers@cov.com

David Eiseman, IV    davideiseman@quinnemanuel.com, elenemebuke@quinnemanuel.com

Andrew H. Schapiro    andrewschapiro@quinnemanuel.com, katherinefuller@quinnemanuel.com

Michael Lee McDorman    mcdorman@mcdormanlawoffice.com, cook@mcdormanlawoffice.com, satterfield@mcdormanlawoffice.com

Andrew David Castricone    acastricone@grsm.com

Linda J. Brewer    lindabrewer@quinnemanuel.com, monitajones@quinnemanuel.com

Allison Harnack Huebert    allisonhuebert@quinnemanuel.com

Kayven Ghaffari    KGhaffari@crowell.com, cromo@crowell.com

Nathan A. Hamstra    nathanhamstra@quinnemanuel.com, katherinefuller@quinnemanuel.com

Michelle A. Clark    michelleclark@quinnemanuel.com, gillianlicudo@quinnemanuel.com

Alexander Kaplan    alex@oandzlaw.com

Phillip Aaron Lee Hill    PAHill@cov.com

Stacey Kamya Grigsby    sgrigsby@cov.com, skamy@hotmail.com

Grace E. Chang    graciechang@quinnemanuel.com

Katy Akopjan    katyakopjan@quinnemanuel.com, melissarutt@quinnemanuel.com

John J. Rosenthal    jrosenthal@winston.com

Anders Linderot    alinderot@cov.com

Michael F. Trombetta    miketrombetta@quinnemanuel.com, trombett@umich.edu

Corey Michael Sclar Miller    corey@oandzlaw.com

Dylan I. Scher    dylanscher@quinnemanuel.com

D. Seth Fortenbery    sethfortenbery@quinnemanuel.com

Jessica Anne Rose     jessicarose@quinnemanuel.com

Raphael Julian Ginsburg     raphaelginsburg@quinnemanuel.com, calendar@quinnemanuel.com

Krishna Shah     krishnashah@quinnemanuel.com

David Denton Doak     daviddoak@quinnemanuel.com

Nathan Evans Shafroth     nshafroth@cov.com, ncutright@cov.com

Joseph Evans Reed     joereed@quinnemanuel.com

**1:19-cv-00874-RBJ-MEH Notice has been mailed by the filer to:**