# Exhibit 12

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

---------------------------------:
                                 :
SONY MUSIC ENTERTAINMENT, et al.,:
            Plaintiffs,          :
                                 :
    -vs-                         :   Case No. 1:18-cv-950
                                 :
                                 :
COX COMMUNICATIONS, INC., et al.,:
            Defendants.          :
                                 :
---------------------------------:

HEARING ON MOTIONS

November 12, 2019

Before:  Liam O'Grady, USDC Judge

APPEARANCES:

Matthew J. Oppenheim, Scott A. Zebrak, Jeffrey M. Gould, and Michael J. Druckman, Counsel for the Plaintiffs

Thomas M. Buchanan, Michael S. Elkin, Jennifer A. Golinveaux, and Thomas P. Lane, Counsel for the Defendants

1  wants to get up and tell the jury that MarkMonitor purged
2  information from its database; that plaintiffs have not
3  produced evidence of Audible Magic verifications because they
4  destroyed it, that's a quote from their brief; that 75 percent
5  of the works in this case were not confirmed by Audible Magic,
6  again a quote.
7  　　　　　　Not a single one of these statements, Your Honor, is
8  true.  They are palpably false statements.  Cox has zero
9  evidence to support them, yet continues to make these
10 arguments.  They have made them to Judge Anderson, they have
11 made them to this Court, and now they want to put them before
12 the jury.
13 　　　　　　In the argument on Cox's motion for spoliation, Your
14 Honor, Cox presented these same arguments to Judge Anderson.
15 Now, I think by anybody's measure, Judge Anderson is a smart
16 guy.  It took him about an hour of argument, Your Honor, to
17 recognize that the information upon which Cox was relying to
18 make these arguments made no sense.  And it wasn't until the
19 rebuttal that Judge Anderson pointed this out to the
20 defendants.
21 　　　　　　The jury will not have the benefit of an hour of back
22 and forth and a hundred pages of briefing before they address
23 this issue.  Cox should not be able to put this before the jury
24 in order to confuse the jury, which is what they seek to do.
25 　　　　　　With respect to the '236 spreadsheet, Your Honor,

1  which is addressed in the motion in limine No. 5, it comes from
2  the exact same source as the '431 spreadsheet.  They are both
3  downloads of data from the same MarkMonitor database.
4          It simply contains additional data fields.  The vast
5  majority -- the four additional data fields at issue are
6  entirely irrelevant to this case.  First of all, all of that
7  information contained within those four data fields were added
8  after 2015, after the claim period in this case.
9          Cox wants to use these spreadsheets to argue that the
10 information contained within one of the fields where it says
11 null, -1, or 0, indicates that Audible Magic did not make a
12 confirmation.
13         There are now declarations before the Court which
14 makes clear that that's not at all what those data fields mean.
15 Those are data fields and data that was provided by engineers
16 when they were setting up and trying to implement a brand-new
17 spreadsheet function for MarkMonitor.
18         THE COURT:  Is there any evidence that they were
19 going back instead to look at the relevant period of time, make
20 sure the data in the information that's in the '431 spreadsheet
21 was accurate, that that was the purpose?
22         MR. OPPENHEIM:  Your Honor, if you -- if you
23 eliminate those four columns and you just compare the two
24 spreadsheets and the additional -- and the information, it's
25 exactly the same on every other --

```
 1              THE COURT:  Right, I understand that.  My question
 2   was, you know, the purpose that the affidavits have --
 3   declarations have described as the reason for generating the
 4   additional information were that they were building on the
 5   platform they had.
 6              And my question was, was it -- is there any evidence
 7   in the case that the purpose was to go back and look at the
 8   accuracy of the Magic Mark documents or information?
 9              MR. OPPENHEIM:  No, Your Honor.  There is no
10   indication that that's the case at all.  In fact, one of the
11   witnesses in -- I believe in the declaration indicated that
12   they were trying to build out that information for other
13   clients down the road, they saw a future use for it.
14              I know, you know, now in November 2019 we all think
15   of storage as ubiquitously infinite.  Back then, it was not the
16   case.  And so, companies were still somewhat cautious in how
17   much information they gathered and kept.
18              This was a process, as all technology companies went
19   through, where they were expanding what they were keeping
20   because they thought, you know, more data might be useful in
21   the future for purposes.
22              There is zero indication that it creates any doubt
23   about the Audible Magic verifications.  In fact, the CEO of
24   Audible Magic testified under oath that with 20 seconds they
25   could have a zero error rate confirmation.  And that every data
```

1  field that is in there where there is actual data, that is,
2  other than null, -1, and 0, it's over 20 seconds.
3          And so, according to the CEO of the company -- and
4  again, this is not some fly-by-night company.  This is a
5  company that's -- whose work has been used in courts over and
6  over again and used throughout the industry.  He said zero
7  error rate for all of those.
8          So, Your Honor, this should not be put before the
9  jury so that we have to do a whole sideshow explaining this.
10 They should not put it up on a screen and say, see, there is a
11 0 there, or there is a null there so that the jury takes an
12 implication.
13         Your Honor, with respect to motion in limine No. 6,
14 this deals with the Audible Magic '3444 spreadsheet.  As an
15 initial matter, there is just no foundation to admit this
16 document.  I have read through that deposition transcript, the
17 portions related to this examination, over and over again.
18         THE COURT:  Whether it is a transaction log or not --
19         MR. OPPENHEIM:  There were thousands and thousands of
20 documents produced and many spreadsheets.  And they are asking
21 questions about transaction logs.
22         The reason you want to have a set process is so that
23 if a document is put in front of a witness, the other side on
24 cross-examination can ask whatever questions they need to ask
25 so that you have a clear understanding of it.  That did not

80

1     MR. OPPENHEIM:  Yes.  Very well, Your Honor.
2     THE COURT:  All right.  Good.  Thank you again for
3  coming in today, and we'll get you some rulings.  We will see
4  you on the 26th.
5     All right.  We're in recess.
6     MR. ELKIN:  Thank you, Your Honor.
7     MR. OPPENHEIM:  Thank you, Your Honor.
8  --------------------------------------------------
                            HEARING CONCLUDED

19          I certify that the foregoing is a true and
20     accurate transcription of my stenographic notes.

23                    /s/   Norman B. Linnell
                Norman B. Linnell, RPR, CM, VCE, FCRR

Norman B. Linnell  OCR-USDC/EDVA  (703)549-4626