**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| SONY MUSIC ENTERTAINMENT, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> COX COMMUNICATIONS, INC, *et al.*, <br><br> *Defendants*. | Civil No. 1:18-cv-950 (LO / JFA) |

**COX'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR RELIEF
FROM THE JUDGMENT UNDER RULES 60(B)(2) AND 60(B)(3) AND REQUEST FOR
<u>INDICATIVE RULING UNDER RULE 62.1</u>**

**<u>PUBLIC VERSION</u>**

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................................... 1

LEGAL STANDARD ................................................................................................. 4

FACTUAL BACKGROUND ...................................................................................... 5

      A.    Plaintiffs' Relationship with MarkMonitor ............................................. 5

      B.    Cox's Subpoena on MarkMonitor for Source Code and Revision History Data ...................................................................................................... 7

      C.    MarkMonitor's Representations Regarding Its Available Source Code and Revision History Data ......................................................................... 8

      D.    The Purported Accuracy of MarkMonitor's System Was Critical to the Judgment .............................................................................................. 10

      E.    Plaintiffs' Recent Disclosure of MarkMonitor Source Code and Revision History Data .............................................................................. 11

ARGUMENT ........................................................................................................... 13

I.     COX HAS DEMONSTRATED A BASIS FOR THE COURT TO ORDER DISCOVERY IN SUPPORT OF ITS RULE 60(b)(2) MOTION .................................... 13

II.    COX HAS DEMONSTRATED A BASIS FOR THE COURT TO ORDER DISCOVERY IN SUPPORT OF ITS RULE 60(b)(3) MOTION .................................... 17

CONCLUSION ........................................................................................................ 18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Boryan v. United States*,
  884 F.2d 767 (4th Cir. 1989) ........................................................................4, 13, 17

*Carroll v. Eaton Corp. Long Term Disability Plan*,
  2017 WL 5635450 (D.S.C. June 19, 2017)..........................................................4, 13

*Fields v. City of Chicago*,
  981 F.3d 534 (7th Cir. 2020) ..............................................................................4, 13

*Fobian v. Storage Tech. Corp.*,
  164 F.3d 887 (4th Cir. 1999) ....................................................................................5

*Johnson v. Starbucks Corp.*,
  2019 WL 402359 (N.D. Cal. Jan. 31, 2019) ......................................................4, 17

*Kurzweil v. Philip Morris Cos*,
  1997 WL 167043 (S.D.N.Y. Apr. 9, 1997).........................................................4, 13

*Lindsey v. Highwoods Realty Ltd. P'ship*,
  2012 WL 10242638 (E.D. Va. Dec. 5, 2012) ...........................................................5

*Midwest Franchise Corp. v. Metromedia Rest. Grp., Inc.*, 177 F.R.D. 438, 440
  (N.D. Iowa 1997) ....................................................................................................18

*MMAR Grp., Inc. v. Dow Jones*,
  187 F.R.D. 282 (S.D. Tex. Apr. 8, 1999)..........................................................4, 17

*Pearson v. First NH Mortg. Corp.*, 200 F.3d 30, 35 (1st Cir. 1999) ............................18

*Schultz v. Butcher*,
  24 F.3d 626 (4th Cir. 1994) ...........................................................................5, 13, 17

**Other Authorities**

Fed. R. Civ. P. 60(b) ......................................................................................3, 5, 17

Fed. R. Civ. P. 60(b)(2)......................................................................................... *passim*

Fed. R. Civ. P. 60(b)(3).......................................................................................... *passim*

Fed. R. Civ. P. 62.1 .................................................................................................3, 18

Fourth Circuit Appellate Procedure Guide (Feb. 2021)...............................................5

# INTRODUCTION

Eight days before the one-year anniversary of the entry of judgment in this matter, and just nine days after Cox filed a motion with the Court under Rule 60(b)(3) demonstrating that Plaintiffs had concealed and misrepresented the provenance of their MarkMonitor-compiled evidence of direct infringement, Plaintiffs disclosed in their nearly identical suit against Charter Communications, Inc.[1] that MarkMonitor had discovered previously unproduced source code and revision history information from the period at issue in this case that relates to how its system incorporated data from Audible Magic to verify whether an allegedly infringing file contained Plaintiffs' copyrighted works.  MarkMonitor had previously represented to Cox that this code and revision history information did not exist. As set forth below, this revelation may warrant further relief under Rule 60(b)(2) and/or Rule 60(b)(3).

