# Exhibit I

1 ANDREW D. CASTRICONE (SBN: 154607)
  acastricone@grsm.com
2 GORDON REES SCULLY MANSUKHANI, LLP
  275 Battery Street, Suite 2000
3 San Francisco, CA 94111
  Telephone: (415) 986-5900
4 Facsimile: (415) 262-3726

5 Attorneys for Defendant/Respondent
  MARKMONITOR, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| COX COMMUNICATIONS, INC. and COXCOM, LLC | CASE NO. CV 19 80 050MISC-SK |
| Plaintiffs/Movants, | **OPPOSITION TO MOTION TO COMPEL COMPLIANCE WITH SUBPOENA DUCES TECUM** |
| vs. | |
| MARKMONITOR, INC., | **U.S. Magistrate Judge Sallie Kim** |
| Defendant/Respondent. | |

Defendant and Respondent MarkMonitor, Inc. ("MarkMonitor") respectfully submits the following Memorandum of Points and Authorities in Opposition to Plaintiffs and Movants Cox Communications, Inc. and CoxCom, LLC's (collectively "Cox") Motion to Compel Compliance with Subpoena Duces Tecum (Dkt. No.1).

**I.  INTRODUCTION/SUMMARY OF ISSUES AND ARGUMENT**

Cox' motion improperly seeks disclosure of a non-party's (MarkMonitor) confidential and proprietary trade secret technology and source code without meeting its burden. Despite its volume of "supporting" paper, the motion is replete with red herrings and an absence of any legitimate basis or prima facie evidence to warrant intrusion into MarkMonitor's system.

The subpoena at issue was served in connection with an "underlying" case, entitled *Sony Music Entertainment, et al. v. Cox Communications, Inc., et al.*, USDC ED Virginia,

Page 1

OPPOSITION TO MOTION TO COMPEL                         CASE NO. CV 19 80 050MISC SK

1  Case No 1:18-cv-00950-LO-JFA ("the Sony-Cox case"), where MarkMonitor was retained by
2  plaintiff record labels and music publishers (collectively "The Sony Plaintiffs") to detect,
3  report, and facilitate notification for infringement in the form of unauthorized downloads of
4  songs on peer-to-peer file sharing sites. *See* Declaration of Sam Bahun, ("Bahun Dec.") ¶6.
5  In general, the Sony Plaintiffs allege Cox, as one of the largest Internet Service Providers in
6  the country, knowingly contributed and are therefore liable for their subscribers' infringement
7  of what Cox enumerates as 10,729 of plaintiffs' copyrighted music works via unauthorized
8  downloads through BitTorrent or other P2P sites. *Ibid.*

9  The Sony Plaintiffs have or are in the process of producing voluminous MarkMonitor
10 documents to Cox. In response to the subpoena, MarkMonitor has likewise agreed to a
11 voluminous production of all non-privileged documents that are responsive to all but two
12 categories. *See* Bahun Dec., ¶¶8-11. Those documents have been made available to counsel,
13 and will be processed following the briefing of this opposition. *Ibid.* As such, the timeline for
14 production of documents in response to items not in dispute should be moot.

15 The sole basis for the motion to compel production of the two categories in dispute,
16 falls squarely on the shoulders of Cox' expert, Nick Feamster, who opines in a speculative
17 vacuum (without having, or at least not mentioning that he has, reviewed any of
18 MarkMonitor's production(s), spoke with anyone with knowledge, reviewed deposition
19 testimony, etc.) that the ***only*** way he can "review and analyze the functionality of
20 MarkMonitor's system at each relevant point in time is to access the actual system and the
21 source code, which is version controlled and time stamped." *See* Declaration of Dr. Nick
22 Feamster (Dkt.No.2) ("Feamster Dec."), ¶7. He further speculates that "[t]he technical
23 documentation is ***likely*** not only to be an imprecise description of the functioning of the
24 software, but there is a ***significant possibility*** that, given the evolving nature of software, it
25 ***may not*** accurately or precisely reflect the functioning of the software during the period
26 relevant to the case." [Emphasis added.] *Ibid.* Dr. Feamster further adds that opening expert
27 reports in the Sony-Cox case are due April 10, 2019, but he fails to address whether he is
28 expected to provide a report by that time, or, as expected, "a responsive report" to the Sony

Page 2

OPPOSITION TO MOTION TO COMPEL          CASE NO. CV 19 80 050MISC SK

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000

1    plaintiffs' expert, which is not due until May 8, 2019.  *See* Declaration of Andrew Castricone

2    ("Castricone Decl."), Ex. "P."  The evidence, however, shows the assessment can be made

3    without source code as it has been done by others.  *See Id.*, Ex. "K;" Bahun Dec., ¶¶15-18.

