# Exhibit O

399

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division


--------------------------------:
                                :
SONY MUSIC ENTERTAINMENT, et al.,:
              Plaintiffs,       :
                                :
     -vs-                       :      Case No. 1:18-cv-950
                                :
COX COMMUNICATIONS, INC., et al.,:
              Defendants.       :
                                :
--------------------------------:



            VOLUME  3  (A.M. Portion)




                 TRIAL TRANSCRIPT

               December 4, 2019

          Before:  Liam O'Grady, USDC Judge

                  And a Jury

Case 1:18-cv-00950-PTG-JFA   Document 749-15   Filed 01/11/22   Page 3 of 21 PageID# 28440
Case 1:18-cv-00950-LO-JFA   Document 637-1   Filed 12/10/19   Page 26 of 181 PageID# 26085
B. Frederiksen-Cross - Direct

423

1    Q.   And did you come to any conclusions about the Audible

2    Magic system?  Just a yes or no question.

3    A.   Yes, yes.

4    Q.   And are you prepared to discuss those today?

5    A.   I am.

6    Q.   Thank you.

7         And did you come to conclusions with respect to the

8    overall MarkMonitor system?

9    A.   Yes, I did.

10   Q.   And are you prepared to discuss those today?

11   A.   Yes, I am.

12   Q.   At a high level, what was your conclusions about the

13   MarkMonitor system, including the Audible Magic system used as

14   part of it?

15   A.   Based on the evidence I've reviewed and examined, it's my

16   opinion that that system both accurately detects acts of

17   copying and distribution on the internet on these peer-to-peer

18   systems, and it also provides and produces accurate notices

19   that can be sent to an ISP like Cox to notify them of that

20   activity.

21   Q.   Thank you.

22         Ms. Frederiksen-Cross, were you in the courtroom on

23   Monday for the parties' opening statements?

24   A.   I was, Counsel.

25   Q.   And did you hear Cox's counsel argue that, in very stark

Case 1:18-cv-00950-PTG-JFA  Document 749-15  Filed 01/13/22  Page 4 of 21 PageID# 28441
Case 1:18-cv-00950-LO-JFA  Document 632-1  Filed 12/10/19  Page 26 of 138 PageID# 26086
B. Frederiksen-Cross - Direct

424

1   terms, that there's no evidence of infringement in this case?

2   A.   I heard that argument.

3   Q.   And what do you think about that?

4   A.   I completely disagree.  I think that the amount of

5   evidence in this case is overwhelming that there were Cox

6   subscribers who were copying and distributing the plaintiffs'

7   music files on the internet.

8   Q.   And we're going to discuss the basis for your opinion in

9   much more detail today, but at a high level, would you please

10  explain why you believe what you just said?

11  A.   It is based first on a foundation of my understanding of

12  these peer-to-peer technologies, how they operate and the way

13  in which they allow the distribution and copying of content,

14  and then upon the specific evidence that I reviewed with

15  respect to the activity of Cox subscribers, and finally on my

16  inspection of the source code as well to understand exactly

17  how that worked and how it was able to do this detection and

18  how the notices were provided.

19  Q.   And finally, I believe you said you did some work with

20  respect to reviewing the Cox CATS system; is that correct?

21  A.   That is correct, Counsel.

22  Q.   And, generally speaking, what is the CATS system?

23  A.   CATS stands for the Cox Abuse Tracking System, and it's a

24  system that's designed to receive e-mails that are abuse

25  complaints and then to take the actions that Cox has

Case 1:18-cv-00950-PTG-JFA   Document 749-15   Filed 01/11/22   Page 5 of 21 PageID# 23442
Case 1:18-cv-00950-PTG-JFA   Document 632-1   Filed 12/10/19   Page 62 of 131 PageID# 26122
B. Frederiksen-Cross - Direct

460

1   Q.   So, Ms. Frederiksen-Cross, could these networks function

2   without hash values being reliable?

3   A.   No.

4   Q.   And before we had that sidebar, what, what happens with

5   respect to the user that's downloading or distributing if

6   their internet access is taken away?

