# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| SONY MUSIC ENTERTAINMENT, *et al.*, | |
| Plaintiffs, | |
| v. | Case No. 1:18-cv-00950-LO-JFA |
| COX COMMUNICATIONS, INC., *et al.*, | |
| Defendants. | |

### PLAINTIFFS' MEMORANDUM IN OPPOSITION TO COX'S MOTION FOR RELIEF FROM THE JUDGMENT UNDER RULES 60(B)(2) AND 60(B)(3) AND REQUEST <u>FOR INDICATIVE RULING UNDER RULE 62.1</u>

**TABLE OF CONTENTS**

CITATION GUIDE ................................................................................................................. iii

TABLE OF AUTHORITIES .............................................................................................. iv

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................... 2

    I.   Overview ...................................................................................................................... 2

    II.  Cox's Subpoena to MarkMonitor Did Not Call for the Charter Code at Issue. ............... 4

    III. Cox Knew About, but Ignored, the Charter Code It Now Describes as "Essential." ....... 5

    IV. Cox Disregarded the Copies of Infringing Music Files on the Hard Drive.................... 10

LEGAL STANDARD.......................................................................................................... 11

ARGUMENT ....................................................................................................................... 14

    I.   Cox Has Not Satisfied the Predicate Requirements That a Movant Must Meet in
        Addition to the Rule 60(b) Subsections................................................................. 14

        A.  Cox Failed to Show That It Has a Meritorious Defense. ....................................... 15

        B.  Cox Failed to Demonstrate Exceptional Circumstances. ....................................... 15

    II.  Cox Has Not Satisfied the Rule 60(b)(2) Requirements. ................................................ 16

        A.  Cox Failed to Show That the Charter Code Is Not Merely Cumulative or
            Impeaching. .................................................................................................... 16

        B.  Cox Failed to Show the Charter Code at Issue Is Material. ................................... 19

        C.  Cox Failed to Show that the Charter Code Is Likely to Produce a New
            Outcome If the Case Were Retried ................................................................ 20

    III. Cox Has Not Met Its Onerous Burden to Satisfy Rule 60(b)(3). ................................. 21

        A.  Cox Failed to Offer Clear and Convincing Evidence of Misconduct by an
            Opposing Party. ............................................................................................. 21

        B.  Cox Failed to Prove It Was Prevented from Fully and Fairly Defending Itself...... 22

        C.  Cox Failed to Show It Has a Meritorious Defense.................................................. 23

    IV. Finality Outweighs Prejudice. ...................................................................................... 23

    V.  There Is No Merit to Cox's Request for Discovery or an Abeyance. ............................. 24

CONCLUSION.................................................................................................................... 27

## <u>CITATION GUIDE</u>

o  "**Cox 1st Mem.**" refers to Cox's Memorandum of Law in Support of Its Motion for Relief from the Judgment Under Rule 60(b)(3) and Request for Indicative Ruling Under 62.1, ECF No. 739.

o  "**Cox 1st Ex.**" refers to a document filed as an Exhibit to Cox 1st Mem.

o  "**Cox 2d Mem.**" refers to Cox's Memorandum of Law in Support of Its Motion for Relief from the Judgment Under Rules 60(b)(2) and 60(b)(3) and Request for Indicative Ruling Under 62.1, ECF No. 750.

o  "**Cox 2d Ex.**" refers to a document filed as an Exhibit to Cox 2d Mem.

o  "**Pls. 1st Opp'n**" refers to Plaintiffs' Memorandum in Opposition to Cox 1st Mem., ECF No. 768.

o  "**Pls. 1st Ex.**" refers to a document filed as an Exhibit to the Declaration of Jeffrey M. Gould in Support of Pls. 1st Opp'n, ECF No. 767-1.

o  "**Pls. 2d Ex.**" refers to a document filed as an Exhibit to the Declaration of Jeffrey M. Gould in Support of Plaintiffs' Memorandum in Opposition to Cox's Motion for Relief from the Judgment Under Rules 60(b)(2) and 60(b)(3) and Request for Indicative Ruling Under Rule 62.1.

o  "**PX**" and "**DX**" refer to trial exhibits.

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Bohus v. Beloff*,
   950 F.2d 919 (3d Cir. 1991) ...................................................... 20

*Boryan v. United States*,
   884 F.2d 767 (4th Cir. 1989) ................................................. 12, 13

*Boyd v. Bulala*,
   905 F.2d 764 (4th Cir. 1990) ................................................. 15, 23

*Cleveland Demolition Co. v. Azcon Scrap Corp.*,
   827 F.2d 984 (4th Cir. 1987) ...................................................... 27

*Colorado v. New Mexico*,
   467 U.S. 310 (1984) ................................................................... 13

*Columbia Commc'ns Corp. v. EchoStar Satellite Corp.*,
   2 F. App'x 360 (4th Cir. 2001) ................................................... 14

*Compton v. Alton S.S. Co.*,
   608 F.2d 96 (4th Cir. 1979) ................................................... 12, 15

*Coomer v. Coomer*,
   217 F.3d 838, 2000 WL 1005211 (4th Cir. 2000) .................... 12, 15

*Doe v. Pub. Citizen*,
   749 F.3d 246 (4th Cir. 2014) ...................................................... 24

*Downing v. Lee*,
   2018 WL 10247588 (E.D. Va. Jan. 22, 2018) ................... 12, 15, 23

*Frederick S. Wyle P.C. v. Texaco, Inc.*,
   764 F.2d 604 (9th Cir. 1985) ...................................................... 12

*Gordon v. Richmond Pub. Schs.*,
   No. 3:13cv113–HEH, 2013 WL 4829296 (E.D. Va. Sept. 10, 2013) .................................... 19

*Greyhound Lines, Inc. v. Wade*,
   485 F.3d 1032 (8th Cir. 2007) .................................................... 20

*Griggs v. Provident Consumer Disc. Co.*,
   459 U.S. 56 (1982) ..................................................................... 24

*Guthrie v. Flanagan*,
   No. 3:07cv479, 2009 WL 1444309 (E.D. Va. May 20, 2009) ............................................ 12

*Halliburton Energy Servs., Inc. v. NL Indus.*,
    618 F. Supp. 2d 614 (S.D. Tex. 2009) ...................................................................... 27

*Johnson v. Starbucks Corp.*,
    No. 16-cv-00724-DMR, 2019 WL 402359 (N.D. Cal. Jan. 31, 2019) .............................. 25, 26

*Kravitz v. U.S. Dep't of Commerce*,
    382 F. Supp. 3d 393 (D. Md. 2019) ......................................................................... 14

*Levin v. Alms & Assocs., Inc.*,
    634 F.3d 260 (4th Cir. 2011) ................................................................................. 24

*Libertarian Party of Va. v. Judd*,
    718 F.3d 308 (4th Cir. 2013) ................................................................................. 19

*Lyons v. Jefferson Bank & Tr.*,
    994 F.2d 716 (10th Cir. 1993) ............................................................................... 18

*Marathon Res. Mgmt. Grp., LLC v. C. Cornell, Inc.*,
    No. 3:19cv89, 2020 WL 6370987 (E.D. Va. Oct. 29, 2020) ........................................ 23

*Mayfield v. NASCAR, Inc.*,
    674 F.3d 369 (4th Cir. 2012) ........................................................................... 11, 14

*McLawhorn v. John W. Daniel & Co.*,
    924 F.2d 535 (4th Cir. 1991) ........................................................................ 13, 21, 22

*Midwest Franchise Corp. v. Metromedia Restaurant Group*,
    177 F.R.D. 438 (N.D. Iowa 1997) .......................................................................... 24

*MMAR Grp., Inc. v. Dow Jones & Co.*,
    187 F.R.D. 282 (S.D. Tex. 1999).................................................................... 25, 26, 27

