Exhibit 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

WARNER RECORDS INC. (F/K/A WARNER
BROS. RECORDS INC.), *et al*.,

      Plaintiffs,

v.                                                                       Case No. 19-cv-00874-RBJ-MEH

CHARTER COMMUNICATIONS, INC.,

      Defendant.

## NOTICE OF INTENT TO SERVE SUBPOENA *DUCES TECUM*

**TO:**    Matthew J. Oppenheim              Mitchell A. Kamin
             Scott A. Zebrak                    Neema T. Sahni
             Jeffrey M. Gould                   Mark Y. Chen
             Kerry M. Mustico                Nicolas M. Lampros
             OPPENHEIM + ZEBRAK, LLP       COVINGTON & BURLING LLP
             4530 Wisconsin Ave. NW, 5th Fl.    1999 Avenue of the Stars, Suite 3500
             Washington, DC 20016              Los Angeles, CA 90067-4643

             Benjamin M. Leoni                 Megan M. O'Neill
              Janette L. Ferguson              COVINGTON & BURLING LLP
             LEWIS BESS WILLIAMS &        850 Tenth Street, NW
             WEESE P.C.                     Washington, DC 20001-4956
             1801 California Street, Ste 3400
             Denver, CO 80202               *Attorneys for Plaintiffs*

             Jonathan M. Sperling
             William E. O'Neil
             COVINGTON & BURLING LLP
             620 Eighth Avenue
             New York, NY 10018-1405

      PLEASE TAKE NOTICE, pursuant to Federal Rule of Civil Procedure 45, that

Defendant Charter Communications, Inc., intends to serve a Subpoena, in the  form attached

hereto, on the MarkMonitor, Inc., on December 20, 2019, or as soon thereafter as service

may be  effectuated.

1

Dated: December 20, 2019          Respectfully submitted,

By:  */s/ Erin Ranahan*  
     Erin R. Ranahan  
     Shilpa A. Coorg  
     WINSTON & STRAWN LLP  
     333 South Grand Avenue, 38th Floor  
     Los Angeles, California 90071-1543  
     Phone: 213.615.1700  
     Fax: 213.615.1750  
     E-mail: eranahan@winston.com  
     E-mail: scoorg@winston.com  

     Craig D. Joyce  
     John M. Tanner  
     FAIRFIELD AND WOODS, P.C.  
     1801 California Street, Suite 2600  
     Denver, Colorado 80202  
     Phone: 303.830.2400  
     Fax: 303.830.1033  
     E-mail: cjoyce@fwlaw.com  
     E-mail: jtanner@fwlaw.com  

     Michael S. Elkin  
     Thomas Patrick Lane  
     Seth E. Spitzer  
     WINSTON & STRAWN LLP  
     200 Park Avenue  
     New York, New York 10166-4193  
     Phone: 212.294.6729  
     Fax: 212.294.4700  
     E-mail: melkin@winston.com  
     E-mail: tlane@winston.com  
     E-mail: sspitzer@winston.com  

     Jennifer A. Golinveaux  
     WINSTON & STRAWN LLP  
     101 California Street  
     San Francisco, California 94111  
     Phone: 415.591.1000  
     Fax: 415.591.1400  
     E-mail: jgolinveaux@winston.com  

     *Attorneys for Defendant*  
     *Charter Communications, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2019, I served via e-mail the foregoing **NOTICE OF INTENT TO SERVE SUBPOENA *DUCES TECUM*** upon the following:

