**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| SONY MUSIC ENTERTAINMENT, *et al.*, <br> *Plaintiffs*, <br><br> v. <br><br> COX COMMUNICATIONS, INC, *et al.*, <br><br> *Defendants*. | Civil No. 1:18-cv-950 (LO / JFA) |

**COX'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR RELIEF FROM THE JUDGMENT UNDER RULE 60(B)(3) AND REQUEST FOR <u>INDICATIVE RULING UNDER RULE 62.1</u>**

**<u>PUBLIC VERSION</u>**

**<u>TABLE OF CONTENTS</u>**

Page

INTRODUCTION ............................................................................................................ 1

ARGUMENT .................................................................................................................... 2

I.      Cox's Motion is Timely ........................................................................................ 2

II.     Cox Has Amply Demonstrated Plaintiffs' Repeated Acts of Misconduct and
        Misrepresentations ................................................................................................ 5

        A.      Plaintiffs' Pre-Trial Misconduct is Clear ................................................. 5

                1.      Plaintiffs Violated Judge Anderson's January 25, 2019 Order.................. 5

                2.      Plaintiffs' Initial Discovery Violation Paved the Way for Their
                        Further Pre-Trial Misconduct .................................................... 8

                        a.      Bahun's Statements, Filed by Plaintiffs, Were Misleading. ........... 8

                        b.      Plaintiffs Falsely Represented that There Were No
                                Subsequent Efforts to Validate the MarkMonitor
                                Spreadsheet. ................................................................ 10

                        c.      Plaintiffs Wrongfully Concealed the PCAP Files and the
                                Hash Report. ............................................................... 11

                        d.      Plaintiffs Wrongfully Concealed the 2016 Audible Magic
                                Data. ......................................................................... 12

        B.      Plaintiffs' Elicited False and Misleading Testimony at Trial ............................... 12

                1.      Plaintiffs' Expert Provided Misleading Testimony, Which
                        Plaintiffs Failed to Correct.......................................................... 13

                2.      Bahun Falsely Testified Regarding the Origin of the Hard Drive
                        Files.......................................................................................... 13

III.    Plaintiffs' Actions Clearly Prevented Cox from Fully Presenting its Case at Trial ........ 14

        A.      Plaintiffs' About-Face in *Charter* Demonstrates the Prejudice to Cox from
                Their Misconduct. ................................................................................ 14

        B.      Plaintiffs' Misconduct Resulted in the Admission of Evidence Elemental
                to their Claims..................................................................................... 15

1. Plaintiffs' Misconduct Led to the Preclusion of an Alternate Version of the MarkMonitor Spreadsheet.................................................. 15

2. Plaintiffs' Misconduct Led to the Admission of the Hard Drive.............. 16

3. Cox Is Not Using Rule 60(b)(3) as a Tool for Reconsideration ............... 17

IV. Cox Presented Meritorious Defenses at Trial .................................................... 18

V. Justice Should Prevail Over Finality.................................................................. 19

VI. Exercising the Court's Authority to Order Discovery is Warranted................................ 20

CONCLUSION........................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aldridge v. Corp. Mgmt. Inc.*,
    2021 WL 1521697 (S.D. Miss. Apr. 16, 2021)....................................................................20

*Cent. Operating Co. v. Util. Workers of Am.*,
    491 F.2d 245 (4th Cir. 1974) ...............................................................................................4

*Columbia Commc'ns Corp. v. EchoStar Satellite Corp.*,
    2 Fed. App'x 360 (4th Cir. 2001) .......................................................................................19

*Consol. Masonry & Fireproofing, Inc. v. Wagman Constr. Corp.*,
    383 F.2d 249 (4th Cir. 1967) ...............................................................................................4

*Fharmacy Recs. v. Nassar*,
    2010 WL 11545040 (E.D. Mich. Feb. 18, 2010)................................................................20

*Holland v. Virginia Lee Co.*,
    188 F.R.D. 241 (W.D. Va. 1999).........................................................................................4

*Ind. Inv. Protective League v. Touche Ross & Co.*,
    607 F.2d 530 (2d Cir. 1978)...............................................................................................19

*Kincer v. First Am. Nat'l Bank*,
    2004 WL 57085 (W.D. Va. Jan. 12, 2004) .........................................................................4

*Marathon Res. Mgmt. Grp., LLC v. C. Cornell, Inc.*,
    2020 WL 6370987 (E.D. Va. Oct. 29, 2020).....................................................................19

*McLawhorn v. John W. Daniel & Co., Inc.*,
    924 F.2d 535 (4th Cir. 1991) ...............................................................................................4

*Moses v. Joyner*,
    815 F.3d 163 (4th Cir. 2016) ...............................................................................................4

*United States v. Villarini*,
    238 F.3d 530 (4th Cir. 2001) .............................................................................................19

*Zahariev v. Hartford Life & Accident Ins. Co.*,
    2021 WL 1431389 (D.S.C. Mar. 16, 2021) .........................................................................4

## INTRODUCTION

Plaintiffs' opposition leans heavily on the proposition that their discovery misconduct and misrepresentations do not matter because they would not have affected the trial's outcome. That is self-interested speculation. Plaintiffs cannot know how the jury would have reacted if it had been told that Plaintiffs' infringement evidence was created after the fact. Indeed, Plaintiffs' own actions convey their fear that this information would have fatally undermined their case; otherwise, they would not have gone to such lengths to conceal it. And if there were any doubt about this, it is now dispelled by Plaintiffs' decision to change their strategy in *Charter* to abandon reliance on the weak evidence that they used and misrepresented in this Court.

