**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

|  |  |
|---|---|
| SONY MUSIC ENTERTAINMENT, *et al.*, <br> *Plaintiffs*, <br><br> v. <br><br> COX COMMUNICATIONS, INC, *et al.*, <br><br> *Defendants*. | Civil No. 1:18-cv-950 (LO / JFA) |

**COX'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION**
**FOR RELIEF FROM THE JUDGMENT UNDER RULES 60(B)(2) AND 60(B)(3) AND**
**<u>REQUEST FOR INDICATIVE RULING UNDER RULE 62.1</u>**

**<u>PUBLIC VERSION</u>**

## <u>TABLE OF CONTENTS</u>

<b>Page</b>

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 2

I.    Cox's Subpoena Directly Called for the Withheld Source Code ..................................... 2

II.    Cox Did Not "Ignore" Source Code That MarkMonitor Affirmatively
Represented No Longer Existed ................................................................................. 5

III.    Plaintiffs' Post Hoc Downloads of "Infringing Files" Are No Substitute for the
Withheld Source Code ............................................................................................ 6

IV.    Cox Has Made a Necessary Showing for Its Requested Relief Under
Rule 60(b)(2) ....................................................................................................... 9

        A.    Cox Has Made a Prima Facie Showing That It Has a Meritorious Defense......... 10

        B.    Cox Has Made a Prima Facie Showing of Exceptional Circumstances
Warranting Relief............................................................................... 11

        C.    Cox Has Made a Prima Facie Showing Under Rule 60(b)(2) ............................ 12

V.    Cox Has Made a Necessary Showing for Its Requested Relief Under
Rule 60(b)(3) ..................................................................................................... 15

        A.    Plaintiffs and MarkMonitor Closely Coordinate Anti-Piracy and
Discovery Efforts ................................................................................ 15

        B.    If Plaintiffs Engaged in Misconduct, Cox May Be Able to Establish the
Other Elements of Rule 60(b)(3) ........................................................... 17

VI.    Cox Has Established That Discovery Is Warranted........................................................ 18

CONCLUSION................................................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*,
  843 F.2d 808 (4th Cir. 1988) ...................................................................................11

*Bohus v. Beloff*,
  950 F.2d 919 (3d Cir. 1991) .....................................................................................15

*Boryan v. United States*,
  884 F.2d 767 (4th Cir. 1989) ...................................................................................13

*Fobian v. Storage Tech. Corp.*,
  164 F.3d 887 (4th Cir. 1999) ...................................................................................18

*Greyhound Lines, Inc. v. Wade*,
  485 F.3d 1032 (8th Cir. 2007) .................................................................................15

*Johnson v. Starbucks Corp.*,
  2019 WL 402359 (N.D. Cal. Jan. 31, 2019) ............................................................19

*Jones v. Phipps*,
  39 F.3d 158 (7th Cir. 1994) .....................................................................................11

*Midwest Franchise Corp. v. Metromedia Rest. Grp., Inc.*,
  177 F.R.D. 438 (N.D. Iowa 1997) ......................................................................12, 19

*MMAR Grp., Inc. v. Dow Jones*,
  187 F.R.D. 282 (S.D. Tex. Apr. 8, 1999) .................................................................19

*Pearson v. First NH Mortg. Corp.*,
  200 F.3d 30 (1st Cir. 1999) ......................................................................................19

*Schultz v. Butcher*,
  24 F.3d 626 (4th Cir. 1994) .....................................................................................14

*Softech Worldwide, LLC v. Internet Tech. Broad. Corp.*,
  761 F. Supp. 2d 367 (E.D. Va. 2011) ......................................................................14

*Square Constr. Co. v. Washington Metro. Area Transit Auth.*,
  657 F.2d 68 (4th Cir. 1981) ................................................................................15, 16

**Other Authorities**

Fed. R. Civ. P. 60(b)(3) ....................................................................................................15

Fed. R. Civ. P. 62.1(a)(3)...............................................................................................................18

## INTRODUCTION

With the present motion, Cox seeks an order compelling the inspection of source code integral to Plaintiffs' direct infringement evidence and basic discovery concerning why it was not disclosed until more than two years after a verdict was rendered in this case. Cox can then assess whether relief is warranted under Rules 60(b)(2) and/or 60(b)(3). Plaintiffs' opposition to this reasonable request is replete with mischaracterization and unsupported attorney argument. Plaintiffs present no justification why this basic and necessary relief is unwarranted.

Instead, Plaintiffs spend pages upon pages expounding on how the withheld source code operates; what it would have shown; and why, in their view, it would not have made a difference in this case. However, in so doing, they do not deny that the code was withheld from Cox, effectively confirm that the functionality that it allegedly implemented was critical to the reliable operation of their system for sending notices that alleged actual "infringement," and fail to cite a single record source for this conjecture. Indeed, they do not provide a declaration from their experts, MarkMonitor, or even their own attorneys to attest to the factual narrative that they put forward. And they cite nothing from the *Charter* case, in which the existence of the withheld code was disclosed. The Court should disregard Plaintiffs' attempt to present and reject the substance of Cox's anticipated motion without support.

