# Exhibit S

ANDREW D. CASTRICONE (SBN: 154607)
acastricone@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111
Telephone:    (415) 986-5900
Facsimile:    (415) 262-3726

Attorneys for Defendant/Respondent
MARKMONITOR, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| COX COMMUNICATIONS, INC. and COXCOM, LLC<br><br>　　　　　　　　Plaintiffs/Movants,<br><br>vs.<br><br>MARKMONITOR, INC.,<br><br>　　　　　　　　Defendant/Respondent. | CASE NO. CV 19 80 050MISC-SK<br><br>**DECLARATION OF SAM BAHUN IN SUPPORT OF OPPOSITION TO MOTION TO COMPEL COMPLIANCE WITH SUBPOENA DUCES TECUM**<br><br>**U.S. Magistrate Judge Sallie Kim** |

I, Sam Bahun, declare:

1. I am the Director of Strategic Accounts for Defendant/Respondent MarkMonitor, Inc. ("MarkMonitor"). I have personal knowledge of the facts set forth herein and, if necessary, I would and could competently testify thereto if called as a witness in this matter. I submit this declaration in support of MarkMonitor's Opposition to Plaintiffs/Movants Cox Communications, Inc. and CoxCom, LLC (collectively "Cox") Motion to Compel Compliance with Subpoena *Duces Tecum* (Dkt.1).

2. MarkMonitor is widely recognized as the global leader in enterprise brand protection, including various aspects of intellectual property infringement. Over half of the Fortune 100, 1,300+ customers in over 50 countries and industry leaders in technology, fashion, sports, entertainment, pharma, media, auto and healthcare trust MarkMonitor and rely on its technology, expertise, and industry relationships every day to help them protect their

Page 1

1  brands online. MarkMonitor provides an influential voice that represents its customers' needs
2  in these industries and advocates on their behalf.  MarkMonitor takes great pride in the fact
3  that its competitors cannot match its level of advanced technology, expertise, extensive
4  industry relationships, and strong network of strategic allies and partners, and, as such, takes
5  great measures to protect its trade secrets and proprietary information – not only to maintain
6  its competitive edge, but also to prevent the technology from being misappropriated for
7  unlawful means.

8      3.  MarkMonitor experts are connected to an unparalleled ecosystem of partnerships
9  and relationships with search engines, social media networks, online marketplaces, industry
10  advocacy groups, registries and law enforcement agencies.  With a near-perfect customer
11  satisfaction rating, our best-in-class service team has years of experience to help ensure our
12  success.  I am unaware of any circumstances where the accuracy of infringement detection and
13  notification have been questioned where the veracity and reliability of MarkMonitor's system
14  could not be assessed without the production of the system or source code.

15      4.  In the entertainment industry, as demand for pirated content grows, rights
16  holders in the television, music, software, gaming, film and other industries must continuously
17  search the internet to identify any copyrighted material and ensure its proper distribution and
18  monetization.  MarkMonitor's studies show that content owners lose significant revenue from
19  pirated content, estimated to be $100 Billion per year.  With billions of infringing files on the
20  internet, it is difficult for a copyright holder to accurately detect and verify copyrighted
21  material on a large scale without the help of purpose-built automated technology.

22      5.  MarkMonitor provides its customers with antipiracy solutions through detection,
23  verification, enforcement and remediation, and analytics.  MarkMonitor's proprietary
24  automated technology provides access to a secure web based portal, with powerful online
25  monitoring and comprehensive case management capabilities to gather data on how, where
26  and when content is being used over a wide variety of channels, including peer-to-peer
27  ("P2P"), cyberlockers, search engines, user generated content, live content, over the top
28  (content over the internet without a traditional subscriber service), and Internet Protocol

**Gordon Rees Scully Mansukhani, LLP**
275 Battery Street, Suite 2000
San Francisco, CA 94111

1  Television ("IPTV").  The data is then turned into actionable intelligence to assist
2  MarkMonitor's customers in enforcing their brands and intellectual property and controlling
3  their anti-piracy program, by identifying and tracking piracy trends, and detecting the use and
4  distribution of copyrighted material and related infringement, including illegal downloading
5  and unauthorized streaming.  As a corollary to detection, MarkMonitor's proprietary
6  technology employs multiple levels of verification to confirm accuracy of all detected
7  infringement, including automated digital fingerprint technology for fast and accurate large
8  scale verification and manual review of questionable files.  MarkMonitor then works with its
9  customers regarding enforcement, notification, and remediation.

10  6.  With respect to the alleged acts of infringement in the underlying case, *Sony Music Entertainment, et al. v. Cox Communications, Inc., et al.*, USDC ED Virginia, Case No 1:18-cv-00950-LO-JFA, MarkMonitor had been retained by the plaintiff record labels and music publishers (collectively "The Sony Plaintiffs") to detect, report, and facilitate notification for infringement in the form of unauthorized downloads of songs on peer-to-peer file sharing sites.  I am informed and believe that the Sony Plaintiffs allege Cox, as one of the largest Internet Service Providers in the country, knowingly contributed and are therefore liable for their subscribers' infringement of what Cox enumerates as 10,729 of plaintiffs' copyrighted music works via unauthorized downloads through BitTorrent or other P2P sites.