The purported accuracy of MarkMonitor's system—and, in particular, its ability to utilize Audible Magic's "fingerprint matching" technology to assure that only legitimate allegations of infringement were made—was essential to Plaintiffs' direct infringement case. This is because Plaintiffs' only contemporaneous evidence of direct infringement were the MarkMonitor-generated notices—mere emails that claimed that MarkMonitor had observed that a specified file was being shared by a computer at a Cox-assigned IP address through a P2P network and that the file contained one or more of Plaintiffs' works. The emails' claim that what a subscriber was sharing depended entirely upon the functionality of MarkMonitor system's ability to reliably query Audible Magic's database for the files it had found and ingest and store Audible Magic's responses. Like any functionality in a computer system, MarkMonitor system's ability to reliably generate, ingest, and store Audible Magic data was determined by the source code governing those

---

[1] *Warner Records, Inc. et al. v. Charter Communications, Inc.*, Case No. 1:19-cv-00874-RBJ-MEH (D. Colo.) ("*Charter*").

operations. Cox expressly sought MarkMonitor's code and its revision history information and ultimately obtained a court order for its production over MarkMonitor's vehement objections.

In advance of the court-ordered source code review, MarkMonitor's counsel unequivocally represented that "[t]here is no revision history … as MarkMonitor was only running one version [of its software] during the relevant time period," that "[t]he source code represents the source code for the version of MarkMonitor's system during the relevant time period," and that "[t]he source code is in its original executable form without revision or modification … ." Ex. A (March 27, 2019 email from A. Castricone to D. Leiden). Likewise, subsequent to the code review, MarkMonitor's corporate designee, Samuel Bahun, testified that "███████████████████ ███████████████████████████████████████████████████████████████" Ex. B (Bahun Dep. Tr.) at 63:6-22.

Plaintiffs' recent revelation demonstrates that each of those representations were false: the relevant source code for the Audible Magic functionality was not produced to Cox, and there was a revision history for it that was not disclosed. As a result of these false representations, and MarkMonitor's now admittedly incomplete production of essential source code and revision history data, Plaintiffs' expert apparently relied on a version of the code that was not in use at the relevant time when opining that MarkMonitor's system reliably detected infringement. Conversely, Cox's expert was deprived of the ability to fully rebut that opinion, all of which was central to Plaintiffs' direct infringement case. Indeed, at trial, both experts relied on MarkMonitor's code to offering opinions regarding MarkMonitor's system and Plaintiffs' direct infringement evidence. This new admission casts the entire aspect of the proceeding into question.

Plaintiffs' revelation demonstrates the existence of newly discovered evidence, which seems likely to warrant relief under Rule 60(b)(2). Further, based upon MarkMonitor's

representations to Cox, and its close coordination with Plaintiffs, this revelation may also warrant relief under Rule 60(b)(3). Thus, not only has it now been revealed that Plaintiffs compiled much of their evidence of direct infringement *after* the Claims Period—the subject of Cox's pending Rule 60(b)(3) motion (ECF 737), but it is now clear that a key element of the minimal evidence Plaintiffs did have during the Claims Period—namely MarkMonitor's source code—was incomplete and, to the extent it was complete, it was at least in part not the code that was in use at the relevant point in time. Cox was not permitted to put any of this before the jury, which necessarily prejudiced its ability to challenge Plaintiffs' evidence of direct infringement.

Cox's deadline to file motions under Rule 60(b) is January 12, 2022. Cox files this motion under both Rules 60(b)(2) and 60(b)(3) to preserve its rights regarding the prejudice it suffered from the failure of Plaintiffs and MarkMonitor to produce the newly disclosed source code during discovery, and respectfully requests that the Court make an indicative ruling under Rule 62.1 that it is inclined to grant Cox's requested relief or, at a minimum, that the motion raises a substantial issue warranting further consideration on remand.

Cox further requests that the Court order discovery sufficient to allow Cox to pursue any claim for relief that the evidence may demonstrate, including (1) production and/or inspection of the source code and revision history data in question, (2) additional discovery and expert analysis regarding the content and significance of this previously unproduced source code, (3) discovery as to why this information was not previously identified and produced, and how it was recently discovered, and (4) any additional discovery that may be warranted.[2] Cox further respectfully

---

[2] Cox also seeks discovery in connection with its pending Rule 60(b)(3) motion to further substantiate its claims that Plaintiffs wrongfully withheld material evidence and otherwise made misrepresentations before and during trial. *See* ECF 737. Plaintiffs' recent disclosure of MarkMonitor's conceded failure to disclose relevant source code further supports granting such discovery.

requests that the Court hold this motion in abeyance pending Cox's review of such discovery, should it be ordered, and grant it leave to file an amended Rule 60(b)(2) and/or Rule 60(b)(3) motion, if warranted.