4        Cox further suggests that the Sony-Cox case is essentially a cookie cutter matter, and

5    that discovery that was authorized against a small scale competitor of MarkMonitor

6    (RightsCorp, Inc.) in a different lawsuit, *BMG Rights Mgt. (US) LLC v. Cox Communications,*

7    *Inc.*, USDC ED VA Case No. 1:14-cv-01611 ("the *BMG* litigation"), with different facts and

8    circumstances, somehow overrides MarkMonitor rights, or that any demonstrated need for the

9    production of similar information in the *BMG* litigation is applicable here.  *See* Bahun Dec. ¶7.

10       In addition to MarkMonitor's substantive challenge, Cox asserts counsel's excusable

11   neglect in calendaring the deadline to respond to the subpoena ***by an three court days***, with an

12   interim request for an agreed upon deadline to serve a written response (due to various

13   conflicts and counsel's preparation for a binding arbitration), constitutes a waiver of

14   MarkMonitor's objections on the grounds of timeliness.  *See, generally,* Castricone Decl.

15   However, other than misrepresentations of what Cox' counsel may have thought was

16   communicated in a telephone call on February 4 (over a week after MarkMonitor's counsel's

17   made its request) interim emails, and another week of emails fail to document that stance.

18   *Ibid.*  Moreover, after the issue was first raised in writing on February 11, Cox dropped any

19   reference again until the filing of the motion – lulling MarkMonitor and its counsel into a false

20   sense of security and willingness to meet and confer in good faith and cooperate with

21   compliance under the subpoena (and scheduling on the motion) – for all but the two categories

22   in dispute.  *Ibid.*  When MarkMonitor's counsel saw untimeliness was reasserted in the

23   motion, he tried, albeit unsuccessfully, to seek a retraction and avoid the necessity of a lengthy

24   declaration to provide accurate facts, demonstrate excusable neglect, and seek relief for

25   MarkMonitor under Federal Rules of Procedure ("FRCP") 6(b)(1)(B) and 60.

26       Even if the Court finds the document requests/inspection demands are proper,

27   compliance would be a monumental task, an attempt at compliance (even if feasible) would be

28   unduly burdensome, time consuming, and expensive, and Cox does not appear to be offering

**Gordon Rees Scully Mansukhani, LLP**
275 Battery Street, Suite 2000

Page 3

OPPOSITION TO MOTION TO COMPEL     CASE NO. CV 19 80 050MISC SK

to address any fees and costs. *See* Bahun Dec., ¶¶19-20.

## II. STATEMENT OF ADDITIONAL RELEVANT FACTS/PROCEDURE

### A. The MarkMonitor System

MarkMonitor is widely recognized as the global leader in enterprise brand protection, including various aspects of intellectual property infringement. *See* Bahun Dec. ¶2. Over half of the Fortune 100, 1,300+ customers in over 50 countries and industry leaders in various industries trust MarkMonitor and rely on its technology, expertise, and industry relationships every day to help them protect their brands online. *Ibid.* MarkMonitor provides an influential voice that represents its customers' needs in these industries and advocates on their behalf. *Ibid.* MarkMonitor takes great pride in the fact that its competitors cannot match its level of advanced technology, expertise, extensive industry relationships, and strong network of strategic allies and partners, and, as such, takes great measures to protect its trade secrets and proprietary information – not only to maintain its competitive edge, but also to prevent the technology from being misappropriated for unlawful means. *Ibid.*

MarkMonitor experts are connected to an unparalleled ecosystem of partnerships and relationships with search engines, social media networks, online marketplaces, industry advocacy groups, registries and law enforcement agencies. *See* Bahun Dec. ¶3. MarkMonitor is unaware of any circumstances where the accuracy of infringement detection and notification have been questioned where the veracity and reliability of MarkMonitor's system could not be assessed without the production of the system or source code. *Ibid.*