7   A.   Then they can't download and distribute.

8   Q.   Let's, let's shift gears for a moment and -- or actually

9   not for a moment.  Let's shift gears and talk about your

10  review of the MarkMonitor system, okay?

11  A.   Okay.

12  Q.   So you said MarkMonitor's role was to detect infringement

13  of -- and report it to Cox, correct?

14  A.   That's correct.  Cox and other subscribers, but -- or

15  other ISPs, but in this case, Cox is the focus.

16  Q.   Okay.  And at a high level, would you describe what your

17  review of the MarkMonitor system consisted of?

18  A.   Sure.  I reviewed the MarkMonitor source code.  I

19  reviewed evidence produced by the MarkMonitor system.  I

20  reviewed sound recordings that corresponded to the hashes of

21  infringing content.  I reviewed samples of the notices that

22  MarkMonitor sent out and records about how many notices it had

23  sent out, and I also reviewed records that provided -- that

24  were drawn from MarkMonitor's records that provided

25  information about both the songs and the Audible Magic

Case 1:18-cv-00950-PTG-JFA   Document 749-15   Filed 01/11/22   Page 6 of 21 PageID# 23443
Case 1:18-cv-00950-PTG-JFA   Document 632-1   Filed 12/10/19   Page 62 of 138 PageID# 20123
B. Frederiksen-Cross - Direct

461

1    verification associated with those songs, so song files and
2    Audible Magic verifications.
3    Q.   And you -- did you speak with anybody at MarkMonitor?
4    A.   I did have the opportunity, as I mentioned, to discuss
5    the operation of the MarkMonitor system with two MarkMonitor
6    employees, and I also had the opportunity to read their
7    depositions and/or declarations and some of the other
8    information that was made available to me about the system.
9    Q.   Okay.  Let's jump in in more detail to that MarkMonitor
10   system.  What, what are the components of that system?
11   A.   If we could go to the next slide, I have the three
12   principal components listed.
13   Q.   Okay.  What's the first component?
14   A.   The verification module.
15   Q.   And what is that?
16   A.   The verification module is used to identify -- or to
17   create a database of known infringing works, and so there's
18   really two parts to that.  One is downloading works, and then
19   the other is confirming their content, so you know that a
20   particular hash is associated with a file that is known to
21   contain some of plaintiffs' -- you know, either one of
22   plaintiffs' files or in some cases multiples of plaintiff's
23   files.
24   Q.   Sure.  So you mentioned downloading the file.  Where is
25   it downloaded from?

Case 1:18-cv-00950-PTG-JFA   Document 749-15   Filed 07/01/22   Page 7 of 31 PageID# 23444
Case 1:18-cv-00950-PTG-JFA   Document 687   Filed 12/10/19   Page 139 of 139 PageID# 26199
B. Frederiksen-Cross - Cross

537

1    ours with them this morning.  This is a live demonstration.

2              THE COURT:  That's what I said.  I assume you shared

3    with them --

4              MR. ZEBRAK:  Yes, sir.

5              THE COURT:  Okay.  I mumble also, so I apologize.

6              MR. ZEBRAK:  No, that's my fault.

7              THE COURT:  So let's do that.  Before we resume,

8    let's -- you know, if you need to eat the ham sandwich out on

9    the courthouse steps, then let's get that done so that we can

10   come back at 5 minutes to two.

11             Mr. Buchanan, if you want to address that -- the

12   issue you raised this morning, we can do that right away when

13   we come back as well.  Okay?

14             MR. OPPENHEIM:  Thank you.

15             THE COURT:  All right.  We're in recess.

16             NOTE:  At this point, the December 4, 2019, morning

17   portion of the case is concluded.