*MMAR Grp., Inc. v. Dow Jones & Co.*,
    No. 4:95-cv-1262 (S.D. Tex. filed Oct. 20, 1994), ECF Nos. 258 & 260 ............................ 27

*Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*,
    148 F.3d 3963 (4th Cir. 1998) ......................................................................... 12, 14

*Pearson v. First NH Mortgage Corp.*,
    200 F.3d 30 (1st Cir. 1999)................................................................................... 24

*Richardson v. Boddie-Noell Enters.*,
    78 F. App'x 883 (4th Cir. 2003) ............................................................................ 13

*Schultz v. Butcher*,
    24 F.3d 626 (4th Cir. 1994) ............................................................................. 13, 20

*Taylor v. Texgas Corp.*,
  831 F.2d 255 (11th Cir. 1987) .............................................................. 13

*Tunnell v. Ford Motor Co.*,
  245 F. App'x 283 (4th Cir. 2007) .............................................. 13, 14, 23

*United States v. Ali*,
  874 F.3d 825 (4th Cir. 2017) .............................................................. 13

*United States v. Hall*,
  664 F.3d 456 (4th Cir. 2012) .............................................................. 21

*United States v. Villarini*,
  238 F.3d 530 (4th Cir. 2001) .............................................................. 23

*United States v. Youngblood*,
  2021 WL 2910667 (4th Cir. July 12, 2021) ........................................ 21

*Wells Fargo Bank, N.A. v. AMH Roman Two NC, LLC*,
  859 F.3d 295 (4th Cir. 2017) .......................................................... 11, 14

# INTRODUCTION

Cox has filed two Rule 60 motions within a 15-day span.  Like Cox's first Rule 60 motion, this latest one (the "Second Rule 60 Motion") should be swiftly rejected.  In connection with a separate lawsuit against a different ISP, Charter Communications, Inc., Plaintiffs' notice program vendor, MarkMonitor, recently found a piece of source code (along with its revision history, collectively the "Charter Code") that it apparently did not make available for inspection when responding to Cox's subpoena and a discovery order in this case.  The Charter Code arguably was not called for by Cox's subpoena here, and, in any event, is of no consequence, since its production would not have changed the jury's finding of Cox's overwhelming liability for the massive infringement of Plaintiffs' copyrighted works.  Moreover, in the instant motion, Cox ascribes no wrongdoing to Plaintiffs, nor could it.  Accordingly, there is no basis for Cox's requested relief.[1]

The Charter Code relates to how MarkMonitor stored data from Audible Magic's identification of the contents of suspected infringing files.  MarkMonitor utilized Audible Magic so that MarkMonitor could develop a database of known infringing files, identified by their unique hash values.  Thereafter, MarkMonitor would identify ISP subscribers engaging in infringement by observing them distributing a known infringing file, identified by its unique hash value.

The plain language of Cox's subpoena to MarkMonitor did not clearly call for production of the Charter Code.  That fact alone should be the end of the matter.  But even assuming that Cox had requested the Charter Code from MarkMonitor, Cox knew that it was not within the materials that MarkMonitor made available for inspection.  Nonetheless, Cox never asked about it.  Nor did Cox claim while this case was pending that its absence limited any expert analysis.  This late stage

---

[1] Plaintiffs use the defined term "Charter Code" both for clarity throughout this brief and to distinguish between source code that Charter requested in its subpoena to MarkMonitor, but Cox apparently did not.  *See infra* at 4–5.

of the proceeding is certainly not the time for Cox to first focus on it.

Further, the Charter Code that Cox now seeks to "discover"—despite the fact that discovery closed in this case nearly three years ago—is insignificant compared to the key evidence that Cox had a full and fair opportunity to review: Audible Magic's own source code for its system that provided the infringing song file identifications; MarkMonitor's records containing the Audible Magic identifications; and copies of the infringing files themselves. Indeed, even with copies of the infringing files and Plaintiffs' assertions as to the contents, Cox failed to show any inaccuracies.

Cox has not remotely satisfied the stringent requirements necessary for relief under Rule 60(b)(2) and/or Rule 60(b)(3). In fact, Cox concedes this. Thus, Cox makes the even more extraordinary request that the Court hold Cox's Second Rule 60 motion in abeyance, and permit Cox to take discovery—over two years after the 2019 jury verdict, and more than a year after entry of final judgment—to try to find a basis for the exceptional relief sought. However, Cox's requests for an abeyance and discovery fare no better. As explained below, Cox's latest 13th-hour gambit fails on multiple independent grounds.

## BACKGROUND[2]

### I.   Overview

Cox fully and actively litigated this case. This Court provided Cox with every opportunity in both discovery and at trial to build its defense, and it lost. The jury found that the evidence was overwhelming that Cox knew about the massive infringing activity on its network for years,

---

[2] The background below sets forth what is most relevant to Cox's Second Rule 60 Motion, without repeating the broader recitation of facts set forth in Plaintiffs' Opposition to Cox's First Rule 60 Motion, ECF No. 768, which is incorporated herein by reference. Defined terms have the same meaning across both memoranda in opposition. Any terms not defined herein have the meaning already given to them.

supported it, and assisted specific known repeat infringers to continue to infringe. *See generally* Pls.' Mem. in Opp'n to Cox's Mot. for Remittitur or New Trial, ECF No. 697, at 4–15; Mem. in Opp'n to Cox's Renewed Mot. for JMOL or New Trial, ECF No. 699, at 2–13. The jury was not swayed by Cox's attempt to recast itself as an innocent ISP that respected copyright, acted reasonably, and was effective at addressing infringement and repeat infringers. On December 19, 2019, after a multi-week trial, the jury found Cox liable both for contributory and vicarious copyright infringement, found that Cox infringed willfully, and awarded statutory damages per work infringed. *See* Verdict Form, ECF No. 669. Cox filed extensive post-trial motions, which the parties briefed throughout 2020, all of which this Court denied. *See* Mem. Op. & Order, ECF No. 707; Order, ECF No. 721. Cox is now actively pursuing its Fourth Circuit appeal, with oral argument scheduled for March 9, 2022.

In its Second Rule 60 Motion, Cox contends that the Charter Code relates to how MarkMonitor's system "incorporated data from Audible Magic to verify whether an allegedly infringing file contained Plaintiffs' copyrighted works" and that MarkMonitor purportedly did not produce, but misrepresented that it did produce, the code for inspection. Cox 2d Mem. 1–2. Cox has not actually seen the Charter Code. Nonetheless, Cox speculates that it is "essential." *Id.* at 2. At the same time, Cox concedes it cannot prove that the Charter Code would likely have produced a different outcome had Cox had it previously. *Id.* at 16.

Cox's speculation ignores the long history of this case and the evidence produced in discovery. Cox had complete access to, and possession of, copies of the *actual* infringing files upon which Plaintiffs based their claims. As this Court is aware, Plaintiffs produced a hard drive containing copies of infringing files with the same hash values as those identified in infringement notices Cox received. Cox and its experts could have listened to the files, manually or via an audio

content identification service, to verify that they contain what Plaintiffs claimed.  When Cox raised challenges at trial, Plaintiffs played several of the files for the jury and demonstrated that the content was exactly what Plaintiffs represented it to be.  *See, e.g.*, Pls. 1st Ex. 2, Trial Tr. 663:11–666:8 ("Poker Face" by Lady Gaga).  The source code reflecting the mechanism by which MarkMonitor utilized Audible Magic does not change the contents of the infringing files—which Cox ignored throughout the case except for a few failed challenges at trial.

## II.  Cox's Subpoena to MarkMonitor Did Not Call for the Charter Code at Issue.

Cox's subpoena to MarkMonitor, arguably, did not even call for production of the Charter Code at issue.  Cox's subpoena targeted MarkMonitor's processes for infringement verification and notice sending with respect to specific infringers but was vague about whether it also covered MarkMonitor's process for identifying contents of suspected infringing files in the first instance. *See generally* Cox 2d Ex. E.