| | |
|---|---|
| Matthew J. Oppenheim<br>Scott A. Zebrak<br>Jeffrey M. Gould<br>Kerry M. Mustico<br>OPPENHEIM + ZEBRAK, LLP<br>4530 Wisconsin Ave. NW, 5th Floor<br>Washington, DC 20016<br>Telephone: (202) 621-9027<br>matt@oandzlaw.com<br>scott@oandzlaw.com<br>jeff@oandzlaw.com<br>kerry@oandzlaw.com<br>*Attorneys for Plaintiffs* | Mitchell A. Kamin<br>Neema T. Sahni<br>Mark Y. Chen<br>Nicholas M. Lampros<br>COVINGTON & BURLING LLP<br>1999 Avenue of the Stars, Suite 3500<br>Los Angeles, CA 90067-4643<br>Telephone: (424) 332-4800<br>mkamin@cov.com<br>nsahni@cov.com<br>mychen@cov.com<br>nlampros@cov.com<br>*Attorneys for Plaintiffs* |
| Janette L. Ferguson<br>Benjamin M. Leoni<br>LEWIS BESS WILLIAMS & WEESE, P.C.<br>1801 California Street, Suite 3400<br>Denver, CO 80202<br>Telephone: (303) 861-2828<br>jferguson@lewisbess.com<br>bleoni@lewisbess.com<br>*Attorneys for Plaintiffs* | Jonathan M. Sperling<br>William E. O'Neil<br>COVINGTON & BURLING LLP<br>620 Eighth Avenue<br>New York, NY 10018-1405<br>Telephone: (212) 841-1000<br>jsperling@cov.com<br>woneil@cov.com<br>*Attorneys for Plaintiffs* |
| | Megan M. O'Neill<br>COVINGTON & BURLING LLP<br>850 Tenth Street, NW<br>Washington, DC 20001-4956<br>Telephone: (202) 662-5416<br>moneill@cov.com<br>*Attorneys for Plaintiffs* |

By: */s/ Erin Ranahan*
    Erin R. Ranahan

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

DISTRICT OF COLORADO

| | |
|---|---|
| Warner Records Inc. (f/k/a Warner Bros. Records Inc., et al., | ) |
| _Plaintiff_ | ) |
| v. | ) |
| | ) |
| Charter Communications, Inc., | ) |
| _Defendant_ | ) |

Civil Action No.   19-cv-00874-RBJ-MEH

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:   MarkMonitor, Inc. c/o Andrew D. Castricone, Gordon Rees Scully & Mansukhani LLP, 275 Battery
Street, Suite 200, San Francisco, CA 94111

_(Name of person to whom this subpoena is directed)_

☑ _Production:_ **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following
documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the
material:

See Attachment A

| Place: Winston & Strawn LLP<br>333 S. Grand Avenue, 38th Floor<br>Los Angeles, California 90071 | Date and Time:<br><br>01/15/2020 5:00 pm |
|---|---|

❐ _Inspection of Premises:_ **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or
other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party
may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance;
Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to
respond to this subpoena and the potential consequences of not doing so.

Date:   12/20/2019

| _CLERK OF COURT_ | | |
|---|---|---|
| | OR | |
| _____ | | /s/ Erin R. Ranahan |
| _Signature of Clerk or Deputy Clerk_ | | _Attorney's signature_ |

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_   Charter
Communications, Inc. _____ , who issues or requests this subpoena, are:

Erin Ranahan, Winston & Strawn LLP, 333 S. Grand Ave., 38th Floor, Los Angeles, CA 94111, (213) 615-1750

## Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the
inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before
it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   19-cv-00874-RBJ-MEH

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)*  Markmonitor, Inc.

on *(date)*                                    .

❏  I served the subpoena by delivering a copy to the named person as follows:

_____

_____  on *(date)*  _____ ; or

❏  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00      .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

WARNER RECORDS INC. (f/k/a WARNER
BROS. RECORDS INC.), et al.,

      Plaintiffs,

v.

CHARTER COMMUNICATIONS, INC.,

      Defendant.

Case No. 19-cv-00874-RBJ-MEH

**ATTACHMENT A TO THE SUBPOENA TO PRODUCE DOCUMENTS
AND THINGS TO MARKMONITOR, INC.**

**DEFINITIONS**

1.     "You," or "Your" shall refer to MarkMonitor, Inc., and/or any of its representatives, all past and present predecessors, successors, subsidiaries, affiliates, and parent companies, and all past and present directors, officers, partners, employees, agents, representatives, or persons acting on behalf of the forgoing entities.