To further bolster their blithe claim of "no harm, no foul," Plaintiffs contort the factual record to hide their misconduct and minimize its impact. Plaintiffs also attempt to distract the Court from their actions by implying that they should be excused as mere sharp practices, and that Cox and its lawyers should have caught them at it. But "cheating fairly" is not a valid defense, and the Court should not countenance it.

As the record before the Court clearly reflects, Plaintiffs simply have no defense to the false testimony they elicited. MarkMonitor's witness Sam Bahun testified that the so-called "infringing files" were placed on the Hard Drive at issue in 2015 or 2016. He was then asked when those same files were first downloaded and stored in MarkMonitor's system. As opposed to saying 2015 or 2016, he testified that it was done years earlier, before the notices were sent. He knew that was false, as Plaintiffs now readily acknowledge that MarkMonitor failed to retain those earlier files—a fact they concealed from Cox throughout this case. Bahun's answer to the point-blank question concealed the reality that Plaintiffs' core evidence was re-created years after the alleged infringement as Cox had suspected and claimed.

Given the indefensibility of this testimony, the rest of Plaintiffs' arguments collapse. Bahun was only in a position to misrepresent the Hard Drive files because Plaintiffs diligently concealed the 2016 SOW that led to its creation throughout discovery. Plaintiffs' feeble excuse for withholding the 2016 SOW—that they had no obligation to produce it because it was not called for or relevant to the reliability of the MarkMonitor system at issue—strains credulity, lacks any basis in fact, and starkly reveals their true motive: to produce only the 2016 evidence that helped their case and deliberately conceal the 2016 evidence that undermined it. Plaintiffs' explanations for their other misrepresentations are mere efforts to muddy the waters through highly misleading interpretations of the record that do not hold up.

Cox has put forward a clear record of misconduct, despite Plaintiffs' best efforts to distort it. Relief under Rule 60 is warranted.

## ARGUMENT

### I.      Cox's Motion is Timely

The bases for Cox's motion continue to develop through present, rendering its filing before Rule 60(c)(1)'s one-year deadline timely. Significantly, in *Charter*, fact and expert depositions only concluded on August 6 and October 15, 2021, respectively (*Charter* ECF 490 & 581); restricted versions of the parties' summary judgment and *Daubert* motions were filed between November 15, 2021 and January 19, 2022 (*Charter* ECF 547, 549-561, 600-607, 609-614, 641-653, and 655); and heavily redacted public versions of certain of these motions were filed on November 29, 2021 and February 2, 2022, respectively, (*Charter* ECF 590 & 684). With this motion, Cox seeks certain of these *Charter* restricted materials to demonstrate the scope of Plaintiffs' misconduct and the prejudice to Cox. Mot. at 1, n.2, 30. Cox waited to intervene in *Charter* until September 2021, which, as it explained to the *Charter* court, was "timed … near the end of discovery … after most discovery issues were litigated[] so that it could avoid burdening

the parties and court with piecemeal requests to modify the protective order." Ex. 32 (*Charter* ECF 541) at 4. The *Charter* court only denied that motion on November 21, 2021, directing Cox to pursue its request with this Court. Ex. 1. Cox brought this motion less than five weeks later, an entirely reasonable time period given the breadth of the factual record before the Court.

Further, and significantly, on November 29, 2021, less than a month before Cox filed its motion, Plaintiffs filed a public version of their *Charter* summary judgment motion. Ex. 31 (*Charter* ECF 590-1).[1] In that document, Plaintiffs revealed that they had abandoned the MarkMonitor Spreadsheet—a centerpiece of their proof of direct infringement in this case and a subject of this motion—because, as Cox sets forth in this motion, that document does not reflect verifications of any files that still exist, contrary to Plaintiffs' trial narrative. Mot. at 10-12. Now, Plaintiffs are instead seeking to prove direct infringement in *Charter* by hiring more than a half dozen music experts to listen to or otherwise analyze the tens of thousands of files at issue. Ex. 31 (*Charter* ECF 590-1), ¶¶ 14-15. As set forth below, *infra* at 14-15, this recent development alone demonstrates the materiality of Plaintiffs' misconduct and prejudice to Cox.

Plaintiffs ignore this significant post-judgment record and point to a November 9, 2020 declaration from their outside litigation counsel as the claimed genesis of Cox's Motion. Opp'n at 14. However, in that partially redacted declaration, Plaintiffs' counsel only explains that he directed MarkMonitor to download files in 2016 and that those files were placed on the Hard Drive. Ex. 15 (Oppenheim Declaration), ¶¶ 5, 9. The document does not contain the additional details disclosed in Plaintiffs' subsequent public filings on which Cox relies in its motion. Exs. 14, 17, 18, 20, 23, and 31; *see also* Ex. 33 (*Charter* ECF 684-58) at 3-4. Moreover, neither that declaration

---

[1] Exhibits 1 to 31 are attached to Cox's moving brief; Exhibits 32 to 36 are attached hereto. Cox refers to the exhibits attached to Plaintiffs' opposition as "Pls.' Ex. __".

nor the subsequent public filings contain any of the non-public discovery and other disclosures—made through January 2022—that Cox seeks through this motion.