Moreover, by disclosing the alleged content of the code in their brief, Plaintiffs effectively moot any confidentiality or burden issues that might arise from the production of it in response to this motion, since, if their claims are valid, all that remains is to confirm them by the requested discovery.  But what Plaintiffs do not do is explain why their counsel's *ipse dixit* is an adequate substitute for the actual evidence that should have been produced here. Thus, Plaintiffs' attempt to present and reject the substance of Cox's anticipated motion without support should not be countenanced.

Plaintiffs' opposition also relies upon a strained and unsupportable interpretation of Cox's subpoena to MarkMonitor. Plaintiffs claim that Cox's subpoena "arguably" did not call for the withheld source code, though, on its face it does, and, inconsistently, they acknowledge that Charter's subpoena called for the code's production using the very definition of MarkMonitor's "System"—the subject-matter of the code at issue—used by Cox here. That should end the inquiry.

Plaintiffs also devote their opposition to erecting legal and procedural straw man arguments, namely, that by lacking the withheld source code, Cox is not yet able to make a full showing under Rules 60(b)(2) and/or (3). But Cox acknowledged this in its motion and focuses on the record to demonstrate how the withheld code is integral to Plaintiffs' direct-infringement case and how Cox relied on MarkMonitor's representations that the code did not exist. It is indisputable that to hold Cox secondarily liable, Plaintiffs must first prove the underlying direct infringement. There can be no question that the withheld code, together with the cascade of misrepresentations about Plaintiffs' direct infringement evidence addressed in Cox's first Rule 60 motion (ECF 737 & 780) ("First Rule 60 Motion"), casts Plaintiffs' entire case into doubt.

On this record, Cox asks that the Court order the production and inspection of the withheld MarkMonitor code and related discovery regarding the circumstances of its late disclosure.

## ARGUMENT

### I.    Cox's Subpoena Directly Called for the Withheld Source Code

Plaintiffs claim that Cox's subpoena "*arguably*" did not call for the withheld code. Opp'n at 4 (emphasis added). That is wrong on multiple counts.

First, Plaintiffs readily concede that the *Charter* subpoena sought the withheld code, and both the *Charter* and *Cox* subpoenas define MarkMonitor's system—the source of the withheld code—in exactly the same way. *Id.* This should end the inquiry.

Second, notwithstanding the identical definitions and Plaintiffs' concession that the *Charter* subpoena sought the withheld code, Plaintiffs acknowledge that "Cox's subpoena targeted MarkMonitor's processes for *infringement verification* and notice sending *with respect to* specific *infringers*," but argue that it is "vague about whether it also covered MarkMonitor's process for identifying contents of suspected infringing files in the first instance." Opp'n at 4 (emphasis added). Plaintiffs describe the withheld code as responsible for verifying works to create a "database of known infringing files." *Id.* at 1. And, as Plaintiffs presented at trial, notices will only be sent to ISPs like Cox for files with verifications in this database. Ex. R (Trial Tr.) 477:14-24 ("So the file has been verified as infringing before the detection process, the evidence collection process ever can be used to send a notice. So if a file hasn't been confirmed to contain infringing content, that, that evidence package is not eligible to send a notice."); *see also id.* at 502:19-25. Accordingly, Plaintiffs and their expert repeatedly ascribed this verification process to MarkMonitor's use of Audible Magic data integrated into its system through the very code in question. *See* Opp'n at 1; *see also* Ex. R (Trial Tr.) 570:16-19, 598:12-16. Thus, the withheld code is exactly the "process of infringement verification" that Cox's subpoena requested. *See* Opp'n at 1; *see also id.* at 5. Any argument to the contrary is unsupported.

Indeed, throughout this case, MarkMonitor and Plaintiffs repeatedly took the position that the initial verification process was integral to the subsequent process for sending notices to Cox's subscribers. MarkMonitor described these verifications as "a corollary to detection." *See* Ex. S (*Cox v. MarkMonitor* ECF 10, Bahun Decl.) ¶ 5. Similarly, on summary judgment, Plaintiffs represented that "[e]very single MarkMonitor notice is supported by two key verifications," one of them being, again, the initial verification step allegedly addressed by the withheld code. *See* ECF 392 (Pls.' Memo. in Opp'n to Cox's Mot. for Summ. J.) at 17; *see also* First Rule 60 Mot.

3

Ex. 2 (ECF 739-1) at 20 ████████████████████████████████████

██████████████████████████████████████████████ Then at

trial, in response to Cox's objection to Plaintiffs' admission of the allegedly "infringing files,"

Plaintiffs' counsel argued "[e]very one of the files went through Audible Magic, which did

essentially the equivalent of a digital listening" (Ex. R (Trial Tr.) 647:16-21), again, the process

purportedly covered by the withheld source code. Cox's subpoena provides no basis to carve out

these processes from one another.