19  7.  It is my understanding and belief that, as a result of MarkMonitor's work for the Sony Plaintiffs, it was identified as a witness regarding "observation of infringements by Cox subscribers, infringement of Plaintiffs' copyrighted works by Cox subscribers; notice of copyright infringement sent to Cox."

23  8.  In response to the subpoena at issue in this matter, MarkMonitor has agreed to produce or make available for inspection all non-privileged and relevant documents in its possession, custody or control that are responsive to Cox' requests pertaining to: communications/agreements with the Sony Plaintiffs (Request Nos. 1, 16); communications with the RIAA ("Recording Industry Association of America") (Request Nos. 2, 15); communications with Cox subscribers/notices of infringement/Cox IP addresses (Request Nos.

Case 1:18-cv-00950-PTG-JFA   Document 785-2   Filed 03/09/22   Page 5 of 9 PageID# 34712

Case 3:19-mc-80050-SK   Document 10   Filed 03/04/19   Page 4 of 8

6, 8, 9, 22); presentations, etc. regarding MarkMonitor's "System" (Request No. 7); copies of downloaded works (Request Nos. 10, 11); manuals/guidelines regarding MarkMonitor's "System" (Request No. 14); communications with Stroz Friedberg or Harbor Labs or others regarding MarkMonitor's "System" and any "flaws," etc. (Request Nos. 17, 18, 19); industry agreements regarding the handling of copyright infringement notices, or limits on number of accepted notice by an ISP (Request Nos. 20, 21); software revision policies (Request No. 23); and document retention policies (Request No. 24).

9.  I am the person at MarkMonitor who is charged with gathering the above information/documents for production to or inspection by Cox. I have made such information available to our counsel, who will review the material to confirm its readiness for production or inspection, and will move forward with production or inspection at a mutually convenient date, time, and location with Cox' counsel. I previously made such information available to the Sony Plaintiffs' counsel. It is my further understanding that most, if not all, of the documents that are non-privileged and responsive to the above referenced requests (perhaps as being responsive to differently phrased requests from Cox to the Sony Plaintiffs) have already been produced to Cox or are in the process of being produced by the Sony Plaintiffs.

10. Requests Nos. 3, 4 ("financial interest"), 5 ("ownership interests"), are inapplicable and/or there are no non-privileged documents which are responsive to such requests.

11. MarkMonitor has only objected to the production of any documents or information in Request Nos. 12 and 13, which state:

*Request No. 12:*

*One copy of each version of Your System that was in use during Plaintiffs' Claim Period, including all versions of the source code for each, that was used to monitor and/or detect copyright infringement, generate copyright infringement notices, or send copyright infringement notices.*

*Request No. 13:*

*All Documents concerning the revision history of Your System and the associated*

Page 4
BAHUN DEC. IN OPPOSITION TO MOTION TO COMPEL         CASE NO. CV 19 80 050MISC-SK

*source code.*

12. I am informed and believe that the basis for the objection and refusal to produce such information has been explained to Cox' counsel and is set forth in MarkMonitor's written response to the subpoena. For more specificity, MarkMonitor's "system" and technology are highly guarded trade secrets, with many of our systems, methods, and software protected by patents. Internally, we employ practices and procedures for all employees, agents, contractors, etc. to maintain the sanctity and confidentiality of such information to prevent it from being misappropriated by third parties, including, but not limited to, competitors that would allow them to unfairly compete with MarkMonitor or others that would use the MarkMonitor trade secrets and proprietary information for illegal or unlawful purposes – namely the same type of infringement and unauthorized access to content, etc. that is at the heart of MarkMonitor's business. Externally, the protection of such trade secrets and proprietary information is addressed via stand along agreements for engagement of our services or other forms of nondisclosure agreements.

13. Other than with respect to internal use or authorized external use, MarkMonitor has never provided, nor been compelled by any Court to provide, a copy or access to its system or source code, or information about its source code to any third party.

14. I am familiar with RightsCorp, which is another company that monitors and enforces copyrights on a much smaller scale than MarkMonitor. I am also familiar with the *BMG Rights Mgt. (US) LLC v. Cox Communications, Inc.*, USDC ED Virginia Case No. 1:14-cv-01611 ("the *BMG* litigation") referenced by Cox in its papers. I am informed and believe that there are differences between that case and the Sony Plaintiffs' case, where RightsCorp.'s production of source code was made, coupled with a number of motions to compel, and other procedural steps relating to discovery and failure to preserve information, and other facts, that are not present here, as well as sanctions for claims of spoliation.