## LEGAL STANDARD

Rule 60(b)(2) provides for relief from a judgment where "(1) the evidence is newly discovered since the judgment was entered; (2) due diligence on the part of the movant to discover the new evidence has been exercised; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence is such that is likely to produce a new outcome if the case were retried, or is such that would require the judgment to be amended." *Boryan v. United States*, 884 F.2d 767, 771 (4th Cir. 1989); *see also Carroll v. Eaton Corp. Long Term Disability Plan*, 2017 WL 5635450 (D.S.C. June 19, 2017); *Fields v. City of Chicago*, 981 F.3d 534 (7th Cir. 2020); *Kurzweil v. Philip Morris Cos*, 1997 WL 167043 (S.D.N.Y. Apr. 9, 1997). Where additional information may be required to establish certain of these elements, courts may order further discovery in support of a Rule 60(b)(2) motion. *See, e.g.*, *Johnson v. Starbucks Corp.*, 2019 WL 402359 (N.D. Cal. Jan. 31, 2019); *MMAR Grp., Inc. v. Dow Jones*, 187 F.R.D. 282 (S.D. Tex. Apr. 8, 1999).

Rule 60(b)(3) in turn provides that "[o]n motion and just terms, the court may relieve a party" from final judgment because of "fraud … misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3). There are "three factors that a moving party must establish to prevail on a Rule 60(b)(3) motion": (1) "misconduct," (2) "the misconduct [must have] prevented the moving party from fully presenting its case," and (3) "the moving party must have a meritorious defense." *Schultz v. Butcher*, 24 F.3d 626, 630 (4th Cir. 1994). The rule is explicit that "fraud" is a sufficient predicate for relief, but it is also clear that "misrepresentation" and, more generically, "misconduct" may also justify a new trial. *Id*. Moreover, the Fourth Circuit has recognized that

4

"an adverse party's failure, either inadvertent or intentional, to produce [] obviously pertinent requested discovery material in its possession is misconduct under the meaning of Rule 60(b)(3)." *Id*. Misconduct, in whatever guise, must be proved by "clear and convincing evidence," *Lindsey v. Highwoods Realty Ltd. P'ship*, 2012 WL 10242638, at *1 (E.D. Va. Dec. 5, 2012) (internal citations omitted), but the evidence "does not have to be result altering to warrant" relief under Rule 60(b)(3), *Schultz*, 24 F.3d at 631. "Rule 60(b)(3) focuses not on erroneous judgments as such, but on judgments which were unfairly procured." *Id.* (citation omitted). After proof of the three elements, "the court must balance the competing policies favoring the finality of judgments and justice being done in view of all the facts, to determine within its discretion, whether relief is appropriate in each case." *Id.* at 630 (internal citations omitted).

While an appeal is pending, a district court retains jurisdiction to consider a motion for relief under Rule 60(b). *See Fobian v. Storage Tech. Corp*., 164 F.3d 887, 891 (4th Cir. 1999). The Fourth Circuit has instructed that, upon a filing of a Rule 60(b) motion while an appeal is pending, the district court may deny the motion, or may "issue an indicative ruling under [Rule] 62.1 stating that a Rule 60(b) motion … raises a substantial issue or would be granted." Fourth Circuit Appellate Procedure Guide (Feb. 2021).

## FACTUAL BACKGROUND

### A.    Plaintiffs' Relationship with MarkMonitor

MarkMonitor has provided anti-piracy services to the Recording Industry Association of America (the "RIAA"), Plaintiffs' industry representative, for more than a decade. Relevant here, between 2012-2015, MarkMonitor sent notices on behalf of Plaintiffs (through the RIAA) to ISPs, including Cox. As is discussed in Cox's pending Rule 60(b)(3) motion, in 2016, Plaintiffs' outside counsel Oppenheim + Zebrak LLP ("O+Z") closely worked with MarkMonitor and the RIAA to examine 2012-2015 notice data and to re-download and secure Audible Magic's re-verification of

the content of allegedly infringing files. ECF 737 at 9-11. As a result of that analysis, in or around March 2016, Plaintiffs sent a demand letter to Cox. *Id.*

Nearly two and a half years later, in July 2018, Plaintiffs filed suit against Cox. ECF 1. In November 2018, at the start of discovery in this case, ██████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████ (the "2018 Litigation Agreement"). *See* Ex. C (2018 Litigation Agreement). ████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████" *Id.*