In the entertainment industry, MarkMonitor provides its customers with antipiracy solutions through detection, verification, enforcement and remediation, and analytics. *See* Bahun Dec. ¶5. MarkMonitor's proprietary automated technology provides access to a secure web based portal, with powerful online monitoring and comprehensive case management capabilities to gather data on how, where and when content is being used over a wide variety of channels. *Ibid.* The data is then turned into actionable intelligence to assist MarkMonitor's customers in enforcing their brands and intellectual property and controlling their anti-piracy program, by identifying and tracking piracy trends, and detecting the use and distribution of

Page 4

OPPOSITION TO MOTION TO COMPEL     CASE NO. CV 19 80 050MISC SK

1    copyrighted material and related infringement, including illegal downloading and unauthorized

2    streaming. *Ibid.* As a corollary to detection, MarkMonitor's proprietary technology employs

3    multiple levels of verification to confirm accuracy of all detected infringement, including

4    automated digital fingerprint technology for fast and accurate large scale verification and

5    manual review of questionable files. *Ibid.* MarkMonitor then works with its customers

6    regarding enforcement, notification, and remediation. *Ibid.*

7    As part of MarkMonitor's work in the Sony-Cox case, it was identified as a witness

8    regarding "observation of infringements by Cox subscribers, infringement of Plaintiffs'

9    copyrighted works by Cox subscribers; notice of copyright infringement sent to Cox." *See*

10    Bahun Dec. ¶7. As a result, while Cox has not subpoenaed MarkMonitor for deposition, it has

11    requested MarkMonitor documents, and, per this motion, the system and source code. In

12    meeting and conferring, the parties have addressed most of the requests for documents set

13    forth in the subpoena, except for Request Nos. 12 and 13[1]:

14    <u>Subpoena Request No. 12</u>:

15    *One copy of each version of Your System that was in use during Plaintiffs' Claim Period,*

16    *including all versions of the source code for each, that was used to monitor and/or detect copyright*

17    *infringement, generate copyright infringement notices, or send copyright infringement notices.*

18    <u>Subpoena Request No. 13</u>:

19    *All Documents concerning the revision history of Your System and the associated source code.*

20    **B. <u>The Subpoena and Meet and Confer</u>**

21    **1. Procedural Issues**

22    The subpoena was apparently served by consent on January 9, 2019. Counsel for

23    MarkMonitor received the subpoena (without an indication of the date and manner of service –

24    only the date of consent) on January 11 and cleared conflicts on January 15. Castricone Dec.,

25    ¶2. MarkMonitor's counsel considered service to have been by email on January 9, but

26    mistakenly included an additional three calendar days to the deadline as a result of excusable

27    neglect in looking at the older applicable rules. *Id.,* ¶¶2-4. On Sunday January 27, 2019, less

28

---

[1] The objections are set forth in Castricone Dec., Ex. "L."

Page 5

OPPOSITION TO MOTION TO COMPEL          CASE NO. CV 19 80 050MISC SK

*(Left margin: Gordon Rees Scully Mansukhani, LLP, 275 Battery Street, Suite 2000)*

1 than three court days after Cox' deadline (January 23), but prior to MarkMonitor's believed

2 deadline (January 28), MarkMonitor counsel sought an agreed upon deadline to provide

3 responses. *Id.,* ¶5. Between January 27 and February 11, 2019, Cox' counsel ***never*** raised any

4 issue on timeliness. *Id.*, ¶¶5-14. After a short debate on that date, the parties' moved forward

5 with addressing the merits with no further indication that Cox was persisting in making an

6 argument regarding timeliness. *Id.*, ¶¶14-22. It was not until after the motion was filed that

7 MarkMonitor was made aware Cox was still taking that position. *Id.*, ¶23. Its efforts to elicit

8 a withdrawal of that challenge was unsuccessful, requiring an attorney declaration of

9 excusable neglect (and a separate motion for relief if necessary). *Ibid.*

### 2. Substantive Issues

11 In addition to a number of emails, counsel met and conferred by telephone on February

12 4 and 13. *See* Castricone Dec., ¶¶11, 17. On the latter date, as anticipated in the earlier call,

13 MarkMonitor advised Cox it would produce all non-privileged and responsive documents

14 other than its system and source code. *Ibid.* MarkMonitor has provided all responsive

15 documents to the Sony Plaintiffs' and its counsel for production to Cox. *See* Bahun Dec., ¶8.