18                    CERTIFICATE OF COURT REPORTERS

19

20             We certify that the foregoing is a true and
           accurate transcription of our stenographic notes.

21

22                    /s/  Norman B. Linnell
                  Norman B. Linnell, RPR, CM, VCE, FCRR

23

24                    /s/  Anneliese J. Thomson
                  Anneliese J. Thomson, RDR, CRR

25

Case 1:19-cv-00950-PTG-JFA   Document 749-15   Filed 01/11/23   Page 8 of 21 PageID# 33445
Case 1:18-cv-00950-LO-JFA   Document 658   Filed 12/17/19   Page 1 of 203 PageID# 27854

2126

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division


--------------------------------:
                                :
SONY MUSIC ENTERTAINMENT, et al.,:
            Plaintiffs,         :
                                :
     -vs-                       :   Case No. 1:18-cv-950
                                :
COX COMMUNICATIONS, INC., et al.,:
            Defendants.         :
                                :
--------------------------------:




VOLUME   9   (P.M. Portion)




TRIAL TRANSCRIPT

December 12, 2019

Before:  Liam O'Grady, USDC Judge

And a Jury

N. Feamster - Direct

2236

1  in a BitTorrent network?

2  A.   That particular step is identical.  Now, it's only

3  downloading one piece.  Right.  So a real BitTorrent client,

4  obviously probably interested in the whole file.  But the step

5  of downloading a piece and verifying would be exactly as a

6  BitTorrent client would do it.

7  Q.   And did you prepare a slide about the fourth step in this

8  process?

9  A.   I did, yes.

10  Q.   What happens in the fourth step?

11  A.   Okay.  So at this point -- and there's an important --

12  sort of deduction to this "if."  Right.  If an infringing file

13  is found, right, at a CAS participating ISP, there's a notice

14  sent.  Okay.  So there's a bunch of things that sort of -- you

15  know, we break that done.  And one is, of course, the IP

16  address.  We've got to figure out if that IP address is in fact

17  a CAS -- a participating CAS ISP subscriber.

18         The other is, have we found an infringing file?  And

19  there's a process by which steps 2 and 3 are joined to

20  determine that, ah, that piece that I just found not only is a

21  piece of the file that was advertised in the torrent, it's a

22  real piece, the verification checked, but also it's a piece of

23  an actual work.

24         So putting steps 2 and 3 together allows the software

25  to make that inference and generate the -- you know, decide

Case 1:18-cv-00950-PTG-JFA Document 749-15 Filed 01/11/22 Page 10 of 21 PageID# 33447
Case 1:18-cv-00950-PTG-JFA Document 658 Filed 12/17/19 Page 112 of 203 PageID# 27965

N. Feamster - Direct

2237

1    that it's time to generate a notice.

2    Q.   By the way, were you able to examine the software that

3    implemented that step?

4    A.   No.  That step I never saw.  I can only deduce what must

5    have happened.  I was able to see the source code for steps

6    three and step four.  I was able to identify those parts of the

7    software.

8         And it was really puzzling actually, because the two

9    databases that were used in these two steps appeared to be

10   completely different.  Okay.

11        Now, I also was not provided with the schemas for

12   these databases --

13             MR. ZEBRAK:  Objection, Your Honor.

14             THE COURT:  Sustained.  Sustained.

15             THE WITNESS:  Okay.  Sorry.  I'm sorry, academics

16   like to ramble.  I apologize.

17             MR. ZEBRAK:  I move to strike.

18             THE COURT:  Ask another question.

19             MR. BRODY:  Yes, sir.

20   BY MR. BRODY:  (Continuing)

21   Q.   What happens in this step?

22   A.   Can you clarify which step you're talking about?

23   Q.   Step four.

24   A.   I -- oh, I think I described that in maybe too much

25   detail.  But to abbreviate that, if the software is able -- or

2328

1          THE COURT:  Okay.

2          MR. ELKIN:  Thank you, Your Honor.

3          THE COURT:  All right, good.  You all have a nice

4    weekend, and we'll see you on Monday morning.

5          MR. OPPENHEIM:  Thank you, Your Honor.

6          MR. ELKIN:  You too, Your Honor.

7          THE COURT:  All right, we're in recess.

8     --------------------------------------------

9

10

11

12

13               CERTIFICATE OF COURT REPORTERS

14

15

16          We certify that the foregoing is a true and
          accurate transcription of our stenographic notes.

17

18

19               /s/  Norman B. Linnell
               _____
               Norman B. Linnell, RPR, CM, VCE, FCRR

20

21

22               /s/  Anneliese J. Thomson
               _____
               Anneliese J. Thomson, RDR, CRR