Cox's subpoena to MarkMonitor requested "[o]ne copy of each version of Your System that was in use during Plaintiffs' Claim Period, including all versions of the source code for each, that was used to monitor and/or detect copyright infringement, generate copyright infringement notices, or send copyright infringement notices."  Cox 2d Mem. 7; *see* Cox 2d Ex. E (Cox Req. 12). The subpoena defined "Your System" to mean MarkMonitor's "system for monitoring and/or detecting alleged copyright infringement, generating copyright infringement notices, and sending copyright infringement notices."  Cox 2d Ex. E (Cox Req. 12).  Nothing in the request or definition identifies the audio verification process.  Cox's motions practice with MarkMonitor used the same language set forth in the subpoena, again without making clear if the subpoena—and resulting discovery order—extended to the code for the back-and-forth communications with Audible

Magic.[3]

MarkMonitor recently disclosed the Charter Code at issue here in connection with a subpoena to MarkMonitor from Charter Communications ("Charter") in the *Charter* case, which is different than the subpoena that Cox issued to MarkMonitor here. While both subpoenas used the same definition for "Your System," the *Charter* subpoena contained 52 requests (including nine for different iterations of source code), whereas the *Cox* subpoena contained 24 requests (with only two concerning source code). *Compare* Cox 2d Ex. E (Cox Reqs. 12–13), *with* Pls. 2d Ex. 1 (Charter Reqs. 10, 25–26, 28, 41–43, 45–46).[4] The California court's order for MarkMonitor to produce source code responsive to Cox Requests 12–13 does not change expand the scope of the subpoena.

## III. Cox Knew About, but Ignored, the Charter Code It Now Describes as "Essential."

Regardless of the scope of Cox's subpoena and the related discovery order, the importance Cox now purports to ascribe to the Charter Code is overstated and at odds with how Cox treated it while litigating the case. As explained below, Cox and its expert: (i) knew about MarkMonitor's

---

[3] *See* Cox 2d Ex. G, Mot. to Compel, at 1 (arguing that "the *Sony* plaintiffs will rely on both MarkMonitor's monitoring data and its notices" and therefore "the *reliability* and *accuracy* of MarkMonitor's system in generating this information is at the heart of the *Sony* plaintiffs' claims and, critically, Cox's defenses" (emphasis in original)); *id.* at 2 (stating that Cox sought to enforce a subpoena "seeking a copy of each version of MarkMonitor's system used to target Cox's subscribers and send notices and all documents regarding the system's revision history and associated source code"); *id.* at 6 (stressing that Cox's expert "must review the system and the source code used to identify the alleged instances of infringement and to generate the copyright infringement notices that were sent to Cox").

[4] By way of example, the following request is new to the subpoena in the *Charter* case:

> All documents, including source code, data sheets, manuals, and other technical documents describing the process by which the MarkMonitor System assured that notices alleging infringement were sent to Charter or Charter's subscribers only when and if Audible Magic confirmed that the file that was the subject of the notice matched a work in Audible Magic's reference database.

Pls. 2d Ex. 1(Charter Req. 25).

use of Audible Magic for initial file verification; (ii) knew they received MarkMonitor data generated from its use of Audible Magic, but not source code concerning how MarkMonitor generated, ingested, and stored that Audible Magic data; (iii) never inquired into the existence or availability of code concerning MarkMonitor's use of Audible Magic; and (iv) never claimed that an inability to review such code limited their analysis.

*The MarkMonitor system*. MarkMonitor's system included three basic components: file verification; infringement verification; and notice sending. *See* Pls. 1st Opp'n 6–7. Only the first component—file verification—utilized Audible Magic's audio content identification service. *Id.* at 6. Cox and its technical expert, Dr. Nicholas Feamster, were acutely aware of all three components.

*Plaintiffs' technical expert report*. On April 10, 2019, Plaintiffs' technical expert, Barbara Frederiksen-Cross, submitted her expert report ("BFC Opening Report"), which described the three components of MarkMonitor's process, including the component that communicated with Audible Magic to identify the contents of suspected infringing files. *See* Cox 2d Ex. N, at 20–28.

*Plaintiffs' data expert report*. On April 10, 2019, another of Plaintiffs' experts, Dr. George McCabe, a statistician, submitted his expert report ("McCabe Opening Report"). *See* Pls. 2d Ex. 2. The McCabe Opening Report stated his understanding "that MarkMonitor searched for potentially infringing torrents or files, downloaded them, and used Audible Magic's service for identification. Audible Magic then provided the artist, track, and other information identifying the relevant recordings, and MarkMonitor stored this information[.]" *Id.* at 7 ¶ 22.

*Cox's source code review*. On April 2, 2019, Cox's technical expert, Dr. Nicholas Feamster, inspected MarkMonitor's source code. *See* Cox 2d Ex. K ("Feamster Rebuttal Report"), at 4 (stating that he reviewed "[t]he MarkMonitor source code, and in particular the 'DtecNet

6

Framework 2008' and 'BitTorrent Agent 2011' source code repositories provided for my inspection by MarkMonitor on April 2, 2019"). When doing so, Dr. Feamster apparently focused only on the second and third components of MarkMonitor's process—infringement detection and notice sending. Plaintiffs are unaware of Cox or Dr. Feamster ever complaining to MarkMonitor that the MarkMonitor source code made available for inspection did not include code for the file verification component—*i.e.*, the module involving use of Audible Magic. Cox's Second Rule 60 Motion does not point to any such complaint.

***Cox's technical expert rebuttal report***. Dr. Feamster submitted his expert rebuttal report on May 15, 2019. *See* Cox 2d Ex. K. He confirmed that he considered "[t]he expert reports of Barbara Frederiksen-Cross … and George McCabe" in his analysis. *Id.* at 5. The thrust of the Feamster Rebuttal Report was to respond to the BFC Opening Report and to opine on "the nature and accuracy of MarkMonitor's software." *Id.* at 3 ¶ 15.

The Feamster Rebuttal Report had a section titled "How MarkMonitor used Audible Magic," *see id.* at 19 § 3.5, where Dr. Feamster explained his understanding of MarkMonitor's process:

> MarkMonitor relied on the Audible Magic software to verify that any content it downloaded from peer-to-peer networks matched known infringing content that corresponded to titles provided by the RIAA.
>
> If the MarkMonitor agent had not previously downloaded a copy of the file pertaining to the .torrent file in question, the agent downloads a complete copy of the file and verifies that the downloaded file corresponds to infringing content by matching the downloaded file against a database of known "fingerprints" of infringing content.

*Id.* at 19 ¶¶ 109–10.

Dr. Feamster criticized MarkMonitor's reliance on hashes for infringement verification, opining that infringement verification requires downloading each file from each Cox subscriber before sending an infringement notice as to that infringer. *Id.* at 22 § 4.1. He criticized the manner,

frequency, and quantity of notices; the frequency of MarkMonitor's use of Audible Magic; and further opined that "the accuracy of Audible Magic has not been rigorously established." *Id.* at 22–25, §§ 4.2–4.4. Notably, Dr. Feamster did *not* assert that his review of MarkMonitor's anti-piracy system was limited by any inability to inspect the *source code* that MarkMonitor used to ingest Audible Magic's identification of the artist and title for verified files.