2.     "Charter" shall refer to Defendant Charter Communications, Inc.

3.     "Plaintiff(s)" shall refer to any or all of Warner Records Inc. (f/k/a Warner Bros. Records Inc.), Atlantic Recording Corporation, Bad Boy Records LLC, Elektra Entertainment Group Inc., Fueled By Ramen LLC, Nonesuch Records Inc.,, Roadrunner Records, Inc., WEA International Inc., Warner Chappell Music, Inc. (f/k/a Warner/Chappell Music, Inc.), Warner-Tamerlane Publishing Corp., WB Music Corp., W.C.M. Music Corp. (f/k/a W.B.M. Music Corp.), Unichappell Music Inc., Rightsong Music Inc., Cotillion Music, Inc., Intersong U.S.A., Inc., Sony Music Entertainment, Arista Music, Arista Records LLC, LaFace Records LLC, Provident Label Group, LLC, Sony Music Entertainment US Latin, Volcano Entertainment III, LLC, Zomba Recordings LLC, Sony/ATV Music Publishing LLC, EMI Al Gallico Music Corp., EMI Algee

Music Corp., EMI April Music Inc., EMI Blackwood Music Inc., Colgems-EMI Music Inc., EMI Consortium Music Publishing Inc. d/b/a EMI Full Keel Music, EMI Consortium Songs, Inc., individually and d/b/a EMI Longitude Music, EMI Entertainment World Inc. d/b/a EMI Foray Music, EMI Jemaxal Music Inc., EMI Feist Catalog Inc., EMI Miller Catalog Inc., EMI Mills Music, Inc., EMI Unart Catalog Inc., EMI U Catalog Inc., Jobete Music Co. Inc., Stone Agate Music, Screen Gems-EMI Music Inc., Stone Diamond Music Corp., UMG Recordings, Inc., Capitol Records, LLC, Universal Music Corp., Universal Music – Mgb Na LLC, Universal Music Publishing Inc., Universal Music Publishing Ab, Universal Music Publishing Limited, Universal Music Publishing Mgb Limited, Universal Music – Z Tunes LLC, Island Music Limited, Polygram Publishing, Inc., and Songs Of Universal, Inc.

4. "Communication" shall mean the transmittal of information (in the form of facts, ideas, inquiries, or otherwise), whether orally, in writing, or otherwise, including, but not limited to, written correspondence, reports, mailings, conversations, meetings, letters, notes, recordings, and telegraphic, facsimile, telex or computer-assisted electronic messages (including, but not limited to, e-mail, text messaging, instant messaging, VoIP calls, video conferencing, and posts on social media platforms or blogs).

5. "Configuration" shall refer to the arrangements, constructions, alignments, options, and/or structures of Your System that customers could select from when purchasing Your services, and the value of any parameters or options that affect the behavior or efficacy of the MarkMonitor System.

6. "Copyright Works" shall refer to any or all of the works listed in Exhibit 1, attached hereto.

7. "Document" as used herein shall have the broadest possible construction under the Federal Rules of Civil Procedure.

8.      "ISP" shall refer to Internet Service Provider.

9.      "CAS" shall refer to the Copyright Alert System, or this system prior to the adoption of such nomenclature.

10.     "RIAA" shall refer to any or all of the Recording Industry Association of America and its predecessors, successors, subsidiaries, affiliates, members, shareholders, directors, officers, past and present employees, agents, representatives, consultants, and any other person or entity acting, or purporting to act, on RIAA's behalf.

11.      "MarkMonitor System" or "Your System" shall refer to any and all of MarkMonitor's systems for monitoring and/or detecting alleged copyright infringement, generating copyright infringement notices, and sending copyright infringement notices.