Plaintiffs essentially argue that Cox either should have prematurely filed its motion or unnecessarily filed serial motions. *See* Opp'n at 14, n.7. But Plaintiffs provide support for neither approach. Rather, "[w]hat constitutes a reasonable time will generally depend on the facts of each case," and where a party "presents an adequate explanation" for any delay, it should be deemed timely. *See Holland v. Virginia Lee Co.*, 188 F.R.D. 241, 249 (W.D. Va. 1999). Further, courts find that any prejudice to the non-movant may be "[a] major consideration" in determining the timeliness of a motion. *Id.* Here, Cox has accounted for the entire period from the entry of the judgment and Plaintiffs are silent on any prejudice from the timing of Cox's filing. Finally, Plaintiffs' cases are distinguishable and do not support a claim of untimeliness based on the highly involved post-judgment factual record before the Court. Opp'n at 13-14.[2]

Cox marshaled an extensive factual record for the Court's consideration—both on the merits of its Rule 60 motion and its request for discovery. Further, the record before the Court is more complete in light of the additional disclosures made by the parties and third parties in *Charter*, some of which occurred in the several months preceding Cox's filing. Cox has established the timeliness of its motion.

---

[2] *See Moses v. Joyner*, 815 F.3d 163, 166 (4th Cir. 2016) (movant waited 2.5 years to file despite being on "high alert" of the significance a change in law); *Zahariev v. Hartford Life & Accident Ins. Co.*, 2021 WL 1431389, at *3 (D.S.C. Mar. 16, 2021) (movant violated court-imposed deadline for Rule 60 motions); *Cent. Operating Co. v. Util. Workers of Am.*, 491 F.2d 245, 253 (4th Cir. 1974)) (no "satisfactory explanation" for delay set forth in papers); *McLawhorn v. John W. Daniel & Co., Inc.*, 924 F.2d 535, 538 (4th Cir. 1991) (same); *Consol. Masonry & Fireproofing, Inc. v. Wagman Constr. Corp.*, 383 F.2d 249, 251 (4th Cir. 1967) (delay inexcusable when motion sought to vacate default judgment); *Kincer v. First Am. Nat'l Bank*, 2004 WL 57085, at *2 (W.D. Va. Jan. 12, 2004) (denying motion where evidence in support was always in movant's possession).

## II.     Cox Has Amply Demonstrated Plaintiffs' Repeated Acts of Misconduct and Misrepresentations

### A.     Plaintiffs' Pre-Trial Misconduct is Clear

#### 1.     Plaintiffs Violated Judge Anderson's January 25, 2019 Order

Plaintiffs make the feeble excuse that they were under no obligation to produce the 2016 SOW, as it did not relate to the "program" at issue and post-dated the relevant time period. Opp'n at 10-11. That argument is truly shocking and fails multiple times over.

First, Judge Anderson unequivocally ordered Plaintiffs to produce evidence of their "contractual obligation[s]" with MarkMonitor, irrespective of time period. The Court explained that "if [Plaintiffs] signed a contract with [MarkMonitor], if you have a written agreement, if you have an understanding … a letter agreement that says you're going to do this, we will pay you this, you provide me with these services, these are your obligations, these are my obligations, that kind of agreement or description of the relationship between MarkMonitor and your clients," then those documents had to be produced. Ex. 26 (Jan. 25, 2019 Hr'g Tr.) 73:16-23. The Court's order provides no basis for Plaintiffs to withhold the very agreement that resulted in the creation of the evidence they used to prove direct infringement.[3]

Plaintiffs' discovery violation is further evidenced by their own statements to Judge Anderson. In an effort to demonstrate the completeness of their proposed MarkMonitor-related production and to resist Cox's additional requests, Plaintiffs' counsel represented that they would be producing certain evidence created as the result of the then un-disclosed 2016 SOW. Plaintiffs characterized it as "the evidence that MarkMonitor has captured for purposes of the case," which included "all the music" (the 2016 Hard Drive files) and "[d]ocuments to show the information

---

[3] In their opposition, Plaintiffs ignore that Cox's document request at issue was specifically directed at Plaintiffs' "agents," including the RIAA. *See* Mot. at 13, n.6.

concerning the infringement of the copyrighted works in suit by their subscribers" (the MarkMonitor Spreadsheet). Ex. 26 (Jan. 25, 2019 Hr'g Tr.) 68:14-20. Thus, Judge Anderson's order clearly required production of the very agreement through which Plaintiffs generated a primary part of that evidence.

Further, Plaintiffs' interpretation of the colloquy with Judge Anderson regarding the "*program at issue in this case*" does not help their case, as the context plainly demonstrates that Plaintiffs were attempting to carve out from the order their agreements with MarkMontor for services *unrelated* to this case. Indeed, one of Plaintiffs' primary objections to Cox's discovery request was that they contract with MarkMonitor for services that they claimed have nothing to do with this case, such as website and trademark monitoring and notice programs that involve non-ISP targets like universities. Ex. 34 (Jan. 25, 2019 Hr'g Tr.) 65:21-66:6; Ex. 35 (ECF 86) at 17-18. Thus, counsel's statement should not be read as anything more than a request to clarify the scope of the ordered production as to the other services for which Plaintiffs retained MarkMonitor. Plaintiffs' post-hoc justification that the order was limited to "the Notice Program that put Cox on notice of specific instances of infringement by specific infringers" (Opp'n at 19-20), but somehow not directed at agreements related to re-gathering the very files they contend form the basis of those notices, is not supported by the record and should be rejected.