Moreover, the plain language of the *Cox* subpoena also makes this clear. It defined the

"[MarkMonitor] System" as the "system for monitoring and/or detecting alleged copyright

infringement, generating copyright infringement notices, and sending copyright infringement

notices." Mot. Ex. E (Cox's Subpoena Duces Tecum to MarkMonitor). Cox sought "[o]ne copy of

each version of [MarkMonitor's] System that was in use during Plaintiffs' Claim Period, including

all versions of the source code for each, that was used to monitor and/or detect copyright

infringement, generate copyright infringement notices, or send copyright infringement notices"

and "[a]ll Documents concerning the revision history of [the MarkMonitor] System and the

associated source code." *See* Mot. Ex. E (Cox's Subpoena Duces Tecum to MarkMonitor) Nos. 12

& 13.

Third, when responding to Cox's subpoena, MarkMonitor did not limit what it viewed as

responsive and did not indicate that any portion of the available code was being withheld. In fact,

when initially attempting to resist the production of *any* source code, MarkMonitor argued that

due to its multiple levels of verification, "re[-]creating the system in place at the relevant time"

"would be an enormous obstacle and expense." Mot. Ex. I (*Cox v. MarkMonitor* ECF 12) at 4-5,

9. After that, when the *Cox v. MarkMonitor* court rejected its arguments and ordered it to comply

in full with Cox's subpoena (Mot. Ex. J (*Cox v. MarkMonitor* ECF 14)), MarkMonitor represented that "it would "make everything available that they have" relating to "(1) each version of the system used during the plaintiffs' claim period; (2) all documents regarding the revision history; and (3) all associated source code." Mot. Ex. A (March 25, 2019 email from A. Castricone to D. Leiden).

Finally, while the *Charter* subpoena may have included additional variations on requests for source code, Plaintiffs provide no support for the proposition that Cox's broader, all-encompassing request is somehow rendered narrower by different requests served by a different party in a different case years later. Again, Plaintiffs do not provide a declaration from MarkMonitor or its counsel attesting to that belief despite the parties' close coordination on anti-piracy efforts, discovery responses, and Plaintiffs' prosecution of their cases against ISPs.

There can be no credible dispute that Cox's subpoena sought the withheld source code. Plaintiffs' strained arguments to the contrary should be rejected.

## II.    Cox Did Not "Ignore" Source Code That MarkMonitor Affirmatively Represented No Longer Existed

Plaintiffs claim that Cox "ignored" the withheld code. *See* Opp'n at 5. That too is wrong. In advance of the court-ordered source code review, Cox sought assurances from MarkMonitor that all available code would be produced. *See* Mot. Ex. A (March 25, 2019 Email from D. Leiden to A. Castricone) (requesting that MarkMonitor confirm it was producing "(1) each version of the system used during the plaintiffs' claim period; (2) all documents regarding the revision history; and (3) all associated source code"). Cox also requested that MarkMonitor confirm whether any revision history information would be made available. *Id.* (March 27, 2019 email from A. Castricone to D. Leiden). MarkMonitor's counsel affirmatively represented that "[t]here is no revision history … as MarkMonitor was only running one version [of its software] during the

relevant time period," "[t]he source code represents the source code for the version of MarkMonitor's system during the relevant time period," and that "[t]he source code is in its original executable form without revision or modification." *Id*. Based on those assurances, Cox's expert, Dr. Feamster, reviewed the code that was made available.

Based on that review, Dr. Feamster noted that he ███████████████████████████ ████████████████████████ *See* Mot. Ex. L (Feamster Dep. Tr.) at 76:21-77:3. Then, after Dr. Feamster's source code review, Cox deposed MarkMonitor's representatives about the availability of source code and its operation. Both representatives testified ███████████████████ ████████████████ Mot. Ex. B (Bahun Dep. Tr.) at 63:6–22; Mot. Ex. M (Paszkowski Dep. Tr.) at 106:13–24.

Despite Cox's repeated efforts to confirm the completeness of MarkMonitor's production, Plaintiffs argue that Cox "never claimed that an inability to review such code limited [its] analysis." Opp'n at 6. Plaintiffs miss the point. Cox cannot be expected to understand how, if at all, the withheld source code impacts the accuracy or reliability of Plaintiffs' direct-infringement evidence unless and until it has an opportunity to examine it. That code was represented not to exist, but based upon the recent revelations, those representations were not accurate. *See* Mot. at 2. With this motion, Cox seeks to examine that code so that it can determine whether it is sufficiently material to warrant relief under Rule 60.

## III. Plaintiffs' Post Hoc Downloads of "Infringing Files" Are No Substitute for the Withheld Source Code

Plaintiffs devote the majority of their opposition to arguing why the withheld source code would be immaterial in light of other evidence they relied on to prove direct infringement. *See* Opp'n 5-7, 10-11, 16-19. This narrative is pure attorney argument and unsupported by any record citations. Plaintiffs have purportedly explained the operation and purpose of the withheld source

code, though it has not been produced, no party has admitted to examining it, and Plaintiffs'
explanation of the code is unsupported by the case record. *See* Opp'n at 1. Plaintiffs' self-serving
say-so puts the source code directly at issue in this motion and warrants relief on that ground alone.