15. MarkMonitor has never been provided with any notice, claim, or complaint that its system is in anyway unreliable, inaccurate or produces false positive notices. MarkMonitor is unaware of any claims regarding any problems, deficiencies, etc. in the core functionality of

its system – in general, and with respect to the veracity, authenticity, and reliability of the infringement notices at issue in the underlying litigation between the Sony Plaintiffs and Cox. Neither I, nor anyone else from MarkMonitor has been deposed regarding our system, its functionality, reliability, performance, etc. in that matter.  In fact, it is my understanding and belief that the Sony Plaintiffs have already produced or are in the process of producing documents that relate to the Sony Plaintiffs copyright ownership, the acts of infringement (including detection and notification), and the reliability of the notice of infringement. Especially as is the case here, where MarkMonitor is not a party to the underlying litigation, it maintains that, unless and until there is some prima facie demonstration that the system or source code are actually in issue, or there is some evidence of veracity, reliability, etc., MarkMonitor's rights to protect its confidential trade secret proprietary information should be preserved.

16. At the very least, the motion to compel production of the trade secrets and proprietary system and source code information should require some showing from the information that has been or is being produced.  In reviewing the motion, and the subpoena, I have not seen any evidence to establish a foundation to compel production of the system and source code, which seems to be a fishing expedition.  Likewise, while I understand and have reviewed the protective order from the Sony-Cox litigation, it remains MarkMonitor's position that the inclusion of "source code" in the protective order does not equate to a pre-approval for the discovery in dispute here.

17. I have also reviewed the Stroz Friedberg and Harbor Labs "reports" provided to our counsel from Cox' counsel.  In doing so, I confirmed that those reports are the only documents MarkMonitor would have in response to Request Nos. 17 and 18, and we do not possess any unredacted or more complete versions.  Importantly, the reports also negate the merits of Cox' claims here, or the need for access to the system or source code.

18. In Harbor Labs' "Evaluation of the MarkMonitor AntiPiracy System," dated March 3, 2014, the Executive Summary states they "did not review source code or conduct our own tests of the mechanism.  We did, however, have access to test results conducted

previously by Stroz Friedberg . . . ." and notes:

> We conclude, based on our review, that the MarkMonitor AntiPiracy system is designed to ensure that there are no false positives under reasonable and realistic assumptions. Moreover, the system produces thorough case data for alleged infringement tracking. CCI [Center for Copyright Information] has informed us that, to date, there are no known instances of this system generating incorrect notices, increasing confidence that the design of the system is sound.

Likewise, Stroz Friedberg, in its redacted November 1, 2012, "Independent Expert Assessment of MarkMonitor AntiPiracy Methodologies," reported that they "conducted an assessment of the MarkMonitor Methodologies for monitoring, verifying, and enforcing online copyright infringement on P2P file sharing networks. . . ." The findings included that MarkMonitor's Methodologies effectively identify online infringement, are "well developed and matured," "evidence collection . . . is robust, defensible, and will withstand adverse party scrutiny or evidentiary challenges," "include appropriate checks and balances at key points in the work flow to ensure accuracy," "reporting and notice-generating abilities allow MarkMonitor to accurately report on identified infringers," and "have a number of inherent and added system redundancies designed to ensure that MarkMonitor can provide continuous and consistent scanning." As such, it seems that the documentation MarkMonitor has agreed to produce, and that the Sony Plaintiffs have already produced or are producing, as well as Cox' subpoenas to Stroz Friedberg and Harbor Labs (which Cox' counsel informed our counsel was in process), should be sufficient to address Cox' concerns.

19.   Moreover, even if the Court ordered production and inspection of the system and source code at issue in Request Nos. 12 and 13, compliance would be unduly burdensome, time consuming, and expensive, and Cox does not appear to be offering to address any fees and costs.

20.   In reviewing the Declaration of Nick Feamster filed with the moving papers, and Cox' counsel's letter which they claim warrants production/inspection, there is some allusion to the ability of Mr. Feamster to simply come to MarkMonitor's San Francisco office on any given day for a monitored inspection where he essentially conducts a test drive of MarkMonitor's system. However, this is not true or feasible. To provide a mock of the

1  system used during the relevant period of monitoring, infringement and notification,
2  MarkMonitor would have to undertake a monumental task and engage the time and services of
3  its engineers from multiple European offices to place their current responsibilities on hold to
4  the detriment of MarkMonitor and its customers, and essentially reconstruct the operating
5  system, software and other technology (and likely travel to the United States) to try and
6  fabricate an accurate mock environment that was in place in the relevant time period.
7  MarkMonitor may not be able to guarantee such a fabricated system will function the exact
8  same way as the actual system did during the relevant period, and the preparation of the mock
9  system would necessitate that the engineers also engage in sufficient pre-inspection testing and
10 analysis prior to any inspection that is compelled by the Court.

11     I declare under penalty of perjury under the laws of the United States of America that
12 the foregoing is true and correct.  Executed on March 4, 2019.

                                     /s/  Sam Bahun
                                     Sam Bahun
.

## ATTESTATION

    I hereby attest that I have on file all holographic signatures corresponding to any signatures indicated by a conformed signature (/S/) within this e-filed document.

Dated: March 4, 2019              GORDON REES SCULLY MANSUKHANI, LLP

                               By    /s/  Andrew D. Castricone
                                   Andrew D. Castricone
                               Attorneys for Defendant/Respondent
                               MARK MONITOR, INC.

**Gordon Rees Scully Mansukhani, LLP**
275 Battery Street, Suite 2000
San Francisco, CA 94111

NA/43766863v.1