The following month, Plaintiffs stated in their initial disclosures that MarkMonitor and the RIAA each could be contacted through O+Z. *See* Ex. D (Pls.' Dec. 12, 2018 Initial Disclosures). Plaintiffs identified MarkMonitor as a potential source of relevant information regarding its "observation of infringements by Cox subscribers[,] infringement of Plaintiffs' copyrighted works by Cox subscribers[, and] notices of copyright infringement sent to Cox." *Id.* Plaintiffs also explained that the RIAA might have relevant information regarding its "[m]anagement of the MarkMonitor notice program." *Id.*

After Cox served a subpoena on MarkMonitor—through its counsel at O+Z, Jeff Gould, as Plaintiffs had requested—Plaintiffs informed Cox that it should instead serve the subpoena directly on MarkMonitor, which it did (discussed immediately below). As the discovery record demonstrates, Plaintiffs and MarkMonitor nevertheless closely coordinated MarkMonitor's discovery responses.

### B.     Cox's Subpoena on MarkMonitor for Source Code and Revision History Data

On January 7, 2019, Cox served a subpoena on MarkMonitor in which it sought a range of information, including all versions of its source code and revision history information for the Claims Period:

> Request No. 12: One copy of each version of Your System that was in use during Plaintiffs' Claim Period, including all versions of the source code for each, that was used to monitor and/or detect copyright infringement, generate copyright infringement notices, or send copyright infringement notices.
>
> Request No. 13: All Documents concerning the revision history of Your System and the associated source code.

See Ex. E (Cox's Subpoena Duces Tecum to MarkMonitor), Nos. 12 & 13.

MarkMonitor failed to timely respond to the subpoena, though it eventually agreed to produce responsive documents **except for its source code and revision history data**. See Ex. F (MarkMonitor's Objections and Responses to Cox's Subpoena Duces Tecum) Nos. 12 & 13. Cox then moved to compel MarkMonitor to produce this data. *See Cox Commc'ns, Inc. v. MarkMonitor, Inc.*, Case No. 19-mc-80050-SK (N.D. Cal.) ("*Cox v. MarkMonitor*"). Ex. G (*Cox v. MarkMonitor* ECF 1). In support of its motion, Cox argued that "MarkMonitor does not dispute that Cox is seeking relevant information, agreeing to produce documents in response to a large portion of Cox's Subpoena but withholding the most critical pieces—its actual system used to target Cox and documents regarding the revision history and associated source code … ." *Id.* at 12. Cox's technical expert, Dr. Nick Feamster, in turn submitted a declaration in which he explained that the technical documents MarkMonitor was offering in lieu of the source code and its revision history were insufficient:

> ***The only way to review and analyze the functionality of MarkMonitor's system at each relevant point in time is to access the actual system and the source code, which is version-controlled and time-stamped***. I understand that the plaintiffs assert claims for

alleged infringements occurring in 2013 and 2014, and therefore it is critical to understand exactly how the code was operating during this period. ***The technical documentation is likely not only to be an imprecise description of the software, but there is a significant possibility that, given the evolving nature of software, it may not accurately or precisely reflect the functioning of the software during the period relevant to the case***.

Ex. H (*Cox v. MarkMonitor* ECF 2, Feamster Decl.) ¶ 7 (emphasis added).

In its attempt to avoid producing its source code and revision history data, MarkMonitor argued that it "is unaware of any circumstances where the accuracy of infringement detection and notification have been questioned where the veracity and reliability of MarkMonitor's system could not be assessed without the production of the system or source code" and that Cox's request for its source code and revision history data seeks "trade secret and other confidential information." Ex. I (*Cox v. MarkMonitor* ECF 12) at 4, 7.

The *Cox v. MarkMonitor* court rejected MarkMonitor's argument, credited Dr. Feamster's statements that MarkMonitor's proffered technical documents were no substitute for the source code itself, and ordered MarkMonitor to "comply fully with the subpoena Requests 12 and 13 by allowing [Cox's] expert to inspect each version of its system in use during the claim period, all documents regarding revision history, and associated source code," noting, "***[MarkMonitor's] contention that the information sought is available through other sources is unavailing***." Ex. J (*Cox v. MarkMonitor* ECF 14) at 4-5 (emphasis added).