### III. ARGUMENT

#### A. MarkMonitor Should Not Be Penalized for Counsel's Excusable Neglect

18 Pursuant to FRCP 6(b)(1)(B) and 60, there is good cause to excuse any untimely

19 objection because of counsel's excusable neglect in adding three extra days to the deadline,

20 and relying on Cox' seeming cooperation with the acceptance of service of written objections

21 and responses. Even simple inadvertence can be "excusable neglect" to warrant an

22 enlargement of time to complete an act. The Court must evaluate "(1) the danger of prejudice

23 to the nonmoving party; (2) the length of delay; (3) the reason for the delay, including whether

24 it was within the reasonable control of the movant; and (4) whether the moving party's conduct

25 was in good faith. *See Harvest v. Castro* (9th Cir. 2008) 531 F.3d 737, 746.

26 All of these factors are well established by the Castricone Declaration. Here, while

27 MarkMonitor's counsel is prepared to file a separate motion to protect its client, such

28 measures should be unnecessary. Any delay was minimal, and Cox was not prejudiced. Cox

Page 6

OPPOSITION TO MOTION TO COMPEL CASE NO. CV 19 80 050MISC SK

**Gordon Rees Scully Mansukhani, LLP**
275 Battery Street, Suite 2000

1  did not raise the issue in a multitude of meet and confer discussions with MarkMonitor's
2  counsel – and in response to an express request to set an agreed upon deadline due to a conflict
3  with counsel.  The miscalendaring and delay, if any truly existed, were the result of a simple
4  mistake in looking at an outdated rule.  Moreover, there is agreed upon compliance with the
5  bulk of the issue, and the only item in dispute is MarkMonitor's system and source code.

6  **B.  MarkMonitor's Objections are Valid**

7  Source code is widely recognized as qualifying for trade secret protection.  A leading
8  treatise on trade secrets states, "Probably the single most important 'product' (or, depending
9  on one's views, 'methods and techniques') eligible for trade secret protection is computer
10 software." 1 *Milgrim on Trade Secrets* § 1.09[5][b] (2018).  Source code is an integral part of
11 computer software.  *See* e.g *Sega Enters. v. Accolade, Inc.* (9th Cir.1992) 977 F.2d 1510,
12 1515.  Courts generally recognize that trade secrets include source code a trade secret.  *See e.g.*
13 *Cisco Sys., Inc. v. Huawei Techs., Co.* (ED Tex.2003) 266 F.Supp.2d 551, 555.

14 As set forth in Mr. Bahun's declaration, MarkMonitor has taken measured steps to
15 ensure confidentiality and the sanctity of its system and source codes through patents; and
16 internal and external practices and procedures to prevent misappropriation.  If compromised,
17 the information could allow competitors to unfairly compete with MarkMonitor or enable use
18 of the trade secrets and proprietary information for illegal or unlawful purposes.

19 Requests 12 and 13 seek to elicit trade secret and other confidential information, the
20 actual or potential harm and damages that may and/or would likely result from the production
21 or inspection of such information from this nonparty is irreparable and not adequately
22 addressed or safeguarded by the protective order presently in place in this matter.

23 **C.  Indicia of Functionality and Reliability is Readily Available Through Alternate Reliable Sources**
24

25 It has long been held that Cox cannot obtain the production of a trade secret such at
26 MarkMonitor's source code absent a showing of relevance and necessity, which is lacking
27 here.  "A trade secret must and should be disclosed where upon a proper showing it is made to
28 appear that such disclosure is relevant and necessary to the proper presentation of a plaintiff's

Page 7

OPPOSITION TO MOTION TO COMPEL                    CASE NO. CV 19 80 050MISC SK

1  or defendant's case. The delicate problem is to secure the right of one litigant to get relevant
2  and necessary evidence and to protect the other litigant from disclosing secrets which are not
3  relevant and necessary." *See Hartley Pen Co. v. United States Dist. Court for the Southern*
4  *Dist. of California* (9th Cir. 1961) 287 F.2d 324, 328. As such, the burden falls on the
5  subpoenaing party to demonstrate the need for the information. *Id.* at p. 331.