23

24

25

Case 1:18-cv-00950-LO-JFA   Document 749-15   Filed 01/11/22   Page 12 of 21 PageID#
33449
Case 1:18-cv-00950-LO-JFA   Document 659   Filed 12/17/19   Page 1 of 154 PageID# 23057

2329

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division


```
--------------------------------:
                                :
SONY MUSIC ENTERTAINMENT, et al.,:
           Plaintiffs,          :
                                :
    -vs-                        :   Case No. 1:18-cv-950
                                :
COX COMMUNICATIONS, INC., et al.,:
           Defendants.          :
                                :
--------------------------------:
```


VOLUME  10  (A.M. Portion)



TRIAL TRANSCRIPT

December 16, 2019

Before:  Liam O'Grady, USDC Judge

And a Jury

2341

1   them?

2       MR. OPPENHEIM:  Your Honor, I would ask that they

3   give us the list of numbers, allow us to have somebody review

4   them and see whether it's right or not, before the Court enters

5   them into evidence.

6       THE COURT:  That's fine.  Yeah, let's --

7       MR. BUCHANAN:  The number would be DX 3758.

8       THE COURT:  Just one big -- yeah, I'm not even sure

9   it was ever downloaded.  Is it just digitally?

09:15:04 10      MR. BUCHANAN:  Yes, we would move it that way, Your

11  Honor.

12      THE COURT:  Okay.

13      MR. BUCHANAN:  We agree to them digitally.

14      THE COURT:  Okay.  Well, I'll rule on that once

15  plaintiffs have had an opportunity to look at it and make sure

16  what's in the exhibit.  Okay.

17      MR. BUCHANAN:  Thank you, Your Honor.

18      THE COURT:  All right.  Mr. Brody.

19      MR. BRODY:  I have two short things, Your Honor.

09:15:27 20  First, Your Honor permitted us to tender a written proffer

21  regarding the Audible Magic spreadsheets.

22      THE COURT:  Yes, sir.

23      MR. BRODY:  So I was going to do that right now.

24      THE COURT:  Okay.

25      MR. BRODY:  Counsel.

Case 1:18-cv-00950-PTG-JFA   Document 74-15   Filed 01/11/22   Page 14 of 21 PageID#
33451
Case 1:13-cv-00950-LO-JFA   Document 859   Filed 12/17/15   Page 14 of 154 PageID# 28070

2342

|  |  |
|---|---|
| 1 | THE COURT:  All right. |
| 2 | MR. BRODY:  Second, we have -- Mr. Zebrak gave me two |
| 3 | demonstratives that they plan to use, he plans to use with |
| 4 | Dr. Feamster.  One of them is fine.  The other one may be fine, |
| 5 | but I just wanted to flag an issue with respect to it.  If I |
| 6 | could tender the proposed demonstrative. |
| 7 | MR. ZEBRAK:  I gave it to Joe, he's got it. |
| 8 | MR. BRODY:  Okay.  And then I'm -- if I could also |
| 9 | tender slides 37 and 38 from Dr. Feamster's direct testimony. |
| 09:16:40 10 | Dr. Feamster, you should step out into the hall. |
| 11 | NOTE:  Dr. Feamster leaves the courtroom. |
| 12 | MR. BRODY:  The demonstrative slide that they |
| 13 | tendered is this one that says what MarkMonitor actually did, |
| 14 | and it's got the four boxes in it, all of them with black |
| 15 | typeface in them. |
| 16 | THE COURT:  Yes, sir. |
| 17 | MR. BRODY:  This looks like his slide.  As you can |
| 18 | see from the two I tendered to you, it actually isn't one of |
| 19 | the slides that he put up. |
| 09:17:21 20 | I certainly have no objection to them putting this up |
| 21 | and asking him, isn't it true that this is what MarkMonitor did |
| 22 | and so on and so forth. |
| 23 | What I'm concerned about is that there's going to be |
| 24 | some suggestion -- if you look at the one that looks most like |
| 25 | this, I guess I'd say, you'll see that the step 3 in the notice |

Case 1:18-cv-00950-PTG-JFA Document 74815 Filed 01/11/22 Page 15 of 21 PageID#
33452
Case 1:13-cv-00950-LO-JFA Document 659-4 Filed 12/17/15 Page 15 of 154 PageID# 28071

2343

1    to Cox box are shaded out on the slide that he used, and that's

2    because he was talking during that slide about steps 1 and 2.