In his report, Dr. Feamster states that "Cox and I have . . . had difficulty obtaining MarkMonitor's source code for inspection" and that "[t]he code that I did review was clearly missing basic functionality." *Id.* at 10 ¶¶ 46–47. But Dr. Feamster's contentions about missing code had nothing to do with the Audible Magic functionality. He complained, in his words, about "MarkMonitor's process for *noticing* alleged infringers." *Id.* at 10 ¶ 47 (emphasis added). He mentioned only that the code he reviewed did not "detail[] how MarkMonitor matched the IP address of a peer to its ISP" or "on what basis MarkMonitor decided to send a notice to Cox." *Id.*; *accord id.* at 16 ¶ 92 ("I was not provided with the code that stated what information MarkMonitor would consider in sending a notice to Cox on behalf of a peer."). Thus, even though Dr. Feamster knew how to identify source code that was missing when he thought it was relevant, he did *not* attribute any significance to the fact that the MarkMonitor code he inspected apparently did not include code that "relates to how its system incorporated data from Audible Magic to verify whether an allegedly infringing file contained Plaintiffs' copyrighted works."

***MarkMonitor depositions***. Cox deposed two MarkMonitor Rule 30(b)(6) witnesses. MarkMonitor designated two witnesses, Sam Bahun (including on production of source code) and Slawomir Paszkowski (including on the substance and operation of code). Cox took those depositions on June 13 and July 2, 2019, respectively. Following its chosen litigation strategy, Cox did not ask whether any source code for incorporating data from Audible Magic existed, why

8

it was not within the code that Dr. Feamster inspected, or whether it could be found and made available.

*Cox's trial testimony*. At trial, Dr. Feamster opined that infringement verification requires downloading each file from each Cox subscriber before sending an infringement notice as to that infringer. *See* Pls. 1st Ex. 2, Trial Tr. 2244:18–2246:2. Dr. Feamster did not testify that his analysis was limited by any inability to review MarkMonitor source code for how MarkMonitor ingested and stored Audible Magic data in the file verification process. As with Dr. Feamster's report, his trial testimony that Cox cites concerning source code he did not review concerned only code for "decid[ing] that it's time to generate a notice." Cox 2d Ex. O, Trial Tr. 2236:10–2237:7 (cited by Cox 2d Mem. 11). Indeed, Dr. Feamster did not testify that he had any concerns as to how MarkMonitor's anti-piracy system implemented Audible Magic or stored the data from Audible Magic that verified whether an allegedly infringing file contained Plaintiffs copyrighted works.[5]

In sum, (1) Cox's expert reviewed source code that MarkMonitor produced for inspection, and (2) Cox and its expert knew that they did not review the code that "relates to how [MarkMonitor's] system incorporated data from Audible Magic to verify whether an allegedly infringing file contained Plaintiffs' copyrighted works" (used for file verification generally). As to the latter, Cox said nothing—either to MarkMonitor or to Plaintiffs during discovery, in Dr. Feamster's Rebuttal Report, or at trial.

---

[5] Dr. Feamster's trial testimony was cabined by a Motion *in Limine* ruling and a Daubert ruling. The *in limine* ruling precluded testimony concerning an incomplete document known as REV3444, which lacked a foundation in the record and which Dr. Feamster had misleadingly misapplied to MarkMonitor's implementation of Audible Magic. *See* Order, ECF No. 590, at 8. The *Daubert* ruling precluded testimony challenging Audible Magic's reliability, which Dr. Feamster had pre-determined in an article omitted from his list of publications accompanying his expert report and before he had even reviewed the Audible Magic system. *See* Order, ECF No. 589, at 3.

## IV. Cox Disregarded the Copies of Infringing Music Files on the Hard Drive.

Any potential relevance of the Charter Code goes to the *process* by which MarkMonitor communicated with Audible Magic in order to verify the contents of suspected infringing files, not whether Audible Magic correctly identified the actual contents of the files. Moreover, Plaintiffs' evidence was not limited only to showing how MarkMonitor's process worked and providing MarkMonitor's data records on the output of the process (containing Audible Magic's identifications). Rather, Plaintiffs also provided Cox with a hard drive containing copies of infringing audio files with the same hash values as those in the infringement notices Plaintiffs sent to Cox (the "Hard Drive"). *See* Pls. 1st Ex. 3; Decl. of Sam Bahun, ECF No. 325-6, at 8 ¶ 24; Pls. 1st Ex. 2, Trial Tr. 788:5–789:20. Cox and its experts could have reviewed the infringing files and determined for themselves whether they contained the songs listed in MarkMonitor's verification records (sourced from Audible Magic) or something different. And, for Cox to try to identify any issues concerning the accuracy or reliability of Audible Magic's identifications, Cox would need to review the Audible Magic system, or the infringing files themselves, not the MarkMonitor code.

When Plaintiffs produced the Hard Drive, Plaintiffs informed Cox that it "contains copies of the infringing files." Pls. 1st Ex. 3. Whether by neglect or for strategic reasons, Cox's counsel apparently never relayed this information to Dr. Feamster. Or, if they did, he overlooked it. Although Dr. Feamster included the Hard Drive in his list of the "materials relied on" in the Feamster Rebuttal Report, he proceeded under the mistaken impression that those audio files were the legitimate copies of music that Plaintiffs provided to Audible Magic to construct a reference database of fingerprints, rather than copies of infringing files distributed by Cox subscribers. *See* Cox 2d Ex. K, at 5 (describing the Hard Drive files as "[t]he content files themselves—presumably those provided to Audible Magic by Plaintiffs or Plaintiffs' agents for constructing a reference database of fingerprints of the works at issue"); *accord* Pls. 2d Ex. 3, Dep. Tr. 234:19–245:21 (Dr.

10

Feamster's deposition testimony on his mistaken understanding of what the Hard Drive contained). Cox took depositions of 28 witnesses, yet never asked a single witness one question about the Hard Drive files. Had Cox done so or relayed Plaintiffs' clear statement of what those files were to Dr. Feamster, he would have understood this mistake.

Cox and Dr. Feamster had the MarkMonitor Spreadsheet (PX 11) containing the hash values of the Hard Drive files and identifying the contents of those files. Cox and Dr. Feamster could see that those same hash values appeared in notices to Cox identifying infringing files by hash value. Apparently, neither Cox's counsel nor Dr. Feamster ever manually listened to any of the music files on the Hard Drive, or otherwise used an audio identification service to confirm the contents. Nothing in the record suggests that they did. In any event, neither Cox nor Dr. Feamster raised a single instance at trial of a work in suit on the MarkMonitor Spreadsheet not matching the corresponding Hard Drive file. Tellingly, Cox's only attempt at doing so failed because the relevant audio file on the Hard Drive plainly matched the expected content. *See, e.g.*, Pls. 1st Ex. 2, Trial Tr. 663:11–666:8.

In sum, Cox's Second Rule 60 Motion is baseless and should be denied.

## **LEGAL STANDARD**

Rule 60(b) relief from judgment is an "extraordinary remedy." *Mayfield v. NASCAR, Inc.*, 674 F.3d 369, 378 (4th Cir. 2012). Before a court will even review a party's entitlement to such relief, the moving party must establish four threshold requirements: "(1) timeliness, (2) a meritorious defense, (3) a lack of unfair prejudice to the opposing party, and (4) exceptional circumstances." *Wells Fargo Bank, N.A. v. AMH Roman Two NC, LLC*, 859 F.3d 295, 299 (4th Cir. 2017); *accord Mayfield*, 674 F.3d at 378 (Rule 60(b) relief "should not be awarded except under exceptional circumstances"). Because of the "exceptional" nature of this remedy and the strong policy favoring litigation finality, a court "must rigorously examine these four predicate

requirements" and consider the movant's Rule 60(b) arguments only in the "unlikely event" the movant satisfies this "onerous four-part threshold." *Coomer v. Coomer*, 217 F.3d 838, 2000 WL 1005211, at *4 (4th Cir. 2000); *Compton v. Alton S.S. Co.*, 608 F.2d 96, 102 (4th Cir. 1979); *accord Downing v. Lee*, 2018 WL 10247588, at *1 n.1 (E.D. Va. Jan. 22, 2018).

Rule 60(b) provides, in relevant part:

On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

. . .

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); [or]

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party[.]