12.     "Peer-to-peer file sharing technologies" shall include websites, other locations on the Internet or other networks, services, products, applications, apps, software, hardware, programs or programming, code, computer-based products, and/or any similar or related program, product or technology that are or may be used to electronically transfer and/or electronically share files among users, including those that utilize BitTorrent technology or other related protocols including, without limitation, uTorrent, eMule, and DC++.

13.     "Peer-to-peer Notice Program" shall refer to any program through which any entity monitored for alleged instances of infringement of copyrighted works and either compiled data or information related to the same and/or prepared and/or sent copyright infringement notices based on the allegedly observed instances of infringement.

14.     "Audible Magic" shall refer to Audible Magic Corp. and its predecessors, successors, subsidiaries, affiliates, members, shareholders, directors, officers, past and present employees, agents, representatives, consultants, and any other person acting, or purporting to act, on Audible Magic's behalf.

15.     "Person" shall refer to any natural person, firm, association, partnership, government agency, or other entity and its officers, directors, partners, employees, former employees, representatives and agents.

16.     "Stroz Friedberg" shall refer to Stroz Friedberg, an Aon company, and its predecessors, successors, subsidiaries, affiliates, members, shareholders, directors, officers, past and present employees, agents, representatives, consultants, and any other person or entity acting or purporting to act, on Stroz Friedberg's behalf.

17.     "Harbor Labs" shall refer to Harbor Labs, and its predecessors, successors, subsidiaries, affiliates, members, shareholders, directors, officers, past and present employees, agents, representatives, consultants, and any other person or entity acting or purporting to act, on Harbor Labs' behalf.

18.     "This litigation" shall refer to *Warner Records Inc. (f/k/a Warner Bros. Records Inc.), et al. v. Charter Communications, Inc.*, Case No. 19-cv-00874-RBJ-MEH, pending in the United States District Court for the District of Colorado.

19.     "And" and "or" shall be construed conjunctively or disjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope, and the use of the singular form of any word includes the plural and vice versa.

20.     "Any" and "all" shall mean one or more.

21.     "Reflecting," "regarding," "referring," "relating to," "concerning" or any derivation thereof shall mean, without limitation, consisting of, constituting, containing, mentioning, describing, summarizing, evidencing, listing, indicating, analyzing, explaining, supporting, undermining, contradicting, concerning, pertaining to, prepared in connection with, used in preparation for, or being in any way legally, logically, or factually connected with the

matter discussed.

22.     "Including" shall mean without limitation.

23.     Unless the request specifically states otherwise, references to the singular shall include the plural and vice versa; references to one gender shall include the other gender; references to the past including the present and vice versa; and disjunctive terms include the conjunctive and vice versa.

## **<u>INSTRUCTIONS</u>**

1.      Each requested document shall be produced in its entirety, including all attachments and enclosures. If a portion of a document is responsive to a request, produce the entire document, including all attachments, enclosures, "post-it"-type notes, and any other matter physically attached to the document. If a document responsive to any request cannot be produced in full, it shall be produced to the extent possible with an explanation stating why production of the remainder is not possible.

2.      Furnish all available documents in Your possession, custody, or control. You must search computerized files, emails, voice mails, work files, desk files, calendars and diaries, and any other locations and sources if the requested materials might plausibly exist there.

3.      If You do not possess information to answer any request for documents, You are under a duty to make a reasonable effort to obtain such information.

4.      Produce electronic records and computerized information in an intelligible format, together with a description of the system from which they came, sufficient to permit rendering the records and information intelligible.

5.      Select and number the documents with sufficient information to ensure identification of the source and sequence of each document.

6.      If, in responding these document requests, You assert a privilege to any particular request, You must identify the nature of the privilege (including attorney work product) that is being claimed, and, if the privilege is governed by state law, indicate the state's privilege rule being invoked. In addition, You must sufficiently describe and identify the privilege to permit Cox and the Court to make an informed decision as to whether the matter is indeed privileged.