Second, Plaintiffs appear to now claim that their required production of agreements with MarkMonitor was limited to the 2012-2014 time period. Opp'n at 10, 19. That is flatly wrong. At the hearing, after Plaintiffs' counsel identified the several categories of documents that they would be producing for the 2012-2014 period, Judge Anderson stated: "I don't see anything in here that talks about your agreement or relationship—documents sufficient to describe your relationship with MarkMonitor." Ex. 26 (Jan. 25, 2019 Hr'g Tr.) 69:7-9. Plaintiffs explained that they had

originally offered to produce (though later rescinded) their agreements with MarkMonitor. *Id.* 69:21-22. That offer had no time limitation. *See* Ex. 25 (Pls.' Supp. Resp. & Obj. to Cox's 1st RFPs) (as compared to other responses with time limitations, Plaintiffs' agreement to produce their agreements with MarkMonitor did not have any). Plaintiffs explained that they would in fact agree to produce such agreements, which the Court then ordered without a time limitation.

Third, Plaintiffs' strained interpretation of Judge Anderson's order falls apart for the additional reason that the single responsive document that they did produce was a *2018* litigation consulting agreement between their outside counsel Oppenheim + Zebrak LLP ("O+Z") and MarkMonitor (the "2018 Consulting Agreement"). That agreement was executed more than *four years after* Plaintiffs sent any notices at issue and pertains *not* to ███████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████. Ex. 29.

Finally, while Plaintiffs initially offered to produce documents concerning the reliability of the MarkMonitor's system used to generate the notices for the 2012-2014 period, Cox argued that "Plaintiffs' proposed limitation would not capture analyses and the documents concerning them that were created before *or after* [2012-2014], which may also relate to the system(s) or any component(s) that were used to generate the notices sent to Cox." Ex. 27 (ECF 75) at 19-20 (emphasis added). Judge Anderson specifically ordered the production of "information *beyond the 2012-2014 range*" regarding MarkMonitor's "reliability or issues." Ex. 26 (Jan. 25, 2019 Hr'g Tr.) 74:19-24 (emphasis added).

In their opposition, Plaintiffs claim that "Cox makes up from whole cloth that the 2016 SOW was an audit or an investigation as to the reliability of MarkMonitor's system," arguing that

the agreement only "pertained to downloading certain files in anticipation of litigation." Opp'n at 19. But Plaintiffs ignore that the 2016 SOW did not only require MarkMonitor to attempt to redownload all the files identified in Plaintiffs' notices (because they had been deleted); it also required MarkMonitor and Audible Magic to *reverify* those downloads to ensure that they contained copies of Plaintiffs' copyrighted works. Opp'n at 9-10. Yet in the version of the world that Plaintiffs presented at trial, such a *reverification* should not be necessary because (as Plaintiffs claim) they had already verified copies of these files as reflected in the MarkMonitor Spreadsheet. Opp'n at 15, 23; *see also infra* at 15-16 (Plaintiffs took the same position in seeking the preclusion of the alternate version of the MarkMonitor Spreadsheet). That re-verification was an audit of MarkMonitor's notice program and responsive to Cox's request and Judge Anderson's order.

### 2. Plaintiffs' Initial Discovery Violation Paved the Way for Their Further Pre-Trial Misconduct

Plaintiffs quibble with whether Cox has demonstrated their pre-trial misconduct by "clear and convincing evidence." Opp'n at 15. In so doing, they give short shrift to Cox's detailed factual allegations either by proposing an alternate reading of the record, simply stating "not true," or blaming Cox for not seeing through their obfuscation. But in each instance, Plaintiffs' malfeasance is clear. Taken as a whole, it is overwhelming. Plaintiffs' selective withholding of the 2016 SOW cleared the path for their pre-trial misconduct, that pre-trial misconduct cleared the path for false trial testimony, and all of this misconduct resulted in a $1 billion jury verdict.

### a. Bahun's Statements, Filed by Plaintiffs, Were Misleading

In prosecuting their case against Cox, Plaintiffs leaned heavily on Sam Bahun and filed declarations from him with nearly every significant pre-trial motion. In two particularly critical motions, Plaintiffs filed statements by him that were highly misleading.

First, while Plaintiffs repeatedly point to the fact that the files on the Hard Drive had "2016 metadata," (Opp'n at 11, 12, 21, 25), Cox never disputed that, Mot. at 4, 6. Rather, that was one of the bases upon which Cox first sought to preclude the files. *Id.* at 4. In response to that effort, Plaintiffs did not state *when* the files were downloaded. Instead, they submitted a statement from Bahun that improperly concealed their origin. He testified that the Hard Drive contained ████ ████████████████ " used for ████████████████ which were those contained on the MarkMonitor Spreadsheet. Ex. 4 (ECF 538-1) Appx. 1, ¶¶ 18, 20 (emphasis added). Plaintiffs and Bahun did not disclose that, in fact, those files had been searched for, downloaded, and reverified in 2016, and that those verifications were destroyed.

While Plaintiffs nevertheless claim that "Bahun's statements were correct" (Opp'n at 19), that claim is based on their (disputed) assertion that the alleged verification data on the MarkMonitor Spreadsheet matches the files on the Hard Drive merely because the listed hash values are the same, (*id.* at 15-18, 23-24). Putting aside the veracity of Plaintiffs' litigation position, Bahun's statement "██████████████████" is simply not synonymous with "identical files." That is because the "████████████" were destroyed so no *copies* could be made of them. Opp'n at 7, 25; Ex. 17 (*Charter* ECF 408) at 1. And Plaintiffs' failure to retain the ████████ ███ necessitated the 2016 SOW, pursuant to which they searched for and redownloaded the files on the Hard Drive that they now wrongly claim are copies. Mot. at 10-11. These are facts that Cox, the Court, and the jury were entitled to hear, and Plaintiffs had no right to withhold them until they needed to defend a Rule 60 motion.