Even assuming Plaintiffs' narrative is accurate, it is unavailing, as they badly
mischaracterize the purportedly "substitute" evidence to which they point. *See* Opp'n at 20.
Plaintiffs claim that "Cox and its experts could have reviewed the infringing [Hard Drive] files
and determined for themselves whether they contained the songs listed in MarkMonitor's
verification records … or something different." *Id.* at 10. But Plaintiffs ignore the fact that the
Hard Drive files were downloaded in 2016, long after Plaintiffs sent their last infringement notices
to Cox, and their verifications were destroyed—facts that they withheld from Cox, the Court, and
the jury. *See* ECF 739 at 16. Plaintiffs also ignore that the verifications recorded on the
MarkMonitor Spreadsheet that was admitted at trial and put forth by Plaintiffs as "substitute" direct
infringement evidence, were created as the result of the implementation of the withheld source
code. *See id.* at 18-20; Opp'n at 1. Here too, the underlying files were destroyed, and Plaintiffs
withheld those facts. *See* ECF 739 at 16.[1] As a result of their concealment, Plaintiffs were able to
falsely present the jury with what they claimed were two pieces of a unified whole (the Hard Drive

---

[1] Just last week, the *Charter* court found that this evidence would be relevant to the jury's
determination of Plaintiffs' direct infringement case. In a Recommendation to Grant in Part
Charter's Motion for Curative Measures and Sanctions for Plaintiffs' Spoliation of Evidence, the
Magistrate Judge found that Plaintiffs' and MarkMonitor's failure to preserve this pre-notice
period data and the 2016 Audible Magic verifications "should be permitted" "at trial[] if for no
other reason than to attack the weight the jury should accord Plaintiffs' proof of actual copyright
infringement by Defendant's customers … ." *Charter* ECF 718 at 8-9.

files and the MarkMonitor Spreadsheet).[2] *See*, *e.g.*, Ex. R (Trial Tr.) 639:3-7, 640:9-17, 598:7-11. In reality, they were two disjointed pieces of evidence created years apart from each other. *See* ECF 739 at 11. A key piece to fill in these gaps is the withheld source code at issue, as it supposedly was in operation when the verifications on the MarkMonitor Spreadsheet were created.

Plaintiffs also minimize the potential materiality of the withheld source code by arguing that it "goes to the *process* by which MarkMonitor communicated with Audible Magic." Opp'n at 10 (emphasis added). But Plaintiffs fail to acknowledge that their entire case of direct infringement was premised on MarkMonitor's processes and their purported accuracy. *See supra* at 3-4. This is because Plaintiffs lacked any contemporaneous evidence of direct infringement other than the notices of alleged infringement that they sent to Cox and the corresponding "evidence packages," which consisted merely of log files recording interactions on the peer-to-peer networks. *See* Ex. R (Trial Tr.) 2944:21-24, 2950:9-14, 2233:21-2234:4. But that evidence did not contain any proof that the file was verified as containing one of Plaintiffs' works in suit before the notice was sent— a step Plaintiffs touted as essential to ensuring that they only sent notices for files that contained copies of their copyrighted works. *Id.* at 477:14-24 (Plaintiffs' expert testifying that a notice will not be sent if a file "hasn't been confirmed"). Based on Plaintiffs' disclosure and opposition, that key verification process is purportedly demonstrated by the withheld source code.

Specifically, at trial, Plaintiffs touted MarkMonitor's process as "the gold standard in antipiracy work." *Id.* at 40:1–9. Plaintiffs presented extensive testimony regarding MarkMonitor's process, including that their expert "determined that the MarkMonitor system accurately detected

---

[2] Notably, Cox also offered, but was prevented from admitting at trial the version of the MarkMonitor Spreadsheet arguably showing that Audible Magic could not verify allegedly infringing files. The evidence may have been admissible had Cox reviewed the code and it revealed issues with MarkMonitor's reliability. *See* ECF 739; First Rule 60 Mot. Ex. 11 (ECF 739-7); First Rule 60 Mot. Ex. 6 (ECF 738-7) at 4.

peers that are copying and distributing the plaintiffs' copyrighted works, and that it prepares and sends accurate notices about the infringement activity that it detects." *Id.* at 2945:7–11. The accuracy of this testimony depended, in part, on the withheld source code.

For these same reasons, Plaintiffs' focus on Audible Magic's source code is misplaced. *See* Opp'n at 25, n.12. Whether Audible Magic's software—operating in a vacuum—correctly verifies files is irrelevant to the question of whether MarkMonitor first verified files through Audible Magic *before* sending notices. Aside from unsubstantiated testimony from MarkMonitor and Plaintiffs' technical expert—self-interested parties—there is no evidence in the case that MarkMonitor did that. *See* ECF 739 at 11-12. The source code addresses that question, which necessitates its review.

## IV.   Cox Has Made a Necessary Showing for Its Requested Relief Under Rule 60(b)(2)

Plaintiffs wrongly focus on the merits of Cox's anticipated Rule 60(b)(2) motion. *See* Opp'n at 16. As Cox makes clear, what it presently seeks is *discovery*—of the withheld source code and related documents and testimony concerning its disclosure—to determine whether relief is warranted under Rule 60. *See* Mot. at 3. Thus, Plaintiffs' arguments about whether Cox has made a sufficient showing under Rule 60 lack merit and should be disregarded.