## C.  MarkMonitor's Representations Regarding Its Available Source Code and Revision History Data

In the weeks following the *Cox v. MarkMonitor* court's order, Cox's counsel sent multiple emails and letters to MarkMonitor's counsel regarding MarkMonitor's compliance with the order, including the source code and revision history information that would be made available for inspection. MarkMonitor's counsel ultimately represented that (1) ***"[t]here is no revision history***

*... as MarkMonitor was only running one version during the relevant time period*," (2) "[*t*]*he source code represents the source code for the version of MarkMonitor's system during the relevant time period*," and (3) *"[t]he source code is in its original executable form without revision or modification*." Ex. A (Mar. 27, 2019 email from A. Castricone to D. Leiden) (emphasis added).

Relying on counsel's representations, Cox proceeded with the source code review. In performing that review, Dr. Feamster observed that ██████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████ *See* Ex. K (Feamster Rebuttal Rpt.) ¶ 47. Dr. Feamster later concluded that ██████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████ *See* Ex. L (Feamster Dep. Tr.) 76:21-77:3.

Cox followed up on the issues raised by its expert, seeking testimony from MarkMonitor's witnesses as to whether the relevant code had in fact been produced.  MarkMonitor's deponents confirmed the completeness of its production. First, Sam Bahun, MarkMonitor's Director of Sales and Account Management—████████████████████████████████ and who was its corporate representative ████████████████████████████ ████—testified that MarkMonitor "████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████" Ex. B (Bahun Dep. Tr.) 63:6-22. Second, Slawomir Paszkowski, MarkMonitor's Senior Development Director—who was designated as its corporate representative for ████████████████████████—testified MarkMonitor had "████████ ████████████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████ Ex. M (Paszkowski Dep. Tr.) 106:13-24. However, because

MarkMonitor's counsel represented that there were no revisions made to the relevant source code

during the Claims Period, (*see* Ex. A (March 27, 2019 email from A. Castricone to D. Leiden)),

none of the revision history data was to be produced under the *Cox v. MarkMonitor* court's order,

beyond what purported to be the relevant iteration of the code.

### D.      The Purported Accuracy of MarkMonitor's System Was Critical to the Judgment

The purported accuracy of MarkMonitor's system was a critical issue throughout

discovery, in summary judgment proceedings, and at trial, which is why Cox had served targeted

discovery on MarkMonitor regarding its systems, including its source code. *See* Ex. E (Cox's

Subpoena Duces Tecum to MarkMonitor), Nos. 12 & 13. Cox also served discovery both on

Plaintiffs and their agent the RIAA, which Plaintiffs represented managed MarkMonitor for

purposes of sending notices of alleged infringement. *See* Ex. D (Pls.' Dec. 12, 2018 Initial

Disclosures). Both Plaintiffs and Cox also engaged experts who each examined MarkMonitor's

available source code in reviewing the MarkMonitor system and issued reports in which they

formed conclusions regarding the accuracy of the notices generated by the system that ultimately

were offered at trial. *See* Ex. K (Feamster Rebuttal Rpt.) at 4-6; Ex. N (Frederiksen-Cross Rpt.) at

4, ¶¶ 17, 51-70.

Dr. Feamster specifically raised issues about the ability of the MarkMonitor system to

reliably incorporate Audible Magic data for use in generating notices of infringement.  Ex. K

(Feamster Rebuttal Rpt.) ¶¶ 32-35.  The Court precluded most of Dr. Feamster's findings on this

issue prior to trial on the ground that they had rested on data from Audible Magic that the Court

determined to be inadmissible. *See* ECF 589 at 3. Cox submitted a written proffer of evidence on

this issue at trial and renewed its effort to introduce the precluded expert testimony. Ex. O (Trial Tr.) 2341:19-2344:1. The Court again declined to allow the proffered expert testimony. However, in his report, Dr. Feamster specifically noted that his ability to evaluate the MarkMonitor system had been hampered by the quality of the source code produced for review, noting, in particular, that the code produced ████████████████████████████████████████ ████████████████████ Ex. K (Feamster Rebuttal Rpt.) ¶ 47.  Dr. Feamster identified these shortcomings in the code that he had inspected at trial.  Ex. O (Trial Tr.) 2236:10-2237:7.

Like Dr. Feamster, Plaintiffs' technical expert, Barbara Frederiksen-Cross reviewed the source code, reporting that



*id.* ¶ 51. *See also id.* ¶ 94

She offered testimony to the same effect at trial. *See* Ex. O (Trial Tr.) 423:25-424:18, 460:16-461:2; *see also id.* 2944:25-2945:11 (Plaintiffs' closing argument arguing the Frederiksen-Cross' opinions were reliable because, *inter alia*, she had reviewed the MarkMonitor source code).