6  Despite such authority, Cox argues in conclusory fashion that it is critical for it to
7  analyze the MarkMonitor system and documents regarding the revision history and related
8  source code to determine whether MarkMonitor's system accurately detected instances of
9  infringement on peer-to-peer file sharing sites. This is not true. Without much explanation,
10 Cox makes broad sweeping arguments that compelling a non-party's production of source
11 code upon finding that the detailed information contained in the source code is relevant, "not
12 duplicative or obtainable through other sources" and does not pose an undue burden (*see*
13 *infra*). Further, Cox argues the information sought is "highly relevant and not obtainable by
14 Cox from other parties." Also, Cox argues that discovery of confidential information, subject
15 to a protective order, is "virtually always ordered" "once the moving party has established
16 relevance and necessity." However, Cox has only addressed relevancy, not necessity.

17 Given the functionality and reliability analysis of the Harbor Lab and Stroz Friedberg
18 reports, MarkMonitor respectfully submits access to the system, revision history and source
19 code is not *necessary* in light of other less-intrusive means of evaluating efficacy and
20 reliability. Contrary to Cox' expert's opinion as to what documents might not show,
21 MarkMonitor "should not be made to place this vital asset in hazard merely to allay
22 speculation." *See Viacom Int'l Inc v. YouTube Inc* (2008) 253 F.R.D. 256, 260. Moreover,
23 Cox' fallback position that the protective order in and of itself safeguards MarkMonitor is
24 unavailing, as Cox must first make a preliminary showing justifying disclosure. *Ibid.*

25 As clearly demonstrated by the Declaration of Sam Bahun, the Harbor Lab and Stroz
26 Friedberg reports (already within Cox' possession) relate to functionality and reliability of the
27 MarkMonitor system for the applicable time period. The reports of Harbor Lab and Stroz
28 Friedberg conclude that an in depth analysis of the system in terms of efficacy and reliability

Page 8

OPPOSITION TO MOTION TO COMPEL                              CASE NO. CV 19 80 050MISC SK

are possible *without resorting to the review of the source codes*. Further, the reports of Harbor Lab and Stroz Friedberg conclude the system works/worked as it should with no false positives. Thus, the documentation in Cox' possession, as well as what MarkMonitor has agreed to produce, and that the Sony Plaintiffs have already produced or are producing, as well as Cox' subpoenas to Stroz Friedberg and Harbor Labs, which Cox' claims is in process, should be sufficient to address Cox' concerns. There is simply no reason why Cox cannot make a similar assessment based on other information provided, and via less intrusive means.

### D. Providing Access to Source Code is Overly Burdensome

Cox claims MarkMonitor did not articulate that its historical systems are not maintained and accessible or that access is burdensome. It has not yet had a chance to do so, and it was not asked. Per the Bahun Declaration, the feasibility of recreating the system in place at the relevant time would be an enormous obstacle and expense, and there is no guarantee that a mock environment would function as it did during the applicable time period.

Balanced against the availability of indicia of functionality and reliability through alternative sources, the creation of a mock of the system is unduly burdensome to Non-party MarkMonitor in terms of resources, time and expense.

### E. The BMG Litigation Is Irrelevant

Cox' reliance on a holding from the BMG matter related to a motion to compel source codes as a general rule is misplaced. "The Sony plaintiffs have repeatedly asserted similarities between the BMG and Sony litigations." While Cox notes "the overlap between BMG v. Cox and this case is substantial, and "the defendants are the same, the misconduct is the same, the time period is the same, and the theories of liabilities are the same," it is of no consequence.

Here, RightsCorp is not involved, and there is alternative data available to the parties to analyze the functionality and reliability of MarkMonitor system. No such alternatives were available in BMG case.

Page 9

OPPOSITION TO MOTION TO COMPEL     CASE NO. CV 19 80 050MISC SK

## IV. CONCLUSION

In sum, MarkMonitor has raised timely and valid concerns over the intent to compel production of its system and source code, which highly guarded trade secrets and proprietary information. Cox has not, as it is required to do, demonstrated the requisite relevance and necessity of the information, that other information cannot be obtained through less intrusive means, or that compliance with the subpoena on these two requests is practical or feasible.

For the foregoing reasons, it is respectfully requested that the instant motion be denied.

Dated: March 4, 2019

GORDON REES SCULLY MANSUKHANI, LLP

By: _____
Andrew D. Castricone
Attorneys for Defendant/Respondent
MARKMONITOR, INC.