3    And when he actually got to steps 3 and 4, the other stuff was

4    there.

5                THE COURT:  The highlights.

6                MR. BRODY:  So I have -- like I said, I have no

7    problem with them using the demonstrative to talk about what

8    they actually did, I just think there should not be any

9    suggestion that this represents what he put up, what he showed

09:18:12  10    the jury, or that he was concealing anything from the jury.

11                THE COURT:  Okay.

12                MR. ZEBRAK:  Your Honor, I'm perplexed at this.  This

13    is his --

14                THE COURT:  You, perplexed?

15                MR. ZEBRAK:  Well, I mean, counsel is not entitled to

16    dictate what fair demonstratives I use.  It's his slide --

17                THE COURT:  He just doesn't want the jury confused

18    about the fact that some of them are highlighted -- or some of

19    them are bolded and some of them aren't.

09:18:41  20                So I'm going to allow you to use the demonstrative.

21    I don't think it's confusing to the extent that as long as

22    you're not representing that it is exactly the slide that Cox

23    presented, I think it's fine.

24                MR. ZEBRAK:  Thank you, Your Honor.

25                THE COURT:  Okay.  Your exception is noted, Mr.

Case 1:18-cv-00950-PTG-JFA  Document 674-15  Filed 01/11/22  Page 16 of 21 PageID#
33453
Case 1:13-cv-00950-LO-JFA  Document 659  Filed 12/17/15  Page 16 of 154 PageID# 28072

2344

1  Brody.

2              MR. BRODY:  Thank you.

3              THE COURT:  All right.  I saw Mr. Feamster here a

4  minute ago.  You asked him to leave for a minute?

5              All right.  Anything else?

6              MR. BRODY:  Not from us, no.

7              THE COURT:  Okay.  Thank you.

8              Joe, then let's get our jury, please.

9              Come on up, Mr. Feamster, and take a seat.

09:19:41 10              NOTE:  At this point the jury returns to the

11  courtroom; whereupon the case continues as follows:

12  JURY IN

13              THE COURT:  All right.  Please have a seat.

14              Good morning, ladies and gentlemen.  Thank you for

15  making your way in on time again this morning.  I hope you all

16  had a good weekend.

17              Did you all heed my advice and not do any research or

18  investigation?  All right.

19              All right.  Where are we?  Mr. Zebrak, cross-

09:20:17 20  examination, sir.

21              MR. ZEBRAK:  Yes, Your Honor.  Thank you.

22              THE COURT:  Have you got what you need, Dr. Feamster?

23              THE WITNESS:  I think so.  I just need a little

24  space.

25              THE COURT:  Well, that's what--

Case 1:18-cv-00950-LO-JFA Document 659 Filed 12/17/19 Page 154 of 154 PageID# 20210

2482

1    lunch?

2          MR. BUCHANAN:  No, Your Honor.

3          THE COURT:  All right.  All right.  Then we are in

4    recess until 2:00.

5          NOTE:  The morning portion of the proceedings on

6    December 16, 2019, is concluded.

7                    CERTIFICATE OF COURT REPORTERS

8

9

10         We certify that the foregoing is a true and
           accurate transcription of our stenographic notes.

11

12

13         _____/s/  Norman B. Linnell_____
           Norman B. Linnell, RPR, CM, VCE, FCRR

14

15         _____/s/  Anneliese J. Thomson_____
           Anneliese J. Thomson, RDR, CRR

16

17

18

19

20

21

22

23

24

25

Case 1:18-cv-00950-LO-JFA   Document 749-15   Filed 01/11/22   Page 18 of 21 PageID#
33455
Case 1:18-cv-00950-LO-JFA   Document 674   Filed 12/26/19   Page 1 of 101 PageID# 28960

2934

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

```
--------------------------------:
                                :
SONY MUSIC ENTERTAINMENT, et al.,:
             Plaintiffs,        :
                                :
     -vs-                       :   Case No. 1:18-cv-950
                                :
COX COMMUNICATIONS, INC., et al.,:
             Defendants.        :
                                :
--------------------------------:
```

VOLUME  12

TRIAL TRANSCRIPT

December 18, 2019

Before:  Liam O'Grady, USDC Judge

And a Jury

Case 1:18-cv-00950-PTG-JFA Document 749-15 Filed 01/14/22 Page 19 of 21 PageID#
33456
Case 1:13-cv-00950-LO-JFA Document 674 Filed 12/20/13 Page 11 of 101 PageID# 25970

2944

1    or sharing.  In this case, we have evidence of both.