To obtain relief under Rule 60(b)(2), the moving party "is *obliged* to show not only that this evidence was newly discovered or unknown to it until after the [trial], but also that it could not with reasonable diligence have discovered and produced such evidence at the [trial]." *Boryan v. United States*, 884 F.2d 767, 771 (4th Cir. 1989) (quoting *Frederick S. Wyle P.C. v. Texaco, Inc.*, 764 F.2d 604, 609 (9th Cir. 1985)) (emphasis in original); *accord Guthrie v. Flanagan*, No. 3:07cv479, 2009 WL 1444309, at *3 (E.D. Va. May 20, 2009) ("This requirement is sometimes referred to as the 'justifiable ignorance' requirement."); *cf. Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) ("[I]f a party relies on newly discovered evidence in its Rule 59(e) motion, the party must produce a legitimate justification for not presenting the evidence during the earlier proceeding." (internal quotation marks omitted)).[6]

Courts in the Fourth Circuit require the movant to prove the following elements:

---

[6] In the Fourth Circuit, "the standard governing relief on the basis of newly discovered evidence is the same whether the motion is brought under rule 59 or rule 60." *Boryan*, 884 F.2d at 771.

> (1) the evidence is newly discovered since the judgment was entered; (2) due diligence on the part of the movant to discover the new evidence has been exercised; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence is such that is likely to produce a new outcome if the case were retried, or is such that would require the judgment to be amended.

*Boryan*, 884 F.2d at 771 (quoting *Taylor v. Texgas Corp.*, 831 F.2d 255, 259 (11th Cir. 1987)). To prevail on a Rule 60(b)(2) motion, the party "must show that the missing evidence was of such a material and controlling nature as would probably have changed the outcome." *Schultz v. Butcher*, 24 F.3d 626, 631 (4th Cir. 1994) (cleaned up).

Rule 60(b)(3) provides, in relevant part, that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." The movant must "prove the misconduct complained of by clear and convincing evidence and demonstrate that such misconduct prevented him from fully and fairly presenting his claim or defense." *McLawhorn v. John W. Daniel & Co.*, 924 F.2d 535, 538 (4th Cir. 1991). "To be clear and convincing, evidence must 'place in the ultimate factfinder an abiding conviction that the truth of the party's factual contentions are highly probable.'" *United States v. Ali*, 874 F.3d 825, 831 n.2 (4th Cir. 2017) (quoting *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984)) (cleaned up).

Even if a movant carries the heavy burden to demonstrate misconduct by clear and convincing evidence, Rule 60(b)(3) relief may only be warranted if the withheld material was "essential to [the moving party's] position" such that its absence "metaphorically tie[d] one hand behind [its] back." *Richardson v. Boddie-Noell Enters.*, 78 F. App'x 883, 889 (4th Cir. 2003). Regardless of the importance of the evidence, however, a court must deny a Rule 60(b)(3) motion if the moving party is "able to fully prepare and present his case notwithstanding the adverse party's misconduct." *Tunnell v. Ford Motor Co.*, 245 F. App'x 283, 288 (4th Cir. 2007); *accord*

*Columbia Commc'ns Corp. v. EchoStar Satellite Corp.*, 2 F. App'x 360, 367 (4th Cir. 2001) (affirming Rule 60(b)(3) denial because evidence at issue was "merely cumulative").

Because the Fourth Circuit has listed the Rule 60(b) threshold factors and Rule 60(b) elements "in the conjunctive, [the movant] must meet them all," and a court should deny a Rule 60(b) motion where the movant fails to satisfy any one factor or element. *See, e.g.*, *Wells Fargo Bank*, 859 F.3d at 299. Should the moving party somehow navigate both the threshold requirements and Rule 60(b) elements successfully, the court must then "balance[] the policy favoring finality of judgments against the need to do justice to the moving party to determine whether a new trial is appropriate." *Tunnell*, 245 F. App'x at 288.

On top of all this, as Cox acknowledges, its Fourth Circuit appeal is ripe and set for argument on March 9, 2022. For *this* Court to grant Cox's Rule 60(b) motion, then, this Court would have to issue an indicating ruling stating that (1) it would grant the motion if the Court of Appeals were to remand for that purpose, or (2) the motion raises a "substantial issue." Fed. R. Civ. P. 62.1(a).[7] Cox has not met its burden for this Court to reach such a ruling.

## ARGUMENT

### I. Cox Has Not Satisfied the Predicate Requirements That a Movant Must Meet in Addition to the Rule 60(b) Subsections.

Rule 60(b) relief from judgment is an "extraordinary remedy," *see Mayfield*, 674 F.3d at 378, and the threshold requirements that a movant must satisfy before a court will even review a party's entitlement to Rule 60 relief include the presence of both a meritorious defense and exceptional circumstances. *Wells Fargo Bank*, 859 F.3d at 299; *cf. Pac. Ins. Co.*, 148 F.3d at 403

---

[7] *See, e.g.*, *Kravitz v. U.S. Dep't of Commerce*, 382 F. Supp. 3d 393, 399–400 (D. Md. 2019) (finding "substantial issue" under Rule 62.1 where newly discovered evidence revealed damning information that partisan strategist played significant role in concocting Commerce Secretary's pretextual rationale for adding citizenship question to census).

("In general reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." (internal quotation marks omitted)).  A court "must rigorously examine," and find the movant has satisfied, both of these "onerous" requirements before granting relief. *Coomer*, 2000 WL 1005211, at *4; *Compton*, 608 F.2d at 102; *accord Downing*, 2018 WL 10247588, at *1 n.1.  Cox failed on each.

### A.   Cox Failed to Show That It Has a Meritorious Defense.

Cox has not shown that it will have a meritorious defense if the Court were to grant the indicative ruling Cox requests.  A Rule 60(b) movant must "demonstrate that granting that relief will not in the end have been a futile gesture."  *Boyd v. Bulala*, 905 F.2d 764, 769 (4th Cir. 1990). To do so, Cox "must still make a proffer of evidence that would permit a finding in [its] favor." *Downing*, 2018 WL 10247588, at *1 n.1.  Cox's Motion does not even acknowledge the existence of this requirement.  Cox failed to proffer any evidence as to why a new trial would not be a futile gesture.  While conjecture is not enough, Cox failed to offer even that here.  As explained herein, there is no indication that allowing Cox a new trial, even with this "new" evidence, would be anything but a futile gesture in a new trial.

### B.   Cox Failed to Demonstrate Exceptional Circumstances.

Cox has not shown the presence of any exceptional circumstances.  Cox's Second Rule 60 Motion is yet another desperate attempt to unsettle the judgment from a December 2019 jury trial to obtain a different outcome.

The mere identification of potential new evidence after a case is over does not constitute an exceptional circumstance.  If that were the standard, discovery of *any* new evidence would swallow the rule and the "exceptional" requirement would be rendered a nullity.

Exceptional circumstances are also absent because Cox barely focused on MarkMonitor's implementation of Audible Magic during the case.  Cox's pursuit of discovery from MarkMonitor

did not target the process of file verification to build a database of known infringing files identified by their hash values. *Compare* Cox 2d Ex. E (*Cox* subpoena), *with* Pls. 2d Ex. 1 (*Charter* subpoena). Cox and its expert knew about this aspect of MarkMonitor's process and knew that MarkMonitor did not provide code for it for inspection. Moreover, Cox did not thereafter ask about that code, nor suggest that its absence was consequential. *See supra* at 4–9. Compounding its failings, as discussed in Plaintiffs' Opposition to Cox's First Rule 60 Motion, Cox ignored the Hard Drive altogether and apparently failed to inform its expert what it contained. While Cox's Second Rule 60 Motion concerns the contents of the infringing files cited in the infringement notices, Cox and its expert could have, but chose not to, examine the Hard Drive containing copies of the infringing files to verify that they contain what Plaintiffs claimed.