7.      If You seek to withhold any information based on some limitation of discovery (including, but not limited to, a claim of privilege) applicable to any document, provide all parts of the document within the scope of the requests that are not subject to privilege. For each item of information contained in a document to which You claim privilege, provide at least the following:

a)      the privilege You are asserting and the factual basis;

b)      the names and positions of the author of the document and all other persons participating in the preparation of the document;

c)      the name and position of each individual or other person who received the information in the document;

d)      the date of the document;

e)      a description of any accompanying material transmitted with or attached to such document;

f)      the number of pages in the document;

g)      the particular request to which the document is responsive;

h)      whether the document has any discussion of business or non-legal matters; and

i)      the steps You took to ensure the confidentiality of the document.

For email or message threads that contain multiple emails/messages, provide the above information for each email/message.

8.      If Your response to a particular request is a statement that You lack the ability to furnish documents in that request, You must specify whether the inability to comply is because the particular item of information never existed, has been destroyed, has been lost, misplaced, or stolen, or has never been, or is no longer in Your possession, custody, or control, in which case identify the name and address of any person or entity You know or believe to have possession, custody, or control of that information.

9.      If a document once existed and has later been lost, destroyed, or otherwise missing, please identify the document and state the details concerning the disposition of the document.

10.     If, in responding to these document requests, You claim any ambiguity in interpreting either a request or a definition or instruction applicable thereto, such claim shall not be utilized by You as a basis for refusing to respond, but You shall set forth as part of Your response to the request the language deemed to be ambiguous and the interpretation You choose to use in responding to the request.

11.     If You have a good-faith objection to any request or any part of any request, state the specific nature of the objection and whether it applies to the entire request or to specific parts of a request. If the objection relates to only a part or parts of a request, identify the objectionable part or parts and identify or produce any and all documents responsive to the remaining parts.

12.     Unless otherwise specified in the Request, the time period for each of the Requests shall run from January 1, 2008 to present.

## REQUESTS FOR PRODUCTION

1.      All Documents and Communications concerning any agreement between You and any Plaintiff(s) to send notices of copyright infringement to alleged infringers for alleged copyright infringement, including but not limited to the Copyright Works.

2.      All Documents and Communications concerning any agreement between You and

the RIAA or any other entity purporting to act on behalf of any Plaintiff(s) to monitor the internet for the copyright infringement, including but not limited to the Copyright Works.

3.      All Documents and Communications concerning any agreement between You and Audible Magic or You and any entity on whose behalf you were utilizing Audible Magic's services, including but not limited to copies of draft and executed versions any such agreement(s).

4.      All Documents and Communications regarding any negotiations between You and Plaintiffs or the RIAA regarding payment or compensation for Your downloading of copies of files found on the computers of allegedly infringing ISP subscribers.

5.      Documents sufficient to show all amounts billed by You to the RIAA or any Plaintiff for Your anti-piracy services, including billing records.

6.      All Documents and Communications concerning the features, functionality, capabilities, or operation of the MarkMonitor System, including all guidelines, data sheets, manuals, and/or instructions.

7.      All Documents and Communications regarding MarkMonitor's methods or processes for identifying potential or actual instances of alleged copyright infringement.

8.      All Documents and Communications relating to MarkMonitor's keyword searching with respect to attempting to identify allegedly infringing files at issue in this litigation.

9.      All Documents and Communications relating to MarkMonitor's "handshake" process used with respect to attempting to identify allegedly infringing files on the computers Charter's subscribers which are at issue in this litigation, including documents comprising evidence packages or log files memorializing data obtained in the process of initiating and executing a handshake, data obtained subsequent to the successful initiation of the handshake, and all documents describing this process and any alternative handshake processes utilized by You in investigating suspected copyright infringement of musical recordings or compositions.

10.     All Documents and Communications, including those reflecting source code and system configurations, regarding whether MarkMonitor and/or the MarkMonitor System would download copies of potentially infringing files or pieces thereof located on Peer-to-Peer file sharing technologies, and if so, the circumstances under which it would or would not do so.