Plaintiffs also argue that the issue of matching hash values between files was repeatedly put before the jury. Opp'n at 16. But Plaintiffs fail to acknowledge that the jury heard a substantively different presentation of the issue from what Plaintiffs' evidence actually reflected,

which has only been revealed after the verdict. As set forth below, Plaintiffs' trial narrative that they sent notices based on the verification of the files that were in evidence was false. The MarkMonitor Spreadsheet contained verifications of files that were destroyed—not the files on the Hard Drive. Mot. at 6-8. The Hard Drive files had no verifications—because after they were downloaded in 2016, the post-hoc verification data for those files also was destroyed. *Id.* at 4-6. Because of Plaintiffs' misrepresentations, the jury heard none of this.

Second, Plaintiffs do not dispute that the 2016 SOW was entered in "anticipation of litigation." Opp'n at 9. And Plaintiffs have pointed to their execution of that agreement as the event that triggered their legal duty to preserve documents for this and their other ISP litigations. Opp'n at 9. When Cox moved for sanctions against Plaintiffs on the basis that they had spoliated evidence, Plaintiffs elicited testimony from Bahun that "███████████████████████████████ ████████████████████████████████." Opp'n at 20. That is not "ambiguous," as Plaintiffs claim (*id.*)—it is false in light of the 2016 SOW.

### b.   Plaintiffs Falsely Represented that There Were No Subsequent Efforts to Validate the MarkMonitor Spreadsheet

The Court precluded Cox from introducing into evidence a version of the MarkMonitor Spreadsheet that included additional columns of data, which Cox argued demonstrated that Plaintiffs had failed to verify a large number of the works for which they sent notices. Mot. 7-8, 27-28. At the hearing on that motion, in response to the Court's questioning, Plaintiffs' counsel unequivocally stated that there had been no subsequent efforts to verify that data in the MarkMonitor Spreadsheet. *Id*. That also was false. While the parties were addressing the specific data at issue in Plaintiffs' motion *in limine*,[4] Plaintiffs cannot credibly deny that in 2016 they did

---

[4] Cox makes that clear when it describes the colloquy as pertaining to "*this* post-Claims Period data"—specifying the data the parties were discussing at that hearing. Mot. at 8 (emphasis added).

audit the MarkMonitor Spreadsheet by redownloading and reverifying its listed works. Plaintiffs' claim to the contrary—that "there is no indication that that's the case at all," (Ex. 12 (Nov. 12, 2019 Hr'g) 6:9-10)—is unsupportable. Taken as a whole, it is highly misleading.

### c. Plaintiffs Wrongfully Concealed the PCAP Files and the Hash Report

Plaintiffs claim that "[t]he 2016 PCAP files and Hash Report are incidental to the 2016 downloads, are outside the scope of the January 25, 2019, discovery order, and do not concern the reliability of the MarkMonitor system." Opp'n at 21. Plaintiffs cite nothing for this *ipse dixit*. And the *Charter* court has already flatly rejected Plaintiffs' effort to selectively disclose some fruits of the 2016 SOW (the 2016 Hard Drive files), but to withhold the other fruits (the 2016 Hash Report and the PCAP files that would have revealed when the audio files were downloaded). Mot at 21, n.7.[5] The *Charter* record demonstrates that this information is relevant, and the same is true here.

Further, Plaintiffs argue that there was no concealment because MarkMonitor produced the 2016 SOW. Opp'n at 11-12, 24-25. But Plaintiffs nowhere state that the 2016 SOW was produced on their behalf or at their direction. And they cite no law that the production of a document by a third party somehow absolves a party from complying with a discovery order.

Further, while Plaintiffs claim that MarkMonitor's document production was limited, and the 2016 SOW indicated that it was entered into pursuant to the Master Agreement and that "the services were 'being provided in anticipation of litigation,'" (Opp'n at 12), other non-responsive agreements produced by MarkMonitor at the same time—the type Plaintiffs argued against producing to Judge Anderson based on relevance—also referenced the Master Agreement. Mot. at 15. And with respect to the "anticipation of litigation" point, Plaintiffs had disclaimed any relevance to documents created after 2014. Ex. 28 at 16 (Plaintiffs arguing that "Cox's demand for

---

[5] Cox seeks the materials produced in connection with those discovery efforts. *See infra* at 20.

documents *after* 2014 is unreasonably broad and burdensome. The relevant time period at issue in this case is cabined.") (emphasis added). Plaintiffs also ignore Cox's argument that their failure to produce the 2016 SOW—including after Cox sought an assurance of the completeness of their production—was tantamount to an affirmative representation that the 2016 SOW was not relevant to this case. Mot. at 15, 23. Cox was entitled to rely on that representation to confirm compliance with a Court-ordered production.

### d.    Plaintiffs Wrongfully Concealed the 2016 Audible Magic Data

Plaintiffs also assert that the 2016 Audible Magic data "did not conceal the 2016 SOW." Opp'n at 22. But Cox argues that Plaintiffs wrongfully withheld the fact that they retained MarkMonitor and Audible Magic to *verify* 2016 downloads for use in their lawsuits—an action that is directly contrary to their repeated assertions that such a step is unnecessary. *Id.* at 15, 23. Plaintiffs again criticize Cox for "its refrain that the purpose of the 2016 project was to 'verify evidence ….'" *Id.* at 22. Plaintiffs argue that the 2016 project's true "purpose was to gather audio files with hashes corresponding to earlier notices for use in litigation." *Id*. But Plaintiffs fail to address the fact that they did not merely retain MarkMonitor to redownload files but asked MarkMonitor to **reverify those files with Audible Magic**. Thus, the creation of the 2016 Audible Magic records and the fact that they were destroyed were discoverable. Plaintiffs' failure to disclose these facts was misconduct.