To the extent Plaintiffs' arguments can be construed as opposing Cox's request for discovery, they also fail. Based on the necessarily limited record before the Court, Cox has demonstrated that if the withheld source code undermines Plaintiffs' claim of direct infringement, the outcome of the case may have been different. *See* Mot. at 13-17. No more should be required at this stage.

### A.     Cox Has Made a Prima Facie Showing That It Has a Meritorious Defense

Plaintiffs claim that "Cox failed to proffer any evidence as to why a new trial would not be a futile gesture." Opp'n at 15. The discovery is the "evidence" that Cox would offer should it be ordered and prove sufficient to warrant relief under Rule 60.

In any event, Cox has presented evidence from the current record that demonstrates precisely how the withheld source code could impact Plaintiffs' proof of direct infringement, a prerequisite for holding Cox secondarily liable. *See* Mot at 15-16. As discussed above, and in Cox's moving memorandum, Plaintiffs relied on the purported accuracy or reliability of MarkMonitor's process for verifying and identifying instances of infringement. *See supra* at 3-4; *see also* Mot. at 8, 10. And in doing so, Plaintiffs represented at trial that they possessed both the files that MarkMonitor verified (the files on the 2016 Hard Drive) and the recorded verifications (the MarkMonitor Spreadsheet). *See* Ex. R (Trial Tr.) 2944:2-2945:11. It has since been revealed that neither was true. *See* ECF 739 at 11-12. Thus, Plaintiffs' proof of direct infringement is now materially different—and weaker—than it was during trial. If the withheld source code demonstrates, for example, that MarkMonitor did *not* verify files *before* notices were sent or that those verifications were incomplete, then Plaintiffs' proof will be rendered even weaker.

Further, Plaintiffs ignore that they obtained the admission of the MarkMonitor Spreadsheet and the 2016 Hard Drive based on their representation that the files were subjected to "digital listening." Ex. R (Trial Tr.) 647:16-21. That is, pursuant to MarkMonitor's process and according to Plaintiffs, the files on the Hard Drive were each put through Audible Magic's verification process and those verifications were captured by the MarkMonitor Spreadsheet before notices were sent. *See id.* at 477:14-24. While it has since been revealed that those pieces of evidence do not represent the files downloaded and verified before notices were sent, the withheld source code was an essential component of this purported "digital listening." *See id.* at 647:16-21 (Plaintiffs'

10

counsel explaining that "[e]very one of the files went through Audible Magic, which did essentially the equivalent of a digital listening"). Thus, given the inaccurate basis upon which Plaintiffs obtained the admission of two key pieces of their direct-infringement case, the belated discovery of source code that addresses a core aspect of the process giving rise to that evidence is highly probative. If the withheld code proves to operate inconsistently with Plaintiffs' representations, a retrial would not be a futile gesture.

In sum, Cox has identified evidence that the withheld source code would impact Plaintiffs' direct-infringement case and thus has presented a meritorious defense required to meet the predicate requirements for relief under Rule 60(b), as it has "proffer[ed] evidence which would permit a finding for the defaulting party or which would establish a valid counterclaim." *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808 (4th Cir. 1988). Indeed, "all that is necessary to establish the existence of a 'meritorious defense' is a presentation or proffer of evidence, which, if believed, would permit either the Court or the jury to find for the defaulting party." *Id.*; *see also Jones v. Phipps*, 39 F.3d 158, 165 (7th Cir. 1994) ("A meritorious defense is not necessarily one which must, beyond a doubt, succeed in defeating a default judgment, but rather one which at least raises a serious question regarding the propriety of a default judgment and which is supported by a developed legal and factual basis.").

### B.   Cox Has Made a Prima Facie Showing of Exceptional Circumstances Warranting Relief

Plaintiffs also claim that their agent's "mere identification of potential new evidence after a case is over does not constitute an exceptional circumstance." Opp'n at 15. But Plaintiffs provide no support for that conclusory assertion and have no basis to characterize the potential materiality of the withheld code. Plaintiffs have neither examined it, nor have they provided any declaration or other information from MarkMonitor regarding what it represents. Plaintiffs' narrative regarding

the withheld code and how it fits into this case is entirely based on their unsupported say-so. *See supra* at 4. As set forth above, Plaintiffs were first required to prove direct infringement to hold Cox secondarily liable for that infringement. Their direct-infringement case relied almost entirely on the accuracy and reliability of MarkMonitor's system. Central to their strategy was Plaintiffs' assurance that MarkMonitor sent files to Audible Magic for verification *before* notices were sent. Because those files were destroyed, the discovery of the code that operated that process constitutes an exceptional circumstance. *See Midwest Franchise Corp. v. Metromedia Rest. Grp., Inc.*, 177 F.R.D. 438, 441 (N.D. Iowa 1997) (finding exceptional circumstances where material evidence was discovered after trial).