### E.    Plaintiffs' Recent Disclosure of MarkMonitor Source Code and Revision History Data

Just over a week after Cox filed its pending Rule 60(b)(3) Motion,[3] Plaintiffs' counsel disclosed in *Charter* that in November 2021 MarkMonitor purported to have discovered certain

---

[3] On December 27, 2022, Cox filed a motion under Rule 60(b)(3) based on disclosures on the public docket in *Charter* that reveal that Plaintiffs misrepresented the provenance of certain MarkMonitor-generated evidence on which they based their direct infringement case. ECF 737.

source code and revision history data that MarkMonitor previously represented to Cox (and Charter) did not exist and it did not produce in this case. Specifically, Plaintiffs disclosed the following:

> Plaintiffs' counsel has just learned today that on November 4, 2021 MarkMonitor located source code for File Hash Manager with revision history dating from June 25, 2012 to April 15, 2016. We are informed that MarkMonitor can make available a copy of this code for Charter's inspection. Plaintiffs' counsel will work with you to ensure that happens efficiently and expeditiously. We are investigating this further, including to understand why it was not located or disclosed earlier, but wanted to share what we do know immediately.
>
> We are also informed that MarkMonitor can make available for inspection a copy of source code for Torrent Manager with revision history dating to December 7, 2016, consistent with Mr. Bahun's deposition testimony in this matter.
>
> To the extent additional information becomes available to Plaintiffs' counsel, we will promptly let you know.

Ex. P (Jan. 5, 2022 email from J. Gould to Charter's outside counsel of record).[4]

On January 10, 2022, Cox's and Plaintiffs' counsel held a meet and confer, in accordance with L.R. 7(E), in which the parties discussed the relief Cox presently seeks. Plaintiffs' counsel represented that Plaintiffs would oppose this motion.

---

[4] The "Torrent Manager" source code appears to relate to the "file verification" functionality of the MarkMonitor system, and in particular, Torrent Manager assures that the MarkMonitor system "reflects the status of each reviewed file, indicating whether it is incomplete, fake, or a verified infringing work." Ex. Q (Trial Ex. DX 130, Stroz Friedberg, *Independent Assessment of MarkMonitor AntiPiracy Methodologies* (Oct. 31, 2012)), at 6 (HL_176). The Cox record does not disclose the functionality of the Hash Manager source code.

## ARGUMENT

## I.  COX HAS DEMONSTRATED A BASIS FOR THE COURT TO ORDER DISCOVERY IN SUPPORT OF ITS RULE 60(b)(2) MOTION

The recently disclosed MarkMonitor source code and revision history data constitute "newly discovered evidence," which may give rise to relief under Rule 60(b)(2). As set forth above, relief is warranted where "(1) the evidence is newly discovered since the judgment was entered; (2) due diligence on the part of the movant to discover the new evidence has been exercised; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence is such that is likely to produce a new outcome if the case were retried, or is such that would require the judgment to be amended." *See Boryan*, 884 F.2d at 771; *see also Carroll*, 2017 WL 5635450; *Fields*, 981 F.3d 534 (7th Cir. 2020); *Kurzweil*, 1997 WL 167043.

Cox can readily demonstrate each of these factors, though it requires the production of the source code, revision history information, and any further necessary discovery to fully demonstrate that "the missing evidence was 'of such a material and controlling nature as [would] probably [have] change[d] the outcome.'" *Schultz*, 24 F.3d at 631 (quoting *Anderson v. Cryovac, Inc.*, 862 F.2d 910, 924 n.10 (1st Cir. 1988)).

*First*, there is no question that this "evidence is newly discovered since the judgment was entered." The judgment in this case was entered on January 12, 2021 (ECF 723), and Plaintiffs' counsel disclosed the discovery of the Hash Manager source code and revision history through 2016 and the availability of the Torrent Manager source code and revision history through 2016 on January 5, 2022, nearly a year later. *See* Ex. P (Jan. 5, 2022 email from J. Gould to Charter's outside counsel of record).

Moreover, MarkMonitor's prior representations regarding the source code available in this case and the absence of any relevant revision history information further demonstrate that this

13

evidence is newly discovered to Cox. Specifically, after MarkMonitor was ordered to produce its source code and related revision history in this case, its outside counsel represented to Cox that "[t]here is no revision history … as MarkMonitor was only running one version during the relevant time period," "[t]he source code represents the source code for the version of MarkMonitor's system during the relevant time period," and "[t]he source code is in its original executable form without revision or modification." Ex. A (March 27, 2019 email from A. Castricone to D. Leiden).