2            So what is that evidence?  Recall Mr. Bahun, who

3    worked for MarkMonitor.  This is the gentleman who the FBI, the

4    Department of Justice, and Homeland Security brings in to train

5    their agents on peer-to-peer issues.

6            And as a company, MarkMonitor is used by some of the

7    largest and most well-known companies in the world:  movie

8    studios, book publishers, Google, Apple, Nissan, Coca-Cola,

9    banks, professional sports leagues.  MarkMonitor is the gold

09:20:56 10   standard when it comes to antipiracy, and its process is

11   precise and meticulous.

12            MarkMonitor goes on to a peer-to-peer network.  It

13   downloads and confirms a file is infringing.  It then collects

14   evidence on users distributing that infringing file by

15   connecting to a peer and beginning the download process.  By

16   downloading all of the information, that indicates that the

17   peer is actively distributing the infringing file and how.

18            Once all of that is confirmed and documented,

19   MarkMonitor sends an infringement notice to the relevant ISP,

09:21:36 20   and in this case, that was Cox.

21            Mr. Bahun went through numerous data packages of

22   evidence, and ultimately, as you saw, all of that data came

23   together to demonstrate why MarkMonitor's evidence collection

24   process worked.

25            And you will recall that Ms. Frederiksen-Cross

1    testified as a technology expert.  Now, she has spent a

2    lifetime looking under the hood at real systems in the real

3    world, and she testified that she reviewed the MarkMonitor

4    process, the MarkMonitor and Audible Magic source code, and the

5    evidence collected in the case, among other things, and her

6    conclusions were clear.

7            She determined that the MarkMonitor system accurately

8    detected peers that are copying and distributing the

9    plaintiffs' copyrighted works, and that it prepares and sends

09:22:27  10    accurate notices about that infringement activity that it

11    detects.

12            During the course of Mr. Bahun's and

13    Ms. Frederiksen-Cross's testimony, they were asked about a

14    couple of different data fields that looked like it had certain

15    hashes that had two different recordings associated with them.

16    Do not be misled.  These are litigation games.  Cox is

17    desperate to find a glitch, but it can't.

18            You may recall that one of them was a file mislabeled

19    by a user as a Taylor Swift track, when Audible Magic had

09:23:02  20    reported that, in fact, it was a Lady Gaga song.  We then

21    played the song in court, and lo and behold, it was Lady Gaga,

22    "Poker Face."  That was one of the three examples.

23            That is no different than somebody putting the Lady

24    Gaga CD in the Taylor Swift CD case.  This is not an error.

25    Notably, not a single Cox witness, fact or expert, testified at

Case 1:18-cv-00950-LO-JFA   Document 674   Filed 12/26/19   Page 101 of 101 PageID# 29060

3034

1    send this back to them.

2           And hopefully this is just one of these initial

3    gathering-of-information type questions, but we will know that

4    soon enough.

5           All right.  Then thank you all for assembling.

6           And we're in recess until we need to get together

7    again.  Thank you.

8           NOTE:  At this point a recess is taken; whereupon no

9    further matters are heard and the December 18, 2019, portion of

10   the case is concluded.

11          ---------------------------------------------

12

13                  CERTIFICATE OF COURT REPORTERS

14

15

16          We certify that the foregoing is a true and
            accurate transcription of our stenographic notes.

17

18

19              /s/  Norman B. Linnell
                Norman B. Linnell, RPR, CM, VCE, FCRR

20

21

22              /s/  Anneliese J. Thomson
                Anneliese J. Thomson, RDR, CRR

23

24

25