Thus, Cox has not established either a meritorious defense or any exceptional circumstances.

## II.  Cox Has Not Satisfied the Rule 60(b)(2) Requirements.

Cox cannot meet at least three of the five requirements under Rule 60(b)(2) and thus has not carried its heavy burden of proving entitlement to obtain Rule 60(b)(2) relief.

### A.  Cox Failed to Show That the Charter Code Is Not Merely Cumulative or Impeaching.

Cox fails to meet its burden of showing that the Charter Code is not "merely cumulative or impeaching." "Cumulative evidence" is defined as "[a]dditional evidence that supports a fact established by the existing evidence (esp[ecially] that which does not need further support)." *Cumulative Evidence*, Black's Law Dictionary (11th ed. 2019). "Impeachment evidence" is defined as "[e]vidence used to undermine a witness's credibility." *Impeachment Evidence*, Black's Law Dictionary (11th ed. 2019) (citing Fed. R. Evid. 607–610). Cox argues that both Plaintiffs' expert and Dr. Feamster opined as to the reliability of the MarkMonitor system but could not opine

16

on the reliability of a system to operate in conformity with code that they had not reviewed.  Cox 2d Mem. 15.  But Cox's tautological statement is not the end of the matter, as Cox ignores the ample evidence generated by the output of MarkMonitor's use of Audible Magic and the very files Audible Magic examined.[8]

The Charter Code is cumulative because it does not add or change anything to the existing evidence concerning the contents of the infringing files listed in the infringement notices.  Critically, it is *Audible Magic's substantive code*, not MarkMonitor's ancillary code, that performs the core functions in Audible Magic's content identification system.  Audible Magic's software generates the fingerprints of audio files, compares those fingerprints to a database of known reference fingerprints, and prepares responses that are sent to MarkMonitor.  *See* Pls. 1st Ex. 2, Trial Tr. 462:12–463:14 (Frederiksen-Cross testimony); 663:11–666:8 (Bahun testimony); *see also* Pls. 2d Ex. 4, Trial Tr. 2225:2–4, 2226:17–2227:14 (Feamster testimony).  Cox and its expert inspected Audible Magic's source code in discovery, *see* Cox 2d Ex. K, at 4, and did not criticize Audible Magic in any meaningful way.  Cox and its expert also received the MarkMonitor Spreadsheet detailing Audible Magic's verifications showing the output of Audible Magic's software.  And they received a Hard Drive containing copies of infringing audio files for every work in suit, with hash values that match the MarkMonitor Spreadsheet of Audible Magic verifications and Plaintiffs' infringement notices to Cox.

The Charter Code is entirely cumulative of this parade of evidence.  By analyzing hash values, Cox could compare the artist and title entries on the MarkMonitor Spreadsheet to the

---

[8] Cox conflates whether the MarkMonitor code produced for inspection was "incomplete" and whether it was "the right version of the code."  Cox 2d Mem. 2, 16.  The two are obviously not the same.  Cox has no basis to represent that the parties' experts reviewed or relied upon code that differed from what was in place at the relevant time.

contents of the music files on the Hard Drive and could do whatever listening or automated content identification it wanted. Cox seemingly did no such comparison. *Cf. Lyons v. Jefferson Bank & Tr.*, 994 F.2d 716, 728 (10th Cir. 1993) ("If a party, through negligence or a tactical decision, fails to present evidence that was available, it may not find a refuge under Rule 60(b)(2) by finding substantially similar evidence from a newly discovered source"). Nor has Cox shown that reviewing the Charter Code would reveal something more than can be determined by analyzing the files themselves and comparing them to what Audible Magic determined those files contained. Thus, the recently located material is cumulative of evidence Cox had all along.

Cox's arguments for why the Charter Code is not cumulative are wrong. First, the question of cumulativeness is not determined based on Cox's arbitrary concept that only "contemporaneous evidence" matters. Cox 2d Mem. 15. Cox concocts that proposition from whole cloth. Given how hash values operate, copies of infringing files that have the same hash values as those referenced in Plaintiffs' infringement notices, whose contents were verified by Audible Magic, and that appear on the Hard Drive are the same regardless of when they were downloaded. *See* Pls. 1st Opp'n 7–9, 15–16.[9]

Second, Cox's reliance on the California court's determination that the MarkMonitor source code that Cox requested was not cumulative of MarkMonitor's "technical documents," *see*

___

[9] Regardless, Cox's claim that Plaintiffs' "only contemporaneous evidence of direct infringement" was "mere emails" providing Cox with notice of infringement is patently false. Among other things, Plaintiffs produced, and the jury considered, evidence packages available from MarkMonitor's database that contained, *inter alia*, the steps of MarkMonitor's investigation, MarkMonitor's communications with infringing Cox subscribers, the list of files shared, and the trace route mapping the flow of connections between MarkMonitor and the infringing Cox subscriber; records extracted from MarkMonitor's internal database of confirmed infringing files; additional data from MarkMonitor's database detailing the infringement detections, and copies of infringing files distributed by Cox subscribers bearing the same hashes as the files identified in Plaintiffs' notices. *See* Pls. 1st Opp'n 11.

Cox 2d Mem. 7–8, is a red herring.  That discovery order had nothing to do with whether the Charter Code at issue here is cumulative of the Hard Drive files and Audible Magic's identification of files bearing the same hashes—that issue was not before that court.  Contrary to how Cox *ipse dixit*, the Charter Code does not automatically pass the "not merely cumulative or impeaching" test simply because Cox prevailed on a motion to compel.

### B.   Cox Failed to Show the Charter Code at Issue Is Material.

For many of the same reasons, the Charter Code is not material.  Newly discovered evidence is material under Rule 60(b)(2) "if it might affect the outcome of the suit under the governing law." *Gordon v. Richmond Pub. Schs.*, 2013 WL 4829296, at *2 (E.D. Va. Sept. 10, 2013) (quoting *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013)) (internal quotation marks omitted).  Plainly, Dr. Feamster did not consider the Charter Code to be material during his source code inspection or when drafting his report.  If he or Cox thought it was material, they could and should have raised their inability to inspect code for that component of MarkMonitor's process as an issue.  They did not.  Cox suggests that Dr. Feamster did so, pointing to paragraph 47 of his report.  *See* Cox 2d Mem. 9, 11, 15.  This is misleading.  As explained above, where Dr. Feamster discussed unavailable source code that potentially impacted his analysis, he focused only on MarkMonitor's matching IP addresses to particular ISPs and MarkMonitor's notice-sending process.  He said nothing of incomplete or unavailable source code for evaluating how MarkMonitor incorporates Audible Magic data into its system when developing a database of known infringing files.

The Feamster Rebuttal Report discusses how "the behavior of the Audible Magic system depends on how it is configured and used by MarkMonitor."  Cox 2d Ex. K, at 26 ¶¶ 168–70.  However, this discussion was separate and apart from Dr. Feamster's discussion regarding source code.  *Compare id.*, *with id.* at 10 ¶¶ 44–47, 16 ¶ 92.

### C.   Cox Failed to Show that the Charter Code Is Likely to Produce a New Outcome If the Case Were Retried

Cox has not shown that the Charter Code is such that it is likely to produce a new outcome if this case were retried or is such that would require the judgment to be amended.  Cox 2d Mem. 16–17.  Cox's burden requires "more than a showing of the *potential* significance of the new evidence."  *Bohus v. Beloff*, 950 F.2d 919, 930 (3d Cir. 1991) (emphasis added) (internal quotation marks omitted).  Instead, the Fourth Circuit has instructed that, to prevail on a Rule 60(b)(2) motion, the party "must show that the missing evidence was of such a material and controlling nature as would probably have changed the outcome."  *Schultz*, 24 F.3d at 631 (cleaned up).  Cox has not—and cannot—satisfy this requirement.