11.     All potentially infringing copies of the Copyright Works, including all metadata, downloaded by MarkMonitor or the MarkMonitor System following identification of alleged infringement by Charter's subscribers.

12.     All data comprising or relating to all potentially infringing copies of the Copyright Works, including all audio files and metadata, downloaded by MarkMonitor or the MarkMonitor System in the process of monitoring any peer-to-peer network on behalf of RIAA or any of the Plaintiffs, and all digital fingerprints and related metadata created from such copies for transmission to Audible Magic.

13.     All database schemas, and databases regarding MarkMonitor's or the RIAA's investigation and/or evidence packages and notification processes.

14.     All Documents and Communications regarding MarkMonitor's or the MarkMonitor System's processes or methods of comparing metadata from an allegedly infringing file located online with metadata from MarkMonitor's own database(s), including but not limited to any documents assessing shortcomings or other flaws in relying on metadata to conduct comparisons of allegedly infringing files.

15.     All Documents and Communications regarding MarkMonitor's decision to rely upon Audible Magic and/or its systems to fingerprint, identify, and/or verify the Copyright Works, including any evaluations or assessments of the Audible Magic System.

16.     All Documents and Communications regarding MarkMonitor's understanding of the processes and methods used by Audible Magic to compare a fingerprint of the Copyright

Works sent by MarkMonitor or the MarkMonitor System to Audible Magic's database of Copyright Works.

17.     All Documents and Communications between MarkMonitor and Audible Magic, including but not limited to requests from MarkMonitor to Audible Magic for fingerprinting, identification, or verification of the Copyright Works by Audible Magic and Audible Magic's responses to such requests.

18.     All Documents and Communications sent by Audible Magic to You regarding the fingerprinting, identification, or verification of the Copyright Works, including manuals, data sheets, and other technical documents describing Audible Magic's services and software, and any responses from Audible Magic to fingerprinting requests made by You.

19.     A copy of each version of any database You used to record and/or store information concerning the fingerprinting, identification, and/or verification of the Copyright Works.

20.     All Documents and Communications concerning Your retention or destruction of data, including transaction logs, sent to You by Audible Magic.

21.     All Communications with Audible Magic concerning the Copyright Works.

22.     All recordings or logs of information sent to or received from Audible Magic concerning the Copyright Works, including but not limited to "transaction logs."

23.     All Communications with the RIAA concerning the Copyright Works.

24.     All Documents and Communications concerning whether potentially infringing files of the Copyright Works downloaded by MarkMonitor or the MarkMonitor System correlated with an IP address assigned to any Charter's subscriber.

25.     All documents, including source code, data sheets, manuals, and other technical documents describing the process by which the MarkMonitor System assured that notices alleging

infringement were sent to Charter or Charter's subscribers only when and if Audible Magic confirmed that the file that was the subject of the notice matched a work in Audible Magic's reference database.

26.    All Documents, including database schemas and databases, concerning or comprising the notices of alleged copyright infringement generated by the MarkMonitor System and sent to Charter or any of Charter's subscribers, account holders, or customers, including any data, databases, indices, or other information generated by the MarkMonitor System and further including any source code, manuals, data sheets or other technical documents describing the process by which the MarkMonitor System determines when and whether to generate such notices, and the process by which such notices are generated.

27.    All Documents in any databases, indices, or other repositories of information relevant to the generation of notices of alleged copyright infringement that were created with Your system and that were sent to Charter or any of Charter's subscribers in connection with alleged infringement, including documents relating to mapping IP addresses to Charter's subscribers or other post-verification filtering.

28.    All configuration files associated with running the source code for the MarkMonitor System, including but not limited to configurations associated with enabling or disabling downloads of content files or thresholds controlling the amount of content to be downloaded.

29.    All Documents and Communications concerning Your decision to send notices of copyright infringement to Charter's subscribers, including but not limited to the timing of any such decision.

30.    All Documents and Communications reflecting recommendations and/or instructions from the RIAA or Plaintiffs to You regarding copyright infringement investigations

and the generation of copyright infringement notices.