### B.    Plaintiffs Elicited False and Misleading Testimony at Trial

The trial record demonstrates that Plaintiffs' witnesses misrepresented the provenance of the files on the Hard Drive. Plaintiffs' efforts to contort the record to paint the testimony as "confused" and "vague" fail.

1.     **Plaintiffs' Expert Provided Misleading Testimony, Which Plaintiffs Failed to Correct**

Plaintiffs do not dispute that their expert Barbara Frederiksen-Cross testified that the Hard Drive files were copies of the files "associated with the known infringing hashes, the ones that have been verified;" "[that] would have been fingerprinted at some point in time and gone to Audible Magic;" and "were downloaded, matched, …[and] all saved to the hard drive." Mot at 19. However, the files on the Hard Drive were not *copies* of the files that were verified before notices were sent, as Frederiksen-Cross described. They were different files downloaded years later that Plaintiffs now claim share the same content. *See supra* at 8-11. And to the extent Plaintiffs believe that Fredericksen-Cross's testimony is accurate because the Hard Drive files technically were downloaded and verified *in 2016*, they wrongfully withheld that key fact from Cox, the Court, and the jury. In any event, those verifications were not in evidence, as they were destroyed—another fact that Plaintiffs withheld. *Id.*

2.     **Bahun Falsely Testified Regarding the Origin of the Hard Drive Files**

First, Plaintiffs concede that Bahun provided inaccurate testimony. Opp'n at 18. Cox's counsel clearly asked "when [the files on the Hard Drive] were stored on [MarkMonitor's] system." Ex. 7 (Trial Tr.) 708:13-24. The truth, which Bahun knew, is March 2016. However, Bahun falsely responded "different dates," "throughout the course of the time period we are talking about," which was before notices were sent between 2012 and 2014. *Id*. He elaborated that "some of them" were stored on MarkMonitor's "system when they were first downloaded from the Internet"—that is, again, before notices were sent between 2012 and 2014. *Id.*; *see also id.* 709:15-16. This testimony followed the clear and natural progression of his cross examination, which solely concerned the files on the Hard Drive. Plaintiffs' claim that Bahun believed he was being

asked about an entirely different set of files that he knew no longer existed (Opp'n at 18), is baseless.

Conceding that this testimony was inaccurate, Plaintiffs argue that Bahun actually offered the testimony that Cox states was withheld. Opp'n at 18. Plaintiffs are wrong. Plaintiffs claim that Bahun "described MarkMonitor 'find[ing]' the Hard Drive files on multiple P2P networks '[a]t the time when we loaded these [files] onto the drive.'" *Id*. But this testimony was offered in response to a question from Plaintiffs' counsel about why the Hard Drive did not have any files from the Gnutella network. *Id.* And all Bahun was explaining is that files with the same hash value, whether originally sourced from the Gnutella or BitTorrent networks, are the same files. So, in Bahun's own words, when MarkMonitor "loaded these [files] onto the drive" in 2016, it did not need to put any in the Gnutella folder as they were otherwise included from BitTorrent folder. *Id.* Bahun's testimony regarding the ***composition*** of the Hard Drive, and the absence of any files in the Gnutella folder, has nothing to do with ***when*** the Hard Drive files were first ***downloaded and placed*** on MarkMonitor's system. The only time that question was asked and answered was on cross-examination, the following day, and 50 transcript pages later, when Bahun falsely stated that the Hard Drive files were downloaded before notices were sent between 2012-2014.

### III.    Plaintiffs' Actions Clearly Prevented Cox from Fully Presenting its Case at Trial

####    A.    Plaintiffs' About-Face in *Charter* Demonstrates the Prejudice to Cox from Their Misconduct.

Plaintiffs' primary argument in opposition is that "[t]he download date of a particular copy of that file does not change" that "copies of files with the same hash value are identical." Opp'n at 24. But in *Charter,* following the revelation that Plaintiffs failed to retain both (i) the original files MarkMonitor verified before sending notices (the verifications of which are contained in the MarkMonitor Spreadsheet) and (ii) the verifications of the files they downloaded in 2016 (which

files are contained on the Hard Drive), Plaintiffs elected to *reverify* (now for at least the third time) files with "the same hash value." *See supra* at 8-11. A step they claim is unnecessary. Opp'n at 15, 23. To accomplish this reverification, Plaintiffs have hired seven putative experts to "conduct a critical listening analysis comparing the audio recordings at issue" to "confirm[] each of Plaintiffs' works was copied …" in the Hard Drive files. Ex. 31 (*Charter* ECF 590-13), ¶ 14. Plaintiffs have also hired a New York University music professor to conduct "waveform and spectrogram analysis" in addition to "critical listening." *Id.* ¶ 15. Plaintiffs have thus abandoned the MarkMonitor Spreadsheet and its purported verifications—a centerpiece of their trial evidence in this case. They have also undermined the claimed interchangeability of files and verifications—a position directly contrary to both their trial strategy and opposition to Cox's instant motion. This development alone demonstrates that Cox was prevented from fully presenting its case at trial.

### B.    Plaintiffs' Misconduct Resulted in the Admission of Evidence Elemental to their Claims

Plaintiffs also claim that whether or not they committed any misconduct or made any misrepresentations, it had no bearing on Cox's defense—"no harm, no foul." That is not how the law works. But, as the record here and in *Charter* plainly reflect, Plaintiffs' misrepresentations resulted in significant harm. The Court based two significant evidentiary rulings on Plaintiffs' misrepresentations. The evidence subject to those rulings were elemental to Plaintiffs' proof of direct infringement. There is no question that a different outcome on admission or exclusion of that evidence would have materially affected Plaintiffs' presentation of their case. Plaintiffs' misconduct therefore greatly prejudiced Cox's ability to fully and fairly present its defense.