Further, Plaintiffs' focus on what Cox challenged during the trial is misplaced. Cox's expert examined the code that was available. Where that available code indicated portions were withheld, he noted as much. *See* Mot. Ex. K (Feamster Rebuttal Rpt.) ¶ 47; *see also* Mot. Ex. L (Feamster Dep. Tr.) 76:21-77:3, Ex. T (Feamster Dep. Tr.) 232:8-233:4; *see also* Ex. R (Trial Tr.) 2236:10-2237:10, 2240:6-19. However, Cox cannot be penalized because MarkMonitor—Plaintiffs' agent—affirmatively represented that it had produced all available code when that proved to be untrue. With the withheld code, Cox's approach to examining Plaintiffs' direct-infringement evidence may well have been different. Plaintiffs are in no position to challenge that, as neither they nor MarkMonitor had provided any evidence of what the code represents or why it would prove immaterial.

### C.    Cox Has Made a Prima Facie Showing Under Rule 60(b)(2)

Relief is warranted under Rule 60(b)(2) if "(1) the evidence is newly discovered since the judgment was entered; (2) due diligence on the part of the movant to discover the new evidence has been exercised; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence is such that is likely to produce a new outcome if the case were

retried, or is such that would require the judgment to be amended." *Boryan v. United States*, 884 F.2d 767, 771 (4th Cir. 1989). Here, Cox has made a prima facie showing that each of these elements could be satisfied given the potential importance of the withheld code. Thus, Cox has established that the discovery necessary to make that determination is warranted.

First, Plaintiffs argue that the withheld code is cumulative by pointing to the 2016 Hard Drive files and the MarkMonitor Spreadsheet. Opp'n at 18. Plaintiffs claim that Cox could have "analyz[ed] hash values" to "compare the artist and title entries on the MarkMonitor Spreadsheet to the contents of the music files on the Hard Drive and could do whatever listening or automated content identification it wanted." Opp'n at 18–19. But that process does not address the issue of whether MarkMonitor verified files before notices were sent, and the accuracy of that purported process. Further, as set forth above and in Cox's First Rule 60 Motion, that evidence is materially weakened by Plaintiffs' post-judgment disclosures. *See* ECF 739 at 26-27.

Second, relying on many of the same arguments, Plaintiffs claim that the withheld code is immaterial. *See* Opp'n at 16, 19. Plaintiffs again wrongly focus on their direct-infringement evidence—and Cox's challenges thereto—during the trial. However, in doing so, Plaintiffs again ignore the fact that their presentation was deeply flawed, as they withheld and failed to disclose the provenance of that evidence. Thus, Plaintiffs' claims as to the materiality of the withheld code ring hollow. Further, and as set forth above, Plaintiffs continue to characterize the purpose of the withheld code without any evidentiary basis. And even relying on Plaintiffs' own self-serving description of the withheld code, they continue to fail to acknowledge that the withheld code addresses whether MarkMonitor verified files *before* notices were sent—not whether those verifications occurred at some indeterminate point.

Plaintiffs also claim that "contemporaneous" evidence is immaterial because "[g]iven how hash values operate, copies of infringing files that have the same hash values as those referenced in Plaintiffs' infringement notices, whose contents were verified by Audible Magic, and that appear on the Hard Drive are the same regardless of when they were downloaded." Opp'n at 18. That was a heavily contested subject of expert testimony and also begs the question of why Plaintiffs went to the trouble to have Audible Magic reverify the 2016 files. But putting that aside, Plaintiffs' strident assertion ignores the fact that their agent, MarkMonitor, claims to have ensured that it verified content *before* notices were sent. The withheld source code is highly probative of the accuracy of that assertion.

*Third*, as Plaintiffs acknowledge (Opp'n at 20), Cox cannot currently demonstrate whether the withheld source code is "of such a material and controlling nature as would probably have changed the outcome." *Schultz v. Butcher*, 24 F.3d 626 (4th Cir. 1994). That is why Cox seeks discovery.

In the face of this procedural posture, Plaintiffs nevertheless argue that "[t]he infringing files and other evidence produced to Cox in discovery demonstrate Cox's liability, regardless of [withheld code]." Opp'n at 20. But that ignores the legal reality of Plaintiffs' claims. Cox did not infringe Plaintiffs' copyrights—its subscribers allegedly did. And Cox can only be held secondarily liable if Plaintiffs can first demonstrate that direct infringement. Cox is challenging Plaintiffs' direct-infringement case based on disclosures regarding the provenance of certain pieces of key evidence. Cases fall apart when threshold issues like direct infringement are not met. *See Softech Worldwide, LLC v. Internet Tech. Broad. Corp.*, 761 F. Supp. 2d 367, 375 (E.D. Va. 2011) ("Secondary liability for copyright infringement does not exist in the absence of direct

infringement by a third party.") (citations omitted). There is no basis to assume the result would be different here.[3]

## V.      Cox Has Made a Necessary Showing for Its Requested Relief Under Rule 60(b)(3)

Rule 60(b)(3) provides for relief from a judgment based on an opposing party's fraud, misrepresentation, or misconduct. Fed. R. Civ. P. 60(b)(3); *see also Square Constr. Co. v. Washington Metro. Area Transit Auth.*, 657 F.2d 68, 71 (4th Cir. 1981) (finding "misconduct on the part of an adverse party in the form of [nonmoving party's] failure to produce the [evidence] pursuant to a proper request"). With this motion, Cox seeks discovery to first determine whether there has been any misconduct by or attributable to Plaintiffs in MarkMonitor's failure to produce the withheld code and its belated discovery of it.