*Second*, Cox exercised "due diligence" to uncover this evidence. Cox served discovery requests on MarkMonitor seeking both MarkMonitor's source code and revision history information, *see supra* at 6—the precise information that was recently disclosed in *Charter*. When MarkMonitor refused to produce source code and revision histories, Cox successfully moved to compel.

Following that order, MarkMonitor represented that it would be producing "the source code for the version of MarkMonitor's system during the relevant time period … in its original executable form without revision or modification," but that "[t]here is no revision history … as MarkMonitor was only running one version during the relevant time period." Ex. A (March 27, 2019 email from A. Castricone to D. Leiden). Dubious of that assertion, Cox deposed MarkMonitor's witnesses regarding the MarkMonitor source code and, more broadly, MarkMonitor's system and operations. Bahun confirmed that MarkMonitor "███████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████" Ex. B (Bahun Dep. Tr.) at 63:6-22.

In short, Cox asked for the code and its revision history, compelled its production, and demanded and received assurances from counsel and MarkMonitor's witnesses that the relevant

code would be and then had been produced, and that there was no applicable version history. Cox, thus, diligently pursued MarkMonitor's source code and revision history information throughout discovery.

*Third*, the missing source code and revision history data necessarily are not "merely cumulative or impeaching." Plaintiffs lacked any contemporaneous evidence of alleged direct infringement other than the MarkMonitor-generated notices of alleged infringement, which are the ultimate output of MarkMonitor's system. Thus, the claimed accuracy of these notice emails entirely depends on the functionality of the MarkMonitor system. Accordingly, the relevance of the MarkMonitor system's source code was recognized by both sides' experts, who reviewed it to assess the system's reliability. Ms. Frederiksen-Cross found that the code provided to her supported the system's reliability, *see* Ex. N (Frederiksen-Cross Rpt.) at 4, ¶¶ 17, 51-70, but she necessarily cannot have opined as to code that she did not see. And Dr. Feamster found that the code produced did not adequately disclose relevant functionality, the reliability of which he disputed. *See, e.g.*, Ex. K (Feamster Rebuttal Rpt.) at 4-6, ¶ 47. But he too could obviously not opine as to the reliability of a system that operated in conformity with code that he was not able to review.

MarkMonitor argued in opposition to the subpoena there was no need to produce its source code and revision history data because its technical documentation should suffice. But setting aside the fact that both experts did not solely rely on technical documentation and, instead, required access to the code, the *Cox v. MarkMonitor* court rejected MarkMonitor's argument, finding that **"[MarkMonitor's] contention that the information sought is available through other sources is unavailing**." Ex. J (*Cox v. MarkMonitor* ECF 14 at 4 (emphasis added). Thus, the missing source code and revision history data are not "merely cumulative or impeaching."

*Fourth*, for many of the same reasons set forth above, the source code and revision history are material, as they directly bear on Plaintiffs' direct infringement case. As discussed above, both parties engaged technical experts to review the code and to testify about it at trial. MarkMonitor's representation was that the experts had reviewed the relevant code, but that now appears to be incorrect. If the code itself was material, as surely it was, then, of necessity, MarkMonitor's failure to produce the right version of the code was a material omission, and provision of the right version of the code would be new and material evidence.

Further, as set forth in Cox's pending Rule 60(b)(3) motion, Plaintiffs' primary evidence of direct infringement was created *after* the Claims Period—a fact they withheld from the Court, the jury, and Cox. Plaintiffs attempted to avoid the deficiencies with respect to their evidence of direct infringement by touting the accuracy of the MarkMonitor system—repeatedly stating that matching by has value infringing files (found on subscriber computers) to copyrighted files (as determined by Audible Magic) was sufficient. The revelation that the source code that was supposed to implement those comparisons, and which Cox's expert reviewed, was incomplete and not what was actually used at the time, undermines those claims. Thus, this newly disclosed source code and revision history data, coupled with the revelation (as set forth in Cox's Rule 60(b)(3) motion) that the files on Plaintiffs' Hard Drive were downloaded *after* the Claims Period and the MarkMonitor Spreadsheet purportedly contains verifications of different files renders this evidence indisputably material.