Indeed, Cox *concedes* that it has not established that the Charter Code is likely to produce a different result, instead contending that it requires discovery to try to establish it.  Cox speculates that the Charter Code might possibly help it, while recognizing that it might not.  That is not a sufficient showing for this Court to upset the judgment.  The infringing files and other evidence produced to Cox in discovery demonstrate Cox's liability, regardless of the Charter Code.  The infringing files were identified by hash value in notices sent to Cox, and copies of the infringing files with the same hash values were produced to Cox in discovery.  Cox failed to identify a single infringed work in suit that was not what it purported to be.

Regardless, the mountain of evidence supporting the jury's verdict will overshadow the Charter Code, even if one assumes it might actually be helpful to Cox.  *See supra* at 2–3; *cf. Greyhound Lines, Inc. v. Wade*, 485 F.3d 1032, 1037 (8th Cir. 2007) (affirming the district court's ruling that "admission of the evidence would not produce a different result because liability rested not only on [testimony rebutted by the newly found evidence], but on the record as a whole").

Accordingly, Cox has not met—and cannot meet—at least three of the five requirements

under Rule 60(b)(2) and thus has not carried this heavy burden to obtain Rule 60(b)(2) relief.[10]

## III. Cox Has Not Met Its Onerous Burden to Satisfy Rule 60(b)(3).

Cox's argument under Rule 60(b)(3) is even weaker.  *See* Cox 2d Mem. 17–18.

### A.   Cox Failed to Offer Clear and Convincing Evidence of Misconduct by an Opposing Party.

Cox has failed to carry its burden to offer "clear and convincing evidence" of fraud, misrepresentation, or misconduct "by an opposing party."  *McLawhorn*, 924 F.2d at 538.  "Clear and convincing [evidence] has been defined as evidence of such weight that it produces in the mind of the trier of fact a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established, and, as well, as evidence that proves the facts at issue to be highly probable.'"  *United States v. Youngblood*, 2021 WL 2910667, at *1 (4th Cir. July 12, 2021) (quoting *United States v. Hall*, 664 F.3d 456, 461 (4th Cir. 2012)).

At best, Cox has shown only that MarkMonitor located the Charter Code in response to a subpoena in another case.  MarkMonitor's statements during discovery about what had been located and could be produced at that time were clearly statements of then-present understanding and belief.  Cox has no basis for claiming that those statements were misrepresentations, let alone for proving that by clear and convincing evidence.

And critically, Cox concedes that it has not shown that its allegations of misconduct are "by an opposing party."  Cox 2d Mem. 17–18.  Indeed, Cox tried this case recognizing that Plaintiffs do not have possession, custody or control over MarkMonitor's anti-piracy software. When discovery commenced, Cox served requests on Plaintiffs, seeking (among other things) a

---

[10] Cox may also be deemed to have failed to exercise due diligence in discovering the potential new evidence, which is another of the Rule 60(b)(2) requirements.  Cox cites to its subpoena to, and motions practice with, MarkMonitor.  But that discovery and motions practice did not clearly address the Charter Code.

copy of MarkMonitor's software and source code.  Plaintiffs objected that the requests "seek[] documents not in Plaintiffs' possession, custody, or control," and indicated that they would not produce this information.  Pls. 2d Ex. 5 (Pls.' Response to RFP Nos. 147–48.)  Cox never pressed this issue with Plaintiffs or moved to compel MarkMonitor source code from Plaintiffs. Thereafter, Cox issued a subpoena to MarkMonitor and pursued third-party motions practice against MarkMonitor.  If Cox had a different view on what was within Plaintiffs' possession, custody or control, it could and should have raised that issue during discovery in 2019, not after a multi-week jury trial, exhaustive post-trial motions, entry of judgment, and mere weeks before the Fourth Circuit hears oral argument on appeal.[11]

### B.   Cox Failed to Prove It Was Prevented from Fully and Fairly Defending Itself.

Cox has failed to prove that the alleged "misconduct prevented [it] from fully and fairly presenting [its] claim or defense."  *McLawhorn*, 924 F.2d at 538 (internal quotation omitted).  As explained above, if Cox wanted to test whether the infringing files contained copies of Plaintiffs' works in suit, those files were readily available to Cox, along with MarkMonitor's records as to the contents of the files.  Nothing prevented Cox from listening to the files or using an audio identification service—Audible Magic or other—to confirm the contents.  Here, Cox did not even address this required element, let alone satisfy it.  Cox 2d Mem. 17–18.

---

[11] Recognizing it failed to demonstrate misconduct by a party opponent, Cox seeks discovery on "whether the newly produced code was within Plaintiffs' 'possession custody or control,' whether Plaintiffs were involved at all in MarkMonitor's and its counsel's inaccurate prior representations regarding the available code and the completeness of its production, and whether MarkMonitor's conduct was in any way attributable to Plaintiffs."  Cox 2d Mem. 18.  Cox also seeks: (1) production and/or inspection of the source code and revision history data in question, (2) additional discovery and expert analysis regarding the content and significance of that source code, (3) discovery as to why that code was not previously identified and produced, and how it was recently discovered, and, finally, (4) any additional discovery that may be warranted.  Cox 2d Mem. 3.

### C.   Cox Failed to Show It Has a Meritorious Defense.

Cox has not shown that it will have a meritorious defense if the Court were to grant the indicative ruling Cox requests.  Cox "must still make a proffer of evidence that would permit a finding in [its] favor." *Downing*, 2018 WL 10247588, at *1 n.1. A Rule 60(b) movant must "demonstrate that granting that relief will not in the end have been a futile gesture." *Boyd*, 905 F.2d at 769.  Here, Cox did not even address this required element, nor offer any non-speculative, non-conclusory proffer to satisfy it.  Cox 2d Mem. 17–18.

## IV.   Finality Outweighs Prejudice.

Should a moving party somehow surpass both the threshold requirements and Rule 60(b) elements successfully, the court must then "balance[] the policy favoring finality of judgments against the need to do justice to the moving party to determine whether a new trial is appropriate." *Tunnell*, 245 F. App'x at 288.  The Fourth Circuit only grants Rule 60(b) relief "if the resulting prejudice was so great that it denied . . . the appellants a fair, as distinguished from a perfect, trial." *Cf. United States v. Villarini*, 238 F.3d 530, 536 (4th Cir. 2001) (internal quotation marks omitted).  Only prejudice of this severity will outweigh the important public policy of finality of litigation. *Cf. Marathon Res. Mgmt. Grp., LLC v. C. Cornell, Inc.*, 2020 WL 6370987, at *4 (E.D. Va. Oct. 29, 2020) ("Rule 60 is not meant to eviscerate the finality of judgments where the reasons for further consideration are less than compelling." (internal quotation marks omitted)).

Cox has not shown that it suffered *any* unfair prejudice, let alone prejudice sufficient to warrant a new trial.  Cox's Rule 60(b) motion is not about seeking justice.  Cox had every opportunity to listen to the files on the Hard Drive, or to identify their contents via an audio recognition service, and to test whether any files did not match to the identifications on the MarkMonitor Spreadsheet.  But, because MarkMonitor's anti-piracy system is reliable, as is Audible Magic's content identification service, Cox was unable to put forward any inaccuracies at

trial. Cox's displeasure with the jury verdict and its failed litigation strategy do not warrant an indicative ruling under Rule 62.1.

**V.   There Is No Merit to Cox's Request for Discovery or an Abeyance.**

Cox asks this Court to authorize a discovery fishing expedition, more than two years post-verdict, in hopes of conjuring support for its speculative Rule 60(b)(2) and 60(b)(3) motion. *See* Cox 2d Mem. 3, 16–17. Cox's request must be rejected.