31.    All Documents and Communications, including but not limited to weekly or monthly reports, that You sent to the RIAA regarding the Peer-to-peer Notice Program.

32.    Documents sufficient to show the Configuration of the MarkMonitor System utilized in connection with sending notices of alleged copyright infringement to Charter or any of Charter's subscribers or any other ISP.

33.    All Documents concerning any financial interest, whether actual or contingent, You have in any of the Plaintiffs, their copyrights, and/or their recovery of damages in this litigation.

34.    All Documents concerning any ownership interest that the RIAA or any Plaintiff has in You or any of Your affiliated, parent, or subsidiary companies.

35.    All Documents and Communications concerning the reliability and/or efficacy of the MarkMonitor System, including Documents and Communications pertaining to any technical assessments of the MarkMonitor System, or the flaws, weaknesses, or potential improvements to the MarkMonitor System, and any proposed and/or implemented remediation of any such flaws or weaknesses, including any such assessments undertaken in connection with the CAS.

36.    All Documents consisting of operational audits of the Mark Monitor system, including any such audits undertaken in connection with the CAS.

37.    All Communications between You and any third party who conducted technical assessments of the MarkMonitor System, including but not limited to Stroz Friedberg and Harbor Labs.

38.    All Documents and Communications concerning the "Independent Expert Assessment of MarkMonitor Anti-Piracy Methodologies," dated November 1, 2012, conducted by Stroz Friedberg.

39.     All   Documents   and   Communications   concerning   the   "Enhancement Recommendations" made by Stroz Friedberg on page 11 of Stroz Friedberg's report titled "Independent Expert Assessment of MarkMonitor Anti-Piracy Methodologies," dated November 1, 2012.

40.     All Documents and Communications concerning the "Evaluation of the MarkMonitor AntiPiracy System," dated March 3, 2014, conducted by Harbor Labs.

41.     A copy of each version of the MarkMonitor System(s) used to send copyright infringement notices to Charter and/or Charter's account holders, subscribers, or customers, including source code and revision history for each version.

42.     A copy of each version of the MarkMonitor System(s) in use during Plaintiffs' claim period of March 2013 to May 2016, including all versions of the source code for each, that was used to monitor and/or detect copyright infringement, generate copyright infringement notices, or send copyright infringement notices, as well as any manuals, data sheets, or other documentation describing the operation or functionality of the MarkMonitor System.

43.     Documents sufficient to demonstrate the functional operation of source code with respect to copyright infringement investigations for the RIAA, including for source code that integrate(s) peer-computer investigations with verifications from third parties such as Audible Magic, including but not limited to data sheets and/or operational manuals.

44.     Documents sufficient to demonstrate the process by which the software of the MarkMonitor System could be invoked, including the invocation of the scanner and/or notification functions.

45.     All Documents concerning the revision history of the MarkMonitor System, and the associated source code.

46.     All version control logs, "diffs" reflecting changes to source code, commit logs,

and associated revision history regarding the MarkMonitor System.

47.   Documents sufficient to show Your revision and archiving policies, including polices that explain how or why revisions are made to software, where prior versions are stored, how revisions are to be documented, and the retention of prior versions.

48.   All Documents and Communications between You and any Plaintiff the RIAA, or any other third party concerning the CAS or any proposed inter-industry agreement regarding the handling of notices of copyright infringement, including but not limited to Documents and Communications concerning the implementation of CAS by internet service providers, or the impact, if any, of CAS on the scope of copyright infringement through peer-to-peer file sharing technology.

49.   All Documents and Communications between You and any Plaintiff, the RIAA, or any other third party concerning any limit on the number of copyright infringement notices accepted by any ISP.

50.   All Communications between You and any Charter's subscriber.

51.   All Communications between You and any Plaintiff regarding the above-captioned litigation.

52.   All Documents constituting, comprising, or evidencing Your policies for document management, preservation, storage, indexing, and disposal.