#### 1.    Plaintiffs' Misconduct Led to the Preclusion of an Alternate Version of the MarkMonitor Spreadsheet

The Court sustained Plaintiffs' objection to Cox's proffered admission of an alternate version of the MarkMonitor Spreadsheet that contained data raising issues about the reliability of

the MarkMonitor system. Mot. at 28. The Court did so because Plaintiffs certified that "there is no indication … at all" that MarkMonitor elicited the document's post-Claims Period data from Audible Magic for "the purpose [of] go[ing] back and look[ing] at the accuracy of the MarkMonitor documents or information." *Id.* However, if the Court had known that the MarkMonitor Spreadsheet that was admitted did ***not*** represent verifications of the files on the Hard Drive but versions they had failed to retain, and that Plaintiffs had indeed redownloaded and reverified those files after the Claims Period but those verification had also been destroyed, it may have overruled the objection and allowed the admission of the exhibit. Plaintiffs fail to even address this argument.

Plaintiffs also claim that even if they had told the truth "the data in the MarkMonitor Spreadsheet are properly authenticated business records" and "admissible … without regard to any Hard Drive files." Opp'n at 24. But again, Plaintiffs did not admit the MarkMonitor Spreadsheet "without regard to any Hard Drive files." They obtained its admission based on their representations that it contained the verifications of the files contained on the Hard Drive. Mot. at 8. Plaintiffs' strident assertion rings hollow in light of their abandonment of the MarkMonitor Spreadsheet in *Charter*. Further, even if the MarkMonitor Spreadsheet were admissible—a dubious proposition—its weight would have been considerably lower given the revelation that it contains verification of files that no longer exist. Plaintiffs also ignore this argument.

### 2.      Plaintiffs' Misconduct Led to the Admission of the Hard Drive

As Cox demonstrated in its opening brief, Plaintiffs' misconduct prevented Cox from arguing to the Court that the Hard Drive contained files that were "not those used to generate the [infringement] notices." Mot. at 26. Plaintiffs have no answer, beyond their refrain that "copies of files with the same hash are identical." Opp'n at 23-24. As discussed above, that argument falls apart in light of Plaintiffs' abandonment of the MarkMonitor Spreadsheet and election to reverify

(again) the Hard Drive files through the use of music experts in *Charter*. *See supra* at 14-15. And for the same reason, Plaintiffs have no basis to argue that the Court's ruling on the admissibility of the Hard Drive would have remained the same.

At trial, Cox sought to preclude the admission of the Hard Drive on the basis that its 2016 metadata undermined its foundation. Mot. at 5-6. In response, the Court stated that "[j]ust the timing of when" the drive was created "doesn't make it any more or less reliable." *Id.* at 6. That prompted Cox to ask **when** the files on the Hard Drive were first downloaded and placed on its system. *Id.* Bahun falsely testified that it was during the period before notices were sent—not in 2016. *Id.* That misrepresentation was coupled with Plaintiffs' counsel's statement at sidebar that "[e]very one of the files went through Audible Magic, which did essentially the equivalent of a digital listening." Ex. 7 (Trial Tr.) 647:16-21. But of course, that was only *half* true. The files on the Hard Drive did go through Audible Magic, though those verifications were destroyed. The verifications contained on the MarkMonitor Spreadsheet were for files that also were destroyed. Neither the Court nor the jury was told any of this.

### 3.     Cox Is Not Using Rule 60(b)(3) as a Tool for Reconsideration

Cox has made clear in its moving brief and on reply that Plaintiffs' multiple misrepresentations and discovery misconduct greatly infected the proceedings both before and at trial. *Supra* at 8-11; Mot. at 25-28. Cox is not seeking reconsideration of any issue previously decided by the Court based on the evidence that was before the Court—or, for that matter, the evidence available to Cox at the time. Cox requests that the Court vacate the judgment so that Cox can retry its defense with the evidence that Plaintiffs withheld. On remand, should similar disputes arise, the Court would have the benefit of a complete factual record when ruling.

## IV.    Cox Presented Meritorious Defenses at Trial

Plaintiffs argue that Cox has not cited any evidence for how the "dates of download for the Hard Drive files … will move the needle at all in its favor for a new trial." Opp'n at 27. But Cox's motion is not only based on the dates of the Hard Drive files. It is also based on the *admissibility* of both the Hard Drive and the MarkMonitor Spreadsheet. Mot. at 29. And there can be no dispute that these pieces of evidence were elemental to Plaintiffs' direct infringement case. *Id*. at 3, 25-28. Plaintiffs describe these documents as "the information concerning the infringement of the copyrighted works in suit by their subscribers" (*id.* at 14), and argued that preclusion of the MarkMonitor Spreadsheet would be dispositive, (Ex. 36 (Sept. 27, 2019 Hr'g Tr.) 75:22-76:3).

In a further effort to minimize this evidence, Plaintiffs claim that they created the Hard Drive merely to "enable a jury to listen to copies of the files bearing the same hashes as those in Plaintiffs' notices, as well as provide Cox the opportunity to review the contents of those infringing files." Opp'n at 9. But Plaintiffs' expert George McCabe relied on the presence of a file on the Hard Drive to render his opinion that each work-in-suit was infringed by a Cox subscriber. Mot. at 8.[6] And Plaintiffs argued that Cox should be held secondarily liable for those infringements.