### A.      Plaintiffs and MarkMonitor Closely Coordinate Anti-Piracy and Discovery Efforts

Cox has a good-faith basis to pursue this discovery, as the record before the Court shows a decade-plus relationship between Plaintiffs and MarkMonitor. Indeed, since at least 2012, MarkMonitor has been compiling evidence for Plaintiffs to later use in lawsuits against ISPs like Cox. *See* ECF 739 at 14. MarkMonitor and Plaintiffs largely failed to retain that evidence, which necessitated yet further engagements between the two. *Id.* at 23-24. In late 2015 through early 2016, Plaintiffs hired MarkMonitor again, this time to attempt to re-download all the files identified in notices they had sent to ISPs years earlier specifically for their then-anticipated litigation against Cox, but had failed to retain. *Id.* at 12. In 2018, shortly after Plaintiffs filed suit against Cox, ███████████████████████████████████████████████

---

[3] Plaintiffs' cases are distinguishable. In *Bohus v. Beloff*, the court found that the newly discovered evidence strengthened the nonmovant's case and that a new trial was unwarranted. 950 F.2d 919, 931 (3d Cir. 1991). In *Greyhound Lines, Inc. v. Wade*, the court found that the liability at issue in the case rested on more than just the testimony at issue. 485 F.3d 1032, 1037 (8th Cir. 2007).

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████. *See id.*

In 2019, at the commencement of discovery in this case, Plaintiffs represented in their initial disclosures that their trade group, the Recording Industry Association of America (the "RIAA"), managed the MarkMonitor notice program, which MarkMonitor conducted. Plaintiffs disclosed that both parties could be reached through their counsel, O+Z. *See* Mot. at 6. During discovery, in resisting Cox's subpoena, MarkMonitor argued that it had first provided to *Plaintiffs* all the evidence it believed would be responsive to *Cox's* subpoena. Mot. Ex. I (*Cox v. MarkMonitor* ECF 12) at 6. Then, throughout pretrial proceedings, MarkMonitor representatives repeatedly provided support to Plaintiffs, including through numerous factual declarations, coordination with Plaintiffs' experts, and trial testimony. Mot. at 6-9. Further, in the *Charter* case, Plaintiffs' counsel represented that Plaintiffs also coordinated with MarkMonitor in connection with its discovery responses there. *See* Ex. U (*Charter* ECF 400 (Feb. 23, 2021 Hr'g. Tr.)) 60:3-9, 71:14-17. Finally, when MarkMonitor apparently recently discovered the withheld code, it informed Plaintiffs' outside counsel (O+Z, again), as opposed to Charter or Bright House, the parties who had served it with a subpoena. Mot. at 12. Moreover, this "discovery" conspicuously occurred right before Plaintiffs were to respond to Charter's motion for sanctions for Plaintiffs' alleged spoliation of this very code. *See Charter* ECF 636 & 696-2.

This record paints a clear picture of close ties and coordination in this and other related lawsuits. Cox seeks discovery merely to assess whether there has been any misconduct by or attributable to Plaintiffs in MarkMonitor's failure to produce the withheld code and its belated discovery of it. Withholding the source code and related discovery in response to Cox's subpoena

requests would squarely constitute misconduct. *See Square Const. Co. v. Washington Metro. Area Transit Auth.,* 657 F.2d at 71 (finding "misconduct on the part of an adverse party in the form of [non-moving party's] failure to produce the [evidence] pursuant to a proper request").

### B.      If Plaintiffs Engaged in Misconduct, Cox May Be Able to Establish the Other Elements of Rule 60(b)(3)

If Plaintiffs did engage in misconduct, Cox has sufficiently explained how relief would be warranted under Rule 60(b)(3) depending on the substance of the withheld code and the other discovery sought.

*First*, if the source code proves to be unhelpful to Plaintiffs, including, for example, by demonstrating that MarkMonitor did *not* verify files *before* sending notices, or that there were issues with the accuracy of that process, then Cox can readily establish that it was prevented from fully and fairly presenting a defense. As set forth above, MarkMonitor's process for verifying infringing files and sending notices to ISPs like Cox was a centerpiece of Plaintiffs' direct infringement case. And if Plaintiffs cannot establish direct infringement, they cannot hold Cox secondarily liable. In the face of this argument, Plaintiffs claim that the evidence of Cox's liability is overwhelming. *See* Opp'n at 1, 2. Not only do Plaintiffs fail to cite anything for that claim, they also ignore that all that is relevant at this stage is whether they sufficiently proved that Cox's subscribers committed ***direct infringement***—not whether Cox can be held ***secondarily liable*** for such infringement. Plaintiffs' direct infringement evidence has now been revealed to have been manufactured after the fact and otherwise vulnerable.