Finally, because Cox has not yet had the opportunity to review the missing source code and revision history data, Cox requires their production and/or inspection and further discovery so that it can demonstrate whether "the evidence is such that is likely to produce a new outcome if the case were retried, or is such that would require the judgment to be amended." *See Boryan* 884

16

F.2d at 771. Based on the materiality of the newly discovered evidence, however, there is more than a sufficient basis on which to hold in abeyance Cox's motion under Rule 60(b)(2) until the newly discovered code and its revision history can be produced and/or inspected and any necessary additional discovery and expert analysis pursued. *See, e.g.*, *Starbucks Corp.*, 2019 WL 402359 (holding a Rule 60(b)(2) motion in abeyance but ordering document and deposition discovery so that the parties could more fully address whether the newly discovered evidence is of "such magnitude that production of it earlier would have been likely to change the disposition of the case"); *MMAR Group, Inc. v. Dow Jones*, 187 F.R.D. 282 (S.D. Tex. Apr. 8, 1999) (ordering discovery in support of a Rule 60(b) motion, overseen by a special master, and granting an amended Rule 60(b) motion, based on that further discovery).

## II.   COX HAS DEMONSTRATED A BASIS FOR THE COURT TO ORDER DISCOVERY IN SUPPORT OF ITS RULE 60(b)(3) MOTION

Cox also respectfully requests that the Court hold in abeyance the portion of Cox's motion that seeks relief under Rule 60(b)(3) and permit Cox to seek discovery regarding why the recently disclosed source code and revision history information was not previously identified and how it was recently discovered as well as any additional necessary discovery so that Cox can assess whether relief is warranted under Rule 60(b)(3).  The Fourth Circuit has specifically recognized that "an adverse party's failure, either inadvertent or intentional, to produce [ ] obviously pertinent requested discovery material in its possession is misconduct under the meaning of Rule 60(b)(3)." *Schultz* 24 F.3d at 630.  Here, a failure to produce the right version of the source code would seem to constitute a "failure … to produce obviously pertinent discovery material." Given the close litigation coordination among Plaintiffs and MarkMonitor, MarkMonitor's contractual obligation to produce documents and provide support in Plaintiffs' litigation, and the fact that MarkMonitor apparently orchestrated the disclosure of the new code through Plaintiffs' counsel, rather than on

17

its own, Cox is at least entitled to explore whether the newly produced code was within Plaintiffs' "possession, custody or control," whether Plaintiffs were involved at all in MarkMonitor's and its counsel's inaccurate prior representations regarding the available code and the completeness of its production, and whether MarkMonitor's conduct was in any way attributable to Plaintiffs. The Court has the power to permit post-judgment discovery when the moving party can make a "prima facie demonstration of success on the merits" or, alternatively, a "colorable claim." *See, e.g.*, *Pearson v. First NH Mortg. Corp.*, 200 F.3d 30, 35 (1st Cir. 1999); *Midwest Franchise Corp. v. Metromedia Rest. Grp., Inc.*, 177 F.R.D. 438, 440 (N.D. Iowa 1997).

## **CONCLUSION**

For all of the foregoing reasons, Cox respectfully requests that this Court enter an indicative ruling under Rule 62.1 stating that it is inclined to grant Cox's motion for relief from the judgment, or—at a minimum—that Cox's motion raises a substantial issue that warrants further consideration by this Court. Upon receipt of such a ruling, Cox will move in the Court of Appeals for the Fourth Circuit for a limited remand to this Court to resolve Cox's motion.

Dated: January 11, 2022

Respectfully submitted,

*s/ Thomas M. Buchanan*
Thomas M. Buchanan (VSB No. 21530)
J. Tyler McGaughey (VSB No. 78809)
WINSTON & STRAWN LLP
1901 L Street NW
Washington, DC 20036
Tel: (202) 282-5000
Fax: (202) 282-5100
Email: TBuchana@winston.com
Email: TMcGaughey@winston.com

*Attorneys for Defendants Cox*
*Communications, Inc. and CoxCom, LLC*

*Of Counsel for Defendants*

Michael S. Elkin (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
Tel: (212) 294-6700
Fax: (212) 294-4700
Email: MElkin@winston.com

Jennifer A. Golinveaux (*pro hac vice*)
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111-5840
Tel: (415) 591-1000
Fax: (415) 591-1400
Email: JGolinveaux@winston.com

Geoffrey P. Eaton (*pro hac vice*)
WINSTON & STRAWN LLP
1900 L Street NW
Washington, DC 20036
Tel: (202) 282-5000
Fax: (202) 282-5100
Email: GEaton@winston.com

Michael L. Brody (*pro hac vice*)
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601-9703
Tel: (312) 558-5600
Fax: (312) 558-5700
Email: MBrody@winston.com

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on January 11, 2022, the foregoing was filed and served electronically

by the Court's CM/ECF system upon all registered users.

<u>*s/ Thomas M. Buchanan*</u>
Thomas M. Buchanan