As a threshold matter, "the filing of an appeal 'confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.'" *Levin v. Alms & Assocs., Inc.*, 634 F.3d 260, 263 (4th Cir. 2011) (quoting *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982)); *accord Doe v. Pub. Citizen*, 749 F.3d 246, 258–59 (4th Cir. 2014) (holding that "an effective notice of appeal divests a district court of jurisdiction" and "[a] district court does not act in aid of an appeal when it alters the status of the case as it rests before the court of appeals" (alterations & internal quotation marks omitted)). While this Court has limited authority to issue an indicating ruling under Rule 62.1, it does not have the authority to grant a discovery request. Cox, in fact, does not argue otherwise.

Even if there were no pending appeal, Cox's request for discovery and an abeyance should be denied. Cox has cited no case in which any court in the Fourth Circuit has endorsed the notion of Rule 60(b) discovery, let alone while an appeal was pending. Courts outside the Fourth Circuit, however, consistently declare that post-judgment discovery is—and should be—extraordinarily rare. *See* Pls. 1st Opp'n 29. As set forth in Plaintiffs' Opposition to Cox's First Rule 60 Motion, Cox's reliance on *Pearson v. First NH Mortgage Corp.*, 200 F.3d 30 (1st Cir. 1999), and *Midwest Franchise Corp. v. Metromedia Restaurant Group*, 177 F.R.D. 438 (N.D. Iowa 1997), is misplaced. *See* Pls. 1st Opp'n 29–30. Those decisions highlight that post-judgment discovery has only been granted in other circuits in extremely unique factual circumstances entirely unlike those

24

here. *Id.*

Cox cites two other cases in support of its discovery request, *see* Cox 2d Mem. 17 (citing *Johnson v. Starbucks Corp.*, 2019 WL 402359 (N.D. Cal. Jan. 31, 2019); *MMAR Grp., Inc. v. Dow Jones & Co.*, 187 F.R.D. 282 (S.D. Tex. 1999)), neither of which supports its unorthodox "wait and see" approach.

*Johnson* is an easily distinguished outlier that should be given no weight here. It is an unpublished decision on which no other court has ever relied. The *Johnson* court did not cite any precedent justifying an abeyance and discovery, let alone support for doing so after completion of a jury trial with a ripe appeal pending. *Johnson* is also nothing like this case. In *Johnson*, the court granted summary judgment to a plaintiff and later allowed post-judgment discovery in connection with a Rule 60(b)(2) motion before ultimately rejecting that motion. *Johnson* involved potentially damning evidence withheld by a *party*, not cumulative evidence arguably never sought from, and uniquely in possession of, a *third-party*.[12] Nor, unlike here, did either of the *Johnson* parties "brief[] the Ninth Circuit standard applicable to motions brought pursuant to Rule 60(b)(2)," including "the requirement that the newly discovered evidence must be of such magnitude that the production of it earlier would have been likely to change the disposition of the case." 2019 WL 402359, at *6 (internal quotation marks omitted). Here, by contrast, Plaintiffs

---

[12] In *Johnson*, which involved claims under the Americans with Disabilities Act and analogous state laws, the plaintiff alleged "that he 'personally encountered' numerous architectural barriers during his visits" to a local coffeeshop. 2019 WL 402359, at *1. The defendant filed a Rule 60(b)(2) motion after learning the plaintiff had not produced his personal notes documenting his visits to the coffeeshop and had previously claimed in lawsuits that he had visited the defendant's business, when in fact he had not and had instead sent his assistants to visit the location. *Id.* at *2-3. *See Johnson*, 2019 WL 2299954, at *5. That is much more direct—indeed potentially case-turning—than the Charter Code. In terms of the accuracy and reliability of the content identifications, Cox obtained full discovery from Audible Magic and inspected its source code. Moreover, if Cox wanted to test those identifications further, it had the Hard Drive files (*i.e.*, copies of the actual infringing content) in its possession.

address the Rule 60(b)(2) standard and result-changing factor above in detail, demonstrating that Cox cannot satisfy it. *See supra* at 20–21. As explained, the Charter Code does not impact Audible Magic's accuracy and reliability, nor impact the contents of the infringing files on the Hard Drive that supported Plaintiffs' claims.

Cox concedes it cannot meet this factor, claiming inconsistently that it "can readily demonstrate each of [the Rule 60(b)(2)] factors" but that it needs "the source code, revision history information, and any further necessary discovery to fully demonstrate" that the evidence would have changed the outcome. *See* Cox 2d Mem. 13 (limiting these contradictory arguments to a single sentence). The Court should take Cox at its initial word and decide Cox's Motion without any further discovery.

Cox's citation to *MMAR Group* fares no better. The *MMAR Group* decision involved intentional evidence destruction, which is nothing like the circumstances presented here. In *MMAR*, a defunct brokerage firm won a verdict in a defamation case against Dow Jones, owner of *The Wall Street Journal*. *See* 187 F.R.D. at 285–86 & 287 n.3. After trial, one of plaintiff's former employees informed Dow Jones representatives that the plaintiff had withheld evidence harmful to its claims. *Id.* at 286. Dow Jones filed a Rule 60(b) motion and sought discovery. The former employee revealed that MMAR's CEO had pressured him to erase various taped conversations, and he gave copies of those conversations that he made for himself to Dow Jones. *Id.* There was apparently substantial evidence of material malfeasance.[13] The court held a hearing only two days after Dow Jones served its Rule 60(b) motion, and the court appointed a special master and ordered discovery five days after that hearing. *See MMAR Grp., Inc. v. Dow Jones & Co.*, No. 4:95-cv-1262 (S.D. Tex. filed Oct. 20, 1994), ECF Nos. 258 & 260 (Pls. 2d Ex. 6). The post-trial

---

[13] None of the briefing is available on the ECF docket.

circumstances also involved the Federal Bureau of Investigation in some capacity. *See id.*, ECF No. 279 (Pls. 2d Ex. 6) (authorizing Dow Jones to "issue a subpoena to the Federal Bureau of Investigation for the master reel provided by [the former employee]"). Even the Fifth Circuit recognized the significance of the allegations, staying the appeal until the district court indicated how it would rule on Dow Jones's Rule 60(b) motion. *See MMAR Grp.*, 187 F.R.D. at 284.

This case bears no resemblance. At worst, Cox has shown only that a third-party witness has located discovery in a different case that it did not produce in this case. Events like that happen, especially where the responding party, a multinational organization, has responded to different subpoenas, containing differently worded requests, at different points in time. Cox's attempt to transform the vicissitudes of litigation into evidence of misconduct, or some notion that Cox did not have a full and fair opportunity to defend itself, is meritless. *Cf. Cleveland Demolition Co. v. Azcon Scrap Corp.*, 827 F.2d 984, 985 (4th Cir. 1987) ("The only evidence of this alleged conspiracy [of perjured testimony], however, is an evidentiary conflict between the witness's testimony and statements made by a different party in a subsequent lawsuit. This routine evidentiary conflict does not justify an action for fraud on the court or the serious allegations of attorney misconduct leveled in this case."). Equally important, it does not justify the extensive discovery—and accompanying delay of justice—that Cox seeks. *See, e.g.*, *Halliburton Energy Servs., Inc. v. NL Indus.*, 618 F. Supp. 2d 614, 655 (S.D. Tex. 2009) (rejecting Rule 60(b) movant's reliance on *MMAR Group* for post-trial discovery "because there has been no showing of fraud").

## CONCLUSION

For the foregoing reasons, Cox's Second Rule 60 Motion should be denied in full.

Respectfully submitted,

Dated February 16, 2022

/s/ Scott A. Zebrak
Scott A. Zebrak (38729)
Matthew J. Oppenheim (*pro hac vice*)
Jeffrey M. Gould (*pro hac vice*)
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Avenue, NW, 5th Floor
Washington, DC 20016
Tel:  202-480-2999
scott@oandzlaw.com
matt@oandzlaw.com
jeff@oandzlaw.com

*Attorneys for Plaintiffs*