Further, even if the Hard Drive and the MarkMonitor Spreadsheet were admitted, Cox would have been able to use the previously undisclosed information to undermine Plaintiffs' proof of direct infringement. The pre-trial and trial record plainly demonstrate that challenges over Plaintiffs' direct infringement case were vigorously litigated. Both parties elicited testimony from experts who closely examined the evidence, and Cox mounted repeated challenges to its

---

[6] Plaintiffs take issue with Cox's characterization of Professor McCabe as an "infringement expert." Opp'n at 8, n.5. Plaintiffs referred to his opinion as a "repeat infringer analysis," Pls.' Ex. 2 (Trial Tr.) 776:5-10, and with respect to his so-called "work in suit analysis," Professor McCabe's "fourth requirement is that the ***infringing file*** is on a hard drive that was created by MarkMonitor," *id.* 789:3-4. He opined that the works-in-suit met his criteria. *Id.* 796:20-797:1.

admissibility and weight. *Supra* at 8-11; Mot at 3-8. Moreover, the evidence that would further substantiate Cox's motion are the *Charter* materials that it presently seeks, many of which have been developed in the months preceding Cox's filing. *See infra* at 20. With a full record, a jury may have found, given Plaintiffs' claims of *secondary* infringement that their *second-hand* evidence was a bridge too far. Indeed, that appears to be Plaintiffs' belief in *Charter*, given their change of tactics there.

## V.     Justice Should Prevail Over Finality

Cox has demonstrated a sustained pattern of misconduct and misrepresentations that greatly undermined the judicial process. In circumstances like these, the public interest in finality must give way to justice. Mot. at 29-30. Contrary to Plaintiffs' assertions, Cox is not seeking a "do-over," and it certainly is not seeking a "perfect trial." Opp'n at 1, 27-28. Cox seeks to try this case based on a record that demonstrates that Plaintiffs re-created their evidence of infringement years after the underlying alleged infringement for which they seek to hold Cox secondarily liable occurred because they destroyed the contemporaneous evidence. None of Plaintiffs' cited cases involve the types of facts at issue here.[7]

---

[7] *United States v. Villarini*, 238 F.3d 530, 536 (4th Cir. 2001) (not applying Rule 60(b)); *Ind. Inv. Protective League v. Touche Ross & Co.*, 607 F.2d 530, 534 n.5 (2d Cir. 1978) (same); *Columbia Commc'ns Corp. v. EchoStar Satellite Corp.*, 2 Fed. App'x 360, 367 (4th Cir. 2001) (motion filed more than 12 months after judgment entered); *Marathon Res. Mgmt. Grp., LLC v. C. Cornell, Inc.*, 2020 WL 6370987, at *4 (E.D. Va. Oct. 29, 2020) (motion based on alleged violation of local procedural rule).

## VI.   Exercising the Court's Authority to Order Discovery is Warranted

The Court has authority to order discovery in further support of a meritorious Rule 60(b) motion. Mot. at 30. That this authority is rarely exercised does not change that fact.[8] As set forth herein, the present circumstances warrant exercising that authority. The record demonstrates that the disclosures in *Charter* and the additional discovery Cox seeks related to those disclosures bear on the weight of Plaintiffs' direct infringement evidence and case, including the 2016 SOW. In addition, as many of these materials were only developed in the months preceding (and in some cases, post-dating) Cox's motion, the request for discovery further demonstrates its timeliness.

## CONCLUSION

For all the foregoing reasons, and those set forth in Cox's moving brief, Cox respectfully requests that this Court enter an indicative ruling under Rule 62.1 stating that it is inclined to grant Cox's motion for relief from the judgment, or—at a minimum—that Cox's motion raises a substantial issue that warrants further consideration by this Court. Further, Cox respectfully requests that the Court order Cox's requested discovery and, to the extent necessary, grant it leave to supplement its motion what that discovery.

Dated: March 2, 2022                    Respectfully submitted,

*s/ J. Tyler McGaughey*
J. Tyler McGaughey (VSB No. 78809)
WINSTON & STRAWN LLP
1901 L Street NW
Washington, DC 20036
Tel: (202) 282-5000
Fax: (202) 282-5100
Email: TMcGaughey@winston.com

---

[8] Plaintiffs' cases are inapposite. *See Fharmacy Recs. v. Nassar*, 2010 WL 11545040, at *2, 4 (E.D. Mich. Feb. 18, 2010) (denied additional discovery largely because movant had exhibited repeated misconduct throughout the litigation); *Aldridge v. Corp. Mgmt. Inc*., 2021 WL 1521697, at *3 (S.D. Miss. Apr. 16, 2021) (denied discovery because the new evidence was found to be immaterial).

*Attorneys for Defendants Cox*
*Communications, Inc. and CoxCom, LLC*

*Of Counsel for Defendants*

Michael S. Elkin (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
Tel: (212) 294-6700
Fax: (212) 294-4700
Email: MElkin@winston.com

Jennifer A. Golinveaux (*pro hac vice*)
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111-5840
Tel: (415) 591-1000
Fax: (415) 591-1400
Email: JGolinveaux@winston.com

Geoffrey P. Eaton (*pro hac vice*)
WINSTON & STRAWN LLP
1900 L Street NW
Washington, DC 20036
Tel: (202) 282-5000
Fax: (202) 282-5100
Email: GEaton@winston.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 2, 2022, the foregoing was filed and served electronically by the Court's CM/ECF system upon all registered users.

*s/ J. Tyler McGaughey*
J. Tyler McGaughey