*Second*, while Plaintiffs argue that Cox could have listened to the files on the 2016 Hard Drive, they ignore that those files were downloaded *after* the Claims Period. As set forth in Cox's First Rule 60 Motion, those were not the files that were downloaded and verified before notices were sent. *See* ECF 739 at 18-19. Thus, Plaintiffs' evidence of direct infringement constituted

purported verifications of files that no longer exist, and files downloaded after the Claims Period that lack verifications. *Id.* at 10-11. Plaintiffs also fail to explain whether those files were even verified using the withheld source code. Plaintiffs further ignore that no verifications exist for those files. And the only verifications in evidence (the MarkMonitor Spreadsheet) are of files that were destroyed. *See id.* at 11-12. So, listening to unverified, post–Claims Period files that may not have been processed through the withheld source code does not cure Cox's claimed prejudice. Moreover, this other evidence does not address the question of whether MarkMonitor verified files before sending notices for them.

These failings undoubtedly prejudice Cox. If Cox can show that Plaintiffs were involved in causing that prejudice, then justice gives way to finality and the judgment should be vacated.

## VI.   Cox Has Established That Discovery Is Warranted

Cox is not on a "fishing expedition." Opp'n at 24. It seeks simple, targeted discovery of: (1) the withheld source code and (2) evidence concerning MarkMonitor's and Plaintiffs' coordination during both the discovery period in this case related to MarkMonitor's response to Cox's subpoena and leading up to the recent discovery of the withheld source code. As set forth above, Cox has established a basis warranting discovery.

Plaintiffs do not argue that the Court lacks the ability to order discovery in further support of a Rule 60 motion. Plaintiffs instead claim that courts sparingly exercise this authority and attempt to distinguish those instances in which such discovery has been ordered. The Fourth Circuit has determined that a district court "retain[s] jurisdiction to entertain a Rule 60(b) motion, even when the underlying judgment is on appeal." *Fobian v. Storage Tech. Corp.*, 164 F.3d 887, 889 (4th Cir. 1999). Moreover, the Court may issue an indicative ruling that Cox's motion "raises a substantial question." Fed. R. Civ. P. 62.1(a)(3). And if the Fourth Circuit returns jurisdiction to the Court for disposition of this motion, it also has the authority to order discovery. *See, e.g.*,

18

*Johnson v. Starbucks Corp.*, 2019 WL 402359 (N.D. Cal. Jan. 31, 2019); *MMAR Grp., Inc. v. Dow Jones*, 187 F.R.D. 282 (S.D. Tex. Apr. 8, 1999).

Cox's request for discovery and an abeyance is proper, and the case law supports such a finding. The cases Cox has cited support the premise that a district court has the discretion to order further discovery in the face of a "colorable claim" of fraud. *See Pearson v. First NH Mortg. Corp.*, 200 F.3d 30, 35 (1st Cir. 1999). *Pearson* additionally recognized that such discovery was warranted where the claimant had been denied the discovery initially. *Id.* Likewise, *Midwest Franchise Corp. v. Metromedia Rest. Grp., Inc.,* found the same, and was factually similar to the case here in that evidence was newly discovered after a judgment was made that justified additional discovery. 177 F.R.D. 438, 441 (N.D. Iowa 1997).

## CONCLUSION

For all the foregoing reasons, and those set forth in Cox's moving brief, Cox respectfully requests that this Court enter an indicative ruling under Rule 62.1 stating that it is inclined to grant Cox's motion for relief from the judgment, or—at a minimum—that Cox's Motion raises a substantial issue that warrants further consideration by this Court. Further, or in the alternative, Cox respectfully requests that the Court enter an indicative ruling so that can exercise its authority to order Cox's requested discovery and, to the extent necessary, grant it leave to supplement its Motion with that discovery.

Dated: March 9, 2022

Respectfully submitted,

*s/ J. Tyler McGaughey*
J. Tyler McGaughey (VSB No. 78809)
WINSTON & STRAWN LLP
1901 L Street NW
Washington, DC 20036
Tel: (202) 282-5000
Fax: (202) 282-5100
Email: TMcGaughey@winston.com

*Attorneys for Defendants Cox
Communications, Inc. and CoxCom, LLC*

*Of Counsel for Defendants*

Michael S. Elkin (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
Tel: (212) 294-6700
Fax: (212) 294-4700
Email: MElkin@winston.com

Jennifer A. Golinveaux (*pro hac vice*)
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111-5840
Tel: (415) 591-1000
Fax: (415) 591-1400
Email: JGolinveaux@winston.com

Geoffrey P. Eaton (*pro hac vice*)
WINSTON & STRAWN LLP
1900 L Street NW
Washington, DC 20036
Tel: (202) 282-5000
Fax: (202) 282-5100
Email: GEaton@winston.com

**CERTIFICATE OF SERVICE**

I hereby certify that on March 9, 2022, the foregoing was filed and served electronically by the Court's CM/ECF system upon all registered users.

*s/ J. Tyler McGaughey*
J. Tyler McGaughey